# EXHIBIT B

William J Trach
e-mail: william.trach@lw.com
Phone No : (617) 880-4514

200 Clarendon Street
Boston, Massachusetts  02116
Tel: +1.617.948.6000  Fax: +1.617.948.6001
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

May 6, 2019

**BY E-MAIL**

Eric S. Rosen
Assistant United States Attorney
District of Massachusetts
John Joseph Moakley United States Courthouse
1 Courthouse Way
Suite 9200
Boston, MA 02210

Re:  *United States v. Sidoo et al., No. 19-cr-10080*

Dear Mr. Rosen:

We are writing to respond to your suggestion that, by virtue of the firm's concurrent representation of the University of Southern California (USC) in an unrelated matter, Latham & Watkins LLP is ethically barred from representing its clients Lori Loughlin and Mossimo Giannulli in the above-captioned case.  Having carefully reviewed the applicable ethical rules and precedent in light of the substance and scope of our representations, our firm has concluded that there is no current or foreseeable conflict of interest, and that we have taken appropriate steps to avoid any such conflict of interest arising in the course of the case.

The purpose of this letter is to set out our analysis and reasoning in the sincere hope that, once you have had the opportunity to review this letter and the sources cited, you will reconsider your position and appreciate that there is no disqualifying conflict of interest justifying a motion to deny Ms. Loughlin and Mr. Giannulli their constitutional right to retain counsel of their choice.

## I.     FACTUAL BACKGROUND

USC is currently a client of our firm.  At this time, we are representing USC in only one matter, and the substance of that matter is publicly known.  It involves a dispute between USC and the Los Angeles Memorial Coliseum Commission over USC's lease rights respecting the

**LATHAM&WATKINS** LLP

Coliseum.  Neither this matter, nor any prior matter we have handled for USC in the past, is in any way related to our representation of Ms. Loughlin and Mr. Giannulli.  USC does not contend otherwise.

In the above-captioned case, we represent Ms. Loughlin and Mr. Giannulli, each of whom has also engaged separate co-counsel.  Ms. Loughlin is represented by Mark Harris of Scheper Kim & Harris along with Latham.  Mr. Giannulli is represented by George Vien of Donnelly, Conroy & Gelhaar, LLP, along with Latham.  As a result, each of our clients will be able to tailor the scope of responsibilities among co-counsel in a way to best meet their needs. Based on information currently known to us, our clients' defense will focus on their knowledge and intent, as well as the legal deficiencies in the government's mail fraud and honest services theories.  Should there be any need to cross-examine a USC representative while USC is a client of the firm, Latham will recuse itself entirely from such cross-examination, as well as all underlying strategic advice.  Should there be a penalty phase of this case while USC is a client of the firm, Latham similarly will recuse itself from any aspect of the case that concerns restitution to USC.  All such matters will be handled exclusively by co-counsel while USC remains a client of Latham.

Both Ms. Loughlin and Mr. Giannulli have been advised of Latham's current representation of USC and of USC's and your allegations that this presents a conflict of interest. Both have had the opportunity to discuss this issue with independent counsel.  And both, having considered the issue, have chosen to have Latham continue as co-counsel in this matter as described above.  This situation therefore squarely implicates Ms. Loughlin and Mr. Giannulli's core Sixth Amendment right, when faced with a criminal prosecution by the full weight of the United States, to retain the counsel of their choice.  *See Luis v. U.S.* ____ U.S. ____, 136 S.Ct. 1083, 1086 (2016) ("The right to select counsel of one's choice is . . . the root meaning of the Sixth Amendment right to counsel.") (internal quotations omitted); *Kaley v. U.S.*, 571 U.S. 320, 336 (2014) (Defendants "having the ability to retain the counsel they believe to be best . . . matters profoundly.") (internal quotations omitted); *U.S. v. Gonzalez-Lopez*, 548 U.S. 140, 144, 147-148; *United States v. Arias*, 351 F.Supp.3d 198, 199 (D. Mass. 2019) (the Sixth Amendment guarantees "the right to have an attorney of one's own choosing") (internal quotations omitted).

## II.    CONTENTIONS

You have suggested that Latham has a current conflict of interest because representing criminal defendants is inherently adverse to the interests of the alleged victims of their alleged crimes.  USC has additionally suggested that Latham's representation of Ms. Loughlin and Mr. Giannulli poses foreseeable conflicts because it is possible that USC may have civil disputes with one or both sometime in the future, and because the fact that USC concurrently uses for the Coliseum matter the same counsel that Ms. Loughlin and Mr. Giannulli have hired for this matter may cause USC public embarrassment.  You have further expressed concern that Ms. Loughlin and/or Mr. Giannulli might later challenge a conviction for ineffective assistance of counsel based on these supposed conflicts.

LATHAM&WATKINS LLP

## III.   ANALYSIS

Faced with a motion to disqualify counsel, the district court would apply the Massachusetts Rules of Professional Conduct.  *See Altova GmbH v. Syncro Soft SRL*, 320 F.Supp.3d 314, 318, n. 2 (D.Mass. 2018) ("Attorneys practicing in this district must comply with the ethical requirements embodied in the Massachusetts Rules of Professional Conduct."); *California Association of Realtors, Inc. v. PDFfiller, Inc.*, 2017 WL 975945 at *3-*4 (applying Massachusetts Rules of Professional Conduct 1.7 and 1.10 in deciding motion to disqualify); D.Mass.L.R. 83.6.1.

### A.      There Is No Current Conflict of Interest

Under Rule 1.7, a concurrent conflict of interest exists when a firm's representation of one client is "directly adverse" to another client.  *See* Mass. R. Prof. C. 1.7(a)(1).  The core mandate of this rule is that "absent consent, a lawyer ordinarily may not act as an advocate in one matter against a person the lawyer represents in some other matter."  Mass. R. Prof. C. 1.7 cmt. 6.[1]  The rule also generally prohibits a lawyer from cross examining a person the lawyer represents in another matter, *id.*, though a lawyer may do so when the cross-examination is on a peripheral issue, *Commonwealth v. Boateng*, 438 Mass. 498, 508-512 (2003).  This case involves neither of these circumstances.  Latham's representation of Ms. Loughlin and Mr. Giannulli is "against" only the United States, not against USC; and Latham is not proposing to cross-examine any USC representative (and indeed has made clear it will not do so while USC is a client of the firm).

You have suggested that direct adversity exists here because defending Ms. Loughlin and Mr. Giannulli is inherently contrary to the interests of USC, as an alleged victim of the alleged crime.  That is not true as a matter of ethics law.  Under Rule 1.7, "[d]irect adversity requires a conflict as to the *legal* rights and duties of the clients."  American Bar Association Standing

---

[1] Because Latham's representation of Ms. Loughlin and Mr. Giannulli is entirely unrelated to any matter in which the firm is representing USC or has represented USC in the past, this situation does not implicate the distinct concerns that are raised when a lawyer who represents a criminal defendant is representing or has represented an adverse witness in the same or a related matter. *See*, *e.g.*, *U.S. v. O'Malley*, 786 F.2d 786 (7th Cir. 1986) (upholding disqualification where defendant's counsel previously represented one of government's major witness against defendant where confidential information obtained by counsel from former client related to defendant); *U.S. v. Lanoue*, 137 F.3d 656, 663 (1st Cir. 1998) (upholding district court's disqualification of defendant's counsel who previously represented government's witness in a related trial also involving defendant).  In those circumstances, the dual representation raises the prospect that the lawyer may improperly use in the criminal defense confidences she obtained (or is presumed to have obtained) in her representation of the adverse witness, a situation that would corrupt the administration of justice.  That concern is not present here.  Because Latham has never represented USC in any related matter, there is no risk that the firm has or would use/communicate confidences of USC to Ms. Loughlin or Mr. Giannulli's advantage, and thus no possible taint on these proceedings.

LATHAM&WATKINS LLP

Committee on Ethics and Professional Responsibility Op. 05–434, at 140 (Dec. 8, 2004) (ABA Op. 05–434) (emphasis added); *Maling v. Finnegan, Henderson, Farabow, Garrett & Dunner*, LLP, 473 Mass. 336, 341 (2015).  To the extent this encompasses a conflict with a client's "interests," that necessarily is limited to a conflict with the client's *legal* interests.  Latham's representation of Ms. Loughlin and Mr, Giannulli in this case concerns only whether they violated the federal criminal statutes with which the government has charged them.  The court will not adjudicate any of USC's legal rights, duties, or interests. Furthermore, as noted, based on the information currently known to us, the defense in this case will focus on our clients' knowledge and intent, as well as the legal deficiencies in the government's mail fraud and honest services theories.

To the extent that USC, as an alleged victim, may wish to see Ms. Loughlin and Mr, Giannulli convicted and punished, that is an "interest" only in a colloquial sense.  It is not a legal right or obligation, and thus not a cognizable interest protected by Rule 1.7.  *See Maling v. Finnegan, Henderson, Farabow, Garrett & Dunner, LLP*, 473 Mass. 336, 341-42 ("[D]irect adverseness requires a conflict as to the legal rights and duties of the clients, not merely conflicting economic interests.") *citing* American Bar Association Standing Committee on Ethics and Professional Responsibility, Formal Op. 05–434, at 140 (Dec. 8, 2004).  Moreover, even considered in that colloquial sense, UCS's only *legitimate* interest is that the law be enforced correctly—regardless of USC's normative view of the defendants' conduct, its beliefs about the defendants' frame of mind, or its own interpretation of the relevant criminal statutes.

**B.      There Is No Foreseeable Future Conflict Of Interest**

Rule 1.7 also bars a representation where direct adversity is reasonably foreseeable.  *See Bryan Corp. v. Abrano*, 474 Mass. 504, 510, 514-15 (upholding disqualification of counsel whose concurrent clients, shareholder and company, became directly adverse to one another, noting "rule 1.7 encompasses a lawyer's duty to anticipate *potential* conflicts . . . .") (emphasis added); *Maling,* 473 Mass. at 347 (considering whether counsel "reasonably should have foreseen the potential conflict" between concurrent clients in determining whether Rule 1.7 violated).

You have noted that representatives of USC may appear as adverse witnesses in this matter, and suggested that this poses a foreseeable conflict of interest.  But there can be no conflict of interest in light of the co-counsel arrangement our clients have in place, because if a USC representative appears as an adverse witness while USC is a client of the firm, Latham will not participate in any way in that aspect of this case.  Not only will Latham not itself cross-examine such a witness but, further, it will not advise Ms. Loughlin and Mr. Giannulli, or discuss with co-counsel, whether the witness should be cross-examined, and will not participate at all in the preparation for any cross-examination.  Should this case proceed to a penalty phase while USC is a client of the firm, Latham similarly will recuse itself from participation in any aspect of the case that concerns restitution to USC.  All such matters will be handled exclusively by co-counsel while USC remains a client of the firm.  Such use of conflicts counsel to avoid a conflict is well established.  *See e.g., Sykes v. Matter*, 316 F.Supp.2d 630, 633 (M.D. Tenn. 2004) ("[T]he potential for conflict can be removed by allowing plaintiff to retain other counsel for purposes of cross-examin[ation]"); *Wal-Mart Stores, Inc. v. Vidalakis,* 2007 U.S. Dist. LEXIS 4468688, at

LATHAM&WATKINS LLP

*4-*5 (W.D. Ark. Dec. 17, 2007) (denying disqualification motion, upon finding that "the use of outside independent counsel to handle the depositions, discovery exchange, and all trial issues involving Wal-Mart is the most reasonable solution"); *id.* at *5 (citing cases approving "the use of local counsel or co-counsel to cross-examine former clients of primary counsel as an effective and appropriate cure of any potential conflict"); *Swanson v. Wabash, Inc.*, 585 F. Supp. 1094, 1097 (N.D. Ill. 1984) (finding "no conflict is possible" if former client of counsel is cross-examined by independent co-counsel); ABA Formal Opn. No. 92-367 (noting that "[i]n some instances, a sufficient solution may be to provide for other counsel, also representing the litigation client, to deal with the client-witness"); *U.S. v. Jeffers*, 520 F.2d 1256, 1266 (7th Cir. 1975), *cert. denied* 423 U.S. 1066 (1976) (noting that counsel could have obtained co-counsel for cross-examination of witness also represented by counsel in another matter).  And here the fact that both defendants have existing co-counsel who can handle any such aspects of the case should they arise eliminates the possibility of any prejudice to the defendants or delay of the proceedings.  *See generally* ABA Formal Opn. No. 92-367, n. 17 ("The general rule is that a co-counsel will not in and of itself require disqualification.").   For these reasons, it is not foreseeable that Latham will have a concurrent conflict of interest in the future.

USC has suggested that Latham's representation of Ms. Loughlin and Mr. Giannulli may conflict with USC's interests in possible future civil litigation with these individuals.  But any such future civil litigation is completely speculative, Latham is not proposing to represent Ms. Loughlin or Mr. Giannulli in any such civil litigation,[2] USC has never articulated how Latham's representation of the defendants in this case would bear on any such civil litigation, and the possibility that Latham might help secure an acquittal that creates a precedent that proves unhelpful to USC in future civil litigation would not qualify as direct adversity in any event. *See* Mass. R. Prof'l. Cond. 1.7, cmt. [24] ("The mere fact that advocating a legal position on behalf of one client might create precedent adverse to the interests of a client represented by the lawyer in an unrelated matter does not create a conflict of interest.").[3]

### C.        There Is No Sixth Amendment Problem

You have expressed the concern that Ms. Loughlin and Mr. Giannulli may later seek to overturn a conviction by claiming that Latham was conflicted and therefore ineffective.  That is not a realistic concern.

---

[2] To the extent you may believe it relevant, Latham is not representing Ms. Loughlin and Mr. Giannulli's daughters in the disciplinary proceedings that USC has brought against them.  The children have their own counsel, and Latham is not involved in any respect.

[3] USC has also suggested that it might suffer adverse publicity if the media reports that a law firm that it employs in unrelated matters is representing Ms. Loughlin and Mr. Giannulli in this case.  That is not even colorably an ethical problem.  Latham is a large international law firm, which represents many thousands of clients in myriad different matters.  USC might not wish to be publicly associated with any number of representations.  But a client has no right to veto its lawyer's representation of other clients in unrelated matters merely because it might be embarrassed by them.

**LATHAM&WATKINS**LLP

For a defendant to successfully challenge her conviction under the Sixth Amendment on grounds that her lawyer was ethically conflicted and therefore ineffective, the defendant must do more than prove the existence of an existing or potential conflict of interest. She must additionally show that "an actual conflict of interest adversely affected [the] lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980); *see also Mickens v. Taylor*, 535 U.S. 162 (2002) (an actual conflict of interest for purposes of ineffective counsel claims means "a conflict *that affected counsel's performance*—as opposed to a mere theoretical division of loyalties"). That is not a danger here, for two reasons.

First, for all of the reasons explained above, Latham does not currently have a conflict of interest or a foreseeable conflict of interest. And in the unlikely event there is a need for either defendant to proceed adversely to USC, such as by cross-examining a USC representative, both defendants are represented by qualified co-counsel who are perfectly willing and able to identify those circumstances and take over that part or all of the representation. It is entirely speculative to suggest that Ms. Loughlin and Mr. Giannulli could ever establish that Latham's performance was adversely affected by its representation of USC on unrelated matters, and still more so that such representation would have any impact on the effectiveness of co-counsel as well.

Second, both Ms. Loughlin and Mr. Giannulli have affirmed in writing that they knowingly waive any potential conflict based on Latham's concurrent representation of USC in an unrelated matter. Both Defendants are prepared to affirm this knowing waiver by submitting an affidavit to the Court, and we are willing to work with you on the content of such affidavit. These waivers address and should fully alleviate your Sixth Amendment concerns. *See Yeboah-Sefah v. Ficco*, 556 F.3d 53, 68 (1ˢᵗ Cir. 2009) ("Even where an actual conflict exists, however, a defendant may waive this conflict and elect to have the attorney continue representation, so long as that waiver is knowing, intelligent, and voluntary.") (internal quotations omitted); *Commonwealth v. Boateng*, 438 Mass. at 512.

## CONCLUSION

For the reasons explained above, our law firm is confident that it has no current or reasonably foreseeable conflict of interest in this case. We are hopeful that after reviewing this letter and the sources cited, you will agree. Should you wish to discuss these issues further with the Chair of our Ethics Committee, we would be happy to arrange for that.

Very truly yours,

William J. Trach
of **LATHAM & WATKINS LLP**

6