# EXHIBIT C



ROPES & GRAY LLP
PRUDENTIAL TOWER
800 BOYLSTON STREET
BOSTON, MA 02199-3600
WWW.ROPESGRAY.COM

May 1, 2019

**BY E-MAIL**

Eric S. Rosen
Assistant United States Attorney
District of Massachusetts
John Joseph Moakley United States Courthouse
1 Courthouse Way
Suite 9200
Boston, MA 02210

Re:   *United States v. Sidoo et al.*, No. 19-cr-10080

Dear Mr. Rosen:

   As discussed on Monday and pursuant to your request, we are writing to elaborate on our position with respect to Ropes & Gray LLP's representation of the University of Southern California ("USC") in matters unrelated to Ropes & Gray's representation of Douglas Hodge in the above-captioned case. Our firm has concluded that there is no disqualifying conflict of interest, and we propose to address any remaining concerns in the manner outlined below.

   As an initial matter, the representation of Mr. Hodge in the above-captioned case and USC in unrelated matters presents no current, actual conflict of interest under Rule 1.7 of the Massachusetts Rules of Professional Conduct. A conflict of interest in this context only exists when a firm represents one client "directly adverse" to another client of the law firm. *See* Mass. R. Prof. C. 1.7(a)(1). "Direct adversity requires a conflict as to the legal rights and duties of the clients." American Bar Association Standing Committee on Ethics and Professional Responsibility, Formal Op. 05–434, at 140 (Dec. 8, 2004) (ABA Op. 05–434); *see also* Mass. R. Prof. C. 1.7 cmt. 6; *Maling v. Finnegan, Henderson, Farabow, Garrett & Dunner, LLP*, 473 Mass. 336, 341 (2015). Here, Ropes & Gray's representation of Mr. Hodge in the pending criminal case will not affect the legal rights and duties of USC; the legal rights and duties of USC will not be adjudicated in this matter, and USC otherwise has no legal interest in the outcome of this case. There is therefore no current, actual conflict between Mr. Hodge and USC.

   The Government appears to have adopted this position by not raising the asserted conflicts issue during the Rule 11 plea colloquies involving defendants represented by law firms that also

ROPES & GRAY LLP

- 2 -                                                                    May 1, 2019

represent USC in unrelated matters. For example, Quinn Emanuel Urquhart & Sullivan LLP represents Bruce Isackson and represents USC in an unrelated, ongoing litigation, *Chui et al. v. University of Southern California et al.*, No. 2:18-cv-04258 (C.D. Cal.). The law is clear that the "right to conflict-free representation extends to plea proceedings, including investigation and negotiation," *Moore v. United States*, 950 F.2d 656, 660 (10th Cir. 1991), given that plea proceedings present the concern that a firm would improperly advise a criminal defendant in order to protect an ongoing business relationship with a different client. *See id.* ("If a defendant would have elected a trial, but an improper motivation precluded counsel from evaluating this alternative and advising defendant, a defendant has been prejudiced.").

In your email this morning, you raised the concept of adversity that may arise down the road through a cross-examination of a USC representative by Ropes & Gray. Although a conflict "*may* arise when a lawyer is required to cross-examine a client who appears as a witness in a lawsuit involving another client, as when the testimony will be damaging to the client who is represented in the lawsuit," Mass. R. Prof. C. 1.7 cmt. 6 (emphasis added), it is not the case that a conflict always arises when a lawyer has occasion to cross-examine a client. The Supreme Judicial Court held that no conflict of interest prevented a defendant's law firm from cross-examining a client in a criminal case in which the testifying client's testimony related to a peripheral issue. *Commonwealth v. Boateng*, 438 Mass. 498, 508-512 (2003). Likewise here, it is premature to assume that any cross-examination of a USC representative would be on a critical issue.

Moreover, even in the event that a cross-examination of a USC-affiliated witness were to relate to a critical issue, Ropes & Gray has established protections against any possible future conflict by partnering from the initiation of the representation with co-counsel from Pepper Hamilton LLP, Miranda Hooker. Pepper Hamilton has no professional relationship with USC, and Ms. Hooker will be available to conduct the cross-examination of any testifying USC representative, thereby obviating any potential adversity that could later arise. *See, e.g. Sykes v. Matter*, 316 F. Supp. 2d 630, 636 (M.D. Tenn. 2004) (conflict associated with cross-examination of a former client resolved through use of counsel from different firm). In addition, we note that this "potential adversity" is present in connection with sentencing proceedings for those defendants who have pleaded guilty and who are represented by law firms that also perform unrelated work for USC where USC-affiliated witnesses could be called during sentencing hearings.

Mr. Hodge has affirmed in writing that he knowingly waives potential conflicts, including specifically conflicts based on the cross-examination issue discussed above, and he is prepared to affirm this knowing waiver by submitting an affidavit to the Court. Mr. Hodge's waiver addresses the concerns you raised regarding a potential Sixth Amendment appellate issue, *Commonwealth v. Boateng*, 438 Mass. at 512 (defendant's ineffective assistance of counsel claim undermined by his knowing and intelligent waiver), and we are willing to work with the Government in drafting the content of any affidavit.

ROPES & GRAY LLP

- 3 -                                                                                                  May 1, 2019

   Finally, the two cases cited in your email this morning present evident examples of direct adversity helping to clarify the absence of direct adversity here.  In *Bryan Corp.*, the law firm represented a company in an ongoing lawsuit at the same time as the law firm sent a demand letter to the company on behalf of certain shareholders.  *Bryan Corp. v. Abrano*, 474 Mass. 504, 507 (2016).  In *Altova*, the law firm first represented a company, Syncro, in patent infringement matters against a competitor, Altova, concerning "XML" software, and then the law firm represented Altova in a patent infringement lawsuit against Syncro involving that same software.  *Altova GmbH v. Syncro Soft Srl.*, 320 F. Supp. 3d 314, 317-18 (D. Mass. 2018).  In granting the Motion for Disqualification in that clear example of a direct conflict, Judge Saris observed that disqualification was "a drastic measure which courts should hesitate to impose except when absolutely necessary."  *Id.* at 320-21.

   We look forward to working cooperatively with the Government on this matter.  Please let us know if you have further questions.

Sincerely,

*/s/ Brien T. O'Connor /EDG*                                                                    */s/ Joan McPhee /EDG*

Brien T. O'Connor                                                                                        Joan McPhee