UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) | |
| v. | ) ) | CRIMINAL NO. 19-10080 |
| DAVID SIDOO, et al<br>Defendants | ) ) ) ) ) | |

**DEFENDANTS' MOTION FOR PRODUCTION OF EXCULPATORY EVIDENCE REGARDING TITLE III INTERCEPTIONS AND CONSENSUAL RECORDINGS AND FOR OTHER APPROPRIATE RELIEF**

Now come the Defendants, by and through undersigned counsel, and hereby respectfully request that this Honorable Court Order the government, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and Local Rule 116.2, to produce all non-minimized interceptions resulting from the execution of the four Title III Orders that have not yet been disclosed to the defense in discovery, as well as any and all consensual recordings and text messages that were initiated or received by Rick Singer after he commenced his cooperation in September 2018 that have not been disclosed to the defense. Such an Order, in addition to ensuring compliance with the government's Constitutional obligations, would avoid the predictable delay likely to result from a deferred disclosure of the audios on the eve of trial in the event the government elects to call Singer as a witness, *e.g.* pursuant to the procedure required by 18 U.S.C. 3500.

   I.  *Factual and Legal Background*

To-date, the government has produced only a subset of the foregoing materials. *See*

1

*generally* Letter Requesting Discovery and Government Response, attached hereto as Exhibits 1 and 2. With respect to the Title III intercepts, it has provided 1,463 recordings or text messages deemed "pertinent," but not the 7,825 additional intercepted communications. Similarly, the government has produced only 2,047 calls and texts out of the total 8,559 consensually recorded communications by Singer between late September 2018 and March 14, 2019.[1] Upon information and belief, not all of the non-disclosed Title III intercepted calls deemed "non-pertinent" have been reviewed by any of the Assistant U.S. Attorneys working as part of the prosecution team. Rather, the determination regarding the scope of the government's discovery obligations and the decision-making as to whether any specific non-minimized interception is or is not "pertinent" has been left to the agents monitoring or reviewing the calls. Similarly, as to the consensual recordings, on information and belief the determination of pertinence has thus far been made by law enforcement agents, not the prosecutorial team of attorneys.[2]

*Brady* holds "that the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The reason for this rule is clear and

---

[1] The government has informed the defense that *many* but not all of these non-disclosed consensual communications "have no content because the telephones never connected or there was no answer." Exhibit 2 at 1 n.1.

[2] Up until today, the defense was unaware that the prosecutors were intending or engaging in any review of the non-disclosed calls. While discussing the redaction issue today, AUSA Rosen informed Mr. Weinberg that the prosecutors had commenced such a review. Counsel is unaware of and the government can more fully explain the details and scope of that review and whether it will be of each and every non-disclosed intercept and each and every non-disclosed consensual recording.

2

fundamental: "[s]ociety wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." *Id.* *Brady* applies to "[i]mpeachment evidence, . . . as well as exculpatory evidence." *United States v. Bagley*, 473 U.S. 667, 676 (1985) (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)). And, crucially for present purposes, each "individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). In other words, the government's Constitutional obligations may not be delegated to investigators by entrusting those non-lawyers to provide all exculpatory evidence to prosecutors. To the contrary, prosecutors have an independent obligation to personally make exculpatory disclosure decisions regarding information in the hands of law enforcement such as the non-disclosed audios of the government's pivotal informant Rick Singer.

II.     *Consensual Recordings*

With respect to the consensual recordings, the government has declined the defense's request to provide any information whatsoever about the communications that it has chosen not to produce. Unlike the "non-pertinent" Title III intercepts, there is no log of the more than 6,000 unproduced consensual recordings, attempted recordings (see footnote 1 *supra*), or intercepted texts. Accordingly, there is simply no way for the defense to specifically identify exculpatory information contained therein or even to identify any particular relevant consensually recorded call (other than those which have already been produced) initiated or received by Rick Singer while working as a secret and undercover informant for the U.S. Attorney's Office and FBI.

While the government, of course, possesses the information necessary to conduct the *Brady*

3

analysis, it has not yet done so by the protocol mandated by the Supreme Court where prosecutors not law enforcement agents make *Brady* decisions. Instead, it has relied on agents' classifications of calls as "non-pertinent" to conclude that they axiomatically do not contain *Brady* material. This practice is in significant tension with *Kyles*'s directive that prosecutors have "a duty to **learn** of any favorable evidence known to the others acting on the government's behalf in the case." 514 U.S. at 437 (emphasis added). It is the government's duty to ensure that exculpatory evidence is provided to the defendants, and that duty may not be simply passed off to investigating agents. That is especially so in the present case, which has included three superseding indictments reflecting what one district judge has described as the government's "evolving understanding" of its own prosecution theories. *See United States v. Bizzack*, No. 19-CR-10222, Dkt. 34, Sent. Tr. at 46 (Oct. 30, 2019) (Woodlock, J.) ("[T]he government has this evolving understanding of what can be charged and what will be charged, how it will be charged and how this question will be teed up."); *see also id.* at 39, 42, 51.

The mere fact that the consensual recordings were made while Singer was cooperating with the government strongly suggests that the communications are exculpatory in nature. Indeed, the defense respectfully submits that any and all such communications have the potential to demonstrate Singer's bias and interest in favor of furthering the government's investigation. *See United States v. Snell*, 899 F. Supp. 17, 23 (D. Mass. 1995) (requiring production of "evidence of bias or prejudice on the part of government witnesses"). They are also likely to include evidence of Singer's intentional attempts to impede the investigation, his attempts to broaden his "legitimate" business interests while he is cooperating indicating a subjective belief that he will not be incarcerated, and false statements

to prospective new clients inflating his credentials and the scope and size of his businesses.[3]

   III.   *Title III Intercepts*

Unlike for the consensual recordings, the government has provided logs containing at least some basic information regarding Title III intercepts deemed "non-pertinent." The logs include phone numbers, sometimes (but not always) participant names, dates and times, and length of calls. The logs also provide brief synopses of some, but not all, of the "non-pertinent" and non-minimized Title III intercepts. The Title III logs, however, provide inadequate and inconsistent detail to comply with *Brady* (and only run through October 1, 2018, the end of a series of four Title III interceptions).

In many instances, the mere presence or absence of a particular communication by Singer will be exculpatory and material to the defense by exposing specific lies told to both defendants and uncharged clients of his business. Numerous disclosed audios make reference to prior conversations Singer claims to have had with Deans of universities, coaches, prominent business people, athletes, or other celebrities during the time period of the Title III interceptions. Singer appears to have used such allusions to recognizable, well-respected people as a means of fostering trust with his clients and boosting his perceived legitimacy. For example, on July 3, 2018, Singer called Defendant David Sidoo claiming to have recently spoken to "your boy ▬." Although the Title III call logs reflect one call to "▬▬▬," that communication does not, on its face, directly relate to Mr. ▬. The absence of a prior interception involving ▬▬ would, of course, prove that Singer was lying to Mr. Sidoo. Similarly, on June 11, 2018, Singer told Defendant Robert Zangrillo that Singer had personally spoken to USC's crew coach about Mr. Zangrillo's daughter. There is no

---

[3] There are Title III intercepts produced by the government reflecting all of the above.

indicia in the call logs of any such call. Again, if Singer did not, in fact, have such a conversation with the crew coach, as the defendant contends, that fact would significantly undermine his credibility further demonstrating that he was deceiving Mr. Zangrillo about any participation of any rowing coach in any fictionalized attempt to assist his daughter when in fact his daughter was offered to Admissions not as a rower, or as any type of athlete, but as a non-athlete VIP transfer applicant. Singer told other clients about purported conversations with ▮▮▮▮ at ▮▮▮▮ (including telling one client, "▮▮▮▮ called me this morning") (Call No. 4054), claimed to know ▮▮▮▮ (e.g., Call No. 3261), lied about having a "partnership" with ▮▮▮▮ (Call No. 1184), and touted other supposed clients including ▮▮▮▮, ▮▮▮▮, and ▮▮▮▮. To this point, the defense has been unable to identify any contacts between Mr. Singer and the foregoing individuals by reviewing the Title III call logs.

    The full set of audios is needed to prove Singer's pattern of deceit. Information regarding phone numbers, dates and times, and length of calls says little about the contents of those communications. And because the "subscriber" field is blank for some non-pertinent calls, there is no way for the defense to identify the person on the other end of the call. The summaries provided for some "non-pertinent" calls, upon information and belief, were prepared by government agents, who are non-lawyers and are not responsible for ensuring compliance with the government's *Brady* obligations. Further, it is often the absence of a call that when contrasted to Singer's misrepresentations of having calls with publicly known business leaders, athletes, or celebrities constitutes *Brady* material. Without the audios, the defense is being denied the best evidence to demonstrate Singer's mendacity and deceit. Respectfully, the defense has no assurance regarding

6

the agents' experience or training on the legal requirements of *Brady*, or their understanding of the issues in this case, which have evolved substantially over time.

    IV.    *Avoiding Delay*

In the event that the government ultimately decides to call Singer as a witness, all calls related to his testimony will have to be disclosed under the Jencks Act. *See* 18 U.S.C. § 3500(b); *see also* § 3500(e)(2) (defining "statement" to include "a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement"). Such delayed disclosure of the withheld Singer recordings will predictably necessitate a prolonged continuance of the trial date in this matter. Singer, who appears likely to be a principal witness for the government, had thousands of calls recorded pursuant to the Tile III Orders and consensually after he began cooperating. In the event that the heretofore undisclosed calls are later determined to be relevant, those calls will have to be reviewed by the defense, transcribed as necessary, and incorporated into a defense strategy. This task will be impossible to complete in the midst of trial. *See Snell*, 899 F. Supp. at 20 ("Clearly, information obtained on the eve of trial, or worse yet, mid trial, is less effective to an advocate than information obtained earlier."); Joseph Berger, *Mistrial is Declared in Malcolm Smith Corruption Trial*, N.Y. Times (June 17, 2014) ("Judge Kenneth M. Karas of United States District Court [for the Southern District of New York] granted Senator Smith and one of his two co-defendants a mistrial because federal prosecutors had failed to turn over promptly to the defense more than 70 hours of wiretapped conversations, about a third of them in Yiddish, and translating and digesting them [by defense counsel] would require jurors to

7

serve longer than some could manage.").[4]  Moreover, under the statute, if the government "claims that any statement ordered to be produced . . . contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the United States to deliver such statement for the inspection of the court in camera."  18 U.S.C. § 3500(c).  The Court is directed to "excise the portions of such statement which do not relate to the subject matter of the testimony of the witness."  *Id.*  This process too will take time and result in significant delay if deferred until the eve of trial.  And even if Singer ultimately is not called as a witness, his credibility remains of importance:  Fed. R. Evid. 806 permits the impeachment of an out of court declarant.  Singer's intercepted communications will unquestionably be a major part of the government prosecution and any decision not to call him will not therefore obviate the government's exculpatory evidence obligations.

For the foregoing reasons, the Defendants respectfully request that this Honorable Court Order the government to produce all of the non-disclosed Title III and consensually recorded audios and text messages.

## COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

Undersigned counsel conferred with counsel for the government and the government opposes the defendants' requested relief.

---

[4] The Court's Order in *Smith* simply granted a mistrial "for the reasons stated on the record." *United States v. Smith*, No. 13-CR-297, Dkt. 279 (S.D.N.Y. June 26, 2014).  The news report cited above, however, accurately attributes the decision to the government's delay in producing recorded conversations involving a cooperating witness.

Respectfully Submitted,
DAVID SIDOO
By His Attorneys,

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

**/s/ David Z. Chesnoff**
David Z. Chesnoff, Esq.
Chesnoff & Schonfeld
520 S. 4th Street
Las Vegas, NV 89101
(702) 384-5563
dzchesnoff@cslawoffice.net

**/s/ Richard A. Schonfeld**
Richard A. Schonfeld, Esq.
Chesnoff & Schonfeld
520 South Fourth Street
Las Vegas, NV 89101
(702) 384-5563
rschonfeld@cslawoffice.net


ROBERT ZANGRILLO
By His Attorneys,

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

**s/ Matthew L. Schwartz**

9

Matthew L. Schwartz, Esq.
Boies Schiller Flexner
55 Hudson Yards, 20th Floor
New York, NY 10001
(212) 303-3646
mlschwartz@bsfllp.com

**/s/ Nicholas C. Theodorou**
Nicholas C. Theodorou, Esq.
Foley Hoag LLP
155 Seaport Boulevard
Seaport World Trade Center West
Boston, MA 02210
(617) 832-1163
ntheodorou@foleyhoag.com

JOHN WILSON
By His Attorneys,

**/s/ Michael Kendall**
Michael Kendall, Esq.
Yakov Malkiel, Esq.
White & Case, LLP
75 State Street
Boston, MA 02109
(617) 939-9310
michael.kendall@whitecase.com

HOMAYOUN ZADEH
By His Attorney,

**/s/ Tracy A. Miner**
Tracy A. Miner, Esq.
Miner Orkand Siddall LLP
470 Atlantic Ave, 4th Floor
Boston, MA 02210
(617) 273-8421
tminer@mosllp.com

DIANE BLAKE
By Her Attorney,

**/s/ David E. Meier**
David E. Meier, Esq.
Todd & Weld
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
dmeier@toddweld.com


TODD BLAKE
By His Attorney,

**/s/ David E. Meier**
David E. Meier, Esq.
Todd & Weld
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
dmeier@toddweld.com


GAMAL ABDELAZIZ
By His Attorneys,

**/s/ Brian T. Kelly**
Brian T. Kelly, Esq.
Joshua C.H. Sharp, Esq.
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110
(617) 345-1000
bkelly@nixonpeabody.com


MARCI PALATELLA
By Her Attorney,

**/s/ Michael K. Loucks**
Michael K. Loucks, Esq.

                                         Skadden, Arps, Slate, Meagher & Flom LLP
                                         500 Boylston Street
                                         Boston, MA 02116
                                         (617) 573-4840
                                         michael.loucks@skadden.com

Dated: December 9, 2019

## **CERTIFICATE OF SERVICE**

      I, Martin G. Weinberg, hereby certify that on this date, December 9, 2019, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants.

                                         **/s/ Martin G. Weinberg**
                                         Martin G. Weinberg, Esq.