## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID SIDOO et al.,<br><br>Defendants. | No. 1:19-cr-10080-NMG<br><br>Leave to file granted on<br>December 23, 2019 |

### REPLY BRIEF IN SUPPORT OF DEFENDANT JOHN WILSON'S SUPPLEMENTAL MOTION TO COMPEL PRODUCTION OF EXCULPATORY EVIDENCE

### I.    INTRODUCTION

*Brady* and the Local Rules impose a solemn, self-enforcing obligation on the government to disclose exculpatory evidence within predefined deadlines. Prosecutors in this District have recently devised a strategy for sidestepping their obligations: stating in "automatic discovery" letters that they are "aware of no information or materials" that are exculpatory within the meaning of the Rules; stonewalling defendants' specific requests for exculpatory evidence; requiring those defendants to file motions to compel; subsequently disclosing certain exculpatory information without conceding their obligation to have done so; and asking the Court to deem the defendants' motions moot. Through this series of maneuvers, the prosecutors arrogate to the government the discretion over the scope and timing of its disclosures, deprive defendants of protections to which they are entitled, and elude judicial oversight.

In the current case, automatic discovery of exculpatory evidence was due by May 30, 2019. The government declared at that time that it possessed no exculpatory evidence subject to disclosure. *See* ECF No. 693-1, at 8. The government then rejected the defendants' specific, enumerated *Brady* requests, reciting platitudes and refusing to identify which requests were actually disputed. *See* ECF Nos. 693-2, 693-3, 693-4, 693-5. Stymied, the defendants filed a

series of five motions to compel.  In its oppositions, the government characterized the

defendants' requests as "meritless" and "speculation," and claimed to have "scrupulously

adhered to its discovery obligations."  Opposition 1, 26, 34, 35, 37.  As discussed in more detail

below, the government's Opposition countered the defendants' measured *Brady* requests with

farfetched theories, artful phrasing, and non-sequiturs.

On January 28, 2020—after the original deadline for the defendants' reply briefs—the

government delivered to the defendants a six-page, single-spaced letter containing edited

snippets from FBI 302 reports.  The letter's disclosures are obviously exculpatory.  The letter

discloses, for example:

- That, according to Wilson's son's high school water polo coach, Wilson's son "was recruited by various colleges" to play water polo, and the coach specifically "talked to coaches at USC about Wilson's son."

- That Wilson's son's teammate "was not surprised that Wilson's son was recruited to USC's water polo team."

- That Singer had no recollection of Wilson knowing "of the inaccuracies in his son's athletic profile."

- And that Steven Masera, the employee of Rick Singer who sent allegedly fraudulent invoices to Wilson's company, "dealt with John Wilson's assistant . . . and does not remember talking to Wilson directly."

The government offers no explanation for its failure to disclosure such information until eight

months after the automatic-discovery deadline.  The government does not suggest that it has only

recently obtained the information contained in its letter.  It neither admits nor denies that that

information is exculpatory.

Ordinarily, courts grant substantial deference to the government's efforts to discharge its

discovery obligations.  But the government has demonstrated that that ordinary deference would

be misplaced here.  The prosecutors are unable or unwilling to abide by the Local Rules' timing

requirements.  They are unable or unwilling to determine with reasonable fairness whether information in their possession is exculpatory.

To put an end to the government's continuing violation of the defendants' rights, the Court should (a) grant the Motion; (b) find that the specific categories of evidence the defendants seek are exculpatory and discoverable; (c) require the government to produce the complete FBI 302 reports relating to this case; and (d) impose a specific deadline in the near future for the completion of that production.

## II.    THE SUPPLEMENTAL REQUESTS

The following subsections address the specific categories of evidence that Wilson's supplemental *Brady* Motion (ECF No. 699) requests, and the government's responses to those requests in its Opposition (ECF No. 736).[1]  Generally speaking, the Opposition relies on the following diversionary tactics:

- The Opposition focuses heavily on the government's prior production of various documents.  But the Constitution requires production of 100% of the *Brady* material in the government's possession, including exculpatory information the government knows from interviews of witnesses (in this case, particularly Singer). The Constitution trumps the Jencks Act, not the reverse.

- The government has adopted artful definitions and farfetched legal theories to claim that the defendants' charitable gifts are bribes.  Relying on that premise, the government affects the attitude that such gifts are indefensible under any scenario, ostensibly relieving the government of the obligation to produce evidence that supports a central, commonsensical, and legally relevant defense.

- Singer, the government's key witness, and his family are enmeshed in criminal activity that ranges far beyond the scope of this case.  Yet the Government refuses

---

[1] While the Motion was already pending, the government obtained its most recent indictment, which includes a tax charge against Wilson.  Wilson has therefore posed specific tax-related *Brady* requests to the government.  Wilson assumes that it would be most efficient from the Court's perspective to adjudicate all of the *Brady* motions in the same series of hearings. Accordingly, if the parties cannot resolve Wilson's tax-related *Brady* requests, Wilson proposes to further supplement the Motion with information and argument relating to those requests.

to disclose the full universe of promises, rewards, and inducements it has given Singer, including the criminal charges that the government is not pursuing and the forfeitable assets it is allowing Singer to keep.

The Court should reject these tactics, as discussed further below, and grant the relief described *supra*.

### A.       Singer's Descriptions of His Practices to Parents

The charges that the government has brought require proof that the defendants acted "with bad purpose, either to disobey or disregard the law," and in a "wrongful, immoral, depraved, or evil" manner.  1st Cir. Pattern Jury Instructions § 4.18.134; *Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005).  The Motion seeks evidence that Singer assured his clients that their donations were lawful and were welcomed by the recipient institutions.  That evidence directly negates the existence of the required element of bad intent.  The Motion presents discovery documents showing that Singer offered his clients precisely such assurances, such as his statement to Wilson that the President of Harvard had authorized Singer's "side door" program and would personally help to implement it.

The government's excuses for withholding such plainly exculpatory evidence are illusory.  The government describes various pieces of evidence it *has* selectively produced (Opposition 35-36), ignoring the fact that its obligations encompass *all* exculpatory evidence in its possession.  The government claims that it has not withheld "documentary evidence" based on disagreements about what is exculpatory in this case (Opposition 3-4), obscuring the fact that it is withholding exculpatory non-documentary information (i.e., witness interviews) based on the very same reason.[2]  The government claims that Singer's statements to any parents other than

---

[2] As noted *supra*, evidence that is exculpatory within the meaning of *Brady* and the Local Rules must be produced in accordance with those authorities, even if they also qualify as "witness statements" under the Jencks Act.  *See United States v. O'Brien*, No. 12-cr-40026, 2013

Wilson are not exculpatory or material (Opposition 36)—but it is the government that has chosen to accuse the defendants of a "nationwide" conspiracy,[3] allegedly encompassing all of the parents charged in this courthouse and many other uncharged parents. Any exculpatory evidence as to any alleged coconspirator is thus exculpatory to Wilson, because it helps to undermine the overall conspiracy theory. Lastly, while the Motion, in plain English, seeks information about "Singer's representations *to clients* about the legitimacy of 'side door' donations" (Motion 4), the government affects miscomprehension, stating unresponsively that "Singer has never advised *investigators* that the 'side door' was legitimate" (Opposition 35). Information regarding Singer's representations to clients about the legitimacy of "side door" donations are exculpatory and discoverable.

## B.     Singer's Referral Sources

The government offers similar non-sequiturs in response to the Motion's request for evidence regarding Singer's efforts to foster referral sources who would support his appearance of legitimacy. The government says that Wilson "knows how he was introduced to Singer" (Opposition 36)—which is not the information the Motion requests. The government says it has produced "voluminous" documents (*id.* at 36-37), as if doing so discharges the government's obligation regarding any additional evidence. And the government promises future disclosures (*id.* at 37)—presumably including its letter of January 28—but the Local Rules required

---

U.S. Dist. LEXIS 34774, at *17 (D. Mass. Mar. 13, 2013); *United States v. Owens*, 933 F. Supp. 76, 84 (D. Mass. 1996); *United States v. Snell*, 899 F. Supp. 17, 21 (D. Mass. 1995).

[3] *See, e.g.*, Press Release, U.S. Att'y's Office, Dist. of Mass., Arrests Made in Nationwide College Admissions Scam, https://www.justice.gov/usao-ma/pr/arrests-made-nationwide-college-admissions-scam-alleged-exam-cheating-athletic (Mar. 12, 2019).

discovery of exculpatory evidence many months ago.  Evidence of Singer's arrangements with his referral sources is exculpatory and discoverable.

### C.     Colleges' Attitudes Towards Fundraising from Applicants

Evidence already produced, including evidence that the Court has reviewed, demonstrates that USC unapologetically granted preferential treatment in the admissions process to its donors and potential donors.  This approach was both legal and consistent with the practices of practically all organizations whose missions depend on fundraising.  Indeed, the government has recently disclosed that "Compliance sat in on all meetings" relating to development at USC "because they needed to be looped in."

With respect to Wilson's donation to USC, the government now concedes that Wilson donated money only toward a USC bank account (plus money that Wilson intended for USC but that Singer stole for himself).  USC acknowledged its thanks for that gift with a letter from its charitable Trojan Fund.  Wilson's payment was a donation by all commonsensical and precedent-based definitions of that word.[4]  Evidence showing that USC's ordinary practices and compliance-department guidance would give Wilson's son an advantage in the admissions process plainly contradicts the government's theory that USC was defrauded into admitting Wilson's son; or that any inaccurate disclosure to USC relating to Wilson's donation or his son's application were "material."  Such evidence also may shed light on the states of mind of Wilson

---

[4] There is apparently no set of facts that would dissuade the government from calling this payment—to the benefit of USC's water polo team (Opposition 37)—a "bribe."  Indeed, after four earlier indictments, the government recently contrived the theory that gifts to "university accounts" are bribes if the gifts were solicited by an employee who "exercised discretion" over those accounts.  4th Super. Ind. ¶¶ 65, 280.   The government's new theory would make every donation to the Missionaries of Charity a "bribe" if Mother Theresa personally supported the donation.  The government's ability to persuade a grand jury to indict based on this theory does not relax the government's Constitutional obligations.

and other donors, to the extent that USC's actual attitudes were reflected in widespread public perceptions of the university and in Singer's spiel.  Similarly, the government's theory that USC was defrauded would be undermined by any evidence that Athletic Department personnel (such as Pat Haden, Ron Orr, Alex Garfio, and others—all of whom the government presumably interviewed) were aware of Wilson's donation and his son's application, or of the role of donations in admissions more generally.

Instead of acknowledging its obvious obligation to produce evidence responsive to this request, the government's Opposition obfuscates.  The government cites its production of "e-mails, audio recordings, financial records, [and] other documents" (Opposition 38), as if that production excuses the government from disclosing responsive information from additional sources, including witness interviews.  The government relies on USC's assertion that the school collected information about donors "so that they could be tracked" (Opposition 38)—an assertion that the Court has already rejected—to draw an imaginary distinction between the evidence the defendants seek and the information the government possesses.  The Court should reject these tactics.  Evidence relating to the role of potential donations in the colleges' admission process is exculpatory and discoverable.

### D.    Singer's Concealment of Misrepresentations to Colleges

The government's case relies heavily on alleged misstatements in applicants' application materials.  But the government now indicates that it has learned from Singer that he and his staff introduced falsehoods into application materials without their clients' knowledge.  Opposition 38.  The government also now concedes that Singer does not recall discussing any inaccuracies in Wilson's son's application materials with Wilson.

Again, instead of acknowledging that it was required to produce such information months ago, the government:  irrelevantly lists information that it *has* produced; denies the significance

of information about anyone other than the specific defendant making a request (notwithstanding the government's own allegation of a single, overarching conspiracy); and promises to make additional disclosures. Opposition 38. None of these tactics discharges the government's obligations. Information about Singer's concealment of misstatements about any and all applicants is exculpatory and discoverable.

### E.     Singer's Embezzlement from His Clients

Discovery evidence proves that Singer embezzled donation money that Wilson and other clients provided to Singer and his foundation—following Singer's instructions—for delivery as donations to USC. That evidence obviously supports the inference that the embezzled parents were Singer's marks, not his compatriots.

Once again, whether the government has already selectively produced certain responsive pieces of evidence makes no difference. And the point obviously is not, as the government knows, whether "Singer's co-conspirators understood all the details of his actions" (Opposition 39). Rather, the defendants are entitled to the evidence in government's possession that tends to *disprove* the allegation that the defendants ever *were* co-conspirators. Complete information regarding Singer's thefts of intended donations is exculpatory and discoverable. Indeed, the fact that Singer was not separately charged with these numerous thefts over the years is another promise, reward, and inducement that the government must disclose.

### F.     Singer's Obstruction and Government Instructions

The government resists the Motion's request for evidence about Singer's cooperation and obstruction by citing Judge Gorton's statement that "instructions are not discoverable *by virtue of their status as instructions*." *United States v. Prange*, No. 11-cr-10415-NMG, 2012 U.S. Dist. LEXIS 111045, at *5 (D. Mass. Aug. 7, 2012) (emphasis added). The defendants do not suggest otherwise. Rather, the Motion is consistent with the remainder of the same ruling: "[T]he

Government is obligated to produce, at the appropriate times, those portions of the instructions, if any, that constitute *Brady* or *Giglio* material, especially in the circumstance (if such circumstance exists) in which the cooperator failed to follow his/her given instructions." *Id.*

In this case, discovery and Singer's own in-court statements demonstrate that his cooperation produced evidence against innocent individuals, who in Singer's words "ha[d]n't done anything wrong." *United States v. Singer*, No. 19-cr-10078, ECF No. 24, at 29 (statement of Rick Singer) ("I went into the home and told the dad . . . you haven't done anything wrong yet, so please don't say anything that would be harmful to you guys because you haven't done anything . . . ."). The government's instructions relating to that objective "constitute *Brady* or *Giglio* material." *Prange*, *supra*. Moreover, the instructions are discoverable particularly given that "the cooperator failed to follow his/her given instructions." *Id.* The government's instructions to Singer, its efforts to script arguably incriminating conversations, and Singer's partial non-compliance with the government's requests are all exculpatory and discoverable.

### G.      Promises, Rewards, and Inducements

The government's refusal to produce promises, rewards, and inducements rests on two disingenuous assertions. To begin with, the government states that it has "made no decisions about which witnesses it will call as part of its case-in-chief" (Opposition 41). The notion that the government has not decided whether to call Singer in any of the indictments in this case is simply not credible—particularly where the government has attacked the defendants publicly for not yet deciding on the documents to be used in their cases-in-chief. Local Rule 116.2(b)(1)(C) requires the government to disclose such inducements for all witnesses it "anticipates" calling. To allow the government to play coy until the time of trial about whether it will call such central witnesses would gut this mainstay of the *Brady* obligation.

The government also implies that its disclosures of promises, rewards, and inducements to Singer may already be complete, because "Singer has, in fact, pled guilty to money laundering and tax fraud."  Opposition 40.  It is hard to interpret this statement as anything but an effort to obscure the facts.  Singer only pled guilty to tax and money-laundering charges related to the same college-admissions-related behavior that the government is pursuing in this docket.  *See Singer*, No. 19-cr-10078, ECF No. 1, at 13-14, 19.  The discovery evidence, on the other hand, shows that Singer engaged in separate tax-fraud and money-laundering activities, relating to his brother's gambling-related business and his family members'[5] compensation through sham appearances on Singer's payrolls.  The defendants are entitled to documents and information about any promises, rewards, and inducements the government has made regarding the consequences of those crimes for either Singer or his family members.  Failure to disclose that information would be reversible error.  *See LaCaze v. La. Corr. Inst. for Women*, 645 F.3d 728, 731-33 (5th Cir. 2011) (prosecution violated *Brady*, requiring habeas relief, by failing to disclose "that it had assured [a witness] that his son would not be prosecuted"); *Harris v. Lafler*, 553 F.3d 1028 (6th Cir. 2009) (same where prosecution did not disclose a promise to a witness "that his girlfriend would be released if [police] were satisfied with his statement").

For essentially the same reasons, the government's disclosure of Singer's publicly-filed plea agreement is not sufficient.  *Singer*, No. 19-cr-10078, ECF No. 2.  That agreement concerns the offenses with which the government has charged Singer, and the assets he has agreed to forfeit.  It says nothing about the offenses that the government has decided not to prosecute, or about any assets that the government has agreed to refrain from seizing.  For instance, although

---

[5] The Motion misidentified Singer's sister as his father's caretaker.  *See* Motion Ex. 13.

the government required Singer to agree that he would deliver, upon request, a sworn disclosure of all current assets, *id.* at 8, the government has neither produced any such disclosure nor disclosed that it has decided it does not want one.  The defendants are entitled to know about the government's promises, rewards, and inducements in connection with Singer's uncharged offenses and unforfeited assets.  *See Ouimette v. Moran*, 942 F.2d 1, 6 (1st Cir. 1991) (affirming habeas relief under *Brady* where the prosecution failed to disclose, among other things, unprosecuted charges against a witness that "[t]he prosecutor agreed to help the witness dispose of").

If the Government takes the position that it has not yet told Singer whether he and his family members will be charged for these other crimes, and whether they will have to forfeit assets related to such crimes, then it should say so directly.  The failure to take action is a promise, reward, and inducement.  *See id.*

### III.   CONCLUSION

For the foregoing reasons and those described in the Motion, the Court should grant the Motion, find that the specific categories of evidence the defendants seek are exculpatory and discoverable, require the government to produce the complete FBI 302 reports relating to this case, and impose a specific deadline in the near future for the completion of that production.[6]

---

[6] As they did with respect to the original Motion, defendants David Sidoo, Gregory Colburn, Amy Colburn, Gamal Abdelaziz, Diane Blake, Todd Blake, Joey Chen, Mossimo Giannulli, Elisabeth Kimmel, Lori Loughlin, Homayoun Zadeh, Robert Zangrillo, and Marci Palatella join in this Reply.  The government opposes the Motion, in part, on the basis that it has reviewed and produced certain evidence regarding Wilson.  *See, e.g.*, Opposition 35 ("The government has also reviewed its reports of interviews with Singer for any statement suggesting that he advised Wilson that this scheme was legitimate"); *id.* at 36 ("[T]he government has produced Singer's actual descriptions of the side door to Wilson.").  In doing so, the government ignores the fact that the Motion was joined by thirteen additional defendants and demands the production of exculpatory evidence as to all defendants.

Respectfully submitted:

John Wilson,

By his counsel,

/s/ Michael Kendall
Michael Kendall (BBO # 544866)        Andrew E. Tomback (pro hac vice)
Yakov Malkiel (BBO # 689137)          WHITE & CASE LLP
WHITE & CASE LLP                      1221 Avenue of the Americas
75 State Street                       New York, NY 10020
Boston, MA 02109-1814                 Telephone: (212) 819-8428
Telephone: (617) 979-9310             andrew.tomback@whitecase.com
michael.kendall@whitecase.com
yakov.malkiel@whitecase.com

And the defendants listed *supra* note 6, by their respective counsel.

## CERTIFICATE OF SERVICE

I hereby certify that the above document is being filed on the date appearing in the header through the ECF system, which will send true copies to the attorneys of record.

/s/ Michael Kendall
Michael Kendall