UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | No. 19-CR-10080-NMG |
| DAVID SIDOO, *et al.*, | ) ) ) | |
| Defendants | ) ) | |

**GOVERNMENT'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION FOR PRODUCTION OF PURPORTEDLY EXCULPATORY EVIDENCE REGARDING WIRETAP AND CONSENSUAL RECORDINGS**

The government respectfully files this sur-reply in opposition to the defendants' motion to compel the production of non-pertinent Title III interceptions and consensual recordings. The defendants' reply effectively concedes the government's point: under the cloak of a *Brady* motion, they seek to force the early disclosure of classic impeachment information. They are not entitled to such disclosures at this time. While the government may, in the interests of efficiency, disclose impeachment materials earlier than is required under the Local Rules, the defendants' request for Court intervention is premature and should be denied.

**I.   The Defendants Are on a Fishing Expedition for Impeachment Material.**

Although the defendants claim to seek "exculpatory evidence critical to their trial defenses," Dkt. 773 at 1, their reply makes clear that they are in fact requesting all non-minimized Title III interceptions and all consensual recordings and text messages in the hope of identifying anything they can use at trial to impeach Rick Singer. Even in their reply, the defendants fail to identify a *single* call or text message that they believe may be exculpatory. Instead, they take the extreme position that they are entitled to all non-minimized Title III interceptions because "the mere fact that [they] were not minimized belies any suggestion that they are irrelevant," and to all

consensual interceptions because "the fact that [they] were made while Singer was cooperating with the government gives rise to a significant possibility that [they] could be used to establish . . . bias." *Id.* at 3–4. Those contentions are untrue and, frankly, absurd.

<u>First</u>, the fact that a Title III interception was not minimized does not mean that the communication is relevant, let alone exculpatory and immediately discoverable pursuant to *Brady*. For example, calls under two minutes in duration are typically not minimized because it often takes at least that long for monitoring agents to determine the identity of the callers and the nature of the call. *See United States v. Gordon*, 871 F.3d 35, 49 (1st Cir. 2017) ("[T]he percentage of non-pertinent calls that were not minimized . . . tell[s] us very little because many calls presumably end before the listener can determine their pertinence. Courts therefore tend to look at the relative percentage of calls minimized out of those calls lasting more than two minutes."). There are numerous examples in the line sheets, all of which have been produced to the defendants, of relatively short calls that were not minimized but are clearly irrelevant and not exculpatory. *See, e.g.,* Session 25 (49 second voicemail to a business was not minimized); Session 53 (one minute call to an insurance adjuster was not minimized); Session 370 (one minute and 18 second call to LifeLock was not minimized).

Indeed, because the defendants have the line sheets summarizing the content of *all* Title III calls – minimized and non-minimized – their failure to point to specific calls that they believe contain exculpatory evidence is fatal to this prong of their motion. Perhaps recognizing as much, the defendants cite as an "added benefit" of disclosure the notion that it would allow them to determine whether Title III minimization requirements were satisfied. Dkt. 773 at 3. But this, too, is ascertainable from the line sheets, as the monitoring agents clearly marked when minimization occurred. The defendants do not, because they cannot, explain why the line sheets are inadequate

for them to conduct a minimization analysis. *See, e.g., United States v. Nash*, No. 2:10-CR-136-DBH, 2011 WL 1496521, at *13 (D. Me. Apr. 15, 2011), *report and recommendation adopted*, No. 2:10-CR-136-DBH, 2011 WL 2413480 (D. Me. June 10, 2011) (noting that the defendant, who had received line sheets and minimization logs "ha[d] been afforded ample opportunity to make his case in favor of the holding of an evidentiary hearing with respect to minimization . . . [but] ha[d] fallen short of doing so"). As the government has made clear, to the extent the defendants review the line sheets and identify specific communications that they believe contain exculpatory information, the government will address such requests on a case-by-case basis.

Second, the proposition that the consensual recordings are discoverable because they were made while Singer was cooperating – and therefore *could* establish bias – is nonsensical. Under that theory, *any* evidence generated by *any* cooperating witness is *Brady*. That is not the law. *See United States v. Prochilo*, 629 F.3d 264, 269 (1st Cir. 2011) (overruling district court's order that government disclose "all cooperator-related material in its possession"). Unsurprisingly, the defendants do not cite a single case to support their contention, and they are not entitled to the disclosure of all consensual recordings simply because they hope to find something to demonstrate pro-government bias on the part of a possible witness. To the extent the defendants are concerned about "the risks of entrapment," Dkt. 773 at 4, the government has produced *every* substantive call between Singer and the defendants, and *every* call between Singer and coaches or parents that includes a discussion of college admissions or the crimes charged. If they haven't found evidence of entrapment in those materials, Singer's calls to his travel agent won't be of much help.

To the extent the defendants seek communications in which Singer was untruthful, the government is, as noted, re-reviewing all non-pertinent calls and text messages. At the same time,

the prospect that Singer may have been untruthful in certain calls with family members or women he dated regarding his personal history, his business/business contacts, or his charitable work does not entitle the defendants to *all* of his personal calls. The government will identify – out of the approximately 40-plus hours of non-pertinent calls and hundreds of text messages between Singer and members of his family or women he dated – any communications that are discoverable, and will produce them as required by the Local Rules.[1]

### II.   The Defendants Are Not Entitled to Early Disclosure of The Classic 21-Day Material They Seek.

The defendants acknowledge that they seek all non-pertinent recordings based on the assumption that they will include evidence of bias and/or evidence useful for impeachment purposes. They cite Local Rule 116.2(a)(3) for the proposition that such evidence is exculpatory. *See* Dkt. 773 at 2. But as noted, part (b)(2) of the same rule provides that such evidence is to be produced no later than 21 days before trial.

The defendants fail to provide any support for their contention that the materials they seek fall into more than just the 21-day category. Instead, they simply assert – without more – that the recordings are likely to reflect promises, rewards, or inducements the government offered Singer. But that is little more than rank speculation, and it is untrue. Likewise, their contention that evidence of Singer's bias would tend to directly negate their guilt by suggesting that he might have deceived them, or manufactured evidence against them, is speculation piled on top of speculation. And it is also untrue. Indeed, under this theory, all evidence of bias would be immediately

---

[1] With respect to the communications cited on page 5 of the defendants' reply brief – which focus on untruths Singer purportedly told to women he dated – those communications are classic impeachment material which, under the rules of this Court, are to be produced no later than 21 days prior to trial.

discoverable as *Brady* pursuant to Local Rule 116.2(b)(1), rendering the Rule's bifurcated framework a nullity.

Recognizing the weakness of their argument, the defendants fall back on the Court's discretion to set an earlier deadline for the production of 21-day material. But there is no need to set an earlier deadline here. No trial date has been set in this case, and the government recently proposed that the first of any trials take place in October 2020 – eight months from now. Indeed, all but two of the defendants have refused to provide *any* Rule 16 reciprocal discovery, which is mandated by statute, for this very reason. *See* January 3, 2020 Letter on Behalf of Defendant Zangrillo, attached hereto as Exhibit A ("given that there is no trial date set in this matter, the defense does not believe the government will suffer prejudice as a result of any delay in Mr. Zangrillo's Rule 16 disclosures").[2] In short, the defendants claim that *they* will prejudiced by the government's production of 21-day material in compliance with the Local Rules, while simultaneously asserting that the government will *not* be prejudiced by their own refusal to produce Rule 16 materials as required. They cannot have it both ways.

## Conclusion

The government may deem it appropriate, at a future date, to produce impeachment material before it is required to do so – *i.e.*, in advance of the 21 days required under the Local Rules – in order to avoid any unnecessary delays. The government is confident that the amply staffed and resourced defense teams in this case will have sufficient time to review any such materials prior to trial. But there is no basis for the Court to intervene by ordering early disclosure over the government's objection – much less to do so now, before a trial date has been set, eight

---

[2] Of the two who have made productions, one produced a single page, and the other is simply turning over materials subpoenaed from USC.

months before the earliest trial date the government has proposed, and before the defendants have even produced Rule 16 discovery.

For those reasons, and the reasons set forth in the government's initial opposition, the defendants' motion should be denied.

                                        Respectfully submitted,

                                        ANDREW E. LELLING
                                        UNITED STATES ATTORNEY

Dated:  February 4, 2020          By:    */s/ Leslie A. Wright*
                                                    ERIC S. ROSEN
                                                    JUSTIN D. O'CONNELL
                                                    LESLIE A. WRIGHT
                                                    KRISTEN A. KEARNEY
                                                    Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF).

Dated:  February 4, 2020          By:    */s/ Leslie A. Wright*
                                                    LESLIE A. WRIGHT
                                                    Assistant United States Attorney