# EXHIBIT G

**From:** "Rosen, Eric (USAMA)" <Eric.Rosen@usdoj.gov>
**Sent:** Jan 28, 2020 6:02 PM
**To:** "McManus, Dylan (USAMA) [Contractor] 3" <Dylan.McManus2@usdoj.gov>; "Allen J. Ruby" <allen.ruby@skadden.com>; "Andrew E. Tomback" <andrew.tomback@whitecase.com>; "Brian T. Kelly" <bkelly@nixonpeabody.com>; "David E. Meier" <dmeier@toddweld.com>; "David S. Schumacher" <DSchumacher@health-law.com>; "David Z. Chesnoff" <dzchesnoff@cslawoffice.net>; "Eoin P. Beirne" <ebeirne@mintz.com>; George Vien <gwv@dcglaw.com>; "Jack P. DiCanio" <jack.dicanio@skadden.com>; "Jack W. Pirozzolo" <jpirozzolo@sidley.com>; "John C. Hueston" <jhueston@hueston.com>; "Jordan R.C. Kearney" <JKearney@health-law.com>; Josh Ruby <jnr@dcglaw.com>; "Joshua C.H. Sharp" <jsharp@nixonpeabody.com>; "Mark E. Robinson" <merobinson@mintz.com>; "Martin G. Weinberg" <owlmcb@att.net>; "Matthew L. Schwartz" <mlschwartz@bsfllp.com>; "Megan A. Siddall" <msiddall@mosllp.com>; "Michael K. Loucks" <michael.loucks@skadden.com>; Michael Kendall <michael.kendall@whitecase.com>; "Nicholas C. Theodorou <ntheodorou@foleyhoag.com>; Patric Hooper <phooper@health-law.com>; "Viscounty, Perry (OC-SF)" <PERRY.VISCOUNTY@LW.com>; "R. Robert Popeo" <rrpopeo@mintz.com>; Reuben Camper Cahn <rcahn@kelleranderle.com>; "Richard A. Schonfeld" <rschonfeld@cslawoffice.net>; "Berkowitz, Sean (CH)" <Sean.Berkowitz@lw.com>; "Seth B. Orkand" <sorkand@mosllp.com>; "Stephen H. Sutro" <SHSutro@duanemorris.com>; "Tracy A. Miner" <tminer@mosllp.com>; "Trach, William (BN)" <William.Trach@lw.com>; Yakov Malkiel <yakov.malkiel@whitecase.com>; "Blanco, Allison (OC)" <Allison.Blanco@lw.com>
**Cc:** "O'Connell, Justin (USAMA)" <Justin.O'Connell@usdoj.gov>; "Wright, Leslie (USAMA)" <Leslie.Wright@usdoj.gov>; "Kearney, Kristen (USAMA)" <Kristen.Kearney@usdoj.gov>
**Subject:** RE: 19-CR-10080-NMG Discovery Production

Please see attached. Eric

Eric S. Rosen
Assistant United States Attorney
District of Massachusetts
Tel: +1 617 748 3412
E-Mail: eric.rosen@usdoj.gov



**U.S. Department of Justice**

*Andrew E. Lelling*
*United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*                    *John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

January 27, 2020

**VIA E-MAIL**
Counsel of Record

      Re:    *United States v. David Sidoo, et al.*
             Case No. 19-cr-10080-NMG

Dear Counsel:

      We write to supplement our earlier correspondence based on our continued review of FBI 302 interview reports.

-              , former Assistant Director of Development and Director of Development at USC, has advised the government, in sum and in substance, that it was atypical to have anonymous donors for athletics, but that it happened one or two times. Compliance sat in on all meetings because they needed to be looped in.



- Kirk Brennan, Director of Undergraduate Admission at USC, has advised the government, in sum and in substance, that the USC crew team recruits transfer students.

- Al Checchio, Senior Vice President of Advancement at USC, has advised the government, in sum and in substance, that the "VIP list" is not a guarantee of admission, but might help if there were a "tie" between applicants.





- Erica Muhl, Dean of the Iovine & Young Academy (IYA) at USC, has advised the government, in sum and in substance, that she did not talk to William McGlashan about joining the board of IYA, but had a general conversation with Paul Wachter about McGlashan writing checks. According to Muhl, Wachter told her that McGlashan had the resources to donate, but did not push it. Muhl reported that Jimmy Iovine recommended McGlashan's son and indicated that William McGlashan "could be helpful," but Muhl does not know if he meant about his project or because he was wealthy.



- Rick Singer has advised the government, in sum and in substance, that:

  o Singer's standard pricing to get a student accepted to USC through the side was $250,000 – with $50,000 paid to Heinel/USC and $200,000 paid to KWF. The families that do the side door believe their children are getting accepted through a sport, although they typically do not know that Heinel is involved until the time of the first payment, which went to Heinel. The families then typically believe that Heinel instructs Singer on where to send the remaining $200,000, with the families believing that all the money is going to someone as part of the admission deal.

3



With respect to the side door, Mossimo Giannulli was "running the show" but Lori Loughlin "got on it" because Mossimo Giannulli was not responding. Singer stated that Giannulli and Loughlin thought their payment of $50,000 went directly to USC's program, which as the checks indicate was USC Athletics and the Galen Center gift account. They thought their $200,000 payment went to KWF. Singer told Giannulli and Loughlin in sum and substance that the $250,000 they paid for each of their daughters was paid to get them into USC. Singer did not recall exactly what he said to Giannulli and Loughlin regarding the money. Singer did recall telling the Giannullis that the first $50,000 for each girl went to USC. It was Singer's belief that the Gianullis knew that part of the $200,000 sent to KWF was going to a USC program. They did not specifically discuss the amount of money

4

that would go to a USC program out of the $200,000. The Giannullis understood the money was part of the deal and it had to be paid in order to get the girls into USC.



- █████████, USC's former tennis coach, has advised the government, in sum and in substance, that USC sometimes used third parties to recruit kids, but mostly for international students.

- Sarah Trudell, USC Central Advancement, has advised the government, in sum and in substance, that the purpose of tagging an applicant as a "VIP" was to keep a list of future donors, be responsive to relationships, and share with admissions that these people were important. The VIP list was shared with Kirk Brennan and Tim Brunold. Brennan let Trudell know the status of the students and if they were accepted. Trudell reported that her office was "similar to a concierge service," and sometimes people reached out in hopes of positive outcomes for admission. Trudell added that it was "very standard process" for Mark Benioff to recommend an applicant to Al Checcio, and Checchio would say that Trudell would handle it. Trudell had a conversation with Lynn Miles, Associate Dean of IYA, about the possibility of William McGlashan being a board member and she believed that Erica Muhl met with McGlashan about that possibility.



We are aware of the continuing nature of our discovery obligations, and we will continue to make additional disclosures as required. We reiterate our request for reciprocal Rule 16 discovery.

Sincerely,

ANDREW E. LELLING
United States Attorney


By:      */s Justin D. O'Connell*
        Eric S. Rosen
        Justin D. O'Connell
        Kirsten A. Kearney
        Leslie A. Wright
        Assistant U.S. Attorneys