UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID SIDOO et al.,<br><br>   Defendants | No. 1:19-CR-10080-NMG |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FOR LACK OF VENUE**

The Fourth Superseding Indictment ("FSI") describes a scheme in which Moving Defendants, residing outside of Massachusetts, conspired outside of Massachusetts, with an individual from outside of Massachusetts to obtain admission to universities outside of Massachusetts. For Moving Defendants, the purported crimes have no connection to Massachusetts which could establish venue. Moving Defendants' constitutional rights to have the charges against them tried where their crimes were allegedly committed cannot be brushed aside to accommodate the government's venue preferences. Venue in the District of Massachusetts is improper, and Counts One, Two, and Three must be dismissed for that reason.

Defendants Abdelaziz, Diane Blake, Todd Blake, Chen, Gregory Colburn, Amy Colburn, Giannulli, Kimmel, Loughlin, McGlashan, Palatella, Wilson, Zadeh, and Zangrillo move with respect to Counts One and Three. Defendants Abdelaziz, Diane Blake, Todd Blake, Giannulli, Kimmel, Loughlin, McGlashan, Palatella, Wilson, Zadeh, and Zangrillo move with respect to Count Two.

## Argument

"Venue in a criminal case is not an arcane technicality.  It involves 'matters that touch closely the fair administration of criminal justice and public confidence in it.'"  *United States v. Salinas*, 373 F.3d 161, 162 (1st Cir. 2004).  The Sixth Amendment protects defendants from the unfair administration of justice by guaranteeing the right to trial "by an impartial jury of the State and district wherein the crime shall have been committed."  For "continuing offenses," such as conspiracies, the crime is considered to be committed in, and thus may be prosecuted in, "any district in which [the] offense was begun, continued, or completed."  18 U.S.C. § 3237(a).  Here, the government has alleged crimes that did not begin in, continue in, or end in Massachusetts.  Instead, the government has attempted to create venue in this District by lumping defendants together in a single conspiracy, alleging cherry-picked acts that are unrelated to the conspiracy's objective, and fabricating ties to this District through the unilateral conduct of a government cooperator.  Despite these attempts, the FSI shows that venue in the District of Massachusetts is improper as to Counts One, Two, and Three for the Moving Defendants.

## I.    Count 1: Fraud Conspiracy

 The theory of venue on Count One (the "Fraud Conspiracy") is premised on the government's faulty allegation of a single conspiracy, whereby an act by any defendant in furtherance of the conspiracy would establish venue for all defendants.  Since Defendant Wilson sent money to Massachusetts, there is supposedly venue for the entire Fraud Conspiracy.[1]  However, as explained in Defendants' Motion to Dismiss Pursuant to Federal Rules of Criminal Procedure 8 and 12(b)(3)(B)(i), (iv), and (v), the government has not in fact alleged a single

---

[1] This allegation, however, is the subject of a motion to strike.  *See* Dkt. 994.

conspiracy—the government has alleged multiple conspiracies in which each defendant conspired directly with Singer.

Without the web of a single conspiracy to ensnare all defendants, each defendant's ties to the District must be analyzed separately.  For Defendants Abdelaziz, Diane Blake, Todd Blake, Chen, Gregory Colburn, Amy Colburn, Giannulli, Kimmel, Loughlin, Palatella, Zadeh and Zangrillo, the only potential connection to Massachusetts with respect to the Fraud Conspiracy is some combination of: (a) calls Singer made to the defendants from Massachusetts while he was a government cooperator; (b) a check Singer sent to Heinel from Massachusetts while he was a government cooperator; (c) for Defendant Zangrillo only, the submission of a high school transcript to Boston University; (d) for Defendants Chen and McGlashan only, the submission of ACT scores to Emerson College and Northeastern University, respectively.  None of these allegations are sufficient to establish venue in this District.

> a. Calls from Singer

 Among the few acts in the FSI linked to Massachusetts are a series of calls Singer made after he began cooperating with the government.  For a number of reasons, these calls do not constitute acts in furtherance of the conspiracy and therefore do not establish venue in the District of Massachusetts.

First, the calls were not in furtherance of the conspiracy because they occurred after Singer became a government agent and therefore after each of the conspiracies ended.  The First Circuit has held that "a conspiracy may not be between one individual and a government agent." *United States v. Rivera-Ruperto*, 884 F.3d 25, 32 (1st Cir. 2018).  *See also United States v. Portela*, 167 F.3d 687, 700 n.8 (1st Cir. 1999) ("[G]overnment agents do not count as co-conspirators[.]").  Assuming separate conspiracies between each of the Moving Defendants and

Singer, because Singer began cooperating with the government in late September 2018 (*see* Dkt. 736 at 32), by the time Singer made the calls referenced in the FSI, the conspiracies between Singer and the Moving Defendants ceased to exist.  *See United States v. Thomas*, 284 F.3d 746, 754 (7th Cir. 2002) (there could be "no genuine agreement" between a cooperator and defendant as "[the cooperator's] goal was not to commit a crime but to expose one"); *Portela*, 167 F.3d at 700 ("It is axiomatic that a conspiracy cannot continue without at least two genuine parties to the agreement.").  The calls alleged in the FSI occurred on October 24, 2018, October 25, 2018, November 29, 2018, January 3, 2019, and February 22, 2019[2]—all well after Singer began cooperating with the government, and thus, well after the conspiracies terminated.

Second, even assuming there was at least one other person in each defendant's conspiracy with Singer, and therefore that the conspiracies *could have* continued after Singer became a cooperator, the Moving Defendants' conspiracies nonetheless terminated by late September 2018 because the principal object of the conspiracies—"to commit mail and wire fraud and honest services mail and wire fraud,"  FSI ¶ 65—had already been achieved.  In other words, by the time Singer made these calls, the "test-taking" Moving Defendants' children's alleged false scores on the standardized tests had already been obtained.[3]  With the exception of Defendant McGlashan, all of the "athletic profile" Moving Defendants' children had already been accepted to the universities and the donations to Singer's foundation or the universities had already been made.[4]  Any conversations between the Moving Defendants and Singer on the consensually

---

[2] FSI ¶¶ 96, 122, 134, 163, 164, 223, 252, 274, 275, 350.

[3] *See* FSI ¶¶ 138-142 (Defendant Chen's child's score obtained in April 2018 and sent to various colleges and universities "in or about 2018"); FSI ¶¶ 107-112 (Defendant Amy and Gregory Colburn's child's score obtained in March 2018 and sent to various colleges and universities "in or about 2018"); FSI ¶¶ 216-218 (Defendant Palatella's child's score obtained in March 2017); FSI ¶ 190 (Defendant McGlashan's son's score obtained in December 2017).

[4] *See* FSI ¶ 120 (Defendant Abdelaziz's child received formal acceptance letter in March 2018);  FSI ¶¶ 126-130 (Defendants Diane and Todd Blake's child conditionally admitted on September 14, 2017); FSI ¶¶ 171-180 (Defendant Kimmel's first child admitted to Georgetown in 2013, second child approved as USC athletic admit on

recorded calls are therefore nothing more than post-hoc discussions of old conspiracies that had

ceased to exist.  Nothing said on these calls could have been "in furtherance of" the conspiracies

because the conspiracies had achieved their objectives, and therefore ended, by the time the calls

took place.[5]

Third, even assuming the conspiracies were ongoing at the time of the calls, the calls are

not sufficient for venue because the Moving Defendants did not use the calls to further any

conspiratorial objectives.  "What is determinative of venue . . . is whether the **conspirator** used

the telephone call to further the objectives of the conspiracy."  *United States v. Rommy*, 506 F.3d

108, 122 (2d Cir. 2007) (emphasis added).  In the phone calls described in the FSI, the Moving

Defendants—the alleged conspirators—do not make any statements in furtherance of the

conspiracies.  *See United States v. DeNunzio*, No. 14-CR-10284-NMG, 2015 WL 2226251, at *4

(D. Mass. May 12, 2015) ("[S]tatements qualifying as 'mere idle chatter' or 'narratives of past

events' are not sufficient to be considered in furtherance of a conspiracy." (citing *United States*

*v. Ciresi*, 697 F.3d 19, 28 (1st Cir. 2012))).  Instead, Singer—a government agent—is the only

person who makes any statements that even arguably support a conspiratorial objective.

---

October 5, 2017); FSI ¶¶ 148-54, 159-62 (Defendants Gianulli's and Loughlin's children approved as USC athletic admits on October 27, 2016 and November 2, 2017; FSI ¶ 222 (Defendant Palatella's child received formal acceptance prior to May 1, 2018); FSI ¶ 272 (Defendant Zangrillo's daughter received USC acceptance letter prior to September 20, 2018); FSI ¶ 247 (Defendant Zadeh's child approved as USC athletic admit on March 15, 2017). Defendant McGlashan chose not to pursue the side door, and in fact, the government has not alleged that McGlashan paid anything with respect to the alleged side door scheme.  But *even if* the government had properly alleged (which it has not) that a conspiracy continued between Singer and McGlashan, that would have no effect on the terminations of the conspiracies with the other parents.

[5] That the government tacked on "concealing the fraud scheme" as a subsidiary "principal purpose of the conspiracy," FSI ¶ 65, does not extend the life of the conspiracy.  *See Grunewald v. United States*, 353 U.S. 391, 402 (1957) ("[A]llowing such a conspiracy to conceal to be inferred or implied from mere overt acts of concealment would result in a great widening of the scope of conspiracy prosecutions, since it would extend the life of a conspiracy indefinitely. . . . Sanctioning the Government's theory would for all practical purposes wipe out the statute of limitations in conspiracy cases, as well as extend indefinitely the time within which hearsay declarations will bind co-conspirators.").

While courts have found that a telephone call placed by a government agent to a conspirator outside the district can establish venue, what matters is that, in the telephone calls, "the **conspirator** speaks, not to hear the sound of his own voice, but to communicate to his listener because he thinks that, by doing so, he furthers a conspiratorial goal." *Rommy*, 506 F.3d at 122 (emphasis added). *See also United States v. Cordero*, 668 F.2d 32 (1st Cir. 1981); *United States v. Abdallah*, 840 F. Supp. 2d 584, 601-02 (E.D.N.Y. 2012). Courts require that "the **conspirator** uses the call to further the conspiracy." *Rommy*, 506 F.3d at 122 (emphasis added). For example, in *Rommy*, the **defendant** used the call to ask the agent if his friend "was going 'to look at the car [code for drugs]'" and whether he thought "he [could] sell it." *Id.* at 113. In *Cordero*, the **defendants** provided the government agent with "key information" about where, with whom, and when a drug deal was going to happen. *See Cordero*, 668 F.2d at 39, 44. And in *Abdallah*, the **defendant** used the call to attempt to make a government agent fraudulently inflate a stock price. *See Abdallah*, 840 F. Supp. 2d at 601-02.

By contrast, in the calls described in the FSI, Singer speaks and defendants simply acknowledge or engage in idle chatter. *See, e.g.*, FSI ¶ 164 (Singer explains to Loughlin what he is telling the IRS and Loughlin replies "Um-hmm"); FSI ¶ 252 (Singer: "I'm not going to tell the IRS that we got [your daughter] in through lacrosse." Zadeh: "Right." Singer: "And Donna Heinel at USC." Zadeh: "Right."); FSI ¶ 163 (Singer bragging to Giannulli that Heinel asked him to "use the same format [he] used for" Giannulli's daughters "for any girls, going forward"). Because the defendants did not use the calls to further any conspiratorial objectives, even if the conspiracies still existed at the time the calls were made, the calls cannot be used to support venue in this district. *See United States v. Warman*, 578 F.3d 320, 338 (6th Cir. 2009) (co-conspirator's statements characterized as "bragging" or "idle chatter" were not statements in

furtherance of any conspiratorial objectives).[6]  *See also United States v. Uribe*, 890 F.2d 554, 559 (1st Cir. 1989) ("more than a *de minimis* connection" is required between the conduct giving rise to venue and the venue itself).

  b.  <u>Payments to Heinel</u>

  The FSI also alleges that on January 3, 2019, Singer, from a location in Massachusetts, mailed to Donna Heinel in California a single $20,000 check.  FSI ¶ 121.  Singer's unilateral mailing does not support venue in Massachusetts.  First, Singer and Heinel's arrangement regarding the $20,000 payments was a **separate** agreement formed **after** Singer's alleged agreements with the Moving Defendants.  *See, e.g.*, FSI ¶ 114 ("Beginning in or about the summer of 2017, Gamal Abdelaziz agreed with Singer to pay an amount . . .  for facilitating his daughter's admission to USC . . . ."); FSI ¶ 119 ("On or about December 4, 2017, Heinel instructed Singer that a payment of $200,000 for Abdelaziz's daughter should be directed to the gift account for the Galen Center, the arena for USC's basketball and volleyball programs.  **Subsequently, Heinel and Singer agreed** that instead of directing this money to USC, Heinel would receive payments of $20,000 per month personally in exchange for her assistance . . . .") (emphasis added).  By the FSI's own terms, therefore, this "side deal" between Singer and Heinel was not contemplated by the initial conspiracy between Singer and the Moving Defendants.[7]  The FSI does not allege that any Moving Defendant was aware of this "side deal"

---

[6] For the reasons set forth in this section, Singer's calls do not create venue in Massachusetts even if some of the defendants happened to be physically present in Massachusetts when they received Singer's calls.

[7] According to the FSI, this separate agreement was not formed until at least sometime after December 4, 2017—nearly six months after Defendant Abdelaziz allegedly agreed to conspire with Singer, FSI ¶ 114, and nearly two months after Defendant Abdelaziz's daughter received her provisional acceptance to USC, FSI ¶ 118.  Similarly, this side deal was also struck well after Singer's agreements with almost all of the other defendants.  *See* FSI ¶¶ 68, 81, 93, 97, 114, 123, 144, 165, 176, 210, 245, 253.  In any case, by January 3, 2019, when Singer mailed the check to Heinel, the conspiracies between Singer and the parents were terminated because the objectives of the conspiracies had already been achieved.  *See supra* section I(a). Therefore, the mailing on January 3, 2019 could not have been in furtherance of the Moving Defendants' conspiracies with Singer.

or that any Moving Defendant agreed for Heinel to be paid personally. *Cf. United States v. Palmer*, 203 F.3d 55, 64 (1st Cir. 2000) ("[T]he essence of a conspiracy is an agreement[.]"). When Singer mailed the check to Heinel, he was not acting in furtherance of the alleged Fraud Conspiracy with defendants, but in furtherance of a new conspiracy with Heinel that had, in any event, ended once he became a government cooperator. Any actions in furtherance of this "side deal" with Heinel cannot support venue for the Moving Defendants in Massachusetts.

Moreover, even if there was a single conspiracy, Singer mailing the check to Heinel cannot be considered for venue purposes because it was not an act in furtherance of any single conspiracy. By late September 2018, Singer was a government agent and thus no longer a co-conspirator with any of the defendants. Singer's act of mailing a check in January 2019 was completely unilateral and, unlike even the phone calls, did not require any action whatsoever by defendants or co-conspirators. For instance, there is no allegation that Heinel told Singer to send her the check from Massachusetts or even that she cashed it. The FSI alleges nothing more than a one-sided action taken by a government agent, without the knowledge or involvement of any of the co-conspirators, which cannot be an act "in furtherance of the conspiracy." *Cf. United States v. Singh*, 494 F.3d 653, 659 (8th Cir. 2007) (statement of cooperating informant could not be made "in furtherance of the conspiracy").

c.   Submission to Boston University

For Defendant Zangrillo only, the FSI alleges a connection to Massachusetts in that a high school transcript which allegedly contained false information was submitted to Boston University. Specifically, the FSI alleges that a transcript was submitted on behalf of Zangrillo's daughter that included credits for high school classes which were actually completed by Singer's employee rather than Zangrillo's daughter. FSI ¶ 262. This irrelevant allegation is included for

no purpose other than to create the surface-level appearance of a connection to this district.  It is clear from the FSI that this allegation is wholly unrelated to the alleged Fraud Conspiracy.  There are no allegations that a bribe was made in connection with Boston University, that Singer conspired with a coach or employee of Boston University, or that there were any "fake" athletes presented to Boston University.  The submission of a high school transcript to Boston University, which is completely unrelated to the Fraud Conspiracy, cannot be used to show that venue is proper in this district.  *See United States v. Santiago*, 83 F.3d 20, 25 (1st Cir. 1996) ("[V]enue is proper in any district in which an act **in furtherance of the charged conspiracy** has taken place . . . ." (emphasis added)).

    d.  <u>Submissions to Emerson College and Northeastern University</u>

In an effort to create the appearance of some connection between Defendants Chen and McGlashan and Massachusetts, the FSI alleges that "the ACT score Riddell secretly obtained on behalf of CHEN's son was submitted via interstate wire communication . . . to Emerson College in Boston, Massachusetts,"  FSI ¶ 142, and "the ACT score Riddell secretly obtained on behalf of McGLASHAN's son was submitted to . . . Northeastern University, in Boston, Massachusetts, via wire communication in interstate commerce,"  FSI ¶ 200.  What the FSI does not allege is that a defendant or any other co-conspirator submitted the scores to Emerson or Northeastern. Without this, the FSI does not allege that the submissions of the ACT scores to Emerson and Northeastern were overt acts in furtherance of the conspiracy.  The allegation is thus facially insufficient to establish venue in the District of Massachusetts as to Chen, McGlashan, or any other defendant.  *See United States v. Trenton Potteries Co.*, 273 U.S. 392, 402-03 (1927).

    e.  <u>Foreseeability</u>

Even if the Court concludes that there is a single conspiracy, and therefore that the acts of

all defendants can be considered for the venue determination, undersigned counsel respectfully submit that venue in the District of Massachusetts was not *foreseeable* to the Moving Defendants and for that reason venue here is improper.  While the First Circuit has not had occasion to determine the applicability of foreseeability to venue, Moving Defendants urge the Court to adopt the sound reasoning of the Second Circuit that venue is proper in a district where "(1) the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur in the district of venue or (2) it is foreseeable that such an act would occur in the district of venue." *United States v. Svoboda*, 347 F.3d 471, 483 (2d Cir. 2003).  *See also United States v. Kirk Tang Yuk,* 885 F.3d 57, 69 (2d Cir. 2018) ("[T]he venue analysis does not end as to all defendants charged with a conspiracy when we find a single overt act performed in the district of prosecution . . . . [I]t must have been 'reasonably foreseeable' to each defendant charged with the conspiracy that a qualifying overt act would occur in the district where the prosecution is brought.").

In this case, even if there is a single conspiracy, the Moving Defendants on Count One allegedly conspired with Singer (a California resident) to either obtain admission to schools outside of Massachusetts, or to cheat on standardized tests outside of Massachusetts.[8]  There is no way that the Moving Defendants could have foreseen that an overt act in furtherance of this conspiracy (which had nothing to do with Massachusetts) would end up occurring in Massachusetts.  *See United States v. Bezmalinovic*, 962 F. Supp. 435 (S.D.N.Y. 1997) (bank fraud prosecution was improper in district where defendant committed all relevant acts at banks outside the district and did not know that banks cashed and paid checks through clearinghouse

---

[8] To the extent the FSI alleges Defendant Zangrillo's child applied to Boston University, Defendant Chen's child applied to Emerson College, and Defendant McGlashan's child applied to Northeastern University, those allegations are inapposite for the reasons set forth *supra* in sections I(c)-(d).  With respect to these defendants or any other defendant, under the foreseeability test, *each defendant's* foreseeability must be assessed *individually*.

located within the district).  The Moving Defendants could have no more foreseen an overt act in furtherance of the alleged conspiracy taking place in the District of Massachusetts than in any of the ninety-four judicial districts of the United States.

## II.  Count 2:  USC Bribery

The FSI refers to Count Two as "The USC Federal Programs Bribery Conspiracy."  As the title suggests, this alleged conspiracy was centered around USC, and had absolutely nothing to do with Massachusetts.  **The FSI does not allege a single overt act tied to Massachusetts in furtherance of the USC Bribery Conspiracy**.  Of the twenty-four paragraphs in the FSI describing the overt acts in furtherance of the USC Bribery Conspiracy, not one references Massachusetts.  *See* FSI ¶¶ 282-306.  The allegations relating to the USC Bribery Conspiracy are straightforward: the government alleges that defendants conspired with Singer, a California resident, to bribe Donna Heinel, a California resident, to help secure their children's admission to USC, a California university.  Even if the Court considers allegations in other sections of the FSI in determining venue for the USC Bribery Conspiracy, there is still nothing to support venue in Massachusetts.  The allegations that defendants sent transcripts and scores to Emerson College, Northeastern University, and Boston University are clearly not related to the **USC** Bribery Conspiracy.  Thus, venue in this district is improper **even under the government's theory of a single conspiracy**, and even if the Court accepts that venue is proper for the Fraud Conspiracy described in Count One because of that single conspiracy.  *See United States v. Salinas*, 373 F.3d 161, 163 (1st Cir. 2004) ("The criminal law does not recognize the concept of supplemental venue.").[9]

---

[9] Singer's one-sided calls and his unilateral mailing of a check from Massachusetts to California are not sufficient for venue for the reasons described in Section I.

### III.      Count 3:  Money Laundering

A prosecution for money laundering conspiracy is proper "in the district where venue would lie for the completed offense . . . or in any other district where an act in furtherance of the attempt or conspiracy took place."  18 U.S.C. § 1956.  The FSI makes a broad allegation that defendants made payments "to and from accounts in the District of Massachusetts" and that Singer "funneled bribes through KWF and The Key to athletic coaches and university administrators in the District of Massachusetts and elsewhere."  FSI ¶ 351.  Yet the paragraphs describing the acts in furtherance of the money laundering conspiracy (FSI ¶¶ 310-52), despite referencing specific transactions as to each defendant, do not identify a single payment made to or from an account in Massachusetts.  To the extent the Court considers allegations in other sections of the FSI in determining venue for Count 3, there is no venue for the reasons stated in Section I of this brief.

### Conclusion

For the reasons explained above and in Defendants' Motion to Dismiss Pursuant to Federal Rules of Criminal Procedure 8 and 12(b)(3)(B)(i), (iv), and (v), venue in the District of Massachusetts is improper.  Moving Defendants respectfully request that this Court dismiss the charges against them in Counts One, Two, and Three.

Dated:  April 1, 2020                                        Respectfully submitted,


                                                            /s/ Brian T. Kelly
                                                            Brian T. Kelly (BBO No. 549566)
                                                            Joshua C. Sharp (BBO No. 681439)
                                                            Lauren M. Maynard (BBO No. 698742)
                                                            NIXON PEABODY LLP
                                                            53 State Street
                                                            Boston, MA 02109
                                                            617-345-1000
                                                            bkelly@nixonpeabody.com

jsharp@nixonpeabody.com
lmaynard@nixonpeabody.com

Robert Sheketoff (BBO No. 457340)
One McKinley Square
Boston, MA 02109
617-367-3449

*Counsel for Gamal Abdelaziz*

Sean M. Berkowitz (*admitted pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
Phone: 312.777.7700
Fax: 312.993.9767
sean.berkowitz@lw.com

Perry J. Viscounty (*admitted pro hac vice*)
LATHAM & WATKINS LLP
650 Town Center Drive
20th Floor
Costa Mesa, CA 92626
Phone: 714.540.1235
perry.viscounty@lw.com

*/s/ William J. Trach*
William J. Trach (BBO #661401)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Phone: 617.948.6000
Fax: 312.993.9767
william.trach@lw.com

Roman Martinez (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
Phone: 202.637.2200
roman.martinez@lw.com

*Counsel for Mossimo Giannulli and Lori Loughlin*

George W. Vien (BBO #547411)
Joshua N. Ruby (BBO #679113)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600
Boston, MA 02110
Phone: 617.720.2880
Fax: 617.720.3554
gwv@dcglaw.com
jnr@dcglaw.com

David C. Scheper (*admitted pro hac vice*)
SCHEPER KIM & HARRIS LLP
601 West Fifth Street, 12th Floor
Los Angeles, CA 90071
Phone: 213.613.4655
Fax: 213.613.4656
dscheper@scheperkim.com

*Counsel for Lori Loughlin*

Mark E. Beck (*admitted pro hac vice*)
Mark Beck Law, A Professional Corporation
350 West Colorado Boulevard
Suite 200
Pasadena, CA 91105
Phone: 213.596.7828
mbeck@markbecklaw.com

*/s/ David E. Meier*
David E. Meier (BBO #341710)
Todd & Weld LLP
One Federal Street, 27th Floor
Boston, MA  02110
(617) 720-2626
dmeier@toddweld.com

*Counsel for Mossimo Giannulli*

/s/ David S. Schumacher
David S. Schumacher (BBO #647917)
HOOPER, LUNDY & BOOKMAN, P.C.
470 Atlantic Avenue, Suite 1201
Boston, MA 02210
(617) 532-2700
(617) 345-3927 (fax)
dschumacher@health-law.com

Patric Hooper (*pro hac vice*)
HOOPER, LUNDY & BOOKMAN, P.C.
1875 Century Park East, Suite 1600
Los Angeles, California 90067-2517
(310) 551-8111
(310) 551-8181 (fax)
phooper@health-law.com

Jordan Kearney (*pro hac vice*)
HOOPER, LUNDY & BOOKMAN, P.C.
575 Market Street, Suite 2300
San Francisco, CA 94105
(415) 875-8500
(415) 875-8519 (fax)
jkearney@health-law.com

*Counsel for Amy and Gregory Colburn*

/s/ Jack W. Pirozzolo
Jack W. Pirozzolo (BBO # 564879)
jpirozzolo@sidley.com
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, MA 02109
(617) 223-0304

John C. Hueston (*pro hac vice*)
jhueston@hueston.com
Marshall Camp (*pro hac vice*)
mcamp@hueston.com
HUESTON HENNIGAN LLP
523 W. 6th Street, Suite 400
Los Angeles, CA 90014
(213) 788-4340

/s/ Stephen H. Sutro
Stephen H. Sutro, Esq.
Duane Morris, LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
(415) 957-3008
SHSutro@duanemorris.com

*Counsel for Diane Blake and Todd Blake*

/s/ Reuben Camper Cahn
Reuben Camper Cahn (*pro hac vice*)
Jennifer L. Keller (*pro hac vice*)
Chase A. Scolnick (*pro hac vice*)
KELLER/ANDERLE LLP
18300 Von Karman Avenue, Suite 930
Irvine, CA 92612
Tel: (949) 476-8700
rcahn@kelleranderle.com

*Counsel for I-Hsen "Joey" Chen*

/s/ R. Robert Popeo
R. Robert Popeo (BBO # 403360)
Mark E. Robinson (BBO # 423080)
Eóin P. Beirne (BBO # 660885)
Cory S. Flashner (BBO # 629205)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 348-1605 (telephone)
(617) 542-2241 (fax)
rpopeo@mintz.com
mrobinson@mintz.com
ebeirne@mintz.com
csflashner@mintz.com

*Counsel for Elisabeth Kimmel*

/s/ Michael K. Loucks
Michael K. Loucks (BBO #305520)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
500 Boylston Street

*Counsel for William McGlashan, Jr.*

/s/ Michael Kendall
Michael Kendall (BBO # 544866)
Yakov Malkiel (BBO # 689137)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com
yakov.malkiel@whitecase.com

Andrew E. Tomback (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8428
andrew.tomback@whitecase.com

*Counsel for John Wilson*

/s/ Tracy A. Miner
Tracy A. Miner (BBO No. 547137)
Megan A. Siddall (BBO No. 568979)
Miner Orkand Siddall LLP
470 Atlantic Ave, 4th Floor
Boston, MA 02110
Tel.: (617) 273-8377
Fax: (617) 273-8004
tminer@mosllp.com
msiddall@mosllp.com

*Counsel for Homayoun Zadeh*

Boston, MA 02116
(617) 573-4800
michael.loucks@skadden.com

Jack P. DiCanio (*pro hac vice*)
Allen J. Ruby (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
525 University Avenue
Palo Alto, CA 94301
(650) 470-4500
jack.dicanio@skadden.com
allen.ruby@skadden.com

*Counsel for Marci Palatella*

/s/ Martin G. Weinberg
Martin G. Weinberg
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

Matthew L. Schwartz (*admitted pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Tel.: (212) 446-2300
Fax: (212) 446-2350
E-mail:  mlschwartz@bsfllp.com

*Counsel for Robert Zangrillo*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the forgoing was filed electronically on April 1, 2020, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

/s/ Brian T. Kelly
Brian T. Kelly