UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID SIDOO, *et al.*<br><br>Defendants. | Case No. 1:19-cr-10080-NMG |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO SEVER PURSUANT
TO FEDERAL RULES OF CRIMINAL PROCEDURE 12(b)(3)(D) AND 14**

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ...................................................................................................................1
II. BACKGROUND .....................................................................................................................2
III. ARGUMENT............................................................................................................................2
    A. Prejudicial Spillover Is a Near Certainty. ........................................................................4
    B. Jury Confusion From Spillover Evidence Is a Near Certainty. ........................................7
    C. Limiting Instructions to the Jury Cannot Cure These Risks of Prejudice........................8
IV. CONCLUSION.........................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blake v. Pellegrino*,
  329 F.3d 43 (1st Cir. 2003)..................................................................................................9

*Bruton v. United States*,
  391 U.S. 123 (1968).................................................................................................2, 3, 8

*King v. United States*,
  355 F.2d 700 (1st Cir. 1966)..............................................................................................5

*Kotteakos v. United States*,
  328 U.S. 750 (1946)................................................................................................3, 5

*Tufford v. Wainwright*,
  588 F.3d 954 (5th Cir. 1979) (per curiam) ........................................................................3

*United States v. Buchanan*,
  930 F. Supp. 657 (D. Mass. 1996) .....................................................................................4

*United States v. DeCologero*,
  364 F.3d 12 (1st Cir. 2004)...........................................................................................3, 4

*United States v. Flaherty*,
  668 F.2d 566 (1st Cir. 1981).............................................................................................4

*United States v. Leichter*,
  160 F.3d 33 (1st Cir. 1998)...............................................................................................3

*United States v. Levine*,
  569 F.2d 1175 (1st Cir. 1978)...........................................................................................8

*United States v. Levy-Cordero*,
  67 F.3d 1002 (1st Cir. 1995)........................................................................................6, 7

*United States v. O'Bryant*,
  998 F.2d 21 (1st Cir. 1993)...............................................................................................3

*United States v. Petrozziello*,
  548 F.2d 20 (1st Cir. 1977)...............................................................................................6

*United States v. Portela*,
  167 F.3d 687 (1st Cir. 1999)............................................................................................8

ii

*United States v. Sepulveda*,
    15 F.3d 1161 (1st Cir. 1993) .................................................................................................6

*United States v. Sutherland*,
    929 F.2d 765 (1st Cir. 1991) ..................................................................................................4

*Zafiro v. United States*,
    506 U.S. 534 (1993) ............................................................................................................3, 8

**Rules**

Federal Rule of Evidence 801(d)(2)(E) .........................................................................................6

Federal Rule of Criminal Procedure 8 ................................................................................. *passim*

Federal Rules of Criminal Procedure 12............................................................................. *passim*

Federal Rules of Criminal Procedure 14............................................................................. *passim*

## I. INTRODUCTION

The defendants hereby move jointly to sever each of their respective trials pursuant to Federal Rules of Criminal Procedure 12(b)(3)(D) and 14. The defendants are improperly joined in the Fourth Superseding Indictment (the "Indictment"), as articulated in their contemporaneously-filed Motion to Dismiss Pursuant to Federal Rules of Criminal Procedure 8 and 12(b)(3)(b)(i), (iv), and (v). Even if joinder of the defendants was permissible under Rule 8, however, severance under Rules 12(b)(3)(D) and 14 is necessary to mitigate the unfair, substantial prejudice that would result should any of the defendants, other than perhaps married couples, be tried together.

At the February 27, 2020, status conference, the Court divided the defendants into two groups for trial, setting an October 2020 trial date for Defendants Abdelaziz, Diane Blake, Todd Blake, Giannulli, Loughlin, Wilson, Zadeh, and Zangrillo, and a January 2021 trial date for Defendants Gregory Colburn, Amy Colburn, Chen, Kimmel, McGlashan, and Palatella. *See* ECF No. 883. Whether these defendants are all tried together or in the groupings adopted by the Court, the evidentiary reality is the same: there is little if any common evidence admissible against all defendants. This means that at any trial involving multiple defendants, the vast majority of the evidence presented every day at the multi-week trial will be completely irrelevant to all but one defendant. This creates a near certainty of prejudicial spillover and a substantial risk of a transference of guilt. These risks cannot be cured with limiting instructions. Given the volume and complexity of the necessary instructions and the length of the trial, the jury will, despite its best efforts, be unable to keep admissible evidence separate from inadmissible evidence as to each defendant. Where joint trials would therefore fail to create any actual efficiencies, the risks of a joint trial far exceed any potential benefits. The dangers of transference of guilt from one alleged

"bad man" to another defendant outweigh any administrative benefit to the government of two mass trials.

For these reasons, and to avoid reversible error in the event of an appeal of a conviction at a joint trial by any of the defendants, the defendants respectfully request that the Court sever each of their trials from the trials of the other defendants pursuant to Rules 12(b)(3)(D) and 14.[1]

## II.  BACKGROUND

Rather than reiterate what they have said elsewhere, the defendants incorporate by reference the Background section of the Memorandum in Support of Defendants' Motion to Dismiss Pursuant to Federal Rules of Criminal Procedure 8 and 12(b)(3)(b)(i), (iv), and (v), filed contemporaneously with this Motion ("Motion to Dismiss"), as well as the Background section of Defendants' Memorandum of Law in Support of Their Motion to Dismiss Indictment with Prejudice or, in the Alternative, for Suppression of Evidence Based on Governmental Misconduct and for Discovery and an Evidentiary Hearing (ECF No. 972), and incorporate generally the arguments in defendants' various motions filed contemporaneously with this Motion.

## III.  ARGUMENT

Under Federal Rule of Criminal Procedure 14, even when defendants are permissibly joined under Rule 8, the court may sever the defendants' trials "[i]f the joinder of offenses or defendants in an indictment . . . or a consolidation for trial appears to prejudice a defendant or the government." Under Rule 12(b)(3)(D), a motion for severance of charges or defendants under Rule 14 must be made raised pretrial. It is clear from the face of the Indictment—let alone from

---

[1] Because the government continues to produce voluminous and in some cases exculpatory discovery, and the defendants are still developing their own individual defenses, which are likely to be antagonistic to one another, the defendants submit that it is premature to move for severance (especially in light of recent developments). However, the defendants recognize that the Court requested that the defendants file any severance motions by the April 1, 2020 motion to dismiss deadline. Accordingly, the defendants file this motion to be timely, but respectfully reserve the right to supplement this motion or make individual motions for severance at a later date, when the defendants' defenses and the pertinent *Bruton* issues have crystallized.

2

the voluminous evidence that has already been produced in this case—that the charges against each defendant are distinct vignettes, connected only by a common fraudster. Where there is little if any common evidence that can be presented against all of the defendants in each grouping, and where each defendant has his or her own unique defenses, based upon their unique interactions with the common fraudster and their unique circumstances, joinder of the defendants is unduly prejudicial. Severance under Rules 12(b)(3)(D) and 14 is thus warranted independent of any misjoinder.

As the Supreme Court explained in *Zafiro v. United States*, 506 U.S. 534, 539 (1993), severance is appropriate "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." The *Zafiro* Court identified a non-exhaustive list of prejudicial scenarios:

> Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. *See Kotteakos v. United States*, 328 U.S. 750, 774-75 (1946). Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. *See Bruton v. United States*, 391 U.S. 123 (1968). Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial. *See, e.g.*, *Tufford v. Wainwright*, 588 F.3d 954 (5th Cir. 1979) (per curiam).

*Zafiro*, 506 U.S. at 539. The "trial judge has 'considerable latitude' in deciding severance questions." *United States v. O'Bryant*, 998 F.2d 21, 25 (1st Cir. 1993) (citations omitted); *see United States v. DeCologero*, 364 F.3d 12, 25 (1st Cir. 2004).[2]

---

[2] The Court also has inherent power to sever defendants for trial for case management reasons. *United States v. Leichter*, 160 F.3d 33, 35 (1st Cir. 1998); *see O'Bryant*, 998 F.2d at 26.

Although prejudicial joinder and the efficacy of trying multiple defendants together can be seen most clearly on appeal, when hindsight provides a clearer lens, the federal rules require courts to consider severance pretrial to avoid a miscarriage of justice. *See* Fed. R. Crim. P. 12(b)(3)(D). At the appellate level, a defendant challenging a district judge's decision not to sever must make a "strong showing that prejudice resulted from the denial of severance." *DeCologero*, 530 F.3d at 52. But at the pretrial level, the defendant must not be held to the same standard that applies with the benefit of hindsight. *See United States v. Buchanan*, 930 F. Supp. 657, 667-68 (D. Mass. 1996).

### A. PREJUDICIAL SPILLOVER IS A NEAR CERTAINTY.

Severance of the defendants' trials—even further than they have already been divided by the Court—is necessary under Rule 14, because the proposed joint trials would almost certainly result in substantial prejudicial spillover for each defendant. Prejudicial spillover occurs via the impermissible "transference of guilt to an individual defendant involved in one conspiracy from evidence incriminating defendants in a conspiracy in which the particular defendant was not involved." *United States v. Sutherland*, 929 F.2d 765, 773 (1st Cir. 1991) (internal quotation marks and citations omitted).

Although the government frames the Indictment as alleging a single conspiracy, it is more likely that, if the government proves any version of the allegations at all, it will be in the form of multiple conspiracies. "If the Government proves more conspiracies than the one charged in the indictment, a defendant involved in one conspiracy may not be convicted on the basis of evidence that relates only to a separate conspiracy." *United States v. Flaherty*, 668 F.2d 566, 582 (1st Cir. 1981). Under the current trial groupings, the parent-defendants are scheduled to be tried with other defendants who are alleged to have participated in different frauds with Rick Singer, as described in the Motion to Dismiss. For example, Mr. Chen, who is alleged to have participated in only the

4

test-taking scheme, will be tried with Mrs. Kimmel, who is alleged to have participated in only the athletic recruitment scheme. Evidence that relates to either of these defendants cannot serve as a basis for a conviction of the other. Stated more broadly, evidence that relates only to the test-taking scheme cannot serve as a basis for a conviction of Mrs. Kimmel, who is not alleged to have participated in that scheme, and evidence that relates only to the athletic recruitment scheme cannot serve as a basis for conviction of Mr. Chen, for the corollary reason.

Moreover, as discussed in the Motion to Dismiss, joinder is prejudicial where "there are no presumptive benefits from joint proof of facts relevant to all the acts or transactions." *King v. United States*, 355 F.2d 700, 704 (1st Cir. 1966). In *Kotteakos*, the Court held that the trials of eight defendants—who were joined on the ground that one defendant participated in all of the crimes charged—should have been severed because of the natural but unfair tendency of jurors to vote all defendants guilty by association. *See* 328 U.S. at 769-70, 771-73. Here, there are virtually no "facts relevant to all the acts or transactions," and certainly no "overlapping of issues" akin to the examples provided in *King*. In the absence of any common proof, the risk of "guilt by association" is too high. The evidentiary record as it currently stands (and as it continues to unfold through ongoing government disclosures of relevant and exculpatory evidence) confirms that there is no overlapping evidence relevant to all of the defendants. The government has produced a literal mountain of materials, consisting of millions of documents and thousands of audio files, but not the slightest factual support necessary to establish one overarching, single conspiracy among the defendants. Counsel for defendants cannot identify a single fact or common piece of evidence the government could admit, beyond some involvement with Singer, that would be relevant to the acts of *all* of the parent-defendants who are to be tried together in either group. Instead, the admissibility of evidence against each defendant will depend on how many

5

conspiracies the government may seek to prove at each trial, and the parameters of each conspiracy, including its time frame and its members. *See* Fed. R. Evid. 801(d)(2)(E) (statements by coconspirators are not hearsay and are admissible if certain criteria are met); *United States v. Sepulveda*, 15 F.3d 1161, 1180-82 (1st Cir. 1993) (coconspirator exception to hearsay rule requires proof "by a preponderance of the evidence that a conspiracy embracing both the declarant and the defendant existed, and that the declarant uttered the statement during and in furtherance of the conspiracy"; "a coconspirator's statement, standing alone, is insufficient to meet the preponderance standard," and "some extrinsic proof of the declarant's involvement in the conspiracy" is required); *United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir. 1977) (same).

This is not a case where the Indictment charged the puppeteers with the puppets. The government did not indict Singer or Heinel with each defendant who interacted with them. For that reason, this prosecution is distinguishable from cases in which multiple defendants are charged with engaging in a scheme together, and the court has declined to sever even though the weight of the evidence against one defendant significantly outweighs that against the others.

For example, in *United States v. Levy-Cordero*, 67 F.3d 1002, 1007-08 (1st Cir. 1995), the trial court declined to sever the trials of two defendants from a third. The moving defendants were alleged to have served as a boat captain in two shipments of cocaine, and as the owner of a boat that could be used to offload the marijuana coming in from Colombia who helped offload a shipment, respectively. *Id.* at 1006, 1007. The third defendant, in contrast, was alleged to be a leader of a four-year conspiracy to import and distribute marijuana and cocaine in which the first two defendants played small roles. *Id.* The crux of the defendants' argument was that "they were prejudiced by the volume of evidence presented against" the third defendant, and that the substantial "evidence of [the] co-conspirators importing and distributing marijuana and cocaine

6

in a similar manner prevented the jury from considering the evidence against [each defendant] independently." *Id.* at 1007. The First Circuit affirmed the trial court's denial of their motion to sever because "the mere fact that a 'minnow' stands trial with a 'kingfish,' and the government aims most of its ammunition at the kingfish, does not, without more, necessitate separate trials." *Id.* (citation omitted). The bulk of the evidence introduced against the third defendant "would have been admissible in separate trials" against the others, where all of the defendants were members of a four-year conspiracy to import drugs. *Id.* at 1007-08.

The premise of the *Levy-Cordero* decision and others like it—that all of the defendants are alleged to have operated in the same "overall agreement," 67 F.3d at 1007-08—does not exist here. Singer—the "kingfish"—is not on trial in this case, nor are any of his associates or the coaches or administrators he partnered with. Instead, this is a case in which each of the defendants is alleged to have undertaken a separate agreement with Singer to achieve a unique goal: the admission of that defendant's child into a particular university, or the achievement of a higher score on a college entrance examination for that defendant's child. There will be no evidence directly aimed at the "kingfish" in this trial—instead, all of the evidence will be aimed at the parent-defendants, each of whom engaged in a separate, distinct arrangement with Singer that neither furthered nor interlaced with that of any other parent-defendant's arrangement with Singer. Under these circumstances, there is no doubt that unduly prejudicial spillover will occur.

### B. JURY CONFUSION FROM SPILLOVER EVIDENCE IS A NEAR CERTAINTY.

In the absence of any overlapping issues or facts relevant to all the acts or transactions of all of the defendants slated to be tried together, evidence admitted as to any one defendant but not the others will necessarily "spill over" as evidence against another defendant. This spillover is

certain to be unduly prejudicial, because it will "prevent the jury from making a reliable determination about guilt or innocence" as to each individual defendant. *Zafiro*, 506 U.S. at 539.

The unavoidable reality is that the vast majority of the evidence presented every day at trial will be completely irrelevant to all but one defendant (or one married couple). This creates a substantial risk of a transference of guilt. "A 'transference of guilt' from one defendant to another or from one charge to another can take several forms, ranging from jury confusion to a subconscious accumulation of superfluous evidence, 'an atmosphere clouding the jury's ability to evaluate fairly' the credibility of other, probative evidence." *United States v. Portela*, 167 F.3d 687, 700 (1st Cir. 1999) (citation omitted). Where the jury will hear evidence as to six to eight defendants in one trial, much of which may sound similar in terms of behavior, it will be "difficult for the jury to focus on each specific defendant and on the evidence properly associated with that defendant." *United States v. Levine*, 569 F.2d 1175, 1177 (1st Cir. 1978). This is particularly problematic where "[e]vidence that goes only to conspiracies in which a particular defendant is not involved should not be admitted against that defendant." *Id.* The jury thus "may be subject to confusion about the legal limitations on the use of certain evidence," and its ability to parse admissible and relevant evidence as to one defendant from inadmissible or otherwise irrelevant evidence as to that defendant may be compromised given the number of defendants and the volume of evidence that must be parsed in this way. *Id.*

### C. LIMITING INSTRUCTIONS TO THE JURY CANNOT CURE THESE RISKS OF PREJUDICE.

Limiting instructions are insufficient where the risk of prejudice is particularly high, as it is here. *See Zafiro*, 506 U.S. at 539; *see, e.g.*, *Bruton*, 391 U.S. at 136-37 ("there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the

8

jury system cannot be ignored"). There is an "overwhelming probability" that any curative instructions intended to cure prejudice "will be ineffectual," and will cause even greater juror confusion. *Blake v. Pellegrino*, 329 F.3d 43, 50 (1st Cir. 2003) (citation omitted). Limiting instructions would need to be given with every witness and with every document and recording introduced, thereby slowing the trial and creating an extensive web of evidentiary limitations that not even the most sophisticated juror could follow. Given the need for constant instructions, intervening in the government's presentation of each piece of evidence, and for those instructions to be complex in instructing the jury on which defendants the evidence pertains to, it is highly probable that the jury will be unable to apply all of the instructions to the evidence correctly, significantly prejudicing the defendants.

## IV.     CONCLUSION

The defendants respectfully request that the Court sever the charges against each defendant from those of the other defendants named in the Indictment, and grant other such relief as this Court deems just and proper. Should the requested relief be denied, the defendants reserve the right to file a supplemental motion for severance pursuant to Federal Rule of Criminal Procedure 14 following complete disclosure and review of the government's evidence, in which the defendants may articulate the additional specific trial rights that would be compromised by the proposed joint trials and the antagonistic defenses they expect to present warranting further severance.

DATED: April 1, 2020                                    Respectfully submitted,

/s/ Eóin P. Beirne
R. Robert Popeo (BBO # 403360)
Mark E. Robinson (BBO # 423080)
Eóin P. Beirne (BBO # 660885)
Cory S. Flashner (BBO # 629205)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 348-1605 (telephone)
(617) 542-2241 (fax)
rpopeo@mintz.com
mrobinson@mintz.com
ebeirne@mintz.com
csflashner@mintz.com

*Counsel for Elisabeth Kimmel*

| | |
|---|---|
| Sean M. Berkowitz (*admitted pro hac vice*) | /s/ William J. Trach |
| LATHAM & WATKINS LLP | William J. Trach (BBO #661401) |
| 330 North Wabash Avenue | LATHAM & WATKINS LLP |
| Suite 2800 | 200 Clarendon Street |
| Chicago, IL 60611 | Boston, MA 02116 |
| Phone: 312.777.7700 | Phone: 617.948.6000 |
| Fax: 312.993.9767 | Fax: 312.993.9767 |
| sean.berkowitz@lw.com | william.trach@lw.com |
| | |
| | Roman Martinez (*admitted pro hac vice*) |
| Perry J. Viscounty (*admitted pro hac vice*) | LATHAM & WATKINS LLP |
| LATHAM & WATKINS LLP | 555 Eleventh Street, NW |
| 650 Town Center Drive | Suite 1000 |
| 20th Floor | Washington, DC 20004 |
| Costa Mesa, CA 92626 | Phone: 202.637.2200 |
| Phone: 714.540.1235 | roman.martinez@lw.com |
| perry.viscounty@lw.com | |

*Counsel for Mossimo Giannulli and Lori Loughlin*

| | |
|---|---|
| George W. Vien (BBO #547411) | David C. Scheper (*admitted pro hac vice*) |
| Joshua N. Ruby (BBO #679113) | SCHEPER KIM & HARRIS LLP |
| DONNELLY, CONROY & GELHAAR, LLP | 601 West Fifth Street, 12th Floor |
| 260 Franklin Street, Suite 1600 | Los Angeles, CA 90071 |
| Boston, MA 02110 | Phone: 213.613.4655 |
| Phone: 617.720.2880 | Fax: 213.613.4656 |
| Fax: 617.720.3554 | dscheper@scheperkim.com |
| gwv@dcglaw.com | |

10

jnr@dcglaw.com

Mark E. Beck (*admitted pro hac vice*)
Mark Beck Law, A Professional Corporation
350 West Colorado Boulevard
Suite 200
Pasadena, CA 91105
Phone: 213.596.7828
mbeck@markbecklaw.com

*Counsel for Mossimo Giannulli*

*/s/ Brian T. Kelly*
Brian T. Kelly (BBO No. 549566)
Joshua C. Sharp (BBO No. 681439)
Lauren M. Maynard (BBO No. 698742)
NIXON PEABODY LLP
53 State Street
Boston, MA 02109
617-345-1000
bkelly@nixonpeabody.com
jsharp@nixonpeabody.com
lmaynard@nixonpeabody.com

Robert Sheketoff (BBO No. 457340)
One McKinley Square
Boston, MA 02109
617-367-3449

*Counsel for Gamal Abdelaziz*

*/s/ David S. Schumacher*
David S. Schumacher (BBO #647917)
HOOPER, LUNDY & BOOKMAN, P.C.
470 Atlantic Avenue, Suite 1201
Boston, MA 02210
(617) 532-2700
(617) 345-3927 (fax)
dschumacher@health-law.com

Patric Hooper (*pro hac vice*)
HOOPER, LUNDY & BOOKMAN, P.C.
1875 Century Park East, Suite 1600
Los Angeles, California 90067-2517
(310) 551-8111
(310) 551-8181 (fax)

*Counsel for Lori Loughlin*

*/s/ David E. Meier*
David E. Meier (BBO #341710)
Todd & Weld LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
dmeier@toddweld.com

*/s/ Stephen H. Sutro*
Stephen H. Sutro, Esq.
Duane Morris, LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
(415) 957-3008
SHSutro@duanemorris.com

*Counsel for Diane Blake and Todd Blake*

/s/ *Reuben Camper Cahn*
Reuben Camper Cahn *(pro hac vice)*
Jennifer L. Keller *(pro hac vice)*
Chase A. Scolnick *(pro hac vice)*
KELLER/ANDERLE LLP
18300 Von Karman Avenue, Suite 930
Irvine, CA 92612
Tel: (949) 476-8700
rcahn@kelleranderle.com

*Counsel for I-Hsen "Joey" Chen*

*/s/ Michael K. Loucks*
Michael K. Loucks (BBO #305520)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
500 Boylston Street
Boston, MA 02116
(617) 573-4800
michael.loucks@skadden.com

Jack P. DiCanio (*pro hac vice*)
Allen J. Ruby (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue

11

phooper@health-law.com

Jordan Kearney (*pro hac vice*)
HOOPER, LUNDY & BOOKMAN, P.C.
575 Market Street, Suite 2300
San Francisco, CA 94105
(415) 875-8500
(415) 875-8519 (fax)
jkearney@health-law.com

*Counsel for Amy and Gregory Colburn*

*/s/ Jack W. Pirozzolo*
Jack W. Pirozzolo (BBO # 564879)
jpirozzolo@sidley.com
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, MA 02109
(617) 223-0304

John C. Hueston (*pro hac vice*)
jhueston@hueston.com
Marshall Camp (*pro hac vice*)
mcamp@hueston.com
HUESTON HENNIGAN LLP
523 W. 6th Street, Suite 400
Los Angeles, CA 90014
(213) 788-4340

*Counsel for William McGlashan, Jr.*

*/s/ Tracy A. Miner*
Tracy A. Miner (BBO No. 547137)
Megan A. Siddall (BBO No. 568979)
Miner Orkand Siddall LLP
470 Atlantic Ave, 4th Floor
Boston, MA 02110
Tel.: (617) 273-8377
Fax: (617) 273-8004
tminer@mosllp.com
msiddall@mosllp.com

*Counsel for Homayoun Zadeh*

Palo Alto, CA 94301
(650) 470-4500
jack.dicanio@skadden.com
allen.ruby@skadden.com

*Counsel for Defendant Marci Palatella*

*/s/ Martin G. Weinberg*
Martin G. Weinberg
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

Matthew L. Schwartz (*admitted pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Tel.: (212) 446-2300
Fax: (212) 446-2350
E-mail:  mlschwartz@bsfllp.com

*Counsel for Robert Zangrillo*

*/s/ Michael Kendall*
Michael Kendall (BBO # 544866)
Yakov Malkiel (BBO # 689137)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com
yakov.malkiel@whitecase.com

Andrew E. Tomback (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8428
andrew.tomback@whitecase.com

*Counsel for John Wilson*

12

**CERTIFICATE OF SERVICE**

I, Eóin P. Beirne, hereby certify that on April 1, 2020, this document, filed through the CM/ECF system, will be sent electronically to all registered participants in this matter as identified on the Notice of Electronic Filing (NEF).

*/s/ Eóin P. Beirne*
Eóin P. Beirne (BBO # 660885)