UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| | ) | |
| V. | ) | No. 19-cr-10080-NMG |
| | ) | |
| | ) | |
| DAVID SIDOO, *et al*, | ) | ORAL ARGUMENT REQUESTED |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS (1) COUNT ONE INSOFAR AS IT ALLEGES CONSPIRACY TO COMMIT HONEST SERVICES FRAUD AGAINST THE UNIVERSITY OF SOUTHERN CALIFORNIA AND GEORGETOWN UNIVERSITY AND (2) COUNT TWO ALLEGING CONSPIRACY TO COMMIT FEDERAL PROGRAMS BRIBERY**

## **TABLE OF CONTENTS**

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     RELEVANT ALLEGATIONS FROM THE FOURTH SUPERSEDING INDICTMENT. . . . . . 3

III.    LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.     THE FEDERAL PROGRAMS BRIBERY AND HONEST SERVICES FRAUD
        CONSPIRACY COUNTS MUST BE DISMISSED BECAUSE PAYMENTS
        TO THE ALLEGED VICTIM UNIVERSITIES ARE NOT BRIBES
        AS A MATTER OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V.      THE ALLEGED AGREEMENT BETWEEN SINGER AND HEINEL TO
        MAKE PAYMENTS TO HEINEL PERSONALLY POST-DATES HEINEL'S
        PERFORMANCE OF OFFICIAL ACTS AND THEREFORE DOES
        NOT CONSTITUTE BRIBERY AS A MATTER OF LAW . . . . . . . . . . . . . . . . . . . . . 16

VI.     DEFENDANT JOHN WILSON'S JOINDER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VII.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Evans v. United States*, 504 U.S. 255 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hamling v. United States*, 418 U.S. 87 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*McDonnell v. United States*, 136 S. Ct. 2355 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14

*Skilling v. United States*, 561 U.S. 358 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*United States v. Blagojevich*, 794 F.3d 729 (7th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Brissette*, 919 F.3d 670 (1st Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Bizzack*, 19-cr-10222-DPW (D. Mass.). . . . . . . . . . . . . . . . . . . . . 2, 9, 10, 11

*United States v. Czubinski*, 106 F.3d 1069 (1st Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. DeMizio*, 741 F.3d 373 (2d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*United States v. Eirby*, 262 F.3d 31 (1st Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Ernst*, 19-cr-10081-IT (D. Mass.)   . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

*United States v. Fernandez*, 722 F.3d 1 (1st Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . passim

*United States v. Gracie*, 731 F.3d 1 (1st Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*United States v. Hausmann*, 345 F.3d 952 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Kemp*, 500 F.3d 257 (3d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Margiotta*, 688 F.2d 108 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. McCormack*, 31 F. Supp. 2d 176 (D. Mass. 1998) . . . . . . . . . . . . . . . . . . . 6

*United States v. McGregor*, 2011 WL 1576950 (M.D. Ala. 2011) . . . . . . . . . . . . . . . . . . . . 16

*United States v. McNally*, 483 U.S. 250 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Mister*, 553 F. Supp. 2d 377 (D.N.J. 2008) . . . . . . . . . . . . . . . . . . . . . . 7, 18

*United States v. Nayak*, 769 F.3d 978 (7th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Numrich*, 144 F. Supp. 812 (D. Mass. 1956) . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Ochs*, 842 F.2d 515 (1st Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Rodriguez*, 319 F.3d 12 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 7, 18

*United States v. Skelos*, 707 Fed. Appx. 733 (2d Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . 14, 17

*United States v. Sorich*, 523 F.3d 702 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Sun-Diamond Growers of California*, 526 U.S. 398 (1999) . . . . . . . . . . . 8, 17

ii

*United States v. Terry*, 2011 WL 5008415 (N.D. Ohio 2011) . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Thompson*, 484 F.3d 877 (7th Cir. 2007) . . . . . . . . . . . . . . . . . 2, 10, 12, 13

*United States v. Tomasetta*, 429 F.2d 978 (1st Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Wilkie v. Robbins*, 551 U.S. 537(2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

## Statutes

18 U.S.C. § 201(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 11

18 U.S.C. §§ 1341, 1343, and 1346 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

18 U.S.C. § 1349  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

18 U.S.C. § 666(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

18 U.S.C. § 371 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 6

18 U.S.C. § 1951 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

## Rules

Fed. R. Crim. P. 12(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Fed. R. Crim. P. 12(b)(3)(B)(v) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 6

## Other Authorities

Black's Law Dictionary (11th ed. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

## I.      INTRODUCTION

One of the focal points of the government's allegations in this case is an alleged conspiracy between individual parent Defendants and William "Rick" Singer ("Singer") to gain admission for their children to the University of Southern California ("USC") by allegedly "bribing" Donna Heinel ("Heinel"), a senior associate athletic director at USC, to falsely present their children for admission as recruited athletes.

Based on this alleged conspiracy, the government has charged the Defendants with, among other crimes, conspiracy to commit honest services mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and 1346, in violation of 18 U.S.C. § 1349, and conspiracy to commit federal programs bribery, 18 U.S.C. § 666(a)(2), in violation of 18 U.S.C. § 371.  *See* ECF No. 732, Fourth Superseding Indictment, Counts One and Two.  Both of these Counts require the government to allege and prove that the Defendants intended to effect a corrupt "quid pro quo, the exchange of something of value for influence over some official conduct of the recipient," Donna Heinel.  *United States v. Gracie*, 731 F.3d 1, 3 (1st Cir. 2013).  The government has asserted that two sets of payments fulfill that requirement: first, payments from Defendants and Singer *to USC accounts* over which the government claims Heinel exercised discretion or control, or otherwise benefitted from professionally; and second, payments from Singer's foundation to Heinel in her personal capacity starting in July 2018.  Both of these allegations fail to state quid pro quo bribery as a matter of law.

There are two defects reflected on the face of the Fourth Superseding Indictment:

First, the alleged "bribes" that consist of checks made payable to USC, and deposited into USC accounts, were not bribes at all.  Payments made *to the purported victim* are not bribe payments, and the government has identified no case holding otherwise.  Nor do these payments involve any "private gain" for Heinel (or any third-party designee), which is an

1

essential element of bribery.   As the Seventh Circuit concluded when faced with a similar argument: "The United States has not cited, and we have not found, any appellate decision holding that an increase in official salary, or a psychic benefit such as basking in a superior's approbation (and thinking one's job more secure), is the sort of 'private gain' that makes an act criminal under § 1341 and § 1346."   *United States v. Thompson*, 484 F.3d 877, 884 (7th Cir. 2007) (Easterbrook, J.).   Judge Woodlock has already echoed the exact same sentiment in this very case.   *See United States v. Bizzack*, 19-cr-10222-DPW, Sentencing Tr. at 15-16.   Moreover, even if payments to USC which benefitted Heinel's professional standing could constitute the type of private gain necessary to support a bribery charge, there is no allegation that the Defendants *knew* their payments to USC would benefit Heinel's professional standing.   The alleged payments to USC thus do not constitute bribes, let alone knowing bribes.

Second, the indictment alleges that in July 2018, Singer began compensating Heinel in her personal capacity to help facilitate admission of his clients to USC.   The government alleges that Singer made these payments pursuant to an agreement he reached with Heinel sometime between December 4, 2017 and July of 2018 – *after* Heinel had already presented the Defendants' children for admission through the USC subcommittee for athletics admissions. Putting aside that the government has not alleged that the Defendants even had knowledge of this alleged agreement,[1] the timing of the agreement renders the payments at most "gratuities," not bribes.   *See United States v. Fernandez*, 722 F.3d 1, 19 (1st Cir. 2013).   Under controlling law, any such gratuity is insufficient to sustain a conviction for conspiracy to commit either honest services fraud or federal programs bribery.   *See id.*

---

[1]   As discussed in the Memorandum in Support of Defendants' Motion to Dismiss the Indictment with Prejudice or, in the Alternative, for Suppression of Evidence Based on Government Misconduct and for Discovery and an Evidentiary Hearing, ECF No. 972, Singer's personal iPhone Notes confirm that the government instructed Singer to call Defendants to create the impression that the donations to USC were actually bribe payments to Heinel.

Accordingly, pursuant to Fed. R. Crim. P. 12(b)(3)(B)(v), this Court should dismiss the athletic recruitment-related bribery charges for failure to state an offense as a matter of law.[2] Specifically, the Court should dismiss that part of Count One of the Fourth Superseding Indictment that alleges conspiracy to commit honest services fraud against USC and Georgetown University[3] as well as the entirety of Count Two alleging conspiracy to commit federal programs bribery.[4]

## II.    RELEVANT ALLEGATIONS FROM THE FOURTH SUPERSEDING INDICTMENT

The Fourth Superseding Indictment ("FSI") alleges very similar facts for the defendants charged with conspiring with Singer to have their children admitted to USC.  For example, the FSI alleges that Diane and Todd  Blake: (i) "agreed with Singer to pay an amount, ultimately totaling $250,000, to facilitate their daughter's admission to USC as a purported volleyball recruit"; (ii) that "Heinel presented the BLAKES' daughter to the USC subcommittee for athletic admissions as a purported volleyball recruit on or about September 7, 2017"; (iii) that "[o]n or about September 16, 2017, Singer instructed TODD BLAKE to send a check for $50,000 to 'USC Women's Athletics c/o Senior Women's Administrator Donna Heinel," and that "TODD BLAKE

---

[2]   Although this Motion focuses on the government's allegations concerning parent Defendants who are alleged to have "bribed" Donna Heinel at USC, the legal analysis of section IV, *infra*, is equally applicable to the allegations concerning Defendant John Wilson, who is alleged to have "bribed" USC water polo coach Jovan Vavic by making a contribution to USC, FSI ¶ 237, and Defendant Elisabeth Kimmel, who is alleged to have "bribed" Georgetown tennis coach Gordon Ernst by making a contribution to Georgetown, FSI ¶ 172-174.

[3]    The government's other theory underlying Count One – that the Defendant parents conspired to defraud universities of "property" in the form of admissions slots – is the subject of a separate motion to dismiss.

[4]    Defendants Diane and Todd Blake, Gamal Abdelaziz, Mossimo Giannulli and Lori Loughlin, Elisabeth Kimmel, William McGlashan, Marci Palatella, John Wilson, Homayoun Zadeh, Robert Zangrillo, I-Hsen "Joey" Chen, and Amy and Gregory Colburn join in this Motion.  Defendants I-Hsen "Joey" Chen and Amy and Gregory Colburn join as to Count One only, as they are not charged in Count Two.

mailed a $50,000 check to USC Women's Athletics that same day;[5] and (iv) "[o]n or about February 5, 2018, Todd Blake wired $200,000 to [Singer's charity, the Key Worldwide Fund]." ECF No. 732, FSI ¶¶ 123, 127, 129-130.  The FSI includes similar allegations involving Heinel's presentation of applicants to the subcommittee for athletic admissions followed by donations to USC accounts and subsequent donations to Singer's charity against the other USC Defendants, or, as to Zangrillo, an allegation that a donation related to an agreement that the USC Athletic Department, through Heinel, would present his daughter to Admissions through its VIP program as an athlete.  *See* ECF No. 732, FSI ¶ 267.  Although the specific facts vary for each of the Defendants, the variances are not germane to the analysis in this Motion.[6]

In the FSI, the government alleges that at some point *after* Heinel presented the Defendants' children for admission, Singer and Heinel entered into an agreement by which Singer would pay Heinel personally for her services:

> On or about December 4, 2017, Heinel instructed Singer that a payment of $200,000 for ABDELAZIZ's daughter should be directed to the gift account for the Galen Center, the arena for USC's basketball and volleyball programs. *Subsequently, Heinel and Singer agreed that instead of directing this money to USC, Heinel would receive payments of $20,000 per month personally in exchange for her assistance in securing the admission of ABDELAZIZ's daughter, and the children of other Singer clients, to USC as purported athletic recruits.*

---

[5]   There is no allegation (much less any evidence) that Heinel subsequently embezzled or otherwise misappropriated these funds.

[6]   As noted, *see supra* note 2, the allegations against Defendants Wilson and Kimmel do not involve Heinel.  Kimmel is alleged to have "bribed" Georgetown tennis coach Gordon Ernst by making a donation to Georgetown via Singer's foundation, FSI ¶ 165-75.  The specific facts concerning Wilson are discussed in section VI, *infra*.  Defendant McGlashan is also somewhat differently situated in that the government has not alleged he made any payment to USC, Heinel, or Singer's charity in relation to the alleged scheme.  These differences in the factual allegations are not material to the legal argument that a payment to the alleged bribery victim is not a bribe.

*Id.* ¶ 119 (emphasis supplied).[7]  As a result of this subsequent agreement, the government alleges that "[i]n or about July 2018, [Singer's foundation] began paying Heinel $20,000 per month in exchange for facilitating the admission of ABDELAZIZ's daughter, and the children of other Singer clients, to USC as purported athletic recruits."  *Id.* ¶ 121.[8]

Based on these factual allegations, the FSI charges the Defendants with:

1) Conspiracy to commit honest services mail and wire fraud, 18 U.S.C. §§ 1341, 1343, and 1346, in violation of 18 U.S.C. § 1349, by "[b]ribing athletic coaches and university

---

[7]      Consistent with the FSI, the government has argued in other filings that "according to Singer, he and Heinel initially agreed [on December 4, 2017], that money from Abdelaziz would be directed to an account at USC that Heinel controlled, *but later agreed* that the money would be directed to her personally, in increments of $20,000 per month."  ECF. No. 670, at 8 (emphasis supplied).  The government further explained: "Singer subsequently agreed with Heinel to redirect a total of $400,000 to Heinel personally, in monthly installments of $20,000, in exchange for her assistance in securing the admission of Abdelaziz's daughter and the children of Singer's other clients."  *Id.*  Singer has informed the government that Diane and Todd Blake were not among the "other Singer clients" on whose behalf the subsequent monthly payments to Heinel were purportedly made.  *See* Exhibit A, Report of December 13, 2018 FBI Interview of Singer, at p. 1. The government has also made clear that none of the payments made by Mossimo Giannulli and Lori Loughlin were made to Heinel in a personal capacity.  *See* ECF No. 736 at p. 21 n. 14.

[8]      According to an FBI report of an interview with Singer, Singer explained the genesis of his alleged agreement to pay Heinel as follows:

> At the beginning, HEINEL was not personally taking her share of the money. In CHS's mind he/she was holding $400,000 for HEINEL for her share for getting students into USC. HEINEL knew that she was owed money from CHS because they had a conversation about it. *In the late fall or spring 2017*, CHS had a conversation with HEINEL about her money. HEINEL wanted to take $100,000 to $200,000 out all at once but CHS told her it was not smart to do so. CHS offered HEINEL a consulting job at Counting Stars. HEINEL did not perform any consulting services but received $20,000 a month.

Exhibit B, Report of September 27, 2018 FBI Interview of Singer, at p. 2 (emphasis supplied). As Magistrate Judge Kelly has pointed out, *see* Exhibit C, Transcript of February 28, 2020 hearing at p. 15, there appears to be a typographical error in this report, which should instead read "[i]n the late fall [2017] or spring [2018]."  This would be consistent with the allegation in the FSI of the agreement being reached sometime subsequent to December 4, 2017.  *See* ECF No. 732, FSI ¶ 119.

administrators to designate students as purported athletic recruits—with little or no regard for their athletic abilities and, in some cases, even though they did not play the sport they were purportedly recruited to play—and as members of other favored admissions categories, in violation of the coaches' and administrators' duties of honest services to their employers."  ECF No. 732, FSI ¶ 66(f); *see generally* Count One.

2) Conspiracy to commit federal programs bribery, 18 U.S.C. § 666(a)(2), in violation of 18 U.S.C. § 371, by "[p]aying bribes to USC athletic coaches and administrators in exchange for designating the defendants' children as purported athletic recruits—with little or no regard for their athletic abilities and, in some cases, even though they did not play the sport they were purportedly recruited to play—and as members of other favored admissions categories."  ECF No. 732, FSI ¶ 281; *see generally* Count Two.

## III.   LEGAL STANDARD

Under Federal Rule of Criminal Procedure 12(b)(3), a defendant must "raise[ ] by pretrial motion" any "defect in the indictment or information, including ... failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v).  An Indictment that fails to state an offense is subject to dismissal under Fed. R. Crim. P. 12(b)(3)(B)(v).  *See United States v. McCormack*, 31 F. Supp. 2d 176, 177 (D. Mass. 1998) (dismissing indictment where "the conduct allegedly engaged in by the Defendant" did not meet the elements of the statute at issue).  In deciding such a motion, the Court may resolve any questions of law that "can be determined without a trial on the merits."  Fed. R. Crim. P. 12(b)(3).  While it is generally sufficient for an indictment to track the language of a statute and to provide the defendant with notice of what conduct is challenged, the court may decide motions to dismiss charges that raise questions of law where the facts are not disputed or not capable of being disputed.  *See United States v. Brissette*, 919 F.3d 670, 676 (1st Cir. 2019).

6

An indictment must "specif[y] the elements of the offense charged, fairly apprise[] the defendant of the charge against which he must defend, and allow[] him to contest it without fear of double jeopardy." *United States v. Eirby*, 262 F.3d 31, 37–38 (1st Cir. 2001).  Where an indictment omits essential elements of the charged offense, it fails to inform the defendant of the specific crime that he is alleged to have committed, and the charge should be dismissed. *See United States v. Tomasetta*, 429 F.2d 978, 979 (1st Cir. 1970) (dismissal for failure to identify victim).  The words employed must "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Hamling v. United States*, 418 U.S. 87, 117 (1974).  "The mere conclusion that the defendant[s] [have] violated the statute does not supply the necessary factual allegations." *United States v. Numrich*, 144 F. Supp. 812, 813 (D. Mass. 1956).

## IV.   THE FEDERAL PROGRAMS BRIBERY AND HONEST SERVICES FRAUD CONSPIRACY COUNTS MUST BE DISMISSED BECAUSE PAYMENTS TO THE ALLEGED VICTIM UNIVERSITIES ARE NOT BRIBES AS A MATTER OF LAW.

A conviction for federal programs bribery in violation of 18 U.S.C. § 666(a)(2) requires proof of a knowing bribe or kickback.  *United States v. Fernandez*, 722 F.3d 1, 26 (1st Cir. 2013).  Following the Supreme Court's decision in *Skilling v. United States*, 561 U.S. 358 (2010), so too does a conviction for honest services fraud in violation of 18 U.S.C. § 1346. Consequently, a conviction for conspiracy to violate these statutes requires proof that the Defendants "knew the specific unlawful purpose of the payments charged in the indictment. . . .[that] the payments [made] were bribes." *United States v. Mister*, 553 F. Supp. 2d 377, 384, 387 (D.N.J. 2008); *see also United States v. Rodriguez*, 319 F.3d 12, 40 (1st Cir. 2003) (conspiracy charge requires government prove defendant "knew the unlawful purpose of the agreement.").

7

Bribery is defined at common law as "[t]he corrupt payment, receipt, or solicitation of a private favor for official action."  Black's Law Dictionary (11th ed. 2019); *see, e.g., United States v. Kemp*, 500 F.3d 257, 285 (3d Cir. 2007) (citing this definition in analyzing challenge to bribery theory underlying honest services fraud conviction).  Although the honest services fraud statute, 18 U.S.C. § 1346, does not define "bribery," federal courts commonly define it with reference to "federal statutes proscribing—and defining—similar crimes," such as the federal bribery statute, 18 U.S.C. § 201(b), and the federal programs bribery statute, 18 U.S.C. § 666(a)(2).  *See Skilling*, 561 U.S. at 412.  *See also McDonnell v. United States*, 136 S. Ct. 2355, 2365 (2016) (parties agreed to define bribery with reference to 18 U.S.C. § 201(b)).  Both § 201(b) and § 666(a)(2) speak in terms of corrupt agreements to exchange a thing of value in return for being influenced in the performance of an official act.  Section 201(b) makes it a crime to "directly or indirectly, corruptly give[], offer[] or promise[] anything of value to any public official . . . with intent . . . to influence any official act."  § 201(b)(1).  Section 666(a)(2) makes it a crime with respect to organizations receiving Federal funds to "corruptly give[], offer[], or agree[] to give anything of value to any person, with intent to influence or reward an agent of an organization . . . in connection with any business, transaction, or series of transactions of such organization . . . involving anything of value of $5,000 or more[.]"  Conviction under either statute requires proof of a corrupt "quid pro quo—a specific intent to give or receive something of value in exchange for an official act."  *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 404–05 (1999) (section 201(b)); *United States v. Fernandez*, 722 F.3d 1, 26 (1st Cir. 2013) (section 666(a)(2)).

In this case, the government has alleged that checks made payable to and deposited into accounts belonging to the alleged victim, USC, amounted to bribes of Heinel.  *See, e.g.*, ECF No. 732, FSI ¶ 280.  But as Judge Woodlock indicated at the sentencing of another parent,

Jeffrey Bizzack, who allegedly conspired to "bribe" Heinel to facilitate his son's admission to USC, a payment to USC's coffers is *not* a bribe of Heinel.[9]  The critical question, which Judge Woodlock correctly identified, is whether Bizzack intended that the money he paid to facilitate his son's admission to USC was "going to Ms. Heinel as a faithless employee as opposed to the institution [USC] itself."  Exhibit D, Bizzack Sentencing Tr. at 24.  In *Bizzack*, the government maintained that Heinel had been personally bribed in the amount of $160,000 (based on the $20,000 monthly payments which began in July 2018, *see* ECF No. 732, FSI ¶ 121), and that there were additional bribes in the form of "payments directly to USC but to accounts that she controlled and benefited from."  *Id.* at 15.  That assertion prompted the following exchange between Judge Woodlock and the government:

> THE COURT:  That's not a bribe, is it?  It's received by USC.  Then we've got a faithless employee.  That's a different issue from bribery, right?
>
> [AUSA] KEARNEY:  No, Your Honor, because in light of *Skilling*, there has to be a bribe or a kickback.
>
> THE COURT:  Yes, there does, I agree.  *And this is a case in search of a bribe or a kickback . . . . So now we're back to this question of what was the bribe that [Heinel] received?  Because it has to be to her, not some account that she controlled,* unless you say it was reasonably foreseeable to [Bizzack] that she was going to toy with that account.

*Id.* at 15-16 (emphasis supplied).[10]

---

[9]   Judge Woodlock appeared to accept Bizzack's plea to a single count of conspiracy to commit mail fraud only because there was an independent basis from bribery and honest services fraud to support that conviction: that Bizzack conspired to defraud USC through the knowing submission of falsified athletic credentials.  *See* Exhibit D, Bizzack Sentencing Tr. at 35-37.

[10]   Judge Woodlock is not the only judge in this district to have doubted the Government's bribery theory.  In response to the Government's argument at the sentencing of Stanford sailing coach John Vandemoer (during which the Government acknowledged that all alleged "bribe" monies went to the Stanford sailing program, and not to Vandemoer personally), Judge Zobel remarked:   "*You called them bribes but nothing – I mean, it's not clear to me what makes them a bribe.*"  Exhibit E, Vandemoer Sentencing Tr. at 8 (emphasis supplied).

The government's apparent answer to this gaping hole in the facts is to allege that in her capacity as Senior Associate Athletic Director, Heinel (1) exercised control or discretion over the accounts at USC or (2) benefitted professionally from the deposits. *See* ECF No. 732, FSI ¶ 280 (describing a purpose of the "USC Federal Programs Bribery Conspiracy" as "funding designated university accounts over which the bribe recipients exercised discretion or that otherwise benefited them professionally."). That argument fails on multiple grounds.

With regard to Heinel's alleged exercise of control or discretion over the USC accounts, as Judge Woodlock further observed, such control or discretion is irrelevant absent some allegation or evidence – which does not exist here – that Heinel subsequently embezzled or misappropriated the funds, and that this misappropriation was foreseeable to the Defendants. *See* Bizzack Tr. at 16 (Judge Woodlock stating that to constitute a bribe the payment "has to be to [Heinel], not some account that she controlled, *unless you say it was reasonably foreseeable to [Bizzack] that she was going to toy with that account*." (emphasis supplied)).

The vague allegation that donations made to the USC accounts "benefited [Heinel] professionally" does not criminalize what was, at worst, an unauthorized form of fundraising. Even prior to *Skilling* – when honest services fraud was not limited to bribes or kickbacks – courts rejected this type of "professional benefits" theory because it lacks any cognizable "private gain" occasioned by the scheme. *See United States v. Thompson*, 484 F.3d 877, 884 (7th Cir. 2007). The defendant in *Thompson* – a state employee in the procurement division – was convicted of honest services fraud for steering a state contract to a travel agency which her boss preferred for "political reasons" even though a competitor had earned higher scores in the state's competitive bidding process. *Id.* at 878-79. The government's theory was that by pleasing her boss, the defendant ensured herself a raise and job security, which constituted a

"private gain" sufficient to support a conviction for honest services fraud. *Id.* at 882. In reversing her conviction, Judge Easterbrook, writing for the panel, explained:

> The United States has not cited, and we have not found, any appellate decision holding that an increase in official salary, or a psychic benefit such as basking in a superior's approbation (and thinking one's job more secure), is the sort of "private gain" that makes an act criminal under § 1341 and § 1346. . . . We now hold that neither an increase in salary for doing what one's superiors deem a good job, nor an addition to one's peace of mind, is a "private benefit' for the purpose of § 1346.

*Id.* at 884.

Explicit in the common law definition of bribery and implicit in the statutory definitions is that there be some *private gain* which is being exchanged for official action. *See* Black's Law Dictionary (11th ed. 2019) (defining bribery as "[t]he corrupt payment, receipt, or solicitation of a *private favor* for official action." [emphasis supplied]); 18 U.S.C. 201(b) (criminalizing the giving of "anything of value *to any public official"* in exchange for official action [emphasis supplied]). This is the fatal flaw in the government's bribery theory which Judge Woodlock seized upon at the *Bizzack* sentencing. Even before *Skilling* limited honest services fraud "to the bribe-and-kickback core of the pre-[*United States v. McNally*, 483 U.S. 350 (1987)] case law[,]" 561 U.S. at 409, courts recognized that honest services fraud must involve some private gain which the Defendant either keeps for himself or diverts to a third party. As described in *McNally*, this pre-*McNally* case law held that "a public official owes a fiduciary duty to the public, and misuse of his office *for private gain* is a fraud." 483 U.S. at 355. *See United States v. Ochs*, 842 F.2d 515, 522 (1st Cir. 1988) (emphasis supplied) (describing pre-*McNally* case law in the area of honest services as establishing that officials' "misuse of their office . . . for private gain is a fraud proscribed by the federal mail fraud statute.").

Before *Skilling* limited honest services fraud to bribes and kickbacks, the Seventh Circuit imposed a limiting principle, which, although subsequently further circumscribed by *Skilling*,

11

continues to delineate conduct which is criminal under § 1346 from that which is not.  This is the requirement of "private gain for the officeholder."  *Thompson*, 484 F.3d at 883.  As the Seventh Circuit explained, the "purpose of the private gain requirement—and one that does not depend on who gets the spoils—is to prevent the conviction of individuals who have breached a fiduciary duty to an employer or the public, but have not done so for illegitimate gain."  *United States v. Sorich*, 523 F.3d 702, 710 (7th Cir. 2008).  The First Circuit applied a similar principle in *United States v. Czubinski*, 106 F.3d 1069, 1077 (1st Cir. 1997), in reversing the mail fraud conviction of an IRS employee who improperly accessed confidential tax records but did not misuse them for gain in any way.

While these pre-*Skilling* precedents held that a finding of private gain would support a conviction for honest services fraud even in cases not involving bribes or kickbacks, if anything, the Supreme Court's decision in *Skilling* implicitly *heightened* the requirement that there be a private gain by requiring the conduct to fit the traditional mold of a bribe or kickback, in which the fiduciary is lining his own pockets or otherwise benefiting his own private interests in exchange for taking official action in favor of the payor.  This is the essence of the disloyalty which the Supreme Court in *Skilling* felt was sufficiently well-defined (and sufficiently severe) to constitute a federal felony.  *See* 561 U.S. at 412-13.  Indeed, as the Seventh Circuit subsequently observed, *Skilling* "vindicated" – albeit further narrowed – the "private gain" rule. *United States v. Nayak*, 769 F.3d 978, 981 (7th Cir. 2014) (internal quotations omitted; emphasis supplied) (observing that after *Skilling*, "only bribery or kickbacks, *rather than any private gain whatsoever*, can be used to show honest-services fraud.").  Thus, the Seventh Circuit has continued to apply *Thompson* and its other "private gain" precedents after *Skilling*, stating again that an employee's "interest in keeping her job" or "interest in receiving a salary"

12

is "not a form of private benefit for the purpose of federal criminal statutes." *United States v. Blagojevich*, 794 F.3d 729, 737 (7th Cir. 2015) (citing *Thompson*, 484 F.3d 877).

Even if the donations to USC somehow constituted the necessary private gain to Heinel, there is no allegation that the Defendants *knew* of that private gain.  Nothing in the indictment or common sense supports the notion that, when the Defendants allegedly made payments to legitimate USC accounts, they somehow knew that those payments would benefit Heinel in her personal capacity (or any other USC insider).  To the extent the government's bribery theory turns on the fact that the payments personally benefitted Heinel in some way, the government must allege – and ultimately prove – that the Defendants were aware of that private benefit. The indictment's failure to make this allegation requires dismissal.

The government's efforts to avoid this law have been to no avail.

First, in responding to a motion to dismiss filed by Heinel in *United States v. Ernst,* the government did not cite to a single case supporting its theory that payments to USC accounts over which Heinel allegedly exercised discretion or control amounted to "bribes."  Instead, it rested its opposition solely on the alleged agreement between Singer and Heinel to pay Heinel $20,000 monthly, noting that this agreement and some of the payments thereunder pre-dated Heinel's performance of official acts with respect to certain of Singer's clients not charged in this case.  *See United States v. Ernst*, 19-cr-10081-IT, ECF No. 367 at p. 31 ("[E]ven assuming, arguendo, that payments made to university accounts controlled by the defendants could not constitute bribe monies—a point the government disputes—the Superseding Indictment [in *Ernst*] still supplies ample basis for the bribery charges in this case.").[11]

---

[11]    The Government fully appreciates the vulnerability of its bribery case, which is why it coerced Singer to lie when making his scripted, recorded calls to his clients long after their children had been admitted, and directed Singer not to mention on the calls that he had previously told the clients their payments would be "donation[s]" that would go "to the [university] program [and] not the coach," Exhibit F, Singer 10/2/18 Singer Note.  Singer's

Second, when pressed on its bribery theory in connection with discovery disputes in this case, the government has argued only that an indirect benefit to the alleged bribe-taker is sufficient to make out a corrupt quid pro quo.  But again, the government has not cited a single case – and we have been unable to find any – in which a payment *to the alleged victim* has been held to constitute a "bribe" sufficient to support a conviction for honest services fraud or federal programs bribery.  In a closely related context, the Supreme Court has held that "*efforts of Government employees to get property for the exclusive benefit of the Government*" do not qualify as Hobbs Act extortion "under color of official right," *Wilkie v. Robbins*, 551 U.S. 537, 565 (2007) (emphasis supplied), an offense which like § 1346 and § 666(a)(2) requires proof of a corrupt quid pro quo, *i.e.*, "the sale of public favors for private gain."  *See id.; McDonnell v. United States,* 136 S. Ct. at 2365 (explaining similarity in proof between honest services fraud and Hobbs Act extortion "under color of official right"); *United States v. Skelos*, 707 Fed. Appx. 733, 738 (2d Cir. 2017) (same).[12]  *Wilkie* involved civil claims brought by a landowner against federal government employees for allegedly violating the Hobbs Act, 18 U.S.C. § 1951, by using extortionate tactics to coerce the landowner to grant the federal government an easement over his land.  551 U.S. at 541.  The Supreme Court held that no violation of the Hobbs Act had occurred because, even if the federal officials had used extortionate tactics, they had done so not for private gain but rather to obtain property for the government.  *Id.* at 564-65.  Surveying

---

handwritten notes of the scripts the government provided to him for the recording sessions further demonstrate the emphasis the Government itself placed on this distinction:



Singer Handwritten Notes (SINGER-VOL016-005304).

[12]    As the Supreme Court has explained, at common law, "[e]xtortion by [a] public official was the rough equivalent of what we would now describe as 'taking a bribe.'"  *Evans v. United States*, 504 U.S. 255, 260 (1992).

the case law, the Court observed that it was "completely barren of an example of extortion under color of official right undertaken for the sole benefit of the Government." *Id.* at 565. That is because the essence of the offense – as with bribery – is the "*sale of public favors for private gain.*" *Id.* at 564 (emphasis supplied). Here, as in *Wilkie*, Heinel's efforts to raise funds for the exclusive benefit of USC – even if otherwise unauthorized or improper in some respect – does not amount to quid pro quo bribery.

Finally, all the so-called "indirect benefits" cases which the government has cited, *see, e.g.*, ECF No. 670, at 10-12, and which we have identified through our own research, involve different circumstances where remuneration was paid to relatives of the fiduciary, or third-party entities in which the fiduciary maintained an interest.

For example, the government has relied on the Second Circuit's decision in *United States v. DeMizio*, 741 F.3d 373 (2d Cir. 2014). DeMizio was an employee of Morgan Stanley who was convicted of honest services fraud for using his position to direct Morgan Stanley business to brokerages who agreed to employ his father and brother in "low show" jobs. On appeal, he argued that no kickback had been proven because the benefit he exacted through the scheme accrued to his father and brother and not to him personally. Against those facts, the Second Circuit rejected DeMizio's "contention that a payment in a private-sector scheme does not qualify as a kickback unless the defendant employee himself or herself receives the payoff." *Id.* at 382. In doing so, the court noted that while there undoubtedly must be some private benefit to the defendant, payment of commissions to DeMizio's father and brother satisfied that requirement because DeMizio had been supporting them financially and "plainly" had an interest in their well-being. *Id. DeMizio* provides no support for the government's position here that payments *to the alleged victim USC* constitute bribes of Heinel. The Second Circuit certainly did not hold or even suggest that a benefit accruing *to Morgan Stanley* would be sufficient to

constitute a kickback to DeMizio himself—which is precisely the position the government is taking here.

Other cases involving indirect benefits likewise provide no support for the government's position because, like *DeMizio*, they all involved some "private gain" which the defendant diverted to third parties in which he had a vested interest.  *See United States v. Hausmann*, 345 F.3d 952, 954 (7th Cir. 2003) (kickback arrangement required payments to, inter alia, "individuals who had provided miscellaneous personal services to Hausmann or his relatives . . . and . . . charities that Hausmann supported"); *United States v. Margiotta*, 688 F.2d 108, 113 (2d Cir. 1982) (involving "'kickbacks' to brokers selected by political leaders of local election districts in the Town who were loyal to [the defendant]"); *United States v. McGregor*, 2011 WL 1576950, at *4 (M.D. Ala. 2011) (campaign contributions "result in a direct benefit to the candidate, who can use the funds, at his or her discretion, for all manner of self-promotion in order to secure an election victory"); *United States v. Terry*, 2011 WL 5008415, at *5 (N.D. Ohio 2011) ("Russo was happy to provide assistance in the form of campaign contributions and other benefits in exchange for official acts.  The jury could most certainly have concluded that the defendant personally benefited from this assistance as it was arguably instrumental in the defendant's bid to retain his seat as a common pleas judge").

## V.   THE ALLEGED AGREEMENT BETWEEN SINGER AND HEINEL TO MAKE PAYMENTS TO HEINEL PERSONALLY POST-DATES HEINEL'S PERFORMANCE OF OFFICIALS ACTS AND THEREFORE DOES NOT CONSTITUTE BRIBERY AS A MATTER OF LAW.

In opposing Heinel's motion to dismiss the bribery-related counts in *United States v. Ernst*, the government relied exclusively on the monthly payments which Singer began making to Heinel in July of 2018.  *See supra* p. 13.  Those payments have nothing to do with any of the Defendants whose children were accepted to USC – and whose payments were made – before then.  While the government is correct that the timing of *payments* is not necessarily dispositive

of whether a payment is a quid pro quo bribe or a mere "gratuity," the timing of the *agreement*

to make said payments is.  *United States v. Fernandez*, 722 F.3d 1, 19 (1st Cir. 2013).

The Supreme Court has explained the distinction between bribes and illegal gratuities as

follows:

> The distinguishing feature of each crime is its intent element. Bribery requires intent "to influence" an official act or "to be influenced" in an official act, while an illegal gratuity requires only that the gratuity be given or accepted "for or because of" an official act. In other words, for bribery there must be a *quid pro quo*—a specific intent to give or receive something of value *in exchange* for an official act. An illegal gratuity, on the other hand, may constitute merely a reward for some future act that the public official will take (and may already have determined to take), *or for a past act that he has already taken.*

*United States v. Sun–Diamond Growers of California*, 526 U.S. 398, 404-05 (1999) (third

emphasis added).  Thus, an agreement to make a payment to reward an act that has already

been performed is, at most, a "gratuity," not a quid pro quo bribe:

> Although the timing of the *payment* may not provide a conclusive answer as to whether that payment is a bribe or a gratuity, the timing of the *agreement to make or receive a payment* may: one cannot agree to perform an act in exchange for payment when that act has already been performed. Therefore, if the agreement to exchange a thing of value for an act is made after that act has been performed, that agreement cannot be properly viewed as an agreement to offer or accept a bribe.

*Fernandez*, 722 F.3d at 19 (emphasis in original).  This distinction between gratuities and bribes

applies with equal force to charges under the federal programs bribery and honest services

fraud statutes, both of which require proof of a quid pro quo bribe.  *See United States v.*

*Skelos*, 707 Fed. Appx. 733, 738 (2d Cir. 2017).

The government's allegations concerning Singer's payments to Heinel personally fail as a

matter of law.  The government alleges that Singer and Heinel did not agree that Singer would

compensate Heinel personally (via monthly "consulting" invoices) until sometime after

December 4, 2017.  ECF No. 732, FSI ¶ 119.  Indeed, the payments did not begin until July

2018, *id.* ¶ 121, making it likely that this alleged agreement was not reached until long after

December 4, 2017.  By the time this alleged agreement was made, however, Heinel had already presented the Defendants' children to the USC subcommittee for athletic admissions, thus completing Heinel's performance of official acts in connection with the alleged "scheme" to admit the Defendants' children to USC.  ECF No. 732, FSI ¶¶ 118, 127, 148, 159, 178, 220.[13] For example, Heinel presented the Blakes' daughter to the subcommittee on September 7, 2017.  *Id.* ¶ 127.  Likewise, Heinel presented Giannulli and Loughlin's daughters to the subcommittee on October 27, 2016, *id.* ¶ 148, and November 2, 2017, *id.* ¶ 159, and the government has acknowledged that none of their payments went to Heinel personally.  *See* ECF No. 736 at 21 n.14.  Because "one cannot agree to perform an act in exchange for payment when that act has already been performed," Singer's later agreement to compensate Heinel personally for her role in admitting his clients' children to USC was not a quid pro quo exchange but at most a gratuity.  *Fernandez*, 722 F.3d at 19.

Moreover, although the timing alone is dispositive, there is absolutely no allegation in the FSI that the Defendants had any knowledge of this subsequent agreement to send payments directly to Heinel in her personal capacity.  In order to convict the Defendants for conspiracy to commit bribery offenses, the government must prove they "knew the specific unlawful purpose of the payments charged in the indictment. . . . The government must prove not only purposeful action, but also that the Defendant[s] knew the payments [they made] were bribes."  *United States v. Mister*, 553 F. Supp. 2d, 377, 384, 387 (D.N.J. 2008); *see also United States v. Rodriguez*, 319 F.3d 12, 40 (1st Cir. 2003) (government must prove defendant

---

[13]   Defendant Zangrillo's daughter was admitted as a VIP "flagged" by Heinel for USC's special interest program.  Zangrillo's donation was sent months after he received notice of her admission.

"knew the unlawful purpose of the agreement"). Obviously, the Defendants could not have known "the specific, unlawful purpose" of an agreement that had not even been made yet.[14]

## VI. Defendant John Wilson's Joinder

Defendant John Wilson joins this Motion for the reasons presented in section IV. His case, on which he elaborates in a separate brief,[15] involves a different fact pattern from the one described in this Motion.

Wilson's son applied to USC in late 2013 and was accepted in early 2014. FSI ¶¶ 225, 234. At the time, Singer had not yet met Heinel, and she played no role in Wilson's son's admission. Wilson agreed to donate $200,000 to USC and its water polo program, where Wilson's son went on to play. Singer stole $100,000 of that payment. USC received the remainder, identified Wilson as the donor, and thanked Wilson for the donation. FSI ¶ 237. No part of Wilson's donation went into any USC employee's pocket.

The reasons presented in section IV therefore make the "bribery" charges against Wilson (in Counts One and Two) untenable. Neither Wilson's donation to USC, nor the similar donations he discussed with Singer in 2018-2019, were "private favors" to any USC individuals. Those donations neither involved nor contemplated any "private gain." They were payments directly to USC, the "victim." As such, they do not amount to bribes and kickbacks within the meaning of *Skilling* and § 666. Indeed, permitting the Department of Justice to prosecute such

---

[14] Although this section of the Motion focuses on the government's allegations concerning payments from Singer to Heinel, the legal analysis of section V, is equally applicable to the allegations concerning Defendant Elisabeth Kimmel who is alleged to have "bribed" Georgetown tennis coach Gordon Ernst despite no evidence that she knew any money was going to Ernst. FSI ¶ 165-75. In fact, even Singer was unaware that Ernst was keeping the money for himself. *See* Exhibit G, Singer Reports-000013-14 (stating that Singer believed the payments he made to Ernst were going to the tennis program at Georgetown until Ernst began talking about buying a house on the Cape.)

[15] Defendant John Wilson's Consolidated Memorandum of Law in Support of His Motions to Sever, to Dismiss, and to Strike, ECF No. 995.

donations as federal crimes could severely chill the routine fundraising efforts of both educational institutions and other types of public charities.

Section V of this Motion, however, is not relevant to Wilson's case.  Because his donation is not even alleged to have enriched any individual, that donation is not a gratuity either.

## VI.   CONCLUSION

For the reasons set forth above, Defendants Diane and Todd Blake, Gamal Abdelaziz, Mossimo Giannulli and Lori Loughlin, Elisabeth Kimmel, William McGlashan, Marci Palatella, John Wilson, Homayoun Zadeh, Robert Zangrillo, I-Hsen "Joey" Chen, and Amy and Gregory Colburn respectfully submit that, as a matter of law, this Court should dismiss for failure to state an offense (1) Count One insofar as it alleges conspiracy to commit honest services fraud against USC and Georgetown University; and (2) the entirety of Count Two alleging conspiracy to commit federal programs bribery.[16]

Respectfully submitted,


/s/ David E. Meier
David E. Meier (BBO #341710)
Christian G. Kiely (BBO #684308)
Todd & Weld LLP
One Federal Street, 27th Floor
Boston, MA  02110
(617) 720-2626
dmeier@toddweld.com
ckiely@toddweld.com

---

[16] Defendants I-Hsen "Joey" Chen and Amy and Gregory Colburn join as to Count One only, as they are not charged in Count Two.

/s/ Stephen H. Sutro
Stephen H. Sutro, Esq.
Duane Morris, LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
Telephone: (415) 957-3008
Facsimile: (415) 276-9855
SHSutro@duanemorris.com

*Counsel for Diane and Todd Blake*

/s/ William J. Trach

Sean M. Berkowitz (*admitted pro hac vice*)       William J. Trach (BBO #661401)
LATHAM & WATKINS LLP                              LATHAM & WATKINS LLP
330 North Wabash Avenue                           200 Clarendon Street
Suite 2800                                        Boston, MA 02116
Chicago, IL 60611                                 Phone: 617.948.6000
Phone: 312.777.7700                               Fax: 312.993.9767
Fax: 312.993.9767                                 william.trach@lw.com
sean.berkowitz@lw.com

                                                  Roman Martinez (*admitted pro hac vice*)
Perry J. Viscounty (*admitted pro hac vice*)      LATHAM & WATKINS LLP
LATHAM & WATKINS LLP                              555 Eleventh Street, NW
650 Town Center Drive                             Suite 1000
20th Floor                                        Washington, DC 20004
Costa Mesa, CA 92626                              Phone: 202.637.2200
Phone: 714.540.1235                               roman.martinez@lw.com
perry.viscounty@lw.com

*Counsel for Mossimo Giannulli and Lori Loughlin*

George W. Vien (BBO #547411)                      David C. Scheper (*admitted pro hac vice*)
Joshua N. Ruby (BBO #679113)                      SCHEPER KIM & HARRIS LLP
DONNELLY, CONROY & GELHAAR, LLP                   601 West Fifth Street, 12th Floor
260 Franklin Street, Suite 1600                   Los Angeles, CA 90071
Boston, MA 02110                                  Phone: 213.613.4655
Phone: 617.720.2880                               Fax: 213.613.4656
Fax: 617.720.3554                                 dscheper@scheperkim.com
gwv@dcglaw.com
jnr@dcglaw.com                                    *Counsel for Lori Loughlin*

Mark E. Beck (*admitted pro hac vice*)

Mark Beck Law, A Professional Corporation
350 West Colorado Boulevard
Suite 200
Pasadena, CA 91105
Phone: 213.596.7828
mbeck@markbecklaw.com

*Counsel for Mossimo Giannulli*

/s/ Brian T. Kelly
Brian T. Kelly (BBO No. 549566)
Joshua C. Sharp (BBO No. 681439)
Lauren M. Maynard (BBO No. 698742)
NIXON PEABODY LLP
53 State Street
Boston, MA 02109
617-345-1000
bkelly@nixonpeabody.com
jsharp@nixonpeabody.com
lmaynard@nixonpeabody.com

Robert Sheketoff (BBO No. 457340)
One McKinley Square
Boston, MA 02109
617-367-3449

*Counsel for Gamal Abdelaziz*

/s/ David S. Schumacher
David S. Schumacher (BBO #647917)
HOOPER, LUNDY & BOOKMAN, P.C.
470 Atlantic Avenue, Suite 1201
Boston, MA 02210
(617) 532-2700
(617) 345-3927 (fax)
dschumacher@health-law.com

Patric Hooper (*pro hac vice*)
HOOPER, LUNDY & BOOKMAN, P.C.
1875 Century Park East, Suite 1600
Los Angeles, California 90067-2517
(310) 551-8111

/s/ Reuben Camper Cahn
Reuben Camper Cahn (*pro hac vice*)
Jennifer L. Keller (*pro hac vice*)
Chase A. Scolnick (*pro hac vice*)
KELLER/ANDERLE LLP
18300 Von Karman Avenue, Suite 930
Irvine, CA 92612
Tel: (949) 476-8700
rcahn@kelleranderle.com

*Counsel for I-Hsen "Joey" Chen*

/s/ R. Robert Popeo
R. Robert Popeo (BBO # 403360)
Mark E. Robinson (BBO # 423080)
Eóin P. Beirne (BBO # 660885)
Cory S. Flashner (BBO # 629205)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 348-1605 (telephone)
(617) 542-2241 (fax)
rpopeo@mintz.com
mrobinson@mintz.com
ebeirne@mintz.com
csflashner@mintz.com

*Counsel for Elisabeth Kimmel*

/s/ Michael K. Loucks
Michael K. Loucks (BBO #305520)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM
LLP
500 Boylston Street
Boston, MA 02116
(617) 573-4800
michael.loucks@skadden.com

Jack P. DiCanio (*pro hac vice*)
Allen J. Ruby (*pro hac vice*)

22

(310) 551-8181 (fax)
phooper@health-law.com

Jordan Kearney (*pro hac vice*)
HOOPER, LUNDY & BOOKMAN, P.C.
575 Market Street, Suite 2300
San Francisco, CA 94105
(415) 875-8500
(415) 875-8519 (fax)
jkearney@health-law.com

*Counsel for Amy and Gregory Colburn*

/s/ Jack W. Pirozzolo
Jack W. Pirozzolo (BBO # 564879)
jpirozzolo@sidley.com
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, MA 02109
(617) 223-0304

John C. Hueston (*pro hac vice*)
jhueston@hueston.com
Marshall Camp (*pro hac vice*)
mcamp@hueston.com
HUESTON HENNIGAN LLP
523 W. 6th Street, Suite 400
Los Angeles, CA 90014
(213) 788-4340

*Counsel for William McGlashan, Jr.*

/s/ Michael Kendall
Michael Kendall (BBO # 544866)
Yakov Malkiel (BBO # 689137)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com
yakov.malkiel@whitecase.com

SKADDEN, ARPS, SLATE, MEAGHER & FLOM
LLP
525 University Avenue
Palo Alto, CA 94301
(650) 470-4500
jack.dicanio@skadden.com
allen.ruby@skadden.com

*Counsel for Defendant Marci Palatella*

/s/ Martin G. Weinberg
Martin G. Weinberg
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

Matthew L. Schwartz (*admitted pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Tel.: (212) 446-2300
Fax: (212) 446-2350
E-mail:  mlschwartz@bsfllp.com

*Counsel for Robert Zangrillo*

Andrew E. Tomback (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8428
andrew.tomback@whitecase.com

*Counsel for John Wilson*

/s/ Tracy A. Miner
Tracy A. Miner (BBO No. 547137)
Megan A. Siddall (BBO No. 568979)
Miner Orkand Siddall LLP
470 Atlantic Ave, 4th Floor
Boston, MA 02110
Tel.: (617) 273-8377
Fax: (617) 273-8004
tminer@mosllp.com
msiddall@mosllp.com

*Counsel for Homayoun Zadeh*




                                        *Counsel for Diane and Todd Blake*


Dated:  April 1, 2020

**CERTIFICATE OF SERVICE**

I, David E. Meier, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 1, 2020.

/s/ David E. Meier
David E. Meier