IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA,              )
                                       )
                Plaintiff              )
                                       )
        -VS-                           )   Criminal No. 19-10080-NMG
                                       )   Pages 1 - 22
DAVID SIDOO, et al,                    )
                                       )
                Defendants             )


**HEARING**
**(COURTROOM AND REMOTE BY VIDEO)**


BEFORE THE HONORABLE M. PAGE KELLEY
UNITED STATES MAGISTRATE JUDGE




                        United States District Court
                        1 Courthouse Way, Courtroom 24
                        Boston, Massachusetts  02210
                        April 9, 2020, 3:05 p.m.








                    LEE A. MARZILLI
                 OFFICIAL COURT REPORTER
              United States District Court
              1 Courthouse Way, Room 7200
                   Boston, MA  02210
                    (617)345-6787

1    A P P E A R A N C E S:

2        ERIC S. ROSEN, ESQ., JUSTIN D. O'CONNELL, ESQ., and
     KRISTEN A. KEARNEY, ESQ., Assistant United States Attorneys,
3    Office of the United States Attorney, 1 Courthouse Way,
     Room 9200, Boston, Massachusetts, 02210, for the Plaintiff.

4
         MARTIN G. WEINBERG, ESQ., Martin G. Weinberg, PC,
5    20 Park Plaza, Suite 1000, Boston, Massachusetts, 02116,
     for David Sidoo and Robert Zangrillo.

6
         DAVID S. SCHUMACHER, ESQ., Hooper, Lundy & Bookman, P.C.,
7    470 Atlantic Avenue, Suite 1201, Boston, Massachusetts, 02210,
     appearing for Gregory Colburn.

8
         BRIAN T. KELLY, ESQ., JOSHUA C.H. SHARP, ESQ.,
9    and LAUREN MAYNARD, ESQ., Nixon Peabody LLC, Exchange Place,
     53 State Street, Boston, Massachusetts, 02109, for Gamal
10   Abdelazis.

11       STEPHEN H. SUTRO, ESQ., Duane Morris LLP,
     Spear Tower, One Market Plaza, Suite 2200, San Francisco,
12   California, 94105-1127, for Diane Blake.

13       DAVID E. MEIER, ESQ., Todd & Weld,
     One Federal Street, 27th Floor, Boston, Massachusetts, 02110,
14   for Diane Blake.

15       REUBEN CAMPER CAHN, ESQ., Keller/Anderle LLP,
     18300 Von Karman Avenue, Suite 930, Irvine, California, 92612,
16   for I-Hsin Chen.

17       SEAN M. BERKOWITZ, ESQ., Latham & Watkins LLP,
     330 North Wabash Avenue, Suite 2800, Chicago, Illinois, 60611,
18   for Mossimo Giannulli.

19       GEORGE W. VIEN, ESQ., Donnelly, Conroy & Gelhaar, LLP,
     260 Franklin Street, Boston, Massachusetts, 02110, for Mossimo
20   Giannulli.

21       EOIN BEIRNE, ESQ. and CORY S. FLASHNER, ESQ.,
     Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, PC, One
22   Financial Center, 42nd Floor, Boston, Massachusetts, 02111,
     for Elizabeth Kimmel.

23
         JACK W. PIROZZOLO, ESQ., Sidley Austin LLP,
24   60 State Street, 34th Floor, Boston, Massachusetts, 02109,
     for William McGlashan, Jr.

25

1    A P P E A R A N C E S:   (Continued)

2        JOHN C. HUESTON, ESQ., Hueston Hennigan,
     620 Newport Center Drive, Suite 1300, Newport Beach,
3    California, 90014, for William McGlashan, Jr.

4        JACK P. DiCANIO, ESQ., Skadden, Arps, Slate, Meagher &
     Flom LLP, 525 University Avenue, Palo Alto, California, 94301,
5    for Marci Palatella.

6        MICHAEL K. LOUCKS, ESQ., Skadden, Arps, Slate, Meagher &
     Flom LLP, 500 Boylston Street, Boston, Massachusetts, 02116,
7    for Marci Palatella.

8        ANDREW E. TOMBACK, ESQ., White & Case LLP,
     1221 Avenue of the Americas, New York, New York, 10020,
9    for John Wilson.

10       MICHAEL KENDALL, ESQ. and YAKOV MALKIEL, ESQ.,
     White & Case LLP, 75 State Street, Boston, Massachusetts,
11   02109, for John Wilson.

12       TRACY A. MINER, ESQ., Miner Orkand Siddall LLP,
     470 Atlantic Avenue, 4th Floor, Boston, Massachusetts, 02210,
13   for Homayoun Zadeh.

14

15

16

17

18

19

20

21

22

23

24

25

<u>P R O C E E D I N G S</u>

1

2          THE CLERK:  Okay, everyone, so Judge Kelley has

3   entered the hearing.

4          And so, Judge, I've gone through and done attendance,

5   so I won't have everyone state their name again.  So I'm going

6   to call the case and we're going to get started.

7          Today is Thursday 9, 2020, and we're on the record in

8   Criminal Case No. 19-10080, the United States v. Sidoo, et al,

9   the Honorable M. Page Kelley presiding.

10          Judge, I think you might be muted.

11          THE COURT:  Okay, how's that?

12          THE CLERK:  That's good.

13          THE COURT:  Great.  Okay, good afternoon.  So I'm just

14   going to assume, as Ms. Belmont said, that everyone, every

15   defendant is represented here.  And the reason I called this

16   conference is that I have spoken recently with Judge Gorton,

17   and, as you probably have surmised, he's very interested in

18   keeping the case on a track for the October trial date.  And I

19   wanted to inform you of the schedule, which I consider to be a

20   change in the schedule, and so I wanted to tell you as soon as

21   possible, and I will post all these dates on the docket

22   immediately after this hearing.

23          So the status conference on May 5 is going to be a

24   final status conference, and the case will go to the District

25   Court at that time.  I appreciated getting the chart outlining

1    the status of the discovery requests, which is 1064 on the

2    docket, and I was glad to see the government respond to that

3    today.  And I'm really glad the parties seem to be negotiating

4    the production of discovery, and I hope you can continue to

5    cooperate in this way, and that you will file motions for

6    discovery only as a last resort when absolutely necessary.

7            So here are the dates concerning discovery practice

8    going forward:  The government will complete its production of

9    discovery to the defendants by May 5.  I know that some of the

10   dates on the government's status report were beyond that date,

11   and I did review that report with Judge Gorton just before this

12   hearing, and these are the dates that he wishes to be set.  So

13   the government's production should be completed by May 5.  The

14   defendants shall file any remaining discovery motions by

15   May 22.  And since that date is beyond the date of May 5 --

16   that is, when the case will go up to Judge Gorton -- then

17   obviously those discovery motions go to Judge Gorton per his

18   order, and the government then will have until June 5 to

19   respond to the defendants' discovery motions.  So Judge Gorton

20   is expecting that discovery disputes will be resolved in June

21   and that discovery will be complete, and then the case will be

22   ready to move forward toward trial.

23           So there are seven or eight discovery motions still

24   outstanding on the docket, and those motions will be denied

25   without prejudice.  And just to run through them, that's

1    No. 648, Mr. Abdelaziz's motion to compel *Brady* material;

2    No. 681, the motion for Title III material filed by multiple

3    defendants; No. 693, the motion to compel *Brady* materials by

4    Defendants Mr. Giannulli and Ms. Loughlin; No. 696, motion to

5    compel *Brady* material by Mr. McGlashan; No. 699, the motion to

6    compel by Mr. Wilson; No. 801, the motion to compel by

7    Mr. Zangrillo; No. 865, the motion to compel information

8    concerning taxes by Mr. Wilson.

9          I think some of these were resolved, and the

10   government has provided defendants with a lot of the categories

11   of evidence that were requested in those motions.  And, at any

12   rate, the government and the defendant should confer, and by

13   the date May 22, when defendants file their motions to compel

14   any outstanding discovery, you can fold into it any outstanding

15   requests from those motions, things that can't be worked out

16   between the parties.

17         So in preparation for the final status conference on

18   May 5, I would ask the parties by close of business on May 1,

19   which is the Friday before that Tuesday, to file a joint final

20   status report and just set out the regular information that you

21   would; namely, whether anyone is asking that their case be set

22   up for a Rule 11 hearing rather than for trial, the probable

23   length of trial, whether any further motions other than the

24   discovery motions -- well, never mind, I don't think that's --

25   strike that -- whether any defendant intends to raise a defense

1    of insanity or public authority, and, if you can agree on it,

2    what timetable the parties want for expert disclosures.  I

3    don't even know if anyone is intending to put on any experts,

4    but I think it's prudent to go ahead and include those dates.

5    And if you want my suggestion, I would suggest 60 days for the

6    government and 30 days for defendants, but I'm open to whatever

7    dates the parties are able to agree to.

8          So I'm happy to hear from anyone who has any questions

9    or wants to bring up any other issues.

10         Okay, so I'm not hearing anything.  If you're trying

11   to say something and you're not making yourself heard, I don't

12   know what to tell you to do.  You can, like, wave your hands.

13         MR. HUESTON:  Your Honor, it's John Hueston, but I

14   think Marty had a point to address.  I want to make sure that

15   he hasn't somehow had technical difficulty, and if not, I'll

16   follow up.

17         MR. WEINBERG:  I'm here, if I could be heard.

18         THE COURT:  Yes, absolutely.

19         MR. WEINBERG:  Judge, we were just hoping that with

20   the government signaling a May 15 and your Honor setting a

21   May 5 date for the final production of discovery, that your

22   Honor may reconsider and instead order the government to

23   produce it by April 30 or May 1, so at least at the final

24   status conference we could advise the Court what remaining

25   discovery issues remain and what discovery motions we had.  I

1    know your Honor set a schedule after the final status

2    conference for the formal filing of motions, but we thought we

3    collectively could be at least more informative with the Court,

4    since your Honor has spent so many months resolving discovery

5    disputes and hearing us and mastering some of the nuances of

6    the discovery production issues, that if the government, again,

7    was required to produce the final discovery four or five days

8    before the current date, we could be more helpful to the Court,

9    and through the Court to Judge Gorton, in identifying any major

10   discovery issues that remain.

11        THE COURT:  Okay.  And does someone from the government

12   want to respond to that?

13        MR. ROSEN:  Am I on?  Okay.  Eric Rosen here.  I mean,

14   Judge, we're in the middle of a pandemic where everyone is

15   doing their absolute best to get the discovery out.  Just from

16   a technological point of view, we have to work with our

17   provider in South Carolina.  Things are just moving a little

18   bit slower than they normally had.  You know, we're definitely

19   going to do it on May 5, but I just think earlier, it would be

20   very, very difficult, if not impossible.

21        THE COURT:  So I think part of this could be remedied

22   by the government's producing something similar to the chart

23   that you filed today where you let people know by what date do

24   you anticipate sending out certain discovery.  I totally

25   sympathize with your problems with your production.  I do

1    think, if it makes any difference, you have a little breathing

2    room on the *Ernst* case, and you can focus on this case.  We had

3    a status conference there today.  And so I think your focus

4    really should be getting the discovery out to these folks

5    first.  But I really have no authority to change these dates.

6    So that's just the way it is.  The dates are what they are.

7    And they were actually even shorter dates, so this is as good

8    as we get.  And I do think the government --

9         Mr. Weinberg, did you see what they filed today?

10         MR. WEINBERG:  Yes, I did, your Honor.

11         THE COURT:  Okay.  So I think perhaps what you should

12    do is just do your best at the May 5 hearing.  I'm happy to get

13    a report on what's still outstanding, but since the case is

14    going up to Judge Gorton, he is going to manage the discovery.

15    And I think what you can't work out with the government, you

16    can file motions with him by your deadline of May 22.  But if I

17    were you, I would really work on negotiating and not filing a

18    lot of motions with Judge Gorton.  I would be as conservative

19    as possible with what you file.

20         MR. KELLY:  Your Honor, I have a question.  This is

21    Brian Kelly.  I don't know if you can hear me.

22         THE COURT:  I can hear you.

23         MR. KELLY:  Okay, great.  You know, I have a question

24    for you.  Certainly there's a motion to compel right now that

25    we're going to bring promptly now that the government has

1    indicated it's not going to give us the Singer material.  We do

2    not believe it's privileged.  That's ripe right now.  I don't

3    need to wait for that until May 22.  But there are things like

4    the AUSA notes, they've had them since the beginning of the

5    case.  I don't know why they need till May 5 to review their

6    own notes.  So if the Court is saying it doesn't have the

7    authority to change that May 5 date, so be it, but it will

8    still entertain motions to compel that are ripe before then,

9    correct?

10          THE COURT:  Sure.  Okay, if you want to file a motion

11    to compel between now and May 5.  I mean, I think what

12    Judge Gorton was hoping was that you would continue to work

13    with the government and see what is the government going to

14    produce to you, and then file your limited motions for

15    discovery after that.  So I think the idea was to give the

16    government enough time to produce what it's going to produce.

17    But what you're saying, Mr. Kelly, is, there are certain

18    categories of evidence, of discovery that the government has

19    said they would not produce, or you just don't like the timing

20    of it?

21          MR. KELLY:  Well, you know, we continue to negotiate,

22    of course, but if we reach a standstill on an issue, which we

23    think we have on this one issue, then I think -- I don't see

24    any reason to delay the motion to compel because we don't think

25    anything is privileged by Mr. Singer.  Once he became

1    cooperative, he consented to a search of his phone.  So if he

2    has communications on there and they're *Brady* or, you know,

3    otherwise discoverable, we think we should get them.  So all

4    I'm saying I guess is, we will continue to work with the

5    government; but if there are issues that we reach a standstill,

6    we'd like to bring a motion to compel sooner rather than later

7    just to keep this moving, rather than waiting until all this

8    gets dumped on Judge Gorton later.

9         MR. ROSEN:  Judge, if I could, we don't even know yet

10   if Mr. Heller or, you know, how many documents will be

11   privileged or that he's claiming privilege over.  So the issue

12   is not yet ripe, and we're going to -- you know, we're going

13   through it, and we'll produce the log, as we said in our

14   documents, but I don't think it's -- it's not a ripe issue yet

15   because we don't know how many, if any, documents will be at

16   issue.

17        MR. KELLY:  Well, I think it is ripe because they said

18   they're not going to produce it; they're going to give us a

19   privilege log.  So we're at a standstill on that particular

20   issue.  So if they're claiming these things are still

21   privileged, well, okay, we'd like to file something brief to

22   bring the issue to a head so they don't keep invoking this

23   privilege.  And we'll probably do the same thing with these

24   so-called "sum and substance" statements which were deficient

25   previously on the 302s.  We don't think that's an adequate

1    response.  But we're not trying to bring motions unnecessarily

2    or prematurely.  Hopefully we won't have to.  All I'm saying is

3    that if we can't get past a couple of these issues, we might

4    bring a motion to compel with this Court before those dates.

5        THE COURT:  Okay, so I'm happy for you to do that.  I

6    think Judge Gorton's idea was to kind of streamline the

7    discovery practice and not have the case taking this direction,

8    where we're going to have the final status on May 5, result in

9    an avalanche of discovery motions filed while the case is still

10   with me.  So I'm not going to forbid you from filing discovery

11   motions now, but I would just be very conservative about that.

12   If you can work something out with the government, I would work

13   something out with the government.

14       MR. HUESTON:  If I can jump in just for a moment here,

15   I do think that there is one item that is ripe for discussion

16   today.  The government indicated that they were going to

17   produce by May 15, and now it's May 5, a letter summarizing any

18   AUSA notes of Singer meetings that are inconsistent with or

19   contain additional information for 302 reports.  As your Honor

20   can appreciate, any such notes is going to be absolutely

21   central and pertinent to the pending motion for prosecutorial

22   misconduct.  There is no reason why the government should be

23   waiting until May to produce a purported summary.  They either

24   have these notes or they don't.  They can state so right now.

25   And if they have such notes, they should be produced

1    immediately so that we can address them in our planned reply

2    for the motions which are going in now before Judge Gorton.  I

3    mean, that simply can't wait, and I see no coronavirus or any

4    other reason why the government can't provide an immediate

5    production of those notes if they exist.

6           MR. ROSEN:  Judge, we're reviewing our notes.  We are

7    doing that with all the other discovery requests.  We are, you

8    know, working remotely.  It's difficult.  We are planning to do

9    it by I guess May 5 now, and we'll get those done.  We don't

10   believe there's any notes of any relevance to their motion

11   filed two weeks ago.

12          THE COURT:  So what you're saying, Mr. Rosen, is, you

13   are going to produce that information, and you're going to

14   produce it by May 5?

15          MR. ROSEN:  Well, no.  The -- I mean, I think we said

16   in the chart here that as of now, we're planning to produce a

17   letter summarizing the differences between the, you know,

18   between any agent reports and notes and anything that's

19   additional in the government's -- in any AUSA notes.

20          THE COURT:  By what date?

21          MR. ROSEN:  Sorry?

22          THE COURT:  By what date?

23          MR. ROSEN:  Let me pull that up.  Sorry.  My computer

24   is just freezing.

25          Also, Judge, just to be also clear, that they have

1    requested the same discovery from Judge Gorton.  The motion is

2    pending before Judge Gorton, and it seems like now they're

3    trying to revert back to the Magistrate Court to gain the

4    relief that is not yet present before Judge Gorton.  So I just

5    don't see why we're double tracking the, you know, this brief

6    that's already before the District Court.

7            MR. HUESTON:  Your Honor, it's John Hueston.  We've

8    had these requests pending for months, and this is one that has

9    been going back and forth.  They've now stated that they're

10   going to produce a summary of differences in their notes and

11   agent notes from published 302s all during the pendency of a

12   prosecutorial misconduct motion.  Now, conveniently, a summary

13   is going to be created and produced after all briefing is

14   completed.  If they have -- they seem to have identified some

15   notes that are different.  I ask the Court to order them to

16   produce those immediately.  What is the delay or reason for the

17   delay?  It shouldn't go to the bottom of the stack because it's

18   centrally important to the prosecutorial misconduct motion.

19           MR. ROSEN:  You've already asked -- it's already

20   before Judge Gorton, this very same issue.  You've asked him

21   for discovery.  The brief is currently pending.  There's no

22   need -- we said we'd now produce them by May 5.  And the

23   letter -- I think it's No. 10 in our status conference

24   letter -- they're not entitled to our notes, you know, at the

25   time.  They're entitled to the differences between -- if

1    they're inconsistent, we intend to produce that.

2           THE COURT:  So if I can just make sure I know what

3    you're talking about, this is the government's reply to the

4    defendants' discovery chart that was filed today, Item No. 10?

5           MR. HUESTON:  Correct.

6           THE COURT:  And you were saying you are going to do it

7    by May 15, even though that motion is pending before

8    Judge Gorton?

9           MR. ROSEN:  Well, there's no -- the notes we don't

10   believe or the 302s or any differences have anything to do with

11   the prosecutorial misconduct motion based on, you know,

12   obviously what we filed yesterday.  And also they've asked for

13   discovery as part of their motion for relief, so I think

14   Judge Gorton should rule on that.  And, you know, we're

15   obviously going to comply with any order from the District

16   Court, but now for No. 10, we said May 15, 2020, for the letter

17   that we're going to provide, and now we'll do it on May 5, per

18   Judge Gorton's order.  There's no need to double track

19   discovery where there's already a pending motion before the

20   District Court on this very same issue.

21          THE COURT:  Well, it seems like the motion is not

22   really necessary anymore if you've agreed to do it, right?

23   You've agreed -- they want the notes, and you're going to

24   provide a letter summarizing the notes?

25          MR. ROSEN:  We're going to summarize the differences

1  or inconsistencies between any agents' notes and any government

2  notes.  It has nothing to do with the misconduct motion that

3  was filed two weeks ago.

4      MR. HUESTON:  It absolutely has everything to do with

5  it because the theory in the misconduct motion is that the

6  government has concocted post hoc stories of intent that simply

7  is different from the actual record, and so differences in what

8  they are taking in notes of Singer meetings versus what winds

9  up in the earlier published reports of agents is of central

10  importance.

11      MR. ROSEN:  And that's ripe before Judge Gorton now.

12  We filed our response yesterday, and it's ripe.  There's

13  discovery requests in there.  There's a request for a hearing.

14  There's no need for, Judge, to revisit the issue in the chart

15  of what we're going to provide anyway.

16      MR. KELLY:  But if the government hasn't reviewed them

17  yet, how can the government say it's not relevant to the

18  pending motion?

19      THE COURT:  Well, let me just say this:

20      So, Mr. Hueston, when is the motion -- I haven't looked

21  this closely at the docket -- when is the motion to dismiss for

22  prosecutorial misconduct ripe?  Is it ripe now?

23      MR. HUESTON:  The opposition, the government filed its

24  opposition yesterday, and we are planning to meet and confer

25  with the government and to ask for permission from the Court to

1    file a reply.

2              THE COURT:  I see.

3              MR. ROSEN:  But, Judge, we did (Inaudible) was a

4    request for discovery as part of their motion for the

5    misconduct, so why would it make sense to now do two discovery

6    motions for that same issue, one before a Magistrate Court, one

7    before a District Court, when this is what they've -- that's

8    already pending before the District Court?  We'll be prepared

9    to provide them with that letter on May 5 per the Court's --

10             MR. HUESTON:  Because you agreed to produce it, and

11   it's relevant now, so it should be produced now.

12             MR. KELLY:  The other point is that the "sum and

13   substance" letters in the past were woefully deficient.  The

14   Court recognized that.  The government did not recognize its

15   *Brady* obligations.  The rules are in place for a reason.  The

16   local rules require the stuff to be produced in a certain time

17   frame.  It hasn't been.  So if these AUSA notes reflect

18   inconsistencies that amount to *Brady*, we should get it sooner

19   rather than later, and we shouldn't just kick the can down the

20   road so the government can lump it in with everything else

21   that's coming in front of Judge Gorton.

22             MR. ROSEN:  Well, we disagree with that obviously,

23   that assessment, but we are prepared to meet the Court's

24   deadline, which is May 5 of 2020, and we will do that.  It has

25   nothing to do with the misconduct motion, which is already

1    pending before a different court.

2        MR. KELLY:  How can you say it doesn't have anything

3    to do with the motion if you haven't even reviewed it yet to

4    determine whether there's *Brady*?

5        THE COURT:  Okay, Eric, let me just interrupt here,

6    counsel arguing with each other.

7        So, Mr. Rosen, just in an effort, which I think is in

8    the spirit of what Judge Gorton really wants to see happen here

9    to kind of streamline this and stop the sort of nonstop filing

10   of motions back and forth, concerning No. 10 on your status

11   report, "Provide all AUSA notes of meetings/calls with Singer,"

12   and what you're saying is, "The government will provide a

13   letter summarizing any AUSA notes of Singer meetings that are

14   inconsistent with or contain information in addition to that in

15   FBI/IRS reports."  Let's just go ahead and get that done.  And

16   if the defendants think this is relevant to their motion to

17   dismiss, I think it's better to get it done sooner rather than

18   later, just to prevent exactly the kind of delays and filings

19   that Judge Gorton wants to see streamlined.  So --

20       MR. ROSEN:  But they're getting it regardless.  Judge,

21   I think we have seventeen outstanding motions that we need to

22   respond to also by April 30.  We're doing our absolute best.

23   We haven't done this letter yet.  We're going through.  We're

24   going to get it done.  It doesn't take five minutes.  We don't

25   have, you know, the resources of the defense.  We're working

1   very, very hard to get this done.  But, Judge, Judge Gorton I

2   think set out a good schedule for May 5, and we'll comply with

3   that schedule.

4           THE COURT:  Okay, so what I'm going to do is, I will

5   tell Judge Gorton that there are materials that the defendants

6   believe are relevant to the motion to dismiss for prosecutorial

7   misconduct that you will not get until May 5; and that in the

8   interest of giving the government the opportunity to thoroughly

9   respond, that they will provide this information by May 5.  And

10  I will alert Judge Gorton that your discovery motion -- does

11  anyone know the docket number of the discovery motion?

12          MR. ROSEN:  Of the misconduct motion?

13          THE COURT:  I know the docket number of the misconduct

14  motion, but the discovery motion that Mr. Rosen keeps saying is

15  before Judge Gorton, is it part of the motion?

16          MR. ROSEN:  Yes.

17          THE COURT:  Yes, okay.  Anyway, I'm going to tell him

18  that there's outstanding discovery concerning that motion that

19  will be provided on May 5, and so he will be aware of that.

20  But I do --

21          MR. ROSEN:  The government's position -- oh, sorry.

22          THE COURT:  I do want to stress that Judge Gorton was

23  really firm that there are no continuances on these dates, so

24  May 5 is really a firm deadline.

25          MR. WEINBERG:  Judge, could I make a request, which is

1     that the government provide that on May 4 so that if the

2     summary reflects material *Brady* issues, we can at least bring

3     to your Honor's attention on May 5 that we want not their

4     summary but the notes themselves, and at least resolve that

5     issue, which might, as Mr. Hueston has said, be central to the

6     motion to dismiss.

7              MR. ROSEN:  We will try and get this done as soon as

8     possible, Judge, but I think the point from earlier was that

9     Judge Gorton will handle the remaining discovery motions in

10    May.  So I don't understand why we're trying to get this done

11    prior to the final status conference when we have these

12    deadlines in place.

13             THE COURT:  Well, see if you can do that part of the

14    discovery, Mr. Rosen, by May 4, okay, the No. 10 on your

15    summary.

16             MR. ROSEN:  Yes.  Yes, we will.

17             THE COURT:  Okay, all right.  So what else?

18             MS. MINER:  Your Honor, if we could get an estimate of

19    how much discovery is still out there to be produced by May 5.

20    I mean, we still haven't gotten our client's emails that the

21    government has had for, like, ages.  I'm just concerned, if the

22    quantity is so large, then -- you know, I understand the

23    government is under constraints but so is defense counsel.

24             THE COURT:  Okay.

25             MR. ROSEN:  You should have gotten the emails in

1    January.  The relevant emails responsive to Attachment B were

2    provided in January.

3             MS. MINER:  But I haven't gotten the entire set of

4    emails.  I mean, you might consider some things relevant, and I

5    might consider different things relevant.  Your chart said that

6    we would get them by --

7             MR. ROSEN:  Right, we were --

8             THE COURT:  Mr. Rosen, any idea how much is still

9    outstanding, a rough ballpark?

10            MR. ROSEN:  I don't, but we will -- we will -- you

11   know, we'll try to get a handle on that and update the

12   defendants as we go through it.

13            THE COURT:  Okay.  All right, so we'll see everyone

14   again on May 5.  And anything else from anyone at this time?

15            MR. KELLY:  Not from me, your Honor.

16            MR. ROSEN:  No, your Honor.

17            MR. FLASHNER:  Sorry.  Cory Flashner, just trying to

18   get in here, okay, if you can hear me.  With regard to those

19   pending Rule 17 motions that are before you, I'm assuming,

20   perhaps incorrectly, that those will stay in front of you?  And

21   Rule 17s that will be filed in the coming weeks, those should

22   be filed with you as well, as the case is still in your

23   session?

24            THE COURT:  Yes.  I think Judge Gorton may refer

25   certain things back.  But what Rule 17 motions are still

1    pending?  Do you know?

2          MR. FLASHNER:  There are at least some motions with

3    regard to USC that are still pending, and then there are others

4    that we are close to filing with regard to other third parties

5    that are nonparties in the case.  It just seems as though,

6    given the amount of time the Court, certainly you, has spent

7    educating yourself on the issues, to re-educate Judge Gorton

8    and go back and recreate the wheel doesn't seem efficient for

9    anyone.

10          THE COURT:  Okay, so I will just ask you at the close

11    of this hearing to email Ms. Belmont about any pending motions.

12    And then, you know, if you have Rule 17(c) motions prior to

13    May 5, I'll definitely rule on them, but if they're after that,

14    Judge Gorton, it will be up to Judge Gorton to refer them back.

15          MR. FLASHNER:  Okay, thank you.

16          THE COURT:  Thank you.  Okay, anything else?  Okay,

17    all right, everyone, thank you very much, and we'll see you

18    May 5.

19          (Adjourned, 3:44 p.m.)

20

21

22

23

24

25

1                     C E R T I F I C A T E

2

3

UNITED STATES DISTRICT COURT )
4    DISTRICT OF MASSACHUSETTS    ) ss.
     CITY OF BOSTON               )
5

6

7           I, Lee A. Marzilli, Official Federal Court Reporter,

8    do hereby certify that the foregoing transcript, Pages 1

9    through 22 inclusive, was recorded by me stenographically at

10   the time and place aforesaid in Criminal No. 19-10080-NMG,

11   United States of America v. David Sidoo, et al, and thereafter

12   by me reduced to typewriting and is a true and accurate record

13   of the proceedings.

14           Dated this 22nd day of April, 2020.

15

16

17

18

19

             /s/ Lee A. Marzilli
20           _____

             LEE A. MARZILLI, CRR
21           OFFICIAL COURT REPORTER

22

23

24

25