UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No.: 19-10080-NMG |
| | ) |
| DAVID SIDOO, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**DECLARATION OF ELIZABETH KEATING**

I, Elizabeth Keating, state the following:

1. I am a special agent with the Criminal Investigation Division of the Internal Revenue Service ("IRS-CI"). I have been a special agent with IRS-CI since September of 2008. Prior to becoming a special agent with IRS-CI, I worked as a revenue agent for the Internal Revenue Service for approximately three years. As a special agent my responsibilities include the investigation of criminal violations of the Internal Revenue laws, the Bank Secrecy Act, the Money Laundering Control Act, and related offenses.

2. I have been assigned to "Operation Varsity Blues," an investigation of fraud and bribery in the college admissions process, since approximately March 2018.

3. On September 21, 2018, I participated in the approach of William "Rick" Singer, who was a target of the investigation. On that day, I was accompanied by Special Agents Laura Smith and Kaitlyn Cedrone of the Federal Bureau of Investigation ("FBI"). For part of the time that we met with Singer, we were accompanied by Supervisory Special Agent John Keelan of the FBI. We approached Singer in a hotel room at the Marriott Long Wharf in Boston.

4.      When we approached Singer, he agreed to cooperate with the investigation and to be interviewed. During the interview, it was my impression that Singer was not being completely truthful and was minimizing his conduct.

5.      For example, Singer described the payments he and his clients made to athletic programs, and that his clients made to his non-profit foundation, as "donations." I told Singer that a donation was money provided as a gift, with no expectation of anything in return. I further explained, in substance, that payments in exchange for an agreement to recruit a student as a fake athlete are illegal. I do not recall if I used the word bribe, but I may have.

6.      I do not recall raising my voice during this initial interview, but I was more animated than usual because of Singer's reluctance to accept responsibility for his crime.

7.      The next day, after consulting with his attorney, Singer agreed to consensually record phone calls with other individuals involved in his scheme.

8.      Singer was initially a reluctant cooperator. He wanted to make only a few calls, and resisted our direction to make more. We later learned that Singer was also obstructing our investigation during this early period.

9.      The consensually recorded calls Singer made to parents in late September and early October involved parents who had begun, but not completed the fraud and bribery scheme. Singer also spoke with brand new clients who had contacted him. For these early calls, we instructed Singer, in substance, to tell clients that the scheme involved paying coaches to admit students as recruited athletes. We wanted him to be explicit that the scheme involved bribes. The purpose was to ensure that, for clients who had not yet committed a crime or were still in the middle of it, there would be no possible confusion about their intent. Singer, however, was resistant. He told us that this was not what he typically told his clients. He said that he usually told his clients that

the money was a donation to an athletic program. While I do not recall a specific "loud and abrasive" call on October 2, I do recall having stern conversations with Singer during this period, about this issue and about his cooperation generally.

10. With new clients, Singer generally followed our direction and told them the money was going to the coach. As to clients to whom Singer had already spoken, but who were still in the middle of the fraud, he resisted and remained consistent with his prior conversations. We asked Singer to be more explicit on the calls so that there would be no confusion about the parents' intent if they continued to go forward.

11. Several weeks later, in late October, we instructed Singer to place a series of calls to parents who had completed the fraud and bribery scheme before we approached him. For these calls, we instructed Singer to tell the parents that the IRS was auditing his foundation. For parents who had sent their children to the University of Southern California ("USC"), we typically instructed him to say that he would not tell the IRS that their donations were payments to "Donna" at USC in exchange for having their children recruited as athletes. This description was consistent with our understanding of what those parents understood based on the evidence we had gathered. Singer willingly made these calls.

12. I never directed Singer to fabricate evidence against anyone, and to my knowledge he did not fabricate evidence against anyone.

13. As part of the investigation, we used the proactive techniques I have described. But I did not direct Singer "to ask questions and retrieve responses that are not accurate" about the parents' actions or intent, or to ask parents "to agree to a lie [he] was telling" about their actions or intent, and to my knowledge Singer did not do that.

14. I did not tell Singer that we wanted to "nail" or entrap any defendant, and I did not want to do so.

15. I did not ask Singer to bend the truth, other than by using the proactive investigative techniques I have described. I repeatedly told Singer that he needed to be truthful with us.

16. I first saw Singer's October 2 note on October 28, 2018. I did not address the note with Singer because I knew that it referred to our instructions, in late September and early October 2018, to be more explicit with parents who had not completed the fraud. I also knew that he had resisted that direction and I believed that he had not fully accepted responsibility for his own conduct at that time. That is what I understood the note to reflect. I also knew that the October 2 note did not relate to the historical "audit" calls that occurred weeks later.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 04/24/2020

Elizabeth Keating
Special Agent
Internal Revenue Service – Criminal Investigation