UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>(17) JOHN WILSON,<br><br>Defendant. | No. 19-cr-10080-NMG-17 |

**GOVERNMENT'S CONSOLIDATED OPPOSITION TO DEFENDANT JOHN
WILSON'S MOTIONS TO SEVER, DISMISS, AND STRIKE (Dkts. 992, 993, & 994)**

Defendant John Wilson has moved to sever his trial from that of his alleged co-conspirators based on his contention that a separate trial would be more efficient and less prejudicial to him. (Dkt. 992). He also moves to dismiss the substantive wire fraud and federal programs bribery charges against him as factually impossible (Dkt. 993), and to strike allegations in the Fourth Superseding Indictment ("FSI" or "the Indictment") concerning his efforts to secure college admission for his twin daughters through fraud and bribery (Dkt. 994). His motions are without merit.

Wilson cannot overcome the presumption that defendants who are indicted together should be tried together, particularly in a conspiracy case. He focuses his severance argument on efficiencies he contends would be created by a separate trial. But the opposite is true. Proving the conspiracies with which Wilson is charged will require that the government put on many of the same witnesses and evidence as in a trial of his alleged co-conspirators. That would be a waste of government and judicial resources, and would heighten the risk of inconsistent verdicts. And Wilson's arguments that he would be unfairly prejudiced by a joint trial are conclusory and meritless.

Wilson's legal deficiency argument simply repeats arguments made in joint motions filed by all the defendants and will be addressed in the government's opposition to those motions. His factual impossibility argument mistakenly imputes "success" as an element of wire fraud and federal programs bribery. It is not, as the case law makes clear.

Wilson also does not satisfy the exacting standard for striking surplusage under Fed. R. Crim. P. 7(d). The allegations in Paragraphs 238-244 of the Indictment are part of the fraud conspiracy alleged in Count One, are relevant to and incorporated by reference in the substantive charges against Wilson, and are likewise relevant to Wilson's knowledge and intent with respect to his son's fraudulent admission, which he concedes is part of the charged conspiracies.

For all these reasons and the reasons set forth below, Wilson's motions should be denied.

## RELEVANT BACKGROUND

Wilson began working with William "Rick" Singer to secure his son's admission to USC through the "side door" in the spring of 2013. FSI ¶ 225 (Dkt. 732). Although Wilson's son played water polo on his high school team, the communications between Wilson and Singer make clear that USC's water polo coach, Jovan Vavic, would purport to recruit him only in exchange for money, and required that his athletic credentials be exaggerated. In August 2013, for example, Wilson emailed Singer to ask, "What does Jovan need by [S]ept 20? . . . Do I make the first payment to u then?" *Id.* ¶ 227. In October 2013, Singer reported to Wilson that Vavic had "asked me to embellish his profile more, which I am doing." *Id.* ¶ 229. Wilson responded, "When is Jovan going to be able to give us decision on USC? And when do I pay u? Was it 50% in [N]ov? 50% in [F]eb when we get final official notice?" *Id.* ¶ 230. Singer replied, "No payment of money till he gets a verbal and written from admissions and then 50 percent to a savings account I set up. Then the remainder upon an acceptance letter in March with everyone else." *Id.* Later in

October 2013, Singer sent Wilson the embellished profile, which included fabricated awards. *Id.* ¶ 231.

In February 2014, Vavic used the falsified profile to secure the admission of Wilson's son to USC. FSI ¶¶ 232-234. Days later, Wilson sent Singer an email with the subject line "USC fees," writing, "Thanks again for making this happen! Pls give me the invoice. What are the options for the payment? Can we make it for consulting or whatever from the [K]ey so that I can pay it from the corporate account?" *Id.* ¶ 357. Singer replied, "Yes we can send you an invoice for business consulting fees and you may write off as an expense. What is the name address etc[.] you want the invoice to be made out to?" *Id.* Wilson replied with the name and address of his business, Hyannis Port Capital. *Id.*

In March 2014, after Wilson's son received a formal admission letter, Wilson instructed his bookkeeper to wire $250,000 from Hyannis Port Capital to Singer's for-profit entity, The Key, and to ensure that the invoice reflected "Business Consulting."[1] FSI ¶ 358. Ultimately, Wilson's company paid Singer $220,000, comprised of $100,000 to Singer's non-profit foundation, the Key Worldwide Foundation ("KWF"), $100,000 to Singer's for-profit business, The Key, and $20,000 to Singer personally. *Id.* ¶ 236. Wilson deducted the payments from his taxes as purported business expenses and a charitable donation. *Id.* ¶¶ 365-368. In April 2014, The Key issued an anonymous $100,000 cashier's check to "USC Men's Water Polo," listing the "purpose/remitter" as "Wilson Family." *Id.* ¶ 237.

In the fall of 2018, at approximately the same time that Singer began cooperating with investigators, Wilson inquired about potential "side door" opportunities for his twin daughters.

---

[1] Wilson later corrected himself, noting that the payment would be for $200,000. FSI ¶ 358.

FSI ¶ 238. Singer explained that, "by the side door," he may be able tell the sailing coach, "Hey, this family's willing to make the contributions. She could be on your team. She is a sailor. She may not be up to the level you are, but she can con-- you know, you're gonna get a benefit, and the family's gonna get benefit." *Id.*

In October 2018, Wilson confirmed that he wanted to pursue "side doors" for his daughters at Stanford and Harvard. At the direction of law enforcement, Singer told Wilson that his daughters "don't have to play. They just-- that's the path I'm gonna get 'em in on." FSI ¶ 239. Wilson replied, "Gotcha." *Id.*

Two days later, Wilson's company wired $500,000 to KWF. FSI ¶ 241. Wilson emailed his bookkeeper, writing that the payment was a "$500k donation I am going to make this year. Tax write off and help getting into colleges." *Id.* ¶ 240.

In October 2018, Singer advised Wilson that he had secured a "side door" for one of Wilson's daughters at Stanford, and that the Stanford sailing coach, John Vandemoer, had hidden the deal from the university. FSI ¶ 242. In November 2018, Singer told Wilson he had secured an admissions spot at Harvard through a (fictitious) "senior women's administrator," who would designate one of Wilson's daughters as an athletic recruit in exchange for $500,000. *Id.* ¶ 243. In December 2018, Wilson's company wired another $500,000 to KWF. *Id.* ¶ 244.

## ARGUMENT

**I.    Wilson's Efficiency and Prejudice Claims Do Not Merit Severance.**

Wilson incorporates the arguments made by all defendants in their joint motions for dismissal and severance (Dkts. 1031 and 1033), and argues that his case should be severed on the additional grounds that it would be more efficient and less prejudicial to him. The government

will respond separately to the joint motions, and incorporates those arguments here by reference. None of the additional reasons Wilson cites justifies severance.

    A.  Applicable Law

"[T]he general rule is that those indicted together are tried together to prevent inconsistent verdicts and to conserve judicial and prosecutorial resources." *United States v. Soto-Beníquez*, 356 F.3d 1, 29 (1st Cir. 2003) (citing *United States v. O'Bryant*, 998 F.2d 21, 25 (1st Cir. 1993)). "[S]everance is particularly difficult to obtain where, as here, multiple defendants share a single indictment." *Id.*; *see also Zafiro v. United States*, 506 U.S. 534, 537 (1993) ("There is a preference in the federal system for joint trials of defendants who are indicted together," because joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'") (quoting *Richardson v. Marsh*, 481 U.S. 200, 210 (1987)). "Because conspiracy cases often involve evidence that is admissible against all members of the conspiracy, 'in the context of conspiracy, severance will rarely, if ever, be required.'" *Soto-Beníquez*, 356 F.3d at 29 (quoting *United States v. DeLuca*, 137 F.3d 24, 36 (1st Cir. 1998)).

Thus, where Wilson and his co-defendants have been properly joined under Fed. R. Crim. P. 8(b), severance is warranted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Even then, Fed. R. Crim. P. 14 does not require severance, but leaves it to the discretion of the trial court. *See id.* ("When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but . . . less

drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.") (citing *Richardson*, 481 U.S. at 211).

      B.  <u>Wilson's Conclusory Arguments Do Not Meet the High Standard for Severance.</u>

Wilson does not identify a specific trial right that would be jeopardized by a joint trial or demonstrate how a joint trial would prevent the jury from making a reliable judgment about guilt or innocence. Instead, he simply asserts that it would be "just and efficient" to try him separately. Def's Br. at 11. That is not enough to meet the high standard for severance in a properly charged case, particularly one alleging conspiracy. It is also not true.

<u>First</u>, Wilson contends that he will be unfairly prejudiced by evidence concerning "fake athletes" because, unlike the children of his co-defendants, his son "was, in fact, truly qualified" to join USC's water polo team. Def's Br. at 12. The Indictment alleges, and the evidence will prove otherwise. Indeed, to make Wilson's son appear to be a qualified recruit, Singer had to embellish Wilson's son's credentials, at Vavic's request. FSI ¶ 229. Wilson knew his son was not qualified to be recruited to the elite USC water polo team, in part because Singer sent Wilson his son's falsified athletic profile, with certain athletic honors invented out of whole cloth, before sending it on to Vavic. *Id.* ¶ 231. Nor was Wilson the only defendant whose child actually played the sport for which he was purportedly recruited. Accordingly, evidence that the children of some other defendants were "fake athletes" will not prejudice Wilson, much less unfairly so, simply because the fabrications on his resume were less dramatic, and where the government expects to introduce evidence that Wilson understood his son was not qualified. And even if there were some conceivable prejudice – which there is *not* – Wilson doesn't come close to demonstrating the kind of substantial prejudice amounting to a miscarriage of justice that would warrant severance. *See United States v. Jones*, 10 F.3d 901, 908-09 (1st Cir. 1993) ("In order to obtain a severance, a

defendant must show that substantial prejudice, amounting to a miscarriage of justice, would result from a joint trial. Mere speculative allegations as to possible prejudice from joinder do not sustain the burden of showing an abuse of discretion in denying a motion for severance.") (citation omitted).

Second, Wilson contends that a focus on bribery at trial would mislead the jury because none of his money went "to the pockets of Donna Heinel," while Wilson's arrangement with Vavic is irrelevant to his co-defendants. Def's Br. at 13. But Wilson's arrangement with Vavic is part of the evolution of the conspiracy. It eventually led Singer to Heinel, whose role is directly relevant to Wilson's co-conspirators, and also relevant to explaining the sting with respect to Wilson's daughters' admission, including the fictitious "senior women's administrator" at Harvard.

Moreover, because Wilson is charged with conspiracy, "virtually all the evidence relating to the other conspirators [is] also directly relevant to, and, therefore, independently admissible in, the prosecution's case against him." *United States v. Flores-Rivera*, 56 F.3d 319, 325-26 (1st Cir. 1995) (citation omitted). Evidence regarding the existence, nature and scope of the conspiracy, and the roles of Wilson's co-conspirators (including both parents and coaches) would form a necessary component of any severed trial against Wilson alone, and witnesses from USC would have to repeat testimony regarding the admissions and athletic recruitment processes, after having testified in both the first and second parent trials. Likewise, witnesses and evidence regarding KWF and The Key would be presented at both of the larger conspiracy trials and a severed trial against Wilson. This repetition of evidence in three trials would be a waste of judicial and prosecutorial resources, and would create a tremendous burden on non-party witnesses. Severing Wilson's trial from that of his co-defendants would thus create, not reduce, inefficiencies.

Third, Wilson "'cannot convincingly complain of an improper spillover effect.'" *Flores-Rivera*, 56 F.3d at 326 (quoting *O'Bryant*, 998 F.2d at 26). Wilson is not differently situated from his alleged co-conspirators, nor they from him, simply because one USC insider received his bribes and another USC insider received theirs. Nor is he different because his money went to a USC athletic program that benefited Vavic, rather than Vavic's pocket. The charged conspiracy involved multiple complicit insiders, at USC and elsewhere, and parents are alleged to have agreed to send money to athletic programs designated by those insiders. For the same reasons, even if Wilson had standing to allege prejudice on his co-defendants' behalf – which he does not – his assertion that evidence about Vavic is irrelevant and unfairly prejudicial to them is without merit. *See United States v. DeCologero*, 530 F.3d 36, 54 (1st Cir. 2008) ("in the context of conspiracy, severance will rarely, if ever, be required due to evidentiary spillover") (quotation and brackets omitted). Finally, even if Wilson's conclusory claims of prejudice were true, "less drastic measures, such as limiting instructions, . . . [would] suffice" to cure them. *Zafiro*, 506 U.S. at 539; *see also DeCologero*, 530 F.3d at 56 (district court's instruction at outset of trial and repeated several times during jury instructions that "jury must be careful to consider each defendant separately" cut against defendants' argument that failure to sever led to jury confusion) (citing *Zafiro*, 506 U.S. at 540-541).

Fourth, Wilson contends that because he is the only defendant facing substantive federal programs bribery and tax charges, the need for additional witnesses and jury instructions will negate efficiencies of a joint trial. Def's Br. at 13-14. But virtually all of the evidence regarding these additional charges is relevant to the conspiracy counts. For example, the recorded calls concerning Wilson's daughters are relevant *both* to the conspiracy charges *and* the substantive bribery charges. And there will necessarily be significant overlap between the jury instructions

for federal programs bribery and conspiracy to commit federal programs bribery. Likewise, the tax charge is based on Wilson's unlawful deduction *of his bribe payments*, and the evidence of his involvement in bribery and fraud is thus directly relevant to proving that he understood his deduction of the bribe payments as charitable donations and "Business Consulting" expenses was not legitimate. Conversely, the evidence of Wilson's tax fraud is relevant to proving his criminal intent with respect to the bribery. If Wilson thought his payments to USC were legitimate charitable donations, then there would be no reason to deduct *some* of those payments as donations, while recording *some* of them as fake "consulting" expenses of his real estate business.

Because Wilson has not shown that a joint trial will present a serious risk that a specific trial right will be compromised or prevent the jury from making a reliable judgment about guilt or innocence, his severance motion should be denied.

**II.    The Substantive Counts Against Wilson Are Neither Legally Deficient Nor "Factually Impossible."**

Wilson incorporates the legal deficiency arguments raised in the defendants' joint motions to dismiss Counts One and Two (Dkts. 1037 and 1041) in connection with his motion to dismiss the substantive wire fraud and federal programs bribery charges against him, and separately argues that those charges should be dismissed based on "factual impossibility." Def's Br. at 18-21. The government will respond separately to the joint motions, and incorporates those arguments here by reference. Wilson's motion fails because the law is clear that factual impossibility is not a defense to wire fraud or federal programs bribery.

A. <u>Applicable Law</u>

"Factual impossibility occurs when a circumstance unknown to the defendant prevents him from achieving a specific objective." *United States v. Dixon*, 449 F.3d 194, 201-02 (1st Cir. 2006) (citing *United States v. Waldron*, 590 F.2d 33, 35 (1st Cir. 1979)). The First Circuit has long

9

recognized that factual impossibility is not a defense to inchoate offenses such as conspiracy and attempt because "the elements of those offenses do not require that the unlawful goal be achieved." *Id.* at 202 (citing *United States v. Belardo Quiñones*, 71 F.3d 941, 944 (1st Cir. 1995)). Similarly, "[t]he crime of wire fraud does not require that the defendant's object be attained. It only requires that the defendant devise a scheme to defraud and then transmit a wire communication for the purposes of executing the scheme." *United States v. Carrington*, 96 F.3d 1, 7 (1st Cir. 1996) (citing 18 U.S.C. § 1343); *see also Pasquantino v. United States*, 544 U.S. 349, 371 (2005) ("wire fraud statute punishes the scheme, not its success") (quotation omitted); *United States v. Aigbevbolle*, 827 F.2d 664, 666 (10th Cir. 1987) (noting the "critical distinction between completion of the *offense* proscribed by [18 U.S.C.] § 1341 and the successful completion of [defendant's] *scheme* to defraud" and finding that the "success or failure of a scheme to defraud is immaterial to a violation of § 1341" because "[s]uccess of a fraudulent scheme is not an element of § 1341") (citations omitted) (emphasis in original).[2]

Because the success of the scheme is not an element of wire fraud, courts have affirmed that wire fraud charges are valid in the context of sting operations that "'simply provide[] the opportunity' to commit a crime," even though the success of the scheme is rendered impossible by the government's involvement. *See, e.g.*, *United States v. Brown*, 521 F. App'x 323, 326 (5th Cir. 2013) (affirming convictions for racketeering, mail, and wire fraud) (quoting *United States v. Gutierrez*, 343 F.3d 415, 419 (5th Cir. 2003)). And numerous courts have upheld wire fraud convictions arising out of sting operations, including against claims of factual impossibility. *See, e.g.*, *United States v. Prange*, 771 F.3d 17 (1st Cir. 2014) (affirming convictions for substantive

---

[2] "[I]n general, caselaw construing § 1341 is instructive for purposes of § 1343." *United States v. Fermin Castillo*, 829 F.2d 1194, 1198 (1st Cir. 1987).

wire fraud in connection with "Operation Penny Pincher" sting in which FBI agent posed as a corrupt hedge fund manager, making success of scheme impossible); *United States v. Potter*, 463 F.3d 9, 22 (1st Cir. 2006) (affirming convictions for substantive wire fraud in connection with scheme to bribe legislator, where "all that mattered for the crimes charged was whether the defendants *believed* that [the legislator] possessed such power" to affect legislation in favor of defendants, "it would not matter if their belief as to [the legislator's] power were mistaken," and thus, impossibility defense could not have succeeded) (citations omitted) (emphasis in original); *United States v. Santiago*, 977 F.2d 517, 526 (10th Cir. 1992) (affirming conviction for substantive wire fraud, even though "police intervened to prevent [defendant's] attempted fraud, [and] it could not have reached fruition"); *United States v. Abdallah*, 840 F. Supp. 2d 584, 608 (E.D.N.Y. 2012) (denying motion for judgment of acquittal or new trial where jury convicted defendant of substantive wire fraud based on calls with government cooperator, and noting that "it is the *defendant's* intent that is relevant, not [the cooperator's] intent") (emphasis in original).

Likewise, success is not an element of federal programs bribery. As relevant here, that statute makes it a crime to "corruptly give[], offer[], or agree[] to give anything of value to any person, with intent to influence or reward an agent of an organization . . . in connection with any business, transaction, or series of transactions of such organization . . . involving anything of value of $5,000 or more," where "the organization . . . receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance." 18 U.S.C. 666(a)(2) & (b); *see also Sabri v. United States*, 541 U.S. 600, 603 (2004). Interpreting analogous provisions in the federal bribery statute, 18 U.S.C. § 201, the D.C. Circuit explained:

> The bribery statute expressly criminalizes a mere "offer" of something of value with the intent to influence an official act. 18 U.S.C. § 201(b)(1). That the official

> need not accept that offer for the act of bribery to be complete is evident from the structure of the statute, which defines two separate crimes: the act of offering a bribe and the act of soliciting or accepting a bribe. *See id.* § 201(b)(1)–(2). Confirming this interpretation, the Supreme Court held in *United States v. Brewster*, 408 U.S. 501, 92 S. Ct. 2531, 33 L.Ed.2d 507 (1972), that, with respect to a bribe payee, the "acceptance of the bribe is the violation of the statute." *Id*. at 526, 92 S. Ct. 2531. The parallel proposition in the context of a bribe payor is straightforward: the offer of the bribe is the violation of the statute. Indeed, we have made clear that the quid pro quo need not be "fully executed for the act to be considered a bribe."

*United States v. Ring*, 706 F.3d 460, 467 (D.C. Cir. 2013) (interpreting § 201 in the context of an honest services fraud bribery charge) (quoting *United States v. Orenuga*, 430 F.3d 1158, 1166 (D.C. Cir. 2005)). The same logic applies to § 666. *United States v. Morgan*, 635 F. App'x 423, 430 & n.12 (10th Cir. 2015) (applying the logic of *Ring* to § 666 charge and noting that § 666 "is the offspring of 18 U.S.C. § 201").

As with wire fraud charges arising out of sting operations, courts have upheld federal programs bribery convictions arising out of government stings. *See, e.g.*, *United States v. Smith*, 816 F.3d 479, 480 (7th Cir. 2016) (affirming conviction for substantive federal programs bribery where defendant legislator wrote letter in support of female constituent's construction project in exchange for $7,000, where it "was a sting; there was no such woman, and the money would come from the FBI"); *United States v. Plowman*, 700 F.3d 1052 (7th Cir. 2012) (affirming federal programs bribery conviction arising from government sting operation and rejecting entrapment defense).

B. <u>Wilson's Factual Impossibility Argument Is Without Merit.</u>

The Indictment alleges that Wilson, among other things, engaged in a scheme to secure college admission for his daughters by falsely representing them as athletes, and transmitted multiple wire communications for the purpose of executing that fraud and bribery scheme. FSI ¶ 376. More is not required to make out a valid wire fraud charge. Similarly, Wilson's violation

12

of the federal programs bribery statute was complete upon his corruptly giving, offering, or agreeing to give a bribe to the coach at Stanford or the senior women's administrator at Harvard, regardless whether they ever intended to or could accept it. The fact that Singer was cooperating with the government for part of the time that Wilson was scheming with him is not a defense to these crimes. Wilson committed all the elements required to complete the offenses of wire fraud and federal programs bribery, regardless of what Singer did. What matters, under the plain language of the statutes, is whether *Wilson* had the intent to influence or reward agents of Harvard and Stanford, and sought to execute a scheme to defraud those universities, *not* whether the scheme could succeed. Were it otherwise, then a sting would never be permissible in such cases. And that is not the law.

Tellingly, *none* of the cases Wilson cites in support of his factual impossibility argument involves wire fraud or federal programs bribery. *See United States v. Zhen Zhou Wu*, 711 F.3d 1 (1st Cir. 2013) (involving charge of illegal exportation of defense articles in violation of 22 U.S.C. § 2778(b)(2)); *United States v. Giry*, 818 F.2d 120 (1st Cir. 1987) (involving charge of importing cocaine); *United States v. Petit*, 841 F.2d 1546 (11th Cir. 1988) (involving charge of receiving stolen goods); *United States v. Jannotti*, 673 F.2d 578 (3d Cir. 1982) (involving Hobbs Act charge); *United States v. Sieger*, No. 84-cr-00158-CSH, 1985 WL 565 (S.D.N.Y. Apr. 19, 1985) (involving charge of violating 18 U.S.C. § 2315). Further, in each of these cases, the condition that was factually impossible, because of a government sting or otherwise, was an element of the substantive charge. In contrast, the fact that the plan for his daughters' admission was – unbeknownst to Wilson at the time – the product of a sting operation is irrelevant because factual possibility is not an element of wire fraud or federal programs bribery. *Carrington*, 96 F.3d at 7;

*Sabri*, 541 U.S. at 603.  Accordingly, Wilson's motion to dismiss the substantive wire fraud and federal programs bribery charges against him should be denied.

**III.     Wilson Has Not Established a Basis for Striking Paragraphs 238-244 of the FSI.**

Wilson moves to strike the allegations concerning his 2018 effort to secure his daughters' admission to college through bribery and fraud, contending that those allegations are irrelevant because they do not support the conspiracy charged in Count One – even though they are alleged to be acts in furtherance of that very conspiracy, and are also incorporated by reference into all of the other charges against him.  In short, he contends that his fraudulent efforts to secure his *daughters'* college admission was separate and distinct from his efforts to secure his *son's* college admission, and that it is not properly alleged as part of a conspiracy because Singer was a government agent for much of the time that Wilson was engaged in the latter effort.  Def's Br. at 21-23.  That is not correct.

Wilson's attempt to separate his fraud into discrete pieces fails because the government has properly alleged that all of his actions formed part of a single course of conduct, and a single conspiracy that included co-conspirators besides Wilson and Singer.  Moreover, his 2018 conduct also forms the basis of, and is incorporated by reference in, all the other charges against him.  There is, accordingly, no basis to strike it.

A.   Applicable Law

As this Court has explained,

> a "motion to strike surplusage is granted only if the allegations are inflammatory, prejudicial, and irrelevant to the crime charged."  The determinative question in a motion to strike surplusage is not the prejudice, but the relevance of the allegation to the crime charged.  "If the evidence of the allegation is admissible and relevant to the charge, then despite the prejudice, the language will not be stricken."  Because the standard is so exacting, alleged surplusage is rarely stricken.

*United States v. Sawyer*, 878 F. Supp. 279, 294 (D. Mass. 1995) (Gorton, J.) (quoting *United States v. Gambale*, 610 F. Supp. 1515, 1542-43 (D. Mass. 1985)); *see also United States v. Berroa*, 856 F.3d 141, 157 (1st Cir. 2017) (Rule 7(d) "serves to 'protect the defendant 'against immaterial or irrelevant allegations in an indictment, . . . which may . . . be prejudicial.'") (quoting *United States v. Lewis*, 40 F.3d 1325, 1346 (1st Cir. 1994) (quoting Fed. R. Crim. P. 7(d), advisory committee note)) (ellipses in original).  "This decision rests in the sound discretion of the district court." *Lewis*, 40 F.3d at 1346 (citing *United States v. Fahey*, 769 F.2d 829, 842 (1st Cir. 1985)).

      B.  <u>Wilson Does Not Meet the Standard for Striking Language from the Indictment.</u>

Wilson's motion does not come close to meeting the exacting standard for striking surplusage.  Because he largely relies on the arguments in the defendants' joint motion to dismiss the conspiracy count (Dkt. 1031), the government will not repeat its responses here, but incorporates its forthcoming opposition to that joint motion by reference.  Wilson does not contend that the allegations are inflammatory or prejudicial, nor can he, because they are of a piece with the remaining allegations against him.  Instead, he focuses his argument on relevance.  But the allegations are plainly relevant for three reasons.

<u>First</u>, the allegations concerning Wilson's daughters are properly alleged as part of the single fraud conspiracy alleged in Count One, and form part of a single course of conduct.  That count charges, among other things, that Wilson and others conspired to obtain admission to universities by false and fraudulent pretenses and to deprive the universities of the honest and faithful services of their athletic coaches and university administrators through bribes and kickbacks.  The allegations concerning Wilson's daughters allege just that: that he agreed, as part of the larger conspiracy, to facilitate his daughters' admission to Stanford and Harvard by

portraying them as fake athletic recruits and bribing the Stanford sailing coach and a Harvard administrator to do so.

Second, contrary to Wilson's contention, Wilson's efforts to secure his daughters' admission to college through fraud and bribery are directly relevant to his knowledge and intent to secure his son's admission to college through fraud and bribery. *See, e.g.*, *Berroa*, 856 F.3d at 157 (affirming denial of motion to strike surplusage concerning defendant's prior exam failures and graduation date because allegations were relevant to defendant's motive to secure medical certification by obtaining falsified exam scores and government had burden of showing she acted knowingly and intentionally); *United States v. Johnson*, 262 F.R.D. 410, 414 (D. Del. 2009) (denying motion to strike where alleged surplusage was "relevant for showing the Defendants' fraudulent intent"). As alleged in Paragraphs 238-244, Singer made it explicit to Wilson that his daughters would be presented as fake athletic recruits, and that his payments as directed by a university insider were in exchange for facilitating that fraudulent recruitment, and hiding the scheme from the universities. Although Wilson's conversations with Singer concerned future misconduct, Wilson's agreement with this plan and willingness to pay $1 million toward it is relevant to establishing that he also had the knowledge and intent to engage in an earlier *quid pro quo* to facilitate his son's admission to USC as a fake water polo recruit.

Third, the paragraphs Wilson seeks to strike form part of the basis of the additional conspiracy and substantive charges against him, which incorporate the allegations by reference. *See* FSI ¶¶ 371, 373, 375, 377, 379. On the substantive charges specifically, Counts Six and Eleven concern Wilson's $500,000 wire transfer to KWF in furtherance of his daughter's purported recruitment to Stanford as a fake athlete, as alleged in Paragraph 241. Counts Nine and Twelve concern his $500,000 wire transfer in furtherance of his other daughter's recruitment to Harvard

16

as a fake athlete, as alleged in Paragraph 244. Count Eight concerns his October 27, 2018 telephone call with Singer described in Paragraph 242.

Accordingly, Wilson's motion to strike should be denied.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny Wilson's motions to sever, to dismiss the substantive fraud and bribery charges against him, and to strike Paragraphs 238-244 from the Indictment.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: */s/ Kristen A. Kearney*
    ERIC S. ROSEN
    JUSTIN D. O'CONNELL
    KRISTEN A. KEARNEY
    LESLIE A. WRIGHT
    KARIN M. BELL
    STEPHEN E. FRANK
    Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: April 30, 2020
    */s/ Kristen A. Kearney*
    Kristen A. Kearney