UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 13-10017-RWZ

UNITED STATES OF AMERICA

v.

ALEXIS HIDALGO, *et al.*

MEMORANDUM OF DECISION

January 23, 2015

ZOBEL, D.J.

Before the court are miscellaneous pretrial motions[1] (collectively "the motions") in this criminal matter. I address them each in this omnibus order.

I.   **Motions to Suppress Evidence**

   A.   **Motion to Suppress Title III Wiretaps and the Fruits Thereof (Docket ## 877, 900[2], 906, 908, 913, 915, 919, 920, 922, 924, 1005)**

Title 18 U.S.C. § 2515 prohibits the use in court of the contents of an intercepted wire or oral communication, or "evidence derived therefrom," where disclosure would violate Title III. 18 U.S.C. § 2515. The court does not review the wiretap authorizations *de novo*, instead deciding "only whether the facts set forth in the wire applications were

---

[1] Docket ## 848, 872, 875, 877, 896, 906, 908, 913, 915, 916, 917, 918, 919, 920, 921, 922, 924, 1004, 1005. Docket ## 898, and 900 were mooted by plea and are therefore DENIED.

[2] Several defendants joined defendant Awil's (now moot as to him) motion to suppress (Docket # 900).

minimally adequate to support" the authorization.  United States v. Ashley, 876 F.2d 1069, 1074 (1st Cir. 1989); see United States v. Melendez-Santiago, 644 F.3d 54, 56 (1st Cir. 2011).

A wiretap application must contain a "full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  18 U.S.C. § 2518(1)(c).  In this court that means the government's statement "should demonstrate that the government has made a reasonable, good faith effort to run the gamut of normal investigative procedures before resorting to" a wiretap.  United States v. Villarman-Oviedo, 325 F.3d 1, 9 (1st Cir. 2003).  The court need only find that "the government has used normal techniques, but . . . has encountered difficulties in penetrating a criminal enterprise or in gathering evidence to the point where wiretapping becomes reasonable."  United States v. Abou-Saada, 785 F.2d 1, 11 (1st Cir. 1986).  It is not necessary for the government to exhaust all other investigative procedures before resorting to wiretapping, nor must ordinary techniques have been wholly unsuccessful.  Id.  "Because drug trafficking is inherently difficult to detect and presents formidable problems in pinning down the participants and defining their roles, investigative personnel must be accorded some latitude in choosing their approaches."  United States v. David, 940 F.2d 722, 728 (1st Cir. 1991).

The initial wiretap supporting affidavit, Docket # 1086-1 (the "Knight Affidavit"), is 82 pages long, and lays out in detail the reasons the government's prior (and extensive) conventional investigation was insufficient to fully map the conspiracy and

achieve convictions of its members. See Knight Affidavit ¶¶ 68-108. The details are extensive and persuasive, and certainly "minimally adequate" to support the authorization of a wiretap. Ashley, 876 F.2d at 1074; see United States v. Nelson-Rodriguez, 319 F.3d 12, 32-33 (1st Cir. 2003) ("While the incriminating information gathered by [conventional] methods . . . was substantial, the affidavit stated that these methods were unlikely to uncover the full scope of the conspiracy . . . [e]ach technique displayed just a small piece of the puzzle.").

Defendants' understanding of Title III's "necessity" requirement would put government investigators between a rock and a hard place: if its conventional investigation is too effective, there is no necessity for the wiretap; if not effective enough, there is no ground for the wiretap. All that is in fact required is that, on "a practical, commonsense" examination of the affidavit, David, 940 F.2d at 728 (1st Cir. 1991), the government has made "a reasonable, good faith effort to run the gamut of normal investigative procedures before resorting to" a wiretap. Villarman-Oviedo, 325 F.3d at 9.

Defendants incorrectly contend that the goals of the investigation were impossibly ambitious. The Knight Affidavit states that the unfulfilled goals of investigation which necessitated the wiretap were: (1) discovering the full scope and identification of key personnel involved in the alleged conspiracy; (2) discovering the identities and roles of all suppliers of firearms, oxycodone, cocaine, crack cocaine, and marijuana to the identified conspirators; (3) discovering the identity of the conspiracy's main customers; (4) discovering the stash locations for drugs; (5) discovering the

3

management and disposition of proceeds generated by the conspiracy's narcotics trafficking; (6) obtaining a1dmissible evidence sufficient to obtain a conviction against the targets and alleged co-conspirators. These are nearly identical to those accepted as valid by the First Circuit in the face of an identical challenge.  See United States v. Martinez, 452 F.3d 1, 6 (1st Cir. 2006) (accepting as legitimate investigative goals vitiating necessity of wiretap "(1) identifying all of the individuals who were supplying [the target] with cocaine; (2) identifying the manner in which the organization transported cocaine; (3) identifying the manner in which payment was made to the sources of supply for the cocaine that was distributed by [the target]; (4) identifying all of the locations where cocaine was stored by the organization; and (5) identifying the manner in which [the target] and his associates laundered and invested their drug proceeds.").

Defendants' motion to suppress for lack of necessity is DENIED.[3]

### B. Motion to Suppress Wiretap Evidence as to Martinho Rodrigues (Docket ## 848, 924)

"[I]t is well-settled that not every failure to comply fully with any requirement provided in Title III necessitates suppression." United States v. Escobar-de Jesus, 187 F.3d 148, 171 (1st Cir. 1999).  Rather, "violations of even ... central requirements do not mandate suppression if the government demonstrates to the court's satisfaction that the statutory purpose has been achieved despite the violation." Escobar-de Jesus, 187

---

[3] Defendants have failed to provide any proof of falsehood, let alone reckless or material falsehood, in the affidavit, which is presumptively valid, and thus no Franks hearing is warranted.  Franks v. Delaware, 438 U.S. 154, 171 (1978) ; United States v. Higgins, 995 F.2d 1, 3 (1st Cir. 1993); United States v. Karo, 468 U.S. 705, 719 (1984).

4

F.3d at 171.

Martinho Rodrigues separately moves to suppress on the additional ground that the government failed to include him as a potential target on the wiretap applications. While defendant Rodrigues is correct that the government was required to identify him in the applications if, as he contends, it had probable cause to believe that he was engaged in the criminal activity under investigation and expected to intercept his conversations over the target telephone, United States v. Donovan, 429 U.S. 413, 428 (1977), he largely ignores Donovan's second holding: "[i]f, after evaluating the statutorily enumerated factors in light of the information contained in the application, the judge concludes that the wiretap order should issue, the failure to identify additional persons who are likely to be overheard engaging in incriminating conversations could hardly invalidate an otherwise lawful judicial authorization." United States v. Donovan, 429 U.S. 413, 435 (1977). The Donovan court thereby explicitly rejected suppression as the remedy for failure to identify a single potential target in the absence of bad faith. See Donovan, 429 U.S. at 436 n. 24. Defendant Rodrigues does not, and could not plausibly, argue that the issuing judge erred in finding the applications met the statutory factors, and thus that the wiretap orders were unlawful.

The great bulk of defendant Rodrigues' argument is focused on the failure of the government to comply properly with Title III's notice provision. Rodrigues alleges that the investigators acted in bad faith and deliberate violation of the law in failing to name him specifically in several applications, despite the government's alleged awareness of his existence as a potential target at those times, in order to prevent him from timely

receiving the required inventory notice under 18 U.S.C. § 2518 (8)(d). See Donovan, 429 U.S. at 428-29 (the "judge shall cause to be served on the persons named in the order or application an inventory, which must give notice of the entry of the order or application, state the disposition of the application, and indicate whether communications were intercepted.").

Suppression is the appropriate remedy for violation of subsection (8)(d) in two situations: (1) when "the failure to serve an inventory notice caused [the defendant] actual prejudice and that the prejudice which resulted cannot otherwise be cured," United States v. Harrigan, 557 F.2d 879, 884 (1st Cir. 1977); (2) when the "statutory violation arose from a conscious decision by the federal authorities to violate the law and prevent an individual . . . from receiving the post interception notice." Id. at 884-85.

Rodrigues does not allege violation of the former and fails to make a credible case for the latter. The case at bar is a 30-plus defendant criminal conspiracy, and "in cases like the one at bar where there was almost complete compliance with subsection 8(d), a purposeful violation is extremely unlikely." United States v. Harrigan, 557 F.2d 879, 886 (1st Cir. 1977) ("By transmitting the names of 26 of the 27 identifiable persons whose conversations were overheard, the government demonstrated an awareness of its statutory duty and, at least, a general desire to satisfy it."); see generally id. at 886. Because "[d]efendant has demonstrated no actual prejudice resulting from the violation and is in no position to claim that the violation was an intentional one," his motion to suppress is DENIED. United States v. Harrigan, 557 F.2d 879, 885 (1st Cir. 1977).

### C. Motion to Suppress Wiretap Evidence for Lack of Probable Cause (Docket # 919)

Some defendants also seek suppression of the wiretap evidence for lack of probable cause to issue the wiretap authorization. Given the substantial evidence of criminal activity gathered by conventional means, laid out in extensive detail by several of the defendants' motions as noted supra,Part I.A, and in the Knight Affidavit, there was more than enough for a showing of probable cause in the applications.

### D. Motions to Suppress Wiretap Evidence for Failure to Seal (Docket ## 900, *et al.*)

Defendants also contend the government failed to comply with Title III's sealing requirement, § 2518 (8)(a). Id. ("Immediately upon the expiration of the period of the order, or extensions thereof, [wiretap] recordings shall be made available to the judge issuing such order and sealed under his directions."). The parties agree the recordings of Target Telephone 3 ("TT3") and Target Telephone 4 ("TT4") from the September 25 wiretap authorization were not sealed until November 27. Defendants contend this was 33 days after the September 25th wiretap ended. The government counters that the TT3 and TT4 wiretaps were extended by the October 24 order, and so were sealed only four days, or two business days, after expiration.[4] The government argues that this filing was still "immediate" within the meaning of the statute despite the delay because the records were sealed as soon as practical.

"It must be determined, as a threshold issue, whether the recordings were

---

[4]The October 24 authorization expired on November 23.

sealed immediately or not," before examining the government's proffered reasons for delay. United States v. Burgos Montes, No. CIV. 06 009 01 JAG, 2010 WL 5184844, at *6 (D.P.R. Dec. 20, 2010); United States v. Mora, 821 F.2d 860, 866 (1st Cir. 1987) (Only once "late-sealed evidence [has] pass[ed] the built-in test devised by § 2518(8)(a), [does a court] proceed to evaluate whether the government has offered a 'satisfactory explanation' for the delays which occurred in this case.").

To begin, the October wiretap authorization was an "extension," within the meaning of § 2518(8)(a), of the September 25 authorization. While the October order authorized an additional target, Target Telephone 5 ("TT5"), it also granted continued monitoring of both of the prior two targets, as specifically requested in the application. C.f. United States v. Hermanek, 289 F.3d 1076, 1086 (9th Cir. 2002) ("the term extensions is to be understood in a common sense fashion as encompassing all consecutive continuations of a wiretap order, however designated, where the surveillance involves the same telephone, . . . the same crimes, and substantially the same persons."). As a result, the records were sealed four days, or two business days, after the expiration of their authorizing order.

A two business-day delay in sealing does not violate 18 U.S.C. § 2518 (8)(a), particularly where, as here, the expiration date was the day after Thanksgiving, and the recordings were kept in a secure location with limited access and password protection. Accord United States v. Carson, 969 F.2d 1480, 1487, 1498 (3rd Cir. 1992) ("immediately . . . means as soon as practical, and not instanter . . . . [W]hen the intervening weekend is considered, there is no indication in the record that the tapes

8

were not sealed as soon as was practical.").

### E. Motion to Suppress Wiretap Evidence as to Patrick Gomes (Docket ## 875, 906)

Defendant Gomes argues that because he is now charged with violation of 18 U.S.C. § 922, which was not specifically authorized by the wiretap order in question, the evidence derived therefrom of the October 23 incident could not be used in a government proceeding in the absence of approval from a judge. See 18 U.S.C. § 2517(5). This incorrectly conflates the offenses for which he was charged with the offenses to which the intercepted communications relate. Given that the evidence in question could relate to violations of 18 U.S.C. § 924, which was an authorized offense under the wiretap order, the prosecutor's use of the October 23 intercepts before the grand jury did not require additional approval merely because it also supported another, non pre-approved offense with which he was ultimately charged.

### F. Motion to Suppress Search of 83 Nelson Street as to Jerry Correia (Docket # 1004)

On review of a search warrant, I must "ensure that the [issuing] magistrate had a substantial basis for concluding that probable cause existed." Illinois v. Gates, 462 U.S. 213, 214 (1983). Probable cause in this context means that on the totality of the circumstances stated in the supporting affidavit "there [was] a fair probability that contraband or evidence of a crime will be found in a particular place" at the time the warrant is executed. Id. This means that there was probable cause to believe that: a crime has been committed, enumerated evidence of that crime will be found at the place to be searched, and that there is a fair probability that there is a nexus between

9

Case 1:19-cr-10080-LTS Document 1138-1 Filed 04/30/20 Page 10 of 17
Case 1:13-cr-10017-RWZ Document 1373 Filed 01/23/15 Page 10 of 17

those two things in general temporal proximity to the time the warrant would issue. United States v. Zayas-Diaz, 95 F.3d 105, 113 (1st Cir. 1996). I must give "considerable deference to the probable cause determination made by the issuing magistrate." Zayas-Diaz, 95 F.3d at 111.

The affidavit of Officer Martin M. O'Malley (Docket # 168) submitted with the warrant provided ample evidence to support the magistrate's finding of probable cause. The affidavit cited intercepted communications of TT5 directing drug transactions to 83 Nelson Street in response to the government's December 1, 2012, raid of 36 Woodward Avenue. According to the affidavit, these communications were confirmed by visual surveillance of activity that comports with drug transactions occurring at 83 Nelson Street. The affidavit also supplied both observational and record evidence that defendant Correia has a known history of drug dealing, and that he resided at 83 Nelson Street.

Defendant's argument that the evidence provided is stale calls for brief mention. The intercepted communications were explicitly from TT5, which was authorized only 2 months earlier, in October 2012, and the affidavit, on a "common sense" review, clearly indicates the relevant intercepted communications were after the December 1, 2012, raid on 36 Woodward Avenue. There was thus a substantial basis for the magistrate to find probable cause that there would be evidence of drug dealing at the residence of a participant in an ongoing drug conspiracy. The warrant for 83 Nelson Street was supported by probable cause and was valid; the motion to suppress evidence obtained from the search of those premises is therefore DENIED.

**G. Motions to Suppress Physical Evidence as to Jonathan DaSilva**

**1. Motion to Suppress Evidence No. 1 (Motor Vehicle at Roxbury District Courthouse) (Docket # 918)**

Defendant Jonathan DaSilva moves to suppress physical evidence found as a result of a warrantless search of a grey Chevrolet Traverse on October 23, 2012. Jonathan DaSilva did not have, and does not allege he had, an expectation of privacy in the searched vehicle. The Chevrolet Traverse was a rental car, rented by another person, in which he was not present at the time of the search, giving DaSilva no standing to challenge the search of the vehicle on Fourth Amendment grounds. See Rakas v. Illinois, 439 U.S. 128, 134 (1978) ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed.").

To the extent the motion is predicated on the alleged illegality of the wiretap, see supra, Part I.A.

The motion is DENIED.

**2. Motion to Suppress Evidence No. 2 (Warrantless Search of 27 Woodward Avenue) (Docket # 917)**

Jonathan DaSilva separately moves to suppress physical evidence found as a result of a warrantless search of 27 Woodward Avenue on December 1, 2012, at 4:37 a.m. The Fourth Amendment to the United States Constitution prohibits unreasonable searches. U.S. Const. Amend. IV. Warrantless searches are *per se* unreasonable and evidence derived therefrom is suppressed under the prudential "exclusionary rule."

11

See Davis v. United States, –––– U.S. ––––, 131 S. Ct. 2419, 2427 (2011).

Although the search in question was conducted without a warrant, it is not subject to suppression because it falls within the emergency exception to the exclusionary rule. United States v. Infante, 701 F.3d 386, 392 (1st Cir. 2012) ("[W]arrantless entry is justified when there is reasonable belief that swift action is required to safeguard life or prevent serious harm.").

Based on the record submitted by the parties, I find the facts as follows: The police were summoned to 27 Woodward Avenue by a ShotSpotter[5] report of shots fired at or near that address. Upon arriving at the scene, officers found spent shell casings on the ground, and upon inspection from the front steps of the house, on top of a tarpaulin on the property. When officers then entered the property they found more spent shell casings in the back yard, at which point they heard multiple women yelling inside the building. Thereafter they entered the building at 27 Woodward Avenue and secured the premises. During their sweep of the building, before all persons present there were apprehended, the officers noticed one couch cushion that was conspicuously raised and checked to make sure there were no weapons hidden underneath. They found a firearm. After the building was secured, the owner/occupant of the property consented to a search of the building. During the entire intervening period, prior to obtaining consent to a full search of the building, police officers had kept it secure.

---

[5] ShotSpotter is a system of sensors used to automatically detect gunfire and automatically report it to police.

12

The totality of those circumstances represents a "reasonable basis, approximating probable cause, both for the [police officers'] belief in the existence of an emergency and for associating the perceived emergency with the area or place to be searched." United States v. Infante, 701 F.3d 386, 392-93 (1st Cir. 2012). Detected gunshots, a trail of casings leading onto the property, and the sound of screaming women coming from the building represent a clear exigency allowing police to enter and secure the premises without a warrant. Id. at 393.

Even treated as a separate search, the evidence derived from searching the couch is admissible under the inevitable discovery exception to the suppression rule. United States v. Hughes, 640 F.3d 428, 440 (1st Cir. 2011) ("[E]vidence that would inevitably have been discovered without reference to the police error or misconduct may be admitted at trial."). The officers noticed the raised cushions during their emergency sweep. It is more than safe to expect that the discovering officer, had he or she waited, would have searched the cushion upon obtaining consent and discovered the evidence concealed there at that time.

The motion to suppress is DENIED.

## II. Motions to Dismiss

### A. Motion to Dismiss Count 10 as to Patrick Gomes (Docket # 896)

Defendant Gomes moves to dismiss Count 10 of the indictment, charging him with violation of 18 U.S.C. §§ 922(g)(1) and (2), being a felon in possession of a firearm and ammunition and aiding and abetting. He seeks dismissal of that charge for insufficient evidence.

13

Gomes challenges the indictment by arguing, in essence, that his presence in the car did not, as a matter of law, constitute constructive possession of the firearm in the car, or in the alternative, that in so far that it does, the law exceeds the power of Congress to regulate conduct under the Commerce Clause and so violates the Tenth Amendment.[6]

Gomes' constitutional objections do not work. See United States v. Wight, 968 F.2d 1393, 1397-1398 (1st Cir. 1992) ("Today we make explicit the obvious and find that the element of "knowing possession" under section 922(g)(1) may be established by proving that the defendant was in constructive possession of a firearm."). To the extent Mr. Gomes is seeking to challenge the sufficiency of the evidence the government will present, the motion is premature. See United States v. Guerrier, 669 F.3d 1, 3-4 (1st Cir. 2011).

Gomes' motion to dismiss Count 10 is DENIED.

### B. Motion to Dismiss Counts 1 and 10 as to Jonathan DaSilva (Docket # 921)

Jonathan DaSilva's motion to dismiss challenges the sufficiency of the evidence to support indictment on Counts 1 and 10. It is DENIED. See Guerrier, 669 F.3d at 3-4 (1st Cir. 2011).

### III. Motions to Sever

"[S]everance is warranted 'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from

---

[6] Gomes also attempts to vicariously raise the Second Amendment rights of co-defendant Brandao; he lacks standing to do so.

14

making a reliable judgment about guilt or innocence." United States v. Celestin, 612 F.3d 14, 19 (1st Cir. 2010). This is true "even where large amounts of testimony are irrelevant to one defendant, or where one defendant's involvement in an overall agreement is far less than the involvement of others," United States v. O'Bryant, 998 F.2d 21, 26 (1st Cir. 1993).

### A. Defendant Lopes (Docket # 914)

Lopes argues his role in the alleged conspiracy as compared to his co-defendants was slight, and that the greater part of the evidence does not apply to him. As a result, he claims, he will be unduly prejudiced if forced to stand trial with his alleged co-conspirators. Unfortunately for Lopes, a small part of a conspiracy is still a part of that conspiracy, and mere speculation about evidentiary spillover is insufficient to overcome the strong presumption in favor of joinder in conspiracy cases. See United States v. Saunders, 553 F.3d 81, 85 (1st Cir. 2009). Lopes' motion to sever (Docket # 914) is DENIED.

### B. Defendants DaSilva and Gomes (Docket ## 872, 916)

Defendants Jonathan DaSilva and Gomes argue that Count 10 of the indictment, charging them with violation of 18 U.S.C. §§ 922(g)(1) and (2), was improperly joined, or in the alternative, must be severed to avoid undue prejudice. In either form of their argument, the burden is on the defendants. See United States v. Natanel, 938 F.2d 302, 306 (1st Cir. 1991); United States v. Boylan, 898 F.2d 230, 246 (1st Cir. 1990). The grant or denial of severance is at the judge's discretion. Boylan, 898 F.2d at 246.

Joinder is proper if the offenses charged "are of the same or similar character, or

15

are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed.R.Crim.P. 8(a). Count 10 was properly joined under Fed.R.Crim.P. 8(a) because the defendants are all charged as members of a single Conspiracy under Count 1, and there is a rational basis for joinder on the face of the indictment in that the allegations of Count 10, a gun charge, can be viewed to be a part of the pattern of conduct alleged in Count 1, a drug conspiracy. See United States v. Trainor, 477 F.3d 24, 36 (1st Cir. 2007) ("Indeed, even if the government had alleged two separate conspiracies, . . . there is little chance that a trial court would have agreed to try them separately given their proximate timing and the substantial overlap."); United States v. Arruda, 715 F.2d 671, 678 (1st Cir. 1983) ("A conspiracy count can be a sufficient connecting link between co-defendants and multiple offenses that tips the balance in favor of joinder.") Any evidence admitted to prove Count 10 could be used to help prove Count 1, creating a substantial permissible overlap and justifying joinder.

It follows, for largely the same reasons, that severance is not warranted under Fed.R.Crim.P. 14. See United States v. Stackpole, 811 F.2d 689, 694 (1st Cir.1987) (rejecting the defendant's severance argument and noting that "[w]ere the counts severed, substantially the same evidence would have been admitted in both resulting trials"). I "see no prejudice beyond the type of standard fare [that exists] whenever counts involving discrete incidents are linked in a single indictment." United States v. Boulanger, 444 F.3d 76, 88 (1st Cir. 2006). That, without more, is insufficient to require severance. Id. The proper remedy to any potential prejudice from evidentiary spillover is sound instruction of the jury. The motions are DENIED.

## IV. Conclusion

The motions (see supra, n. 1) are DENIED.


   January 23, 2015                                                      /s/Rya W. Zobel

       DATE                                                            RYA W. ZOBEL
                                                           UNITED STATES DISTRICT JUDGE