# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
                                )
UNITED STATES OF AMERICA,       )
                                )              Criminal Action
          Plaintiff,            )              No. 19-10080-NMG
                                )
v.                              )
                                )
GAMAL ABDELAZIZ and             )
ROBERT ZANGRILLO,               )
                                )
          Defendants.           )
                                )
```

BEFORE THE HONORABLE M. PAGE KELLEY
UNITED STATES MAGISTRATE JUDGE

HEARING

February 28, 2020

John J. Moakley United States Courthouse
Courtroom No. 24
One Courthouse Way
Boston, Massachusetts  02210

Digitally recorded and
transcribed stenographically by:
Kelly Mortellite, RMR, CRR
Official Court Reporter
One Courthouse Way, Room 3200
Boston, Massachusetts  02210
mortellite@gmail.com

```
1    APPEARANCES:

2    On Behalf of the Government:
     Leslie Wright
3    Kristen A. Kearney
     United States Attorney's Office MA
4    1 Courthouse Way
     Suite 9200
5    Boston, MA 02210
     617-748-3204
6    leslie.wright@usdoj.gov
     kristen.kearney@usdoj.gov
7
     On Behalf of the Defendant Gamal Abdelaziz:
8    Brian T. Kelly
     Joshua C.H. Sharp
9    Lauren Maynard
     Nixon Peabody LLP
10   Exchange Place
     53 State Street
11   Boston, MA 02109-2835
     617-345-1135
12   bkelly@nixonpeabody.com
     jsharp@nixonpeabody.com
13   lmaynard@nixonpeabody.com

14   On Behalf of the Defendant Robert Zangrillo:
     (Via teleconference)
15   Martin G. Weinberg
     Martin G. Weinberg, PC
16   20 Park Plaza
     Boston, MA 02116
17   617-227-3700
     owlmcb@att.net
18

19

20

21

22

23

24

25
```

```
 1              P R O C E E D I N G S
 2          COURTROOM CLERK:  Case Number 19-10080, United States
 3   v. Gamal Abdelaziz and Robert Zangrillo.  The Honorable M. Page
 4   Kelley presiding.  Would counsel please identify themselves for
 5   the record.
 6          MS. WRIGHT:  Good afternoon, Your Honor.  Leslie
 7   Wright and Kristen Kearney for the government.
 8          THE COURT:  Okay.  Good afternoon.
 9          MR. KELLY:  Sure, good afternoon.  Brian Kelly and
10   Josh Sharp and Lauren Maynard for Mr. Abdelaziz.
11          THE COURT:  Hi.  Good afternoon.
12          MR. WEINBERG:  And good afternoon.  Martin Weinberg by
13   phone.  Good afternoon, Your Honor.
14          THE COURT:  Okay.  Good afternoon.  So I'll just note
15   that this was a very impromptu hearing, and I really appreciate
16   everyone appearing on very short notice.
17          MR. KELLY:  Yes.  Just for the record, You Honor, I
18   note that, despite my foot boot, I was able to get here quicker
19   than Mr. Weinberg apparently.
20          THE COURT:  All right.  Okay.  So given Judge Gorton's
21   setting a schedule that is very truncated for the filing of
22   motions pertaining to the most recent iPhone notes of
23   Mr. Singer, I wanted to move quickly on the -- all of the
24   various motions for discovery, of which there are many, that
25   are outstanding in the case.
```

1          And I originally, just to be totally transparent, had

2     thought that I would take my time and write something on those

3     motions, but it does seem to me that if there are some

4     materials that could be produced quickly, it would be better

5     than having the defendants get those materials piecemeal and

6     file a succession of motions to dismiss based on <u>Brady</u>.

7          And in the interest of saving everyone a lot of time

8     and trouble, I thought I would have everyone in next Monday and

9     we would try to sort through what we could just as a measure --

08:06 10   just as a way of getting materials to the defendants that I was

11    going to order them to be provided with anyway prior to the

12    filing dates so that this doesn't end up being a long, long

13    process.

14         I know now also we have pretty short trial dates

15    looming, and I don't -- so I think some of this material is

16    going to go out anyway, and I don't really think it's to

17    anyone's advantage to spend all of their time fighting back and

18    forth about these motions about discovery when perhaps the

19    simplest thing is just to get the discovery.

08:06 20        So I think then we heard from the government Monday is

21    not a good day for various reasons, and so I'm concerned that

22    the longer we take for my decision, the shorter the time will

23    be for the government either to provide people with stuff or

24    for the defendants to absorb it.

25         And I will just tell you I certainly cannot speak for

1    Judge Gorton, but he is pretty firm on his dates.  So if, for

2    example, I were to order the government to produce 302s to the

3    defendants and it took you a while and they wanted more time

4    then to file those motions, I'm not sure they would get it.  So

5    I'd rather do this on -- I mean, I've certainly read all the

6    motions, although some of them are not ripe yet so I haven't

7    read all of them.  It's been kind of a nonstop thing.

8            So, Mr. Abdelaziz's motion is the first one that was

9    filed and has been pending the longest, and it's absolutely

08:08 10    ripe and it's actually pretty narrow.  So I just wondered if

11    the government had anything to say about this generally, and

12    then maybe we'd talk a little bit about their motion.

13            MS. WRIGHT:  Sure.  Your Honor, and we agree and we

14    understand your concerns.  Now that we have set trial dates,

15    our plan definitely was to sit down internally and figure out a

16    plan for production of all remaining discovery, including Jones

17    Act material, Rick Singer's 302 included.  We would just --

18    just the timing of setting something for Monday is a little

19    tricky on our end logistically because two of our team members

08:08 20    are currently out of town traveling, and one of our team

21    members had a death in his immediate family.  So we would just

22    ask for a little bit more time for us to sit down, tick through

23    all the remaining buckets of discovery and come up with a

24    sensible plan for getting that out as quickly as possible, and

25    hopefully that would then substantially narrow the issues that

1    Your Honor would have to decide with respect to the motions to

2    compel.

3          THE COURT:  Okay.  Yes.  Mr. Kelly is getting ready to

4    stand up.

5          MR. KELLY:  Yes, Your Honor.  Well, okay.  We're not

6    just concerned with Jencks here.  I mean, I know there's always

7    back and forth about when Jencks is producible, et cetera.

8          Our view is that Brady material has been withheld to

9    us contrary to the local rules, the Constitution, and the court

08:09 10   well knows all the case law.  And so our request is relatively

11   discrete from the outset.  And, you know, we're just looking

12   for -- actually, it's just not FBI 302, but I think it would

13   also be IRS reports as well, about the various representations

14   that were made about the so-called side deal that Singer had

15   with Heinel about the side door.  And that occurred well after

16   our client's daughter got into the school.  He knew nothing

17   about this side deal that Singer had.

18         We just want those reports because it's Brady with

19   respect to my client, as is any communication that Singer had

08:10 20   with my client about this being a donation to a school rather

21   than a bribe to an individual.  We view that as core Brady.

22   The government says not Brady.  So that's I think the

23   fundamental tension here, and we would want those materials

24   because we think we're required to get them.

25         Now, if somebody's family member has died and that

```
 1   impacts the process, I'm not crazy, I'm not going to say that
 2   shouldn't be considered by the court.  Nor am I, you know,
 3   suggesting we should get some unfair advantage with the
 4   government.  The fact is we've been asking for this for a long
 5   time.  The fact is the Brady rules apply to them in this case
 6   as it does in every case, and the fact is it hasn't been
 7   produced.  So we would respectfully suggest whatever plan they
 8   come up with with respect to Jencks, it should be expedited and
 9   that Brady should have been produced not just yesterday but
10   weeks ago.
11            MS. WRIGHT:  If I could just respond briefly.  And I
12   raised Rick Singer's 302s as an example.  We intend to, like I
13   said, tick through every remaining box of discovery, figure out
14   a plan for producing it all.  Clearly we have some disputes
15   about what constitutes Brady and what doesn't, but our plan is
16   that now we have a trial date to come up with a quick timeline
17   for getting all our remaining discovery out to all the
18   defendants.
19            THE COURT:  Great.  Okay.
20            MR. WEINBERG:  Excuse me, Your Honor.
21            THE COURT:  Yes.
22            MR. WEINBERG:  There are two other matters, you know,
23   and I exchanged a ten-paragraph request for information
24   specific to Mr. Zangrillo, including, you know, what did
25   Mr. Singer tell him about donations going to U.S.C. and did
```

1    Mr. Singer in fact talk to a coach that Mr. Singer claimed he

2    talked to on a tape.  The government answer, which, you know,

3    preliminary satisfied me is, one, we may not agree with you as

4    to whether all that you ask for is Brady, but you have

5    everything, document, information, et cetera, that we have

6    that's related to any of the ten paragraphs, and you will get

7    it if any new information is developed.  So I can't quarrel,

8    you know, with that kind of blanket representation that the

9    government is no longer, as to Mr. Zangrillo, following with

08:13 10   where is the line between inculpatory/exculpatory.

11         The government's got its view that even if a parent is

12   told the money is going to the school for a worthwhile program

13   and the parents think it's a donation that the government feels

14   that it helps the kid or guarantees the kid gets in, the

15   government's got its theory that's a crime.  We have our theory

16   that that's the legitimate donation that's close to the

17   heartland of what universities do.  But I was satisfied that

18   representations made by the prosecution team satisfied me that,

19   as of the date they were made, they gave me everything that

08:14 20   related to the ten paragraphs and would continue to supplement

21   regardless of our differing views on where the line between

22   exculpatory and inculpatory lies.

23         Quite frankly, it's hard for me to -- you know, it's

24   not plausible to me that Mr. Singer hadn't been asked about

25   some of these subjects.  Did you talk to a rowing coach as you

1    claimed to Mr. Zangrillo?  Didn't you tell Mr. Zangrillo where

2    the monies that he paid to Key were destined to go?

3         But I also understand that it's not a perfect world

4    and the prosecution has lots of different cases, and when they

5    tell me, you know, point blank, unconditionally that I've got

6    everything, I expect that, and I have to believe that they are

7    going to give me everything that relates to the ten paragraphs

8    of the motion.

9         And I joined the other defendant's motions, and we

08:15 10   have a separate motion, and I know Mr. -- Mr. Kelly filed the

11   supplement to that dealing with consensual recordings.  And I

12   haven't heard, whether it's Ms. Wright or Ms. Kearney, address

13   whether in the government discussions about the subject --

14   productions, whether they intend to moot that motion which

15   asked for all of the non-produced consensual.  But I know we're

16   very interested in that in light of the Singer iPhone notes and

17   particularly interested in the consensual recordings because

18   they were being automatically recorded by Singer's phone when

19   he spoke to government agents, when he spoke to other parents,

08:16 20   the entire range of calls on his phone while he was working for

21   the government and while he at least subjectively believed that

22   the government was yelling at him, certainly making him

23   promises, and he was certainly highly motivated during this

24   entire time period to be as valuable a witness as he could.

25        So we believe that that motion, unless the government

1   is going to agree to produce all of the consensuals that began

2   when he began his cooperation and presumably ended upon the

3   disclosure of the indictment shortly after March 5, that motion

4   remains viable and remains very important to us and even more

5   important in light of the most recent production of exculpatory

6   evidence in Singer's notes.

7        MS. WRIGHT:  We do plan to produce all non-pertinent

8   consensual recordings.

9        MR. KELLY:  Okay.  And not to put too fine a point on

08:17 10   it, but we just filed this yesterday, so I'm sure the court has

11   had a blizzard of motions.  But we are -- we also are very

12   interested in the consensually recorded that may have been

13   designated not pertinent, the handwritten notes that were

14   released recently by Singer, where he talked about having a

15   loud, abrasive call with an agent.  And we think it's an IRS

16   agent.  We think that tape exists.  We don't have it.  We think

17   it's core Brady if this agent is telling him to lie about what

18   he actually believes, and that's the inference we're drawing.

19        Now, if that's one of the tapes that is -- they have

08:18 20   and they haven't produced it, we do in fact want it.  But we

21   get back to our original request, and when we asked for that,

22   we also asked, again, as yesterday's motion is probably

23   premature to reference the court, but there is a lot of

24   iMessages that have been deleted.  And we have asked for that,

25   and we attached that as an exhibit to our motion yesterday as

1    the type of things we're looking for from Singer's phone.  It

2    looks like all this stuff has been deleted.

3            So if they have it, we want it, and we think it is

4    Brady, and we would say that, at least with respect to our

5    motion, it's not moot because we haven't got the reports on the

6    two issues that we initially flagged, i.e., what do they have

7    about this side deal on the so-called side door between Singer

8    and Heinel.  Because it happened months after my client's kid

9    got into the school, so he could not have known about it.

08:19 10            And secondly, what do they have between communications

11    and our client about this being a donation to a school, not a

12    person, because that's where we think it affects his mental

13    intent, therefore it reflects his innocence, and it is Brady.

14    So whatever the logistical hurdles are, the rules are the

15    rules.  They get applied very stringently to our clients, and

16    they get applied stringently to the defense.  It should also be

17    applied to the government, that if it's Brady, we should have

18    had it months ago.

19            THE COURT:  Okay.  So --

08:19 20            MR. WEINBERG:  If I can -- if I can add just one

21    thing.

22            THE COURT:  Yes, go right ahead.

23            MR. WEINBERG:  We do, really do urge the government

24    to, you know, with a witness like Singer, get to the bottom of

25    what he remembers saying to our clients because much of what he

1    said was before the Title IIIs issued by Judge Burroughs.

2    Again, our clients take the position -- and I'd have to waive

3    the attorney-client privilege to say exactly why -- that they

4    understood that the funds that they were providing either

5    directly to the school or to the school through Singer were

6    going to programs that needed funds, programs approved by

7    U.S.C.

8         And the notes that were recently produced seem to

9    reinforce the view that Singer talked to them and bring his

08:20 10   financial request in terms of donations, goes to, you know, two

11   or three different essential elements in this case.  One is,

12   objectively was there a donation in good faith that's

13   non-fraudulent and not a bribe or was there not, and what did

14   the defendants believe.  Did they have intent?  What did

15   Singer, who they trusted, put in her heads as the justification

16   for seeking funds and seeking payments to the school?

17        These are primary issues and we really ought to, at

18   this point with a trial date and the case has now been indicted

19   for, you know, about 11 months, know exactly what Singer is

08:21 20   telling the government about what he told our clients about

21   what the purpose of the payments were.  And that's why we've

22   pushed these Brady motions so hard, Your Honor.

23        THE COURT:  Okay.  Yes.

24        MS. WRIGHT:  If I just may really briefly, Your Honor.

25   First of all, we agree that now we have a trial date, we are

1    going to produce the 302s.  But we have provided defense

2    counsel with summaries of Singer's statements on the exact

3    topics that defense counsel is now addressing.

4          Just two brief things.  First, the phone, we're going

5    to provide a full extract of Rick Singer's iPhone in very short

6    order, so I hope that that would address the concerns raised by

7    Mr. Kelly.  The only other thing I'll say is that with respect

8    to the non-pertinent consensual recordings, my understanding,

9    and I need to verify this, but that would not include

08:22 10    discussions between Rick Singer and government agents.

11          THE COURT:  Okay.

12          MR. KELLY:  Well --

13          THE COURT:  So let me just say a couple of things.

14    First of all, you know, I have read all the motions, at least

15    the ones that are ripe, of which there are many.  We had to do

16    a long -- a big chart of them recently.  But I don't think the

17    sum and substance summaries are sufficient.  And one of the

18    reasons it's taken me so long to work through these motions is

19    I've been looking through the ex parte materials I have to try

08:23 20    to pinpoint precisely where the sum and substance comments are

21    coming from.

22          But I will just say this by way of illustration.  With

23    regard to Mr. Abdelaziz, the 302s of Rick Singer, especially if

24    you look at FD-1023 -- and obviously the defendants don't have

25    this, but the government will know what I'm talking about --

1    page 1 of 5, it's dated 11/9/2018, on the second page there is

2    a paragraph that kind of talks -- well, it talks about when

3    Heinel specifically was corrupted by Rick Singer.  And if you

4    just look at the paragraph that begins with the sentence, "At

5    the beginning, Heinel was not personally taking her share of

6    the money," the suggestion there is that she wasn't being

7    bribed at first in her relationship with him.  If she's taking

8    money for an account over which she has control, which, I know

9    the government says that's a bribe, you still have to prove

08:24 10    that the school was not in on that.

11            And I know that the government -- I've also reviewed

12    the 302s with U.S.C., and I know that the higher-ups are

13    saying, "We never did that," and the lower-downs are saying,

14    "We might have."  So I think it's -- and I'll just tell you

15    from other material I've seen ex parte in the case, it is a

16    viable assertion that U.S.C. had a practice of its admissions,

17    of its athletics department admitting kids in exchange for

18    donations who were -- as athletic walk-ons.  And there's an

19    email that I think has been widely circulated where a parent

08:25 20    asks an administrator, "What about the preferred walk-on spot?

21    Could my daughter have that?"  So that's something that people

22    were being told was a possibility to get their kids in.

23            So if that is a viable line of defense, then when

24    precisely Heinel agreed with Singer to start taking money

25    personally is highly relevant because you're going to say, Oh,

it's a bribe legally if she has money going into accounts she
controlled.  That's going to be something for the jury to
decide.  It's not de facto a bribe.  The school has to be
ignorant of that, and one might well ask, How could the school
have been ignorant of that?  Like, how did admissions work?

So I think it's going to be very important to
demonstrate or to -- excuse me -- to produce the 302s that
explain precisely when Heinel started taking money personally.
And the interesting thing here is, in this 302 I'm looking at,
there is -- actually, I think it's a typo, it says, "In late
fall or spring 2017."  I've never heard anyone use that phrase,
the late fall or spring of one year.  So I don't know if that
means late fall of 2016 or spring 2017, but it just seems like
a very blurry, odd way of pinning someone down on the time.

And frankly, the fact that in this 302 the government
isn't trying to pin him down on the time and ask him any
further questions about it I think is exculpatory.  Because if
you can't prove that Heinel was corrupted when she was just
taking money for the accounts at the school, then this would be
your fallback, and you're -- it's very, very vague here.  So I
think Abdelaziz should get what he's asking for in this motion.
I think it's relevant, and it's exculpatory.

I mean, you -- I just think the government is kind of
stuck on this theory that, if the money is going into an
account for the school in exchange for Heinel advocating for a

1   student, then the defendants are guilty.

2        Number one, you do have to show they knew that was

3   happening; and, number two, you have to show the school wasn't

4   okay with that.  Right?

5        MS. WRIGHT:  Yeah, yes, Your Honor.  And we intend to

6   prove that.  I will just note, as Your Honor mentioned, clearly

7   our theory is that the payments to the programs that Heinel was

8   accepting without letting admissions know that she was doing

9   that in exchange for not only advocating but essentially

08:31 10   insuring these kids' admission to the university, that these

11   are bribes.

12        But I just also note with respect to the timing, when

13   she started to take money personally, what Mr. Singer had to

14   say about that is not the only source of evidence on that

15   point, and there are bank records that make it very clear when

16   she started to accept money personally, and the defendants have

17   all of that information.

18        THE COURT:  So you're showing -- you're saying that

19   when a bank -- when she starts getting the $20,000 a month,

08:31 20   that's exactly when her agreement with Singer was solidified.

21        MS. WRIGHT:  The agreement for her to start taking

22   money personally?

23        THE COURT:  So I think you're also overlooking the

24   possibility that Singer didn't understand the admissions

25   process at U.S.C.  So the fact that Singer thinks something's

1    amiss when he first starts working -- you know, when he first

2    starts working -- also you -- there's information here about

3    how Pat Haden is welcoming him as a fundraiser.  What does that

4    mean?

5          So there's just -- also, I just find -- I started

6    going through here.  I think there are other categories of

7    information, such as Singer's truthfulness, that are really

8    important because I think he was lying to a lot of the parents,

9    and I do think that's relevant.  Some of them may have figured

08:33 10   that out.  And whether he was telling someone the truth about

11   something or not I think, and whether he's a pathological liar,

12   is going to kind of permeate the whole case.  And I think the

13   defendants are entitled to know if he's truthful.

14         Yes, Mr. Kelly.

15         MR. KELLY:  We just had two things.  First of all,

16   just because -- we understand the government has a somewhat

17   novel theory of a guilty bribe, but that doesn't mean it's not

18   Brady for our client's purposes.  Like most people in America,

19   he's going to think a bribe is money going to a person, not a

08:33 20   donation to a school that he wants his kid to go to.

21         THE COURT:  Sure.  But if you look at Skilling and

22   they use that mayor example, you could take a bribe from

23   someone and actually enrich the school, and it could still be a

24   bribe.  It's kind of like why I think Mr. Vandemoer was guilty.

25   Because he's taking money and admitting students sort of on the

1    side, even though the money is going to the program, the school

2    doesn't have its imprimatur on his running his own mini

3    admissions program.

4            MR. KELLY:  Your Honor, my client has no idea who

5    Donna Heinel was.

6            THE COURT:  Sure.  No.  I get that.  So I think the

7    problem with the government's theories is -- it's not a

8    Vandemoer situation because you've got -- it's once removed

9    because you've got these parents paying Singer, who is paying

09:41  10    the coach or the administrator, and that makes things very

11    complicated as far as the parents' intent and what the parents

12    understand is going on.

13            MR. KELLY:  Right.  Money is given to schools all the

14    time, to the athletic department, particular school program.

15    And does it help kids get in?  Yes.  It's not a bribe.  People

16    don't like it, but it happens all the time that money is given

17    to a school.  Does that give people an advantage?  Yes, but

18    that's not --

19            THE COURT:  Sure.

09:43  20            MR. KELLY:  -- a bribe in this context.

21            THE COURT:  And I think, for example -- yeah --

22            MR. KELLY:  And I think in Skilling, the mayor there

23    was getting money for himself.  So the money for herself,

24    Heinel, doesn't occur until later, according to them, according

25    to the evidence.  That's further reason why Skilling doesn't

1    save them with their theory.

2         THE COURT:  Sure, but I think you can have a kind of

3    business or personal interest.  It doesn't have to be money in

4    your pocket.  It could be something less tangible that helps

5    your interests.  So I do think, if the school doesn't know

6    about it and the parent does know about it, Donna Heinel's

7    allegedly taking money for an account at the school that she

8    has control over and it somehow burnishes her prestige or she

9    gets to direct it somewhere or other to her professional

09:44 10   benefit would be a bribe, but the parent has to know she's

11   doing that, and the school cannot be condoning it.

12        MR. KELLY:  Okay.  One more point, Your Honor.  This

13   is a little off-topic, but it's a preview, and I want to give

14   the government a heads-up because we're going to ask for it and

15   maybe they can factor this into their ongoing or soon-to-be

16   productions, is that in light of Judge Sorokin's recent ruling

17   on his case involving 302s and how they've been changed with

18   interaction between the agent and the AUSAs, we're going to

19   seek any drafts of these 302s that may have been changed by

09:45 20   interactions with the agents and the AUSAs on the case.

21        So we think that based on Judge Sorokin -- I don't

22   know if that occurred here, but certainly Judge Sorokin's

23   opinion suggests that's what's going on.  So not only do we

24   want the 302s and/or IRS reports, we want to know if those

25   things were altered to fit the charges here.

```
  1            THE COURT:  Okay.  So --
  2            MR. WEINBERG:  Judge, if I heard the government
  3    correctly, they're planning on producing the consensual call
  4    tapes that had not previously been produced but are carving out
  5    tapes between Singer and law enforcement.  And I would just say
  6    that I think at least some of the calls between Singer and law
  7    enforcement are exculpatory and non-privileged, particularly
  8    the ones between the start of this cooperation and October 2
  9    when he was saying, Just had a call with agents and they're
09:46 10    asking me to tell a fib and essentially saying to say that they
 11    want it to be a payment when I'm telling them it was a donation
 12    to a program.  And they say that one agent, at least, is urging
 13    him to bend the truth, which is what they asked me not to do
 14    when I was talking or working with other agents and Eric Rosen
 15    and I assume the rest of the prosecutors.
 16            And this is the cornerstone issue that goes to intent,
 17    which is, Singer is saying it was a donation to programs, and
 18    he says, Liz raised her voice.  They want me to tell that Liz
 19    had raised her voice to me like she did in the hotel room about
09:47 20    agreeing with her that everyone bribed the school.
 21            And today we just talked about the cornerstone issue,
 22    which is the government is calling a bribe what the defense
 23    calls a donation to a program.  And what the defense is saying,
 24    Judge, they were told by Singer, We're going to give donations
 25    to programs.  And it goes to both the subjective element and
```

1       the underlying reality of what the payment was for.

2               And Your Honor has seen through the 17C litigation

3       that, to put it mildly, U.S.C. welcomed donations, and

4       admissions did not bar itself or wall itself off from being

5       affected by development and wanting donations.  And it's -- you

6       know, I get the government's allegation that these payments are

7       not proper, but we should be receiving consensual calls during

8       this 9/21 or 9/22 to 10/2 period because, according to what

9       Singer wrote into the iPhone and what the government provided

09:49 10   to us, he is having a dispute with at least one of the agents

11      in being asked to adopt scripts in these consensual calls that

12      do not conform to what he, Singer, is saying to the government

13      he was telling the parents, which is these were donations to

14      programs and not bribes.

15              And so I get that the government does not want to

16      produce calls between their witness and government agents, but

17      I think, given Singer's notes that were produced the other day,

18      we can make a particularized showing that these consensual

19      calls with the government agents where they were discussing

09:50 20   these subjects are exculpatory and are producible.

21              THE COURT:  Okay.  So I think the takeaway here is,

22      from me, that sort of -- unfortunately, I know about

23      Mr. Frank's loss.  I'm very sorry about that.  But I do think

24      time is of the essence here.  And secondly, I would really just

25      urge the government in this very high-profile case with a very

1    difficult key player, I don't know if he's going to be the

2    government's witness or not, but regardless, the cat is out of

3    the bag, and he's -- this is a very complicated situation and

4    it's ugly.

5          So I just -- I would really urge the government to be

6    as transparent as possible.  This is not a time to hold your

7    cards close to your vest or hold back information or try to get

8    any kind of strategic advantage from the timing of discovery.

9    I would just disclose whatever you can bring yourself to at

09:51 10    this stage, but I would really be liberal about what I'm

11   disclosing because all that's going to happen is we're going to

12   have another very intense round of motions, whatever you don't

13   turn over.  And I can just tell you, I'm inclined to release

14   materials, just given the atmospherics here and what's

15   happening.

16         So I think what I'm going to do is just give everyone

17   some breathing space.  Why don't we take Monday, and I'll let

18   the government talk among themselves and talk to counsel, and

19   then maybe by the close of business Tuesday you can just give

09:52 20    Ms. Belmont an update, it doesn't have to be something formal,

21   but letting us know what is still in dispute.  And then I

22   really don't want another big batch of filings.  We don't

23   really have time for that.  We'll just try to schedule a

24   hearing for later in the week.  But I do think the government

25   should be geared up to get things out quickly because I think

1  that's the only way to deal with Judge Gorton's schedule and

2  then just let everyone get ready for trial.  Yes?

3          MR. KELLY:  One final point, and I agree Judge

4  Gorton's schedule is daunting so we do want these materials as

5  soon as possible.  I think what I just heard, though, I agree

6  with Mr. Weinberg that we need the tapes of Singer with the

7  agent as the subject of these notes.  I think I heard the

8  government say they don't exist, these tapes.  But if that's

9  true, then he must have been using a different phone.  And if

09:53 10  he was using a different phone and it wasn't recorded, we'd

11  like to know that.  Because otherwise they should have the tape

12  of this so-called call where he was allegedly told to lie.

13          THE COURT:  Okay.  So this is something new, but I'm

14  going to let you talk to the government about that.  And I will

15  just say to the government I do find there's some exculpatory

16  information in the 302s pertaining to the U.S.C. witnesses as

17  well, so that should be checked and produced if you can at this

18  time.  Okay?

19          All right.  Anything else now?  Mr. Weinberg, thanks

09:53 20  for appearing.

21          MR. WEINBERG:  Thank you, Your Honor, for allowing me

22  to appear by phone.  Have a nice weekend.

23          THE COURT:  Sure.  Thanks, everyone, for assembling so

24  quickly.  So anything else?

25          MS. WRIGHT:  No.

1        MR. KELLY:  No, Your Honor.

2        THE COURT:  Okay.  Good luck, everyone.

3            _ _ _ _ _

4

5        CERTIFICATE OF OFFICIAL REPORTER

6        I, Kelly Mortellite, Registered Merit Reporter

7  and Certified Realtime Reporter, in and for the United States

8  District Court for the District of Massachusetts, do hereby

9  certify that the foregoing transcript is a true and correct

10 transcript of the stenographically reported proceedings held in

11 the above-entitled matter to the best of my skill and ability.

12        Dated this 1st day of March, 2020.

13

14        /s/ Kelly Mortellite

15        _____

16        Kelly Mortellite, RMR, CRR

17        Official Court Reporter

18

19

10:33 20

21

22

23

24

25