**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| **United States of America,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Criminal Action No.** |
| ) | **19-10080-NMG** |
| **Sidoo et al,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

The government has charged defendants with conspiring with William "Rick" Singer to have their children fraudulently admitted to elite universities by, <u>inter alia</u>, fabricating applications, falsifying academic and athletic credentials, cheating on standardized tests, making payments to corrupt exam proctors and bribing university employees and athletic coaches. The defendants have moved to dismiss the indictment based on alleged investigatory misconduct and the government's failure to turn over in a timely fashion notes taken by Singer which concern that alleged misconduct.

## I.   Background

The government investigation of the alleged bribery scheme began in early-2018 and involved multiple cooperating witnesses, Title III wiretaps and Court authorized searches.  In September

2018, six months after the investigation began, government agents approached Singer in the midst of a meeting in which he was suspected of being involved in criminal conduct and he agreed to cooperate.  As part of his cooperation, Singer consented to a wiretap of his phone and agreed to make recorded calls to potential suspects to discuss the alleged bribery scheme.  In the following days, Singer made calls, as directed by the government, to parents who were either engaged in the alleged fraud or were considering participation in the scheme.

On October 2, 2018, Singer wrote in his iPhone "notes" application that government agents had strong-armed him and instructed him to lie in order to elicit incriminating information from the target parents.  Before that date, Singer had placed recorded calls to only one parent who is a current defendant in this case.

During the initial stages of his cooperation with the government, including on October 2nd, Singer was surreptitiously obstructing the government's investigation by alerting potential targets.  The government soon became aware of Singer's obstruction and he was subsequently charged with and pled guilty to a single count of obstruction of justice.

In late October, 2018, the government instructed Singer to make recorded calls to the targets of its investigation, using a ruse that the IRS was auditing Singer's "charity" (Key Worldwide

Foundation) and he needed to coordinate anticipated contacts with them.

Also in late October, after data from Singer's phone had been extracted, an Assistant United States Attorney ("AUSA") reviewed Singer's iPhone notes, and saw the accusatory October 2nd note.  A contract attorney also reviewed portions of the notes and informed the AUSAs assigned to the case about their existence.  The government extracted data from Singer's phone several more times between October 2018 and March 2019.  Although the government submits that it instructed Singer not to delete data from his phone, apparently Singer disobeyed and deleted certain text messages to and from defendants.

Although the government has a continuing obligation to produce exculpatory information pursuant to Brady v. Maryland, 373 U.S. 83 (1963) and Local Rule 116.2, it did not produce Singer's iPhone notes until February, 2020, 16 months after an AUSA became aware of their existence.  The government has since admitted that this late disclosure was a mistake and that the notes should have been provided much earlier.

Defendants assert that Singer's October 2nd notes indicate that the government committed egregious misconduct by coercing Singer into lying and fabricating evidence.  Given that alleged misconduct and the government's belated compliance with its discovery obligations, defendants have moved to dismiss the

indictments against them or, in the alternative, to suppress the

consensual recordings of Singer's telephone calls.

## II.  Motion to Dismiss Indictments for Government Misconduct

### A. Legal Standard

The outrageous government misconduct doctrine allows a

Court, in the most extreme of circumstances, to dismiss a

criminal indictment as a sanction for appalling government

misconduct. See United States v. Guzman, 282 F.3d 56, 59 (1st

Cir. 2002) (citing United States v. Russell, 411 U.S. 423, 431–

32).  To warrant such dismissal, the government conduct must be

so "egregious as to violate due process by 'shocking...the

universal sense of justice.'" United States v. Therrien, 847

F.3d 9, 14 (1st Cir. 2017)(quoting United States v. Luisi, 482

F.3d 43, 59 (1st Cir. 2007); See also Russell 411 U.S. at 432

(noting for dismissal to be warranted, government misconduct

must violate "fundamental fairness shocking to universal sense

of justice.")

Because "the law frowns on the exoneration of a defendant

for reasons unrelated to his guilt or innocence" the government

misconduct doctrine must be invoked sparingly and only in truly

exceptional circumstances.  Guzman, 282 F.3d at 59.  Indeed, as

the government points out, the outrageous governmental

misconduct defense has never been enforced in this Circuit.

United States v. Anzalone, 923 F.3d 1, 6 (1st Cir. 2019); See

-4-

also United States v. Santana, 6 F.3d 1, 10 (1st Cir. 1993)

(noting that such "[p]otent elixirs should not be casually

dispensed.")

### B. The October 2nd Notes

On October 2, 2018, Singer wrote in his iPhone notes app:

> Loud and abrasive call with agents.  They continue to ask me
> to tell a fib and not restate what I told my clients to where
> there [sic] money was going – to the program not the coach and
> that it was a donation and they want it to be a payment.
> ...Essentially they are asking me to bend the truth...Liz
> raised her voice to me like she did in the hotel room about
> agreeing with her that everyone Bribed [sic] the schools. This
> time about asking each person to agree to a lie I was telling
> them.

As part of their defense, defendants contend that Singer told

the parents, and the parents believed, that their payments were

legitimate donations to universities and athletic programs, not

bribes to corrupt coaches and administrators.  Defendants

maintain that those notes demonstrate that the government

coerced Singer into lying to fabricate evidence of criminal

intent where none existed.

The government responds that by the time Singer was

instructed to make the wiretapped phone calls, it had already

elicited substantial evidence that defendants had knowingly

committed fraud.  The government asserts that in the calls which

precipitated the October 2nd notes, they did not instruct Singer

to fib or lie but rather sought to have him describe explicitly

the alleged scheme in order to make it crystal clear to any

parents not already committed to Singer's "program" that their payments were bribes not just donations.

With respect to the conduct of its agents, the government has submitted affidavits of IRS Special Agent Elizabeth Keating, FBI Agent Laura Smith and AUSA Eric Rosen to explain the encounters with Singer preceding his October 2nd note.  The government has also produced an FBI-302 report of a recent interview with Singer in which he corroborates that accounting. The agents recount that, while meetings with Singer were contentious, they did not instruct him to fabricate evidence or elicit false admissions.  The affidavits categorically deny that any member of the investigative team ever directed Singer to lie, attempt to entrap suspects or elicit false admissions of guilt.

The government explains that the reason the agents did not investigate Singer's October notes at the time was because the AUSAs assigned to the case 1) knew he was an unwilling cooperator who had subsequently obstructed the investigation, 2) understood, based upon the evidence in the case, that the purpose of the calls was to offer those parents an opportunity either to confirm or deny their participation in the scheme and 3) knew that statements made on the subsequent calls corroborated other evidence in the case.

As is acknowledged by defense counsel, government agents are permitted to coach cooperating witnesses and create ruses designed to elicit incriminating information from willing participants during the course of an investigation.  Government agents are most definitely not, however, permitted to suborn the commission of a crime.

After consideration of the extensive briefing, affidavits and other information provided by the government and defendants, the Court is satisfied that the government has not lied to or misled the Court.  Singer's October 2nd statement was 1) made before Singer was fully cooperative with the government; 2) relative (primarily) to a sting operation involving parents not yet committed to Singer's "program"; and 3) insofar as it did relate to future calls to be made to defendants, was in response to the agents' efforts to get Singer to corroborate, not fabricate, evidence.  The affidavits of the IRS and FBI agents and AUSA Rosen rebut defendants' contrary accusations.

To the extent the defendants are dissatisfied with Singer's purported denials of any wrongdoing in connection with his rehearsed telephone calls, they will have ample opportunity to cross examine him if and when he testifies at trial.  Whether Singer's calls in October, 2018, were consistent with his prior representations of his "program" and whether they demonstrate that defendants believed their payments to be legitimate

-7-

donations rather than bribes is an issue squarely for the jury
after a trial on the merits.

### C. The Failure to Turn over the Notes

As a second ground for dismissal of the indictment (or, in
the alternative, for suppression of evidence garnered from the
wiretap), defendants maintain that the government has violated
its obligation under the <u>Brady</u> doctrine by failing to disclose
the existence and contents of Singer's iPhone notes before
February, 2020.

Although government attorneys assigned to prosecute this
case became aware of Singer's October 2nd note later in in
October, 2018, the defendants were not provided a copy of that
note until February of 2020, long after it should have been
disclosed under the Local Rules and <u>Brady</u>.  The government
acknowledges that counsel should have turned over the note
earlier.  By way of partial explanation, the government
maintains that, based on counsel's initial review of the note in
2018, they believed it was prepared for Singer's attorney and
therefore subject to the attorney client privilege.

Notwithstanding the potential privilege, the government
should have produced Singer's October 2nd note much sooner than
it did.  The government's failure to do so was irresponsible and
misguided.  It was not, however, willful and is partly explained
(but not excused) by the AUSAs' imprudent underestimation of the

context, relevance and potential exculpatory nature of the
notes.  More importantly, the note was disclosed more than eight
months before the scheduled trial and before defendants'
deadline for the filing of dispositive motions.  Defendants have
ample time to prepare for trial with the benefit of the subject
note and have not been unduly prejudiced by its late disclosure.
The indictment will not be dismissed on that ground.

### III. <u>Suppression of Recordings</u>

In the alternative to dismissal of the indictment, the
defendants maintain that the Court should suppress the
consensual recordings of Singer's phone calls made in October,
2018, because those recordings are tainted by the alleged
investigatory misconduct.

A federal court possesses the inherent supervisory
authority to suppress evidence in criminal cases if that
evidence is the product of or tainted by extreme misconduct.
<u>See</u> <u>United States</u> v. <u>Horn</u>, 29 F.3d 754, 760 (1st Cir. 1994).
That power is, however, to be used sparingly and only in
situations involving flagrant misconduct and prejudice.  <u>United
States</u> v. <u>Osorio</u>, 929 F.2d 753, 763 (1st Cir. 1991); <u>Horn</u>, 29
F.3d at 760 (noting that it is inappropriate for courts to
attempt to use the supervisory power to justify an extreme
remedy when, "short of such heroic measures, the means are at
hand to construct a satisfactory anodyne more narrowly tailored

-9-

to the objective.")

For the reasons expounded above, the Court will not suppress the consensual recordings.  The Court is satisfied that government's counsel has not lied to or attempted to mislead the Court or fabricated evidence.  Although counsel erred by failing to review and turn over Singer's notes in a timely fashion, that error has not unduly prejudiced these defendants.  Accordingly, suppression of the consensual recordings is not warranted.

## IV.  **Evidentiary Hearing**

Defendants seek an evidentiary hearing to examine further the specific circumstances of Singer's October 2nd note and to seek additional information about the government's investigation.  But the Court perceives no necessity for an evidentiary hearing.  Any unsettled factual questions have been adequately addressed on the record by the proffered affidavits of federal agents and an AUSA which unequivocally deny the investigatorial misconduct.  Those affidavits are supported by other submissions in response to the Court's Memorandum and Order entered April 17, 2020 (Docket No. 1085).

An evidentiary hearing is required if a defendant can make a sufficient showing that not only are there material facts in doubt but also that those facts cannot be resolved on the papers.  United States v. Staula, 80 F.3d 596, 603 (1st Cir. 1996)(noting that "it is apodictic that a criminal defendant is

-10-

not entitled, as a matter of right, to an evidentiary hearing on every motion that he deigns to file."); See also United States v. Lilly, 983 F.2d 300, 310-11 (1st Cir. 1992).

Accordingly, defendants have failed to meet their burden of establishing an unresolved issue of material fact that would warrant an evidentiary hearing and their request for such a hearing will therefore be denied.

<b>ORDER</b>

For the foregoing reasons, after consideration of defendants' memorandum in support of their motion to dismiss the indictment (Docket No. 972); the government's opposition to that motion (Docket No. 1066); defendants' reply in support of the motion (Docket No. 1086); the government's sur-reply in opposition (Docket No. 1104), supported by affidavits of agents and an Assistant United States Attorney; and the defendants' response to the government's sur-reply (Docket No. 1141), the defendants' motion to dismiss the indictment or in the alternative to suppress evidence and order an evidentiary hearing (Docket No. 971) is **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated May 8, 2020