**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>vs.<br><br>DAVID SIDOO, et al.,<br><br>　　　　Defendants. | Criminal No. 19-CR-10080-NMG<br><br>Leave to file granted on 5/13/2020<br><br>ORAL ARGUMENT REQUESTED |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO SUPPRESS EVIDENCE**
**DERIVED FROM THE GOVERNMENT'S FOUR WIRETAPS (Dkts. 1024, 1138)**

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................. 1

DISCUSSION .................................................................................................................... 4

A.    The Purported "Complexity" Of Singer's Network Does Not Moot
      The Necessity Requirement ................................................................................. 4

B.    Investigators' Review Of A Handful Of Emails Between Singer
      And A Cooperator Did Not Demonstrate Necessity ............................................ 8

C.    In The Alternative, A *Franks* Hearing Should Be Ordered ............................... 11

CONCLUSION ................................................................................................................. 12

5751547

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Berger v. State of N.Y.*,
  388 U.S. 41 (1967) ................................................................................................ 4

*Franks v. Delaware*,
  438 U.S. 154 (1978) .............................................................................................. 1

*U.S. v. Nelson-Rodriguez*,
  319 F.3d 12 (1st Cir. 2003) ................................................................................ 11

*U.S. v. Abou–Saada*,
  785 F.2d 1 (1st Cir. 1986) .................................................................................... 3

*U.S. v. Ashley*,
  876 F.2d 1069 (1st Cir. 1989) .............................................................................. 1

*U.S. v. Blackmon*,
  273 F.3d 1204 (9th Cir. 2001) ............................................................................. 5

*U.S. v. Cartagena*,
  593 F.3d 104 (1st Cir. 2010) ............................................................................ 4, 7

*U.S. v. DiMuro*,
  540 F.2d 503 (1st Cir. 1976) ................................................................................ 5

*U.S. v. Gianelli*,
  585 F. Supp. 2d 150 (D. Mass. 2008) ........................................................... 1, 2, 6

*U.S. v. Kalustian*,
  529 F.2d 585, 589 (9th Cir. 1975) ....................................................................... 5

*U.S. v. Lopez*,
  300 F.3d 46 (1st Cir. 2002) ............................................................................ 1, 2, 5

*U.S. v. Martinez*,
  452 F.3d 1 (1st Cir. 2006) ............................................................................ 1, 2, 5, 6

*U.S. v. Rodrigues*,
  850 F.3d 1 (1st Cir. 2017) .................................................................................... 7

*U.S. v. Santana*,
  342 F.3d 60 (1st Cir. 2003) .................................................................................. 1

*U.S. v. Santana-Dones*,
  920 F.3d 70 (1st Cir. 2019) .................................................................................. 5

5751547

TABLE OF AUTHORITIES (cont.)

Page(s)

*U.S. v. Serrano*,
 632 F.Supp.2d 100 (D. Mass. 2009) ................................................................... 6

*U.S. v. Tanquay*,
 787 F.3d 44 (1st Cir. 2015) ............................................................................. 11

**Statutes**

18 U.S.C. §§ 2515 and 2518(10) ............................................................................. 1

5751547

Defendants Robert Zangrillo, Amy Colburn, John Wilson, Elisabeth Kimmel, Marci Palatella, I-Hsin Chen, and William McGlashan, Jr. respectfully submit the following reply memorandum in support of their motion to suppress wiretap evidence pursuant to 18 U.S.C. §§ 2515 and 2518(10) or, in the alternative, for an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

## INTRODUCTION

The statutory presumption against wiretaps may be overcome only by a particularized showing of *necessity*: that the Government "made 'a reasonable, good faith effort to run the gamut of normal investigative procedures' *before applying for a wiretap*," and there is a "'reasonable likelihood that alternative techniques would fail to expose the crime.'" *U.S. v. Gianelli*, 585 F. Supp. 2d 150, 155 (D. Mass. 2008) (emphasis added) (quoting *U.S. v. Santana*, 342 F.3d 60, 65 (1st Cir. 2003) and *U.S. v. Ashley*, 876 F.2d 1069, 1073 (1st Cir. 1989)). The Government's opposition brief confirms that it sought wiretaps in this case *before* making "a reasonable, good faith effort to run the gamut of normal investigative procedures," and that the wiretap applications misrepresented or omitted facts material to whether "alternative techniques would fail to expose the crime." The Government in its opposition makes two primary arguments regarding necessity.

*First*, the Government asserts that "the sheer scope and complexity of Singer's enterprise made clear that traditional investigative techniques were unlikely to achieve all of the investigative goals set forth in the affidavit," rendering a wiretap necessary. Dkt. 1138 at 19. The Government cites no authority for the proposition that the purported "complexity" of an investigation, standing alone, can moot the requirement for a particularized showing of a necessity. The law is to the contrary. Although the Government may "cast a wide net" in its investigative goals, *U.S. v. Martinez,* 452 F.3d 1, 6 (1st Cir. 2006), it still must "show with specificity why ordinary means of

- 1 -

investigation will fail" to achieve those goals. *U.S. v. Lopez*, 300 F.3d 46, 53 (1st Cir. 2002). This requires that investigators "run the gamut of normal investigative procedures before applying for a wiretap." *Gianelli*, 585 F. Supp. 2d at 157 (internal quotation marks and citations omitted); *accord Martinez*, 452 F.3d at 4. That did not happen here. When the Government sought its first wiretap order, investigators were only ███████████████ approximately *30 gigabytes* of Rick Singer's e-mails that had been obtained via search warrant from an account the Government claims Singer actively used in connection with his alleged scheme. Although investigators need not "exhaust" every traditional investigative technique before seeking a wiretap, the requirement that they make a reasonable, good faith effort to first "run the gamut" of those techniques would be a nullity if it did not include, at a minimum, conducting a reasonable, good faith review of voluminous *written* communications of a target before seeking the extreme measure of electronically eavesdropping on that target's *oral* communications.

*Second*, the Government notes that in the initial wiretap affidavit, investigators represented to the Court that e-mails obtained from Singer's account would be inadequate to achieve the investigation's goals. Dkt. 1138 at 23. To demonstrate necessity, however, "conclusory statements without factual support are not sufficient." *Lopez*, 300 F.3d at 53. The Government's opposition contains only a single paragraph that even attempts to explain why, before reviewing the vast majority of Singer's e-mails they had already obtained, investigators already believed that those e-mails would be inadequate. ██████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████ This sweeping conclusion defies belief. The whole purpose of consensually-recorded calls, which are placed at the direction and under the supervision of investigators, is to attempt to get the target of an investigation to explicitly discuss the crimes being investigated. It is hardly surprising that a target would be "more explicit" in such calls than in communications—whether telephonic, e-mail or otherwise—with individuals who are *not* cooperating with investigators. Regardless, when the Government has obtained a huge trove of a target's written communications via traditional investigative procedures, the requirement that investigators make a "reasonable, good faith effort to run the gamut" of those procedures requires more than the opinion of an investigator ████████████████████████████ ████████████████████████████████ To overcome the "statutory preference for less intrusive techniques" and demonstrate that investigators have "encountered difficulties in penetrating a criminal enterprise or in gathering evidence" (*U.S. v. Abou–Saada*, 785 F.2d 1, 11 (1st Cir. 1986)), the Government must, at a bare minimum, make a reasonable effort to actually *review* those e-mails before it can truthfully represent to a court that their contents will be inadequate to achieve the goals of the investigation. Indeed, in this case, e-mails and other evidence obtained through traditional techniques *did* provide evidence that investigators told the court it could not, as evidenced by the fact that the Government obtained charges against the vast majority of the Defendants without relying on any wiretapped phone calls.

As set forth below and in Defendants' motion, the Government failed to demonstrate necessity for its wiretap applications, and the evidence obtained pursuant to and derived from those wiretaps should be suppressed. In the alternative, the Court is respectfully urged to order a *Franks* evidentiary hearing regarding the Government's misrepresentation and omission of facts material to the necessity determination.

- 3 -

## DISCUSSION

The Supreme Court has recognized that "[f]ew threats to liberty exist which are greater than that posed by the use of eavesdropping devices." *Berger v. State of N.Y.*, 388 U.S. 41, 63 (1967). The Government does not dispute the principle that wiretaps are thus to be "distinctly the exception-not the rule." *United States v. Cartagena*, 593 F.3d 104, 108 n.1 (1st Cir. 2010). Nor does it dispute that the Government must demonstrate "that it has made a reasonable, good faith effort to run the gamut of normal investigative procedures before resorting to means so intrusive as electronic interception of telephone calls." *Id.* at 109 (internal citations omitted). Rather, the Government asserts in its opposition that investigators were excused from running the gamut of traditional investigative procedures because Rick Singer's alleged college admissions scheme was "complex," and because they believed, based on their review of a handful of e-mails with a cooperating witness, that Singer was "less explicit" in e-mail than in telephone communications. Neither of these comes remotely close to demonstrating that the wiretaps were necessary.

### A.    The Purported "Complexity" Of Singer's Network Does Not Moot The Necessity Requirement

The Government argues that "the nature of Singer's scheme made traditional investigative techniques inadequate," because it involved "coaches in multiple states," clients in the U.S. and abroad, and the use of entities that Singer purportedly created "to disguise his crimes…." Dkt. 1138 at 19. Even if Singer's college admissions scheme were among the more complex in the annals of federal criminal enforcement (it is not), the Government cites no authority for the proposition that the purported "complexity" of a case effectively moots the requirement for a particularized showing of a necessity. Indeed, the law is to the contrary. Although the Government is entitled to "cast a wide net" in defining the scope of an investigation, it "'may not cast its investigative net so far and so wide as to manufacture necessity in all circumstances.'" *U.S. v.*

- 4 -

*Santana-Dones*, 920 F.3d 70, 78 (1st Cir. 2019) (quoting *U.S. v. Blackmon*, 273 F.3d 1204, 1211 (9th Cir. 2001)). Moreover, irrespective of the scope of an investigation, a necessity showing still requires the Government to "show with specificity why ordinary means of investigation will fail; conclusory statements without factual support are not sufficient." *Lopez*, 300 F.3d at 53. The Government cannot demonstrate necessity simply by declaring a particular case to be so inherently complex as to defy investigation through any technique other than wiretapping. *Cf. United States v. DiMuro*, 540 F.2d 503, 510–11 (1st Cir. 1976) ("If mere conclusions by the affiant based solely on past experience that gambling conspiracies are 'tough to crack' were held sufficient to authorize a wiretap, the government would need to show 'only the probability that illegal gambling is afoot to justify electronic surveillance.'") (quoting *U.S. v. Kalustian*, 529 F.2d 585, 589 (9th Cir. 1975)).

The cases relied upon by the Government illustrate the point. The Government cites *Martinez*, 452 F.3d at 6, for example, as holding that "broad investigative goals such as identifying suppliers and co-conspirators in a drug operation were 'discrete and realistic goals' and 'legitimately cast a wide net.'" Dkt. 1138 at 18. This is a strawman: Defendants do not contend that the investigation of Singer was illegitimately broad or lacked realistic goals. The issue is the Government's failure to demonstrate necessity. In *Martinez*, investigators "conducted an extensive investigation of [the target] *before applying for a Title III wiretap*," including use of cooperating witnesses, consensually recorded calls, physical surveillance, pen registers, and telephone tolls records, and, critically, "*rejected* the use of other techniques—including search warrants, grand jury subpoenas, and witness interviews—for fear that they could compromise the investigation." *Id.* at 3, 6 (emphasis added). By contrast here, the Government conducted a brief and limited

- 5 -

investigation of Singer before seeking wiretap authorization,[1] and, far from *rejecting* other investigative techniques, employed search warrants and subpoenas to obtain a huge volume of evidence—including Singer's own, written e-mail communications—that investigators had only barely begun to review before declaring that those documents could not achieve the goals of the investigation and that it was therefore necessary to wiretap Singer's phone.

The Government similarly points to this Court's decision in *Gianelli*, 585 F.Supp.2d 150, for the proposition that wiretaps have been upheld "where the goals of the investigation were to uncover the 'full scope' of the crimes under investigation and the people involved and to obtain information about the 'totality of the offenses' in which targets were involved." Dkt. 1138 at 18. But again, Defendants do not dispute that an investigation may legitimately have broad objectives. As in *Martinez*, however, this Court in *Gianelli* did not conclude that necessity existed simply because an investigation had broad objectives. To the contrary, the Court specifically noted that notwithstanding the complexity of a particular case, the Government still "must establish necessity *with the particulars* of a given investigation[.]" *Gianelli,* 585 F.Supp.2d at 156 (emphasis added). Necessity existed in *Gianelli* not simply because the investigation was broad, but because the wiretap affidavit detailed "how and why other normal investigative techniques were either *exhausted or not feasible*," and why those techniques could not "expose the full scope and membership of the conspiracy." *Id*. at 157-58; *accord United States v. Serrano*, 632 F.Supp.2d 100, 106-107 (D. Mass. 2009) (upholding wiretap order where affidavit detailed why "alternative

---

[1] The Government argues with Defendants' assertion that the affidavit for the wiretap was filed two months after the investigation into Singer began. Dkt. 1138 at 19, fn. 19. ██████████ ███████████████████████████████████████████████████████ less than two months prior to the filing of an affidavit in support of the first wiretap to further the investigation into Singer and his network. ████████████████

investigative techniques could not be used in this case or had proven fruitless."). By contrast here, the Government sought to wiretap Singer's phone *before it had run the gamut* of other potentially fruitful techniques, most notably by not reviewing the trove of Singer's e-mails it had recently obtained.

The Government even attempts in its opposition to analogize to an unpublished decision by Judge Zobel in *U.S. v. Rodrigues*, 13-CR-10017-RWZ, Dkt. 1373 (D. Mass. Jan. 23, 2015), *aff'd*, 850 F.3d 1, 12 (1st Cir. 2017) (opinion attached to Dkt. 1138 as Ex. A), which it cites for the proposition that it is "beside the point" whether "agents achieved some success through the use of" traditional investigative techniques before seeking a wiretap order. Dkt. 1138 at 21. *See Rodrigues*, 13-CR-10017-RWZ at 3. The Government flatters itself with the analogy. Defendants are not arguing that the prior investigation of Singer was "too effective" to warrant a wiretap, nor are the facts of *Rodrigues* remotely analogous to those here. *Rodrigues* involved a wiretap affidavit that spanned 82 pages, described in detail "the government's *prior (and extensive)* conventional investigation," and explained at length why the substantial evidence obtained through traditional investigative techniques "was insufficient to fully map the conspiracy and achieve convictions of its members." *Id.* at 2-3 (emphasis added). Here, by contrast, the question is not whether the prior investigation was "too effective" but too *perfunctory*. Defendants assert that the Government sought to wiretap Singer's phone before it had "*run the gamut of normal investigative procedures*," including leapfrogging over the review of Singer's written communications before declaring wiretapping to be a necessity. *Cartagena*, 593 F.3d at 109.

In contrast to these cases, the Government does not cite a single authority involving circumstances analogous to those here: an investigation in which the Government obtained a large volume of a target's written communications through a traditional investigative technique, but then

- 7 -

sought to wiretap the target's phone *before* reviewing the vast majority of those communications. This is particularly striking given that the cases the Government *does* cite involve drug and organized crime entities, fast-moving conspiracies, and involving individuals who are notoriously savvy and evasive regarding traditional investigative techniques. By contrast here, the Government

███████████████████████████████████████████████

███████████████████████  ██████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████ It is thus striking, and represents an unprecedented effort by the Government, that even though this case was slow-moving and involved an individual who allegedly left a mile-wide paper trail, the Government initiated the wiretapping of a target's phone before even bothering to review voluminous written communications by that same individual obtained through less intrusive means. Indeed, in contrast to the cases the Government cites, the investigation here was a case study in the failure to "run the gamut" of traditional investigative measures before seeking to wiretap a target's phone, and to do so only after an investigation has "encountered difficulties" in achieving its objectives through other means.

### B.  Investigators' Review Of A Handful Of Emails Between Singer And A Cooperator Did Not Demonstrate Necessity

████████████████████████████████████████████

████████████████████████████████████████████

---

**2** Unless stated otherwise, exhibits refer to those in Defendants' Sealed Joint Appendix, filed on April 1, 2020.

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████  ██  ███████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████ In fact, this threadbare rationale is not just an "example" of why the first affidavit suggested that emails would be inadequate—it is the *totality of the rationale.* ████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████
██████ ██████ ███████ █████ ██████ ██████ ██████ ██
███████ █████ ██████ █████ ██████ ██████ ██ ███████ █
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
██████ ████████████████ ██████ █ ███████ ██████ █████
████████

---

**3** Although the Government's opposition identifies isolated references to the review of e-mails in the second, third and fourth wiretap affidavits (*see* Dkt. 1138 at 23), it fails to address the statements in each of those affidavits that the Government was ████████████████████████ ████

*Id.*. This explanation is baffling. ████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████ There was no need to intercept Singer's phone to obtain such evidence with respect to CD-2. Indeed, as a cooperating witness, CD-2 presumably would not be placing calls to Singer unless directed to do so by investigators. To the extent wiretapping was necessary, it could only be with respect to alleged co-conspirators *other than CD-2*. But the affidavit does not even attempt to explain how investigators could in good faith represent to the court that e-mails between Singer and *other individuals* that they had not yet reviewed—but which the Government indisputably possessed and would later feature extensively in the indictment—and other evidence obtained through traditional means was inadequate to achieve the goals of the investigation. *See* Dkt. 1024 at 10. ███████████████████████████████████████████████

███████████████████████████████████████████████████████ the Government apparently had a change of heart when it presented the Grand Jury with an indictment charging nearly all the Defendants based exclusively on *e-mails from Singer's account* and other evidence obtained through traditional means, and *not* any evidence obtained via wiretapping. *See* FSI ¶¶ 68-95, 97-111, 114-20, 123-30, 135-41, 144-62, 165-80, 210-22, 245-51.[4]

---

[4] The Government's opposition suggests that Defendant McGlashan has made inconsistent arguments, asserting both that e-mail evidence was sufficient to prosecute and is exculpatory. Dkt. 1138 at 24, fn. 17. This is incorrect. Defendants profoundly disagree with the Government's interpretation of and reliance upon much of the evidence cited in the indictment, including emails. The point is simply that in bringing charges against numerous individuals without relying on any intercepted phone calls, the Government *must itself believe*—contrary to representations made to the court in order to justify wiretaps—that it can prove those charges beyond a reasonable doubt through evidence obtained exclusively through traditional investigative techniques, and that wiretapping was not, in fact, necessary.

- 10 -

The Government thus failed to run the gamut of traditional investigative procedures, or to demonstrate that it had "encountered difficulties" in gathering evidence through traditional means, before seeking to wiretap Singer's phone. Moreover, the Government intentionally or recklessly omitted or misrepresented materials facts in seeking the orders authorizing the wiretaps, including omitting key details regarding the content and import of evidence it already possessed and could obtain through traditional investigative means. The orders are therefore invalid, and evidence obtained pursuant to or derived from those orders must be suppressed. *See, e.g.*, *U.S. v. Nelson-Rodriguez*, 319 F.3d 12, 31-32 (1st Cir. 2003) ("the failure of the government's affidavit supporting its warrant application to disclose information…could well lead to suppression").

### C.      In The Alternative, A *Franks* Hearing Should Be Ordered

In the alternative, the Court should order a *Franks* evidentiary hearing. As discussed above and in Defendants' opening motion, the Government's affidavits contained misrepresentations and omissions concerning the potential to obtain evidence from traditional investigative techniques and the evidence already obtained from such techniques. The Government's limited review of the emails and other documents in its possession prior to each wiretap application put it on notice that these traditional means had the potential to provide the evidence it sought. The "failure to include in [an] affidavit facts not actually known to the affiant," but which should have been investigated further when such "duty of further inquiry" was triggered, constitutes a *Franks* violation. *U.S. v. Tanquay*, 787 F.3d 44, 53-54 (1st Cir. 2015). Similarly, the Government's omission of the potential and probative value of interviews of and cooperation by individuals allegedly involved in Singer's

network, and particularly Singer himself, was a material omission made knowingly and intentionally, or with reckless disregard for the truth.[5]

## CONCLUSION

Accordingly, for the reasons above and in Defendants' opening motion, the Court should suppress evidence obtained through the Government's wiretaps, and evidence derived therefrom, including Singer's consensually recorded calls. In the alternative, the Court should conduct a *Franks* hearing to address the Government's material misrepresentations and omissions, and to determine whether suppression is warranted on that ground.

---

[5] Among the Government's most critical omissions was the possibility and potential probative value of Singer's cooperation. ███████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████. The omission of Singer's potential cooperation was highly material. He alone was capable of furnishing *all the evidence the Government said they sought* in the investigation. Indeed, as soon as Singer began cooperating, the Government enlisted him to make innumerable recorded calls, which now feature prominently in the Government's case. These "normal investigative procedures" were never revealed to the reviewing court as a possibility. It is beyond serious dispute that the possibility of approaching Singer, against whom the Government had voluminous evidence before it sought the first wiretap, was an enormously material consideration that the reviewing judge was entitled to know in determining necessity.

Dated:  May 15, 2020

Respectfully submitted,

/s/ *Jack W. Pirozzolo*

John C. Hueston (pro hac vice)
jhueston@hueston.com
Marshall Camp (pro hac vice)
mcamp@hueston.com
HUESTON HENNIGAN LLP
523 W. 6th Street, Suite 400
Los Angeles, CA 90014
(213) 788-4340

Jack W. Pirozzolo (BBO # 564879)
jpirozzolo@sidley.com
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, MA 02109
(617) 223-0304

Joan M. Loughnane (pro hac vice)
jloughnane@sidley.com
SIDLEY AUSTIN LLP
787 7th Avenue
New York, NY 10019
(212) 839-5567

*Attorneys for Defendant*
*William McGlashan, Jr.*

/s/ *David S. Schumacher*
David S. Schumacher (BBO #647917)
HOOPER, LUNDY & BOOKMAN, P.C.
470 Atlantic Avenue, Suite 1201
Boston, MA 02210
(617) 532-2700
(617) 345-3927 (fax)
dschumacher@health-law.com

Patric Hooper (*pro hac vice*)
HOOPER, LUNDY & BOOKMAN, P.C.
1875 Century Park East, Suite 1600
Los Angeles, California 90067-2517
(310) 551-8111
(310) 551-8181 (fax)
phooper@health-law.com

Jordan Kearney (*pro hac vice*)
HOOPER, LUNDY & BOOKMAN, P.C.
575 Market Street, Suite 2300
San Francisco, CA 94105
(415) 875-8500
(415) 875-8519 (fax)
jkearney@health-law.com

- 13 -

5751547

*Counsel for Amy Colburn*


*/s/ Reuben Camper Cahn*
Reuben Camper Cahn *(pro hac vice)*
Jennifer L. Keller *(pro hac vice)*
Chase A. Scolnick *(pro hac vice)*
KELLER/ANDERLE LLP
18300 Von Karman Avenue, Suite 930
Irvine, CA 92612
Tel: (949) 476-8700
rcahn@kelleranderle.com

*Counsel for I-Hsen "Joey" Chen*


*/s/ Michael K. Loucks*
Michael K. Loucks (BBO #305520)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
500 Boylston Street
Boston, MA 02116
(617) 573-4800
michael.loucks@skadden.com

Jack P. DiCanio (*pro hac vice*)
Allen J. Ruby (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
525 University Avenue
Palo Alto, CA 94301
(650) 470-4500
jack.dicanio@skadden.com
allen.ruby@skadden.com

*Counsel for Defendant Marci Palatella*


*/s/ Michael Kendall*
Michael Kendall (BBO # 544866)
Yakov Malkiel (BBO # 689137)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com

- 14 -

yakov.malkiel@whitecase.com
Andrew E. Tomback (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8428
andrew.tomback@whitecase.com

*Counsel for John Wilson*


*/s/ Martin G. Weinberg*
Martin G. Weinberg
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

Matthew L. Schwartz (*admitted pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Tel.: (212) 446-2300
Fax: (212) 446-2350
E-mail:  mlschwartz@bsfllp.com

*Counsel for Robert Zangrillo*


*/s/ R. Robert Popeo*
R. Robert Popeo (BBO # 403360)
Mark E. Robinson (BBO # 423080)
Eóin P. Beirne (BBO # 660885)
Cory S. Flashner (BBO # 629205)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 348-1605 (telephone)
(617) 542-2241 (fax)
rpopeo@mintz.com
mrobinson@mintz.com
ebeirne@mintz.com
csflashner@mintz.com
*Counsel for Elisabeth Kimmel*

- 15 -

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2020, I filed a redacted copy of this document through the CM/ECF system and a copy will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).  I further certify that an unredacted copy of this document is being served via hand-delivery and email on counsel for the government.

*/s/ Jack W. Pirozzolo*

5751547