UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID SIDOO et al.,<br><br>Defendants | No. 1:19-CR-10080-NMG<br><br>**LEAVE TO FILE GRANTED<br>MAY 5, 2020** |

**REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FOR LACK OF VENUE**

The government is correct that most of defendants' venue arguments rely on a predicate finding that the government failed to allege a single conspiracy. These arguments have been extensively briefed and will not be repeated here.

Count 2, which the government calls the "USC Federal Program Bribery Conspiracy," is different. **Venue for Count 2 is improper <u>even if</u> the Court accepts the government's single conspiracy theory.** Simply put, in the government's haste to make good on its threat to charge defendants who refused to plead guilty with another crime—conspiracy to commit federal programs bribery—the government neglected to ensure that venue was satisfied for the additional charge. Now, having seriously bungled its own indictment, the government relies on three unconvincing arguments for why venue is nonetheless proper for Count 2. As set forth below, these three after-the-fact arguments fail. Because "[t]he criminal law does not recognize

the concept of supplemental venue," *United States v. Salinas*, 373 F.3d 161, 164 (1st Cir. 2004), Count 2 must be dismissed.[1]

## I. "Re-Alleging" and "Incorporating By Reference" Irrelevant Allegations Does Not Create Venue in Massachusetts for Count 2

It is black-letter law that "[v]enue has to be proper for each count." *United States v. Razo*, 782 F.3d 31, 42 (1st Cir. 2015). The indictment in this case charges three conspiracies: a fraud conspiracy focused on test cheating and improper admission to at least seven different universities (Count 1); a federal programs bribery conspiracy narrowly focused on improper admission to USC (Count 2); and a money laundering conspiracy related to both test cheating and improper admission (Count 3). Unlike Counts 1 and 3, Count 2 is narrowly drawn to focus exclusively on USC. The government calls Count 2 "the **USC** federal programs bribery conspiracy," FSI at ¶ 280 (emphasis added), and describes it as a conspiracy "to bribe **agents of USC** to secure their children's admission to **that university**." *Id.* at ¶ 279 (emphasis added). The Count 2 defendants allegedly conspired:

> [T]o corruptly give, offer and agree to give anything of value to any person, with intent to influence or reward an agent of an organization, to wit, **agents of USC**, in connection with any business, transaction and series of transactions **of USC** involving anything of value of $5,000 of more, that is, in exchange for facilitating the **admission to USC** for the defendants' children, where **USC received** benefits in excess of $10,000 under federal programs . . . .

*Id.* at ¶ 372 (emphasis added).

Because there are no allegations tying the Count 2 conspiracy to Massachusetts, the government takes the position that venue is proper here because "[a]ll of the alleged overt acts in furtherance of Count One are re-alleged and incorporated by reference in Count Two . . . ." Opp. at 21. But the acts allegedly connecting Count 1 to Massachusetts—Defendant Zangrillo's

---

[1] The government appears to recognize the weakness of Count 2. In the most recent plea agreements (Lori Loughlin and Mossimo Giannulli), the government agreed to dismiss Count 2 of the indictment. No defendant has pled guilty to Count 2 of the indictment.

2

daughter's submission to **Boston University**, Defendant Chen's son's submission to **Emerson College**, Defendant McGlashan's son's submission to **Northeastern University**, and Defendant Wilson's payments to a Massachusetts account for his daughters to attend **Harvard University** and **Stanford University**—have nothing whatsoever to do with **USC**. It is clear from the face of the indictment that these acts regarding **Boston University, Emerson College, Northeastern University, Harvard University, and Stanford University** are not in furtherance of the Count 2 **USC** conspiracy and therefore cannot form the basis for venue here. The government's attempt to argue otherwise is simply a last-ditch attempt to cover up the carelessness evident in the charging document.

## II. The Consensual Phone Calls Do Not Create Venue in Massachusetts for Count 2

The government also argues that venue is appropriate in Massachusetts because "[c]onsensually recorded calls between Singer and certain of the defendants occurred when Singer was located in the District of Massachusetts." Opp. at 20. It **might** be true that telephone calls from a government agent in the trial district to a co-conspirator outside of the trial district can create venue, but that is only the case where **the co-conspirator uses the telephone call to further the conspiracy**. *See United States v. Rommy*, 506 F.3d 108, 122 (2d Cir. 2007) ("What is determinative of venue . . . is whether the conspirator used the telephone call to further the objectives of the conspiracy."). As this Court has noted in a different context, "Statements qualifying as 'mere idle chatter' or **'narratives of past events'** are not sufficient to be considered in furtherance of a conspiracy." *See United States v. DeNunzio*, No. 14-CR-10284-NMG, 2015 WL 2226251, at *4 (D. Mass. May 12, 2015) (citing *United States v. Ciresi*, 697 F.3d 19, 28 (1st Cir. 2012)) (emphasis added).

The government has essentially stipulated that the consensually-recorded calls regarding USC were **not** in furtherance of any conspiracy. In its Sur-Reply to the Defendants' Motion to

3

Dismiss (Dkt. 1104), the government explained that all of Singer's calls with the defendants regarding USC "**concern historical context**." Dkt. 1104 at 5-6 (emphasis added). The government refers to these calls as the "audit calls," *id.*, **and explains the calls were not "targeting ongoing and future conduct," but were calls with parents "who had already engaged in the scheme**," *id.* at 8 (emphasis added). The sworn declarations are even more direct. Agent Keating declares that the USC "audit calls" were made to "parents who had **completed** the fraud and bribery scheme." Dkt. 1104-1 at ¶ 11 (emphasis added). Agent Smith declares that Singer's USC "audit calls" were with "parents who had already **completed** the fraud and bribery scheme." Dkt. 1104-2 at ¶ 11 (emphasis added). And AUSA Rosen declares that Singer made the consensually-recorded USC "audit calls" to "**parents who had already completed the scheme before Singer began cooperating**." Dkt. 1104-3 at ¶ 8 (emphasis added). According to the government's brief:

> The purpose of those calls was to corroborate what the evidence indicated those parents knew and understood about the fraud and bribery. . . . **Singer repeated back to the defendants a summary of the crime they had committed and asked them if they agreed they had done it.** The calls were the equivalent of a wired-up cooperator asking a drug dealer, to whom the cooperator has previously sold drugs: "Do you remember when I sold you those drugs?"

Dkt. 1104 at 8-9 (emphasis added). It is remarkable that, despite the unambiguous statements in the government's Sur-Reply and sworn declarations that the consensually-recorded USC calls were merely confirmatory of past criminal conduct, the government argues in its venue brief that the very same calls were acts occurring in this District in furtherance of the conspiracy. Put another way, if AUSA Rosen's sworn declaration is to be believed (that the parents who received the USC calls had already completed Singer's scheme), these calls did not further the conspiracy and therefore cannot, as a matter of law, constitute the basis for venue.

### III.     Singer Mailing a Check From Massachusetts Does Not Create Venue For Count 2

The government's final venue argument is just as weak. That is, **after** the defendants' involvement in the conspiracy ceased,[2] on January 3, 2019, Singer (acting as a government agent) dropped in a Massachusetts mailbox a check addressed to Donna Heinel in California. As discussed below, the check was a secret payoff pursuant to a side deal between Singer and Heinel that the government admits the defendants had no knowledge of. *See* Dkt. 1104 at 7. In fact, the government admits that Singer told the parents their money would be directed to USC athletics. *Id.* Thereafter, Singer and Heinel struck a side deal to divert the funds for their own benefit. The Singer mailing on January 3, 2019 doesn't create venue for two reasons, each of which is sufficient for the Court to find that venue does not exist: (1) a government agent's unilateral acts cannot create venue; and (2) the indictment makes clear that Singer's payments to Heinel were in furtherance of a separate conspiracy between Singer and Heinel, not the Count 2 conspiracy.

#### a.   A Government Agent's Unilateral Act Does Not Create Venue

First, the government ignores the basic principle that only a **co-conspirator's** action in furtherance of a conspiracy can create venue. *See, e.g.*, *United States v. Rodriguez-Moreno,* 526 U.S. 275, 281-82 (1999) ("[V]enue proper against defendant in district where **co-conspirator** carried out overt acts[.]" (summarizing *Hyde v. United States*, 225 U.S. 347 (1912)) (emphasis added)); *United States v. Georgacarakos,* 988 F.2d 1289, 1294 (1st Cir. 1993) ("It is a well-

---

[2] Singer mailing a check from Massachusetts in January 2019 took place after each of the Count 2 parents had completed their participation in the Count 2 conspiracy. The indictment states that children of Defendants Abdelaziz, Blake, Kimmel, Giannulli, Loughlin, and Palatella were admitted sometime between Fall 2017 and Spring 2018. Defendants Giannulli and Loughlin had an additional child admitted in Fall 2016. Defendant Wilson's child was admitted in Spring 2014. Defendant Zangrillo's daughter was admitted as a transfer student sometime in June 2018, and Defendant McGlashan never executed the "side door" plan with Singer. It is unclear if the Count 2 conspiracy was even in existence in January 2019—unless, of course, the government is planning to submit evidence that unindicted co-conspirators were actively working with Singer to commit federal programs bribery with respect to USC in January 2019. The Count 2 conspiracy concluded prior to the sole Massachusetts check payment, which axiomatically cannot be in furtherance of the conspiracy involving the parent-defendants.

5

established rule that a conspiracy prosecution may be brought in any district in which some overt act in furtherance of the conspiracy was committed **by any of the co-conspirators**." (quoting *United States v. Lam Kwong-Wah*, 924 F.2d 298, 301 (D.C. Cir. 1991)) (emphasis added)); *United States v. Georgiadis*, 819 F.3d 4, 10 (1st Cir. 2016) ("[I]f [defendant] or **any of his co-conspirators** took an overt act in furtherance of the conspiracy . . . in Massachusetts, then venue in the District of Massachusetts was proper." (emphasis added)).  And Singer, because he became a government agent in late September 2018, was no longer a co-conspirator in January 2019 when he mailed the check to Heinel.  *See United States v. Salemme*, 978 F. Supp. 343, 357 (D. Mass. 1999) ("[A]n informant operating undercover is not a coconspirator."); *United States v. Goff*, 847 F.2d 149, 173 (5th Cir. 1988) ("A government agent or informer cannot be a co-conspirator.").[3]

It follows that by January 2019, Singer—as a government agent—was incapable of taking any action in furtherance of the Count 2 conspiracy.  This does not mean that Singer could not help generate evidence of a conspiracy's existence, or cajole others into taking actions in furtherance of the conspiracy.  *See United States v. King*, 272 F.3d 366, 371 (6th Cir. 2001) ("Although a person acting as a government agent cannot be a coconspirator, his meetings and conversations with defendants can be evidence of conspiracy among the defendants.").  But it does mean that Singer's **unilateral** acts, like dropping a check in a Massachusetts mailbox, cannot further the conspiracy and therefore—as a matter of law— cannot create venue.

---

[3] The government misunderstands defendants' argument that "[G]overnment agents do not count as coconspirators." *See* Dkt. 1020 at 3 (quoting *United States v. Portela,* 167 F.3d. 687, 700 n.8 (1st Cir. 1999)). The Defendants have never argued that, if the conspiracy was comprised of multiple parents, the conspiracy ended when Singer became a government agent. Such an argument is legally incorrect. The defendants have instead argued that if the government has mischarged the case, and there were in fact separate conspiracies between each of the parents and Singer (i.e., only two parties in the conspiracy), those conspiracies ended when Singer became a government agent. Defendants have also argued, as they do here, that government agents cannot take actions in furtherance of a conspiracy and that the Count 2 conspiracy ended with the last parent payment involving USC.

6

In order to distract from this simple principle, the government raises the red herring of "venue entrapment" (also known as "manufactured venue"). Venue entrapment is irrelevant. In a venue entrapment case, it is clear venue is proper, but there is a concern that the government used strong-arm tactics or illicit means to create venue. *See United States v. Peeples,* No. 17-CR-6032-FPG-JWF, 2018 WL 1046795, at *2 (W.D.N.Y. Feb. 26, 2018) (venue entrapment "is designed to prevent government agents from luring defendants to preferred jurisdictions for prosecution"). For instance, in *United States v. Valenzuela*, 849 F.3d 477 (1st Cir. 2017) (the case the government cites), it was undisputed that the defendant's co-conspirator held a meeting in furtherance of the conspiracy in New Hampshire. The defendant argued venue was nonetheless improper because a government agent drove the co-conspirator from Logan Airport to the meeting in New Hampshire, thereby "manufacturing" venue in New Hampshire. The First Circuit's rejection of the defendant's argument in *Valenzuela* has no relevance here. Defendants in this case are not arguing that Singer "entrapped" them into acting in furtherance of the Count 2 conspiracy in Massachusetts—but rather that no act in furtherance of the Count 2 conspiracy ever took place in Massachusetts.

      **b. Evidence of a Separate Conspiracy—Singer's "Side Deal" With Heinel— Has no Bearing on Venue for the Count 2 Conspiracy**

Even if Singer was not a government agent (he was), Singer mailing a check to Heinel could not be an act in furtherance of the **Count 2** conspiracy. [4] Singer's agreement to line Heinel's pockets personally was a **side deal**—a separate conspiracy between Singer and Heinel in which the defendant parents were not involved.[5] The indictment makes this clear enough. For instance, paragraphs 114-119 state, "Beginning in or about the summer of 2017, Gamal

---

[4] The government assumes that Heinel is a member of the Count 2 conspiracy. There is no such allegation in the indictment.

[5] Defendant Wilson's child was admitted to USC before Singer had even met Heinel.

Abdelaziz **agreed** with Singer to pay an amount . . . for facilitating his daughter's admission to USC . . . . On or about December 4, 2017, Heinel instructed Singer that a payment of $200,000 for Abdelaziz's daughter should be directed to the gift account for the Galen Center, the arena for USC's basketball and volleyball programs," but "**Subsequently, Heinel and Singer agreed** that **instead of directing this money to USC**, Heinel would receive payments of $20,000 per month **personally** in exchange for her assistance . . . ." FSI ¶¶ 114-19 (emphasis added).  The government's own words—"subsequently" and "agreed"—indicate a separate conspiracy which the parents did not join.  If there was any doubt that the indictment describes two separate agreements (the Count 2 conspiracy between Singer and the parents and the side deal between Singer and Heinel) **<u>it is now undisputed that the parents did not know anything about the side deal and did not agree to the side deal</u>**.  As the **government** admitted in a recent filing:

> The government was not attempting to build a case that the parents understood Heinel to be personally pocketing money, and the government **has never alleged that**. The government *has* alleged – and the calls, checks and emails prove – that the defendants **knew** that one or more complicit insiders at USC were facilitating the admission of their children as recruited athletes in exchange **for payments to a USC athletic program**.

Dkt. 1104 at 7 (emphasis added).  In other words, the government does not dispute that the parents thought their funds were going to a USC athletic program and never knew that Heinel made a "side deal" with Singer to pocket the money personally.

Despite this admission, the government nonetheless maintains that Singer's side deal with Heinel was part of the Count 2 conspiracy because the side deal was simply an "allocation" matter.  This is nonsense.  **The government does not dispute that the parents never agreed that Singer could use their money to line Heinel's pockets and that Singer told the parents the money would be directed to "a USC athletics program."** *See United States v. Monserrate-Valentin*, 729 F.3d 31, 43 (1st Cir. 2013) ("[T]he gist of the conspiracy offense

8

remains the agreement, and it is therefore essential to examine what kind of agreement or understanding existed *as to each defendant.*" (quoting *United States v. Glenn*, 828 F.2d 855, 857 (1st Cir. 1987)) (emphasis in original)).  While each conspirator need not "kn[o]w all of the details of the conspiracy or participate[] in every act in furtherance of the conspiracy," *United States v. Berroa*, 856 F.3d 141, 154 (1st Cir. 2017), the destination of the parents' funds—to the USC athletics department or to Heinel—was central to the very "agreement" itself.  Singer deceived the parents by telling them that their money was going to "a USC athletics program," and then Singer and Heinel **later** colluded to divert funds to Heinel personally.  This is not a case where the defendants did not know one way or the other about the details of the conspiracy—as the government admits, the defendants were affirmatively told by Singer, and they understood, that their payments would be directed to a USC athletic program.

In short, the January 3, 2019 mailing is an attempt by the government to muddy the waters by tacking on an act in furtherance of **another conspiracy** (the Singer/Heinel side deal) in order to generate venue for the charged Count 2 conspiracy.  The Court should reject this effort.

## CONCLUSION

For the reasons set forth above and in their Memorandum of Law (Dkt. 1020), defendants request that the Court grant their Motion to Dismiss for Lack of Venue (Dkt. 1019).

Dated:  May 27, 2020                                Respectfully submitted,

*/s/ Brian T. Kelly*
Brian T. Kelly (BBO No. 549566)
Joshua C. Sharp (BBO No. 681439)
Lauren M. Maynard (BBO No. 698742)
NIXON PEABODY LLP
53 State Street
Boston, MA 02109

9

617-345-1000
bkelly@nixonpeabody.com
jsharp@nixonpeabody.com
lmaynard@nixonpeabody.com

Robert Sheketoff (BBO No. 457340)
One McKinley Square
Boston, MA 02109
617-367-3449

*Counsel for Gamal Abdelaziz*

*/s/ David S. Schumacher*
David S. Schumacher (BBO #647917)
HOOPER, LUNDY & BOOKMAN, P.C.
470 Atlantic Avenue, Suite 1201
Boston, MA 02210
(617) 532-2700
(617) 345-3927 (fax)
dschumacher@health-law.com

Patric Hooper (*pro hac vice*)
HOOPER, LUNDY & BOOKMAN, P.C.
1875 Century Park East, Suite 1600
Los Angeles, California 90067-2517
(310) 551-8111
(310) 551-8181 (fax)
phooper@health-law.com

Jordan Kearney (*pro hac vice*)
HOOPER, LUNDY & BOOKMAN, P.C.
575 Market Street, Suite 2300
San Francisco, CA 94105
(415) 875-8500
(415) 875-8519 (fax)
jkearney@health-law.com

*Counsel for Amy and Gregory Colburn*

*/s/ Jack W. Pirozzolo*
Jack W. Pirozzolo (BBO # 564879)
jpirozzolo@sidley.com
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, MA 02109

*/s/ David E. Meier*
David E. Meier (BBO #341710)
Todd & Weld LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
dmeier@toddweld.com

*/s/ Stephen H. Sutro*
Stephen H. Sutro, Esq.
Duane Morris, LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
(415) 957-3008
SHSutro@duanemorris.com

*Counsel for Diane Blake and Todd Blake*

*/s/ Reuben Camper Cahn*
Reuben Camper Cahn (*pro hac vice*)
Jennifer L. Keller (*pro hac vice*)
Chase A. Scolnick (*pro hac vice*)
KELLER/ANDERLE LLP
18300 Von Karman Avenue, Suite 930
Irvine, CA 92612
Tel: (949) 476-8700
rcahn@kelleranderle.com

*Counsel for I-Hsen "Joey" Chen*

*/s/ R. Robert Popeo*
R. Robert Popeo (BBO # 403360)

10

(617) 223-0304

John C. Hueston (*pro hac vice*)
jhueston@hueston.com
Marshall Camp (*pro hac vice*)
mcamp@hueston.com
HUESTON HENNIGAN LLP
523 W. 6th Street, Suite 400
Los Angeles, CA 90014
(213) 788-4340

*Counsel for William McGlashan, Jr.*

*/s/ Michael Kendall*
Michael Kendall (BBO # 544866)
Yakov Malkiel (BBO # 689137)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com
yakov.malkiel@whitecase.com

Andrew E. Tomback (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8428
andrew.tomback@whitecase.com

*Counsel for John Wilson*

*/s/ Tracy A. Miner*
Tracy A. Miner (BBO No. 547137)
Megan A. Siddall (BBO No. 568979)
Miner Orkand Siddall LLP
470 Atlantic Ave, 4th Floor
Boston, MA 02110
Tel.: (617) 273-8377
Fax: (617) 273-8004
tminer@mosllp.com
msiddall@mosllp.com

*Counsel for Homayoun Zadeh*

Mark E. Robinson (BBO # 423080)
Eóin P. Beirne (BBO # 660885)
Cory S. Flashner (BBO # 629205)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 348-1605 (telephone)
(617) 542-2241 (fax)
rpopeo@mintz.com
mrobinson@mintz.com
ebeirne@mintz.com
csflashner@mintz.com

*Counsel for Elisabeth Kimmel*

*/s/ Michael K. Loucks*
Michael K. Loucks (BBO #305520)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
500 Boylston Street
Boston, MA 02116
(617) 573-4800
michael.loucks@skadden.com

Jack P. DiCanio (*pro hac vice*)
Allen J. Ruby (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, CA 94301
(650) 470-4500
jack.dicanio@skadden.com
allen.ruby@skadden.com

*Counsel for Marci Palatella*

*/s/ Martin G. Weinberg*
Martin G. Weinberg
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

Matthew L. Schwartz (*admitted pro hac vice*)
BOIES SCHILLER FLEXNER LLP

55 Hudson Yards  
New York, NY 10001  
Tel.: (212) 446-2300  
Fax: (212) 446-2350  
E-mail: mlschwartz@bsfllp.com  

*Counsel for Robert Zangrillo*

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the forgoing was filed electronically on May 27, 2020, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

    */s/ Brian T. Kelly*  
    Brian T. Kelly