UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>(17) JOHN WILSON,<br><br>Defendant. | No. 19-cr-10080-NMG-17 |

**GOVERNMENT'S OPPOSITION TO DEFENDANT JOHN WILSON'S
MOTION FOR RECONSIDERATION (Dkt. 1184)**

Defendant John Wilson has moved for reconsideration of the Court's May 8, 2020 Memorandum & Order (Dkt. 1169) ("May 8 Order") denying defendants' motion to dismiss the Indictment or suppress consensually recorded calls based on alleged government misconduct. Wilson's motion simply rehashes arguments previously made and rejected. Because he cannot demonstrate that the May 8 Order was clearly unjust, his motion should be denied.

**RELEVANT BACKGROUND**

On March 25, 2020, the defendants moved to dismiss the Indictment, or in the alternative, to suppress consensual recordings of William "Rick" Singer, based on alleged investigatory misconduct and the government's belated disclosure of Singer's iPhone notes concerning his interactions with government agents. *See generally* Dkts. 971 & 972. The defendants' brief cited Wilson as a prime example of how the government had purportedly generated false inculpatory evidence, and suppressed exculpatory evidence, due to its alleged misconduct. Dkt. 972 at 8-9. In particular, the brief described an unrecorded September 28, 2018 FaceTime video-call between Singer and members of the Wilson family in which, according to an affidavit Wilson submitted in support of the motion, Singer made "highly exculpatory statements that continued to reassure

Wilson of the propriety of the side-door program."[1]  *Id.* at 8.  The brief went on to assert that, in subsequent recorded calls, Singer made "misleading" references to Wilson about payments going to "coaches" that were designed to "paint a false picture," given Singer's statements during the September 28 call.  *Id.* at 8-9.  In arguing for dismissal, the defendants contended that "cross-examination cannot cure the taint caused by [the government's] misconduct."  *Id.* at 32.

On May 8, 2020, the Court denied defendants' motion.  *See* Dkt. 1169.  In so holding, the Court found that Singer's October 2, 2018 note, in which he suggested that the government had pressured him to lie to fabricate evidence, "was 1) made before Singer was fully cooperative with the government; 2) relative (primarily) to a sting operation involving parents not yet committed to Singer's 'program'; and 3) insofar as it did relate to future calls to be made to defendants, was in response to the agents' efforts to get Singer to corroborate, not fabricate, evidence."  *Id.* at 7.  The Court noted that "Singer had placed recorded calls to only one parent who is a current defendant in this case"—that is, Wilson—before the October 2 note.  *Id.* at 2.  The Court also considered the defendants' argument that Singer told them that their payments were legitimate donations to universities and athletic programs and not bribes.  *Id.* at 5.  The Court further found that the defendants "will have ample opportunity to cross examine [Singer] if and when he testifies at trial."[2]  *Id.* at 7.

---

[1] For the limited purpose of responding to this motion for reconsideration, the government does not dispute the facts alleged in Wilson's affidavit, Dkt. 972 at Ex. QQ, because, even assuming the truth of the affidavit—including that Wilson was on the September 28 call and that Singer made exculpatory statements therein—Wilson cannot meet the standard for reconsideration.

[2] The Court also found that the government's belated disclosure of Singer's iPhone notes was not willful and did not unduly prejudice the defendants because the notes were disclosed more than eight months before trial and before the deadline to file dispositive motions.  Dkt. 1169 at 8-9.  Wilson does not challenge this finding in his reconsideration motion.

**LEGAL STANDARD**

"[M]otions for reconsideration are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009) (citing *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 7 n.2 (1st Cir. 2005)); *see also United States v. Melo*, 954 F.3d 334, 349 (1st Cir. 2020) (citing *Allen*, 573 F.3d at 53).[3] "Such motions are not vehicles for pressing arguments which could have been asserted earlier or for 're-arguing theories previously advanced and rejected.'" *Galanis v. Szulik*, 863 F. Supp. 2d 123, 124 (D. Mass. 2012) (Gorton, J.) (quoting *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006)); *see also United States v. Iacaboni*, 667 F. Supp. 2d 215, 216 (D. Mass. 2009) (Gorton, J.) (explaining that the Federal Rules of Criminal Procedure "do not expressly contemplate motions for reconsideration," but "assuming such a motion should be considered," courts generally borrow the standard from civil cases or the local rules, and applying standard set forth in *Allen*). An order granting a motion for reconsideration is "'an extraordinary remedy which should be used sparingly.'" *Galanis*, 863 F. Supp. 2d at 124 (quoting *Palmer*, 465 F.3d at 30).

**ARGUMENT**

Wilson does not premise his motion on newly discovered evidence or an intervening change in the law. He also does not argue that the May 8 Order was based on a manifest error of

---

[3] Wilson quotes *United States v. Siciliano*, 578 F.3d 61 (1st Cir. 2009), for the standard that, "[w]hen faced with a motion for reconsideration, district courts should apply an interests-of-justice test." Dkt. 1184 at 6-7 (quoting *Siciliano*, 578 F.3d at 72). One court in this district considering the *Siciliano* line of cases concluded that the "interests-of-justice" language "overlaps" with the "clearly unjust" language of *Allen*. *See United States v. Sampson*, No. 01-cr-10384-MLW, 2015 WL 13333677, at *3 (D. Mass. Nov. 13, 2015) (Wolf, J.).

3

law.  Instead, he argues that the interests of justice support reconsideration as to him.  As grounds for that conclusion, he "re-argu[es] theories previously advanced and rejected."  *Galanis*, 863 F. Supp. 2d at 124 (internal quotations omitted).  Such recycled claims do not merit the "extraordinary remedy" of reconsideration.  *Id.* (internal quotation omitted).

Consider the following claims in Wilson's motion for reconsideration:

*First:* Wilson argues that the government "caused Singer to insert misleading statements" about payments to "coaches" into his conversations with Wilson.  Dkt. 1184 at 7-8.  This argument was previously made—and rejected.  *Compare* Dkt. 972 at 8-9 *with* Dkt. 1169 at 7.  Singer's consensually recorded calls with Wilson related almost entirely to future conduct: Wilson's efforts to facilitate his daughters' admission to college as fake athletes.  As the Court noted in the May 8 Order, for sting calls such as these, the government "sought to have [Singer] describe explicitly the alleged scheme in order to make it crystal clear to any parents not already committed to Singer's 'program' that their payments were bribes not just donations."  Dkt. 1169 at 5-6.  At the time of the recorded calls between Singer and Wilson in the fall of 2018, Wilson was not yet committed to a side door deal for his daughters.  *E.g.*, Ex. A (Oct. 27, 2018 call) (WILSON: . . . . is it, you're committed once you make this call [to the coach], you're saying? SINGER: Excuse me? WILSON: Would we be committed?  Because I don't even -- you know, the girls haven't been out there yet to look at it yet.  How does that work? SINGER: No, so . . . let me have a discussion with the coach to say when I have to have the commitment from you guys.").[4]

---

[4] Wilson wired $500,000 to Singer's foundation on or about October 17, 2018, *after* Singer had described a payment to a coach during the October 15, 2018 call.  This wire was intended to secure "first dibs" on a spot at his daughters' school of choice, which they had not yet selected.  *See* Ex. B (Oct. 15, 2018 call).  Wilson wired an additional $500,000 on December 11, 2018 after he had committed to "side door" deals at Stanford University and Harvard University for each of his daughters, and after additional calls with Singer (described *infra*) in which Singer described paying the Stanford sailing coach directly and hiding the scheme from the university.

Wilson nevertheless persists, arguing that such statements are misleading in light of Singer's purported statements in the September 28 FaceTime video-call. Dkt. 1184 at 8. This contention, of course, is not a proper basis for reconsideration, since Wilson already made this argument and it was rejected. Nor, in any event, does it provide a valid reason to dismiss the Indictment or suppress evidence. It is, at most, a basis for Wilson's attorney to cross-examine Singer at trial, assuming he has a good-faith basis to do so. At that time, the jury will be able to consider what Wilson contends Singer said to him during the September 28 call (assuming, *arguendo*, that Wilson participated in that call, as he contends) in the context of the consensually recorded calls that followed, during which the criminal nature of the scheme was explicitly discussed before Wilson committed to it.[5]

*Second:* Wilson contends that the May 8 Order does not adequately address alleged misconduct with respect to the government's purported failure to memorialize the September 28 FaceTime video-call and the deletion of certain text messages between Singer and Wilson family members. Dkt. 1184 at 8. Again, the Court already considered and rejected these arguments.

---

[5] *See, e.g.*, Ex. B (Oct. 15, 2018 call) (SINGER: . . . . So I know, when we get the girls in, it's a done deal and you're gonna take care of your part of it, you're gonna make the payments to the schools and the -- *to the coaches*. . . ."); Ex. A (Oct. 27, 2018 call) (SINGER: . . . . I just gave the Stanford sailing coach [$]160,000 for his program and while we were having that conversation I said, 'Hey, I'm hoping that this 160 that I'm helping you with helps secure a spot for next year. Can I be guaranteed a spot for next year?' And he said, 'Yes.' . . . . So if you want I can provide John Vandemoer [the Stanford sailing coach] -- which I'm going to essentially *send John directly the check, to the coach*. I can send him your [$]500,000 that you wired into my account to secure the spot for one of your girls. I asked him for a second spot in sailing and he said he can't do that because he has to actually recruit some real sailors *so that Stanford doesn't catch on*. . . . WILSON: He's got to actually have some sailors. Yeah. SINGER: Yeah. *So that Stanford doesn't catch on to what he's doing*. WILSON: Right."); Ex. C (Nov. 5, 2018 call) (SINGER: . . . . So, we got the Stanford spot. They want to know if you want it because *I have to pay the coach* right away. . . . So the sailing spot that we have, that *we'll pay the coach*, he doesn't care if it's a sailor or not. . . . This -- immediately they give us a spot, guaranteed spot, you -- *we pay the coach*, we get it done. . . . ) (emphasis added in all).

*Compare* Dkt. 972 at 8, 13, 24-27 *with* Dkt. 1169 at 3, 7.  *See also United States v. George*, 839 F. Supp. 2d 430, 439-40 (D. Mass. 2012) (Gorton, J.) (noting that "the First Circuit has declined to adopt an 'all-or-nothing' rule with respect to the recording of conversations in sting operations").

*Third:* Wilson asserts that he may not have the opportunity to cross-examine Singer about the purported exculpatory statements he made to Wilson during the September 28 FaceTime video-call, and even if he does, it will not be sufficient.  Dkt. 1184 at 9.  Again, the Court already considered and rejected this argument.  *Compare* Dkt. 972 at 32 *with* Dkt. 1169 at 7-8.[6]

At bottom, Wilson's motion for reconsideration offers nothing new.  His repetition of arguments previously advanced and rejected does not merit the "extraordinary remedy" of reconsideration.  Wilson has not demonstrated, and cannot demonstrate, that this Court's order is clearly unjust.  For these reasons, his motion for reconsideration should be denied.

                                          Respectfully submitted,

                                          ANDREW E. LELLING
                                          United States Attorney

                                    By: */s/ Kristen A. Kearney*
                                          ERIC S. ROSEN
                                          JUSTIN D. O'CONNELL
                                          KRISTEN A. KEARNEY
                                          LESLIE A. WRIGHT
                                          KARIN M. BELL
                                          STEPHEN E. FRANK
                                          Assistant United States Attorneys

---

[6] Relatedly, Wilson asserts that his right to remain silent will be jeopardized if he is forced to testify about the September 28 call.  Dkt. 1184 at 9.  But according to Wilson's own affidavit, members of his family were also on the call, and would therefore presumably be able to testify about it.  *See* Dkt. 972, Ex. QQ ¶¶ 5, 7.  In any event, this argument could have been asserted earlier and thus cannot form the basis for a motion for reconsideration.

## CERTIFICATE OF SERVICE

      I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: May 27, 2020                      */s/ Kristen A. Kearney*
                                                    Kristen A. Kearney