UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| | ) |
| V. | ) No. 19-cr-10080-NMG |
| | ) |
| DAVID SIDOO, *et al*, | ) **LEAVE TO FILE GRANTED** |
| | ) **MAY 5, 2020** |
| Defendants. | ) |

---

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
(1) COUNT ONE INSOFAR AS IT ALLEGES CONSPIRACY TO COMMIT HONEST
SERVICES FRAUD AGAINST THE UNIVERSITY OF SOUTHERN CALIFORNIA AND
GEORGETOWN UNIVERSITY AND (2) COUNT TWO ALLEGING CONSPIRACY TO
COMMIT FEDERAL PROGRAMS BRIBERY (ECF NO. 1037)**

---

**TABLE OF CONTENTS**

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     A.  The Government Must Allege and Prove the Existence of a Corrupt
         Quid Pro Quo – the Swap of an Official Act For a Private Payment . . . . . . . . . 3

     B.  The Government's "Professional Benefit" Theory Has No Limiting
         Principle . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     C.  The Government's "Professional Benefit" Theory Fails Because
         There is No Allegation or Evidence That the Defendants Had Any
         Knowledge of This Feature Which Allegedly Transformed Their
         Donations Into Bribes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     D.  The Government Confuses the Requirement of Private Gain With
         the Rule That There Need Not Ultimately be Pecuniary Harm to
         the Victim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     E.  The Payments From Singer to Heinel Alleged at Paragraphs 119
         and 121 of the FSI Do Not Constitute Bribes as a Matter of Law . . . . . . . . . 9

III.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## TABLE OF AUTHORITIES

**Cases**

*McCormick v. United States,* 500 U.S. 257 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

*McDonnell v. United States*, 136 S. Ct. 2355 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Skilling v. United States*, 561 U.S. 358 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 7, 8, 9

*United States v. Ali,* 561 F. Supp. 2d 265 (E.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*United States v. Berroa,* 856 F.3d 141 (1st Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Black,* 530 F.3d 596 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*United States v. Blagojevich*, 794 F.3d 729 (7th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5

*United States v. Crozier,* 987 F.2d 893 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*United States v. Fernandez*, 722 F.3d 1 (1st Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . 3, 9, 10

*United States v. McGregor*, 879 F. Supp. 2d 1309 (M.D. Ala. 2012) . . . . . . . . . . . . . . . . . . . 3

*United States v. Mister*, 553 F. Supp. 2d 377 (D.N.J. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Unites States v. Renzi,* 769 F.3d 731 (9th Cir. 2014)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*United States v. Rodriguez*, 319 F.3d 12 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Sorich*, 523 F.3d 702 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9

*United States v. Soto-Beniquez,* 356 F.3d 1 (1st Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Tanner,* 2018 WL 1737235 (S.D.N.Y. 2018). . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Thompson*, 484 F.3d 877 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Wilkie v. Robbins*, 551 U.S. 537 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5, 6

**Statutes**

18 U.S.C. § 201(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. §§ 1341, 1343, and 1346  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

18 U.S.C. § 1349  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 666(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 1951 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## I.      INTRODUCTION

In its Opposition, the government tacitly acknowledges the unprecedented nature of the theory of bribery underlying this prosecution.   Remarkably, the government dismisses as "unremarkable" the fact that it has been unable to identify a single case in which a payment to an employer was held to qualify as a "bribe" of its employee.  The best the government can do is offer up the same handful of cases it has cited time and again, in which a corrupt public official or private sector employee diverted a payment or other thing of value to a third party of interest to them.  As the government concedes, however, *none* of these cases involve a "bribe" or "kickback" which was paid *to the victim.*    The government's theory is not only unprecedented, it is defective as a matter of law.

The government begins by criticizing the Defendants for arguing that the Fourth Superseding Indictment ("FSI") fails to allege the "type" of quid pro quo necessary to support convictions for conspiracy to commit honest services fraud and federal programs bribery – as if any exchange of "this for that" will do, at least so long as fraud is involved.   Opposition ("Opp."), ECF No. 1170, at 41.  But of course, quid pro quo literally just means "this for that," and there exists a spectrum of quid pro quo arrangements ranging from the entirely lawful, e.g., a contract, to the criminal, e.g., a legislator selling his vote.  Indeed, the government has admitted – as it must – that it is not a crime for a university to enter into a quid pro quo exchange of donations for preferential admissions treatment.  Thus, the label "quid pro quo" is, by itself, meaningless.   A conviction for honest services fraud or federal programs bribery requires proof of a *corrupt* quid pro quo – "the swap of an official act for a private payment." *United States v. Blagojevich*, 794 F.3d 729, 734 (7th Cir. 2015).  The allegations in the FSI of payments to university accounts fail to satisfy that standard as a matter of law.

1

Next, the government argues that the allegations of the FSI that payments were made "to university accounts designated by corrupt coaches" is sufficient, standing alone, to make out the required corrupt quid pro quo, Opp. at 42, and that even if some form of private gain to the insiders were required, the allegation that payments were made to accounts over which Donna Heinel and the coaches "exercised discretion" or that "otherwise benefited them professionally" satisfies that requirement.  Opp. at 45.  The government supports this assertion with citation to cases which it says hold that "payments to third parties, even including charities, may qualify as bribes or kickbacks."  Opp. at 43.  But of course, the government cannot point to any case where a payment to a charity was held to be a "bribe" *of an employee of the charity*.  Rather, as the Defendants observed in their opening brief and the government has failed to rebut, every single case the government cites for this proposition involved a payment which the corrupt insider directed to a *third party* of interest to the insider.

Third, assuming, *arguendo*, that a "professional benefit" to Heinel from USC's receipt of funds is sufficient to transform a payment to USC into a bribe of Heinel, then the Defendants, who are charged with conspiring with Singer to bribe Heinel, must at a minimum have been aware of that critical fact.  But there is no allegation – much less evidence – that they were.

Fourth, the government erroneously accuses Defendants of arguing "that their scheme could not have constituted honest services fraud because the universities benefited from it financially."  Opp. at 49.  Nowhere do the Defendants make that argument.  The government confuses the requirement that there be some type of "private gain" occasioned by the scheme with the rule that the victim need not ultimately suffer pecuniary harm.  As the cases cited by the government make clear however, these rules are not mutually exclusive, for the very reason that honest services fraud lacks the "symmetry" of ordinary money or property fraud, "in which

the victim's loss of money or property supplied the defendants' gain, with one the mirror image of the other." *Skilling v. United States*, 561 U.S. 358, 400 (2010).

Finally, in the face of contrary, binding precedent, *see United States v. Fernandez*, 722 F.3d 1, 19 (1st Cir. 2013), the government claims that it is irrelevant that Singer and Heinel did not agree that Singer would pay Heinel personally until *after* Heinel had presented Defendants' children for admission through USC's Athletic Admissions Subcommittee ("Subco").   But as a matter of law, the timing of that agreement renders it not a bribe.  *See id.*  And as a matter of logic, the Defendants could not have agreed with Singer to bribe Heinel when Singer and Heinel had yet to even contemplate the arrangement to pay Heinel personally which the government contends is a bribe.  Even if the Defendants possessed telepathic powers, they could not have conspired with Singer to do something which was not a crime. *See id.* at 32.

## II.   ARGUMENT

### A. The Government Must Allege and Prove the Existence of a Corrupt Quid Pro Quo – the Swap of an Official Act for a Private Payment.

The government takes the position that *any* quid pro quo arrangement qualifies as a "bribe" for purposes of § 1346 and § 666(a)(2), at least so long as fraud is involved.  Opp. at 43.  "But a quid pro quo is simply Latin for 'this for that.'"   *United States v. McGregor*, 879 F. Supp. 2d 1309, 1317 (M.D. Ala. 2012).  It follows that not every quid pro quo is illegal or even inappropriate.  Indeed, the government has conceded that it is not a federal crime to make a donation to a university in exchange for pr`eferential admissions treatment.[1]  Rather, conviction

---

[1]   U.S. Attorney Lelling himself acknowledged that "donating a building so that a school is more likely to take your son or daughter" is not a criminal violation.  Editorial Board, *Turns Out There's a Proper Way to Buy Your Kid a College Slot*, N.Y. Times, (Mar. 12, 2019), available at: https://www.nytimes.com/2019/03/12/opinion/editorials/college-bribery-scandal-admissions.html.
Further, at the sentencing of Jeffrey Bizzack, in response to a question posed by Judge Woodlock "So if USC decides to take money, say $100,000 or $200,000 and says, 'By the way, we're going to let this kid in,' that's not any criminal violation; is that right?," the government answered: "It might be a violation of their tax-exempt status. But no, I don't believe that to be a criminal violation."  Motion Ex. D (ECF 1038-5), Bizzack Tr. at 23.

for honest services fraud or federal programs bribery requires proof of a *corrupt* quid pro quo – "the swap of an official act for a private payment." *Blagojevich*, 794 F.3d at 734.  *See also id.* at 735 ("[*McCormick v. United States*, 500 U.S. 257 (1991)] describes the offense as a quid pro quo: a public official performs an official act (or promises to do so) in exchange for a private benefit, such as money.").[2]  Again, the "purpose of the private gain requirement—and one that does not depend on who gets the spoils—*is to prevent the conviction of individuals who have breached a fiduciary duty to an employer or the public, but have not done so for illegitimate gain.*" *United States v. Sorich*, 523 F.3d 702, 710 (7th Cir. 2008) (emphasis added).   The allegations of the FSI concerning the exchange of donations for preferential admissions treatment may involve a breach of fiduciary duty, but they do not satisfy the legal requirement that there be illegitimate, private gain occasioned by the scheme.

As the government acknowledges, the Seventh Circuit in *Blagojevich* – a post-*Skilling* decision – reversed the conviction of former Illinois governor Rod Blagojevich on honest services fraud and federal programs bribery charges because the jury instructions did not make clear that the jury could only convict if they found "the swap of an official act for a private payment." *Id.* at 734-35.  The evidence at trial showed that Blagojevich had attempted to sell his power to fill then-President-elect Obama's vacant senate seat, in exchange for a job for himself after he left the governorship.   *Id.* at 733.  Several different jobs were proposed, including private sector jobs, as well as an appointment to President Obama's cabinet.  *Id.*  The

---

[2]   The government has previously stated on the record its understanding that "[a] bribe is simply a quid pro quo with the intent to defraud."  ECF No. 1066-1 at Ex. KKK p. 13.  This reflects a fundamental misunderstanding of the law.  Not even every corrupt quid quo arrangement that involves fraud will support a conviction for honest services fraud or federal programs bribery.  For example, "logrolling" – "the swap of one official act for another" is not honest services fraud – even where fraud is involved, and even where one of the official acts being exchanged is the appointment to a public post which comes with a salary.  *See Blagojevich,* 794 F.3d at 735.   And not every single action that a public officeholder takes in his official capacity may properly serve as the "quo" in a quid pro quo, even if fraud was involved, and even if the action was influenced by a corrupt payment which would otherwise qualify as a bribe.  *See McDonnell v. United States*, 136 S. Ct. 2355, 2371 (2016).

court held that only the private sector jobs could have qualified as a "private benefit" necessary to support a conviction for honest services fraud and federal programs bribery, whereas an appointment to the cabinet was properly regarded as "political logroll . . . the swap of one official act for another." *Id.* at 734. As is relevant here, the court explained:

> Put to one side for a moment the fact that a position in the Cabinet carries a salary. Suppose that Blagojevich had asked, instead, that Sen. Obama commit himself to supporting a program to build new bridges and highways in Illinois as soon as he became President. Many politicians believe that public-works projects promote their re-election. If the prosecutor is right that a public job counts as a private benefit, then the benefit to a politician from improved chances of election to a paying job such as Governor—or a better prospect of a lucrative career as a lobbyist after leaving office—also would be a private benefit, and we would be back to the proposition that all logrolling is criminal.

*Id.* at 737. In other words, in public sector cases, a benefit conferred on the public is not transformed into a "bribe" simply because the official who solicited the benefit stood to gain politically from doing so. In support of its holding, the court cited to *United States v. Thompson*, 484 F.3d 877 (7th Cir. 2007), which the court characterized as rejecting the theory that an "employee's interest in keeping her job meant that she violated federal law if she performed any aspect of her job in ways that she knew she shouldn't." *Blagojevich*, 794 F.3d at 737. There is no principled reason why this analysis should be limited to public sector cases. Just like a politician's solicitation of a public benefit in exchange for the performance of an official act, Donna Heinel's solicitation of funds for USC – even if unauthorized – did not involve the type of private gain which a conviction for honest services fraud demands.[3] The government does not cite a single case holding otherwise.

---

[3]   The government's attempt to distinguish *Wilkie v. Robbins*, 551 U.S. 565 (2007), in which the Supreme Court held that "efforts of Government employees to get property for the exclusive benefit of the Government" does not constitute the closely-related offense of Hobbs Act Extortion, *see* Opp. at 44, is unpersuasive. The government asserts that Defendants "inapt[ly]" . . . analogize the universities to the government, and contend that payments to the universities cannot constitute bribes as a matter of law." Opp. p. 44. The analogy is perfectly apt. In public sector bribery cases – whether prosecuted under § 201(b) or § 1346 or § 1951 (the Hobbs Act) – the public stands in the same shoes as the employer does in private sector honest services fraud cases. Thus, insofar as obtaining property for the exclusive

**B.  The Government's "Professional Benefit" Theory Has No Limiting Principle.**

The only court to directly address the question whether a trickle down benefit to an employee which is derived from a gain secured for her employer can constitute the type of "private gain" necessary to support a conviction for honest services fraud held that it could not. *See Thompson*, 484 F.3d at 884.  The government's only response to *Thompson* is to point out that *Thompson* did not involve a bribe, whereas, according to the government's circular reasoning, this case does.  The cases cited by the government for the proposition that "any payment that the defendant subjectively believes has value . . . constitutes a thing 'of value'" for purposes of establishing a corrupt quid quo, do not hold otherwise.  *See* Opp. at 45 (citing *United States v. Crozier*, 987 F.2d 893, 901 (2d Cir. 1993); *United States v. Renzi*, 769 F.3d 731, 744 (9th Cir. 2014)).[4]  The definition of "thing of value" may be malleable, but it is not so elastic as to encompass every "psychic benefit" that an employee may enjoy as a result of raising funds or otherwise taking action which benefits her employer.  *See Thompson*, 484 F.3d at 884.  This point is illustrated with reference to the type of quid pro quo arrangement which the government concedes is entirely lawful – where a wealthy donor makes a substantial donation to a university in exchange for the university admitting his or her child.  There can be no question that the development officer responsible for landing this donation derives some indirect "professional benefit" from doing so, but that fact does not transform the donation into a bribe of the development officer.

---

benefit of the government is not a corrupt quid pro quo, neither is a university employee obtaining property for the exclusive benefit of the university.  The overbreadth concerns which the government argues drove the result in *Wilkie* are of no less significance here, to the extent the government would turn any unauthorized commercial transaction, resulting in no personal benefit to the employee or private gain to a third party, into a federal bribery prosecution.

[4]   The "thing of value" in *Crozier* was a personal loan.  987 F.2d at 896.  The "thing of value" in *Renzi* was an agreement to purchase real estate owned by a congressman in exchange for the congressman promoting legislation benefiting the purchaser.  769 F.3d at 741.

Like the morass of standardless precedents which the Supreme Court wiped away in *Skilling*, the government's theory that payments to USC constituted bribes of Heinel because Heinel, by virtue of her status as an employee of USC, derived some incidental benefit from those funds, lacks any meaningful limiting principle.  It fails to distinguish conduct which the government alleges is criminal from conduct which the government concedes is entirely lawful, allowing the government to turn any unauthorized commercial transaction into a federal bribery case through the inclusion of a throwaway allegation that money paid to the defendant's employer confers some indirect benefit on the defendant.  It is fundamentally at odds with the Supreme Court's substantial narrowing of honest services fraud liability in *Skilling.*  The point of *Skilling* was that inducing an employee or public servant to violate fiduciary duties is not, on its own, honest services fraud.  The crime occurs only when the defendant uses a bribe or a kickback to cause that violation.  *Skilling,* 561 U.S. at 409.  The government here turns the tables by saying, in essence, that the term "bribe or kickback" encompasses any inducement to violate a fiduciary duty.  But that would undo *Skilling*'s limitation altogether.

### C. The Government's "Professional Benefit" Theory Fails Because There Is No Allegation or Evidence that the Defendants Had Any Knowledge of this Feature Which Allegedly Transformed Their Donations into Bribes.

A conviction for conspiracy to commit federal programs bribery or honest services fraud requires proof that the defendant intended engage in a bribery or kickback scheme.   The government must prove that the Defendants "knew the specific unlawful purpose of the payments charged in the indictment. . . .[that] the payments [made] were bribes." *United States v. Mister*, 553 F. Supp. 2d 377, 384, 387 (D.N.J. 2008).  *See also United States v. Berroa*, 856 F.3d 141, 161 (1st Cir. 2017); *United States v. Rodriguez*, 319 F.3d 12, 40 (1st Cir. 2003).  Thus, even if the government were correct (which it is not) that the allegation of a "professional benefit" to Heinel could transform a donation into a bribe, the Defendants would

7

need to have knowledge of this essential feature of the scheme in order to be convicted of the charged conspiracy.  *See id.*  It is not, as the government contends, a mere "detail" of which the Defendants need not have been aware.  *See, e.g., United States v. Soto-Beniquez*, 356 F.3d 1, 19 (1st Cir. 2004).

### D. The Government Confuses the Requirement of Private Gain with the Rule That There Need Not Ultimately Be Pecuniary Harm to the Victim.

Citing to dicta from *Skilling* stating that honest services fraud is actionable "[e]ven if the scheme occasioned a money or property gain for the betrayed party[,]" 561 U.S. at 400, the government accuses the Defendants, erroneously, of arguing that the government's bribery allegations fail because "the universities benefited from [the alleged scheme] financially."  Opp. at 49.  In making this contention, the government confuses the requirement of private gain occasioned by the scheme with the rule that there need not ultimately be pecuniary harm to the victim.  Defendants' argument, however, relies not on the presence of a gain (or lack of a loss) to USC, but rather the absence of a private benefit to Donna Heinel or a third-party designee.

A review of *Skilling* and the other cases cited by the government on this point, *see* Opp. at 49-50, reveals the government's argument to be a red herring.  The Supreme Court in *Skilling* suggested in *dicta* that, because the injury to the victim in an honest services fraud prosecution is the loss of the fiduciary's honest services and not necessarily a tangible economic harm, a conviction for honest services fraud could be sustained in the hypothetical scenario where "a city mayor . . . accepted a bribe from a third party in exchange for awarding that party a city contract," even though "the contract terms were the same as any that could have been negotiated at arm's length," and the city thus "suffer[ed] no tangible loss."[5]  561 U.S. at 400.  It was undisputed that the mayor in the *Skilling* hypothetical lined his own pockets; the

---

[5]   Analogizing the *Skilling* "mayor" hypothetical to this case, if Heinel actually took a bribe rather than solicited a donation to USC, it would be no defense that the applicant she presented for admission to Subco in exchange for that bribe was actually a star athlete.

only question was whether it mattered that the contract induced by the bribe was a favorable contract for the city. Likewise, the defendants in *United States v. Tanner* were charged with receiving a kickback of $9.7 million which they diverted to a shell company they set up to conceal the proceeds of their scheme. *See* 2018 WL 1737235, at *1 (S.D.N.Y. 2018).

The other cases cited by the government on this point, *United States v. Black*, 530 F.3d 596 (7th Cir. 2008), *vacated and remanded on other grounds*, 561 U.S. 465 (2010), and *United States v. Sorich*, 523 F.3d 702 (7th Cir. 2008), do not involve bribes, and in any event, they actually support the Defendants' position. *Black* recognizes that the requirement that a scheme result in "private gain" to the fiduciary or her designee, and the rule that the victim need not suffer pecuniary harm, are not mutually exclusive. *See Black*, 530 F.3d at 600 ("The defendants' unauthorized appropriation of $5.5 million belonging to a subsidiary of Hollinger was a misuse of their positions in Hollinger for private gain, which is just the kind of conduct that [is] the essence of honest services fraud."). And *Sorich* makes clear that there must be some sort of "illegitimate gain" which is either retained by the insider or diverted "*to enrich a third party.*" 523 F.3d at 708-09 (emphasis added). The court in *Sorich* listed numerous examples of cases involving bribes or kickbacks that had been diverted to third parties; not surprisingly, none involved the diversion of payment *to the victim*. *Id.* at 709-10.

### E. The Payments From Singer to Heinel Alleged at Paragraphs 119 and 121 of the FSI Do Not Constitute Bribes As a Matter of Law.

The First Circuit has held unequivocally that if an "agreement to exchange a thing of value for an act is made after that act has been performed, that agreement cannot be properly viewed as an agreement to offer or accept a bribe." *United States v. Fernandez*, 722 F.3d 1, 19 (1st Cir. 2013). The allegations of the FSI make clear that Singer and Heinel did not make an agreement that Singer would make payments to Heinel personally until *after* Heinel had already presented the Defendants' children for admission through Subco. *See* ECF No. 732, FSI ¶ 119.

9

Therefore, as a matter of law, this arrangement does not constitute bribery, but is at most a "gratuity," which cannot support a conviction for honest services fraud or federal programs bribery.  *Fernandez*, 722 F.3d at 19.  It follows that, "since the conduct allegedly underlying the conspiracy . . . was not a crime, no . . . conspiracy to commit that conduct can exist either."  *Id.* at 732 (quoting *United States v. Ali*, 561 F. Supp. 2d 265, 267 (E.D.N.Y. 2008)).

The government argues in its Opposition that the timing or even existence of this agreement between Singer and Heinel to pay Heinel personally is irrelevant because the Defendants are charged with conspiracy offenses, and thus the government need not prove that Singer actually paid Heinel – or anyone – a cent.  Opp. at 51.  But the Defendants could not have conspired with Singer to do something which was not a crime.  *See Fernandez*, 722 F.3d at 32.  And as a matter of logic, the Defendants could not have agreed with Singer to bribe Heinel when Singer and Heinel had yet to even contemplate the agreement to pay Heinel personally which the government contends was a bribe.

In the alternative, the government dismisses the subsequent agreement to pay Heinel personally as a mere detail of the conspiracy which the Defendants need not have been aware of to be convicted.  Opp. at 52.   But for all the reasons discussed above and in Defendants' opening brief, the existence of payments to Heinel personally – and Defendants' knowledge of the same – goes to the very heart of whether a crime occurred.

## III.    CONCLUSION

For the reasons set forth above and in their opening Memorandum of Law (ECF No. 1038), the undersigned Defendants respectfully request that this Court grant their Motion to Dismiss (ECF No. 1037).

Respectfully submitted,


/s/ David E. Meier
David E. Meier (BBO #341710)
Christian G. Kiely (BBO #684308)
Todd & Weld LLP
One Federal Street, 27th Floor
Boston, MA  02110
(617) 720-2626
dmeier@toddweld.com
ckiely@toddweld.com


/s/ Stephen H. Sutro
Stephen H. Sutro, Esq.
Duane Morris, LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
Telephone: (415) 957-3008
Facsimile: (415) 276-9855
SHSutro@duanemorris.com

*Counsel for Diane and Todd Blake*

Dated:  May 27, 2020


/s/ Brian T. Kelly                              /s/ Reuben Camper Cahn
Brian T. Kelly (BBO No. 549566)                 Reuben Camper Cahn *(pro hac vice)*
Joshua C. Sharp (BBO No. 681439)                Jennifer L. Keller *(pro hac vice)*
Lauren M. Maynard (BBO No. 698742)              Chase A. Scolnick *(pro hac vice)*
NIXON PEABODY LLP                               KELLER/ANDERLE LLP
53 State Street                                 18300 Von Karman Avenue, Suite 930
Boston, MA 02109                                Irvine, CA 92612
617-345-1000                                    Tel: (949) 476-8700
bkelly@nixonpeabody.com                         rcahn@kelleranderle.com
jsharp@nixonpeabody.com
lmaynard@nixonpeabody.com                       *Counsel for I-Hsen "Joey" Chen*


Robert Sheketoff (BBO No. 457340)               /s/ R. Robert Popeo
One McKinley Square                             R. Robert Popeo (BBO # 403360)
Boston, MA 02109                                Mark E. Robinson (BBO # 423080)

617-367-3449

*Counsel for Gamal Abdelaziz*

/s/ David S. Schumacher
David S. Schumacher (BBO #647917)
HOOPER, LUNDY & BOOKMAN, P.C.
470 Atlantic Avenue, Suite 1201
Boston, MA 02210
(617) 532-2700
(617) 345-3927 (fax)
dschumacher@health-law.com

Patric Hooper (*pro hac vice*)
HOOPER, LUNDY & BOOKMAN, P.C.
1875 Century Park East, Suite 1600
Los Angeles, California 90067-2517
(310) 551-8111
(310) 551-8181 (fax)
phooper@health-law.com

Jordan Kearney (*pro hac vice*)
HOOPER, LUNDY & BOOKMAN, P.C.
575 Market Street, Suite 2300
San Francisco, CA 94105
(415) 875-8500
(415) 875-8519 (fax)
jkearney@health-law.com

*Counsel for Amy and Gregory Colburn*

/s/ Jack W. Pirozzolo
Jack W. Pirozzolo (BBO # 564879)
jpirozzolo@sidley.com
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, MA 02109
(617) 223-0304

John C. Hueston (*pro hac vice*)
jhueston@hueston.com
Marshall Camp (*pro hac vice*)

Eóin P. Beirne (BBO # 660885)
Cory S. Flashner (BBO # 629205)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 348-1605 (telephone)
(617) 542-2241 (fax)
rpopeo@mintz.com
mrobinson@mintz.com
ebeirne@mintz.com
csflashner@mintz.com

*Counsel for Elisabeth Kimmel*

/s/ Michael K. Loucks
Michael K. Loucks (BBO #305520)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM
LLP
500 Boylston Street
Boston, MA 02116
(617) 573-4800
michael.loucks@skadden.com

Jack P. DiCanio (*pro hac vice*)
Allen J. Ruby (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM
LLP
525 University Avenue
Palo Alto, CA 94301
(650) 470-4500
jack.dicanio@skadden.com
allen.ruby@skadden.com

*Counsel for Marci Palatella*

/s/ Martin G. Weinberg
Martin G. Weinberg
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700

mcamp@hueston.com
HUESTON HENNIGAN LLP
523 W. 6th Street, Suite 400
Los Angeles, CA 90014
(213) 788-4340

*Counsel for William McGlashan, Jr.*

/s/ Michael Kendall
Michael Kendall (BBO # 544866)
Yakov Malkiel (BBO # 689137)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com
yakov.malkiel@whitecase.com

Andrew E. Tomback (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8428
andrew.tomback@whitecase.com

*Counsel for John Wilson*

/s/ Tracy A. Miner
Tracy A. Miner (BBO No. 547137)
Megan A. Siddall (BBO No. 568979)
Miner Orkand Siddall LLP
470 Atlantic Ave, 4th Floor
Boston, MA 02110
Tel.: (617) 273-8377
Fax: (617) 273-8004
tminer@mosllp.com
msiddall@mosllp.com

*Counsel for Homayoun Zadeh*

owlmgw@att.net

Matthew L. Schwartz (*admitted pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Tel.: (212) 446-2300
Fax: (212) 446-2350
E-mail:  mlschwartz@bsfllp.com

*Counsel for Robert Zangrillo*

**CERTIFICATE OF SERVICE**

I, David E. Meier, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 27, 2020.

/s/ David E. Meier
David E. Meier