# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 19-10080-NMG-17 |
| | ) |
| (17) JOHN WILSON, | ) |
| | ) |
| Defendant | ) |

## GOVERNMENT'S OPPOSITION TO DEFENDANT JOHN WILSON'S MOTION TO COMPEL DISCOVERY

Defendant John Wilson moves to compel the government to: (1) disclose additional information about a September 23, 2018 meeting between Wilson and William "Rick" Singer that was cancelled and never occurred; (2) disclose additional information about a September 28, 2018 "FaceTime" call between Singer and members of the Wilson family; and (3) state whether the government has complied with the defendants' *Brady* requests. For the reasons set forth below, Wilson's motion should be denied.

## RELEVANT BACKGROUND[1]

In September 2018, shortly before Singer began cooperating with law enforcement, Wilson asked Singer about using the "side door" to secure admission to college for his two daughters who were then juniors in high school.[2] For example, during a September 15, 2018 call, which was intercepted pursuant to a court-authorized wiretap, Wilson and Singer discussed using "other doors" – including, in Wilson's words "the sports angle" and "contributions" – to get his daughters into colleges such as Harvard University ("Harvard") and Stanford University ("Stanford"). *See*

---

[1] The factual allegations pertaining to Wilson have been set forth in multiple prior filings and the government will not recount them here. *See* Dkt. 736 at 14-18; Dkt. 1066 at 6-8.

[2] Five years earlier, in 2013, Wilson paid $220,000 to secure the admission of his son to the University of Southern California based on a falsified athletic profile.

1

Ex. A at 8-10 [Sept. 15, 2018 Session 8137 transcript]. During the same conversation, Singer and Wilson discussed meeting in Boston on September 21, 2018. *See* Ex. B at 3-4 [Sept. 15, 2018 Session 8138 transcript]. That meeting never occurred because, on the morning of September 21, 2018, Singer was approached by federal agents and agreed to cooperate with the government's investigation. Singer thereafter arranged to meet with Wilson and his wife at Boston Logan International Airport on September 23, 2018. At the direction of agents, Singer later cancelled that meeting.

Between September 26 and 28, 2018, Singer participated in proffer interviews with investigators in California. On September 28, 2018, during a break from one of those sessions, Singer participated in a FaceTime video call with members of Wilson's family. Singer advised agents of the call, but agents did not monitor or record it. Thereafter, Wilson made payments totaling $1 million to KWF, Singer's sham charity, with the understanding that the money would be passed on as *quid pro quo* payments to facilitate his daughters' admission to elite universities as fake recruited athletes. *See* Dkt. 1066 at 12-14.

**ARGUMENT**

### A. The September 23, 2018 Meeting Request

Wilson seeks information regarding the cancellation of the September 23 meeting on the basis of his unsupported contention that "it appears" the meeting was cancelled in order to avoid the production of exculpatory evidence. (Def. Br. at 5.) That is not true—and *Brady* requests "cannot consist of mere speculation." *United States v. Prochilo*, 629 F.3d 264, 268 (1st Cir. 2011); *United States v. Mandel,* 914 F.2d 1215, 1219 (9th Cir. 1990) ("To obtain discovery under Rule 16, a defendant must make a prima facie showing of materiality."). In any event, to the extent the government is in possession of discoverable information concerning the canceled meeting, those materials have been produced. Wilson's requests amount to little more than interrogatories, and

2

are improper in a criminal prosecution. *See*, *e.g.*, *United States v. Conder*, 423 F.2d 904, 910 (6th Cir. 1970) (interrogatories are prohibited in criminal cases); *United States v. Kearney*, 436 F. Supp. 1108, 1116 (S.D.N.Y. 1977) (same).

*First*, Wilson seeks information regarding what Singer told the government about Wilson prior to the September 23 meeting. To the extent such information is discoverable, the government has produced it, including: (1) a September 15, 2018 recorded telephone call in which Wilson asked to meet Singer when he was in Boston, *see* Ex. B 3-4; (2) emails between Singer, Wilson, and Wilson's wife discussing a planned meeting, *see* Ex. C [emails related to planned meeting]; and (3) proffer reports and agent notes from meetings with Singer on September 21 and 22, 2018, *see* Ex. D [Sept. 21 & 22, 2018 reports and related agent notes].

*Second,* Wilson seeks information about what "prompted the government to schedule the meeting." The government has provided all factual information regarding the September 23 meeting. To the extent Wilson seeks information about what agents were thinking, that is not discoverable. *See Beaman v. Souk*, 7 F.Supp.3d 805, 823 (C.D. Ill. 2014) ("Plaintiff was given access to all of the material information that led some investigators to form the opinion that the case was weak or remained unsolved. These opinions themselves are not also *Brady* material."); *United States v. Carpenter*, 405 F. Supp.2d 85, 98 (D. Mass. 2005) ("government's evaluation of its own evidence would not be admissible or otherwise useable by the defense at trial").

*Third*, Wilson seeks information about why the government instructed Singer to cancel the meeting. The government has already produced the report reflecting the agents' direction to Singer to cancel the meeting, *see* Ex. E [Sept. 23, 2018 report], as well as a recording of the September 23, 2018 phone call during which Singer cancelled the meeting, *see* Ex. C [Sept. 23, 2018 Session 8641 transcript]. The government's *reason* for cancelling the meeting—its thinking and

investigative strategy—is subject to the deliberative process privilege and is not discoverable. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001); *United States v. Carpenter*, 405 F. Supp.2d 85, 99 (D. Mass. 2005) (rejecting defense request for government's "evaluations, assessments, and even trial strategies"); *United States v. Conley*, 103 F. Supp. 2d 45, 57 (D. Mass. 2000), *rev'd on other grounds*, 249 F.3d 38 (1st Cir. 2001) (denying defense request for "all the information in the minds and files of prosecutors").[3]

*Fourth,* Wilson wants to know what the government told Singer about scheduling and canceling the meeting. The government has produced its report on that topic. *See* Ex. E. To the extent Wilson has additional questions for Singer or the agents, he can ask them during cross examination at trial should those individuals testify.

### B. The September 28, 2018 FaceTime Request

Wilson next seeks additional information regarding the September 28, 2018 FaceTime call between Singer and members of the Wilson family—claiming that Singer made exculpatory statements to Wilson during the call. The government has produced all discoverable documents or records concerning the call that are currently in its possession. Once again Wilson's requests amount to little more than improper interrogatories about the government's mental processes.

*First,* Wilson wants to know why the government chose not to record this FaceTime call. This information, like the other information Wilson seeks about the government's reasons for undertaking or not undertaking certain investigative steps, is subject to the deliberative process privilege. Wilson cites no law suggesting otherwise.

---

[3] Rule 16(a)(2) also specifically provides that "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case" are not discoverable. *See also United States v. Kohring,* 637 F.3d 895, 908 (9th Cir. 2011) (no duty to disclose internal communications or work product as long as non-cumulative 'underlying exculpatory facts' are disclosed); *Johnson v. United States*, 860 F.Supp.2d 663, 852-53 (N.D. Iowa 2012) (same).

4

*Second*, Wilson wants to know why the government has not produced more materials regarding this call. But the government has produced considerable information about the call, including the following:

(1) emails showing that Wilson and his wife wanted Singer to have a "skype" video session with Singer and their daughters (*see, e.g.*, Ex. C [Sept. 18, 2018 email]);

(2) notes reflecting that Singer told the government prior to the call that he would be having a phone call with "the Wilsons" at 4:30 EST (*see* Ex. G [Mar. 30, 2020 email]);

(3) call logs showing that Singer had a 33-minute FaceTime call with Wilson's daughter (M. Wilson) on September 28, 2018 (*see* Ex. H [call log]; Ex. M [Mar. 18, 2020 letter]);

(4) a letter to Wilson stating that the "government did not play a 'role' in the [FaceTime] call or monitor it" (*see* Ex. I);

(5) a text message Wilson sent to Singer approximately 45 minutes after the FaceTime session ended in which he said: "Heard girls had a good first session – can we Debrief at some point?" (*see* Ex. J);

(6) emails from Wilson's email account at around the time of the FaceTime call (*see, e.g.*, Ex. K); and,

(7) a recording of a phone call on September 29, 2018, the day after the FaceTime call, in which Wilson states that he has not gotten a "full debrief" from his daughters or wife about the FaceTime call. *See* Ex. L [Session 9249].

*Third,* Wilson requests that the government be ordered to respond to the following interrogatory: Does the government dispute that Wilson and Singer spoke on the [FaceTime] call? Once again, this request is an improper inquiry into the government's litigation strategy. Nevertheless, the government has informed Wilson that, to date, it has no information indicating that Wilson participated in the September 28 FaceTime call.[4] *See* Ex. P [May 20, 2020 email].

---

[4] Wilson contends that the government "has indicated that—even now—it has carefully refrained from asking Singer about the FaceTime call." (Def. Br. at 6.) This characterization is untrue. However, the law is clear that the "*Brady* does not require the government to interview witnesses or otherwise create exculpatory evidence not then in existence." *United States v.*

5

C. **Prior *Brady* Requests**

Finally, Wilson demands that the government certify that it is "complying with the defendants' *Brady* requests to date," or, in the alternative, "specify any requests as to which it is withholding responsive information." (Def. Br. 10.) But the government has already advised Wilson that it believes it has "complied with its discovery obligations under Federal Rule of Criminal Procedure 16, the Local Rules, and *Brady*, that it is not "intentionally withholding any such information," and that the government will continue to comply with its obligations. *See* Exhibit N [May 15, 2020 email].[5] The government is not required, however, to certify that it has complied with its obligations—let alone that it has complied with the defendant's discovery *requests*. *See United States v. Correia*, 17-CR-00001, 2018 WL 3416517 (D. Nev. July 9, 2018) ("there is no legal authority to require the government provide certifications regarding its obligations"): *United States v. Dean*, 17-CR-00015, 2019 WL 2448322 (M.D. Pa. Jun. 12, 2019) (denying request for discovery "certification"); *United States v. Musa Fatty*, 17-CR-161, 2018 WL 3708660, *5 (E.D. La. Aug. 3, 2018) (same); *United States v. White*, 17-CR-611, 2018 WL 4103490, *13 (S.D.N.Y. Aug. 28, 2018) (denying request that the government certify compliance with the Ogden memo). Indeed, requests similar to Wilson's have been properly rejected in this District as "extraordinary" and "not supported by any authority." *See, e.g., United States v.*

---

*Nguyen*, 98 Fed.Appx. 608, 609 (9th Cir.2004)*; see also United States v. Alverio-Melendez*, 640 F.3d 412, 424 (1st Cir. 2011) (failure to create exculpatory evidence does not constitute a *Brady* violation). If the government obtains additional information about the call, from Singer or otherwise, the government will produce that information as required.

[5] Indeed, the government has produced discovery far in excess of what Rule 16, *Brady*, and the Local Rules require, including all FBI witness interview reports and underlying agent notes, and a summary of AUSA notes regarding interviews with Singer, to the extent those notes include information additional to or different from the related law enforcement reports. *See* Ex. N.

6

*Cadden*, 14-CR-10363-RGS, 2015 WL 13683814, *7 (D. Mass. Jul. 13, 2015) (denying request that the government "provide some additional information (akin to a 'privilege log') concerning the materials it has deemed not discoverable"), *aff'd in part rev'd in part*, 2015 WL 5737144 (Sept. 30, 2015).[6] Wilson's request is little more than a trap designed to elicit a certification that Wilson can later use to claim misconduct based on the government's failure to divine the meaning of his opaque requests, many of which seek information that Wilson did *not* do certain things. *See* Ex. O [Wilson discovery letter dated Jan. 28, 2019].[7]

## CONCLUSION

For the foregoing reasons, Wilson's motion to compel should be denied.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: */s/ Eric S. Rosen*
ERIC S. ROSEN
JUSTIN D. O'CONNELL
KRISTEN A. KEARNEY
LESLIE A. WRIGHT
KARIN M. BELL
STEPHEN E. FRANK
Assistant United States Attorneys

---

[6] Likewise, the law does not require the government to provide an accounting of its investigatory file. *See Moore v. Illinois*, 408 U.S. 786, 795 (1972) ("[w]e know of no constitutional requirement that the prosecution make a complete and detailed account to the defense of all police investigatory work on a case."); *see also United States v. Bagley*, 473 U.S. 667, 675 n.7 (1985) (permitting such a broad "right of discovery 'would entirely alter the character and balance of our present systems of criminal justice'").

[7] *Cf. United States v. Ackerly*, 16-CR-10233, Electronic Order dated March 2, 2017 (denying defense request that government be ordered to produce documents it had already produced so that it could be "held accountable," and noting, "This court agrees with the government that defendants are seeking an advisory opinion at this juncture.").

## CERTIFICATE OF SERVICE

      I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: June 5, 2020                                      */s/ Eric S. Rosen*
                                                                  Eric S. Rosen