UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

DAVID SIDOO et al.,

Defendants.

No. 1:19-cr-10080-NMG

# DEFENDANT JOHN WILSON'S OPPOSITION TO WILLIAM RICK SINGER'S AND WILLIAMS & OLDS'S MOTION TO QUASH

On May 11, 2020, the Court authorized defendant John Wilson's proposed subpoena to Williams & Olds, CPAs. ECF No. 1174. The Court did so after considering the evidence and arguments that Wilson submitted ex parte. Indeed, the Court simultaneously declined to authorize another subpoena Wilson had requested. *Id.*

The subpoena sought three categories of records relating to tax and financial services performed for:

1. Rick Singer individually;

2. Legal entities that Singer apparently owned, such as The Edge; and

3. The charitable foundation known as the Key Worldwide Foundation, which Mr. Singer administered but did not own.

The Motion to quash the subpoena, ECF No. 1277, lacks colorable support. The Court should deny the Motion and require immediate compliance with the subpoena.

## I.   THERE ARE NO GROUNDS TO QUASH THE SUBPOENA

"On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). The Motion makes plain that

compliance would be neither unreasonable nor oppressive.  Williams & Olds's interests diverge from Singer's,[1] but neither presents convincing concerns.

### A.     Williams & Olds's Interests

The only party required to respond to the subpoena is Williams & Olds.  The Motion concedes that the burden upon Williams & Olds—in time, effort, and expense—will be slight, estimating that the production will consist of only 1,500 pages.  Motion 4.  By way of contrast, the government has collected *millions* of records from various custodians, including more than 10,000 pages from Wilson's accountants alone.  Moreover, it appears that Williams & Olds has already collated the responsive documents for purposes of a production to the California Department of Justice.  *See* Motion 3 n.1.[2]

The only other issue that the Motion raises concerning Williams & Olds is the threat of criminal prosecution under 26 U.S.C. § 7216.  Motion 7.  That threat is illusory, because the statute exempts disclosures of information "pursuant to an order of a court."  § 7216(b)(1)(B).  Here the production would be pursuant to the Court's Order authorizing the subpoena (ECF No. 1174), rendering § 7216 inapplicable.  And if any concern remained, an order denying the

---

[1] Despite Wilson's requests, movants' attorneys have not addressed this obvious conflict of interest.  Williams & Olds is a bystander to the upcoming trial; Singer will be the focal point of the trial and, if he testifies, will be subjected to extensive cross-examination.

[2] The subpoena should *not* be reinterpreted by adding with the word "California" to modify the phrase "Department of Justice."  Motion 3 n.1.  Wilson hoped to minimize the burden on Williams & Olds by excluding any documents in the federal prosecutors' possession (on the assumption that they would produce such documents in discovery).  A production to state authorities, on the other hand, is useless to Wilson's defense.

Motion and requiring compliance with the subpoena would dispel it. *See Mitsui & Co. v. P.R. Water Res. Auth.*, 79 F.R.D. 72, 80 (D.P.R. 1978).[3]

### B.  Singer's Interests

The subpoena is not directed to Singer and imposes no burden on him.  Singer's only stated concern is that, under the California Constitution,[4] he has "right to privacy in his private records."  Motion 8.  But the Motion does not support or specify this concern.  The great majority of the documents responsive to the subpoena are likely (a) records of KWF, a charitable entity Singer did not own; (b) records of businesses with their own, separate legal rights and personhoods; and (c) records containing information that Singer has already disclosed to the authorities, whether through tax filings or otherwise.  Indeed, it does not appear that Singer objected to Williams & Olds's entire production to the California Department of Justice.  *See* Motion 3 n.1.

The Motion thus does not demonstrate an encroachment upon any truly "private" records. Moreover, if necessary, the Court could enter a protective order governing the defense's use of Williams & Olds's documents.

---

[3] The Motion also cites 26 U.S.C. § 7525, but admits that that provision applies only in specific types of noncriminal tax proceedings.  *See* Motion 7 n.4 (quoting § 7525(a)(2)); 3 *Weinstein's Federal Evidence* § 503.12 (2d ed. 2020).

[4] The argument as stated is "misplaced" because state constitutions do not restrict the Court's authority under federal law.  *United States v. Rajaratnam*, 753 F. Supp. 2d 317, 323 (S.D.N.Y. 2011).  In federal criminal cases, privacy- and privilege-related issues are governed by federal common law, which provides that "tax returns are subject to discovery in appropriate circumstances."  *Id.* (citing Fed. R. Evid. 501 and quoting *Heathman v. United States Dist. Court for Central Dist. of California*, 503 F.2d 1032, 1035 (9th Cir. 1974)).  Moreover, even the decisions of California's state courts, under California law, indicate that "[tax] returns are not immune from discovery in criminal proceedings."  *Id.* at 324 (collecting cases).

Singer's professed privacy concerns are also untenable given his role in this prosecution: he is the antithesis of the usual third party—not a spectator, but a star.  The case arises from conduct that Singer thought up, initiated, and executed, often without his clients' knowledge or consent.  Singer regularly assured his clients that his strategies were legitimate, and he himself did not believe he was breaking the law (as he recently told the government).  And yet, to save his own skin, Singer has anchored the prosecution of his clients:  he has fed the government voluminous information (and prospective testimony) in dozens of debriefs; conducted "ruse" phone calls designed to elicit ambiguous but prosecution-friendly recordings; and provided the prosecutors complete access to his telephones, email accounts, laptop, financial data, and other documents.  In all, Singer has given the government hundreds of thousands of records.  His plea for "privacy" in these circumstances would be laughable if it were not so unjust.

Because compliance with the subpoena would be neither unreasonable nor oppressive, the Court should deny the Motion.

## II.   THE SUBPOENA SATISFIES *NIXON*

In his subpoena application, Wilson presented the Court with substantial evidence and argument establishing the subpoena's "(1) relevancy; (2) admissibility; [and] (3) specificity" in accordance with *United States v. Nixon*, 418 U.S. 683, 699-700 (1974).  The Motion contains no additional information pertinent to the *Nixon* analysis, other than the compactness of the responsive universe of documents.  It thus provide no reason for the Court to revisit its determination that *Nixon* is satisfied.  Indeed, rule 17(c)(2)'s motion-to-quash standard focuses solely on the burdens of compliance with the subpoena; it does not contemplate automatic reconsideration of the subpoena application's merits.

Wilson recognizes that courts do sometimes afford subpoena recipients leeway to reargue the *Nixon* determination.  But doing so here, at least in an adversarial setting, would be both unwarranted and inappropriate:

On one side of the scale, the subpoena poses no weighty concerns.  The only party that the subpoena emburdens is Williams & Olds, and the inconvenience there is slight.  The only party raising a privacy issue is Singer, and his concern is vague, unjust, difficult to credit, and in any event solvable via protective order.

On the other hand, revisiting *Nixon* would threaten Wilson's Sixth Amendment rights to effective counsel and compulsory process.  Singer is plainly the force driving the Motion, and he is now a government surrogate.  His role in this prosecution is described *supra*.  When Singer's exculpatory iPhone notes became public, his attorney argued the prosecution's perspective to the media.[5]  And even though defense counsel explained to Singer's attorney that the Court had authorized the subpoena ex parte, Singer's attorney filed a copy of the subpoena on the public docket, simultaneously emailing a duplicate to the U.S. Attorney's Office.

Singer's assertion that he has "no interest in [Wilson's] defense strategy," Motion 6, thus rings hollow.  He is preparing to be the key witness at Wilson's trial (should the government put him on the stand).  He will need ardent support from the government at sentencing.  His dominant interests are assisting the government, seeing the government prevail, and avoiding impeaching revelations on the stand.

---

[5] *See* Matthew Ormseth, *College Admissions Scandal: Notes Raise Questions About Lori Loughlin 'Bribe,'* L.A. Times, Feb. 27, 2020, https://www.latimes.com/california/story/2020-02-27/college-admissions-scandal-singer-notes-loughlin-trial-date.

In these circumstances, disclosure of the reasons for the subpoena would impede Wilson's counsel's ability to cross-examine Singer effectively, and would indirectly apprise the government of Wilson's trial strategy. The result would be the same "unconstitutional limitation on the defendant's right to compulsory process" that justifies ex parte adjudication of rule 17(c) applications. *United States v. Diamont*, No. 05-cr-10154, slip op. at 5 (D. Mass. Nov. 22, 2005) (quoting *United States v. Beckford*, 964 F. Supp. 1010, 1027 (E.D. Va. 1997)).

Wilson therefore asks the Court to deny the Motion on the current record and papers. In the alternative, if additional elaboration concerning *Nixon* is necessary, Wilson asks for leave to address that issue at an ex parte hearing (or by way of an ex parte submission).[6]

---

[6] Wilson assumes that movants' grievance about being subjected to a "Star Chamber proceeding," Motion 6, requires no further response. The Court adjudicated the application ex parte in accordance with well-regarded precedents such as *Diamont* and *Beckford*, *supra*, in order to protect Wilson's Sixth Amendment rights. It is difficult to divine movants' complaint. Wilson does not object, however, to movants receiving a version of the Order authorizing the subpoena (ECF No. 1174), redacted to remove information about the other subpoena application discussed there.

Respectfully submitted,

John Wilson,

By his Counsel,

/s/ Michael Kendall
Michael Kendall (BBO # 544866)
Yakov Malkiel (BBO # 689137)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com
yakov.malkiel@whitecase.com

Andrew E. Tomback (pro hac vice)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8428
andrew.tomback@whitecase.com

## CERTIFICATE OF SERVICE

I hereby certify that the above document is being filed through the ECF system, which will serve copies on counsel of record. A copy is also being emailed to movants' counsel.

/s/ Michael Kendall
Michael Kendall