UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.       )<br>)<br>DAVID SIDOO, *et. al.*,       )<br>)<br>)<br>Defendants       ) | Criminal No.: 19-10080-NMG |

**GOVERNMENT'S MOTION TO COMPEL THE PRODUCTION
OF DOCUMENTS BY THE UNIVERSITY OF SOUTHERN CALIFORNIA
IN RESPONSE TO RULE 17(c) SUBPOENA**

The government respectfully moves the Court for an order compelling the University of Southern California ("USC") to produce documents in response to a subpoena issued pursuant to Federal Rule of Criminal Procedure 17(c), commanding the production of all documents produced by USC to any defendants in this case. Although USC has advised the government that it has no substantive objection to the subpoena, it has declined to respond in the absence of a court order due to the defendants' contention that USC's production of the requested materials would violate their work-product privilege. The defendants' position – that the mere production of USC materials to the defense somehow converts them into the defendants' work product – finds no support in the law of this or any other circuit. For this reason, and the reasons set forth below, the government seeks an order compelling USC to produce the subpoenaed documents.

**RELEVANT BACKGROUND**

Counsel representing certain defendants in this case have successfully moved, on an *ex parte* basis, for multiple Rule 17(c) subpoenas directed to USC requesting voluminous documents. *See, e.g.,* Dkt. Nos. 532, 704, 725, 726, 809. On June 15, 2020, the government served USC with a Rule 17(c) subpoena commanding the production of all documents USC produces to the defendants. The government advised counsel for USC that it does not seek the defendants'

subpoenas themselves, nor does it seek to have the document production organized by defendant, or by responsiveness to any particular defense request. Rather, the government simply seeks the documents USC produces, which counsel for USC has advised exceed ten thousand pages.[1]

On June 23, 2020, counsel for certain defendants sent a letter to USC, a copy of which is attached hereto as Exhibit A, objecting to USC's production of the subpoenaed materials to the government on the basis that the documents are subject to work-product protection. Specifically, the defendants contend that the government's subpoena "constitutes an impermissible end-run around the work product doctrine" because "the requests in the [defendants'] subpoenas would reveal defense counsel's impressions of the case and possible trial strategies" and, by requesting the documents sought pursuant to those requests, "the government is essentially seeking a window into those mental impressions and potential defense trial strategy." Ex. A. at 1. As a result, USC has declined to respond to the government's subpoena absent a court order.[2]

---

[1] Based on discussions with counsel for USC, it is the government's understanding that USC and the defendants have been negotiating in an effort to tailor the defendants' requests and limit the volume of materials to be produced. Nevertheless, even USC's productions to date have been voluminous. While the productions likely include some documents USC previously produced to the government (and which the government thereafter produced to the defendants), USC has indicated that the productions also include documents that it has not previously produced, and that, accordingly, neither the government nor the defendants have presumably ever seen.

[2] The defendants do not themselves have standing to move to quash the subpoena because they cannot viably assert a claim of privilege over documents they do not possess, did not create, and have never seen. *See, e.g., Liberty Media Holdings, LLC v. Swarm Sharing Hash File*, 821 F. Supp. 2d 444, 450 (D. Mass. 2011) (Young, J.) (citing cases for the "general rule…that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought", but noting that "[t]he exception for claims of privilege does not apply here as the moving defendants have not asserted (*nor could they viably assert*) any claim of privilege relating to the requested information") (emphasis added) (internal quotation marks and further citation omitted).

**ARGUMENT**

    A.  <u>Applicable Law</u>

"The work product doctrine protects against disclosure of materials that a party, her attorney, or her representative prepares in anticipation of litigation, although it does not typically extend to the underlying facts contained within those materials." *In re Grand Jury Subpoena*, 220 F.R.D. 130, 141 (D. Mass. 2004) (further citations omitted). "Most courts distinguish between 'opinion' work product, which includes 'materials that contain the mental impressions, conclusions, opinions, or legal theories of an attorney,' and 'ordinary' work product, which includes everything else that is eligible for protection as work product, and accord greater protection to the former." *Id.* at 144 (further citation omitted). Yet "not every item which may reveal some inkling of a lawyer's mental impressions, conclusions, opinions, or legal theories is protected as opinion work product. Were the doctrine to sweep so massively, the exception would hungrily swallow up the rule." *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1015 (1st Cir. 1988) ("*Dupont Plaza*"). "Some materials do not merit heightened protection because, despite the revelations they contain as to an attorney's thought processes, the lawyer has had no justifiable expectation that the mental impressions revealed by the materials will remain private." *Id.* at 1015–16 (noting that "countless . . . legal documents generated in the ordinary course of litigation" do not merit work-product protection).

    Further, "[t]he privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived." *United States v. Nobles*, 422 U.S. 225, 239 (1975). *See also F.D.I.C. v. Nash*, No. 97-CV-187, 1998 WL 34061514, at *4 (D.N.H. Sept. 25, 1998) ("Disclosure of mental impressions, trial strategy, or other information ordinarily protected as work product to an actual or potential adversary forfeits protection. In addition, disclosure to a

3

third party that substantially increases the likelihood that protected information would be revealed to an adversary forfeits work product protection."). "In determining whether a disclosure is fatally inconsistent with maintaining the privilege, the existence of 'common interests' between the transferor and transferee should be considered." *In re Raytheon Sec. Litig.*, 218 F.R.D. 354, 359–60 (D. Mass. 2003). *See also Nash*, 1998 WL 34061514, at *4 (noting that "[t]o share work product information without risk of forfeiture, the transferor and transferee must share common interests in the litigation against a common adversary"). The party invoking the work-product privilege bears the burden of proving that it applies and has not been waived. *In re Raytheon Sec. Litig.*, 218 F.R.D. at 357.

B. The Work-Product Privilege Does Not Extend to the Subpoenaed USC Documents

USC should be compelled to respond to the government's Rule 17(c) subpoena despite the defendants' contention that the documents are entitled to work-product protection. USC itself is not asserting work-product privilege over the documents, and the defendants' contention that *their* privilege is implicated is meritless. While USC is producing the documents to the defendants in response to defense *subpoenas*, the documents were not *prepared* by the defendants or their attorneys or agents, much less in anticipation of litigation. *See, e.g., Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1, 1991*, 959 F.2d 1158, 1166–67 (2d Cir. 1992) ("The attorney-work-product doctrine generally does not shield from discovery documents that were not prepared by the attorneys themselves, or their agents, in the course of or in anticipation of litigation."). Instead, the defendants claim that by seeking the documents produced to them by USC in response to their subpoena requests, the government is attempting to gain insight into the requests themselves (and from the requests, into the defendants' trial strategy). That is not true.

The government is not seeking copies of the Rule 17(c) subpoenas the defendants issued to USC, or access to any relevancy or other arguments the defense made to the Court in support of their motions for those subpoenas. Nor will the government be able to gain insight into whatever subset of the USC materials the defendants may (or may not) utilize in preparing for trial, or in the course of trial (other than whatever documents they later designate as exhibits). Rather, the government is simply requesting copies of *all* documents USC produces to the defendants. Given that the defendants have never even seen many of those documents, and therefore cannot possibly know what they say, and the fact that USC's response to the defendants' various subpoenas is voluminous – measuring thousands of pages – any argument that their production would reveal the defendants' trial strategy or anticipated defenses is without merit. *Cf. Sporck v. Peil*, 759 F.2d 312, 315 (3d Cir. 1985) (finding that a subset of materials selected by counsel to prepare his client for a deposition merited protection because "[i]n selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case"); *United States v. Horn*, 811 F. Supp. 739, 747 (D.N.H. 1992) (finding that the work-product privilege was implicated where the government secretly directed a copy clerk to make a duplicate set of some 22 documents that defense counsel selected from approximately 10,000 pages of discovery materials because such selection – which was for the purpose of impeaching a key government witness and was specifically related to other defense tactics, strategies, and problems – involved a "high degree of selectivity . . . [that] clearly reflected the thought processes of defense counsel"), *rev'd in part*, 29 F.3d 754 (1st Cir. 1994).³

---

³ Notably, courts in this and other circuits have made clear that the so-called "*Sporck* exception" – extending work-product protection to third-party documents selected and compiled by counsel from a larger group of previously produced materials already in the possession of the requesting party – is a narrow one that "depends upon the existence of a real, rather than speculative, concern that the thought processes of the client's counsel in relation to pending or

5

There is no support for the proposition that a third party, by producing to the government documents it has produced to the defense, infringes on the defense's work-product privilege. The defendants fail to explain in their letter to USC how such production will reveal defense thought processes or trial strategy. The mere fact that a third party produces documents to defendants reveals little, if anything, about (1) what the defendants requested from the third party, (2) which, if any, of those documents the defendants might find of interest, (3) how, if at all, any of the documents might relate to a defense strategy, or (4) whether, if at all, anything that is revealed about that strategy even matters.

First, the fact that USC has produced documents in response to the defendants' subpoenas does not reveal the contours of whatever requests the defendants made. The nature of document productions is that they are often over-inclusive, under-inclusive, or altogether nonresponsive. That is all the more true where, as here, the response measures in the thousands of pages. The defendants have not sought one or two specific documents from USC. They have, it seems, made requests in response to which USC has produced and will continue to produce thousands of pages of documents, whose content the defendants cannot know. And even if the government were to glean something about the nature of the defendants' document requests from the documents USC

---

anticipated litigation would be exposed." *Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1, 1991*, 959 F.2d at 1166–67 (quoting *Gould Inc. v. Mitsui Mining & Smelting Co.*, 825 F.2d 676, 680 (2d Cir. 1987)) (internal quotation marks omitted); *see also Dupont Plaza*, 859 F.2d at 1015 ("Whatever heightened protection may be conferred upon opinion work product, that level of protection is not triggered unless disclosure creates a real, nonspeculative danger of revealing the lawyer's thoughts."). In any event, the *Sporck* exception does not apply here, where defense counsel do not seek protection over a subset of documents they have selected and compiled from the government's productions. Rather, the defendants seek to extend work-product protection to all documents produced by a third-party victim, many of which are *not* in the possession of the government, and which neither the defendants nor the government have ever seen.

6

produces, document requests are not, themselves, work product and, do not, by themselves, reveal anything about trial strategy.

Further, the documents USC produces might, or might not, be helpful to the defendants and might, or might not, support whatever defenses they pursue. The defendants cannot know, in advance of receiving the documents, what they show. And the mere production of documents by a third party does not reveal anything about what, if any, information within those documents the defense might, or might not, find useful to their trial preparation. The government will have no way of knowing which, if any, of the voluminous documents produced by USC the defendants intend to use at trial (save for any they later mark as exhibits), what inferences defense counsel may draw from them, or which documents defense counsel believe support or undermine their defense strategy.

Finally, even if it were possible for the government to glean, merely from looking at USC documents, some insight into the defendants' trial strategy, there is no reason to believe that any such insight would be meaningful, or materially different from the strategy the defense has already described in the course of these proceedings. Already, the defendants' discovery requests to the government, and their public filings and statements at hearings in this case, have laid bare a strategy to discredit USC and paint the university as a knowing participant in, rather than a victim of, the charged bribery and fraud scheme. *See, e.g.,* Dkt. No. 801 (citing as one of defendant Zangrillo's defenses the theory that "USC is not a victim of any money or property fraud, having instead welcomed donations and the admission of non-athletes supported by the Athletic Department"); Dkt. No. 805 (in which defendant Wilson seeks evidence regarding USC's ordinary practices and guidance to "contradict[] the government's theory that USC was defrauded into admitting Wilson's son; or that any inaccurate disclosure to USC relating to Wilson's donation or

his son's application were 'material'"); Dkt. No. 703 (in which defendant McGlashan seeks "evidence that USC was not the victim of fraud," including any "documents or witness statements showing that USC was familiar with Singer and his method of getting students admitted to USC"). The defendants provide no basis to believe that, even if the documents produced to them by USC were somehow indicative of a defense strategy, such indication would be any more telling, or any more specific, than the positions they have already advanced publicly.

In sum, there is no support for the contention that USC's compliance with the government's subpoena will reveal the defendants' trial strategy or otherwise compromise their defense. There is, accordingly, no basis to conclude that documents USC produces are subject to the defendants' work-product privilege and no basis for their demand that USC withhold these documents, and the factual information within them, from the government.

C. Any Applicable Work-Product Privilege Has Been Waived

Even if the documents produced by USC to the defendants properly fell within the scope of the defendants' work product – which they do *not* – the defendants have waived any such privilege by issuing document requests to USC, a third party *victim* of the defendants' fraud and bribery scheme, with interests adverse to theirs. *See Nash*, 1998 WL 34061514, at *4 ("Disclosure of mental impressions, trial strategy, or other information ordinarily protected as work product to an actual or potential adversary forfeits protection."). In such circumstances, even to the extent the work-product privilege conceivably extended to the defendants' document requests, or the documents they obtain from USC, the disclosure of those requests to USC, the victim of the alleged crimes and a party with whom the defendants do not share common interests, "is fatally inconsistent with maintaining the privilege." *In re Raytheon Sec. Litig.*, 218 F.R.D. at 359–60. Indeed, it would be a perverse result to hold that a party that considers itself a victim of the

defendants' crimes is prohibited by law from producing to the government documents it is producing to the individuals who allegedly perpetrated those crimes against it.

In similar circumstances, Judge Bowler *rejected* a defendant's request that the government be prevented from obtaining third-party documents requested by defense counsel, based in part on the conclusion that any applicable work-product privilege had been waived. *See United States v. Ackerly et al.*, 16-CR-10233 (Nov. 4, 2016 Margin Order). The court found it "debatable" whether there could be a justifiable expectation of privacy in information regarding defense counsel's document requests to a third party sufficient to warrant classification of such requests as opinion work product. *Id.* The court further found that defense counsel had failed to show that his decision to request a group of documents revealed his mental impressions or constituted even the less protected category of ordinary work product. *Id.* Because the documents themselves were not work product and the mere production of those documents by the third party would "not reveal the contours" of defense counsel's requests, they did not merit work product protection. *Id.* Finally, the court found that by providing the information – that is, the defense requests – to the third party, the defendant had waived any privilege. *Id.*[4]

    D.  The Government Is Entitled to the USC Documents Produced to the Defendants

By allowing the defendants to issue Rule 17(c) subpoenas to USC, this Court has apparently already decided that the documents USC produces in response to those subpoenas are relevant to this case. And the government has no alternative source for the materials other than USC. Accordingly, the defendants' demand that USC withhold the documents from the government improperly interferes with the government's ability to prepare for trial and likewise

---

[4] The defendant objected to Judge Bowler's order, but the District Court did not decide the issue because the defendant apparently did not pursue the subpoena.

interferes with USC's ability to cooperate with the government's investigation by precluding it from producing information it would otherwise provide. Materials relevant to this case, and to the preparation of potential USC trial witnesses, should not be placed off-limits, and third parties should not be inhibited from cooperating with the government's investigation by sharing potentially relevant materials with the government.[5]

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court issue an order compelling USC to produce documents responsive to the government's Rule 17(c) subpoena.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: */s/ Leslie A. Wright*
ERIC S. ROSEN
JUSTIN D. O'CONNELL
KRISTEN A. KEARNEY
LESLIE A. WRIGHT
KARIN M. BELL
STEPHEN E. FRANK
Assistant United States Attorneys

---

[5] The defendants note in their letter to USC that the government will receive the documents they designate as part of their cases-in-chief pursuant to their reciprocal discovery obligations. But the government is entitled to the full set of documents USC produces, not just those that the defendants choose to mark as exhibits. Moreover, the defendants' argument is at odds with their contention that the full set of materials would reveal their trial strategy.

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: June 26, 2020 */s/ Leslie A. Wright*
Leslie A. Wright