## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

v.                                                    Case No. 19-cr-10080-NMG

DAVID SIDOO et al.,

Defendants.

## OPPOSITION TO GOVERNMENT'S MOTION TO COMPEL OF DEFENDANTS ELISABETH KIMMEL, GAMAL ABDELAZIZ, MARCI PALATELLA, <u>JOHN WILSON, AND HOMAYOUN ZADEH</u>

The Government has moved to compel the University of Southern California ("USC") to produce documents in response to a subpoena duces tecum. ECF No. 1346. Defendants Elisabeth Kimmel, Gamal Abdelaziz, Marci Palatella, John Wilson, and Homayoun Zadeh (the "Objecting Defendants") oppose the motion to compel. The Government's subpoena is both (1) an attempt to obtain improper discovery and (2) an unprecedented incursion into protected areas of the defense's trial preparation and strategy. The Court should therefore deny the motion to compel in order to enforce Fed. R. Crim. P. 17(c), and to safeguard the rights of the Objecting Defendants under the Sixth Amendment, the Federal Rules of Criminal Procedure, and the work-product doctrine. *See* Sections I and II, below. The Objecting Defendants have not waived those rights, *see* Section III, and have standing to assert them. *See* Section IV.

## ARGUMENT[1]

### I.     The Court Appropriately Authorized The Objecting Defendants To Serve Rule 17(c) Subpoenas On USC Upon An *Ex Parte* Showing Of Relevance, Admissibility, And Specificity.

All of the Objecting Defendants served Rule 17(c) subpoenas on USC. To obtain leave to do so, they were required to demonstrate relevance, admissibility, and specificity. *United States v. Castro-Ward*, 385 F. Supp. 3d 156, 159 (D.P.R. 2018), citing *Stern v. United States Dist. Court*, 214 F.3d 4, 17 (1st Cir. 2000). The Court allowed counsel for the Objecting Defendants to make that showing on an *ex parte* basis.

This was appropriate. "Since a defendant seeking pre-trial production must make a demonstration of relevancy, admissibility and specificity…, requiring that defendant share the showing with the government would effectively force the defendant to reveal his or her theory of

---

[1]      The factual statements in this memorandum are supported by sworn declarations filed by counsel for several Objecting Defendants. The declarations have been filed *ex parte* and under seal with the Court's permission. ECF No. 1362 (July 7, 2020).

the case." *United States v. Tomison*, 969 F. Supp. 587, 593-94 (E.D. Cal. 1997); *see also United States v. Beckford*, 964 F. Supp. 1010, 1027 (E.D. Va. 1997) ("If the motion could never be made *ex parte*, the defendant would, in some cases, be forced to reveal his trial strategy, witnesses' identities or his attorney's work-product in order to secure the issuance of a pre-trial subpoena."); *United States v. Reyes*, 162 F.R.D. 468, 470 (S.D.N.Y. 1995) ("If a full adversary hearing was required to obtain a subpoena *duces tecum*, a party would be forced to reveal [its trial strategy or witness list] to the opposing side, a result which would occur even if a court declined to issue the subpoena.").

An interpretation of Rule 17(c) that "would require the defendant to divulge his or her theory of the case as a prerequisite for pre-trial production," *Tomison*, 969 F. Supp. at 592, would have two unacceptable effects. First, it would "discourage the defendant from using the Rule in the first place," and thus could "defeat the Rule's goal of facilitating the speed and efficiency of trial." *Id.* Second, and much worse, it would impose a "constitutionally-prohibited 'Hobson's choice'" on defendants with respect to the issuance of pre-trial document subpoenas. *Beckford*, 964 F. Supp. at 1027. Because "Rule 17(c) implements the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in his favor," *In re Martin Marietta Corp.*, 856 F.2d 619, 621 (4th Cir. 1988), "[f]orcing any defendant to confront the choice between issuing a pre-trial subpoena duces tecum and disclosing his defense to the Government places an unconstitutional limitation on the defendant's [Sixth Amendment] right to compulsory process." *Beckford*, 964 F. Supp. at 1027; *see also Tomison*, 969 F. Supp. at 594; *United States v. Daniels*, 95 F. Supp. 2d 1160, 1163 (D. Kan. 2000); *United States v. Diamont*, No. 1:05-cr-10154 (D. Mass. Nov. 22, 2005) (granting defense motion to proceed *ex parte*). *Cf. United States v. Kravetz*, 706 F.3d 47, 53 and n.4 (1st Cir. 2014) (denying journalist's request for access to sealed Rule 17(c)

subpoena and related materials: "there is scant value and considerable danger in a rule that could

result in requiring counsel to a criminal defendant to prematurely disclose trial strategy").

## II.   The Government's Subpoena Violates Rule 17(c), And Enforcing It Would Defeat The Purpose Of The Rule, Punish The Objecting Defendants For Exercising Their Sixth Amendment Rights, And Deny Them The Protection Of The Work-Product Doctrine.

Although the Government knew that the defendants were using *ex parte* procedure to

subpoena documents from USC and others, *see* ECF No. 426 (Zangrillo motion to proceed *ex parte*

on subpoena to USC), ECF No. 731 (Colburn motion to proceed *ex parte* on subpoenas to College

Board and Education Testing Service), it offered no contemporaneous objection. Instead, it bided

its time. During this period several other Objecting Defendants also disclosed trial strategy and

work product on an *ex parte* basis in the course of obtaining authorization to subpoena documents

from USC.

Only then did the Government act. On June 15, 2020, it sent its own subpoena to USC,

broadly demanding "all documents USC produces to the defendants." ECF No. 1356 at 1.[2]

Informed of this request by USC, the Objecting Defendants told counsel for the University (1) that

because the Government knew nothing about the content of the Defendants' subpoenas, its demand

for "all documents" produced by USC was overbroad, and (2) that obtaining documents in this

manner would subvert the work-product doctrine by enabling the Government to deduce the nature

of the defendants' requests—and the beliefs and mental impressions that went into making those

---

[2]     The Government did not attach its subpoena to the motion to compel. The motion variously describes the subpoena as "commanding the production of all documents produced by USC to any of the defendants in this case," "commanding the production of all documents USC produces to the defendants," and "simply seek[ing] the documents USC produces" to the Defendants. ECF No. 1346 at 1-2. USC has informed the Objecting Defendants that the Government's subpoena demands "all documents produced by USC" to the Defendants and that, since the "request is continuing," the subpoena also covers any documents USC may produce to the Defendants in the future. ECF No. 1346-1.

requests—from the contents of USC's productions. ECF No. 1346-1 (Letter from Cory Flashner to Douglas Fuchs). After receiving the letter, USC declined to respond to the Government's subpoena absent a court order, ECF No. 1346 at 2, and the Government moved to compel.

### A.    The Government Subpoena Is An Improper Use Of Rule 17(c).

The Government has massive investigatory powers and has used them to their full extent in this prosecution. It cannot now use Rule 17(c) to backfill the gaps in its pre-indictment investigation. A Rule 17(c) subpoena is "an instrument intended exclusively for trial or a formal hearing." *United States v. Pereira*, 353 F. Supp. 3d 158, 160 (D.P.R. 2019). The Rule "was not intended to provide an additional means of discovery." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951).

The Government's subpoena violates this prohibition. The blanket demand for all documents produced by USC to the Defendants is non-specific and patently overbroad: the Government knows nothing about the documents it has subpoenaed from USC except that the Objecting Defendants asked for them first. The fact that the Defendants sought and received documents that are relevant and admissible for *their* purposes, however, does not make them relevant or admissible from the Government's perspective, and the Government has yet to explain how it might legitimately make use at trial of any of the documents it seeks from USC.

Insofar as the Government may actually have any interest in the contents of the documents themselves, the only inference that can rationally be drawn about the purpose of the Government's subpoena is that the prosecution wants to poke around in USC's responses to the Objecting Defendants' subpoenas "to see what may turn up." *Id.* at 221. Presumably, the Government hopes to find not just documents that the Objecting Defendants plan to use in support of their case in chief (which the Government should receive only in due course, Fed. R. Crim. P. 16(b)(1)(A)), but

also documents that the Objecting Defendants may ultimately use for cross-examination, which the Government is not entitled to receive unless and until the Defendants use them for that purpose.

### B.     The Government Subpoena Infringes Rights Protected By The Sixth Amendment, Rule 17(c), And The Work-Product Doctrine.

There is, of course, another possible motivation for the Government subpoena: that the prosecution is less interested in the *contents* of the documents that USC *produces* to the Objecting Defendants than in the *identity* of the documents that the Objecting Defendants have *asked* USC to produce. The Government's subpoena is therefore doubly objectionable. Not only does it serve as an improper discovery device, but it functions as a vehicle for the discovery of materials that the Objecting Defendants obtained from USC, with the Court's permission, through an *ex parte* procedure.

By allowing this procedure, the Court enabled the Objecting Defendants to obtain documents from USC for pre-trial inspection without having to disclose to the Government the elements of trial strategy and work product that shaped their subpoenas and justified their requests for judicial permission to serve them. At the same time, the Court enabled Rule 17(c) to function as it was intended to function, without exposing the Objecting Defendants to a "constitutionally-prohibited 'Hobson's choice'" of either revealing trial strategy and work product or foregoing their Sixth Amendment right to compulsory process. *Beckford*, 964 F. Supp. at 1027.

Now, of course, the Objecting Defendants lack even a Hobson's choice. Relying on the assurance of confidentiality provided by the use of *ex parte* procedure, they have exercised their Sixth Amendment rights and disclosed their trial strategy and work product to the Court and USC. If the Government enforces its subpoena, it will get an inside view as well. This is because the Objecting Defendants (unlike the Government) complied with the specificity requirement of Rule 17(c). Their subpoenas made targeted requests for documents relating to particular people, entities,

policies, activities, and events. Crafting the subpoenas took considerable effort on the part of counsel for the Objecting Defendants, and those efforts were directed at shaping USC's response to focus on matters as to which defense counsel sought evidentiary support for use at trial.

The Objecting Defendants' subpoenas, in other words, are a map of their lawyers' priorities with respect to USC. Even if the Government never sees the subpoenas themselves, it will have little trouble recreating that map after it examines the documents that USC produced to the Objecting Defendants, and gleans from them the matters on which the defense has focused. Indeed, given the scope of the Government's subpoena, it is difficult to imagine what use the prosecution could make of USC's response *other than* to reverse-engineer a picture of the defense team's evidentiary strategy. Any USC documents the Government does not already have are ones that the prosecutors chose not to obtain because they did not think the documents would help their case. Even if that were not so, if USC has additional documents the Government actually wants for legitimate trial purposes, the prosecution can obtain them by serving an adequately-specific Rule 17(c) subpoena.

Enforcing the Government's subpoena in this case will deter defendants in future cases from employing Rule 17(c) even with *ex parte* protection. This will in turn "tend to encourage the defendant to wait until trial to seek production of documents and evidence," and to "defeat the Rule's goal of facilitating the speed and efficiency of trial." *Tomison*, 969 F. Supp. at 593. More immediately, and more importantly, it will punish the Objecting Defendants for using Rule 17(c) to exercise their Sixth Amendment rights by effecting a *post hoc* deprivation of the assurance of confidentiality on which they acted when they obtained judicial permission to issue their subpoenas on an *ex parte* basis.

Enforcing the Government's subpoena will also license an infringement of the work-product privilege. The work-product doctrine holds that:

> Proper preparation of a client's case demands that [a lawyer] *assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy* without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, *mental impressions, personal beliefs, and countless other tangible and intangible ways....*

*Hickman v. Taylor*, 329 U.S. 495, 511 (1947) (emphasis added).

Work product includes any "intangible material which reflects an attorney's efforts at investigating and preparing a case, including one's pattern of investigation, assembling of information, determination of the relevant facts, preparation of legal theories, [and] planning of strategy...." *In re Grand Jury Subpoena Dated Nov. 8, 1979*, 622 F.2d 933, 935 (6th Cir. 1980). The selection of specific, relevant, and admissible documents for potential use in litigation is one of the "countless … intangible" ways that an attorney's work product can manifest itself. *See Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) (selection and compilation of documents by counsel in preparation for pretrial discovery "falls within the highly-protected category of opinion work product"); *see also Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 1, 4 (D.D.C. 2004) ("The federal courts also protect work product even if it has not been memorialized in a document").

So, for example, in *United States v. Horn*, 811 F. Supp. 739 (D.N.H. 1992), the District Court (1) ruled that the work-product doctrine protected a criminal defense lawyer's selection of documents for copying from the larger set of documents subpoenaed by the grand jury and in the Government's possession, *id.* at 745-47, and (2) held that the Government breached the work-

product privilege when it instructed the custodian of the documents to provide the Government with copies of the documents selected by defense counsel. *Id.* at 750-51.[3]

*Horn* puts the lie to two of the Government's arguments: (1) that the issue here is whether the USC documents themselves "are entitled to work-product protection," and (2) that the work-product doctrine "generally does not shield from discovery documents that were not prepared by the attorneys themselves." ECF No. 1346 at 4, quoting *Matter of Grand Jury Subpoenas Dated Oct. 22, 1991 & Nov. 1, 1991,* 959 F.2d 1158, 1166-67 (2d Cir. 1992). In *Horn*, the documents selected by defense counsel for copying were generated by third parties and produced to the grand jury, and were already in the Government's custody when defense counsel inspected them. 811 F. Supp. at 741. The physical documents may not have been defense work product, but that was not the issue; the question was whether defense counsel's selection of those documents was an intangible manifestation of their work product and entitled to protection as such.

Like the defendants in *Horn,* the Objecting Defendants do not maintain that the documents in USC's possession are themselves the work product of defense counsel. What the Defendants object to, rather, is the revelation of intangible work product entailed by the production of those documents *as* the set of "all documents USC produces to the defendants." ECF No. 1346 at 1. The Second Circuit case cited by the Government for the proposition that "third-party documents" are "generally" not work product, *id.* at 4, drew precisely that distinction; after stating the general rule, it noted that the privilege should nevertheless apply where the documents have been requested

---

[3]     Among other sanctions, the District Court ordered the Government to pay fees and costs to the defense. On appeal, the First Circuit reversed that sanction on sovereign immunity grounds, but it agreed with the District Court that the prosecution had "committed egregious acts of prosecutorial misconduct" by deliberately obtaining access to the documents selected by defense counsel. *United States v. Horn*, 29 F.3d 754, 770 (1st Cir. 1994).

"with the precise goal of learning what the opposing attorney's thinking or strategy may be." *Matter of Grand Jury Subpoenas Dated Oct. 22, 1991 & Nov. 1, 1991,* 959 F.2d at 1166.

The work-product doctrine applies in criminal cases. In fact, although the doctrine "most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital." *United States v. Nobles*, 422 U.S. 225, 238 (1975). The "selection process" rationale applied in cases like *Sporck* and *Horn* has an especially vital role to play in this case. The motion to compel implicates highly-protected opinion work product for reasons already stated: the documents produced by USC reflect the documents requested by the Objecting Defendants; defense counsel shaped their document requests to satisfy the specificity requirements of Rule 17(c); and creating such targeted requests obliged defense counsel to "assemble information" and to "sift what [they considered] to be the relevant from the irrelevant facts" in light of both their "legal theories" and their "strategy" for trying the case. *Hickman*, 329 U.S. at 511. The Government, meanwhile, does not even pretend that this case involves the kind of "extraordinary circumstances" which might justify the discovery of opinion work product. *Oklahoma v. Tyson Foods, Inc.*, 262 F.R.D. 617, 627 (N.D. Okla. 2009); *see also Calandro v. Sedgwick Claims Mgmt. Servs.*, 2015 U.S. Dist. LEXIS 163622, at *4 (D. Mass. Dec. 7, 2015) (opinion work product is discoverable only if the attorney's mental impressions are at issue and the need for the material is compelling).

## III.   The Objecting Defendants Have Not Waived Their Rights.

The Government contends that the Objecting Defendants "waived" their rights by disclosing their work product to USC. ECF No. 1346 at 8-9. This is incorrect. Not every disclosure of work product effects a waiver. *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) ("the mere showing of a voluntary disclosure to a third person…should not

sufficient in itself for a waiver of the work product privilege"). Because the purpose of the doctrine "is to protect material from an opposing party in litigation, not necessarily from the rest of the world generally," disclosures of work product to third parties do not waive the privilege "unless such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary." *Id.*, quoting *GAF Corp. v. Eastman Kodak Co.*, 85 F.R.D. 46, 51-52 (S.D.N.Y. 1979). A disclosure made "in the pursuit of … trial preparation, and not inconsistent with maintaining secrecy against opponents," will therefore "be allowed without waiver of the privilege," *American Tel. & Tel. Co.*, 642 F.2d at 1299, especially when the disclosure occurs under conditions suggesting that the disclosure was made in reliance on a "guarantee of confidentiality." *Id.*, citing *GAF Corp.*, 85 F.R.D. at 52 (no waiver where antitrust litigant disclosed work product to Justice Department and statute barred release of material without litigant's consent); *see also Horn*, 811 F. Supp. at 747-48 (no waiver where "it was not unreasonable" for defense counsel to assume that custodian was not making extra copies of selected documents for the Government).

The Objecting Defendants received just such a guarantee when the Court allowed them to serve their subpoenas to USC on an *ex parte* basis. Nothing in the circumstances indicated that following this Court-approved procedure would be inconsistent with maintaining secrecy from the Government; to the contrary, maintaining secrecy from the Government was the Defendants' stated purpose for using *ex parte* procedure. *See, e.g.*, ECF No. 427 at 1 (defendant Zangrillo moving for permission to use *ex parte* procedure "in order to prevent the unwarranted and premature disclosure of … trial strategy and trial preparation").

The Government purports to find significance in its characterization of USC as a "victim" in this case, ECF No. 1346 at 8-9, but the fact remains that USC is a witness here, not a party and

not a litigation adversary. Moreover, USC's behavior with respect to both the defense subpoenas and the Government's subpoena *has* been consistent with the Defendants' goal of maintaining secrecy from the prosecution. USC has not given any defense subpoenas to the Government, and it has respected the Objecting Defendants' invocation of the privilege by "declin[ing] to respond to the government's subpoena absent a court order." ECF No 1346 at 2. Thus, it was reasonable for defense counsel to believe that their work product would not be disclosed to the Government, and no waiver occurred.

## IV.    The Objecting Defendants Have Standing.

In a footnote, the Government contends that the "defendants do not themselves have standing to move to quash the subpoena because they cannot viably assert a claim of privilege over documents they do not possess, did not create, and have never seen." ECF No. 1346 at 2, n.2. On its face, this argument is limited to standing to "move to quash," *id.*, but lest there be any doubt that the Objecting Defendants have a right to be heard, they will briefly describe the two defects in the Government's standing argument.

First, the standing case cited by the Government held only that a party-opponent lacked standing to assert procedural objections to a third-party subpoena. *Liberty Media Holdings, LLC v. Swarm Sharing Hash File*, 821 F. Supp. 2d 444, 450 (D. Mass. 2011). Judge Young went on to note that a party in the position of the Objecting Defendants *would* have standing to assert substantive objections such as a claim of privilege. *Id.* That was a correct statement of the law. To obtain standing to challenge a subpoena, parties like the Objecting Defendants need only have "sufficiently identified," *Barkan v. Dunkin' Donuts, Inc.*, 2008 U.S. Dist. LEXIS 34608, at *4 (D.R.I. Apr. 28, 2008), some "legitimate interests" in the matter. *United States v. Cartagena-Albaladejo*, 299 F. Supp. 3d 378, 384 (D.P.R. 2018). "The personal right or privilege claimed need

12

not be weighty: parties need only have '*some* personal right or privilege in the information sought' to have standing to challenge a subpoena to a third party." *DeGrandis v. Children's Hosp. of Boston,*, 203 F. Supp. 3d 193, 198 (D. Mass. 2016)  (citation omitted). A claim of work-product privilege will suffice. *See, e.g., United States Seal Int'l v. Black Dawg Franchise Group*, 2014 U.S. Dist. LEXIS 204394, at *4 (D.N.H. Feb. 26, 2014).

The fact that the Government disagrees with the Objecting Defendants about the applicability of the work-product doctrine does not deprive the Defendants of standing to object to the motion to compel and to seek judicial protection of their attorneys' work product and trial strategy. The Government claims that the Objecting Defendants lack standing "because they cannot *viably* assert a claim of privilege," ECF No. 1346 at 2, n.2 (emphasis added), but this reasoning puts the cart before the horse. Whether the privilege claim "should prevail is a separate question that concerns the merits" of Objecting Defendants' argument, "not [their] standing to bring it." *Williams v. Big Picture Loans, LLC*, 303 F. Supp. 3d 434, 440 (E.D. Va. 2018).

DATED: July 10, 2020                                    Respectfully submitted,

                                                        /s/ Cory S. Flashner
                                                        R. Robert Popeo (BBO # 403360)
                                                        Mark E. Robinson (BBO # 423080)
                                                        Eóin P. Beirne (BBO # 660885)
                                                        Cory S. Flashner (BBO # 629205)
                                                        MINTZ, LEVIN, COHN, FERRIS,
                                                        GLOVSKY AND POPEO, P.C.
                                                        One Financial Center
                                                        Boston, MA 02111
                                                        (617) 348-1605 (telephone)
                                                        (617) 542-2241 (fax)
                                                        rpopeo@mintz.com
                                                        mrobinson@mintz.com
                                                        ebeirne@mintz.com
                                                        csflashner@mintz.com

                                                        *Counsel for Elisabeth Kimmel*

## **CERTIFICATE OF SERVICE**

I, Cory Flashner, hereby certify that on July 10, 2020, this document, filed through the CM/ECF system, will be sent electronically to all registered participants in this matter as identified on the Notice of Electronic Filing (NEF). The sworn declarations filed by counsel for several Objecting Defendants have been filed *ex parte* and under seal with the Court's permission. ECF No. 1362 (July 7, 2020).

*/s/ Cory S. Flashner*
Cory S. Flashner (BBO # 629205)