UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.: 19-10080-NMG |
| | ) | |
| DAVID SIDOO, *et. al.*, | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |

**GOVERNMENT'S [PROPOSED] REPLY IN SUPPORT OF
MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS BY
THE UNIVERSITY OF SOUTHERN CALIFORNIA**

The government respectfully submits this reply in support of its motion for an order compelling the University of Southern California ("USC") to produce documents in response to a Rule 17(c) subpoena commanding the production of all documents produced by USC to any defendants in this case. Defendants Kimmel, Abdelaziz, Palatella, Wilson, and Zadeh oppose the government's motion, claiming that the government is attempting to obtain improper discovery and intrude upon their work-product privilege. *See* Dkt. No. 1374.[1] That is not true. The government simply seeks from USC – a victim of the defendants' alleged crimes and the only source of the requested materials – copies of documents relevant to this case and necessary for trial preparation which have been produced to the defense.

First, there is no merit to the defendants' contention that the government is attempting to utilize Rule 17(c) as an improper discovery device. The government is not requesting discovery from the defendants. The government is seeking USC documents from USC – documents that the university, absent the defendants' objection, would readily produce.

---

[1] As noted in the government's motion, USC has no substantive objection to the subpoena but has declined to respond in the absence of a court order due to the defendants' contention that USC's production of the requested materials would violate their work-product privilege.

Second, the defendants incorrectly assume that, because the Court authorized them to proceed *ex parte* in *subpoenaing* USC, the subpoenaed *documents* themselves are subject to protection. They are not. The defendants conflate what the government is seeking – USC documents – with what it is *not* seeking – copies of the subpoenas the defendants issued, or access to any relevancy or other arguments defense counsel made in support of their motions for those subpoenas. For all of the reasons set forth in the government's motion, the defendants' contention that the production of the former will reveal the latter is incorrect. Indeed, if the USC documents so obviously revealed defense counsel's "map," *see* Dkt. No. 1374 at 7, there would have been little need for the defendants to explain to the Court why they sought the documents in the first place; it would have been obvious from the requests themselves. The fact that the defendants were required to explain their trial strategy to the Court belies their argument that the documents themselves reveal that strategy.

Third, the defendants' reliance on "selection process" cases such *United States v. Horn*, 811 F. Supp. 739 (D.N.H. 1992), and *Sporck v. Peil*, 759 F.2d 312 (3d Cir. 1985), is misplaced. Those cases – which extend work-product protection to documents selected and compiled by counsel from a larger group of previously produced materials *already in the possession of the requesting party* – do not apply here, where defense counsel do not seek protection over a small subset of documents they have selected and compiled from the government's productions but rather over *all* documents they obtain from USC, which to date exceed ten thousand pages, and which include documents counsel themselves have never even seen, and which the government does *not* already possess.

Unlike in *Horn*, the government is not attempting to surreptitiously obtain a duplicate set of certain documents – amounting to 22 pages out of 10,000 documents total – selected and copied

2

by defense counsel "for cross examination, for preparation of defense witnesses, and for use in connection with their trial tactics and strategy." 811 F. Supp. at 741. The government will have no idea, from USC's production, which subset of that voluminous production the defendants *might* seek to utilize in preparing for trial, *might* mark as exhibits or seek to use in the course of cross-examination – and which of those documents they have no intention of using at all. Those documents cannot, therefore, reflect defense counsel's "selection and compilation" of anything. Instead, *once the defendants receive the documents*, defense counsel will presumably review them and make decisions about whether they support possible defenses, whether they should be introduced at trial, whether they should be used for impeachment – or whether they should not be used at all. *Those selections* are attorney work product – not the entire, undifferentiated production itself. There is thus no basis for the defendants' argument that their work-product privilege is implicated here.

Fourth, the defendants insist that they have not waived any applicable privilege because they secured their subpoenas on an *ex parte* basis. Once again, the defendants conflate what the government seeks with what it explicitly does *not* seek. The *ex parte* procedure ensured that the defendants' *briefing* would remain confidential, and that the subpoenas themselves would remain confidential at least until they were served – *not* that the USC documents themselves would suddenly be rendered secret merely by virtue of the fact that USC produced them in response to the subpoenas. The defendants assert otherwise, contending that USC's handling of the subpoenas has been consistent with the defendants' goal of maintaining secrecy from the government. But that is obviously not true. As the defendants are aware, USC has been cooperating with the government since before they were charged. The fact that the university, in the face of the defendants' assertion of privilege, has sought the protection of a court order prior to producing

documents it would otherwise produce voluntarily does not mean that the defendants' privilege claims are valid, or that they did not waive any applicable privilege by subpoenaing a third party that considers itself a victim of their crimes. Indeed, USC and the defendants have engaged in litigation over the defendants' subpoenas, and the defendants have previously argued, in the context of that litigation, that USC's interests are adverse to their own, and have accused the university of acting in bad faith. *See, e.g.,* Dkt. No. 546 at 17 (in which defendant Zangrillo characterizes the affidavit of USC Dean of Admissions Tim Brunold and USC's claims based thereupon as "seriously misleading"). The defendants cannot have it both ways, arguing on the one hand against USC, and on the other that their disclosures to USC are protected work product.

Finally, the defendants contend that the documents they subpoenaed are relevant and admissible for their purposes but not for the government's, even as they concede that they may mark some number of those documents as exhibits, and may use some of them in cross-examination – presumably of USC witnesses. To accept their argument would mean that the government is prohibited from accessing documents maintained by the victim of the alleged crimes, and is rendered unable to prepare USC witnesses for trial with USC's own documents. No court has ever reached such a conclusion.[2]

Accordingly, the government respectfully requests that the Court grant the government's motion and issue an order compelling USC to produce documents responsive to the government's Rule 17(c) subpoena.

---

[2] The defendants' argument would mean that a cooperating victim, or another third party, can be prohibited from disclosing relevant information to the government simply because the defendants sought those documents first. That is not the law.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: */s/ Leslie A. Wright*
    ERIC S. ROSEN
    JUSTIN D. O'CONNELL
    KRISTEN A. KEARNEY
    LESLIE A. WRIGHT
    KARIN M. BELL
    STEPHEN E. FRANK
    Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: July 17, 2020          */s/ Leslie A. Wright*
                                                     Leslie A. Wright