```
 1                  UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS
 2

 3
                                        )
 4   UNITED STATES OF AMERICA,           )
                                        )
 5           Plaintiff,                  )
                                        )  Criminal Action
 6   v.                                  )  No. 1:19-cr-10080-NMG-17
                                        )
 7   JOHN WILSON, et al.                 )
                                        )
 8           Defendants.                 )
                                        )
 9

10

11         BEFORE THE HONORABLE M. PAGE KELLEY
              UNITED STATES MAGISTRATE JUDGE
12

13                      MOTION HEARING
                         VIA ZOOM
14

15                      July 21, 2020
                          3:00 p.m.
16

17        John J. Moakley United States Courthouse
                     One Courthouse Way
18              Boston, Massachusetts 02210

19

20

21

22              Linda Walsh, RPR, CRR
                Official Court Reporter
23        John J. Moakley United States Courthouse
              One Courthouse Way, Room 5205
24             Boston, Massachusetts 02210
                  lwalshsteno@gmail.com
25
```

```
 1    APPEARANCES:

 2    On Behalf of the Defendant John Wilson:

 3         WHITE & CASE LLP
           By: Michael Kendall, Esq.
 4         75 State Street
           Boston, Massachusetts 02109-1814
 5         617-979-9310
           michael.kendall@whitecase.com
 6

 7    On Behalf of the Defendant William Rick Singer and Interested
      Party Williams & Olds, CPAs:
 8
           DONALD H. HELLER, A LAW CORPORATION
 9         By: Donald H. Heller, Esq.
           2638 American River Drive
10         Sacramento, California 95825
           916-974-3500
11         dheller@donaldhellerlaw.com

12         FREEMAN MATHIS & GARY, LLP
           By: Andrew Neil Hartzell, Esq.
13         60 State Street, 6th Floor
           Boston, Massachusetts 02109
14         617-963-5966
           nhartzell@fmglaw.com
15

16

17              Proceedings reported and produced
                 by computer-aided stenography.
18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2          THE CLERK:  Persons granted remote access to
 3   proceedings are reminded of the general prohibition against
 4   photographing, recording, and rebroadcasting of court
 5   proceedings.  Violations of these prohibitions may result in
 6   sanctions, including removal of court-issued media credentials,
 7   restricted entry to future hearings, or denial of entry to
 8   future hearings and such other sanctions, including for
 9   contempt of court, as may be deemed appropriate or necessary by
10   the Court.
11          And so we have the judge here.  So if the parties
12   don't expect anyone else to be joining, I think I'll have the
13   judge come in.
14          And we do have a court reporter with us, as well.  So
15   when you address the Court, if you could identify yourself so
16   the record is clear, that would be great.
17          And after I call the case, I'm just going to ask for
18   counsel to identify themselves on the record, as well.
19          (The Court enters.)
20          THE CLERK:  Today is Tuesday, July 21st, 2020, and we
21   are on the record in Criminal Case Number 19-10080, the *United
22   States versus John Wilson*, the Honorable M. Page Kelley
23   presiding.
24          And would counsel please identify themselves for the
25   record.
```

MR. KENDALL: Good morning, Your Honor. Mike Kendall from White & Case for Mr. Wilson.

THE COURT: Okay. Good morning, Mr. Kendall.

MR. HELLER: Good morning, Your Honor. Donald H. Heller for Mr. Singer and the Williams & Olds accounting company.

THE COURT: Okay. And good morning -- or afternoon to you, Mr. Heller.

MR. HARTZELL: Good afternoon, Your Honor. Neil Hartzell. I'm local counsel for Mr. Singer and for Williams & Olds.

THE COURT: Okay. Good afternoon to you, sir.

So let me just begin by saying that we're here on the Williams & Olds and Mr. Singer's motion to quash, which is 1277 on the docket. And I'll just say, as way of background, that my practice, because of the volume of motions for 17(c) subpoenas in this case, has been to allow motions that are not so -- are you okay? Okay -- have been -- has been to allow motions that are not so blatantly overbroad, and then to see if the parties can work things out; and if not, then I entertain motions to quash.

And I've done this with many of the motions in this case. If I had fewer of them in the case, I might not be doing it this way, but there's just too big a volume of them that have been coming up. So I do want to say, and I've said this

1  to many parties, that the fact that I have allowed a motion
2  does not mean that I will not entertain a motion to quash.
3            And just to kind of cut to the chase here, I've read
4  the parties' filings.  And I do think, Mr. Kendall, that the
5  subpoena is overbroad, and I am going to narrow it to documents
6  that you can specifically point to that have relevance to
7  impeaching Mr. Singer.
8            And I'll just say, what I see from your filing in this
9  is evidence -- documents demonstrating that he put family
10 members on the payroll of his college counseling business.
11           MR. KENDALL:  Your Honor, if I may jump in?
12           THE COURT:  Yes.
13           MR. KENDALL:  That was filed ex parte under seal.
14           THE COURT:  I know.  I don't know how else to do this.
15 Since they've moved to quash, I don't know how else to
16 specifically have you argue what you're entitled to and what
17 you aren't and have my ruling.  So I'm happy to hear you on
18 that.
19           MR. KENDALL:  I understand the difficulty of it, Your
20 Honor.  What I do think may be helpful for all of us is,
21 according to the documents filed by Mr. Singer and Williams &
22 Olds, there's 1,500 pages in the scope of what I've asked for,
23 and it's already been produced to the California authorities.
24 They say California Department of Justice.  I think they meant
25 the California Attorney General.  So there really is no --

1            THE COURT:  Okay.  So I'll just say right now.  The
2    fact that someone has produced something to someone else
3    doesn't mean -- that does not satisfy the *Nixon* criteria, and
4    I've had other defendants in this case appear and say, "I want
5    everything they gave to them," meaning another defendant.  "If
6    it was relevant to them, it must be relevant to me because
7    we're in the same conspiracy," et cetera.  And I'm just not
8    going to allow motions on that basis.
9            So the fact that it may be a small group of documents
10   and the fact that they've produced them to the California
11   Attorney General -- I don't even know why they did that.  I
12   have no information about that.  So, to me, that's not a good
13   reason to order them to turn them over to you.  I don't
14   even -- I have no idea what that was about.
15           MR. HELLER:  You want to know, Your Honor?  This is
16   Don Heller speaking.
17           THE COURT:  Yes.
18           MR. HELLER:  The Worldwide Foundation was a charitable
19   foundation which is monitored by the State Attorney General.
20   So on March 13th, the day after this case was charged, the
21   California Attorney General served the cease and desist order
22   on my office on behalf of -- having represented -- being the
23   lawyer for Mr. Singer.  And they demanded a bunch of financial
24   records, which we produced to them, which the Government
25   already has and I assume was produced in discovery.

1          THE COURT:  So when you say the Government, you're
2    talking not about the California Attorney General but the
3    Government in this case, that's prosecuting this case here in
4    Federal Court in Boston?
5          MR. HELLER:  Yes, because all that the Government has
6    in its possession, all the financial records of the Key
7    Foundation.
8          THE COURT:  Okay.
9          MR. HELLER:  So it's about two million pages, I
10   understand.
11         THE COURT:  So I will say that in his ex parte filing,
12   Mr. Kendall did attach information about very specific
13   questionable things having to do with Mr. Singer's finances and
14   Williams & Olds.  And I am going to allow him to seek a
15   subpoena on that basis.
16         But, Mr. Kendall, you must understand that Mr. Singer
17   is going to see your subpoena, and Mr. Singer is cooperating
18   with the Government.  So whatever I say you're allowed to
19   subpoena is going to be known to him.
20         MR. KENDALL:  I understand.
21         THE COURT:  And I'm going -- unfortunately, I know it
22   infringes on your right to seek discovery tailored to your
23   specific defense.  So if you would rather drop the idea of the
24   subpoena, I'm happy to do that, and I just won't allow any
25   subpoena to be issued.  But if you want this very narrowly

1   tailored request for documents that I think is proper under
2   *Nixon* factors, then I will say it, and then you can issue your
3   subpoena on that basis.
4          MR. KENDALL:  Sure, Your Honor.  Are you going to
5   specify what things we can ask for?
6          THE COURT:  Yes.
7          MR. KENDALL:  Okay.  Then fine.  If you could -- yes,
8   the terms of the subpoena, that's fine, Your Honor.  We would
9   like to proceed.
10         THE COURT:  Okay.  Thank you.  All right.
11         So just for Mr. Heller, and whoever else is opposing,
12  here's what I am proposing to allow Mr. Kendall to subpoena on
13  behalf of Mr. Wilson.  And I'll hear you on this, on this
14  limited amount of documentation.  Okay?
15         Documents demonstrating that Mr. Singer placed family
16  members on the payroll of his college counseling business;
17  documents concerning Mr. Singer receiving $514,000 from his
18  foundation as compensation or loan in about 2017; and documents
19  concerning Mr. Singer's purchase of the Oakland Soldiers Gym.
20         And none of these documents will include documents
21  that have already been provided to the Government in connection
22  with this case.  So you don't have to repeat your Government
23  production, but if you have other documents covered by this,
24  then you must give them to Mr. Wilson's counsel.  And I'm
25  prepared to put this on the docket.

1             And I do think with regard to the dispute over where
2    the subpoena is returnable, Mr. Heller, you're absolutely
3    right.  The Rule requires that the subpoena be returnable to
4    the court.
5             However, in my long experience, about over 20 years
6    now in this court's practice, the practice has been to return
7    it to the lawyer and -- or at least negotiate a return to the
8    lawyer rather than to the courthouse because I do think
9    things -- it can get lost in the clerk's office or whatever,
10   and it's going to go to the lawyer eventually.  So if you want
11   it returnable to the courthouse, that's fine.  We'll take
12   possession of it and then give it to Mr. Kendall.
13             MR. HELLER:  So what I would suggest, the three areas
14   of documents, I will be able to obtain the first item and
15   provide that; the third item, the $514,000, I'm not sure if
16   that's the exact amount of compensation in 2017; and as to all
17   of the documents regarding the Oakland Soldiers Gym, those
18   documents were, I believe, to be turned over in discovery.  And
19   I could see if I could obtain the Bates numbers from the
20   Government -- the prosecutors in this case and provide those
21   Bates numbers.
22             All of these documents were obtained by the
23   Government, not from me but from my -- two of my clients'
24   bookkeepers, and so those documents -- and I'm not sure if
25   there's anything in the Williams & Olds files pertaining to the

1     Oakland Soldiers Gym.  And I will make inquiry, and if they do,
2     provide that.
3              And what I would propose doing with all of the
4     documents would be set a control date.  I will obtain the
5     documents.  I'll serve a set on Mr. Kendall, and then I'll
6     serve a set on Assistant U.S. Attorney Rosen, and if you'd
7     like, I could provide the Court with a set, as well.
8              THE COURT:  So I don't need them.  And you're just
9     being subpoenaed to either send them to the court or to
10    Mr. Kendall.  If you want to hand over a copy to the
11    Government, that's up to you.  You certainly don't -- aren't
12    obligated to do that.  That's just your choice.
13             But I would say, the subpoena is going to
14    Williams & Olds, not to Mr. Singer.  So is there a keeper of
15    records of Williams & Olds who has these documents?
16             MR. HELLER:  Yes, there is, and I will find out if
17    Williams & Olds have any of these documents.  They may, and I
18    will obtain those from Williams & Olds.
19             THE COURT:  Okay.  So I think, given your
20    position -- I mean, do you represent Williams & Olds?
21             MR. HELLER:  I do.  I do.
22             THE COURT:  Oh, I see.  You're not just Mr. Singer's
23    lawyer?
24             MR. HELLER:  Well, I'm Mr. Singer's lawyer, but I
25    represented them in connection with the subpoena duces tecum, a

1    17(b) subpoena, because Mr. Singer has an overarching interest
2    in these documents.  And to prevent them from spending money on
3    an outside a lawyer to represent their interests in something
4    that would be -- I would defend.  So I will get that -- I will
5    get those from Williams & Olds.  And they can find out what
6    they have, and then have the documents Bates numbered and send
7    a copy to Mr. Kendall.
8              MR. KENDALL:  Your Honor --
9              THE COURT:  Yes.  Go ahead, Mr. Kendall.
10             MR. KENDALL:  -- two things.
11             First, the point that you were touching on is
12   Mr. Heller only has stepped in for Williams & Olds for the
13   subpoena.  We have been contacted by the principals of
14   Williams & Olds, and Attorney Hartzell who's also on the
15   conference with us today.  I don't fully understand the
16   situation.  I thought he was separate counsel for
17   Williams & Olds.  We would like someone to certify the
18   production that's not affiliated nor controlled by Mr. Singer,
19   for obvious reasons.  And I think that's not an inappropriate
20   request.
21             MR. HELLER:  Well, I think you spoke to Tom Knox,
22   who's the corporate lawyer for Williams & Olds; am I correct?
23             MR. KENDALL:  I didn't speak with anyone.  I know
24   somebody with the last name "Williams" was responding to some
25   of our communication.  I don't know if it was a Jean

1    Williams --
2             MR. HELLER:  Jamie Williams is the partner in the
3    firm, but I thought you were in contact with Thomas Knox, who's
4    a lawyer with Knox, Anapolsky, and a third party -- a third
5    lawyer.  He had direct communication with you.  That's what he
6    indicated to me.
7             MR. KENDALL:  Then I don't dispute it.  It may not
8    have been with me but somebody from my firm.
9             MR. HELLER:  Okay.  I could ask him to do that.
10            MR. KENDALL:  Okay.  The other thing I wanted to ask
11   Your Honor is I appreciate the three categories you approved.
12            I believe there was a fourth category that our
13   submission documented with particularity, and I'd ask that you
14   could consider if we could have that fourth category added,
15   too.  And the fourth category that we had was Mr. Singer was
16   siphoning out money from these organizations described as
17   business expenses when it was really for his personal benefit.
18            There's a couple of ways -- and, of course, the issue
19   would be we assume that did not appear as income on his tax
20   return, and it's a tax offense for which the Government has not
21   prosecuted him.  What I would like to get is the check
22   registers or checkbooks just to show the expenditures so we can
23   track out the amount of diverted expenses.  We gave you
24   specific examples of such expenses, but I don't think that we
25   got all of them in what we submitted to you.

1           And I would like to get the tax returns to see if he
2    reported this as income or if the Government has allowed to
3    receive a promise, reward, or inducement and not be prosecuted
4    for admitting such income on his tax returns.
5           THE COURT:  So what you're specifically asking for are
6    the expenses that he -- that are the monies he took out of the
7    foundation for his personal expenses?
8           MR. KENDALL:  Certainly the foundation.  We thought,
9    also, the for-profit business might be an issue, as well, but
10   it's really the foundation that's the priority issue, Your
11   Honor, and whether or not they were -- disappeared as income on
12   his tax returns which would create the offense.
13          THE COURT:  I mean, I don't know, without getting
14   really granular, how you're going to show that money he claimed
15   as personal expenses for travel and so on, I presume, for
16   working for these foundations or other businesses was not used
17   for those purposes.
18          MR. KENDALL:  Your Honor, we did show some of that in
19   the application, and I'll disclose the example -- one of the
20   examples we provided to you.  He rented boats in the Bahamas
21   for personal family vacations but called it business meetings,
22   and we were able to document that by listening to his wiretaps
23   describing what he was doing and where he was going and then
24   looking at the expenditure on the books and records.
25          So, yes, we've been able to piece together examples of

1    that, and that's why we'd like to have -- some of the check
2    registers we may already have received from the Government.  I
3    don't know that we received all of them.  So we'd like the
4    check registers to show where the money was spent.  Perhaps the
5    backup, if there is, to the check register, and then to show it
6    doesn't appear on his tax return.
7             It's a clear promise, reward, and inducement not to
8    prosecute him for these tax offenses.  The Government has not
9    disclosed this to us in any of the *Brady* stuff, but we've
10   provided you written documentation in our ex parte submission
11   showing this occurred.
12            THE COURT:  Okay.  So, Mr. Kendall, is it your idea
13   that you would issue another subpoena?  I think Mr. Heller is
14   suggesting you don't need to issue another subpoena, but is it
15   your idea that you would issue another subpoena to
16   Williams & Olds?
17            MR. KENDALL:  I'll do whatever the Court thinks is
18   best.  If you'd like it, I'll reduce it to writing and have a
19   crisp precise description.  We can do that.  However the Court
20   would like us to do it is fine with me.  I mean, if I can work
21   it out with Mr. Heller and not bother the Court with more
22   docket entries and filings that seems to be very efficient and
23   attractive --
24            THE COURT:  Okay.
25            MR. KENDALL:  -- I can do that.  And if we have a

1    disagreement, which I hope we won't, we'll simply come back to
2    you.
3            THE COURT:  Okay.  So I hear you about the information
4    showing that he did not disclose income, and you do have
5    documentation for that, so income that he was using for
6    personal expenses rather than business expenses.  So I will
7    allow you to also ask for that, but I want it to be for a
8    reasonable period of time, okay?  Not for ten years or
9    something.
10           MR. KENDALL:  I understand that.  Obviously, the
11   conspiracy that's been indicted is for, what I agree with you
12   would be an unreasonable amount of time, is 2007 to 2019.
13   We'll look at the evidence and try to squeeze that down to much
14   fewer years, but I want to look at the documents before I
15   promise exactly what's the relevant time frame or most relevant
16   time frame.
17           THE COURT:  All right.  And so, Mr. Hartzell, is he on
18   the call, too?  Are you here?
19           MR. HARTZELL:  I am on the call, Your Honor.
20           THE COURT:  Okay.  Sir, what's your role?
21           MR. HARTZELL:  I'm local counsel for Williams & Olds
22   and Mr. Singer.  I work with Mr. Heller.
23           THE COURT:  Okay.  And you represent both of them?
24           MR. HARTZELL:  That is correct.
25           THE COURT:  Okay.  So I think I'll just -- if it's

1   okay with everyone -- I'm happy to hear Mr. Heller or
2   Mr. Hartzell's opinion of this, but I think, having given you
3   an idea of the parameters of what I will allow, I'm inclined to
4   just let you work together on producing this in a timely,
5   reasonable way, and you can confer back and forth.  And if you
6   have further problems with it, you're welcome to e-mail
7   Ms. Belmont and cc the other side.  And I'll work with you or I
8   can issue a written order.  But I think I'll just have you
9   confer about this.  Is that all right with you, Mr. Heller and
10  Mr. Hartzell?
11          MR. HELLER:  It is.  But I have one comment to make
12  about this.  This all goes to impeachment.  So if Mr. Singer --
13  Mr. Kendall asked Mr. Singer a question, "Did you take money
14  for a Bahama cruise and -- for your personal reasons and then
15  bill it to the foundation for whatever reason?" my
16  understanding of the Rules of Evidence for impeachment is
17  Mr. Kendall is bound by Mr. Singer's answer.  Bringing in
18  extraneous evidence to show that's a lie would be, under the
19  Rules of Evidence, inadmissible, and improper.
20          THE COURT:  Sure.  Let me just say, you can use 17(c)
21  for impeachment evidence.  The fact that the Rules may cut you
22  off from having a mini trial about it if the person wants to
23  deny something, I don't think really affects your ability to
24  get the information, the impeachment information.
25          Also, this does go to the Government's rewards and

1  inducements.  If he is guilty of something that the Government
2  has overlooked or is not interested in, then I think that's
3  another whole line of defense.  So you're right about the Rule.
4  You're absolutely right.  But I still think Mr. Kendall is
5  entitled to get it.
6         But I do agree with you -- your pleading that -- when
7  you say that it needs to be specific and, you know, asking for
8  very targeted documents, and I think that's what we've achieved
9  here this afternoon.
10        So let's see if the parties can work this out.  And if
11 you can't, get in touch with Ms. Belmont, and I'm happy to help
12 you move it along.  And, in the meantime, let's just try to
13 keep things going.
14        MR. KENDALL:  Your Honor, if I may ask one thing.  I
15 think what you're proposing is quite helpful and very
16 constructive.  The one thing I would like to be able to request
17 is that the production comes from James Williams, the partner
18 in the accounting firm.  And that he and his attorney, Tom
19 Knox, certify completeness of the production.  I think it's
20 unfair to Mr. Heller or Mr. Hartzell to ask them to be
21 producing on behalf of one client for impeachment of their
22 other client.
23        I think, obviously, this will be shared with all of
24 the defendants.  We'd all be happier if the CPA, Mr. Williams
25 and his attorney, they're the holders of the documents, so they

1   are the ones that are appropriate to certify the production.
2            MR. HELLER:  And I don't disagree with that.  I
3   think -- and that's very doable.  I've known Tom Knox for 30
4   years.  I'd be happy to do that.
5            THE COURT:  Let's do that because it is a kind of a
6   curious situation here to have the lawyers representing both of
7   the clients.  So I agree with you, Mr. Kendall.  And that's
8   great.  And Mr. Heller agrees, too, so okay.  Mr. Heller?
9            MR. HELLER:  Do you want to set a control date, Your
10  Honor?
11           THE COURT:  Well, I don't want to -- I mean, let's let
12  you talk about this between yourselves before the end of the
13  week, and then why don't we have ten days for production.  And
14  then if you have any issues with the production, Mr. Kendall,
15  let's take a little while longer to work that out, and then
16  we'll hear from you if there's still some dispute.
17           MR. KENDALL:  Great.  Thank you, Your Honor.
18           THE COURT:  Okay.  All right.  Okay.  Well, thank you
19  very much, everyone.
20           MR. HELLER:  Thank you, Your Honor.
21           THE COURT:  Good luck.  All right.  Okay.  Bye-bye.
22           (Adjourned at 3:27 p.m.)
23
24
25

```
 1                CERTIFICATE OF OFFICIAL REPORTER
 2
 3           I, Linda Walsh, Registered Professional Reporter
 4   and Certified Realtime Reporter, in and for the United States
 5   District Court for the District of Massachusetts, do hereby
 6   certify that the foregoing transcript is a true and correct
 7   transcript of the stenographically reported proceedings held in
 8   the above-entitled matter via Zoom, to the best of my skill and
 9   ability.
10                     Dated this 23rd day of July, 2020.
11
12
13                     /s/ Linda Walsh
14                     Linda Walsh, RPR, CRR
15                     Official Court Reporter
```