United States District Court
District of Massachusetts

| | |
|---|---|
| **United States of America,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action No. |
| ) | 19-10080-NMG |
| **Colburn et al,** ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

The government has charged defendants with conspiring with William "Rick" Singer ("Singer") to have their children fraudulently admitted to elite universities by, inter alia, fabricating applications, falsifying academic and athletic credentials, cheating on standardized tests, making payments to corrupt exam proctors and bribing university employees and athletic coaches.

Pending before this Court are three motions by defendant John Wilson ("Wilson" or "defendant"): (1) to sever Wilson's trial from those of his codefendants (Docket No. 992), (2) to dismiss the substantive counts (Docket No. 993), and (3) to strike the allegations concerning the 2018 Conduct as described in the indictment (Docket No. 994).

I.  **Facts**

The facts of this case have been broadly recited in prior orders of this Court, see Docket Nos. 1169 and 1334, but relevant here is the following:

In the spring of 2013, Wilson hired Singer to assist his son in his college application process.  Wilson's son played high school water polo.  Singer communicated with Jovan Vavic ("Vavic"), the water polo coach at the University of Southern California ("USC"), about having Wilson's son accepted to USC as a water polo recruit.  Singer and Vavic planned to have Wilson's son "recruited" as a walk-on in exchange for a "donation" to USC.  Pursuant to that plan, Wilson agreed to donate $200,000 to USC, via Singer's charity, the Key Worldwide Foundation ("KWF") and his for-profit consulting business, The Key.

In addition to the payments, with Wilson's knowledge and at the direction of Vavic, Singer embellished the profile of Wilson's son to include fabricated awards.

Wilson's son was admitted to USC in March, 2014, at which point Wilson wired $100,000 to KWF, $100,000 to The Key and $20,000 to Singer personally.  For tax purposes, Wilson deducted the payments from his reported income as business expenses and a charitable donation.  Upon receipt of the funds, Singer forwarded $100,000 to USC in Wilson's name but kept the remaining $120,000.

The following year, Wilson's son entered USC and joined the water polo team. He left the team one year later due to a purported injury.

In the fall of 2018, Wilson contacted Singer about college opportunities for his twin daughters, including so-called "side door" donations. Shortly after the first conversation between Singer and Wilson about the Wilson twins, Singer began cooperating with investigators.

In subsequent calls and at the direction of law enforcement, Singer told Wilson that his daughters could be "recruited" to the sailing team, even though they were not sailors. Singer told Wilson that they would not have to participate. Later that fall, Singer confirmed that he had secured a "side door" for Wilson's daughters as athletic recruits, one at Stanford and one at Harvard. In response, Wilson's company wired two payments of $500,000 each to KWF.

## II. Discussion

### A. Motion to Sever

#### i. Legal Standard

In considering a motion to sever pursuant to Fed. R. Crim. P. 14, the general rule in the First Circuit Court of Appeals "is that those indicted together are tried together to prevent inconsistent verdicts and to conserve judicial and prosecutorial

3

resources." United States v. DeCologero, 530 F.3d 36, 52 (1st Cir. 2008) (quoting United States v. Soto-Beniquez, 356 F.3d 1, 29 (1st Cir. 2004)).  To overcome the presumption in favor of a joint trial, a defendant must demonstrate "prejudice so pervasive that a miscarriage of justice looms." United States v. Sotomayor-Vazquez, 249 F.3d 1, 17 (1st Cir. 2001) (quoting United States v. Pierro, 32 F.3d 611, 615 (1st Cir. 1994)); see also United States v. O'Bryant, 998 F.2d 21, 25 (1st Cir. 1993) ("[W]hen multiple defendants are named in a single indictment, a defendant who seeks a separate trial can ordinarily succeed in obtaining one only by making a strong showing of evident prejudice.").  Under this stringent standard, the requisite showing of prejudice "means more than just a better chance of acquittal at a separate trial." DeCologero, 530 F.3d at 52 (quoting United States v. Martinez, 479 F.2d 824, 828 (1st Cir. 1973)).

The preference for a joint trial is particularly strong in conspiracy cases. United States v. Floyd, 740 F.3d 22, 36 (1st Cir. 2014) (rule operates with "special force" in conspiracy cases); United States v. Brandon, 17 F.3d 409, 440 (1st Cir. 1994).  "Demonstrating unfair prejudice sufficient to require severance of coconspirators' trials is a difficult battle for a defendant to win." Floyd, 740 F.3d at 37 (citation and internal quotations omitted).  In fact, severance "will rarely, if ever,

4

be required" in the context of a conspiracy case. Id. at 36 (quoting United States v. Flores-Rivera, 56 F.3d 319, 325 (1st Cir. 1995)).

### ii. Analysis

In support of his motion to sever, Wilson contends that (1) the government's conspiracy charges violate Kotteakos v. United States, 328 U.S. 750 (1946), because they allege no connection between defendants other than that Singer was the instrument in each instance, and (2) the facts of Wilson's case differ significantly from the facts alleged against his co-conspirators and thus trying the cases together would result in unfair prejudice to Wilson and inefficiency to the Court.

Wilson's first argument has been previously addressed by this Court and found to lack force. See Docket No. 1334.  To properly charge a conspiracy, an indictment must allege the existence of: (1) a common goal, (2) overlap between the participants and (3) inter-dependence. See United States v. Portela, 167 F.3d 687, 695 (1st Cir. 1999).  The Fourth Superseding Indictment ("FSI") alleges that Wilson and his co-conspirators used fraud and bribery to accomplish the common goal of securing their children's admission to prestigious colleges and universities.  In each case, the FSI alleges that Singer acted as the core conspirator, establishing overlap.  Finally, the FSI alleges that Wilson and his co-conspirators

5

were aware of the nature and scope of the scheme, establishing inter-dependence.  Thus, on its face, the FSI adequately alleges a single conspiracy, the existence of which is a factual question for the jury.

Wilson's second argument has also been substantially addressed by this Court with respect to his co-defendant, Robert Zangrillo. See Docket No. 1373.  Wilson contends that the facts of his case differ significantly from those of his co-conspirators because (1) his son was a genuinely talented water polo player who did, in fact, qualify for the USC water polo team, (2) Wilson never made payments to any individual at USC, and (3) Wilson is facing additional charges not brought against his co-conspirators, namely federal program bribery and tax fraud.  Wilson concludes that, because of those differences, it would be prejudicial and inefficient for his trial to be joined with that of his co-conspirators and therefore it should be severed.

The government responds that Wilson's case is properly joined under Fed. R. Crim. P. 8(b), thus warranting severance

> only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.

Zafiro v. United States, 506 U.S. 534, 539 (1993).  The government submits that Wilson has not and cannot show that a

6

joint trial would result in either.

This Court concludes that Wilson has not identified a specific trial right that would be compromised by a joint trial, nor has he shown that he would be unfairly prejudiced by evidence introduced against his co-conspirators.  The government has alleged that Wilson was part of an over-arching conspiracy with Singer at its center.  As part of the conspiracy, the FSI alleges that Wilson conspired with Singer to have his son and daughters admitted to university via the "side door" whereby, in return for payments, Singer would pose Wilson's children as athletes, embellishing his son's resume and submitting his daughters as athletes in sports in which they had no experience. Wilson's contention that the allegations against him demonstrate less culpability vis-à-vis his co-conspirators because his son was a genuine athlete and because his payments did not benefit any individual coach or school official are questions of fact for the jury.

Moreover, it will not be inefficient to try the co-conspirators jointly.  Evidence pertinent to the "side door" scheme as a whole, Singer's modus operandi, his associates, USC admissions practices, etc., are all relevant to the charges against Wilson and his co-conspirators.  As the government contends, in a conspiracy,

>     virtually all the evidence relating to the other
>     conspirators [is] also directly relevant to, and,
>     therefore, independently admissible in, the prosecution's
>     case against [the defendant moving for severance].

Flores-Rivera, 56 F.3d at 325.  There will be substantial overlap between the evidence regarding the conspiracy charges and the additional charges against Wilson of substantive federal programs bribery and tax fraud.  Furthermore, because the additional charges are inextricably linked to the conduct underlying the conspiracy charges, trying the co-defendants together will not result in an undue waste of resources.

To the extent that any potential prejudicial spillover may occur, the Court will consider appropriate limiting instructions to the jury. See United States v. Candelario-Santana, 834 F.3d 8, 24 (1st Cir. 2016) (noting that "a trial court can safeguard a defendant from potentially prejudicial spillover by delivering jury instructions as to the admissibility of the evidence."); see also United States v. Babich, No. 16-CR-10343-ADB, 2019 WL 163102, at *3 (D. Mass. Jan. 10, 2019).  Accordingly, the Court will not sever Wilson's trial from the trial of his co-conspirators.

### B. Motion to Dismiss

#### i. Legal Standard

The Federal Rules of Criminal Procedure provide that an

8

indictment must contain "a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  When considering a motion to dismiss in a criminal case, a court accepts the factual allegations in the indictment as true. Boyce Motor Lines v. United States, 342 U.S. 337, 343 n.16 (1952).  Such a motion is properly directed only to the question of the validity of the indictment on its face and courts are to be mindful that

> the question is not whether the government has presented enough evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense.

United States v. Ngige, 780 F.3d 497, 502 (1st Cir. 2015) (quoting United States v. Savarese, 686 F.3d 1, 7 (1st Cir. 2012)).  An indictment is ripe for dismissal if the facts demonstrate that, as a matter of law, the prosecution will not be able to prove each of the elements of the charged offense. United States v. Huet, 665 F.3d 588, 596-97 (3d Cir. 2012).

### ii. Analysis

As an initial matter, this Court will address only Wilson's contention that the five substantive counts are the result of legal impossibility and must therefore be dismissed.  Wilson's argument that the substantive counts warrant dismissal for the same reasons that the conspiracy counts should be dismissed has already been addressed and rejected by this Court. See Docket

9

No. 1334.

Wilson contends that the substantive charges against him of wire fraud and federal program bribery are factually impossible because the government orchestrated the conduct through its cooperation with Singer and therefore neither crime could ever have been completed.

The government responds that the substantive offenses of wire fraud and federal program bribery are not defined by the success of the scheme but rather simply by the nature of the scheme itself. Thus, says the government, factual impossibility does not warrant dismissal of the substantive counts.

The First Circuit has long held that conduct that falls short of a completed criminal objective may still be criminalized and therefore factual impossibility is not a defense to crimes such as conspiracy or attempt. United States v. Dixon, 449 F.3d 194, 202 (1st Cir. 2006) ("Since the elements of those offenses do not require that the unlawful goal be achieved, factual impossibility is irrelevant."); see also United States v. Belardo-Quiñones, 71 F.3d 941, 944 (1st Cir. 1995); United States v. Chapdelaine, 989 F.2d 28, 35 (1st Cir. 1993); United States v. Giry, 818 F.2d 120, 126 (1st Cir. 1987).

Here, Wilson is charged with the substantive offenses of wire fraud and federal program bribery. Although he concedes that factual impossibility is not a defense to conspiracy

10

charges, he cites United States v. Petit, 841 F.2d 1546 (11th Cir. 1988) and United States v. Jannotti, 673 F.2d 578 (3d Cir. 1982) in support of his argument that factual impossibility is a defense to substantive criminal offenses.

In Petit, the Eleventh Circuit was asked to address whether factual impossibility was a defense to conspiracy to receive stolen goods. That court noted, as dicta, that although the defendants could not be convicted of the substantive offense of receiving stolen goods, they could be convicted of conspiracy because, for a conspiracy conviction under section 371 to stand,

> the government did not have to prove that the items were actually stolen; it was enough for the government to show that the conspirators conspired to receive goods which they believed to be stolen.

Petit, 841 F.2d at 1550 (quoting United States v. Sarro, 742 F.2d 1286, 1297 (11th Cir. 1984)).

Similarly, in Jannotti, the Third Circuit was asked to address whether factual impossibility was a defense to conspiracy to violate the Hobbs Act. In ruling that it was not, the Third Circuit distinguished Hobbs Act conspiracy from a substantive Hobbs Act violation, explaining that "[a] substantive violation of the Hobbs Act generally is supported by proof of an actual effect on commerce." Jannotti, 673 F.2d at 591. By contrast, "illegality of the [conspiracy] agreement does not depend on the achievement of its ends." Id.

11

Wilson's reliance on Petit and Jannotti is misplaced. Both of those opinions discuss how factual impossibility may be a defense to specific substantive crimes but not conspiracies to commit those crimes. Neither decision however stands for the broad proposition that factual impossibility is a defense to any substantive criminal charge.

In order to determine whether factual impossibility is a defense to the substantive crimes with which Wilson has been charged, one must look to the elements of the crimes themselves. If "the elements of those offenses do not require that the unlawful goal be achieved, factual impossibility is irrelevant." Dixon, 449 F.3d at 202.

The elements of a wire fraud conviction under 18 U.S.C. § 1343 are:

> (1) a scheme or artifice to defraud using false or fraudulent pretenses; (2) the defendant's knowing and willing participation in the scheme or artifice with the intent to defraud; and (3) the use of the interstate wires in furtherance of the scheme.

United States v. Appolon, 715 F.3d 362, 367 (1st Cir. 2013).

A person is guilty of federal program bribery under 18 U.S.C. § 666 if he:

> corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more.

18 U.S.C. § 666(a)(2).

Both wire fraud and federal program bribery require proof of intent to defraud or bribe but neither requires that the fraud or bribe accomplish the intended goal. See United States v. Carrington, 96 F.3d 1, 7 (1st Cir. 1996); see also United States v. Ring, 706 F.3d 460, 467 (D.C. Cir. 2013). In this way, wire fraud and federal program bribery are similar to the conspiracy charges in Petit and Janotti, where the illegality of the conduct at issue does not depend on the achievement of its ends.

Accordingly, the Court will not dismiss the substantive counts of wire fraud and federal program bribery.

**C. Motion to Strike**

  **i. Legal Standard**

Pursuant to Fed. R. Crim. P. 7(d), a defendant may move to strike surplusage from his indictment. Rule 7(d) serves to "protect the defendant against immaterial or irrelevant allegations in an indictment, . . . which may . . . be prejudicial." United States v. Berroa, 856 F.3d 141, 157 (1st Cir. 2017) (quoting United States v. Lewis, 40 F.3d 1325, 1346 (1st Cir. 1994))(internal quotations omitted). The decision to strike surplusage rests in the sound discretion of the district court. Lewis, 40 F.3d at 1346.

### ii. Analysis

Wilson contends that the allegations regarding his 2018 communications with Singer ("2018 Conduct") are surplusage because they occurred after the objective of his 2013 communications with Singer had been accomplished, i.e. the admission of his son to USC.  In the meantime, Singer began cooperating with the government.  Wilson submits that Singer's cooperation nullifies the 2018 conspiracy allegations because he was simultaneously a government agent incapable of participating in a two-person conspiracy.

The government rejoins that the FSI alleges one over-arching and continuing conspiracy which included many parents, coaches and insiders over many years and, therefore, Singer's cooperation with the government in no way negated the conspiracy.

This Court has already addressed the allegation that the FSI fails to allege one single conspiracy. <u>See</u> Docket No. 1334. As the Court explained, the FSI sufficiently alleges that defendants, including Wilson, engaged in one over-arching conspiracy.  Whether Wilson, in fact, participated in a different conspiracy with Singer that ended after his son was admitted to USC or was part of a broader conspiracy with other actors spanning many years up to and including the 2018 Conduct

is a question properly left to the jury. The allegations regarding the 2018 Conduct are therefore not immaterial, irrelevant or prejudicial. Accordingly, the Court will not strike as surplusage the allegations regarding the 2018 Conduct from the FSI.

### III. Order

In accordance with the foregoing, the motions of defendant John Wilson (1) to sever Wilson's trial from those of his codefendants (Docket No. 992), (2) to dismiss the Substantive Counts (Docket No. 993), and (3) to strike the allegations concerning the 2018 Conduct as described in the Indictment (Docket No. 994) are **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated July 28, 2020