UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA    ) | |
| ) | |
|     v.    ) | Criminal No.: 19-10080-NMG |
| ) | |
| JOHN WILSON,    ) | |
| ) | |
|     Defendant    ) | |
| ) | |

GOVERNMENT'S OPPOSITION TO DEFENDANT WILSON'S MOTIONS FOR RELIEF
BASED ON THE SEARCH AND SEIZURE OF HIS EMAILS, AND FOR
<u>LEAVE TO FILE EX PARTE AND UNDER SEAL (DKT. 1437)</u>

In a status report filed in January 2020, the government and the defendants jointly proposed a schedule by which motions pursuant to Fed. R. Crim. P. 12(b) would be filed by April 1, 2020, with briefing completed by June 1, 2020, and the defendants reserved their right to file additional motions concerning discovery produced after March 1, 2020. Dkt. 730 at 4–5. Magistrate Judge Kelley adopted the proposed schedule at a status conference on January 17, 2020, subject to this Court's approval. Dkt. 744.[1] Consistent with that schedule, the defendants filed some 18 motions on or before April 1, including multiple motions to suppress the wiretaps in this case, and the Court has now issued rulings addressing those motions.

Nearly four months after the April 1 deadline, defendant John Wilson has now filed a motion seeking to suppress emails seized by the government, and for other relief, and requests that

---

[1] Judge Kelley's interim status report referred to "dispositive motions pursuant to Rule 12(b)," but the parties' joint status report and Judge Kelley's docket entry referred to all 12(b) motions, including motions to suppress under Rule 12(b)(3).

he be permitted to file his brief under seal, and accompanying affidavits under seal and *ex parte*. The government respectfully requests that the defendant's motion be denied without briefing.[2]

*First*, as set forth below, Wilson's motion is untimely, because the majority of his arguments could have been raised by the April 1, 2020 deadline, and Wilson has not sought leave to file the motion belatedly. *Second*, Wilson's motion is improper because the government's review of emails between Wilson and his spouse provides no basis for the relief he seeks. Instead, the proper mechanism to address his arguments is a motion *in limine* to exclude specific emails at trial. *Third*, Wilson presents no valid basis to file his entire brief under seal, or his supporting affidavits under seal and *ex parte*.

## RELEVANT BACKGROUND

On July 1, 2019, the government executed search warrants on Wilson's business email account and the email accounts of several other defendants, seeking communications that predated the defendants' March 2019 arrests. Less than one month later, on July 31, 2019, the government produced copies of the warrants and supporting affidavit to the defendants by email. *See* Ex. A [Jul. 31, 2019 email].[3]

In response to the Wilson email warrant, Wilson's email service provider produced approximately 81,756 emails (125,233 total documents) to the government. After segregating emails that were potentially attorney-client privileged or exchanged between Wilson and his spouse, and conducting an initial screening of the remaining emails for responsiveness to the

---

[2] In the event the Court permits Wilson to file a supporting brief and affidavits, the government respectfully seeks leave to supplement its response to address those filings.

[3] The government re-produced these materials on August 30, 2019, as part of a larger production.

warrant, the government produced 5,091 responsive documents (comprising 3,751 emails and attachments) to the defense on January 29, 2020.

On March 31, 2020, Wilson filed various motions, including a motion to sever (Dkt. 992), a motion to dismiss the indictment (Dkt. 993), and a motion to strike allegations from the indictment (Dkt. 994). Wilson did not move to suppress the emails that had been produced to him, or otherwise challenge the email warrant.

On April 27, 2020, the government produced additional emails responsive to the warrants to all the defendants, including, with respect to Wilson, an additional 3,103 documents (comprising 1,779 emails and attachments). These emails were primarily between the defendants and their spouses. Prior to producing Wilson's emails, the government redacted sensitive or explicit content.[4]

On June 22, 2020, nearly two months after the government produced Wilson's spousal emails, Wilson's counsel contacted the government to complain that it had not used a "taint team" to review his spousal communications. *See* Ex. B [Jun. 22, 2020 email chain]. Wilson declined the government's request to provide legal authority requiring the use of a taint team in such circumstances. *Id*. On July 24, 2020, nearly a year after receiving the search warrant affidavit, Wilson first raised with the government "*Franks v. Delaware* issues with the warrant affidavit, and related concerns." *See* Ex. C [Jul. 24, 2020 email chain]. In this correspondence, Wilson

---

[4] On May 5, 2020, the government made individual productions to Wilson and each of the other defendants whose emails were searched, of the entire contents of their respective email accounts—that is, all the documents their email service providers had produced, regardless of whether they were responsive to the warrants. The government has also made a number of small, supplemental productions of responsive emails to all the defendants, including, in Wilson's case, 22 emails on April 24, 2020, 9 emails on May 5, 2020, and two emails on June 19, 2020. In total, the government has designated 5,563 emails (out of 81,756) as being responsive to the Wilson warrant.

requested that the government "agree not to object to the timing of the motion," and that it assent to his filing the supporting brief under seal and two supporting affidavits under seal and *ex parte*. *Id*. The government declined those requests. *Id*.

## ARGUMENT

### A. The majority of Wilson's motion is untimely.

In his motion, Wilson contends that the affidavit in support of the email warrant "relied intentionally or recklessly on false statements," that the government improperly seized "thousands of emails outside the scope of the search that the warrant described," and that the government "[f]urther violated Wilson's rights by seizing thousands of privileged marital communications," reviewing them without a taint team, and producing them in discovery to his co-defendants. Wilson contends that he was unable to file his motion earlier because it "relies heavily on information and documents that the government produced in March-April 2020."

That is not true. The government produced the search warrant and supporting affidavit *more than one year ago*, on July 31, 2019, *eight months* before Rule 12(b) motions were due. The government also produced the bulk of emails responsive to the warrant in January 2020, more than two months before Rule 12(b) motions were due. Accordingly, to the extent that Wilson now challenges the affidavit pursuant to *Franks v. Delaware*, or claims that any of those previously produced emails were outside the scope of the warrant, his motion should be denied without briefing as untimely. Wilson has not sought leave to file his motion belatedly, or explained why— even if he is permitted to file a belated motion—he should be permitted to raise any issues related to the affidavit itself, or to the emails produced prior to March 1, 2020.

B.  Wilson's motion is improper.

To the extent Wilson seeks relief based on spousal communications that were produced after March 1, his motion should also be denied because he is not entitled to the relief he seeks – which includes severance, suppression, and disqualification of the government attorneys who reviewed the emails.

It is black-letter law that marital privileges are evidentiary, *not* constitutional.  *See, e.g., United States v. Squillacote*, 221 F.3d 542, 560 (4th Cir. 2000) (rejecting argument that suppression of evidence derived from privileged marital communications was proper "given that the privilege is a testimonial or evidentiary one, and not constitutionally-based"); *United States v. Lefkowitz,* 618 F.2d 1313, 1318 n.8 (9th Cir. 1980) ("Because we reject … Lefkowitz's argument that the marital privileges are somehow constitutionally grounded in, among other locations, the Fourth Amendment, we doubt that a secondary source of information obtained through information protected by the confidential marital communications privilege would in any way be 'tainted'."); *United States v. Marashi,* 913 F.2d 724, 731 n.11 (9th Cir. 1990) ("[W]e need not resolve Marashi's claim that all evidence derived [from marital communications] should be excluded as fruits of the poisonous tree.  Suffice it to say that no court has ever applied this theory to any evidentiary privilege …"); *cf., e.g.*, *United States v. Pinedo-Mateo*, 905 F.3d 13, 15 (1st Cir. 2018) ("spousal testimonial privilege is an evidentiary privilege that protects a defendant's spouse from having to take the witness stand to testify against the defendant").  Accordingly, Wilson's privilege claims "should be addressed, if at all, at the proper stage of the trial proceedings in the context of a witness's impending trial testimony, or through a motion in limine that sets forth the communications defendant wants to exclude with sufficient specificity and in accordance with applicable law on marital confidential communication privilege." *United States v. Ellefsen*, No.

0-5015-01-CR-SW-FJG, 2008 WL 2977347, at *2 (W.D. Mo. Jul. 30, 2008); *see also United States v. Breton,* 740 F.3d 1, 9-10 (1st Cir. 2014) (government moved *in limine* to admit testimony of the defendant's then-spouse concerning statements made during the course of their marriage; defendant opposed, claiming statements were covered by the marital communications privilege); *Pineda-Mateo*, 905 F.3d at 19 (government moved *in limine* "seeking a determination, pursuant to Federal Rule of Evidence 104(a), that [spouse's] testimony is admissible").

C. <u>Wilson has provided no basis to seal his brief and submit affidavits *ex parte*.</u>

To the extent the Court does not deny Wilson's motion outright, it should deny his request to file his supporting brief under seal, and to file two supporting affidavits under seal and *ex parte*.[5]

*First*, without reviewing Wilson's supporting brief—which he has not provided—the government is unaware of any basis to seal the entire brief pursuant to Local Rule 83.6.11, or otherwise. Wilson's generalized claim that his spousal emails are "private" does not, without more, justify sealing his entire brief—and certainly not to the extent the brief raises matters unrelated to spousal communications.

*Second*, to the extent Wilson contends that the supporting affidavits of his spouse and his attorney should be submitted *ex parte* because they will provide "detailed descriptions of the private, privileged communications that the government has impermissibly rummaged through," his argument makes no sense. If the government has already reviewed the challenged communications, as Wilson contends, then there is no basis for a declaration detailing those

---

[5] *See, e.g., United States v. Scott*, 19-29-GF-BMM, 2020 WL 2745445 (D. Mont. May 27, 2020) (court noted that it was "aware of no basis to permit a party to file an *ex parte* motion to suppress"); *see also United States v. Pupo-Reynaldo*, No. 10-20808-CR, 2011 WL 2610219 *1 fn. 1 (S.D. Fla. Jun. 6, 2011), *aff'd*, 470 F. App'x 873 (11th Cir. 2012) (court noted that defendant had filed a sealed ex parte supplement to suppression motion, but explained that the court had provided a copy of the filing to the government before the parties presented closing arguments on the motion).

communications to be filed *ex parte*. Likewise, there is no merit to Wilson's contention that the affidavits should be filed *ex parte* because they will provide the Court with a "detailed analysis of the manner in which this violation of Wilson's rights will harm his trial defense." None of the seized emails discusses Wilson's defense strategy, because all of them predate his arrest and prosecution.[6] And, in any event, the proper mechanism to address Wilson's fear that the emails will harm his defense is not a motion to suppress, but, as noted above, a motion *in limine* to exclude any such emails that the government seeks to introduce at trial. The Court should, accordingly, deny Wilson's transparent effort to evade the adversarial process.

## CONCLUSION

For the foregoing reasons, Wilson's motions should be denied.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: */s/ Eric S. Rosen*
ERIC S. ROSEN
JUSTIN D. O'CONNELL
KRISTEN A. KEARNEY
LESLIE A. WRIGHT
KARIN M. BELL
STEPHEN E. FRANK
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: August 4, 2020

*/s/ Eric S. Rosen*
Eric S. Rosen

---

[6] It is also unclear why an affidavit submitted by Wilson's spouse (as opposed to his lawyer) would discuss trial strategy.