**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

UNITED STATES OF AMERICA

v.

GREGORY COLBURN et al.,

Defendants.

No. 1:19-cr-10080-NMG

**DEFENDANT JOHN WILSON'S PROPOSED REPLY IN SUPPORT OF
HIS MOTION FOR LEAVE TO FILE EX PARTE AND UNDER SEAL**

Defendant John Wilson filed a motion seeking suppression and other remedies as redress

for illegal actions the government took to obtain and execute a warrant to search Wilson's email

server (the "Motion for Relief," ECF No. 1437).  As part of its execution of the warrant, the

government seized and disseminated thousands of Wilson's emails, including approximately

3,000 private communications between Wilson and his wife, protected by the marital-

communications privilege.

As part of the Motion for Relief, Wilson made a preliminary request (the "Motion to

Seal") for leave to file:

(a)   A supporting memorandum of law under seal, with a copy served on the

government; and

(b)   Two supporting declarations under seal, one (from Wilson's counsel) served on

the government in redacted form, and one (from Wilson's wife) entirely ex parte.

The purpose of the preliminary request to file documents under seal and ex parte is to minimize

the injury from the government's incursion into private, privileged emails that discuss a family's

most private issues, including health, intimacy, children, and finances.

The government has responded with an opposition (ECF No. 1447) that objects to any impounded filings, and asks the Court to deny the motion before Wilson even files the briefing materials presenting the facts, authorities, and analysis that support his position.  This radical request relies on incorrect guesses regarding Wilson's arguments and on an incomplete presentation of the case law.  Accordingly, Wilson asks the Court to grant the Motion to Seal and, once the memorandum and two affidavits are on file, to consider them and adjudicate the Motion for Relief on its merits.

## I.      Background

When it applied for a warrant to search Wilson's email server, the government included false statements in its supporting affidavit, which were essential to establish the surface appearance of probable cause.  In subsequently executing the warrant, the government reviewed and seized emails that were outside the scope authorized by the warrant, simultaneously violating the Fourth Amendment's reasonableness requirement and the marital-communications privilege.  The Motion for Relief seeks to counteract the government's illegal acts through suppression, prosecutor and witness disqualification, and severance.

Courts in this District adjudicate motions upon consideration of the movant's "memorandum of reasons, including citation of supporting authorities," as well as any "[a]ffidavits and other documents setting forth or evidencing facts on which the motion is based."  L.R. 7.1(b)(1).  Wilson sought leave to submit the memorandum and affidavits supporting his Motion for Relief under seal and, in part, ex parte, because those submissions would disclose sensitive personal information and defense strategy.  The Local Rules require Wilson to wait for the "[m]otion for impoundment . . . [to be] ruled upon prior to submission of the actual material sought to be impounded."  L.R. 7.2(c).

With Wilson's formal Motion for Relief filed, but not yet the materials supporting it, the government spotted a tactical opportunity to seek a rare and drastic measure: the government asks the Court to deny Wilson's motion "without briefing" (Opposition 2)—that is to say, on the basis of the government's seven-page brief, but without even *considering* the facts, authorities, and analysis compiled in Wilson's memorandum and declarations.

The government rests its request on a combination of schedule-based and merits-based arguments. But without having seen the materials supporting Wilson's Motion for Relief, the government is only guessing as to the facts and legal theories that it attacks. Indeed, the government stated as much in pre-motion correspondence with Wilson's counsel. Ex. A ("Without having seen [the motion], we cannot agree not to object . . . .").

The government guesses wrong. The Motion for Relief is both timely and meritorious, for the reasons outlined below.

## II.      The Motion for Relief Is Timely

In February 2020, the Court set September 29, 2020 as the start date for jury selection in Wilson's trial, and directed that defendants file their dispositive motions by April 1, 2020. ECF Nos. 883, 888. On July 16, the government moved, with the defendants assent, to postpone the trial date by five months, to late February 2021. ECF No. 1395. The Court has allowed the motion. ECF No. 1454. In July, the parties informally agreed to suspend the production of various materials to each other under the Court's Scheduling Order, pending the Court's action on the request to change the trial date.

Wilson's Motion for Relief notes that it relies heavily on information and documents that the government produced after April 1, 2020 or just prior to that date. ECF No. 1437, at 2. Wilson's counsel filed several motions prior to April 1, and was reviewing the government's voluminous discovery well past that date—including hundreds of thousands of documents that

the government produced in April, May, and June.  Wilson could not have prepared and filed the

Motion for Relief prior to April 1.  Consequently, there is good cause for adjudicating the

Motion for Relief at this juncture.  Indeed, it would not make sense to interpret the April 1

deadline as applicable to motions arising from discovery following that date (and which the

government was free to produce earlier).

The government expresses doubt that Wilson's claims concerning the warrant application

and subsequent seizure rely on the March-April 2020 productions.  It is wrong on both counts:

Wilson's challenge to the warrant application, pursuant to *Franks v. Delaware*, 438 U.S.

154 (1978), arises from false statements in the government's warrant affidavit.  It is both true and

irrelevant that the government produced a copy of the affidavit in late July 2019.  *Franks*

motions *routinely* rely on evidence outside the warrant application to establish the affidavit's

falsity; indeed, falsehoods that are plain on the face of the affidavit should be visible to the

magistrate reviewing the application.

Here, to establish the falsehoods in the warrant affidavit, Wilson relies principally on

statements that Rick Singer made to the government during his numerous debriefs.  Wilson's

source of information about such statements is the government's productions of FBI memoranda

and agent notes.  The government has included such memoranda and notes in six productions,

delivered to the defense from March 3, 2020 through May 18, 2020.[1]  The memos and notes of

Singer's interviews were interspersed in productions containing more than half a million records.

---

[1] The government made these productions on the following dates:  March 3 (including 52
FBI reports of Singer interviews), March 16 (including 213 reports, draft reports, and
handwritten write-ups of Singer interviews), April 10 (including 17 reports, draft reports, and
handwritten write-ups of Singer interviews), April 28 (including 187 exhibits from Singer
interviews), May 7 (including 7 reports and related documents from Singer interviews), and May
18 (including 1 handwritten write-up of a Singer interview).

Wilson could not have formulated his *Franks* argument until his attorneys received, collated, and analyzed all of the relevant portions of these interviews.

The remainder of the Motion for Relief challenges the government's subsequent, improper execution of the warrant.  The government has given the defendants no information about the manner in which it searched defendants' mailboxes and decided which emails to retain. To recognize and challenge the improper seizure, Wilson therefore needed to review and analyze the government's discovery productions of emails resulting from that seizure.  The government admits that it produced thousands of such emails on April 24, 2020 (including over 3,000 communications between Wilson and his wife), and others on May 5, 2020 (including 9 emails from Wilson's server), and June 19, 2020 (including 2 emails from Wilson's server).  Opposition 3 & n.4.  Indeed, the government has never yet stated that it has completed its productions resulting from the warrant.

Wilson thus could not have presented his Motion for Relief prior to reviewing and analyzing the government's productions of March, April, and even into June.

Finally, Wilson submitted his Motion for Relief two months ahead of his then-scheduled trial date of October 2020.  At the government's request, the Court has since postponed the trial by almost five months, to late February 2020.  In these circumstances, adjudicating the Motion for Relief on its merits would cause no prejudice to the government and no undue burden on the resources of the Court and the parties.  The inflexible application of the April 1 deadline for which the government advocates—*especially* with regard to motions arising from discovery produced after that date—would elevate technicality over justice, amounting to a reversible abuse of discretion.  *See United States v. Roberts*, 978 F.2d 17, 25 (1st Cir. 1992) (reversing the

district court's "stony adherence" to a deadline "where a miasma of doubt surrounded the proper

interpretation" and there was "no suggestion of cognizable prejudice" to the non-moving party).[2]

### III.     The Motion for Relief Is Meritorious

The government claims—without the benefit of reviewing Wilson's submissions—that

Wilson "is not entitled to the relief he seeks." Opposition 5. The government is mistaken.

Wilson seeks suppression, prosecutor and witness disqualification, and severance based

on false warrant-application statements, combined with the government's subsequent disregard

for the terms of the warrant, the Fourth Amendment, and the marital-communications privilege.

The case law supports these remedies: The Fourth Amendment requires the government to

adhere to the warrant's terms, *United States v. Kuc*, 737 F.3d 129, 133 (1st Cir. 2013), and to

execute the search "in a manner that minimizes unwarranted intrusions upon privacy." *United

States v. Aboshady*, 297 F. Supp. 3d 232, 239 (D. Mass. 2018) (quoting *Andresen v. Maryland*,

427 U.S. 463, 482 n.11 (1976)). Blanket suppression of a warrant's entire returns is warranted

not only under *Franks* but also in other "extreme situations, such as . . . when the officers

flagrantly disregarded the terms of the warrant." *United States v. Hamie*, 165 F.3d 80, 83-84 (1st

Cir. 1999). Suppression also is an appropriate remedy for breaches of the marital-

---

[2] *See also, e.g.*, *United States v. Salahuddin*, 509 F.3d 858 (7th Cir. 2007) (reversing the district court's refusal to hear a belated suppression motion where the trial was three months away and the "government [made] no argument that it would have been prejudiced"); *United States v. Ocean*, No. 15-cr-40, 2015 U.S. Dist. LEXIS 169744 (D. Me. Dec. 18, 2015) (finding good cause to permit a belated suppression motion where counsel "discovered the information that forms the basis of his motion only after the motion deadline lapsed," due in part to "voluminous discovery"); *United States v. Tsung Min Yu*, No. 17-cr-180, 2019 U.S. Dist. LEXIS 6789, (W.D. Ky. Jan. 14, 2019) (same where the government "would not be prejudiced by the Court considering the argument" because it "had the opportunity to respond"); *United States v. Samuel*, No. 14-cr-351, 2015 U.S. Dist. LEXIS 39554, at *7-8 (E.D. Va. Mar. 26, 2015) (same where "[t]he extent of the untimeliness was not extreme" and "no prejudice to the government resulted from the late filing as it was filed well in advance of the scheduled trial").

communications privilege.  *United States v. Rakes*, 136 F.3d 1 (1st Cir. 1998).  As a sanction for

misconduct, or to counteract prosecutors' access to privileged materials, the District Court may

disqualify prosecutors, *United States v. Horn*, 811 F. Supp. 739 (D. N.H. 1992), *affirmed in*

*relevant part*, 29 F.3d 754 (1st Cir. 1994); and it is also proper to disqualify witnesses whose

testimony has been tainted by impermissible exposure to privileged information, *Kastigar v.*

*United States*, 406 U.S. 441, 453 (1972).  Finally, the Court enjoys broad discretion to sever

trials when joinder would endanger a defendant's specific trial right.  *Zafiro v. United States*, 506

U.S. 534, 539 (1993).

Wilson will, of course, further explain the application of these doctrines to the instant

circumstances in his memorandum of law and declarations.  The government will be free to

present any disagreements it may have in the orderly and ordinary course.  At the present

juncture, however, there is no justification for the government's extravagant request to bar

Wilson from pursuing his Motion for Relief based on the facts, authorities, and analysis

underlying it.

## IV.     Wilson's Proposed Filing Arrangements Are Warranted

In the Motion to Seal, Wilson requested leave to file (a) the memorandum of law

supporting the Motion for Relief under seal, with a copy to the government; and (b) two

supporting declarations, from Wilson's counsel and Wilson's wife, ex parte, with only a redacted

copy of the declaration of counsel to the government.  The purpose of these measures is to

protect Wilson's privacy and defense strategy.

The government has seized and rummaged through thousands of private emails that it had

no right to access.  Among those emails are a subset that contain various types of especially

sensitive personal information.  Another subset of emails would play a particularly harmful role

to Wilson's defense if the government is permitted to present them, or even to implement its

knowledge about them (for example, in cross-examinations).

These harms to Wilson's privacy and defense may well affect the Court's analysis of the

appropriate consequences for the government's conduct.  Wilson therefore needs to describe

them with particularity and with examples.  Abstract assertions will not do Wilson's concerns

justice.

In his memorandum of law, Wilson does not intend to include detailed accounts of the

communications that the government has accessed impermissibly, nor detailed analyses of their

potential trial implications.  He therefore proposes to provide a complete copy of the

memorandum to the government.  However, the memorandum *will* describe in general terms the

types of private information that the government has accessed impermissibly.  Wilson asked to

impound this motion to minimize the public dissemination of, and public attention to, this

sensitive issue.  It is disappointing that the government now opposes this request, after already

impermissibly intruding on Wilson's privacy.  Nevertheless, given the government's newfound

resistance to impoundment, Wilson does not object if—upon reviewing the memorandum—the

Court determines that it should be made public.

In the declarations supporting the Motion for Relief, Wilson proposes to include detailed

descriptions of the private, impermissibly seized communications that the government has

impermissibly seized and reviewed.  He will attach sample documents to illustrate the types of

records that provide the government with the most injurious incursions into his privacy and his

right to a fair trial.  The declarations also will describe the manner in which the government

could use the impermissibly seized emails against Wilson at trial.  Disclosures of these details

even to the government would further entrench the harms that the government's execution of the

9

warrant has already caused.  Wilson therefore seeks to file the declarations ex parte, with only a redacted copy of the declaration of counsel to the government.

Wilson's requests to file under seal and, in part, ex parte are therefore warranted.  After Wilson makes his filings, the Court of course will be able to reassess whether impoundment is appropriate, and whether Wilson's redactions require adjustments.

## V.      Conclusion

For the foregoing reasons, the Court should allow the Motion to Seal—subject to reconsideration, if necessary, thereafter—and adjudicate the Motion for Relief on its merits.

Respectfully submitted:

*Counsel to John Wilson:*

/s/ Michael Kendall
Michael Kendall (BBO # 544866)
Yakov Malkiel (BBO # 689137)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
(617) 979-9310
michael.kendall@whitecase.com
yakov.malkiel@whitecase.com

Andrew E. Tomback (pro hac vice)
MCLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, NY 10016
(212) 448-1100
atomback@mclaughlinstern.com

## CERTIFICATE OF SERVICE

This Motion is being filed on the date appearing in the header through the ECF system, which will provide electronic copies to counsel of record.

/s/ Michael Kendall
Michael Kendall

# Exhibit A

| From: | Frank, Stephen (USAMA) 1 <Stephen.Frank@usdoj.gov> |
|---|---|
| Sent: | Friday, July 24, 2020 5:47 PM |
| To: | Malkiel, Yakov; Rosen, Eric (USAMA); Bell, Karin (USAMA)3; Kearney, Kristen (USAMA); O'Connell, Justin (USAMA); Wright, Leslie (USAMA) |
| Cc: | Kendall, Michael; Andrew Tomback |
| Subject: | RE: Wilson Privileged Marital Communications |

Thanks Yakov. We do not believe there is a further need to meet and confer.  We oppose the motion.

Without having seen it, we cannot agree not to object to its timing.  Likewise, we are not in a position to agree that the brief should be filed under seal, or that the affidavits may be filed ex parte and under seal.  Accordingly, we reserve our rights with respect to those issues.

Steve

**From:** Malkiel, Yakov <yakov.malkiel@whitecase.com>
**Sent:** Friday, July 24, 2020 4:42 PM
**To:** Frank, Stephen (USAMA) 1 <SFrank1@usa.doj.gov>; Rosen, Eric (USAMA) <erosen2@usa.doj.gov>; Bell, Karin (USAMA)3 <KBell3@usa.doj.gov>; Kearney, Kristen (USAMA) <KKearney@usa.doj.gov>; O'Connell, Justin (USAMA) <JOconnell@usa.doj.gov>; Wright, Leslie (USAMA) <LWright4@usa.doj.gov>
**Cc:** Kendall, Michael <michael.kendall@whitecase.com>; Andrew Tomback <ATomback@mclaughlinstern.com>
**Subject:** RE: Wilson Privileged Marital Communications

Hi Steve,

We will be moving to suppress the fruits of the warrant to search Mr. Wilson's email server.  We will also ask the Court to consider disqualifying prosecutors and/or witnesses, and to sever Wilson's trial.

**Yakov Malkiel**  |  Associate
**T**  +1 617 979 9322     **M**  +1 617 407 0117     **E**  yakov.malkiel@whitecase.com
White & Case LLP  |  75 State Street | Boston, MA 02109-1814

**From:** Frank, Stephen (USAMA) 1 <Stephen.Frank@usdoj.gov>
**Sent:** Friday, July 24, 2020 2:29 PM
**To:** Malkiel, Yakov <yakov.malkiel@whitecase.com>; Rosen, Eric (USAMA) <Eric.Rosen@usdoj.gov>; Bell, Karin (USAMA)3 <Karin.Bell@usdoj.gov>; Kearney, Kristen (USAMA) <Kristen.Kearney@usdoj.gov>; O'Connell, Justin (USAMA) <Justin.O'Connell@usdoj.gov>; Wright, Leslie (USAMA) <Leslie.Wright@usdoj.gov>
**Cc:** Kendall, Michael <michael.kendall@whitecase.com>; Andrew Tomback <ATomback@mclaughlinstern.com>
**Subject:** RE: Wilson Privileged Marital Communications

Yakov,

What are you moving to suppress and what is the other relief you are seeking?

Thanks,
Steve

**From:** Malkiel, Yakov <yakov.malkiel@whitecase.com>
**Sent:** Friday, July 24, 2020 11:31 AM
**To:** Rosen, Eric (USAMA) <erosen2@usa.doj.gov>; Bell, Karin (USAMA)3 <KBell3@usa.doj.gov>; Frank, Stephen

(USAMA) 1 <SFrank1@usa.doj.gov>; Kearney, Kristen (USAMA) <KKearney@usa.doj.gov>; O'Connell, Justin
(USAMA) <JOconnell@usa.doj.gov>
**Cc:** Kendall, Michael <michael.kendall@whitecase.com>; Andrew Tomback <ATomback@mclaughlinstern.com>
**Subject:** Wilson Privileged Marital Communications

All,

On John Wilson's behalf, we are preparing a motion to suppress and for other relief based on the marital-communications
issue, Franks v. Delaware issues with the warrant affidavit, and related concerns.  We expect to file on Monday.  Could
you let us know the following?

1.  Whether in your view we need to meet and confer further on these issues.
2.  Whether you agree not to object to the timing of the motion, which relies primarily on documents and information
    that the government produced in March-April 2020.
3.  Whether, given the severe privacy concerns inherent in discussing the marital communications, you agree to the
    following requests concerning filing arrangements:
    a.  Our memorandum of law will be filed under seal, with a copy served on the government.
    b.  Up to two accompanying affidavits will be filed ex parte and under seal, with only redacted copies served
        on the government.

Thank you.

**Yakov Malkiel**  |  Associate
**T**  +1 617 979 9322    **M**  +1 617 407 0117    **E**  yakov.malkiel@whitecase.com
White & Case LLP  |  75 State Street | Boston, MA 02109-1814

===================================================================================================

This email communication is confidential and is intended only for the individual(s) or entity named above and
others who have been specifically authorized to receive it. If you are not the intended recipient, please do not
read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have
received this email in error by replying to the email or by telephoning +1 617 979 9300. Please then delete the
email and any copies of it. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.


===================================================================================================


===================================================================================================

This email communication is confidential and is intended only for the individual(s) or entity named above and
others who have been specifically authorized to receive it. If you are not the intended recipient, please do not
read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have
received this email in error by replying to the email or by telephoning +1 617 979 9300. Please then delete the
email and any copies of it. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.


===================================================================================================