UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No. 19-10080-NMG

UNITED STATES OF AMERICA

v.

GREGORY COLBURN, et al.,

**ORDER RE: GOVERNMENT'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS BY THE UNIVERSITY OF SOUTHERN CALIFORNIA IN RESPONSE TO RULE 17(c ) SUBPOENAS (#1346)**

KELLEY, U.S.M.J.

I.    Introduction.

Defendants in this case have successfully moved, *ex parte*, for subpoenas pursuant to Federal Rule of Criminal Procedure 17(c) directed to the University of Southern California (USC). The government here moves this court for an order compelling USC to produce documents in response to a Rule 17(c) subpoena issued by the government, commanding USC to produce "all documents produced by USC to any defendants in this case." (#1346 at 1.) USC declined to produce the documents to the government in the absence of a court order because certain defendants notified USC that the materials are protected by the work product doctrine. *Id*.; #1346-1 (defendants' letter to USC). Defendants Kimmel, Abdelaziz, Palatella, Wilson, and Zadeh oppose the government's motion. (#1374.) For the reasons set out below, the government's motion is denied.

1

II.    The Law.

A.  Rule 17(c).

Rule 17(c) enables a defendant to exercise his constitutional rights to confrontation and compulsory process by permitting him to request subpoenas duces tecum that are returnable before trial. *United States v. Nixon*, 418 U.S. 683, 698-99 (1974) (footnote omitted) (the "chief innovation [of Rule 17(c)] was to expedite . . . trial by providing a time and place before trial for the inspection of subpoenaed materials.") In *Nixon*, the Supreme Court explained the constitutional underpinnings of the Rule 17(c) subpoena and the resultant obligation of the courts to assist criminal defendants in exercising their rights:

> The Sixth Amendment explicitly confers upon every defendant in a criminal trial the right to be confronted with the witnesses against him and to have compulsory process for obtaining witnesses in his favor. Moreover, the Fifth Amendment also guarantees that no person shall be deprived of liberty without due process of law. It is the manifest duty of the courts to vindicate those guarantees, and to accomplish that it is essential that all relevant and admissible evidence be produced.

418 U.S. at 711.

A district court has discretion to authorize the issuance of a Rule 17(c) subpoena if the movant shows that the documents sought are relevant and evidentiary; that they are not otherwise procurable before trial by exercise of due diligence; that the defendant cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and that the application is made in good faith and is not a general "fishing expedition." *Id*. at 699-700. In sum, a party seeking a Rule 17(c) subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Id*. at 700; *see United States v. LaRouche Campaign*, 841 F.2d 1176, 1180 (1st Cir. 1988) (referring to "threshold showing of admissibility, relevancy, and specificity"). The Supreme Court has stated

that "[a] subpoena for documents may be quashed if their production would be 'unreasonable or oppressive,' but not otherwise." *Nixon*, 418 U.S. at 698 (quoting Rule 17(c)).

Defendants here properly were permitted to file their motions for Rule 17(c) subpoenas *ex parte*, and the government does not argue otherwise. While some district courts have held that *ex parte* process is generally improper under Rule 17(c), *see, e.g., United States v. Steward*, 1997 WL 103700 (E.D. Pa. Mar. 4, 1997) (collecting cases); *United States v. Urlacher*, 136 F.R.D. 550 (W.D.N.Y. 1991), this court rejects that view for reasons that need not be discussed. Although the text of Rule 17(c) does not explicitly state that *ex parte* applications are permitted, and there does not appear to be any binding authority directly on point, common sense dictates that where a defendant cannot make the required showing of relevancy, admissibility, and specificity without revealing trial strategy and other protected work product, he must be permitted to make the request *ex parte*. *United States v. Tomison*, 969 F. Supp. 587, 593-94 (E.D. Cal. 1997)*; United States v. Beckford*, 964 F. Supp. 1010, 1027 (E.D. Va. 1997) (holding that if Rule 17(c) motion could never be made *ex parte*, defendant might be forced to reveal trial strategy, witnesses' identities or attorneys' work-product to obtain pretrial subpoena, impinging on Sixth Amendment's right to compulsory process); *United States v. Reyes*, 162 F.R.D. 468, 470 (S.D.N.Y. 1995) (same). Magistrate Judge Dein, in an unpublished order in *United States v. Diamont*, No. 05-cr-10154-MLW (D. Mass. Nov. 22, 2005), concluded that *ex parte* proceedings are available under Rule 17(c) based on the language of the Rule and for policy reasons.

B.  The Law Pertaining to Privilege.

The work product doctrine was recognized by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947), where the court affirmed that an attorney must be free to work on a case with "a certain degree of privacy, free from unnecessary intrusion by opposing parties and their

counsel." *Id*. at 510. "Proper preparation of a client's case demands that [counsel] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Id.* at 511; *see In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1014 (1st Cir. 1988) ("Our adversarial system of justice cannot function properly unless an attorney is given a zone of privacy within which to prepare the client's case and plan strategy, without undue interference."). It applies in civil and criminal cases, and obviously, in the latter, assumes constitutional significance. *United States v. Nobles*, 422 U.S. 225, 238 (1975) ("Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital.").

The work product doctrine protects both "ordinary" and "opinion" work product. *San Juan Dupont*, 859 F.2d at 1014. "Ordinary work product consists of documents and tangible things prepared in anticipation of litigation by or for an opposing party." *United States v. Horn*, 811 F. Supp. 739, 745 (D.N.H. 1992), *reversed on other grounds by United States v. Horn*, 29 F.3d 754 (1st Cir. 1994) (citing *Sporck v. Peil*, 759 F.2d 312, 316 (3rd Cir.), *cert. denied*, 474 U.S. 903 (1985)). Opinion work product encompasses materials "that contain the mental impressions, conclusions, opinions or legal theories of an attorney," and is highly-protected, in fact, some courts "have seemingly concluded that the protection for certain types of opinion work product is ironclad." *San Juan Dupont*, 859 F.2d at 1014-15.

Not surprisingly, "[c]ourts have held that defense counsel's selection and compilation of documents in preparation for pretrial discovery fall within the highly-protected category of opinion work product." *Horn*, 811 F. Supp. at 745 (citing cases). In *Horn*, the district court held that a criminal defense attorney's selection of documents for copying from a larger set of documents

4

subpoenaed by the grand jury and in the government's possession was protected under the work product doctrine. *Id.* at 739.  The court found that the government violated the "special protection" due to the materials when it instructed the custodian to provide the government with a copy of the documents selected by defense counsel, as the documents chosen by defense counsel "provided an important insight into defense tactics, strategy, and problems." *Id.* at 749-51.

III.     The Parties' Arguments.

A.     The Government.

The government asserts that it is not attempting to use Rule 17(c) as a discovery device. (#1407 at 1.) It argues that the "mere production" of materials by USC to the defense does not convert those materials into defendants' work product. (#1346 at 1.) Given that defendants have requested "thousands of pages" of documents from USC, documents that defendants have "never even seen," any argument that production of the documents to the government would reveal defendants' trial strategy or anticipated defenses "is without merit." *Id.* at 5-7. At any rate, the government argues, it already knows defendants' strategies from various public filings and statements at hearings in this case. *Id.* at 7.

The government further argues that even if the documents can be characterized as work product, any protection was waived because defendants issued requests for the documents to USC, a purported victim in this case with interests adverse to defendants' interests. *Id.* at 8. "Indeed, it would be a perverse result to hold that a party that considers itself a victim of the defendants' crimes is prohibited by law from producing to the government documents it is producing to the individuals who allegedly perpetrated those crimes against it." *Id.* at 8-9.

5

Finally, the government asserts that reciprocal discovery rules are insufficient to protect the government's interests, and the government should be given all materials USC has produced, "not just those that defendants choose to mark as exhibits." *Id*. at 9-10.

B.   The Defendants.

Defendants argue that the government's demand for "all documents" produced by USC is an improper use of Rule 17(c), as it violates the requirement that a party seeking documents make a showing of relevance, admissibility, and specificity. (#1374 at 5.)  Defendants point out that the only thing the government knows about the documents is that defendants asked for them first. *Id*. The fact that defendants sought and received documents that are relevant and admissible for their purposes does not make those documents relevant and admissible for the government's purposes. *Id*.  If the government wants documents that defendants plan to use in their case in chief, those will be produced in due time, in accordance with Fed. R. Crim. P. 16(b)(1)(A), while documents that defendants use for cross-examination do not have to be produced until defendants use them for that purpose. *Id*. Thus, the argument goes, the only basis for the government's seeking the documents is to poke around in them "to see what may turn up," which violates the prohibition against Rule 17(c)'s being used as a discovery tool.  *Id*. (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951)).

Defendants further argue that allowing the government to obtain the documents defendants sought from USC would subvert the work product doctrine by "enabling the [g]overnment to deduce the nature of the defendants' requests – and the beliefs and mental impressions that went into making those requests – from the contents of USC's productions." *Id*. at 4-5. The subpoenas "made targeted requests for documents relating to particular people, entities, policies, activities, and events." *Id*. at 6-7. Receiving the documents that defendants requested will allow the

government to "reverse-engineer a picture of the defense team's evidentiary strategy." *Id.* at 7. Allowing the government's motion would deter defendants in future cases from employing Rule 17(c), and will punish these defendants for having relied on "the assurance of confidentiality on which they acted when they obtained judicial permission to issue their subpoenas on an *ex parte* basis." *Id.*

Finally, defendants argue that they have standing to move to quash the government's subpoena because they have a claim of work product protection over the documents, and they did not waive this right by disclosing some of their work product to USC. *Id.* at 10-12.

IV.    <u>Analysis</u>.

The government cites no case, and this court has found none, supporting the proposition that the government is entitled to request the issuance of a Rule 17(c) subpoena commanding a third-party simply to give it everything a defendant sought in his or her own subpoena. In this case, several defendants previously included similar requests in their motions for subpoenas to USC, namely, blanket requests that USC provide them with all documents already provided to other defendants. The court denied those requests, in spite of the fact that the defendants had been indicted as co-conspirators, for the obvious reason that Rule 17(c) dictates that the party seeking production may not engage in a "fishing expedition," but rather must meet the requirements of relevance, admissibility, and specificity. *Nixon*, 418 U.S. at 699-700. Asking for whatever documents the target of the subpoena provided to someone else in no way satisfies this requirement. In this court's view, that is enough reason to deny the government's motion: the requested subpoena plainly is impermissible under well-established Supreme Court precedent.

If one is needed, a further reason to deny the government's motion is that production of the documents would reveal opinion work product of defense counsel. The court has reviewed

defendants' *ex parte* submissions filed in connection with this motion in which they explain why the USC documents themselves would reveal trial strategy. (##1375, 1375-1, filed *ex parte* and under seal.) The court is satisfied that the requests for documents to USC were developed after extensive review by defense counsel of information and materials provided by the government, the defendants, and others, and that the requests targeted documents relevant to defendants' factual and legal theories of the case. The court is also satisfied, based on specific examples provided by defendants, that even if the government does not see the actual subpoenas or defendants' *ex parte* filings in which they asked for permission to issue the subpoenas, seeing the documents will provide the government a window into the legal theories and trial strategies of defense counsel. This is the very information that is most stringently guarded by the work product doctrine. *San Juan Dupont,* 859 F.2d at 1014. *Cf. United States v. Kravetz*, 706 F.3d 47, 53-54 (1st Cir. 2014) (denying journalist's request for Rule 17(c) subpoena and related materials, finding materials were "not entitled to a presumption of access under either the First Amendment or the common law" because "there is scant value and considerable danger in a rule that could result in requiring counsel for a criminal defendant to prematurely expose trial strategy to public scrutiny.").

The government's further arguments merit little discussion. The fact that the materials were subpoenaed from USC, whom the government characterizes as a victim in this matter, does not mean that the government can bend the law concerning the issuance of Rule 17(c) subpoenas and gain an unfair advantage in the litigation by perusing documents that clearly spell out defendants' trial strategies. The court rejects the government's contention that the reciprocal discovery rules are not sufficient to satisfy its interests. As Magistrate Judge Dein said in response to the same argument by the government in *United States v. Diamont*, No. 05-cr-10154-MLW, where she denied the government's request to view all documents produced in response to defendant's Rule

17(c) subpoenas: "Our Local Rules provide for the orderly production of information before trial." *Id.*, docket no. 33 at 7. If the government is worried that it will not have time to digest all of the documents the defendants provide under their reciprocal discovery obligations, it may seek relief concerning the timing of the disclosures from the court. Further, defendants do have standing to oppose the government's Rule 17(c) subpoena to USC because the materials sought are protected under the work product doctrine. *See DeGrandis v. Children's Hospital of Boston,* 203 F. Supp.3d 193, 198 (D. Mass. 2016).

Finally, defendants did not waive any protection due under the work product doctrine by asking USC for the documents. If this assertion were true, the rationale for allowing defendants to seek issuance of Rule 17(c) subpoenas *ex parte* would be meaningless.  No defendant would employ the process, *ex parte* or not, because the government, once it discovered the parties to whom Rule 17(c) subpoenas were directed by defendant, would simply request issuance of such subpoenas themselves to command production of whatever material a defendant sought. If, as in this case, the materials themselves reveal defense counsel's thoughts and opinions about the defense of the case, this clearly would subvert a defendant's right to compulsory process, among other constitutional rights.

V.    <u>Conclusion</u>.

For the reasons stated above, the government's motion to compel is denied.


___/s/ Page Kelley_____
PAGE KELLEY
CHIEF UNITED STATES MAGISTRATE JUDGE

November 9, 2020

9