UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.: 19-10080-NMG |
| | ) | |
| (14)　　JOHN WILSON | ) | **Leave to file granted on November 13, 2020,** |
| | ) | **Dkt. 1594, and on November 17, 2020, Dkt.** |
| Defendant. | ) | **1615.** |
| | ) | |
| | ) | |

**GOVERNMENT'S SUR-REPLY IN OPPOSITION TO DEFENDANT JOHN
WILSON'S MOTION FOR RELIEF BASED ON THE SEARCH
OF HIS BUSINESS EMAIL ACCOUNT (Dkt. 1437)**

The government respectfully files this sur-reply to address defendant John Wilson's

amended reply in support of his motion for relief based on the search of his email account.  *See*

Dkt. 1571.

First, Wilson incorrectly contends that the warrant "limited the government's search to

'evidence, fruits, or instrumentalities' of enumerated crimes," and "further restrict[ed] the

authorized search to eight specific categories of 'evidence, fruits, or instrumentalities.'"  *Id*. at 5-

6 (emphasis omitted).  That is not true.  The warrant authorized the government to *search* all emails

in the account, and to *seize* those that are responsive to the warrant.  *See* Dkt. 1510-1 at Ex. X

[Warrant Attachment B-4].  Such searches are routine, and comply with black-letter law.  *See In*

*the Matter of a Warrant for All Content & Other Info. Associated with the Email Account*

*xxxxxxx@gmail.com Maintained at Premises Controlled By Google, Inc.*, 33 F. Supp. 3d 386, 394

(S.D.N.Y. 2014), as amended (Aug. 7, 2014) (noting that "every case of which we are aware that

has entertained a suppression motion relating to the search of an email account has upheld the

Government's ability to obtain the entire contents of the email account to determine which

particular emails come within the search warrant."); *see also United States v. Aboshady*, 951 F.3d 1, 5 (1st Cir. 2020) (affirming procedure by which government searched all emails in an account).[1]

Second, other than the two-step procedure outlined in the warrant itself—which is explicitly authorized by FED. R. CRIM. P. 41(e)(2)(B) and was upheld by the First Circuit in *United States v. Upham*, 168 F.3d 532 (1st Cir. 1999), and which, as previously noted, the government followed here—there is no prescribed protocol for how such searches are to be conducted. *See United States v. Kanodia*, No. CR 15-10131-NMG, 2016 WL 3166370, at *7 (D. Mass. June 6, 2016) (noting that the court "generally will not interfere with the discretion of law enforcement in determining 'how best to proceed with the performance of a search authorized by warrant.'") (further citations omitted). In any event, as previously described, the government followed a reasonable protocol to identify materials responsive to the warrant using search terms, date restrictions, sampling, metadata analysis for non-spousal communications, and filters removing potentially privileged attorney-client communications. *See* Gov't Sealed Revised Declarations Response (Oct. 30, 2020) at 3-5.

Third, to the extent the government "seizes" information beyond the scope of the warrant, the proper remedy is not blanket suppression, but only suppression of specific emails that were improperly seized.[2] *See United States v. Falon*, 959 F.2d 1143, 1149 (1st Cir. 1992) ("The remedy

---

[1] Wilson's contention that a government witness or attorney may be "tainted" by reviewing spousal communications is untrue. The law is clear that the government is permitted to search such emails. *See* Dkt. 1510 at 13-18.

[2] Wilson's contention that suppression is justified to deter the government from "disregard[ing]" the marital communications privilege "at will," *see* Dkt. 1571 at 14, is untrue. The government relied in good faith on a warrant that was reviewed and approved by the magistrate judge, and that adhered to a form that has been routinely approved, and it executed a two-step search procedure that likewise followed established rules and precedent. Suppression is not warranted in such circumstances, because "the deterrent effects on law enforcement do not outweigh the great cost to society of suppressing the resulting evidence." *United States v. Levin*, 874 F.3d 316, 324 (1st Cir. 2017) (applying good-faith exception set forth in *United States v. Leon*, 468 U.S. 897, 923 (1984)).

in the case of a seizure that casts its net too broadly is . . . not blanket suppression but partial suppression.") (further citation omitted); *see also Aboshady*, 951 F.3d at 9 ("If the scope of the government's search was too broad, Aboshady would only be entitled to suppression of those emails that were introduced at trial and that reasonably fell outside the scope of the warrant unless the 'lawful and unlawful parts of the search are inextricably intertwined or where the lawful part seems to have been a kind of pretext for the unlawful part.'") (further citation omitted).

Fourth, the 153 exhibits that Wilson appends to his reply add little to this analysis.[3] Wilson concedes that many of these emails are "directly and critically relevant" to this case. *See* Revised Kendall Decl. at ¶ 15. One-third concern



---

[3] This number is artificially inflated in at least three ways. First, Wilson appends numerous emails more than once, and labels them as separate exhibits. *Compare, e.g.*, Exs. 27, 38, 66, 24, 65, 70 & 105, *with* Exs. 39, 61, 74-75, 79, 88, 92 & 108, respectively. Second, Wilson separates emails from their corresponding attachments, and likewise labels them as separate exhibits. *See, e.g.*, Exs. 20-23, 25-26, 28-29, 34-37, 40-51, 74-75, 95-96, 118-17, 122-25, 128-31, 133-36, 139-40, & 152-53. Third, Wilson includes multiple emails that he already included as exhibits in prior briefing. *See, e.g.,* Exs. 12-13, 20-21, 66, & 74-75.



These examples are within the scope of the warrant because, among other things, it authorizes the

seizure of communications between or among the defendant, Singer, and others concerning college

admissions, standardized tests, and securing admission for students into college.  *See* Dkt. 1510-1

at Ex. X [Warrant Attachment B-4].

More than half of the exhibits ████████████████████████████████

██████████████████████████████████████████████.[4]  These emails are

evidence of the crimes specified in the warrant insofar as, among other things, they concern the

inability of Wilson's son to play the sport for which he was purportedly recruited to USC.

More than half of the exhibits—including virtually every exhibit relating to ██████████

████—establish Wilson's identity as a user of the target account and/or establish his "travel or

whereabouts."[5]  *See* Dkt. 1510-1 at Ex. X [Attachment B-4 to the warrant].  While some of these

emails are personal in nature and appear irrelevant to the subject matter of the warrant, it is "in

consequence of the especially personal information contained in them" that they *are* responsive.[6]

---

[4] *See, e.g.,* Exs. 2-5, 7-8, & 10.

[5] *See, e.g.,* Exs. 6, 9, 14, 16, 18-19, 20-24, 27-29, 31, 34-38, 40-43, 46-51, 55-61, 63-65, 67-68, 70-72, 76-79, 81-89, 92-94, 97, 116-117, 121-22, 128, 130, 133, 135, 139, 149, & 152-53.

[6] Wilson's contention that these communications are "are in no way 'evidence, fruits, or instrumentalities' of a crime" is untrue.  Not every piece of evidence of a crime need establish the elements of the crime.  The identity of the user of the target account, and the location of that user, is evidence of the crime that is within the plain terms of the authorized seizure.  *See Absohady,* 951 F.3d at 8; *see also United States v. Peake*, 804 F.3d 81, 86–87 (1st Cir. 2015) (noting that "search warrants and affidavits should be considered in a common sense manner, and

*See Aboshady*, 951 F.3d at 8 (affirming seizure of "statements and pictures uniquely relevant to Aboshady because they were uniquely personal to Aboshady, and only Aboshady," and noting that "[t]his feature of those documents thus demonstrated that it was unlikely that anyone but Aboshady would have sent or received the emails that contained the statements or pictures and, in that respect, as the District Court concluded, helped to demonstrate that the email account that was alleged to be Aboshady's was in his control"). To the extent Wilson is concerned about privacy issues, all the emails are subject to the terms of the protective order in this case.

Notwithstanding the foregoing, Wilson has identified some emails that, despite the government's search protocol, are not within the scope of the warrant. Many others are technically responsive, but it is unlikely that the government will seek to introduce them at trial or use them for impeachment purposes. In the event that the government—or any other defendant—seeks to do so, the proper remedy available to Wilson is not blanket suppression, but a targeted motion to preclude such use.

### CONCLUSION

For the foregoing reasons, and those set forth in the government's prior filings, the defendant's motion should be denied.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td>ANDREW E. LELLING<br>United States Attorney</td></tr>
<tr><td>By:</td><td>*/s/ Justin D. O'Connell*<br>JUSTIN D. O'CONNELL<br>LESLIE A. WRIGHT<br>KRISTEN A. KEARNEY<br>STEPHEN E. FRANK<br>KARIN M. BELL</td></tr>
<tr><td>Date: November 17, 2020</td><td>Assistant United States Attorneys</td></tr>
</table>

---

hypertechnical readings should be avoided") (citations and internal quotation marks omitted).

## CERTIFICATE OF SERVICE

I hereby certify that today a redacted version of this sur-reply, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing. I further certify that today an unredacted version this sur-reply, filed under seal using the Electronic Drop Box (EDB) for the U.S. District Court for the District of Massachusetts, was served via email on counsel for defendant John Wilson.

Date:  November 17, 2020

By:     */s/ Justin D. O'Connell*
        JUSTIN D. O'CONNELL
        Assistant United States Attorney