1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
2

3   UNITED STATES OF AMERICA,         )
                        Plaintiff     )
4                                     )
    vs.                               )  No. 1:19-CR-10080-NMG
5                                     )
    GREGORY COLBURN, et al.,          )
6                    Defendants.      )
                                      )
7                                     )
                                      )
8                                     )
                                      )
9


10


11          BEFORE THE HONORABLE NATHANIEL M. GORTON
                 UNITED STATES DISTRICT JUDGE
12                    STATUS CONFERENCE


13


14


15
          John Joseph Moakley United States Courthouse
16                   Courtroom No. 4
                     One Courthouse Way
17              Boston, Massachusetts 02210


18
                     June 15, 2021
19                     3:30 p.m.


20


21
                 Kristin M. Kelley, RPR, CRR
22                  Official Court Reporter
          John Joseph Moakley United States Courthouse
23               One Courthouse Way, Room 3209
                 Boston, Massachusetts 02210
24                E-mail: kmob929@gmail.com


25       Mechanical Steno - Computer-Aided Transcript

```
 1    APPEARANCES:

 2

 3            Stephen E. Frank
              United States Attorney's Office MA
 4            1 Courthouse Way
              Suite 9200
 5            Boston, MA 02210
              617-748-3244
 6            stephen.frank@usdoj.gov
              for Plaintiff.
 7

 8
              David S. Schumacher
 9            Hooper, Lundy & Bookman, P.C.
              470 Atlantic Avenue
10            Suite 1201
              Boston, MA 02210
11            617-532-2704
              DSchumacher@health-law.com
12            for Gregory Colburn and Amy Colburn.

13

14            Patric Hooper
              Hooper, Lundy & Bookman, PC
15            1875 Century Park East
              Suite 1600
16            Los Angeles, CA 90067
              310-551-8165
17            Phooper@health-law.com
              For Gregory Colburn and Amy Colburn.
18

19
              Jennifer L. Keller
20            KELLER/ANDERLE LLP
              18300 Von Karman Avenue
21            Suite 930
              Irvine, CA 92612
22            949-476-8700
              Jkeller@kelleranderle.com
23            For I-Hsin Chen.

24

25
```

```
 1    APPEARANCES:

 2
              Tracy A. Miner
 3            Miner Siddall LLP
              101 Federal Street
 4            Suite 650
              Boston, MA 02110
 5            617-202-5890
              Tminer@msdefenders.com
 6            For Homayoun Zadeh.

 7
              Michael Kendall
 8            White & Case, LLP
              75 State Street
 9            Boston, MA 02109
              617-939-9310
10            Michael.kendall@whitecase.com
11            For John Wilson.

12
              Andrew E. Tomback
13            McLaughlin & Stern, LLP
              260 Madison Avenue
14            New York, NY 10016
              917-301-1285
15            Atomback@mclaughlinstern.com
16            For John Wilson.

17
              Brian T. Kelly
18            Lauren Maynard
              Nixon Peabody LLP
19            100 Summer Street
              Boston, MA 02110
20            617-345-1000
              Bkelly@nixonpeabody.com
21            For Gamal Abdelaziz.

22

23

24

25
```

```
 1    APPEARANCES:

 2
             Eoin P. Beirne
 3           Mark E. Robinson
             R. Robert Popeo
 4           Cory S. Flashner
             Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, PC
 5           One Financial Center, 42nd Flr.
             Boston, MA 02111
 6           617-348-1707
             Ebeirne@mintz.com
 7           For Elisabeth Kimmel.

 8

 9           Jack P. DiCanio
             Allen J. Ruby
10           Skadden, Arps, Slate, Meagher & Flom LLP
             525 University Avenue
11           Palo Alto, CA 94301
             650-470-4500
12           Jack.dicanio@skadden.com
             For Marci Palatella.
13

14
             Michael K. Loucks
15           Skadden, Arps, Slate, Meagher & Flom LLP
             500 Boylston Street
16           Boston, MA 02116
             617-573-4840
17           Michael.loucks@skadden.com
             For Marci Palatella.
18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

THE CLERK:  This is Criminal Action No. 19-10080, the United States of America versus Gregory Colburn, et al.

Would counsel please introduce themselves for the record.

MR. FRANK:  Steven Frank for the United States.  Good afternoon, your Honor.

THE COURT:  Good afternoon, Mr. Frank.

MS. KELLER:  Good afternoon, your Honor.  Jennifer Keller on behalf of Mr. Chen.

THE COURT:  Miss Keller, good afternoon to you.

MS. MINER:  Tracy Miner on behalf of Dr. Zadeh.

THE COURT:  Miss Miner, good afternoon to you.

MR. KELLY:  Good afternoon, your Honor.  Brian Kelly and Lauren Maynard on behalf of Mr. Abdelaziz.

THE COURT:  Mr. Kelly and Miss?

MR. KELLY:  Maynard, bottom left square.

THE COURT:  Unfortunately, your squares and mine don't coincide, but it's Miss Maynard, in any event, as well as Mr. Kelly for Mr. Abdelaziz; is that right?

MR. KELLY:  That's right, your Honor.

THE COURT:  Okay.  Next.

MR. KENDALL:  Good afternoon, your Honor.  Michael Kendall, along with Andrew Tomback, for John Wilson.

THE COURT:  Mr. Kendall and Mr. Tomback for

1    Mr. Wilson.  Good afternoon.

2         MR. SCHUMACHER:  Good afternoon, your Honor.  David

3    Schumacher and Patric Hooper on behalf of Gregory Colburn and

4    Amy Colburn.

5         THE COURT:  Mr. Schumacher?

6         MR. SCHUMACHER:  Yes, and Patric Hooper is here as

7    well on behalf of the Colburn's.

8         THE COURT:  All right.  Thank you.  That leaves a

9    representative for Miss Kimmel and Miss Palatella to go.

03:35 10         MR. BEIRNE:  Good afternoon, your Honor.  Eoin Beirne

11    for Miss Kimmel, along with Robert Popeo, Mark Robinson and

12    Cory Flashner.

13         THE COURT:  All right.  So it's Mr. Beirne,

14    Mr. Robinson, Mr. Popeo, and Mr. Flashner for Miss Kimmel,

15    correct?

16         MR. BEIRNE:  Correct.  Thank you, your Honor.

17         MR. DICANIO:  Good afternoon, your Honor.  Jack

18    DiCanio and Mr. Loucks for Miss Palatella.

19         THE COURT:  All right.

03:35 20         Counsel, I understand that this videoconference,

21    status conference, is a public hearing and these proceedings

22    are being made available to members of the public, the press,

23    and interested parties via Zoom technology.  Those attendees

24    are not, of course, permitted to participate in any other way

25    in these proceedings.  I remind all of you who are attending

1   this videoconference that Federal Rule of Criminal Procedure 53

2   and local Rule 83.3 prohibit photographing, recording, and

3   broadcasting this proceeding, and any violation of these rules

4   will subject the wrongdoer to sanctions and/or loss of press

5   privileges.

6           Good afternoon again, counsel.  As you are aware, this

7   case has been pending for more than 2 years.  Trial dates have

8   been set and postponed on multiple occasions due to the

9   COVID-19 pandemic.  A number of defendants have pled guilty and

03:36  10   one was pardoned.  There's currently eight defendants

11   remaining, all of whom are set to go to trial in September of

12   2021.

13           In preparation for this status conference, I have

14   conferred at length with the Clerk's office to discuss the

15   feasibility of holding an eight defendant trial this fall and

16   have considered how to group the remaining defendants, should

17   two trials be necessary.

18           Before I announce my initial decisions on the upcoming

19   trial or trials, however, I will share my rulings with respect

03:37  20   to the pending motions to transfer by the defendants Amy

21   Colburn, Gregory Colburn and I-Hsin Chen, and the motion to

22   dismiss the indictment by the defendant Elisabeth Kimmel.

23           Having reviewed the parties' submissions, I will deny

24   both motions, dockets Nos. 1867 and 1877, with memoranda and

25   orders to follow.  Actually, I entered a memorandum and order

1  with respect to the motion of the defendants Colburn and Chen

2  just a few hours ago in which I explain that decision.

3          As to Mrs. Kimmel, her motion to dismiss, docket

4  No. 1877, while the Court is sensitive to her medical

5  circumstances and will continue to monitor her condition, none

6  of the alleged constitutional violations warrants the dismissal

7  of the indictment.  If anything, she has raised matters which,

8  if proved, could support a lawsuit under Section 1983.

9          Do counsel wish to address what I've said thus far?  I

03:38 10  will hear you.  Anybody wish to be heard?

11          MR. BEIRNE:  Your Honor, we respect the Court's

12  ruling.

13          THE COURT:  For the record, this is Mr. Beirne on

14  behalf of the defendant Kimmel, correct?

15          MR. BEIRNE:  Yes, your Honor.  Thank you.  We had

16  evaluated the government's filing filed late last week and did

17  anticipate requesting permission from the Court to file a short

18  reply.  If your Honor would entertain a reply, no fewer than

19  5 pages, we could get that to you in short order if you will

03:39 20  consider it.  If you're inclined to simply rule, then so be it.

21          THE COURT:  You certainly are entitled to submit a

22  further pleading on the matter.  I guess it would technically

23  be a motion for reconsideration, but I will consider it if you

24  submit it quickly, because matters need to be resolved in this

25  case with so many defendants, and time is now of the essence.

1    If you wish to file a further pleading with respect to that

2    motion, do so.  I will expect it by the close of business,

3    let's say, Friday, this Friday.  I will reconsider that matter

4    to that extent, unless the government wishes to be heard

5    further in that regard.

6              Anything else from anybody else with respect to what

7    I've said thus far?

8              Hearing none, turning now to the trial that is

9    scheduled for September of this year.  The Court, after due

03:40 10   deliberation, is satisfied that, in September, this Court will

11   be able to convene a multi-defendant criminal jury trial for up

12   to six defendants in the Moakley Courthouse.  Indeed, the

13   Clerk's office anticipates that all of the COVID-19

14   restrictions will be lifted on or before Labor Day.  In fact,

15   many of them have been lifted as of today, but they'll all be

16   lifted before Monday, September 6th, that is Labor Day, which

17   is just prior to the scheduled date for empanelment in this

18   case.

19             So, if in the near future the total number of

03:41 20   defendants whose cases remain unresolved is reduced to six, the

21   Court will proceed with a jury trial of all of the six

22   remaining defendants to commence, as scheduled, on September 8,

23   2021.

24             That said, the Court recognizes that proceeding with

25   eight defendants in a single trial poses unique logistical

1    problems and would prove very difficult regardless of COVID-19.

2    Accordingly, in the absence of a reduction of the number of

3    defendants, which neither side apparently expects, the Court

4    will re-sever the case.

5         The five remaining defendants who allegedly conspired

6    with Mr. Singer to, among other things, facilitate the

7    admission of their children through the so-called side door by

8    bribing athletic coaches and administrators will still be tried

9    together in September.  Those defendants are the defendants

03:42 10   Abdelaziz, Kimmel, Palatella, Wilson, and Zadeh.

11        The remaining alleged so-called test cheating

12   defendants, that is the Colburn's and Chen, however, will be

13   tried together in January of 2021.

14        I will hear counsel with respect to what I have just

15   announced.  Then I have a few other things to cover.

16        Anybody wish to be heard?

17        MR. KELLY:  Your Honor, this is Brian Kelly on behalf

18   of the defendants.  We were looking for some certainty as to

19   the guidance as to what the Moakley Courthouse could allow.  If

03:43 20   the Court is, in fact, telling us there's room for six, I guess

21   there's room for six.  As the Court has noted, we also have the

22   right to move to reconsider, and perhaps I should talk to my

23   co-counsel about this now that the Court has given us this

24   information.  Perhaps we'll have five different volunteers.

25   Who knows?  Hope springs eternal here.  We understand your

1    ruling.  We understand you're advising us clearly that the

2    courthouse can handle six, and your interest with going forward

3    with at least five in September.

4         THE COURT:  And, of course, that does anticipate some

5    of the other matters that I was going to discuss.  The

6    courtrooms may well need to continue to be adjusted.  The plan

7    is that I will try this case in one of the larger of the

8    courtrooms.  We may or may not have to utilize behind the bar

9    for tables.  I think we're going to be able to have all counsel

03:44 10   and defendants in the so-called well.  I may have to restrict

11   the defendants to one counsel at counsel table with his or her

12   client with backup counsel behind the bar.  I'm not quite sure

13   how the logistics will work with the number of tables that

14   we'll be able to get into the bar.

15        Those are details that we will, of course, be working

16   on between now and September, but I am satisfied that whether

17   or not we have the tables in front of the bar or eliminate some

18   of the gallery seats and have tables behind the bar and then

19   have a satellite closed circuit courtroom next door available

03:45 20   for the public and other interested people, that remains to be

21   determined.  We are satisfied that we are going to be able to

22   have jurors in the jury box, as we used to, without the

23   so-called social distancing of six or more feet by September,

24   and that we're going to be able to proceed in a manner that

25   will be sufficient to ensure an appropriate trial for all of

         1    the parties that remain.

         2         I need to discuss the deadlines that have previously

         3    been scheduled.  As you may recall, I entered an order back in

         4    December, I believe it was, at which point I set deadlines

         5    down.  Two of those deadlines, of course, have already passed.

         6    This is docket No. -- I'm afraid I don't have the docket

         7    number.  It's docket No. 1679, which was entered December 21st

         8    of 2020.  As you may recall, government's expert disclosures

         9    were due Friday, May 28th.  Reciprocal discovery from

03:46   10    defendants was due Monday, June 7th.  All of the remaining

        11    deadlines, of course, are still in the future.

        12         Is there any problem with any of those deadlines that

        13    counsel wishes to address?

        14    MR. FRANK:  Your Honor, on behalf of the government, I

        15    would say, given the Court's ruling, now reducing the number of

        16    defendants, we're going to have to adjust both our exhibit list

        17    and witness list and could use a modest amount of additional

        18    time to submit those, which would otherwise be due two days

        19    from today, to pair those down.

03:47   20         I would also note that we did not file expert

        21    disclosures.  We don't intend to file expert disclosures, but

        22    we have received very, very little in the way of reciprocal

        23    discovery from the defense, nothing from several defendants.  I

        24    don't know whether that is because there is no reciprocal

        25    discovery that they intend to produce to us, but it would be

```
 1    helpful if we knew the answer to that.
 2              MR. KENDALL:  Your Honor, if I may be heard?  Mike
 3    Kendall for Mr. Wilson.  When the Court consolidated us back
 4    with Colburn, the Court noted that the deadlines were
 5    suspended.  We thought that applied to all defendants.  There
 6    are reciprocal discovery materials we need to supply to the
 7    government.  We need a little bit of time to put those together
 8    now that the Court has affirmed the trial schedule.  I think
 9    that's the one deadline that we need to get set.  I can't speak
10    for the other defendants.  I don't know what their situation
11    is.  Today's the 15th.  If we could have until the 25th to get
12    everything organized and out.
13              THE COURT:  You're cutting out a little bit.  Did you
14    say the 22nd?
15              MR. KENDALL:  25th, your Honor, if that would be
16    acceptable to the Court.
17              THE COURT:  What day of the week is the 25th?
18              MR. KENDALL:  I think it's a Friday.
19              THE COURT:  Okay.  I will give all of the defendants
20    until the 25th to provide reciprocal discovery to the
21    defendants.  I will also give the government until that same
22    date to file its list of exhibits and witness lists.
23              Then I will extend the deadline that called for the
24    defendants' expert disclosures to one week after the 25th.  So
25    that would be July 2nd, am I right?  That extends that deadline
```

1  slightly.

2          Then the remaining deadlines will remain the same.

3  That is the defendants' exhibits and the witness lists will be

4  due on Friday, July 16th.

5          The meet and confer on documents will be Wednesday,

6  July 21st.

7          Rebuttal expert disclosures on Wednesday, July 28th.

8          All parties' motions in limine, voir dire, and jury

9  instructions, that is your first effort at jury instructions,

03:49 10  will be due on Friday, July 30th.  I will, of course, allow

11  supplemental jury instructions during the course of trial.  I

12  do like to get your first efforts well in advance of trial so

13  that I can anticipate the legal issues, if any, that will

14  arise.  I'm sure there will be several.

15          All responses to motions in limine, voir dire and jury

16  instructions by Friday, August 6th.

17          A final pretrial conference will be scheduled for

18  Wednesday, August 18th at 11:00 a.m.

19          All of these matters, as far as I'm concerned, can be

03:50 20  by remote, by videoconference, unless there is a reason why

21  they ought to be in person.  I suppose at some stage it's going

22  to be helpful for counsel to be in the courthouse to see the

23  logistics and to understand the limitations we're going to be

24  under.  I am perfectly willing to make that final pretrial

25  conference an in person trial conference, but I will hear

1   counsel as to whether or not that is appropriate.

2           Those are the matters that relate to the deadlines.

3   Again, any comments by any counsel?

4           MR. FRANK:  Nothing for the government, your Honor.

5           MR. KELLY:  Procedurally, Judge, I assume this is

6   maskless?

7           THE COURT:  Yes, it is.  We are maskless in the

8   courthouse for the first time in 15 months.  It's very nice.

9   Now, let me say this.  To the extent that anybody wants to wear

03:51 10   a mask, I'm not going to forbid it.  I suppose I'll end up

11   telling the jurors, if they feel more comfortable in wearing

12   masks, they certainly can.  I'm not going to allow witnesses

13   while testifying to wear masks.  I'm not going to allow the

14   defendants in the courtrooms to wear masks, but other than

15   that, if somebody feels uncomfortable or has some special

16   reason why they believe they ought to be able to wear masks,

17   I'm going to be liberal in that regard.  Please understand

18   that.  There are no requirements to wear masks at any point in

19   the courthouse, whether in a courtroom or in the corridors

03:52 20   surrounding the courtroom and so forth.

21           Any other questions or comments?

22           MS. MINER:  Tracy Miner on behalf of Dr. Zadeh.

23           THE COURT:  Miss Miner.

24           MS. MINER:  At least one pretrial subpoena still

25   outstanding.  I've been pressing the recipients to hurry it up

1   and get us the documents.  Obviously, we will use them as soon

2   as we get them.  Hopefully, I will be able to get them by the

3   25th.  I just wanted to alert the Court.  We understand our

4   continuing obligations to disclose.

5        THE COURT:  I urge counsel to try to avoid any of

6   those slippages in time because of the number of parties that

7   are involved when time is of the essence.  Of course, we're in

8   the summer season when it's harder to get people assembled.  If

9   there is anything the Court can do to assist in helping these

03:53 10   discovery problems -- of course Magistrate Judge Kelley has

11   been very helpful to this district judge throughout these

12   proceedings.  She continues to be able, on a short notice, to

13   help you with any discovery issues.  Bring them up sooner

14   rather than later.  Okay?

15        MS. MINER:  Yes, your Honor.

16        THE COURT:  Let me see if I can --

17        MR. SCHUMACHER:  Your Honor, this is David Schumacher

18   for the Colburn's, your Honor.

19        THE COURT:  It's Mr. Schumacher?

03:54 20        MR. SCHUMACHER:  Yes, your Honor.  David Schumacher

21   for the Colburn's.  Does your Honor have a date in mind for

22   January for the second trial in the event the group remains?

23        THE COURT:  Yes.  I'm going to issue an order

24   relatively quickly in that regard.  I think I did put this

25   down.  I have put down in another piece of paper all of the

1    dates, which, of course, correspond virtually identically in

2    terms of times before trial for each of these deadlines.  I

3    believe we have scheduled the final pretrial conference for

4    Wednesday, January 5, 2022, at 11 a.m., with jury empanelment

5    on Tuesday, January 11th at 9 a.m., with the jury trial to

6    start as soon after empanelment as possible.

7         MR. SCHUMACHER:  Is it fair to say, your Honor, that

8    the other pretrial deadlines will be the similar length before

9    trial?

03:55 10       THE COURT:  Yes.  Exactly.  I believe the first one is

11   the government's expert disclosures by Thursday, September 2nd.

12        MR. SCHUMACHER:  Thank you, your Honor.

13        THE COURT:  We'll get that order out relatively

14   quickly.  I'm going to defer on it just for a short period of

15   time in the unlikely event that there are any further movement

16   toward resolution of any of the defendants and give you a

17   little bit of time to think about that.  These orders will go

18   out relatively quickly.

19        MR. KENDALL:  Your Honor, may I jump in for two quick

03:55 20  things?

21        THE COURT:  Mr. Kendall, yes.

22        MR. KENDALL:  Yes.  Thank you.  The first is we had

23   filed an earlier motion for severance based upon the factual

24   differences in the evidence and the witnesses between our case

25   and the other co-defendants.  I would like to renew that

 1  motion.

 2          To put it succinctly, and I think in terms of the

 3  issues most important to the Court, Wilson is charged with a

 4  tax case and Wilson's facts do not arise from Donna Heinel and

 5  a certain set of events that the other sub co-defendants, the

 6  four of them, have.  Wilson's son, as you may remember,

 7  actually was a member of the U.S.C. water polo team and came in

 8  through a different way, being recruited by the coach.

 9          Bottom line, what I think is most relevant to the

03:56 10  Court, Wilson's case adds at least one week of trial with

11  defendants that are not relevant to anybody else.  If we're --

12  the government estimates it's three weeks for its case and

13  three weeks for the defense case.  There's another week for

14  Wilson issues that every other defendant will be sitting on

15  their hands and having -- there's two tax preparers, a

16  bookkeeper, a government IRS agent, a defense tax expert to

17  respond and others.  I would just like your permission to file

18  that motion to sever based on the trial schedule.

19          THE COURT:  Mr. Frank?

03:57 20          MR. FRANK:  Your Honor, I don't think we have anything

21  new to say on the subject.  There will be tax evidence with

22  respect to other defendants who are not specifically charged

23  with tax counts.  There's going to be an IRS witness.  In any

24  event -- so we don't expect -- we contemplated all that in the

25  schedule that we set forth to the Court.  We just disagree that

1    it's going to add so meaningfully to the trial.

2            THE COURT:  Mr. Kendall, if you're going to file a

3    motion to reconsider, it will be filed promptly.  It will be no

4    more than 10 pages.

5            MR. KENDALL:  Thank you, your Honor.

6            The other issue is, not to bid against myself, but if

7    my motion does not prevail on the Court, there's a couple of

8    Jewish holidays in September.  We'd like to file a supplemental

9    note to the Court of maybe one day for Yom Kippur and 1 day for

03:58 10    Rosh Hashanah.

11           THE COURT:  I am very cognizant of that, Mr. Kendall,

12   although I don't have the dates in mind.  I will certainly

13   honor any requests to avoid trial on the High Holy Days in

14   September.  I was under the impression that one of them is

15   early this year and we weren't going to conflict with Rosh

16   Hashanah.

17           MR. KENDALL:  At one point, you discussed doing jury

18   selection a week before, starting on September 8th.  If that's

19   still the Court's preference -- sorry -- the week before

03:58 20   September 12th.  If you started early jury selection, it's an

21   issue.

22           THE COURT:  When is Rosh Hashanah this year?

23           MR. KENDALL:  I'd have to check.  I think it's

24   probably around the 8th or so.

25           THE COURT:  If it's the 8th, then we will avoid the

1   8th.

2   MR. KENDALL:  That's all I'm asking.

3   THE COURT:  And start the empanelment on the ninth.  I

4   think I looked at it one time and I can't remember either.  We

5   will certainly honor that request, one day for Rosh Hashanah

6   and one day for Yom Kippur, is that correct?

7   MR. KENDALL:  That's fine with me.  I discussed it

8   with Mr. Frank.  I think it's fine with the government.

9   MR. FRANK:  It's correct.  I checked with Rabbi

03:59 10  Google.  It's the night of September 6th and full day of

11  September 7th is the first day of Rosh Hashanah.

12  THE COURT:  So the 8th will be available for

13  empanelment?

14  MR. FRANK:  There are some folks who would perhaps

15  observe both days, but I don't think that's an issue here.

16  THE COURT:  Mr. Kendall, you said it was not an issue

17  with you?

18  MR. KENDALL:  Won't be this year, your Honor, but it

19  usually is.

03:59 20  THE COURT:  If anybody else has a problem, I think I

21  had conservatively suggested that we start empanelment on the

22  8th because that leaves three days that week to complete

23  empanelment.  If it is necessary to avoid the 8th and just do

24  empanelment on Thursday and Friday, the 9th and 10th, we'll do

25  that, but I would prefer to start on the 8th so that we can

1   complete for sure by the end of that week and, therefore, be

2   able to start with the evidence in the case on Monday,

3   September 13th.  If anybody has any problem with the 8th, I

4   urge you to file sooner rather than later.  Okay?

5          MR. KENDALL:  Thank you, your Honor.

6          THE COURT:  All right.  I did want to discuss with the

7   government the anticipated length of trial, which, as I

8   understand it, you believe, Mr. Frank, is going to be six or

9   7 weeks.  I don't understand why it should take us that long,

04:01 10   especially if we have five defendants and not eight.  Can you

11   explain that for me?

12          MR. FRANK:  Your Honor, we were a little bit generous,

13   but we were assuming about two and a half to three weeks on the

14   government's direct case.  So we just assumed an equal amount

15   of time for cross.

16          THE COURT:  Are you meaning you're only adding up the

17   number of hours that your witnesses are going to be on direct

18   examination and not anticipating that, of course, each one of

19   your witnesses will be cross-examined probably for about the

04:01 20   same amount of time that they're on direct?

21          MR. FRANK:  That's right.  That's why we came up with

22   the longer.

23          THE COURT:  Usually, when I get an estimate from the

24   government as to how long a trial is going to be, they throw

25   into their estimate an estimate of equal time for

cross-examination.  When they say their case is going to take

three weeks, that means they're going to be on the stand for a

week and a half on direct examination and their witnesses are

going to be on the stand for a week and a half on cross.

You're telling me three weeks is all direct examination.  Is

that what you're saying?

MR. FRANK:  We did have a footnote, but yes, your

Honor.  We believe two and a half to three weeks on direct

examination and an equal amount of time for cross-examination

given the number of defendants.

THE COURT:  That's anticipating that the defendants

aren't going to have any case at all of their own.

MR. FRANK:  That did not include time for a defense

case.  That's because, in the five defendant trial, we are

putting in evidence of both aspects of the scheme, your Honor.

THE COURT:  Any of the defendants wish to be heard on

the question of the length of trial?

Okay.  Silence.

As you probably all know, I usually put time limits on

civil cases.  I've never done it on a criminal case, but my

colleague, Judge Stearns did it, and nobody appealed, and it

wasn't reversed.  So guess what?  I'm considering, as a last

resort, considering time limits on both the government and the

defendants in this case.  If it can't be -- if I can't be

convinced that counsel are going to work as hard as they can to

1    keep this case within reason, as counsel I'm sure are aware, if

2    jurors get to the point where they think one party or the other

3    is the reason they're having to spend more time than they think

4    is necessary to hear a case, they hold it against the party

5    that's keeping them in the jury box.  You're all astute,

6    excellent trial lawyers, and you know that.  You know that when

7    you have two witnesses that can present the evidence that you

8    need on your side of the case instead of four, you're better

9    off eliminating those other two witnesses.  You don't get

04:04 10    100 percent of all of the testimony that you want, but

11    96 percent is a lot better than offending 12 jurors who are

12    going to decide your case.

13          I don't think this case needs to take six or

14    seven weeks, especially now that it's reduced to five

15    defendants.  I'm going to consider ways to do that, whether or

16    not that involves time limits.  I just think counsel have got

17    to think long and hard about how they reduce the number of

18    witnesses that they're calling in this case so that we don't

19    keep people from their livelihood for any longer than they have

04:05 20    to be kept.

21          MR. KELLY:  Your Honor, on behalf of --

22          THE COURT:  Mr. Kendall.

23          MR. KENDALL:  I have had the pleasure of trying those

24    two time limit cases with Judge Stearns, as well as Mr. Frank.

25    I want to raise two concerns, one that can be helpful and one

1    that can be an impediment.  The one thing that Mr. Frank noted,

2    you're not trying the people who are the test takers in our

3    case, but he wants to put in the test taker evidence.  That's

4    going to take a chunk of time.  Nobody accuses any of our five

5    clients of having children who cheated or did anything improper

6    on their SAT scores, and yet he wants to put in that evidence

7    somehow to associate it with us even though we had no role in

8    it.  I think that's a place to save time, and we'll file a

9    motion in limine if the issue is not addressed before that time

04:05 10   period.

11              MR. FRANK:  I can respond to that, your Honor.

12              MR. KENDALL:  Let me finish, please, Mr. Frank.

13              THE COURT:  You may respond to that issue, Mr. Frank.

14              MR. KENDALL:  The second issue, your Honor, is that in

15    the two trials we had with Judge Stearns, it was four

16    defendants who basically had one set of facts and there was a

17    lot of cohesiveness in their facts and their issues.  What we

18    have here is five defendants who had never done anything with

19    Singer together.  Each one had their own relationship with

04:06 20   Singer.  So each one of the five is going to have to do crosses

21    because it's a different set of conversations, a different set

22    of tapes.  It's a different set of facts for each of the five

23    parents.  So there's a good thing and a bad thing.  I just

24    wanted to make the Court aware of.

25              THE COURT:  Thank you, Mr. Kendall.

1          Mr. Frank.

2          MR. FRANK:  Just briefly, your Honor.  Mr. Kendall is

3    mistaken.  There is a defendant in the five defendant case,

4    Miss Palatella, who is charged with participating in both

5    aspects of the scheme, both the test taking and the side door

6    aspect of the scheme.  That's why we need to put in evidence

7    concerning both in that trial.

8          Conversely, your Honor, even if the Court were to

9    configure the defendants separately, that would mean two longer

04:07 10   trials because of the side door aspect of the scheme requiring

11   more evidence, and that would expand the other trial.  This is

12   the more efficient way if the trials are to be severed.

13         Mr. Kendall is right.  We did have trial limits before

14   Judge Stearns.  In both of those cases, the government came

15   well under the trial limits and, unfortunately, it was the

16   defense that went over the time limits.  We will endeavor to do

17   the same here.  We gave an initial estimate, it's early, of two

18   to three weeks.  We will do everything to streamline that and

19   get this case as efficient as possible.

04:07 20         MR. KELLY:  Your Honor, Brian Kelly on behalf of

21   defendant Abdelaziz.  I don't want the Court to think we are

22   acquiescing to time limits.  We will object to that.  We

23   understand what the Court is saying.  We will cut to the chase.

24   We don't want to inundate the jury with the same non-sense, but

25   with five defendants it's the government who has the advantage

```
 1   if there are time limits.  We think it would act to our
 2   disadvantage if we were somehow cabined in on time.  At least
 3   at this point, that's my reaction to the Court's proposal.
 4        THE COURT:  Mr. Kelly, I didn't say that I would
 5   automatically give you equal time.  If you gave me good reason
 6   why the defendants should have more time than the government, I
 7   would hear you.  In other words, it isn't automatic that the
 8   defendant and the government, defendants plural, and the
 9   government automatically get the same amount of time to present
10   their respective cases.
11        MR. KELLY:  Okay.  If there's five of us and one of
12   them, maybe that's --
13        THE COURT:  I'm not going to make it five to one
14   either.
15        MR. KELLY:  The other thing, as AUSA Frank said, the
16   Palatella case involved the testing and not the donation
17   allegations.  So perhaps if the Court wants to streamline it
18   further, we should go four and four.
19        THE COURT:  Okay.
20        MR. DICANIO:  Your Honor, this is Jack DiCanio.  If I
21   could respond.  Your Honor, there is a submission that we would
22   like to make to the Court now that we have a better sense of
23   what is possible in terms of capacity and also the groupings
24   that your Honor has put together.  Your Honor, there are
25   aspects to our submission though that would be revealing our
```

1    defense strategy.  So we'd like to have an opportunity to

2    consider that and then submit something to your Honor to talk a

3    little bit about Miss Palatella's unique position in all of

4    this as it relates to the other trials as well.

5         THE COURT:  Are you asking me again to file something

6    ex parte?

7         MR. DICANIO:  Your Honor, we did submit something this

8    morning and your Honor rejected.  The reason for the ex parte

9    is part of what we wanted to file was to give the Court a

04:10 10   little bit of a better understanding as to our proposal and the

11   why behind it.  Your Honor, that would really reveal some

12   defense strategy and trial strategy as to how we're going to --

13        THE COURT:  Mr. DiCanio, we're close upon trial now.

14   Your trial strategy is going to have to be revealed, whether

15   it's a week, a month or six weeks before trial.  We're beyond

16   the point now of having these intrigues of everybody wanting me

17   to take something ex parte.  This is the adversary system.

18   You're going to have to reveal your plans, just as Mr. Frank is

19   going to have to reveal his.

04:10 20        I would discourage you.  You are certainly entitled to

21   file anything you want to file, but there is a point of no

22   return where it seems to be counterproductive.  I think it's

23   getting to that point.  We're hard upon trial in a

24   multi-defendant case that's been pending for over 2 years.

25   This matter needs to be resolved.

1          MR. DICANIO:  Understood, your Honor.  Obviously,

2     we'll be prepared whatever the Court ultimately rules.  We did

3     understand the reason for your denial of our ex parte, so if we

4     file something, we will file it publicly, and we'll consider

5     kind of how to move forward with that.

6          Your Honor, I do think it presents some issues that we

7     would like to consider bringing to the Court's attention and,

8     obviously, we would submit to your discretion as to how to deal

9     with Miss Palatella, who really is in both cases.  She is a

04:11 10    little bit different.  But there are other reasons that make

11    her very, very different from everybody you see in this screen.

12    I think we want to consider raising that to your Honor and have

13    you consider it.

14          THE COURT:  Okay.  Fair enough.

15          MS. KELLER:  Your Honor, on behalf of Mr. Chen, may I

16    make a request to the Court?

17          THE COURT:  Yes.  Hold on a second.  I like to keep

18    track of who is addressing me.  This is Miss Keller?

19          MS. KELLER:  Yes, your Honor.  Your Honor, I realize

04:12 20    that a federal criminal jury trial is going to take priority

21    over this, but I do have a major civil trial set January 3rd in

22    California.  It involves about a half a billion dollars in

23    damages, so it is a major trial.  I would request that the

24    Court either put this matter over until February instead of

25    January or if the Court is not inclined to do that, if the

1    Court could -- if the Court ordered me to be available to try

2    this case starting January 11th and not to be engaged in any

3    other matters before that, it would be helpful to me.

4         THE COURT:  I will so enter an order of this case that

5    is now over two years.  A criminal case over two years old

6    takes precedent.  If you need something, why don't you send my

7    deputy clerk what it is you need, and I will enter it.

8         MS. KELLER:  Thank you very much, your Honor.

9         THE COURT:  You're welcome.

04:13 10        Anybody else on any logistics matters that we haven't

11    discussed thus far?  We will certainly, of course, be

12    discussing many more of them at the final pretrial conference,

13    at which time we will go over the method of empanelment which,

14    of course, may well be a little different on this case than on

15    my standard cases.

16         For instance, I am going to probably have what I would

17    call an individual voir dire on questions of scheduling

18    matters, in other words, people that are or are not going to be

19    able to serve for six or seven weeks as jurors and any bias

04:14 20    questions as to pretrial publicity.  I think I'm going to go

21    through those individually, try to clear the entire jury pool,

22    and then proceed from that point to a more or less normal

23    empanelment.  The way I do it, and I think some of you are

24    aware of how I empanel jurors, that's for a later time.  I will

25    be getting together my methodology as to how we're going to

```
 1    empanel in this case more thoroughly during the next month.  We
 2    will be able to consider that in much more detail at a later
 3    time.
 4           Is there anything else then that needs to come to my
 5    attention with respect to this status conference at this time?
 6           MR. FRANK:  Not for the government, your Honor.  Thank
 7    you.
 8           THE COURT:  Not from the government, Mr. Frank.
 9    Anybody else?
10           MR. KENDALL:  One small thing.
11           THE COURT:  Yes, Mr. Kendall.
12           MR. KENDALL:  I misspoke when I referred to the
13    Palatella case.  I want to apologize to the Court for that.  I
14    thank Mr. Frank for correcting me.
15           THE COURT:  That's all right.  Anybody else?
16           All right.  Thank you, counsel.  I will be entering
17    orders consistent with the comments that I've made in this
18    status conference.  And anybody who has motions to reconsider
19    anything that I have said is forewarned to file those very
20    promptly.  I will deal with them as promptly as I can.
21           Thank you, counsel.  Have a nice rest of the week.
22    We're adjourned.
23           (Whereupon, the proceedings adjourned at 4:15 p.m.)
24
25
```

1                    C E R T I F I C A T E

2

3

4  UNITED STATES DISTRICT COURT )

5  DISTRICT OF MASSACHUSETTS     )

6

7

8          I, Kristin M. Kelley, certify that the foregoing is a

9  correct transcript from the record of proceedings taken

10  June 15, 2021 in the above-entitled matter to the best of my

11  skill and ability.

12

13

14     /s/ Kristin M. Kelley              June 17, 2021

15     Kristin M. Kelley, RPR, CRR              Date
       Official Court Reporter
16

17

18

19

20

21

22

23

24

25