UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GREGORY COLBURN et al.,<br><br>Defendants | Criminal Action<br>No. 19-10080-NMG<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT JOHN WILSON'S MOTION
TO PRECLUDE ARGUMENT OR EVIDENCE CONTRARY TO LAW
CONCERNING MONEY LAUNDERING**

Defendant John Wilson moves in limine to preclude the government from offering argument or evidence that is contrary to black letter law on money laundering, with respect to four payments that the Fourth Superseding Indictment ("Indictment") attributes to Wilson.[1] Of these four payments referenced in the money laundering section of the Indictment, the government alleges that only one of them qualifies as a financial transaction that violates the money laundering statute. But that transaction involved no concealment, a statutory requirement for money laundering. *See* 18 U.S.C. § 1956(a)(1)(B)(i). The government should not be allowed to argue that this overt transaction—which did not involve the proceeds of any crime, a second statutory requirement, *id.* § 1956(a)(1)—was an act of money laundering. The Court should preclude such argument or evidence because it is directly contrary to the money laundering statute and controlling First Circuit case law.

In the alternative, the Court should require the government to identify a financial transaction that (1) the Indictment attributes to Wilson, and (2) that actually conceals the nature or source of criminal proceeds of specified unlawful activity, before permitting the government

---

[1] This Motion is joined by defendants Elizabeth Kimmel, Gamal Abdelaziz, and Marci Palatella, and the same reasoning set forth in this accompanying memorandum of law applies to the money laundering conspiracy charge against these other defendants. Defendants Kimmel, Abdelaziz, and Palatella can identify specific evidence relating to the money laundering charges against them at the Court's request.

to introduce any evidence regarding its money laundering charge against Wilson. *See* Fed. R. Evid. 104(b).

## The Indictment

Count Three of the Indictment alleges a Money Laundering Conspiracy. It alleges that the purpose of the money laundering conspiracy was "to conceal and disguise the nature, location, source, ownership, and control of bribe and other payments in furtherance of the [defendants'] fraud scheme."[2] Indictment ¶ 308. It further alleges that Wilson conspired "to conduct bribe payments and other payments funneled through a purported charitable organization and a for-profit corporation . . . [that] involved the proceeds of . . . mail and wire fraud and honest services mail and wire fraud." *Id.* Thus, the government has assumed the burden of proving that any transaction conducted in furtherance of the money laundering conspiracy was done with the ***purpose to conceal or disguise*** elements of the transaction, and included funds that were the ***proceeds***—i.e., revenues or profits—of specified crimes.

Paragraphs 310-52 of the Indictment contain allegations of acts in furtherance of the money laundering conspiracy charged in Count Three, organized by defendant. The paragraphs related to Wilson, Indictment ¶¶ 340-44, allege three payments from Wilson to Singer:

1) $100,000 to The Edge College & Career Network, LLC, also known as "The Key";

2) $100,000 to The Key Worldwide Foundation ("KWF"); and

3) $20,000 to Singer personally. Indictment ¶ 342.

The Indictment also alleges one further payment:

4) a $100,000 cashier's check purchased by The Key and made payable to the "USC Men's Water Polo Team." Indictment ¶ 343.[3] The check stated that the "Purpose/Remitter" was the "Wilson family." *Id.* USC sent Wilson and his wife a thank you note for this donation. *Id.* ¶ 344.

---

[2] The second purpose of the alleged conspiracy, international transmission of tainted proceeds in violation of 18 U.S.C. § 1956(a)(2)(A), involves alleged payments of defendant Sidoo and other co-conspirators known and unknown, but not of Wilson. *See* Indictment ¶¶ 308, 311, 352.

[3] A copy of this check is attached to this Motion as Exhibit 1.

The government's apparent theory, explained first in its Opposition to defendants' motion to dismiss (ECF No. 1170), is that the first three payments were acts in furtherance of mail and wire fraud and honest services mail and wire fraud, and that the $220,000 that Wilson sent to Singer was the "proceeds" of these frauds and thus generated criminal proceeds as defined in 18 U.S.C. § 1956(c)(9). Opp'n 55-56. The government further claims that the fourth event, Singer's purchase of a $100,000 cashier's check payable to USC, was a financial transaction that laundered a portion of those proceeds, thus giving rise to a financial transaction prohibited under 18 U.S.C. § 1956(a)(1). Opp'n 56.[4]

But the first three payments identified in Count Three were not completed acts of fraud and did not generate any criminal "proceeds." Nor was the single ostensible money laundering transaction—the purchase of the $100,000 cashier's check—designed to conceal the nature or source of the money. Without both concealment and proceeds, there can be no concealment money laundering. *See* 18 U.S.C. §§ 1956(a)(1), 1956(a)(1)(B)(i). The money laundering charge against Wilson thus contains fatal factual and legal errors that the Court should not allow the government to argue to the jury.

The government cannot argue that transactions 1, 2, and 3 were completed instances of mail or wire fraud because this would directly contradict the First Circuit's holding in *United States v. Richard*, 234 F.3d 763 (1st Cir. 2000). *Richard* held that "proceeds are derived from an already completed offense, *or a completed phase of an ongoing offense*," *id.* at 770 (emphasis in original), and suggested that only ongoing offenses whose elements have been fully satisfied could generate "proceeds" subject to money laundering, *see id.* Transactions 1, 2, and 3 were not a "completed phase" of the "ongoing" wire or mail fraud offense—and therefore did not

---

[4] In its briefing, the government suggested that two separate sets of unlawful activities generated proceeds: the alleged initial payments from Wilson to The Key, and the alleged subsequent payment from Singer to university officials. Opp'n 24-30, 55-57. However, since the second transaction is the purported money laundering transaction itself, any proceeds that this transaction generated cannot form the basis for the money laundering charge. *United States v. Castellini*, 392 F.3d 35, 38 (1st Cir. 2004) ("The 'proceeds' used for money laundering must be 'proceeds' from a different illegal activity than the illegal activity of money laundering itself.").

3

generate the required "proceeds of specified unlawful activity"—because these transactions were not bribes until they reached the individual who was being improperly influenced. Transaction 1 thus was not an act of fraud because the money was sent to Singer, not the alleged bribe recipient, i.e. USC or Jovan Vavic. Transactions 2 and 3 ***never reached*** USC or Vavic because Singer stole this money for himself, and deceived Wilson about this theft. Accordingly, these payments were not completed acts of mail or wire fraud and bribery, either.

Moreover, even if these three payments were completed instances of mail or wire fraud (which they were not), none of these events generated any "proceeds," that is "property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." *See* 18 U.S.C. § 1956(c)(9). These payments to Singer were the *means* by which Wilson ostensibly achieved the alleged fraud, not the *gross receipts* of an act of fraud. Even under the government's theory, which is contrary to the First Circuit's holding in *Richard*, the money in transactions 1, 2, and 3 flowed from one conspirator to another, not from the alleged fraud victim, i.e. USC, to the alleged perpetrator of fraud, i.e. Wilson or Singer or Vavic. Because Singer stole the $120,000 in transactions 2 and 3 for himself, it is *Wilson*, not USC, who is the victim of any act of fraud. The money laundering statute punishes people who seek to hide their *earnings or receipts* from crime, not those that use legally earned money to commit fraud or the victims of fraud themselves. *See id.*

Nor can the fourth event, the purchase of the cashier's check that Singer gave to USC, supply the criminal "proceeds" required under the money laundering statute, because this transaction is the alleged money laundering transaction itself. The First Circuit has repeatedly affirmed that money laundering requires two separate criminal offenses in two separate transactions. *United States v. Castellini*, 392 F.3d 35, 38 (1st Cir. 2004) ("The 'proceeds' used for money laundering must be 'proceeds' from a different illegal activity than the illegal activity of money laundering itself."); *Richard*, 234 F.3d at 769 ("[T]he laundering of funds cannot occur in the same transaction through which those funds first became tainted by crime.").

4

The fourth event, the cashier's check, also suffers from a second flaw that defeats any charge of concealment money laundering under 18 U.S.C. § 1956(a)(1)(B). It does not attempt to conceal the source or recipient of the funds, or their association with an applicant for admission; the check documents such information on its face. Thus, the alleged financial transaction that is alleged to be money laundering lacks the necessary predicate of concealment. The purchase and delivery of Singer's cashier's check to USC, was conducted in the open, not "designed . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." *See* 18 U.S.C. § 1956(a)(1)(B)(i). The cashier's check explicitly disclosed the nature and source of the underlying money, stating both the intended beneficiary of the contribution ("USC Men's Water Polo") and the name of the contributor ("Wilson family").[5] Ex. 1. USC acknowledged Wilson's contribution in a letter to Wilson and his spouse.

After full briefing from both the defendants and the government (ECF Nos. 1040, 1170, 1238, 1239), Wilson still lacks notice as to which financial transaction or set of transactions could give rise to a viable money laundering charge against him. Wilson believes no financial transaction exists that supports the government's charge.

Accordingly, any argument or evidence regarding the money laundering charges against Wilson will inevitably result in a prejudicial variance between the crime charged and the evidence adduced at trial. *See United States v. Tormos-Vega*, 959 F.2d 1103 (1st Cir. 1992) (citing *United States v. Flaherty*, 668 F.2d 556, 582 (1st Cir. 1981)) ("The doctrine of variance . . . protects against prejudicial 'spillover,' so that in cases with multiple defendants proof that one defendant was involved in one conspiracy does not lead the jury to believe that another defendant was involved in a separate conspiracy."). Unless the government can identify a transaction that meets the threshold requirements of the money laundering statute, the Court

---

[5] A copy of this check is attached to this Motion as Exhibit 1.

5

should preclude the government from introducing any evidence regarding money laundering against Wilson that conflicts so directly with First Circuit law and the statute.

The government has brought an indictment that attempts to alter and expand well accepted legal concepts—a donation to a charity can be a fraud and bribe that victimizes the same charity; a donation to a charity should not be tax deductible.  If the Court were to allow the government to argue a money laundering theory that is factually impossible and contrary to law, it would generate spill-over prejudice for all of the other charges Wilson faces, especially the tax count, as the government would inflame the jury with a sinister-sounding claim that is contrary to law and the evidence.

Respectfully submitted,

John Wilson,

By his Counsel,

/s/ Michael Kendall
Michael Kendall (BBO #544866)
Lauren Papenhausen (BBO# 655527)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com
lauren.papenhause@whitecase.com

Andrew E. Tomback (pro hac vice)
MCLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, NY 10016
Telephone: (212) 448-0066
atomback@mclaughlinstern.com

*Counsel for John Wilson*

/s/ Cory S. Flashner
R. Robert Popeo (BBO # 403360)
Mark E. Robinson (BBO # 423080)
Eóin P. Beirne (BBO # 660885)
Cory S. Flashner (BBO # 629205)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111

(617) 348-1605
rpopeo@mintz.com
mrobinson@mintz.com
ebeirne@mintz.com
csflashner@mintz.com

*Counsel for Elisabeth Kimmel*

/s/ Brian T. Kelly
Brian T. Kelly (BBO # 549566)
Joshua C. Sharp (BBO # 681439)
Lauren M. Maynard (BBO # 698742)
NIXON PEABODY LLP
53 State Street
Boston, MA 02109
(617) 345-1000
bkelly@nixonpeabody.com
jsharp@nixonpeabody.com
lmaynard@nixonpeabody.com

Robert Sheketoff (BBO # 457340)
One McKinley Square
Boston, MA 02109
617-367-3449

*Counsel for Gamal Abdelaziz*

/s/ Michael K. Loucks
Michael K. Loucks (BBO # 305520)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
500 Boylston Street
Boston, MA 02116
(617) 573-4800
michael.loucks@skadden.com

Jack P. DiCanio (*pro hac vice*)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, CA 94301
(650) 470-4500
jack.dicanio@skadden.com

*Counsel for Marci Palatella*

Date: July 30, 2021

7

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULES 7.1 AND 112.1**

I hereby certify that, before filing this motion, defense counsel attempted in good faith to confer with the government to resolve or narrow the issues.

/s/ Michael Kendall
Michael Kendall

**CERTIFICATE OF SERVICE**

I hereby certify that the above document is being filed on the date appearing in the header through the ECF system, which will send true copies to the attorneys of record.

/s/ Michael Kendall
Michael Kendall