UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GREGORY COLBURN et al.,<br><br>Defendants | Case No. 1:19-cr-10080-NMG |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE POSTDATING RICK SINGER'S COOPERATION WITH THE GOVERNMENT**

William "Rick" Singer started cooperating with the government in late September 2018, ending any alleged conspiracy with any of the Defendants in this case. Thereafter, at the government's behest and operating as the government's agent, Singer worked undercover for the government, attempting to gather inculpatory evidence to be used against the four defendants and others.

The Defendants therefore move to exclude all evidence and argument concerning Singer's actions as a cooperator, including recorded conversations, e-mails, and cell phone messages. This evidence is irrelevant, and inadmissible against any of the four Defendants, as coconspirator statements, because the conspiracy ceased to exist. Fed. R. Evid. 401. Nor should the Court allow the government to parse out specific pieces of evidence against an individual Defendant, with limiting instructions for the benefit of the other three Defendants. Such a process would create substantial jury confusion and prejudice to all of the Defendants. The Court should exclude such evidence since its purported probative value is outweighed by how this evidence would confuse the issues and mislead the jury. Fed R. Evid. 403.

**I.     THE ALLEGED CONSPIRACY CANNOT SURVIVE RICK SINGER'S COOPERATION WITH THE GOVERNMENT**

Once Singer began cooperating with the government and acting under the direction of FBI agents and Department of Justice officials, he became an agent of the government. An agreement between a defendant and a government agent cannot be charged as a conspiracy as a matter of law and Singer's post-cooperation conduct and statements are thus irrelevant and inadmissible. Fed. R. Evid. 401, 402; *see also United States v. Castellini*, 392 F.3d 35, 51 n.11 (1st Cir. 2004); *United States v. Rivera-Ruperto*, 884 F.3d 25, 32 (1st Cir. 2018) ("We have held that a conspiracy may not be between one individual and a government agent.") (Barron, J., concurring in the denial of en banc rehearing); *United States v. Portela*, 167 F.3d 687, 700 (1st Cir. 1999); *United States v. Giry*, 818 F.2d 120, 126 (1st Cir. 1987). Singer's statements, moreover, could not have been in furtherance of a conspiracy. *See, e.g.*, See *United States v. DeNunzio*, No. 14-CR-10284-NMG, 2015 WL 2226251, at *4 (D. Mass. May 12, 2015) ("[S]tatements qualifying as 'mere idle chatter' or 'narratives of past events' are not sufficient to be considered in furtherance of a conspiracy." (citing *United States v. Ciresi*, 697 F.3d 19, 28 (1st Cir. 2012))); *United States v. Warman*, 578 F.3d 320, 338 (6th Cir. 2009) (coconspirator's statements characterized as "bragging" or "idle chatter" were not statements in furtherance of any conspiratorial objectives); *cf. United States v. Singh*, 494 F.3d 653, 659 (8th Cir. 2007) (statement of cooperating informant could not be made "in furtherance of the conspiracy").

This case is akin to *Portela*, where the First Circuit held that cooperation with the government by a co-conspirator ended a charged conspiracy and the introduction of post-cooperation evidence created a variance between the proof offered and the charges. The charges there involved a "single broad conspiracy" and with a single overlapping co-conspirator who acted as a hub for the charged conspiracy. 167 F.3d at 694, 698-99. That single co-conspirator was arrested and agreed to participate in a sting operation. *Id.* at 694. That cooperation with the government in the sting operation by the single overlapping co-conspirator ended the conspiracy

as a matter of law.[1] *Id.* at 700. Much like the single overlapping co-conspirator in *Portela*, in this case Singer was the sole overlapping hub in the alleged conspiracy. Accordingly, his cooperation and participation in sting operations terminated any alleged conspiracy, any purported evidence of further "overt acts" is legally irrelevant, and the Court should therefore exclude such evidence. *See* Ex. A (identifying documents on the government's proposed trial exhibit list that should be excluded).

## II. INTRODUCTION OF EVIDENCE GATHERED WHILE SINGER WAS A COOPERATING GOVERNMENT AGENT WOULD LEAD TO IMPERMISSIBLE EVIDENTIARY SPILLOVER

### A. Post-cooperation Singer communications are not admissible co-conspirator statements.

Because the conspiracy ended once Singer became a government agent, his post-cooperation communications are not subject to the co-conspirator exception to the hearsay rule, under Fed Rule of Evidence 801(d)(2)(E). *See generally United States v. Petrozziello*, 548 F.2d 20 (1st Cir. 1977).[2] All post-conspiracy communications between (a) Singer, the government agent, and (b) persons who are not defendants on trial in this case is inadmissible hearsay. Fed. R. Evid. 801(c). Moreover, given the joint-defendant nature of this jury trial, all post-cooperation communications between Singer and one of the defendants in this trial will be hearsay evidence against the other defendants, which the Court also should preclude. The resulting evidentiary spillover from an alleged admission against one defendant unavoidably risks an impermissible "transference of guilt" to other defendants that no jury instruction could cure.

---

[1] The First Circuit ultimately found the variance in *Portela* to be harmless because "[t]he sting operation transaction was distinct in its elements and timing from the other transactions in this case" and the jury instructions were adequate to prevent spillover. 167 F.3d at 701. In stark contrast, the evidence Defendants seek to exclude comprise engineered communications that confuse the issues across charges and across the Defendants and is likely to mislead the jury by creating a false veneer of guilt over innocent arrangements between Singer and the other Defendants. Defendants submit that no jury instruction could prevent the evidentiary spillover.

[2] Defendants separately move today for an order to require the government to proffer non-hearsay corroborating evidence of the alleged conspiracy under *Petrozziello*.

**B.     Admission of evidence gathered while Singer was a government agent to prove the conspiracy charge amounts to variance between the conspiracy charged and legally provable conspiracy**

Since Singer's collaboration ended the alleged conspiracy as a matter of law there can be no evidence that can prove a conspiracy surviving Singer's collaboration. Accordingly, introduction of the evidence will necessarily create a variance between the charges that can be proven as a matter of law and the evidence introduced. *See Portela*, 167 F.3d at 700 (holding introduction of evidence of post-conspiracy acts created a variance between the proof offered at trial and the charge of conspiracy).

### III.    ADMISSION OF SINGER'S POST-COOPERATION EVIDENCE WOULD RESULT IN REVERSIBLE ERROR

The variance will constitute reversible error because it affect defendants' substantial rights at trial. *See United States v. Glenn*, 828 F.2d, 855, 858 (1st Cir. 1987) (stating that variance between charged conspiracy and offered evidence constitutes reversible error when evidence is insufficient to prove charged conspiracy). The variance—if not averted by excluding Singer's post-cooperation conduct and statements—would violate the hearsay rule, confuse the issues between different defendants, confuse issues related to different counts for each defendant, and mislead the jury. Fed. R. Evid. 403. The Court should therefore exclude all evidence and argument concerning Singer's post-collaboration conduct and statements.

"A variance may prejudice the substantial rights of a defendant by . . . exposing him to the threat the evidence incriminating other defendants might be used against him by a jury." *United States v. Prieto*, 812 F.3d 6, 12 (1st Cir. 2016). The irrelevant post-collaboration evidence includes communications certain non-parties that were manufactured to create an improper and false perception of malfeasance among all charged defendants. For example, the admission into evidence of a voicemail left by Singer in Laura Janke's mailbox, discussing the use of a fake picture for a water polo applicant unrelated to John Wilson and his son's application, would unavoidably taint the transactions involving Wilson's son, who was a competitive high-school water polo athlete who met USC's academic standards. September 19 recording (Session 8344). As another example, the admission of communication between Donna Heinel and Singer about

2018 admissions for USC athletes will unfairly weigh against defendant Wilson even though his son's admission in 2014 occurred before Singer met Heinel and years before Wilson re-connected with Singer seeking college counseling for Wilson's daughters, neither of whom were applying to USC. *See e.g.*, Session 9211 (Dated September 28, 2018), Session 9394 (Dated October 2, 2018), and Session 9593 (Dated October 5, 2018). Under direction of the government, Singer also lied about the services offered, such as connections that would enable a side-door at Harvard when he had none. *See e.g.,* Gov't proposed trial ex. 578 (transcript of Oct. 15, 2018) at 2:14-23).

This potential variance, by improperly allowing Singer's post-cooperation conduct and statements into evidence, also would prejudice the Defendants' substantial rights because that evidence would confuses issues from different counts. *Portela*, 167 F.3d at 700; *Glenn*, 828 F.2d at 859-60 (finding violation of substantive rights stemming from unsupported conspiracy allegation that led to conviction on charge where there was no evidence). The government concocted Singer's post-cooperation conduct and statements by having Singer read government-written scripts tailored to try to falsely implicate the Defendants and to taint the innocent pre-cooperation interactions between Singer and the Defendants. For example, the evidence from the sting, if admitted, would create a false impression that Wilson knew that Singer directly paid coaches[3] in stark contrast with the available pre-collaboration evidence.

The confusion stemming from the introduction of irrelevant evidence violating the hearsay rule would create a pervasive prejudicial spillover, misleads the jury, and significantly risk a miscarriage of justice:

> In a large joint trial, the jury will often see evidence tending to establish guilt of one defendant but inadmissible against another, or relevant to one count of an indictment but not to another, making it difficult to evaluate objectively the evidence. A 'transference of guilt' from a defendant to another or from one charge to another can take several forms, ranging from jury confusion to a subconscious

---

[3] Before Singer became a government agent, he consistently told Wilson that his donation would go to the school. It was only after the Singer started cooperating with the government that he began using ambiguous phrases to try to support an argument that the money would go to a coach personally. Phone Call from October 15, 2018 (10126-001) at 9:13-23.

>accumulation of superfluous evidence, 'an atmosphere clouding the jury's ability to evaluate fairly' the credibility of other, probative evidence."

*Portela*, 167 F.3d at 700; *see also United States v. Gurry*, 427 F.Supp.3d 166, 196 (D. Mass., 2019). If the jury were presented with this highly biased and excludable evidence, no instruction could prevent a jury from improperly ascribing culpability from Singer's misleading communications and improperly transferring this sense of guilt when judging the pre-collaboration acts.

## CONCLUSION

This evidence this motion seeks to exclude is irrelevant and should be excluded. None of this evidence could prove charges that are factually impossible. In view of its irrelevance, the unfair prejudice, violation of the hearsay rule, confusion of issues, and propensity to mislead the jury requires its exclusion. And given the risk of evidentiary spillover from engineered conversations into innocent acts, danger of miscarriage of justice from introduction of this irrelevant and excludable evidence looms very real, notwithstanding any limiting jury instruction. For the foregoing reasons, Wilson respectfully request this Court to exclude all evidence and argument of Singer's post-cooperation conduct and statements, including the documents listed in Exhibit A.

Respectfully submitted,

John Wilson,

By his Counsel,

/s/ Michael Kendall
Michael Kendall (BBO #544866)
Lauren Papenhausen (BBO# 655527)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com
lauren.papenhause@whitecase.com

Andrew E. Tomback (pro hac vice)
MCLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, NY 10016
Telephone: (212) 448-1100
ATomback@mclaughlinstern.com

*/s/* Brian T. Kelly
Brian T. Kelly (BBO # 549566)
Joshua C. Sharp (BBO # 681439)
Lauren M. Maynard (BBO # 698742)
NIXON PEABODY LLP
53 State Street
Boston, MA 02109
(617) 345-1000
bkelly@nixonpeabody.com
jsharp@nixonpeabody.com
lmaynard@nixonpeabody.com

Robert Sheketoff (BBO # 457340)
One McKinley Square
Boston, MA 02109
617-367-3449

*Counsel for Gamal Abdelaziz*

*/s/* Cory S. Flashner
R. Robert Popeo (BBO # 403360)
Mark E. Robinson (BBO # 423080)
Eóin P. Beirne (BBO # 660885)
Cory S. Flashner (BBO # 629205)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 348-1605
rpopeo@mintz.com
mrobinson@mintz.com
ebeirne@mintz.com
csflashner@mintz.com

*Counsel for Elisabeth Kimmel*

*/s/* Michael K. Loucks
Michael K. Loucks (BBO # 305520)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
500 Boylston Street
Boston, MA 02116
(617) 573-4800
michael.loucks@skadden.com

Jack P. DiCanio (*pro hac vice*)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, CA 94301
(650) 470-4500

7

jack.dicanio@skadden.com
*Counsel for Marci Palatella*

Date: July 30, 2021

### **CERTIFICATE OF COMPLIANCE WITH LOCAL RULES 7.1 AND 112.1**

I hereby certify that, before filing this motion, defense counsel attempted in good faith to confer with the government to resolve or narrow the issues.

/s/ Michael Kendall
Michael Kendall

### **CERTIFICATE OF SERVICE**

I hereby certify that the above document is being filed on the date appearing in the header through the ECF system, which will send true copies to the attorneys of record.

/s/ Michael Kendall
Michael Kendall