# EXHIBIT A

<u>**Instructions Requested by Defendants Abdelaziz, Kimmel, Palatella, and Wilson**</u>

Except as otherwise noted, Defendants Abdelaziz, Kimmel, Palatella, and Wilson request that the Court instruct the jury as follows:

## I. *Preliminary and Final Introductory Instructions*

### 1. Duty of the Jury

You have been chosen to be the judges of the facts in this case.  It is your duty to decide from the evidence what the facts are.  Your responsibility in that role is to listen carefully to the evidence so that you can properly judge the facts.  You must decide this case only on what you hear in this Courtroom and only upon the information which is presented to you as evidence.  That evidence will be in the form of the sworn witnesses' testimony, documentary evidence such as tape-recordings and other things received as exhibits.  You are not to judge the facts based upon what you hear or may have heard outside of this Courtroom.  You are not to base your decision on any bias, prejudice or sympathy that you may have.  You should not take anything I may say or do during the trial as indicating what I think of the believability or significance of the evidence or what your verdict should be.[1]

It is your duty to find the facts from all the evidence admitted in this case. To those facts you must apply the law as I give it to you. The determination of the law is my duty as the presiding judge in this court. It is your duty to apply the law exactly as I give it to you, whether you agree with it or not. You must not be influenced by any personal likes or dislikes, prejudices or sympathy. That means that you must decide the case solely on the evidence before you and according to the law.[2]

You will recall that you took an oath promising to do so at the beginning of the case. In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. You must not read into these instructions, or into anything I may have said or done, any suggestions by me as to what verdict you should return—that is a matter entirely for you to decide.[3]

---

[1]        Adapted from First Circuit Pattern Criminal Jury Instruction 3.01.
[2]        Adapted from First Circuit Pattern Criminal Jury Instruction 3.01.
[3]        Adapted from First Circuit Pattern Criminal Jury Instruction 3.01.

## 2.      Pretrial Publicity

In the past, there may have been news stories that discussed some of the defendants in this case. You cannot consider or rely upon those news stories in determining your verdict in this case, because you can have no confidence that those news stories are accurate, either with respect to the facts or the law.  The only evidence in this case is the evidence that comes from the witness stand, and from documents that are admitted into evidence.  And I will instruct you on the law.[4]

---

[4]      Adapted from O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions* § 10.02 (6th ed. 2015).

### 3.      Conduct of the Jury

With respect to your conduct as jurors, first, please do not discuss this case with anyone.  Until you retire to the jury room at the end of the case to deliberate to your verdict, you simply are not to talk about this case with anyone, including your family members, your friends or your fellow jurors.  Do not let anyone talk to you about the case or about anyone who has anything to do with it.  If someone should try to talk to you, please report it to me immediately.

I know that many of you use cell phones, smart phones, the internet and other tools of technology.  However, during this jury trial, you may not communicate with anyone about this case using your cell phone, e-mail, smart phone, text messaging, Twitter, blogs or websites, internet chat rooms or social networking websites such as Facebook, Instagram, MySpace, LinkedIn, YouTube, TikTok, or Snapchat.  If you did so, it would be a violation of your oath as jurors and might even cause a mistrial at great expense to the parties and to this Court.  I instruct you, therefore, that as long as you are a juror on this case, you are not to use these tools of technology in connection with this case.

If you encounter the lawyers, the witnesses, or the parties involved in this case in the hallways, cafeteria, or anywhere else, please do not say anything to them.  Your talking with them while the trial is ongoing would not only have the appearance of being inappropriate; it would also be inappropriate.  In addition, do not read or watch or listen to anything in the media which may in any way relate to this case.  And do not try to do any independent research or make any investigation about the case on your own.  Again, internet research about the case is prohibited.  This includes looking up any of the participants in this case on social media or posting or searching on social media about this case.

Finally, keep your mind open and do not form any opinion until all of the evidence has been presented.  Keep an open mind until you start your deliberations at the end of the case.[5]

---

[5]      Adapted from First Circuit Pattern Criminal Jury Instruction 1.07; *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, Jury Trial Transcript Vol. II, at 2-29 – 2-30 (D. Mass. Apr. 12, 2016).

### 4.     The Nature of the Indictment

This is a criminal case that has been brought by the United States government.  The Defendants have been charged by the government with violations of federal law.  The charges against the defendants are contained in the Indictment.  The indictment is simply the description of the charges against the Defendants; it is not evidence of anything.  The Defendants pleaded not guilty to the charges and deny committing the crimes.[6]

The number of charges against each Defendant is no evidence of guilt and should not influence your decision in this case in any way.  It is your duty to separately consider the evidence that relates to each charge for each defendant and to return a separate verdict for each one.  For each charge, you must decide whether the government has presented proof beyond a reasonable doubt that the defendant is guilty of that particular charge.  Your decision on one charge should not influence your decision on any of the other charges.[7]

The Indictment in this case contains three conspiracy counts.

Count I charges that all of the Defendants, along with Rick Singer and other people, conspired to commit mail and wire fraud, as well as honest services mail and wire fraud, in violation of Title 18 of the United States Code, Section 1349.

Count II charges that all of the Defendants tried here, along with Rick Singer and other people, conspired to commit federal programs bribery, in violation of Title 18 of the United States Code, Section 371.

Count III charges that all of the Defendants, along with Rick Singer and other people, conspired to commit money laundering, in violation of Title 18 of the United States Code, Section 1956(h).

The Indictment in this case also contains three counts against Defendant John Wilson for wire fraud and honest services wire fraud in violation of Title 18 of the United States Code, Sections 1341 and 1346, and aiding and abetting wire fraud and honest services wire fraud in violation of Title 18 of the United States Code, Section 2.

Count VI charges Mr. Wilson with committing wire fraud and honest services wire fraud, or aiding and abetting Rick Singer in committing wire fraud and honest services wire fraud, in connection with the wiring of certain funds from Hyannis Port Capital, Inc. to the Key Worldwide Foundation on October 17, 2018.

Count VIII charges Mr. Wilson with committing wire fraud and honest services wire fraud, or aiding and abetting Rick Singer in committing wire fraud and honest services wire fraud, in connection with a telephone call between Mr. Wilson and Rick Singer on October 27, 2018.

---

[6]     Adapted from First Circuit Pattern Criminal Jury Instruction 1.02.
[7]     *Thomas v. United States*, 849 F.3d 669, 676 (6th Cir. 2017).

Count IX charges Mr. Wilson with committing wire fraud and honest services wire fraud, or aiding and abetting Rick Singer in committing wire fraud and honest services wire fraud, in connection with the wiring of certain funds from Hyannis Port Capital, Inc. to the Key Worldwide Foundation on December 11, 2018.

The Indictment in this case also charges Defendant John Wilson with two counts of federal programs bribery in violation of Title 18 of the United States Code, Section 666(a)(2), and aiding and abetting federal programs bribery in violation of Title 18 of the United States Code, Section 2.

Count XI charges that Mr. Wilson committed federal programs bribery, or aided and abetted Rick Singer in committing federal programs bribery, in connection with the wiring of certain funds from Hyannis Port Capital, Inc. to the Key Worldwide Foundation on October 17, 2018.

Count XII charges that Mr. Wilson committed federal programs bribery, or aided and abetted Rick Singer in committing federal programs bribery, in connection with the wiring of certain funds from Hyannis Port Capital, Inc. to the Key Worldwide Foundation on December 11, 2018.

Lastly, Count XIII charges Defendant John Wilson with willfully filing a false federal tax return in violation of Title 26 of the United States Code, Section 7206(1).

The Defendants have pled not guilty to these charges, and the government, therefore, must prove beyond a reasonable doubt all of the elements of a given offense charged in the indictment against each Defendant before you can find that Defendant guilty of that particular offense.[8]

---

[8]    Adapted from First Circuit Pattern Criminal Jury Instruction 3.01.

### 5.        Presumption of Innocence; Proof Beyond a Reasonable Doubt

This is a criminal case, and there are three basic rules for you to keep in mind.  First, the Defendants are presumed innocent until proven guilty.  The presumption is not a mere formality. It is a matter of the most important substance.[9]  All of the Defendants start this case as innocent. You cannot draw any conclusions against them because they happen to be here in Court with us and the government has made some charges against them.  The Indictment makes only accusations, nothing more.  The Defendants, therefore, start out with a clean slate.[10]  You are not to convict any of the Defendants of a particular charge unless you are persuaded of that Defendant's guilt of that charge beyond a reasonable doubt.[11]

Second, the burden of proof is on the government throughout the case.  The Government must prove each and every element of the offenses charged against each Defendant, and must satisfy you that a particular Defendant is guilty of the particular crime with which he or she is charged beyond a reasonable doubt.  The Defendants do not have any burden to prove their innocence or to present any evidence or even to testify.  Each of the Defendants has the right to remain silent, and the law prohibits you from considering the fact that any of the Defendants may not have testified when arriving at your verdict.[12]

Third, the Government must prove its case against the Defendants, including each of the elements of the crimes charged, beyond a reasonable doubt.  This is a strict and heavy burden. Indeed, the presumption of innocence alone may be sufficient to raise a reasonable doubt and to require the acquittal of a defendant. This standard requires that the evidence leaves no reasonable doubt concerning each of the Defendant's guilt.  You may not find any Defendant guilty unless all of you unanimously find that the government has proven his or her guilt beyond a reasonable doubt.[13]

A reasonable doubt may arise not only from the evidence produced but also from a lack of evidence.  Reasonable doubt exists when, after weighing and considering all the evidence using reason and common sense, jurors cannot say that they have a settled conviction of the truth of the charge.  Of course a Defendant is never convicted on suspicion or conjecture.  If, for example, you view the evidence in the case as reasonably permitting either of two conclusions, one, that the Defendant is guilty as charged; the other, that the Defendant is not guilty, you must find the Defendant not guilty.

It is not sufficient for the Government to establish a probability, even if a strong one, that a fact charged is more likely true than not true.  That is not enough to meet the burden of proof beyond a reasonable doubt.  On the other hand, there are very few things in this world that we know with

---

[9]        First Circuit Pattern Criminal Jury Instruction 3.02.
[10]        Adapted from First Circuit Pattern Criminal Jury Instructions 1.02, 3.02; *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, Jury Trial Transcript Vol. II, at 2-28-2-29 (D. Mass. Apr. 12, 2016).
[11]        First Circuit Pattern Criminal Jury Instruction 3.02.
[12]        Adapted from First Circuit Pattern Criminal Jury Instructions 1.02, 3.02; *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, Jury Trial Transcript Vol. II, at 2-28-2-29 (D. Mass. Apr. 12, 2016).
[13]        Adapted from First Circuit Pattern Criminal Jury Instructions 1.02, 3.02; *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, Jury Trial Transcript Vol. II, at 2-28-2-29 (D. Mass. Apr. 12, 2016).

absolute certainty, and in criminal cases, the law does not require proof that overcomes every conceivable doubt.

The Defendants have the right to rely upon the failure or inability of the government to establish beyond a reasonable doubt any essential element of a crime charged against them. If, after fair and impartial consideration of all the evidence, you have a reasonable doubt as to any of the Defendants' guilt of a particular crime, it is your duty to find him or her not guilty of that crime. On the other hand, if, after fair and impartial consideration of all the evidence, you are satisfied beyond a reasonable doubt of a particular Defendant's guilt of a particular crime, you should find him or her guilty of that crime.[14]

---

[14]     Adapted from First Circuit Pattern Criminal Jury Instruction 3.02; *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, ECF No. 513, Jury Trial Transcript Vol. XIII, at 13-146 – 13-147 (D. Mass. Apr. 28, 2016).

### 6.          Defendants Tried Together

The Defendants are being tried together because the Government has charged that they acted together in committing the crimes of which they are accused. Remember, however, that each separate offense and the evidence pertaining to it should be considered separately with respect to each Defendant. You must not treat the Defendants as a group. In some instances, for example, evidence that is admitted against one defendant may not be admissible against the other three defendants, in which event you should not give any consideration to that evidence with respect to the other three defendants. Each Defendant is constitutionally entitled to have his or her guilt or innocence determined on an individual basis. Thus, with respect to each charge, you must assess each Defendant and the evidence that was admitted against him or her individually. In doing so, you must analyze what the evidence in the case shows with respect to each Defendant, leaving out of consideration any evidence admitted solely against some other Defendant or Defendants. Each Defendant is entitled to have his or her case decided on the evidence and the law applicable to him or her.[15]

---

[15]          Adapted from First Circuit Pattern Criminal Jury Instructions 1.02, 3.07; *see also Blumenthal v. United States*, 332 U.S. 539, 560 (1947) (endorsing instruction that "the guilt or innocence of each defendant must be determined by the jury separately," and "[e]ach defendant has the same right to that kind of consideration on your part as if he were being tried alone"); *United States v. Natanel*, 938 F.2d 302, 308 (1st Cir. 1991) ("the court below minimized any possible prejudice by repeatedly instructing the jury to treat the defendants as individuals and to consider each charge separately"). The additional language is utilized in the Seventh Circuit to instruct juries where multiple defendants have been charged. *See, e.g.*, *United States v. Rodriguez*, 53 F.3d 1439, 1451 (7th Cir. 1995).

### 7.   Jurors as Fact-Finders; Judge Instructs on Law

You are the judges of the facts.  Although the law allows a Trial Judge in this Court to comment on evidence, I deliberately do not do so and, instead, leave the fact-finding entirely in your hands.  You are the sole and exclusive judges of the facts.  Fortunately, you do not have to resolve every dispute of fact raised by the evidence.  In order to know which fact disputes are important, you need to know what rules of law to apply.  I've explained some of those rules to you during the course of the trial, and I'll explain others to you now.

Under your oath as jurors, you cannot allow consideration of the punishment which may be imposed upon the Defendants if convicted to influence your verdict or to enter into your deliberations in any way.  In addition, you cannot allow considerations of sympathy for the Defendants, for the Government or for any victims to influence your verdict or to enter into your deliberations any way.

It would be improper for you to allow any feelings you might have about the nature of the alleged crimes to interfere with your decision-making process.  You are not to be swayed by bias, prejudice, sympathy or antagonism.  Rather, your function is to find the facts fairly and impartially on the basis of the evidence.[16]

---

[16]      Adapted from *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, ECF No. 513, Jury Trial Transcript Vol. XIII, at 13-133 – 13-134 (D. Mass. Apr. 28, 2016).

### 8.       What Is Evidence; What Is Not Evidence; Inferences

The evidence in this case consists of all exhibits received into evidence, all facts that may have been admitted or stipulated to and all of the sworn testimony of the witnesses.

As I told you at the beginning of the trial, statements and arguments of counsel are not evidence in the case.  Questions and objections by lawyers are not evidence.  Any evidence ordered stricken by the Court must also be disregarded.  Anything that you have seen or heard outside of this courtroom is not evidence, and you must disregard it entirely.  Again, the Indictment is not evidence.  Your verdict must be based solely on the evidence presented in this Courtroom and in accordance with these instructions.[17]

Also, from the facts proved, you may draw reasonable inferences about additional facts.  An inference is a deduction or a conclusion.  An inference is an additional finding that your experience, reason and common sense lead you to draw from the facts that you find are proved by the evidence.  Any inference that you draw from the facts must be a reasonable one and not merely conjecture or guesswork.

It is for you, as judges of the facts, to decide whether the evidence before you is or is not sufficient for you to draw an inference.  Ultimately, in drawing inferences, you should use your common sense.[18]

Charts or summaries have been prepared and shown to you during the trial for the purpose of explaining facts that are allegedly contained in records and other documents, which are also in evidence in the case.  You've also heard mention of chalks, which are exhibits not in evidence, used to demonstrate a particular point.  While chalks are not evidence, you may use them to aid your understanding of the evidence in the case.  Some exhibits have been redacted in accordance with Court rules or orders.  You are not to speculate about what has been redacted.  You are not to draw any inferences from those redactions.[19]

---

[17]       First Circuit Pattern Criminal Jury Instruction 3.08.
[18]       Adapted from *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, ECF No. 513, Jury Trial Transcript Vol. XIII, at 13-134 – 13-135 (D. Mass. Apr. 28, 2016); *see* First Circuit Pattern Criminal Jury Instructions 3.04, 3.08.
[19]       Adapted from *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, ECF No. 513, Jury Trial Transcript Vol. XIII, at 13-139 – 13-140 (D. Mass. Apr. 28, 2016).

### 9.        Kinds of Evidence: Direct and Circumstantial

There are two kinds of evidence: direct and circumstantial.  Testimony of a witness showing first-hand observation of a fact by that witness is direct evidence.  For example, the testimony of an eyewitness just about what he or she saw is direct evidence.  If the witness is permitted to go beyond what he or she saw and is permitted to state a conclusion or an inference or an opinion, that part of the answer is not direct evidence.  Instead, it's a kind of circumstantial evidence.

Circumstantial evidence is proof of some facts, including events and circumstances, on the basis of which the jury may infer the existence or nonexistence of additional facts.  It is indirect evidence, that is proof of a fact or facts from which you could draw the inference, by reason and common sense, that another fact exists, even though it has not been proven directly.

Direct and circumstantial evidence have equal standing in the law; that is, with respect to what weight shall be given to evidence before you, the law makes no distinction between direct and circumstantial evidence.  No greater degree of certainty is required of circumstantial evidence than of direct evidence.  You are to consider all of the evidence in the case and give each item of evidence the weight you believe it deserves.[20]

---

[20]        Adapted from *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, ECF No. 513, Jury Trial Transcript Vol. XIII, at 13-135 – 13-136 (D. Mass. Apr. 28, 2016); First Circuit Pattern Criminal Jury Instruction 3.05.

### 10.    Spoliation

If you find that a party or a witness destroyed, obliterated or failed to preserve documents or records, including text messages, emails or recordings that the party or witness knew would be relevant to a contested issue in this case and knew at the time there was a potential for prosecution, then you may infer—but are not required to infer—that the contents of the destroyed evidence were unfavorable to the party or the witness.[21]

---

[21]    Adapted from First Circuit Pattern Criminal Jury Instruction 2.13.

### 11.     Failure to Collect Evidence

You have heard evidence that the government erred by failing to preserve Rick Singer's texts and documents as soon as possible, which led Rick Singer to delete text messages and other documents before he became a cooperating witness and while he was acting as a cooperating witness.  You may infer (but you are not required to infer) that the contents of the destroyed evidence were unfavorable to the government.[22]

---

[22]     *See Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 20 (9th Cir. 2009) ("[A]n adverse inference instruction may be allowed when a party fails to produce a document that exists *or should exist* and is within its control." (emphasis added)).

## 12.   Use of Tapes and Transcripts

During the course of the trial, you heard numerous conversations that were recorded.  This is proper evidence for you to consider, and you may give the audio recordings the same weight that you would give any other evidence.  Transcripts were provided to you as you listened to some of the recorded conversations to help you understand what was said on the tapes.  Those transcripts are not exhibits, and you will not have them in the jury room.  Based on the evidence before you, if you believe at any point that the transcript reported something different from what you heard on the recording, you should be guided by what you heard and not by what you recall from the transcript.[23]

---

[23]      Adapted from *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, ECF No. 513, Jury Trial Transcript Vol. XIII, at 13-136 – 13-137 (D. Mass. Apr. 28, 2016); First Circuit Pattern Criminal Jury Instruction 2.09.

### 13.     Stipulations

The evidence in this case may include facts to which the lawyers have agreed or stipulated.  A stipulation means simply that the parties accept the truth of a particular proposition or fact. Absent disagreement, there is no need for evidence on that fact apart from the stipulation.[24]

---

[24]        *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, ECF No. 513, Jury Trial Transcript Vol. XIII, at 13-134 (D. Mass. Apr. 28, 2016).

## 14.    Credibility of Witnesses

An important part of your job as jurors is to decide whether and to what extent you believe what each witness had to say and how important that testimony was.  You are the sole judges of the credibility of the witnesses. You do not have to accept the testimony of any witness if you find the witness not credible.  In deciding whether to believe a witness or how much weight to give to that witness's testimony, you may consider anything that reasonably helps you assess a witness's testimony.

The following are the kinds of questions you may want to consider in evaluating a witness's credibility:  Did the person seem honest?  Did he or she have some reason not to tell the truth?  Did the witness have an interest in the outcome of this case, meaning would the witness stand to gain something of value from a particular result in this case?  Did he or she gain any personal advantage by testifying?  Did the witness seem to have a good memory?  Did the witness's testimony differ from his or her earlier testimony or from the testimony of other witnesses?  Was the witness's testimony on cross-examination different from his or her testimony on direct examination?  What was the witness's manner while testifying?  These are some but of course not all of the kinds of things that will help you decide how much weight to give to what each witness had to say.

You may also consider any demonstrated bias, prejudice or hostility of a witness in deciding what weight to give to the testimony of that witness.  The mere number of witnesses or exhibits or the length of the testimony has no bearing on what weight you give to evidence or on whether you find that the burden of proof has been met.  Weight does not mean amount of evidence; weight means your judgment about the credibility and importance of evidence.[25]

---

[25]    Adapted from *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, ECF No. 513, Jury Trial Transcript Vol. XIII, at 13-140 – 13-141 (D. Mass. Apr. 28, 2016); First Circuit Pattern Criminal Jury Instructions 1.06, 3.06.

### 15.    Missing Witness

If it is peculiarly within the power of the government to produce a witness who could give material testimony, or if a witness, because of his or her relationship to the government, would normally be expected to support the government's version of events, the failure to call that witness may justify an inference that his or her testimony would in this instance be unfavorable to the government.  You are not required to draw that inference, but you may do so.  No such inference is justified if the witness is equally available to both the government and the Defendants, if the witness would normally not be expected to support the government's version of events, or if the testimony would merely repeat other evidence. [26]

---

[26]    Adapted from First Circuit Pattern Criminal Jury Instruction 2.12.

### 16.        Testimony of Law Enforcement Agents and Government Employees

You've heard testimony of law enforcement officers and witnesses who are employed by the federal government.  The fact that a witness may be employed as a law enforcement officer or otherwise for the government does not mean that his or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.  It is also appropriate to consider whether, in his or her investigation, the particular law enforcement witness acted in accordance with the standards of his department or agency.  If you find any omissions in the investigation were significant and not adequately explained, you may consider whether the omissions tend to affect the quality, reliability or credibility of the evidence presented by the government.  In addition, in assessing the credibility of a witness who is employed by the government, you may consider whether the witness has a personal or professional interest in the outcome of the case.  It is your decision, after reviewing all of the evidence, whether to accept the testimony of a law enforcement witness and to give to that testimony whatever weight, if any, you find it deserves.[27]

---

[27]        Adapted from *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, ECF No. 513, Jury Trial Transcript Vol. XIII, at 13-143 (D. Mass. Apr. 28, 2016).  *See United States v. Torres-Galindo*, 206 F.3d 136, 142 (1st Cir. 2000) (appeals to "believe the police or FBI because of their history, integrity, or public service [are] inappropriate"); *see also United States v. Gallardo-Trapero*, 185 F.3d 307, 320 (5th Cir. 1999) (improper for prosecutor to state in closing argument that employees of the government wouldn't lie); *United States v. Martin*, 507 F.2d 428, 432 (7th Cir. 1974) ("[I]t was particularly important for the defendant to know of any prejudices the jurors may have had about the Government or about the credibility of government agents.").

### 17.    Testimony of Witnesses with Immunity

You've heard testimony of witnesses who have testified under a grant of immunity.  Immunity means that a witness's testimony may not be used against him in any subsequent criminal proceeding.  However, if he testified untruthfully, he can be prosecuted for perjury or making a false statement even though he testified under a grant of immunity.  Some people in this position are entirely truthful while testifying.  Still, you should consider the testimony of immunized witnesses with greater care and caution than the testimony of an ordinary witness.  They may have had reason to make up stories or exaggerate what others did because they wanted to help themselves.  You must determine whether the testimony of such a witness has been affected by any interest in the outcome of this case, any prejudice for or against the Defendant or by any of the benefits he or she has received from the Government as a result of being immunized from prosecution.[28]

---

[28]     Adapted from *United States v. Ponzo*, Case No. 97-cr-40009-NMG, Jury Trial Transcript Day Twenty-Two, at 22-139 – 22-141 (D. Mass. Feb. 3, 2014); *United States v. DeCicco*, Case No. 17-cr-10092-NMG, ECF No. 376, Jury Trial Transcript Day 7, at 81-82 (D. Mass. June 12, 2018); First Circuit Pattern Criminal Jury Instruction 2.08.

### 18.    Testimony of Cooperating Witnesses

You've heard testimony of witnesses who provided evidence under agreements with the government.  As with witnesses who have been granted immunity, some people in this position are entirely truthful while testifying.  Still, you should consider the testimony of cooperating witnesses with particular caution.  They may have had reason to make up stories or exaggerate what others did because they wanted to help themselves.  A witness who realizes that he may be able to obtain his own freedom, receive a lighter sentence or obtain other benefits from the government by giving testimony favorable to the prosecution has a motive to testify falsely.  You must determine whether the testimony of such a witness has been affected by any interest in the outcome of this case, any prejudice for or against the Defendant or by any of the benefits he has received from the government as a result of having an agreement with the government.[29]

---

[29]     Adapted from *United States v. Ponzo*, Case No. 97-cr-40009-NMG, Jury Trial Transcript Day Twenty-Two, at 22-139 – 22-141 (D. Mass. Feb. 3, 2014); First Circuit Pattern Criminal Jury Instruction 2.08.

### 19.    Inconsistencies in Witness Testimony

You should remember that the law does not impose on the defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.  You may consider inconsistencies or differences as you weigh evidence, but you do not have to discredit testimony merely because an inconsistency or difference exists.  In weighing the effect of any inconsistency or difference, consider whether it concerns a matter of importance or an unimportant detail and whether it results from innocent error or intentional falsehood.

On the other hand, you're not required to accept testimony merely because it is uncontradicted.  You may decide, because of a witness's bearing and demeanor or because of inherent improbability or for whatever reason, that a witness's testimony is not worthy of belief.  You may accept all of a witness's testimony or reject all of it, or you may accept part and reject another part.[30]

---

[30]    Adapted from *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, ECF No. 513, Jury Trial Transcript Vol. XIII, at 13-142 – 13-143 (D. Mass. Apr. 28, 2016); *see also Hardware Mut. Ins. Co. v. Jacob Hieb, Inc.*, 146 F.2d 447, 451 (8th Cir. 1945); *Dillon v. Evansville Refining Co.,* 127 F.2d 13, 17 (7th Cir. 1942).

### 20.    Defendants' Right Not to Testify (If Applicable)

A Defendant has a constitutional right not to testify and a right not to produce any evidence at all.  No inference of guilt or of anything else may be drawn from the fact that a Defendant did not testify.  In this case, the Defendants have chosen to exercise their right not to testify.  It would be improper and unfair for you to speculate as to the reason or reasons why the Defendants have so chosen.  You must not infer anything whatsoever from the Defendants' decisions not to testify, and I specifically instruct you that, during your deliberations, you may not discuss this fact in any manner whatsoever.[31]

---

[31]    Adapted from *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, ECF No. 513, Jury Trial Transcript Vol. XIII, at 13-146 – 13-147 (D. Mass. Apr. 28, 2016); First Circuit Pattern Criminal Jury Instruction 3.03.

### 21.   Character Evidence

Some of the Defendants chose to present evidence showing that they enjoy a reputation for honesty, truthfulness, and integrity in their communities.  Such evidence may indicate to you that it is improbable that a person of such character would commit the crimes charged and therefore cause you to have reasonable doubt as to their guilt.  You should consider any evidence of each of the Defendant's good character along with all the other evidence in the case and give it such weight as you believe it deserves.[32]  If, when considered with all the other evidence presented during this trial, the evidence of any Defendant's good character creates a reasonable doubt in your mind as to his or her guilt, you should find that Defendant not guilty.[33]

---

[32]    Adapted from *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, ECF No. 513, Jury Trial Transcript Vol. XIII, at 13-137 (D. Mass. Apr. 28, 2016).

[33]    First Circuit Pattern Criminal Jury Instruction 2.19.

### 22.    Defense of Good Faith

Evidence has been presented of each Defendant's good faith.

Good faith is an absolute defense to each of the charges in this case.  If the defendant you are considering believed in good faith that he or she was acting properly, even if he or she was mistaken in that belief, and even if others were injured by his or her conduct, then it is your duty to acquit that Defendant.

The burden of proving good faith does not rest with the Defendants because the Defendants do not have an obligation to prove anything in this case.  It is the government's burden to prove beyond a reasonable doubt that the Defendants are guilty and did not act with good faith.[34]

---

[34]    Adapted from *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, ECF No. 513, Jury Trial Transcript Vol. XIII, at 13-159 – 13-160 (D. Mass. Apr. 28, 2016); *United States v. Soto*, 799 F.3d 68, 94-95 (1st Cir. 2015); *United States v. Bravo-Fernandez*, Case No. 10-cr-00232-FAB-1, ECF No. 997, Jury Trial Transcript, Jury Instructions, at 27-28 (D.P.R. May 26, 2017); Sand et al., *Modern Federal Jury Instructions*, Instruction 8-1 (2014). Good faith is an "absolute defense" to a specific-intent crime. *United States v. Dockray*, 943 F.2d 152, 155 (1st Cir. 1991).  A criminal defendant is generally "entitled to an instruction on his theory of the defense so long as the theory is a valid one and there is evidence in the record to support it." *United States v. Gamache*, 156 F.3d 1, 9 (1st Cir. 1998); *see also United States v. Gorski*, 880 F.3d 27, 32 n.3 (1st Cir. 2018); *see also United States v. Henry*, 136 F.3d 12, 17 n.3 (1st Cir. 1998).

### 23.      **Collective Knowledge Doctrine**

The government has charged each Defendant with participation in three conspiracies—namely, the conspiracy charged in Count One, the conspiracy charged in Count Two, and the conspiracy charged in Count Three.  The government alleges that the Defendants participated in the charged conspiracies with several objects, including corruptly paying money to bribe university employees and test proctors, and corruptly paying money to the Key Worldwide Foundation for the same purpose, as a part of the alleged bribe paid to the university employees or test proctors.[35]

Entities such as corporations and universities compartmentalize knowledge, subdividing the elements of specific duties and operations into smaller components.  The aggregate of those components constitutes the corporation's knowledge of a particular operation.  Thus, the knowledge of an entity, such as a corporation or a university, is the totality of what all of the employees know within the scope of their employment.[36]

The University of Southern California and Georgetown University, as private not for profit corporations, are not individuals, and they act collectively through all of their employees, not just those in one department or on one committee such as an Admissions Committee.  Therefore, the knowledge of all employees of the University of Southern California, while acting within the scope of their employment, is imputed to the University of Southern California, and you must consider the actions and knowledge of all of the University of Southern California's employees in evaluating whether any defendant acted with intent to defraud the University of Southern California, or with intent to bribe an employee of the University. Likewise, the knowledge of all employees of Georgetown University, while acting within the scope of their employment, is imputed to Georgetown University, and you must consider the actions and knowledge of all of Georgetown University's employees in evaluating whether any defendant acted with intent to defraud Georgetown University, or with intent to bribe one of its employees.

In general, whether some USC employees or certain USC committees, such as the Admissions Committee, did not know about certain aspects of the defendants' children's admission is not dispositive as to whether USC had that knowledge.  Nor is any lack of knowledge on USC's part dispositive as to whether the defendants acted corruptly.

All of each defendant's interactions with employees of USC are relevant to and must be considered by you in evaluating their intent and whether there is proof beyond a reasonable doubt that any defendant had the intent to defraud USC of the honest services of its employees. In determining the defendants' intent, you may consider evidence regarding:  fundraising efforts

---

[35]      *See* Memorandum in Support of Defendants' Motion to Dismiss Pursuant to Federal Rules of Criminal Procedure 8 and 12(b)(3)(B)(i), (iv), and (v), ECF 1032 at 6, n.2 (acknowledging that the Indictment technically alleges that each remaining Defendant participated in three conspiracies—a "fraud conspiracy," a "federal program bribery conspiracy," and a "money laundering conspiracy" —but that the Indictment makes clear that all three conspiracies are cut from the same cloth); Government's Response in Opposition to Defendants' Motions to Dismiss [sic] the Fourth Superseding Indictment, ECF No. 1170, at 6 (arguing that the Indictment alleges that the Defendants "conspired in a *single overarching scheme* to gain admission to college through various means"), 16 (arguing that the Indictment "alleges not just single conspiracies but a single overarching scheme").

[36]      *United States v. Bank of New England, N.A.*, 821 F.2d 844, 856 (1st Cir. 1987).

by USC, any team or athletic program within USC, and any individual employee of USC; knowledge of any USC employee within the scope of their employment relating to fundraising efforts by USC and admissions decisions by USC; all conversations and other interactions the defendant had with any USC employee; and thank you notes or gift receipts provided by USC for donations.

I also instruct you that just because an employee engaged in conduct in violation of the policies of his or her employer, or in conduct that is illegal, does not mean that the employee was not acting within the scope of her employment.[37]  Corporations, like the University of Southern California and Georgetown University, have a duty to police the conduct of all of their employees and are bound by the criminal conduct of their employees, when that conduct falls within the scope of their employment.[38]

---

[37]    *See, e.g.*, *United States v. Cincotta*, 689 F.2d 238, 241-42 (1st Cir. 1982) (stating an agent is acting in the scope of employment when performing acts of the kind he is acting with an intent to benefit the corporation, even when the act is criminal).

[38]    *See, e.g.*, *United States v. Potter*, 463 F.3d 9, 25 (1st Cir. 2006) (stating that corporations are liable for criminal acts of its agents when the agents are acting within the scope of employment).

### 24.        Other Individuals Not Defendants in This Trial

You are here to decide whether the Government has proven beyond a reasonable doubt that each of the Defendants is guilty of the crime or crimes charged in the indictment.  The Defendants are not charged with committing any other crimes besides the offenses charged in the indictment.  Moreover, you are not to be concerned with the guilt of any other person or persons not on trial as a defendant in this case.  Other individuals who have been mentioned during the course of this trial are not on trial, and you are not being asked to reach a verdict as to them.  You are not to speculate about the reasons why they are not part of this trial, and that fact should not affect or influence your verdict with respect to any of the Defendants who are on trial.  You must base your verdict solely on the evidence, or lack of evidence, against the Defendant then under consideration in this case.  It is not unusual for criminal cases to proceed separately against different individuals, even if they are allegedly involved in the same offenses or charged in the same indictment with other alleged crimes.  It would be improper for you to speculate as to the status of the proceedings against other individuals who have not testified.  For this reason, you must also not draw any inferences regarding any counts of the Indictment upon which I do not instruct you or ask you render a verdict.[39]

---

[39]        Adapted from *United States v. Ponzo*, ECF No. 1974, Case No. 97-cr-40009-NMG, Jury Trial Transcript Day Twenty-Two, at 22-144 (D. Mass. Nov. 14, 2013); *United States v. DeCicco*, ECF No. 376, Case No. 17-cr-10092-NMG, Jury Trial Transcript Day 7, at 85 (D. Mass. June 12, 2018).

## *II.    Conspiracy Generally*

## 25.    Basic Elements: Conspiracy

A "conspiracy" is an agreement among two or more persons to achieve an unlawful purpose or purposes.  For you to find a Defendant guilty of conspiracy, you must be convinced that the government has proven beyond a reasonable doubt each of the following three elements of the offense for each particular count with respect to that Defendant:[40]

*First*, that the agreement specified in the Indictment, and not some other agreement or agreements, existed between those people as alleged in the Indictment to commit a crime, and that the Defendant specifically intended and agreed that a member of the conspiracy would commit conduct that actually constituted the underlying crimes alleged, such as mail or wire fraud, bribery, or money laundering;

*Second*, that the Defendant joined in that agreement willfully, as I will define that term; and

*Third*, that one of the conspirators committed an overt act during the period of the conspiracy in an effort to further the purpose of the conspiracy. I will also define for you the term "overt act."

---

[40]       *See United States v. Tum*, 707 F.3d 68, 72, 74-75 (1st Cir. 2013); First Circuit Pattern Criminal Jury Instruction 4.18.1349.

### 26.    Conspiracy – First Element: An Agreement

With respect to the first element, a conspiracy is an agreement to commit a crime or series of crimes.  The conspiracy does not have to be a formal agreement or plan, but the government must prove that those who were involved agreed together to commit a crime or group of crimes. Mere similarity of conduct among various people, or the fact that they may have associated with each other or discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy.[41]  A conspiracy generally ends after the central criminal purpose has been accomplished.[42]

For there to be a conspiracy, there must be an agreement between at least two conspirators. Thus, there can be no conspiracy if the defendant conspired only with government agents, informants, or cooperators.[43]  You are hereby instructed that after the government approached Rick Singer on September 21, 2018, he became the government's agent, informant, and cooperator, and thereafter could not be a co-conspirator with anyone because one who acts as a government agent and enters into a purported conspiracy in the secret role of an informant cannot be a co-conspirator.[44]

---

[41]    Adapted from *United States v. Morrow*, 39 F.3d 1228, 1234-35 (1st Cir. 1994); *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, ECF No. 513, Jury Trial Transcript Vol. XIII, at 13-153 (D. Mass. Apr. 28, 2016); First Circuit Pattern Criminal Jury Instruction 4.18.371(1).

[42]    *SEC v. Papa*, 555 F.3d 31, 36 n.3 (1st Cir. 2009).

[43]    *United States v. Castellini*, 392 F.3d 35, 51 n.11 (1st Cir. 2004) ("[T]here can be no conspiracy as a matter of law solely between a defendant and a government agent."); First Circuit Pattern Instruction, 4.18.371(1) cmt. 10; *United States v. McClain*, 934 F.2d 822, 828 (1st Cir. 1991) ("Burnett could not, as an informant, conspire with anyone").

[44]    *United States v. Lively*, 803 F.2d 1124, 1126 (11th Cir. 1986) (reversing conviction for failure to instruct that after cooperator's arrest "he became the Government's agent and informer and thereafter could not be a co-conspirator with [defendant] because one who acts as a government agent and enters into a purported conspiracy in the secret role of an informer cannot be a co-conspirator").

### 27.    Conspiracy – First Element: The Conspiracies Alleged In The Indictment

The government has the burden of proving the conspiracies alleged in the Indictment.   You must decide whether each of the conspiracies existed, and, if it did, who at least some of its members were. If you find that the conspiracies charged did not exist, then you must return a not guilty verdict, even though you may find that some other conspiracy existed. Similarly, if you find that any Defendant was not a member of the charged conspiracies, then you must find that Defendant not guilty, even though that Defendant may have been a member of some other conspiracy.[45]

The Indictment alleges that all of the Defendants took part in three conspiracies with Rick Singer and other parents, university employees, and others affiliated with Rick Singer.[46]   First, in Count One, the Indictment charges that all of these people took part in a single conspiracy to commit mail and wire fraud and honest service mail and wire fraud.  Second, in Count Two, the Indictment charges that all of these people took part in a single conspiracy to commit federal programs bribery.  Lastly, in Count Three, the Indictment charges that all of these people took part in a single conspiracy to commit money laundering.  As charged in the Indictment, all three conspiracies began in or about 2007 and continued until February 2019.

You must determine whether each of these three conspiracies existed as charged, and, if it did, whether each Defendant was a member of them.  In this respect, the law recognizes that a Defendant may agree to take part in a single conspiracy where multiple crimes will be committed.  For instance, a Defendant may agree to take part in an open-ended conspiracy (e.g., a conspiracy to rob banks) where the specifics of the future crimes (e.g., which banks will be robbed) is undetermined or at least unknown to the Defendant.  But if a Defendant agrees with others simply to commit a single crime (e.g., to rob one bank) and has no knowledge or foresight of the conspiracy's broader scope, that Defendant is a member only of the narrower, one-crime conspiracy.[47]

Here, each of the Counts alleges that all of the Defendants agreed to take part in an open-ended conspiracy, as opposed to a narrow conspiracy.  If you determine that any of the Defendants intended to take part in a narrower conspiracy as opposed to the open-ended conspiracy charged in the Count at issue, you must find that Defendant not guilty with respect to that Count.[48]

---

[45]    Ninth Circuit Model Criminal Jury Instruction 8.22; *see United States v. Bedini*, 861 F.3d 10, 16-17 (1st Cir. 2017).

[46]    Despite charging the Defendants with three separate conspiracies, the government contends that the Defendants participated in a single, overarching conspiracy through a variety of means.  *See* Memorandum in Support of Defendants' Motion to Dismiss Pursuant to Federal Rules of Criminal Procedure 8 and 12(b)(3)(B)(i), (iv), and (v), ECF 1032 at 6, n.2 (acknowledging that the Indictment technically alleges that each remaining Defendant participated in three conspiracies—a "fraud conspiracy," a "federal program bribery conspiracy," and a "money laundering conspiracy"—but that the Indictment makes clear that all three conspiracies are cut from the same cloth); Government's Response in Opposition to Defendants' Motions to Dimiss [sic] the Fourth Superseding Indictment, ECF No. 1170, at 6 (arguing that the Indictment alleges that the Defendants "conspired in a *single overarching scheme* to gain admission to college through various means"), 16 (arguing that the Indictment "alleges not just single conspiracies but a single overarching scheme").

[47]    First Circuit Pattern Criminal Jury Instruction 4.18.371(1), cmt. 5; Fifth Circuit Criminal Pattern Jury Instruction 2.16.  This principle is reiterated in in *United States v. Franco-Santiago*, 681 F.3d 1, 7-9 (1st Cir. 2012), and *United States v. Monserrate-Valentin*, 729 F.3d 31, 43 (1st Cir. 2013).

[48]    *See* Fifth Circuit Criminal Pattern Jury Instruction 2.16; First Circuit Pattern Criminal Jury Instruction 4.18.371(1), cmt. 5.

### 28.      Conspiracy – First Element: Multiple Conspiracies[49]

As I have previously instructed, Count One of the Indictment charges that all of the Defendants and others took part in a single, overarching conspiracy to commit mail and wire fraud and honest service mail and wire fraud.  Count Two charges that all of the Defendants and others took part in a single, overarching conspiracy to commit federal programs bribery.  Count Three charges that each of the Defendants took part in a single, overarching conspiracy to commit money laundering.  Each of the three Counts alleges the existence of a single, overarching conspiracy of which all of the Defendants were members.  The Indictment does not allege multiple, separate conspiracies within each Count.

As I instructed you earlier, a single conspiracy exists when two or more people join together to further one common unlawful design, purpose, or overall plan.  Conversely, multiple conspiracies exist when there are separate unlawful agreements.

With respect to each of the conspiracy Counts, if you find that there was not one conspiracy as alleged by the government, but instead that there were multiple separate conspiracies, then you must find the Defendants not guilty of the conspiracy Count at issue.[50]

Whether there was one conspiracy or multiple conspiracies or, indeed, no conspiracy at all, is a question of fact for you, the jury, to determine in accordance with these instructions.

In determining whether there was a single conspiracy or multiple conspiracies with respect to each conspiracy count, you may consider a number of factors. These include:

Whether the alleged members of the conspiracy shared a common goal or purpose;

Whether the various activities of the conspiracy involved overlapping participants; and

---

[49]      "[A] court should instruct on the issue [of multiple conspiracies] 'if, on the evidence adduced at trial, a reasonable jury could find more than one such illicit agreement, or could find an agreement different from the one charged.'"  *United States v. Balthazard*, 360 F.3d 309, 315 (1st Cir. 2004) (quoting *United States v. Brandon*, 17 F.3d 409, 449 (1st Cir. 1994) (further internal quotation marks and citations omitted)).

[50]      The First Circuit has used variance analysis to review convictions where the evidence supports only a conspiracy narrower than the factual allegations of the Indictment charge, and, if there is no harmful prejudice from the variance, has allowed a guilty verdict to stand.  *Compare, e.g., Monserrate-Valentine*, 729 F.3d at 43*; Franco-Santiago*, 681 F.3d at 7-9 (conviction reversed, although based not on variance but on statute of limitations); *United States v. Mubayyid*, 658 F.3d 35, 41 (1st Cir. 2011); *with United States v. Glenn*, 828 F.2d 855, 858-60 (1st Cir. 1987) (finding harmful prejudice as to one defendant and not as to another defendant).  Therefore, confronted with a Rule 29 motion at the close of the government's case, if the trial judge concludes that the evidence is not sufficient to sustain the multiple-object conspiracy as charged, the trial judge must decide whether there is sufficient evidence of a narrower conspiracy and, if so, whether the resulting variance between the charge and the evidence is prejudicial.  If the judge concludes that the variance is not prejudicial, the question remains how to charge the jury concerning the object of the conspiracy. In a multiple-object conspiracy case, the Supreme Court suggested going farther: "if the evidence is insufficient to support an alternative legal theory of liability, it would generally be preferable for the court to give an instruction removing that theory from the jury's consideration." *Griffin v. United States*, 502 U.S. 46, 60 (1991).

Whether the alleged conspirators believed that their activities were "interdependent."[51]

To determine whether "interdependence" exists, you should ask whether the evidence shows, or fails to show, that the activities of one aspect of the scheme were necessary or advantageous to the success of another aspect of the scheme.[52] Interdependence does not exist when one alleged conspirator is indifferent to the purposes of the others.[53] Thus, to determine interdependence you must consider the alleged conspirators' states of mind: Each individual must think the aspects of the venture interdependent, and each defendant's subjective understanding, and not his or her mere participation in some branch of the venture, is key.[54]

Again, as I instructed you earlier, if you find that the conspiracy charged did not exist, then you must return a not guilty verdict, even if you find that some other conspiracy existed. If you find that a Defendant was not a member of the conspiracy charged in the Indictment, then you must find that Defendant not guilty, even though that Defendant may have been a member of some other conspiracy.[55]

---

[51]        Adapted from O'Malley et al., *Federal Jury Practice and Instructions* § 31:09 (6th ed. 2020); Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 19-5 (Multiple Conspiracies) (2020); First Circuit Pattern Criminal Jury Instruction No. 4.18.37(1), cmt. 5; *United States v. Trainor*, 477 F.3d 24, 34, n.20 (1st Cir. 2007) (describing a "wide range of factors"); *United States v. Dellosantos*, 649 F.3d 109, 117 (1st Cir. 2011) (describing the "three factors this court has found particularly helpful in evaluating the evidence" of single vs. multiple conspiracies).

[52]        Adapted from *United States v. Portela*, 167 F.3d 687, 695 (1st Cir. 1999), quoting *United States v. Wilson*, 116 F.3d 1066, 1076 (5th Cir. 1997).

[53]        *United States v. Glenn*, 828 F.2d 855, 858-59 (1st Cir. 1987).

[54]        *Portela*, 167 F.3d at 695.

[55]        Ninth Circuit Model Criminal Jury Instruction 8.22; *see United States v. Bedini*, 861 F.3d 10, 17 (1st Cir. 2017).

### 29.       Conspiracy – Second Element: Willfulness

With respect to the second element of the crime of conspiracy, the government must prove beyond a reasonable doubt that the Defendant then under consideration acted willfully.

Willfulness is a form of intent. Intent and motive are separate concepts. Motive is what prompts a person to act or fail to act. Intent refers to the state of mind with which the act is done. The government need not prove the Defendant's motive, but it must prove his or her intent.[56]

The word "willfully" means to act voluntarily and intelligently, and with specific intent to commit the underlying crime, such as mail fraud or bribery. In other words, it means to act with a bad purpose, either to disobey or disregard the law. To act by ignorance, accident, or mistake is not to act willfully.[57]

Mere knowledge of or acquiescence in the conspiracy is not sufficient to prove that a defendant knowingly and willfully joined a conspiracy, nor is it sufficient that he or she did something that happened to further or assist the purposes or objects of the conspiracy. Rather, to prove membership in the conspiracy, the evidence must establish that the defendant participated with the intention of aiding in the accomplishment of the conspiracy's principal purpose.[58]

---

[56]        *United States v. DeCicco*, Case No. 17-cr-10092-NMG, ECF No. 376, Jury Trial Transcript Day 7, at 92 (D. Mass. June 12, 2018).

[57]        Adapted from *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, ECF No. 513, Jury Trial Transcript Vol. XIII, at 13-150 (D. Mass. Apr. 28, 2016); *see also United States v. DeCicco*, Case No. 17-cr-10092-NMG, ECF No. 376, Jury Trial Transcript Day 7, at 93 (D. Mass. June 12, 2018).

[58]        Adapted from *Ocasio v. United States*, 136 S. Ct. 1423, 1429 (2016).

### 30.    Conspiracy – Second Element: Good Faith

If the Defendant under consideration acted in good faith, he or she cannot be guilty of the crime of conspiracy.  If the Defendant had a good faith belief that he or she was not violating the law, even if that belief was mistaken, he or she did not have the necessary intent to commit the crime.[59] In other words, the Defendant's good faith is a complete defense to the conspiracy charges because good faith is simply inconsistent with the element of willfulness.

While the term "good faith" has no precise definition, it means, among other things, an honest belief, a lack of malice, and lacking an intent to violate the law. A person who acts on an honestly-held belief is not punishable merely because that honest belief turns out to be incorrect or wrong. The law of conspiracy subjects to punishment only those people who act willfully, and with an intent to violate the law.

The burden is on the government to prove the required intent and consequent lack of good faith, as I will define for you next, beyond a reasonable doubt. The Defendant is under no obligation to prove good faith.[60]

---

[59]      *See United States v. Gorski*, 880 F.3d 27, 32  n.3 (1st Cir. 2018); *see also United States v. Henry*, 136 F.3d 12, 17 n.3 (1st Cir. 1998) ("If the defendant had a good faith belief that Beede was authorized to transport the waste to its facility, he is not guilty of the crime of conspiracy even if it turns out that that belief was wrong.  The burden of proving good faith does not rest with the defendant because the defendant does not have to prove anything in this case.  It is the government's burden to prove beyond a reasonable doubt that the defendant is guilty of conspiracy."); Eighth Circuit Model Criminal Jury Instruction 9.08A (2020); *United States v. Dockray*, 943 F.2d 152, 155 (1st Cir. 1991) (a good-faith belief "is an absolute defense to a charge of mail or wire fraud").

[60]      *United States v. Goodchild*, 25 F.3d 55, 59 (1st Cir. 1994).

### 31.   Conspiracy – Second Element: Intent

The government must prove two types of intent to convict a Defendant of conspiracy: an intent to agree (that is, an intent to join the conspiracy), and an intent that the underlying crime be committed.[61]

To show the first type of intent, the government must prove that the defendant voluntarily and intelligently agreed to join the conspiracy specified in the count at issue.  If the conspiracy charged in the count at issue involved more than one crime, the defendant must, at a minimum, have had knowledge or foresight of the multiple crimes before he can be convicted of agreeing to join that conspiracy. On the other hand, if a defendant agrees with others simply to commit a single crime, and has no knowledge or foresight of his accomplices' intentions and agreement to commit multiple crimes, that defendant had intent to join only a narrower, one-crime conspiracy, and is not guilty of the other broader conspiracy charged in the count at issue.[62]

A conspiracy requires more than just a buyer-seller relationship between the Defendant and another person. Such a transactional relationship, standing alone, cannot a support a conviction for conspiracy. Even if the purchase or sale itself was illegal, a conviction for conspiracy requires proof of an agreement to commit a crime beyond that of the mere sale. In other words, the government must prove that the buyer and seller had a joint criminal objective beyond the transaction between them.[63]

To show the second type of intent, the government must prove that the Defendant joined the conspiracy specified in the count at issue with the intent to commit the underlying crimes alleged in that count.  The object of the conspiracy at issue must be the crimes alleged in the count at issue.  An agreement that does not have the commission of a crime as its object is not a conspiracy. [64]

---

[61]      *See* First Circuit Pattern Criminal Jury Instruction 4.18.1341; *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, ECF No. 513, Jury Trial Transcript Volume XIII, at 13-154 (D. Mass. Apr. 28, 2016).

[62]      *United States v. Morrow*, 39 F.3d 1228, 1234 (1st Cir. 1994) ("But if a defendant agrees with others simply to commit a single crime (e.g., to rob one bank) and has no knowledge or foresight of the conspiracy's broader scope, that defendant is a member only of the narrower, one-crime conspiracy.").

[63]      *See United States v. Moran*, 984 F.2d 1299, 1302 (1st Cir. 1993) (citing "substantial law," in both First Circuit and others, "that a single drug sale does not automatically make buyer and seller co-conspirators"); *United States v. Gee*, 226 F.3d 885, 895 (7th Cir. 2000) ("because the line between a conspiracy and a mere buyer-seller relationship is difficult to discern, district judges should instruct juries in appropriate situations on the distinction"); *United States v. Walker*, 746 F.3d 300, 308 (7th Cir. 2014) ("a mere buyer-seller relationship provides a defense to a conspiracy charge because it negates an essential element, the agreement to commit a crime, of a conspiracy").

[64]      *See United States v. Bravo-Fernandez*, 722 F.3d 1, 32 (1st Cir. 2013) ("since the conduct allegedly underlying the conspiracy was not a crime, no... conspiracy to commit that conduct can exist either").

### 32.      Conspiracy – Third Element: Overt Act

The third element of the crime of conspiracy is the commission of an overt act. The government must prove beyond a reasonable doubt that one of the conspirators knowingly and willfully committed at least one overt act to accomplish some purpose of the conspiracy at some time during the period of the conspiracy.  An "overt act" is any action intended to accomplish some object of the conspiracy.  The government is not required to prove that the Defendant personally committed or knew about the overt act. It is sufficient if one conspirator committed one overt act at some time during the period of the conspiracy.[65]

---

[65]      Adapted from *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, ECF No. 513, Jury Trial Transcript Vol. XIII, at 13-155 (D. Mass. Apr. 28, 2016); First Circuit Pattern Criminal Jury Instruction 4.18.371(1); *Modern Federal Jury Instructions (Crim.)*, Inst. 19-3S (Multiple Conspiracies) (2021); *see also* Eleventh Circuit Pattern Criminal Jury Instructions, Offense Instruction 13.1; Federal Judicial Center Pattern Criminal Jury Instruction No. 4.

### III.    Count One: Conspiracy to Commit Mail and Wire Fraud

### 33.    Count One: Conspiracy to Commit Mail and Wire Fraud: Introduction

Count One of the Indictment charges that the Defendants conspired with Rick Singer and others to commit mail and wire fraud, and honest services mail and wire fraud. As I will explain to you in a moment, mail and wire fraud on the one hand, and honest services mail and wire fraud on the other hand, are different crimes. Title 18, Section 1349 of the United States Code makes it a crime to conspire to commit both mail and wire fraud, and honest services mail and wire fraud.

Here, Count One alleges that all of the Defendants took part in one single conspiracy with Rick Singer and other parents, university employees, and others affiliated with Rick Singer. As charged in the Indictment, this conspiracy began in or about 2007 and continued until February 2019. One alleged objective of the conspiracy was to use materially false statements to obtain property, in the form of standardized test scores and admission to universities.  Another alleged objective of the conspiracy was to use bribes and kickbacks to deprive the testing services and universities of the honest and faithful services of test proctors, athletic coaches, and university administrators.

It is not necessary for the government to prove that the Defendants intended the alleged scheme to defraud to achieve both of the objects.  Rather, it is sufficient if the government proves beyond a reasonable doubt that the Defendants intended the scheme to achieve one of the charged objects.  But in that event, in order to return a verdict of guilty, you must unanimously agree as to which of the two objects the Defendants intended to achieve.[66]  In other words, you need to unanimously agree on whether the Defendant was guilty of wire fraud because he or she engaged in a scheme to obtain money or property or because he or she engaged in a scheme to deprive of honest services.

Mail and wire fraud, and honest services mail and wire fraud, are the underlying crimes alleged to have been the purpose of the conspiracy charged in Count One. I am providing you with the elements of these crimes so that you may evaluate whether each Defendant specifically intended that they be committed in furtherance of the alleged conspiracy.

---

[66]     *United States v. Woodard*, 459 F.3d 1078, 1084 n.2 (11th Cir. 2006); *United States v. Ballard*, 663 F.2d 534, 544 (5th Cir. 1981) (conviction reversed where it was impossible to tell if jurors agreed that defendant committed same act which could properly support conviction for mail fraud and conspiracy).

### 34.     Mail and Wire Fraud – Elements

The first theory of Count One is that the Defendants conspired to commit mail and wire fraud in order to obtain property in the form of standardized test scores and admission to universities.  I am explaining mail and wire fraud together because they are similar, but I will note where they are different. The crime of mail or wire fraud has three elements:

First, a scheme to obtain money or property by means of materially false or fraudulent pretenses.

Second, that the Defendant knowingly and willfully participated in the scheme, with intent to defraud.

And third, with respect to mail fraud, that the Defendant caused the United States mail, or a private or commercial interstate carrier, to be used for the purpose of executing the scheme or in furtherance of the scheme. It is also sufficient if it was reasonably foreseeable that the United States mail, or a private or commercial interstate carrier, would be used for the purpose of executing the scheme or in furtherance of the scheme.[67]

Wire fraud is slightly different. With respect to wire fraud, the third element is that the Defendant caused an interstate wire communication to be used for the purpose of executing the scheme, or in furtherance of the scheme, or that it was reasonably foreseeable that an interstate wire communication would be used.[68]

---

[67]     Adapted from *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, ECF No. 513, Jury Trial Transcript Vol. XIII, at 13-157 – 13-158 (D. Mass. Apr. 28, 2016), and First Circuit Pattern Criminal Jury Instructions 4.18.1341, 4.18.1343, to conform to three-element model articulated in *United States v. DiRosa,* 761 F.3d 144, 150-151 (1st Cir. 2014), and *United States v. Appolon*, 715 F.3d 362, 367-368 (1st Cir. 2013).

[68]     First Circuit Pattern Criminal Jury Instruction 4.18.1343.

### 35.        Mail and Wire Fraud – Definitions: "Scheme"

I will now define some of these terms. For purposes of the mail and wire fraud statute, a "scheme" includes any plan, pattern, or course of action.[69]

---

[69]        *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, ECF No. 513, Jury Trial Transcript Vol. XIII, at 13-158 (D. Mass. Apr. 28, 2016).

### 36.     Mail and Wire Fraud – Definitions: "Materially False or Fraudulent Pretenses"

"Materially false or fraudulent pretenses" means any materially false statements or assertions that were either known to be untrue when made or were made with reckless indifference to their truth, and that were made with the intent to defraud.[70]

---

[70]     Adapted from *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, ECF No. 513, Jury Trial Transcript Vol. XIII, at 13-158 – 13-159 (D. Mass. Apr. 28, 2016), First Circuit Pattern Criminal Jury Instructions 4.18.1341, 4.18.1343.

### 37.     Mail and Wire Fraud – Definitions: "Material" or "Materially"

A fact or matter is "material" if it has a natural tendency to influence or be capable of influencing the decision of the decision-maker to whom it was addressed.[71]  If the alleged victim would have made the same decision if it knew the true facts, the misstatement at issue cannot be material.[72]

If the alleged victim makes a particular decision despite its actual knowledge that certain false statements were made to it, that is very strong evidence that those statements were not material.[73]

Likewise, if the alleged victim regularly makes similar decisions despite actual knowledge that certain false statements were made to it, that is strong evidence that the statements are not material.[74]

---

[71]     Adapted from *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, ECF No. 513, Jury Trial Transcript Vol. XIII, at 13-159 (D. Mass. Apr. 28, 2016), First Circuit Pattern Criminal Jury Instructions 4.18.1341, 4.18.1343; *see also United States v. Blastos*, 258 F.3d 25, 29 (1st Cir. 2001).

[72]     *See United States v. Williams*, 12 F.3d 452, 457 (5th Cir. 1994) ("[O]ne way of determining whether the statements were capable of influencing a bank's decision is to extrapolate from the facts and ask, 'If the bank had relied on the defendant's statements, would it have made any difference?'"); *see also id.* at 458 (framing the relevant question as whether "a bank or federal institution, armed with the truth, would have arrived at a different decision on a pending application").

[73]     *Universal Health Services v. United States ex rel. Escobar*, 136 S.Ct. 1989, 2003-04 (2016).

[74]     *Universal Health Services*, 136 S.Ct. at 2004.

### 38.     Mail and Wire Fraud – Definitions: "Knowingly" and "Willfully"

A Defendant acts "knowingly" if he or she was conscious and aware of his or her actions, realized what he or she was doing or what was happening around him or her, and did not act because of ignorance, mistake, or accident.[75]

A Defendant acts "willfully" if he or she acted knowingly and purposely, with an intent to do something the law forbids; that is to say, with bad purpose either to disobey or to disregard the law.[76]

For mail and wire fraud, the government must prove both knowing and willful conduct.

---

[75]     *See United States v. Pagan-Romero*, 894 F.3d 441, 444 (1st Cir. 2018); *United States v. Mueffelman*, 470 F.3d 33, 41 (1st Cir. 2006); *see also United States v. DeNunzio,* Case No. 14-cr-10284-NMG, ECF No. 513, Jury Trial Transcript Vol. XIII, at 13-149 – 13-150 (D. Mass. Apr. 28, 2016).

[76]     Sand et al., *Modern Federal Jury Instructions-Criminal*, P 44.01 (2021); *see* First Circuit Pattern Criminal Jury Instruction 2.17.

### 39.     Mail and Wire Fraud – Definitions: "Intent to Defraud"

To act with "intent to defraud" means to act willfully and with the specific intent to do something the law forbids; that is to say, with bad purpose, either to disobey or disregard the law.[77]

Good faith on the part of the Defendant negates intent and is a complete defense to mail or wire fraud.  If, for example, you find that the Defendant had a good faith belief that the alleged victims knew of and condoned—in other words provided tacit approval for—the activities in question, then the Defendant did not have an intent to defraud.[78]  Evidence of the alleged victim's actions or omissions, or evidence of deficiencies in the manner in which it implemented or enforced its policies and procedures, may also be considered by you to the extent that such evidence bears on the element of intent.[79]

---

[77]     Adapted from *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, ECF No. 513, Jury Trial Transcript Vol. XIII, at 13-159 (D. Mass. Apr. 28, 2016).

[78]     *United States v. Soto*, 799 F.3d 68, 94-95 (1st Cir. 2015); *see also United States v. Josleyn*, 99 F.3d 1182, 1194 (1st Cir. 1996); *United States v. Klock*, 210 F.2d 217, 22-23 (2nd Cir. 1954).

[79]     Adapted from *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, ECF No. 513, Jury Trial Transcript Vol. XIII, at 13-159 – 13-160 (D. Mass. Apr. 28, 2016); *United States v. Josleyn*, 99 F.3d 1182, 1194 (1st Cir. 1996).  Good faith is an "absolute defense" to a specific-intent crime. *United States v. Dockray*, 943 F.2d 152, 155 (1st Cir. 1991).  A criminal defendant is generally "entitled to an instruction on his theory of the defense so long as the theory is a valid one and there is evidence in the record to support it." *United States v. Gamache*, 156 F.3d 1, 9 (1st Cir. 1998). Magistrate Judge Kelley has spoken extensively on the relevance of the parents' "good faith" to the crimes alleged in the Indictment.  *See also* Sealed Transcript of May 14, 2020 Hearing at 21:12-24; 23:6 to 24:9, 45:13-24 (Kelley, M.J.):



A defendant has no burden to establish a defense of good faith. The burden is on the government to prove fraudulent intent and the consequent lack of good faith beyond a reasonable doubt.[80]



*See also* Sealed Transcript of February 10, 2021 Hearing at 27:15-24 (Kelley, M.J.):



With respect to the honest services piece, at least, the Court has also held that whether the parents acted in good faith or not would be an issue for the jury to decide at trial.  *See United States v. Sidoo*, 468 F. Supp. 3d 428, 445 (D. Mass. 2020) (Gorton, J.) ("Again, to the extent the defendants maintain that they were unaware that their payments were going to corrupt insiders or of the extent to which those insiders deprived the universities of their honest services is a factual question to be resolved at trial.").

[80]    *United States v. Joselyn*, 99 F.3d 1182, 1194 (1st Cir. 1996).

### 40.    Mail and Wire Fraud – Definitions: "Property": Admission to the Universities

*Instruction Requested by Defendant Wilson:*

Mail and wire fraud also require proof that a purpose of the scheme was to obtain money or "property."  It is not enough that the scheme involved, or may have caused, an incidental loss of money or property by the alleged victim.  The evidence must show, rather, that obtaining money or property was an object of the scheme.[81]  The government's allegation is that by submitting false information in connection with their children's applications to the universities, the defendants committed the federal crime of mail or wire fraud because they intended to deprive the universities of their "property" in the form of an admissions slot.

Here, I instruct you that the admission of a student to a university, or an admissions slot, does not constitute "property" of the university and thus cannot serve as a basis for a finding of mail or wire fraud, or a conspiracy to commit mail or wire fraud.[82]

Moreover, if the only actions taken by the university employees who allegedly were part of the scheme was to do exactly the sorts of things the university normally expected or wanted those employees to do, i.e., to recommend students for admission based on various criteria, including fundraising considerations, then their actions cannot count as the taking of property from the university, and hence there can be no scheme to commit mail or wire fraud.[83]

*Instruction Requested by Defendants Abdelaziz, Kimmel, and Palatella:*

*Prefatory Explanation for the Court:*

For the reasons set forth in the Defendants' Memorandum of Law in Support of Their Motion to Dismiss Count One Insofar as It Alleges Conspiracy to Defraud Universities of Property (ECF No. 1042), which the Defendants hereby incorporate by reference, and in *United States v. Ernst*, 502 F. Supp. 3d 637 (D. Mass. 2020), it is the Defendants' position that admission to a university does not constitute "property" as a matter of law for purposes of the mail and wire fraud statutes.  Accordingly, the Defendants respectfully request that the Court instruct the jury that admissions to universities do not constitute "property" for purposes of these statutes.  Nonetheless, the Defendants recognize that this Court has previously held that "application slots to universities are property interests owned by the university cognizable under the mail and wire fraud statutes." *Sidoo*, 468 F. Supp. 3d at 441.  To the extent the Court is unwilling to give the Defendants' requested instruction in light of its prior holding, the Defendants respectfully submit an alternative requested instruction, set forth below, to allow the jury to determine whether the admissions slots at issue in this case constitute "property."  *See Hana Fin., Inc. v. Hana Bank*,

---

[81]    *See Kelly v. United States*, 140 S.Ct. 1565, 1573-74 (2020).

[82]    *See* Defendants' Memorandum of Law in Support of Their Motion to Dismiss Count One Insofar as It Alleges Conspiracy to Defraud Universities of Property (ECF No. 1042), which the Defendants incorporate herein by reference; *United States v. Ernst*, 502 F. Supp. 3d 637 (D. Mass. 2020).  As noted above, the Defendants expressly maintain, and do not waive, all arguments in their prior briefing, including that the admissions slots at issue under the government's theory cannot constitute "property" within the meaning of the mail or wire fraud statutes.

[83]    *See Kelly*, 140 S.Ct. at 1571-73.

574 U.S. 418, 423-24 (2015) ("'[T]he application-of-legal-standard-to-fact sort of question . . . , commonly called a 'mixed question of law and fact' has typically been resolved by juries.'" (quoting *United States v. Gaudin*, 515 U.S. 506, 512 (1995)). The Defendants reserve all rights to argue that the question of what constitutes "property" under these statutes is a question of law that was incorrectly decided at the motion to dismiss stage, or a mixed question of law and fact.

*Alternative Requested Instruction:*

Mail and wire fraud also require proof that a purpose of the scheme was to obtain money or "property." It is not enough that the scheme involved, or may have caused, an incidental loss of money or property by the alleged victim. The evidence must show, rather, that obtaining money or property was an object of the scheme.[84] The government's allegation is that by submitting false information in connection with their children's applications to the universities, the defendants committed the federal crime of mail or wire fraud because they intended to deprive the universities of their "property" in the form of an admissions slot.

You must determine whether the admissions slots at issue in this case are in fact property of the universities.

"Property" may include tangible money or property and, in some circumstances, intangible interests such as the right to control the use of one's assets. With respect to intangible interests, such as the right to control, to allocate, or to exclude, interference with those interests, standing alone, does not rise to the level of a scheme to obtain property for purposes of the mail and wire fraud statutes.[85] Not every non-disclosure or misrepresentation that could affect one's decision of how to use assets is sufficient to support a mail or wire fraud conviction. A property interest in the intangible right to control the use of one's assets may be injured *only* when the alleged scheme is intended to impact an *economic* decision or, in other words, to cause *tangible economic harm*.[86] Thus, in order to prove that a defendant agreed and intended to defraud the universities here, the government must prove beyond a reasonable doubt that the misrepresentation or non-disclosure of information caused, or was intended to cause, tangible

---

[84]   *See Kelly v. United States*, 140 S.Ct. 1565, 1573-74 (2020).

[85]   *See Kelly*, 140 S. Ct. at 1572 ("The State's 'intangible rights of allocation, exclusion, and control'—its prerogatives over who should get a benefit and who should not—do 'not create a property interest.'") (citing *Cleveland v. United States*, 531 U.S. 12, 23 (2000)).

[86]   *United States v. Finazzo*, 850 F.3d 94, 111-12 (2d Cir. 2017); *Ernst*, 502 F. Supp. 3d at 651 (quoting *Finazzo*, 850 F.3d at 111-12).

economic harm to the university.[87]  If the university received the full economic benefit of its bargain, there is no property fraud for purposes of the mail and wire fraud statutes.[88]

Moreover, if the only actions taken by the university employees who allegedly were part of the scheme was to do exactly the sorts of things the university normally expected or wanted those employees to do, i.e., to recommend admission based on various criteria, including fundraising considerations, then their actions cannot count as the taking of property from the university, and hence there can be no scheme to commit mail or wire fraud.[89]

---

[87]       Adapted from *Finazzo*, 850 F.3d at 109-12; *United States v. Binday*, 804 F.3d 558, 570 (2d Cir. 2015); and *United States v. Mittelstaedt*, 31 F.3d 1208, 1210 (2d Cir. 1994); *see also Kelly*, 140 S. Ct. at 1572 (a non-property right cannot be transformed into property by the mere allegation that the victim was deprived of control); *Binday*, 804 F.3d at 570 (2d Cir. 2015) ("we have repeatedly rejected application of the mail and wire fraud statutes where the purported victim received the full economic benefit of its bargain."); *United States v. Welch*, 327 F.3d 1081, 1108 (10th Cir. 2003) (under a right to control theory, property fraud sufficient if the defendant "knowingly provides or withholds materially false information which imposes a substantial risk of loss on another . . . even if that risk does not materialize"); *United States v. Wallach*, 935 F.2d 445, 462-63 (2d Cir. 1991) ("the right to control . . . theory is predicated on a showing that some person or entity has been deprived of potentially valuable economic information"); *United States v. Shyres*, 898 F.2d 647, 653 (8th Cir. 1990) (upholding conviction because jury could have found defendant deprived victim of the right to control the spending of its funds under several different theories, all of which would have resulted in actual or potential economic harm); *United States v. Fagan*, 821 F.2d 1002, 1010, n.6 (5th Cir. 1987) (upholding conviction in part because evidence demonstrated that defendant deprived victim of its right to control its money which resulted in or could have resulted in tangible economic harm – i.e., paying less to the defendant for his services, among others).

[88]       *Binday*, 804 F.3d at 570.

[89]       *See Kelly*, 140 S.Ct. at 1571-73.

### 41.    Mail and Wire Fraud – Definitions: "Property": Standardized Test Scores

*Instruction Requested by Defendant Palatella:*

The government has also alleged that the money and property at issue is: "ACT, SAT and other standardized tests and test scores."  In this case you have heard evidence only regarding the SAT score for the child of one defendant, Marci Palatella.  The government has alleged, among other things, that Ms. Palatella participated in a scheme to defraud the College Board through acts of deceit to obtain the property of the College Board, in particular the SAT test score of her child.  To find her guilty of this offense, you must decide beyond a reasonable doubt that Ms. Palatella willfully engaged in this aspect of the conspiracy with the intent, through the alleged deceit or fraud, to take or obtain property of the College Board.[90]

As a first step, you must determine, beyond a reasonable doubt, that Ms. Palatella knew that the object of this aspect of the scheme to defraud was to obtain property of the College Board.  You must, accordingly, decide beyond a reasonable doubt that the SAT test score of her son was property of the College Board.

In deciding whether the SAT test score for defendant Marci Palatella's child is property of the College Board and that she intended to obtain that property through a scheme to defraud the College Board, you may consider the following.  In determining whether a test score is property, you may consider those factors that make something one's own property, including their ability to buy and sell it, to control or enjoy its use and keep others from controlling or enjoying its use.

*First*, you may consider the control, if any, that could be asserted over the test score by the College Board once the score was provided to defendant Palatella.

*Second*, you may consider whether there is a marketplace for the SAT test score of her child in which defendant Palatella could buy or sell that score.  You may consider in this regard whether the score of her child could be transferred or sold to another parent or student who could then use that score in some manner.

*Third*, you may consider whether the College Board had a property interest in any particular score that might have been achieved by defendant Palatella's son during the test, and whether a lower score or a higher score by her son changed the value of the SAT test score as property of the College Board.

*Fourth*, you may consider whether there is a market price that can be paid for an SAT test score.

If you find that the SAT test score of Ms. Palatella's son is not property of the College Board at the time it made that score available to Ms. Palatella and her son, then you may not convict her of participating in the scheme to defraud for that purpose.

The government has not charged in its indictment that the process by which the test was administered by the College Board to Ms. Palatella's son was property of the College Board or

---

[90] *See Kelly v. United States*, 140 S.Ct. 1565, 1572 (2020).

that Ms. Palatella schemed with another person to obtain with deceit that process as property from the College Board.  Accordingly, I instruct you that you are not to consider, in your deliberations, whether the process of taking the test was property of the College Board.

### IV.     *Count One: Conspiracy to Commit Honest Services Mail and Wire Fraud*

### 42.     **Count One: Conspiracy to Commit Honest Services Mail and Wire Fraud: Introduction**

The second theory of Count One is that the Defendants conspired to commit honest services mail and wire fraud, meaning that honest services mail and wire fraud is the underlying crime alleged to have been the purpose of the conspiracy in Count One.[91]  Count One alleges that each Defendant took part in a single conspiracy, with Rick Singer, other parents, university employees, test proctors, and others affiliated with Rick Singer, from in or about 2007 through in or about February 2019, to deprive the testing services and the universities of their right to the honest and faithful services of their test proctors, athletic coaches, and university administrators, through bribes and kickbacks.

Again, I am providing you with the elements for honest services mail and wire fraud so that you may evaluate whether each Defendant specifically intended and agreed that a member of the conspiracy would engage in honest services mail and wire fraud.  If the government does not prove beyond a reasonable doubt that the Defendant specifically intended and agreed that some member of the conspiracy would commit honest services mail and wire fraud, then the government has failed to prove that the Defendant engaged in a conspiracy to commit honest services mail and wire fraud.

The crime of honest services mail and wire fraud has six elements.

The first element is that an employee or contractor owed a fiduciary duty to an entity.

The second element is that the Defendant agreed and specifically intended that the fiduciary would perform an official act that violated his or her fiduciary duty, and deprive the entity to which he or she owed a fiduciary duty of his or her honest services, in exchange for a bribe or kickback.[92]

The third element is that there was in fact a bribe or kickback.[93]

The fourth element is that the Defendant agreed and specifically intended that the fiduciary would deceive the entity to which he or she owed a fiduciary duty through a material misrepresentation, false statement, false pretense, or a deliberately misleading statement.

---

[91]      Adapted from *United States v. Gurry, et al.*, Case No. 16-cr-10343-ADB, ECF No, 930, Jury Trial Transcript Day 49, at 49-54 (D. Mass. April 4, 2019); Eleventh Circuit Pattern Criminal Jury Instructions O50.2, O50.3; Ninth Circuit Model Criminal Jury Instruction 8.123; *United States v. Sawyer*, 85 F.3d 713, 732 n.16 (1st Cir. 1996); *United States v. Reichel*, Case No. 1:15-cr-10324-DPW, ECF No. 244, Substantive Jury Instructions at 5-6 (D. Mass. June 17, 2016).

[92]      *See United States v. Napout*, 332 F. Supp. 3d 533, 549, 565-66 (E.D.N.Y. 2018).

[93]      *Skilling v. United States*, 561 U.S. 358, 368 (2010).

The fifth element is that it was foreseeable to the Defendant that the entity to which the employee or contractor owed a fiduciary duty might suffer an economic harm as a result of the breach of fiduciary duty.

The sixth and final element concerns the use of the mail or wires.  In a moment, I will further describe this element and the other five elements of honest services mail and wire fraud.

### 43.    Honest Services Mail and Wire Fraud – First Element (Fiduciary Duty): University Employees

As I instructed you earlier, the alleged objective of this conspiracy was to use bribes and kickbacks to deprive the testing services and universities of the honest and faithful services of their test proctors, athletic coaches, and university administrators.

With respect to university employees, the first element is that a university employee, such as an athletic coach or administrator, owed a fiduciary duty to his or her employer.  Thus, the government must prove beyond a reasonable doubt that the university employees at issue here owed a fiduciary duty to their employer.

A fiduciary is a person having a duty, created by his or her work or activities, to act primarily for the benefit of another in matters connected with his or her work or activities.[94]  A fiduciary relationship is a relationship created by law, such as that of guardian and ward, trustee and beneficiary, principal and agent, or attorney and client.[95]  The essence of a fiduciary relationship is that the parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party.[96]  The fact that one party is compensated by another does not establish a fiduciary relationship.[97]  In general, employment-type relationships are not fiduciary relationships.[98]

In determining whether a particular person owed a fiduciary duty to another, you may consider: the relationship of the parties with respect to the alleged criminal conduct; the parties' respective capacities and experience; the degree to which control and decision-making power over important and valuable assets and staff was delegated to the person; the degree to which there

---

[94]    *See Patriot Sci. Corp. v. Korodi*, 504 F. Supp. 2d 952, 966 (S.D. Cal. 2007) (quoting *Tyler v. Children's Home Society*, 29 Cal. App.4th 511, 548-49 (1994)); *see also United States v. Meredith*, Case No. 19-cr-10075-MLW, ECF No. 41, Transcript of Rule 11 Hearing at 33:16-20 (D. Mass. Mar. 28, 2019) ("I expect, if I were trying this case, this could be a contested issue because there is some jurisprudence that says you look to state law to see if there's a fiduciary relationship, duty[.]").

[95]    *See Korodi*, 504 F. Supp. 2d at 966 (citing *PersSon v. Smart Inventions, Inc.*, 125 Cal.App.4th 1141, 1160 (2005)).

[96]    *See Korodi*, 504 F. Supp. 2d at 966 (citing *PersSon*, 125 Cal.App.4th at 1160, and quoting *Barbara A. v. John G.*, 145 Cal.App.3d 369, 383 (1983)).

[97]    *Skilling v. United States,* 561 U.S. 358, 408 n. 41 (2010).

[98]    This is well established under California law, which governs the analysis as to Donna Heinel's and Jovan Vavic's relationships with the University of Southern California.  *See O'Byrne v. Santa Monica-UCLA Medical Center*, 94 Cal. App. 4th 797, 811-12 (2001) (under California law, "[i]n general, employment-type relationships are not fiduciary relationships").  Under District of Columbia law, which governs the analysis as to Gordon Ernst's relationship with Georgetown University, fiduciary principles are generally applicable to employees, but the existence of an agency relationship giving rise to fiduciary duties depends on a fact-intensive analysis of whether the employer has "the right to control and direct the employee's work performance, the manner in which they conducted their work, and whether their work was part of the regular business of [the employer]."  *Amtrak v. Veolia Transp. Servs.*, 592 F. Supp. 2d 86, 94 (D.D.C. 2009).

was special trust, confidence, and reliance in the person; and the degree to which the person knowingly accepted that special trust and confidence.[99]

---

[99]    *See* Ninth Circuit Model Criminal Jury Instruction 8.123; *Judah v. Reiner*, 744 A.2d 1037 (D.C. Ct. App. 2000) (listing factors to be considered in determining whether a person owes a fiduciary duty to another under District of Columbia law).

### 44.   Honest Services Mail and Wire Fraud – First Element (Fiduciary Duty): Test Proctor

***Instruction Requested by Defendant Palatella:***

With respect to the test proctors, the government must prove, beyond a reasonable doubt, that the standardized test proctor owed a fiduciary duty to the College Board.[100]

I have already instructed you on a fiduciary and the factors to consider when determining whether a particular person owed a fiduciary duty to another.

In the ordinary or typical business relationship, an independent contractor does not owe a fiduciary duty for the services that independent contractor performs.[101]  The government asserts here that Dvorskiy owed a fiduciary duty to the College Board.  The government bears the burden of proving beyond a reasonable doubt that an independent contractor owed the testing company a fiduciary duty.  Proof that the College Board compensated Dvorskiy for his services is by itself not proof that Dvorskiy owed the College Board a fiduciary duty.[102]

---

[100]     *See United States v. Sidoo*, 468 F. Supp. 3d 428, 443 (D. Mass. 2020) ("[w]hether or not Dvorskiy indeed maintained the requisite fiduciary duty is another issue to be explored at trial and determined by the jury").
[101]     *Spring Inv'r Services, Inc. v. Carrington Capital Mgmt., LLC*, CIV.A. 10-10166-FDS, 2013 WL 1703890, at *7 (D. Mass. Apr. 18, 2013)

### 45.   Honest Services Mail and Wire Fraud – Second Element (Intent)

The second element of honest services mail and wire fraud is that the Defendant agreed and specifically intended that the fiduciary would perform an official act that violated his or her fiduciary duty, and deprive the entity to which he or she owed a fiduciary duty of his or her honest services, in exchange for a bribe or kickback.[103]

Proving intent to deceive alone, without the intent to cause loss of honest services, is not sufficient to prove intent to defraud.  If you find that the Defendant intended his or her actions to advance the interests of the fiduciary's employer, as such interests were communicated to the fiduciary, then the Defendant did not intend to cause loss of honest services.[104]

As I have already instructed you, good faith on the part of the Defendant negates intent and is a complete defense to mail or wire fraud. If, for example, you find that the Defendant was unaware that his or her payments were going to corrupt university officials and instead had a good faith belief, even a mistaken one, that the payments were going to the university itself or to university officials for non-corrupt purposes, then the Defendant did not have an intent to defraud.[105] Similarly, if you find that the Defendant had a good faith belief, even if mistaken, that the alleged victim welcomed, knew of, condoned, or provided tacit approval for, the activities in question, then the Defendant did not have an intent to defraud.  In addition, if you find that that

---

[103]      *See United States v. Napout*, 332 F. Supp. 3d 533, 549, 565-66 (E.D.N.Y. 2018).

[104]      *See* Eleventh Circuit Pattern Criminal Jury Instruction O50.3; *United States v. Brown*, 459 F.3d 509, 521-22 (5th Cir. 2006) (holding that Enron scheme alleged in indictment, pursuant to which employees of large energy company and of financial institution, to ensure that company met its earning goals as well as to secure personal bonuses for themselves based on company's performance, participated in conspiracy to inflate company's earnings, was not scheme in which employees' interests sufficiently diverged from perceived interest of their corporate employer to support charge of honest services wire fraud); *see also Brown*, 459 F.3d at 522 ("[W]here an employer intentionally aligns the interests of the employee with a specified corporate goal, where the employee perceives his pursuit of that goal as mutually benefitting him and his employer, and where the employee's conduct is consistent with that perception of the mutual interest, such conduct is beyond the reach of the honest-services theory of fraud as it has hitherto been applied.").

[105]      *See supra*, notes accompanying Proposed Instructions 21 and 29 (discussing good faith); *United States v. Sidoo*, 468 F. Supp. 3d 428, 445 (D. Mass. 2020) (Gorton, J.) ("Again, to the extent the defendants maintain that they were unaware that their payments were going to corrupt insiders or of the extent to which those insiders deprived the universities of their honest services is a factual question to be resolved at trial.");  *see also* ECF No. 906, Transcript of February 28, 2020 Hearing, at 15:23-19:11 (Kelley, M.J.):

> I mean, you -- I just think the government is kind of stuck on this theory that, if the money is going into an account for the school in exchange for Heinel advocating for a student, then the defendants are guilty. Number one, you do have to show they [the Defendant parents] knew that was happening; and, number two, you have to show the school wasn't okay with that….. So I think the problem with the government's theories is—it's not a Vandemoer situation because you've got – it's once removed because you've got these parents paying Singer, who is paying the coach or the administrator, and that makes things very complicated as far as the parents' intent and what the parents understand is going on….Donna Heinel's allegedly taking money for an account at the school that she has control over and it somehow burnishes her prestige or she gets to direct it somewhere or other to her professional benefit, would be a bribe, but the parent has to know she's doing that, and the school cannot be condoning it.

the Defendant had a good faith belief that no fiduciary duty would be breached, then the Defendant did not have an intent to defraud.[106]

Evidence of the alleged victim's actions or omissions, or evidence of deficiencies in the manner in which it implemented and enforced its policies and procedures, may be considered by you to the extent that such evidence bears on the issue of whether or not the defendant formed the required intent to commit the crimes with which he is charged.[107]

A defendant has no burden to establish a defense of good faith. The burden is on the government to prove fraudulent intent and the consequent lack of good faith beyond a reasonable doubt.[108]

---

[106]    Adapted from *United States v. Josleyn*, 99 F.3d 1182, 1194 (1st Cir. 1996).
[107]    Adapted from *Josleyn*, 99 F.3d at 1194.
[108]    Adapted from *Josleyn*, 99 F.3d at 1194.

### 46.    Honest Services Mail and Wire Fraud – Third Element (Bribes and Kickbacks)

The third element of honest services mail and wire fraud is that there was in fact a bribe or kickback.  Without a bribe or a kickback, there cannot be an honest services fraud.[109]

In this context, a bribe or kickback is money or anything of value which is provided, directly or indirectly, personally to an employee or contractor with the specific intent of inducing the employee or contractor to perform an official act that violates her fiduciary duty.[110]

There are four caveats to the definition of bribe and kickback.

First, a payment *to the entity* allegedly being defrauded of the employee's or contractor's honest services, to be used for the benefit of that entity, is not a bribe or kickback. For example, a payment directed by an employee to his or her university employer, to be used for the benefit of the university, does not constitute a bribe or kickback.[111]  This is true regardless of the employee exercised some measure of control over the university's accounts. If the payment was made to the university, and used or intended for use for the benefit of the university, then the payment is

---

[109]    *Skilling v. United States*, 561 U.S. 358, 368 (2010).

[110]    *See United States v. Napout*, 332 F. Supp. 3d 533, 549, 565-66 (E.D.N.Y. 2018).

[111]    *See Skilling*, 561 U.S. at 409-11 (holding that "honest-services fraud does not encompass conduct more wide ranging than the paradigmatic cases of bribes and kickbacks" and in particular does not cover "undisclosed self-dealing" or "conflicts of interest").  The *Skilling* Court was clear that the honest services scheme need not occasion a pecuniary loss (and might, in fact, occasion a pecuniary gain) to the entity being defrauded. *Id.* at 399. However, nothing in *Skilling* suggests that the actual bribe – the *sine qua non* of the offense – could be a payment *to the victim*.  Indeed, even in the *Skilling* example of the corrupt mayor, the *sine qua non* of the offense—a payment *to the mayor* rather than the city— (i.e., a bribe) was present and therefore the city was deprived of the mayor's honest services.  *Id.*  **Undersigned counsel has not located a single case—anywhere— where a payment to the entity being defrauded constitutes a bribe or kickback. To permit the government to prove a "bribe" through a payment to the entity being defrauded would create a new category of "bribe" that has never been recognized and is certainly not a "core" or "paradigmatic" bribe as required by *Skilling*, even if the underlying conduct might constitute a breach of fiduciary duty.**  That a payment *to the defrauded entity* cannot be a bribe or kickback is supported by case law requiring a "private gain" for an honest services conviction.  *See United States v. Nayak*, 769 F.3d 978, 981 (7th Cir. 2014) (clarifying that "private gain" is no longer an explicit element of honest services fraud only because *Skilling* narrowed the statute to criminalize only a subset of actions—namely bribes and kickbacks—that generate private gains by definition: "Now, only bribery or kickbacks, rather than any private gain whatsoever, can be used to show honest-services fraud."). The term "private gain" was never broad enough to encompass a payment *to the victim of the fraud*.  *See United States v. Sorich*, 523 F.3d 702, 710 (7th Cir. 2008) (holding that the "spoils" could go to "third parties" but the "purpose of the private gain requirement—and one that does not depend on who gets the spoils—is to prevent the conviction of individuals who have breached a fiduciary duty to an employer or the public, but have not done so for illegitimate gain.").

not a bribe or a kickback.[112]  Rather, the bribe or kickback must involve a private payment or private gain for the employee or some other third party.[113]

Second, a bribe cannot be bona fide salary, wages, fees or other compensation paid to an employee or contractor in the usual course of business.   Nor can it be some sort of psychic or indirect financial benefit derived from enriching the alleged victim of the alleged fraud.  Thus, neither an increase in salary for doing what one's superiors deem a good job, nor an addition to one's peace of mind from thinking one's job more secure, nor basking in a superior's approval, praise, or admiration can prove a bribe or a kickback.[114]

Third, a payment made to reward someone for prior action, such as a gratuity, is not a bribe or a kickback.  The payment or receipt of a mere gratuity does not constitute honest services fraud.  If the payer intends the money as a reward for actions the payee has already taken, or is already committed to take, then the payment is a gratuity.  If the agreement to exchange a thing of value for an act is made after that act has been performed, then that agreement cannot properly be viewed as an agreement to offer or accept a bribe.[115]

Fourth, if the alleged victim condoned—or provided tacit approval for— the payment that the government contends was a bribe or kickback, then such payment was not a bribe or kickback.[116]

---

[112]   Nor does the fact that the defendant might somehow be *rewarded by the victim* or gain some psychic or other indirect benefit from enriching *the victim* have any bearing on whether the payment at issue is a bribe.  As the Seventh Circuit concluded when faced with a similar argument to the government's here: "The United States has not cited, and we have not found, any appellate decision holding that an increase in official salary, or a psychic benefit such as basking in a superior's approbation (and thinking one's job more secure), is the sort of 'private gain' that makes an act criminal under § 1341 and § 1346. . . . . We now hold that neither an increase in salary for doing what one's superiors deem a good job, nor an addition to one's peace of mind, is a 'private benefit' for the purpose of § 1346." *United States v. Thompson*, 484 F.3d 877, 884 (7th Cir. 2007).  *See also United States v. Blagojevich*, 794 F.3d 729, 737 (7th Cir. 2015) (stating that neither an employee's "interest in keeping her job" nor "interest in receiving a salary" is "a form of private benefit for the purpose of federal criminal statutes.") (citing *Thompson*).  *Cf. United States v. Brown*, 459 F.3d 509, 522 (5th Cir. 2006) (noting a factual situation where "the only personal benefit or incentive originated with [victim employer] itself—*not from a third party as in the case of bribes or kickbacks*.") (emphasis added); *United States v. Bizzack*, Case No. 19:cr-10222-DPW, ECF No. 34, Sentencing Tr. at 15:23-16:11 (D. Mass. Oct. 30, 2019) ("THE COURT: That's not a bribe, is it?  It's required by USC.  Then we've got a faithless employee.  That's a different issue from bribery, right?  GOVERNMENT: Your Honor, because in light of Skilling, there has to be a bribe or a kickback.  THE COURT: Yes, there does, I agree.  And this is a case in search of a bribe or a kickback …. So now we're back to this question of what was the bribe that [Heinel] received?  **Because it has to be to her, not some account that she controlled, unless you say it was reasonably foreseeable to [Bizzack] that she was going to toy with that account." (emphasis added)).**

[113]   *See United States v. Blagojevich*, 794 F.3d 729 (7th Cir. 2015); *McNally v. United States*, 483 U.S. 350, 355 (1987).

[114]   *See supra*, note 112.

[115]   *See Skilling v. United States*, 561 U.S. 358, 407 (2010); *United States v. Bravo-Fernandez*, 722 F.3d 1, 19, 20 (1st Cir. 2013); *see also United States v. Friedman*, 854 F.2d 535, 556-57 (2d Cir. 1988) (gratuity is a defense to bribery); *United States v. Jennings*, 160 F.3d 1006, 1018-19 (4th Cir. 1998) (requiring a "mere gratuity" instruction where there is a factual basis for the instruction).

[116]   *See* ECF No. 906, Transcript of February 28, 2020 Hearing, at 14:7-16:6 (Kelley, M.J.):

THE COURT: If she's taking money for an account over which she has control, which, I know the government says that's a bribe, **you still have to prove that the school was not in on that**….. [The government is] going to say, oh, it's a bribe legally if she has money going into accounts she controlled.

And, more generally, conduct by an agent that would otherwise constitute a breach of a fiduciary duty does not constitute a breach if the principal consents to the conduct.[117]

---

**That's going to be something for the jury to decide. It's not de facto a bribe. The school has to be ignorant of that, and one might well ask, how could the school have been ignorant of that?...** I just think the government stuck on this theory that, if the money is going into an account for the school in exchange for Heinel advocating for a student, then the defendants are guilty.  Number one you do have to show that they knew that was happening; and, **number two, you have to show the school wasn't in on it, Right?**

AUSA WRIGHT: Yeah, yes Your Honor.  And we intend to prove that. (Emphasis added.)

*See also* Sealed Transcript of May 14, 2020 Hearing at 47:2-11 (Kelley, M.J.):



*See also United States v. Josleyn*, 99 F.3d 1182, 1194-95 (1st Cir. 1996); *United States v. Klock*, 210 F.2d 217, 22-23 (2nd Cir. 1954); *United States v. Brown*, 459 F.3d 509, 524-25 (5th Cir. 2006).

[117]     *See Lauffs v. Carr*, No. 04-cv-809-WGH (WMc), 2005 U.S. Dist. LEXIS 66238, at *52 (S.D. Cal. Nov. 10, 2005); *Lamelza v. Lindsay*, No. G045402, 2012 Cal. App. Unpub. LEXIS 8597, at *20 (Cal. Ct. App. Nov. 27, 2012).

### 47.   Honest Services Fraud – Definition: "Official Act"

I have used the term "official act" in these instructions.

An official act is a decision or action on a question or matter which may at any time be pending before any fiduciary in the fiduciary's capacity or in the fiduciary's place of trust.  The question or matter must be specific and focused and involve a formal exercise of the organization's power akin to awarding a contract or instituting a lawsuit.[118]  In general, to qualify as an official act, the fiduciary must make a decision or take an action on that question or matter, or agree to do so.[119]

Whether or not a fiduciary took an official act or agreed to do so is a question of fact for you to determine like any other fact question.[120]

---

[118]        *United States v. Bravo-Fernandez*, Case No. 10-cr-00232-FAB-1, ECF No. 997, Jury Trial Transcript, Jury Instructions, at 21 (D.P.R. May 26, 2017); *United States v. Napout*, 332 F. Supp. 3d 533, 565 (E.D.N.Y. 2018).
[119]        *United States v. Bravo-Fernandez*, Case No. 10-cr-00232-FAB-1, ECF No. 997, Jury Trial Transcript, Jury Instructions, at 21 (D.P.R. May 26, 2017).
[120]        *Napout*, 332 F. Supp. 3d at 565-66.

48.         **Honest Services Mail and Wire Fraud – Fourth Element (Misrepresentation)**

The fourth element of honest services mail and wire fraud is that the Defendant then under consideration agreed and specifically intended that the fiduciary would deceive the entity to which he or she owed a fiduciary duty through a material misrepresentation, false statement, false pretense, or a deliberately misleading statement.[121]

Again, a fact or matter is "material" if it has a natural tendency to influence or be capable of influencing the decision of the decision-maker to whom it was addressed.[122]  If the alleged victim would have made the same decision if it knew the true facts, the misstatement at issue cannot be material.[123]

---

[121]      Adapted from *United States v. Gurry, et al.*, Case No. 16-cr-10343-ADB, ECF No, 930, Jury Trial Transcript Day 49, at 49-54 (D. Mass. April 4, 2019); Eleventh Circuit Pattern Criminal Jury Instructions O50.2, O50.3; Ninth Circuit Model Criminal Jury Instruction 8.123; *United States v. Sawyer*, 85 F.3d 713, 732 n.16 (1st Cir. 1996); *United States v. Reichel*, Case No. 1:15-cr-10324-DPW, ECF No. 244, Substantive Jury Instructions at 5-6 (D. Mass. June 17, 2016).

[122]      Adapted from *United States v. DeNunzio*, Case No. 14-cr-10284-NMG, ECF No. 513, Jury Trial Transcript Vol. XIII, at 13-159 (D. Mass. Apr. 28, 2016), First Circuit Pattern Criminal Jury Instructions 4.18.1341, 4.18.1343; *see also United States v. Blastos*, 258 F.3d 25, 29 (1st Cir. 2001).

[123]      *See United States v. Williams*, 12 F.3d 452, 457 (5th Cir. 1994) ("[O]ne way of determining whether the statements were capable of influencing a bank's decision is to extrapolate from the facts and ask, 'If the bank had relied on the defendant's statements, would it have made any difference?'"); *see also id.* at 458 (framing the relevant question as whether "a bank or federal institution, armed with the truth, would have arrived at a different decision on a pending application").

### 49.     Honest Services Mail and Wire Fraud – Fifth Element (Foreseeable Harm)

*Instruction Requested by Defendants Abdelazi, Kimmel, and Palatella:*

The fifth element of honest services mail and wire fraud is that it was foreseeable to the Defendant that the entity to which an employee or contractor owed a fiduciary duty might suffer an economic harm as a result of the breach of fiduciary duty.[124]  To meet this requirement, the government must show that the Defendant could foresee that the scheme potentially might cause concrete, economic business harm to the university or testing service.[125]  The government also must show that the Defendant contemplated some actual economic harm or injury to the entity to which a fiduciary owed a fiduciary duty.[126]  Mere embarrassment or publicity or criticism is not economic harm.

*Instruction Requested by Defendant Wilson:*

The fifth element of honest services mail and wire fraud is that it was foreseeable to the Defendant that the entity to which an employee or contractor owed a fiduciary duty might suffer an economic harm as a result of the breach of fiduciary duty.[127]  To meet this requirement, the government must show that the Defendant could foresee that the scheme potentially might cause concrete, economic business harm to the university or testing service.[128]  Thus, if, for example, you find that the Defendant understood that the result of the conduct would be economically beneficial to the university, then you must find the Defendant not guilty.  The government also must show that the Defendant contemplated some actual economic harm or injury to the entity to which a fiduciary owed a fiduciary duty.[129]  Mere embarrassment or publicity or criticism is not economic harm.

---

[124]     *United States v. Martin*, 228 F.3d 1, 17 (1st Cir. 2000); *see United States v. Lusk*, Case No. 15-cr-00124, 2017 U.S. Dist. LEXIS 17028, at *39-43 (S.D.W. Va. Feb. 7, 2017); *Triplett v. United States*, Case No. 02-cr-718-CAP-AJB-1, 2012 U.S. Dist. LEXIS 135355, at *40-41 (N.D. Ga. Aug. 29, 2012), *aff'd*, 551 Fed. Appx. 472 (11th Cir. 2013); *United States v. Lemire*, 720 F.2d 1327, 1337 (D.C. Cir. 1983).

[125]     *United States v. Vinyard*, 266 F.3d 320, 329 (4th Cir. 2001).

[126]     *United States v. Jain*, 93 F.3d 436, 441 (8th Cir. 1996) (quoting *United States v. D'Amato*, 39 F.3d 1249, 1257 (2d Cir. 1994)).

[127]     *United States v. Martin*, 228 F.3d 1, 17 (1st Cir. 2000); *see United States v. Lusk*, Case No. 15-cr-00124, 2017 U.S. Dist. LEXIS 17028, at *39-43 (S.D.W. Va. Feb. 7, 2017); *Triplett v. United States*, Case No. 02-cr-718-CAP-AJB-1, 2012 U.S. Dist. LEXIS 135355, at *40-41 (N.D. Ga. Aug. 29, 2012), *aff'd*, 551 Fed. Appx. 472 (11th Cir. 2013); *United States v. Lemire*, 720 F.2d 1327, 1337 (D.C. Cir. 1983).

[128]     *United States v. Vinyard*, 266 F.3d 320, 329 (4th Cir. 2001).

[129]     *United States v. Jain*, 93 F.3d 436, 441 (8th Cir. 1996) (quoting *United States v. D'Amato*, 39 F.3d 1249, 1257 (2d Cir. 1994)).

### 50.      Honest Services Mail and Wire Fraud – Sixth Element (Use of Mail or Wires)

The sixth and final element of honest services fraud concerns the use of the mail or wires. With respect to honest services mail fraud, the final element is that, for the purpose of executing the scheme or in furtherance of the scheme, the Defendant then under consideration agreed and specifically intended to cause the United States mail or a private or commercial interstate carrier to be used, or it was reasonably foreseeable that for the purpose of executing the scheme or in furtherance of the scheme, the United States mail or a private or commercial interstate carrier would be used.[130]

With respect to honest services wire fraud, the final element is that, for the purpose of executing the scheme or in furtherance of the scheme, the Defendant then under consideration agreed and specifically intended to cause an interstate wire communication to be used, or it was reasonably foreseeable that an interstate wire communication would be used on or about the date alleged.[131]

---

[130]     Adapted from *United States v. Gurry, et al.*, Case No. 16-cr-10343-ADB, ECF No, 930, Jury Trial Transcript Day 49, at 49-54 (D. Mass. April 4, 2019); Eleventh Circuit Pattern Criminal Jury Instructions O50.2, O50.3; Ninth Circuit Model Criminal Jury Instruction 8.123; *United States v. Sawyer*, 85 F.3d 713, 732 n.16 (1st Cir. 1996); *United States v. Reichel*, Case No. 1:15-cr-10324-DPW, ECF No. 244, Substantive Jury Instructions at 5-6 (D. Mass. June 17, 2016).

[131]     Adapted from *United States v. Gurry, et al.*, Case No. 16-cr-10343-ADB, ECF No, 930, Jury Trial Transcript Day 49, at 49-54 (D. Mass. April 4, 2019); Eleventh Circuit Pattern Criminal Jury Instructions O50.2, O50.3; Ninth Circuit Model Criminal Jury Instruction 8.123; *United States v. Sawyer*, 85 F.3d 713, 732 n.16 (1st Cir. 1996); *United States v. Reichel*, Case No. 1:15-cr-10324-DPW, ECF No. 244, Substantive Jury Instructions at 5-6 (D. Mass. June 17, 2016).

### V. *Count Two: Conspiracy to Commit Federal Programs Bribery*

### 51. Count Two: Conspiracy to Commit Federal Programs Bribery: Introduction

Count Two of the Indictment accuses the four Defendants—Mr. Abdelaziz, Mrs. Kimmel, Mrs. Palatella, and Mr. Wilson—of conspiring with Rick Singer, other parents, university employees, and others affiliated with Rick Singer to commit a different federal crime—the crime of committing what is called "federal programs bribery." Count Two alleges the Defendants were part of a conspiracy that lasted from 2007 to February 2019. Count Two charges these four Defendants with conspiring to corruptly give things of value, i.e., bribes, in exchange for facilitating the admission to the University of Southern California of the Defendants' children. This charge does not apply to the admission of Mrs. Kimmel's child to Georgetown University. Similarly, Count Two does not apply to the potential admission of Mr. Wilson's daughters to Stanford University and Harvard University.

It is against federal law to conspire with someone to commit federal programs bribery. To convict a Defendant on Count Two you must find that the government has proven, beyond a reasonable doubt, the three elements of the crime of conspiracy that I have already described to you: that the conspiracy described in Count Two of the Indictment existed; that the Defendant under consideration willfully agreed to join that conspiracy (and not some other conspiracy); and that one of the members of the charged conspiracy committed an overt act in furtherance of that conspiracy.

Since Count Two requires you to prove that each Defendant agreed to the commission of conduct that actually constituted the underlying crime of federal programs bribery, I am providing you with the elements of that crime, so that you may evaluate whether any of the Defendants specifically intended that such acts be committed in furtherance of the alleged conspiracy.

To find federal programs bribery, the government must prove each of the following elements beyond a reasonable doubt:[132]

First, the person acts with corrupt intent.

Second, the person gives, offers, or agrees to give a thing of value to another person that constitutes a bribe.

Third, the above is done to corruptly influence or reward an agent of an organization in connection with some business, transaction, or series of transactions of that organization.

---

[132]    *See* 18 U.S.C. § 666(a).  Adapted from *United States v. Bravo-Fernandez*, 722 F.3d 1, 19 (1st Cir. 2013); Eighth Circuit Model Criminal Jury Instruction 6.18.666A; *see also* Eleventh Circuit Pattern Criminal Jury Instruction O24.2; *United States v. Bravo-Fernandez*, Case No. 10-cr-00232-FAB-1, ECF No. 997, Jury Trial Transcript, Jury Instructions, at 21 (D.P.R. May 26, 2017).

Fourth, that this business, transaction, or series of transactions involved a thing with a value of $5,000 or more.

Fifth, that the organization, in a one-year period preceding or following the bribe, received benefits of more than $10,000 under any federal program involving a grant, contract subsidy, loan, guarantee, insurance, or other assistance.[133]

There are a few caveats to these instructions.

The statute requires that the Government prove beyond a reasonable doubt the existence of a quid pro quo or, in plain English, an agreement that the thing of value that is given to the agent is in exchange for that agent promising to perform official acts for the giver.[134]  This means the giver must have the specific intent to give something of value in exchange for official action.[135] It is not sufficient that the thing of value is given to curry favor, to cultivate a friendship, or to express gratitude, or that there is merely some connection in time or place with an official act that is promised to the giver; rather, there must be an agreement that the thing of value was offered by the giver and accepted by the agent in exchange for a promise to perform an official act.[136]

---

[133]    Adapted from Seventh Circuit Pattern Criminal Jury Instructions, 18 U.S.C. §666(a)(2) ("Paying a Bribe").

[134]    *United States v. Bravo-Fernandez*, Case No. 10-cr-00232-FAB-1, ECF No. 997, Jury Trial Transcript, Jury Instructions, at 21, 24 (D.P.R. May 26, 2017).

[135]    *United States v. Sidoo*, 468 F. Supp. 3d 428, 444 (D. Mass. 2020) ("For a payment to constitute a bribe, there must be 'a quid pro quo — a specific intent to give or receive something of value in exchange for an official act.'" (quoting *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 404-05 (1999)).

[136]    *United States v. Bravo-Fernandez*, Case No. 10-cr-00232-FAB-1, ECF No. 997, Jury Trial Transcript, Jury Instructions, at 21, 24 (D.P.R. May 26, 2017).

### 52.    Federal Programs Bribery – Definitions: "Corrupt Intent"

I have used the term "corrupt intent" in these instructions.  The government must prove beyond a reasonable doubt that the Defendants acted with "corrupt intent" to offer or give a bribe.

A *quid pro quo* is not a crime if it is not performed with "corrupt intent."

An act is done "corruptly" if it is performed voluntarily, deliberately, and dishonestly for the purpose of either accomplishing an unlawful end or result, or of accomplishing some otherwise lawful end or lawful result, by any unlawful method or means.[137]

In other words, corruptly means that the Defendant understood that he or she was engaging in unlawful bribery.[138]

Good faith on the part of a defendant as to the legality of his or her conduct is a complete defense to federal programs bribery.[139]

If, for example, you find that the Defendant was unaware that his or her payments were going to corrupt university officials and instead had a good faith belief, even a mistaken one, that the payments were going to the university itself or to university officials for non-corrupt purposes, then the Defendant did not have an intent to defraud.  Similarly, if you find that the Defendant had a good faith belief that USC knew of and condoned, or provided tacit approval for, the activities in question, then the Defendant did not have corrupt intent because they did not think they were engaging in bribery.

Evidence of USC's actions or omissions, or evidence of deficiencies in the manner in which it implemented and enforced its policies and procedures, may be considered by you to the extent that such evidence bears on the issue of whether or not the defendant formed the required corrupt intent.[140]

A defendant has no burden to establish a defense of good faith. The burden is on the government to prove corrupt intent and the consequent lack of good faith beyond a reasonable doubt.[141]

---

[137]    *United States v. Bravo-Fernandez*, Case No. 10-cr-00232-FAB-1, ECF No. 997, Jury Trial Transcript, Jury Instructions, at 21 (D.P.R. May 26, 2017).

[138]    *See also United States v. Blagojevich*, 794 F.3d 729, 736 (7th Cir. 2015) ("'Corruptly' refers to the recipient's state of mind and indicates that he understands the payment as a bribe or gratuity."); *cf. United States v. Curescu*, 674 F.3d 735, 742 (7th Cir. 2012) ("To be guilty of soliciting or accepting a bribe in violation of section 666(a)(1)(B) requires knowing that the money or other thing of value received was indeed a bribe, which is to say an inducement to do a corrupt act.").

[139]    *United States v. Bravo-Fernandez*, Case No. 10-cr-00232-FAB-1, ECF No. 997, Jury Trial Transcript, Jury Instructions, at 27 (D.P.R. May 26, 2017).  *Cf. United States v. Sidoo*, 468 F. Supp. 3d 428, 445 (D. Mass. 2020) (Gorton, J.) ("Again, to the extent the defendants maintain that they were unaware that their payments were going to corrupt insiders or of the extent to which those insiders deprived the universities of their honest services is a factual question to be resolved at trial.").

[140]    Adapted from *United States v. Josleyn*, 99 F.3d 1182, 1194 (1st Cir. 1996).

[141]    *Joselyn*, 99 F.3d at 1194.

### 53.    Federal Programs Bribery – Definitions: "Bribe"

I have used the word "bribe" in these instructions.  I have defined "bribe" for you earlier, and repeat that instruction here. The government must prove beyond a reasonable doubt the presence of a bribe.

There are four caveats to the definition of a bribe.

First, a payment *to the victim*, to be used for the benefit of that entity, is not a bribe. For example, a payment directed by an employee to his or her university employer, to be used for the benefit of the university, does not constitute a bribe.[142]  This is true regardless of whether the employee exercised some measure of control over the university's accounts. If the payment was made to or for the benefit of the university, and used or intended for use for the benefit of the university, then the payment is not a bribe.[143]  Rather, the bribe or kickback must involve a private payment or private gain for the personal benefit of the employee or some other third party.[144]

Second, a bribe cannot be bona fide salary, wages, fees or other compensation paid to an employee or contractor in the usual course of business.   Nor can it be some sort of psychic or indirect financial benefit derived from enriching the alleged victim of the alleged fraud.  Thus, neither an increase in salary for doing what one's superiors deem a good job, nor an addition to one's peace of mind from thinking one's job more secure, nor basking in a superior's approval can prove a bribe.[145]

Third, a payment made to reward someone for prior action, such as a gratuity, is not a bribe.  The payment or receipt of a mere gratuity does not constitute a bribe.  If the payer intends the money as a reward for actions the payee has already taken, or is already committed to take, then the payment is a gratuity.  If the agreement to exchange a thing of value for an act is made after that act has been performed, then that agreement cannot properly be viewed as an agreement to offer or accept a bribe.[146]

---

[142]    *See supra*, note 111. The honest services cases defining bribe are helpful because both honest services fraud and federal programs bribery require the presence of a bribe.  *See United States v. Bravo-Fernandez*, 722 F.3d 1, 26 (1st Cir. 2013) ("the true targets of § 666 are bribes").

[143]    *See supra*, note 111.

[144]    *See United States v. Blagojevich*, 794 F.3d 729 (7th Cir. 2015); *see McNally v. United States*, 483 U.S. 350, 355 (1987).

[145]    *See supra*, note 112; *see also United States v. Blagojevich*, 794 F.3d 729, 737 (7th Cir. 2015) ("*Thompson* reversed convictions under § 666 and § 1346 that had been obtained on a theory that a public employee's interest in keeping her job meant that she violated federal law if she performed any aspect of her job in ways that she knew she shouldn't….Thompson holds, among other things, that the interest in receiving a salary from a public job is not a form of private benefit for the purpose of federal criminal statutes.").

[146]    *See Skilling v. United States*, 561 U.S. 358, 407 (2010); *United States v. Bravo-Fernandez*, 722 F.3d 1, 19, 20 (1st Cir. 2013); *see also United States v. Friedman*, 854 F.2d 535, 556-57 (2d Cir. 1988) (gratuity is a defense to bribery); *United States v. Jennings*, 160 F.3d 1006, 1018-19 (4th Cir. 1998) (requiring a "mere gratuity" instruction where there is a factual basis for the instruction).

Fourth, if the alleged victim condoned—or provided tacit approval for— the payment that the government contends was a bribe, then such payment was not a bribe.[147]

---

[147]    *See* ECF No. 906, Transcript of February 28, 2020 Hearing, at 14:7-16:6 (Kelley, M.J.):

THE COURT: If she's taking money for an account over which she has control, which, I know the government says that's a bribe, **you still have to prove that the school was not in on that**…..
[The government is] going to say, oh, it's a bribe legally if she has money going into accounts she controlled. **That's going to be something for the jury to decide. It's not de facto a bribe. The school has to be ignorant of that**, **and one might well ask, how could the school have been ignorant of that?...** I just think the government stuck on this theory that, if the money is going into an account for the school in exchange for Heinel advocating for a student, then the defendants are guilty.  Number one you do have to show that they knew that was happening; and, **number two, you have to show the school wasn't in on it, Right?**

AUSA WRIGHT: Yeah, yes Your Honor.  And we intend to prove that. (Emphasis added.)

*See also* Sealed Transcript of May 14, 2020 Hearing at 47:2-11 (Kelley, M.J.): 47:2-11:



*See also United States v. Josleyn*, 99 F.3d 1182, 1194-95 (1st Cir. 1996); *United States v. Brown*, 459 F.3d 509, 521-22 (5th Cir. 2006).

### 54.        Federal Programs Bribery – Definitions: "Official Act"

I have used the term "official act" in these instructions.

For purposes of federal programs bribery, an official act is a decision or action on a question or matter which may at any time be pending before any agent in the agent's capacity or in the agent's place of trust.  The question or matter must be specific and focused and involve a formal exercise of the organization's power akin to awarding a contract or instituting a lawsuit.[148]  In general, to qualify as an official act, the agent must make a decision or take an action on that question or matter, or agree to do so.[149]

Whether or not an agent took an official act or agreed to do so is a question of fact for you to determine like any other fact question.[150]

---

[148]      *United States v. Bravo-Fernandez*, Case No. 10-cr-00232-FAB-1, ECF No. 997, Jury Trial Transcript, Jury Instructions, at 21 (D.P.R. May 26, 2017); *United States v. Napout*, 332 F. Supp. 3d 533, 565 (E.D.N.Y. 2018).

[149]      *United States v. Bravo-Fernandez*, Case No. 10-cr-00232-FAB-1, ECF No. 997, Jury Trial Transcript, Jury Instructions, at 21 (D.P.R. May 26, 2017).

[150]      *Napout*, 332 F. Supp. 3d at 565-66.

### VI.   *Count Three: Money Laundering Conspiracy*

### 55.   **Count Three: Money Laundering: Introduction**

Count Three of the Indictment accuses the four Defendants of conspiring with Rick Singer, other parents, university employees, and others affiliated with Rick Singer to commit the federal crime of money laundering.

It is against federal law to conspire with someone to commit the crime of money laundering. To convict a Defendant on Count Three you must find that the government has proven, beyond a reasonable doubt, the three elements of the crime of conspiracy that I have already described to you: that the conspiracy described in Count Three of the Indictment existed; that the Defendant under consideration willfully agreed to join that conspiracy (and not some other conspiracy); and that one of the members of the charged conspiracy committed an overt act in furtherance of that conspiracy.

More specifically, to prove conspiracy to commit money laundering, the government is required to show beyond a reasonable doubt, with respect to each Defendant, that he or she willfully agreed with one or more co-conspirators (1) to knowingly conduct a financial transaction, (2) involving funds that the Defendant knew to be the proceeds of some form of unlawful activity, and (3) that were in fact the proceeds of the specified unlawful activity of mail and wire fraud, and (4) that the Defendant knew the transactions to be designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of such unlawful activity.[151]

---

[151]     First Circuit Pattern Criminal Jury Instruction 4.18.1956(h) (quoting *United States v. Misla-Aldarondo*, 478 F.3d 52, 68 (1st Cir. 2007)); *see United States v. Romero-Lopez*, 695 F.3d 17, 24 n.5 (1st Cir. 2012); *United States v. Martinez-Medina*, 279 F.3d 105, 115 (1st Cir. 2002).

### 56.      Money Laundering – Definitions: "Proceeds"

"Proceeds" means any profits that someone acquires or retains as a result of the commission of the unlawful activity.[152]  The "proceeds" used for money laundering must be proceeds from a different illegal activity than the illegal activity of money laundering itself.[153] This element requires both that the specified unlawful activity is sufficiently distinct from the money laundering transaction, and that the specified unlawful activity, i.e., a specific crime, occurred and generated proceeds before the money laundering transaction.[154] Money that persons supply to be used to commit a crime are not proceeds.  In order to be proceeds, the funds must have been received by someone who considered the funds to be the receipts or profits of the specified unlawful activity.

---

[152]      18 U.S.C. § 1956(c)(9) ("[T]he term 'proceeds' means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity."); First Circuit Pattern Criminal Jury Instructions 4.18.1956(a)(1)(A), 4.18.1956(a)(1)(B)(i).

[153]      *United States v. Castellini*, 392 F.3d 35, 38 (1st Cir. 2004); *see* First Circuit Pattern Criminal Jury Instruction 4.18.1956(a)(1)(B)(i) , cmt. 2.

[154]      *United States v. Conley*, 37 F.3d 970, 980 (3d Cir. 1994); *see also United States v. Richard*, 234 F.3d 763, 769 (1st Cir. 2000) ("[M]oney laundering criminalizes a transaction in proceeds, not the transaction that creates the proceeds . . . [t]hus the laundering of funds cannot occur in the same transaction through which those funds first became tainted by crime[.]" (internal citations and quotation marks omitted)).

### 57.    Money Laundering – Definitions: "Specified Unlawful Activity"

In order to find that the crime of money laundering has occurred, you must first find that there was a separate criminal offense, which I refer to as the specified unlawful activity.  The alleged specified unlawful activity here is the mail and wire fraud and honest services mail and wire fraud conspiracies alleged in Count One.[155]

---

[155]    *See United States v. Castellini*, 392 F.3d 35, 38 (1st Cir. 2004).

### 58.      Money Laundering – Elements: Intent

I have previously instructed you on the definition of the element of intent to prove conspiracy to commit mail and wire fraud, and to commit federal programs bribery.

To convict on a money laundering offense, the Government must prove beyond a reasonable doubt that the Defendant, with specific intent, had the purpose to conceal money or other property with full knowledge that the money or other property involved in the transaction represented proceeds from an illegal activity.[156]   Subjective good faith is a complete defense to a money laundering offense.[157]   If a Defendant believes in good faith that the activity underlying the proceeds in question is legitimate, then you cannot find that the Defendant possessed the required intent to satisfy the statute.[158]

---

[156]      *United States v. Carucci*, 22 F.Supp.2d 117, 124 (D. Mass. 2002), *rev'd on other grounds* 364 F.3d 339, 344 (1st. Cir. 2004); *see Cuellar v. United States*, 553 U.S. 550, 563 (stating that the term "design" means "purpose or plan" in the context of the money laundering statute and, therefore, mere concealment of proceeds without purpose to conceal does not do not constitute money laundering).

[157]      *See United States v. Davis*, 10 Fed. Appx. 107, 110 (4th Cir. 2001); *United States v. Castronuovo*, 649 Fed. Appx. 904, 924-25 (11th Cir. 2016). *Cf. Conley*, 859 F. Supp. at 928.

[158]      *See Castronuovo*, 649 Fed. Appx. at 924-25; *Conley*, 859 F. Supp. at 928.

### 59.    Money Laundering – Elements: Designed to "Conceal"

To find that the fourth element is satisfied, you must find that the purpose of the financial transaction was to conceal the nature, location, source, ownership, or control of the transacted proceeds.[159] "Conceal" means to hide, withhold information about, or prevent disclosure or recognition of something.[160] If you find that the transactions merely involved spending or investing illegally obtained assets, then the Defendant cannot be found guilty of conspiracy to commit money laundering. Instead, at least one purpose for the expenditure must be to conceal or disguise the nature, location, source, ownership or control of the funds.[161]

---

[159]    *United States v. Cedeño-Pérez*, 579 F.3d 54, 60-61 (1st Cir. 2009); *see* First Circuit Pattern Jury Instruction 4.18.1956(a)(1)(B)(i), cmt. 1; *see also United States v. Frigerio-Migiano*, 254 F.3d 30, 33 (1st Cir. 2001).
[160]    First Circuit Pattern Criminal Jury Instruction 4.18.152(1).
[161]    *United States v. Hall*, 434 F.3d 42, 50 (1st Cir. 2006) ("It is true that the money laundering statute does not criminalize the mere spending or investing of illegally obtained assets. Instead, at least one purpose for the expenditure must be to conceal or disguise the assets." (citation omitted)).

**Instructions Requested by Defendant Wilson**

**VII.**    ***Counts Six, Eight, and Nine: Wire Fraud and Honest Services Wire Fraud and Aiding and Abetting***

**60.     Counts Six, Eight, and Nine: Wire Fraud and Honest Services Wire Fraud and Aiding and Abetting: Introduction**

The Indictment in this case contains three counts against Defendant John Wilson for wire fraud and honest services wire fraud in violation of Title 18 of the United States Code, Sections 1341 and 1346, and aiding and abetting wire fraud and honest services wire fraud in violation of Title 18 of the United States Code, Section 2.

Count Six charges Mr. Wilson with committing wire fraud and honest services wire fraud, and aiding and abetting Rick Singer in committing wire fraud and honest services wire fraud, in connection with the wiring of $500,000 from Hyannis Port Capital, Inc. to the Key Worldwide Foundation on October 17, 2018.

Count Eight charges Mr. Wilson with committing wire fraud and honest services wire fraud, and aiding and abetting Rick Singer in committing wire fraud and honest services wire fraud, in connection with a telephone call between Mr. Wilson and Rick Singer on October 27, 2018.

Count Nine charges Mr. Wilson with committing wire fraud and honest services wire fraud, and aiding and abetting Rick Singer in committing wire fraud and honest services wire fraud, in connection with the wiring of $500,000 from Hyannis Port Capital, Inc. to the Key Worldwide Foundation on December 11, 2018.

### 61.     Counts Six, Eight, and Nine: Wire Fraud and Honest Services Wire Fraud: Elements

To convict Defendant John Wilson of wire fraud and honest services wire fraud under Counts Six, Eight, or Nine, you must find that the Government has proven, beyond a reasonable doubt, each of the elements of these crimes that I have already described to you.

As I have previously instructed, the three elements of wire fraud are as follows:

First, a scheme to obtain money or property by means of materially false or fraudulent pretenses.

Second, that the Defendant knowingly and willfully participated in the scheme, with intent to defraud.

Third, that the Defendant caused an interstate wire communication to be used for the purpose of executing the scheme, or in furtherance of the scheme, or that it was reasonably foreseeable that an interstate wire communication would be used.

The six elements of honest services wire fraud are as follows:

The first element is that an employee or contractor owed a fiduciary duty to an entity.

The second element is that the Defendant agreed and specifically intended that the fiduciary would perform an official act that violated his or her fiduciary duty, and deprive the entity to which he or she owed a fiduciary duty of his or her honest services, in exchange for a bribe or kickback.

The third element is that there was in fact a bribe or kickback.

The fourth element is that the Defendant agreed and specifically intended that the fiduciary would deceive the entity to which he or she owed a fiduciary duty through a material misrepresentation, false statement, false pretense, or a deliberately misleading statement.

The fifth element is that it was foreseeable to the Defendant that the entity to which the employee or contractor owed a fiduciary duty might suffer an economic harm as a result of the breach of fiduciary duty.

The sixth and final element is that, for the purpose of executing the scheme or in furtherance of the scheme, the Defendant then under consideration agreed and specifically intended to cause an interstate wire communication to be used, or it was reasonably foreseeable that an interstate wire communication would be used on or about the date alleged.

Again, good faith is a complete defense to wire fraud and honest services wire fraud.  Mr. Wilson has no burden to establish a defense of good faith.  The burden is on the government to prove the required intent and the consequent lack of good faith beyond a reasonable doubt.[162]

You should rely on the more detailed descriptions I have previously given you of the elements of wire fraud and honest services wire fraud in determining whether the government has met its burden of proving each element of these crimes as to Mr. Wilson, beyond a reasonable doubt.

In a moment, I will instruct you about the elements of aiding and abetting, and what you must find in order to convict Mr. Wilson of aiding and abetting wire fraud and honest services wire fraud.  I will also instruct you on the defense of factual impossibility, which is a defense Mr. Wilson has raised with respect to Counts Six, Eight, and Nine, among others.

---

[162]     *See* Instructions 39, 45, *supra.*

### 62.     Counts Six, Eight, and Nine: Aiding and Abetting[163]

As I have explained, Counts Six, Eight, and Nine charge Defendant John Wilson with aiding and abetting wire fraud and honest services wire fraud in violation of Title 18 of the United States Code, Section 2.

Under the aiding and abetting statute, it is not necessary for the government to show that Mr. Wilson himself committed the crimes with which he is charged in order for the government to sustain its burden of proof.  A person who aids or abets another to commit an offense is just as guilty of that offense as if he committed it himself.

Accordingly, you only may find Mr. Wilson guilty of the offenses charged if you find that the government has proved beyond a reasonable doubt that Rick Singer actually committed the offenses with which Mr. Wilson is charged, and that Mr. Wilson aided or abetted Rick Singer in the commission of those offenses.

As you can see, the first requirement is that you find that the government has proved beyond a reasonable doubt that another person has committed the crime charged.  Obviously, no one can be convicted of aiding or abetting the criminal acts of another if no crime was committed by the other person in the first place.  Thus, if you find that Rick Singer did not commit wire fraud and honest services wire fraud with respect to the count at issue, then Mr. Wilson cannot be found guilty of aiding and abetting with respect to that count.  But if you do find that Rick Singer committed a crime with respect to the count at issue, then you must consider whether Mr. Wilson aided or abetted the commission of that crime.

Relatedly, as I explained previously, after the Government approached Rick Singer on September 21, 2018, he became the Government's agent, informant, and cooperator.  As of that date, he was acting in the secret role of an informant and you may find that he was not acting in any criminal capacity.  Rick Singer's cooperation also relates to Mr. Wilson's defense of factual impossibility, which I will instruct you on shortly.

In order to aid or abet another to commit a crime, it is necessary that a defendant knowingly and willfully associate himself in some way with the crime, and that he knowingly and willfully participate in the crime by doing some act to help make the crime succeed.

To establish that Mr. Wilson knowingly and willfully associated himself with the crime, the government must establish that Mr. Wilson intended that wire fraud and honest services wire fraud be committed.

To establish that Mr. Wilson participated in the commission of the crime, the government must prove that Mr. Wilson engaged in some affirmative conduct or overt act for the specific purpose of bringing about that crime.

---

[163]     Adapted from Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 11-2 (Aiding and Abetting) (2021).

Participation in a crime is willful if done voluntarily and intentionally, and with the specific intent to do something which the law forbids or with the specific intent to fail to do something the law requires to be done; that is to say, with a bad purpose either to disobey or to disregard the law.  Thus, good faith is a complete defense to the crime of aiding and abetting.

Merely associating with others who were committing a crime is not sufficient to establish aiding and abetting, even if the defendant knew that a crime was being committed.  In addition, one who has no knowledge that a crime is being committed or is about to be committed but inadvertently does something that aids in the commission of that crime is not an aider and abettor.  An aider and abettor must know that the crime be committed and act in a way that is intended to bring about the success of the criminal venture.

To determine whether Mr. Wilson aided or abetted the commission of wire fraud and honest services wire fraud, ask yourself these questions:

Has the Government proven beyond a reasonable doubt that Rick Singer committed the crime of wire fraud and honest services wire fraud with respect to the count at issue?

Did it prove beyond a reasonable doubt that Mr. Wilson knowingly and willfully participated in the crime charged?

Did the government prove beyond a reasonable doubt that he knowingly and willfully associated himself with the criminal venture?

Did it prove beyond a reasonable doubt that he sought by his actions to make the criminal venture succeed?

If the answer to each of these questions with respect to the count at issue is "yes," then Mr. Wilson is an aider and abettor, and therefore guilty of the offense.  If, on the other hand, your answer to any one of these questions is "no," then Mr. Wilson is not an aider and abettor, and you must find him not guilty.

### VIII.   Counts Eleven and Twelve: Federal Programs Bribery and Aiding and Abetting

### 63.   Counts Eleven and Twelve: Federal Programs Bribery and Aiding and Abetting: Introduction

Counts Eleven and Twelve of the Indictment charge Mr. Wilson with federal programs bribery in violation of Title 18 of the United States Code, Section 666(a)(2), or aiding and abetting Rick Singer in committing federal programs bribery in violation of Title 18 of the United States Code, Section 2.

Count Eleven charges that Mr. Wilson committed federal programs bribery, and aided and abetted Rick Singer in committing federal programs bribery, in connection with the wiring of $500,000 from Hyannis Port Capital, Inc. to the Key Worldwide Foundation on October 17, 2018.  The Indictment alleges that these funds were wired in connection with the potential admission of Mr. Wilson's daughter to Stanford University.

Count Twelve charges that Mr. Wilson committed federal programs bribery, and aided and abetted Rick Singer in committing federal programs bribery, in connection with the wiring of $500,000 from Hyannis Port Capital, Inc. to the Key Worldwide Foundation on December 11, 2018.  The Indictment alleges that these funds were wired in connection with the potential admission of Mr. Wilson's daughter to Harvard University.

### 64.      Counts Eleven and Twelve: Federal Programs Bribery: Elements

To convict Mr. Wilson of federal programs bribery under Count Eleven or Count Twelve, you must find that the Government has proven, beyond a reasonable doubt, each of the five elements of federal programs bribery that I have already described to you.  Those elements are as follows:

First, the person acts with corrupt intent.

Second, the person gives, offers, or agrees to give a thing of value to another person that constitutes a bribe.

Third, the above is done to corruptly influence or reward an agent of an organization in connection with some business, transaction, or series of transactions of that organization.

Fourth, that this business, transaction, or series of transactions involved a thing with a value of $5,000 or more.

Fifth, that the organization, in a one-year period preceding or following the bribe, received benefits of more than $10,000 under any federal program involving a grant, contract subsidy, loan, guarantee, insurance, or other assistance.

You should rely on the more detailed descriptions I have previously given you of the elements of federal programs bribery in determining whether the government has met its burden of proving each element of that crime as to Mr. Wilson, beyond a reasonable doubt.

In a moment, I will instruct you on the defense of factual impossibility, which is a defense Mr. Wilson has raised with respect to Counts Eleven and Twelve, among others.

### 65.    Counts Eleven and Twelve: Aiding and Abetting[164]

To convict Mr. Wilson of aiding and abetting Rick Singer in committing federal programs bribery under Count Eleven or Count Twelve, you must find that the Government has proven, beyond a reasonable doubt, each of the two requirements of aiding and abetting that I have already described to you:

The first requirement is that you find that another person has committed the crime charged. Again, obviously, no one can be convicted of aiding or abetting the criminal acts of another if no crime was committed by the other person in the first place. Thus, if you find that Rick Singer did not commit federal programs bribery with respect to the count at issue, then Mr. Wilson cannot be found guilty of aiding and abetting with respect to that count.

Relatedly, as I explained previously, after the Government approached Rick Singer on September 21, 2018, he became the Government's agent, informant, and cooperator. As of that date, he was acting in the secret role of an informant and you may find that he was not acting in any criminal capacity. Rick Singer's cooperation also relates to Mr. Wilson's defense of factual impossibility, which I will instruct you on shortly.

The second requirement is that the defendant knowingly and willfully associate himself in some way with the crime, and that he knowingly and willfully participate in the crime by doing some act to help make the crime succeed.

To determine whether Mr. Wilson aided or abetted the commission of federal programs bribery, ask yourself these questions:

Has the Government proven beyond a reasonable doubt that Rick Singer committed the crime of federal programs bribery with respect to the count at issue?

Did it prove beyond a reasonable doubt that Mr. Wilson knowingly and willfully participated in the crime charged?

Did it prove beyond a reasonable doubt that he knowingly and willfully associated himself with the criminal venture?

Did the government prove beyond a reasonable doubt that he sought by his actions to make the criminal venture succeed?

If the answer to each of these questions with respect to the count at issue is "yes," then Mr. Wilson is an aider and abettor, and therefore guilty of the offense. If, on the other hand, your answer to any one of these questions is "no," then Mr. Wilson is not an aider and abettor, and you must find him not guilty.

---

[164]    Adapted from Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 11-2 (Aiding and Abetting) (2021).

### IX.      Count Thirteen: Filing a False Tax Return

**66.      Count Thirteen: Filing a False Tax Return: Introduction**[165]

In Count Thirteen, the Indictment charges Mr. Wilson with willfully filing a false federal tax return in violation of 26 U.S.C. § 7206(1).

For you to find Mr. Wilson guilty of willfully filing a false federal tax return, you must be convinced that the government has proven each of the following elements beyond a reasonable doubt:

First, that Mr. Wilson made, or caused to be made, a federal income tax return for the year in question that he verified to be true;

Second, that the tax return was false as to a material matter;

Third, that Mr. Wilson signed the return willfully and knowing it was false; and

Fourth, that the return contained a written declaration that it was made under the penalty of perjury.

The evidence need not establish beyond a reasonable doubt that the deductions totaled the exact amount alleged in the indictment, or that the deductions were overstated in the exact amount alleged, but only that the accused willfully overstated or caused to be overstated in some substantial amount the deductions as charged in the indictment.[166]

In a moment, I will further instruct you on the second and third elements of this offense.

---

[165]      First Circuit Pattern Criminal Jury Instruction 4.26.7206.
[166]      *United States v. Warden*, 545 F.2d 32, 37 (7th Cir. 1976).

### 67.     Count Thirteen: Filing a False Tax Return: Second Element – "False as to a Material Matter"[167]

The second element of willfully filing a false tax return requires the government to prove beyond a reasonable doubt that the tax return was false as to a material matter.

A "material" matter is one that is likely to affect the calculation of tax due and payable, or to affect or influence the IRS in carrying out the functions committed to it by law, such as monitoring and verifying tax liability.  A return that omits material items necessary to the computation of taxable income is not true and correct.

---

[167]     First Circuit Pattern Criminal Jury Instruction 4.26.7206.

### 68.    Count Thirteen: Filing a False Tax Return: Third Element – "Willfully and Knowing It Was False"

The third element that the government must prove beyond a reasonable doubt is that Mr. Wilson signed the tax return willfully and knowing it was false.

"Willfully" means a voluntary, intentional violation of a known legal duty.[168]  An act is done willfully if done voluntarily and intentionally, and with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or to disregard the law.[169]

Accordingly, if you find Mr. Wilson made an error but did not know he did, or otherwise that he was merely negligent, sloppy, or careless, you must find him not guilty.[170]  In other words, no one can be convicted of filing a false tax return because they made a mistake or because they were careless or because they had a good-faith, but mistaken, belief as to the requirements of the tax laws.[171]  A good-faith belief is one that is honestly held.[172]  Even if you find that Mr. Wilson was negligent in that he should have noticed the error, that is not a basis to find him guilty.[173]

In this case, therefore, it isn't enough for the government to show that the losses or deductions on Mr. Wilson's tax returns were improper.  The government also has to prove that Mr. Wilson knew and intended that they were improper, or, rather that Mr. Wilson knew and intended that the statements made about them in the tax returns were not true and correct.[174]  In addition, the government has to prove that Mr. Wilson acted willfully; that is to say, with bad purpose either to disobey or to disregard the law.

In determining whether Mr. Wilson intended to misstate anything on his tax return, you may find that if he could have reduced his tax payments by claiming lawful deductions but did not do so, he was less likely to have a motive to reduce his tax payments by making a false statement because he could have reduced them through lawful means.  As I have previously instructed,

---

[168]    First Circuit Pattern Criminal Jury Instruction 4.26.7206.

[169]    *United States v. Monteiro*, 871 F.2d 204, 208 (1st Cir. 1989) ("An act is done willfully if done voluntarily and intentionally, and with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or to disregard the law." (internal quotation marks omitted)).

[170]    *United States v. Rothrock*, 806 F.2d 318, 322 (1st Cir. 1986) (affirming order granting new trial where the trial court "was persuaded that the Rothrocks had given the necessary information to the preparer, and had innocently overlooked the errors in the returns"); *United States v. Anshen*, No. 91-10440, No. 91-10441, 1993 U.S. App. LEXIS 12451, at *13-14 (9th Cir. May 17, 1993) ("[N]either a careless disregard whether one's actions violate the law nor gross negligence in signing a tax return will suffice" to prove 'willfulness' under § 7206(1)" (quoting *United States v. Claiborne*, 765 F.2d 784, 797-98 (9th Cir. 1985)).

[171]    *United States v. Griffin*, 524 F.3d 71, 78 (1st Cir. 2008) ("No one can be convicted of filing a false tax return because they made a mistake or because they were careless or because they had a genuine, but mistaken, belief in the requirements of the tax code." (internal quotation marks omitted)).

[172]    *United States v. Adams*, 740 F.3d 40, 45 n.4 (1st Cir. 2014).

[173]    *United States v. Griffin*, 524 F.3d 71, 80 (1st Cir. 2008); *United States v. Cassiere*, 4 F.3d 1006, 1023 (1st Cir. 1993).

[174]    *United States v. Mikutowicz*, 365 F.3d 65, 71 (1st Cir. 2004) ("It isn't enough for the government to show that the deductions were improper.  The government also has to prove that the defendant knew that they were improper, or, rather that the defendant did not believe that the statements he made about the deductions in these returns were true and correct." (brackets and internal quotation marks omitted)).

motive is not the same thing as intent, and the government does not need to prove motive in order to convict.  But if a person lacks a motive to do something, they are less likely to do it intentionally, so motive is relevant and you may consider it in determining whether the government has proved intent beyond a reasonable doubt.[175]

Mr. Wilson's intent must be determined by a subjective standard.  This means you must decide what Mr. Wilson actually knew and believed, not what a reasonable person in his position should have known or believed.[176]

However, in determining what Mr. Wilson actually knew and believed, you may consider whether his alleged beliefs were unreasonable.  This is because to the extent a belief is unreasonable, and particularly where it is highly unreasonable, that may be probative of whether it is actually held in good faith.  For instance, a belief that the moon is made of green cheese might be considered unreasonable and therefore probative of the belief-holder's insincerity.  Of course, that is an extreme example that has nothing to do with this case.[177]  On the other hand, to the extent a belief is reasonable, or reflects a reasonable misunderstanding, that may be probative of the belief holder's sincerity.[178]

---

[175]    *United States v. Wilson*, 887 F.2d 69, 74-76 (1st Cir. 1989) (approving of an instruction in a case involving alleged tax misstatements explaining the relationship between motive and intent).

[176]    *United States v. Adams*, 740 F.3d 40, 45 (1st Cir. 2014) ("[D]efendant's intent must be determined by a subjective standard.  A good-faith but mistaken belief as to what the tax laws require is not enough to have the required knowledge and intent." (ellipsis and internal quotation marks omitted)); *id.* at 45 n.4 ("[T]he court [properly] instructed the jurors that they 'must decide what a particular defendant actually knew and believed, not what a reasonable person in his position should have known or believed' . . . .").

[177]    *United States v. Mikutowicz*, 365 F.3d 65, 71 (1st Cir. 2004).

[178]    *United States v. Adams*, 740 F.3d 40, 46 n.5 (1st Cir. 2014).

### 69.     Count Thirteen: Filing a False Tax Return: Proper Deductions

It is not a violation of the tax laws to claim a deduction for giving money to a for-profit business if the taxpayer intends that the for-profit business will then pass the money on to a charitable organization.[179]  Thus, if you find that Mr. Wilson gave the money at issue to Rick Singer or to Mr. Singer's company intending that Rick Singer would give it to a charitable organization, you must return a not guilty verdict.

In addition, a charitable organization supporting a university athletic team can be an exempt organization under the federal tax laws.  Therefore, it is not illegal in and of itself to claim a tax deduction for donating to such an organization.[180]

---

[179]     26 U.S.C. § 170(c) (defining charitable contribution as contribution "to or for the use of" charitable entity); *Kluss v. Commissioner*, 46 T.C. 572, 575 (1966) (where taxpayer gave $5,000 to for-profit foundation so foundation could send free subscriptions of its publication to members of Texas State Legislature, noting that "[t]he answer seems to turn principally on one critical factor, i.e., the donor's intent . . . . In other words, who did the petitioner actually intend to benefit when she made her contribution? This is the ready touchstone."); *Brinley v. Comm'r*, 782 F.2d 1326, 1332 (5th Cir. 1986) (rejecting government's argument that deductions for expenses incurred in providing services to charities can only be taken if the taxpayer himself or herself performed the services) ("[W]e find nothing on the face of § 1.170A-1(g) that expressly limits deductions for expenditures incurred in the rendition of charitable work to the person who actually performs the service.").

[180]     *See* Amateur Athletic Organizations, IRS Exempt Organizations Continuing Professional Education ("EO CPE") § H, at 4 (I.R.S. 1982), https://www.irs.gov/pub/irs-tege/eotopich82.pdf ("[O]rganizations that promote sports competition in conjunction with educational organizations are recognized as being described in IRC 501(c)(3).  Rev. Rul. 67-291 states that the athletic program of a university is an integral part of its overall educational activities and that an organization that provides necessary services to student athletes and coaches is described in IRC 501(c)(3)."); EO CPE § E, at 1 (I.R.S. 1987), https://www.irs.gov/pub/irs-tege/eotopice87.pdf ("[A]n amateur athletic organization may be classified as 'educational' under IRC 501(c)(3) on the grounds that it . . . is affiliated with an exempt educational organization."); *see also* Rev. Rul. 67-291, 1967-2 C.B. 184 (1967) (concluding an organization that "subsidiz[ed] a training table for coaches and members of a university's athletic teams" was tax exempt); *cf.* I.R.S. G.C.M. 37048 (Mar. 18, 1977) (concluding an organization that put on a college football bowl game was tax exempt); I.R.S. G.C.M. 37522 (May 2, 1978) (concluding that an organization that built a football stadium to lease to a public high school was tax exempt); I.R.S. G.C.M. 38339 (Apr. 8, 1980) (same with respect to hockey rink); *Clippers Found., Inc.*, 1994 WL 508911, at *1, *2 (I.R.S. Jan. 5, 1994) (exemption ruling in favor of organization with the "stated purpose . . . to foster national or international amateur sports competition by affording the opportunity for young elite athletes in track and field events to train to be representatives of the United States on the U.S. Olympic Team," including the guidance that "[d]onors may deduct contributions to you as provided in Code section 170.").

### 70.   Count Thirteen: Filing a False Tax Return: Tax Professionals[181]

Taxpayers are allowed to use tax preparers and to delegate tax preparation responsibilities to tax professionals.  In this trial, you have heard evidence that Mr. Wilson delegated some of his tax preparation responsibilities to his tax preparers and bookkeepers.  You may consider such evidence in determining whether Mr. Wilson's allegedly false statements are willful.

---

[181]      *Belcher v. United States*, Civil Action No. 598., 1960 U.S. Dist. LEXIS 5094, at *10 (W.D. Va. Sep. 21, 1960) ("I am satisfied that to discharge these duties plaintiffs relied upon their bookkeeper . . . . [P]laintiffs' failure to pay, collect, or truthfully account for and pay over, the taxes here in controversy, was not willful."); *Wiggins v. United States*, 188 F. Supp. 374, 376-77 (E.D. Tenn. 1960);  *Moody v. United States*, 275 F. Supp. 917, 926 (E.D. Mich. 1967); Treasury Department Circular No. 230, 31 C.F.R. §§ 10.2(4), 10.3 (various categories of people, including registered tax return preparers, may practice before the Internal Revenue Service for matters related to a taxpayer).

### 71.     Count Thirteen: Filing a False Tax Return – Defense of Administrative Consistency[182]

The government must treat similarly situated persons equally when collecting taxes and deciding tax issues.  If one taxpayer is treated differently from another similarly situated taxpayer, the government must state the reason for the inconsistency.  The government cannot tax one party and not tax another party without some rational basis for the difference.

In this trial, you have heard evidence that universities give preferential treatment to donors and potential donors with respect to the admission of their family members.  In addition, you have heard evidence that the IRS has a longstanding practice of allowing taxpayers to take charitable deductions for donations to universities, notwithstanding this preferential treatment.  If, upon considering this evidence, you find that the government is treating Mr. Wilson differently than other similarly situated parties, and that the government did not offer a rational basis for the inconsistency, you must acquit Mr. Wilson of the tax charge.

---

[182]     *See Hernandez v. Comm'r*, 490 U.S. 680, 703 (1989) (recognizing in a section 170 case that upon a proper factual record, a taxpayer may prevail on an "administrative consistency argument"); *United States v. Kaiser,* 363 U.S. 299, 308, 4 L. Ed. 2d 1233, 80 S. Ct. 1204 (1960) (Frankfurter, J., concurring) ("The Commissioner cannot tax one and not tax another without some rational basis for the difference."); *Int'l Business Machines Corp. v. United States*, 343 F.2d 914, 923 (Ct. Cl. 1965) ("[F]or all tax rulings, it is important that there be like treatment to those who should be dealt with on the same basis"); *Sirbo Holdings, Inc. v. Commissioner,* 476 F.2d 981, 987 (2d Cir. 1973) ("Commissioner has a duty of consistency toward similarly situated taxpayers."); *Gateway Equip. Corp. v. United States*, 247 F. Supp. 2d 299, 321 (W.D.N.Y. 2003) (granting summary judgment for Gateway "[b]ecause the IRS has offered no explanation for its position, and because Gateway has clearly been treated differently from other similarly situated taxpayers").

## X.    Miscellaneous Instructions

### 72.    Factual Impossibility

Mr. Wilson has raised the defense of factual impossibility with respect to the charges of wire fraud, honest services wire fraud, federal programs bribery, and aiding and abetting set forth in Counts Six, Eight, Nine, Eleven, and Twelve.

Factual impossibility refers to those situations in which, unknown to the defendant, the consummation of the intended criminal act is physically impossible.[183]  The defense applies where (1) a factual circumstance prevented the defendant from committing the crime with which he is charged; and (2) the defendant did not know about that particular factual circumstance.[184]

Here, you have heard evidence that Rick Singer became a government cooperator on September 21, 2018, and that this made it impossible for Mr. Wilson to bribe or defraud anyone via Rick Singer as of that date, or to aid and abet Rick Singer in bribing or defrauding anyone as of that date..[185]  In addition, you have heard evidence that Mr. Wilson was unaware that Rick Singer was a government cooperator.

The government may overcome the defense of factual impossibility in this case by proving either of the following beyond a reasonable doubt: (1) that Rick Singer was not a government cooperator during the events at issue; or (2) that Mr. Wilson knew that Rick Singer was a government cooperator during the events at issue.  But unless the government has proven either of these things beyond a reasonable doubt, you must acquit Mr. Wilson of the charges of wire fraud, honest services wire fraud, federal programs bribery, and aiding and abetting set forth in Counts Six, Eight, Nine, Eleven, and Twelve.[186]

---

[183]    *See United States v. Luttrell*, 889 F.2d 806, 810 (9th Cir. 1989).

[184]    *See* Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina, § 4.h 600 (Miller W. Shealy, Jr., ed., 2020 online ed.).

[185]    As explained in Section IV.B of Defendant John Wilson's Consolidated Memorandum of Law in Support of his Motions to Sever, to Dismiss, and to Strike, ECF No. 995, which is hereby incorporated by reference, Rick Singer's cooperation made it impossible for John Wilson to commit the crimes set forth in in Counts Six, Eight, Nine, Eleven, and Twelve.

[186]    *See United States v. Guzman*, 85 F.3d 823, 827 (1st Cir. 1996) ("Although a double jeopardy claim of the successive prosecution type is admittedly in the nature of an affirmative defense to an indictment, there is nothing unorthodox about requiring the government to bear the ultimate burden of proof vis-a-vis the existence of an alleged constitutional violation once sufficient evidence is adduced to put the question legitimately into issue."); *United States v. Rodriguez*, 858 F.2d 809, 813-15 (1st Cir. 1988) (holding that if a defendant identifies record evidence from which a jury could conclude that the defendant was entrapped, the government must bear the burden of proving that no entrapment occurred, and concluding that "there was sufficient evidence of both inducement and lack of predisposition from which a rational juror could derive a reasonable doubt as to whether or not the appellant was entrapped").

### 73.     Adverse Inference Concerning the Events of September 2018

You have heard evidence that shortly after Rick Singer agreed to cooperate with the Government, the Government instructed him to cancel a meeting with Mr. Wilson scheduled for September 23, 2018.  You have also heard evidence that the Government did not record or monitor a virtual meeting between Rick Singer and Mr. Wilson on September 28, 2018 when Rick Singer was at the FBI's offices in Sacramento.

Defense Counsel for Mr. Wilson has argued that, based on this evidence and other evidence, you should draw the adverse inferences that: (1) the Government instructed Rick Singer to cancel the September 23, 2018 meeting because it knew that Mr. Singer's discussions with Mr. Wilson would be exculpatory with respect to Mr. Wilson; and (2) the Government chose not to record or monitor the September 28, 2018 virtual meeting between Rick Singer and Mr. Wilson because it knew that their discussion would be exculpatory with respect to Mr. Wilson.  You are permitted to draw these adverse inferences, but you are not required to do so.[187]  You also may infer but are not required to infer based upon the Government's failure to record or monitor the September 28, 2018 virtual meeting that in fact the content of that meeting was unfavorable to the Government and favorable to Mr. Wilson.[188]

---

[187]     Memorandum & Order, July 7, 2020, ECF No. 1359, at 2 ("Wilson will be permitted to inquire at trial of government witnesses about events that occurred in September, 2018, and to petition the Court that it should instruct the jury about adverse inferences regarding those events."); *see also Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 20 (9th Cir. 2009) ("[A]n adverse inference instruction may be allowed when a party fails to produce a document that exists *or should exist* and is within its control." (emphasis added)).

[188]     *See* Instruction 10, *supra*.

91