UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GREGORY COLBURN et al.,<br><br>Defendants | Case No. 1:19-cr-10080-NMG<br>**Filed Under Seal**<br>**ORAL ARGUMENT REQUESTED**<br>Leave to file excess pages and to file brief and attached exhibits under seal granted on Aug. 6, 2021, in ECF No. 2027 |

**DEFENDANTS' OPPOSITION TO
GOVERNMENT'S MOTION IN LIMINE [ECF NO. 2004]
TO INTRODUCE CONFIDENTIAL MARITAL COMMUNICATIONS**

The Court should reject the government's proffer to support its request to introduce confidential marital communications at trial and grant the Defendants' mirror-image motion in limine to exclude this evidence. ECF No. 1988. Having improperly seized and rummaged through thousands of the Defendants' confidential marital communications, the government now attempts to run roughshod over the Defendants' privilege (again) by publicly disclosing the Defendants' confidential marital communications at trial. The government contends that it may do so because the Defendants' routine, truly mundane discussions with their spouses about their children's college admissions prospects make them, in the government's view, joint participants in alleged criminal activity.

The Court should deny the government's motion because: (1) the government's proffered communications do not show joint participation in any crime; (2) the government relies on inapposite cases to make the farfetched claim that Wilson waived privilege by giving his assistant access to his private e-mail account; and (3) simply listing potential exhibits on a pretrial exhibit list certainly does not waive the privilege.

I.      **THE DEFENDANTS' SPOUSES DID NOT PARTICIPATE IN ANY ALLEGED CRIME**

None of the documents the government proffers supports an exception to the privilege that applies to confidential marital communications because none is a "[c]ommunication[ ] concerning crimes in which the spouses are jointly participating." *United States v. Bey*, 188 F.3d

1

1, 4 (1st Cir. 1999) (quoting *United States v. Picciandra*, 788 F.2d 39, 34 (1st Cir. 1986)); *see also* ECF No. 1571 at 12.

*First*, seven of the 12 documents in the government's proffer (Defs.' proposed trial exs. 19, 21, 42, 52, 77, 304, 330, 498) are emails Defendants sent to their respective spouses. But simply receiving an email cannot constitute joint participation in an alleged crime. *United States v. Rakes*, 136 F.3d 1, 5 (1st Cir. 1998) ("[I]t takes wrongful complicity by the privilege holder, not innocent or involuntary action, to forfeit the privilege."). The government's proffer, at most, shows mere knowledge of the facts described in the e-mails—not any conduct undertaken to promote any allegedly criminal conduct. *See, e.g.*, *United States v. Franklin*, 904 F.3d 793, 799 (9th Cir. 2018) (" '[A] person's . . . knowledge that a crime is being committed or is about to be committed, without more, does not make him an accomplice.' ") (quoting 1 Wharton's Criminal Law § 38 (15th ed.); *United States v. Morales-Madera*, 352 F.3d 1, 12 (1st Cir. 2003) ("[M]ere knowledge of the conspiracy's activities is not sufficient alone to establish guilt.").

The government cannot establish joint participation because the spouses merely received emails. The overwhelming weight of authority limits the joint-participant exception to communications "made in furtherance of the conspiracy." *Picciandra*, 788 F.2d at 43; *Bey*, 188 F.3d at 4; 3 Weinstein's Federal Evidence § 505.11 & n.5 (2d ed. 2020) (collecting cases from seven circuits tying the joint-participant exceptions to statements "*about* present or ongoing criminal activity"). The government does not even allege that the spouses did anything, let alone did something to advance or further the conspiracy.

*Second*, emails containing only "mundane incidents of their marital relationship" are not evidence of joint-criminal activity. *Bey*, 188 F.3d at 6. The government's motion assumes what it must, and has wholly failed to, prove—that the spouses made these communications in furtherance of criminal activity. ECF No. 2004 at 7. As detailed below, the communications contained in the exhibits marked by the government are confidential communications between spouses concerning their children's college choices, the college admissions process and the selection of college counselors, donations the Defendants, and certainly their spouses, in good

faith believed to be both valid and commonplace, or concerns about their children's health. The government claims these conversations are evidence of "joint participation" only because the government is already predisposed to believe that *everything* done by the parents is part of an overarching conspiracy. Assumptions and predisposition aside, the government proffers no evidence that any of the spouses joined any agreement, knew of any agreement to bribe college officials, or did anything to help such alleged wrongdoing. None of the emails proffered by the government supports an inference of criminal intent, knowledge, or conduct. All reflect only the spouses' good faith reliance on advice that they believed—and that Singer told them—were part of the legitimate college admissions process.

**\*\*\*SEALED\*\*\*** █████████████████████████
████████████████████████████████████████
████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████
████████████████████████████████████
████████████████████████████████████████
███████████
          ████████████████████████████████
████████████████████████████████████████
██████████████████████████████████
████████████████████████████████████████
███████████
          ████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
3

██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████

**\*\*\*SEALED\*\*\***

## II.   WILSON IS ENTITLED TO AN EXPECTATION OF PRIVACY IN COMMUNICATIONS

The government's contention that Wilson lacks any expectation of privacy in "workplace emails" exchanged from his own email account at his own small company that he solely owns and where he is the sole professional makes no sense. Wilson had every expectation that his own emails were, and would remain, confidential—especially when communicating with his own spouse on his own company's email server that he alone controlled.

When workplace policies and norms convey to a person that the privacy of an email account will be respected, the expectation of privacy remains reasonable regardless of third parties' ability to access the account.[1] *Compare United States v. Slanina*, 283 F.3d 670, 676 (5th Cir. 2002) (expectation of privacy reasonable where the employer "did not inform its employees that computer usage . . . would be monitored") and *Leventhal v. Knapek*, 266 F.3d 64, 74 (2d Cir. 2001) (expectation of privacy reasonable absent evidence that the employee was notified "he should have no expectation of privacy in the contents of his office computer"), *with United States v. Hamilton*, 701 F.3d 404, 408 (4th Cir. 2012) (workplace policy instructed employee that "[a]ll information . . . is subject to inspection and monitoring"); *United States v. Simons*, 206 F.3d 392, 398 (4th Cir. 2000) (workplace policy "clearly stated that [the workplace] would 'audit, inspect, and/or monitor' . . . e-mail messages"); *Rissetto v. Clinton Essex Warren Wash. Bd. of Coop. Educ. Servs.*, No. 15-cv-720, 2018 U.S. Dist. LEXIS 124214, at \*18 (N.D.N.Y.

---

[1]   Wilson presented the same arguments in ECF No. 1571 at 9-10, which are expressly incorporated herein.

June 25, 2018) (in general, courts find no reasonable expectation of privacy "where the employer has in place a clear policy which . . . reserves the right to search and/or monitor the computer").

Here, as in previous briefing, the government cites emails Wilson sent to his subordinates authorizing them to access his emails for limited purposes—and surely not to read his confidential marital communications. Wilson's assistant (who has been his trusted employee for nearly two decades) provided an affidavit, which the government ignores, stating that she was instructed to respect the privacy of Wilson's emails and records. Ex. A (resubmitting Ex. E to ECF No. 1571).

On these facts, the government's authorities cannot countermand Wilson's own privacy expectations and his instructions to his subordinates at his own company. The cases the government cites concern conversations overheard in a police car, *United States v. Dunbar*, 553 F.3d 48, 58 (1st Cir. 2009); emails exchanged over a public school system server, *United States v. Hamilton*, 701 F.3d 404 (4th Cir. 2012); and emails exchanged over a financial institution's network with public reporting policies, *In re Reserve Fund Securities and Derivative Litigation*, 275 F.R.D. 154 (S.D.N.Y. 2011). Each is obviously distinguishable from this case. Wilson's corporate email account is fundamentally different in terms of privacy expectations from a police car, a public school system server, and a regulated financial institution's network. While those places are effectively public fora, his sole proprietorship's email was his alone to control, and he expected communications exchanged over that platform with his spouse to remain confidential. And they were confidential. Finding a waiver on these facts would lead to an absurd result.

### III.    IDENTIFYING EXHIBITS ON A PRE-TRIAL LIST CANNOT CONSTITUTE WAIVER

The government cites no case to support the theory that mere listing of potential evidence in a trial exhibit list, before Wilson has even tried to disclose the substance of any communication, is sufficient to waive marital privilege. Listing exhibits does not waive privilege any more than listing documents on a privilege log. Thus, there is no selective disclosure of privileged communications in order to gain an advantage in litigation that could waive Wilson's confidential marital communications.

The government, of course, already seized and had full access to these documents. *See, e.g.*, ECF No. 1571. Here, unlike in the sole case the government cites, Wilson did not initiate the disclosure of confidential marital communications—the government did. *See United States v. Brock*, 724 F.3d 817, 821 (7th Cir. 2013).

In presenting its unsupported waiver argument, moreover, the government concedes that the argument is premature by noting "Wilson has not yet formally sought to introduce those communications at trial," ECF No. 2004 at 10. And, should Wilson use these exhibits at trial, he will do precisely what he has asked the Court to order concerning Ex. 48, ECF No. 1988: redact the confidential marital communications. As the Court itself can see from the two exhibits the government attached to its motion (as Ex. M), both of these five-page exhibits are communications substantially with a third party, except for six lines at the top of ex. 8037 and four at the top of ex. 8085, which Wilson will redact before trial. That Wilson has not yet prepared redacted versions of documents already in the government's possession is not a knowing waiver of privilege.

Last, the government's view of waiver puts Wilson in an untenable position. Surely the government would have objected to admission of the exhibits at issue because they were not on the exhibit list if Wilson did not reserve his rights by putting them there. Imposing on Wilson a Hobson's choice between waiving the right to use the exhibits or waiving the marital privilege would be both fundamentally unfair and contrary to both the letter and the spirit of the applicable privilege laws.

## CONCLUSION

For the foregoing reasons, the Court should reject the government's proffer to support its introduction of confidential marital communications at trial.

Respectfully submitted,
By their counsel

/s/ Michael Kendall
Michael Kendall (BBO #544866)
Lauren Papenhausen (BBO# 655527)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com
lauren.papenhause@whitecase.com
Andrew Tomback (pro hac vice)
McLaughlin & Stern, LLP
260 Madison Avenue
New York, NY 10016
Telephone: (212) 448-1100
ATomback@mclaughlinstern.com

*Counsel for John Wilson*

/s/ Brian T. Kelly
Brian T. Kelly (BBO # 549566)
Joshua C. Sharp (BBO # 681439)
Lauren M. Maynard (BBO # 698742)
NIXON PEABODY LLP
53 State Street
Boston, MA 02109
(617) 345-1000
bkelly@nixonpeabody.com
jsharp@nixonpeabody.com
lmaynard@nixonpeabody.com
Robert Sheketoff (BBO # 457340)
One McKinley Square
Boston, MA 02109
(617)-367-3449

*Counsel for Gamal Abdelaziz*

Date: August 6, 2021

/s/ Cory S. Flashner
R. Robert Popeo (BBO # 403360)
Mark E. Robinson (BBO # 423080)
Eóin P. Beirne (BBO # 660885)
Cory S. Flashner (BBO # 629205)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 348-1605
rpopeo@mintz.com
mrobinson@mintz.com
ebeirne@mintz.com
csflashner@mintz.com

*Counsel for Elisabeth Kimmel*

/s/ Michael K. Loucks
Michael K. Loucks (BBO # 305520)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
500 Boylston Street
Boston, MA 02116
(617) 573-4800
michael.loucks@skadden.com
Jack P. DiCanio (*pro hac vice*)
Emily A. Reitmeier (*pro hac vice*)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, CA 94301
(650) 470-4500
jack.dicanio@skadden.com

*Counsel for Marci Palatella*

## CERTIFICATE OF SERVICE

I hereby certify that the above document is being filed on the date appearing in the header through the ECF system, which will send true copies to the attorneys of record.

/s/ Michael Kendall
Michael Kendall

# EXHIBIT A

## Affidavit of Deborah Rogers

1. My name is Deborah Rogers. I am a resident of Las Vegas, Nevada.

2. I work as an assistant to John Wilson. I have been John's assistant for sixteen years, since 2004. My responsibilities include book-keeping, logistics, paperwork, and other miscellaneous duties.

3. When I began working for John, he told me that, as part of my job, I would have the ability to access many of his personal records and emails, and many of the personal records and emails of the Wilson family. My ability to access John's records and emails has been particularly important when John travels, which is often, and during the period of several years when John and his family lived in the Netherlands.

4. John told me, and I understood, that I should respect the confidentiality of his and his family's records and emails. I am expected as part of my job to use my access to John's and the Wilsons' records only for specified purposes, such as scheduling appointments and paying bills. I am expected not to look around among the family's documents, not to access them except for purposes John and his wife specified, and not to share information from the Wilsons' private records with anyone outside the family (except as requested by John or his wife).

5. Over the years, these instructions and expectations have remained unchanged. I have continually respected the Wilsons' privacy and the confidentiality of their records. When I have accessed John's emails and other records, I have done so to follow instructions from John. It has been my regular practice not to read or rummage through John's emails for personal or other purposes, nor have I had any interest in doing so.

I affirm the foregoing statements under the penalties of perjury.

This 15th day of October, 2020.

*Deborah Rogers* (signed)
Deborah Rogers