UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,     :

         Plaintiff,    :    Criminal Action
                               No. 19-10080-NMG
     v.                  :
                               **ORAL ARGUMENT REQUESTED**
AMY COLBURN, *et al.*,      :

         Defendants.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' [DEF. NOS. 4, 13, 16, AND 17] OPPOSITION TO THE GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF CO-CONSPIRATOR STATEMENTS OTHER THAN FOR IMPEACHMENT

Defendants Gamal Abdelaziz [Def. No. 4], Elisabeth Kimmel [Def. No. 13], Marci Palatella [Def. No. 16], and John Wilson [Def. No. 17] ("Defendants") respectfully file this opposition to the Government's Motion *in Limine* to Exclude Evidence of Co-Conspirator Statements Other than for Impeachment ("Motion").  (ECF No. 2008.)  The Motion seeks two items of relief, both of which should be denied.  ***First,*** the Government seeks to exclude, categorically, "out-of-court statements of co-conspirators, including recorded calls and emails." (Mot. at 1.)  The Motion focuses primarily on audio recordings of calls that occurred between Rick Singer and other individuals.  (*Id.* at 1 n.1.)  The Government argues that the Defendants cannot introduce these exhibits because they constitute hearsay and are inadmissible.  But the Court should deny this request because the vast majority of the calls are ***not*** hearsay, and, moreover, are relevant.

***Second***, the Government requests an order that the Defendants be required to play an audio recording for a witness outside the presence of the jury prior to introducing the recording for impeachment as a prior inconsistent statement.  The Court should deny this request because it

is unsupported by legal authority.  In fact, the rule relied on by the government in arguing for

such a disclosure, Federal Rule of Evidence 613, was codified to abrogate the strict sequencing

procedure that the government now advocates.  Moreover, such a procedure would unnecessarily

slow down what is already going to be a multi-week trial.

I.       **THE GOVERNMENT'S MOTION SHOULD BE DENIED BECAUSE THE
         STATEMENTS OF CO-CONSPIRATORS CAN BE INTRODUCED FOR NON-
         HEARSAY PURPOSES.**

The Government's Motion is devoted to establishing that audio recordings and emails

involving Singer and included on Defendants' exhibit lists do not fall within one specific

exclusion to the rule against hearsay, Fed. R. Evid. 801(d)(2)(E) (admission by a co-conspirator).

In doing so, the Government assumes that exhibits containing statements of purported co-

conspirators must be introduced for the truth of the matter asserted or for impeachment.  But

"[o]ut-of-court statements are considered 'nonhearsay' when they are offered not for the truth of

the matter but for some other purpose."  *Franchina v. City of Providence*, 881 F.3d 32, 50 (1st

Cir. 2018); *see also United States v. Murphy,* 193 F.3d 1, 5 (1st Cir. 1999) ("So long as out-of-

court statements are not offered for their truth, they are not hearsay." (citation omitted)).

For example, an out-of-court statement can permissibly be offered into evidence to "show

that the declarant had certain information, or entertained a specific belief, . . . or it might be

offered to show the effect of the words spoken on the listener (*e.g.*, to supply a motive for the

listener's action)."  *Murphy*, 193 F.3d at 5 n.2.  Additionally, an out-of-court statement may be

admissible as "circumstantial evidence of [the speaker's] state of mind at the time."  *United

States v. DeSimone*, 488 F.3d 561, 568-69 (1st Cir. 2007); *see also United States v. Ibisevic*, 675

F.3d 342, 349 (4th Cir. 2012) (holding that prior statement by the defendant was not hearsay

because it was offered "merely to prove that [he] expressed [his] belief" ((alterations in original)

(citation omitted)); *United States v. Gibson*, 675 F.2d 825, 834 (6th Cir. 1982) (explaining that

2

statement heard by the defendant "could have been received properly on the issue of [the defendant's] belief or state of mind in consequence of the utterance").[1]  It can also be introduced to show a general practice of behavior.  *Murphy*, 193 F.3d at 5 (allowing the introduction of the instructions given to [the detective] to falsify applications and withhold information because they were not offered for the truth of the matter asserted "but rather to show that the detectives gave such instructions").

Here, for example, an audio recording between Singer and other parents or coaches who are not Defendants in this trial can be used to show Singer's pattern and practice of behavior, including how he described the "side door" program to others, and the similarities and differences in these descriptions in the various calls.  (*See, e.g.*, DX 1407, 1444, 1447, 1451, 1459, 1461, 1490, 1491, 1493, 1494, 1528, 1530, and 1542.)  This is not used to prove what Singer said to any of these other individuals is true—in fact, Defendants maintain Singer frequently lied.  But showing that he made these statements is relevant to what the Defendants in this case claim Singer told them about the "side door" program and whether Singer lied to the Defendants in this case, all going to the ultimate issue of each Defendant's intent and state of mind.

The Government's attempt to exclude these statements also implicates another evidentiary rule, the so-called rule of completeness.  Under that provision, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction . . . of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the

---

[1]     Laying out the non-hearsay purpose of each exhibit in detail would force Defendants to prematurely and improperly divulge their trial strategy.  Moreover, the Government did not do this in its motion.  Because the Government did not argue any other hearsay exclusions or exceptions, Defendants do not need to provide any and all such exclusions or exceptions which may apply to the exhibits in question.  Defendants request the opportunity to provide a more detailed explanation of relevance and admissibility if the Court intends to rule pre-trial on a document-by-document basis.

same time." Fed. R. Evid. 106.  The rule of completeness "operates to ensure fairness" where a party's selective evidentiary presentation creates a risk of "misunderstanding or distortion." *United States v. Simonelli*, 237 F.3d 19, 28 (1st Cir. 2001) (citation omitted).  Crucially, the First Circuit has interpreted this rule "to facilitate the introduction of otherwise inadmissible evidence." *United States v. Bucci*, 525 F.3d 116, 133 (1st Cir. 2008).

Here, the Government has provided its own list of exhibits, including audio recordings. Some of these recordings involve the same parties as the exhibits on the Defendants' list that the Government now seeks to exclude.  For example, the Government has included calls between Singer and Bill McGlashan on its exhibit list.  (GX 540; 553.)  But the Government is objecting to the inclusion of *other* calls between Singer and Mr. McGlashan because they are on the Defendants' list.  (*See* DX 1494, 1524, and 1530.)  Allowing some of Singer's communications with Mr. McGlashan to be introduced and not others this is precisely the type of "distortion" that the rule of completeness aims to prevent.  *Simonelli*, 237 F.3d at 28.[2]

Many times, audio recordings of alleged co-conspirators favor the prosecution.  In this case, it just so happens that Defendants believe that many of the audio recordings made by the Government help the defense.  But that makes no difference to the tape's admissibility.  The rules of evidence apply to both parties equally, and granting a motion *in limine*, categorically

---

[2]     In light of the Government's continued—albeit erroneous—insistence that this case involves one large conspiracy, each co-conspirator's "fate [i]s linked to" the others', and circumstantial evidence of other co-conspirators' state of mind is independently relevant to the conspiracy charge against the other defendants. *See United States v. Harris,* 733 F.2d 1005, 1006 (2d Cir. 1984); *see also United States v. Moran*, 493 F.3d 1002, 1014-15 (9th Cir. 2007) (explaining that the defendants "were charged as coconspirators" and that "testimony sought from [one defendant] concerning professional opinions about the tax scheme with which they were jointly charged would have been relevant as circumstantial evidence to prove the state of mind of her husband and coconspirator").  Thus, here, under the Government's theory, the audiotapes cited by the Government are relevant as non-hearsay circumstantial evidence to prove state of mind, or, alternatively, admissible under Rule 803(3). The Government cannot have it both ways—asserting there is one large conspiracy, but yet seeking to prevent the Defendants from presenting relevant and admissible evidence about the other co-conspirators.

*(cont'd)*

excluding the admission of such statements, is unwarranted.[3]

## II.   RULE 613 DOES NOT REQUIRE DEFENDANTS TO FIRST PLAY RECORDINGS FOR A WITNESS OUTSIDE THE PRESENCE OF THE JURY.

In its Motion, the Government also asks that this Court preclude Defendants from using audio recordings to impeach the Government's witnesses without allowing the witness to first listen to the audio file outside the presence of the jury.  (Mot. at 5 (Defendants must "first play the recordings for the witness and government counsel over headphones (or otherwise outside the presence of the jury) and [ ] provide complete transcripts to assist the Court and government in evaluating whether the statements are truly inconsistent.").)  But Rule 613 does not require this, and such a categorical order would be inefficient and unnecessarily slow down the trial. Moreover, with any COVID-restrictions, such a procedure could become even more unwieldy, especially when Defendants wish to conclude the trial as quickly as possible.

Federal Rule of Evidence 613(b) provides that "Extrinsic evidence of a witness's prior inconsistent statement [not made under oath] is admissible . . . if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires."  Fed. R. Evid. 613(b).  The Government cites no case which requires an audio file to be played outside of the presence of the jury prior to being admitted under Rule 613.  This is not surprising because Rule 613 does not impose any such sequencing or timing requirement.

Rule 613 was codified *against* the then-existing norm that "a cross-examiner, prior to

---

[3]   Moreover, exhibits can be admitted "to provide relevant context or background."  *United States v. Meserve*, 271 F.3d 314, 319 (1st Cir. 2001) ("Testimony that is not offered to prove the truth of an out-of-court statement, but is instead offered to provide relevant context or background, is not considered hearsay.")  The government has alleged a conspiracy extending from 2007 to February 2019.  (*See* ECF 732, ¶¶64. 67, 279, 282, 370, 372.) Thus, by the Government's own theory, contemporaneous communications involving co-conspirators ranging from 2007 through February 2019 are part and parcel of the alleged conspiracy.  Defendants should be allowed to introduce these out-of-court statements to provide crucial "context" to the schemes and deceptions of Singer.

questioning the witness about his own prior statement in writing, must first show it to the witness."  Fed. R. Evid. 613, 1972 Advisory Committee Notes, Subdivision (a).  Rule 613 was designed to "abolish[] this useless impediment[] to cross-examination."  *Id.*  There is no requirement that a witness be able to review the prior statement before to testifying about it, or the jury hearing or seeing it, nor does it require that such a review occur outside of the presence of the jury.  As the initial advisory comment rules note, "the traditional insistence that the attendance of the witness be directed to the statement on cross-examination is relaxed in favor of simply providing the witness an opportunity to explain and the opposite party an opportunity to examine on the statement, *with no specification of any particular time or sequence*."  Fed R. Evid. 613, 1972 Advisory Committee Notes, Subdivision (b).  As the First Circuit unequivocally agreed, Rule 613 contains "no specification of any particular time or sequence."  *United States v. Hudson*, 970 F.2d 948, 955 (1st Cir. 1992) (citation omitted) (holding that Rule 613(b) was satisfied so long as the witness was "available to be recalled in order to explain the [inconsistent] statement during the course of the trial").

To the extent Mr. Singer or any other witness's statements at trial are inconsistent with anything he or she had said in a recorded conversation, Rule 613(b) entitles the defense to admit the prior inconsistent statements by playing the tape to the jury so that the jurors can hear the prior inconsistent statements for themselves.  The witness can listen to the tape along with the jury, and the jury is entitled to see the witness's unvarnished reaction to and explanation of the inconsistency.  The witness will have the opportunity to "explain" the statement after hearing it, and the government will have the opportunity to examine him or her about the statement on re-direct examination.  Rule 613 only states that a witness be afforded the *opportunity* to explain the inconsistent statement.  Rule 613(b) does not require a witness to actually explain or deny the

prior inconsistent statements or be presented an opportunity to do so *before* the statement is introduced into open court.  The jury seeing a witness's reaction to the tape is essential in its judgment of the witness's credibility.

The Government made these recordings, and has listened to them and is familiar with them.  If the Government believes a specific prior statement is not truly inconsistent and does not fall under the parameters of Rule 613, the government can object and seek a proffer when the recording is introduced.  It does not make sense to enter a catch-all order that the entire trial stop so the Government has time to review each and every recording offered for impeachment. Requiring the trial to stop, the jury be excluded, and a witness listen to a recorded conversation of his or herself prior to playing the conversation for the jury would unnecessarily slow down the trial, especially in a case with voluminous recordings of phone conversations, and would hinder the jury's ability to make credibility assessments of witnesses.  Such a procedure is not required by the Rules of Evidence, and the Court should deny this Motion.

## CONCLUSION

The Government's Motion rests on a fundamental flaw—that introduction of recorded calls and emails of conversations Singer had with other individuals constitutes hearsay and cannot be admitted into evidence.  But the Government ignores that the Defendants can introduce Singer's statements not for the truth of the matter asserted (especially when Defendants contend that Singer was lying in many of these conversations).  Singer is at the center of the alleged conspiracy, and Singer's side-door pitch—and his stream of lies and misdirection—is relevant evidence of how Singer operated his enterprise.  Moreover, there is no requirement that the Defendants allow any witness to listen to any inconsistent statements prior to playing that statement to the jury for impeachment.  The Government's Motion should be denied.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Defendants respectfully request oral argument on this motion.

*/s/ Michael K. Loucks*
Michael K. Loucks

Dated: August 6, 2021                   Respectfully submitted,
Boston, Massachusetts

*/s/ Brian T. Kelly*
Brian T. Kelly (BBO # 549566)
Joshua C. Sharp (BBO # 681439)
Lauren M. Maynard (BBO # 698742)
NIXON PEABODY LLP
53 State Street
Boston, MA 02109
(617) 345-1000
bkelly@nixonpeabody.com
jsharp@nixonpeabody.com
lmaynard@nixonpeabody.com

Robert Sheketoff (BBO # 457340)
One McKinley Square
Boston, MA 02109
617-367-3449

*Counsel for Gamal Abdelaziz*

*/s/ Cory S. Flashner*
R. Robert Popeo (BBO # 403360)
Mark E. Robinson (BBO # 423080)
Eóin P. Beirne (BBO # 660885)
Cory S. Flashner (BBO # 629205)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 348-1605
rpopeo@mintz.com
mrobinson@mintz.com
ebeirne@mintz.com
csflashner@mintz.com

*Counsel for Elisabeth Kimmel*

8

/s/ Michael K. Loucks
Michael K. Loucks (BBO # 305520)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
500 Boylston Street
Boston, MA 02116
(617) 573-4800
michael.loucks@skadden.com

Jack P. DiCanio (*pro hac vice*)
Emily Reitmeier (*pro hac vice*)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, CA 94301
(650) 470-4500
jack.dicanio@skadden.com
emily.reitmeier@skadden.com

*Counsel for Marci Palatella*

/s/ Michael Kendall
Michael Kendall (BBO # 544866)
Lauren M. Papenhausen (BBO # 655527)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
(617) 979-9300
michael.kendall@whitecase.com
lauren.papenhausen@whitecase.com

Andrew E. Tomback (*pro hac vice*)
MCLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, NY 10016
(212) 448-1100
atomback@mclaughlinstern.com

*Counsel for John Wilson*

---

**CERTIFICATE OF SERVICE**

    I, Michael K. Loucks, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants, if any, on August 6, 2021

Dated: August 6, 2021    /s/ Michael K. Loucks
                  Michael K. Loucks