UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.: 19-10080-NMG |
| | ) | |
| GAMAL ABDELAZIZ *et al.*, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO REQUIRE A PRE-TRIAL *PETROZZIELLO* PROFFER [DKT. 1991]**

More than a year ago, this Court denied the defendants' motion to dismiss the indictment on the basis of their contention that it fails to allege a single conspiracy. Dkt. 1334. Rejecting the argument that the indictment alleges only "individual conduct" and a "so-called rimless wheel," the Court concluded that the question whether the defendants "participated in a single conspiracy or multiple conspiracies is properly left to the jury." *Id*. at 7, 10. Since then, the Court has repeatedly reaffirmed that finding. *See*, *e.g.*, Dkt. 1402 at 5 (rejecting motion to dismiss for lack of venue based on defendants' "contention that the government has failed properly to allege a single conspiracy"); Dkt. 1414 at 3–4 (rejecting severance motion and noting that "[d]efendants' arguments stem largely from their conviction that the FSI does not properly allege a single over-arching conspiracy, a claim which this Court has previously considered and rejected"); Dkt. 1438 at 5–6 (rejecting defendant Wilson's severance motion and noting that Wilson's contention that the "government's conspiracy charges violate *Kotteakos v. United States*, 328 U.S. 750 (1946) . . . has been previously addressed by this Court and found to lack force").

Having thus failed to short-circuit the proceedings, the defendants now recycle the same arguments in support of their request that the government be ordered to provide a "detailed, pre-trial proffer" of "how it intends to satisfy its burden of proving the single conspiracy" and how any

co-conspirator statements it will offer at trial "were made in furtherance of that conspiracy," so that they can "put the government's supporting evidence to the immediate test." Dkt. 1991 at 2, 15. Once again, the defendants' motion is without merit. A pre-trial proffer to determine the admissibility of co-conspirator statements is a disfavored and unnecessary protocol that is contrary to well-established First Circuit procedure. And nothing about this case presents the "rare instance" in which such a determination cannot be made in the ordinary course, at the close of the evidence.

Moreover, the overwhelming majority, if not the entirety, of the statements to which the defendants object are, in any event, admissible for reasons other than the fact that they are also co-conspirator statements, including that they are statements of a party opponent, for notice and context, as questions or directives, for the fact that they were made, and to prove the existence of the charged conspiracy. For these reasons, and the reasons set forth below, the defendants' motion should be denied.

## ARGUMENT

Federal Rule of Evidence 801(d)(2)(E) permits the introduction of a statement offered against a party if the statement is made "by the party's coconspirator during and in furtherance of the conspiracy." *Id.* "The proponent of the statement bears the burden of establishing, by a preponderance of the evidence, that a conspiracy embracing both the declarant and the defendant existed, and that the declarant uttered the statement during and in furtherance of the conspiracy." *United States v. Bradshaw*, 281 F.3d 278, 283 (1st Cir. 2002) (citing *United States v. Sepulveda*, 15 F.3d 1161, 1180 (1st Cir. 1993)). In the First Circuit, this determination is known as a *Petrozziello* ruling based on the First Circuit's opinion in *United States v. Petrozziello*, 548 F.2d 20 (1st Cir. 1977). *See United States v. Ciresi*, 697 F.3d 19, 25 (1st Cir. 2012).

The First Circuit has repeatedly addressed the issue of evidence proffered under Rule 801(d)(2)(E) and "constructed a model for the handling" of such evidence that *requires* the trial court to conditionally admit the alleged co-conspirator statements. *Bradshaw*, 281 F.3d at 283 (citing *United States v. Ciampaglia*, 628 F.2d 632, 638 (1st Cir. 1980)); *see also United States v. Diaz*, 670 F.3d 332, 348 (1st Cir. 2012) ("[a] district court faced with a challenge to the admission of a coconspirator's statement *must* provisionally admit the statement") (emphasis added); *United States v. Rivera-Donate*, 682 F.3d 120, 131 (1st Cir. 2012) (same); *United States v. Vazquez-Botet*, 532 F.3d 37, 65 (1st Cir. 2008) (noting that "[o]ur case law *instructs* district courts faced with a challenge to the admission of a coconspirator hearsay statement to admit the statement provisionally") (emphasis added).[1]  At the close of all evidence, the court must make a final determination as to the admissibility of the evidence. *See Bradshaw*, 281 F.3d at 283.  If the court concludes "that the provisionally admitted evidence does not satisfy the applicable standard, it must 'give a cautionary instruction to the jury, or, upon an appropriate motion, declare a mistrial if the instruction will not suffice to cure any prejudice.'" *Id*. (citing *Ciampaglia*, 628 F.2d at 638).

A district court is under no obligation to determine the admissibility of co-conspirator statements prior to trial, and the First Circuit has opined that "as a general rule, [a pretrial] hearing, unlike a pretrial suppression hearing, would unnecessarily lengthen the proceedings.  Evidentiary questions are grist for the mill of district court judges and, except in rare instances, can be handled competently in the trial context." *United States v. Medina*, 761 F.3d 12, 17 (1st Cir. 1985); *see also United States v. Baltas*, 236 F.3d 27, 35 (1st Cir. 2001) (affirming district court's denial of

---

[1] These decisions – *Diaz*, *Rivera-Donate*, and *Vazquez-Botet*, post-date those cases cited by the defendants suggesting that conditional admission is discretionary. *See* Dkt. 1991 at 13–14 & n.4; *see also United States v. Isabel*, 945 F.2d 1193, 1199 (1st Cir. 1991); *United States v. MacKenzie*, No. 01-cr-10350, Dkt. 274.

requests for pre-trial rulings on admissibility of co-conspirator statements); *United States v. Isabel*, 945 F.2d 1193, 1198-99 (1st Cir. 1991) ("[a]ppellants contend that the district court erroneously refused to conduct a pre-trial hearing on the admissibility of certain alleged coconspirator statements. Their contention is simply incorrect.").

To that end, district courts routinely deny requests for pre-trial evidentiary hearings or proffers. *See, e.g.*, *United States v. DeNunzio*, No. 14-cr-10284-NMG, Dkt. 429 (denying motion for a "pre-trial proffer and determination with respect to alleged co-conspirator hearsay statements under *Petrozziello*"); *United States v. Recines-Garcia*, No. 15-cr-10338-FDS, Dkt. 1845 (denying defendants' motion for pre-trial *Petrozziello* hearing); *United States v. Panzardi-Alvarez*, 646 F. Supp. 1158, 1167 (D.P.R. 1986) (concluding that "alternative procedures such as . . . a pretrial evidentiary hearing would unnecessarily lengthen proceedings."); *see also United States v. George*, No. 11-cr-10201-NMG, Dkt. 193 at 97 (making *Petrozziello* finding after conditionally admitting co-conspirator statements), *aff'd*, 761 F.3d 42, 54–55 (1st Cir. 2014) ("How this works is that a judge conditionally admits the alleged coconspirator statements subject to a later finding by the judge. . . ."). In *United States v. Barletta*, 500 F. Supp. 739, 743 (D. Mass. 1980), Judge Tauro rejected the government's request for a preliminary evidentiary hearing, stating:

> Requesting this court to make a ruling on admissibility contingent with the government satisfying its offer of proof is little less than asking for an advisory opinion based on a hypothetical set of facts not yet established by the evidence presented before a jury. The avoidance of such an academic exercise is itself good cause for a deferral.

*Id. See also United States v. Berletta*, 644 F.2d 50, 58 & n.8 (1st Cir. 1981) (noting that a ruling on the admissibility of co-conspirator statements prior to trial would "require conducting virtually a complete mini-trial prior to the actual trial").

I.          There Is No Basis To Depart From the *Petrozziello* Protocol

The defendants' self-serving argument that the "government's single-conspiracy theory is so tenuous," and the conspiracy's "size and scope" so broad, that the case requires a pre-trial *Petrozziello* proffer, Dkt. 1991 at 2, 6, ignores the overwhelming precedent in this Circuit. *See, e.g.*, *Diaz*, 670 F.3d at 336, 348 (provisionally admitting co-conspirator statements at trial in case involving 47 defendants and multiple conspiracies); *Baltas*, 236 F.3d at 30 (provisionally admitting co-conspirator statements at trial in case involving 13 defendants and multiple conspiracies); *Rivera-Donate*, 682 F.3d at 124, 131 (42 defendants and conspiracy with multiple subsets); *Recines-Garcia*, No. 15-cr-10338-FDS, Dkt. 1845 (denying motion for pre-trial *Petrozziello* hearing in 61-defendant racketeering case with multiple alleged conspiracies).[2]

In addition, the defendants offer no support for their vague contention that the "risks" posed by the conditional admission of co-conspirator statements are "too great" to follow the First Circuit's customary procedure. Indeed, other than conclusory statements about the danger of a mistrial, they fail to identify any such risks at all, much less to spell them out. Moreover, as this Court has repeatedly concluded in denying the defendants' severance motions, "[e]vidence pertinent to the 'side door' scheme as a whole, Singer's *modus operandi*, his associates, USC admissions practices, etc., are all relevant to the charges against" all the defendants because, "in a conspiracy, 'virtually all the evidence relating to the other conspirators [is] also directly relevant

---

[2] The defendants cite *United States v. MacKenzie*, 01-cr-10350-DPW, as precedent for the proposition that a court has the discretion to order a pre-trial *Petrozziello* proffer, though such a practice is disfavored in this Circuit. But that nearly two-decade-old case was different, insofar as it involved a trial of 12 defendants charged with conspiring to provide various forms of kickbacks to various health care providers. Here, by contrast, the four remaining defendants are all alleged to have conspired with Singer and others to use the same means – falsified athletic profiles and *quid pro quo* payments styled as "donations" – to secure the same thing: admission to USC (and other schools) as purported athletic recruits.

to, and, therefore, independently admissible in, the prosecution's case against" any one of the alleged conspirators.  Dkt. 1438 at 7–8 (citing *United States v. Flores-Rivera*, 56 F.3d 319, 325 (1st Cir. 1995)); *see also* Dkt. 1414 at 4 (same).  Likewise, the Court has found that "[t]o the extent that any potential prejudicial spillover may occur, the Court will consider appropriate limiting instructions to the jury."  Dkt. 1438 at 8 (citing *United States v. Candelario-Santana*, 834 F.3d 8, 24 (1st Cir. 2016) for the proposition that "a trial court can safeguard a defendant from potentially prejudicial spillover by delivering jury instructions as to the admissibility of the evidence")) (internal quotation marks omitted); *see also* Dkt. 1414 at 5 (same).

Moreover, it bears noting that the First Circuit accepted the possibility of prejudice – and even irreparable prejudice – when it developed the provisional acceptance procedure for co-conspirator statements, and gave district courts the power to declare a mistrial if there was prejudice that could not be cured.  *See, e.g.*, *Baltas*, 236 F.3d at 35 (affirming provisional admission of co-conspirator statements "even though [the court] had to subsequently strike some of them, in whole or in part").  *Cf. United States v. Correa-Osorio*, 784 F.3d 11, 24 (1st Cir.) ("[i]f prosecutors fall short, the defendant can ask the judge to declare a mistrial or strike the statements").

      II.      The Government Will Meet Its *Petrozziello* Burden

The government will prove the existence of a single conspiracy, and the defendants' membership in it, at trial.  Indeed, while it is true that a single co-conspirator statement cannot, without more, establish by a preponderance of the evidence the existence of a conspiracy embracing the declarant and the defendant, *see Sepulveda*, 15 F.3d at 1182, it is also true that the Court may consider *any* relevant evidence – including the challenged statement itself – in determining the admissibility of such statements.  *See, e.g.*, *Bourjaily v. United States*, 483 U.S. 171, 181 (1987); *United States v. Rivera-Santiago*, 872 F.2d 1073, 1092-93 (1st Cir. 1989).  Here,

6

the defendants contend that "514 of the 643 items on the government's exhibit list" are hearsay statements, the admission of which the government will "undoubtedly try to justify" as co-conspirator statements. Dkt. 1991 at 1. Yet the defendants' contention that "[n]ot one" of these communications is probative of the charged conspiracy is untrue, and the Court may consider *all of them*, taken together and corroborated by *all* other evidence, in making its *Petrozziello* finding. *See*, *e.g.*, *United States v. Dowdell*, 595 F.3d 50, 73 (1st Cir. 2010) (affirming this Court's *Petrozziello* finding and noting that the ruling is based on "all of the evidence"); *United States v. Wright*, 285 F. Supp. 3d 443, 453–54 (D. Mass. 2018) (explaining that courts making *Petrozziello* determinations may consider "any evidence whatsoever," including "hearsay and other inadmissible evidence"); *see also United States v. Louchart*, 579 F. App'x 492, 495 (6th Cir. 2014) ("As we have explained before, when coconspirators' statements are 'given independently' and 'corroborate each other,' these 'indicia of reliability' allow a district court to rely on those statements.") (further citation omitted).

In this regard, even as they argue that the government's trial exhibits are "devoid of useful evidence" of conspiracy, Dkt. 1991 at 11, the defendants *concede* that the evidence shows: (1) that they each worked with Singer and "a repertory company of alleged accomplices" who will "be able to describe the roles they played in connection with specific transactions," *id*. at 10–11; (2) that they referred other clients to Singer, *id*. at 11; (3) that "[l]ike all Singer's clients," they sought to get their children into college, *id*. at 12; (4) that at least some of Singer's clients were known to one another, *id*., and (5) that the government's witness list includes two parents who pled guilty to engaging in the charged conspiracy "to misrepresent two of their children as athletes and to alter one child's standardized test scores," *id*. The defendants seek to characterize their actions as independent and unconnected, and contend that the government will be unable to "draw

7

the connections" between them. *Id*. at 11. But this is simply self-serving rhetoric. Even their parsimonious recitation of the government's evidence – and there is much, much more – hints at what the evidence at trial will actually show: that they "shared the common goal of using bribery and fraud in order to secure their childrens' admission to prestigious colleges and universities"; that they agreed to pursue this goal together with Singer and other core conspirators; and that they "were aware of the nature and scope of the scheme . . . knew they were not the only participants" and "tended to promote it and encouraged others to enroll." Dkt. 1334 at 8–9. The evidence will, accordingly, satisfy the government's burden of proving "that the defendants engaged in a singular, overarching conspiracy," *id*. at 10, not just by a preponderance for purposes of *Petrozziello*, but beyond a reasonable doubt.

### III.  The Evidence Is Admissible on Multiple, Independent Grounds

While the defendants contend that 514 of the 643 exhibits on the government's exhibit list are hearsay communications, they fail to note that the vast majority of these exhibits relate to the defendants themselves, and are admissible at trial for reasons entirely independent of the fact that they are co-conspirator statements. (By contrast, 90 percent of the approximately 2,500 exhibits marked by the defendants do *not* relate to them.) *See, e.g.*, *DeNunzio*, No. 14-cr-10284-NMG, Dkt. 429 (explaining that many of the challenged exhibits were not only co-conspirator statements subject to conditional admission, but were also admissible for non-hearsay purposes).

For example, many of the exhibits contain statements of the defendants, and are thus admissible as to each of them as statements of a party opponent, pursuant to Fed. R. Evid. 801(d)(2)(A). Likewise, many of the exhibits reflect statements that were made *to* the defendants, which are admissible to provide context for the defendants' own statements and to complete the conversation, as well as for notice and their effect on the listener. Many of Singer's statements to

co-conspirators other than the defendants are admissible as directives or verbal acts. And many of these statements, and the statements of other co-conspirators, are also admissible for the non-hearsay purpose of showing that the statements were made, and to show their effect on the recipients – for example, to show that Singer's associates used the photographs and other information the defendants forwarded to Singer, and that Singer forwarded to them, to create falsified athletic profiles, which they, in turn, forwarded to Donna Heinel or Jovan Vavic at USC, who used them to secure the admission of the defendants' children as purported athletic recruits.

Moreover, the defendants' contention that their individual admissions are not admissible as to their co-defendants, Dkt. 1991 at 7, is untrue. It is black-letter law that those statements are admissible against all the defendants for the non-hearsay purpose of proving the existence of the conspiracy. *See Anderson v. United States*, 417 U.S. 211, 228 (1974) (out-of-court statements which are not offered for their truth are not hearsay, and, as such, are admissible if relevant to prove the conspiracy, regardless whether the requirements of the co-conspirator hearsay exception rule are met); *see also United States v. Casas*, 356 F.3d 104, 125 (1st Cir. 2004) (a record "is not hearsay if it is admitted in evidence merely for the purpose of showing the existence of a [] conspiracy"); *United States v. Alosa*, 14 F.3d 693, 696 (1st Cir. 1994) (statements to prove existence of conspiracy "present[] no hearsay problem" because "the 'truth' of individual statements . . . is beside the point"); *United States v. Munson*, 819 F.2d 337 (1st Cir. 1987) (statements of coconspirators not offered for the truth admissible "as long as they were relevant in some way to prove the conspiracy charged"). Indeed, an examination of the form and substance of the defendants' communications – without regard for the truth of their assertions – itself serves as proof of the conspiracy. For example, to the extent the defendants each sent athletic photographs of their children to Singer, and then received "likely" letters from him confirming their children's

admission to USC as recruited athletes, followed by an invoice from his bookkeeper for a purported donation to Singer's sham charity, the pattern of their behavior is itself evidence that the conspiracy existed. Likewise, to the extent the defendants admitted, in phone calls that were intercepted over the wiretap or consensually recorded, that their children were admitted to college as recruited athletes for sports they either did not play, or did not play at a Division I level – and agreed with Singer to lie about the reasons for their payments to his charity – their statements are admissible as to their co-defendants to prove the nature and existence of the charged scheme. Because the vast majority of challenged exhibits are thus independently admissible against all of the defendants, there is no basis for a *Petrozziello* proffer in the few weeks remaining before trial.

## CONCLUSION

The defendants' motion for a pre-trial *Petrozziello* proffer is unsupported by the law of this Circuit or any developed factual basis unique to this case. For those reasons, and the reasons set forth above, the motion should be denied.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By: */s/ Stephen E. Frank*
JUSTIN D. O'CONNELL
KRISTEN A. KEARNEY
LESLIE A. WRIGHT
STEPHEN E. FRANK
IAN J. STEARNS
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: August 6, 2021  /s/ Stephen E. Frank
STEPHEN E. FRANK