UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 19-cr-10080-NMG |
| ) | |
| GAMAL ABDELAZIZ, et al., ) | |
| ) | |
| Defendants ) | |

**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE* TO EXCLUDE EVIDENCE OR, OR ARGUMENT ABOUT, CERTAIN PAYMENTS MADE TO CO-CONSPIRATORS (Dkts. 1998 & 2010)**

The defendants previously argued, in moving to dismiss the indictment, that William "Rick" Singer's $20,000 monthly payments to corrupt USC insider Donna Heinel were part of a "side deal," unknown to the defendants, that could not as a matter of law have furthered the charged conspiracy. *See* Dkt. 1020 p. 7-8. This Court rejected that argument, concluding that the defendants were charged with engaging in "a single over-arching conspiracy," and that it was "immaterial" whether they were aware of the exact arrangement between Singer and Heinel. *See* Dkt. 1402 at 7. In reaching that conclusion, the Court likewise rejected the defendants' argument that the payments could not have furthered the conspiracy because Singer was cooperating with the government at the time, noting that the indictment alleged that "all defendants and co-conspirators remained a part of the continuing conspiracy after Singer began cooperating with the government." *Id*.

Having failed to persuade the Court to dismiss the indictment on these grounds, the defendants now seek to preclude the government from offering evidence or argument concerning those same payments, as well as private school tuition payments Singer made for the children of

former USC water polo coach Jovan Vavic. *See* Dkts. 1998 & 2010.[1] Invoking the very arguments the Court previously rejected, the defendants contend that evidence of the payments to Heinel and the tuition payments for Vavic is irrelevant and unduly prejudicial, because the payments were unknown to the defendants, and outside the scope of the charged conspiracy. *See* Dkt. 1998-1 at 5; Dkt. 2010 at 1–2. But this Court found precisely the opposite. Because the payments are highly relevant and probative of the charged conspiracy, and for the reasons set forth below, the defendants' motions should be denied.

## ARGUMENT

Evidence is relevant "if it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." *See* FED. R. EVID. 401. Here, the defendants argue that Singer's payments to Heinel and Vavic are not relevant because they were part of secret "side deals" made after the defendants' children were admitted to college. *See, e.g.*, Dkt. 2010 at 4 ("Moreover, Singer didn't start paying Heinel $20,000 per month until approximately four months after Abdelaziz's daughter received her final admission to USC on March 26, 2018."); *see also* Dkt. 1998 at p. 2 ("Singer's secret tuition payments for the benefit of Vavic's children did not start until August 2015—18 months after the admission of Wilson's son to USC."). This Court has already held otherwise.

The defendants are charged with engaging in "a single over-arching conspiracy" to make *quid pro quo* payments to induce corrupt USC insiders to designate their children as athletic recruits based on fabricated athletic credentials. *See* Dkt. 1402 at 7. The actions of the defendants' co-conspirators – including the decisions Singer, Heinel and Vavic made about how to allocate the

---

[1] Wilson also seeks to preclude the government from introducing recorded telephone calls in which Vavic and Singer discussed the tuition payments and the *quid pro quo* arrangement.

*quid quo pro* payments – are relevant to proving the charged conspiracy and how it operated. Among other things, the evidence is probative of the ways in which Heinel and Vavic accepted bribes and violated their duty of honest services to USC. And that is true regardless of whether the defendants were aware of the precise details. *See id*. ("That the defendants may not have been aware of the exact arrangement between Singer and Heinel is immaterial at this stage."); *see also United States v. Berroa*, 856 F.3d 141, 154 (1st Cir. 2017) ("The government need not show that . . . the conspirators knew all of the details of the conspiracy or participated in every act in furtherance of the conspiracy."). As this Court has already concluded, evidence of the payments made to corrupt insiders "is relevant to explain the full extent of the conspiracy and to show what happened to the money paid by the parents."[2] Dkt. 1430 at p. 4. This is not evidence of uncharged extrinsic acts, subject to a Rule 404(b) analysis, as Wilson contends. *See* Dkt. 1998-1 at 3. It is "part and parcel of the core events undergirding the crime" for which the defendants were charged. *United States v. Roszkowski*, 700 F.3d 50, 56 (1st Cir. 2012).

---

[2] The defendants contend that the government "has conceded that Defendants were never told, did not know, and did not agree that their funds would be used to line Heinel's pocket." Dkt. 2010 at 1; *see also* Dkt. 1998-1 at 1. That is an overstatement. As the government has previously noted, it has not alleged "that the parents understood Heinel to be personally pocketing money," but rather that they "knew that one or more complicit insiders at USC were facilitating the admission of their children as recruited athletes in exchange for payments to a USC athletic program." Dkt. 1104 at 7. Nevertheless, the evidence at trial will show that some parents at least suspected that not all of their money went to USC. For example, as defendant Marci Palatella confided to a friend: "I don't think most of [the money] went to the school between us only." Ex. 173 at 158. Likewise, during the proactive portion of the government's investigation, Singer was more explicit with parents who had not yet completed the fraud, and told them that it involved paying off coaches. *See* Dkt. 1104 at 8. For example, after Wilson called Singer to inquire about using the "side door" a second time for his twin daughters, Wilson asked, "You just charge, and then you make a donation to the school, and that's it?" Singer responded: "[I]t depends in different ways. So what's happened in the grown-up world of my world now, compared to when, you know, we did [your son], was that essentially now the money goes into my foundation, as a donation . . . . [a]nd then what I can -- what I'll do is I'll split the money potentially to the coach or other parties that are at that school that need the money, right? . . . . Or it may go right to the coach, that's helping us. It just depends on the school." Ex. 571 at 6–7.

Although Singer began funneling Abdelaziz's money through his sham charity to Heinel before he began cooperating with the government, the fact that he continued to do so after he began cooperating does not change this analysis. As the Court has repeatedly noted, "[t]he rule that government agents do not count as co-conspirators has relevance only in situations where the conspiracy involves only one defendant and a government informer." Dkt. 1430 at 7–8 (quoting *United States v. Portela*, 167 F.3d 687, 700 n.8 (1st Cir. 1999)) (internal quotation marks omitted). Here, the defendants and their co-conspirators – including Vavic and Heinel – remained part of the charged conspiracy until they were arrested, throughout the time Singer was passing money on to Heinel and during the time he was making consensually recorded calls to the defendants at the government's direction.

Nor does the fact that some of the payments occurred after the defendants' children were admitted to USC render evidence of those payments irrelevant, as Wilson contends. The defendants are charged with conspiracy. Their membership in that conspiracy is, as a matter of law, presumed to have continued unless and until they affirmatively withdrew from it. *See United States v. Pizarro-Berrios*, 448 F.3d 1, 10 (1st Cir. 2006) (defendant charged with participating in a conspiracy is "presumed to be a continuing member, and is chargeable for the subsequent acts of co-conspirators, so long as the conspiracy was ongoing and [the defendant] did not establish his affirmative withdrawal from the conspiracy"). Here, none of the defendants concedes that they joined the conspiracy, much less that they affirmatively withdrew from it. And, indeed, the evidence at trial will prove that they did not withdraw. Defendant Wilson, for example, reengaged with Singer to secure his twin daughters' admission to Harvard and Stanford as fake athletic recruits shortly before Singer began cooperating with government agents. Moreover, the conspiracy involved, among other things, "concealing the fraud to prevent the scheme from being

4

discovered, including by the Universities[.]" Dkt. 732 at 66(j). Accordingly, actions by the defendants' co-conspirators, even after their children were admitted to USC, remain relevant. Likewise, as this Court has concluded, the question whether the payments were bribes or gratuities, turns on "whether the defendants paid money with the intent to accomplish a corrupt *quid pro quo*." Dkt. 1334 at 26. That "is an issue of fact for the jury" *id*., not a basis to keep relevant evidence from the jury.

Finally, the defendants contend that, even if relevant, evidence of payments to Heinel and Vavic should be excluded pursuant to Rule 403 because it is prejudicial and may confuse the jury. *See* Dkt 2010 at 9. But "all evidence is meant to be prejudicial; it is only unfair prejudice which must be avoided." *United States v. Perrotta*, 289 F.3d 155, 166 (1st Cir. 2002) (emphasis original). As set forth above, evidence concerning the payments to Heinel and Vavic is relevant to establish, *inter alia*, how the conspiracy operated, how the bribe payments were allocated, and how the defendants' co-conspirators breached their duty to USC. In short, the evidence "complete[s] the story of the crime on trial." *United States v. Charles*, 456 F.3d 249, 256 (1st Cir. 2006). Indeed, it is the preclusion of such evidence, not its admission, that would confuse the jury, leaving jurors, for example, with the false impression that Abdelaziz's payment was not, in fact, used as a *quid pro quo* to facilitate his daughter's fraudulent admission to USC, when the reality is that it was used to fund monthly payments to Heinel personally.[3]

---

[3] The government submits that it is premature to consider a limiting instruction concerning any particular item of evidence. Should the Court determine that an instruction is necessary, the government submits that it should follow the First Circuit Pattern Jury Instructions.

## CONLUSION

For the foregoing reasons, the defendants' motions should be denied.

                Respectfully submitted,

                NATHANIEL R. MENDELL
                Acting United States Attorney

                By: */s/ Justin D. O'Connell*
                      JUSTIN D. O'CONNELL
                      KRISTEN A. KEARNEY
                      LESLIE A. WRIGHT
                      STEPHEN E. FRANK
                      IAN J. STEARNS
Date:   August 6, 2021           Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                By: */s/ Justin D. O'Connell*
                      JUSTIN D. O'CONNELL
Date:   August 6, 2021           Assistant United States Attorney