UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 19-cr-10080-NMG |
| ) | |
| GAMAL ABDELAZIZ, et al., ) | |
| ) | |
| Defendants ) | |

**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE POST-DATING RICK SINGER'S COOPERATION WITH THE GOVERNMENT (Dkt. 2011)**

In March 2019, 49 individuals were charged with conspiring to secure the admission of children to prestigious colleges and universities through bribery and fraud.[1] More than two years later, the defendants in this case continue to contend that the conspiracy ended when one of those co-conspirators, William "Rick" Singer, began cooperating with the government and that, as a result, evidence the government gathered during Singer's cooperation should be excluded. Dkt. 2011-1 at 1. Their argument is without merit. As this Court has already concluded, the charged conspiracy did *not* end with Singer's cooperation since "all the defendants and co-conspirators remained a part of the continuing conspiracy after Singer began cooperating with the government." Dkt. 1402 at 7. For that reason, and the reasons set forth below, this motion should be denied.

**ARGUMENT**

"The rule that government agents do not count as co-conspirators has relevance only in situations where the conspiracy involves only one defendant a government informer." *United States v. Portela*, 167 F.3d 687, 700 n.8 (1st Cir. 1999); *see also United States v. Giry*, 818 F.2d

---

[1] Subsequently, an additional five co-conspirators were charged with being part of the same conspiracy and the government notified the defendants of the identifies of over 100 additional unindicted co-conspirators.

120, 126 (1st Cir. 1987) (plurality requirement for conspiracy by participation of two true conspirators, so participation of government agents did not negate existence of conspiracy charge); *United States v. Cordero*, 668 F.2d 32, 43 (1st Cir. 1981) ("The participation of a government agent in a conspiracy does not negate the existence of that conspiracy nor make it any the less a violation of law."). Here, the government charged a conspiracy that included Singer, the remaining defendants, and approximately 150 indicted and unindicted co-conspirators. Each of the defendants, and virtually all of their co-conspirators, remained part of the conspiracy even after Singer began to cooperate.[2] Accordingly, the charged conspiracy survived Singer's cooperation because two or more true conspirators – including, but not limited to, the four defendants in this case, the corrupt university insiders who accepted their bribes, the Singer associates who prepared fraudulent athletic profiles and college applications for the defendants' children, the bookkeeper who issued fraudulent documentation to conceal the purposes of the bribe payments and enable fraudulent tax deductions, and the corrupt test administrator who allowed cheating on standardized tests – continued to be a part of it.[3]

*Portela* is not to the contrary. In that case, which the defendants cite for the proposition that "cooperation with the government in [a] sting operation by the single overlapping co-

---

[2] Three co-conspirators – Rudolph Meredith, Mark Riddell, and John Vandemoer – were also approached by the government prior to the end of the conspiracy. None of these co-conspirators, however, are relevant to the instant motion.

[3] Curiously, the defendants also seek to exclude evidence that *pre*-dates Singer's cooperation, which began after he was approached by federal agents on September 21, 2018. As one example, the defendants seek to exclude a voicemail Singer left for co-conspirator Laura Janke on September 19 concerning "the use of a fake picture for a water polo applicant," calling it "irrelevant post-collaboration evidence . . . that w[as] manufactured to create an improper and false perception of malfeasance among all charged defendants." Dkt. 2011-1 at 4. This makes no sense. The defendants also continue to argue that "[t]he government concocted Singer's post-cooperation conduct and statements by having Singer read government written scripts tailored to try to falsely implicate the Defendants and to taint the innocent pre-cooperation interactions between Singer and the Defendants," even though the Court rejected this claim more than a year ago. *See* Dkt. 1169.

conspirator ended the conspiracy as a matter of law," Dkt. 2011-1 at 2–3, there were only three conspirators: the defendant, the cooperating witness, and a third individual. When the third individual testified "that he did not know that the money dropped off with him was a payment for drug trafficking, only one person" – the defendant – remained. 167 F.3d at 700. Here, as noted, the charged conspiracy had many more members whose participation continued even after Singer's ended.

Moreover, because the defendants remained participants in the conspiracy after Singer began cooperating, their communications with him in furtherance of the conspiracy are admissible as co-conspirator statements (as well as for other reasons, as set forth in the government's response to the defendants' motion for a pre-trial *Petrozziello* proffer). As this Court noted in a different case:

> To establish that a co-conspirator's statement is in furtherance of a conspiracy is relatively easy. A statement is considered "in furtherance" if it "tends to promote one of more objects of the conspiracy." The statement "need not be necessary or even important to the conspiracy, or even made to a co-conspirator, as long as it can be said to advance the goals of the conspiracy in some way."

*United States v. DeNunzio*, 14-cr-10284-NMG, 2015 WL 2226251, at *4 (D. Mass. May 12, 2015) (quoting *United States v. Piper*, 298 F.3d 47, 54 (1st Cir. 2002)). Here, each of the communications identified by the defendants in their motion "involve[d] an exchange of advice and assistance related to, and serve[d] to benefit, the purported conspiracy."[4] *Id*. at *5. For example, shortly before Singer began cooperating, defendant Wilson approached him about pursuing the side-door a second time for his twin daughters, and Wilson continued to actively pursue the scheme

---

[4] Singer's statements on the calls are also admissible to give context to the responsive admissions of the defendants and their co-conspirators. *See DeNunzio*, 2015 WL 2226251, at *4 (citing *United States v. Mubayyid*, 685 F.3d 35, 72 (1st Cir. 2011) and *United States v. Walker*, 434 F.3d 30, 34 (1st Cir. 2006)).

thereafter, including by sending Singer's foundation $1 million to facilitate the bogus recruitment of Wilson's daughters as purported athletes at Harvard and Stanford. *See, e.g.*, Dkt 1066 at 12-14. Likewise, other consensually recorded calls involve defendants Abdelaziz, Kimmel, and Palatella, agreeing to conceal the scheme by lying to the Internal Revenue Service if asked about their purported donations to Singer's charity, and/or to officials of USC if asked about their children's failure to play the sports for which they were recruited. *See id*. at 10.

## CONLUSION

For the foregoing reasons, the defendants' motion should be denied.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By: */s/ Justin D. O'Connell*
JUSTIN D. O'CONNELL
KRISTEN A. KEARNEY
LESLIE A. WRIGHT
STEPHEN E. FRANK
IAN J. STEARNS
Date:   August 6, 2021                              Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

By: */s/ Justin D. O'Connell*
JUSTIN D. O'CONNELL
Date:   August 6, 2021                              Assistant United States Attorney