UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>      v.<br><br>GREGORY COLBURN, et al.,<br><br>              Defendants. | **REDACTED VERSION**<br><br>Case No. 1:19-cr-10080-NMG<br><br>*Leave to file partially under seal granted on Aug. 6, 2021 (ECF No. 2029)* |

**RESPONSE TO THE GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE AND ARGUMENT SEEKING "JURY NULLIFICATION"**

Defendants Gamal Abdelaziz, Elisabeth Kimmel, Marci Palatella, and John Wilson ("Defendants") respectfully respond to the government's motion *in limine* (ECF No. 2009) that purportedly seeks to exclude evidence and argument seeking "jury nullification." The government's motion largely attacks a straw man, and when it does not, it sweeps far too broadly. Defendants do not intend to offer any evidence for the purpose of seeking nullification, so there is nothing to exclude on that basis.

Defendants do intend to offer relevant and admissible evidence about, among other issues, how the admissions process worked at academic institutions like USC and Georgetown, evidence which is essential to defend against core elements of the crimes charged, including intent, materiality and whether there was an alleged breach of fiduciary duty. The government seeks to exclude this evidence (erroneously) on relevance and prejudice grounds in a separate motion. *See* ECF No. 2001. By way of *this* motion, the government *also* seeks to have the Court exclude the same evidence under the pretext of preventing jury nullification. The Court should deny this back-door attempt to prevent the jury from hearing Defendants' defense to the crimes charged in the Indictment. It is not Defendants who seek nullification here, but the government who seeks to

1

intrude upon the jury's constitutional mandate and deny the jury access to critical evidence that would paint a strikingly different picture of college admissions than the counterfactual image the government intends to present as the uncontroverted truth at trial.[1]

## **LEGAL STANDARD**

The Constitution "guarantees criminal defendants the right to present a defense" under the Sixth Amendment's Compulsory Process Clause. *United States v. Molina*, 407 F.3d 511, 524 (1st Cir. 2005) (quoting *United States v. Blum*, 62 F.3d 63, 67 (2d Cir. 1995)). Thus, evidentiary rulings that "exclude[] a potentially viable line of defense" improperly abridge a defendant's Sixth Amendment rights. *Id.* at 523-24. Evidence is relevant—including to advance a potential defense—if it "has any tendency to make a fact more or less probable than it would be without the evidence" and the "fact is of consequence in determining the action." Fed. R. Evid. 401.

Jury nullification, on the other hand, involves the jurors' "raw power to set an accused free for any reason or for no reason," which "has a long and sometimes storied past." *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993). Defendants expect, of course, that the jurors will exercise their duty "to apply the law as given to them by the court" in light of the facts adduced at trial. *Id*. In this vein, evidence and argument relevant to a potential defense does ***not*** ask jurors to exercise their power of nullification but instead asks jurors to find the defendants not guilty based

---

[1] This is no idle speculation on Defendants' part. While the government maintains that "[t]he evidence in this case will show that admissions officials at Georgetown and USC ***were duped*** by three corrupt athletics department officials—Ernst at Georgetown, and Heinel and Vavic at USC—into admitting the defendants' children based on false pretenses," ECF No. 2001 at 7 (emphasis added), evidence *from USC and Georgetown* paints a very different picture. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

on the government's failure to prove the elements of the charged crimes beyond a reasonable doubt.

## ARGUMENT

The government's motion seeks to exclude four categories of evidence and argument: (1) a defendant's health or medical history; (2) the circumstances of a defendant's arrest; (3) potential sentences and collateral consequences stemming from a conviction; and (4) claims of selective prosecution, industry customs or that a practice is customary or widespread. To the extent the government is arguing for the exclusion of *true* jury nullification arguments and evidence in these categories, the Defendants have no intention of presenting such evidence or arguments, and the government attacks a straw man.

But particularly with respect to the final category, the government's motion is a not-so-subtle attempt to deny Defendants their Sixth Amendment right to present a defense to the charged crimes, including through relevant and admissible evidence about the actual college admissions process at USC and Georgetown. The government has moved to exclude such evidence on relevance and prejudice grounds in a separate motion *in limine* (*see* ECF No. 2001), which the Court should deny for the reasons set forth in Defendants' separate opposition. The Court should also reject the government's fallback effort in this motion to prevent Defendants from offering relevant ***defenses*** to the crimes charged under the false premise of preventing "jury nullification." *See, e.g.*, *United States v. Fieger*, No. 07-CR-20414, 2008 U.S. Dist. LEXIS 28240, at *19 (E.D. Mich. Apr. 8, 2008) ("To the extent the Government wishes the Court to issue an unprecedented broad and sweeping prohibition against the mention of all things which are not elements of the offense, the Court declines to do so.").

### A. Defendants Do Not Seek to Raise Arguments or Introduce Evidence in Any of the First Three Categories for the Purpose of Encouraging Jury Nullification.

The government accurately recites that Elisabeth Kimmel moved to dismiss the Indictment based on the government's conduct in arresting her, which caused her significant injury and a stay in the cardiac intensive care unit. *See* ECF Nos. 1878 and 1913. Mrs. Kimmel does not seek to present the circumstances of her arrest at trial, except to the extent relevant to provide context for any alleged statements she or her husband made during her arrest—while Mrs. Kimmel was in serious cardiac shock—that the government may seek to introduce at trial. The government recognizes that the circumstances of arrest, which here are inextricably tied to Mrs. Kimmel's medical condition during her arrest and detention, may bear on "facts related to . . . [the] evidence collected" during the arrest. *See* ECF No. 2009 at 3 (citing *United States v. Laster*, 313 F. App'x 369, 372 (2d Cir. 2009) (detailing how "[t]he district court initially admitted [a medical] record as bearing upon the circumstances in which [the defendant] made a statement at the time of his arrest" and reversed course only after government "represented that it would not introduce the statement")). For at least this reason, it would be premature, at this stage, to exclude evidence of Mrs. Kimmel's arrest for any and all purposes, however limited those purposes may be at trial.

Similarly, Mrs. Kimmel will not seek to present evidence of her health or medical history (or her family members' health and medical circumstances) at trial for impermissible purposes, such as attempting to engender sympathy or encourage jury nullification.[2] Mrs. Kimmel may seek to admit such evidence for limited, relevant purposes that bear on her state of mind during the time of the charged conspiracy and provide context for her testimony (should she choose to testify). As with the circumstances of her arrest, it would be premature at this stage to exclude evidence of her

---

[2] The remaining defendants also will not seek to introduce evidence at trial about the circumstances of their arrest or any medical conditions for impermissible purposes.

4

or members of her family's medical condition for any and all purposes. *See, e.g.*, *United States v. Lepore*, No. 1:15-cr-367, 2016 U.S. Dist. LEXIS 113681, at *15-16 (N.D. Ga. Aug. 25, 2016) (denying without prejudice government's motion *in limine* to exclude evidence of the defendant's "medical conditions and procedures during the alleged conspiracy," where defendant proffered that such evidence could be relevant at trial to show defendant's state of mind or lack of intent).

Defendants also have no present intention of offering evidence about potential sentences or presenting arguments about the "severity of punishment" to the jury, or the fact that the government revealed in prior briefing that it offered Mrs. Kimmel "a potential resolution of this case that would require no incarceration." ECF No. 1900 at 14. Notwithstanding, the government must recognize that there is "no 'absolute prohibition' on exposing the jury to sentencing consequences" if offered for a purpose other than encouraging jury nullification. *United States v. Manzano*, 945 F.3d 616, 630 (2d Cir. 2019) (quoting *Shannon v. United States*, 512 U.S. 573, 588 (1994)). In addition, "not all 'subtle' references to the significance of the jury's decision are covered by the general rule that a defendant may not reference his or her potential punishment." *United States v. Yang*, No. 16-CR-00334, 2019 U.S. Dist. LEXIS 185537, at *16 (N.D. Cal. Oct. 25, 2019); *see id.* (permitting defense to argue, for example, that "this case has serious consequences for the defendant" and "your decision will have consequences for a long time to come"). While Defendants do not intend to make *impermissible* references to potential sentencing consequences at trial, granting the government's motion *carte blanche* risks needlessly prohibiting Defendants from imparting to the jury the significance of the task before them during argument.[3]

---

[3] The government's motion does not seek to preclude Defendants from exploring on cross-examination the biases of any cooperating witnesses who received favorable treatment from the government in exchange for their testimony, including through favorable sentencing recommendations, lesser charges, or grants of immunity. Instead, the motion seeks to preclude only arguments regarding potential sentences and collateral consequences for *Defendants*. Cross-examination of witnesses—especially cooperating witnesses—about their biases is a critical component of Defendants' Sixth Amendment rights. *See Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986) (holding that "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise

### B. Defendants Intend to Use Evidence and Argument About Other Parents and University Admissions Practices for Purposes of Defending Against the Crimes Charged, and Not for Purposes of Seeking Jury Nullification.

Lest there be any doubt, this motion *in limine* illuminates the depths of the government's concern at the prospect of the jury learning about the true college admissions picture, as opposed to the sanitized version which the government seeks to present as the unvarnished truth at trial. Defendants will seek to admit at trial relevant evidence and argument about the college admissions process and practices, including what transpired at USC and Georgetown. Defendants' intended evidentiary presentation on these issues derives directly from their Sixth Amendment right to defend against the crimes charged in the indictment, and aims to demonstrate to the jury that the government cannot prove beyond a reasonable doubt several elements of the crimes charged. As the government recognizes, this evidence includes documents concerning other parents who were not charged as part of the alleged "single" conspiracy (which the government attempts to frame as a phantom "selective prosecution" defense), and evidence concerning admissions practices at USC and Georgetown, the two schools at which the government alleges Defendants engaged in conduct outside of the norm to get their children admitted.

The government's "back-door" arguments about "jury nullification," ECF No. 2009 at 5-6, then, are nothing more than hand-waving. The government has sought exclusion of this evidence in separate motion on relevance and prejudice grounds (*see* ECF No. 2001) (a motion which Defendants oppose in a separate response). If the government truly believed Defendants were offering this evidence for purposes of seeking jury nullification, there would have been no need

---

appropriate cross-examination designed to show a prototypical form of bias on the part of the witness"); *United States v. Williams*, No. 3:13-cr-00764, 2017 U.S. Dist. LEXIS 160102, at \*21 (N.D. Cal. Sep. 28, 2017) ("[D]efendants must be permitted to reference the punishment of cooperating witnesses in order to impeach them."). Wide latitude to conduct cross-examination is essential in this circumstance, for as the First Circuit recognizes, cooperating accomplice testimony should be "'received with suspicion, and with the very greatest care and caution, and ought not to [be] passed upon by the jury under the same rules governing other and apparently credible witnesses.'" *United States v. Brown*, 938 F.2d 1482, 1486 (1st Cir. 1991) (quoting *Crawford v. United States*, 212 U.S. 183, 204 (1909)).

for the government to file a separate, over-length motion to exclude such evidence on relevance and prejudice grounds. Evidence *should* be excluded if it has no probative value whatsoever and serves no purpose other than as a means to seek jury nullification. But by the same token, evidence that *has probative value* under Rule 401 may not be excluded simply because the evidence *could also*, theoretically, be used for the impermissible purpose of arguing for jury nullification. Evidence often has multiple uses, some permissible and some impermissible, and the Court may employ limiting instructions and other tools as necessary during trial to distinguish between the two, but it should *not* keep the evidence from the jury through blanket exclusion pre-trial. *See, e.g.*, *United States v. Hines*, No. 1:12-cr-00204, 2013 U.S. Dist. LEXIS 55001, at *22 (D. Me. Apr. 17, 2013) (denying government's motion *in limine* to preclude certain argument, which government contended "would invite jury nullification," where defendant argued the pertinent "fact [was] relevant to his intent").

The government thus reaches too far when it posits, for example, that evidence showing that "many people lie or exaggerate on college applications would be improper" under any and all circumstances. ECF No. 2009 at 6. Such evidence could be relevant to support, among other propositions, the defendants' good faith belief they were not agreeing to commit a crime, the universities' condonation of certain conduct, and/or the materiality of any alleged misstatements on college applications. The government also reaches too far when it implies that "evidence that a practice is customary or widespread" should not be introduced because its only purpose is to seek jury nullification. ECF No. 2009 at 4. Evidence of custom and practice may be inadmissible if offered as a basis to excuse criminal conduct, but it *is* admissible to challenge the government's case on essential elements of the crimes charged, to attack the credibility of its witnesses, *see United States v. Smith*, 940 F.2d 710, 713 (1st Cir. 1998), and to provide relevant context, *see, e.g.*,

7

*Faigin v. Kelly*, 184 F.3d 67, 81 (1st Cir. 1999) (reciting the "well-settled" principle that "'context' evidence generally is admissible"); *United States v. McKeeve*, 131 F.3d 1, 13 (1st Cir. 1997) (reasoning that "[t]rials are meaty affairs," and "courts should not insist that all taste be extracted from a piece of evidence before a jury can chew on it").

Under no circumstance should a theoretical risk of jury nullification be sufficient to deny Defendants their constitutional right to adduce evidence and present arguments that go to showing that the government has not proven the crimes charged in the Indictment beyond a reasonable doubt. Yet that is precisely what the government asks this Court to do in excluding "documents concerning other parents," "evidence about the actions of other parents in using [purportedly] improper means to secure the admission of their children to college," or "evidence that a practice is customary or widespread" (ECF No. 2009 at 4, 5)—all categories of evidence that, in this case, can and will be relevant and admissible at trial.[4]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny the government's motion *in limine* in relevant part and reject the government's attempt, under the guise of preventing jury nullification, to preclude Defendants from exercising their Sixth Amendment right to present relevant and admissible evidence.

---

[4] *See* Defendants' Opposition to the Government's Motion in Limine [D.E. 2001; Under Seal] to Preclude Irrelevant Evidence Concerning Uncharged Third Parties (ECF No. 2032).

Respectfully submitted,

/s/ Cory S. Flashner
R. Robert Popeo (BBO # 403360)
Mark E. Robinson (BBO # 423080)
Eóin P. Beirne (BBO # 660885)
Cory S. Flashner (BBO # 629205)
MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 348-1605 (telephone)
(617) 542-2241 (fax)
rpopeo@mintz.com
mrobinson@mintz.com
ebeirne@mintz.com
csflashner@mintz.com

*Counsel for Elisabeth Kimmel*


/s/ Brian T. Kelly
Brian T. Kelly (BBO No. 549566)
Joshua C. Sharp (BBO No. 681439)
Lauren M. Maynard (BBO No. 698742)
NIXON PEABODY LLP
53 State Street
Boston, MA 02109
617-345-1000
bkelly@nixonpeabody.com
jsharp@nixonpeabody.com
lmaynard@nixonpeabody.com

*Counsel for Gamal Abdelaziz*


DATED: August 6, 2021

/s/ Michael Kendall
Michael Kendall (BBO # 544866)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com

Andrew E. Tomback (*pro hac vice*)
MCLAUGHLIN & STERN
260 Madison Avenue
New York, NY 10016

*Counsel for John Wilson*


/s/ Michael K. Loucks
Michael K. Loucks (BBO #305520)
SKADDEN, ARPS, SLATE, MEAGHER &
  FLOM LLP
500 Boylston Street
Boston, MA 02116
(617) 573-4800
michael.loucks@skadden.com

Jack P. DiCanio (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER &
  FLOM LLP
525 University Avenue
Palo Alto, CA 94301
(650) 470-4500
jack.dicanio@skadden.com

*Counsel for Defendant Marci Palatella*

**CERTIFICATE OF SERVICE**

I, Cory S. Flashner, counsel for Defendant Elisabeth Kimmel, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF, and paper copies will be sent to those indicated as non-registered participants.

*/s/ Cory S. Flashner*
Cory S. Flashner