UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No.: 19-10080-NMG |
| | ) |
| GAMAL ABDELAZIZ *et al.*, | ) |
| | ) |
| | ) |
| Defendants | ) |

**GOVERNMENT'S OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL IMMUNITY [DKT. 1967]**

The government respectfully submits this response in opposition to the defendants' motion to compel the government to immunize three former employees of the University of Southern California ("USC") athletics department "or else dismiss the case." *See* Dkt. 1967 at 10. The defendants' motion is without merit. The First Circuit and courts in this District have, without exception, rejected similar motions and held that compelling the government to immunize witnesses is reserved for hypothetical scenarios of "extreme prosecutorial misconduct" amounting to "bad faith" suppression of exculpatory evidence. But the testimony the defendants propose to elicit, and for which they seek to compel immunity, is not exculpatory, and the government is not acting in bad faith in declining to immunize the former USC employees. Accordingly, the defendants' motion should be denied.

**I.    APPLICABLE LAW**

The relief the defendants seek is unprecedented in the First Circuit. The defendants do not cite a case, and the government is not aware of one, in which a court in this Circuit ordered the government to immunize a witness. *See, e.g.*, *United States v. Mackey*, 117 F.3d 24, 27-28 (1st Cir. 1997) (holding that government's declination to grant immunity to defense witness was "not within a country mile of a constitutional violation"); *see also United States v. Berroa*, 856 F.3d

141, 159–60 (1st Cir. 2017) (affirming district court's refusal to order government to immunize defense witnesses); *United States v. Castro*, 129 F.3d 226, 232–33 (1st Cir. 1997) (same); *Curtis v. Duval*, 124 F.3d 1, 9–10 (1st Cir. 1997) (same); *United States v. De La Cruz*, 996 F.2d 1307, 1313–14 (1st Cir. 1993) (same); *United States v. Pratt*, 913 F.2d 982, 991 (1st Cir. 1990) (same); *United States v. Angiulo*, 897 F.2d 1169, 1192–93 (1st Cir. 1990) (same); *United States v. Facteau*, No. 15-cr-10076-ADB, 2020 WL 5517573, at *25 (D. Mass. Sept. 14, 2020) (denying motion for acquittal and new trial based on, *inter alia*, argument that government wrongly refused to immunize defense witnesses); *United States v. Chan Hok Shek*, No. 08-cr-10317-DPW, 2010 WL 4694448, at *9–10 (D. Mass. Nov. 10, 2010) (denying motion for defense witness immunity).

This unbroken pattern follows from the fact that Congress granted the discretion to immunize witnesses exclusively to the Executive Branch. *See Mackey*, 117 F.3d at 27 (citing 18 U.S.C. § 6003); *see also Castro*, 129 F.3d at 232 ("[T]he power to direct witness immunity customarily is reserved to the Executive Branch."); *Angiulo*, 897 F.2d at 1191 ("[I]t would pose separation of power problems for courts to assume inherent authority to grant judicial immunity themselves."). The First Circuit has held, however, that in hypothetical cases of "extreme" prosecutorial misconduct, the government's refusal to immunize a defense witness "could" justify a court order compelling the government to grant immunity. *Mackey*, 117 F.3d at 27; *see also Chan Hok Shek*, 2010 WL 4694448, at *9 (compelling defense witness immunity could be appropriate "in very limited circumstances" of "extreme prosecutorial misconduct"). This "constraint" on the government's power to immunize "operates at the margins of the prosecutor's

2

discretion" and "takes on practical significance" only when the government "deliberately aspires to distort the factfinding process." *Castro*, 129 F.3d at 232.[1]

The First Circuit has emphasized that an order compelling the government to immunize a defense witness requires a showing of prosecutorial malfeasance that "go[es] beyond affirmative misconduct," *Mackey*, 117 F.3d at 27, and involves an effort by the government to "deliberately" "hid[e] exculpatory evidence from the jury." *Curtis*, 124 F.3d at 9; *see also Facteau*, 2020 WL 5517573, at *25 (compelling defense witness immunity requires "evidence of bad faith on the part of the Government in choosing not to immunize"). As Judge Woodlock noted in *Chan Hok Shek*, "[i]mmunity under this theory is only available in 'rare' and 'extreme' cases," 2010 WL 4694448, at *9, and the First Circuit has yet to find a "a miscarriage of justice" justifying such an order. *De La Cruz*, 996 F.2d at 1314.

## II. ARGUMENT

Having been advised by counsel for three former USC athletics department employees – Scott Jacobson, Steven Lopes, and Ron Orr – that they intend to assert their Fifth Amendment rights if called to testify at trial, the defendants contend that these witnesses would "offer key exculpatory testimony" and that "the only possible" reason the government would decline to immunize them is to "prevent the jury from hearing" that evidence. Dkt. 1967 at 1. Neither contention is true.

---

[1] There are two additional bases for compelling witness immunity that are not at issue here. The first, the "effective defense theory," is not recognized by the First Circuit. *See, e.g., Castro*, 129 F.3d at 232 (courts "need not dwell" on effective defense argument because "[i]t is not good law in this circuit"). The second is implicated where the government "intimidate[s] or harass[es] potential defense witnesses to discourage them from testifying." *Angiulo*, 897 F.2d at 1192. The defendants do not, because they cannot, contend that it applies in this case.

3

First, the defendants have not satisfied their threshold burden of establishing that the witnesses would provide exculpatory testimony, much less "key exculpatory testimony." In support of their motion, the defendants cherry-pick a few sentences from a seven-page FBI-302 report of Lopes's interview with government agents. Tellingly, they fail to attach the full report as an exhibit to their motion. *See* Ex. A. That report makes clear that – if Lopes were to testify in a manner consistent with what he previously told the government – he would not exculpate the defendants, but would instead *inculpate* them. For example, Lopes told the government the following:

- "If parents were to pay, even through a middleman, to get a student in [to USC] who didn't play a sport, but was marked as a recruited player, it would be a problem. It would be a problem regardless of whether the money went to the program or the coach or a person at the school. Coaches and employees of the school should not be taking money for this purpose." *Id.* at 5–6.

- "Lopes expected coaches to recruit students who would succeed as a student and athletically." *Id.* at 3.

- "For non-scholarship athletes (*i.e.*, walk-ons) the expectation is that the student athlete would be evaluated and will contribute to the team. Every sport has walk-ons. Non-scholarship students are selected to join the team because the coach believes the student is a qualified player." *Id.* at 3–4.

- "There is a need to make sure the information [on athletics sub-committee packets] is accurate in order to evaluate a student. If something was incorrect, it would be a problem." *Id.* at 4.

- "It would be unacceptable if information was manufactured to enhance accolades [on sub-committee packets] because it was not an accurate reflection of the student." *Id.*

- "If a student athlete was being recruited, they were expected to participate on the team . . . ." *Id.*

- "Coaches should not consider the financial position of a family when recruiting students. It is expected that there are no side deals for walk-ons. If there were side deals being made, it would be a problem, because that shouldn't be the reason for a student to come to USC. Many factors are considered, including financial support, but at the end of the day, the student athlete is expected to benefit the program." *Id.*

- "There should not be an agreement between a parent and a coach to recruit a student in exchange for money instead of going through the regular admissions process. . . . It would be a concern if there was an agreement of this kind." *Id.* at 4–5.

- "It would also be a problem, even if money wasn't involved, where a student was dressed up as an athlete who was a non-athlete or not recruitable." *Id.* at 6.

- "If someone traded a gift in exchange for a spot, it would be hidden from the sub-committee and Lopes, and there would be deception involved. Trading gifts for spots should not be happening." *Id.*

- "Raising funds should not be linked to the recruitment process. Coaches should not be hiding activities from admissions." *Id.*

In this case, of course, the defendants are charged with conspiring to engage in exactly the kind of deception that Lopes said was prohibited at USC: making payments, styled as "donations," to induce corrupt athletic department officials to purport to recruit their children as elite athletes on the basis of fabricated athletic credentials. Lopes's interview report thus provides no support for the defendants' motion. *See Pratt*, 913 F.2d at 991 (affirming district court's refusal to order the government to immunize a defense witness where interview report "tended to inculpate" defendant). And since neither the government, nor the defendants, have interviewed Orr and Jacobson, the defendants' contention that their testimony would be exculpatory is purely speculative.

Such speculation also finds no support in the facts of this case. The defendants contend, incorrectly, that "[t]he government's theory in this case is that 'nobody at USC' knew about receiving donations for preferential admissions treatment through athletics," and that USC athletics administrator Donna Heinel "defrauded her superiors by taking donations for USC." Dkt. 1967 at 3, 6. But that is not the government's theory, and the defendants are not charged with making donations in the hope of receiving "preferential admissions treatment." The defendants are charged with fraud. At trial, the government will prove that the defendants – together with Rick Singer and the corrupt athletics department insiders whose complicity they bought –

5

conspired to misrepresent their children's athletic qualifications in order to secure their admission to USC as purported athletic recruits. The fact that Heinel might also have recruited other children fraudulently, and that other senior athletics department officials, like Orr and Jacobson, might have been complicit with her, is hardly exculpatory. It is, at best, evidence that fraudulent behavior within USC's athletics department might have been more extensive than what is alleged in this case. *See Berroa*, 856 F.3d at 160 (affirming denial of motion to compel immunity where "the purported [exculpatory] value of [the witness's] testimony was minimal at best"). Nor is such evidence, in any event, relevant to these defendants, because it is not probative of their knowledge or intent.[2]

Second, the defendants' contention that "the government is attempting to distort the evidence," Dkt. 1967 at 8, by declining to immunize the three former athletics department employees is untrue. Since initiating this prosecution, the government has charged multiple additional cases involving fraud and bribery in the college admissions process, and it has a distinct interest in withholding immunity that would potentially frustrate future investigations and prosecutions, whether in this District or elsewhere. *See, e.g.*, *United States v. Repella*, No. 20-cr-10096-ADB (D. Mass. May 20, 2020); *United States v. Khoury*, No. 20-cr-10177-DJC (D. Mass.

---

[2] The defendants' contention that the testimony would "corroborate [their] statements that they had a good-faith basis for believing Rick Singer when he told them that the practice was legitimate," Dkt. 1967 at 4, is untrue. As noted, Lopes would not testify that falsifying credentials, and trading a recruitment spot for money, was "legitimate," and there is no basis to believe that Jacobson or Orr, if they are truthful, would offer such testimony either. And, in any event, practices of which the defendants were unaware cannot have given them a good-faith basis to believe anything. Moreover, another Session of this Court declined to compel the government to immunize a witness even where the defendant contended that the witness had *direct* knowledge of the defendant's lack of criminal intent, and was the only witness who could provide such testimony. *See, e.g.*, *Chan Hok Shek*, 2010 WL 4694448, at *9 (denying motion to compel immunity where defendant asserted that witness was the "only witness who can contradict [] uncorroborated testimony regarding [the defendant's intent]").

Sept. 1, 2020); *United States v. Brand and Zhao*, No. 20-cr-10306-GAO (D. Mass. Nov. 13, 2020). Courts in this Circuit have repeatedly declined to order the government to immunize witnesses where doing so "might" interfere with future investigations. *See e.g.*, *Mackey*, 117 F.3d at 27 (declining to order government to immunize witness where "although the prosecutor did not know of any pending investigation of [the witness]," immunity "could undermine possible future prosecution"); *Castro*, 129 F.3d at 233 (declining to compel immunity based on "perfectly plausible" justification by government that immunity could "hinder" future investigations). This "concern has been a constant theme in the circuit court opinions" and a "major reason" why First Circuit courts have uniformly denied requests to order the government to immunize witnesses. *See Mackey*, 117 F.3d at 27. Likewise, the First Circuit has refused to "peer behind" the government's investigation-related justifications for declining to grant immunity, *Curtis*, 124 F.3d at 10, because weighing the government's interest in refusing to grant immunity against a defendant's professed need for testimony is "an exercise not well-suited for judicial decision making." *Angiulo*, 897 F.2d at 1191; *see also Mackey*, 117 F.3d at 28 (rejecting defendant's argument that "the government's actual interest in future prosecution of [witness] was pretty limited"); *Chan Hok Shek*, 2010 WL 4694448, at *10 ("I will not attempt such balancing here.").[3]

---

[3] The defendants' suggestion that there is no "possible crime" the government could charge because they "have not located any case—anywhere—where the 'bribe' in an honest services prosecution was a payment to the entity allegedly being defrauded of its employee's honest services," Dkt. 1967 at 9, is puzzling. This Court has previously held that "[e]ven if the victim, in this case the university, ends up profiting as a result of a kickback scheme, there still exists actionable harm 'in the denial of that party's right to the offender's honest services.' . . . That the payments made by defendants eventually went to USC does not thereby preclude such payments from constituting bribes." Dkt. 1334 at 26. Another Session of the Court recently reached the identical conclusion. *See United States v. Ernst, et al.*, No. 19-cr-10081-IT, Dkt. 733 (rejecting motion to dismiss and noting that bribes may include payments to university accounts "that benefited Defendants professionally, where 'the university's admissions office would not have approved such an arrangement'").

Third, the parties have identified more than 20 potential witnesses who are current or former USC employees – ranging from admissions officers to development personnel to coaches. The majority of those witnesses are listed on the defendants' witness list. *See* Dkt. 1924, 1955. The defendants' unsupported assertion that declining to immunize Jacobson, Lopes, and Orr, will "guarantee[]" that the government's evidence will "go unrebutted" is, accordingly, overstated. Dkt. 1967 at 5; *see Berroa*, 856 F.3d at 160 (immunity was not warranted where testimony was "cumulative of" testimony from "other witnesses available"); *De La Cruz*, 996 F.2d at 1313 (same); *Facteau*, 2020 WL 5517573, at *25 (same).

## III.   CONCLUSION

For the foregoing reasons, the Court should deny the defendants' motion to compel immunity.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By: */s/ Ian J. Stearns*
JUSTIN D. O'CONNELL
KRISTEN A. KEARNEY
LESLIE A. WRIGHT
STEPHEN E. FRANK
IAN J. STEARNS
Assistant United States Attorneys

CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: August 6, 2021           */s/ Ian J. Stearns*
                                IAN J. STEARNS