UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA    ) | |
| ) | |
| v.    ) | Criminal No.: 19-10080-NMG |
| ) | |
| GAMAL ABDELAZIZ, *et al.*,    ) | |
| ) | |
| Defendants    ) | |
| ) | |

**GOVERNMENT'S OPPOSITION TO
DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE
PERTAINING TO DEFENDANTS WHO PLED GUILTY [DKT. 1996]**

The government respectfully submits this response in opposition to the defendants' motion to exclude evidence concerning non-testifying defendants who pled guilty in this and related cases. Dkt. 1996. The government has previously advised the defendants that it does not intend to introduce evidence concerning the guilty pleas of other defendants (other than those who will testify at trial as cooperating witnesses). Accordingly, that portion of the defendants' motion should be denied as moot. As set forth below, however, the defendants' motion should be denied to the extent they seek to preclude the government from introducing "out-of-court statements and related evidence *pertaining to*" their co-conspirators simply because they pled guilty. There is no basis for such a sweeping prohibition, which would arbitrarily interfere with the government's ability to prove the nature and scope of the charged conspiracy, and the probative value of such evidence outweighs any risk of undue prejudice.

**Argument**

The government will not rehearse here the reasons why the statements of the defendants' co-conspirators should be provisionally admitted pursuant to Federal Rule of Evidence 801(d)(2)(E), as those arguments are set forth in the government's opposition to the defendants'

motion for a pre-trial *Petrozziello* proffer. *See* Dkt. 2036. In the instant motion, however, the defendants make the remarkable proposition that, even if admissible, such evidence should nonetheless be excluded pursuant to Rule 403 if it relates to co-conspirators who happen to have pled guilty. The defendants cite no precedent, and there is no cogent reason, for such a prohibition.

First, the Court has already concluded that this evidence is relevant to proving the charged conspiracy. As the Court noted, "[e]vidence pertinent to the 'side door' scheme as a whole, Singer's *modus operandi*, his associates, USC admissions practices, etc., are all relevant to the charges against" all the defendants because, "in a conspiracy, 'virtually all the evidence relating to the other conspirators [is] also directly relevant to, and, therefore, independently admissible in, the prosecution's case against" any one of the alleged conspirators. Dkt. 1438 at 7–8 (citing *United States v. Flores-Rivera*, 56 F.3d 319, 325 (1st Cir. 1995)); *see also* Dkt. 1414 at 4 (same). For example, evidence concerning co-conspirators is admissible to show the nature and scope of the charged conspiracy, and how it worked. Thus, the exhibits appended to the defendants' motion are probative of how Singer and his associates used photographs and other information provided by co-conspirator parents to create falsified athletic profiles that were submitted to USC (and other universities) to secure the admission of the conspirators' children as purported athletic recruits.[1]

Likewise, evidence concerning the participants in the conspiracy – including the defendants on trial and others who have pled guilty – is often inextricably intertwined, and the government intends to introduce emails and other evidence referencing multiple co-conspirators

---

[1] The defendants contend that such evidence is of little probative value in demonstrating their individual intent, but that, of course, is not the only purpose of the evidence, and intent is not the only element the government must prove. Indeed, the defendants themselves argue that what Singer told other parents is "evidence of how [he] operated his enterprise." Dkt. 1997 at 8.

in the same communication, as well as evidence concerning the interrelationships among the conspirators, including some who pled guilty. For example, Government Exhibit 329 is an email from Singer to co-conspirator Laura Janke directing Janke to create falsified athletic profiles for students Singer had presented to co-conspirator Donna Heinel at USC, including the children of two defendants – Marci Palatella and Gamal Abdelaziz – and several co-conspirators who have pled guilty: Todd and Diane Blake, Mossimo Giannulli and Lori Loughlin, Jeffery Bizzack, and Devin Sloane. Similarly, Government Exhibit 367 is an email chain between Singer and Janke in which Janke sends Singer an athletic profile for defendant Elisabeth Kimmel's son and asks Singer about photographs to be included in the profiles for one of the Giannullis' daughters and defendant Abdelaziz's daughter. Among other things, this evidence is directly probative of the interdependent nature of the conspiracy – a facet the defendants have separately challenged.

Second, the defendants' contention that such evidence is unduly prejudicial and will be used as proof of "guilt by association" is untrue. Dkt. 1997 at 4.[2] As noted, the government does not intend to present evidence regarding the guilty pleas of non-testifying co-conspirators. At bottom, then, the defendants' concern is that the jury will learn in some other way – such as through media coverage – that other members of the conspiracy about whom evidence is introduced pled

---

[2] The defendants' reliance on *United States v. Dellosantos*, 649 F.3d 109 (1st Cir. 2011), is misplaced. There, the First Circuit concluded that the evidence did not support a finding of a single overarching conspiracy but, rather, two distinct conspiracies. *Id.* at 119–21. It was in the context of that holding that the court spoke to the risk of evidentiary spillover and transference of guilt from participants in one conspiracy to the other. *See id.* at 125. Likewise, in *United States v. Martínez*, 994 F.3d 1 (1st Cir. 2021), the First Circuit found that the risk of transference of guilt from one defendant to a co-defendant charged with distinct offenses, due to spillover prejudice from evidence of a distinct scheme, required severance. *Id.* at 13–16. Neither *Dellosantos* nor *Martínez* have any bearing on the admissibility of evidence relating to members of the *same* conspiracy.

guilty. But to the extent exposure to news stories is a risk, that is a matter more properly addressed in other ways, such as through jury selection and appropriate limiting instructions.[3] It is not grounds for arbitrarily excluding relevant evidence that is probative of the existence, nature, scope, and operation of the conspiracy with which the defendants are charged.

## CONCLUSION

For the reasons set forth above, the defendants' motion should be denied.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By: */s/ Leslie A. Wright*
JUSTIN D. O'CONNELL
KRISTEN A. KEARNEY
LESLIE A. WRIGHT
STEPHEN E. FRANK
IAN J. STEARNS
Assistant United States Attorneys

CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: August 6, 2021                                    */s/ Leslie A. Wright*
                                                         LESLIE A. WRIGHT

---

[3] *See, e.g.*, Dkt. 1438 at 8 ("To the extent that any potential prejudicial spillover may occur, the Court will consider appropriate limiting instructions to the jury.") (citing *United States v. Candelario-Santana*, 834 F.3d 8, 24 (1st Cir. 2016)), for the proposition that "a trial court can safeguard a defendant from potentially prejudicial spillover by delivering jury instructions as to the admissibility of the evidence")) (internal quotation marks omitted); *see also* Dkt. 1414 at 5 (same).