UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GREGORY COLBURN et al.,<br><br>Defendants | No. 1:19-CR-10080-NMG |

# SUPPLEMENTAL OBJECTION TO GOVERNMENT'S JURY INSTRUCTIONS REGARDING THE MEANING OF "BRIBE"

Defendants Gamal Abdelaziz, Marci Palatella, and John Wilson write separately to further object to the government's jury instructions insofar as they state that a bribe can consist of a payment to the entity purportedly defrauded of its employee's honest services. *See, e.g.*, Dkt. 2014 at ECF 35 (stating that a bribe can be a payment to a university account). Although for the purpose of the sufficiency of the indictment the Court previously stated that a "bribe" could be a payment to a university account under the honest services statute and 18 U.S.C. § 666, Defendants respectfully submit that at this stage of the proceedings it would be reversible error for the Court to instruct the jury that a "bribe" itself can be a payment to a victim, even where a fiduciary might realize some psychic or indirect benefit.

Under the government's theory, a *quid pro quo* accompanied by a fiduciary breach and some sort of misrepresentation constitutes a violation of the honest services statute and 18 U.S.C. § 666. But the government's myopic focus on the *quid pro quo* element—which is usually the central factual dispute, especially in public corruption cases—obscures the requirement that the statutes require an actual "bribe" as that term has always been understood.

1

In *Skilling v. United States*, the Supreme Court held that "honest-services fraud does not encompass conduct more wide ranging than the **paradigmatic** cases of bribes and kickbacks," and that "§ 1346 criminalizes *only* the bribe-and-kickback **core** of the pre-McNally case law." 561 U.S. 358, 409-11 (2010) (emphasis added).  The Supreme Court explicitly held that **undisclosed self-dealing is not honest services fraud.** *Id*. at 409-10.  The alleged payment here—a payment to the victim, which might be referred to as "unauthorized fundraising," or even "unauthorized fundraising" accompanied by a breach of a fiduciary duty and a misrepresentation—is simply not a "paradigmatic" case of bribery as required by the Supreme Court.

As further explained below, the government's theory would constitute an unprecedented expansion of federal criminal law.  Aside from this Court's ruling on the Motion to Dismiss and Judge Talwani's ruling on the Motion to Dismiss in the related "coach's case," there has never been a case—anywhere and ever— where a court ruled that a "bribe" could be a payment to a victim.

        I.       The **Skilling** Case Dictates The Correct Jury Instruction

In *Skilling*, the Supreme Court held that "honest-services fraud does not encompass conduct more wide ranging than the **paradigmatic** cases of bribes and kickbacks." 561 U.S. at 411.  The Court held in particular that "undisclosed self-dealing," meaning, "the taking of official action by the employee that furthers his own undisclosed financial interest while purporting to act in the interests of those to whom he owes a fiduciary duty," did not constitute honest-services fraud. *Id*. at 409-10.  In every honest-services fraud prosecution, therefore, the government must prove not only some sort of deception or breach of fiduciary duty, but also the presence of an actual bribe or kickback.  The Supreme Court limited § 1346 to "core" or

"paradigmatic" bribes or kickbacks because any broader reading of the statute would render it unconstitutionally vague.

In doing so, the Court was clear that the honest services scheme need not occasion a pecuniary loss (and might, in fact, occasion a pecuniary gain) to the entity being defrauded. *Id.* at 400. For instance, the Court provided an example of a mayor who "accepted a bribe from a third party in exchange for awarding that party a city contract, yet the contract terms were the same as any that could have been negotiated at arm's length." *Id.* Regardless of whether the city actually ended up *better off* than it would have been without the bribe, the *sine qua non* of the offense—a payment to the mayor rather than the city— (i.e., a bribe) was present and therefore the city was deprived of the mayor's honest services. *Id.*

This case is fundamentally different. Here, the analogous hypothetical is not a mayor awarding a city contract and receiving a personal payment on the side, directing a payment to a relative on the side, or even directing a payment to a favorite charity on the side. In this case, the analogous hypothetical is the mayor awarding a city contract and directing the additional payment *to the city itself* to be used *by the city* for the *city's benefit*. Perhaps, for the sake of argument, as the government contends occurred here, the mayor is awarding the contract to a less qualified contractor as a *quid pro quo* for the contractor's donation to the city's school system to be used for the city's benefit. But whatever this type of arrangement might be called (perhaps "unauthorized fundraising"), this is not a "bribe" or a "kickback" and is certainly not a "paradigmatic" or "core" bribe or kickback as required by *Skilling*. An essential element of the offense—the presence of an actual bribe or kickback—is missing.

Outside of the "Varsity Blues" case, undersigned counsel has not located **any** case where a payment *to the entity being defrauded* constitutes a bribe or kickback. Nor has the government

3

found any case in which a payment *to the entity being defrauded* constitutes a bribe or kickback. The simple explanation for this, of course, is that such a payment is not actually a bribe or kickback.

##      II.     Defendants' Position is Supported by "Private Gain" Case Law

That a payment *to the defrauded entity* cannot be a bribe or kickback is supported by case law requiring a "private gain" for an honest services conviction. An important line of cases held that a "private gain" was an element of honest services fraud. *See, e.g.*, *McNally v. United States,* 483 U.S. 350, 355 (1987) ("[A] public official owes a fiduciary duty to the public, and misuse of his office for private gain is a fraud.") (describing pre-*McNally* case law); *Cf. United States v. Rybicki*, 354 F.3d 124, 127 (2d Cir. 2003) (*en banc*) (holding that it is honest services fraud when an employee "purporting to act for and in the interests of his or her employer (or of the person to whom the duty of loyalty is owed) secretly [acts in] the defendant's own interests *instead*" (emphasis added)). Although "private gain" is no longer an explicit element of honest services fraud, the Seventh Circuit has made clear that this is only so because *Skilling* **narrowed** the statute to criminalize only a subset of actions—namely bribes and kickbacks—that generated private gains. *See United States v. Nayak*, 769 F.3d 978, 981 (7th Cir. 2014) ("Now, only bribery or kickbacks, rather than any private gain whatsoever, can be used to show honest-services fraud." (internal quotation marks omitted)).

The "private gain" requirement was never limited to gains *to the Defendant*. As the court explained in *United States v. Sorich*, although "usually someone up to no good will be out to enrich himself, not others," it is nonetheless honest services fraud when "fraudulent schemers will share the proceeds *with third parties* rather than amongst themselves." 523 F.3d 702, 709 (7th Cir. 2008) (emphasis added). The distinction here, however, is that the institution to which

4

the payments were directed (USC) was in no sense a "third party," but in fact the purported victim of the scheme. And the term "private gain" was never broad enough to encompass a payment *to the victim of the fraud*.[1] As the Seventh Circuit has explained, the "purpose of the private gain requirement—and one that does not depend on who gets the spoils—is to prevent the conviction of individuals who have breached a fiduciary duty to an employer or the public, but have not done so for illegitimate gain." *Id.* at 710.

### III.  "Quid Pro Quo" Payments Are Not Always (Or Even Usually) Bribes

The government's response to all of this has been two-fold. First, the government states that an "illicit quid pro quo," combined with some form of deception, is all that is needed for an honest services fraud conviction. But "quid pro quo" just means "this for that." All commercial transactions are quid pro quos. Handing a store clerk three dollars for a gallon of milk is a quid pro quo. Although the focus of public sector honest services cases is usually on the need to prove a "this for that" exchange, such exchanges are ubiquitous in private industry. **Simply put, a quid pro quo is not the same thing as a bribe. More is required—the "quid" must be given to someone other than the victim.** If a "quid" given to a victim constituted bribery, even in the store clerk example, if the act was accompanied by a breach of fiduciary duty (such as the clerk selling the milk despite being informed that he should hold the stock of new milk until tomorrow) and some sort of "psychic benefit" to the clerk (perhaps he wanted the buyer, his mother, to have the freshest of milk), and the clerk lied to his boss about this transaction, under

---

[1] The weakness of the government's instructions is evident in its own inconsistencies. One of the government's instructions on this topic states "It is not necessary that the payment be made directly to the agent. If the payment was made to a third party or a conduit for the purpose of influencing the agent, that is sufficient to satisfy this element." Dkt. 2014 at ECF 41. The government's statement here is correct, but the government fails to acknowledge that the *victim* in an honest services or 666 case is not a *third party*. *See also id.* at ECF 36 ("It may also include things of value given to a third party for the benefit of the employee or fiduciary at the employee or fiduciary's knowing direction."). Again, a correct statement of the law—but the entity to whom the employee owes a fiduciary duty is not a third party. *See id*. at ECF 35 ("Payments to third parties, *including even employer universities,* may qualify as bribes or kickbacks."). In this context, the university is simply not a third party.

the government's theory the clerk could be convicted of bribery even if he put the three dollars in the cash register.

**Defendants respectfully suggest that an "illicit quid" cannot be a payment *to the entity* which is purportedly being defrauded.** To hold otherwise would create a brand new category of "bribe" that has never been recognized. The Supreme Court has carefully applied the rule of lenity in the context of honest services cases, *Skilling*, 561 U.S. at 410-11, and has warned that the courts must reject the government's "invitation for federal courts to develop a common-law crime of unethical conduct," *Sorich v. United States*, 555 U.S. 1204 (2009) (Scalia, J., dissenting from denial of certiorari). *Cf. United States v. Blagojevich*, 794 F.3d 729, 736 (7th Cir. 2015) (governor engaging in *quid pro quo* of trading senate seat appointment for cabinet position did not commit honest services fraud because the promise of a cabinet position was not an illicit quid).

### IV. A Collateral Benefit to A Fiduciary is Not A Bribe

The government's second response is to focus on the allegation that, even though the payments were directed to the victim's accounts, the payments are nonetheless bribes because the defendants exercised some measure of control over the victim's accounts. But the concept of "control" over the victim's accounts is a red herring. If the *sine qua non* of the offense—the purportedly "corrupt" payment itself—was paid to the victim *and* used for the benefit of the victim, then quite simply there was no bribe. Control, without more, does not mean that an allegedly corrupt employee diverted the money for his or her private gain. During the sentencing of Defendant Bizzack, Judge Woodlock addressed this very issue:

> THE COURT: **That's not a bribe, is it? It's received by USC. Then we've got a faithless employee. That's a different issue from bribery, right?**
>
> [AUSA] KEARNEY: No, Your Honor, because in light of Skilling, there has

6

> to be a bribe or a kickback.
>
> THE COURT: Yes, there does, I agree. And this is a case in search of a bribe or a kickback . . . . So now we're back to this question of what was the bribe that [Heinel] received? Because it has to be to her, **not some account that she controlled**, unless you say it was reasonably foreseeable to [Bizzack] that **she was going to toy with that account.**

*See United States v. Bizzack*, 19-cr-10222-DPW, Dkt. 34, Sentencing Tr. at 15-16. (emphasis added). Similarly, Judge Zobel also expressed hesitation with the government's legal theory against former Stanford sailing coach John Vandemoer during his plea hearing (where the government acknowledged that all of the "bribes" went to the Stanford sailing program rather than Vandemoer personally). She said to the AUSA, "You called them bribes but nothing – I mean *it's not clear to me what makes them a bribe*." *See United States v. Vandemoer*, 19-CR-10079-RWZ, Dkt. 26, Sentencing Tr. at 8 (emphasis added). Defendants respectfully submit that both Judge Woodlock and Judge Zobel are correct in their concerns.[2]

Nor does the fact that a defendant might somehow be *rewarded by the victim* or gain some psychic or other indirect benefit from enriching *the victim* have any bearing on whether the payment at issue is a bribe. As Judge Easterbrook concluded when faced with a similar argument to the government's here:

> It would stretch the ordinary understanding of language, however, to call a public employee's regular compensation, approved through above-board channels, a kind of "private gain." . . . . It is linguistically possible to understand "private gain" as whatever adds to the employee's income or psyche—anything the employee would pay to have, rather than pay to avoid—but the Rule of Lenity counsels us not to read criminal statutes for everything they can be worth. The history of honest-services prosecutions is one in which the "private gain" comes from third parties

---

[2] The government's jury instructions on this topic simply are not reliable. In March 2019, prior to the Rule 11 hearing for defendant Rudy Meredith, Judge Wolf requested draft jury instructions on the elements of the crimes with which Meredith was charged. The government submitted an honest services jury instruction stating that (as summarized by Judge Wolf), "Notably, it may be fraudulent if a person in a fiduciary relationship owing a duty of loyalty to another, such as an employee-employer relationship, fails to disclose information he knows should be disclosed and fails to disclose it with intent to defraud another." Judge Wolf questioned why the government included this statement in its draft jury instructions and told former AUSA Rosen, "I believe that statement is an incorrect statement of the law." *See* Dkt. 41 at 31-33, *United States v. Meredith*, No. 1:19-CR-10075-MLW.

7

>who suborn the employee with side payments, often derived via kickbacks skimmed from a public contract. . . .
>
>The United States has not cited, and we have not found, any appellate decision holding that an increase in official salary, or a psychic benefit such as basking in a superior's approbation (and thinking one's job more secure), is the sort of 'private gain' that makes an act criminal under § 1341 and § 1346. . . . . We now hold that neither an increase in salary for doing what one's superiors deem a good job, nor an addition to one's peace of mind, is a "private benefit' for the purpose of § 1346.

*United States v. Thompson*, 484 F.3d 877, 884 (7th Cir. 2007) (Easterbrook, J.).[3] *See also Blagojevich*, 794 F.3d at 737 (stating that neither an employee's "interest in keeping her job" nor "interest in receiving a salary" is "a form of private benefit for the purpose of federal criminal statutes" (citing *Thompson*)). *Cf. United States v. Brown*, 459 F.3d 509, 522 (5th Cir. 2006) (noting a factual situation where "the only personal benefit or incentive originated with [victim employer] itself—*not from a third party as in the case of bribery or kickbacks*" (emphasis added)).

Another analogy makes this point clear. Consider an art school which is struggling to make ends meet and needs additional funding to maintain its studios. The dean of the art school has admission slots for 100 artists per year. The board tells the dean that all students must be chosen based on merit, but the dean chooses 99 students on merit, and one student because that students' grandmother promised to rebuild the art studios. The dean tells everyone on the board of directors that all 100 students are great artists. Has the dean really conspired to deprive his employer of honest services? The dean is being dishonest and has engaged in a quid pro quo. The dean will look better because the art studios will be rebuilt. He may even receive a promotion. But there is no *bribe* present because the contemplated payment would be made *to the victim for the benefit of the victim*. Under the government's theory, the dean's conduct would

---

[3] Of course, 18 U.S.C. § 666 explicitly states that it does not apply to "bona fide salary [or] wages."

8

be criminal.  Defendants respectfully submit that this is not honest services fraud as cabined by the Supreme Court's decision in *Skilling*.  *Skilling* specifically held that a breach of fiduciary duty—without more—is not honest services fraud.  *See Skilling*, 561 U.S. at 410.  Nor does the alleged deception turn the payment *to the school* into a bribe.  Whatever breach of fiduciary duty or fraud-based theories of liability may exist in this hypothetical, there is no *bribe* for the purposes of federal criminal law.

For the reasons set forth above, Defendants respectfully request that the Court decline to give the government's jury instructions on the meaning of "bribe," insofar as they state that a bribe can consist of a payment to the entity purportedly defrauded of its employee's honest services, and instead give the Defendants' requested instructions.[4]

Dated: August 13, 2021

Respectfully submitted,

GAMAL ABDELAZIZ

By his attorneys,

*/s/ Brian T. Kelly*
Brian T. Kelly (BBO # 549566)
Joshua C. Sharp (BBO # 681439)
Lauren M. Maynard (BBO # 698742)
NIXON PEABODY LLP
53 State Street
Boston, MA 02109
(617) 345-1000
bkelly@nixonpeabody.com
jsharp@nixonpeabody.com
lmaynard@nixonpeabody.com

Robert Sheketoff (BBO # 457340)
One McKinley Square
Boston, MA 02109
617-367-3449

---

[4] The reasoning throughout this memorandum applies both to the honest services statute and 18 U.S.C. § 666, even where only the term "honest services" is used as a shorthand.  Both statutes require a bribe.

9

MARCI PALATELLA

By her attorneys:

*/s/ Michael K. Loucks*
Michael K. Loucks (BBO # 305520)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
500 Boylston Street
Boston, MA 02116
(617) 573-4800
michael.loucks@skadden.com

Jack P. DiCanio (*pro hac vice*)
Emily Reitmeier (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
525 University Avenue
Palo Alto, CA 94301
(650) 470-4500
jack.dicanio@skadden.com
allen.ruby@skadden.com

JOHN WILSON

By his attorneys:

*/s/ Michael Kendall*
Michael Kendall (BBO # 544866)
Lauren M. Papenhausen (BBO # 655527)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
(617) 979-9300
michael.kendall@whitecase.com
lauren.papenhausen@whitecase.com

Andrew E. Tomback (pro hac vice)
MCLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, NY 10016
(212) 448-1100
atomback@mclaughlinstern.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on August 13, 2021, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

*/s/ Joshua C. Sharp*
Joshua C. Sharp