UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.: 19-10080-NMG |
| | ) | |
| GAMAL ABDELAZIZ, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' PROPOSED JURY INSTRUCTIONS [DKT. 2015]**

The government respectfully files this memorandum in opposition to the defendants'
proposed jury instructions. Dkt. 2015. In summary, the defendants' proposed instructions are
internally inconsistent from one defendant to another, flout black-letter law and even the law of
*this case*, eschew well-established pattern instructions, and devolve into prose that more closely
resembles a closing argument than a jury charge. For these reasons, and the reasons set forth below,
the Court should charge the jury based on the government's proposed instructions, which largely
track pattern instructions. *See* Dkt. 2014.[1]

**Response to Proposed Instruction #1 – Duty of the Jury**

The government has no substantive objection to defendants' proposed instruction #1 but
submits that its proposed instruction regarding the duty of the jury is simpler, more
straightforward, and less repetitive. The government respectfully requests that the Court charge
the jury based on the government's proposed instruction, or, alternatively, use any instruction the
Court customarily provides with respect to the duty of the jury.

---

[1] This memorandum is not intended to address the entirety of the defendants' proposed
instructions, but rather the most significant differences from the government's proposed
instructions and pattern instructions.  Accordingly, the government reserves the right to object to
additional portions of defendants' proposed instructions and future proposed instructions.

## Response to Proposed Instruction #2 – Pretrial Publicity

The government does not object to the Court instructing the jury on pretrial publicity, but there is no basis for suggesting that the media coverage of this case has been inaccurate, and it is improperly one-sided to make that suggestion to the jury. The government therefore respectfully requests that the Court decline to include the following phrase of defendants' proposed instruction #2: "because you can have no confidence that those news stories are accurate, either with respect to the facts or the law."

## Response to Proposed Instruction #3 – Conduct of the Jury

The government does not object to the Court charging the jury based on defendants' proposed instruction #3.

## Response to Proposed Instruction #4 – The Nature of the Indictment

The government respectfully requests that the Court charge the jury regarding the nature of the Fourth Superseding Indictment ("FSI") based on its proposed instruction titled "Overview of the Indictment and Charges." The government's proposed instruction provides a more helpful guide to the FSI and the charges contained therein.

To the extent the Court elects to use defendants' proposed instruction #4, the government respectfully requests that the following sentence be excluded, as it is redundant and has the potential to confuse the jury: "Your decision on one charge should not influence your decision on any of the other charges." Further, it is unnecessary and inconsistent with the charging language of the FSI to reference Rick Singer in the description of the conspiracy counts (Counts One through Three). It is likewise improper to limit aiding and abetting to only Singer in describing the substantive fraud and bribery counts charging defendant John Wilson (Counts Six, Eight, Nine, Eleven, and Twelve). In addition, the substantive counts charging Wilson should more closely

track the language in the FSI. For example, the instruction on Count Six should read: "Count Six charges Wilson with committing wire fraud and honest services wire fraud, or aiding and abetting wire fraud and honest services wire fraud, in connection with a $500,000 wire transfer to KWF on or about October 17, 2018," and the instruction on Count Nine should read: "Count Nine charges Wilson with committing wire fraud and honest services wire fraud, or aiding and abetting wire fraud and honest services wire fraud, in connection with a $500,000 wire transfer to KWF on or about December 11, 2018." The relevant language should be the same in describing Counts Eleven and Twelve. Finally, in light of the dismissal of Count Three of the FSI, any reference to that count should be excluded.

### Response to Proposed Instruction #5 – Presumption of Innocence; Proof Beyond a Reasonable Doubt

The government does not generally object to defendants' proposed instruction #5 except insofar as it is needlessly lengthy and repetitive and thus has the potential to confuse the jury. Therefore, the government respectfully requests that the Court give any instruction it customarily provides regarding presumption of innocence and proof beyond a reasonable doubt.

### Response to Proposed Instruction #6 – Defendants Tried Together

The government objects to defendants' proposed instruction #6 on the basis that it is confusing and needlessly repetitive of other instructions – *e.g.*, defendants' proposed instruction #4 ("It is your duty to separately consider the evidence that relates to each charge for each defendant and to return a separate verdict for each one."). It is also inaccurate to state that the defendants "are being tried together because the Government has charged that they acted together in committing the crimes of which they are accused." The government has charged that the defendants are co-conspirators, not that they "acted together."

**Response to Proposed Instruction #7 – Jurors as Fact-Finders; Judge Instructs on the Law**

The government respectfully requests that the Court charge the jury based on the government's proposed instruction regarding the duty of the jury and its separate proposed instruction regarding punishment.

**Response to Proposed Instruction #8 – What Is Evidence; What Is Not Evidence; Inferences**

The government does not object to the Court instructing the jury regarding what is and is not evidence based on defendants' proposed instruction #8. However, the government respectfully requests that the Court use its proposed instruction regarding charts and summaries, which accurately reflects that charts and summaries offered into evidence may be based on documents not in evidence that are admissible. *See United States v. Appolon*, 695 F.3d 44, 61 (1st Cir. 2012) ("a party may summarize the contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court, so long as the summary is accurate, the underlying documents are made available to the other parties, and both the summary and the source materials are admissible") (citing Fed. R. Evid. 1006). The government does not object to the defendants' proposed instruction regarding redactions.

**Response to Proposed Instruction #9 – Kinds of Evidence: Direct and Circumstantial**

The government respectfully requests that the Court charge the jury based on its proposed instruction regarding direct and circumstantial evidence.

**Response to Proposed Instruction #10 – Spoliation**

The government objects to defendants' proposed instruction #10 in the absence of a conclusion by the Court that there is evidence that permits a finding of bad faith destruction and resulting prejudice to one or more of the defendants. *See United States v. Laurent*, 607 F.3d 895,

902 (1st Cir. 2010) (a spoliation instruction "usually makes sense only where the evidence permits a finding of bad faith destruction; ordinarily, *negligent* destruction would not support the logical inference that the evidence was favorable to the defendant") (emphasis in original). *But see id.* at 902–03 (noting that the case law is not uniform in the culpability needed for the instruction and that unusual circumstances might warrant exceptions). *See also United States v. Romo-Chavez*, 681 F.3d 955, 961 (9th Cir. 2012) (to warrant an adverse inference instruction based on destruction of evidence, a defendant must establish "(1) that the evidence was destroyed in bad faith, and (2) that he was prejudiced by its destruction").

There is no evidence in this case that the government engaged in the bad faith destruction of evidence, much less that any defendant has been prejudiced.  (Indeed, the defendants' very next proposed instruction alleges that the government "erred by failing to preserve Rick Singer's text messages" – which is untrue and argumentative, but also inconsistent with the defendants' contention that the government acted in bad faith.)  Accordingly, a spoliation instruction is unwarranted. *See, e.g., United States v. Montoya*, 844 F.3d 63, 69 (1st Cir. 2016) ("Even assuming that the missing call logs and Facebook messages might have contained favorable evidence, an inference of spoliation would still not be justified because the defendant adduced no evidence suggesting that the government neglected to preserve the records in bad faith. The opposite is true: the failure to retain call logs was at most careless[.]"). *See also United States v. Nelson*, 481 F. App'x 40, 42 (3d Cir. 2012) ("where there is no showing that the evidence was destroyed in order to prevent it from being used by the adverse party, a spoliation instruction is improper"); *United States v. Rodriguez*, 821 F. App'x 371, 373 (5th Cir. 2020) ("For a spoliation claim, bad faith generally means destruction for the purpose of hiding *adverse* evidence.") (citation and internal quotation marks omitted) (emphasis in original).

**Response to Proposed Instruction #11 – Failure to Collect Evidence**

The government objects to defendants' proposed instruction #11. The proposed instruction improperly characterizes the evidence, and, aside from a single citation to a civil case, is without any support. The defendants' attempt to present argument through its proposed jury instructions should be rejected.

**Response to Proposed Instruction #12 – Use of Tapes and Transcripts**

The government has no objection to defendants' proposed instruction #12, which is substantially similar to its proposed instruction on tapes and transcripts.

**Response to Proposed Instruction #13 – Stipulations**

The government has no objection to defendants' proposed instruction #13, which is substantially similar to its proposed instruction on stipulations.

**Response to Proposed Instruction #14 – Credibility of Witnesses**

The government respectfully requests that the Court's instructions to the jury regarding the credibility of witnesses more closely track First Circuit Pattern Criminal Jury Instructions 1.06 and 3.06.

**Response to Proposed Instruction #15 – Missing Witness**

The government objects to defendants' proposed instruction #15. The defendants have not identified a witness who meets the threshold requirements for a missing witness instruction. *See United States v. Anderson*, 452 F.3d 66, 81 (1st Cir. 2006) ("As a preliminary requirement to the consideration of a missing witness instruction, a criminal defendant must demonstrate that the uncalled witness is either favorably disposed to testify on behalf of the government by virtue of status or relationship or peculiarly available to the government. Once past that point, the court must consider the explanation (if any) for the witness's absence and whether the witness, if called,

would be likely to provide relevant, non-cumulative testimony.") (internal citations and quotation marks omitted).

Presumably, the defendants seek a missing witness instruction in the event the government does not call Singer to testify at trial. But even if the government elects not to call Singer, the defendants would be unable to make the requisite showing. First, the mere fact that Singer cooperated in the government's investigation does not render him favorably disposed to testify on behalf of the government or peculiarly available to the government. *See United States v. DeLuca*, 137 F.3d 24, 38 (1st Cir. 1998) (cooperation rendered by informants during the government's investigation did not necessarily satisfy the requirements for a missing witness instruction); *United States v. Anderson*, 452 F.3d 66, 81 (1st Cir. 2006) ("[W]e have made clear that the mere fact of cooperation does not make a witness 'favorably disposed' to the government.") (citing *DeLuca,* 137 F.3d at 38).

Second, outside of his cooperation, there is insufficient support for a finding that Singer is favorably disposed to the government. *See United States v. Ramos-Gonzalez*, 775 F.3d 483, 500 (1st Cir. 2015) (district court did not abuse its discretion in refusing to give a missing witness instruction where it was unclear "which side would have benefited more" from police officer witness's testimony because, "[a]lthough [the police officer's] testimony presumably would have favored the prosecution, she would have faced vigorous cross-examination" based on inconsistencies between prior testimony and an FBI 302 report); *Anderson*, 452 F.3d at 81 (district court was justified in finding that witness was not favorably disposed to the government where there were some issues on which the witness would testify favorably and some issues on which he would testify not favorably). While Singer cooperated with the government's investigation, he also obstructed the investigation. Indeed, the defendants seek to introduce Singer's notes accusing the

government of using him to "entrap" certain parent defendants. And the defendants also seek to introduce expert testimony that Singer is a psychopath and a pathological liar. In these circumstances, the defendants cannot possibly meet their burden of demonstrating that a missing witness instruction is even appropriate, much less that the Court should use its discretion to give one.

### Response to Proposed Instruction #16 – Testimony of Law Enforcement Agents and Government Employees

The government objects to defendants' proposed instruction #16. While it is improper to suggest to the jury that law enforcement witnesses or witnesses employed by the federal government are inherently credible, it is unnecessary to separately instruct the jury regarding their credibility, as it should be assessed in the same manner as any other witness's. The government does not object to including the first two sentences and the final sentence of defendants' proposed instruction #16 in the general instruction on credibility of witnesses.

More importantly, there is no basis whatsoever for instructing the jury to take into account – in assessing a law enforcement/federal employee witness's credibility – the manner in which the investigation was conducted, or the standards of the relevant department or agency and whether the witness acted in accordance with them. If the defendants wish to attack the investigation that led to the charges against them, they may endeavor to do so through cross-examination and argument. The same is true of whether the witness has a personal or professional interest in the outcome of the case – the defendants may explore the matter on cross-examination, and make related arguments in closing, but it is not an appropriate jury charge.

### Response to Proposed Instruction #17 – Testimony of Witnesses with Immunity

No witness appearing on either the defendants' or the government's witness list has been granted immunity and there is thus no reason to include defendants' proposed instruction #17.

### **Response to Proposed Instruction #18 – Testimony of Cooperating Witnesses**

The government respectfully requests that the Court charge the jury based on its proposed instruction regarding cooperating witnesses, or, alternatively, give any instruction the Court customarily provides in this regard.

### **Response to Proposed Instruction #19 – Inconsistencies in Witness Testimony**

The government does not generally object to the Court instructing the jury regarding inconsistencies in witnesses' testimony. However, the first sentence of defendants' proposed instruction #19 is unrelated to that instruction and is also needlessly repetitive of other instructions.

### **Response to Proposed Instruction #20 – Defendants' Right Not to Testify**

The government does not object to defendants' proposed instruction #20.

### **Response to Proposed Instruction #21 – Character Evidence**

The government does not object to defendants' proposed instruction #21 but respectfully requests that the Court exclude the final sentence. While that sentence is included in First Circuit Pattern Criminal Jury Instruction 2.19, the government submits that it creates an undue risk of acquittal based on evidence of good character alone. This Court has previously given an instruction on character evidence that does not include the final portion of the pattern instruction. *See United States v. DeNunzio*, Case No. 14-cr-10284-NMG, ECF No. 513, Jury Trial Transcript Vol. XIII, at 13-137 (D. Mass. Apr. 28, 2016) ("[T]wo of the Defendants presented evidence that each of them enjoy a reputation for honesty, truthfulness and integrity in their communities. You should consider any such evidence of good character . . . along with all of the other evidence in the case and give it such weight as you believe it deserves."). The government respectfully requests that, if the Court is to instruct the jury on evidence of good character, it use the same language it has previously used.

**Response to Proposed Instruction #22 – Defense of Good Faith**

The government objects to defendants' proposed instruction #22, as a standalone "good faith" instruction is not warranted. In its proposed instructions, the government included a "good faith" instruction within the general instruction on knowing and willful conduct. *See* Dkt. 2014 at 27. It is well-settled in the First Circuit that no more is required. *See United States v. Camuti*, 78 F.3d 738, 744 (1st Cir. 1996) ("A separate instruction on good faith is not required in this circuit where the court adequately instructs on intent to defraud."); *United States v. Dockray*, 943 F.2d 152, 155 (1st Cir. 1991) ("[W]here the court properly instructs the jury on the element of intent to defraud—essentially the opposite of good faith—a separate instruction on good faith is not required."); *United States v. Berroa*, 856 F.3d 141, 161 (1st Cir. 2017) ("[T]he court told the jury that 'to establish specific intent, the Government must prove that the defendant knowingly did an act which the law forbids, purposely intending to violate the law.' Accordingly, no separate good faith instruction was required."). *See also United States v. Bowling*, 2009 WL 6854970 fn. * (10th Cir. Dec. 23, 2009) (noting that "every one of our sister circuits has come to reject the idea that district courts must give a separate 'good faith' jury instruction in fraud cases"). Accordingly, the government respectfully requests that the Court decline to give a separate "good faith" instruction, and instead include "good faith" language in its instruction on specific intent to defraud.

**Response to Proposed Instruction #23 – Collective Knowledge Doctrine**

The government objects to defendants' proposed instruction #23 because it is inconsistent with the law of honest services fraud and with the conspiracy charges in this case.

First, the defendants' request for an instruction regarding collective knowledge would invalidate honest services fraud as applied to employees of private entities. In *Skilling v. United States*, 561 U.S. 358 (2010), the Supreme Court expressly defined honest services fraud to apply

to agents who accept a bribe in relation to their official duties. 561 U.S. at 400; *see also id*. at 401 (noting that over time court recognized that "'a recreant employee'—public or private—'c[ould] be prosecuted . . . if he breache[d] his allegiance to his employer by accepting bribes or kickbacks in the course of his employment.") (quoting *United States v. McNeive*, 536 F.2d 1245, 1249 (8th Cir. 1976)). The Court further explained that its holding drew on federal statutes prohibiting similar crimes, such as 18 U.S.C. § 666(a)(2). That statute, which is the underlying offense in the conspiracy charged in Count Two, prohibits bribing an agent of an organization "in connection with any business of such organization," again assuming that the agent will act within the scope of his or her agency as the result of having received the bribe. 18 U.S.C. § 666(a)(2). If the concept underlying the defendants' proposed instruction were valid, there could be no honest services fraud in a private corporation because the corporation would be deemed to know what the defrauding employee was doing.[2]

Second, the defendants' instruction respecting collective knowledge of fundraising efforts would incorrectly suggest to the jury that honest services fraud does not encompass actions benefiting an organization. In *Skilling*, however, the Supreme Court recognized that honest services fraud encompasses schemes in which a party is deprived of honest services but nevertheless suffers no loss of property or even gains money or property. 561 U.S. at 400.

---

[2] The cases cited by the defendants in support of their theory are inapposite. Neither *United States v. Bank of New England, N.A.*, 821 F.2d 844 (1st Cir. 1987), nor *United States v. Potter*, 463 F.3d 9 (1st Cir. 2006), nor *United States v. Cincotta*, 689 F.2d 238 (1st Cir. 1982), holds that because a corporation can be liable for the acts of employees it cannot be the victim of employees' crimes. An instruction implying as much would negate the existence of virtually all honest services fraud and most bribery schemes, as it would instruct the jury that employers are, as a matter of law, aware of—and thus unable to be defrauded by—the knowledge of corrupt insiders. The government is aware of no case so holding.

Third, the "knowledge" of a fraud victim is, in any event, irrelevant in a fraud conspiracy, where the relevant issue is not what the victim knew, but what the defendant intended. *Cf. United States v. Brien*, 617 F.2d 299, 311 (1st Cir.) ("If a scheme to defraud has been or is intended to be devised, it makes no difference whether the persons the schemers intended to defraud are gullible or skeptical, dull or bright. These are criminal statutes, not tort concepts. The only issue is whether there is a plan, scheme or artifice intended to defraud.").

Finally, the Court need not give additional instructions on the defendants' intent because the pertinent instruction on the law is already covered in instructions on willfulness and good faith.

**<u>Response to Proposed Instruction #24 – Other Individuals Not Defendants in This Trial</u>**

The government does not object to the Court instructing the jury based on defendants' proposed instruction #24.

**<u>Response to Proposed Instruction #25 – Basic Elements: Conspiracy</u>**

Defendants' proposed instruction #25 does not accurately set forth the basic elements of conspiracy under the law of the First Circuit. The first element the government must prove is that the agreement specified in the FSI, and not some other agreement or agreements, existed between at least two people – not "those people as alleged in the indictment" – to commit the underlying crimes. *See* First Circuit Pattern Criminal Jury Instruction 4.18.1349 (referencing 4.18.371(1)). The defendants cite no support – and there is none – for instructing the jury that this element requires proof that "the Defendant specifically intended and agreed that a member of the conspiracy would commit conduct that actually constituted the underlying crimes alleged."

Further, the First Circuit has not held that a conviction under 18 U.S.C. § 1349 requires an overt act in furtherance of the conspiracy. *See id.*, cmt. 1. There is thus no basis – and the defendants cite none – for suggesting that the government must prove commission of an overt act

as a third element of the conspiracy charged in Count One of the FSI. While the conspiracy charged in Count Two does require an overt act, *see* First Circuit Pattern Criminal Jury Instruction 4.18.371(1), it is misleading to suggest that the basic elements of conspiracy include that element. Accordingly, the government respectfully requests that the Court charge the jury based on its proposed instructions regarding the basic elements of conspiracy, and include the overt act element only where it is actually required – in charging the jury on Count Two.

### <u>Response to Proposed Instruction #26 – Conspiracy – First Element: An Agreement</u>

As stated above, the government respectfully requests that the Court charge the jury based on its proposed instructions regarding the basic elements of conspiracy, as the government's proposed instructions more closely track well-established pattern instructions. With respect to defendants' proposed instruction #26, the government specifically objects to the one-sided nature of the final sentence of the first paragraph and the entirety of the second paragraph. As to when a conspiracy ends, the First Circuit has held that "[a] conspiracy endures as long as the co-conspirators endeavor to attain the 'central criminal purposes'" of the conspiracy." *United States v. Upton*, 559 F.3d 3, 10 (1st Cir. 2009) (quoting *Grunewald v. United States*, 353 U.S. 391, 401 (1957)). There is no basis to instruct the jury about when a conspiracy ends, but if the Court chooses to do so, the government respectfully requests that it use this language from *Upton*.

In addition, if the Court is to instruct the jury that Singer, once he began cooperating with the government, no longer "counted" as a co-conspirator, the Court should further instruct the jury that (1) the FSI alleges an overarching conspiracy which includes Singer, the defendants, and others; (2) the FSI alleges that all defendants and co-conspirators remained a part of the continuing conspiracy after Singer began cooperating with the government; (3) the rule that government agents do not count as co-conspirators has relevance only in situations where the conspiracy

13

involves only one defendant and a government agent; and (4) therefore, Singer's participation as a government agent does not negate the existence of the charged conspiracy nor make it any less a violation of the law. *See* Dkt. 1402 (Court's memorandum and order denying defendants' motion to dismiss for lack of venue) at 7–8 (citing *United States v. Portela*, 167 F.3d 687, 700 n.8 (1st Cir. 1999) and *United States v. Cordero*, 668 F.2d 32, 43 (1st Cir. 1981)).

### Response to Proposed Instruction #27 – Conspiracy – First Element: The Conspiracies Alleged in the Indictment

The government objects to defendants' proposed instruction #27. While it is of course proper to instruct the jury that the government must prove that the agreements specified in the indictment, and not some other agreement or agreements, existed, there is no sound basis for instructing the jury on "an open-ended conspiracy, as opposed to a narrow conspiracy." First Circuit Pattern Criminal Jury Instruction 4.18.371(1), cmt. 5, cited by the defendants in support of their proposed instruction, addresses whether a multiple conspiracy instruction should be provided and, if so, what form it should take. The defendants' proposed multiple conspiracy instruction is addressed below.

First Circuit Pattern Criminal Jury Instruction 4.18.371(1), cmt. 6 discusses the difficulty faced by a trial judge "when the government has charged a multiple-object conspiracy, the evidence is problematic or non-existent as to whether the defendant on trial shared in the knowledge of all the objects of the conspiracy as charged, but there may be proof of a conspiracy with an object narrower than the multiple-object conspiracy charged." That discussion does not provide a basis for instructing the jury on an open-ended conspiracy versus a narrow conspiracy. The proposed language is confusing and unnecessary, as the relevant concept is covered by the government's proposed instructions on the multiple-object conspiracy charged in Count One. *See*

14

Dkt. 2014 at 17–18. Therefore, the government respectfully requests that the Court decline to give this proposed instruction.

### Response to Proposed Instruction #28 – Conspiracy – First Element: Multiple Conspiracies

The government objects to defendants' proposed instruction #28. The evidence presented at trial will show that the defendants participated in a single overarching conspiracy. A multiple conspiracy instruction is therefore unwarranted. *See United States v. Brandon*, 17 F.3d 409, 449 (1st Cir. 1994) (a multiple conspiracy instruction should be provided only if "on the evidence adduced at trial, a reasonable jury could find more than one such illicit agreement, or could find an agreement different from the one charged").

Even if, after the conclusion of the evidence, the Court finds otherwise and elects to give a multiple conspiracy instruction, the defendants' proposed instruction should not serve as a model. There is no basis for instructing the jury on the factors that *courts* consider in evaluating the evidence of a single, as opposed to multiple, conspiracies. Indeed, as set forth in the First Circuit pattern instructions, in *United States v. Bedini*, 861 F.3d 10 (1st Cir. 2017), the First Circuit found the following multiple conspiracy instruction – devoid of any mention of common goal, overlap among participants, or interdependence – "substantively correct":

> That the conspiracy specified in the indictment, and not some other agreement or agreements, existed at or about the time or times specified in the indictment. It is not enough that the government simply prove that some type of conspiracy existed, even one involving some of the same alleged conspirators. The proof, rather, must persuade you that the conspiracy proved is in fact the one alleged in the indictment.

*Id.* at 17–18.  In short, whether a multiple conspiracy instruction is warranted is not a matter to be decided at this stage, and even if the Court ultimately finds that it is, the defendants' proposed instruction is incorrect.

**<u>Response to Proposed Instruction #29 – Conspiracy – Second Element: Willfulness</u>**

The government respectfully requests that the Court give its proposed instruction on willfulness, which more closely tracks pattern instructions than does defendants' proposed instruction #29, or, alternatively, give any instruction the Court customarily provides in this regard. In addition, while the government agrees that the Court should instruct the jury on motive versus knowledge/intent, it is more appropriate to do so in the context of preliminary/general instructions – not in describing the willfulness element of conspiracy. Accordingly, the government respectfully requests that the Court exclude any reference to motive in its instructions on the crimes charged and instead give the government's proposed general instruction on motive.

**<u>Response to Proposed Instruction #30 – Conspiracy – Second Element: Good Faith</u>**

For the reasons stated above, the government objects to a standalone "good faith" instruction and respectfully requests that the Court instead include "good faith" language in its general instructions on specific intent to defraud/knowing and willful conduct.

**<u>Response to Proposed Instruction #31 – Conspiracy – Second Element: Intent</u>**

The government objects to defendants' proposed instruction #31. It is black-letter conspiracy law that the second element the government must prove is that the defendants willfully joined in the charged conspiracy. There is no basis for a separate "intent" instruction in connection with the second element of the crime. Rather, the requirement that the government prove two types of intent should be articulated in instructing the jury on the meaning of "willfully," as it is in the First Circuit pattern instructions, in the government's proposed instructions, and in instructions – cited by the defendants here – previously given by this Court.

In addition, the defendants' second attempt to include a "narrow vs. broad" conspiracy instruction – here, embedded in its proposed instruction on intent – should be rejected for the reasons stated above.

Further, there is no evidentiary or legal basis for instructing the jury in this case that a conspiracy requires more than a single illegal sale, or a mere buyer-seller relationship. The cases cited by the defendants in support of this proposed instruction are drug cases, and the defendants do not – because they cannot – explain why such an instruction is applicable here.

Accordingly, the government respectfully requests that the Court decline to instruct the jury based on defendants' proposed instruction #31 and instead give the standard, pattern instruction on willfulness/specific intent in charging the jury on the second element of conspiracy.

### Response to Proposed Instruction #32 – Conspiracy – Third Element: Overt Act

As noted above, the First Circuit has not held that a conviction under 18 U.S.C. § 1349 requires an overt act in furtherance of the conspiracy. *See* First Circuit Pattern Criminal Jury Instruction 4.18.1349, cmt. 1. It is therefore incorrect as a matter of law to instruct the jury that the government must prove commission of an overt act as a third element of the charged conspiracies. In support of their proposed instruction #32 – included in the section titled "conspiracy generally" – the defendants cite to instructions given by this Court, and to the First Circuit pattern instruction, on conspiracy under 18 U.S.C. § 371, which does require an overt act, without differentiating Section 371 from Section 1349. It is misleading to suggest to the jury that the basic elements of conspiracy include commission of an overt act as an element. Accordingly, the government respectfully requests that the Court decline to reference commission of an overt act in instructing

the jury on conspiracy generally and make clear in its instructions on the crimes charged that proof of an overt act is required to convict on Count Two but not on Count One.

### Response to Proposed Instruction #33 – Count One: Conspiracy to Commit Mail and Wire Fraud: Introduction

The government objects to defendants' proposed instruction #33 insofar as it incorrectly states that there are only two objects of the conspiracy charged in Count One of the FSI. As set forth in the government's overview of the charges, *see* Dkt. 2014 at 14, Count One charges the defendants with conspiracy to commit four underlying crimes: mail fraud, honest services mail fraud, wire fraud, and honest services wire fraud. For this reason, and because the government's proposed overview of Count One is shorter, simpler, and more closely tracks the language of the FSI, the government respectfully requests that the Court instruct the jury based on its proposed instruction. The government further requests that, in doing so, the Court adopt the government's proposed language regarding what the government must prove where, as here, there are multiple charged objects. *See id.* at 17–18, 22.

### Response to Proposed Instruction #34 – Mail and Wire Fraud – Elements

The government objects to the defendants' proposed instructions on mail and wire fraud to the extent they articulate a "three-element" model. The First Circuit pattern instructions on mail and wire fraud clearly set forth four separate elements, as do the government's proposed instructions and the prior instructions given by this Court to which the defendants cite. By restricting the crime to a scheme to obtain money or property, and doing away with the scheme to defraud language, the defendants are improperly attempting to cabin the government's case and limit the paths to conviction.

Further, the defendants' proposed language does not even conform to the cases they cite in support of the three-element model. In *United States v. DiRosa*, 761 F.3d 144 (1st Cir. 2014), the

First Circuit articulated the first element of wire fraud as simply "a scheme to defraud." *Id.* at 150. Similarly, in *United States v. Appolon*, 715 F.3d 362 (1st Cir. 2013), the court stated that the first element of wire fraud is "a scheme or artifice to defraud using false or fraudulent pretenses." *Id.* at 367. Therefore, even under the defendants' proposed model, there is no basis for limiting the crime to a scheme to obtain money or property and eliminating the standard "scheme to defraud" language.

The government therefore respectfully requests that the Court instruct the jury based on its proposed instructions on the elements of mail and wire fraud, which track the pattern instructions. In addition, the government respectfully requests that the Court decline to refer to the objects of the conspiracy charged in Count One as "theories," as such language may confuse the jury and prejudice the government.

### Response to Proposed Instruction #35 – Mail and Wire Fraud – Definitions: "Scheme"

The government has no objection to the defendants' proposed definition of "scheme," which is the same as that included in the government's proposed instructions and the First Circuit pattern instructions.

### Response to Proposed Instruction #36 – Mail and Wire Fraud – Definitions: "Materially False or Fraudulent Pretenses"

The government objects to defendants' proposed instruction #36 to the extent it includes references to materiality in the definition of "false or fraudulent pretenses." Materiality should be defined and explained separately, as it is in the government's proposed instructions and the First Circuit pattern instructions. The defendants' proposed instructions also include a separate

definition of "material" or "materially." To define the two terms separately and also include "materially" in the definition of "false or fraudulent pretenses" is needlessly confusing.

### Response to Proposed Instruction #37 – Mail and Wire Fraud – Definitions: "Material" or "Materially"

The government objects to defendants' proposed instruction #37. Aside from the first sentence, which tracks pattern instructions, the proposed instruction is argumentative and without any legal basis. In support of their proposed instruction that a misstatement cannot be material "[i]f the alleged victim would have made the same decision if it knew the true facts," the defendants cite a single Fifth Circuit case that addresses materiality, not in the context of mail or wire fraud, but under 18 U.S.C. § 1014. *See United States v. Williams*, 12 F.3d 452, 456 (5th Cir. 1994), *abrogated by United States v. Wells*, 519 U.S. 482 (1997) (noting that statutes like Section 1014 – which makes it illegal to make a false, material statement to a federally insured banking institution – are "highly penal" and thus require that the essential element of materiality "be taken seriously"); *see also id.* ("the severe penalties flowing from a conviction for making a false statement require the government 'to make a reasonable showing of the potential effects of the statement'") (citing *United States v. Beer*, 518 F.2d 168, 172 (5th Cir. 1975)).

Similarly, in support of their proposed instruction that if the alleged victim makes a particular decision, or regularly makes similar decisions, despite actual knowledge that certain false statements were made to it, "that is very strong evidence that those statements were not material," the defendants cite to a single False Claims Act case. *See Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989 (2016). There, the Supreme Court – noting that the materiality standard is demanding, as the False Claims Act is not an all-purpose antifraud statute – held that "[w]hat matters is . . . whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision." *Id.* at 2003, 1996. *Cf. United States v.*

*DeNunzio*, Case No. 14-cr-10284-NMG, ECF No. 513, Jury Trial Transcript Vol. XIII, at 13-159 (D. Mass. Apr. 28, 2016) ("The Government does not have to prove that the Defendant knew that the fact was material to the decision-maker.").

In short, defendants' proposed instruction #37 flouts the law applicable here, that to prove materiality under the mail and wire fraud statutes, "the government need only show that the false statement had a natural tendency to influence, or was capable of influencing its target's decision." *United States v. Cadden*, 965 F.3d 1, 12 (1st Cir. 2020) (citation and internal quotation marks omitted). *See also United States v. DeNunzio*, No. CR 14-10284-NMG, 2015 WL 5305226, at *6 (D. Mass. Sept. 9, 2015) ("Materiality is determined by analyzing whether a statement was capable of influencing a decision, not whether it did, in fact, influence a decision."). Accordingly, the government respectfully requests that the Court instruct the jury based on its proposed instruction on materiality, which accurately reflects this well-settled law.

### Response to Proposed Instruction #38 – Mail and Wire Fraud – Definitions: "Knowingly" and "Willfully"

The government does not object to the defendants' proposed definition of "knowingly," which tracks the definition in the First Circuit pattern instructions and in the government's proposed instructions. However, the government respectfully requests that, in defining "knowingly," the Court instruct the jury on willful blindness, as set forth in the government's proposed instructions.

The government objects to the defendants' proposed definition of "willfully" insofar as it substitutes "knowingly and purposely" for "voluntarily and intentionally," which is contrary to the definition set forth in the First Circuit pattern instructions. In addition, the government respectfully requests that, in defining "willfully," the Court instruct the jury on reckless disregard/indifference, as set forth in the government's proposed instructions. Finally, the government requests that the

Court explain to the jury that intent and knowledge ordinarily cannot be proven directly and that the jury may therefore rely on circumstantial evidence and inferences.

### Response to Proposed Instruction #39 – Mail and Wire Fraud – Definitions: "Intent to Defraud"

The government does not object to the substance of the defendants' proposed definition of "intent to defraud," but to include it as a separate instruction is needlessly repetitive of the instructions on "knowingly" and "willfully." In addition, as noted above, the government does not object to the inclusion of a "good faith" instruction within the general instruction on knowing and willful conduct. However, the defendants' proposed instruction on good faith is pure argument. Citing to Judge Kelley's statements during a sealed hearing, the defendants ask this Court to present their defense to the jury through its instructions on applicable law. Judge Kelley's remarks that certain evidence may be relevant to, or supportive of, a good faith defense do not justify the defendants' request that the Court instruct the jury regarding the factual question of what constitutes good faith in this case. Accordingly, the government respectfully requests that the Court provide the standard good faith instruction set forth in the government's proposed instructions, or, alternatively, use any instruction the Court customarily provides in this regard.

### Response to Proposed Instruction #40 and Proposed Instruction #41 – Mail and Wire Fraud – Definitions: "Property": Admission to the Universities and Standardized Test Scores

Defendants' proposed instructions #40 and #41 are nothing more than an attempt to relitigate legal questions that have already been decided by this Court. Indeed, the defendants request that the Court directly contradict its prior holding and instruct the jury that admission to a university does not constitute property for purposes of the mail and wire fraud statutes. That is absurd. The Court clearly held, in denying the defendants' motions to dismiss, that "the definition of 'property' extends readily to encompass admission slots" and that such slots are "property

interests owned by the university cognizable under the mail and wire fraud statutes." Dkt. 1334 at 17. The Court likewise held that "ACT and SAT examinations and score reports are cognizable property." *Id.* at 21. *See also id.* at 22 ("a testing company has a cognizable property right in its test and accurate test scores"). With the exception of Wilson, the defendants recognize the Court's ruling. They nevertheless request that the Court reverse course in its instructions to the jury. Alternatively, they request that the Court allow the jury to determine whether admissions slots and standardized test scores constitute property. That request is equally absurd. To call a legal question that the Court has already answered a mixed question of law and fact does not make it so. The government respectfully requests that the Court reject these proposed instructions in their entirety and instruct the jury that the property at issue in this case is admission to the Universities, *i.e.*, admission slots, and standardized tests and test scores.

### Response to Proposed Instruction #42 – Conspiracy to Commit Honest Services Mail and Wire Fraud: Introduction

The government objects to defendants' proposed instruction #42. As an initial matter, the first two paragraphs of the instruction are confusing and repetitive of other instructions. The government's proposed instruction on honest services fraud accurately describes the honest services fraud statute and its interplay with the mail and wire fraud statutes.

More importantly, the government objects to the defendants' articulation of the elements of honest services fraud. The defendants do not – because they cannot – cite any support for their six-element model. Instead, they have cobbled together elements and legal definitions from various cases and other circuits' pattern instructions. The government's proposed instruction correctly states that under Section 1346, a "scheme to defraud" as set forth in the mail and wire fraud statutes includes a scheme to deprive another of the intangible right of honest services, and then sets forth

the requisite elements. Accordingly, the government respectfully requests that the Court instruct the jury on honest services fraud based on the government's proposed instruction.

### Response to Proposed Instruction #43 – Honest Services Mail and Wire Fraud – First Element (Fiduciary Duty): University Employees

The government objects to defendants' proposed instruction #43 to the extent it contends that employees do not owe a fiduciary duty to their employers. "As the Supreme Court noted, the existence of a fiduciary relationship between employer and employee is 'beyond dispute.'" Dkt. 1334 at 23 (citing *Skilling v. United States*, 561 U.S. 358, 407 n.41 (2010)). Here, the relevant co-conspirators were employees of the universities and therefore owed the universities a fiduciary duty. The jury should be instructed accordingly.[3]

In addition, the government respectfully requests that the Court decline to instruct the jury that "the government must prove beyond a reasonable doubt that the university employees at issue here owed a fiduciary duty to their employer." The government has to make no such showing to prove that the defendants *conspired* to commit honest services fraud and, with respect to

---

[3] The defendants' proposed instruction incorrectly assumes that state law governs the existence of a fiduciary relationship under the honest services statute. Contrarily, the Supreme Court's opinion in *Skilling* suggests that federal, not state, standards govern honest services fraud prosecutions, *see* 561 U.S. at 411–12 (stating that the Court's construction of the statute "establish[ed] a uniform national standard," and emphasizing that the statute draws its content from pre-*McNally* cases, *see, e.g., United States v. Mandel*, 591 F.2d 1347, 1361 (4th Cir. 1979) (collecting cases), as well as from other federal statutes defining bribes and kickbacks), and a majority of courts of appeals, including the First Circuit, have so held, *see, e.g.*, *United States v. Sawyer*, 85 F.3d 713, 726 (1st Cir. 1996) ("[P]roof of a state law violation is not required for conviction of honest services fraud."); *United States v. Sawyer*, 239 F.3d 31, 41–42 (1st Cir. 2001) (reaffirming that "establishing honest services mail fraud under §1341 does not require proof of a violation of any state law" and collecting cases); *United States v. Weyhrauch*, 548 F.3d 1237, 1244 (9th Cir. 2008) (collecting cases and noting that "[t]he majority of circuits . . . have held that the meaning of 'honest services' is governed by a uniform federal standard inherent in §1346"), *vacated and remanded on other grounds*, 561 U.S. 476 (2010). The Fifth Circuit alone requires that state law be the source of the fiduciary duty allegedly breached. *See United States v. Brumley*, 116 F.3d 728, 734 (5th Cir. 1997) (*en banc*).

substantive counts, what matters is the defendant's *intent* to participate in a scheme to defraud the relevant entity of its right to the honest services of its employee/contractor, and therefore the defendant's *belief* that a fiduciary relationship existed is sufficient.[4]

### Response to Proposed Instruction #44 – Honest Services Mail and Wire Fraud – First Element (Fiduciary Duty): Test Proctor

The government objects to defendants' proposed instruction #44 to the extent it claims that "[i]n the ordinary or typical business relationship, an independent contractor does not owe a fiduciary duty for the services that independent contractor performs." As this Court has already determined, "a fiduciary duty may also arise under certain circumstances in the context of an independent contractor relationship." Dkt. 1334 at 23. That is because the law is clear that Section 1346 applies equally to "an officer or employee of a private entity . . . [and] a person in a relationship that gives rise to a duty of loyalty comparable to that owed by employees to employers." *United States v. Rybicki*, 354 F.3d 124, 127, 141–42 & n.17 (2d Cir. 2003). The existence of a fiduciary duty turns not on labels but on whether the relationship is a "trusting [one] in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance which it would ordinarily exercise." *United States v. Milovanovic*, 678 F.3d 713, 724 (9th Cir. 2012); *see also id.* at 725 ("We see no reason why [defendants] should be treated differently [from employees] simply because the terms of their contracts label them independent contractors."). The jury should be instructed accordingly.

---

[4] For this same reason, the jury should not be instructed that "the government must prove, beyond a reasonable doubt, that the standardized test proctor owed a fiduciary duty to the College Board," as requested in defendants' proposed instruction #45.

**Response to Proposed Instruction #45 – Honest Services Mail and Wire Fraud – Second Element (Intent)**

The government objects to defendants' proposed instruction #45 because it is repetitive and argumentative. It is unnecessary to provide another, separate instruction on intent in explaining the elements of honest services fraud, and to do so would confuse the jury. Moreover, the defendants' proposed instruction reflects another attempt to present their arguments to the jury through the Court's instructions on applicable law. *See* Dkt. 2015 at 55 ("If you find that the Defendant intended his or her actions to advance the interests of the fiduciary's employer, as such interests were communicated to the fiduciary, then the Defendant did not intend to cause loss of honest services.").

Further, the defendants' effort to insert yet another good faith instruction – and to present arguments they believe support a good faith defense through that instruction – should be rejected. The defendants are free to present evidence regarding where they believed their money was going and what they believed with respect to the universities' knowledge of their payments, just as they are free to argue that such beliefs negate any intent to defraud. But they may not do so through jury instructions. The government therefore respectfully requests that the Court reject this proposed instruction in its entirety.

**Response to Proposed Instruction #46 – Honest Services Mail and Wire Fraud – Third Element (Bribes and Kickbacks)**

The government objects to defendants' proposed instruction #46. First, the defendants' definition of a bribe or kickback as anything of value that is provided *personally* to an employee or contractor in exchange for his or her action is incorrect as a matter of law. Indeed, as this Court has held, "[t]hat the payments made by defendants eventually went to USC does not thereby preclude such payments from constituting bribes." Dkt. 1334 at 26 (citing *United States v.*

*DeMizio*, 741 F.3d 373, 381 (2d Cir. 2014), where the court rejected the defendant's argument that kickbacks do not include payments made to entities other than the employee, reasoning that "[a]lthough the kickback amount frequently is paid directly to the employee . . . the scheme is no less a kickback scheme when the employee directs the third party to share its profits with an entity designated by the employee in which the employee has an interest").

The defendants' "four caveats to the definition of bribe and kickback" are likewise without merit. These "caveats" recycle legal arguments – not proposed jury instructions – that this Court has already rejected.  First, the defendants' contention that "a payment to the entity allegedly being defrauded . . . to be used for the benefit of that entity, is not a bribe or kickback" is incorrect and directly at odds with the law of this case. As noted above, this Court has already established that the fact that the defendants' payments went to USC does not preclude them from being bribes. As the Court explained, "[p]ayments made to accounts controlled by university insiders, even if such payments were ultimately received by the universities, may still constitute a benefit to those insiders who exercise control over the accounts." Dkt. 1334 at 27. *See also United States v. Ernst*, No. 19-10081-IT (D. Mass. July 28, 2021), Dkt. 733 at 3 ("The requirement that the government prove a 'private payment' or 'private gain' does not foreclose . . . a scenario where the Defendant agreed to have bribes paid to university accounts so long as the government proves that the defendant entered into a corrupt or illegitimate agreement to receive something 'of value' where 'a thing of value is defined broadly to include the value which the defendant subjectively attaches to the items received.").

The defendants' second "caveat" has likewise been rejected by this Court. *See* Dkt. 1334 at 26–27 ("The FSI alleges that the payments were made to designated accounts that were either controlled by the corrupt insiders or *that otherwise inured to their benefit professionally*. Those

payments, therefore, represent a 'thing of value' to those insiders, even if the payments were not deposited directly into personal accounts.") (emphasis added); *see also United States v. Renzi*, 769 F.3d 731, 744 (9th Cir. 2014) (a "thing of value is defined broadly to include the value which the defendant subjectively attaches to the items received").

Third, the defendants' proposed gratuity instruction – that "a payment made to reward someone for prior action, such as a gratuity, is not a bribe" – is incorrect, as, "[t]he core difference between a bribe and a gratuity is not the time the illegal payment is made, but the *quid pro quo*, or the agreement to exchange a thing of value for [] action."). *United States v. Fernandez*, 722 F.3d 1, 19 (1st Cir. 2013); *see also* Dkt. 1334 at 28 ("the relevant question [in discerning the difference between a gratuity and a bribe] is the 'timing of the *agreement to make or receive a payment*'") (quoting *Fernandez*, 722 F.3d at 19) (emphasis in *Fernandez*). Here, the relevant agreements were the agreements between Singer and the defendants to effectuate the side-door scheme, and the evidence will show that the defendants agreed to make payments as part of that *quid pro quo*. Accordingly, no gratuity instruction is warranted.

Finally, for reasons discussed elsewhere in these objections, including for the same reasons underlying the objections to proposed instruction #52, the Court should not give a "condonation" or "tacit approval" instruction.

### Response to Proposed Instruction #47 – Honest Services Fraud – Definition: "Official Act"

The government objects to the defendants' instruction regarding the definition of an "official act" based on the vagueness of terms such as "fiduciary's capacity" or "fiduciary's place of trust" and the awkwardness of the explication in the instruction given the facts in this case. The government recognizes that the defendants' instruction is a close paraphrase of the definition of "official act" in *McDonnell v. United States*, 136 S. Ct. 2355, 2371–72 (2016), and has no objection

to the substance. The government would not object to a comparable, but plainer paraphrase, such as the following:

I have used the term "official act" in these instructions regarding honest services fraud.

An official act is a decision or action on a matter which may at any time be pending before any employee within the scope of his or her duties or similarly before another employee in the same organization. The matter must be specific and focused and involve a formal exercise of the organization's power akin to awarding a contract, or in the context of this case, admitting a student to a university.

To qualify as an official act, the employee must make a decision or take an action on that matter or agree to do so. That decision or action may include using his or her official position to exert pressure on another employee to perform an "official act," or to advise another employee, knowing or intending that such advice will form the basis for an "official act" by another employee.[5]

### Response to Proposed Instruction #48 – Honest Services Mail and Wire Fraud – Fourth Element (Misrepresentation)

The government respectfully submits that there is no need to provide another, separate instruction on the meaning of "material misrepresentation" in explaining the elements of honest services fraud. To do so would be needlessly repetitive and confusing. Further, for the reasons stated in its response to defendants' proposed instruction #37, the government objects to the defendants' definition of materiality.

### Response to Proposed Instructions #49 – Honest Services Mail and Wire Fraud – Firth Element (Foreseeable Harm)

The government objects to the defendants' various instructions on foreseeable harm because they misstate the law after *Skilling v. United States*, 561 U.S. 358 (2010). In *Skilling*, the Supreme Court explicitly recognized 18 U.S.C. § 1346's "application to state and local corruption and to private sector fraud" and explained that overlap with other federal statutes did not render the statute superfluous. 561 U.S. at 413 n.45.

---

[5] Based on *McDonnell v. United States*, 136 S. Ct. 2355, 2372 (2016).

The defendants incorrectly import a pre-*Skilling* theory that in the private sector context, deprivation of the intangible right of honest services requires foreseeable tangible harm. Nothing in the statute supports that additional requirement. As the Seventh Circuit has explained, "[I]t is contradictory to require the government to show actual or intended tangible harm when the crime being prosecuted is defined as causing or intending to cause intangible harm. [Such a] proposed construction would not only be contrary to the plain language of the statute but would also mean that § 1346 is superfluous, as fraudulent schemes causing tangible harm are covered under § 1341." *United States v. Nayak*, 769 F.3d 978, 982 (7th Cir. 2014).

Moreover, First Circuit case law has long recognized that a scheme to defraud may contemplate "either some 'articulable harm' befalling the fraud victim or 'some gainful use' of the object of the fraudulent scheme by the perpetrator, regardless of whether this use is profitable in the economic sense." *United States v. Rosen*, 130 F.3d 5, 9 (1st Cir. 1997) (quoting *United States v. Czubinski*, 106 F.3d 1069, 1074–75 (1st Cir. 1997)). In *Skilling*, the Supreme Court agreed, citing as core honest services fraud cases in which "[w]hile the offender profited, the betrayed party suffered no deprivation of money or property; instead, a third party, who had not been deceived, provided the enrichment," and the Court recognized that honest services fraud reached bribery schemes that "occasioned a money or property gain for the betrayed party," because "actionable harm lay in the denial of that party's right to the offender's 'honest services.'" 561 U.S. at 363.

The defendants' proposed instruction would thus import into honest services law a requirement that *Skilling* renders superfluous. Put another way, *Skilling*'s requirement of a bribe or a kickback bakes gain to an offender into a scheme to defraud an entity of the intangible right of honest services.

**Response to Proposed Instructions #50 – Sixth Element (Use of Mail or Wires)**

The government respectfully submits that there is no need to provide another, separate instruction on the use of mail or wires in the context of honest services fraud, as the Court will already have instructed the jury on this in explaining the elements of mail and wire fraud.

**Response to Proposed Instruction #51 – Conspiracy to Commit Federal Programs Bribery: Introduction**

The government objects to the language, "Similarly, Count Two does not apply to the potential admission of Mr. Wilson's daughters to Stanford University and Harvard University." The government respectfully submits that referring to the indictment – and the conspiracy charged in Count Two of the indictment – is sufficient, and instructing the jury on every aspect of the case that is *not* part of a specific count will lead to confusion of the issues and waste the Court's resources. The government objects to the defendants' proposed instruction, "Since Count Two requires you to prove that each Defendant agreed to the commission of conduct that actually constituted the underlying crime of federal programs bribery . . ." because it suggests that the predicate crime needs to be committed in order for the conspiracy charged in Count Two to be proven. The government respectfully submits that the language from the First Circuit pattern instructions – and the language submitted by the government – is more appropriate. *See* First Circuit Pattern Criminal Jury Instruction 4.18.371 ("The government does not have to prove that the conspiracy succeeded or was achieved. The crime of conspiracy is complete upon the agreement to commit the underlying crime and the commission of one overt act."). The government also objects to the defendants' proposed instruction insofar as it suggests that "you" – the jury – must "prove" anything.

The government further objects to the defendants' proposed instruction that, to find federal programs bribery, the government must prove that "the person gives, offers, or agrees to give a

31

thing of value to another person *that constitutes a bribe*." Neither set of model jury instructions cited by the defendants – from the Eighth and Eleventh Circuits – includes language in the elements of the charge specifying that the "thing of value" given must "constitute[] a bribe," and the government is not aware of any pattern instructions that contain such language in reciting the elements of federal programs bribery.[6] In fact, the defendants cite the wrong model instructions from those Circuits: the indictment alleges a conspiracy to violate 18 U.S.C. § 666(a)(2), *see* FSI ¶ 372, whereas the defendants cite model instructions for 18 U.S.C. §§ 666(A)(1)(A), 666(a)(1)(B).[7] The government respectfully submits that the pattern instructions for 18 U.S.C. § 666(a)(2) relied on to support its proposed instruction are more appropriate. *See* Dkt. 2014 at 36–40.[8]

The government also objects to the final "few caveats" of the defendants' proposed instruction (i) because they are duplicative of the Court's instruction that the defendant must act "corruptly," (ii) because they misstate the law, and (iii) because they rely on a case from the District of Puerto Rico that has been reversed by the First Circuit. *See United States v. Bravo-Fernandez*, No. 10-cr-00232-FAB (D.P.R.); *United States v. Bravo-Fernandez*, 913 F.3d 244 (1st Cir. 2019) (reversing convictions because the government did not prove that the defendant was an agent of an entity that received at least $10,000 in federal benefits). For example, and as described more fully below in the objections to proposed instruction #54, federal programs bribery under 18 U.S.C. § 666 does not require an "official act." Indeed, every Circuit Court of Appeals to address

---

[6] Eighth Circuit Model Instructions, § 6.18.666C; Eleventh Circuit Model Instructions, § O24.3.

[7] *See, e.g.*, Eighth Circuit Model Instructions, § 6.18.666A ("Theft Concerning a Program Receiving Federal Funds"); Eleventh Circuit Model Instructions, § O24.2.

[8] *See* L. Sand et al., Modern Federal Jury Instructions: Criminal, Instr. 27A.03 (2021); Third Circuit Model Criminal Jury Instructions, § 6.18.666A2.

the issue since the Supreme Court's decision in *McDonnell v. United States*, 136 S. Ct. 2355 (2016)

– which held that the federal bribery statute 18 U.S.C. § 201 requires proof of an "official act" –

has held that federal programs bribery under 18 U.S.C. § 666 does not require an "official act."

*See, e.g.*, *United States v. Roberson*, 998 F.3d 1237, 1247 (11th Cir. 2021) ("Consistent with the

views of our sister Circuits, we hold that *McDonnell* [does not extend to § 666]").

### Response to Proposed Instruction #52 – Definitions: "Corrupt Intent"

The government objects to the defendants' multi-paragraph definition of "corrupt intent"

because it is confusing, duplicative, and relies on precedent that has either been reversed[9] or

discusses different portions of the federal programs bribery statute than are at issue in this case.[10]

The government specifically objects to the instruction that "corruptly means that the Defendant

understood that he or she was engaging in unlawful bribery." That language is not found in any

Circuit's model jury instructions, and the pattern instructions proposed by the government

succinctly and correctly describe corrupt intent: "To act corruptly means simply to act voluntarily

and intentionally with an improper motive or purpose to influence or reward the recipient's actions.

This involves conscious wrongdoing, or as it has sometimes been expressed, a bad or evil state of

mind."[11] Indeed, even the model instructions from other Circuits that are cited by the defendants

elsewhere in their proposed instructions do not contain the definition of "corrupt" that they

request.[12] And although the defendants' proposed instructions purport to rely on Seventh Circuit

---

[9] *See United States v. Bravo-Fernandez*, Case No. 10-cr-00232-FAB-1, *rev'd United States v. Bravo-Fernandez*, 913 F.3d 244 (1st Cir. 2019).

[10] *United States v. Blagojevich*, 794 F.3d 729 (7th Cir. 2015) (discussing 18 U.S.C. § 666(a)(1)(B), and affirming and vacating in part).

[11] *See* L. Sand et al., Modern Federal Jury Instructions: Criminal, Instr. 27A.03 (2021); Third Circuit Model Criminal Jury Instructions, § 6.18.666A2-2; *see also United States v. Bonito*, 57 F.3d 167, 171 (2d Cir. 1995).

[12] *See* Eleventh Circuit Model Instructions, § O24.3 ("To act 'corruptly' means to act voluntarily, deliberately, and dishonestly to either accomplish an unlawful end or result or to use

law, even Seventh Circuit model jury instructions explain that "[i]t is not necessary that this instruction contain the word 'bribe' or 'bribery,'" and the Seventh Circuit's model instruction does not contain the definition of corruptly that the defendants seek: "A person acts corruptly when that person acts with the intent that something of value is given or offered to reward or influence an agent of an organization in connection with the agent's organizational [or official] duties."[13]

The government objects to the defendants' proposed good faith instruction, not only for the reasons discussed elsewhere in these objections, *see supra* response to proposed instruction #22,[14] but also because it has been rejected by the defendants' own authorities:

> It is enough for the instruction to cover the mental elements required by each statute. That a given defendant wants to apply the phrase "good faith" to the lack of essential knowledge or intent does not imply the need for a separate instruction; a jury's task is hard enough as it is without using multiple phrases to cover the same subject. These instructions defined the statutes' *mens rea* elements correctly; no more was required. . . . ***The "good faith" argument is just a stalking horse for the contention that the quid pro quo must be stated explicitly and cannot be implied from hints and nudges; as we have rejected that contention directly, it cannot be resuscitated in the form of a "good faith" instruction untethered from statutory language.***

*United States v. Blagojevich*, 794 F.3d 729, 738–39 (7th Cir. 2015) (emphasis added).

The government likewise rejects the defendants' proposed instruction that the "defendant[s] did not have an intent to *defraud*" – in an instruction for federal programs *bribery* – if they "had a good faith belief, even a mistaken one" that their payments were "going to the university itself." That contention has already been rejected by this Court and others, and it violates

---

an unlawful method or means to accomplish an otherwise lawful end or result."). Eighth Circuit Model Instructions, § 6.18.666C ("[T]he term 'corruptly' means that the defendant acted voluntarily and intentionally and to influence, induce, or reward the agent . . . .").

[13] Seventh Circuit Model Instructions, 18 U.S.C. § 666(a)(2); *see also United States v. Medley*, 913 F.2d 1248, 1258–59 (7th Cir. 1990) (district court not required to use the term "bribery" in setting forth elements or defining "corrupt").

[14] *See, e.g.*, *United States v. Camuti*, 78 F.3d 738, 744 (1st Cir. 1996) (explaining that where the court adequately instructs the jury on the required *mens rea*, it is well-established that "a separate instruction on good faith is not required," and collecting cases).

the law of the case doctrine. *See United States v. Sidoo*, 468 F. Supp. 3d 428, 445 (D. Mass. 2020) ("Payments made to accounts controlled by university insiders, even if such payments were ultimately received by the universities, may still constitute a benefit to those insiders who exercise control over the accounts."); *United States v. Ernst*, No. 19-10081-IT (D. Mass. July 28, 2021), Dkt. 733 at 3 ("The requirement that the government prove a 'private payment' or 'private gain' does not foreclose . . . a scenario where the Defendant agreed to have bribes paid to university accounts so long as the government proves that the defendant entered into a corrupt or illegitimate agreement to receive something 'of value' where 'a thing of value is defined broadly to include the value which the defendant subjectively attaches to the items received."); *see also Conley v. United States*, 323 F.3d 7, 12–13 (1st Cir. 2003) ("[A] court must respect and follow its own rulings made at a prior stage in the same case," subject to exceptions for change in prevailing law or new evidence on the question at issue).

Finally, the government is aware of no bribery case, and the defendants cite none,[15] that supports the defendants' proposed instruction that "USC's actions or omissions, or evidence of deficiencies in the manner in which it implemented and enforced its policies and procedures" is relevant to the defendants' state of mind. The government objects to this unprecedented instruction.

### Response to Proposed Instruction #53 – Definitions: "Bribe"

The government objects to the defendants' instruction regarding a "bribe," including that "the government must prove beyond a reasonable doubt the presence of a bribe." As an initial matter, the defendants' proposed instruction ignores that the defendants are charged with

---

[15] *Cf. United States v. Josleyn*, 99 F.3d 1182, 1194 (1st Cir. 1996) (discussing "condonation" instruction in context of a fraud case).

*conspiracy* to commit federal programs bribery. *See* First Circuit Pattern Criminal Jury Instruction 4.18.371 ("The government does not have to prove that the conspiracy succeeded or was achieved. The crime of conspiracy is complete upon the agreement to commit the underlying crime and the commission of one overt act.").

In any event, the defendants' proposed instruction that "the government must prove beyond a reasonable doubt the presence of a bribe" is not supported by well-established pattern instructions or *any* Circuit's model instructions for 18 U.S.C. § 666. *See, e.g.*, Seventh Circuit Model Instructions, 18 U.S.C. § 666(a)(2) ("It is not necessary that this instruction contain the word 'bribe' or 'bribery,'" and not using the word "bribe" in elements); *see also* L. Sand et al., Modern Federal Jury Instructions: Criminal, Instr. 27A.03 (2021) (not using word "bribe" in setting forth elements); Third Circuit Model Instructions, § 6.18.666A2 (same); Eleventh Circuit Model Instructions, § O24.3 (same); Eighth Circuit Model Instructions, § 6.18.666C (same); Fifth Circuit Model Instructions, § 2.33C (same).

Further, as set forth in the response to proposed instruction #46, the defendants' "four caveats" to the "definition of a bribe" are likewise without merit.

### Response to Proposed Instruction #54 – Definitions: "Official Act"

The government objects to the defendants' instruction regarding the need for an "official act." Not a single Circuit's model instructions (or other pattern instruction) for federal programs bribery under 18 U.S.C. § 666 require an official act, and courts have uniformly rejected the argument that federal programs bribery under § 666, unlike 18 U.S.C. § 201, requires proving an official act. *See, e.g.*, *United States v. Roberson*, 998 F.3d 1237, 1247 (11th Cir. 2021) (rejecting argument that § 666 requires an official act: "Consistent with the views of our sister Circuits . . . we do not read into Section 666 limitations unsupported by the language of the

statute."); *United States v. Ng Lap Seng*, 934 F.3d 110, 134 (2d Cir. 2019) (holding that "*McDonnell*'s 'official act' standard does not pertain to bribery as proscribed by § 666"); *United States v. Porter*, 886 F.3d 562, 565–66 (6th Cir. 2018) (holding that "[i]n *McDonnell*, the Supreme Court limited the interpretation of the term 'official act' as it appears in § 201, an entirely different statute than [§ 666]"); *cf. United States v. Maggio*, 862 F.3d 642, 646 n.8 (8th Cir. 2017) (stating that *McDonnell* "had nothing to do with § 666").

### Response to Proposed Instruction #60 – Counts Six, Eight, and Nine: Introduction[16]

The government objects to defendant Wilson's instructions regarding aiding and abetting as to Counts Six, Eight, and Nine to the extent they suggest that the indictment charges him with "aiding and abetting Rick Singer." The indictment contains no such language. FSI ¶ 376. The Court should give the government's proposed instruction, which is shorter and more accurately tracks the language of the indictment. *See* Dkt. 2014 at 43; FSI ¶ 376.

### Response to Proposed Instruction #61 – Counts Six, Eight, and Nine: Elements

The government incorporates by reference its objections to the defendants' proposed instructions regarding wire fraud and honest services wire fraud in the context of proposed instructions 33–50. *See supra*. The government also objects to the repetitive good faith instructions, which will confuse the jury, waste time, and unnecessarily lengthen the instructions.[17]

### Response to Proposed Instruction #62 – Counts Six, Eight, and Nine: Aiding and Abetting

The government objects to defendant Wilson's multi-page instruction on aiding and abetting liability and requests that the Court instead give the government's proposed instruction

---

[16] The defendants' proposed instructions 55–59 relate to Count Three, which has been dismissed.

[17] *See, e.g.*, *United States v. Camuti*, 78 F.3d 738, 744 (1st Cir. 1996) (explaining that where the court adequately instructs the jury on the required *mens rea*, it is well-established that "a separate instruction on good faith is not required," and collecting cases).

on aiding and abetting, which is based on the First Circuit pattern instructions. *See* Dkt. 2014 at 43; *see also* First Circuit Pattern Criminal Jury Instruction 4.18.02(a). Further, the indictment does not charge Wilson, as his proposed instruction suggests, with "aiding and abetting Rick Singer." In any event, to the extent that Wilson's proposed aiding and abetting instruction is "adapted from" the one source he cites, the government objects to misleading revisions of that source. *Compare, e.g.*, Dkt. 2015 at 78 ("You *only* may find Mr. Wilson guilty of the offenses charged if . . ." and adding good faith instruction) (emphasis added), *with* L. Sand et al., Modern Federal Jury Instructions: Criminal, Instr. 11-2 (2021) ("You may find a defendant guilty of the offense charged if . . ." and no good faith instruction). The government also objects to Wilson's proposed instruction to the extent it incorporates his "factual impossibility" defense, which is addressed in the context of proposed instruction 72. *See infra*.

### Response to Proposed Instruction #63 – Counts Eleven and Twelve: Introduction

The government objects to defendant Wilson's instructions regarding Counts Eleven and Twelve to the extent they suggest that the indictment charges him with "aid[ing] and abett[ing] Rick Singer." The indictment contains no such language. FSI ¶ 378. The Court should instead give the government's proposed instruction, which is shorter and more closely tracks the language of the indictment. *See* Dkt. 2014 at 45; FSI ¶ 378.

### Response to Proposed Instruction #64 – Counts Eleven and Twelve: Elements

The government incorporates by reference its objections to the defendants' proposed instructions regarding federal programs bribery in the context of proposed instructions 51–54. *See*

*supra.* The government also objects to the repetitive good faith instructions, which will confuse the jury, waste time, and unnecessarily lengthen the instructions.[18]

### Response to Proposed Instruction #65 – Counts Eleven and Twelve: Aiding and Abetting

The government incorporates by reference its objections to Wilson's proposed aiding and abetting instruction #62.

### Response to Proposed Instruction #66 – Count Thirteen: Introduction

The government has no specific objections to defendant Wilson's proposed introductory instructions for Count Thirteen, but respectfully submits that the Court should instead give the government's more efficient two-page proposed instruction for the straight-forward tax offense that is charged in Count Thirteen, which includes an introduction, the elements, and relevant definitions. *See* Dkt. 2014 at 49–50.

### Response to Proposed Instruction #67 – Count Thirteen: Second Element

The government has no specific objections to defendant Wilson's proposed instruction #67, which is the same as the government's proposed definition of "material," but respectfully submits that the Court should instead give the government's more efficient two-page proposed instruction for Count Thirteen as a whole, which contains an introduction, the elements, and relevant definitions. *See* Dkt. 2014 at 49–50.

### Response to Proposed Instruction #68 – Count Thirteen: Third Element

The government objects to Wilson's multi-page instruction for the third element of filing a false tax return: that he "signed the return willfully and knowing it was false." The government's two-sentence proposed instruction defining knowing and willfully – which tracks the First Circuit

---

[18] *See, e.g.*, *United States v. Camuti*, 78 F.3d 738, 744 (1st Cir. 1996) (explaining that where the court adequately instructs the jury on the required *mens rea*, it is well-established that "a separate instruction on good faith is not required," and collecting cases).

pattern instructions word-for-word – is sufficient. *See* Dkt. 2014 at 50; First Circuit Pattern Criminal Jury Instruction 4.26.7206.

Wilson's proposed instructions devolve into legal argument and – aside from the definition of "willfully" – cite not one model instruction (from any Circuit). They also ignore that this Court has previously given efficient, straight-forward one-page instructions for tax offenses that closely track the model First Circuit instructions. *See, e.g.*, *United States v. Powers*, No. 10-cr-10073-NMG (D. Mass.), Dkt. 141 at 109–10, *aff'd*, 702 F.3d 1 (1st Cir. 2012). Wilson's proposed instructions do not cite a single district court jury instruction in support of the argumentative instructions he seeks.

Further, neglecting to cite on-point precedent, Wilson misrepresents the authorities that he *does* cite. For example, previewing his closing argument, Wilson requests that the Court instruct the jury that "you may find that if he could have reduced his tax payments by claiming lawful deductions but did not do so, he was less likely to have a motive to reduce his tax payments by making a false statement because he could have reduced them through lawful means." For that instruction, he cites one authority – *United States v. Wilson*, which he asserts is a First Circuit case. *See* Dkt. 2015 at 86 n.175.

*Wilson* is not a First Circuit case. It is a Fifth Circuit decision. *See United States v. Wilson*, 887 F.2d 69 (5th Cir. 1989). It also does not stand for the proposition that Wilson asserts. The district court in *Wilson* did not give the "lawful deductions" instruction that Wilson requests, nor did the Fifth Circuit explain that the district court should have. Rather, the district court in *Wilson* instructed the jury that, "It doesn't make a hill of beans if it would have turned out he didn't owe any money to the Government, that is not what he is charged with. It doesn't make any difference if it would have increased his taxes or not increased his taxes, that's not the charge here. It doesn't

make any difference if his income would be used up in legitimate deductions. I make these statements to you because of some of the argument presented. Because that's not part of the charge." *Id.* at 74. Defense counsel objected to the "hill of beans comment" because his defense theory was that the defendants "lacked a motive to lie on their returns." *Id.* In response to that objection, the court clarified that "so the government does not have to prove motive, again, that's not something the government has to prove. All the government has to prove is intent. But motive is something you may consider in determining intent." *Id.* The district court did not comment about deductions not taken or how that informed the defendants' motive. *See id.* The Fifth Circuit noted that the "hill of beans" comment was perhaps "more colorful than necessary," but affirmed the instructions. *Id.* at 76. The decision therefore provides no support for Wilson's proposed instruction regarding his failure to take lawful deductions.

### Response to Proposed Instruction #69 – Count Thirteen: Proper Deductions

The government objects to Wilson's proposed instruction regarding "proper deductions." Wilson asks this Court to the instruct the jury, *inter alia*, that "if you find that Mr. Wilson gave the money at issue to Rick Singer or to Mr. Singer's company intending that Rick Singer would give it to a charitable organization, you must return a not guilty verdict." That proposed instruction is wrong, both legally and factually, and is a closing argument, not a jury charge.

Legally, in support of this requested instruction, Wilson does not cite any model jury instructions, any instructions given by federal district courts in tax cases, or any First Circuit precedent. Instead, he cites a six-decade-old Article I United States Tax Court decision in which the court held that the amount that the petitioner gave to the foundation was "*not* deductible as a charitable contribution." *Kluss v. C.I.R.*, 46 T.C. 572, 576 (1966) (emphasis added).

Factually, Wilson is charged with filing a false tax return based on, *inter alia*, $120,000 in deductible "business expenses" stemming from payments that Wilson made to Singer and The Key. *See* FSI ¶¶ 353–68. Before taking those deductions, Wilson discussed with Singer "mak[ing] it for consulting or whatever from the Key so that I can pay it from the corporate account," even though Singer performed no legitimate consulting work for Wilson's private equity fund. *Id.* at ¶ 357. It is therefore wrong to instruct the jury that it "must return a not guilty verdict" if it finds that Wilson intended that some of the funds he paid to Singer would be given to USC.

### Response to Proposed Instruction #70 – Tax Professionals

The government objects to Wilson's proposed "tax professionals" instruction in which he asks the Court to tell the jury that "taxpayers are allowed to . . . delegate tax preparation responsibilities to tax professionals."

Wilson does not cite any model instructions, First Circuit precedent, or any jury instructions in this District to support his proposed "tax professionals" "delegation" instruction. Instead, he cites three inapposite 50-year-old civil tax cases from the Western District of Virginia, the Eastern District of Tennessee, and the Eastern District of Michigan.[19] Nor does Wilson acknowledge well-established precedent in which courts have refused to give reliance-on-advice-of-accountant instructions in tax fraud cases. *See, e.g.*, *United States v. Hardy*, 764 F. App'x 610, 611 (9th Cir. 2019) (holding that where court adequately instructs jury on intent, refusal "to give an additional instruction on good faith reliance upon [accountant's] advice" is not error); *United States v. Meneilly*, 28 F. App'x 26, 30 (2d Cir. 2001) ("Nor did the court err in refusing to give the instruction proposed by [the defendant] that the jury should acquit him if it found he had acted in

---

[19] *Belcher v. United States*, 1960 U.S. Dist. LEXIS 5094, at *10 (W.D. Va. Sept. 21, 1960) (unavailable on Westlaw); *Wiggins v. United States*, 188 F. Supp. 374, 376 (E.D. Tenn. 1960); *Moody v. United States*, 275 F. Supp. 917, 926 (E.D. Mich. 1967).

reliance on the advice of his accountant."); *United States v. Greene*, 239 F. App'x 431, 446–47 (10th Cir. 2007) (affirming district court's refusal to give reliance-on-advice-of-accountant instruction because although "[d]efendant may have relied on his accountant and his attorney in the colloquial sense, [] we are aware of no evidence that he relied on their professional advice in the conduct for which he was charged and convicted"); *United States v. Ford*, 184 F.3d 566, 579–80 (6th Cir. 1999) (reliance-on-advice-of-accountant instruction denied in tax fraud case).

In criminal tax fraud cases, the reliance-on-accountant defense is not groundbreaking, yet Wilson has not identified any criminal case in which a court – ever – gave a "tax professionals" "delegation" instruction similar to the one he requests. *See, e.g.*, *United States v. Olbres*, 61 F.3d 967, 974 (1st Cir. 1995) (reversing district court's judgment of acquittal based on reasonable reliance on family's long-time certified public accountant). Indeed, Wilson calls his proposed instruction a "tax professionals" instruction – rather than what it really is, a reliance-on-advice-of-accountant instruction – because he cannot meet the standard for the latter, and such an instruction, if given, would inculpate him.

It is well-established that "reliance on the advice of an accountant, offered as a defense to tax fraud, requires that a defendant *fully and honestly* lay all the facts before the accountant." *United States v. Libous*, 645 F. App'x 78, 82 (2d Cir. 2016) (emphasis added) (affirming district court's refusal to give advice-of-accountant instruction and collecting cases). To warrant such an instruction, the defendant must establish that he "(1) fully disclosed all relevant facts to the expert and (2) relied in good faith on the expert's advice." *Maggert*, 428 F. App'x at 880; *accord Greene*, 239 F. App'x at 447 (affirming refusal to give advice-of-accountant instruction where defendant did not fully disclose all material facts to accountant because "[t]o be entitled to the instructions, Defendant would have had to show that he had made full disclosure to the [accounting

professional."). And where courts have given an advice-of-accountant instruction, they have made clear to the jury that the defense is applicable only if "the defendant, before acting, made full disclosure of all material facts to an accountant, received the accountant's advice as to the specific course of conduct that was followed, and reasonably relied on that advice in good faith." *United States v. Prezioso*, 782 F. App'x 586, 588 (9th Cir. 2019).

The evidence at trial will show that Wilson did *not* "fully and honestly lay all the facts before" any of the accountants whom he now seeks to blame. For example, there will be no evidence that any tax professional, having been told by Wilson that Rick Singer did not provide Wilson's business with legitimate "consulting" services, then advised Wilson that he could deduct those payments to Singer as legitimate business expenses. Accordingly, the Court should not give the "tax professionals" "delegation" instruction that Wilson seeks. And to the extent that Wilson argues to the jury that he relied in good faith on tax professionals, the government reserves the right to request a legally correct reliance-on-advice-of-accountants instruction, in which the Court should instruct the jury that Wilson's defense must establish, *inter alia*, that he "made full disclosure of all material facts" to his accountants. *See Prezioso*, 782 F. App'x at 588.

### **Response to Proposed Instruction #71 – Defense of Administrative Consistency**

The government objects to Wilson's proposed "defense of administrative consistency" instruction in which he asks the Court to instruct the jury that it "must acquit" Wilson of Count Thirteen if it finds that the IRS "is treating [him] differently than other similarly situated parties, and the government did not offer a rational basis for the inconsistency." Wilson is *not* charged with tax fraud for taking deductions on his taxes for legitimate donations to a university. Rather, he is charged with tax fraud for (1) deducting as business expenses payments that he made to Rick Singer for fake "consulting" services, and (2) deducting as charitable contributions payments that Wilson made to the USC water polo program, for the benefit of corrupt USC water polo coach

Jovan Vavic, as a *quid pro quo* in exchange for Vavic securing the admission of Wilson's son as a water polo recruit. Wilson does not offer a single federal criminal case in which a court gave a similar "defense of administrative consistency" instruction, and the only authorities that he cites in support of his proposed instruction are civil cases that stand for the unremarkable proposition that the IRS should impose similar taxes on similarly-situated taxpayers. *See, e.g.*, *Sirbo Holdings, Inc. v. Commissioner of the I.R.S.*, 476 F.2d 981, 989 (2d Cir. 1973) (Friendly, J.) (vacating decision of U.S. Tax Court finding deficiency in landlord's taxes based on capital gains treatment, and remanding for consideration whether commissioner's decision was consistent with similar Tax Court decision).

Wilson's requested instruction – that the jury may find the government "is treating [him] differently than other similarly situated parties" – is a selective prosecution defense masquerading as an "administrative consistency" instruction. But selective prosecution is an affirmative defense that a defendant must raise pre-trial pursuant to Federal Rule of Criminal Procedure 12, and it requires showing that the government (1) has treated similarly situated offenders differently, and (2) has made its "discriminatory selection" of the defendant "in bad faith, *i.e.*, based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." *See Tracey v. United States*, 739 F.2d 679, 682–83 (1st Cir. 1984) (explaining that defendant "waived the right to raise the selective prosecution defense when he did not, as the rule mandates, raise it prior to trial."). Although Wilson has filed or joined a number of pre-trial motions to dismiss in this case, he has not raised the defense of selective prosecution because he cannot meet either prong of the selective prosecution standard. Accordingly, he should be prohibited – as the government argued in its motion *in limine* seeking to preclude jury nullification (*see* Dkt. 2009 at 3–4) – from alluding to "selective prosecution" at all during trial, much less have

the Court *instruct the jury* on selective prosecution under the guise of "administrative consistency." *See, e.g.*, *United States v. Valerio*, 676 F.3d 237, 242 (1st Cir. 2012) (counsel "was reprimanded . . . on many occasions" for "tr[ying] to raise the selective prosecution defense during trial" where it had been rejected pre-trial); *United States v. O'Brien*, 18 F. Supp. 3d 25, 36 (D. Mass. 2014) (rejecting arguments that "border on improper claims of selective prosecution"); *United States v. Colon Ledee*, 967 F. Supp. 2d 516, 519–20 (D.P.R. 2013) ("[A]s defendant failed to previously raise selective prosecution as a defense, he waived the defense at trial and was not entitled to a jury instruction regarding it.").

### Response to Proposed Instruction #72 – Factual Impossibility

Wilson asks the Court to instruct the jury on "factual impossibility" with respect to the charges of wire fraud, honest services wire fraud, and federal programs bribery in Counts Six, Eight, Nine, Eleven, and Twelve. Specifically, he requests that the Court instruct the jury that it "must acquit" on those charges unless the government proves beyond a reasonable doubt either that Rick Singer was not a government cooperator when he consensually recorded phone calls with Wilson, or that Wilson knew Singer was a cooperator.

The Court should reject this proposed instruction for two reasons. First, it contradicts the law of the case doctrine. *See Conley v. United States*, 323 F.3d 7, 12–13 (1st Cir. 2003) ("[A] court must respect and follow its own rulings made at a prior stage in the same case," subject to exceptions for change in prevailing law or new evidence on the question at issue). This Court squarely held more than a year ago that factual impossibility is not a defense to the substantive offenses of wire fraud, honest services wire fraud, and federal programs bribery because "wire fraud and federal program bribery require proof of intent to defraud or bribe but neither requires that the fraud or bribe accomplish the intended goal." Dkt. 1438 at 10–13. Wilson has raised no

new arguments or legal precedent in support of his factual impossibility argument, and he instead merely incorporates by reference his prior motion to dismiss. *See* Dkt. 2015 at 90 n.185 (incorporating by reference Dkt. 993, 995). Thus, Wilson's request to instruct the jury that it "must acquit" based on factual impossibility, in direct contravention of this Court's prior holding, should be rejected.

Second, even were the Court to reconsider Wilson's previously raised arguments, they are just as wrong as they were a year ago. Numerous courts have upheld wire fraud and honest services wire fraud convictions arising out of sting operations, including despite claims of factual impossibility. *See, e.g.*, *United States v. Prange*, 771 F.3d 17 (1st Cir. 2014) (affirming convictions for substantive wire fraud in connection with sting operation in which FBI agent posed as a corrupt hedge fund manager); *see also United States v. Su*, 633 F. App'x 635, 637 (9th Cir. 2015) (holding that factual impossibility is not a defense to wire fraud); *United States v. Brown*, 521 F. App'x 323, 326 (5th Cir. 2013) (affirming convictions for mail and wire fraud in context of sting operation that "simply provide[d] the opportunity to commit a crime"); *United States v. Potter*, 463 F.3d 9, 22 (1st Cir. 2006) (affirming convictions for wire fraud in connection with scheme to bribe legislator, where "all that mattered for the crimes charged was whether the defendants *believed* that [the legislator] possessed such power" to affect legislation in favor of defendants, "it would not matter if their belief as to [the legislator's] power were mistaken," and thus, impossibility defense could not have succeeded) (emphasis in original); *United States v. Santiago*, 977 F.2d 517, 526 (10th Cir. 1992) (affirming conviction for substantive wire fraud, even though "police intervened to prevent [defendant's] attempted fraud, [and] it could not have reached fruition"). The same is true for federal programs bribery. *See, e.g.*, *United States v. Smith*, 816 F.3d 479, 480 (7th Cir. 2016) (affirming conviction for substantive federal programs bribery where defendant

legislator wrote letter in support of female constituent's construction project in exchange for $7,000, where it "was a sting; there was no such woman, and the money would come from the FBI"); *United States v. Plowman*, 700 F.3d 1052 (7th Cir. 2012) (affirming federal programs bribery conviction arising from government sting operation and rejecting entrapment defense); *cf. United States v. Ring*, 706 F.3d 460, 467 (D.C. Cir. 2013) (holding that federal bribery statute 18 U.S.C. § 201 "expressly criminalizes a mere 'offer' of something of value with the intent to influence" recipient).

### Response to Proposed Instruction #73 – Adverse Inference

The government objects to Wilson's proposed instruction regarding an "adverse inference" that the jury may draw from the purported fact: (1) that the government instructed Singer to cancel a meeting with Wilson on September 23, 2018 because it knew the conversation "would be exculpatory," and (2) that the government did not record a September 28, 2018 virtual meeting between Singer and (purportedly) Wilson that he contends the government knew "would be exculpatory." The background regarding these issues is familiar to the Court, and the government will not restate it here. *See* Dkt. 995, 1135, 1184, 1236, 1359. The government incorporates by reference its objections to the defendants' proposed adverse inference instruction 10 regarding spoliation.

As to Wilson's adverse inference instruction specifically, the Court should not instruct the jury that it may draw the inference that Singer cancelled a meeting with Wilson on September 23, 2018 at the request of government agents unless he introduces evidence at trial, either through cross-examination or defense witness testimony, that both of those predicates is true: that is, that government agents instructed Singer to cancel the September 23, 2018 meeting, and that they did so because they knew that the conversation with Wilson during that meeting "would be

exculpatory." In any event, Wilson's argument that the government "must have known" that the meeting would produce exculpatory evidence makes no sense, as courts have held. *See United States v. Weisz*, 718 F.2d 413, 437 (D.C. Cir. 1983) ("[W]e are at a loss to understand how the FBI could [] succumb to the temptation [to record only conversations that are favorable to the government]. Prior to the start of a conversation, when the decision to record would have to be made, the FBI could only speculate whether the content of the conversation would be 'favorable.'"). Wilson has cited no case suggesting that absent a duty to record a conversation, the government nevertheless should be subjected to an adverse inference instruction for failing to record a conversation. The government is aware of no case – and Wilson cites none – suggesting that a defendant is entitled to an instruction informing the jury that merely because the government instructed an informant or cooperating witness to take some action (or not take some action), that an adverse inference is warranted and that the government's justification for that direction was to avoid evidence that "would be exculpatory."

Further, the Court should not give an adverse inference instruction based on the government's failure to record the September 28, 2018 virtual meeting in which Wilson purportedly participated. As an initial matter, Wilson would need to establish – through admissible evidence – that he in fact participated in that meeting, and that the content of the meeting was exculpatory. In any event, as this Court has held, "[g]iven the inevitable variables that accompany criminal investigations and the reality of scarce resources and personnel, the First Circuit has declined to adopt an 'all-or-nothing' rule with respect to the recording of conversations in sting operations." *United States v. George*, 839 F. Supp. 2d 430, 439 (D. Mass. 2012) (citing *United States v. Chadhry*, 850 F.2d 851, 857 (1st Cir. 1988)); *see also United States v. George*, No. 11-cr-10201-NMG (D. Mass.), Dkt. 152 (jury instructions with no such adverse inference instruction);

*United States v. Arteaga*, 807 F.2d 424, 426–27 (5th Cir. 1986) ("While there is an obligation to preserve recordings once they have been created, there is no general duty to make recordings in the first place."). If there is no duty to record every conversation a cooperating witness has, it makes little sense to impose an adverse inference instruction for failing to comply with a purported duty that is not legally cognizable.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By: */s/ Leslie A. Wright*
JUSTIN D. O'CONNELL
KRISTEN A. KEARNEY
LESLIE A. WRIGHT
STEPHEN E. FRANK
IAN J. STEARNS
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Leslie A. Wright*
LESLIE A. WRIGHT
Assistant United States Attorney