UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,                        :

                    Plaintiff,              :      Criminal Action
                                              No. 19-10080-NMG

     v.                                        :

                                                <u>ORAL ARGUMENT REQUESTED</u>

GREGORY COLBURN, *et al.*,                       :

                    Defendants.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS MARCI PALATELLA'S [DEF.  NO. 16] AND
<u>JOHN WILSON'S [DEF.  NO. 17] MOTION TO CONTINUE SEPTEMBER 2021 TRIAL</u>**

        Defendants Marci Palatella [Def. No. 16] and John Wilson [Def. No. 17]

("Defendants") respectfully move this Court to continue their currently scheduled September 13,

2021, trial until a date and time convenient to the Court after the subsidence of the impact of the

Delta variant.  This motion is predicated entirely upon the impact on the trial of the exponential

growth in COVID-19 cases in Massachusetts and across the country because of the new and

more infectious Delta variant.  Defendant Gamal Abdelaziz [Def. No. 4] has indicated he wants

to proceed with his trial in September 2021 and, should the Court grant this Motion assents

severing his case from the other two so that it can proceed in September 2021.

        If the Court severs Ms. Palatella and Mr. Wilson for a later trial, and proceeds

with Mr. Abdelaziz's September trial, the Court will reduce the trial length from five-plus weeks

to two to three weeks.[1]  This would also eliminate trial of the Wilson tax case and five

substantive counts involving Stanford and Harvard, and the Palatella test-taking issues.

---

[1]      Severing Ms. Palatella will eliminate at least eight Government witnesses and at least seven defense
witnesses.  Severing Mr. Wilson will eliminate at least four Government witnesses and up to six defense witnesses.
The Government estimates it will need two to three weeks to present its case in chief against all three defendants.
The defendants estimate the defense case will take a week or possibly longer.

Severance would simplify and limit the trial and jury instructions to the two USC conspiracies charged in Counts 1 and 2.  It will also eliminate two defense teams from the courtroom.  A simpler, shorter trial will greatly reduce the risk of infection and mistrial that a larger trial presents.

Defendants Ms. Palatella and Mr. Wilson recognize that this is not a simple issue, but the risk management benefits are clear.  All defendants and the Government have been preparing diligently for the September 13 trial and there will be a cost to each party from a delay. The risks of commencing and sitting for trial are the same for all three defendants, the District Court and its staff, the jury, the witnesses, and the Government, and these risks present substantial costs.  A trial in this case of all three defendants will involve requiring a minimum of 35-40 people to be closeted together in the courtroom and in the federal courthouse a minimum of seven hours each day.  Social distancing will be impossible.

Of the Government's proposed 38 witnesses, only five are from Boston and all of those are Government employees.  Thus, numerous civilian witnesses, many from California, Nevada, Texas, and elsewhere, will be required to travel across the country.  Though many of the participants may be vaccinated, no one will be sequestered and the risk of infection from Delta will exist for everyone.  Jurors, lawyers, court staff, and witnesses required to attend may have unvaccinated children or at-risk, immune-compromised adults at home and to whom they may bring the disease, or from whom they may bring the disease into the courtroom.  There has been a spike in pediatric hospitalizations across the country.  Once a participant is infected or even simply exposed to infection, quarantine rules will be triggered, necessitating delays and potentially even a mistrial, as the Court may be required to excuse jurors or substantially delay the proceeding.

The Court may choose to proceed with just a trial of Mr. Abdelaziz; such a trial will be shorter, will involve fewer witnesses and fewer participants in the courtroom every day and consequently presents a better likelihood of running the pandemic gauntlet.  Defendants Ms. Palatella and Mr. Wilson do not propose a specific start date for the trial should the Court grant this continuance.  None of the parties thought, when the Court scheduled the trial this past Spring for September that a new variant of COVID-19 would appear that would present enhanced risks of infection for vaccinated and unvaccinated individuals.  The number of vaccinated people in the country continues to grow and the best outcome may be a postponement to a date in 2022, after consultation with counsel on schedules.

The issues presented here are not unique; concerns over the Delta variant have led to trial postponements in various courts, including this one.[2]  Consequently, the Defendants respectfully submit that a continuance at this time is reasonable given the resurgence in severity of the ongoing global pandemic and the issues that it presents to the safety of all trial participants.

I.      **THE DELTA VARIANT SIGNIFICANTLY INCREASES THE RISK OF AN OUTBREAK DURING THE TRIAL, WHICH COULD LEAD TO A MISTRIAL**

In recent months, the highly transmissible Delta variant has shifted the pandemic landscape by requiring states and courts to retighten restrictions that were loosened in the Spring of 2021.  The Centers for Disease Control and Prevention (the "CDC") has described the Delta variant as "more transmissible than the viruses that cause MERS, SARS, Ebola, the common

---

[2]      Scheduling and Procedural Order 2-3, ECF 140, *United States v. Cromwell et al.*, Criminal No. 20-10271-DPW (D. Mass. Filed Aug. 16, 2021).

*(cont'd)*

cold, the seasonal flu and smallpox, and . . . as contagious as chickenpox."[3]  This contagious

nature results from the variant's ability to spread through both vaccinated and unvaccinated

individuals,[4] and has led to questions about the effectiveness of vaccinations in protecting

individuals against contracting the disease.[5]  The Delta variant has especially accelerated

infection rates in certain areas of the country, including San Francisco and the Bay Area.[6]

Consequently, the CDC has recommended new mask mandates for public indoor

settings.  In particular, the CDC recommends that "even jurisdictions without substantial or high

COVID-19 transmission might consider expanding prevention strategies, including masking in

indoor public settings regardless of vaccination status, given the potential risk of infection during

attendance at large public gatherings that include travelers from many areas with differing levels

of transmission."[7]  Massachusetts already reinstated its mask advisory, advising even vaccinated

individuals to wear masks indoors.[8]  This Court's mask mandate is in line with the State's

---

[3]     Aporva Mandavilli, *C.D.C. Internal Report Calls Delta Variant as Contagious as Chickenpox*, N.Y. Times (July 30, 2021), https://www.nytimes.com/2021/07/30/health/covid-cdc-delta-masks.html?action=click&module=Top%20Stories&pgtype=Homepage.

[4]     *See, e.g.*, Kathy Katella, *5 Things To Know About the Delta Variant*, Yale Med. (Aug. 9, 2021), https://www.yalemedicine.org/news/5-things-to-know-delta-variant-covid (explaining that "Delta was spreading 50% faster than Alpha, which was 50% more contagious than the original strain of SARS-CoV-2" and describing Provincetown, Massachusetts incident); Catherine M. Brown, et al., *Outbreak of SARS-CoV-2 Infections, Including COVID-19 Vaccine Breakthrough Infections, Associated with Large Public Gatherings — Barnstable County, Massachusetts, July 2021*, C.D.C. (Aug. 6, 2021), https://www.cdc.gov/mmwr/volumes/70/wr/mm7031e2.htm (analyzing Provincetown incident and observing that 74 percent "of cases occurred in fully vaccinated persons" and that four out of the five hospitalized patients were fully vaccinated).

[5]     *See, e.g.*, Yasmeen Abutaleb, et al., *'The war has changed': Internal CDC document urges new messaging, warns delta infections likely more severe*, Wash. Post (July 29, 2021), https://www.washingtonpost.com/health/2021/07/29/cdc-mask-guidance/ (observing that internal CDC presentation on Delta variant includes "concerns from local health departments about whether coronavirus vaccines remain effective and a 'public convinced vaccines no longer work/booster doses needed'").

[6]     Erin Allday, *Bay Area An "Emerging Hot Spot' For COVID As Delta Cases Jump*, San Francisco Chronicle, July 9, 2021, https://www.sfchronicle.com/health/article/Bay-Area-an-emerging-hot-spot-for-COVID-as-16304635.php; Aidin Vaziri, et al., *California COVID live updates: Nearly 72,000 U.S. children were infected with COVID-19 last week*, San Francisco Chronicle, Aug. 3, 2021.

[7]     Brown, *supra* note 2.

[8]     *COVID-19 Mask Requirements*, Mass.Gov (July 30, 2021), https://www.mass.gov/info-details/covid-19-mask-requirements (advising that, effective July 30, 2021, "fully vaccinated individuals . . . wear a mask or face covering when indoors (and not in your own home) if [they] have a weakened immune system, or if [they] are at

*(cont'd)*

guidance, requiring unvaccinated "participants other than a witness who is testifying" to wear a mask.[9]

        Notwithstanding social distancing and mask mandates, the strength of the Delta variant and its ability to spread through immunized individuals threatens an outbreak in this case, which will require *at a minimum* 35-40 people in a single room, not including the counsel and staff that, although not present, will remain in direct contact with those in the courtroom. An outbreak would almost certainly lead to a mistrial, as courts have declared mistrials where outbreaks either caused the trial to be postponed for too long or caused too many to fall ill.[10] Importantly, where jurors or others test positive for the virus, they potentially expose remaining jurors, courtroom personnel, witnesses, and the parties and their counsel to the virus.[11] Most recently, juror concerns over this potential exposure has led to juror shortages in court, resulting in mistrials before they even begin.[12] Covid has presented challenges that rarely face the court

---

increased risk for severe disease because of [their] age or an underlying medical condition, or if someone in [their] household has a weakened immune system, is at increased risk for severe disease, or is an unvaccinated adult").

[9]    *Compare* Letter to Jurors from Chief Judge Saylor, https://www.mad.uscourts.gov/jurors/pdf/CJ%20Saylor%20letter%20to%20Jurors.pdf, (requiring "[a]ll participants other than a witness who is testifying" to wear a mask), *with* General Order 21-4 (June 14, 2021), https://www.mad.uscourts.gov/general/pdf/announce/Gen.Order21-4-Coronavirus-OrderSupersedingGenOrd20-35-MaskedUnlessVaccinatedOrder.pdf (permitting unmasked individuals who can prove vaccination). Importantly, even assuming that General Order 21-4 will remain in place through the fall, there are a myriad of reasons why some individuals present for this trial either might not be vaccinated or might not feel comfortable attending unmasked.

[10]    *See, e.g.*, Michael Gordon, *After 3 Jurors Test Positive for COVID, judge calls mistrial in Mecklenburg court case*, Charlotte Observer (Aug. 3. 2021) https://www.charlotteobserver.com/news/coronavirus/article253221143.html (explaining how weeklong trial in July 2021 ended in mistrial "after three jurors tested positive for COVID-19" and observing that "[c]ases of the delta variant have been surging in the Charlotte region . . . and around the country").

[11]    *See e.g.*, Katie Buehler, *March Retrial Set In EDTX Case That Caused COVID Outbreak*, Law360 (Jan. 15, 2021), https://www.law360.com/articles/1345712/march-retrial-set-in-edtx-case-that-caused-covid-outbreak (granting mistrial after "five days' worth of testimony" when "15 participants tested positive for the virus, including two jurors, at least three members of the defense team . . . and five or six court staffers"); Dan Copp, Mistrial declared in Thibodaux murder case due to coronavirus concerns, Houma Today (Jul. 14, 2021), https://www.houmatoday.com/story/news/2021/07/14/mistrial-declared-thibodaux-murder-case-due-coronavirus-concerns/7960663002/ (explaining that court "ordered a mistrial after a [non-empaneled] jury candidate tested positive for the coronavirus").

[12]    Jack Karp, *Reluctant Jurors Pose New Challenge As Trials Resume*, Law360 (Apr. 15, 2021), https://www.law360.com/pulse/articles/1375213; *see also* Meghann M. Cuniff, *Juror's Potential COVID Exposure Halts Michael Avenatti's Wire Fraud Trial*, The Recorder (Aug. 11, 2021),

*(cont'd)*

system.  Defendants are keenly concerned that an infection or quarantine could generate

substantial anxieties that could negatively impact the juror's and the fairness of their

deliberations.

## II.    IT IS NOT FEASIBLE TO PREPARE FOR OR ADEQUATELY CONDUCT A TRIAL GIVEN THE DELTA VARIANT

The worsening of the pandemic due to the emergence of the Delta variant has led

courts in other jurisdictions to postpone in-person jury trials for a few months, while the variant

is predicted to spread most aggressively.[13]  Importantly, on August 16, 2021, Judge Woodlock

postponed a criminal jury trial that was set to commence this fall until January 2022.[14]  He

reasoned that the decision was made in an effort "to ensure the safety of all trial participants,

[and] to avoid stress on the jury selection process."[15]  The particular facts of this case necessitate

the same result.  The current state of the pandemic and the threats posed by the Delta variant,

which was unpredictable at the time this trial was scheduled, continue to (i) impede on the

Defendants' constitutional right to participate in the preparation of their own defense, and (ii)

render it logistically impossible to conduct a multi-defendant trial as it is currently scheduled.

https://www.law.com/therecorder/2021/08/11/jurors-potential-covid-exposure-halts-michael-avenattis-wire-fraud-trial/ (explaining that Michael Avenatti's wire fraud trial in Central District of California was postponed when juror was potentially exposed to COVID-19 and noting that this was second juror to face dismissal because of contact with outsider who "was sick with possible COVID-19").

[13]    *See, e.g.*, Rachel Scharf, *Virus Concerns Push 'Housewives' Star's Fraud Trial To 2022*, Law360 (Aug. 10, 2021) (explaining that S.D.N.Y. judge postponed October 18, 2021 trial until March 2022 "due to new challenges posed by the delta variant of COVID-19"); *In the matter of Criminal Case Proceedings During the COVID-19 Public Emergency*, Order of the Chief Judge No. 63-D, at 3 (S.D. Cal. Jul. 27, 2021) https://www.casd.uscourts.gov/_assets/pdf/rules/Chief%20Judge%20Order%2063-D.pdf (suspending in-person criminal trials until early September); https://myrgv.com/featured/2021/08/07/delta-variant-prompts-renewed-federal-court-restrictions/ (noting that federal courthouse in Texas delayed criminal and civil trials scheduled for August and early September).

[14]    Scheduling and Procedural Order 2-3, ECF 140, *United States v. Cromwell et al.*, Criminal No. 20-10271-DPW (D. Mass. Filed Aug. 16, 2021), *supra* note 1.

[15]    *Id*. at 1.

A.    **The Contagious Nature Of The Delta Variant**
      **Impedes The Defendants' Ability To Prepare For Trial**

The Delta variant's ability to infect an immunized population impedes the
Defendants' ability to sufficiently and safely prepare for trial.  As an initial matter, the states in
which the majority of witnesses and Defendants, and some attorneys, reside are experiencing
resurges of COVID-19 cases, which are anticipated to last through the current trial date.  Both
California and Nevada have positivity rates above the World Health Organization's target of 5
percent.  Specifically, as of August 5, 2021, Nevada has experienced a 15.8 percent positivity
rate.[16]  Similarly, as of August 8, 2021, California has experienced a 6.8 percent positivity rate,
increased hospitalizations, and increased ICU patients.[17]  Although Massachusetts is currently
experiencing a 2.89 percent positivity rate, it had 1,182 new cases on August 13, 2021, which is
approximately a 500 percent increase from the 191 new cases it had experienced one month
earlier, on July 13, 2021.  As for Suffolk County, the CDC recently released data categorizing
the county as a "high" risk area, which is the CDC's most dangerous rating.[18]  According to
national models, the increase in cases is only expected to continue, peaking in mid-October.[19]
Moreover, potentially further increasing or even accelerating this peak, the school year will
begin again in September.

Despite the worsening public health crisis, the needs of the case remain the same.
Almost all of the witnesses in this case reside outside of the Commonwealth of Massachusetts

---

[16]        Nev. Health Response, *COVID-19*, https://nvhealthresponse.nv.gov/.
[17]        CalAll, *Tracking COVID-19 in Cal*., https://covid19.ca.gov/state-dashboard/#todays-update.
[18]        Rich Mendez, *CDC says over 90% of U.S. counties now meet its Covid guidelines for masks indoors*,
CNBC (Aug. 12, 2021), https://www.cnbc.com/2021/08/12/cdc-says-over-90percent-of-us-counties-now-meet-its-
covid-guidelines-for-indoor-masks.html.
[19]        https://abc7news.com/delta-variant-covid-19-cdc-breakthrough-cases/10906702/ (explaining that
"[a]ccording to the CDC, the current 7-day average of new cases increased nearly 47% compared to the previous 7-
day average" and noting that "[t]he latest national model projects a peak in mid-October with deaths potentially
more than tripling what they are now").

and in states and counties that are at higher risk than Boston.  Their cross-country air travel for

in-person preparation sessions and for trial places them, the attorneys and other staff, the

Defendants, and all of the families of those individuals at risk of exposure.  While counsel

continue to prepare for trial as best they can through remote means, virtual preparation has

proved an insufficient substitute for in-person meetings.  (*See* Dkt. Nos. 1659, 1697.)  Indeed,

there is no substitute once the trial begins, as actual trial testimony will need to be in person.

        In turn, the Defendants' inability to sufficiently prepare for trial in lieu of in-

person meetings impedes their ability to exercise their constitutional right to participate in their

own defense.  *See Luis v. United States,* 136 S. Ct. 1083, 1089 (2016) ("[T]he Sixth Amendment

grants a defendant 'a fair opportunity to secure counsel of his own choice,'" meaning that a

defendant has the "right to be represented by a qualified attorney whom she chooses and can

afford" (*quoting Powell v. Alabama,* 287 U.S. 45, 53 (1932))); *Owens v. United States,* 483 F.3d

48, 58 (1st Cir. 2007) (a defendant "has a 'fundamental constitutional' right to testify in his own

defense, and . . . the right must be 'unfettered'" (*quoting Rock v. Arkansas,* 483 U.S. 44, 51-53

(1987), and *Harris v. New York,* 401 U.S. 222, 230 (1971))); *see also, e.g., United States v.

Rankin,* 779 F.2d 956, 961 (3d Cir. 1986) (reversing the defendant's conviction and granting a

new trial because the defendant was deprived of the ability to be represented by counsel of

choice by Court's failure to grant continuance of trial date).  For this reason alone, the trial

should be further continued until such time when the Defendants, defense counsel, the

Government, and witnesses can travel freely and meet in person to sufficiently prepare for trial.

### B.    The Current Threats Posed By The Delta Variant Make It <br>        Nearly Impossible To Conduct A Multi-Defendant Trial In September 2021

        Given the resurgence of cases and the threat of exposure posed by in-person

gatherings, it appears unlikely that a high-profile, multi-defendant trial will be feasible.  *First*, it

remains unclear whether the Court can safely accommodate a jury venire large enough to ensure the selection of a trial jury with sufficient alternates.  *See Taylor v. Louisiana*, 419 U.S. 522, 527 (1975) ("[T]he Court has unambiguously declared that the American concept of the jury trial contemplates a jury drawn from a fair cross section of the community.").  Permitting excusal of potential jurors for underlying health conditions, household members with health conditions, lack of childcare, or economic hardship could result in uniform exclusion of specific demographics from the jury pool.  (*See* Dkt. No. 1512 at 6-7, nn. 10-12.)  Meanwhile, both vaccinated and unvaccinated individuals from other juror demographic segments, such as women and individuals over the age of fifty, may continue to self-exclude because of health and safety concerns posed by the Delta variant.  (*Id.*)

Similarly, empaneling a jury of only vaccinated individuals may render it impossible to obtain a jury pool that represents a fair cross-section of society, as vaccinated populations tend to represent only select racial, socioeconomic, and age categories.  For example, "[a]s of August 2, 2021, [the] CDC reported that race/ethnicity was known for 58% of [the 70 percent of] people [in the United States] who had received at least one dose of the vaccine.  Among this group, nearly two thirds were White (59%), 10% were Black, 16% were Hispanic, 6% were Asian . . . while 8% reported multiple or other race."[20]  Likewise, the CDC reported that "vaccination coverage among U.S. adults was highest among adults aged [over] 65

---

[20]     Nambi Ndugga, et al., *Latest Data on COVID-19 Vaccinations by Race/Ethnicity*, KFF (Aug. 4, 2021), https://www.kff.org/coronavirus-covid-19/issue-brief/latest-data-on-covid-19-vaccinations-race-ethnicity/ ("While White adults account for the largest share (57%) of unvaccinated adults, Black and Hispanic people remain less likely than their White counterparts to have received a vaccine, leaving them at increased risk, particularly as the variant spreads."); *see also White Vaccination Rates Lag In States Where Covid Is Surging: Covid-19 Tracker*, Bloomberg (July 21, 2021), https://www.bloomberg.com/graphics/covid-vaccine-tracker-global-distribution/us-vaccine-demographics.html (providing interactive visual demonstrating the "racial vaccine gap").

*(cont'd)*

years and lowest among adults aged 18-29 years."[21]  In Boston, disparities in vaccination rates can also be seen across socio-economic lines, as access to vaccination sites and tools for vaccine sign-up are "critical barrier[s]."[22]

       *Second*, the District Court's limits on the number of individuals allowed in the courtroom present logistical challenges for a trial of three defendants.  For example, it will limit the number of jurors that can be present for voir dire, requiring a substantial amount of time to evaluate the jury pool.  Similarly, given the number of defendants and counsel in this case, limiting the number of counsel in the courtroom will almost certainly prolong the trial and impede its flow.  Indeed, counsel will undoubtedly seek breaks to confer with co-counsel and require additional time to pull exhibits and set up demonstratives.

       *Third*, the Court's mask mandate presents constitutional concerns.  Although the Court's procedure does not require witnesses to remain masked while testifying, the current conditions, which have been exacerbated by the Delta variant, might make witnesses feel unsafe to remove their masks.[23]  To the extent that witnesses will not be completely visible, the use of masks potentially implicate the Defendants' Sixth Amendment right to confront the witnesses against them.  *Maryland v. Craig*, 497 U.S. 836, 846 (1990) ("The combined effect of these

---

[21]    Jill Diesel, PhD, et al., *COVID-19 Vaccination Coverage Among Adults — United States, December 14, 2020–May 22, 2021*, C.D.C. (June 25, 2021), https://www.cdc.gov/mmwr/volumes/70/wr/mm7025e1.htm.

[22]    Richard Lu, et al., *Inequity in vaccinations isn't always about hesitancy, it's about access*, Am. Ass. Med. Colleges (Apr. 12, 2021), https://www.aamc.org/news-insights/inequity-vaccinations-isn-t-always-about-hesitancy-it-s-about-access (explaining that Boston "has not set up mass vaccination sites in some of the communities most disproportionately impacted by COVID-19 in Boston, like East Boston, Chelsea, or Hyde Park . . . [and] [m]any individuals in these neighborhoods cannot easily travel to the mass vaccination sites due to disability, work schedules, or lack of transportation"); *see also* Tim O'Donnell, *America's vaccination rate is divided along income lines*, The Week (July 12, 2021), https://theweek.com/coronavirus/1002498/americas-vaccination-rate-is-divided-along-income-lines ("Most unvaccinated Americans live in households that make less than $50,000 per year.").

[23]    Additionally, although the Court currently allows unvaccinated individuals to go unmasked, there remains the potential that either the courthouse or the courtroom reinstate its mask mandate before the end of the trial in this case.  *See* Meghann M. Cuniff, *supra* note 10 (explaining that Central District of California judge in Michael Avenatti's wire fraud trial "began requiring everyone in the courtroom to wear a mask" on July 28 and that the courthouse "mandated masks in all buildings later that day").

elements of confrontation—physical presence, oath, cross-examination, and observation of demeanor by the trier of fact—serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo–American criminal proceedings.")  Similarly, the use of masks by testifying witnesses implicates the jury's ability to adequately assess witness credibility, which is one of its core functions.  *See, e.g.*, *United States v. Sheikh*, 493 F. Supp. 3d 883, 886 (E.D. Cal. 2020) (observing that "lawyers have expressed concerns about the ability to effectively evaluate prospective jurors, assess the credibility of witnesses, or communicate with the jury if the participants are wearing masks.  The court shares those concerns.").[24]

       *Fourth*, under current CDC guidelines, any unvaccinated witness who travels to Massachusetts to testify and who chooses to adhere to the CDC travel guidelines must quarantine for seven days after arriving in Boston and for another seven days after arriving home following her testimony.[25]  While these are just guidelines, for trial safety related reasons, it is probable that unvaccinated individuals will responsibly choose to follow them and this Court may similarly choose to impose such a requirement on all participants.  That would mean that if the Court goes forward, it will be imposing a *15-day burden* on any unvaccinated witness for testimony that only lasts one day or less.  That is hardly fair to any witness who has chosen not to be vaccinated, and his or her compelled attendance could well impact the substance of that individual's testimony and also cause force witnesses to choose not to appear, including witnesses needed by the defense.

---

[24]     *See also United States v. Young*, Criminal Action No. 19-cr-00496-CMA, 2020 WL 3963715, *1, 2 (D. Colo. July 13, 2020) (observing that the "[d]efendant may be prejudiced by the jury's inability to clearly observe witness reactions to assess credibility because the witnesses would be required to wear masks that cover their face").

[25]     *Domestic Travel During COVID-19*, C.D.C. (June 10, 2021), https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-during-covid19.html

WHEREFORE, Defendants Ms. Palatella and Mr. Wilson respectfully request that this Court continue their trial until a date and time convenient to the Court, and revise the corresponding pretrial order deadlines to comport with the new trial date.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Defendants Palatella and Wilson respectfully request oral argument on this motion.

*/s/ Michael K. Loucks*
Michael K. Loucks

## LOCAL RULE 7.1(A)(2) CERTIFICATION

The undersigned counsel hereby certifies that counsel for Defendants has conferred with counsel for the Government and attempted in good faith to resolve or narrow the issues raised by this motion, but could not obtain counsel's agreement to the relief sought by this motion.

*/s/ Michael K. Loucks*
Michael K. Loucks

Dated: August 17, 2021
      Boston, Massachusetts

Respectfully submitted,

_/s/ Michael K. Loucks_
Michael K. Loucks (BBO # 305520)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
500 Boylston Street
Boston, MA 02116
(617) 573-4800
michael.loucks@skadden.com

Jack P. DiCanio (_pro hac vice_)
Emily Reitmeier (_pro hac vice_)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, CA 94301
(650) 470-4500
jack.dicanio@skadden.com
emily.reitmeier@skadden.com

_Counsel for Marci Palatella_

_/s/ Michael Kendall_
Michael Kendall (BBO # 544866)
Lauren M. Papenhausen (BBO # 655527)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
(617) 979-9300
michael.kendall@whitecase.com
lauren.papenhausen@whitecase.com

Andrew E. Tomback (_pro hac vice_)
MCLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, NY 10016
(212) 448-1100
atomback@mclaughlinstern.com

_Counsel for John Wilson_

---

**CERTIFICATE OF SERVICE**

    I, Michael K. Loucks, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants, if any, on August 17, 2021.

Dated: August 17, 2021     _/s/ Michael K. Loucks_
                          Michael K. Loucks