# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>GREGORY COLBURN et al.,<br>Defendants. | Case No. 1:19-cr-10080-NMG<br>**Filed Under Seal**<br><u>**ORAL ARGUMENT REQUESTED**</u><br>Leave to file under seal granted on Aug. 27, 2021, in ECF No. 2113 |

## DEFENDANTS' OPPOSITION TO PAT HADEN'S MOTION
## TO INTERVENE AND QUASH TRIAL SUBPOENA

The Court should deny the motion to intervene and quash the trial subpoena by former University of Southern California ("USC") Athletic Director Pat Haden. The government has charged Defendants Gamal Abdelaziz and John Wilson with various counts, including conspiracy to commit honest-services fraud concerning the application and admission of their children to USC as athletes. *E.g.*, Fourth Superseding Indictment, Counts One, Four-Ten (D.E. 732) (hereinafter "FSI"). The FSI alleges that university "[a]thletic coaches and administrators . . . owe[d] a duty of honest services to their employers," FSI ¶ 56, and that those university personnel violated those duties by accepting payments to secure the admission of the Defendants' children to USC, FSI ¶¶ 66(f) 370(b), 376.

Haden set the "tone at the top" for these USC personnel[1] and would provide probative testimony of what honest services his subordinates actually owed to USC. His testimony would be exculpatory. Haden met and exchanged emails with William "Rick" Singer about USC admissions candidates, and—rather than instruct his subordinates to stop working with Singer— instructed them (including then-USC Senior Associate Athletic Director Donna Heinel) to follow-up with Singer. Haden was informed that Singer promised to raise funds for USC coaches if they supported the admission of certain candidates, many of whom would not participate on

---

[1] *Cf.* U.S. Dep't of Justice, Criminal Division, Evaluation of Corporate Compliance Programs, at 10 (June 2020), https://www.justice.gov/criminal-fraud/page/file/937501/download ("The company's top leaders—the board of directors and executives—set the tone for the rest of the company.").

1

USC teams. The Defendants also have developed evidence that Haden instructed USC personnel to route through the athletics subcommittee of USC's admissions process (the "Subco") applicants whose families had donated, or were expected to donate, significant money to USC—even when Haden knew that the candidates were marginal athletes or not athletes at all. Some of these candidates had false or exaggerated credentials.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████  But the jury should be able to hear Haden's testimony: it will prove that USC was not deprived of any honest services as a result of the admission of the Defendants' children to USC. Haden's proposed testimony thus satisfies Federal Rule of Criminal Procedure 17 and *United States v. Nixon*, 418 U.S. 683, 700 (1974).



---

[2] ███████████████████████████████████████████████

[3] *See generally* **Ex. A** ███████████████████████



### I. HADEN'S TESTIMONY IS DIRECTLY RELEVANT TO THE GOVERNMENT'S HONEST-SERVICES CHARGES

**A. The Court should order compliance with the trial subpoena validly issued to Haden**

In every case alleging honest-services fraud, the government must actually prove what honest services were owed. *See, e.g.*, *Skilling v. United States*, 561 U.S. 358, 376 (2010) (approvingly quoting honest-services fraud elements as " '(1) a material breach of a fiduciary duty . . . (2) that results in a detriment to the employer,' including one occasioned by an employee's decision to 'withhold material information, i.e., information that he had reason to believe would lead a reasonable employer to change its conduct' ") (quoting *United States v. Skilling*, 554 F.3d 529 (5th Cir. 2009)); *see also United States v. Sawyer*, 85 F.3d 713, 725 (1st Cir. 1996) (citing cases) (vacating mail, wire fraud convictions). Here, the FSI alleges that the "manner and means" of the Defendants' alleged honest-services-fraud conspiracy involved:

> Bribing athletic coaches and university administrators to designate students as purported athletic recruits—with little or no regard for their athletic abilities and, in some cases, even though they did not play the sport they were purportedly recruited to play—and as members of other favored admissions categories, in violation of the coaches' and administrators' duties of honest services to their employers.

FSI ¶ 66(f). Haden's anticipated testimony would be probative and compelling since it will contradict this central allegation on which most of the government's charges rely.

---

[4]  **Ex. B**

[5]



The Defendants have evidence that Haden, as USC's Athletic Director, instructed USC personnel to weigh applicants' fundraising potential as part of USC's Subco admissions process even as some of these candidates had marginal or no athletic talent. The "tone at the top" that Haden set—and the honest services he expected from his subordinates—was the avid advocacy for the admission of applicants with fundraising potential, regardless of their athletic prowess. Furthermore:



---

6    *See, e.g.,*

- **Ex. C**
- **Ex. D**
- **Ex. E**

7    **Ex. F**

8    **Ex. G**

4



### B. The Court should reject Haden's motion to quash and his arguments contesting the clear relevance of his anticipated testimony

The Court should reject Haden's three arguments to quash the trial subpoena, all of which grossly mischaracterize the evidence Defendants expect to offer, the significance of that evidence, or both.

*First*, as the preceding section of this brief illustrates, the purpose of Haden's testimony is to show that he instructed his staff to engage in fundraising, through the Subco, and *without regard to applicants' actual athletic talent*, which is part of what he also communicated to members of the Subco. This is conduct at the heart of the government's alleged honest-services-fraud conspiracy. But there cannot be any honest-services fraud if the USC personnel who were the Defendants' alleged co-conspirators—Haden's subordinates—did precisely what Haden expected them to do. The Defendants intend to prove those facts at trial, precluding the government from proving beyond a reasonable doubt that USC was deprived of any honest services. As a result, Haden's contention that his testimony has no probative value is utterly without merit. D.E. 2094 at 7.

---

[9]    **Ex. H** ▮

[10]   **Ex. B** at 8 ▮

[11]   **Ex. I** ▮

[12]   **Ex. J** ▮



*Second*, Defendants contend that their conduct was lawful since there was no honest-services fraud, for the reasons explained above. Haden's weak retort—that Defendants "cannot contest their guilty by proving that others committed crimes as well," *id*.—only assumes the conclusion that the government must prove beyond a reasonable doubt. Defendants have no interest in using Haden to prove anyone committed a crime. They seek his testimony to show the Defendants did not commit a crime because Haden's Athletics Department did what he expected and directed, was consistent with USC's overall goals and completely lawful.

*Third*, Haden's motion to quash ends with a straw-man argument—that the Defendants might "argue to the jury that USC's admissions process is arbitrary or unfair." *Id*. That, yet again, is not the Defendants' purpose in seeking Haden's testimony. The illustrative evidence arrayed in the preceding section explains precisely what the Defendants wish to elicit from Haden. That evidence is relevant, admissible, exculpatory, and compelling.

Haden is the central, most senior USC Athletic Department official who can speak with authority to the honest services USC actually expected and whether his subordinates actually provided those honest services. The Court should deny Haden's motion to quash.

II. ███████████████████████ ██ ██ ██ ██ ██
███████████████████████████████████
████████████████████████████
██████████████████████████████
██████████████████████████████
████████████████████████████
████████████████████████████████
██████████████████████████████████
██████████████████████████████████
████████████████████████████████
██████████████████████████████████
██████████████████████████████████





---

[13] **Ex. A** ███████████████
[14] *See* ███████████████
[15] **Ex. K** ███████████████



███████████████████████████████████████████

███████████████████████████████

## CONCLUSION

For the foregoing reasons, the Court should deny Haden's motion to intervene and quash trial subpoena ██████████████████████████████████████████

████████████████████████████████████████████████

Respectfully submitted,

By their counsel

/s/ Michael Kendall
Michael Kendall (BBO #544866)
Lauren Papenhausen (BBO# 655527)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com
lauren.papenhause@whitecase.com

Andrew Tomback (pro hac vice)
MCLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, NY 10016
Telephone: (212) 448-1100
ATomback@mclaughlinstern.com

*Counsel for John Wilson*

/s/ Brian T. Kelly
Brian T. Kelly (BBO # 549566)
Joshua C. Sharp (BBO # 681439)
Lauren M. Maynard (BBO # 698742)
NIXON PEABODY LLP
53 State Street
Boston, MA 02109
(617) 345-1000
bkelly@nixonpeabody.com
jsharp@nixonpeabody.com
lmaynard@nixonpeabody.com
Robert Sheketoff (BBO # 457340)
One McKinley Square
Boston, MA 02109
(617)-367-3449

*Counsel for Gamal Abdelaziz*

Date: August 27, 2021

## CERTIFICATE OF SERVICE

I hereby certify that the above document is being filed on the date appearing in the header through the ECF system, which will send true copies to the attorneys of record.

/s/ Michael Kendall
Michael Kendall