UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Criminal Action<br>No. 19-10080-NMG |
| v. | : | ORAL ARGUMENT REQUESTED |
| GREGORY COLBURN, *et al.*, | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**DEFENDANTS GAMAL ABDELAZIZ'S [DEF. NO. 4]
AND JOHN WILSON'S [DEF. NO. 17] OPPOSITION TO
THE GOVERNMENT'S NOTICE AND MOTION REGARDING AUTHENTICATION**

Defendants Gamal Abdelaziz [Def. No. 4] and John Wilson [Def. No. 17] ("Defendants") respectfully file this opposition to the Government's Notice and Motion Regarding Authentication (the "Motion") (ECF No. 2099.)  The Government's Motion tries to make an end run around the Rules of Evidence and Defendants' constitutional rights.  It asks the Court to ignore the basic and mandatory rules of laying a proper foundation, and instead admit evidence based on bare hearsay or inadequate certifications by FBI agents and service providers.  It seeks the wholesale admission of (i) unspecified emails purportedly from several defendants' and Rick Singer's Gmail accounts and (ii) unspecified phone calls and data, which may include recorded conversations, from Rick Singer's phone intercepted pursuant to a wiretap and a forensic extraction of Rick Singer's iPhone.  The Court should deny the Government's Motion, and stop the Government's effort to take a prohibited short cut.

*First*, the certifications that the Government offers do not establish that the phone calls, text messages, voicemails, and e-mails themselves fall under the business records exception for purposes of pre-authenticating the documents under Rule 902.  In essence, the Government asks

the Court to admit the bulk of the Government's evidence against Defendants without having to call its key witness to lay a proper foundation.  Importantly, most of the items that the Government seeks to pre-authenticate in its Motion purportedly derive from Singer's iPhone and e-mail.  At the same time, the Government has represented to Defendants that it is considering not calling Singer to testify.  Not surprisingly, without calling Singer to testify, the Government cannot lay a proper foundation for admission.  The Government's attempt to admit these underlying documents through Rule 902, however, fails, and these records do not constitute business records for the purpose of pre-authentication under Rule 902.

*Second*, regardless of any hearsay exception, establishing admission of these documents without calling Singer to testify will violate the Defendant's Sixth Amendment right to confront witnesses against them.

I.     **RELEVANT BACKGROUND**

In its Motion, the Government seeks to pre-authenticate three categories of information:

    i.   Contents of e-mails and associated attachments from the following e-mail accounts: "*HOMAZADEH, 9DHODGE, MIANAVS, ALPERT305, DIANEBLAKE, LGIA1VNULLI, KYLIE.SCHUYLER, GAMALAZIZ797, AMYCOLBURN1, EKIMMEL8*" and "*RWSINGER, RICKWSINGER*";

    ii.   Recordings of phone calls and transcripts of text messages intercepted through Singer's phone pursuant to a wiretap; and

    iii.   Voicemail messages and other data that was forensically collected from Singer's iPhone by the FBI including, but not limited to, recorded conversations with other parties.

In order to authenticate the largely unknown numbers of phone calls, text messages, voicemails, and e-mails prior to trial, the Government claims that the business records exception to the hearsay rule is satisfied through the following certifications:

    i.   A Google certification that it pulled printouts of hash values associated with "Google account holder(s) identified with account(s): Google account-holder(s) identified with account(s) *HOMAZADEH, 9DHODGE,*

> *MIANAVS, ALPERT305, DIANEBLAKE, LGIA1VNULLI,*
> *KYLIE.SCHUYLER, GAMALAZIZ797, AMYCOLBURN1, EKIMMEL8*"
> and "*RWSINGER, RICKWSINGER*" (Dkts. 2099-2, 2099-3);

ii. A Microsoft Declaration purporting to attach "records"[1] (Dkt. 2099-4);

iii. A certification by an FBI agent that it intercepted wireless communications on Singer's iPhone in the course of a federal criminal investigation; and

iv. A declaration by an FBI forensic examiner that it "review[ed] a phone extraction . . . [and] locat[ed] six voicemail files" left on an iPhone belonging to someone named Rick Singer.

## II.   THE COURT SHOULD DENY THE MOTION FOR FAILING TO SPECIFY WHAT THE GOVERNMENT SEEKS TO PRE-AUTHENTICATE.

As an initial matter, it is not entirely clear what the Government is asking the Court to pre-authenticate. For example, the government does not specify the scope of what was obtained from the "forensic extraction of Singer's iPhone," Motion at 2. A blanket authentication of all data in the iPhone could cover recorded conversations and other evidence generated when Singer was a cooperator that suffers from very troubling reliability and Confrontation Clause issues. The government cannot employ a blanket pre-authentication to introduce evidence that requires presentation of Singer as witness subject to examination.

The government's lack of specificity here amounts to obfuscation. Indeed, aside from a passing reference in a footnote that the records at issue have been "produced to the defense," Motion at 1, n.2, nowhere in the Motion or supporting Certificates does the Government identify specifically what records it is seeking to pre-authenticate. For example, one of the Certificates of Authenticity relates to "records pertaining to the Google account-holder(s) identified with the account(s) HOMAZADEH, 9DHODGE, MJANAVS, ALPERT305, DIANEBLAKE,

---

[1]     Although the Microsoft certification does not state what documents it is purporting to authenticate, the Defendants assume it purports to authenticate e-mails and their attachments.

LGIANNULLI, KYLIE.SCHUYLER, GAMALAZIZ797, AMYCOLBURN1, EKIMMEL8."

(Dkt. 2099-2).  Nowhere does the Government clarify what records they are seeking to pre-

authenticate or on what grounds.  For example, it is unclear whether the Government is seeking a

blanket authentication of all e-mails for all of those accounts, or a subset of those accounts, or

only certain e-mails from certain accounts.

### III.     THE GOVERNMENT CANNOT SIDESTEP ITS OBLIGATION TO LAY A FOUNDATION FOR AND AUTHENTICATE THE PROFERRED DOCUMENTS AT TRIAL.

The Government faces the burden of producing "evidence sufficient to support a finding

that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  Rules 902(11), (13), and

(14) permit the Court to pre-authenticate certain evidence, without the introduction of extrinsic

evidence, as long as the proponent can satisfy the requirements of Rule 803(6)(A)-(C).  Fed. R.

Evid. 902(11), (12) and (13).  In order to constitute a business record under Rule 803(6), a record

must satisfy three categories:  (A) that it "was made at or near the time by—or from information

transmitted by—someone with knowledge," (B) "was kept in the course of a regularly conducted

activity of a business, organization, occupation, or calling, whether or not for profit," and (C)

"making the record was a regular practice of that activity."  Fed. R. of Evid. 803(6)(A)-(C).

Additionally, all three of those categories must be "shown by the testimony of the custodian or

another qualified witness, or by a certification that complies with Rule 902(11) or (12)."  *Id*.

803(6)(D).  With respect to the latter, "[i]f the certification provides information that would be

insufficient to authenticate the record if the certifying person testified, then authenticity is not

established under this Rule."  *Id*., Ad. Comm. Note. 2017 Amendments.

Here, the Government cannot establish that the records constitute business records, and

therefore should not be pre-authenticated under Rule 902.

A.     <u>**The Government's Proffered  Records Do Not Constitute Business Records.**</u>

Courts routinely hold that e-mails can constitute business records when a proper

foundation is laid but are not business records by default.  *See, e.g.*, *United States v. Ferber*, 966

F. Supp. 90, 99 (D. Mass. 1997) (holding that e-mails created by bank employee were not

business records where she was "under no business duty to make and maintain these E-mail

message[s]"); *United States v. Cone*, 714 F.3d 197, 220 (4th Cir. 2013) (rejecting Government's

argument that e-mails fell within business record exception when foundation was not

established); *United States v. Daneshvar*, 925 F.3d 766, 777 (6th Cir. 2019) (rejecting

defendant's argument that e-mail fell within business record exception).  This remains true in

instances where the Government attempts to admit them through pre-authenticating third-party

records, such as those proposed by the Government here.  *See, e.g.*, *United States v. Shah*, 125 F.

Supp. 3d 570 (E.D.N.C. 2015).

For example, in *United States v. Shah*, when faced with this exact issue, the Eastern

District of North Carolina denied the Government's motion to pre-authenticate electronic

evidence obtained from Google through Rule 901(11).  In *Shah*, the Government moved to pre-

authenticate "44 emails and chats obtained from Google" through a warrant, arguing that the e-

mails and chats constituted "Google's business records" pursuant to Rule 902(11).  The court

denied the Government's motion, holding that the emails and chats were "not Google's business

records, as that term is defined under Rule 803(6)."  *Id.* at 574-576.[2]  The court reasoned that the

---

[2]     *See also United States v. Browne*, 834 F.3d 403, 410 (3d Cir. 2016) (holding that Facebook chat logs were not business records of Facebook in part because "Facebook does not purport to verify or rely on the substantive contents of the communications in the course of its business," but "[at] most . . . can attest to the accuracy of only certain aspects of the communications exchanged," such as "confirmation that the depicted communications took place between certain Facebook accounts, on particular dates, or at particular times"); Fed. R. Evid. 803 advisory committee's note (1972) ("The element of unusual reliability of business records is said variously to be supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation.").

emails and chats were not created by someone at Google "with knowledge," as they were not the product of a "collective effort of 'business insiders,' who share a duty to ensure the accuracy of their statements," and "Google's business model d[id] not depend on the veracity of the information contained" in them. *Id.*

Like in *Shah*, the fact that Google and Microsoft collected e-mails and attachments through its searches of certain e-mail accounts does not transform those records into either Google's or Microsoft's business records. In fact, the Government does not even try in its Motion to explain how it satisfies the requirements of Rule 803(6). Here, the Google and Microsoft custodians can only certify that certain account holder names correspond to certain hash values it produced in response to the Government's search warrant. The Government must lay an additional foundation for introduction of the e-mails themselves—*i.e.*, that the persons associated with these e-mail accounts are in fact the individuals the Government purports and that they did in fact authored and sent the e-mails in question.

Importantly, even assuming that an e-mail address can be linked to a particular individual as the owner of that address (which requires more foundation than a certification from Google or Microsoft showing merely the account name), e-mail messages can be sent by persons other than the named sender. Merely providing a list of e-mail account holders and hash values, self-authenticated or not, does nothing to lay the proper foundation for *who* authored and sent the e-mails in question. *See United States v. Browne*, 834 F.3d 403, 410 (3d Cir. 2016) (reasoning that self-authentication is not sufficient to link social media records with defendant, and that "the Government was required to introduce enough evidence such that the jury could reasonably find . . . that Browne and the victims authored the Facebook messages at issue" and collecting

cases).[3] If the Government plans to gain admission of the e-mails through certifications in lieu of calling Singer to testify that he corresponded with certain defendants in this case, the certifications are plainly insufficient.

The same rationale holds true for the phone calls, text messages, and voicemails. Although the Government attempts to establish admission of this data through declarations of FBI agents and employees that the data was intercepted by the FBI in the regular course of its business, Defendants can find no case law supporting an argument that a federal agency collecting information for use at trial somehow transforms that information into business records of the FBI. In fact, case law supporting pre-authentication of cell phone records is commonly and historically argued through records from the phone company itself. *See, e.g.*, *United States v. Burgos-Montes*, 786 F.3d 92, 119 (1st Cir. 2015) (affirming use of records maintained by "telecommunications carrier . . . showing [only] the locations of its cell towers, including those cell towers to which its records show [victim's] phone connected on the pertinent dates"). Distinctively, although telecommunication carriers do record certain phone data in the regular course of business, the FBI does not. That is especially true here, where the Government intercepted this data solely for the purpose of gathering evidence for later use at trial.

At the heart, the Motion suggests that the Government intends to pre-authenticate these items as records of regularly conducted activity, attempting to establish authenticity and

---

[3]     *See also Shah*, 125 F. Supp. 3d at 577 ("Both email and electronic chats are faceless means of communication. . . . The recipient cannot, simply by looking at the email address or username provided in the document, readily identify the true identity of a message's sender. Even where the email address or username employed by the sender is an eponym . . . the recipient [cannot] rely on the use of an email address or username to conclude that a third party has not made surreptitious use of an otherwise familiar account."); *Cf. United States v. Gal*, 606 F. App'x 868, 874 (9th Cir. 2015) (affirming district court approval but reasoning that "affiant did not attest that [the defendant] sent the emails, but only that Yahoo! made a record of each email as it was sent or received from three email addresses" and explaining that "many victims authenticated the emails"). *Gal*, which is cited by the Government in its Motion, is distinguishable from this case, because the court in *Gal* held that the identity of the sender of the emails was established by other extrinsic evidence.

reliability of hearsay statements in recorded phone calls, text messages, e-mails, and transcribed voicemails without subjecting Singer to examination.  That strategy, however, mocks evidentiary rules by attempting to use Rule 902 as a backdoor to authenticate evidence produced by the government under the guise of business records.  *See, e.g.*, *Browne*, 834 F.3d at 411 (holding that authentication of contents of electronic communications under the records of "regularly conducted activity" rule "would mean that all electronic information whose storage or transmission could be verified by a third-party service provider would be exempt from the hearsay rules").

**B.**     **The Evidence Is Incomplete Without Singer's Testimony.**

If the government introduces all or part of a piece of evidence, the Defendants must be allowed to introduce concurrent evidence when the additional evidence "in fairness ought to be considered at the same time."  *United States v. Altvater*, 954 F.3d 45, 49 (1st Cir. 2020) (quoting Fed. R. Evid. 106); *United States v. Verdugo*, 617 F.3d 565, 579 (1st Cir. 2010) ("The rule of completeness comes into play when a statement is offered to explain another statement that is being admitted into evidence); *see also id.* (stating district court retains discretion under Fed. R. Evid. 611(a) to apply the rule of completeness to oral statement).  Since there is powerful evidence that the government requested Singer to "fib" in his recorded communications, SINGER-PHONE-000495 (Dkt. #995-14), only Singer has the capacity to clarify which of his statements would be part of the alleged conspiracy and what in the recordings and iPhone data are lies created at what he believed was the government's direction.  Therefore, failure to introduce Singer as a witness violates the Defendant's right to confront the witness who is testifying through these recordings at the only moment at trial it would be fair to do so.

Moreover, the prosecution failed either to make a recording or to produce the recording of a call between Defendant John Wilson and Singer.  Defendant's Memorandum of Law in

Support of their Motion to Dismiss Indictment for Suppression of Evidence based on

Governmental Misconduct, ECF No. 972, at 8 (discussing missing records of a call made from

FBI facilities on September 28, 2018).  Absent introduction of the missing tape, Singer must be

produced concurrently with the rest of the tapes to be examined as to whether tapes are missing

or purposely not made of certain conversations.

## IV.   PRE-AUTHENTICATING THE RECORDS WOULD VIOLATE THE CONFRONTATION CLAUSE

Pre-authenticating records relating to the Government's cooperating witness, Rick

Singer, if used to admit the statements at trial without presenting Singer to testify, would violate

the Confrontation Clause.  It is axiomatic that "[t]he Sixth Amendment's Confrontation Clause

confers upon the accused in all criminal prosecutions . . . the right . . . to be confronted with the

witnesses against him."  *U.S. v. Cameron*, 699 F.3d 621 (1st Cir. 2012).  These constitutional

considerations "do[] not evaporate when testimony happens to fall within some broad, modern

hearsay exception, even if that exception might be justifiable in other circumstances."[4]

*Crawford v. Washington*, 541 U.S. 36, 56 (2004).  Indeed, "[d]ispensing with confrontation

because testimony is obviously reliable is akin to dispensing with a jury trial because a defendant

is obviously guilty.  This is not what the Sixth Amendment Prescribes."  *Id*. at 62.

The First Circuit has observed that "[p]ost-*Crawford*, the admission of non-testifying

informants' out-of-court testimonial statements . . . [are] not admissible under the Confrontation

Clause unless (1) the declarant testifies . . . (2) the defendant had a prior opportunity for cross-

---

[4]     As the First Circuit observed in *United States v. Cameron*, "although 'documents kept in the regular course of business may ordinarily be admitted at trial despite their hearsay status,' this would not be so 'if the regularly conducted business activity is the production of evidence for use at trial.'"  699 F.3d at 640 (quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 321 (2009)).  Importantly, "[b]usiness and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial."  *Id*.

examination and the declarant is unavailable . . . or (3) the evidence is admitted for purposes

other than establishing the truth of the matter asserted." *U.S. v. Maher*, 454 F.3d 13, 19-20 (1st

Cir. 2006).  Here, admission of the statements in the phone calls, voicemails, text messages, and

e-mails violate the Confrontation Clause because : (i) the statements are testimonial and (ii) the

Government will almost certainly seek to admit those statements for the truth of the matter

asserted.  *Id*. at 20.

### A.        The Evidence Includes Out-of-Court Testimonial Statements By Singer

The statements contained in the phone calls, text messages, and e-mails are testimonial,

as they fall "within the 'core class' of testimonial statements" identified by the United States

Supreme Court in *Crawford*.  *Id*.  In particular, the statements constitute "statements that were

made under circumstances which would lead an objective witness reasonably to believe that the

statement would be available for use at a later trial."  *Id*. (citing *Crawford*, 541 U.S. at 52);

*United States v. Meises*, 645 F.3d 5, 19-20 (1st Cir. 2011) (reversing conviction due to

introduction of co-conspirator testimonial hearsay).  The First Circuit, in applying *Crawford*, has

observed that "a statement is testimonial if a reasonable declarant, similarly situated, would have

the capacity to appreciate that the statement is of a sort typically 'preserve[d] . . . for . . . potential

prosecutorial use.'"  *Maher*, 454 F.3d at 19-20 (quoting *United States v. Brito*, 427 F.3d 53, 60-

61 (1st Cir. 2005)).  For example, in *Maher*, the First Circuit held that testimony by a police

officer that an informant, who did not testify, told the police officer that the defendant "was

involved in illegal drug dealing activity was testimonial."  *Id*. at 21.[5]

---

[5]        *Accord Meises*, 645 F.3d at 19 (reversing conviction due to introduction against a defendant of post-arrest
testimonial hearsay from co-conspirator to arresting officer); *United States v. Powers*, 500 F.3d 500, 508 (6th Cir.
2007) (holding that confidential informant's "identification of both the van and Defendant were testimonial, out-of-
court statements, offered to establish the truth of the matters asserted" violated defendant's Sixth Amendment rights
and observing that "based on the nature of what C[onfidential] I[nformants]s do and the purposes for which law
enforcement uses them, statements by [them] are generally testimonial in character"); *United States v. Lombardozzi*,

Applying this principle, statements by an undercover informant to defendants or other nongovernmental persons, during a conversation that the informant knows is being recorded by the government, is testimonial if used to prove a crime. *See, e.g.*, *United States v. Gaytan*, 649 F.3d 573, 579 (7th Cir. 2011) (holding that there was "no doubt that . . . statements [made by confidential informant in recordings] were testimonial; [the confidential informant] made them with the knowledge that FBI agents were recording the conversation 'in anticipation of or with an eye toward a criminal prosecution' of [the defendant]"); *United States v. Sandoval*, 6 F.4th 63 (1st Cir. 2021) (holding that informant's statements taken from recordings he made for government were testimonial). *Cf. United States v. Johnson*, 581 F.3d 320, 325 (6th Cir. 2009) ("Because [inmate] did not know that his statements were being recorded and because it is clear that he did not anticipate them being used in a criminal proceeding against [the defendant], they are not testimonial, and the Confrontation Clause does not apply.").[6]

Singer's knowledge is evident from the fact that, as a cooperator, he was motivated to produce evidence that would be useful at trial. *Id.* at 541 ("[W]hen one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is presumptively suspect and must be subjected to the scrutiny of cross-examination."). In fact, Singer's notes evidence the interest and pressure from the FBI field agents, with whom he was forced to have "[l]oud and abrasive calls," where he understood the

_____

491 F.3d 61, 72 (2d Cir. 2007) (observing that "out-of-court testimonial statements of cooperating witnesses and confidential informants directly to the jury" may violate the Confrontation Clause.).

[6]     Like *Johnson*, the other cases cited by the Government are distinguishable. For example, in *United States v. Brinson*, the court was considering whether debit card records were testimonial. 2014 WL 6872171 (10th Cir. Dec. 8, 2014). Such records, however, do not contain statements by confidential informants, let alone statements created for the purpose of proving a crime. Additionally, although the Government cites *United States v. Ellis* for the general proposition that, after *Melendez-Diaz*, that certification under 902(11) "merely establish[es] the existence of the procedures necessary to create a business record," *Ellis* was decided and published before *Melendez-Diaz*. Moreover, the Seventh Circuit's conclusion in *Ellis*, that the certification of a lab analysis was non-testimonial in large part because the lab analysis itself was a business record, is contradicted by *Melendez-Diaz*.

agents wanted him "to bend the truth," hoped to "nail" specific targets, and make false offers to clients "despite there not being a chance" of success. SINGER-PHONE-000495 (Dkt. #995-14). Singer obliged, both following and deviating from carefully crafted scripts and interjecting out of context snippets to create the testimony the government wanted. *See* SINGER-PHONE-000495 (Dkt. #995-14) (Singer writing "They [the government agents] continue to ask me to tell a fib and not restate what I told my clients as to where [their] money was going- to the program not the coach and that it was a donation and they [the government agents] want it to be a payment"). Those calls have become the government's key evidence against the two Defendants going to trial. This is not a surprise, as the calls were specifically tailored, at the government's direction, to create the appearance that the defendants were guilty of a crime. There is simply no question that Singer made the statements on the calls for the purpose of them being used as prosecution evidence in a criminal proceeding.

### B.    The Evidence Is Being Introduced To Establish That The Defendants Intended To Commit Crimes.

The Government cannot credibly argue that they are attempting to use Singer's statements for anything but their truth. *See, e.g.*, *United States v. Cabrera-Rivera*, 583 F.3d 26, 34 (1st Cir. 2009) (vacating conviction due to violation of Confrontation Clause caused by admission of out-of-court statements used to emphasize the guilt of the defendant's alleged accomplices, despite Government's claim that those statements merely provided context for the discovery of other admissible evidence"). The government has other evidence of Defendants' intent, but that evidence does not comport with the evidence it sought to create using Singer's scripted statements. For example, in his first recorded call to Abdelaziz on October 25, 2018, Singer tried to get Abdelaziz to agree that "$300,000, um, was paid to . . . Donna Heinel at USC to get [Abdelaziz's daughter] into school." Exhibit A, 10/25/18 Abdelaziz Tr. (excerpts) at 4.

12

But an FBI report shows that the very same week that Singer made this call, he told the government that Abdelaziz did not know about Heinel and knew the money was going to the school.  Similarly, in an attempt to "nail" Wilson, Singer stated, "we get the girls in, it's a done deal and . . . you're gonna make the payments to the schools and the – to the coaches . . . ," to which Wilson replied, "I thought I make the payment to you and you made the payment to the school."  Exhibit B, 10/15/18 Wilson Tr. (excerpts) at 9.  Singer also attempted to create confusion between the coaches and the programs, as exemplified by making references to athletic programs in need of assistance, "[W]omen's lacrosse. Is always looking for help. Women's fencing, looking for help," and in the same breath, dropping the expression "we pay the coach, we get it done." Exhibit C, 11/5/18 Wilson Tr. (excerpts) at 7:11-14.  This heavily loaded lead-in is answered by a monosyllabic "OK", *id.* at 7:15, giving the erroneous impression that Wilson assented to bribing the coach.  It is clear that the government does not want to use these recordings merely to present the Defendants' words; it wants to persuade the jury to believe that Singer's statements are truthful.  The central issue of the case, contested by the Defendants, is that Defendants got their children into USC under false pretenses, or planned to get them into other schools through fraud.  The defendants contest the Government's version, and the jury cannot decide this issue based upon the testimonial statements of a non-testifying government agent.

> ### C.    Introduction Of Tapes Without Singer Allows The Government To Manufacture A Context Without Being Subject To Any Cross Examination.

Singer's statements on the recorded calls are made even more unreliable given his status as a cooperating witness, and the reduction in sentence he hopes to gain by incriminating Defendants.  *See Lee v. Illinois*, 476 U.S. 530, 541 (1986) ("[W]hen one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the

accusation is presumptively suspect and must be subjected to the scrutiny of cross examination.").  These unreliable statements cannot be admitted without the opportunity for cross-examination.  *See id.* at 546 (statements lacking sufficient "indicia of reliability" cannot be admitted without adequate opportunity for cross-examination).  If the government wishes to use Singer's testimony against Defendants, it must call him.  *Melendez-Diaz*, 557 U.S. at 324 ("[T]he Confrontation Clause imposes a burden on the prosecution to present its witness, not on the defendant to bring those adverse witnesses into court.").  The Court cannot otherwise allow these unreliable, testimonial hearsay statements to be admitted as evidence.  *See United States v. Meises*, 645 F.3d 5, 25 (1st Cir. 2011) (vacating convictions where trial court allowed testimonial hearsay statement of co-conspirator into evidence, and the testimony "sealed any gap the jury may have perceived between the circumstantial evidence and a finding of guilt").

Authentication of the recorded calls under Rules 902 cannot cure the Confrontation Clause and the hearsay issues since it cannot even begin to resolve the serious reliability concerns.  There are at least two reliability concerns here: whether the tapes contain a true dialogue between the parties and whether the conversations discuss truthful matters.  The Defendants have a right to cross examine a witness with personal knowledge as to both of these issues.   In particular, they have the right to examine the declarant regarding the context and true meaning of the words exchanged on the recordings.  No certification of authenticity can provide that.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny the Motion.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Defendants respectfully request oral argument on this motion.

Dated:  August 27, 2021                        Respectfully submitted,
           Boston, Massachusetts

*/s/Michael Kendall*                             */s/ Brian T. Kelly*
Michael Kendall (BBO # 544866)                  Brian T. Kelly (BBO # 549566)
Lauren M. Papenhausen (BBO # 655527)            Joshua C. Sharp (BBO # 681439)
WHITE & CASE LLP                                Lauren A. Maynard (BBO # 698742)
75 State Street                                 NIXON PEABODY LLP
Boston, MA 02109-1814                           53 State Street
(617) 979-9300                                  Boston, MA 02109
michael.kendall@whitecase.com                   (617) 345-1000
lauren.papenhausen@whitecase.com                bkelly@nixonpeabody.com
                                 jsharp@nixonpeabody.com
Andrew E. Tomback (pro hac vice)                lmaynard@nixonpeabody.com
MCLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, NY 10016                              Robert Sheketoff (BBO # 457340)
(212) 448-1100                                  One McKinley Square
atomback@mclaughlinstern.com                    Boston, MA 02109
                                 (617)-367-3449
*Counsel for John Wilson*
                                 *Counsel for Gamal Abdelaziz*

## CERTIFICATE OF SERVICE

I, Michael Kendall, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants, if any, on August 27, 2021.

Dated: August 27, 2021          */s/  Michael Kendall*
                              Michael Kendall