UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.: 19-10080-NMG |
| | ) | |
| GAMAL ABDELAZIZ *et al.*, | ) | |
| | ) | |
| Defendants | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS'**
**MOTION TO SUPPRESS CONSENSUALLY RECORDED CALLS  [DKT. 2128]**

The defendants' eve-of-trial motion to suppress consensually recorded calls is both untimely and frivolous on its merits. Dkt. 2128. Indeed, the defendants concede that "it may seem odd to require a telephone company to receive a court order prior to intercepting a telephone where the owner of the device has already consented to such interception." *Id.* at 7. That argument is not just "odd." It is contrary to Title III and black-letter law.

For two-and-a-half years, the defendants have been aware not just of the consensually recorded calls they now seek to suppress, but also of the fact that AT&T facilitated the government's interception of those calls pursuant to the consent of the device's owner, William "Rick" Singer. Indeed, the consent form they now challenge, and the letter seeking AT&T's assistance, was produced to them on May 17, 2019. Now, however – barely a week before trial, in a last-ditch effort to prevent the jury from hearing their own devastating admissions captured on tape – they seek unprecedented relief based on their purported late discovery of a "profound error" in how those calls were intercepted. *Id.* at 1. But there was no error, and the interceptions were utterly routine and lawful. For those reasons, and the reasons set forth more fully below, the defendants' motion should be denied.

I.      **RELEVANT BACKGROUND**

      A.      **The Wiretaps and the Consensually Recorded Calls**

On September 21, 2018, law enforcement agents approached Singer based on information gathered from, among other things, four consecutive 30-day wiretaps of his phone number ending in -8802.  The last of those court-authorized wiretaps was scheduled to expire on September 29, 2018.  Dkt. 2128-1 at 2.

On September 27, 2018, after conferring with his attorney, Singer signed a consent and acknowledgement form stating: "I consent to the interception and recording of any and all communications made by me over *all telephones*, cellular or otherwise, provided to *or made available to me* by law enforcement agents in connection with actions taken by me in connection with law enforcement agents."  Dkt. 2128-3 (emphasis added).  Singer and his attorney each signed the consent form in the presence of federal agents.  *Id.*  The government provided the signed consent form to Singer's phone provider, AT&T, together with a letter noting that, in accordance with 18 U.S.C. § 2511(2)(c), "consent of one of the parties to a communication is sufficient under the law to permit monitoring without court order."  Dkt. 2128-2.  The letter was inadvertently dated September 20, 2018, but the consent form was dated September 27, and the consensual interceptions did not begin until after AT&T received the consent form.

On October 2, 2018, in the application to seal the final Title III wiretap and to postpone inventories, the government informed the court that Singer had begun cooperating, that he had consented to the recording of his calls, and that the court-authorized interceptions of his phone that had commenced pursuant to the court's most recent renewal of the wiretap on August 30, 2018, had therefore "ceased at midnight of September 27, 2018" (two days before it was scheduled to expire).  Dkt. 2128-1 at 2–3.  At the direction of law enforcement, Singer proceeded to make

2

consensually recorded calls from his phone to the defendants and others, and the government intercepted and monitored those calls with technical assistance from AT&T. *Id*.

Based in part on evidence collected during those calls, the defendants were arrested via criminal complaint in March 2019. Dkt. 3. The complaint detailed the consensually recorded phone calls between Singer and defendant Abdelaziz, and between Singer and defendant Wilson. Dkt. 3-3 at ¶¶ 192–93 (Abdelaziz); Dkt. 3-4 at ¶¶ 304–10 (Wilson). On May 17, 2019, the government produced discovery concerning the Title III wiretaps and the consensually recorded calls to defendants Abdelaziz and Wilson. The production included Exhibits A, B, and C to the defendants' motion to suppress: the motion to seal submitted to Judge Burroughs, the letter submitted to AT&T, and the consent form signed by Singer and his attorney.

### B.      The Court's Deadline for Motions to Suppress

On January 17, 2020, Chief Magistrate Judge Kelley set a deadline of April 1, 2020 for all motions pursuant to Fed. R. Crim. P. 12(b), including motions to suppress. Dkt. 745 at 1. During a February 2020 status conference, this Court confirmed that deadline. Dkt. 914 at 12:20–24 ("Those motions will be due as originally scheduled on April 1."). Leading up to the April 1, 2020 cut-off, the defendants filed nearly 20 such motions, including several motions to suppress both the court-authorized wiretap calls intercepted pursuant to Title III and the calls recorded with Singer's consent. *See, e.g.*, Dkt. 971, 1015, 1024.

None of the dozens of lawyers for the 14 defendants who filed those motions, including counsel for Abdelaziz and Wilson, argued that the consensual calls were subject to Title III and improperly intercepted without court authorization, or alternatively, that Singer's consent to the interceptions was invalid. To the contrary, the defendants acknowledged that Singer had consented to the interceptions beginning on September 27, 2018, and they even distinguished those

recordings from the previous court-authorized Title III wiretaps.  *See, e.g.*, Dkt. 972 at 24–25 (noting that the government recorded Singer's calls "pursuant to a Title III wiretap between June 5, 2018, and September 29, 2018, *and with his consent* between September 27, 2018 and March 11, 2019") (emphasis added); *see also id.* at 22 ("Singer wrote the notes on the phone that *he allowed the [g]overnment to monitor*.") (emphasis added).  As of June 24, 2020, this Court fully adjudicated the defendants' various motions to suppress, denying them all.  Dkt. 1169, 1338.

## II.  <u>ARGUMENT</u>

The defendants' motion to suppress the consensually recorded calls between Singer and the defendants should be denied for at least three reasons.  <u>First</u>, it is untimely by nearly a year-and-a-half, and the defendants cannot demonstrate good cause for the delay.  <u>Second</u>, Title III expressly exempts consensual interceptions from its scope, and Singer both explicitly and impliedly consented to the interception and recording of his phone calls.  <u>Third</u>, suppression is not warranted under the good-faith doctrine.

### A.  <u>The Motion Is Untimely and the Defendants Cannot Demonstrate Good Cause</u>

<u>First</u>, the Court need not – and under the circumstances should not – consider the defendants' motion to suppress because it is untimely.  Untimely is an understatement: the Court's deadline for motions pursuant to Fed. R. Crim. P. 12(b) passed 17 months ago.

Under Fed. R. Crim. P. 12(c)(3), "[i]f a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely."  Such an untimely motion may be considered only if "the party shows good cause" for the delay.  *Id.*  Recently, the First Circuit has affirmed the denial of motions to suppress as untimely that were filed shortly after the district court's deadline for Rule 12(b)(3) motions passed, even where the defendant presented at least a colorable justification for the delay.  For example, in *United States v. Arias*, Chief Judge Saylor denied the defendant's

4

motion for leave to file a motion to suppress wiretap evidence as untimely where newly-appointed CJA counsel missed the deadline by two weeks. *See Arias*, No. 13-10263-FDS, Dkt. 226 (D. Mass. May 7, 2015). In affirming, the First Circuit concluded that the district court correctly "denied [the defendant's] third suppression motion because it had been filed more than two weeks after the previously imposed deadline for making such a finding." *United States v. Arias*, 848 F.3d 504, 513–14 (1st Cir. 2017).[1] In a similar situation, the First Circuit "conclude[d], without serious question," that a motion to suppress was properly denied as untimely where it was filed five months late, noting that "[t]o say more about this claim . . . would be pointless." *United States v. Santana-Dones*, 920 F.3d 70, 81 (1st Cir. 2019), *cert denied*, 140 S. Ct. 257 (2019); *see also United States v. Sweeney*, 887 F.3d 529, 534 (1st Cir. 2018) (affirming denial of motion to suppress as untimely where it was filed shortly before trial); *United States v. Walker-Couvertier*, 860 F.3d 1, 9 & n.1 (1st Cir. 2017) (explaining that, pursuant to Rule 12(c)(3), the First Circuit deems waived and declines to review any untimely motion to suppress that is not excused by good cause for the delay, even where the district court denied the motion on the merits after finding the motion untimely).

Here, the deadline for filing suppression motions passed more than one-thousand docket entries ago. And the defendants – represented by sophisticated counsel – cannot establish *any* cause, much less "good cause," for bypassing the deadline by 17 months. Without even seeking leave of Court to file their motion to suppress, the defendants barely try to justify the motion's untimeliness. Instead, in a single citationless paragraph concluding their motion, the defendants maintain that the purported Title III violations "were only recently fully exposed" by a certification of authenticity that the government filed for the Title III and consensual calls. Dkt. 2128 at 12.

---

[1] Unless otherwise noted herein, all internal citations, quotation marks, and alterations are omitted.

That is untrue.  The certification, sworn by a Supervisory Special Agent of the FBI, adds nothing to the discovery that the defendants received 28 months ago about the Title III wiretaps and consensually recorded calls.  Rather, it states that phone providers are statutorily required to "have the ability to perform electronic surveillance pursuant to a court order *or other lawful authorization*" (*e.g.*, consent, discussed below), and that, in this case, Supervisory Special Agent King was able to authenticate the Title III and consensual recordings from June 2018 to March 2019 that were stored in the FBI's telephony collection system.  Dkt. 2099-1 at ¶¶ 3, 4, 7.  For more than two years, the defendants have had ample time to review, among other things, (i) the complete set of Title III wiretap calls and the consensually recorded calls, (ii) all sealed court filings in connection with the wiretap, including the motion to seal appended as Exhibit A to their present motion, and (iii) the letter to AT&T and Singer's consent form appended as Exhibits B and C to their motion.

From those documents, it was abundantly clear that AT&T provided technical assistance for the consensual interceptions, based on Singer's consent, after the court-authorized wiretap concluded.  The recently filed authenticity certification adds nothing to what the defendants already knew from discovery and what they told the Court in moving to suppress the Title III calls and consensual recordings for other reasons: "[The government recorded calls] pursuant to a Title III wiretap between June 5, 2018, and September 29, 2018, *and with [Singer's] consent* between September 27, 2018 and March 11, 2019."  Dkt. 972 at 24–25.  Accordingly, the sole basis the defendants provide for their untimely filing is not only insufficient to establish "good cause," it is also untrue.  Their motion is a quintessential example of one warranting denial as untimely under Fed. R. Crim. P. 12(c)(3).

**B.**       **Title III Does Not Require a Court Order for Consensually Intercepted Calls, and Singer Both Expressly and Impliedly Consented to Interception**

<u>Second</u>, Singer's express and implied consent to the government's monitoring of his phone triggers the statutory exclusion for consensual interceptions from Title III.

Title III of The Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. §§ 2510 *et seq.*, "prohibits the interception of telephone conversations, subject to certain exceptions, without a court order." *United States v. Lewis*, 406 F.3d 11, 14 (1st Cir. 2005) (citing 18 U.S.C. §§ 2511, 2518); *accord United States v. Roy*, 349 F. Supp. 2d 60, 62 (D. Mass. 2003) (Gorton, J.). The law prescribes requirements that law enforcement must satisfy to engage in "covert," that is *non-consensual*, surveillance. *See Dalia v. United States*, 441 U.S. 238, 240 & nn. 1–2 (1979) ("All types of electronic surveillance have the same purpose and effect: the *secret* interception of communications.") (emphasis added). But as the First Circuit has explained, "Congress, in its wisdom, chose to insert a myriad of exceptions and restrictive definitions into Title III, purposely leaving certain wire communications unprotected." *United States v. v. Diaz-Diaz*, 433 F.3d 128, 134 (1st Cir. 2005) (quoting *Griggs-Ryan v. Smith*, 904 F.2d 112, 116 (1st Cir. 1990)).

Consent is one of those myriad of exceptions to Title III's prohibitions on interception absent court authorization. Specifically, Section 2511(2)(c) provides the consent exception to Title III's requirements:

> It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

18 U.S.C. § 2511(2)(c). Or as Justice O'Connor has more plainly explained, Section 2511(2)(c) expressly excludes consensual recordings from Title III's scope and "authorizes telephone calls to

be monitored if one party to the call consents to the monitoring." *United States v. Conley*, 531 F.3d 56, 58 (1st Cir. 2008) (O'Connor, J.). Thus, "if [one party] granted consent to monitoring of his calls, their introduction into evidence would not violate [Title III]." *Id.* (affirming denial of motion to suppress). This is unsurprising: if the interception is by consent, then it is not secret to the party whose phone is being intercepted.

Section 2511(2)(c)'s exclusion of consensually recorded communications from Title III's requirements has been repeatedly applied in the First Circuit and this District in a variety of contexts. *See, e.g.*, *United States v. Font-Ramirez*, 944 F.2d 42, 47 (1st Cir.2005) ("The statute permits the taping of conversations without [court] approval if a person who is a party to the conversation gives prior consent."); *see also Lewis*, 406 F.3d at 14 (affirming denial of motion to suppress consensually recorded calls); *United States v. Footman*, 215 F.3d 145, 154–55 (1st Cir. 2000) ("It is settled law [under Title III] that only one party need consent to the interception of the calls."); *United States v. Pratt*, 913 F.2d 982, 986–87 (1st Cir. 1990) ("While it is certainly true, as a general rule, that eavesdropping and wiretapping are permissible only with probable cause and a warrant, under federal law, consent of one party to a conversation is sufficient to permit a person acting under color of law to lawfully intercept a wire, oral, or electronic communication."); *Griggs-Ryan*, 904 F.2d at 116 (applying the "Title III exclusion applicable where one of the parties to the communication has given prior consent to such interception"); *Novak v. United States*, No. 10-11975-RGS, 2012 WL 170885, at *1 n.4 (D. Mass. Jan. 20, 2012) (finding argument that consensually recorded calls were inadmissible under Title III "doomed from the outset" because "[t]he consent exemption to Title III renders its exclusionary provisions inapplicable when one of the parties to the communication has given prior consent to such interception"); *United States v. Sanchez*, No. 05-10235-GAO, 2007 WL 9718522, at *3 (D. Mass. Sept. 7, 2007) (denying motion

8

to suppress because individual, "after agreeing to cooperate and set up a cocaine buy with [defendant], consented to let [agents] listen in on his conversations as they were being conducted"). Accordingly, it is well-settled that "evidence obtained from a consensual wiretap conforming to 18 U.S.C. § 2511(2)(c) is admissible" without implicating Title III. *United States v. Adams*, 694 F.2d 200, 201 (9th Cir. 1982), *cert. denied*, 462 U.S. 1118 (1983).

Against this backdrop, the defendants effectively ask this Court to rewrite Title III and create new law. Specifically, they contend that "regardless of consent, a [phone] provider cannot assist in interception and monitoring absent court order." Dkt. 2128 at 4. In other words, the defendants maintain, if an individual consents to interception, and law enforcement uses, for example, a tape recorder, Title III is not implicated due to the consent exclusion. But if the individual consents, and law enforcement seeks technical assistance from the individual's phone provider to intercept the call, Section 2511(2)(c)'s exclusion from Title III for consensual interceptions evaporates, and law enforcement must then obtain court authorization to execute consensual interceptions.

That is not the law. Unsurprisingly, the defendants cite no case even suggesting that there is such an unwritten exception to Section 2511(2)(c)'s explicit authorization of consensual interceptions, and the government is unaware of any such precedent. *See, e.g.*, *Adams*, 694 F.2d at 201 ("[E]vidence obtained from a consensual wiretap conforming to 18 U.S.C. § 2511(2)(c) is admissible . . . .").

Indeed, the case law is flatly to the contrary – including the lone authority defendants cite. *See* Dkt. 2128 at 6 (citing *In re Application of the United States*, 128 F. Supp. 3d 478 (D.P.R.

2015)).[2]  In that case, the court reaffirmed the precedent above, explaining that Title III "authorizes law enforcement to conduct wiretaps *without court approval* where permission is given by one party to the communication."  *Id.* at 483 (emphasis added).  Because the individual in that case consented to monitoring, the court explained that "law enforcement officers here *do not need an order* authorizing or approving the interception of electronic communications to and from [the] Target Phone, because § 2511(2)(c) allows law enforcement officials to intercept oral, wire, or electronic communications without [court] approval if . . . a party to the conversation gives prior consent."  *Id.* at 482 (emphasis added).  In that case, the issue before the court was the phone provider's refusal to provide technical assistance for the consensual interceptions without a court order, and the court thus ordered the provider to do so pursuant to Fed. R. Crim. P. 41, precisely *because* the court did not have authority under Title III to order a consensual wiretap.  *See id.* at 484.

Likewise, in a recent case in the Eastern District of New York, the court found that it lacked authority under Title III or the All Writs Act to *order* a phone company to facilitate a consensual wiretap where the company refused, but that the government *did not need* such an order to obtain the phone company's voluntary assistance in light of the consent.  *See In re Application of the United States*, 256 F. Supp. 3d 246 (E.D.N.Y. 2017).  The court wrote:  "It is no criticism to observe that the government has not met its burden [under Title III] to secure an order permitting the interception of communications for the simple reason that *no such order is legally required* under the circumstances.  The Witness having provided consent, the government is within its rights

---

[2] The defendants also include a "*cf.*" citation to a decision in this District, where the court addressed a non-consensual Title III wiretap, which is not implicated by the defendants' motion. *See United States v. Rodriguez*, No. 17-10066-IT, 2018 WL 988054, at *4 (D. Mass. Feb. 20, 2018) ("It is for the court, and not the service provider, to decide whether interception is warranted.").

to intercept the Witness's communications without a court order." *Id*. at 251 n.6 (citing 18 U.S.C. § 2511(2)(c)).

Here, the defendants argue that law enforcement *must* obtain court-authorization pursuant to Title III to obtain technical assistance from a provider in executing a consensual wiretap.  But no court has ever reached that conclusion.  To the contrary, courts have held that not only does law enforcement not *need* court-authorization to execute a consensual wiretap under Section 2511(2)(c), but that Title III does not even confer on courts the authority to order such consensual wiretaps where providers decline to assist.  *See In re Application of the United States*, 128 F. Supp. 3d at 483 ("Title III also does not appear to provide the necessary authority for me to order provider cooperation.").  In other words, the relief the defendants seek is barred by statute.

Furthermore, the defendants argue that AT&T was barred by Title III from voluntarily complying with the request to provide technical assistance with the consensual interceptions, contending that service providers may only do so based on either an order or certification for provider assistance pursuant to 18 U.S.C. § 2511(2)(a)(ii).  However, 18 U.S.C. § 2511(3) expressly permits "an entity providing electronic communication service"[3] to divulge the contents of any communication "with the lawful consent of the originator or any addressee or intended recipient of such communication."  18 U.S.C. § 2511(3)(b)(ii).  Such consent was obtained from Singer, the undisputed originator and recipient of every call over the monitored phone, and notice of that consent was provided to AT&T before AT&T assisted with the interceptions.  Moreover, Title III grants a service provider complete immunity against liability for any civil or criminal violation under the statute where the provider made a "good faith determination that section

---

[3] Section 2510(15) defines "electronic communication service" as "any service which provides to users thereof the ability to send or receive *wire* or electronic communications."  18 U.S.C. § 2510(15) (emphasis added).

2511(3) . . . of this title permitted the conduct complained of."  18 U.S.C. § 2520(d)(3).  Thus, AT&T's voluntary assistance was permissible according to the plain language of Title III.

Perhaps recognizing the weakness of their unprecedented argument, the defendants retreat to a second contention under Title III:  even if the government did not need court authorization to consensually monitor Singer's phone and AT&T did not need court authorization to provide technical assistance, Singer "did not grant consent."  Dkt. 2128 at 10.  This contention is equally meritless.

Tellingly, the defendants cite no precedent regarding the meaning of consent under Section 2511(2)(c).  It is "settled law in the First Circuit and elsewhere that Title III affords safe harbor" for both "explicit consent" and "implied consent."  *Gilday v. Dubois*, 124 F.3d 277, 297 (1st Cir. 1997).  As this Court has held, it is also "settled law" that "the consent exemption under Title III is construed broadly."  *Roy*, 349 F. Supp. 2d at 63 (Gorton, J.).  Here, there is no question that Singer provided express written consent for law enforcement to monitor his phone calls: he and his attorney signed a consent and acknowledgement form stating: "I consent to the interception and recording of any and all communications made by me over all telephones, cellular or otherwise, provided to or made available to me by law enforcement agents in connection with actions taken by me in connection with law enforcement agents."  Dkt. 2128-3 (emphasis added). The First Circuit has found explicit consent "unambiguous" in similar circumstances.  *See, e.g.*, *United States v. Footman*, 215 F.3d 145, 155 (1st Cir. 2000) (finding "unambiguous[]" explicit consent where inmate signed a form indicating that he understood that any use of the telephone, except in calling an attorney, would be subject to monitoring).

Confronted with Singer's consent form, which they have possessed for more than two years, the defendants retreat yet again, this time to semantics.  Singer's consent, the defendants

12

maintain, was not valid because law enforcement monitored his *personal* cell phone, whereas his acknowledgement form granted law enforcement consent to monitor "all telephones, cellular or otherwise, provided to or made available to me by law enforcement agents in connection with actions taken by me in connection with law enforcement agents."  This argument is meritless for two reasons.  As an initial matter, law enforcement agents only "made available" one phone for Singer to make calls at the agents' direction:  that was his personal phone, which the agents allowed Singer to use so that he could continue to seamlessly conduct his business as part of the government's proactive investigation.  Moreover, even assuming the consent form Singer and his attorney both signed somehow did not encompass his personal cell phone (which it did), Singer gave implied consent to the interception and recording of calls over this device by making calls to the defendants at the direction of, and using ruses designed by, law enforcement agents.  "In the Title III milieu as in other settings, consent inheres where a person's behavior manifests acquiescence or a comparable voluntary diminution of his or her otherwise protected rights." *Griggs-Ryan*, 904 F.2d at 116.  Implied consent is "inferred from surrounding circumstances indicating that the party knowingly agreed to the surveillance," including "language or acts which tend to prove . . . that a party knows of, or assents to, encroachments on the routine expectation that conversations are private."  *Id.* at 116–17 (finding implied consent given repeated actual and constructive notice of monitoring).  By repeatedly making calls at the direction of law enforcement, on a phone that he knew was being intercepted and recorded, Singer consented to the monitoring of his phone.

C.      **Suppression Is Not Warranted Under the Good-Faith Doctrine**

Third, even were the Court to conclude that the defendants have demonstrated good cause for their untimely suppression motion (which they have not), and even were the Court to conclude

13

either that (i) law enforcement was required to obtain a court-authorized Title III wiretap despite Singer's consent, or that (ii) Singer did not validly consent, suppression would nevertheless be unwarranted.  No court has ever construed Section 2511(2)(c) to hold that judicial authorization is required for consensual interceptions.  Nor has any court, to the government's knowledge, ever found that a consent form signed by both an individual and his attorney was insufficient to trigger Section 2511(2)(c)'s exclusion of consensual interceptions from Title III.  Accordingly, the government acted in good faith by executing the consensual interceptions in accordance with Section 2511(2)(c) and First Circuit precedent broadly construing consent and holding that Title III's requirements are not implicated by consensual wiretaps.  *See, e.g.*, *United States v. Rose*, 914 F. Supp. 2d 15, 23 (D. Mass. 2012) (Gorton, J.) (citing *Davis v. United States*, 564 U.S. 229 (2011)) (denying motion to suppress, and explaining that "the last resort of suppression [wa]s not warranted [] because the agents did not exhibit deliberate, reckless, or grossly negligent disregard" and because they "rel[ied] on the consensus of lower courts and a common-sense reading of Supreme Court doctrine").  "To penalize the government when it acts in good faith is unlikely to have a deterrent effect on future 'misconduct.'"  *United States v. Vest*, 842 F.2d 1319, 1334 (1st Cir. 1988) (rejecting dismissal based on the government's good faith, but legally incorrect, belief in the legality of playing a recording to a grand jury in violation of Title III).

III.    **CONCLUSION**

For the foregoing reasons, the defendants' motion to suppress should be denied.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By: */s/ Ian J. Stearns*
    JUSTIN D. O'CONNELL
    KRISTEN A. KEARNEY
    LESLIE A. WRIGHT
    STEPHEN E. FRANK
    IAN J. STEARNS
    Assistant United States Attorneys

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: September 5, 2021          */s/ Ian J. Stearns*
                                   IAN J. STEARNS