UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GREGORY COLBURN et al.,<br><br>Defendants | No. 1:19-CR-10080-NMG<br><br>**Leave to file granted 9/7/2021** |

# REPLY IN SUPPORT OF

# MOTION TO SUPPRESS THIRTEEN WIRETAP RECORDINGS

The government begins its Opposition by falsely stating that "the interceptions were utterly routine." Dkt. 2151 at 1. They were nothing of the sort. An AUSA self-authorizing electronic surveillance by a telephone company without the approval of a judicial officer is not "utterly routine"; it is both extraordinary and illegal.

The government cannot change the plain language of the statute, **18 U.S.C. § 2511(2)(a)(ii), which is directly on point and largely ignored in the government's brief.** A telephone company cannot provide technical assistance to law enforcement in intercepting telephone calls without a Court order. The AUSA's actions disregard the legislative branch's determination to assign an important gatekeeping function to the United States courts.

There is no dispute that Section 2511(2)(c) provides an exception for consensually recorded calls by a "person acting under color of law." But the question is whether a Court order is required where a "provider of wire or electronic communication service" is asked to provide "technical assistance" to such "persons authorized by law to intercept" wires. Section 2511(2)(a)(ii) provides the clear answer. Although the government faults the Defendants for not citing enough cases supporting their argument, it is entirely unsurprising that the case law is so sparse given the plain language of the statute and most prosecutors' hesitation to use such unprecedented tactics. In this regard, the government's argument that "Section 2511(2)(c)'s exclusion of consensually recorded communications from Title III's requirements has been repeatedly applied in the First Circuit and this District **in a variety of contexts**" (emphasis added) is telling for what it does not say— that a Court has never held that the consensual exception applies **in the context at issue here**. Indeed, the government fails to convincingly cite any case for that central proposition.[1] The best they can do is cite a footnote from the Eastern

---

[1] The government uses the term "consensual wiretap" throughout its motion and includes a 1982 case from the Ninth Circuit (*United States v. Adams*) in which the general term is used. The term "consensual wiretap" does not have a

District of New York that states—unobjectionably—that a government can intercept a phone call without a court order, but does not opine on the central issue of whether a provider like AT&T can be enlisted to provide technical assistance to law enforcement without judicial authorization.[2]

What sets this case apart from all others is that Singer's so-called "consensual calls" were made in a most unusual manner—not with a recording device, but with the telephone company intercepting each and every call made to and from Singer's phone. As demonstrated by Special Agent King's **August 13, 2021** declaration, the telephone company's participation in this process was identical to its participation in the Court-ordered wiretap—but there were no safeguards such as monitoring, minimization, or anything of the sort. If the government was going to proceed in such an extraordinary manner, it needed to ensure that its procedures were in full compliance with applicable law. It failed to do so. As with AUSA Rosen's failure to turn over *Brady* materials in his possession for nearly eighteen months, this is another "irresponsible and misguided" judgment for which the United States Attorney's Office must bear full responsibility. Dkt. 1169 at 8. And "good faith" arguments simply do not apply where an AUSA recklessly ignores the text of the relevant wiretapping statute.

---

defined meaning. At issue *here* is a wiretap in which technical assistance is provided by a telephone company in violation of Section 2511(2)(a)(ii). It is clear that when the Ninth Circuit used the term "consensual wiretap" in the *Adams* case, they were not referring to a technical assistance provided by a telephone company. The term "consensual wiretap" is generally understood as a government recording of an informant's phone using a device or software—not the technical assistance of a telephone provider.

[2] The government's argument regarding section 2511(3) – to which it devotes only two paragraphs—is pure misdirection. The government's reading of section 2511(3) would swallow the rule established by section 2511(2)(a)(ii). In fact, section 2511(3) directly references section 2511(2)(a). Section 2511(2)(a) establishes the procedure for providing "technical assistance to persons authorized by law to intercept wire[s]" and is directly on point to the issue here. The provision cited by the government refers to "divulging the contents of any communication …. with the lawful consent of the originator or any addressee or intended recipient of such communication." That provision was added by the Electronic Communications Privacy Act of 1986 in an entirely different context.

3

Finally, as to timeliness, the undersigned respectfully submit that they have demonstrated good cause for the delay.  Although the government downplays the significance of Special Agent King's affidavit, the admissions contained therein are critical: the government had the same wire up from June 6, 2018 to March 14, 2019 (contrary to its representations to Judge Burroughs) and all electronic surveillance was conducted "through the assistance of a wireless telecommunications provider (Provider) pursuant to the Communications Assistance for Law Enforcement Act (CALEA)," which is precisely what makes such surveillance illegal under section 2511(2)(a)(ii).[3]

The Court should not permit the government to ignore Congress's explicit requirement that a judicial officer must approve technical assistance requests issued by law enforcement to telephone providers like AT&T.  For that reason, the undersigned respectfully request that the Court exclude the thirteen recordings as set forth in their Motion.

| | |
|---|---|
| Dated: September 7, 2021 | Respectfully submitted, |
| | GAMAL ABDELAZIZ |
| | By his attorneys, |
| | /s/  Brian T. Kelly |
| | Brian T. Kelly (BBO # 549566) |
| | Joshua C. Sharp (BBO # 681439) |
| | Lauren M. Maynard (BBO # 698742) |
| | NIXON PEABODY LLP |
| | 53 State Street |
| | Boston, MA 02109 |
| | (617) 345-1000 |

---

[3] The government states that the Defendants have had "ample time to review … all sealed court filings in connection with the wiretap." Dkt. 2151 at 6.  However, it is unclear if the government provided all such filings to Defendants.  The Defendants were not provided the docket sheets, but one document shows that there were at least sixty docket entries in 1:18-mc-91232-ADB.  Defendants were not provided with anything close to sixty docket entries or filings.  And aside from the two form letters, Defendants were not provided with any communications with AT&T.  The government produced those letters together with other consent forms with an index that collectively described the documents as "Redacted compilation of consent forms signed by Rick Singer authorizing the FBI to search and monitor Singer's iPhone 7+."  The index did not state that the documents included communications with a telephone provider seeking technical assistance for a warrantless wiretap.

bkelly@nixonpeabody.com
jsharp@nixonpeabody.com
lmaynard@nixonpeabody.com

Robert Sheketoff (BBO # 457340)
One McKinley Square
Boston, MA 02109
617-367-3449

JOHN WILSON

By his attorneys:

*/s/ Michael Kendall*
Michael Kendall (BBO # 544866)
Lauren M. Papenhausen (BBO # 655527)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
(617) 979-9300
michael.kendall@whitecase.com
lauren.papenhausen@whitecase.com

Andrew E. Tomback (pro hac vice)
MCLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, NY 10016
(212) 448-1100
atomback@mclaughlinstern.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on September 7, 2021, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

*/s/ Brian T. Kelly*