UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------x
:
UNITED STATES OF AMERICA,  :
:
:
: Criminal No. 1:19-cr-10080-NMG
:
-against- : **FILED *EX PARTE* AND UNDER SEAL**
:
GREGORY COLBURN, ET AL, : **LEAVE TO FILE GRANTED**
: **SEPTEMBER 9, 2021**
Defendants. :
:
:
---------------------------------------------------------x

### NON-PARTY UNIVERSITY OF SOUTHERN CALIFORNIA'S MEMORANDUM IN SUPPORT OF MOTION TO QUASH

Pursuant to Rule 17 of the Federal Rules of Criminal Procedure, the University of Southern California ("USC") respectfully asks this Court to quash two categories of documents requested in a trial subpoena for documents served on August 12, 2021, by counsel for Defendant John Wilson. The trial subpoena seeks, among other things, admission-related student records for six students, and gift receipts reflecting donation histories of the families of 18 students. Six days after Wilson served his trial subpoena, the Court declared that evidence regarding unrelated students who were not known to Defendants at the time they entered the alleged conspiracy with Rick Singer "has no bearing on the defendants' state of mind and, thus, is irrelevant." Aug. 18, 2021 Tr. at p 6. The Court further declared, "USC is not on trial here, and I will not have this case devolve into multiple side trials." *Id.* Yet, that is exactly what Wilson is attempting to do. By seeking information regarding students whom Wilson's counsel has explicitly conceded Wilson did not know at the time of Wilson's son's admission to USC, Wilson wants to put USC—and other USC students and parents—on trial.

In meet and confer sessions, Wilson attempted to salvage his trial subpoena and circumvent the Court's ruling by claiming, without any evidence or support, that the Court's ruling somehow did not apply to the pending tax charge against Wilson.  Wilson's position, which he refused to explain to USC in any further detail, makes no sense.  First, evidence of other students' academic records, athletic resumes, and donation histories has no bearing on Wilson's state of mind when he filed his tax returns, and therefore is irrelevant to the requisite scienter that the government must prove.  Second, Wilson's attempt to obtain these documents associated with other students will inevitably devolve into a series of mini-trials regarding the circumstances of each student's admission and donation history, which the Court has already declared will not happen.  Wilson's attempt to carve out the pending tax charge from the Court's prior ruling fails.



.  In addition, Wilson's requests infringe on the privacy of innocent students and families who have nothing to do with this case, and these unrelated students should not be gratuitously dragged into this highly publicized criminal trial.  For these reasons, as further described below, Wilson's trial subpoena should be quashed.

---

[1] █████████████████████████████

## I. FACTUAL BACKGROUND

Wilson allegedly conspired with Rick Singer to have his son admitted to USC through a "side door" scheme. This door was opened by Jovan Vavic, USC's Men's Water Polo coach at the time, whom Singer allegedly corrupted.[2] Singer told Wilson that Vavic would falsely present Wilson's son to USC's Office of Admission ("Admission") as a water polo recruit in exchange for a $100,000 payment to the water polo program. Singer, in turn, would receive $150,000 from Wilson for facilitating the arrangement.

Nothing about Wilson's matriculation to USC resembled the recruitment of a legitimate athlete. Although Wilson's son did play water polo in high school, he was not nearly skilled enough to play for USC, a longtime water polo powerhouse that won the NCAA title nine of the last 17 years.[3] Wilson knew his son was not good enough to play water polo at USC. In an email to Singer, Wilson described his son as a "bench warmer" and worried that his son would "be so weak as to be a clear misfit at practice." D.E. 3-4 at 123. Singer assured Wilson that his son would not even have to "get in the pool" and that Wilson's son could quit after one semester, which is exactly what he did. D.E. 736 at 15. Their only objective was making Admission believe that Vavic actually wanted Wilson's son on the team for his athletic abilities. Singer told Wilson that they needed to "embellish" his son's athletic profile. Wilson's emails with Singer make clear that Wilson understood this false presentation was necessary for the "side door" scheme to work.

Similarly, nothing about Wilson's purported donation to USC resembled a normal donation. Wilson told the Court that "Singer persuaded Wilson to route his donation through

---

[2] Vavic has also been indicted for his role in procuring admission for Wilson's son. *See United States v. Ernst et al.*, No. 19-cr-10081 (D. Mass Mar. 5, 2019), D.E. 1.

[3] Under NCAA rules, Men's Water Polo teams can offer a maximum of 4.5 scholarships, which can be divided up among different players. USC's Men's Water Polo teams typically has roughly 30 players. The team relies on many walk-ons to be significant contributors.

3

Singer's charity, the Key Worldwide Foundation." D.E. 995.  According to Wilson, Singer then sent $100,000 to USC, and Singer "stole the other $100,000 for himself." *Id.*  USC does not believe it ever issued Wilson a gift receipt in connection with the $100,000 payment made by Singer.

Without the "side door" scheme, Wilson's son was unlikely to be admitted on his own merit.  Wilson told the Court that his son was a "good student" whose GPA was "well within the range of USC's admission pool." D.E. 995 at 3.  This is not true. His high school GPA was 3.37, which placed him just outside the bottom 20% of his graduating high school class. See Common Application of Wilson's son, attached hereto as Exhibit A.  In 2014, USC's "vast majority of admitted freshmen rank[ed] in the top 10 percent of their high school's graduating class, 75 percent [had] standardized test scores at or above the 95th percentile, and their average un-weighted high school GPA [was] 3.82."

## II.     PROCEDURAL BACKGROUND

On August 12, 2021, Wilson served USC with a trial subpoena seeking, among other things:

1. All documents prepared for and by USC's Athletic Admissions Review Committee (the "Subco") in connection with the applications of Kathryn Fell, Clara Gross, Kelley Hawke, Mickey Hawke, Natalie Pearson, and Hannah Terry, to the extent such documents exist and have not been previously produced.

2. All gift receipts issued by USC from 2007 to 2019 to any family member of or any foundation or other entity associated with a family member of: Maricela Arechiga, Lauren Armona, Holly Blair, Scott Burnam, Charlotte Caccamise, Kathryn Fell, Zoe Gries, Kelley Hawke, Carter Jenkins, Samantha Johnson, Kaitlyn Van Konynenburg, Paul Matt, Tyler McMorrow, Hunter Penrose, John (Jack) Queen, Phillips Sivolobov, William Wild, Genevieve Worthe.

Six days later, on August 18, 2021, the Final Pretrial Conference was held in advance of Wilson's trial.  The Court stated in no uncertain terms:

> As a preliminary matter, counsel should understand that this trial is not going to be about the general admissions policy of the University of [Southern] California or the method it uses to admit students. USC is not on trial here, and I will not have this case devolve into multiple side trials. **Unless there's evidence that a defendant was misinformed with respect to the admission policy of the subject university and/or knew that USC admitted a specific unqualified student whose parent made a large donation to the school before that defendant entered into the alleged conspiracy with Singer, evidence of what other unrelated students and parents did has no bearing on the defendants' state of mind and, thus, is irrelevant to the requisite scienter that the government must prove in this case.**

August 18, 2018 Tr. at p. 6, attached hereto as Exhibit B. (Emphasis added).

During the meet and confer process, Wilson's counsel explicitly conceded that his client did not know any of the students identified in his trial subpoena at the time his son was admitted to USC.  Despite the Court's recent orders, Wilson refused to withdraw his requests.  Instead, Wilson claimed his requests for these students' academic records, athletic resumes, and donation histories were made in connection with the tax count, which Wilson claimed was somehow not covered by the Court's recent ruling.  Wilson declined to provide any support for this position.  Moreover, when USC asked Wilson to explain why he believed these students' records were relevant to whether Wilson filed a false tax return, Wilson's counsel refused to explain any theory of relevance.

In an attempt to resolve the matter and avoid the expense of filing a motion, USC offered to produce the student records for the *only two students* at issue who were admitted through Subco before Wilson's son was admitted.  Wilson's counsel rejected USC's offer and demanded USC produce student records for 10 students, all but one of whom were admitted after Wilson's son and/or were not admitted through Subco as a recruited athlete.

### III.    LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 17(c)(2), "the court may quash or modify [a] subpoena if compliance would be unreasonable or oppressive." *See, e.g., United States v.*

5

*Henry*, 482 F.3d 27, 30-31 (1st Cir. 2007) (affirming trial court's decision to quash subpoenas pursuant to Fed. R. Crim. P. 17(c)(2)); *United States v. Bergeson*, 425 F.3d 1221, 1227-28 (9th Cir. 2005) (upholding district court order quashing subpoena for testimony pursuant to Fed. R. Crim. P. 17(c)(2)).

## IV. ARGUMENT

### A. Wilson's trial subpoena seeks documents the Court has already ruled are irrelevant, and there is no new justification for the Court to reverse its ruling.

The Court has stated in no uncertain terms that "USC is not on trial here, and [it] will not have this case devolve into multiple side trials." Exhibit B. The Court further held that evidence regarding students who were not known to Defendants at the time they entered the alleged conspiracy with Rick Singer "has no bearing on the defendants' state of mind and, thus, is irrelevant." *Id.* Wilson has not provided any reason why the Court should reverse its ruling, nor has Wilson provided any support for his contention that his pending tax was somehow carved out from the Court's ruling. For this reason alone, Requests 1 and 2 of Wilson's subpoena should be quashed.

Even if the Court's prior ruling was somehow only intended to address the fraud charges, as Wilson contends, the admission-related and donation-related documents of unrelated and previously unknown students has no bearing on Wilson's state of mind when he allegedly filed a false tax return, and therefore is irrelevant to the requisite scienter that the government must prove. Although Wilson has refused to share his theory of relevance in prior meet and confer calls, USC suspects that Wilson is attempting to make an argument about how USC's admission-related and donation-related practices corroborated his purportedly reasonable belief that his actions were consistent with USC's policies and practices. After all, this is what Wilson argued in claiming that student records of unrelated and unknown students were relevant to his fraud charges. But

Wilson's relevance argument fails: the admission and/or donations associated with students unknown to Wilson at the time he entered into the alleged conspiracy with Singer could not possibly have affected his state of mind at the time and therefore are irrelevant to the requisite scienter for committing fraud or filing a false tax return.

Wilson's relevance argument also fails because there is no reason to believe Wilson's son was similarly situated to the students at issue in Wilson's trial subpoena. Of the names identified in Wilson's subpoena, only five students were admitted before Wilson's son was admitted in 2014, and only two of those five students were admitted through Subco. Moreover, one of the two students who was admitted through Subco was a star athlete at USC and is currently a professional athlete. There is no evidence that any of these other students' families had a clandestine agreement with a third party outside of USC to "embellish" their child's athletic resume. There is similarly no reason to believe that any of these students' families funneled donations to USC through a third-party intermediary, to the extent these students' families made any donations at all. The documents sought in Wilson's trial subpoena will not only lead to the mini trials that the Court has refused to allow, but these mini trials will ultimately show that the students Wilson wants to use as a comparison are not at all similarly situated.

██████████████████████████████████████████████████████████████

██████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████

    ███████████████████████████████████

        ████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████

    ███████████████████████████████████

        ████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

██████████████████████████████████████

    ███████████████████████████████████

        ████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

Case 1:19-cr-10080-NMG   Document 2177   Filed 09/09/21   Page 9 of 12



9

### C. Wilson's trial subpoena unreasonably invades student privacy.

Even if the admission-related and donation-related documents about these unrelated students carried some marginal relevance (and they do not), Wilson's trial subpoena is unreasonable in light of the significant invasion of student privacy. Rule 17's prohibition on "unreasonable or oppressive" subpoenas "protect[s] against unduly encroaching upon the expectations of innocent [students] that their . . . records will be kept confidential." *In re Grand Jury Proceedings: Subpoenas Duces Tecum*, 827 F.2d 301, 305–06 (8th Cir. 1987). A document's relevance must be "weighed against the privacy interests implicated" in a Rule 17 demand. *United States v. Murray*, 2019 WL 1993785, at *7 (D. Mass. May 6, 2019). And "subpoenae targeting confidential academic information deserve heightened scrutiny." *United States v. Trustees of Boston College*, 831 F. Supp. 2d 435, 455 (D. Mass. 2011).

Wilson's request cannot survive scrutiny. Documents such as high school students' high school transcripts, standardized test scores, athletic resumes, and families' donation histories are extremely sensitive and highly personal. The severity of this intrusion of student privacy is reflected by the fact that over half the students who received FERPA notices from USC as a result of Wilson's prior subpoenas contacted USC with questions and concerns, and nearly a dozen students moved to intervene. The invasive nature of the requested documents heavily outweighs any remote relevance.

### V. CONCLUSION

Wilson's trial subpoena reflects Wilson's ongoing attempt to put USC—and other students and parents—on trial by investigating the circumstances of unrelated students' admission to USC. The Court has rightfully declared, in no uncertain terms, that USC is not on trial, and that the underlying facts of unrelated admission decisions or donation histories had no bearing on Defendants' state of mind and are therefore irrelevant to the requisite scienter that the government

must prove in this case. But Wilson refuses to accept the Court's ruling. Wilson's claim that the Court's ruling somehow does not apply to the pending tax charge makes no sense, and his purported justification for the requests at issue fail. USC respectfully requests the Court quash Requests 1 and 2 of Wilson's trial subpoena.

> Respectfully submitted,
> UNIVERSITY OF SOUTHERN CALIFORNIA,
> By its attorneys,
>
> */s/ Debra Wong Yang*
> Debra Wong Yang (Admitted *Pro Hac Vice*)
> Douglas M. Fuchs (Admitted *Pro Hac Vice*)
> GIBSON DUNN & CRUTCHER LLP
> 333 South Grand Avenue
> Los Angeles, CA 90071-3197
> (213)229-7000
> dwongyang@gibsondunn.com
> dfuchs@gibsondunn.com
>
>
> */s/ Anthony E. Fuller*
> Anthony E. Fuller (BBO #633246)
> William H. Kettlewell (BBO# 270320)
> Elizabeth C. Pignatelli (BBO #677923)
> HOGAN LOVELLS US LLP
> 125 High St., Suite 2010
> Boston, MA  02110
> (617) 371-1000
> anthony.fuller@hoganlovells.com
> bill.kettlewell@hoganlovells.com
> elizabeth.pignatelli@hoganlovells.com

Dated: September 9, 2021

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 9, 2021.

                                         */s/ Anthony E. Fuller*
                                         Anthony E. Fuller