UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GREGORY COLBURN et al.,<br><br>Defendants. | Case No. 1:19-cr-10080-NMG<br><br>**REDACTED** |

**DEFENDANT JOHN WILSON'S MOTION TO EXCLUDE A TAPED CONVERSATION BETWEEN RICK SINGER AND MARCI PALATELLA**

Pursuant to Federal Rules of Evidence 802, 401, and 403, Defendant John Wilson moves to exclude Government Exhibit No. 563 (Exhibit A), a recording of a September 15, 2018, conversation between William "Rick" Singer and Marci Palatella. The 7.5-page transcript of this recording includes a brief aside in which Ms. Palatella discusses an alleged conversation she had with Mr. Wilson's wife, Leslie Wilson, whom Ms. Palatella quotes as answering Ms. Palatella's question, "come on, what does it really cost? I said I can't figure this out there is no way it's seven thousand dollars," with "[Y]ou should talk to John I don't really know." The Court should preclude all evidence and argument based on this transcribed call.

First, the quotation of what Ms. Wilson allegedly said to Ms. Palatella is hearsay within hearsay to which no exception applies. Ms. Wilson is not a co-conspirator. *See* ECF No. 1988 (Defendants' Motion in Limine to Exclude Marital Privilege Communications). The call could support only the uncontested fact (to which Mr. Wilson would stipulate) that Mr. Wilson worked with Mr. Singer, and is otherwise irrelevant. Second, the minuscule probative value of the undisputed fact that Mr. Wilson worked with Mr. Singer is vastly outweighed by: (a) repeated, vague references to what something cost (Mr. Singer's fees, given the four-figure values Ms. Palatella refers to), which risk prejudicial confusion in a case about alleged bribery of hundreds of thousands of dollars; and (b) the confusion and waste of time that would result from having to

inform the jury as to who Ms. Palatella was and what her dealings with Mr. Singer were.[1] The taped statements are thus inadmissible under Fed. R. Evid. 403.

**I.   No hearsay exception permits the government to present Ms. Palatella's out-of-court statements with Mr. Singer that, in turn, quoted Leslie Wilson's alleged, out-of-court statements.**

Mr. Wilson expects the government will seek to introduce this tape at trial under the co-conspirator statement hearsay exception, Fed. R. Evid. 801(d)(2)(E), by asserting that Ms. Wilson was a joint participant in the indicted conspiracy. Mr. Wilson previously presented grounds showing that Ms. Wilson is not a co-conspirator, ECF No. 1571, at 11-12, which are expressly incorporated herein.[2] The Court denied from the bench Mr. Wilson's Motion in Limine to Exclude Marital Privileged Communications, ECF No. 1988, and allowed in part the government's mirror Motion in Limine to Admit Marital Communications, ECF No. 2004, ruling in part that Ms. Wilson was a joint participant in the conspiracy. 8/18/21 Hr'g Tr. at 8.

Mr. Wilson respectfully asks the Court to review its finding that Ms. Wilson is a joint participant and to conclude that Ms. Wilson was not a participant in the alleged conspiracy, and thus preclude the government from presenting the call to the jury or arguing about the call to the jury.

The trial testimony to date already exposes why the government had stretched the boundaries of the alleged conspiracy: to try to support the admission of otherwise inadmissible documents and to argue improperly guilt by association. The government's examination of Bruce Isackson on September 13, for instance, exposes that the purported "connections" among the alleged co-conspirators are paper-thin. For instance, Mr. Isackson testified only that he knew

---

[1] Any presentation and explanation offered about Ms. Palatella relying on the content of her admission of guilt likely would also violate the Confrontation Clause. *See generally United States v. Ackerly*, 981 F.3d 70, 73 (1st Cir. 2020). The government is already marching in that direction. While trying to skate around the *Ackerly* pitfall, the government has already improperly attempted to plant Ms. Palatella's admission of guilt into the jurors' minds by asking Bruce Isackson whether Mr. Singer ever told him that the Palatellas were involved in Mr. Singer's "scheme." 9/13/21 Trial Tr. at 161.

[2] Mr. Wilson also expressly reincorporates his previous arguments that the government has not met the legal standard for the charged conspiracy, ECF No. 1031, and thus, Ms. Palatella is not a co-conspirator of Mr. Wilson.

2

Ms. Palatella socially and that she worked with Mr. Singer—nothing more. 9/13/21 Trial Tr. at 161. The government is trying to manufacture connections between other parents (*i.e.*, Mr. Isackson) who abjectly admit that they participated in an unlawful "scheme" to invite the jury to improperly infer that anyone else who worked with Mr. Singer participated in the "scheme" to which Mr. Isackson testified that he personally embraces. But the only common connections between (a) Mr. Isackson's testimony about Ms. Palatella (who has pleaded guilty) and (b) Ms. Palatella's conversation with Mr. Singer in Government Exhibit 563 are that Ms. Palatella and Mr. Wilson each worked with Mr. Singer. None of this shows that Ms. Wilson knew about the alleged conspiracy, what either Mr. Isackson or Ms. Palatella did, and the transcript of the call only reflects Ms. Wilson being quoted as professing her ignorance.

This only reinforces that what the government has proffered about Ms. Wilson's alleged knowledge and conduct is insufficient to establish that she knew of any alleged conspiracy or did anything to advance it. In the August 18, 2021, hearing, the Court noted that Ms. Wilson had selected photographs of her son, Johnny Wilson, to send to Mr. Singer for Johnny's USC application. 8/18/21 Hearing Tr. at 8. Yet, these were accurate photographs of Johnny actually playing water polo, and the government has never claimed otherwise. *See* Gov't Mot. Admit Marital Comm. at 8-9 (ECF No. 2004); Gov't Ex. 65 (Exhibit B). Sending accurate photographs accurately depicting an applicant's actual athletic participation to a college-admission counselor is utterly innocuous and a standard practice for a parent involved in the college admission process. It is undisputed that Johnny was an accomplished high school water polo player, and it would only be natural for this accomplishment to feature in his college application. Ms. Wilson's words in the accompanying email only amplify her benign intent: Ms. Wilson asked Mr. Singer to pass the five photos of Johnny playing water polo to USC. Gov't Ex. 65. There is nothing suggesting that Mr. Singer would alter the photographs or otherwise present anything other than Johnny's actual athletic credentials. Hence, there is no evidence that merely sending these photographs could prove Ms. Wilson's knowledge, much less participation, in any alleged conspiracy.

In total, the government's trial exhibit list includes six other documents concerning Ms. Wilson. The government presented three of these documents, as well as copies of joint tax returns, to the Court in its Motion in Limine to Admit Marital Communications, *see id.* at 8-9, as purported evidence of Ms. Wilson's joint participation and awareness of the payment of bribes or submission of fake credentials to universities. Yet none of these documents proves her knowledge of the alleged conspiracy, and none shows Ms. Wilson engaging in any conduct in furtherance of any alleged conspiracy.[3]

- **Government Exhibit 48 (Exhibit C).** This email exchange between Ms. Wilson and her husband includes ███████████████████████████████████████████

- **Government Exhibit 64 (Exhibit D).** This email exchange between Ms. Wilson and Mr. Singer refers to helping a couple of Johnny Wilson's friends wishing to receive some short-term counseling, with no sports angle, from Mr. Singer. The government highlighted Ms. Wilson's statement that these friends were not aware of the financial discussions regarding Johnny Wilson and USC and that she wished to keep that discussion confidential. *See* Gov't Mot. Admit Marital Comm. at 8. The fact that Ms. Wilson may have wished to keep confidential that her family was donating a large sum of money to USC that could facilitate her son's admission is no evidence she knew of any bribes or fake credentials.

---

[3] The Court has already ruled that Government Exhibit 131, one of these other six documents, was not in furtherance of any conspiracy. 8/18/21 Hr'g Tr. at 8.

- **Government Exhibit 77 (Exhibit E).** This email communication between Ms. Wilson and Mr. Wilson ███████████████████████████████████████████████ ████████████████████████████████████.

- **Government Exhibit 124 (Exhibit F).** This email chain among Mr. Wilson, Ms. Wilson, ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ████████.

- **Government Exhibit 409 (Exhibit G).** In this email chain between Ms. Wilson and Marci Palatella, Ms. Wilson stated, among other things, that she had a "few thoughts" about Mr. Singer and Johnny Wilson and that it would be "easier to talk on the phone." With nothing more to substantiate such a conclusion, the government again reads Ms. Wilson's statement as evidence of hiding some form of illegality, despite no proof that Ms. Wilson knew of any illegal behavior or that the call ever took place.

- **Three Tax Return Exhibits (Government Exhibits 174, 258, and 501).** Lastly, the government accuses Ms. Wilson of being a joint participant with Mr. Wilson because she signed the jointly filed tax returns. Gov't Mot. Admit Marital Comm. at 9. Ms. Wilson's signature on a complex joint tax return is not the same as proof that she had any awareness of how and why the accountant or Mr. Wilson handled deductions.

In sum, the exhibits paraded by the government—and this is all the government has—fail to show Ms. Wilson had any knowledge of bribes or fake college admission profiles. Instead, the government offers only bald speculation as to Ms. Wilson's knowledge and intent. This is not sufficient for Ms. Wilson to qualify as joint participant. *See United States v. Bey,* 188 F.3d 1, 6 (1st Cir. 1999) (ambiguous conduct did not support the joint-participant exception); *United States v. Guyton*, No. 11-cr-271, 2013 U.S. Dist. LEXIS 8984, at *7-8 (E.D. La. Jan. 22, 2013)

(conversations "suggest[ing]" that one spouse "may have been assisting" another's crime were insufficient to establish the exception.)

Separately, the government cannot avail itself of the co-conspirator exception because none of the statements purportedly made by Ms. Wilson to Ms. Palatella were "in furtherance" of the indicted conspiracy. Fed. R. Evid. 801(d)(2)(E). In Ms. Palatella's retelling, Ms. Wilson simply denied knowing anything about the cost of Mr. Singer's services when Ms. Palatella mentioned Mr. Singer's fee of seven thousand dollars. Gov't Ex. 563 p. 6 ("I don't really know"). Ms. Wilson's stated *lack of knowledge* is the opposite of furthering anything related to the alleged bribery scheme—suggesting otherwise would amount to pure speculation. Instead, Ms. Palatella's retelling of Ms. Wilson's alleged statements is inadmissible as hearsay within hearsay.

## II.   The transcript includes many vague statements whose prejudicial effect, if disclosed to the jury, would vastly outweigh their minuscule probative value.

Similarly, the transcript is replete with confusing statements. A good part of the call concerns Ms. Palatella's confusing, discursive retelling of her conversation(s) with an unnamed person to Mr. Singer. At some point, Ms. Palatella switches to a retelling of Ms. Wilson's statements about not really knowing the cost of Mr. Singer's services, which Ms. Palatella prefaces with "Everybody lies," and wraps up with, "Later I am like oh, bullshit. You know nobody, no and I, so, so and Leslie's what, I mean, Leslie and I share a lot." Gov't Ex. 563 p. 7. The statements are inherently ambiguous as to what Ms. Palatella thought of Ms. Wilson, what Ms. Wilson said or did to invite Ms. Palatella's speculations, and what costs Ms. Palatella had in mind. The entire transcript lacks any information as to specific costs other than a few thousand dollars. There is also no information as to what happened "later" to make Ms. Palatella conclude, "bullshit," and about what. The call contains no clues as to whether Ms. Wilson said or did anything to invite Ms. Palatella's speculation or Ms. Palatella was simply speculating out of thin air or, projecting based on her own, not Ms. Wilson's, crooked association with Mr. Singer.

Lastly, for these statements to represent probative evidence of anything, the government would need to explain why Ms. Palatella's opinion of Ms. Wilson matters in the trial of Mr. Wilson and thus: who Ms. Palatella was, what her involvement with Mr. Singer was, what Ms. Palatella knew and her level of culpability, and more. Yet, Ms. Palatella is no longer a Defendant and not a witness in this case. Nor has the government ever asserted her dealings with Mr. Singer (another individual unlikely to testify at this trial), involved the Wilson family. A detour to discuss Ms. Palatella would invite an additional dose of improper guilt by association. In sum, introduction of the tape and Ms. Palatella's background story would be inherently confusing, prejudicial, and a waste of time to the jury.

For the above reasons, Mr. Wilson respectfully requests the Court exclude Gov't Ex. 563.

Respectfully submitted,

By his counsel
/s/ Michael Kendall
Michael Kendall (BBO #544866)
Lauren Papenhausen (BBO# 655527)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com
lauren.papenhausen@whitecase.com
Andrew Tomback (pro hac vice)
McLaughlin & Stern, LLP
260 Madison Avenue
New York, NY 10016
Telephone: (212) 448-1100
ATomback@mclaughlinstern.com

*Counsel for John Wilson*

Date: September 14, 2021

**LOCAL RULE 7.1(A)(2) CERTIFICATION**

The undersigned counsel hereby certifies that I have conferred with counsel for the government and attempted in good faith to resolve or narrow the issues raised by this motion.

/s/ Michael Kendall
Michael Kendall

**CERTIFICATE OF SERVICE**

   I hereby certify that the above document, will be filed on CM/ECF, which will send copies to attorneys of record.

                  /s/ Michael Kendall
                  Michael Kendall