UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GREGORY COLBURN et al.,<br><br>Defendants | No. 1:19-CR-10080-NMG<br>**Public Version of Sealed Filing**<br>Leave to File Under Seal Granted September 16, 2021, in ECF 2223 |

**DEFENDANTS' OPPOSITION TO INTERVENORS' MOTION TO QUASH TRIAL SUBPOENAS**

Defendants Gamal Abdelaziz and John Wilson oppose putative intervenors Alex Garfio, Scott Wandzilak, and Alexandra (Bitterlin) Reisman's (collectively, the "Intervenors") motion to quash trial subpoenas (Dkt. 2171). The testimony Defendants' seek is not just relevant and material, it is also crucial to Defendants' ability to present a defense. Intervenors do not wish to testify, but that falls far short of their burden of showing that Defendants' subpoenas are unreasonable or oppressive. *Stern v. United States Dist. Court*, 214 F.3d 4, 17 (1st Cir. 2000) (confirming that "a subpoena ad testificandum survives scrutiny" if it is "relevant and material"). Intervenors' motion to quash should be denied.

**ARGUMENT**

Defendants have a constitutional right to present their defense to the Government's charges. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"). To aid in this right, Defendants' may compel witnesses to testify by subpoena, so long as "the testimony sought is both relevant and material." *Stern*, 214 F.3d at 17. If this standard is met, the subpoena is not unreasonable or oppressive. *Id.* Defendants seek Intervenors' testimony to rebut

the testimony that the Government will attempt to elicit regarding honest services fraud—and not to make this a trial about the general admissions policies at USC. Defendant John Wilson also seeks Intervenors' testimony to refute the theory underlying the Government's tax charge against him and any evidence the Government might provide. The Intervenors' testimony is relevant and material[1] to these charges, and is based on evidence which Defendants already have in their possession. Thus, Intervenors' requested testimony satisfies the requirements of Rule 17 and *Nixon*. *See United States v. Nixon*, 418 U.S. 683, 700 (1974). To deny Defendants the opportunity to present this testimony would be to deny Defendants their constitutional right to present their defense.

**I. The testimony Defendants seek from Intervenors is relevant, material, and crucial to Defendants' right to present a defense to the charge of honest services fraud.**

The Government has charged Defendants with conspiring to commit honest services fraud. The Fourth Superseding Indictment alleges that the "manner and means" of the honest-services fraud conspiracy involved "[b]ribing athletic coaches and university administrators to designate students as purported athletic recruits—with little or no regard for their athletic abilities . . . in violation of the coaches' and administrators' duties of honest services to their employers." FSI ¶ 66(f). Thus, as part of its case, the Government must prove what honest services the university administrators and personnel actually owed to USC. *See, e.g.*, *Skilling v.*

1 Defendants' subpoenas also meet the standard that Intervenors provide—relevance admissibility, and specificity—though this is the standard for subpoenas duces tecum and does not apply to the subpoenas at issue here. *Stern v. United States Dist. Court*, 214 F.3d at 17 (confirming that *Nixon* holds that a "subpoena duces tecum is not 'unreasonable or oppressive' if the proponent establishes relevancy, admissibility, and specificity" and clarifying that "[r]oughly the same standard applies to subpoenas compelling the attendance of witnesses, i.e., subpoenas ad testificandum. . . . [which] survive[] scrutiny if the party serving [them] can show that the testimony sought is both relevant and material").

*United States*, 561 U.S. 358, 376 (2010) (honest services fraud requires a "material breach of a fiduciary duty" that "results in a detriment to the employer, including one occasioned by an employee's decision to withhold material information, i.e., information that he had reason to believe would lead a reasonable employer to change its conduct" (internal citations omitted)); *United States v. Conigliaro*, 384 F. Supp. 3d 145, 155-59 (D. Mass. 2019) (explaining that the government bears the burden of proving that the conspiracy or conduct at issue violated an identifiable legal prohibition). Defendants have a right to rebut that evidence with witnesses of their own who will offer contrary testimony showing that USC was not deprived of its employees' honest services. *See Crane*, 476 U.S. at 690. Such testimony from USC personnel is even more relevant now that the Government has repeatedly conceded—both before and during trial—that the Defendants believed their donations were going to USC programs.

The Government has included several current and former USC employees on its own witness list, apparently to elicit testimony regarding USC's admissions practices and the honest services that were allegedly owed by employees to USC. Defendants have attempted to seek contravening testimony from other former USC personnel—Ron Orr, Scott Jacobson, and Steve Lopes—but each of those potential witnesses asserted their Fifth Amendment right not to testify. Because the Government refused to grant immunity to those witnesses, Intervenors' testimony is all the more critical.

Contrary to Intervenors' assertion, the testimony which Defendants seek from Intervenors does not violate the Court's pretrial order.[2] The Government will present a cherry-picked group

---

[2] Indeed, the Court recently denied Pat Haden's Motion to Intervene for the purpose of quashing Defendants' trial subpoena, which had raised the same argument. Dkt. 2211. Defendants seek the testimony of the Intervenors on this issue, in addition to that of Haden, because each is critical for establishing what the honest services were, how they were actually applied, and the consequences. It is not cumulative to request this testimony from the

of USC witnesses to testify that the process used for Defendants' children's admission was not in line with USC policy. Defendants will present evidence that Rick Singer told them that this process was consistent with USC practices, and was completely acceptable. The Intervenors' testimony will be used to refute the Government's evidence, and to support Defendants' good-faith belief that what Singer told them was true, and that USC actually did have a practice of using Subco as a means of fundraising.[3]

Moreover, Intervenors' testimony will not result in "mini trials" regarding USC's admissions policies. Defendants simply seek to illustrate that USC did in fact have a practice of using Subco to fundraise, and of weighing families' donation potential when deciding whether to admit applicants. This will not require lengthy testimony with dozens of exhibits. Instead, undersigned counsel anticipate that Alexandra Reisman's testimony, for example, would take approximately one hour, and would involve only a handful of small exhibits.

***a. The testimony of Garfio—Heinel's deputy—is relevant, material, and far from cumulative.***

Alex Garfio's tenure in the athletics department uniquely positions him to provide testimony on the policies and practices of the athletics department as they relate to honest services owed to USC. Garfio served as Heinel's assistant from 2011-2016, working with her on Subco matters. By 2013, he had asked Heinel if he could combine fundraising with his Subco admissions work. After working with Heinel on Subco admissions, Garfio went on to spend 4 years working in the fundraising side of the athletics department. During his tenure in the

---

Intervenors, but rather the appropriate way to establish a general policy or practice that was consistent (1) across the unique roles held by various individuals in the athletics department and (2) during all times relevant to the admission of Defendants' children.

[3] The Government has admitted at trial that the Defendants' payments to USC did, in fact, fund USC programs.

athletics department, Garfio worked continuously with Heinel, Ron Orr, and Steve Lopes (all of whom refuse to testify), as well as with Pat Haden.

Garfio was working on Subco admissions at the time Defendant Wilson's son was admitted to USC. He had a direct involvement in the admission of Wilson's son and Wilson wants to examine him on this. This reason alone is sufficient to require his attendance. In addition, Garfio can provide general testimony on how athletics department personnel, including coaches, understood expectations and directions regarding the honest services in dispute: the operation of Subco and Subco's consideration of applicant's past and potential contributions. More specifically, he can explain based on his work experience how athletics department personnel were to seek out donors and then support the admission of applicants connected to those donors regardless of whether the applicants had serious athletic potential.[4] He can testify as to whether it was consistent with the Subco practices for Vavic, or other coaches, to take into consideration a parent's potential willingness to make a contribution when advocating for a student's admission. Far from being a mere observer who passively placed information in candidates' files, Garfio was an active part of the process, and was tasked with, among other things, verifying the athletic credentials of applicants presented to the Subco.[5] Defendants have documentary evidence involving Garfio that indicates that Subco was a side door process and that a family's potential to donate was a consideration in determining whether to support an applicant's admission.

[4] Defendant John Wilson notes that his son did, in fact, have substantial athletic potential.

[5] Documentary evidence indicates that Garfio was provided with a copy of Wilson's son's athletics profile.



Garfio provides no explanation as to any hardship he faces in responding to Defendants' valid subpoena, and this Court refused to allow other witnesses with far more substantiated claims of hardship to avoid the obligation to testify. Garfio should not be permitted to harm the Defendants' right to put on their defense just because he would rather not come to trial.

***b. The testimony of Reisman and Wandzilak is proper and essential.***

Alexandra Reisman's testimony is especially important to Defendants' defense, and undersigned counsel anticipate that presenting this testimony would take approximately one hour and would involve only a handful of exhibits. Defendants have evidence that Reisman, as Associate Athletic Director for the Trojan Athletic Fund at USC, helped facilitate the admissions process for applicants whose families had the capacity to donate,

6 



It is clear from the evidence that Reisman discussed applicants' families' potential for donating with her superiors, and promoted fundraising objectives as part of the admissions process. Magistrate Judge Kelley recognized the importance of Reisman's involvement in fundraising and the admissions process, and issued two Rule 17(c) subpoenas regarding Reisman specifically, based on the clear evidence that she and others used Subco as a fundraising tool, and spoke directly with donors regarding applicants.

Similarly, evidence shows that Scott Wandzilak, as an employee in USC's development office, connected wealthy applicants with the athletics department to facilitate their admission to USC. Wandzilak recommended applicants to the athletics department regardless of their academic or athletic credentials, based solely on the family's capacity to give.





[redacted]

[redacted]

The testimony that Reisman and Wandzilak will provide if they testify regarding the admissions process at USC is relevant to the honest services charges that Defendants face. Reisman and Wandzilak could provide valuable insight into how the Athletics and Development departments interacted with respect to the admissions process. Their testimony is relevant to whether the conduct at issue actually constituted a "material breach of fiduciary duty" resulting in a "detriment" to USC, or was in fact part of an accepted—and encouraged—practice at USC. There simply cannot be honest services fraud if USC employees such as Reisman and Wandzilak were acting in accordance with the customs, practices, and policies—whether written or unwritten—of the department or unit in which they worked. *See United States v. Zangrillo*, Criminal No. 19-10080-NMG, 2020 U.S. Dist. LEXIS 36364, at *14, *18 (D. Mass. Mar. 3, 2020) (Kelley, M.J.) (recognizing that if a defendant "can demonstrate that USC had a practice of admitting the children of wealthy or influential parents, not on merit, but because they were designated as special interest or VIP, and that is how his [child] was admitted, then a jury may

---

10 [redacted]

find that he did not cause Heinel to act in conflict with the wishes of her employer, and she did not breach her duty to USC").[12] Nor can there be a conspiracy to commit honest services fraud. *See United States v. Fernandez,* 722 F.3d 1 (1st Cir. 2013) ("[S]ince the conduct allegedly underlying the conspiracy was not a crime, no . . . conspiracy to commit that conduct can exist either." (quoting *United States v. Ali*, 561 F. Supp. 2d 265, 267 (E.D.N.Y. 2008)); *see also United States v. Driscoll*, 449 F.2d 894, 897-98 (1st Cir. 1971) ("However, since the conversation between the defendant and the Deputy District Director was an act directed towards obtaining a lawful result by a lawful means and since it was in no way connected to or in furtherance of the conspiracy, it cannot support a conviction for conspiracy.").

[12] *See also* ECF No. 906, Transcript of February 28, 2020 Hearing, at 14:7-16:6 (Kelley, M.J.):

> THE COURT: If she's taking money for an account over which she has control, which, I know the government says that's a bribe, **you still have to prove that the school was not in on that**. . . . [The government is] going to say, oh, it's a bribe legally if she has money going into accounts she controlled. **That's going to be something for the jury to decide. It's not de facto a bribe. The school has to be ignorant of that**, and one might well ask, how could the school have been ignorant of that? . . . I just think the government stuck on this theory that, if the money is going into an account for the school in exchange for Heinel advocating for a student, then the defendants are guilty. Number one you do have to show that they knew that was happening; and, **number two, you have to show the school wasn't in on it, Right?**
>
> AUSA Wright: Yeah, yes Your Honor. And we intend to prove that.

(Emphases added); *accord* Transcript of February 27, 2020 Hearing, at 16:15-22 (AUSA Rosen: "I believe that these payments to athletic programs are also payments in furtherance of a fraudulent scheme even though universities are receiving a portion of the money because I believe the universities are unaware that the coaches and/or administrators are recruiting those students in exchange for the monetary payments. We have disclosed this in charging documents."); Sealed Transcript of May 14, 2020 Hearing at 47:2-11 (Kelley, M.J.).

**II. Intervenors regularly dealt with donations in their work for USC and are familiar with USC's donations practices; thus, they have testimony relevant to Defendant Wilson's defense to the charge of tax fraud.**

The Intervenors have relevant testimony to provide on the tax charge against Defendant Wilson concerning USC's practices regarding its obligations under Section 6115 of the Tax Code. Taxpayers are generally permitted to take income tax deductions for their contributions to charitable organizations. *Strong v. Commissioner*, Docket No. 8861-90, 1994 Tax Ct. Memo LEXIS 358, at *14 (Jul. 14, 1994), *rev'd in part on other grounds*, No. 94-70818, 1996 U.S. App. LEXIS 6472 (9th Cir. Mar. 19, 1996); 26 U.S.C. §§ 170(a), (c)(2). The tax code also requires a charitable organization to provide the taxpayer a good-faith estimate of the value of goods or services (if any) provided in exchange for the charitable contribution. 26 U.S.C. § 6115. Crucial to Wilson's defense to the Government's tax charge is whether USC provided such information to donors—including Wilson—whose relatives may have received favorable admissions consideration as a result of their families' donations. Intervenors contend that they know nothing relevant to the tax charge. They do. They dealt with donations and know USC's practices relating to donations. Collectively, they can provide testimony as to USC's practices for documenting and acknowledging donations, USC's practices for valuing and offsetting any in kind goods or services, and whether USC ever offset a family's donation to USC based on the admission of a relative to USC.

Respectfully submitted:

By their counsel

/s/ *Michael Kendall*
Michael Kendall (BBO # 544866)
Lauren M. Papenhausen (BBO# 655527)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com
lauren.papenhausen@whitecase.com

Andrew E. Tomback (pro hac vice)
MCLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, NY 10016
Telephone: (212) 448-0066
atomback@mclaughlinstern.com

*Counsel for John Wilson*

*/s/ Robert Sheketoff*
Robert Sheketoff (BBO # 457340)
One McKinley Square
Boston, MA 02109
(617) 367-3449

*Counsel for Gamal Abdelaziz*

Dated: September 16, 2021

**CERTIFICATE OF SERVICE**

This document is being filed on the date appearing in the header through the ECF system, which will provide electronic copies to counsel of record.

/s/ *Michael Kendall*
Michael Kendall