UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                               )   Criminal No.: 19-10080-NMG<br>)<br>GAMAL ABDELAZIZ *et al.*,     )<br>)<br>Defendants                    ) | |

**GOVERNMENT'S RESPONSE TO MOTION OF NON-PARTY NEWS MEDIA
TO INTERVENE AND FOR ACCESS TO PROCEEDINGS [DKT. 2209]**

A non-party group of news media outlets has moved to intervene in this case and has moved in pertinent part for access to: (1) transcripts of the limited portions of the proceedings that were closed on September 9 and 10, 2021, during the individual *voir dire* of prospective jurors that traditionally occurs at sidebar; (2) the completed juror questionnaires; and (3) the government's sealed motion to strike a potential juror and the sealed order granting the same. The government assumes for the sake of argument that these non-parties are permitted to intervene in this matter, even though the First Circuit has described that proposition as "doubtful." *In re Globe Newspaper Co.*, 920 F.2d 88, 90 (1st Cir. 1990); *see also United States v. Chin*, 913 F.3d 251, 255 (1st Cir. 2019) (noting this expression of doubt). Although the right to intervene is apparently unsettled in the First Circuit, the government focuses on substance in this filing since this Court has ordered it to respond in roughly 24 hours, by 5:00 p.m. today, and the ECF system is scheduled to shut down temporarily at noon today. There are five main points.

First, the news media intervenors fail to address the First Circuit's closely-on-point decision in *Wilder v. United States*, 806 F.3d 653 (1st Cir. 2015). In *Wilder*, the district court conducted the initial phase of jury selection in open court, shifted the proceedings to the jury deliberation room (to which the public and media did not have access) for individual *voir dire*, and

then resumed jury selection in open court after individual questioning was complete. 806 F.3d at 656. In rejecting the defendant's claim that the second phase of this three-phase procedure was a "complete closure of the courtroom" that was structural error for purposes of the Sixth Amendment right to a public trial, the Court concluded that "the procedures used were 'the functional equivalent' of a sidebar conference" and that the only difference between the two methods—"that members of the public could not observe the individual questioning from their seats in the spectator gallery"—was immaterial. *Id.* at 660-61 & n.1. The Court went on to observe that the public and media have traditionally been excluded from such sidebars or their functional equivalents. *Id.*

In reaching this result, the *Wilder* Court cited two circuit court decisions and Justice Brennan's concurring opinion in a First Amendment case. *Id.* at 660-61. In the footnote that attracted the *Wilder* Court's attention, Justice Brennan stated:

> The presumption of public trials is, of course, not at all incompatible with reasonable restrictions imposed upon courtroom behavior in the interests of decorum. *Cf. Illinois v. Allen*, 397 U.S. 337, 90 S. Ct. 1057, 25 L.Ed.2d 353 (1970). *Thus, when engaging in interchanges at the bench, the trial judge is not required to allow public or press intrusion upon the huddle.* Nor does this opinion intimate that judges are restricted in their ability to conduct conferences in chambers, inasmuch as such conferences are distinct from trial proceedings.

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 598 n.23 (1980) (Brennan, J. concurring) (cleaned up).

The procedure that the Court employed here is no different from the one at issue in *Wilder*. Instead of holding individual *voir dire* in a jury deliberation room to which the public and media were excluded, it conducted that phase of jury selection in a closed courtroom (with defendants' assent), which amounts to the same thing; there is no meaningful difference between the two procedures. *See Jaynes v. Mitchell*, 824 F.3d 187, 195 (1st Cir. 2016) (Souter, J.) (applying the logic of *Wilder* to hold that a limited closure of *voir dire* was the functional equivalent of a sidebar).

Second, although *Press-Enterprise Co. v. Superior Court (Press-Enterprise I)*, 464 U.S. 501 (1984), recognizes a qualified right of access to jury selection proceedings, that decision was careful to note: "When limited closure is ordered, the constitutional values sought to be protected by holding open proceedings may be satisfied later by making a transcript of the closed proceedings available within a *reasonable time*, if the judge determines that disclosure can be accomplished while safeguarding the juror's valid privacy interests. Even then a valid privacy right may rise to a level that part of the transcript should be sealed, or the name of a juror withheld, to protect the person from embarrassment." *Id.* at 512 (cleaned up). Consistent with that admonition, the two First Circuit decisions cited by the news media intervenors [Dkt. 2209 at 5] merely required the trial judge to release the names and addresses of jurors at some point *after trial*. *See Chin*, 913 F.3d at 261; *In re Globe Newspaper Co.*, 920 F.2d at 90-93. As the First Circuit cautioned in both cases, nothing in those decisions casts doubt on a trial judge's power to ensure juror confidentiality as the trial unfolds. *See Chin*, 913 F.3d at 259; *In re Globe Newspaper Co.*, 920 F.2d at 91 ("No doubt stronger reasons to withhold juror names and addresses will often exist *during* trial than *after* a verdict is rendered.") (emphasis in original). Indeed, *Chin* recognizes that *In re Globe Newspaper Co.* cited with approval *United States v. Doherty*, 675 F. Supp. 719, 725 (D. Mass. 1987), in which the trial judge delayed the release of juror names until one week after trial. *Chin*, 913 F.3d at 261. While the *Chin* Court found that "the three-month delay" in that case was too long, it signaled that a pause of roughly one week "could constitute an acceptable delay." *Id.*

Third, to the extent the Court decides to release certain of the requested materials even while the trial is underway, in no event should it do so without redacting: the seated jurors' and prospective jurors' names; information they divulged which could be used to identify them; and

information that could undermine their legitimate expectations of privacy. The government now explains.

In a dissent from the denial of rehearing *en banc* in *United States v. Blagojevich*, 612 F.3d 558 (7th Cir. 2010), Judge Posner eloquently explained why release of information concerning seated jurors while a trial is in progress may be especially harmful to the privacy interests of jurors and to the sanctity and integrity of their deliberations, and why such disclosures create a situation that is rife with potential for a mistrial. *See United States v. Blagojevich*, 614 F.3d 287 (7th Cir. 2010). The government recommends that the Court read Judge Posner's full opinion, but highlights below a few passages that capture the essence of his thinking. The Court may also wish to consult the dissenting opinion of Judge Van Antwerpen in *United States v. Wecht*, 537 F.3d 222, 243-70 (3d Cir. 2008), which sets forth in detail many of the same concerns.

As Judge Posner observes with respect to juror privacy:

> The interest of the public, as distinct from the interest of the litigants, in learning jurors' identities before the end of a trial is slight in comparison to the jurors' interest in their privacy during a protracted high-profile trial. Jurors are entitled to be treated with respectful regard for their privacy and dignity, rather than as media prey.

614 F.3d at 292 (citing among other sources the First Circuit's decision in *In re Globe Newspaper Co.*, 920 F.2d at 95); *see also id.* at 288 (if the jurors are told their names will be revealed they "may well be upset, concerned for their privacy, fearful of the prospect of harassment").

And as Judge Posner reasons concerning the potential threat to the jury's deliberative process:

> A degree of anonymity safeguards jurors from intimidation during trial, promotes vigorous debate in the jury room, allows jurors to focus on the facts rather than on how the public might receive their verdict, reduces jurors' anxiety (which may improve jury deliberations), and makes people less reluctant to serve on juries.

> \* \* \*
>
> In a case like this that has garnered intense national and international media attention, releasing juror names during the pendency of trial threatens the integrity of the jurors' ability to absorb the evidence and later to render a verdict based only on that evidence. This is the case because disclosure increases the risk of third-party contact by the press or by non-parties who are monitoring these proceedings through the vast media attention this case has gathered.

614 F.3d at 293 (cleaned up); *see also id.* at 287 ("An experienced trial judge made a reasonable determination that the release of jurors' names before the end of the trial would expose the jurors to the widespread mischief that is a daily if not hourly occurrence on the Internet.").

Finally, as Judge Posner points out, legitimate efforts to protect the privacy of jurors and the integrity of jury deliberations in an ongoing trial are fully consistent with Supreme Court precedents, such as *Presley v. Georgia*, 558 U.S. 209 (2010) (per curiam), and *Waller v. Georgia*, 467 U.S. 39 (1984):

> *Presley* just requires appropriate findings, and *Waller* protects the defendant's Sixth Amendment right to a public trial, which is not infringed when the media rather than the defendant object to a closed proceeding. Extending the defendant's entitlement to the media, whose right under the First Amendment to information is no greater than the ordinary citizen's, *Pell v. Procunier*, 417 U.S. 817, 833–35, 94 S. Ct. 2800, 41 L.Ed.2d 495 (1974); *Branzburg v. Hayes*, 408 U.S. 665, 684–85, 92 S. Ct. 2646, 33 L.Ed.2d 626 (1972); *Hammer v. Ashcroft*, 570 F.3d 798, 799 (7th Cir.2009) (en banc), would mean that anytime someone objected to the temporary concealment of the jurors' identities the judge would have to interrupt the trial to hold a hearing.
>
> \* \* \*
>
> The panel's initial decision to require a hearing was based on a misreading of *Presley*, a case in which the trial judge had closed the entire jury voir dire to the public on no coherent ground. At one point he suggested that there was no space in the courtroom for the defendant's uncle, at another that he didn't want family members "interming[ling] with members of the jury panel." *The Supreme Court reversed but expressly declined to consider what procedures a court must use to determine whether to exclude members of the public*.

614 F.3d at 290-91 (emphasis added).

5

Fourth, the Court should consider expanding on its previously-stated view that the *voir dire* procedure it employed here was undertaken at least in part to mitigate the risks of Covid-19 and the Delta-variant surge—risks that are particularly acute in the dense grouping of attorneys and court personnel that Justice Brennan fittingly described as the "huddle" of the sidebar. *Richmond Newspapers, Inc.*, 448 U.S. at 598 n.23 (Brennan, J. concurring). After all, as the Supreme Court stated just a few weeks ago: "It is indisputable that the public has a strong interest in combating the spread of the COVID–19 Delta variant." *Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, No. 21A23, 2021 WL 3783142, at *4 (U.S. Aug. 26, 2021).

Fifth, the news media intervenors cite no authority requiring release to the public and media of juror questionnaires, let alone a case which says that such disclosure must be made during the pendency of a trial. At least one circuit has rejected such a requirement. *See United States v. Brown*, 250 F.3d 907, 918-22 (5th Cir. 2001). Moreover, the result in *Brown* makes imminent sense given that juror questionnaires are saturated with sensitive information concerning prospective jurors and their family members, such as details about their mental and physical health and their exposure to the criminal justice system, including prior incidents in which they were victims of crime. At the very least, the Court should make appropriate redactions if it determines these materials should be released during or after trial.

    Respectfully submitted,

    NATHANIEL R. MENDELL
    Acting United States Attorney

By: */s/ Donald C. Lockhart*
    KRISTEN A. KEARNEY
    LESLIE A. WRIGHT
    STEPHEN E. FRANK
    IAN J. STEARNS
    DONALD C. LOCKHART
    Assistant United States Attorneys

CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: September 17, 2021          /s/ Donald C. Lockhart
                                                                  DONALD C. LOCKHART