**United States District Court**
**District of Massachusetts**

———————————————————————— )
                                          )
United States of America,                 )
                                          )
            v.                            )     **Criminal Action No.**
                                          )     **19-10080-NMG**
Gamal Abdelaziz and John Wilson,          )
                                          )
            Defendants.                   )
———————————————————————— )

**ORDER**

**GORTON, J.**

Intervenors Dow Jones & Company, Inc., Boston Globe Media
Partners, LLC, The Associated Press and Bloomberg LP
("intervenors" or "news media organizations") move to intervene
to obtain 1) access to questionnaires completed by prospective
jurors, 2) a full transcript of individual <u>voir</u> <u>dire</u> of those
jurors, 3) the unsealing of the government's motion to strike a
potential juror and the Court's order thereon and 4) a ruling
that the Court conduct the remainder of the trial of John Wilson
and Gamal Abdelaziz in open court.  For the following reasons,
intervenors motion will be **ALLOWED**, in part, and **DENIED**, in
part.

**I.   Facts**

Jury selection for the Wilson and Abdelaziz trial began on
Wednesday, September 8, 2021.  On that day, the Court greeted

-1-

221 summonsed citizens arriving in two separate groups and distributed a questionnaire for each prospective juror to complete.  Those hearings were in open court and were made available to the wider public via Zoom technology.  The questionnaire was, and remains, publicly available.  See Docket No. 2131.

On Thursday, September 9 and part of Friday, September 10, 2021, the Court conducted individual voir dire of prospective jurors as it does in all jury trials, albeit more extensively due to the pre-trial publicity in this case.  After consultation with the parties and court personnel, and in consideration of the large number of jurors and the ongoing covid-19 pandemic, the Court decided to utilize the entire courtroom to conduct individual examination of the jurors, a process usually conducted at sidebar outside the hearing of the general public. Neither the government nor the defendants opposed that procedure.  Because the entire courtroom was the functional equivalent of a sidebar for the limited period of jury selection, the public did not have access to the questioning of prospective jurors.

After the conclusion of individual voir dire on Friday morning, the Court restored access to the proceedings to the public for the remainder of jury empanelment, including the

-2-

exercise of peremptory challenges.  From that point forward, the
public has had, and will continue to have, full and complete
access to the proceedings from the courtroom, an overflow
courtroom and by Zoom technology.[1]  The Court notes that such
access is considerably greater than that which is usually
afforded to the public in a criminal jury trial.

## II.  The News Media Organizations' Claims

### a.    Transcripts and questionnaires

Intervenor news media organizations contend that the manner
in which the Court conducted the individual <u>voir</u> <u>dire</u> process
abridged their right of access to judicial proceedings secured
by the First Amendment and common law.  They contend that the
courtroom was improperly closed, and seek, <u>inter</u> <u>alia</u>, copies of
the completed questionnaires and a full transcript of individual
examinations.

The Court declines to afford such relief.[2]  The courtroom
was not "sealed" during the individual voir dire.  Rather, it

---

[1] Since the completion of empanelment, two jurors have expressed
concern to the Court about their ability to continue to serve,
citing private, personal reasons.  Consequently, on two
additional occasions during the trial, the Court has conducted
"sidebars" in the lobby with counsel and the affected juror
present.

[2] The Court will, however, allow intervenors' motion to
intervene.  While the First Circuit has noted that the right of
a non-party to intervene in a criminal proceeding is doubtful,

was converted into a sidebar for the reasonable purpose of being able to question potential jurors about personal, private information disclosed in response to a lengthy questionnaire without unnecessary intimidation or the crowding of multiple attorneys and parties around a sidebar for a lengthy period of time.  See Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 598 n.23 (1980) (Brennan, J., concurring) (explaining that "when engaging in interchanges at the bench, the trial judge is not required to allow public or press intrusion upon the huddle.").

All public jury trials (at least those conducted by this judge) have used this method during jury empanelment only at the stage of the proceedings where potential jurors are questioned about their affirmative responses to questions posed by the judge.  It is done to preserve the privacy of individual citizens summonsed to sit as jurors in a federal case and is not pertinent to the subsequent evidence presented by the government in its case-in-chief, or to the defendant's case, both of which are presented in open court.

---

In re Globe Newspaper Co., 920 F.2d 88, 90 (1st Cir. 1990), federal courts nevertheless generally have permitted limited intervention by the media for the purpose of pursuing access to court proceedings, see United States v. Ciccolo, No. 15-cr-30018, 2015 U.S. Dist. LEXIS 170246, *8 (D. Mass. Dec. 21, 2015).

Citizens called to serve as jurors do not choose to be in court and, of course, have not been charged with crimes.  They are there to perform their civic duty as part of our unique and venerated criminal justice system that is without precedent in this world.  Most citizens called to serve on juries agree to serve at considerable inconvenience and sometimes physical and financial cost.  They do so because they are good citizens. They do not thereby give up their right to reasonable privacy and, although they are asked to reveal personal information to the Court and the parties to assure that they can be fair and impartial in the case at hand, they are entitled not to have such information published by news media organizations.  If that fundamental right is taken away from citizens called to serve on juries, our entire judicial system, which assures those charged with crimes with a trial by jury, will be jeopardized.  See Press-Enterprise Co. v. Superior Court of California, 464 U.S. 501, 515 (1984) (Blackmun, J., concurring) (stating that "[t]he State ... has an interest in protecting juror privacy, even after the trial – to encourage juror honesty in the future").

This does not for a minute detract from the right of the press and public to complete and open access to the substance of criminal (and for that matter civil) trials and that rule applies, and has been and will be abided by as usual.

None of the case law cited by intervenors demands a different procedure. United States v. Chin, 913 F.3d 251 (1st Cir. 2019) and In re Globe Newspaper Co., 920 F.2d 88 (1st Cir. 1990) concerned the disclosure of juror names and addresses after the jury has returned its verdict. Both are factually inapposite, and, in any case, neither was decided on constitutional grounds. See id. at 97, Chin, 913 F.3d at 260.

More generally, intervenors contend that any closure must be "narrowly tailored" and that the closure of the courtroom during jury selection was overly broad in this case. Press-Enterprise, 478 U.S. at 14-15, see also Waller v. Georgia, 467 U.S. 39, 48 (1984) (holding that closure must be "no broader than necessary" to protect privacy interest). Yet the First Circuit has repeatedly affirmed as consistent with Supreme Court precedent jury selection procedures substantially similar to those used in this case.

In Wilder v. United States, 806 F.3d 653, (1st Cir. 2015), cert. denied, 136 S. Ct. 2031 (2016), the First Circuit affirmed the holding of a different session of this district court which conducted individual voir dire in the jury deliberation room behind the courtroom and not visible to the public. In response to defendant's claim on appeal that the voir dire violated his

Sixth Amendment right to a public trial, the First Circuit
concluded that the district court

> correctly found that the procedures used were "the
> functional equivalent" of a sidebar conference.  The only
> difference between these procedures and a sidebar
> conference was that members of the public could not observe
> the individual questioning from their seats in the
> spectator gallery and attempt to discern facial expressions
> or body language, and the district court did not err in
> finding no functional difference between the two.

Id. at 657.  See also Presley v. Georgia, 558 U.S. 209, 213

(2010) (stating that "there is no legitimate reason, at least in

the context of juror selection proceedings, to give one who

asserts a First Amendment privilege greater rights to insist on

public proceedings than the accused has" under the Sixth

Amendment).

Further, in Jaynes v. Mitchell, the First Circuit upheld

the use of limited closure of the courtroom during voir dire in

lieu of sidebar questioning.  824 F.3d 187 (1st Cir. 2016),

cert. denied, 137 S. Ct. 312 (2016).  Justice Souter, sitting by

designation in the First Circuit, stated that while a

"reasonable alternative" to closing the courtroom in order to

question prospective jurors would have been sidebar questioning

outside of the hearing of courtroom spectators, the trial court

did not err in opting for limited closure instead because "in

functional terms the limited closure .... was nothing more" than

sidebar questioning.  Id.  (citing Wilder, 806 F.3d at 660).

-7-

Because the Court is convinced that its jury selection procedure is consistent with Wilder, Jaynes, and any other First Circuit and Supreme Court caselaw, it will deny intervenors' motion for access to transcripts and questionnaires.

### b.  Other relief

With respect to the other relief sought by intervenors, the Court will unseal the government's motion to strike a juror for cause (Docket No. 2180) and the Court's decision thereon (Docket No. 2184) after making redactions appropriate to protect the privacy of the prospective juror concerned.

## III. Recommendation

Upon consideration of the intervenors' motion:

1) Intervenors motion to intervene (Docket No. 2209) is
    **ALLOWED;**

2) with respect to the unsealing of the government's motion
    to strike a potential juror (Docket No. 2180) and the
    Court's order allowing the same (Docket No. 2184),
    intervenors motion for access to the proceedings is,
    subject to appropriate redactions, **ALLOWED;** but

3) intervenors motion is **otherwise, DENIED.**

-8-

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated September 20, 2021