UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | :   Criminal Action |
| | :   No. 19-10080-NMG |
| v. | : |
| GREGORY COLBURN, *et al.*, | : |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**DEFENDANTS GAMAL ABDELAZIZ'S AND JOHN WILSON'S
REPLY TO GOVERNMENT'S RESPONSE ON CONFRONTATION CLAUSE**

Defendants Gamal Abdelaziz [Def. No. 4] and John Wilson [Def. No. 17] ("Defendants") respectfully file this reply to the Government's Response on Defendant's Confrontation Clause Objections and Proposed Limiting Instruction (the "Government's Response")  (Dkt #2239). Regarding the pre-cooperation evidence, described in page 1 of the Government's Response, the defendants incorporate their prior submissions and renew their objection to this evidence as hearsay, subject to the *Petroziello* findings of this Court. Defendants are particularly troubled by the Government's desire to introduce the highly unreliable testimonial hearsay from post-cooperation evidence, in violation of the Confrontation Clause.

Under the pretense of providing context to alleged admissions in recordings, the Government wants to introduce statements by Singer, many of them false statements or "fibs," which include purposefully ambiguous language that is being offered for the truthfulness of Singer's meanings and intentions as well as Wilson's understanding of Singer's words. At the inception of his cooperation, Singer wrote the following in a note to himself: "They continue to ask me to tell a fib and not restate what I told my clients as to where there (sic) money was

going—to the program not the coach and that it was a donation and they wanted it to be a payment. Dkt. #995-14 (Note created October 1, 2018). As Singer stated, the recordings are designed to change the narrative. Singer should be available to provide the full context of that narrative.

Defendants do not dispute the general admissibility of "context" hearsay. We dispute that these statements provide the requisite context. These statements were produced under direction of the government to exploit ambiguity in language used in the recorded conversations Singer made at the government's direction and the shared understanding of that same language established between Singer and Wilson in their prior relationship. References to payments to "the coach" in the tapes are designed to indicate to the listener that Singer and Wilsons are discussing bribery – a payment to the coach. However, in their prior dealings, Singer and Wilson used this same language, "payment to the coach," to mean a donation to the specific athletic program operated by the coach.

In turn, the Government claims Wilson participated in a bribery scheme and, thus, the tape is only relevant if the listener believes Singer was referring to bribery, not to donations. Therefore, the recording is being offered for the truthfulness of what is contained therein. Accordingly, Defendants request this Court to bar admission of the post-cooperation consensual recordings as inadmissible testimonial hearsay. *United States v. Cameron*, 699 F.3d 621, 639 (1st Cir. 2012).

**The consensual calls are being used to prove the truth of the matter therein**. The government's goal in introducing these conversations is to prove the Defendants bribed coaches. The government's contrary assertions notwithstanding, these conversations are only relevant to create context if the jury believes Singer purported to be telling the truth to Wilson. *United States*

*v. Ariza-Ibarra*, 605 F.2d. 1216, 1224 (1st Cir. 1979) (holding limiting instructions in statements "for context only" insufficient when the evidence is irrelevant if not for the truth contained therein). Singer, under direction of the Government, was exploiting linguistic ambiguities and context from prior interactions to try to create the false appearance that Wilson and Singer were making statements that are incriminating. Singer exploited his and Wilson's shared prior understanding that Wilson's prior transfer of $220,000 to USC was a donation to a program to tru to create the misleading appearance in the post-cooperation recordings that Wilson was prepared to bribe a coach. The prior shared understanding enabled Singer to interchangeably use "pay the coach" and "contribute to the program," or similar terms, in the context of donations to mean donations to the specific athletic program. Under the direction of the government, Singer exploited this ambiguity during conversations to try to manufacture an impression that Wilson intended to have payments made to the coach, when Wilson understood the conversation to be about donations to the program.[1] The government here wants the jury to believe that Singer was being truthful about the payments going to the coach when, in reality, there's no evidence in Wilson's prior dealings with Singer that Wilson intended a cent to go into the coach's pocket. In fact, not a cent ever did.

**Singer's statements *are* the government's case, not mere context to alleged admissions.** The government's admissions in this motion that the conversations include lies told under the direction of the government makes this violation of the Confrontation Clause particularly problematic.  It is plainly not the case that every statement by an informant is

---

[1] Contrast, for example, the pre-cooperation call (GX-0561, recorded September 15, 2018) where payments were discussed as "contributions," with post-cooperation call (GX-0571, recorded September 29, 2018) where Singer injects "I'll split the money potentially to the coach" to try to create the impression that the payments were a bribe to the coach.

admissible, at the risk of allowing the "context" exception to eviscerate the Sixth Amendment protections provided by the hearsay *United States v. Cabrera-Rivera*, 583 F.3d 26, 34 (1st Circ. 2009) (quoting *United States v. Maher*, 454 F.3d 13, 22 (1st Cir. 2006)). The government asked Singer to fib and lie and extract passive from the defendants. Dkt. #995-14. Singer, hoping to satisfy the government agents, responded by employing ambiguous language and confusing characterizations. Defendants' reactions are hardly admissions of anything. *See Lee v. Illinois*, 476 U.S. 530, 541 (1986) ("[W]hen one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is presumptively suspect and must be subjected to the scrutiny of cross examination."). For example, while explaining the scheme to Wilson, Singer states that he channels the donations to schools through his foundation so that "that way the kids don't know it happens" and the schools "don't chase you all the time for money." GLX-0571 at 7:2-11. In the same breath, he also states that "I'll split the money potentially to the coach or other pl– parties that are out that school that need the money, right," to which Wilson responds "Mm-hmm." GLX-0571 at 7:9-17. Wilson's "Mm-hmm" may be construed to be an agreement that what he believes is a contribution to the program, consistent with what he made with his son in 2013, as a willingness to have the funds actually divvied up by individual college employees for their own benefit. Wilson's "Mm-hmm" needs to be put in the complete context – not the one conjured up by Singer at the direction of the government – but the actual historical dealings between Singer and Wilson.

***The recordings provide insufficient context to defendant's alleged admissions.*** The example used in the Government's Reply, at 5, is yet another example to show that the evidence is being offered for the truth of Singer's statements. In this exchange, Singer tells Wilson that "I wanted you [Wilson] to have first dibs" on an available spot for a walk-on at Stanford and that

"I'm gonna essentially send John [Vandermoer, the sailing coach] directly the check to the coach." *Id.* at 5-6 (excerpt of Ex. 591). In light of the previous conversations with Singer, the terms "coach" and "program" were used interchangeably. Singer knew that and purposefully exploited this context to try to give the impression that Wilson was prepared to make a bribe. The government wants the jury to hear this alleged admission outside its complete context and has elected to present it in this limited and artificial context, that ignores all prior relationship between Singer and Wilson. To that end, the government is shielding Singer from being cross-examined on this testimonial hearsay and providing its own narrative through agents under the pretense that these sentences provide the requisite context to alleged admissions. *See id.* at 546 (statements lacking sufficient "indicia of reliability" cannot be admitted without adequate opportunity for cross-examination). This is a clear violation of the Confrontation Clause.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court bar admission of the post-collaboration recordings or, alternatively, to provide the requested limiting instruction.

Dated:  September 22, 2021
        Boston, Massachusetts

Respectfully submitted,

/s/Michael Kendall
Michael Kendall (BBO # 544866)
Lauren M. Papenhausen (BBO # 655527)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
(617) 979-9300
michael.kendall@whitecase.com
lauren.papenhausen@whitecase.com

Andrew E. Tomback (pro hac vice)
MCLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, NY 10016
(212) 448-1100

/s/ Brian T. Kelly
Brian T. Kelly (BBO # 549566)
Joshua C. Sharp (BBO # 681439)
Lauren A. Maynard (BBO # 698742)
NIXON PEABODY LLP
53 State Street
Boston, MA 02109
(617) 345-1000
bkelly@nixonpeabody.com
jsharp@nixonpeabody.com
lmaynard@nixonpeabody.com

Robert Sheketoff (BBO # 457340)
One McKinley Square

| | |
|---|---|
| atomback@mclaughlinstern.com | Boston, MA 02109 |
| *Counsel for John Wilson* | (617)-367-3449 |
| | *Counsel for Gamal Abdelaziz* |

## **CERTIFICATE OF SERVICE**

      I, Michael Kendall, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants, if any, on September 22, 2021.

                /s/ Michael Kendall
                Michael Kendall