UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

UNITED STATES OF AMERICA,

-against-

GAMA ABDELAZIZ, ET AL,

              Defendant.

---

Criminal No. 1:19-cr-10080-NMG

**FILE PARTIALLY UNDER SEAL**

**LEAVE TO FILE GRANTED ON SEPTEMBER 23, 2021**

### MOTION TO INTERVENE AND QUASH TRIAL SUBPOENAS ON BEHALF OF AL CHECCIO, LAUREN WHITTAM, RAY GONZALES, AND TRACEY VRANICH

Pursuant to Rule 17 of the Federal Rules of Criminal Procedure, Al Checcio, Lauren Whittam, Ray Gonzales, and Tracey Vranich, (collectively "the USC Employees") move to intervene to quash trial subpoenas for testimony served by counsel for Defendants John Wilson and Gamal Abdelaziz (collectively "Defendants").[1] The subpoenas are unreasonable and oppressive because: (1) they seek irrelevant testimony, and (2) they are in contravention of the Court's order that the "trial is not going to be about the general admissions policy of the University of [Southern] California or the method it uses to admit students." Aug. 18, 2021 Tr. at p. 6. The USC Employees have no knowledge of the Defendants, the admission of their children, Rick Singer, or the misrepresentations the Defendants are alleged to have made. Defendants do not argue otherwise. There is simply no admissible testimony the USC Employees could possibly offer that would have any bearing on Defendants' state of mind. For these reasons, as further described below, the trial subpoenas for testimony should be quashed.

---

[1] The trial subpoena served to Ms. Vranich was served solely by Defendant Wilson.

## I.      FACTUAL BACKGROUND

Wilson allegedly conspired with Rick Singer to have his son admitted to USC through a "side door" scheme. This door was opened by Jovan Vavic, USC's Men's Water Polo coach at the time, whom Singer allegedly corrupted.[2] In April 2014, after Singer facilitated his son's admission to USC as a purported water polo player, Wilson allegedly paid Singer $220,000. Fourth Superseding Indictment ("FSI") at ¶ 225. Wilson admits that he did not make any direct donation to USC in connection with his son's admission.[3] Instead, Wilson told the Court that "Singer persuaded Wilson to route his donation through Singer's charity, the Key Worldwide Foundation." D.E. 995. According to Wilson, Singer then sent $100,000 to USC, and Singer "stole the other $100,000 for himself."[4] *Id.* USC never issued Wilson a gift receipt in connection with the $100,000 payment made by Singer.

Abdelaziz's participation in the "side door" scheme conspiracy allegedly began in summer of 2017. FSI at ¶ 114. Abdelaziz allegedly paid Singer $300,000 to facilitate his daughter's admission to USC as a purported basketball recruit and misrepresented her athletic accomplishments. FSI at ¶¶ 114, 117. Abdelaziz never made any donation to USC. FSI at ¶¶ 119-121.

## II.     PROCEDURAL BACKGROUND

Defendants served trial subpoenas on Ms. Whittam, Mr. Checcio, and Mr. Gonzales on August 6, 2021, August 19, 2021, and August 24, 2021, respectively. On August 18, 2021, during the final pretrial conference, this Court held:

As a preliminary matter, counsel should understand that this trial is not going to be about

---

[2] Vavic has also been indicted for his role in procuring admission for Wilson's son. *See United States v. Ernst et al.*, No. 19-cr-10081 (D. Mass Mar. 5, 2019), D.E. 1.
[3] Wilson made a $5,000 donation to USC months after his son matriculated to USC; neither the government nor Wilson contends this donation is relevant.
[4] Wilson apparently admits that the other $20,000 was intended for Singer.

2

the general admissions policy of the University of [Southern] California or the method it uses to admit students. USC is not on trial here, and I will not have this case devolve into multiple side trials. Unless there's evidence that a defendant was misinformed with respect to the admission policy of the subject university and/or knew that USC admitted a specific unqualified student whose parent made a large donation to the school before that defendant entered into the alleged conspiracy with Singer, evidence of what other unrelated students and parents did has no bearing on the defendants' state of mind and, thus, is irrelevant to the requisite scienter that the government must prove in this case.

Aug. 18, 2021 Tr. at 6.

Counsel for the USC Employees had several subsequent discussions with Defendants' counsel. Counsel for Wilson claimed, without any evidence or support, that the Court's ruling somehow did not apply to the tax charge against his client, and argued that he could continue to issue subpoenas regarding unrelated students.

On September 17, 2021, Wilson served a trial subpoena on Ms. Vranich. A month prior, on August 12, 2021, Wilson had issued a trial subpoena for documents to USC seeking, among other things, documents sufficient to show every instance USC informed a donor that the tax deductibility of his or her donation was reduced because of favorable admissions consideration given to an applicant in exchange for a donation (Request 4), and documents sufficient to show every instance the IRS penalized USC for failing to inform a donor that the tax deductibility of his or her donation was reduced because of favorable admissions consideration given to an applicant in exchange for a donation (Request 5). USC informed Wilson that it did not possess any documents in response to Requests 4 and 5.[5] Wilson's counsel drafted a "no-responsive-documents" certification and demanded, without citing any legal justification, USC sign the certification. Because Requests 4 and 5 were based on the false premise that USC decided whether to admit particular applicants based on donations by the applicants' parents or other people

---

[5] No responsive documents exist because USC does not offer admission to any applicant in exchange for *quid pro quo* payments. Indeed, USC would not have admitted Wilson's son had it known the true circumstances of his application and payment to Singer.

3

associated with the applicant, USC declined Wilson's request. Wilson's counsel then sent the following email:

> Either 1) USC provides us with a written certification that both we and the Court finds acceptable for admission and the wording meets with our approval before it is signed, or 2) I will subpoena a witness to give us the testimony. Please let me know your choice by 5 pm PT today. If we have to serve the GC's office with a subpoena tomorrow, we will insist on live testimony. *See* September 14, 2021 email from M. Kendall, attached hereto as Exhibit A.

When USC declined to capitulate to Wilson's demands, Wilson subpoenaed Ms. Vranich to testify regarding these tax-related issues.

## III.   LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 17(c)(2), "the court may quash or modify [a] subpoena if compliance would be unreasonable or oppressive." *See, e.g., United States v. Henry*, 482 F.3d 27, 30-31 (1st Cir. 2007) (affirming trial court's decision to quash subpoenas pursuant to Fed. R. Crim. P. 17(c)(2)); *United States v. Bergeson*, 425 F.3d 1221, 1227-28 (9th Cir. 2005) (upholding district court order quashing subpoena for testimony pursuant to Fed. R. Crim. P. 17(c)(2)).

## IV.   ARGUMENT

### A.   Defendants' Subpoena Seeks Irrelevant Testimony

Defendants have not and cannot meet their burden of showing that the USC Employees' testimony is relevant. None of the USC Employees had anything to do with Johnny Wilson's or Sabrina Abdelaziz's admission to USC. None of the USC Employees ever met or communicated with Wilson or Abdelaziz. Prior to the indictment in this case, none of the USC Employees had ever heard of Wilson, Abdelaziz, or their children, and neither Wilson nor Abdelaziz claims to have interacted with the USC Employees. There is no simply connection between any of the USC Employees and either Defendant. There is similarly no connection between any of the USC

Employees and Rick Singer. None of the USC Employees has ever met or communicated with Singer or heard of Singer prior to the indictment. Defendants do not claim otherwise.

1. **Al Checcio**

Mr. Checcio served as USC's Senior Vice President for University Advancement from 2010 to 2020. Mr. Checcio believes that Defendants want to call him to testify about fundraising. But nothing Mr. Checcio says can possibly be relevant to the criminal allegations. Neither Wilson nor Abdelaziz is alleged to have donated money to USC in connection with his child's admission; rather, Wilson and Abdelaziz each allegedly made payments to Singer. The only explanation for Defendants' intention to call Mr. Checcio to testify is to put USC and its general fundraising approaches on trial, despite the Court's orders that the trial would not be about USC.

2. **Lauren Whittam**

Ms. Whittam has served as an Executive Director in USC's San Francisco Office of University Advancement since 2015. Ms. Whittam believes that Defendants want to call her to testify about USC's fundraising, but nothing Ms. Whittam says can possibly be relevant to the criminal allegations. Although Ms. Whittam corresponded with two indicted parents (Marcia Palatella and Davina Isackson) about potential donations to USC as part of her legitimate fundraising duties, Ms. Whittam had no knowledge of these parents' conspiracy with Rick Singer and Donna Heinel. Moreover, Defendants themselves contend that what these other parents did is irrelevant, as counsel for Defendant Abdelaziz recently argued:

> "A central issue in this case is the intent of this defendant . . . all these other parents' activities, that such evidence is not evidence of the defendant's intent, and proof that the defendant joined a conspiracy must be based upon evidence of his words and actions, not these other parents . . . all this other evidence [about other parents] has nothing to do with his intent, so the jury, as they hear it, should have the proper context, and it's not reflective of the defendants' intent." Sept. 20, 2021 Tr. at 209-210, attached hereto as Exhibit B.

Having taken the position that the actions of other parents of USC applicants are not evidence of their intent, the Defendants cannot now take the opposite position by seeking to elicit evidence of other parents' interactions with USC's Advancement Department, which will result in the mini-trials the Court intends to avoid. USC is not on trial, and nothing Ms. Whittam says can possibly be relevant to the criminal allegations.

3. **Ray Gonzales**

Mr. Gonzales served as the Senior Director of Research and Reporting from 2003 to 2010 before returning to USC as an administrator in 2017. Mr. Gonzales currently serves as the Director of Institutional Research at USC. Mr. Gonzales was not an employee at USC from 2011 to 2016, which includes the years Wilson's son applied to and matriculated at USC.

Defendants seek Mr. Gonzales's testimony for the sole reason that he created a summary chart regarding the admission rate of students who received a VIP tag in the 2018 academic year, as part of USC's negotiated response to a Rule 17(c) pretrial subpoena issued by Defendant Robert Zangrillo on July 11, 2019. This chart, which the Defendants apparently seek to introduce at trial, is irrelevant and could only result in multiple mini-trials.

Unlike the children of Wilson and Abdelaziz, who were admitted through Subco as purportedly recruited athletes, Defendant Zangrillo's daughter was never presented to Subco but rather received a VIP tag from Donna Heinel. Because Defendant Zangrillo's daughter was admitted with a VIP tag, the Court ruled that information regarding the VIP tag was relevant to Defendant Zangrillo. But the Court has quashed other requests regarding the use of VIP tags with respect to Defendants Wilson and Abdelaziz whose children did not receive a VIP tag. D.E. 1724. Defendant Zangrillo was pardoned by President Trump, and the chart created by Mr. Gonzales at

the direction of USC counsel about VIP applicants has no relevance to the Defendants' intent or to their fraud on the Subco process.

Even if the chart is somehow relevant, there is no justification for calling Mr. Gonzales to testify about the document, which speaks for itself. Defendants and the government should agree that the document is authentic—if they have not already done so—and the Court can make its admissibility ruling. Mr. Gonzales's testimony cannot possibly have any relevance, particularly given that Defendants' children never even received VIP tags.

4. **Tracey Vranich**

Ms. Vranich has worked in University Advancement at USC since 2011. In 2020, Ms. Vranich was promoted to Interim Senior Vice President of University Advancement.

Wilson has informed counsel for Ms. Vranich that she is being called to testify about the "tax treatment" of favorable admission decisions other students allegedly received in exchange for donations. As a preliminary matter, Wilson's request is based on a false premise because USC does not admit students in exchange for donations. Second, the Court has already ruled such testimony is irrelevant because "[e]vidence of what other unrelated students and parents did has no bearing on the defendants' state of mind and, thus, is irrelevant to the requisite scienter that the government must prove in this case." August 18, 2021 Tr. at p. 6. Wilson's bald claims that this ruling somehow did not apply to the pending tax charge makes no sense.

To the extent that the Court deemed this testimony relevant, in order to alleviate the burden of flying Ms. Vranich across the country, USC is willing to provide a declaration explaining that no it has no responsive documents reflecting that USC instructed a donor to reduce his or her tax deductibility in connection with an admission decision because USC does not offer admission to any applicant in exchange for *quid pro quo* payments.

7

**B.      Defendants' Subpoena Unduly Burdens Mr. Checcio**

Even if Mr. Checcio did possess some relevant information—and he does not—appearing to testify imposes an impermissible burden on him. Under FRCP 45, "[a] party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." Fed. R. Civ. P. 45(c)(1).

"[T]he test for 'undue burden' is a balancing test that pits the need of the party for the sought [testimony] against the interests of the subpoenaed witness in resisting compliance." *See* 9 James Wm. Moore et al., Moore's Federal Practice § 45.32 (3d ed. 2007); *see also Behrend v. Comcast Corp.*, 248 F.R.D. 84, 85–86 (D. Mass. 2008) (citations omitted). As to the nature of the undue burden on a witness for complying with a subpoena, a witness must show there would be "a clearly defined and serious injury." *United States v. Massimino*, 368 F. Supp. 3d 852, 855 (E.D. Pa. 2019). Importantly, the unwanted burden imposed on non-parties is entitled to "special weight" in performing this balancing test. *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998).



**V.      CONCLUSION**

For all the foregoing reasons, the USC Employees respectfully request that this Court allow

8

the USC Employees to intervene in this matter and ask the Court to quash Defendants' subpoena commanding the USC Employees' appearance to testify.

> Respectfully submitted,
>
> AL CHECCIO, LAUREN WHITTAM, RAY GONZALES, TRACEY VRANICH
>
> By their attorneys,
>
> */s/ Debra Wong Yang*
> Debra Wong Yang (Admitted *Pro Hac Vice*)
> Douglas M. Fuchs (Admitted *Pro Hac Vice*)
> GIBSON DUNN & CRUTCHER LLP
> 333 South Grand Avenue
> Los Angeles, CA 90071-3197
> (213)229-7000
> dwongyang@gibsondunn.com
> dfuchs@gibsondunn.com
>
>
> */s/ Anthony E. Fuller*
> Anthony E. Fuller (BBO #633246)
> William H. Kettlewell (BBO# 270320)
> Elizabeth C. Pignatelli (BBO #677923)
> HOGAN LOVELLS US LLP
> 125 High St., Suite 2010
> Boston, MA  02110
> (617) 371-1000
> anthony.fuller@hoganlovells.com
> bill.kettlewell@hoganlovells.com
> elizabeth.pignatelli@hoganlovells.com

Dated: September 23, 2021

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 23, 2021.

                                        */s/ Anthony E. Fuller*
                                        Anthony E. Fuller