**United States District Court**
**District of Massachusetts**

_____
                                  )
United States of America,         )
                                  )
            v.                    )      **Criminal Action No.**
                                  )      **19-10080-NMG**
Gamal Abdelaziz and John Wilson,  )
                                  )
        Defendants.               )
_____)


**MEMORANDUM & ORDER**


**GORTON, J.**

       There are multiple pending motions in this case, six of
which the Court now addresses.


   **I.   Non-Party University of Southern California's Motion to**
        **Quash (Docket No. 2181).**

   The motion of non-party University of Southern California
("USC") to quash defendant John Wilson's trial subpoena served
on August 12, 2021, (Docket No. 2181) is dealt with as follows:

       Defendant Wilson has stated that he will not pursue the
first request in the subpoena, i.e for documents prepared for
and by the USC Athletics Admissions Review Committee ("Subco")
in connection with the applications of six named candidates, and
therefore USC's motion to quash with respect to that request is
**DENIED as moot.**

-1-

The second request in the subpoena seeks gift receipts issued by USC for donations made by the families of 18 USC students.  Wilson contends that the gift receipts are relevant to the charge against him of filing a false tax return.  He states that federal law requires that the value of goods and services received in exchange for a donation is to be subtracted from the amount donated in order to determine the amount that may be claimed as a tax deduction.  He asserts that the value of goods or services, in this case, the favorable admissions consideration by USC, is determined by reference to similar situations.

Wilson further contends that the 18 gift receipts he seeks to proffer affirm, in each instance, that there were no goods or services exchanged for the donation and demonstrate that, notwithstanding USC's alleged awareness of the connection between the donation and the student's admission, USC does not account for the value of a student's admission.

Wilson's argument is not, however, relevant to the charge against him.  The statute, 26 U.S.C. § 7206, makes it illegal for an individual

> [to] make[] and subscribe[] any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter.

-2-

Because it is uncontested that Wilson knowingly filed his tax return, the only material issue at hand is his state of mind when doing so.  A gift receipt which Wilson did not see before he filed his tax return (nor has yet seen) cannot possibly be material or relevant to this case.

The motion to quash (Docket No. 2181) is, with respect to the requested receipts, **ALLOWED**.

## II.  USC Employee Intervenors' Motion to Intervene and Quash Trial Subpoenas (Docket No. 2171).

The motion of non-party employee intervenors Alex Garfio, Alexandra Reisman and Scott Wandzilak ("Employee Intervenors") to quash defendant Wilson's trial subpoenas seeking their testimony (Docket No. 2171) will be allowed, in part, and denied, in part.

While Fed R. Crim. P. 17(a), which governs subpoenas for trial testimony, does not provide explicitly for quashing or modification, courts "routinely have entertained motions seeking such relief and decided them by reference" to the principles relevant to Rule 17(c) subpoenas, and "roughly the same standard applies".  Stern v. United States Dist. Court, 214 F.3d 4, 17 (1st Cir. 2000).  Subpoenas may be quashed if their execution would be unreasonable or oppressive.  Fed. R. Crim. P. 17(c)(2).

-3-

The Supreme Court has held that a subpoena is not "unreasonable or oppressive" if the testimony sought is relevant, admissible, and specific.  United States v. Nixon, 418 U.S. 683 (1974), see Stern, 214 F.3d at 17.

    a.   Reisman and Wandzilak

Employee Intervenors claim that Reisman and Wandzilak are merely fundraisers for the USC Athletic Department and cannot provide testimony relevant to the charges against defendants. Employee Intervenors state that during the meet and confer process, defense counsel conceded that neither Reisman or Wandzilak had any contact with either defendant in this case and had no knowledge of the application for admission of defendants' children to USC.  They assert that the testimony that defendant Wilson seeks from them about the general practices of the USC Athletic Department is exactly the sort which the Court has warned would not be admissible and, in any event, is cumulative of other witnesses' testimony.

Defendants contend that 1) Reisman, as Associate Athletic Director for the USC Trojan Athletic Fund, helped facilitate the admissions process for those families who had the capacity to make substantial donations, and 2) Wandzilak, as a member of the Development Department, recommended applicants to the Athletic Department based solely on their capacity to give.  They argue

-4-

that defendants cannot be found guilty of honest services fraud
or conspiracy to commit such fraud if USC employees, such as
Reisman and Wandzilak, were acting in accordance with the
customs, practices and policies of USC in connection with the
admission of defendants' children.  They cite an order issued by
Magistrate Judge Kelley concerning another erstwhile defendant
in this case, Robert Zangrillo, wherein Magistrate Judge Kelley
denied a motion to quash a subpoena seeking documents showing
how USC considered applicants marked "special interest" or
"VIP".

    As the Court has ruled on previous occasions, testimony
concerning the general fundraising practices of USC is not
relevant to whether admitting students through Subco with
falsified athletic profiles deprived USC of the honest services
of its employees.  While the testimony of Reisman and Wandzilak
might be relevant to an applicant such as Zangrillo's daughter,
who was marked as "special interest" or "VIP", defendants'
children were not so designated.  Rather, they were admitted
through Subco as putative athletic recruits.  Defendants have
not demonstrated that Reisman and Wandzilak have information
relevant to the honest services question as to these defendants,
i.e. the customs, practices and policies of Subco or the
relevant expectations of the Admissions Department.  Therefore,

-5-

Employee Intervenors motion to quash (Docket No. 2171) is, as to Reisman and Wandzilak, **ALLOWED.**

    b.   Garfio

With respect to Garfio, Employee Intervenors contend that defendants have not identified any testimony Garfio can provide concerning Abdelaziz's daughter because she applied to USC after Garfio stopped working with Donna Heinel.  As to Wilson's son, Employee Intervenors submit that Garfio's involvement was limited to printing out a few emails directed to Heinel and putting them in a file for Subco review.  Employee Intervenors conclude that Garfio's testimony would be cumulative and irrelevant.

Defendants vigorously disagree.  They assert that Garfio had a direct involvement with the admission of Johnny Wilson about which they seek to examine him.  They also assert that Garfio, who had responsibilities related to Subco admissions, can testify to the honest services that USC expected of its employees and to whether USC was deprived of such services in this case.  They argue that Garfio does not suggest that he faces any hardship in testifying and should not be excused from testifying merely because of his disinclination.

Defendants have made a sufficient showing that the testimony they seek from Garfio is likely to be relevant, admissible and specific.  Employee Intervenors motion to quash (Docket No. 2171) is, as to Garfio, **DENIED**.

**III. Motion of Non-Party Ron Crawford to Intervene and Quash Trial Subpoena (Docket No. 2235).**

Non-party Ron Crawford has filed a motion to intervene and quash a trial subpoena served by defendants (Docket No. 2235) the relevant standard for which the Court has previously set forth, see supra p. 3-4.

Defendants argue that Crawford's testimony is "needed to authenticate the video shown in the opening of Mr. Singer's speech to Starbucks employees".  To date, however, defendants have sought to utilize that video to prove that Singer acted in a similar way toward these defendants, an effort impermissible under Fed. R. Evid. 404(a)(1).  Nor is evidence of Singer's specific conduct during his Starbucks presentation admissible as it pertains to Singer's truthfulness because that would be extrinsic evidence prohibited under Fed. R. Evid. 608(b).  More generally, defendants have failed 1) to address persuasively the relevance of the video at issue under Fed. R. Evid. 401, 2) to introduce any evidence to suggest they had any knowledge of the

presentation, or 3) to introduce any evidence that they
interacted with Singer in a similar context.

The motion of non-party Ron Crawford to intervene and quash
the trial subpoena (Docket No. 2235) is **ALLOWED**.

## IV.  Defendants' Motion for Curative Instruction (Docket No. 2237).

Defendants have filed a motion for a curative instruction
with respect to burden shifting.  They argue that the
prosecution made comments in front of the jury which improperly
suggested that the defendants should produce evidence of their
innocence.  In particular, defendants contend that the following
question posed to Special Agent Keith Brown by counsel for the
government improperly shifted the burden:

> Q: When you did that [i.e., when Brown had, previously and
> unrelated to this case, deleted text messages on his own
> phone], did it also delete off the phone of the person who
> received the message?

Brown responded that it was his understanding that when an
individual deletes a text message from a device, it is not
deleted from the receiving device.  Defendants contend that the
question and answer suggested to the jury that defendants have
the ability and the burden to produce text messages between
themselves and other co-conspirators, namely Rick Singer, that
he may have deleted.

The government maintains that there has been no impermissible burden shifting, that the colloquy was proper in response to the defendant's implication that relevant evidence was destroyed by a witness under the government's control.

The Court is required to scrutinize comments that may either shift the burden of proof or impermissibly suggest to the jury that the defendant is obligated to present evidence of his innocence. United States v. Glover, 558 F.3d 71, 77 (1st Cir. 2009) (internal citations omitted). In making that determination, the Court must consider whether the comment was aimed at the failure of the accused to testify, which is forbidden, or simply directed at the lack of evidence or holes in the defendant's case, which is not. Id., United States v. Salley, 651 F.3d 159, 165 (1st Cir. 2011).

Here, the prosecutor's question was not impermissible. Testimony elicited by defense counsel could, and likely will, be understood to imply a causal relationship between Singer's cooperation and the deletion of the text messages. The government's re-direct examination concerning deletion of text messages permissibly casts doubt on the theory implied by defense counsel. It cannot be said to be of such a character that the jury would naturally and necessarily take it to be a

-9-

comment on the failure of the accused to testify.  Defendants'
motion for a curative instruction (Docket No 2237) is **DENIED.**

## V.    **Defendant Gamal Abdelaziz's Motion for a Limiting Instruction (Docket 2252).**

Defendant Abdelaziz moves for a limiting instruction with
respect to alleged personal payments to Donna Heinel (Docket No.
2252), including the invoice that Heinel allegedly drafted and
which reflected $20,000 owed as partial payment for services
rendered on behalf of Sabrina Abdelaziz.

Defense counsel contends that Heinel did not begin to
accept personal payments until July, 2018, that Mr. Abdelaziz
made his donation in March, 2018, and thus that the risk of
juror confusion and transferal of guilt is very high, warranting
a limiting instruction.  Defendant proposes an instruction that
the payments should be disregarded when determining his intent
and that they are relevant only to the nature, scope and
operation of the conspiracy.

In its opposition, the government refers to and rests upon
its previous arguments with respect to limiting instructions
regarding co-conspirators and reiterates that it has been clear
about the timing of the payments in question.

The Court will thoroughly instruct on the law of conspiracy in its charge to the jury but, in the meantime, defendant's motion for a limiting instruction (Docket No. 2252) is **DENIED**.

## VI.   Defendant Gamal Abdelaziz's Motion to Introduce Exhibit (Docket No. 2251).

Defendant Abdelaziz has filed a motion to admit a series of messages between two USC admissions officers, Kelsey Bradshaw and Alexander Alvendia-Wienkers, concerning Sabrina Abdelaziz which are included in Exhibit 1288.  Defendant asserts that the exhibit is relevant because it concerns Sabrina Abdelaziz's admission to USC and is not hearsay because it is offered for the "state of mind" of the USC Athletic Department.

The Court denied defendant's proffer of Exhibit 1288 during cross-examination of Rebecca Chassin.  The USC Admissions Department is an administrative entity of a university and as such does not have a "state of mind".  To the extent the exhibit suggests a "policy" of that department, its admission would be for the truth of the matter asserted, i.e. that the department's policy was nefarious, and would be hearsay not within an exception.  Moreover, it is not admissible to impeach Ms. Chassin in any event because she is not responsible for what her colleagues said.

-11-

There may be occasion for defendant Abdelaziz to proffer Exhibit 1288 under different circumstances but it cannot be admitted pursuant to the pending motion (Docket No. 2251) which is hereby **DENIED**.

**So ordered.**

 /s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated September 23, 2021