FILED
IN CLERKS OFFICE

2021 SEP 24 AM 10: 15

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>GAMAL ABDELAZIZ and JOHN WILSON,<br>Defendants. | )<br>)<br>)<br>)  CRIMINAL ACTION<br>)  NO. 19-10080-NMG<br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PROPOSED INTERVENOR BOSTON GLOBE MEDIA PARTNERS, LLC FOR ORDER ALLOWING PUBLIC ACCESS TO TRANSCRIPTS OF AUDIO RECORDINGS PROVIDED TO JURY**

Proposed Intervenor Boston Globe Media Partners, LLC, publisher of the Boston Globe newspaper (the "Globe"), submits this memorandum of law in support of its motion for an order permitting public access to transcripts of audio recordings provided to the jury in this case.

The evidence in this case includes audio recordings of the defendants. Transcripts of those recordings have been provided to the jury as an aid to considering the evidence. As shown below, although those transcripts are not admitted as evidence, it is well-established that the public's common law right of access applies in full force when such documents are provided to and used by a jury.

### ARGUMENT

**A.  The Press and the Public Have a Common Law and Constitutional Right of Access to the Transcripts.**

The First Circuit, like other Circuit Courts, "has established a First Amendment right of access to records submitted in connection with criminal proceedings." *Globe Newspaper Co. v. Pokaski*, 868 F. 2d 497, 502 (1st Cir. 1989) (citing *In re Globe Newspaper Co.*, 729 F.2d 47, 52 (1st Cir. 1984)); *see also In re Providence Journal Co., Inc.*, 293 F.3d 1, 9-10 (1st Cir. 2002). "The basis for this right is that without access to documents the public often would not have a 'full understanding' of the proceeding and therefore would not always be in a position to serve as an effective check on the system." *Pokaski*, 868 F. 2d at 502.

DB3/ 204017225.1

In addition, the public's common law right of access to judicial records applies to "relevant documents which are submitted to, and accepted by, a court of competent jurisdiction in the course of adjudicatory proceedings[.]" *Federal Trade Commission v. Standard Financial Management Corp.*, 830 F.2d 404, 409 (1st Cir. 1987); *see also Providence Journal*, 293 F.3d at 9. "Thus, videotapes and audiotapes on which a court relies in the determination of substantive rights are within its reach." *Id.* at 16. *See generally Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 599 (1978) (recognizing common law right of access to inspect and copy trial exhibits). "The appropriateness of making court files accessible is accentuated in cases where the government is a party: in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *Standard Fin. Mgmt.*, 830 F.2d at 410.

In *United States v. Martin*, 746 F.2d 964 (3d Cir. 1984), for example, the Third Circuit reversed a district court's decision denying the press access to transcripts of tape recordings that had been provided to the jury. *Martin* was a public corruption case brought against fifteen officers or former officers of the Philadelphia Police Department. The defendants were grouped into two separate trials, with the second case to follow the first by about three months. *Id.* at 966. During the first trial, the jurors heard tape recordings of phone calls of the defendants and were provided transcripts to aid them in following the conversations. *Id.* Members of the press moved for permission to copy the audiotapes and for copies of the transcripts. *Id.* The district court denied the motion on the grounds that (i) the transcripts were not admitted into evidence; (ii) the public interest the case was not as significant as in other public corruption cases; and (3) the "enhanced publicity" caused by release of the requested materials would likely make it impossible to impanel a fair and impartial jury for the upcoming trial of the remaining defendants. *Id.* at 968.

The Third Circuit reversed, rejecting each of the grounds relied upon by the district court. The Court held that the strong presumption of public access applied to the transcripts despite that they were used as an aid to the jury and not admitted as evidence. *See id.* ("The common law

right of access is not limited to evidence, but rather encompasses all 'judicial records and documents'") (citation omitted); *see also id.* (public right of access applies to "transcripts, evidence, pleadings, and other materials submitted by litigants") (internal quotation marks and citation omitted). As explained by the Court in reasoning fully applicable here:

> The public interest in monitoring judicial proceedings also supports a presumption in favor of access. Although representatives of the media were present at the trial and were able to take notes on the recorded conversations as they were played to the jury, this procedure has obvious limitations. The public interest can best be vindicated by the release of complete and accurate transcriptions, at the expense of the media applicants. We therefore hold that the strong presumption in favor of public access applies to these transcripts.

*Id.* at 968-69.

The *Martin* Court also rejected the district court's ruling that only cases of "extraordinary public interest" trigger a public right of access to transcripts shown to a jury. *Id.* at 969; *see generally id.* ("Estimates of a case's public significance will inevitably vary among segments of the community, not to mention from judge-to-judge.").

Concerns about selecting an impartial jury in a related upcoming trial also did not justify denying the public's right of access to the transcripts. *Id.* at 969-73. The Court found that the "four days consumed by *voir dire*" was "by no means extraordinary for a highly publicized criminal case." *Id.* at 973. And, as in this case, the Court noted that the tapes themselves "have already been played in open court, and have been widely reported in the media." *Id.* at 970. Although the disclosure of videotapes has greater potential for prejudicial impact than the disclosure of audiotapes or transcripts, the Court observed that videotapes nevertheless are presumptively public because "[r]eplication of the trial court experience may contribute to the public's understanding of the events which were the subject of the trial proceedings, and thereby enhance its 'comprehension of the functioning of the entire criminal justice system[.]" *Id.* at 972 (internal quotation marks and citations omitted). Accordingly, if the "public forum values" served by the release of videotapes outweighed the potential prejudicial impact, "the same values

served by release of audiotapes and transcripts that replicate the trial court experience outweigh the lesser dangers created by their release." *Id.*[1]

Applying similar principles, federal courts routinely have granted public access to transcripts of recordings shown to jurors. *See Nixon v. Warner Communications*, 435 U.S. 589, 594 (1978) ("The District Court furnished the jurors, reporters, and members of the public in attendance with earphones and with transcripts prepared by the Special Prosecutor. The transcripts were not admitted as evidence, but were widely reprinted in the press."); *see also United States v. Sampson*, 297 F. Supp. 3d 342, 343 (D. Mass. 2003) ("Transcripts of the recordings played in open court for the jury have, on request, been provided promptly to the media."); *United States v. Criden*, 648 F.2d 814, 816 (3d Cir. 1981) ("The court released transcripts of the tapes to the press and public[.]"); *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 427 (5th Cir. 1981) ("Members of the press were allowed to listen as the tapes were played in court; transcripts were prepared and distributed for their use; reporters and broadcasters were free to report this information as they wished."); *Valley Broad. Co. v. United States Dist. Court*, 798 F.2d 1289, 1292 (9th Cir. 1986) (press "was provided with transcripts of the exhibits admitted into evidence"); *In re Application of National Broadcasting Co. (Myers)*, 635 F.2d 945, 952 (2d Cir. 1980) ("In the interest of accuracy, verbatim transcripts of the contents of the tapes were distributed to the jury and members of the press."); *In re NBC (Jenrette)*, 653 F.2d 609, 620-21 (D.C. Cir. 1981) ("Typewritten transcripts of the audio tapes were released to the media

---

[1] A "reasonable likelihood" that public access will harm the defendant's fair trial rights is not enough. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 14 (1986) (reversing closure order based on finding that publicity would cause a "reasonable likelihood" of harm to defendant's fair trial rights and instead requiring showing of a "substantial probability" of such harm). *See also id.* at 15 ("Through *voir dire*, cumbersome as it is in some circumstances, a court can identify those jurors whose prior knowledge of the case would disable them from rendering an impartial verdict."). Moreover, the impoundment order must *effectively* serve its intended interest, *i.e.*, the harm from public access must be one "that closure would prevent." *Id.*; *see also Pokaski*, 868 F.2d at 505-506. Thus, if the impoundment order will not itself prevent the perceived harm – as here, when the information already is in the public record or will inevitably become so -- the governing standard cannot be met. *See generally Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609-610 (1982).

after the tapes were played in the courtroom."). *See generally Providence Journal*, 293 F.3d at 18 n.6 ("providing the media with copies of these transcripts might represent a relatively straightforward means of furthering access without imposing any significant burden upon the district court or the litigants").[2]

The party seeking to overcome the presumption of public access bears the burden of persuasion. *Standard Fin. Mgmt.*, 830 F.2d at 411; *see also Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). Conclusory assertions of the need for closure are not accepted as surrogates for hard facts, and doubts are to be resolved in favor of public access. *Standard Fin. Mgmt.*, 830 F.2d at 412; *Continental Illinois Securities Litigation*, 732 F. 2d 1302, 1313 (7th Cir. 1984). As in *Martin*, no such showing can be made in this case.

## CONCLUSION

For the foregoing reasons, the Globe requests that the Court grant public access to the transcripts of recordings provided to the jury.

Respectfully submitted,

**BOSTON GLOBE MEDIA PARTNERS, LLC**

By its attorneys,

*/s/Jonathan M. Albano*
Jonathan M. Albano BBO #013850
jonathan.albano@morganlewis.com
**MORGAN, LEWIS & BOCKIUS, LLP**
One Federal Street
Boston, MA  02110-1726
Phone: 617-951-8000
Fax:    617-951-8736

Dated:  September 24, 2021

---

[2] Because the press did not seek to obtain the transcripts of the recordings, the *Providence Journal* Court did not further address the transcript issue. *Id.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of September 2021, I filed a copy of the foregoing with the Clerk's Office and understand that it will be loaded into the Court's ECF system resulting in service to all registered parties. In addition, I have today sent a copy of this motion via email to the following lead counsel representing a party in the pending trial: Stephen Frank on behalf of the government at stephen.frank@usdoj.gov; Michael Kendall on behalf of John Wilson at michael.kendall@whitecase.com; and Brian Kelly on behalf of Gamal Abdelaziz at bkelly@nixonpeabody.com.

/s/*Jonathan M. Albano*
Jonathan M. Albano