**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GREGORY COLBURN, et al.,<br><br>Defendants. | Cr. No. 19-10080-NMG |

**DEFENDANTS' OPPOSITION TO MOTION TO INTERVENE AND TO QUASH
SUBPOENAS ON BEHALF OF RAY GONZALES AND TRACEY VRANICH**

The Court should deny the motions to quash the subpoenas for trial testimony that Defendants served on Tracey Vranich and Ray Gonzales.[1] Vranich will provide relevant, admissible, and essential testimony on the tax charge that Wilson faces. Her testimony will not involve any individual USC student's admission decision, and will only touch on USC's tax policies that directly relate to the tax charge. Wilson has offered to accommodate Vranich's alleged burden as explained further below, but her counsel has declined. Wilson asks the Court either to deny the motion and instruct Vranich to testify in court and subject to cross-examination, or to order her to comply with the accommodation that Wilson has proposed to alleviate her alleged burden of testifying live in court. Defendants seek Gonzales' testimony as rebuttal for the testimony provided by Rebecca Chassin. Chassin made repeated claims seeking to deny and minimize the factor that fundraising played in USC's admissions process. Gonzales' focused testimony regarding preferential treatment for donors in the admissions process is directly relevant to impeaching Chassin and the charge of honest services fraud faced by both Defendants.

---

[1]     Defendants oppose the motion to quash as to Lauren Whittam and Al Checchio as moot, and withdraw those subpoenas.

### I.      Wilson needs the testimony of Vranich to put on his defense to the tax charge he faces.

Wilson subpoenaed Vranich to testify to various facts, one of which is not disputed in the motion: that USC "has no responsive documents reflecting that USC instructed a donor to reduce his or her tax deductibility in connection with an admissions decision . . . ." Mot. at 7. This evidence is relevant and admissible to the tax charge against Wilson for two reasons, each bearing on separate elements of the tax charge: (1) whether Wilson's tax return was false as to a "material matter" and (2) whether Wilson subjectively knew that his tax return was false.

*First*, for the purposes of a tax charge, a tax return must be false as to a "material matter"—that is, something likely to affect the calculation of tax due and payable.[2] The government's tax witness will testify that all of Wilson's $220,000 donation for USC should be disallowed as a quid pro quo. However, this ignores the Tax Code's requirement that USC place a value on what the government alleges here is a benefit—any positive admissions consideration—and inform the parent of the amount of that value. USC must set the value based on other comparable transactions.

Vranich could offer probative evidence on this element of the tax charge against Wilson—that USC has never placed any value on any donation-related positive admissions consideration, and thus the Revenue Agent's testimony directly conflicts with the Tax Code. The evidence relates directly to the government's central contention that Wilson should have offset the value of his son's admission attributable to his donation when he deducted the donation from his taxes.

---

[2]      First Circuit Pattern Criminal Jury Instruction 4.26.7206.

The government's contention necessarily opens the door to how USC values positive admissions consideration. If, in fact, positive admissions consideration is property (which Wilson disputes), and that property has value, the only way to determine the value of such property (which has no established market) is to determine its value by looking at comparables. *See Boulware v. United States*, 552 U.S. at 424, 426-28 (2008); 26 C.F.R. § 1.6115-1;[3] *see also* ECF No. 2149-1 at 6-7 (Wilson's proposed jury instruction on Tax-Exempt Organizations and Charitable Deductions). USC's instructions to other donors are, therefore, relevant to whether Wilson calculated his charitable deduction properly—a point on which the motion to quash is silent.

Instead, Vranich's opposition turns solely on the Court's August 18, 2021, statement precluding evidence of "what other unrelated students and parents did" as having "no bearing on the defendants' state of mind." Mot. at 7. But that proposition surely could not have been intended to apply—and analytically cannot extend so far—to preclude the admission of the evidence for which Wilson subpoenaed these witnesses, which relates to an analytically separate element of the tax charge: materiality.

The motion to quash in fact concedes the relevance of this evidence by proposing a declaration to evade the alleged burden to Vranich of flying to Boston to testify to this fact at trial. The proposed declaration would include the undisputed fact that USC has never instructed

---

3      *See also* 26 C.F.R. § 1.6115-1(a)(2):

> A good faith estimate of the value of goods or services that are not
> generally available in a commercial transaction may be determined
> by reference to the fair market value of similar or comparable
> goods or services. Goods or services may be similar or comparable
> even though they do not have the unique qualities of the goods or
> services that are being valued.

any donor to reduce their deductibility in connection with an admission decision. If that were the only fact that the proposed declaration were to contain—and the Court and the government would agree that Wilson may present that fact in a stipulation to the jury—then that would moot this dispute concerning Vranich. But Vranich proposes adding the following, factually false statement to that declaration: "because USC does not offer admission to any applicant in exchange for *quid pro quo* payments." Mot. at 7.

This proposed addition only reinforces the need for Vranich to appear. If, in fact, she claims to have personal knowledge about the alleged reason that USC does not instruct its donors to reduce tax deductibility in connection with an admission decision, Wilson should be able to cross-examine her and the basis of her personal knowledge. Wilson cannot and will not agree to the declaration as proposed in the motion, furthermore, because it is not true. As outlined in Defendants' Offer of Proof for Evidence Excluded in the Examination of Rebecca Chassin, USC Dean of Admissions Timothy Brunold received lists of (successful) USC admissions candidates who appeared on "VIP" lists and who were admitted through the "Subco" process. Those documents added information about many applicants' families and the donations they negotiated for admissions—a fact that would be utterly irrelevant unless it informed USC's admissions decisions. *See, e.g.*, Exhibit 1085.

***Second***, the testimony that Wilson seeks from Vranich bears directly on his intent. The government must prove beyond a reasonable doubt "that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Cheek v. United States*, 498 U.S. 192, 201 (1991). "Congress did not intend that a person, by reason of a bona fide misunderstanding as to his liability for the tax . . . should

4

become a criminal by his mere failure to measure up to the prescribed standard of conduct." *Id.* at 200 (quoting *United States v. Murdock*, 290 U.S. 389, 396 (1933)).

Wilson has the right to defend against the tax charge on the basis that the law imposed no duty for him to deduct any part of his donation to USC and that, if it did, he was unaware of that alleged duty.[4] Vranich's testimony would demonstrate that what was expected of Wilson was something wholly unique—that he alone, among all donors to USC, should have offset the value of his son's positive admissions consideration attributable to his donation when he deducted the donation from his taxes. This evidence also establishes the reasonableness of Wilson's belief in *not* offsetting the value of his son's positive admissions consideration attributable to his donation when he deducted the donation from his taxes. The evidence that USC instructed *no other taxpayer* to treat his or her donations to USC any differently than Wilson did reinforces Wilsons's good-faith believe and his lack of scienter.

Again, the motion to quash provides only one ground to try to preclude such testimony— the Court's August 18, 2021, comments from the bench in ruling on various motions in limine. Mot. at 2-3. Those comments, however, necessarily pertain to limitations the Court imposed on evidence admissible only to the non-tax charges, and the Court's view (with which Wilson respectfully disagrees) that Defendants' intent to defraud could not be informed by information that the Defendants did not actually know (*e.g.*, how USC evaluated any other particular candidate for admission based on his or her family's donation history or potential or his or her particular admission qualifications). USC's instructions to donors whose children were admitted

---

4       There is no precedent establishing that admission to a school is property. *See* Defendants' Memorandum of Law in Support of Their Motion to Dismiss Count One Insofar as It Alleges Conspiracy to Defraud Universities of Property (ECF No. 1042), which Defendant Wilson incorporates herein by reference; *see also United States v. Ernst*, 502 F. Supp. 3d 637 (D. Mass. 2020).

to USC, in part, because of those donations has independent legal significance to the tax charge. It is collateral evidence that reinforces the reasonableness of Wilson's belief and, thus, its credibility. Wilson made a charitable donation to USC. USC acknowledged the donation. To the extent Wilson made this donation, like many other parents, with the hope that it would result in positive admissions consideration for his child, Wilson believed that this form of donation was valid and legitimate and, thus, proper to deduct in full on his tax returns.

The evidence that Wilson seeks from Vranich is clearly relevant and admissible. Vranich should appear in court to provide it subject to cross-examination. In the alternative, Wilson asks the Court to order Vranich to submit a declaration stating a fact that she (and, apparently, USC itself) does not dispute: "USC has no responsive documents indicating that USC ever instructed a donor to reduce the value of their tax deduction because of any positive admissions consideration."

## II.     Defendants require Gonzales' testimony to assert their defense to the charge of honest services fraud.

The Fourth Superseding Indictment alleges that the "manner and means" of the honest-services fraud conspiracy involved "[b]ribing athletic coaches and university administrators to designate students as purported athletic recruits—with little or no regard for their athletic abilities . . . in violation of the coaches' and administrators' duties of honest services to their employers." FSI ¶ 66(f). Thus, as part of its case, the government must prove what honest services university administrators and personnel actually owed to USC. *See, e.g.*, *Skilling v. United States*, 561 U.S. 358, 376 (2010) (honest services fraud requires a "material breach of a fiduciary duty" that "results in a detriment to the employer, including one occasioned by an employee's decision to withhold material information, i.e., information that he had reason to believe would lead a reasonable employer to change its conduct" (internal citations omitted)).

6

The government presented testimony from Rebecca Chassin to support its theory that USC was

defrauded and deprived of its employees' honest services. Defendants have a right to rebut

Chassin's testimony with witnesses who will offer contrary testimony showing that USC was not

deprived of its employees' honest services.

Defendants seek Gonzales' testimony to rebut Chassin's testimony regarding donations

as a factor in the admissions process. As the government has conceded multiple times

throughout trial, Defendants believed their donations were going to USC programs. Thus,

Gonzales' testimony regarding preferential treatment for donors in the admissions process is

directly relevant.

As set forth in his affidavit (proposed Exhibit 1341), Gonzales accessed and analyzed

data from USC's student information system ("SIS") regarding admission rates for applicants

coded with various special interest, or "VIP," tags. Gonzales' analysis revealed that applicants

coded with a VIP tag had a substantially higher admission rate than the general applicant

population. And, as the VIP lists themselves reveal (and as Chassin acknowledged during her

testimony), a family's donation potential was a factor relevant to an applicant's placement on a

"VIP" list.

Gonzales' testimony will support Defendants' theory that USC did, in fact, factor

donation potential into its admissions decisions. This is not contrary to the Court's order

precluding evidence of USC's admissions policies absent evidence that Defendants were aware

of those policies. First, as Defendants have repeatedly asserted, Singer represented to

Defendants that USC welcomed donations in exchange for preferential treatment during the

admissions process. Additionally, an alleged co-conspirator's (Robert Zangrillo's) child

appeared on the so-called "VIP" lists. The fact that an alleged co-conspirator's child was

7

included on the lists at issue makes them directly relevant to the conspiracy as a whole, and thus, to Defendants.

Moreover, Gonzales' testimony bears directly on Defendants' good faith—which is a complete defense to the government's charges. *See Cheek v. United States*, 498 U.S. 192, 203-04 (1991); *United States v. Gorski*, 880 F. 3d 27, 32 n.3 (1st Cir. 2018); *United States v. Henry*, 136 F.3d 12, 17 n.3 (1st Cir. 1998). Rick Singer advised Defendants that if they donated to USC, it would enhance their children's chance of admissions, and represented that this was a legitimate, USC-endorsed approach. The fact that donations did in fact play a role in admissions at USC lends support to Defendants' good-faith belief in relying on Singer's advice. Accordingly, Gonzales' testimony regarding the significantly higher acceptance rates for applicants on the VIP list is relevant, material, and crucial to Defendants' theory of defense. Thus, his motion to quash should be denied. *See Stern v. United States Dist. Court*, 214 F.3d 4, 17 (1st Cir. 2000) (confirming that "a subpoena ad testificandum survives scrutiny" if it is "relevant and material").

## CONCLUSION

Defendants respectfully request that the Court deny the motions to quash by Vranich and Gonzales, as both witnesses will provide relevant and material testimony.

Respectfully submitted:

By their counsel

/s/ *Michael Kendall*
Michael Kendall (BBO # 544866)
Lauren M. Papenhausen (BBO# 655527)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com
lauren.papenhausen@whitecase.com

*Counsel for John Wilson*

/s/ *Brian T. Kelly*
Brian T. Kelly (BBO # 549566)
Joshua C. Sharp (BBO # 681439)
Lauren M. Maynard (BBO # 698742)
NIXON PEABODY LLP
53 State Street
Boston, MA  02109
617-345-1000
bkelly@nixonpeabody.com
jsharp@nixonpeabody.com
lmaynard@nixonpeabody.com

Robert Sheketoff (BBO # 457340)
One McKinley Square
Boston, MA  02109
(617) 367-3449

*Counsel for Gamal Abdelaziz*

Dated: September 27, 2021

Andrew E. Tomback (pro hac vice)
MCLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, NY 10016
Telephone: (212) 448-0066
atomback@mclaughlinstern.com

9

## CERTIFICATE OF SERVICE

This document is being filed on the date appearing in the header through the ECF system, which will provide electronic copies to counsel of record.

/s/ *Michael Kendall*
Michael Kendall