#### UNITED STATES DISTRICT COURT
#### DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GREGORY COLBURN, et al.,<br><br>Defendants. | Cr. No. 19-10080-NMG |

### DEFENDANTS' MOTION TO COMPEL

Defendants move to compel the appearance of Scott Simon or, in the alternative, a records custodian competent to certify the document attached hereto as Exhibit A (excerpted) as a business record (subpoena to be served shortly), or in the alternative, compel the appearance of Gigi Shapiro (subpoena to be served shortly), who can also state that the document is a business record. **Counsel for Mr. Simon accepted service of the subpoena on Mr. Simon over a month ago, but USC informed the undersigned that they were moving to quash only late last night, right before the Defense case in chief starts. Defendants have even offered to agree that Mr. Simon's testimony is not necessary, and he can be released from the subpoena, if Mr. Simon can simply certify a single document as a business record (which is all that his live testimony would be), but counsel for Mr. Simon and USC have refused.** In support thereof, Defendants state as follows:

1. Over a month ago, on August 23, 2021, Doug Fuchs of the law firm Gibson Dunn accepted service of a trial subpoena for Scott Simon. Mr. Simon is Associate Vice President for Athletic Compliance at USC. Mr. Fuchs did not indicate that Mr. Simon would move to quash the subpoena.

2. Over the weekend, the undersigned told Mr. Fuchs that all Mr. Simon was needed for

was to authenticate one document as a business record. The undersigned further informed Mr. Fuchs that it would not be necessary for Mr. Simon to travel across the country and testify in this case if Mr. Simon was able to provide a business record certificate for a single document so that it could be entered in evidence. The undersigned offered this as a courtesy to Mr. Simon, whose testimony would consist only of authenticating a single document.

3. After midnight yesterday (Eastern Time), Mr. Fuchs informed the undersigned that USC would not authenticate the document as a business record and would instead move to quash the subpoena to Mr. Simon **(even though it had been issued over a month ago and his appearance is needed shortly)**. Mr. Fuchs stated:

> We can't agree to stipulate because we think this document violates the court's order precluding defendants from putting USC's admissions process on trial and injecting into the trial students unknown to the defendants at the time the defendants' children applied to USC. We will be moving to quash the subpoena to Scott Simon.

4. The only document that Defendants need to be authenticated as a business record is attached as Exhibit A (excerpted). An alternative version is attached as Exhibits B (excerpted). Although these are lengthy documents, Defendants only need to admit one or two pages in evidence. The document is an analysis of roster sizes for USC teams and is clearly a business record. The relevant part that needs to be admitted in evidence is just the following:

| First DOC | Schol Used | | MENS DUPLICATED | MENS UNDUPLICATED | Planned Rage | Notes |
|---|---|---|---|---|---|---|
| 2/17/2017 | 11.7 | MBA | 35 | 35 | 35 | |
| 10/29/2016 | 11 | MBB | 14 | 14 | 13-14 | Walk-on added in Oct 2016 - coach's discretion |
| 9/3/2016 | 85 | MFB | 107 | 107 | 105-108 | ▇ and ▇ did not participate on the team during the competative season. |
| 9/16/2016 | 4.5 | MGO | 11 | 11 | 9-10 | Significant donor's son on roster. Practices only. Unique scenario for this year. |
| 9/30/2016 | 9.85 | MSW | 29 | 29 | 28-30 | |
| 9/16/2016 | 4.5 | MTE | 13 | 13 | 11-12 | Two significant donor's sons on roster. Practice only. Unique scenario for this year. |
| 10/22/2016 | 4.5 | MVB | 23 | 23 | 18-20 | New coach trying different scnerios/players. One SA quit due to changing culture and was replaced. |
| 9/3/2016 | 4.5 | MWP | 33 | 33 | 30-32 | SA ▇ removed form roster after first DOC for disicplinary reasons. Roster spot not replaced by HC. SA was allowed to rejoin team in spring term. |
| 3/17/2017 | 12.6 | MTR | 28 | 26 | 30-32 | High caliber recruits in current cycle needing 100% scholoarships. Coaching philosophy to minimize walk-ons meant lower than expected roster size in 2016-17. |
| 1/20/2017 | | MIT | 21 | | | |
| | 148.15 | TOTAL | 314 | 291 | | |
| Medical | 0 | | | | | |

As demonstrated above, this document, which was sent from the Associate Vice President for Athletic Compliance at USC (Mr. Simon), states that for the Men's Golf team, "**Significant donor's son on roster. Practices only. Unique scenario for this year.**" For the Men's Tennis team, it says **"Two significant donor's sons on roster. Practice only. Unique scenario for this year."** There is no need for mini-trials or to get into the particulars of any student, or to name any student. Defendants just want to show the jury that the **Associate Vice President for Athletic Compliance at USC (Mr. Simon) sent an email containing a business record showing that USC had donor's children as practice players on their rosters.**

5. Defendants respectfully suggest that the document is relevant and admissible, and that it would be clear error for the jury to be prevented from seeing this crucial exculpatory evidence. *See, e.g.*, *Brown v. Ruane*, 630 F.3d 62, 71-72 (1st Cir. 2011) ("[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense."). As an initial matter, Defendant Abdelaziz's belief is that Rick Singer told him that USC accepted practice players as walk-ons who were children of donors. Indeed, this document proves that occurred at USC. Even though Mr. Abdelaziz could not have known about this document at the time he spoke

3

with Mr. Singer, the document goes to the *objective reasonableness of Mr. Abdelaziz's good faith belief* that he was doing something that was in conformance with accepted USC practice. This evidence refutes several of the government's legal theories and provides the necessary foundation, context, and a fuller, accurate factual account about how admissions at USC actually worked. The evidence shows Defendants' good faith in making donations to universities to which their children applied, and that their contributions were not bribes. The evidence also shows that the universities were not defrauded and that their employees were not faithless.

6. The evidence is relevant because USC is one of the putative "victims" of the alleged conspiracy to defraud, and because the exhibit shows that USC allotted athletic roster spots to (and even added roster spots for) the children of donors and development candidates, thus indicating (i) that USC authorized the allotment of athletic roster spots to the Defendants' children, and (ii) that it was in any event reasonable for the Defendants to *believe* Rick Singer when he told them that USC would do so for them.

7. Conspiracy is a specific-intent crime. *United States v. Piper*, 35 F.3d 611, 615 (1st Cir. 1994). The Government must prove that each Defendant joined the charged conspiracies with "a bad purpose either to disobey or to disregard the law," *United States v. Gorski*, 880 F.3d 27, 32 n.3 (1st Cir. 2018)—*i.e.*, with the intent to violate the laws that prohibit mail and wire fraud, honest-services mail and wire fraud, program bribery, and money laundering. "[I]n order to sustain a judgment of conviction on a charge of conspiracy to violate a federal statute," moreover, "the Government must prove at least the degree of criminal intent necessary for the substantive offense itself." *United States v. Feola*, 420 U.S. 671, 686 (1975); *see also United States v. Murray*, 928 F.2d 1242, 1251 (1st Cir. 1991). The substantive offenses here are all specific-intent crimes, too. "Good faith" negates specific intent and thus is a complete defense to all the crimes charged here.

If a defendant "had a good faith belief that he was obeying the law, even if that belief was mistaken, he did not have the necessary knowledge and intent to commit the crime." *Gorski*, 880 F.3d at 32 n.3. The Defendants have asked for good-faith instructions, ECF No. 2015 at 24, 34, 43, 55, 66, 73, and the Court has already determined that good faith is a factual question to be resolved at trial, *United States v. Sidoo*, 468 F.Supp.3d 428, 445 (D. Mass. 2020).

8.      An exculpatory inference, that the Defendants believed Singer and acted in good faith on the basis of his assurances, could only be strengthened by evidence tending to show that, as far as the colleges were concerned, there actually <u>were donors' children on the roster as practice players.</u> As Magistrate Judge Kelley previously recognized, documents showing USC's practice of using the athletics admission process as a fundraising tool are relevant and valuable to corroborate Defendants' good-faith belief that this was how things worked at USC. In other words, Magistrate Judge Kelley reasoned that, if the Defendants professed to believe that Singer's way of dealing with USC was an approved practice, their statements of *subjective* belief would be supported by *objective* evidence that this was in fact how USC operated.

9.      Magistrate Judge Kelley's reasoning was consistent with the case law. For example, in *Cheek v. United States*, 498 U.S. 192 (1991), the Supreme Court held that a subjective but genuine belief that one is not violating the law negates willfulness, and that this is so whether or not the claimed belief or misunderstanding is objectively reasonable. *Id.* at 203-04. However, even as it emphasized the subjective nature of the specific intent requirement, the Court made room for evidence of objective reasonableness (or unreasonableness), pointing out that, "[o]f course, the more unreasonable the asserted beliefs or misunderstandings are, the more likely the jury will consider them to be nothing more than simple disagreement with [or, in a case like ours, disregard for] known legal duties . . . ." *Id.* The Eleventh Circuit applied this observation to the defendant's

5

benefit when it reversed the convictions in *United States v. Lankford*, 955 F.2d 1545 (11th Cir. 1992). There, the defendant was convicted of taking a bribe in violation of the Hobbs Act after the trial court excluded expert testimony "concerning the reasonableness of Lankford's conclusion that the $1500 check he received was a gift rather than taxable income." *Id*. at 1550. The Eleventh Circuit found error in the exclusion because (1) per *Cheek*, the reasonableness of the defendant's asserted beliefs could affect the jury's assessment of his credibility, and (2) it was "thus highly probative for the defense to show that the defendant's belief—whether or not mistaken—was reasonable; evidence of a belief's reasonableness tends to negate a finding of willfulness and to support a finding that the defendant's belief was held in good faith." *Id*. at 1550-51.

10. Moreover, the document refutes evidence that the government has put on regarding USC's admission practices which is demonstrably false. The following is the relevant examination by Mr. Kendall of Ms. Chassin:

> Q. So if USC admitted someone to be a manager through SUBCO, that's, again, something they didn't tell you about, correct?
>
> A. They would have been presented for their athletic talent and we would approved them based on the athletic talent and academic preparation that we saw in the SUBCO meeting.
>
> Q. Did USC admit practice players?
>
> A. Not through the SUBCO process.
>
> Q. So it's -- to your knowledge nobody was ever put forward before SUBCO as a practice player?
>
> A. Not expressly as a practice player. We would have wanted to see the athletic talent and expected they were going to contribute athletically to our teams.

In other words, Ms. Chassin testified under oath that practice players were not submitted through SUBCO. But the exhibit defendants seek to admit in evidence shows that **the Associate Vice**

**President for Athletic Compliance sent a record around showing that rosters were expanded to permit the children of large donors to join the team as practice players.**

10. The documents are admissible. The weight of the evidence is for the jury to decide.

Dated: September 27, 2021

Respectfully submitted,

GAMAL ABDELAZIZ

By his attorney,

*/s/ Robert Sheketoff*
Robert Sheketoff (BBO # 457340)
One McKinley Square
Boston, MA 02109
617-367-3449

JOHN WILSON

By his attorneys,

*/s/ Michael Kendall*
Michael Kendall (BBO # 544866)
Lauren M. Papenhausen (BBO # 655527)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
(617) 979-9300
michael.kendall@whitecase.com
lauren.papenhausen@whitecase.com

Andrew E. Tomback (pro hac vice)
MCLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, NY 10016
(212) 448-1100
atomback@mclaughlinstern.com

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULES 7.1 AND 112.1**

The undersigned attempted to narrow the subpoena and offered to accept a business records certificate in lieu of testimony. Counsel for Mr. Simon did not agree and stated that he would move to quash.

*/s/ Robert Sheketoff*
Robert Sheketoff

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically on September 27, 2021, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

*/s/ Michael Kendall*
Michael Kendall