UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No.: 19-10080-NMG |
| ) | |
| GAMAL ABDELAZIZ, *et al.*, ) | |
| ) | |
| ) | |
| Defendants ) | |

**GOVERNMENT'S RESPONSE IN PARTIAL OPPOSITION TO DEFENDANTS'
MOTIONS FOR RECONSIDERATION (Dkts. 2273, 2275, 2289)**

The government respectfully submits this response in partial opposition to the defendants' three motions for reconsideration of the Court's rulings concerning the admission of multiple exhibits. (Dkts. 2273, 2275, 2289)

**A. Exhibit 1374A: The "Starbucks Video"**

First, the defendants' motion for reconsideration of the Court's conclusion that Exhibit 1374A, the so-called "Starbucks video," is inadmissible should be denied. Dkt. 2265. The defendants argue that the video is admissible to impeach Mr. Singer pursuant to Fed. R. Evid. 806 to the extent that the government offered statements "in which he described the 'side door' . . . as an illicit program." Dkt. 2273. They contend that the Starbucks video provides evidence of an explanation of the "side door" that they contend is inconsistent with those statements. *Id*. That is not true.

In a 10-page brief, the defendants cite not a single inconsistent statement. That is because there is none. Here is what Singer said about the side door in proposed Exhibit 1374A, the Starbucks video:

> I did 761 side doors into the best schools in America. What's a side door? There's a front door – when this book comes out it's gonna be amazing, but I'm not gonna be alive when it comes out, (laughter) because there'll be families that want to kill me -- there's a

> backdoor, and there's a side door. And I created a side door. So the front door is you get in on your own. The back door is through institutional advancement; it's all the people writing major, big checks. And the side door is figuring out how I can do that for one-tenth of the money to get in the same school that is there. So remember I told you about that school that had 171 kids apply to USC? Seventeen got in from their school. There's other schools that had a ton of kids get into certain schools -- like, there's a school I know of that had 300 kids apply out of 340. Twenty-two kids got in, five of 'em were mine, three of 'em were through the side door.

And here is what Singer said in Exhibit 525, the June 15, 2018 wiretap call with co-conspirator Gordon Caplan that the government introduced at trial:

> I did 761 what I would call, side doors. There is a front door which means you get in on your own. The back door is through institutional advancement, which is ten times as much money. And I've created this side door in. Because the back door, when you go through institutional advancement, as you know, everybody's got a friend of a friend, who knows somebody who knows somebody but there's no guarantee, they're just gonna give you a second look. My families want a guarantee.

Contrary to the defendants' contention in their brief – but consistent with their arguments at trial – Singer never described the side door as "illicit," and the government has never suggested that he did. Likewise, as the defendants have pointed out at length, Singer did not use the word "bribe"– including in the calls he made with these defendants at the government's direction – and he did not tell parents it was illegal. There is simply no inconsistency between the evidence concerning Singer's statements that the government has presented, and Singer's presentation at Starbucks, in which he mentioned the term "side door," but did not describe its operation.

The defendants next argue that they offer the video not for its truth, but simply "for the fact that he made these statements publicly," or, alternatively, under Rule 803 as evidence of his state of mind. But the fact that Singer made the statements publicly is irrelevant unless the defendants heard it or knew that he said it. They did not. Nor is Singer's brief public reference to the "side

2

door" evidence of his state of mind. *See United States v. Rivera-Hernandez*, 497 F.3d 71, 81–82 (1st Cir. 2007) (affirming exclusion of hearsay evidence proffered by defendant under Rule 803(3)); *see also United States v. Sabean*, 885 F.3d 27, 41 (1st Cir. 2018) (same). Indeed, Singer did not even tell his audience that the side door involved recruiting children as purported athletes. And whatever state of mind the video purports to show Singer had at a public presentation is not relevant to his state of mind in his private communications with the defendants and their co-conspirators. Accordingly, the video is irrelevant and the defendants' effort to introduce it is simply an effort to confuse, mislead and distract the jury.

### B. Exhibit 1288: The Bradshaw-Alvendia Texts

Second, the defendants seek reconsideration of the Court's order denying their motion to introduce proposed Exhibit 1288, a text exchange between two junior admissions officers who have not testified at trial. The defendants contend they are offering the exhibit not for its truth, but for the state of mind of the two admissions officers, which they contend demonstrates a "practice" of "accepting money in exchange for preferential admissions treatment of walk-in athletes." Dkt. 2275 at 2. But Exhibit 1288 demonstrates no such thing.

As an initial matter, the text exchange does not mention money at all. Instead, it involves one admissions officer confirming with another that Sabrina Aziz actually played basketball, after a counselor from Aziz's high school raised questions about her admission to USC. One of the counselors noted "that has been a problem this year" – consistent with the evidence the government has introduced that, within days of this text exchange, at least two other high schools contacted USC's admissions office to inquire about the admission of their students as recruited athletes. These inquiries prompted the admissions officers to inquire of Donna Heinel about the athletic qualifications of the students. Heinel, in turn, misled the admissions office further.

The defendants have subpoenaed one of the officers as a witness at trial. If she were to testify, the government expects that her testimony would flatly contradict the defendants' attempt to recast the text exchange as something it is not. Even assuming, *arguendo*, that the "state of mind" of two junior admissions officers were relevant – which it is *not* – the defendants' effort to introduce the text exchange by simply reading it into the record would be grossly misleading. Accordingly, their motion for reconsideration should be denied to the extent they seek to introduce Exhibit 1288 as state of mind evidence. *See Rivera-Hernandez*, 497 F.3d at 82.

C. **Exhibits 1254, 1255 and 1540: The Singer-Sanford Emails**

Third, the defendants ask the Court to reconsider its order excluding proposed Exhibits 1254, 1255 and 1540, a series of emails between Mikaela Sanford and Rick Singer concerning Sabrina Aziz. Dkt. 2289. For the reasons set forth below, the government withdraws its objection to the admission of those three exhibits (subject to a limiting instruction concerning the purpose for which they are offered), but respectfully requests that the Court likewise allow the admission of Exhibit 714, which the Court previously excluded based on defendant Wilson's hearsay objection.

With respect to proposed Exhibit 1254, the defendants contend that "the forwarding (without any text) of an email that is already in evidence simply cannot constitute hearsay." *Id*. at 3. Yet on Friday, when the government sought to introduce Exhibit 714 – an email in which Singer forwarded to his attorney the text of his notes, which are already in evidence at Exhibit 13 – Wilson's counsel objected on hearsay grounds. The Court sustained the objection. The defendants cannot have it both ways. If Exhibit 1254 is admissible, then so is Exhibit 714.

With respect to proposed Exhibit 1255, the defendants correctly point out that statements of present intention are an exception to the hearsay rules pursuant to the *Hillmon* doctrine and Rule

4

803(3). In its prior brief, the government argued that this "is not permitted." Dkt. 2257. Upon further review, the government believes this was an overstatement. Yet the defendants leave out half of the equation: to be admissible, statements of present intention must be relevant and probative of a fact or issue in the case. *See*, *e.g.*, *United States v. Jeri*, 869 F.3d 1247, 1261 (11th Cir. 2017) ("[B]efore a statement that would otherwise be inadmissible hearsay can be admitted under 803(3) to show the declarant's then existing state of mind, the declarant's state of mind must be a relevant issue in the case.") (further citation and internal quotation marks omitted). Here, to the extent the defendants offer Exhibit 1255 to show that Sanford acted in accordance with her intention, she acknowledged as much in her testimony.[1] And whether she added information from the false athletic profile to the Common Application *after* the profile was emailed to the defendant and Sabrina was approved for admission to USC is likewise irrelevant. Nevertheless, in an effort to narrow the disputed issues before the Court, the government withdraws its opposition to the admission of those three exhibits, but requests that the Court issue a limiting instruction for the purpose for which they can be considered, and likewise allow the admission of Exhibit 714.

---

[1] Sanford testified upon having her memory refreshed that she requested Sabrina Aziz's profile from Singer without copying Mr. Aziz, that she received Sabrina's profile from Singer without copying Mr. Aziz, that she told Singer in an email that she updated Sabrina's application and submitted it with information provided by Singer, and that Exhibit 1255 reflected that she had added information to Sabrina's Common Application with information provided by Singer, but that she had no independent memory of what she added to the application. 9/20/21 Tr. 91:24–92: 12; 136:20–23; 137:11–19, 139:10–17. Sanford also testified that she submitted Sabrina's Common application herself. *Id*. at 29:21–23.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By: */s/ Stephen E. Frank*
KRISTEN A. KEARNEY
LESLIE A. WRIGHT
STEPHEN E. FRANK
IAN J. STEARNS
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Date: September 28, 2021                    */s/ Stephen E. Frank*
                            STEPHEN E. FRANK
                            Assistant United States Attorney