UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------x
:
UNITED STATES OF AMERICA,                                :
:
           Plaintiff,                           :
:
  -against-                                              : Criminal No. 1:19-cr-10080-NMG
:
GAMA ABDELAZIZ, ET AL,                                   :
:
           Defendant.                           :
:
:
---------------------------------------------------------x

**NON-PARTY SCOTT SIMON'S
OPPOSITION TO DEFENDANTS' MOTION TO COMPEL**

Defendants' Motion to Compel the appearance of Scott Simon to testify is Defendants' most recent attempt to flout the Court's prior ruling that unrelated students who were unknown to Defendants at the time they entered into the alleged conspiracy with Singer have no bearing on Defendants' state of mind, and therefore are irrelevant. Mr. Simon has no knowledge of the Defendants, the admission of their children, Rick Singer, or the misrepresentations the Defendants are alleged to have made. Defendants do not argue otherwise. Instead, Defendants seek to call Mr. Simon as a vehicle for introducing two documents into evidence as a purported exception to hearsay.[1] But these documents have nothing to do with Defendants or their children, nor do they have any bearing on Defendants' intent. Moreover, Defendants' claim that these documents

---

[1] These documents are marked "Attorney-Client Privilege," and are protected by the attorney-client communication privilege and the attorney work product doctrine. The subpoena should be quashed for this independent reason. By way of background, USC produced all of Heinel's emails to the government in response to a search warrant. The government employed a taint team to remove privileged materials, but apparently did not withhold these two documents from its review and production to Defendants, despite the clear privilege marking.

somehow demonstrate "how admissions at USC actually worked" is not only an express admission by Defendants that their continued objective is to put USC's admissions on trial, despite the Court's repeated orders, but Defendants' contention is also false. Opp. at 4. The documents, which are both titled "2016-2017 Scholarship Analysis" and analyze the scholarships and roster size of various athletic teams for Title IX compliance purposes, were not sent or received by any employee in USC's Office of Admission, do not address the circumstances of any student's admission, and absolutely do not impeach Ms. Chassin's testimony that Subco did not admit "practice players." For all of these reasons, as discussed in further detail below, Mr. Simon requests that the Court deny Defendants' motion to compel.[2]

### I.   PROCEDURAL BACKGROUND

Defendants have served 27 trial subpoenas on current or former USC employees. One of these subpoenas, dated August 10, 2021, was served on Mr. Simon. On August 18, 2021, during the final pretrial conference, this Court held:

> As a preliminary matter, counsel should understand that this trial is not going to be about the general admissions policy of the University of [Southern] California or the method it uses to admit students. USC is not on trial here, and I will not have this case devolve into multiple side trials. Unless there's evidence that a defendant was misinformed with respect to the admission policy of the subject university and/or knew that USC admitted a specific unqualified student whose parent made a large donation to the school before that defendant entered into the alleged conspiracy with Singer, evidence of what other unrelated students and parents did has no bearing on the defendants' state of mind and, thus, is irrelevant to the requisite scienter that the government must prove in this case.
>
> Aug. 18, 2021 Tr. at 6.

---

[2] On September 27, 2021, Defendants served trial subpoenas on Gigi Shapiro, an executive assistant in USC's Office of Athletic Compliance, and a Custodian of Records for USC, in an effort to seek testimony or certification regarding the exact same documents. For the reasons described herein, Shapiro and USC respectfully request that the Court quash those subpoenas as well. In order to avoid confusion, Shapiro and USC will also file a separate motion to quash.

Over the next month, Defendants identified a number of USC employees whom they planned to call to testify, but they never mentioned Mr. Simon. Mr. Simon believed, in light of the Court's order at the final pretrial conference and Defendants' subsequent silence, that his testimony would not be necessary. On Saturday, September 25, 2021, at 9:25 pm ET, counsel for Defendant Abdelaziz, for the first time, informed counsel for Mr. Simon that Abdelaziz sought Mr. Simon's testimony regarding two documents concerning unrelated students. Counsel for Abdelaziz demanded that Mr. Simon certify these documents as business records in exchange for releasing Mr. Simon from his subpoena. One day later, on Sunday, September 26, 2021, counsel for Mr. Simon informed Abdelaziz that Mr. Simon could not agree to such a stipulation because "the document violates the court's order precluding Defendants from putting USC's admission on trial and injecting into the trial students unknown to the Defendants at the time Defendants' children applied to USC." Mr. Simon further informed Abdelaziz's counsel that he would move to quash the trial subpoena. The next day, without any notice, Defendants surprised Mr. Simon and USC with a motion to compel.

## II.   Legal Standard

Pursuant to Federal Rule of Criminal Procedure 17(c)(2), "the court may quash or modify [a] subpoena if compliance would be unreasonable or oppressive." *See, e.g., United States v. Henry*, 482 F.3d 27, 30-31 (1st Cir. 2007) (affirming trial court's decision to quash subpoenas pursuant to Fed. R. Crim. P. 17(c)(2)); *United States v. Bergeson*, 425 F.3d 1221, 1227-28 (9th Cir. 2005) (upholding district court order quashing subpoena for testimony pursuant to Fed. R. Crim. P. 17(c)(2)).

### III.     Argument

**A.     Defendants' motion to compel should be denied because Mr. Simon's testimony cannot possibly be relevant.**

Mr. Simon has worked in USC's Office of Athletic Compliance since 2010, serving as Associate Vice President for Athletic Compliance since 2016. The Office of Athletic Compliance, as the name suggests, is responsible for assisting with USC's compliance with NCAA and PAC-12 rules.

Defendants have not and cannot meet their burden of showing that Mr. Simon's testimony is relevant. Mr. Simon did not have anything to do with Johnny Wilson's or Sabrina Abdelaziz's admission to USC. Mr. Simon never met or communicated with Wilson or Abdelaziz. Prior to the indictment in this case, Mr. Simon had never heard of Wilson, Abdelaziz, and neither Wilson nor Abdelaziz claims to have interacted with Mr. Simon. There is simply no connection between Mr. Simon and either Defendant. There is similarly no connection between Mr. Simon and Rick Singer. Mr. Simon has never met or communicated with Singer or heard of Singer prior to the indictment. Defendants do not claim otherwise.

**B.     Defendants' attempt to seek Mr. Simon's testimony about "Proposed Exhibit 1219" and "Proposed Exhibit 1249" disregards the Court's prior ruling with respect to students unknown to Defendants.**

Proposed Exhibit 1219 and Proposed Exhibit 1249 (collectively "the documents") have nothing to do with Defendants or their children's admission to USC. Defendants do not argue otherwise. In fact, the documents Defendants seek to introduce are from the 2016-2017 academic year—two years after Defendant Wilson's son matriculated to USC. Defendant Abdelaziz does not and cannot claim he has any knowledge of the identities of the students described in the documents, and therefore cannot establish that he knew of these students or the circumstances of their admission at the time his daughter applied to USC. The Court has already established that

4

"evidence of what other unrelated students and parents did has no bearing on the defendants' state of mind and, thus, is irrelevant to the requisite scienter that the government must prove in this case." Aug. 18, 2021 Tr. at 6. Defendants do not offer any new justification as to why the Court should reverse its prior ruling; rather, Defendants simply rehash old arguments.

Moreover, Defendants' attempt to characterize these documents as revealing "how admissions at USC actually worked" is absurd. The documents—which appear to be different versions of the same analysis—were not sent or received by anyone in USC's Office of Admission. Nor do the documents purport to reflect the circumstances of any student's admission to USC. Rather, they appear to analyze the scholarships and roster sizes of various athletic teams, as reflected in the documents' title, "2016-2017 Scholarship Analysis," and subtitle, "Title IX Analysis." The fact that the documents suggest that three children of donors were on athletic rosters as "practice only" players does not establish or shed light on what Admission was told about their applications, nor does it establish that they were even admitted through Subco, as Defendants' children were. In fact, USC previously informed Defendants that it did not believe the two students referred to as "practice only" players were admitted through Subco, although it could not be sure because these students are not even identified by name in the documents. Contrary to their claims, Defendants' attempt to introduce these documents into evidence will only result in the mini-trials the Court intends to avoid.

**C.     The "Notes" section of each document is not admissible as a business record.**

Although Mr. Simon could testify that portions of the spreadsheets tracking roster sizes and scholarships are business records, Mr. Simon cannot in good faith agree that the "notes" column meets the requirements of 803(6) such that: (1) the record was made at or near the time by — or from information transmitted by — someone with knowledge; (2) the record was kept in the course of a regularly conducted activity of a business; and (3) making the record was a regular

5

practice of that activity. Fed. R. Evid. 803(6). It appears there were various versions of this spreadsheet, and there is no way for Mr. Simon or anyone else to ascertain who drafted comments in the "Notes" section, when such comments were drafted, or the source of information for the notes. The fact that Defendants identified one version of this spreadsheet that Mr. Simon attached in an email to Donna Heinel does not establish that Mr. Simon can properly certify that such document is a business record, especially when this does not appear to be accurate.

## IV. CONCLUSION

For all the foregoing reasons, Mr. Simon respectfully requests that this Court deny Defendants' motion to compel his testimony at trial.

Respectfully submitted,

UNIVERSITY OF SOUTHERN CALIFORNIA,

By its attorneys,

*/s/ Debra Wong Yang*
Debra Wong Yang (Admitted *Pro Hac Vice*)
Douglas M. Fuchs (Admitted *Pro Hac Vice*)
GIBSON DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213)229-7000
dwongyang@gibsondunn.com
dfuchs@gibsondunn.com

*/s/ Anthony E. Fuller*
Anthony E. Fuller (BBO #633246)
William H. Kettlewell (BBO# 270320)
Elizabeth C. Pignatelli (BBO #677923)
HOGAN LOVELLS US LLP
125 High St., Suite 2010
Boston, MA  02110
(617) 371-1000
anthony.fuller@hoganlovells.com
bill.kettlewell@hoganlovells.com
elizabeth.pignatelli@hoganlovells.com

Dated: September 28, 2021

**CERTIFICATE OF SERVICE**

      I, hereby certify that this document filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 28, 2021.

                                          */s/ Anthony E. Fuller*
                                          Anthony E. Fuller