**United States District Court**
**District of Massachusetts**

```
_____
                               )
United States of America,      )
                               )
            v.                 )       Criminal Action No.
                               )       19-10080-NMG
Gamal Abdelaziz and John Wilson, )
                               )
          Defendants.          )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

There are multiple pending motions in this case, eleven of which the Court now addresses.

### I. Non-Party University of Southern California's Motion to Quash Trial Subpoenas (Docket No. 2264).

Ray Gonzales ("Gonzales"), Tracey Vranich ("Vranich"), Al Checcio ("Checcio"), and Lauren Whittam ("Whittam") (collectively, "the Intervenors"), all of whom are employees at the University of Southern California ("USC"), move to quash defendants' trial subpoenas seeking their testimony, contending that the subpoenas are unreasonable and oppressive because they seek to enter irrelevant testimony and contravene the Court's prior rulings. Intervenors state that any testimony they offer is not relevant because they have no knowledge of the defendants, the admission of the defendants' children, William "Rick" Singer ("Singer"), or the alleged misrepresentations of

-1-

the defendants.  Since the original filing, defendants have
withdrawn the subpoenas for Checcio and Whittam and now oppose
the motion to quash those subpoenas as moot.

More specifically, Intervenors suggest that defendants seek
Gonzales' testimony for the sole reason that he created a
summary chart regarding the admission rate of students who
received a VIP tag in the 2018 academic year, as part of USC's
negotiated response to a pretrial subpoena issued by defendant
Robert Zangrillo ("Zangrillo").  Zangrillo's daughter was never
presented to USC's Athletics Admissions Review Committee
("Subco") but rather received a VIP tag from Donna Heinel
("Heinel").  Even if the chart is relevant, Intervenors argue
that there is no justification for calling Gonzales to testify
about the document, which speaks for itself.

Defendants respond that Gonzales' testimony will rebut the
government's logic that USC was defrauded and deprived of its
employees' honest services because his testimony will
demonstrate that donors' children were given preferential
treatment during the admissions process.  Defendants assert that
such evidence would not contravene the Court order excluding
evidence of USC's general admissions policies because Singer
represented to defendants that USC welcomed donations in
exchange for preferential treatment.  Moreover, defendants
submit that: (1) the inclusion of the name of an alleged co-

-2-

conspirator's child on a VIP list makes the list relevant to the alleged conspiracy and (2) Gonzales' testimony would serve to rebut that of Rebecca Chassin ("Chassin").

With respect to Tracey Vranich, Intervenors claim the defendants' subpoena is an attempt to evade the Court's prior ruling that testimony on "tax treatment" is irrelevant as it pertains to other students not involved in the case.  Vranich alleges that she is being called to testify about the "tax treatment" of prior donations based on the false premise that a favorable admissions consideration was given in exchange for a donation.

In response, defendants contend that Vranich's testimony is necessary for Wilson to set forth his defense regarding the tax charges he faces because she would testify to the fact that USC indicated the school has "no responsive documents reflecting that USC instructed a donor to reduce his or her tax deductibility in connection with an admissions decision." Defendants assert that such testimony is relevant to whether: (1) Wilson's tax return was false as to a "material matter," and (2) Wilson subjectively knew that his tax return was false.

The Court has previously ruled that such evidence will be admissible at trial only if defendants are able to show that they were aware of an alleged USC policy or practice prior to the events that are the subject matter of the indictment in this

case.  As a general matter, testimony with respect to the VIP

admission process at USC is irrelevant because the defendants'

children were not admitted through that process, nor is the "tax

treatment" of donations unrelated and unknown to the defendants

relevant.  Such evidence does not relate to the crimes charged

against the defendants.  For those reasons, Intervenors' motion

to quash trial subpoenas (Docket No. 2264) is **ALLOWED**.

## II.   Defendants' Motion for Reconsideration of Evidentiary Ruling on Exhibit 1374A and Order on Motion to Quash Subpoena of Ron Crawford (Docket No. 2273).

Defendants argue that Exhibit 1374, a video of Singer

presenting at Starbucks Coffee Company ("Starbucks"), is

admissible and that the subpoena for Ron Crawford ("Crawford"),

who invited Singer to make the presentation, will be mooted if

the Court allows the admission of the video.  Defendants contend

that the video is admissible as: (1) impeachment evidence of a

prior inconsistent statement of a hearsay declarant under Fed.

R. Evid. 806, or (2) relevant, non-hearsay evidence under Fed.

R. Evid. 401 regarding both Singer's "pitch" and Singer's non-

criminal state of mind.

In furtherance of their contention, defendants assert that

the video is admissible to impeach Singer's statements regarding

the "side door" as an illicit program, and specifically that

Singer's recorded explanation of the "side door" is

unquestionably inconsistent with the explanation he gave to

parents during the consensually recorded calls.  The defendants
also maintain that the video is relevant under Fed. R. Evid. 401
because it is evidence that Singer, at times, characterized the
"side door" as a legitimate process.  They argue that such
evidence makes it more likely that the defendants' belief that
the "side door" process was legitimate was reasonable and held
in good faith and that the video provides evidence of Singer's
"old pitch" that Special Agent Elizabeth Keating repeatedly
referred to during her testimony.

   Crawford and the government oppose the motion. Crawford
contends that, if the video is inadmissible, so too is
Crawford's testimony and, if the video is admissible, his
testimony regarding the tape is unnecessary and duplicative.
The government submits that the video is inadmissible under Fed.
R. Evid. 806 because there is no inconsistency among Singer's
descriptions of the "side door."

   Singer's assertions during the recorded presentation about
the "side door" are not inconsistent with the explanations he
provided to defendants.  Moreover, the video is irrelevant to
the charges facing the defendants because there is no contention
that they were present for, or even aware of, that presentation.
Consistent with the Court's prior rulings on related matters,
evidence regarding activities in which Singer engaged
unbeknownst to the defendants are irrelevant in the current

case.  Finally, to the extent that defendants seek to introduce the video to reveal Singer's state of mind, such evidence is irrelevant.  Singer's state of mind is not at issue here.  The motion for reconsideration (Docket No. 2273) is **DENIED.**

### III.   Defendants' Motions for Hearings on Assertion of Fifth Amendment Rights (Docket Nos. 2274 and 2294).

Insofar as the relevant witnesses will appear by Zoom or in-person to assert their Fifth Amendment rights, and consistent with the Court's ruling in open court, these motions (Docket Nos. 2274 and 2294) are **ALLOWED.**

### IV.   Defendants' Motion for Reconsideration of Ruling on Admissibility of Exhibit 1288 (Docket No. 2275).

Defendants contend that the text message exchange between USC Admissions Officers Bradshaw and Alvienda should be admitted as evidence of the state of mind of the Admissions Department and is not hearsay because it is not being offered for the truth of the matter asserted.  The state of mind revealed purportedly tends to show knowledge on the part of Admissions Department that rebuts Chassin's testimony and indicates that the office knowingly exchanged donations for preferential admissions treatment of walk-on athletes.  Defendants also submit that the exclusion of such evidence would unduly prejudice defendant Abdelaziz, who relied on this exhibit in his opening and told the jury that it would be part of his case.  Defendants request

that the document be read into the record because it should have been admitted during Chassin's cross examination.

The government responds that the exhibit does not demonstrate a "practice" of accepting money in exchange for preferential admissions treatment of walk-in athletes and moreover, that reading the text exchange into the record would be grossly misleading.

The defendants have failed to address the ruling of the Court that Chassin cannot be impeached based on the words of her colleagues.  Moreover, while defendants point to First Circuit precedent holding that state of mind evidence is admissible as to an entity, they have failed to present evidence that an informal text exchange between Admissions Officers is evidence of the institutional belief of the Admissions Department as a whole.  Defendants' motion for reconsideration (Docket No. 2275) is **DENIED.**

## V.  Defendants Motion to Introduce Exhibits 1563A, 1478, 9025, 1381A and 8182 (Docket No. 2276).

Defendants seek to introduce: (1) a pleading form from this case (Exhibit 1563A), (2) a script that an Assistant United States Attorney ("AUSA") wrote for Singer to use with defendant William McGlashan (Exhibit 1478), (3) the affidavit of Special Agent Laura Smith that was submitted in support of a wiretap application (Exhibit 9025), (4) a text message thread between

Singer and federal agents regarding an invoice Heinel sent to Singer (Exhibit 1381A) and (5) a recorded call between an AUSA, Special Agent Keating, Singer, and Singer's attorney that occurred shortly before the October 2 note Singer created on his cellphone (Exhibit 8182).

With respect to Exhibit 1563A, defendants argue that the government's statement is admissible as a statement of a party opponent.  They apply similar reasoning to Exhibit 9025, contending not only that the statements are party admissions, but also that the affidavit is admissible as a public record pursuant to Fed. R. Evid. 803(8)(A)(iii).  In response, as to 1563A, the government suggests that the relevant caselaw requires that there be a prior inconsistency among the opposing party's statements in order to render evidence admissible as non-hearsay under Fed. R. Evid. 801(d)(2).  The government furthermore maintains that exhibit, as well as Exhibit 9025, is cumulative.

As to Exhibit 1478, defendants argue that the government's hearsay objection is unavailing because the script is not being offered for the truth of the matter but rather as evidence of the extent to which the government coached Singer in preparation for the consensually recorded telephone calls.  Similarly, defendants contend that 1381A is admissible to show the close interaction between the agents and Singer, as well as Singer's

state of mind.  Specifically, the defendants submit that 1381A is evidence that Singer believed federal agents requested that he procure an invoice bearing the "Abdelaziz" name.  Defendants claim that Exhibit 8182 is admissible to show how Singer was "pressured and coached" by the government when he made the recorded calls which were meticulously contrived.

Upon reconsideration, the Court finds that Exhibits 1563A and 9025 may be offered as opposing party statements under Fed. R. Evid. 801(d)(2).  Relevant case law does not require an inconsistency among a party's prior statements for such evidence to be admissible.  See United States v. Kattar, 840 F.2d 118, 131 (1st Cir. 1988).  Therefore, defendants' motion as to those exhibits (Exhibits 1563A and 9025) is **ALLOWED.**

Defendants' motion to introduce the remaining exhibits (Exhibits 1478, 1381A and 8182) is, however, **DENIED.**  Those exhibits, which defendants seek to introduce to describe Singer's relationship with federal agents, are not probative of facts at issue in this case.  See Fed. R. Evid. 401.  The government does not deny coaching Singer in advance of the consensually recorded calls, nor that it worked closely with him after he became a cooperator.  Multiple witnesses have attested to Singer's relationship with federal agents.  The evidence defendants seek to introduce on that subject is therefore unnecessarily cumulative.  See Fed. R. Evid. 403.

**VI.   Defendant Wilson's Motion to Strike Testimony of IRS Agent Concerning Tax Calculation (Docket No. 2321).**

Defendant Wilson has moved to strike the testimony of IRS Agent Colleen Ranahan concerning the tax charge against him (Docket No. 2321).  He argues that Agent Ranahan's preparation and analysis in evaluating the materiality element that charge was contrary to the Tax Code and IRS regulations.  For that reason, he requests that the Court strike Agent Ranahan's testimony.

The instant motion is the latest attempt by defendant Wilson to make central the issue of how USC treated the value of admissions slots, in particular admissions slots secured in part by donations, for tax purposes.  Defendant Wilson contends, here and previously, see Docket No. 2226, that USC knew of a connection between large donations and admission to the university, but nevertheless sent donors gift receipt letters stating that their donation was not made in exchange for any goods and services.  For such letters to be truthful, he argues, USC must value the admission slot at $0.  This is relevant, he asserts, because after the value of goods and services received for a donation is offset against the total value of the donation, the Internal Revenue Code allows a taxpayer to take the remainder, that is, the total donation minus the value of the goods and services received, as a charitable deduction.  In

other words, an individual can take a deduction on their tax return for the amount donated to a charity so long as they offset the value, if any, received in return.  Therefore, notwithstanding the fact that his "donation" aided or secured his son's admission to USC, Wilson concludes that his tax return is not false as to a material matter because the value of that admission slot is $0, meaning that the amount he must offset from his charitable deduction is also $0 and thus consequently his deduction in the entire amount of his "donation" was proper. Wilson's alternate calculation would not give rise to a tax deficiency, and, absent a tax deficiency, he concludes, he cannot be found guilty.

It is the question of a deficiency, or rather the lack thereof, about which defendant Wilson wished to question Agent Ranahan, and it is because the agent allegedly failed to consider his no-deficiency theory that he argues her testimony should be stricken.

For the reasons set out below and in the Court's previous order, see Docket No. 2265, defendant's argument misapprehends the charge against him.  Defendant Wilson is charged with one count of violating 26 U.S.C. § 7206(1).  That statute makes it a crime for any person to

> [w]illfully make[] and subscribe[] any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of

perjury, and which he does not believe to be true and
correct as to every material matter[.]

26 U.S.C. § 7206(1).  Section 7206 concerns "Fraud and false

statements" and its first paragraph, under which defendant

Wilson is charged, addresses "Declaration[s] under penalties of

perjury".  Stated concisely, it is a perjury statute.  As such,

it does not demand proof of a tax deficiency.  See Silverstein

v. United States, 377 F.2d 269, 270-71 (1st Cir. 1967)

(explaining that the "real issue in prosecutions under [26

U.S.C. § 7206(1)] is defendant's state of mind in reporting his

income" and that defendant's alternative calculation, not

admitted by the trial court, "casts no light on the question

whether defendant innocently overlooked his gross receipts").

The First Circuit, along with numerous other federal courts

of appeals, has concluded that a tax deficiency is not an

element of § 7206(1).  United States v. DeRico, 78 F.732, 736

(1st Cir. 1996) (stating that the government "need not prove an

actual tax deficiency in any false subscription case in order to

demonstrate that a taxpayer's false statement was material"),

see also United States v. Huynh, 721 F. App'x 655, 657 (9th Cir.

2018) (stating that "the challenged instruction is consistent

with the principle that the existence of a tax deficiency is not

an element of this crime under Section 7206(1)") (internal

punctuation omitted) (citing, inter alia, United States v.

-12-

Marashi, 913 F.2d 724, 736 (9th Cir. 1990)) (explaining that "Section 7206(1) is a perjury statute; it is irrelevant whether there was an actual tax deficiency"), United States v. Giambalvo, 810 F.3d 1086, 1097 (8th Cir. 2016) (stating that "[n]either §§ 7212(a) nor 7206(1) require proof of a tax deficiency"), United States v. Tarwater, 308 F.3d 494, 504 (6th Cir. 2002) (explaining that "Section 7206 is a perjury statute that criminalizes lying on any document filed with the IRS. It does not require the prosecution to prove the existence of a tax deficiency"), United States v. Lassiter, 819 F.2d 84, 87-88 (5th Cir. 1987) (explaining that § 7206 "requires the government to prove neither intent to avoid the payment of taxes nor additional tax due").

The materiality element of § 7206(1) demands, in contrast, not that a deficiency exists but rather that "the alleged false statement at issue could have influenced or affected the IRS in carrying out the functions committed to it by law." DeRico, 78 F.3d at 736. A false statement is material even if it, inter alia, is only likely to influence the calculation of tax due and payable, United States v. Griffin, 524 F.3d 71, 76-77 (1st Cir. 2008), or has the potential for hindering the IRS's efforts to monitor and verify tax liability, DeRico, 78 F.3d at 736 n.1. For example, in DeRico, the First Circuit considered it a straightforward matter that a gross receipts entry, which was

-13-

the allegedly false statement at issue in that case, "has the potential to affect a legitimate function of the IRS", finding fault only in the district court's failure to present the question to the jury.  DeRico, 78 F.3d at 736.  Further, in Griffin, the First Circuit stated that a jury instruction that a false statement was material if it made a difference as to the amount owed was "more narrow than necessary" and increased the government's burden of proof.  Griffin, 524 F.3d at 76.  In neither of these cases nor in any other federal appellate decision of which this Court is aware was a finding of a tax deficiency a prerequisite for the satisfaction of § 7206(1)'s materiality element.

Materiality is a mixed question of law and fact and thus a question for the jury.  DeRico, 78 F.3d at 736.  The Court does not presume to usurp the jury's role as finder of fact and will instruct on materiality at the appropriate time.  Until then, however, the Court will not allow the admission of evidence irrelevant to the materiality element as that element has been understood by First Circuit and Supreme Court precedent, nor strike testimony which properly goes to it.

In sum, defendant Wilson would be entitled to present evidence of the absence of a tax deficiency if he were prosecuted under a statute that put the deficiency at issue. Such is the direction the Supreme Court has given in Boulware v.

-14-

United States, 552 U.S. 421 (2008).  Contrary to defendant's arguments, however, the question of a deficiency is not an element of § 7206(1), and thus he is not entitled to present an alternate tax calculation.  See Taylor v. Illinois, 484 U.S. 400, 410 (1988) (holding that the accused does not have an "unfettered right" to offer testimony otherwise inadmissible under the rules of evidence).  For the same reason, Agent Ranahan's testimony was not improper and need not be stricken.  Her statements were proper as to materiality and her failure to consider defendant's no-deficiency theory was, as has been explained, of no moment.  Therefore, defendant's motion to strike the testimony of Agent Ranahan (Docket No. 2321) is **DENIED.**

## VII.   Defendants' Motion to Admit Exhibits 1219 and 1249 as State of Mind Evidence (Docket 2309).

Defendants have moved to admit Exhibit 1219, an email sent from Scott Simon to Donna Heinel, and Exhibit 1249, another version of the same (Docket No. 2309).  That email contains an attachment with information on certain athletic rosters.  With respect to the men's golf team, the spreadsheet states "Significant donor's son on roster.  Practices only.  Unique scenario for this year."  For the men's tennis team, the spreadsheet states "Two significant donor's sons on roster.  Practice only.  Unique scenario for this year."  Defendants

argue that the exhibit is relevant to show that USC had donors'
children on athletic rosters as practice players.  They further
contend that it can be admitted as evidence of state of mind and
knowledge as to Simon and Heinel.

The government argues that the two exhibits are not
admissible because they 1) are not relevant, 2) are inadmissible
hearsay and 3) should be excluded Federal Rule of Evidence 403.

First, the government states that the two exhibits concern
rosters significantly post-dating the admissions of defendants'
children to USC.  Thus, it argues that admission of the exhibits
would contravene the Court's prior orders limiting relevant
evidence to that which would indicate that, at the time
defendants entered into the alleged conspiracy, they knew of the
admission, if any, by USC of unqualified students whose parents
had made large donations to the school.

Second, the government argues that the exhibits are not
encompassed by the hearsay exception contained within Rule
803(3) because that exception excludes statements of a
declarant's memory or belief to prove the fact remembered.  It
further contends that an email from Simon is not admissible to
show the state of mind of Heinel, that no evidence exists
showing that Simon authored the notes and that no evidence
exists that, if he did, he did so with no time to reflect, as
Rule 803(3) requires.

Third, the government argues that, in any case, the email is inadmissible under Rule 403 because its admission would occasion a series of mini-trials about the identities of the three practice players, whether they were admitted through Subco, whether their athletic credentials were misrepresented and other matters.

Defendants rejoin that the evidence is meant for its effect on the listener, here Heinel, and that the government's remaining arguments go to the weight of the evidence, not its admissibility.

Defendants' arguments falter.  The exhibits are not admissible as state of mind evidence as to Simon.  There is no evidence that Simon was the author of the notes in the exhibits, that he wrote those notes without time to reflect or that those notes, if indeed authored by him, were contemporaneous with some relevant mental state of his.  See Colasanto v. Life Ins. Co. of North America, 100 F.3d 203, 212-13 (1st Cir. 2006).  Nor are the exhibits admissible to demonstrate their effect on Heinel. Defendants' cited case law is inapposite.  In United States v. Figueroa, certain statements made by a third-party in the course of a conversation with defendant and an undercover government agent were admitted to show defendant's knowledge of, and sophistication in, the counterfeiting industry.  818 F.2d 1020, 1026-27 (1st Cir. 2010).  Here, the exhibits defendants seek to

-17-

admit do not show that Heinel entertained a belief that the
admission of unqualified students through Subco using falsified
athletic profiles was endorsed by Athletic Compliance, or
provide a motive for Heinel's actions.  See United States v.
Bailey, 270 F.3d 83, 87 (1st Cir. 2001).

In any event, admission of the exhibits would not be
permissible under Rules 401 and 403.  The notes, by their own
terms, state that the practice players are on the roster as a
"[u]nique scenario for this year."  They do not address, and
thus are not probative of, USC's policies or expectations with
respect to admissions and donations, let alone the Subco
process, the athletic talents of the practice players or the
circumstances of their admission to USC.

For the foregoing reasons, defendants' motion to admit
Exhibit 1219 and Exhibit 1249 (Docket No. 2309) is **DENIED.**

**VIII.  Defendants' Motion to Admit Evidence (Docket No. 2283).**

Defendants contend that the Court erred in refusing to
allow the introduction of extrinsic evidence for impeachment and
substantive purposes during Chassin's cross-examination.  They
submit that Chassin was untruthful when she testified about the
Admissions Department and Subco and that they are entitled to
introduce impeachment evidence as prior inconsistent statements
under Fed. R. Evid. 613 and as extrinsic evidence bearing on a
material issue.  Defendants also claim that Chassin opened the

door to impeachment of a non-testifying declarant under Fed. R.
Evid. 806 when she testified as to the views and knowledge of
other admissions officers, specifically Timothy Brunold
("Brunold"), and that the proffered evidence is independently
admissible as business records, showing state of mind, and/or
falling under the residual clause of Fed. R. Evid. 807.

The government responds that the proffered evidence is
irrelevant and inadmissible because it: (1) is extrinsic, (2)
does not bear on the defendants' culpability and (3) has
previously been ruled as such by this Court.  Pointing out that
most of the evidence that the defendants seek to admit consists
of documents that Chassin has never seen, the government asserts
that Fed. R. Evid. 613 is immaterial.  Moreover, the government
maintains that the proffered evidence is not inconsistent with
Chassin's testimony.

In accordance with the Court's prior ruling, the proffered
evidence, which consists largely of communications that the
defendants did not receive, about students they did not know and
admissions practices that were not relevant to their children,
is irrelevant and inadmissible.  Moreover, it is not proper
impeachment evidence under Fed. R. Evid. 613 because it does not
include statements made by Chassin.  To the extent that Chassin
represented the views of the Admissions Department as a whole,
or specific employees of that Department, the Court does not

-19-

believe that these representations are subject to attack under
Fed. R. Evid. 806.  Defendants' motion to admit evidence (Docket
No. 2283) is **DENIED**.

### IX. Defendants' Motion to Compel Testimony of Scott Simon (Docket No. 2286).

Defendants proffered no evidence to suggest that they had
any knowledge of the students referred to in the document at
issue or their admissions processes.  As the Court has
repeatedly ruled, such evidence is irrelevant to the charges at
issue.  Moreover, the evidence does not impeach Chassin's
testimony that donations were not considered in the admissions
process for athletes because the document does not refer to
admissions at all but rather to some practice players being
related to significant USC donors.  For these reasons, the Court
need not determine whether the relevant evidence is a business
record pursuant to Fed. R. Evid. 803(6), and defendants' motion
(Docket No. 2286) is **DENIED**.

### X. Non-Party Gigi Simon's Motion to Intervene and Quash a Trial Subpoena (Docket No. 2311).

Non-party Gigi Shapiro has moved to intervene and quash a
trial subpoena served upon her by defendant Gamal Abdelaziz
(Docket No. 2311).  She argues that the subpoena is unreasonable
and oppressive because 1) it seeks irrelevant testimony with
respect to unknown students and 2) she is not able to certify
the "notes" section of the documents that defendants seek to

admit as business records.  She states that the documents that
defendants are seeking to admit through her are the same as
those that defendants have sought to admit through Scott Simon,
the Associate Vice President for the Office of Athletic
Compliance at the University of Southern California ("USC").

The Court has denied defendants' motion to compel testimony
of Scott Simon (Docket No. 2286).  See IX supra.  The
circumstances as to Shapiro are materially identical.
Therefore, non-party Gigi Shapiro's motion to intervene and
quash defendants' trial subpoena is **ALLOWED**.

## XI.  Non-Party University of Southern California's Motion to Quash Trial Subpoenas (Docket No. 2287).

USC seeks to quash defendants' trial subpoenas, attesting
that the defendants have failed to provide USC with the specific
records they seek.  Defendants finally provided USC with the
list of documents that they seek a record keeper to certify on
the evening of September 28, 2021.

To the extent that the defendants' have supplied USC with a
list of materials at issue, the motion is **DENIED** as moot.  To
the extent that defendants seek materials concerning the
school's general admissions practices and the admission of
students unrelated to this case, the motion to quash (Docket No.
2287) is **ALLOWED**.  As articulated above, such evidence would be
admissible only if defendants show that they were aware of an

alleged USC policy or practice prior to the events that are the subject matter of the indictment in this case.  Beyond these parameters, such evidence does not relate to the crimes charged against the defendants.

## XII.  Defendants' Motion for Reconsideration of Evidentiary Rulings on Exhibits 1254, 1255 and 1540 (Docket No. 2289).

The parties have stipulated that these exhibits, together with Exhibit 714 proffered by the government, may be admitted into evidence and therefore defendants' motion is **DENIED** as moot.

## XIII.  Defendants' Motion to Exclude Evidence (Docket No. 2295).

Defendants motion to exclude testimony of IRS Agent Colleen Ranahan who testified as a summary witness is **DENIED** as moot. With respect to defendants' request for curative instructions pertaining to Special Agent Keating's testimony, the motion is **DENIED.**  Special Agent Keating made clear that her testimony did not provide or supplant legal analysis and was not based on any specialized knowledge within the scope of Fed. R. Evid. 702. See Fed. R. Evid. 701.  With respect to the testimony of both Special Agent Keating and Agent Ranahan, the Court excluded any testimony that was intended to instruct on the law.

**So ordered.**

                       _/s/ Nathaniel M. Gorton____
                       Nathaniel M. Gorton
                       United States District Judge

Dated October 1, 2021