UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GREGORY COLBURN, et al.,<br><br>Defendants. | No. 19-CR-10080-NMG |

### DEFENDANTS' SUPPLEMENTAL MEMORANDUM REGARDING FAILURE TO PROVE COUNT 2 VENUE

On Thursday afternoon, the government referred to the undersigned's Rule 29 motion regarding the Count 2 venue issue as "frankly frivolous." It is nothing of the sort. The government has alleged in Count 2 a "coast-to-coast" conspiracy with zero connection to Massachusetts. "Venue in a criminal case is not an arcane technicality. It involves matters that touch closely the fair administration of criminal justice and public confidence in it." *United States v. Salinas,* 373 F.3d 161, 162 (1st Cir. 2004). The Court previously held that "Because the FSI alleges that Singer mailed a January, 2019, check from Massachusetts in furtherance of the conspiracy, venue as to Count Two is proper." *See* Dkt. 1402 at 7. But the government failed to prove this allegation at trial. At Thursday's hearing, the government proposed new reasons why venue is nonetheless proper for Count 2. None of these facts are alleged anywhere in the indictment. In addition, they are legally insufficient for venue for the following reasons.

**The call between Singer and Heinel (Exhibit 574)** is insufficient to prove venue in Massachusetts. According to the government, "There's also a *consensual* call with Donna Heinel, Exhibit 574, in which *Mr. Singer tells Miss Heinel* they're in Boston." 9/30/21 Tr. at 23 (emphasis added). The government argues the call was in furtherance of the Count 2 conspiracy.

1

Even if that were true, Singer's statement during the call that "I'm in Boston today" has no significance.[1] As the Court has held, Singer's hearsay statements while he was acting as a government agent are not evidence. The Court wrote just a few days ago:

> It is well-established First Circuit law that the admission of statements made by a non-testifying co-conspirator on a recording does not violate the Confrontation Clause **when such statements are offered not for their truth but only to provide context for statements made by a party or other conspirators in the conversation** and make them intelligible to the jury.

Dkt. 2298 at 4 (emphasis added). Singer's statements are "testimonial hearsay of an absent declarant proscribed by the Confrontation Clause." *Id.* at 3. To avoid the confrontation clause issue (because the government chose not to call Singer), Singer's testimonial statements can only be used for context—not for the truth of the matter asserted.[2] Thus, the fact that Singer **says** he was in Boston is of no consequence for the venue analysis.

**A check from Singer to Heinel (Ex. 624).**[3] The government next claims that a check that Singer sent to Heinel establishes venue. This is not because Singer mailed the check from Massachusetts (the allegation in the indictment upon which the Court relied in declining to dismiss Count 2), but because Singer **procured** the check (copied below) in Massachusetts.

---

[1] AUSA Frank stated, "Miss Keating also testified that Mr. Singer was in Boston at that time." 9/30/21 Tr. at 23:14. But Agent Keating did not specifically state that Singer was in Boston at the time he made the call to Ms. Heinel. Agent Keating did state that the FBI imaged Mr. Singer's phone on October 5, 2019, but there is no evidence one way or the other whether Singer called Heinel before or after he left Boston.
[2] Thus, separate and apart from the reasons stated at Dkt. 1234, none of the "consensually-recorded calls" can be used to establish venue.
[3] The transcript reflects that AUSA Frank referred to Exhibit 64. AUSA Frank appeared to have meant to refer to Exhibit 624, as exhibit 64 is not a check.

2



There was no testimony that Singer procured the check in Massachusetts. The government is relying solely on the words "Seaport Square" in the upper left corner of the check. No city or state is listed.  The only city and state listed on this check is San Antonio, Texas, in the lower left corner.  There was never any testimony or evidence about what "Seaport Square" means, or that its presence in the upper left corner of the check means that the check was issued at that location, or whether it means something else, such as the remitter's account being opened at that location.  Perhaps "Seaport Square" refers to a location in the seaport district of South Boston or perhaps it does not—but there has been no testimony or evidence to that effect, and the Sixth Amendment's guarantee of an "impartial jury of the state and district wherein the crime shall have been committed" should not be based on mere guesswork.  Maybe all Bank of America cashier's checks from a certain group of states simply say "Seaport Square" on the top left corner.   Again, fulfilling the constitutional guarantee of venue should not rely on mere guesswork.

**Another check (or withdrawal form) (Ex. 628) is also inadequate.**[4]  At Thursday's hearing, the government misrepresented this document to the Court.  The government told the

---

[4] The transcript reflects that AUSA Frank referred to Exhibit 68.  AUSA Frank appeared to have meant to refer to Exhibit 628, as exhibit 68 is not a check.

Court that the document "indicates it was an out-of-state withdrawal in Massachusetts." 9/30/21 Tr. at 23:4-5. That is not true. The only mention of Massachusetts anywhere on this document is as follows:

[Bank of America Out of State Counter Withdrawal form, dated 2/1/19, Name: The Key Worldwide Foundation, Address: 5JB Santa Ana Ave, City/State/Zip: Newport Beach, C[A], Telephone: (916) 489-8802, with "77 (MA) Mass." circled]

Although the writing is difficult to read, it says at top, "Mark the State Code for the domicile state/entity of the account." Massachusetts is circled, because the FBI presumably had Singer open a Bank of America account in Massachusetts. But there is no evidence that the check was issued in Massachusetts or a withdrawal was made in Massachusetts; only that the FBI set up the actual account in Massachusetts.

**Both exhibits 624 and 628 suffer from a more fundamental problem, even if one assumes that they <u>prove</u> checks being printed in Massachusetts.** It is one thing to hold (as the Court previously did) that a government cooperator *sending* an alleged co-conspirator checks from Massachusetts is enough to generate venue for the conspiracy. But it is quite another to hold that a government cooperator procuring checks from a bank in Massachusetts and then sending them (from an unknown location) to an alleged co-conspirator (at an unknown location) is enough to establish venue. **Any such holding would ignore black-letter law that only a <u>co-conspirator's</u> overt act in furtherance of a conspiracy can create venue**. *See, e.g.*, *United*

4

*States v. Rodriguez-Moreno*, 526 U.S. 275, 281-82 (1999) ("[V]enue proper against defendant in district where co-conspirator carried out overt acts[.]" (summarizing *Hyde v. United States*, 225 U.S. 347 (1912)); *United States v. Josleyn*, 99 F.3d 1182, 1191 (1st Cir. 1996) ("[V]enue in a conspiracy case depends upon whether an overt act in furtherance of the alleged conspiracy occurred in the trial district."). **And Singer, because he became a government agent in late September 2018, was no longer capable of performing any overt acts.** *See United States v. Salemme*, 978 F. Supp. 343, 357 (D. Mass. 1999) ("[A]n informant operating undercover is not a coconspirator."). Of course Singer could still help generate evidence of a conspiracy's existence, *United States v. King*, 272 F.3d 366, 371 (6th Cir. 2001), but his unilateral actions (like visiting a bank in Boston with an FBI agent, if, in fact, there is proof that he did so) cannot qualify as an overt act.

      Finally, <u>even if</u> the Court accepted that there was sufficient proof that the checks were printed in Boston, and <u>even if</u> the Court found that a government agent (Singer) procuring checks in Boston and the sending them (from an unknown location) to an alleged co-conspirator (at an unknown location) could be an overt act, there is still insufficient venue for Count 2 because the government failed to show that the checks (dated January 3, 2019 and February 1, 2019) are part of the alleged Count 2 conspiracy. First, there was no direct testimony that any of the checks were in exchange for Donna Heinel admitting students through the SubCo. But even if the exchange could be inferred, there is no evidence that the checks in <u>January 2019</u> and <u>February 2019</u> were for such purpose—and that is exactly the proof necessary for venue. Defendant Abdelaziz's daughter was admitted almost a year prior to January 2019. Defendant Wilson's son was admitted almost five years prior to January 2019. The government has admitted that both Defendants concluded their participation in the Count 2 conspiracy as of the

fall of 2018 at the latest. *See, e.g.*, Dkt. 1104-3 at ¶ 8 (AUSA Rosen's sworn declaration that the USC "audit calls" were only made with "parents who had already completed the scheme before Singer began cooperating."). Of course the alleged conspiracy <u>could have</u> continued through February 2019 without the participation of these Defendants, but there is insufficient evidence in the record that it actually did. The January 2019 and February 2019 checks may very well have been in furtherance of some separate agreement with Singer and Heinel that had nothing to do with the Count 2 conspiracy. Again, venue should not be based on mere guesswork.[5]

The government had the opportunity to prove venue as to Count 2 but failed to do so. Therefore, Count 2 should be dismissed for lack of venue.

Dated: October 3, 2021

Respectfully submitted,

GAMAL ABDELAZIZ

By his attorneys,

*/s/ Brian T. Kelly*
Brian T. Kelly (BBO # 549566)
Joshua C. Sharp (BBO # 681439)
Lauren A. Maynard (BBO # 698742)
NIXON PEABODY LLP
53 State Street
Boston, MA 02109
(617) 345-1000
bkelly@nixonpeabody.com
jsharp@nixonpeabody.com
lmaynard@nixonpeabody.com

Robert Sheketoff (BBO # 457340)
One McKinley Square
Boston, MA 02109

---

[5] The government's remaining argument, that there is venue for the Count 2 USC Federal Program Bribery conspiracy in Massachusetts because Defendant Wilson mentioned USC once on a September 2019 call where Singer and Wilson named at least twenty different universities, and that they later agreed to meet at Logan Airport (a meeting which never happened), is baseless. *See* 9/30/21 Tr. at 23. A mere mention of USC on that call is not an "overt act" in "furtherance of" the USC Federal Program Bribery conspiracy. With respect to Defendant Wilson's daughters (who were to attend Harvard and Stanford), the only alleged actions in furtherance of any conspiracy relate to the Count 1 conspiracy, not the Count 2 conspiracy which is focused exclusively on USC.

617-367-3449

*/s/ Michael Kendall*
Michael Kendall (BBO # 544866)
Lauren M. Papenhausen (BBO # 655527)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
(617) 979-9300
michael.kendall@whitecase.com
lauren.papenhausen@whitecase.com

Andrew E. Tomback (pro hac vice)
MCLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, NY 10016
(212) 448-1100
atomback@mclaughlinstern.com

*Counsel for John Wilson*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on October 3, 2021, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

*/s/ Joshua C. Sharp*
Joshua C. Sharp