UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No.: 19-10080-NMG |
| ) | |
| GAMAL ABDELAZIZ *et al.*, ) | |
| ) | |
| Defendants ) | |

**GOVERNMENT'S MOTION TO PRECLUDE TESTIMONY OF DEFENSE
WITNESS JAMES WALTERS FOR VIOLATIONS OF SEQUESTRATION ORDER**

The government respectfully moves to strike the anticipated testimony of newly-disclosed defense witness James Walters, a former USC water polo player, for multiple violations of the Court's sequestration order in this case. Dkt. 2211 at 5–6. As the Court is aware, Walters was first disclosed as a witness on Thursday, near the end of the third week of trial. Accordingly, the Court ordered the defense to make Walters available for a one-hour deposition. At the outset of that deposition, one of three attorneys representing Wilson at the deposition disclosed that Walters "had seen some press coverage relating to Casey Moon's testimony." Near the end of the deposition, Walters revealed – over repeated defense objections – that not only has he read news coverage about the trial, including specifically about Moon's testimony, but he has also discussed Moon's testimony with McQuin Baron, who until Thursday was also expected to testify for the defense, and that he and Baron discussed their expected testimony. Walters further testified, over defense objections, that he communicated last week with Jovan Vavic, the former USC water polo coach who is an alleged co-conspirator in this case. Wilson's attorneys not only failed to disclose these contacts to the government, but repeatedly objected to the government asking about them.

These contacts are clear violations of the sequestration order that Wilson's counsel urged the Court to adopt. For these reasons, the Court should preclude Walters from testifying.

I.  **BACKGROUND**

   A.  **The Court's Deadline for Witness Lists and Sequestration Order**

On June 15, 2021, the Court ordered the defendants to file witness lists by July 16, 2021. *See* Dkts. 1908, 1919. On July 16, the defendants filed a list with 72 witnesses. Dkt. 1955. The list included three current or former USC water polo players or coaches: player Jake Ctvrtlik; player Andrew Mericle; and coach Marko Pintaric. *Id.*

During the August 18, 2021 pre-trial conference, Wilson's counsel moved "to sequester all of the witnesses" other than summary witnesses. *See* Ex. A, 8/18/2021 Conf. Tr. at 50. On September 7, the defendants formally moved for sequestration, attaching a proposed order providing that "witnesses for all parties shall be sequestered at the upcoming trial until they have given their testimony." Dkt. 2164, 2164-1. On September 10, the Court ordered "that witnesses for all parties shall be sequestered at trial until they have testified." Dkt. 2211 at 5–6.[1]

   B.  **The Testimony of Casey Moon and the Defendant's Addition of Witnesses**

USC water polo coach Casey Moon testified as a government witness on September 28, 2021. Two days later, Wilson's counsel advised the Court and the government for the first time that former USC water polo players James Walters and McQuin Baron would testify in lieu of Ctvrtlik and Pintaric, two witnesses previously identified on the defense witness list. *See* Ex. D, 9/30/2021 Trial Tr. at 32–35. The government objected to the late disclosure. *Id.* Rather than

---

[1] During the trial, Wilson's counsel sought to ensure that a government witness, Mikaela Sanford, remained sequestered even after her testimony, noting "that she is under subpoena, she may be recalled in the defense case, and *she still has to be sequestered from any publicity about it*." Ex. B, 9/20/2021 Trial Tr. at 140 (emphasis added). Wilson's counsel also opposed the release of transcripts of audio exhibits during trial, on the basis that he was "very concerned about sequestration." Ex. C, 9/23/2021 Trial Tr. at 58.

preclude the testimony as a violation of the pre-trial order, the Court ordered one-hour depositions of both Walters and Baron. *Id.*

### C. The Court-Ordered Deposition of Walters

Prior to the Walters deposition, defense counsel informed the government that Baron would not testify. During the Walters deposition, Wilson's two attorneys who were physically present (with a third on the phone) lodged at least 44 objections (despite the fact that the deposition will not be offered into evidence), including numerous objections that appeared designed to coach the witness. *See, e.g.*, Ex. E, 10/3/2021 Walters Tr. at 66–67 (ten speaking objections spanning two pages of testimony). Walters's own counsel (who is being paid for by Wilson) instructed Walters not to answer the following question: "Do you have any feelings about this case?" *Id.*

Near the end of the deposition, over repeated defense objections, Walters testified that he has read news coverage about Moon's testimony:

Government: What do you recall reading about his testimony?

Defense Counsel: Objection. Relevance, hearsay.

Government: Relevance?

Witness: The – the – the one thing I saw in there was that he said in one part that he – he never saw Johnny and another part that he said he did see them, and I was, like, that's really weird.

Defense Counsel: I think we have a 60 minute deposition. Can the court reporter tell us where we are.

The Reporter: 57 minutes.

Defense Counsel: You're about two minutes short.

. . .

Government: But you recall reading that he testified that Johnny didn't show up for practice?

Witness: Uh-huh.

3

>   Government:  Okay.  And what else do you recall reading about?
>
>   Defense Counsel:  Objection.  Hearsay.
>
>   Witness:  I don't recall anything else.

*Id.* at 72–74.  Walters further testified that defense counsel first contacted him the day *after* Moon testified, and that he thereafter discussed Moon's testimony with Baron, another defense witness, along with the substance of Baron's and his own expected testimony.  *See id.* at 69–72.  Walters went on to testify that he was also contacted last week by Vavic, who asked Walters if he would be willing to speak with Vavic's attorneys.  *Id.* at 61.

## II.     ARGUMENT

"As the district court has discretion in fashioning sequestration orders, it likewise has discretion in enforcing them," and the potential sanction for such a violation – from a mistrial to striking the testimony – "is committed to the sound discretion of the trial court."  *United States v. Magana*, 127 F.3d 1, 6 (1st Cir. 1997).  In some circumstances, the First Circuit has endorsed the following approach when a party violated a sequestration order: "the court should strike the offending evidence and promptly instruct the jury to disregard it."  *Id.*  And in the context of less serious violations – for example, sitting "just outside the courtroom for ten minutes while another witness testified" – the First Circuit has allowed counsel to question the witness about the alleged violations and "instructed the jury to take any such violation, if one was found, into account in assessing credibility."  *United States v. Cox*, 752 F.2d 741, 748 (1st Cir. 1985).  Other courts have stricken testimony or not permitted a witness to testify in situations akin to those here.[2]

---

[2] *See, e.g.*, *United States v. Calhoun*, 510 F.2d 861, 867–69 (7th Cir. 1975) (trial court did not abuse its discretion in refusing to permit two defense witnesses to testify where defendant had requested exclusion and defendant's counsel thereafter failed to police his own witnesses so as to prevent their exposure to trial testimony); *see also United States v. Montgomery*, 262 F.3d 233, 243–44 (4th Cir. 2001) ("We have no difficulty concluding that a trial court would not abuse its

The Court should preclude Walters from testifying for at least three reasons.

First, the defense is accountable for its witness's violations of the sequestration order.  The defense did not list Walters on its witness list, which was due more than two months ago, and apparently neglected to instruct him to abide by the sequestration order even after contacting him last week.[3]  The Court previously gave the defendant the benefit of the doubt in allowing him to add two witnesses to his 70-plus person witness list near the end of trial.  It should not give him the benefit of the doubt a second time.

Second, there can be no serious dispute that the defense was aware of its obligations under the sequestration order that it requested, and that it repeatedly urged the Court to enforce throughout trial.  Defense counsel's numerous objections during the Walters deposition, which sought to obfuscate the violations of that order, are especially troubling.

Third, Walters's numerous violations of the sequestration order go to the heart of his testimony.  The purpose of that testimony is to challenge the testimony of government witness Casey Moon.  Walters has read news coverage of Moon's testimony and has discussed it, as well

---

discretion in refusing to permit a witness, who violated a sequestration order, to testify [under the] circumstances," where court's sequestration order made counsel "fully aware" that witnesses should not be exposed to testimony); *United States v. Wilson*, 103 F.3d 1402, 1406 (8th Cir. 1997) (affirming exclusion of defense witness testimony because witness "could not be called to testify at the last minute" and it would not be "fair to allow [him] to hear the testimony of other witnesses and then possibly tailor his own testimony accordingly"); *Rowan v. Owens*, 752 F.2d 1186, 1191 (7th Cir. 1984) (holding that "to prevent a witness who has violated [sequestration order] from testifying is a natural sanction for [such] violation"); *United States v. Gibson*, 675 F.2d 825, 835–36 (6th Cir. 1982) (affirming exclusion of defense witness testimony for violation of sequestration order where testimony was cumulative and because "we are not persuaded by [defendant's] claim that his need to call [witness] was unexpected"); *United States v. Nash*, 649 F.2d 369, 371 (5th Cir. 1981) (refusing to allow defense witness to testify where she had been exposed to trial testimony in violation of sequestration order).

[3] The fact that the defense did not contact Walters until *after* Moon's testimony, even standing alone, raises significant concerns, particularly where the defense listed other USC water polo players on their witness list in mid-July.

as his own testimony, with another defense witness, McQuin Baron. Walters specifically testified that he and Baron discussed what Baron expected to say as a defense witness, as well as what Walters expected to say:

> Government:   Have you talked to McQuin Baron about his testimony?
>
> Witness:   Yes. McQuin Baron was -- was going to testify here. I don't know why he's not. He's -- he's not testifying here so...
>
> Government:   Did you discuss his testimony with him?
>
> Defense Counsel:   Objection. Ambiguous.
>
> Witness:   Did I -- in -- we -- we talked about the whole situation because it was, you know, kind of strange. You get asked to -- to testify in a federal court, it's -- you know, obviously, that's a conversation but not -- not a whole lot about it.
>
> Government:   Did he tell you what he was going to testify to?
>
> Defense Counsel: Objection.
>
> Witness:   It doesn't matter what I say he -- I mean, I can tell you –
>
> Government:   I'm just asking a question.
>
> Defense Counsel: Objection.
>
> Government:   Did he -- did he tell you what he was going to testify to?
>
> Defense Counsel: Hearsay, relevance.
>
> Witness: Yes.
>
> Government:   What did he tell you he was going to testify?
>
> Defense Counsel: Objection. Hearsay, relevance.
>
> Witness:   He -- he told me that -- that he was – I mean, every guy that I've talked to on the -- on the team -- like, I can't imagine somebody saying Johnny was -- was, you know, not on the team; so he was going to testify and say, yeah, he was -- he was on the team.
>
> Government: And he told you that?

>Defense Counsel: Objection. Hearsay, relevance.
>
>Government:   He told you that he was going to testify that Johnny was on the team?
>
>Witness: Not specifically like that because the -- just the way that you've phrased the question is –
>
>Government:   So tell me what he said.
>
>Defense Counsel: Objection. Hearsay, relevance.
>
>Witness: When we spoke about it, he said, "You know, they're asking if Johnny was on the team." I said, "I know," and he said, "Well, he was, obviously," and we talked about that just briefly, but that's it.

*Id.* at 69–71. Walters testified that he also communicated directly with Vavic, an indicted co-conspirator, at around the same time that he spoke with Wilson's attorney last week. *Id.* at 61.

### III.     CONCLUSION

For the foregoing reasons, the Court should preclude Walters from testifying.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By: */s/ Ian J. Stearns*
KRISTEN A. KEARNEY
LESLIE A. WRIGHT
STEPHEN E. FRANK
IAN J. STEARNS
Assistant United States Attorneys

### CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: October 4, 2021              */s/ Ian J. Stearns*
                                    IAN J. STEARNS