UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>GREGORY COLBURN et al.,<br><br>Defendants. | Case No. 1:19-cr-10080-NMG |

### DEFENDANTS' REQUEST FOR JURY INSTRUCTIONS BASED UPON THE COURT'S ORDER & MEMORANDUM DATED SEPTEMBER 23, 2021 AND REBECCA CHASSIN'S TRIAL TESTIMONY

Pursuant to Fed. R. Crim. P. 30, and in response to the Court's Memorandum & Order dated September 23, 2021 (ECF No. 2265), and the trial testimony of Rebecca Chassin on September 21, 2021, Defendants Gamal Abdelaziz and John Wilson ("Defendants") respectfully request that the Court give the jury instructions attached as Exhibit A. More specifically, both Defendants request that the Court give the first, third, and fourth instructions set forth in Exhibit A, and Defendant John Wilson requests that the Court give the second and fifth instructions set forth in Exhibit A.

In its September 23, 2021 Memorandum & Order, the Court quashed Defendants' trial subpoenas for Alexandra Reisman and Scott Wandzilak, stating that this case is about "whether admitting students through Subco with falsified athletic profiles deprived USC of the honest services of its employees." ECF No. 2265 at 5. As explained in Defendants' Motion for Judgment of Acquittal Under Federal Rule of Criminal Procedure 29 (ECF No. 2330), which is hereby incorporated by reference:

> By framing the honest services charges in this way, and denying Defendants' ability to obtain testimony from Reisman and Wandzilak concerning how USC treated applicants that contributed money to USC but did not knowingly submit false

1

> information to Subco, this Court has effectively restricted the charge for conspiracy to commit honest services fraud.

ECF No. 2330 at 23-24. More specifically, "to convict Defendants of conspiracy to commit honest services fraud, the Government must specifically show that 'admitting students through Subco with falsified athletic profiles deprived USC of the honest services of its employees.'" *Id.* at 24 (quoting ECF No. 2265 at 5). In addition, with respect to the charges for both conspiracy to commit honest services mail and wire fraud and conspiracy to commit federal programs bribery, the government must show that "the athletic profiles were actually false and that Defendants were aware of the falsified athletic profiles." *Id.* And, of course, with respect to these charges, even if Defendants were aware of the profiles, the government must show (among other things) that Defendants recognized that the profiles contained false information. *See, e.g.*, *id.* at 28-29. Accordingly, Defendants request that the Court give the first instruction set forth in Exhibit A, which sets forth these requirements.

Similarly, with respect to the charges against Mr. Wilson for honest services wire fraud, the government must specifically show that Harvard University and Stanford University "have a process that is akin to Subco," *id.* at 18 n.22, 20-21, and that "admitting students through [that process] with falsified athletic profiles [would have] deprived [Harvard and Stanford] of the honest services of [their] employees." ECF No. 2265. In addition, with respect to the charges for honest services wire fraud and federal programs bribery, the government must show (among other things) that Mr. Wilson agreed that Rick Singer would create falsified athletic profiles for Mr. Wilson's daughters so that the relevant subcommittees at Harvard and Stanford would admit his daughters.

Accordingly, Mr. Wilson requests that the Court give the second instruction set forth in Exhibit A, which sets forth these requirements.[1]

In addition, with respect to the charges for conspiracy to commit honest services mail and wire fraud and conspiracy to commit federal programs bribery, the government must show that the USC employee at issue knew that the athletic profile at issue was materially false. This is because (1) the Indictment charges that Defendants conspired with the USC employees at issue; and (2) there can be honest services fraud or federal programs bribery only if the employee at issue intentionally deceived his employer. *See, e.g.*, ECF No. 2330 at 25-26. Thus, the Court should expressly instruct the jury that unless the government proves beyond a reasonable doubt that the USC employee at issue knew that the profile at issue was falsified, the jury cannot convict the Defendant at issue of conspiracy to commit honest services mail and wire fraud or conspiracy to commit federal programs bribery. The Court should instruct the jury on this point as per the third instruction set forth in Exhibit A.

In addition, in its September 23, 2021 Memorandum & Order the Court stated, "Defendants have not demonstrated that Reisman and Wandzilak have information relevant to the honest

---

[1] In making the foregoing argument, Mr. Wilson does not waive, and expressly maintains, his defense of factual impossibility. *See, e.g.*, ECF No. 2330 at 29-30. In light of the government's failure to rebut this defense, the charges for honest services mail fraud and federal programs bribery should not even go to the jury. *See id.* However, to the extent the Court allows these charges to go to the jury, it should give the second instruction set forth in Exhibit 2.

In addition, in making the foregoing argument, Mr. Wilson does not imply or concede that the jury may properly consider whether he is guilty of attempted honest services wire fraud or attempted federal programs bribery. In fact, for two reasons, the jury cannot properly consider whether Mr. Wilson is guilty of attempted honest services wire fraud or attempted federal programs bribery. *First*, the grand jury did not charge Mr. Wilson with attempted honest services wire fraud, attempted federal programs bribery, or any other attempt crime. Thus, allowing the trial jury to consider whether Mr. Wilson committed an attempt crime would constitute a violation of Mr. Wilson's "right[] to be indicted by a grand jury." *United States v. Ernst*, 502 F. Supp. 3d 637, 652 (D. Mass. 2020). *Second*, attempted federal programs bribery is not even a crime, as there is no federal statute which criminalizes attempted federal programs bribery. *See United States v. Rivera-Sola*, 713 F.2d 866, 869 (1st Cir. 1983) ("There is no general federal statute which proscribes the attempt to commit a criminal offense. Thus, attempt is actionable only where a specific criminal statute outlaws both its actual as well as its attempted violation.").

3

services question as to <u>these defendants</u>, i.e. the customs, practices and policies of Subco or the relevant expectations of the Admissions Department." ECF No. 2265 at 5. This suggests that the relevant customs, practices, and policies are those of Subco and the admissions department. Respectfully, that is incorrect. *See* ECF No. 2330 at 24. The USC employees at issue did not owe fiduciary duties to Subco or the admissions department. Neither Mr. Vavic nor Ms. Heinel were members of Subco. Ms. Heinel was the athletic liason to Subco. The customs, practices, and policies of Subco and the admissions department are irrelevant. *See id.* Indeed, with respect to Mr. Vavic, there is no reason to believe that he was even aware of these customs, practices, and policies, let alone bound by them. *See id.* The relevant customs, practices, and policies are those of the department in which Mr. Vavic and Ms. Heinel worked—the athletic department. *See id.* Similarly, with respect to the honest services fraud charges against Mr. Wilson, the relevant customs, practices, and policies are those of the department where John Vandemoer worked and the senior women's administrator supposedly worked—presumably (though the government has not proven) the respective athletic departments of Stanford and Harvard. Accordingly, Defendants request that the Court give the fourth instruction set forth in Exhibit A, which explains that the relevant customs, practices, and policies are those of the athletic departments at issue.

      Lastly, at trial, the government elicited testimony from Rebecca Chassin suggesting that Subco would not have admitted Johnny Wilson if it knew that Johnny's athletic profile contained lies. *See id.* at 28 (citing 9/21/21 Tr. at 130:24-131:2). But this testimony has no bearing on whether the alleged misstatements at issue in Johnny's profile were material. *See id.* at 28 & n.32 (citing *United States v. Williams*, 12 F.3d 452, 457 (5th Cir. 1994)).[2] To prevent confusion of the issues

---

[2] In *Williams*, 12 F.3d at 457, the court stated: "The government marshalled evidence showing that the banks would not have made the loans if they had known that these statements were false. In actuality, the bank officers merely testified that they would not have approved the loans if they had discovered that the applicant had lied. **That does not**

4

and prejudice to Mr. Wilson, the jury should be expressly instructed that this testimony has no bearing on whether the alleged misstatements at issue were material, as set forth in the fifth instruction in Exhibit A.

For the foregoing reasons, Defendants request that the Court give the jury instructions set forth in Exhibit A. Defendants reserve the right to submit additional supplemental requested jury instructions. Further, Defendants reserve the right to supplement, modify, or withdraw the attached instructions as appropriate.

Respectfully submitted:

By their counsel

/s/ *Michael Kendall*
Michael Kendall (BBO # 544866)
Lauren M. Papenhausen (BBO# 655527)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com
lauren.papenhausen@whitecase.com

*Counsel for John Wilson*

Andrew E. Tomback (pro hac vice)
MCLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, NY 10016
Telephone: (212) 448-0066
atomback@mclaughlinstern.com

---

**make the lies themselves material, however.** This is a crucial distinction. Aided by hindsight, the banks undoubtedly would not have made these loans. Any bank would be understandably reluctant to lend money to a corporation when its officers lie on the loan application. In sum, the government's evidence demonstrates only that the banks maintain a policy that warns against loaning money to entities which do not tell the truth; **it is no way probative of the materiality of these particular statements.**" (Emphases added).

/s/ *Brian T. Kelly*
Brian T. Kelly (BBO # 549566)
Joshua C. Sharp (BBO # 681439)
Lauren M. Maynard (BBO # 698742)
NIXON PEABODY LLP
53 State Street
Boston, MA  02109
617-345-1000
bkelly@nixonpeabody.com
jsharp@nixonpeabody.com
lmaynard@nixonpeabody.com

Robert Sheketoff (BBO # 457340)
One McKinley Square
Boston, MA  02109
(617) 367-3449

*Counsel for Gamal Abdelaziz*


DATED: October 4, 2021


## CERTIFICATE OF SERVICE

I, Michael Kendall, hereby certify that on October 4, 2021 this document, filed through the CM/ECF system, will be sent electronically to all registered participants in this matter as identified on the Notice of Electronic Filing (NEF).

*/s/ Michael Kendall*