UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.: 19-10080-NMG |
| | ) | |
| GAMAL ABDELAZIZ *et al.*, | ) | |
| | ) | |
| Defendants | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION FOR
SUPPLEMENTAL JURY INSTRUCTIONS [DKT. 2369]**

The government respectfully submits this response in opposition to the defendants' motion for supplemental jury instructions. [Dkt. 2369]

First, the defendants' contention that, during closing argument, the government "did not make a distinction between willful blindness with respect to knowledge and willful blindness with respect to intent" is incorrect. Dkt. 2369 at 1. This is what the government said:

> The judge is also going to instruct you on a concept called willful blindness. Pay attention to that instruction. *That means you can infer that the defendants have knowledge of something if they deliberately closed their eyes to a fact that should have been obvious to them if they stuck their heads in the sand.* Here it was abundantly clear that that money was in exchange for admission as recruited athletes, that the kids were not getting in without the money. That was abundantly clear from all of the evidence you've seen.

10/6/21 Tr. at 148:9–18. The government's argument explicitly, and correctly, referred to willful blindness as a basis to infer that the defendants had knowledge that the money they were paying "was in exchange for admission as recruited athletes" and that their children "were not getting in without the money." *Id.* The government made no mention of intent. Its argument was clear and accurate, and no additional instruction is required.

Second, the government did not improperly suggest that Singer's conduct provided evidence of the defendants' intent. Dkt. 2369 at 1. Rather the government properly responded to

the defendants' argument that they did not know about or participate in Singer's scheme, and that he created their children's fake athletic profiles without their knowledge. *See, e.g.*, 10/6/21 Tr. 73:16–17 ("Singer has a side deal going that he doesn't tell Gamal about"); 86:19 (arguing that email attaching fake profile of Sabrina Abdelaziz "never got to him"); 91:13–14 ("Gamal has been suckered. He doesn't know this is going on."); 93:7 (referring to a "phony baloney athletic profile that he never saw"); 111:7–8 ("There were too many errors in there for John to have missed if he had read it."); 115:2–5 ("In sum, if the government cannot prove beyond a reasonable doubt that John knew Mr. Singer had exaggerated or lied about Johnny's credentials, then Mr. Wilson had no reason to believe Coach Vavic had done anything wrong"). In rebutting this argument, the government argued as follows:

> The defendants want you to believe, they have asked you in their closing arguments to believe that Rick Singer perpetrated this fraud scheme totally behind their backs, that they were duped, that they were not in on it, that they didn't know what he was doing with those fake profiles, that he didn't tell Gamal, that's what Mr. Kelly asked you to believe. Here is how you know to a certainty, to a certainty you know that that is not true: Because this master con man that they've been telling you about for the past three-and-a-half weeks, what a master con man he is, he e-mailed the fake profile to the very people he was supposedly trying to con. Who does that? He actually wrote 'FYI' on the e-mail to Mr. Wilson and sent him the fake profile. *If he's trying to con him, he wouldn't send him the fake profile, and the same is true of Gamal Abdelaziz, whether they looked at it or not.*

144:23–145:13 (emphasis added). The government further argued that "if they weren't in on it, he would not have sent them the fake profile. He wouldn't have sent it to them unless they knew and were involved in the fraud". *Id*. at 146:8–11. This is fair argument. It does not improperly suggest that Singer's actions provide evidence of the defendants' intent. Rather, it is a proper, fact-based response to the defendants' contention that they were duped.

2

Third, during closing argument today, the government referenced Singer's location during consensually recorded calls on October 5, October 25, and October 27, 2018.  *See* 10/6/21 Tr. 30:11–13; 33:10–12; 55:15–17.  The references to Singer's location were based on the testimony of Special Agent Keating, who testified that Singer was in Boston on October 5 and October 27, and from whose testimony the jury could properly infer that he was also in Boston on October 25, when he was making "audit" calls to parents at agents' instruction.[1]  Moreover, the Court has already instructed the jury that they "must not consider Singer's statements during [the consensual] calls for the truth of anything they assert," but only "for the context that they provide in evaluating the defendants' statements on the phone calls."  Tr. 9/21/21 at 165:13–17.  There is no need for a separate instruction that Singer's statements on the calls may not be considered for their truth as to venue.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By: */s/ Stephen E. Frank*
KRISTEN A. KEARNEY
LESLIE A. WRIGHT
STEPHEN E. FRANK
IAN J. STEARNS
Assistant United States Attorneys

---

[1] Agent Keating testified that Singer was in Boston on October 5, 2018, *see* 9/21/21 Tr. 178:14–175:13; 9/23/21 Tr. 164:8–12, and October 27, 2018, 9/23/21 Tr. 7:14–15; 9:19-21, and that he made "audit" calls at agents' instruction "at the end of October," including a call to defendant Aziz on October 25, 2018, *see* 9/23/21 Tr. 24:14–17; 25:10–13.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: October 7, 2021  /s/ *Stephen E. Frank*
STEPHEN E. FRANK