UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA,          )
                    Plaintiff      )
                                   )
vs.                                )  No. 1-19-CR-10080
                                   )
GAMAL ABDELAZIZ and JOHN           )
WILSON,                            )
                    Defendants.    )
                                   )
                                   )




            BEFORE THE HONORABLE NATHANIEL M. GORTON
                 UNITED STATES DISTRICT JUDGE
                    JURY TRIAL - DAY 20



            John Joseph Moakley United States Courthouse
                        Courtroom No. 4
                      One Courthouse Way
                 Boston, Massachusetts 02210



                        October 7, 2021
                          9:17 a.m.




                  Kristin M. Kelley, RPR, CRR
                    Official Court Reporter
            John Joseph Moakley United States Courthouse
                 One Courthouse Way, Room 3209
                  Boston, Massachusetts 02210
                   E-mail: kmob929@gmail.com

            Mechanical Steno - Computer-Aided Transcript

APPEARANCES:

       Stephen E. Frank

       Ian J. Stearns

       Leslie Wright

       Kristen Kearney

       United States Attorney's Office

       1 Courthouse Way

       Suite 9200

       Boston, MA 02210

       617-748-3208

       stephen.frank@usdoj.gov

       for the Plaintiff.


       Brian T. Kelly

       Joshua C. Sharp

       Lauren Maynard

       Nixon Peabody LLP

       100 Summer Street

       Boston, MA 02110

       617-345-1000

       bkelly@nixonpeabody.com

       for Gamal Abdelaziz.

```
 1   APPEARANCES:

 2

 3            Robert L. Sheketoff

 4            One McKinley Square

 5            Boston, MA 02109

 6            617-367-3449

 7            sheketoffr@aol.com

 8            for Gamal Abdelaziz.

 9

10

11            Michael Kendall

12            Lauren M. Papenhausen

13            White & Case, LLP

14            75 State Street

15            Boston, MA 02109

16            617-939-9310

17            michael.kendall@whitecase.com

18            for John Wilson.

19

20

21

22

23

24

25
```

```
 1    APPEARANCES:

 2

 3            Andrew E. Tomback

 4            McLaughlin & Stern, LLP

 5            260 Madison Avenue

 6            New York, NY 10016

 7            917-301-1285

 8            atomback@mclaughlinstern.com

 9            for John Wilson.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    P R O C E E D I N G S

2            THE CLERK:  Thank you.  You may be seated.  Court so

3      now in session.

4            THE COURT:  Good morning, counsel.

5            Before I charge the jury, I will rule on several

6      pending matters.  First, with respect to the defendants'

7      request that the Court instruct the jury that a, quote,

8      official act, unquote, is required for a conviction of Title 18

9      of United States Code Section 666, the Court has reviewed the

09:17 10   *Martinez* decision rendered earlier this year and does not

11     believe that an official act is required under the federal

12     programs bribery statute.  Therefore, the Court denies the

13     defendants' request for an instruction on official abilities in

14     the context of Count 1.

15           Second, with respect to the jury verdict form, the

16     Court will provide the jury with the verdict form as originally

17     drafted without the defendants' proposed changes.  The

18     formatting of defendants' proposed form as it relates to

19     Count 1 is unnecessarily confusing and, furthermore, it is not

09:18 20   substantively different from the Court's proposal.

21           Finally, with respect to the defendants' motion for

22     supplemental jury instructions, docket 2369, the Court will

23     instruct on willful blindness, venue and intent to join the

24     alleged conspiracies, but it will not alter or modify its

25     previously planned instructions on those topics based upon the

    1    government's closing argument.

    2              Anything needs to come to the attention of the Court

    3    before I deliver my charge to the jury?

    4              MR. KELLY:  Two quick things, your Honor.

    5              THE COURT:  Mr. Kelly.

    6              MR. KELLY:  First, I think we had also requested, I

    7    don't know where the Court landed or decided on the curative

    8    instruction we had proposed.

    9              THE COURT:  I will include an instruction that deals

09:19 10    with both of those issues.

    11              MR. KELLY:  Thank you, your Honor.

    12              And then I think Mr. Kendall might be raising this,

    13    but after the Court instructs, I think we have to preserve any

    14    and all objections with the Court under First Circuit

    15    procedures.  I defer to the Court on how you prefer to do it.

    16              THE COURT:  We'll do it at sidebar.  The jury is going

    17    to see us.  If you have to take half an hour at sidebar, you're

    18    going to take it in front of the jury.

    19              MR. KELLY:  That's fine by me.

09:19 20              MR. KENDALL:  Your Honor, a few things.  I believe the

    21    Court misspoke when you gave your rulings with respect to

    22    *Martinez*.  I think you said it was with respect to Count 2.

    23              THE COURT:  I meant Count 2.

    24              MR. KENDALL:  Just wanted to clarify that.

    25              THE COURT:  Thank you.

1          MR. KENDALL:  We obviously object to any of the giving

2     of willful blindness instruction.

3          I wanted to raise a couple of concerns, your Honor,

4     that I think arise from the government's closing yesterday.

5     The Court told us they were not going to give an instruction on

6     a corrupt insider, but Mr. Frank did do that.  He used the term

7     "corrupt insider" repeatedly.  I believe the gist of his

8     closing was that an exchange of an -- an economic exchange that

9     he called a quid pro quo would be the way to look for it to

09:20 10     define the corrupt insider's transaction.  As we all know, a

11     simple financial exchange of a "this-for-that" is not a crime

12     in any sense and there has to be something more than that.  I

13     think, particularly given that the closing yesterday, there has

14     to be some guidance given to the jury of when is it corrupt for

15     a donation to be made to a university and when is it not

16     corrupt.  I think the confusion the government has created has

17     really compounded the need to have that done.

18          THE COURT:  Mr. Frank?  I'll hear Mr. Frank in

19     response.

09:20 20          MR. FRANK:  Your Honor, I think I made it very clear

21     that it's an elicit quid pro quo when it induces an insider to

22     lie to their colleagues in the admissions department to admit a

23     purported athlete based upon falsified athletic credentials.

24          MR. KENDALL:  That leads to the second issue, your

25     Honor.  I think the government has defined the theft of honest

services, I think consistent with your ruling at ECF 2265 at

page 5, that it has to be a false statement, the falsified

athletic profile has to be an integral part of the honest

services violation.  The question I have is whose honest

services are owed -- I think the Court has to define how are

the honest services defined and who are they owed to and who is

the victim.

With respect to USC, I think the government's theory

is that they misled the SUBCO and that the SUBCO is the victim

and that the honest services, I'm not sure if it's the Athletic

Department defines the honest services or something else, but

there has to be some sort of coherence to what the jury's going

to analyze.

With respect to the Harvard University charges, the

evidence is that the president approved a side-door

relationship and there's no information on what the senior

women's administrator does, what their role is, what is their

obligation of honest services, and what's the admission process

that they would be a part of or would be influencing.

With respect to the Stanford counts, there's no

information on what is the coach's nature of their employment

or their role, same as with senior women's administrator, and

no information on the admissions process or how it is being -

in either of those two schools, Harvard and Stanford, how is

the honest services disrupting or defrauding or creating any

problem.  There's no there there.  I don't think the jury can

define honest services just because of its common sense, you

know, you're supposed to tell the truth, which is at what point

what Mr. Frank tried to bring up with a witness.  It has to be

imposed by the organization, by the employer.  There has to be

some clear guidance on the employers of what's to be expected

of them.  I think the jury needs to be told of because it's so

lacking with those issues.

And who is it owed to?  Is it to the Athletic

Department, the SUBCO, the University as a whole?  That's an

issue with USC.  With Harvard and Stanford, we don't even have

enough coherence to know who is the honest services defined by

and who is it owed to.  That's the next issue.

MR. KELLY:  We join Mr. Kendall's remarks here, your

Honor.

MR. KENDALL:  I have a few others.

THE COURT:  Mr. Frank, do you wish to respond?

MR. FRANK:  Your Honor, Mr. Kendall made these

arguments to the Court previously.  The Court ruled on them.

He made these comments to the jury.  The jury's heard them.

They don't become more effective through repetition.

THE COURT:  Anything further, Mr. Kendall?

MR. KENDALL:  Yes, your Honor.  Again, what is the

property that's the object of the theft?  We think that was

left confusing by the government's closing.  Is it the SUBCO's

         1    decision to admit someone or is it the coach's recommendation?
         2    I think the jury needs to have guidance on whether it's the
         3    coach's recommendation or the SUBCO's decision.  Particularly,
         4    there's a lot of case law that says a mere recommendation or a
         5    mere suggestion is not something that can give rise to a theft
         6    of honest services.  I think we need to define that, have the
         7    property defined.
         8          The indictment said it was a SUBCO decision.  I think
         9    the coach's recommendation is a deviation or a variance from
09:24   10    the indictment.  I think there needs to be clarity of what it
        11    is.
        12          And then whose property is it?  Is it the
        13    University's?  Is it a subdivision of the University's?
        14          THE COURT:  Anything else?
        15          MR. KENDALL:  The other issue is, your Honor, there is
        16    no intent for a federal bribery statute.  We want to make sure
        17    there's no instruction that an intent would satisfy the
        18    evidence required for the federal program bribery.  The word
        19    "intent" is not part of the statute.
09:25   20          THE COURT:  Does the government wish to respond?
        21          MR. FRANK:  We'll rest on our previous responses, your
        22    Honor.
        23          THE COURT:  All right.  Call the jury.
        24          (Jury enters.)
        25          THE CLERK:  Thank you.  You may be seated.  Court is

1    now in session.

2           THE COURT:  Good morning, jurors.  You have now heard

3    the evidence and the closing arguments in this case.  It is now

4    my duty to instruct you on the law that you must follow and

5    apply.

6           In any jury trial, there are, in effect, two judges.

7    I am one of the judges and you, collectively, are the other.

8    It is my duty to preside over the trial and to determine what

9    testimony and evidence is relevant under the law for your

09:27 10   consideration.  It is also my duty at the end of the trial to

11   instruct you on the law applicable to the case.

12          You, as jurors, are judges of the facts.  But in

13   determining what actually happened in this case, that is, in

14   reaching your decision on the facts, it is your sworn duty to

15   follow the law as I am about to define it for you.  When I have

16   finished, you will begin your discussions with one another,

17   which we call jury deliberations.

18          Now, to help you understand and remember these

19   instructions on the law, I will divide them into three parts:

09:28 20   First, general instructions intended to guide you throughout

21   your deliberations; second, instructions about the Indictment

22   and about the law that determines what the government has to

23   prove in this case; and third, some additional general

24   instructions about procedures that you are to follow during

25   your deliberations.

1          Now, these instructions are somewhat complicated, and

2     I ask you to pay very careful attention.  I need to read them

3     because I cannot commit to memory all of the law about which I

4     have to instruct you, but I will submit to you a copy of this

5     charge when you go to the jury room.  I want to caution you

6     right away, however, not to dwell on any one particular portion

7     of it, if you decide to refer to it at all, because you must

8     consider these instructions as a whole and not just one

9     individual particular instruction.  So I ask you to do your do

09:29 10     the best you can to stay with me.

11          Part one.

12          All of my instructions are about the law you must

13     apply.  I do not mean any of these instructions to be

14     understood by you as comment by me on the facts or on the

15     evidence in this case.  The defendant in a criminal trial is

16     presumed to be innocent by law, and this presumption stays with

17     both of the defendants throughout the trial and your

18     deliberations.

19          The government has the burden of proving beyond a

09:29 20     reasonable doubt that the defendants then under consideration

21     is guilty as charged.  It is for you to decide whether, based

22     upon the evidence before you, the government has met its with

23     respect to the charges against that defendant.

24          You are the judges of the facts.  Although the law

25     allows a trial judge in this Court to comment on the evidence,

1    I deliberately do not do so and instead leave the fact-finding

2    entirely in your hands.  You are the sole and exclusive judges

3    of the facts.

4         You must not read into these instructions, or anything

5    anything I may have said or done, any suggestions by me as to

6    what verdict you should return.  That is a matter entirely for

7    you to decide.

8         Fortunately, do you not need to resolve every dispute

9    of fact raised by the evidence.  In order to know which fact

09:30 10   disputes are important, you need to follow what rules of law to

11   apply.  I have explained some of those rules to you during the

12   course of the trial, and I will explain others to you now.

13        The lawyers were allowed to comment during their

14   closing arguments on some of these rules of law, but if what

15   they said about the law differs in any way from my

16   instructions, you must be guided only by the instructions on

17   the law as I state testimony.

18        You must follow all of the rules as I explain them to

19   you.  A single sentence or statement might not refer to an

09:31 20   exception or a qualification that I have stated elsewhere in

21   these instructions, so you must follow all of these

22   instructions together, as a unit.

23        Even if you disagree with one or more of the rules of

24   law, or don't understand the reasons for them, you are bound to

25   follow them.  This is a fundamental part of our system of

1    government by law rather than by the individual views of the

2    judge or jurors who have the responsibility for deciding a

3    case.

4         If I make any mistake in instructing you about the

5    law, fair and even-handed application of the law to this and

6    other cases is nevertheless assured, because any mistake I make

7    on the law is subject to appeal.

8         In contrast, your decision on disputed facts is final.

9    That is, your findings on material disputed facts are not

09:32 10   subject to appeal.  You are the final and exclusive judges of

11   the facts.

12        Under your oath as jurors, you cannot allow

13   consideration of the punishment which may be imposed upon the

14   defendant then under consideration, if convicted, to influence

15   your verdict or enter into your deliberations in any way.  In

16   addition, you cannot allow considerations of sympathy for that

17   defendant or for the government to influence your verdict or

18   enter into your deliberations in any way.  It would be improper

19   for you to allow any feelings you might have about the nature

09:32 20   of the alleged crime to interfere with your decision-making

21   process.

22        You're not to be swayed by bias, prejudice, sympathy

23   or antagonism.  Rather, your function is to find the facts

24   fairly and impartially, on the basis of the evidence.  The

25   evidence in this case consists of all exhibits received into

```
 1    evidence, all facts that may have been admitted or stipulated
 2    to and all of the sworn testimony of the witnesses.
 3          If an exhibit purports to summarize underlying
 4    material on which it is based, you need to satisfied that the
 5    summary evidence is fair and accurate before relying upon it.
 6          As I told you at the beginning of the trial,
 7    statements, arguments, objections and questions by lawyers are
 8    not evidence.  This includes opening statements, in which
 9    counsel tell you what the parties expect the evidence will
10    show.  To the extent items were shown to you or recordings were
11    played for you during opening statements that were not
12    subsequently admitted into evidence during trial, you are not
13    to consider those items or recordings as evidence in this case.
14          Also, during the opening statement on behalf of
15    defendant Abdelaziz, the prosecutor mistakenly objected to the
16    defendants' characterization of a document.  You are to
17    disregard the government's objection, as well as the reference
18    to that document.
19          Any evidence ordered stricken by the Court must also
20    be disregarded.  Anything you may have seen or heard outside
21    the courtroom, including news stories you may have seen before
22    the trial discussing these or other defendants, is not evidence
23    and you must disregard them entirely.  Your verdict must be
24    based solely on the evidence presented in this courtroom and in
25    accordance with my instructions.
```

1          Also, from the facts proved, you may draw reasonable

2   inferences about additional facts.  An inference is a deduction

3   or conclusion.  An inference is an additional finding that your

4   experience, reason and common sense lead you to draw from the

5   facts that you find are proved by the evidence.

6          Some exhibits have been redacted in accordance with

7   the Court's rules or orders.  You are not to speculate about

8   what has been redacted, nor are you to draw any inferences

9   about those redactions.

09:35 10          It is lawful for the government to obtain evidence

11   through court-obtained or consensual wiretaps.  During the

12   course of the trial you have heard certain recorded

13   conversations of the defendants and others made without their

14   knowledge.  If you find that the other party to the

15   conversation consented to the recording, the use of this

16   procedure is lawful.  The government's use of a

17   court-authorized wiretap to obtain evidence is also lawful.

18          The government is also permitted to use undercover

19   agents, informants, and co-conspirators in its investigations.

09:36 20   Whether or not you approve of certain investigative techniques

21   is not to enter into your deliberations in any way.

22          Now, two more phrases often used in discussions about

23   evidence received in trial are "direct evidence" and

24   "circumstantial evidence".

25          Testimony of a witness showing firsthand observation

1   of a fact by that witness is direct evidence.  For example, the

2   testimony of an eyewitness just about what he or she saw is

3   direct evidence.  If the witness is permitted to go beyond what

4   he or she saw and permitted to state a conclusion, or an

5   inference, or an opinion, that part of the answer is not direct

6   evidence.  Instead, it's a kind of circumstantial evidence.

7        Circumstantial evidence is proof of some facts,

8   including events and circumstances, on the basis of which the

9   jury may infer the existence or nonexistence of additional

09:37 10   facts.

11        For example, let's suppose you've been in this

12   courtroom for a few hours and unable to look outside.  A man

13   comes into the back of the courtroom wearing a wet raincoat and

14   carrying a dripping umbrella.  You may draw the inference from

15   those circumstances that it is raining outside.  That is what

16   we call circumstantial evidence as opposed to direct evidence,

17   which would be the testimony of the man in the wet raincoat

18   taking the witness stand and telling you that it is raining

19   outside.

09:37 20        Direct and circumstantial evidence have equal standing

21   in the law.  That is, with respect to what weight shall be

22   given to the evidence before you, the law makes no distinction

23   between direct and circumstantial evidence.  No greater degree

24   of certainty is required of circumstantial evidence than of

25   direct evidence.  You are to consider all of the evidence in

1    the case and give each item of evidence the weight you believe

2    it deserves.

3            The evidence in this case may include facts to which

4    the lawyers have agreed or stipulated.  A stipulation means

5    simply that the government and the defendants accept the truth

6    of a particular proposition or fact and you, likewise, should

7    accept it as true.  Because there is no disagreement, there is

8    no need for evidence of that fact apart from the stipulation.

9    As with all evidence, however, you should give the stipulation

09:38 10   whatever weight you believe it deserves.

11           Any inference that you draw from the facts proved must

12   be a reasonable one and not merely conjecture or guesswork.

13   You might decide that you do not have a sufficient basis to

14   decide what inference to draw.  It is for you, as judges of the

15   facts, to decide whether the evidence before you is or is not

16   sufficient for you to draw an inference.  Ultimately, in

17   drawing inferences, you should use your common sense.

18           If any reference by the Court or by the lawyers to

19   matters of evidence is different from the way you remember the

09:39 20   evidence, let your collective memory control.

21           Now, during this trial you've heard evidence of

22   conversations that were recorded.  That is proper evidence for

23   you to consider.  In order to help you, I have allowed you to

24   have transcripts to read along as the tapes were played.  The

25   tapes are the evidence, not the transcripts.  The transcripts

are merely to help you understand what is said on the tapes.

If you believe at any point that the transcripts say something

different from the tapes, remember that it is the tapes that

are the evidence, not the transcripts.  Any time there is a

variation between the tapes and the transcripts, you must be

guided solely by what you hear on the tapes and not by what you

saw in the transcripts.

Now, at times during the trial you heard lawyers

object to questions asked of the other lawyer, and to answers

of the witnesses.  It is a proper function for lawyers to

object.  In objecting, a lawyer is requesting that I make a

decision on a question of law.  Do not draw from the

objections, or from my rulings on them, any inferences about

facts.  The objections and my rulings relate only to legal

questions that I had to determine.  They should not influence

your thinking about the facts.

When I sustained an objection to a question, the

witness was not allowed to answer.  Do not attempt to guess

what the answer might have been.  And if you heard an answer to

the question before my ruling, you are to disregard it.

In your deliberations, do not consider or talk about

any question to which I sustained an objection or any other or

other statement that I excluded, or struck, or told you not to

consider.

Also, during the course of the trial I may have made

comments to the lawyers or spoken to a witness concerning the manner of his or her testifying.  Do not assume from anything I may have said that I have any opinion concerning any of the issues in this case.  Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own findings of the facts.

At the beginning of the trial, I instructed you about taking notes.  I remind you that notes taken by any juror are not evidence in the case and must not take precedence over your independent recollection of the evidence received in the case. Notes are only an aid to recollection and are not entitled to any greater weight than actual recollection or the impression of each juror as to what the evidence actually is.

Charts and summaries have been admitted into evidence and were shown to you during the trial for the purpose of explaining facts that are contained in other documents.  You may consider the charts and summaries as you would any other evidence admitted during the trial and give them such weight, if any, as you feel they deserve.

A defendant in a criminal case has a constitutional right not to testify and a right not to produce any evidence at all.  No inference of guilt, or of anything else, may be drawn from the fact that a defendant did not testify.

In this case, both of the defendants have chosen to exercise their right not to testify.  It would be improper and

unfair for you to speculate as to the reason or reasons why the defendants have so chosen.  You must not infer anything whatsoever from their decisions not to testify, and I specifically instruct you that during your deliberations you may not discuss that fact in any manner whatsoever.

An important part of your job as jurors will be deciding whether or to what extent you believe what each witness had to say, and how important that testimony was.  You are the sole judges of the credibility of the witnesses.  In deciding whether to believe a witness or how much weight to give a witness' testimony, you may consider anything that reasonably helps you assess that testimony.

The following are the kinds of questions you may want to consider in evaluating a witness' credibility:  Did the person seem honest?  Did she or she have some reason not to tell the truth?  Did the witness have an interest in the outcome of the case?  Did he or she gain any personal advantage by testifying in this case?  Did the witness seem to have a good memory?  Did the witness' testimony differ from his or her earlier testimony or from the testimony of other witnesses? Was the witness' testimony different on cross-examination than on direct examination?  What was the witness' manner while testifying?  These are some, but, of course, not all, of the kinds of things that may help you decide how much weight to give to what each witness had to say.

1          You may also consider any demonstrated bias, prejudice
2    or hostility of a witness in deciding what weight to give to
3    the testimony of that witness.
4          The mere number of witnesses or exhibits or the length
5    of the testimony has no bearing on what weight you are to give
6    to the evidence, or on whether you find that the burden has
7    been met.  Weight does not mean amount of evidence.  Weight
8    means your judgment about the credibility and importance of the
9    evidence.
09:44 10          There are some persons whose names you have heard
11   during the course of the trial but who did not appear here to
12   testify and as to whom there was no stipulation about what they
13   would testify to if they appeared.  Each party had an equal
14   opportunity or lack of opportunity to call any of those
15   persons.  Therefore, you should not draw any inferences or
16   reach any conclusions as to what they would have testified had
17   they been called.  Their absence should not affect your
18   judgment in any way.  You should, however, remember that the
19   law does not impose on a defendant in a criminal case the
09:45 20   burden or duty of calling any witness or producing any
21   evidence.
22          You may consider inconsistencies or differences as you
23   weigh evidence, but you do not have to discredit testimony
24   merely because an inconsistency or difference exists.  Two or
25   more witnesses may see or hear things differently.  Innocent

1    misrecollection, like failure of recollection, is a common

2    experience.  In weighing the effect of any inconsistency or

3    difference, consider whether it concerns a matter of importance

4    or an unimportant detail, and whether it results from innocent

5    error or intentional falsehood.

6         On the other hand, you are not required to accept

7    testimony merely because it is uncontradicted.  You may decide,

8    because of a witness' bearing or demeanor or because of

9    inherent improbability, or for whatever reason, that testimony

09:46 10   is not worthy of belief.  You may accept all of a witness'

11   testimony or reject all of it, or you may accept part and

12   reject another part.

13        A lawyer who calls a witness to testify in a criminal

14   trial may properly conduct interviews of such a witness before

15   he or she takes the witness stand at trial so as to present the

16   evidence in the case to the jury in an orderly and proper

17   manner.

18        By the same token, a witness may make his own free and

19   voluntary choice to either discuss the case or to refuse to

09:46 20   discuss the case with counsel, whether it be counsel for the

21   government or counsel for a defendant.

22        Accordingly, there is nothing nothing improper in a

23   lawyer interviewing a witness before he or she testifies.

24   There is also nothing improper if a witness elects not to

25   discuss the case with counsel before trial.

1        You have heard testimony of law enforcement officers.

2   The fact that a witness may be employed as a law enforcement

3   officer does not mean that their testimony is necessarily

4   deserving of more or less consideration or greater or lesser

5   weight than that of an ordinary witness.

6        It is also appropriate to consider whether, in their

7   investigation, the particular law enforcement witnesses acted

8   in accordance with the standards of their department or agency.

9   If you find any omissions in the investigation were significant

09:47 10   and not adequately explained, you may consider whether the

11   omissions tend to affect the quality, reliability, or

12   credibility of the evidence presented by the government.  It is

13   your decision, after reviewing all of the evidence, whether to

14   accept the testimony of the law enforcement witness and to give

15   that to that testimony whatever weight, if any, you you believe

16   it deserves.

17        You've heard testimony from witnesses who provided

18   testimony under an agreement with the government.  A witness

19   who admits to committing a crime and testifies against others

09:48 20   pursuant to a Plea Agreement with the government almost always

21   does so in the expectation or of a more lenient treatment in

22   reward for their cooperation.  You should credit testimony of

23   cooperating witnesses with particular caution.  A witness

24   testifying in such circumstances may be completely truthful.

25   They also may have had reason to make up stories or exaggerate

1    what others did in order to help themselves.  You must

2    determine whether the testimony of such witnesses has been

3    affected by any interest in the outcome of the case, any

4    prejudice for or against the defendants, or by any of the

5    benefits they hope to receive from the government.

6         You may consider the guilty pleas of cooperating

7    witnesses in assessing their credibility, but you are not to

8    consider their guilty pleas as evidence against these

9    defendants in any way.

09:49 10         Now, the defendants in this case are being tried

11   together.  Each defendant, however, is entitled to have his

12   guilt or innocence determined on an individual basis.  Thus,

13   with respect to each charge, you must assess the evidence

14   against each defendant individually.

15         Sometimes a particular item of evidence will be

16   admitted against one defendant and not the other.  You may not

17   consider those items of evident whether determining the guilt

18   or innocence of the defendant against whom they have not been

19   admitted.

09:49 20         You are here to decide whether the government has

21   proven beyond a reasonable doubt that the defendants, Mr. John

22   Wilson and Mr. Gamal Abdelaziz, are guilty of the crimes

23   charged in the Indictment.  You are not to be concerned with

24   the guilt or innocence of any other person or persons not on

25   trial as a defendant in this case.  It's not unusual for

1    criminal cases to proceed separately against different

2    individuals even if they are allegedly involved in the same

3    offenses or charged in the same indictment with other alleged

4    crimes.  You may not speculate as to the reasons why other

5    people are not on trial.  Those matters are wholly outside your

6    concern and have no bearing on your function as jurors.

7         A defendant in a criminal case is presumed to be

8    innocent.  This presumption is a fundamental part of our legal

9    system and remains with the defendant throughout all stages of

09:50 10   the trial and during your deliberations.  It is not overcome

11   unless, all of the -- from all of the evidence in the case, you

12   are unanimously convinced, beyond a reasonable doubt, that the

13   defendant then under consideration is guilty of a specific

14   charge against him.  The fact that that has been charged with a

15   crime is not in any sense evidence against him.

16        There is never any burden on a defendant in a criminal

17   case.  The law does not require the defendant to prove his

18   innocence or to produce any evidence at all.  The burden of

19   proof is on the government throughout the case.  It never

09:51 20   shifts to the defendant.  If the government fails to meet its

21   burden of proof beyond a reasonable doubt with respect to a

22   specific crime charged against the defendant then under

23   consideration, you must acquit that defendant.

24        If, however, the government meets its burden of proof

25   beyond a reasonable doubt, you have a similar responsibility to

1    find that defendant guilty.

2         As I have said, the burden is upon the defendant to

3    prove beyond a reasonable doubt that the defendant is guilty of

4    the charge against him.  This is a strict and heavy burden, but

5    it does not mean that a defendant's guilt must be proved beyond

6    all possible doubt.  It does require that the evidence exclude

7    any reasonable doubt concerning a defendant's guilt.

8         A reasonable doubt may arise not only from the

9    evidence produced but also from the lack of evidence.

10   Reasonable doubt exists when, after weighing and considering

11   all of the evidence, using reason and common sense, jurors

12   cannot say that they have a settled conviction of the truth of

13   a charge.

14        Of course, a defendant is never convicted on suspicion

15   or conjecture.  If, for example, you view the evidence in the

16   case as reasonably permitting either of two conclusions - one,

17   that the defendant is guilty as charged, the other that the

18   defendant is not guilty - you will find the defendant not

19   guilty.

20        It is not sufficient for the government to establish a

21   probability, even if a strong one, that a fact charged is more

22   likely true than not true.  That is not enough to meet the

23   burden of proof beyond a reasonable doubt.  On the other hand,

24   there are very few things in this world that we know with

25   absolute certainty, and in criminal cases, the law does not

1    require proof that overcomes every conceivable doubt.

2           I instruct you that what the government must do to

3    meet its heavy burden is to establish the truth of each part of

4    the offense charged by proof that convinces you and leaves you

5    with no reasonable doubt and thus satisfies you that you can,

6    consistent with your oath as jurors, base your verdict upon it.

7           If you so find as to the charge against the defendant

8    then under consideration, you will return a verdict of guilty.

9           If, on the other hand, you think there is a reasonable

09:54 10   doubt about whether that defendant is guilty of the offense,

11   you must give him the benefit of that doubt and find him not

12   guilty.

13          It is not against the law to donate money, even large

14   sums, to universities, nor is it against the law to hope that

15   such a contribution will make the admission of one's child to

16   that university more likely.

17          As I have explained, your duty is to apply the law as

18   I define it for you, and determine whether the government has

19   proven beyond a reasonable doubt that the defendant then under

09:54 20   consideration has committed the crimes with which he is

21   charged.

22          The question of whether someone committed an act

23   knowingly or intentionally should never be confused with the

24   motivation for the act.  Motive is what prompts a person to act

25   or fail to act.  The concept of motive is different than the

concept of knowledge or intent.  Knowledge or intent refer only to the individual's state of mind in acting or failing to act.

The government is not required to prove motive, and good motive, if any, is not a defense when the action or failure to act is a crime.  Thus, for the purpose of your deliberations, the motive of a defendant is immaterial except in so far as evidence of motive may aid in the determination of that defendant's state of mind or intent.

Now, the Indictment, to which I'll turn next, charges that the offenses alleged were committed "on or about" certain dates.  Although it is necessary for the government to prove beyond a reasonable doubt that the offenses were committed on dates reasonably near the dates alleged in the Indictment, it is not necessary for the government to prove that the offenses were committed precisely on the dates charged.

So that's part one.

I turn to the Indictment in this case and the statutes on which it has been based.  The Indictment is simply a description of the charges against the defendants.  It is not evidence of anything, and you cannot consider it as evidence.

An Indictment can allege more than one charge against a defendant.  When it does, the different charges are stated separately in what we call "counts".  The Indictment in this case has nine counts against the defendants.  Some counts are against both defendants, and some are against only Mr. Wilson.

1    You should disregard the gaps in the numbers of counts before

2    you and keep in mind that the number of counts against

3    defendants is not evidence any way and should not be considered

4    as evidence by you.

5           The defendants pled not guilty to the charges and deny

6    committing the crimes.  As I have explained, they are presumed

7    innocent and are not guilty with respect to any count unless

8    you unanimously find that the government has proven that

9    defendant's guilt as to that count beyond a reasonable doubt.

10          Count 1 charges both the defendants with conspiracy.

11   Specifically, it charges the defendants with conspiracy to

12   commit four crimes, or what are called "underlying" or

13   "substantive" crimes.  The four underlying or substantive

14   crimes are also known as the "objects" of the conspiracy.

15          Here, they are:  One, mail fraud; two, honest services

16   mail fraud; three, wire fraud; and, four, honest services wire

17   fraud.

18          The defendants are accused of conspiring to commit

19   these crimes by engaging in a fraudulent scheme to obtain

20   property, specifically, admission to the University of Southern

21   California for their children, and to deprive those

22   universities of their intangible right to the honest services

23   of their athletic coaches and university administrators.

24          Count 2 also charges both defendants with conspiracy.

25   It charges them with conspiracy to commit a different crime,

federal programs bribery.  The defendants are accused of
conspiring to commit that crime by corruptly giving, offering
and agreeing to give something of value to a person, with
intent to influence and reward an agent of an organization that
receives more than $10,000 per year in federal funding, in
connection with any business, transaction, or series of
transactions of the University of Southern California involving
a value of $5,000 or more.

Counts 6, 8 and 9 charge defendant John Wilson with
substantive wire fraud and honest services wire fraud.
Mr. Wilson is accused of committing those crimes by engaging in
a fraudulent scheme to obtain property, in particular,
admission of his daughters to Harvard and Stanford
Universities, and to deprive those universities of their
intangible right to the honest services of their athletic
coaches and university administrators.

Counts 11 and 12 charge defendant Wilson with
substantive federal programs bribery.  Mr. Wilson is accused of
committing that crime by corrupt lively giving, offering and
agreeing to give something of value to a person, with intent to
influence and reward an agent of an organization that receives
more than $10,000 per year in federal funding, in connection
with any business, transaction, or series of transactions
involving anything of value of $5,000 or more.

Count 13 charges defendant John Wilson with filing a

1    false tax return.

2         For each count, the government must prove several

3    things, which we call elements, beyond a reasonable doubt.  I

4    will now give you instructions with respect to each count and

5    its elements.

6         Count 1 charges both defendants with conspiracy.  In

7    particular, it alleges that the defendants, along with others,

8    conspired to commit, quote, mail fraud and honest services mail

9    fraud (and wire fraud and honest services wire fraud), that is,

10:00  10   having devised and intending to devise a scheme and artifice to

11   defraud and obtain money and property, to wit admission to the

12   (University of Southern California), by means of materially

13   false and fraudulent pretenses, representations, and promises,

14   and to defraud and deprive (USC) of (its) right to the honest

15   and faithful services of (its) athletic coaches and university

16   administrators, through bribes and kickbacks, unquote.

17        The objects of the conspiracy charged in Count 1 are

18   mail fraud, honest services mail fraud, wire fraud, and honest

19   services wire fraud.

10:01  20        I now turn to some general instructions regarding

21   conspiracy that apply to both Counts 1 and 2.

22        A conspiracy is an agreement to commit a crime.  The

23   crime of conspiracy is an independent crime, and it is a

24   separate offense from the underlying or substantive crimes that

25   the defendants have allegedly agreed to commit.

1        If there are multiple charged counts of conspiracy,

2   the government does not have to prove that the defendants

3   agreed to commit all of, or even more than one of, the objects

4   in order for you to find them guilty of the conspiracy charge.

5        For example, in the context of Count 1, the government

6   does not have to prove that the defendant then under

7   consideration agreed to commit all four objects of the alleged

8   conspiracy, that is mail fraud, wire fraud, honest services

9   mail fraud, honest services wire fraud, in order for you to

10  find him guilty of the conspiracy charge.  The government must,

11  however, prove that the defendant agreed with one or more

12  persons to commit at least one of the four object crimes, and

13  you must unanimously agree on which object crime that defendant

14  agreed to commit.  In making this determination, you must, of

15  course, consider each defendant individually.

16       It is not a defense to a conspiracy charge that the

17  object of the conspiracy could not be achieved because of

18  circumstances that the conspirators did not know about.  Thus,

19  you may find the defendants guilty of conspiracy even though it

20  was impossible for them to carry out their plan successfully.

21       Remember, however, that in order to find a defendant

22  guilty of the charged conspiracy, you must find that the

23  defendant then under consideration intended to commit one of

24  the object offenses, not some other criminal or non-criminal

25  goal.

The government must prove that the conspiracy specified in the Indictment, and not some other agreement or agreements, even one involving some of the same alleged conspirators, existed at or about the times specified in the Indictment.

A conspiracy requires at least two conspirators.  When a coconspirator becomes a government informant, from that point forward he can no longer count as a conspirator.  Therefore, an agreement between only an informant and one other individual does not constitute a conspiracy.  If the informant and that other individual had entered a conspiracy before the informant began cooperating with the government, the informant's later cooperation does not change that fact, and any actions predating the informant's cooperation may, if you find by the facts proved, be attributed to that conspiracy.

Recall, however, that the Indictment charges both defendants with participation in two overarching conspiracies prized of numerous participants: The fraud conspiracy charged in Count 1, and the bribery conspiracy charged in Count 2.

To find the defendant then under consideration guilty of those counts, you my find that the defendant participated in the conspiracies charged in the Indictment, not some other, possibly smaller conspiracy.

Now, some of the events you have heard about in this case happened outside the Commonwealth of Massachusetts.  There

is no requirement that the entire conspiracy charged in either

Count 1 or Count 2 took place here in Massachusetts, or that

either agreement was entered into here.  For you to return a

guilty verdict on the conspiracy charged in Count 1, however,

you must find that the government has proved by a preponderance

of the evidence that at least part of the conspiracy charged in

Count 1 took place in Massachusetts.

Unlike every other element in this case, venue

requires proof only by a preponderance of the evidence.  That

means you need be convinced only that it is more likely than

not that part of the conspiracy took place in Massachusetts.

That standard of proof does not alter in any way the

requirement that the government must prove every other element

of each count beyond a reasonable doubt.

For you to find a defendant guilty of the conspiracy

charged in Count 1, you must be convinced that, as to that

defendant, the government has proven each of the following

elements beyond a reasonable doubt.

First, that the agreement specified in the Indictment,

and not some other agreement or agreements, existed between at

least two people to commit at least one of the following: Mail

fraud, wire fraud, honest services mail fraud or honest

services wire fraud.  And second, that the defendant willfully

joined the agreement.

With respect to the first element, a conspiracy is an

agreement, spoken or unspoken.  The conspiracy does not have to

be a formal agreement or plan in which everyone sat down

together and worked out all the details.  But the government

must prove beyond a reasonable doubt that those who were

involved shared a general understanding about the crime.  Mere

similarity of conduct among various people, or the fact that

they may have associated with each other or discussed common

interests does not necessarily establish proof of the existence

of a conspiracy, but you may consider such factors.

10:07    The government does not have to prove that the

conspiracy succeeded or that the objects were achieved.  A

conspiracy is complete, and the crime of conspiracy has

occurred, once the agreement to commit the underlying crime has

been reached.

    To act willfully for the purposes of Count 1 means to

act voluntarily and intelligently and with the specific intent

that the underlying crime or crimes be committed; that is to

say, with bad purpose, either to disobey or disregard the law,

not to act by ignorance, accident, or mistake.

10:08    The government must prove two kinds of intent beyond a

reasonable doubt before the defendants can be said to have

willfully joined the conspiracy: An intent to agree and an

intent, whether reasonable or not, that the underlying crime or

crimes be committed.  Proof that the defendant willfully joined

the agreement must be based upon evidence of his own words and

1    actions.

2          You need not find that the defendant then under

3    consideration agreed specifically to or knew about all the

4    details in the crime, or knew every other coconspirator or

5    played a major role, but the government must prove beyond a

6    reasonable doubt that he knew the essential features and

7    general aims of the venture.

8          Even if that defendant was not part of the agreement

9    at the very start, he can be found guilty of the conspiracy if

10:09 10   the government proves that he willfully joined the agreement

11   later.

12          On the other hand, a person who has no knowledge of

13   the conspiracy but simply happens to act in a way that furthers

14   some object or purpose of the conspiracy does not thereby

15   become a coconspirator.

16          As I have previously noted, Count 1 of the Indictment

17   charges the defendants with conspiracy to commit mail and wire

18   fraud, as well as honest services mail and wire fraud.  These

19   crimes are the underlying crimes alleged to have been the

10:09 20   objects of the conspiracy charged in Count 1.

21          As I will explain to you in a moment, mail and wire

22   fraud on the one hand, and honest services mail and wire fraud

23   on the other hand, are different crimes.  Title 18 Section 1349

24   of the United States Code makes it a crime to conspire to

25   commit both mail and wire fraud, and honest services mail and

wire fraud.

I will now explain the elements of the object crimes.

The crimes of mail fraud, described in Section 1341 of Title 18 of the United States Code, and wire fraud, described in Section 1343 of Title 18 of the United States Code, have three elements.  Elements are as follows:

First, that there was a scheme, substantially as charged in the Indictment, to defraud or obtain money or property by means of false and fraudulent pretenses;

Second, that the scheme to defraud involved the misrepresentation or concealment of a material factor matter, or the plan to obtain money or property by means of false or fraudulent pretenses involving a false statement, assertion, half-truth, or knowing concealment as to a material factor matter;

Third, that the defendant knowingly and willfully participated in this scheme with the intent to defraud;

Fourth, that, for the purpose of executing the scheme or in furtherance of the scheme, the defendant caused the United States mail to be used, or it was reasonably foreseeable for the purpose of executing the scheme or in furtherance of the scheme, the United States mail or delivery by a private or commercial interstate carrier (for the mail fraud) or an interstate wire communication (for the wire fraud) would be used.

1       I will now describe the four elements of mail and wire
2   fraud in more detail.
3       The first element that the government must prove
4   beyond a reasonable doubt is that there was a scheme to defraud
5   or to obtain money or property by false and fraudulent
6   pretenses.
7       A "scheme" includes any plan, pattern, or course of
8   action.
9       The term "defraud" means to deceive another in order
10  to obtain money or property by misrepresenting or concealing a
11  material fact.
12      The term "false or fraudulent pretenses" means any
13  false statements or assertions that were either known to be
14  untrue when made or were made with reckless indifference to
15  their truth and that were made with the intent to defraud.  The
16  term includes all actual, direct false statements as well as
17  half-truths, the knowing concealment of facts, and the knowing
18  omission of material facts.
19      The term "property" in this case relates to the
20  admission of students to the Universities.  For purposes of the
21  mail and wire fraud statutes, admission slots are the property
22  of the Universities.
23      It is not necessary for the government to prove that
24  the defendant then under consideration realized any gain from
25  the scheme or that the intended victim, in this case, the

University of Southern California, suffered any loss, so long as the goal of the scheme was to deprive the victim of money or property.  You are not required to agree on the means or a particular false statement that a defendant used to carry out a fraudulent scheme.

Furthermore, there is no requirement that the person or entity deceived be the same person or entity who is deprived of money or property, nor that the particular defendant knew the identity of the fraud victim.

The government is also not required to prove that a particular defendant or defendants originated the scheme to defraud.  A scheme to defraud need not be shown by direct evidence but may be established by all of the circumstances and facts in the case.

The second element of mail fraud and wire fraud is that the false representation or fraudulent failure to disclose relate to a material fact.  A fact or matter is "material" if it has a natural tendency to influence or be capable of influencing the decision of the decision-maker to whom it was addressed.  Put differently, if you find that a fact was intentionally withheld or omitted, you must determine whether the fact was one that a reasonable person might have considered important in making his or her decision, although the government need not prove that anyone actually relied on the statement or omission.

1          The third element of mail fraud and wire fraud is that

2     the defendant knowingly and willfully participated in this

3     scheme with the intent to defraud.  Defendants acted

4     "knowingly" if they were conscious and aware of their actions,

5     realized what they were doing and what was happening around

6     them, and did not act because of ignorance, mistake, or

7     accident.

8          In deciding whether the defendant then under

9     consideration acted knowingly, you may infer that the defendant

10:15 10  had knowledge of a fact if you find that he deliberately closed

11    his eyes to a fact that otherwise would have been obvious to

12    him.

13         In order to infer knowledge, you must find that two

14    things have been established: First, that the defendant was

15    aware of a high probability of the fact in question and,

16    second, that the defendant consciously and deliberately avoided

17    learning of that fact.  That is to say, the defendant willfully

18    made himself blind to that fact.

19         It is entirely up to you to determine whether a

10:16 20  defendant deliberately closed his eyes to a fact and, if so,

21    what inference, if any, should be drawn.  However, it is

22    important to bear in mind that mere negligence or mistake in

23    failing to learn a fact is not sufficient.  You cannot convict

24    the defendant upon a finding that he should have known, or that

25    a reasonable person would have known, an illegal act was taking

1   place.  There must be a deliberate effort to remain ignorant of

2   the fact.

3        The third element of mail and wire fraud requires not

4   only the defendant then under consideration knowingly

5   participated in the scheme, or was willfully blind to it, but

6   also that the defendant acted willfully.  You should not

7   confuse willful blindness, which concerns a defendant's

8   knowledge, with acting willfully, which concerns a defendant's

9   intent, and to which I will turn now.

10:17 10   To act "willfully" means to act voluntarily and

11   intelligently and with the specific intent to do something that

12   forbids, that is to say, with bad purpose either to disobey or

13   disregard the law and not by ignorance or mistake.  Intent may

14   be inferred from the surrounding circumstances.

15        Here, the government must prove that the defendant

16   acted with a specific intent to defraud.  Conversely, if that

17   defendant acted in good faith, he cannot be guilty of the

18   crime.  The burden to prove intent, as with all other elements

19   of the crime, rests with the government.

10:17 20   Intent or knowledge may not ordinarily be proven

21   directly because there is no way of directly scrutinizing the

22   workings of the human mind.  In determining what a particular

23   defendant knew or intended at a particular time, you may

24   consider any statements made or acts done or omitted by that

25   defendant, and all other facts and circumstances received in

1    evidence that may aid in your determination of his knowledge or

2    intent.  You may infer, but you certainly are not required to

3    infer, that a person intends the natural and probable

4    consequences of acts knowingly done or knowingly omitted.  It

5    is entirely up to you, however, to decide what facts are proven

6    by the evidence received during this trial.

7          As to the fourth element of mail fraud and wire fraud,

8    the government must prove that for the purpose of executing the

9    scream or in furtherance of the scheme, the defendant caused to

10:18 10   be used, or it was reasonably foreseeable that for the purpose

11   of executing the scheme or in furtherance of the scheme the

12   mail or an interstate wire communication would be used.

13         A mailing can be via the United States mail or

14   delivery by a private or commercial interstate, such as UPS or

15   FedEx.  An interstate wire communication includes a telephone

16   communication from one state to another, an e-mail transmission

17   or other internet communication, or a financial or wire

18   transaction from one state to another.

19         The mailing or interstate wire communication does not

10:19 20   itself have to be essential to the scheme, but it must have

21   been made for the purpose of carrying it out.  There is no

22   requirement that the particular defendant himself was

23   responsible for the mail or wire communication, that the mail

24   or wire communication itself was fraudulent, or that the use of

25   the mail or wire communication in interstate commerce was

1    intended as the specific or exclusive means of accomplishing

2    the alleged fraud.  But the government must prove beyond a

3    reasonable doubt that the defendant then under consideration

4    knew, or could reasonably have foreseen, that use of the mail

5    or wire communication would follow during the scheme, in

6    furtherance of the scheme, or for the purpose of executing the

7    scheme.

8         As I noted earlier, count one of the Indictment also

9    charges the defendants with conspiracy to commit honest

10:20 10   services mail fraud and honest services wire fraud.

11   Specifically, the defendants are charged with agreeing to

12   deprive the relevant universities of the intangible right to

13   the honest services of their athletic coaches and university

14   administrators.

15        Honest services mail fraud is defined by two statutes,

16   the first of which is the mail fraud statute that I previously

17   noted.  Similarly, honest services wire fraud is also defined

18   by two statutes, the first of which is the wire fraud statute

19   that I previously noted.

10:21 20        The second relevant statute for both crimes is

21   Section 346 of Title 18 of the United States Code, which

22   provides that the term "scheme to defraud", as set forth in the

23   mail and wire fraud statutes - in the context of honest

24   services fraud - includes a "scheme to deprive another of the

25   intangible right of honest services".

Taken together, the mail fraud statute and the honest services fraud statute constitute the offense of honest services mail fraud.  Similarly, taken together, the wire fraud statute and the honest services fraud statute constitute the offense of honest services wire fraud.  The four elements of these offenses are as follows:

First, that the defendant knowingly devised or participated in a scheme to defraud the relevant universities of their intangible right to the honest services of their athletic coaches and/or university administrators, through bribery or kickbacks;

Second, that the defendant knowingly and willfully participated in that scheme with the intent to defraud;

Third, that the scheme to defraud involved the misrepresentation or concealment of a material factor matter, or the omission of a material factor matter, or the scheme involved a false statement, assertion, half truth, or knowing concealment concerning a material factor matter; and

Fourth, that, for the purpose of executing the scheme or in furtherance of the scheme, the defendant caused to be used, or it was reasonably foreseeable that for the purpose of executing the scheme or in furtherance of the scheme, the United States mail or delivery by a private or commercial interstate carrier (for honest services mail fraud) or an interstate wire communication (for the honest services wire

fraud) would be used.

I have already instructed you on elements two, three and four of honest services mail fraud and honest services wire fraud, which are the same as mail fraud and wire fraud, respectively, and I will not repeat those instructions here.

The first element of honest services counts is, however, different.  The first element that the government must prove is that the defendant then under consideration knowingly devised or participated in a scheme to defraud the relevant universities of their right to the honest services of their athletic coaches and/or university administrators through bribery or kickbacks.

As I previously described, a "scheme" is any plan or course of action formed with the intent to accomplish some purpose.  Thus, to find a defendant guilty of this offense, you must find that he devised or participated in a plan or course of action involving bribes or kickbacks given or offered to athletic coaches and/or administrators of the Universities. Without a bribe or a kickback, there cannot be an honest services fraud.

An employee owes a fiduciary duty to his or her employer.  This fiduciary duty is a duty to act only for the benefit of the employer, and not for the employee's own enrichment or benefit.  When an employee devises or participates in a bribery or kickback scheme, that employee

violates his employer's right to his honest services.  This is

because the employee outwardly purports to be working solely

for the employer, but instead has received benefits from a

third party.  The employer is defrauded because the employer is

not receiving what it expects and is entitled to, namely, the

employee's honest services.

        The breach of the fiduciary duty must be by

participation in a bribery or kickback team - which involves

the actual, intended, or solicited exchange of a thing of value

for something else, in other words, a quid pro quo (which is a

Latin phrase meaning "this for that" or "these for those").

The employee or fiduciary and the individuals providing the

things of value need not, however, state the quid pro quo in

express terms.  Rather, the intent to exchange may be

established by circumstantial evidence, based upon the

defendant's words, conduct, acts, and all the surrounding

circumstances disclosed by the evidence and the rationale or

logical inferences that may be drawn therefrom.

        Bribery and kickbacks require the intent to affect an

exchange of something of value for, as applicable here, an

official act, but each payment need not be correlated with a

specific action.  The requirement that there be payment of a

thing of value in return for action is satisfied so long as the

evidence shows "a course of conduct" of things of value flowing

to an employee or fiduciary in exchange for the repeated action

of the employee/fiduciary.  All that must be shown is that
things of value were provided to the employee or fiduciary, or
for his or her benefit, with the intent of securing the action
of the employee/fiduciary in return.

A bribe is simply a payment or other benefit given in
exchange for an employee's provision of influence or favorable
treatment from his employer.  Payments to third parties,
including even employer universities, may qualify as bribes or
kickbacks.

An official act is a decision or action, or action, or
an agreement to make a decision or take an action, on any
matter within the scope of the employee's duties.  The matter
must be specific and focused and involve a formal exercise of
the organization's power.  A decision or action constituting an
official act may include using one's official position to exert
pressure on another official to perform an official act, or
advise another official knowing that such advice will form the
basis for an official act.

The government need not prove that the scheme succeed
he had, or that anything of value was exchanged.  Rather, the
government must only prove that the defendant then under
consideration knowingly devised or participated in a scheme to
defraud the Universities of their right to the honest services
of their employee or fiduciary through bribes or kickbacks.

I'm going to stop at this point and ask my deputy to

```
 1    distribute the verdict form, which you will have when you
 2    retire to the jury room.
 3          All right.  You'll see that this is a court document
 4    entitled "Verdict Form".  It says at the top "We, the jury,
 5    unanimously find".  Then there are eight questions.  We'll go
 6    through them one by one.
 7          The first question says "The defendant under
 8    consideration on the charge of conspiracy to commit mail fraud
 9    (Count 1)", and then there's a place for Mr. Abdelaziz, not
10:30 10   guilty or guilty, and Mr. Wilson, not guilty or guilty.
11          Each successive question refers to a different crime.
12          The second question to wire fraud, as you'll see, as
13    opposed to mail fraud.
14          The third question is honest services mail fraud.
15    Over to page 2, the question has to do with honest services
16    wire fraud.
17          In each place, there's a space to answer as to each
18    defendant guilty or not guilty.
19          Question No. 5, which we haven't gotten to but will in
10:30 20   just a moment, refers to Count 2, and that is the federal
21    programs bribery.  Again, it has a place to check off not
22    guilty or guilty for both of the defendants.
23          Then questions six, seven and eight refer only to the
24    defendant John Wilson.  They do not involve the defendant
25    Abdelaziz.
```

1          Question six, which is broken into three parts, says

2     "The defendant, John Wilson, on the charges of wire fraud and

3     honest services wire fraud with respect to", and they're broken

4     out into three separate matters.  The first one involves the

5     $500,000 wire transfer to a bank account.  It refers to that

6     one.  Then there's a place to check off not guilty or guilty.

7     The second one refers to a telephone call on October 27 of

8     2018.  And the third to a wire transfer on December 11.  Each

9     have a place to check with respect to Wilson not guilty or

10:31 10     guilty.

11          Turning over to the last page, paragraph 7 refers to

12     federal programs bribery, again, broken into two separate

13     subsections, one referring to a $500,000 wire transfer on

14     October 17 of 2018 and the second one on December 11, 2018,

15     again places to check off not guilty or guilty.

16          Finally, paragraph 8 refers or asks the defendant John

17     Wilson on the charge of willfully filing a false tax return and

18     a place for you to check those off.

19          After that, you'll see an instruction that says "Your

10:32 20     deliberations are complete.  The foreperson will sign the

21     verdict form and notify the marshal", et cetera.

22          So what I'd like to you do -- you understand this is

23     the verdict form you'll have in the jury room.  If you'll put

24     it down, we're going to talk about Count 2, which refers to the

25     question No. 5 and the succeeding questions after that.

Count 2 charges both the defendants with a second conspiracy.  In particular, the Indictment alleges that the defendants, along with others, conspired to commit federal programs bribery, that is, quote, to corruptly give, offer and agree to give anything of value to any person, with intent to influence and reward an agent of an organization, to wit, agents of USC, in connection with any business, transaction and series of transactions of USC involving anything of value of $5,000 or more, that is, in exchange for facilitating the admission to USC for the defendants' children, where USC received benefits in excess of $10,000 under federal programs involving grants, contracts, subsidies, loan guarantees, insurance or other forms of federal assistance in any one-year period, unquote.

All of the instructions that I previously given you generally relating to conspiracy in the context of Count 1 apply to Count 2.

Specifically, the government must prove beyond a reasonable doubt that, first, the agreement specified in the Indictment, and not some other agreement or agreements existed between at least two people to commit the crime of federal programs bribery and, second, the defendant then under consideration willfully joined the agreement.

In addition to those two elements, the conspiracy charged in Count 2 requires proof of a third element, namely,

1    that at least one of the members of the conspiracy committed an

2    overt act in furtherance of it.

3         The venue requirement for Count 2 is slightly

4    different than for that for Count 1.  For you to return a

5    guilty verdict on conspiracy charged in Count 2, you must find

6    that the government has proved, by a preponderance of the

7    evidence, that an overt act in furtherance of the conspiracy

8    charged in Count 2 occurred in Massachusetts.

9         I will now provide you with instructions regarding the

10   elements of the underlying crime of the conspiracy charged in

11   Count 2, federal programs bribery.

12        As previously noted, Count 2 of the Indictment charges

13   both defendants with conspiracy to commit the underlying

14   offense of bribery relating to an organization that receives

15   federal funds in violation of Section 666(A)(2) of the United

16   States Code.  The elements of the underlying offense of federal

17   programs prescribe that the government must prove beyond a

18   reasonable doubt are as follows:

19        First, that at the time alleged in the Indictment,

20   Donna Heinel and Jovan Vavic were agents of USC;

21        Second, that in a 1 year period, USC received federal

22   benefits in excess of $10,000;

23        Third, that the defendant then under consideration

24   gave, agreed to give, or offered something of value to

25   Ms. Heinel or Mr. Vavic;.

1          Fourth, that that defendant acted corruptly with the

2     intent to influence or reward Heinel -- rather, Miss Heinel or

3     Mr. Vavic with respect to a transaction or series of

4     transactions at USC;

5          And, fifth, that the value of the transaction or

6     series of transactions to which the payment related was at

7     least $5,000.

8          As to the first element, an "agent" is a person

9     authorized to act on behalf of another person or organization.

10:36 10   Employees, partners, directors, officers, managers and

11    representatives are all agents of the organization with which

12    they are associated.

13         As to the second element, the government must

14    establish that USC received, during a 1 year period, benefits

15    in excess of $10,000 under a federal program involving a grant,

16    contract, subsidy, loan guarantee, insurance or other form of

17    federal assistance.  This does not include valid bona fide

18    salary, wages, fees or other compensation paid or expenses paid

19    or reimbursed in the ordinary course of business.

10:37 20   As to the third element, the government must prove

21    that the particular defendant gave, agreed to give, or offered

22    something of value to an agent of USC as alleged in the

23    Indictment.  The statute makes no difference between offering

24    or giving a bribe and the mere offer of a bribe is just as much

25    a violation of the statute as the actual giving of one.  The

1    thing of value may be tangible property, intangible property or

2    services, of any dollar value, so long as it has value.

3         It is not necessary that the payment be made directly

4    to the agent.  If the payment was made to a third party or a

5    conduit for the purpose of influencing the agent, that is

6    sufficient to satisfy this element.

7         With respect to the fourth element, the government

8    must prove that the defendant then under consideration gave,

9    agreed to give, or offered something of value to the recipient

10:38 10   knowingly and corruptly and with the intent to influence or

11   reward the recipient's actions in connection with some business

12   or transaction of USC.

13        To act corruptly means simply to act voluntarily and

14   intentionally with an improper purpose or purpose to influence

15   or reward the recipient's actions.  This involves conscious

16   wrongdoing or, as it has sometimes been expressed, a bad or

17   evil state of mind.

18        In considering this element, remember that it is the

19   defendant's intent, at least in part, to influence the

10:38 20   recipient's actions that is important, not the subsequent

21   actions of the recipient or the organization.  Thus, the

22   government does not have to prove that the recipient accepted

23   the bribe offer or that the bribe actually influenced the final

24   decision of the agent or USC.  It is not even necessary that

25   the recipient had the authority to perform the act that the

1   defendant sought.

2        As to the fifth element, the government must prove

3   beyond a reasonable doubt that the value of the transaction to

4   which the payment related was at least $5,000.  To establish

5   this element, the government must prove that the particular

6   defendant intended to influence or reward the recipient in

7   connection with any business or transaction or series of

8   transactions of USC involving anything of value of $5,000 or

9   more.  If you find that the business or transaction in question

10:40 10   had a value of at least $5,000, this element is satisfied.

11        The government is not required to prove that the

12   defendant paid or offered at least $5,000.  It is the value of

13   the business or transaction that the bribe was intended to

14   influence or reward that is important for the purpose of this

15   element.

16        Now, as to Counts 6, 8 and 9, those counts of the

17   Indictment charge the defendant Mr. Wilson with substantive

18   counts of wire fraud and honest services wire fraud.

19        Count 6 charges defendant Wilson with wire fraud and

10:40 20   honest services wire fraud in connection with a $500,000 wire

21   transfer on or about October 17, 2018, to a bank account in the

22   name of the Key Worldwide Foundation.

23        Count 8 charges the defendant, Mr. Wilson, with wire

24   fraud and honest services wire fraud in connection with an

25   October 27, 2018 telephone call with William "Rick" Singer.

Count 9 charges the defendant, Mr. Wilson, with wire fraud and honest services wire fraud in connection with a $500,000 wire transfer on or about December 11, 2018, to a bank account in the name of the Key Worldwide Foundation.

In explaining the conspiracy charged in Count 1 and the objects of that conspiracy, I have previously instructed you on the elements of wire fraud and honest services wire fraud. I will not repeat those instructions here.

As to Counts 11 and 12 of the Indictment, they charge the defendant, Mr. Wilson, with substantive counts of federal programs bribery.

Count 11 charges the defendant, Mr. Wilson, with federal programs bribery in connection with a $500,000 wire transfer on or about December 11, 2018, to a bank account in the name of the Key Worldwide Foundation for the benefit of the sailing coach at Stanford University.

Count 12 charges the defendant, Wilson, with federal programs bribery in connection with a $500,000 wire transfer on or about December 11, 2018, to a bank account in the name of the Key Worldwide Foundation for the benefit of a fictitious senior women's administrator at Harvard University.

I have previously instructed you on the elements of federal programs bribery. I will not repeat all of those instructions here. However, I will remind you of the five elements that the government must prove in the context of

1    Counts 11 and 12 of the Indictment, which are:

2         First, as to Count 11, that at the time alleged in the

3    indictment, the sailing coach of Stanford university was an

4    agent of Stanford, and as to Count 12, the defendant believed

5    that the fictitious "senior women's administrator" was an agent

6    of Harvard;

7         Second, that in a one-year period, Stanford, as to

8    Count 11, and Harvard, as to Count 12, each received federal

9    benefits in excess of $10,000;

10:43 10        Third, that the defendant gave, agreed to give, or

11   offered something of value to an individual who he believed to

12   be an agent of Harvard, as to Count 11 -- I'm sorry -- an agent

13   of Stanford as to Count 11 and Harvard as to Count 12;

14        Fourth, that the defendant Wilson acted corruptly with

15   the intent to influence or reward an agent of Stanford, as to

16   Count 11, and an agent of Harvard, as to Count 12, with respect

17   to a transaction or series of transactions of the respective

18   universities;

19        And, five, that the value of the transaction or series

10:44 20   of transactions to which the payment related was at least

21   $5,000.

22        Finally, Count 13 of the Indictment charges defendant

23   Wilson with willfully filing a false federal income tax return.

24        For you to find Mr. Wilson guilty of that charge, the

25   government must prove each of the following elements beyond a

reasonable doubt:

First, that the defendant Wilson made or caused to be made a federal income tax return for the year in question, namely 2014, that he verified to be true;

Second, that the tax return was false as to a material matter;

Third, that Wilson signed the return willfully and knowingly -- knowing that it was false;

And, fourth, that the return contained a written declaration that it was made under the penalty of perjury.

A "material" matter is one that is likely to affect the calculation of tax due and payable, or to affect or influence the Internal Revenue Service in carrying out the functions committed to it by law, such as monitoring and verifying tax liability.  A return that omits material items necessary to the computation of taxable income is not true and correct.

I have previously instructed you as to the meaning of the term "willfully" but, just to remind you, it means to act voluntarily and intelligently and with the specific intent to do something that the law forbids, that is to stay, with bad purpose either to disobey or disregard the law and not by ignorance or mistake.

Recall that intent may be inferred from the surrounding circumstances, and that if the defendant then under

consideration acted in good faith, he cannot be guilty of the

crime.  Again, the burden to prove intent, as with all other

elements of the crime, rests with the government.

You'll be glad we are now at part three.

When you go to the jury room to begin considering the

evidence in this case, the foreman, Mr. Ayles, will assure that

every juror is present during all of your deliberations and

that all jurors, the foreman included, will have equal and full

opportunity to participate in your deliberations.

All of the exhibits that have been admitted into

evidence will be able to you physically and you will be able to

listen to the audio recording dollars, if you choose.  There is

also a large, touch-screen computer in the jury room upon which

you will be able to access the exhibits and the Indictment

electronically.

I am told that operating the machine is very simple.

If you have any difficulty understanding the technology, you

can access a short tutorial film by pressing a button in the

lower left-hand corner of the screen.

Once you are in the jury room, if you need to

communicate with me, the foreman will send a written signed

message to me.  If you do send a written message to me, I will

discuss it with counsel for both sides before responding to

you, so please continue your deliberations to the extent you

are able during the time it takes me to respond to your

question.  Do not stop your deliberations while you wait for a

responsibility, and do not tell me how you stand, either

numerically or otherwise, on any issue before you, until after

you have reached a verdict.

On matters touching simply on the arrangements for

your meals, schedule and convenience, you are free to

communicate with the marshal orally rather than in writing.

You are not to communicate with anyone other than me about the

case, however, and then only in writing.

I have read to you what is called a verdict form.  The

verdict form is simply the written notice of the decision that

you reach.  You will have the original and copies of this form

in the jury room with you and, when you have reached your

verdict, you will have your foreman fill in, date, and sign the

original to state the verdict upon which you agree.

You will then report in writing to the marshal that

you have reached a verdict, after which you will be invited to

return with your verdict to the courtroom.

Your verdict of not guilty or guilty must represent

the individual verdict of each juror as to whether or not each

element of the charge against the defendant then under

consideration is proved beyond a reasonable doubt.  Your

verdict must be unanimous.

It is my practice, absent special circumstances, to

allow a jury to recess before dinner and begin deliberations

1    again in the morning of the next regular court day.  In this

2    case, that would be tomorrow, Friday.

3           It is not quite time for you to start deliberating.  I

4    will have a sidebar conference with counsel and you may be at

5    ease for a few minutes.  I will then return with a final

6    instruction to give to you before you retire to deliberate.

7           I will see counsel at sidebar.

8                    *** BEGINNING OF SIDEBAR ***

9           THE COURT:  This is on behalf of defendant Abdelaziz.

10   Mr. Smart?

11          MR. SHARP:  Sharp.

12          THE COURT:  Excuse me, Mr. Sharp.

13          MR. KENDALL:  We will join in each other's objections,

14   your Honor.

15          THE COURT:  Okay.  Mr. Sharp.

16          MR. SHARP:  We object to the statement as to the

17   essential wiretaps being unlawful for the reasons stated in the

18   briefing.

19          We object to the Court not instructing on pretrial

20   publicity.

21          We think the Court misstated during the instruction on

22   reasonable doubt, that the defendant has a burden to prove

23   something.  I believe that was a misstatement.  We all heard

24   that.

25          THE COURT:  What was it that you heard?

| | |
|---|---|
| 1 | MR. SHARP:  That your Honor said the defendant, |
| 2 | misspoke. |
| 3 | LAW CLERK:  It was the settled conviction language, I |
| 4 | believe, your Honor.  Essentially, instead of saying "do not |
| 5 | have a settled conviction", I believe it was "you have a |
| 6 | settled conviction". |
| 7 | THE COURT:  Do you have a page? |
| 8 | MR. KENDALL:  It was right after the presumption of |
| 9 | innocence, your Honor, when you said there was no burden on the |
| 10:51 10 | defendant. |
| 11 | MR. SHARP:  Should I continue? |
| 12 | We object to the description of the conspiracy.  It's |
| 13 | not the conspiracy alleged in the indictment.  The conspiracy |
| 14 | alleged in the indictment related to the SAT, test cheating, |
| 15 | other matters, other universities, Georgetown.  The government |
| 16 | has the burden of proving the conspiracy alleged in the |
| 17 | indictment and not some other conspiracy. |
| 18 | THE COURT:  I thought I said that about six times. |
| 19 | MR. SHARP:  Well, your Honor, we object to the not |
| 10:52 20 | discussing the SAT test cheating and the other universities at |
| 21 | issue in Count 1.  Count 1 is broader than USC. |
| 22 | We object that the Court -- |
| 23 | THE COURT:  Is that going to be redacted from the |
| 24 | version of the indictment that goes to the jury? |
| 25 | MR. KENDALL:  It hasn't been. |

1          THE COURT:  I thought you had an agreement as to what
2     was and what was not redacted?
3          MR. SHARP:  We don't believe it should be redacted.
4          MR. KENDALL:  It shouldn't be.  They've alleged this
5     overarching conspiracy.  They can't prove a smaller count of
6     USC.  They have to prove this overarching conspiracy.
7          MR. SHARP:  We object to the honest services
8     instruction that the defendant has to intend that a fiduciary
9     duty to be breached.
10:52 10        We object to the instruction that all employees owe
11    fiduciary duties to their employer.
12         We object to the failure to give a spoliation charge,
13    a failure to give a collect evidence charge, failure to
14    adequately instruct on good faith, including the instruction
15    that the government bears the burden of proving the absence of
16    good faith beyond a reasonable doubt and the defendant does not
17    bear any burden on good faith, failure to instruct collective
18    knowledge as set forth at docket 2015, failure to remind the
19    jury that Singer's testimonial statements cannot be used as
10:53 20   evidence, including as evidence of venue when he says "I am in
21    Boston", failure to refer to AUSA's Frank statements that
22    e-mails sent by Singer could prove defendants' knowledge when
23    only the defendants' actions and words can prove their intent
24    to join the conspiracy.
25         We object to permitting the jury to consider whether

1    there is venue in this case on Count 2 when there is no factual

2    predicate for venue on Count 2, especially in light of AUSA

3    Frank's closing argument referring to a tax filing from Lynn

4    Massachusetts which relates to a separate tax charge;

5    permitting the jury to consider a theory of conviction based

6    upon one part of an entity, the Athletics Department of USC,

7    defrauding another part of the same entity, the Admissions

8    Department of USC.  We believe this theory of conviction is

9    contrary to law.

10:54 10       We object to permitting the jury to consider a theory

11   of conviction for 666 bribery and honest services fraud where

12   there is no factual support because the government failed to

13   establish what, if any, honest services Donna Heinel or Jovan

14   Vavic owed to the University of Southern California; permitting

15   the jury to consider theories on conviction on Counts 1 and two

16   that the defendants entered into an overarching coast to coast

17   conspiracy when there has not been sufficient factual

18   foundation established at trial.

19       We object to the instruction on multiple conspiracies

10:55 20   to the extent inconsistent with that set forth at docket 2015.

21       For both counts, failure to provide a condonation

22   instruction when such instruction was warranted.  We object to

23   the Court's failure to object to both theories of condonation

24   as set forth in United States versus *Joslin* 206 F.3rd 144:

25   First, that condonation goes to intent and, second, that there

could be no scheme to defraud where the purported victim knew

of the fraud and, in fact, benefitted from it.  The jury should

have been able to consider this theory for Count 1 and Count 2,

property fraud, honest service fraud.

For Count 1 in particular, failure to instruct on the

overt act requirement; failure to instruct that an admissions

slot is not property or, in the alternative, not submitting the

question to the jury of whether an admissions slot is property;

failure to permit the jury to consider whether the

co-conspirators owed a fiduciary duty to USC, but instead

finding that because the co-conspirators were employees, they

necessarily fiduciaries; for the honest services count,

permitting the jury to consider a theory of honest services

that is contrary to law that a payment to a USC athletic

program is a bribe or kickback when the entity that was

purportedly deprived of its honest services was the University

itself; permitting the jury to consider a theory of conviction

that there could be honest services fraud where a payment is

made to a fund controlled by a coconspirator or where a

coconspirator benefits professionally from such payments, even

where it is made to an victim entity when there is no factual

predicate in the record.

We object to the failure to instruct the jury that

intent to deceive alone is not enough for honest services

fraud; that a payment to the entity deprived of its honest

services cannot be a bribe or kickback under the *Skilling* case;

that a bribe requires a private payment or private gain

personal benefit of the employee or some third party that is

not the victim entity; that salary, wages, psychic benefit,

such as basking in superior's praise or collateral professional

benefit cannot be the bribe or kickback itself; that a gratuity

is not by bribe or kickback; that foreseeable harm is an

element of honest services fraud; failure to adequately

distinguish for the jury between a legal and illegal quid pro

quo, therefore, permitting the jury to convict the defendant on

proof of a legal quid pro quo.

Objection to the instruction that a bribe can be a

payment to a victim as contrary to establish law.

Count 2, failure to clearly instruct on the corrupt

element of the statute, meaning that under the Court's

instructions, the jury could convict the defendants for what

was a legal quid pro quo.

Failure to properly describe a bribe as a payment to a

particular individual -- actually, strike the last part.

Failure to properly define a bribe as something other

than a payment to the victim, an entity that would benefit the

victim; failure to state the bribe requires private payment or

private gain or personal benefit to an employee; that a

gratuity is not a bribe; that a psychic benefit basking in

superior's praise, collateral professional benefit, et cetera,

1  cannot be a bribe or kickback; failure to instruct that

2  foreseeable harm is an element of the statute; failure to

3  instruct an official act is an element; failure for both

4  Counts 1 and two, failure to provide the specific intent

5  instructions set forth at docket 2015.

6      The Court did not instruct that "corrupt intent" means

7  the defendant knew that he was making a bribe, which permitted

8  the conclusion that purely legal contact and legal quid pro

9  quos, that the jury could convict the defendants for making

10:59 10  purely legal conduct, including purely legal quid pro quos, and

11  the Court did not specifically instruct on good faith with

12  respect to Count 2.

13      That's all I have, your Honor.

14      MR. KENDALL:  Your Honor.

15      THE COURT:  Wait a minute.  So what are you saying?

16  At the end of this with respect to reasonable doubt, I was to

17  say reasonable doubt exists when after weighing and considering

18  all the evidence using reason and common sense jurors cannot

19  say that they have a settled conviction on the truth of the

11:00 20  charge?

21      MR. SHARP:  I believe you left out the word "cannot",

22  your Honor, in your oral remarks.

23      THE COURT:  So I said "jurors can"?

24      MR. SHARP:  I think it was the opposite of whatever it

25  was.  It was either "can" or the word is missing.

```
 1              THE COURT:  Let me hear the rest.  I take it
 2    Mr. Kendall wants to add.
 3              MR. KENDALL:  Yes, your Honor.
 4              MR. SHARP:  For the record, we join in defendant
 5    Wilson's forthcoming objections.
 6              MR. KENDALL:  And we join in Aziz's.  I may have some
 7    redundancy because I haven't organized my notes as well as I'd
 8    like.
 9              I think he raised issue of misspeaking about the
10    burden is on the defendant to provide evidence.
11              I believe the language you used "settled conviction of
12    the truth of the charge when giving reasonable doubt".  This is
13    Mr. Levy, who is assisting me on the jury charge, your Honor.
14              MR. LEVY:  Yes.  Similar instance.
15              THE COURT:  What are are we talking?
16              MR. KENDALL:  The Court in referring to settled
17    conviction of the truth of the charge.
18              MR. LEVY:  This is the issue we were just discussing.
19    "Cannot" is I believe what was left out.  That's what we heard.
20              THE COURT:  All right.
21              MR. KENDALL:  With respect to -- you gave the
22    instruction it's not against the law to donate money to a
23    university in the hope that admission would be more likely.  I
24    don't think that's strong enough, your Honor.  We need an
25    instruction that says there's nothing against the law to donate
```

11:00 at line 10

11:01 at line 20

money to a university in order to influence an admission
decision.  That's clearly what my client was told about the
president of Harvard.  We think that was clearly Miss Chassin's
testimony.  It has to be much stronger than a hope.  It can be
to influence an admission decision, if that's what a school
willing to do.

Your Honor, with respect to all of the honest services
charges in both the conspiracy and the substantive counts, to
obtain admission to USC or to obtain admission to a university,
as we discussed with you before, was not property.  We view it
as recognized under the mail or wire fraud statutes.  That will
be every time that issue comes up with each of the counts with
our client.

MR. LEVY:  For the record, your Honor, Mr. Kendall is
referring both to the wire fraud statute as well as honest
services statute.  Both charges.

MR. KENDALL:  For the mail as well.  For all of the
fraud statutes.

With respect to Harvard and Stanford, we think there
has to be some definition of what's the intangible right to the
honest services of the coach and administrator.  There's no
guidance to them and there's no evidence really to say what
their relationship was, what they owed to the University, what
did the University expect from them.  We had a little bit of
that at USC where Chassin said coaches -- there's no rule to

1    prohibit a coach from taking into effect a donation, but we

2    don't have any guidance of any kind for Harvard and Stanford.

3          With respect to every time the issue of bribery came

4    up, both with respect to the mail and wire fraud statutes as

5    well as the federal program bribery statute, I think the Court

6    has to give direction that they have to show that in order to

7    be a bribe, that the money benefitted the individual personally

8    in a corrupt way and to the detriment of their employer.

9          You know, it is the issue that we have fought over,

11:03 10   your Honor.  He obviously have to incorporate our briefing on

11   this, but a donation to the university's bank account or to the

12   university's program can in no way be a bribe for either

13   federal program bribery or any of the fraud statutes for the

14   conspiracy or substantive.  When you said you corruptly give

15   something of value to a person with respect to the program

16   bribery statute, I think we have to clarify that it goes to the

17   person and not the university.

18          Again, whenever the phrase "bribes" or "kickbacks"

19   come up, we think that's the same issue.  Whenever any fraud

11:04 20   statute, the issue of property comes up, it has to be indicated

21   that admission to USC or admission to any university is not

22   sufficient.

23          We do believe impossibility is a defense.  The Court

24   did not give that instruction.  You indicated you were not

25   going to.  We believe in impossibility and legal impossibility,

1    issues that we raised with you earlier.  Both should have been

2    included.

3                MR. LEVY:  Your Honor, with respect --

4                THE COURT:  Is there a double team?

5                MR. KENDALL:  If I have the time, I'll take my notes.

6                THE COURT:  In this case, I'll let it go.

7                MR. LEVY:  Understood, your Honor.  I'll be very

8    brief.  With respect to your Honor's initial description of

9    federal program bribery in the overview of the counts, you

11:05 10   referenced that $10,000 in federal funding was required as

11   opposed to benefits.  We object to that.  The cite for that is

12   *Fernandez* case 915 F.3rd 2 through 4.

13               With respect to your Honor's statement in discussing

14   the fraud counts that concealment or omission could form a

15   basis for liability, we incorporate our prior papers, ECF 2076

16   at 17, that there was no --

17               THE COURT:  Keep your voice down.  High enough so heck

18   she can hear you but low enough so the jury isn't party to this

19   conference.

11:06 20         MR. LEVY:  Your Honor, with respect to materiality, we

21   object to the Court's description that a reasonable person's

22   standard applied.  We believe that, under the *Apalon* case, it

23   is actually -- the standard is the decision-maker itself and

24   the information that they would want as opposed to a reasonable

25   person.

1          We object to a willful blindness instruction that was

2     given.  Our papers are ECF 2078 at 18.

3          On the fiduciary duty issue, we believe that, as a

4     matter of law, the jury should have been instructed that state

5     law controls whether or not an individual is a fiduciary as

6     opposed to federal law.  And we believe that issue is left open

7     in *Skilling* and incorporate our prior briefing on that.

8          Alternatively, excuse me, at one point your Honor had

9     said an employee or fiduciary in discussing quid pro quo with

11:07 10     reference to the honest services charge.  We object.  It would

11     have to be a fiduciary.

12          We object to the official act requirement not being

13     included with respect to the federal program bribery charge and

14     the *Martinez* case that we cited our papers on that you

15     discussed this morning.  They're incorporated there.

16          With respect to the official act requirement, your

17     Honor did not include the language from *McDonough* where the nap

18     out case 332 F. sub 533 clarifying that an official act needed

19     to be something like a contract filing a lawsuit or something

11:07 20     like that.

21          With respect to federal program bribery and your

22     Honor's instructions regarding gives offers, agrees to give, we

23     believe the jury should have been instructed that an offer is

24     not an offer unless the counterparty actually receives the

25     message, so to speak.

```
 1              Same thing with the agreeing to give.  We believe your
 2    Honor should have instructed there is no agreement to give
 3    unless the counterparty has solicited the actual counterparty
 4    and the actual defendant at issue, in turn, agreed to give a
 5    bribe.
 6              With respect to your Honor's description of
 7    willfulness, in particular for Count 13, we object to it not
 8    being put into language in pattern instructions.  The pattern
 9    is 4.267206.  It's the violation of a known legal -- voluntary
10    violation of a known legal duty.
11              MR. KENDALL:  It's the elevated level of intent for
12    tax charge, your Honor.
13              MR. LEVY:  Your Honor, with respect to the tax count,
14    we believe the jury should have been instructed on the specific
15    theory that the government has restricted itself to in this
16    case, namely, the issue that Jovan Vavic was bribed and,
17    therefore, the deductions were improper or, alternatively, that
18    the deductions at issue were not true business expenses.
19              One moment, your Honor.  With respect to aiding and
20    abetting, we understand the government has taken the position
21    that the jury should not be instructed on that, however, our
22    position is that the jury should be affirmatively instructed
23    that aiding and abetting cannot form the basis for a conviction
24    in this case.
25              With respect to official act, your Honor, we believe
```

1    the jury should have been expressly instructed that, as a

2    matter of law, merely expressing support or writing a letter of

3    recommendation cannot be an official act and that the Court

4    should give guidance on what requires pressure for the federal

5    programs bribery statute.  Our citations are the *Jefferson* case

6    289 F.3rd 717, as well as the Third Circuit's decision in

7    *Falter* 914 F.3rd 112.

8         With respect to the honest services charges against

9    Mr. Wilson in particular, we believe your Honor should have

11:10 10  instructed that the jury had to find beyond a reasonable doubt

11   that there was, in fact, a SUBCO like process that existed as

12   those institutions and that the defendant, at a minimum, knew

13   facts under which he believed the employees at issue were

14   fiduciaries under Massachusetts and California law,

15   respectively.

16        We also object to not having a venue instruction that

17   mentioned a preponderance of the evidence with respect to

18   Count 1 which lines up with our position that an overt act is

19   required and the First Circuit has not resolved the issue

11:11 20  definitely whether an overt act is required for wire fraud.

21        MR. KENDALL:  Your Honor, I have a few others.

22   When you gave --

23        THE COURT:  Who is this on behalf of?  Whose was his

24   on behalf of?

25        MR. KENDALL:  We're doing it jointly, your Honor.  I

1     did not have time to go through my notes.

2            THE COURT:  Okay.

3            MR. KENDALL:  You gave an instruction about the false

4     statement that you said that the government has to prove that

5     there's a false statement that relates to a material fact.  I

6     thought you had indicated yesterday you were not going to use

7     the "relate to" language, it would have to be a false statement

8     about a material fact.

9            Second, your Honor, with the willful blindness

11:11 10   instruction, I'm not sure if this was said or not.  I don't

11    believe I heard that you said they cannot use willful blindness

12    to consider whether someone joined a conspiracy.  It can only

13    be used for other issues about, but not whether or not they

14    joined the conspiracy.

15           With respect to -- let me go through my notes.

16           With respect to the definition of the fiduciary duty,

17    you instructed that the employee has a fiduciary duty only to

18    act for the benefit of the employer, your Honor.  I think the

19    fiduciary duty has to be defined by the actual expectations or

11:12 20   requirements of the individual in the applicable state law, but

21    also their contract and the customs and practices of the

22    institution.

23           With respect to participation of the kickback and

24    bribery scheme, we made a reference that they have to prove

25    that they received benefits from a third party.  I think it has

1    to be that it's actually a corrupt bribe, as we previously

2    described it in the traditional terms.

3         When you defined "breach of fiduciary duty", you used

4    the quid pro quo language, which we've already discussed, we

5    think is not adequate to show there's sufficient corrupt intent

6    and deprivation of the interests of the principal in the

7    fiduciary relationship.

8         Again, when you said "they need not state the quid pro

9    quo in express terms", given the problems with the quid pro quo

11:13 10   and definition of bribery, we think that was improper as well.

11        Then you instructed that the bribes and kickbacks are

12   required or in exchange for an official act.  Again, your

13   Honor, it's the definition of bribes and kickbacks for an

14   official act.  They are donations and would not be a violation

15   of any of the fraud statutes or the bribery statutes.

16        You used the language "in the course of conduct of

17   things of that value that flow to the employee or fiduciary".

18   Again, the issue of whether or not the donation to the

19   University could be included in that or not we object to.

11:14 20   Again, a bribe is simply a payment to or payments to

21   third parties, even to the employing university, we object to.

22   Any official act that's any matter within the scope, including

23   the formal exercise of the organization's power, but then you

24   said "to advise another official to take an official act would

25   be within that scope", and we think that language "to advise

another" -- you said to "exert pressure or advise another

official to take some action".  We think that's beyond what the

law allows.

We've objected to the verdict form already.  You're

aware of our objections.

Then, your Honor, in discussing the federal bribery

statute, the Court gave instructions the defendants gave

something of value to Heinel and Jovan Vavic and they acted

corruptly to reward or to influence, Heiel and Vavic.  They

offered to give a bribe and, your Honor, that's again bribery

language we've discussed before.

I think when the Court gave the instruction if the

money was paid to a third party or a conduit, it creates some

ambiguity, because if the third party is the university, that's

not something prohibited by the statute.

I'm towards the end, your Honor.  I thank you for your

patience.

You spoke about a bad or evil state of mind about what

the jury is to consider.  Again, I think that raises the issue

of whether the money is going to the University and that's not

within the scope of a bad or evil state of mind.

Same thing with the influence or received, to

influence or receiver the recipient.  We have to put in that

it's the corrupt personal benefit.

Your Honor, I think you misspoke on one of the

```
 1    instructions.  When you were talking about Counts 11 and 12,

 2    the money I think you said for both of them was transferred

 3    both times in December 2018.  I think one it was October 2018

 4    and the other time it was December.  I think it was just a

 5    misspeaking.

 6            Then when you gave the elements of the federal program

 7    bribery for Counts 11 and 12, you said "give benefits to an

 8    agent and reward an agent".  Again, we think it raises the

 9    issue it has to be corrupt bribery for the benefit of the

10    person, as we extensively discussed.

11            Mr. Levy raised with the tax charge.  We think you

12    have to instruct them that they have to prove that Mr. Wilson

13    intentionally violated a known legal duty for a tax charge.

14            This is my last few issues, your Honor.

15            Your Honor, we do object to the narrowing of Count 1

16    to just USC given the Kodiakas issues and the Petriezzello

17    issues.  I think the government has to meet the burden that

18    it's assumed.

19            You said that the agent did not have to have the

20    actual authority to do the acts that were asked of them.  We

21    believe that it should be the opposite of that.

22            Then if I can just go through my last few notes, your

23    Honor.

24            The definition that a conspiracy should be two or more

25    people, we raised that with you before, your Honor.  Given the
```

1    nature of the conspiracies, they involve far more than two

2    people and it should not be limited to just two or more people.

3         The Court used concealment language.  I don't know if

4    the Court used omissions.  The Court used concealment and

5    omissions and half-truths of material facts.  I don't think

6    those are at issue in this case and I don't think that would be

7    the appropriate language to instruct the jury on.  Same with

8    respect to a false statement, assertion of a half-truth,

9    knowing concealment, without saying that they must be material

11:19 10   if those things did occur.  In addition, we object to them

11   being said.  If they did occur, they have to be about something

12   that's a material fact.

13        I believe upon your instruction, your Honor, the case

14   has been narrowed to they have to prove that there was a

15   falsified athletic profile as part of any scheme or artifice to

16   defraud or as part of any bribery scheme.  That's how they've

17   narrowed it, and I believe that's how your court order had

18   recognized it.  I think the jury has to be instructed for that

19   for each one they have to prove that there's a falsified

11:20 20   athletic profile for every count in the case, even with the tax

21   one, because the tax one turns on whether or not there was a

22   bribe or improper payment made, violation of federal bribery

23   law.

24        MR. LEVY:  Your Honor, lastly, with respect to the

25   honest services counts at issue in this case, both the

conspiracy and the substantive counts, we believe the jury

should have been instructed that the relevant honest services

are controlled by the customs, practices and policies of the

Athletic Department, which is where the employees the issue

either worked or supposedly worked.

MR. KENDALL:  For USC.  And then for wherever the

senior women's administrator and the Stanford coach worked.

Done?

MR. LEVY:  Yes.

MR. KENDALL:  Thank you for your patience, your Honor.

THE COURT:  Government?

MR. FRANK:  Does your Honor want me to respond to

anything specifically?

THE COURT:  This is for the benefit of the parties.

You're free to say anything you want.

MR. FRANK:  May I have one moment, your Honor?

THE COURT:  Yes.

MR. KENDALL:  Your Honor, when Mr. Frank returns, we

have one other thing to mention.

THE COURT:  Mr. Frank.

MR. FRANK:  Your Honor, we don't believe there's been

an improper narrowing of the charges the Court laid out the

scope of the conspiracy.  We believe the conspiracy was

accurately set forth by the Court and there was evidence of the

manner in which the conspiracy set forth, so we don't believe

1    there's anything to correct there.

2           With respect to the allegations, the suggestion that

3    the Court misspoke at a couple of points in the giving of the

4    charge, we believe that -- we didn't hear that and if the Court

5    is inclined to correct something, we would suggest that we

6    first check with the court reporter rather than unnecessarily

7    draw attention to one component of the charge over other

8    components of the charge, which we believe would be the

9    consequence of revisiting those things.

11:22 10          With respect to everything else, we'll rest on our

11   papers and the Court's prior orders.

12          MR. SHARP:  We don't object to checking with the court

13   reporter of course, if it can be done.

14          With respect to the Indictment, the copy of the

15   Indictment that the jury will receive that we agreed upon,

16   those have allegations with respect to Georgetown, other

17   universities, the SAT, the ACT.  When the Court instructed the

18   jury on what the indictment charge, the Court did not include

19   those allegations and we do feel strongly that what is in the

11:23 20   indictment must be proved and that to the extent the jury might

21   be confused that those allegations appear in the indictment but

22   the Court did not refer to them.

23          THE COURT:  Do you wish to respond to that, Mr. Frank?

24          MR. FRANK:  The indictment charged the defendants

25   inspired to improperly gain admission to universities through

various manners and means as set forth in the indictment.  We

believe the evidence showed that in the scope of the

conspiracy.

THE COURT:  All right.  Thank you.

MR. KENDALL:  Your Honor, we have a couple other

things.

We object to the instruction that an official act is

anything within the scope of the agent's duties or actions.  We

think there's a much higher standard we covered in the briefing

that we filed with the Court.

May Miss Papenhausen articulate anything?

THE COURT:  No.

MR. KENDALL:  You gave an instruction that the

official act could be something done in exchange for

facilitating for the admission when defining the $5,000

requirement.  You said the official act could be in exchange

for facilitating the admission of the defendants' children.  We

don't believe facilitating is an official act.

Thank you for your patience, your Honor.

THE COURT:  All right.  I'm going to check with the

court reporter on one matter.  Thank you, counsel.

*** END OF SIDEBAR ***

THE COURT:  All right, members of the jury.  You

probably noticed there are 15 of you and only 12 in a jury.

The last three jurors seated in the jury box way back when we

1    began this 3 weeks ago are alternates.  That doesn't mean that

2    their job has been wasted or even that their job is over

3    because I'm going to ask you all to remain.  They will not be

4    deliberating with the jury.  They will remain in case I need

5    their help at a later time.  They're not to deliberate

6    themselves.  They can talk about anything else, but not about

7    this case.

8         The alternates, the last three jurors seated were

9    Mr. Marshal in seat 5, Miss Reyes in seat 15 -- 14 -- and

11:26 10   Mr. Callahan in seat 15.

11        So my deputy will show you a different room to be in.

12   The rest of you will be the deliberating jury.

13        Now, members of the jury, it is now time for the case

14   to be submitted to you.  You may commence your deliberations.

15   All of you who are the jury must be together at all times when

16   you are deliberating.  Whenever you need a recess for any

17   purpose, your foreman, Mr. Ayles, may declare a recess.  Do not

18   discuss the case during a recess in your deliberations.  All of

19   your discussion of the case should occur only when you are all

11:27 20   together and your foreman has indicated that deliberations may

21   proceed.  This should be your procedure so that everyone on the

22   jury will have an equal opportunity to participate and to hear

23   all of what other the members of the jury have to say.

24        You may go to the jury room and commence jury

25   deliberations.

 1          THE CLERK:  All rise for the jury.

 2                    (Jury exits.)

 3          THE COURT:  Be seated, counsel.  We need to assemble

 4     all of the exhibits to be submitted in paper as well as

 5     electronically.  You'll need to stay here for when the clerk

 6     returns.

 7          Also, you need to be available within 10 minutes if we

 8     have any question from the jury.  So please leave your cell

 9     phone numbers and ability for the deputy to reach you.  If we

11:29 10     get a question, I want to be able to at least have you able

 11     within ten minutes.  We may not be able to talk to you that

 12     quickly, but we need to have your ability.

 13          Is there anything else that needs to come to the

 14     attention of the Court outside the hearing of the jury?

 15          MR. KELLY:  No, your Honor.

 16          MR. KENDALL:  No, your Honor.

 17          MR. FRANK:  No, your Honor.  Thank you.  Would you

 18     like us back at the end of the day or in the morning?

 19          THE COURT:  Yes.  If we go to the end of the day, I do

11:29 20     not inquire of juries as to whether they want to go home.  They

 21     ask me.  I haven't ever had them go beyond 5:15 before they

 22     ask.  If and when they ask to be excused, I will excuse them

 23     and call them into the jury room and caution them with my usual

 24     cautions.  So it behooves you to be here toward the end of the

 25     day.  I can't tell you exactly what time, but during the end of

1    the day.

2            MR. KELLY:  Is it the Court's practice to have us here

3    as 9:00 a.m. as well?

4            THE COURT:  Yes.  I greet them at 9 o'clock in the

5    morning and tell them welcome back and go to work.  If you want

6    to be here, you can be.  I don't require you to be.  I expect

7    you will be.  We're in recess.

8            (Recess taken.)

9            Clerk all rise.  Thank you you may be seated.

04:59 10          THE COURT:  Good afternoon, counsel.  The jury has

11   asked to go home for the day.  I am going to allow that

12   request.

13            Before I call them, I wanted to run by you what I

14   intend to do with the alternates.  I'm going to bring the

15   alternates back in.  They, of course, have not been with the

16   other 12.  They've been in a separate room.  I'm going to call

17   them in.  They will not be in the jury box.  They'll be in

18   these three seats here.  I'm going to thank them for their

19   service and tell them they don't have to come in tomorrow, but

04:59 20   that I would like them to stay available in the unlikely event

21   that we would need their attendance so that they would be

22   available at telephone to come in if we needed them.  That's

23   what I normally do after the first day of deliberation.  I

24   would tell them also that my deputy will call them sometime

25   toward the end of day tomorrow to tell them what their

 1    responsibilities are thereafter.  It would be my intention,

 2    unless something else happens, to not require them to remain

 3    available after the end of the day tomorrow.  Any problem with

 4    that?

 5          MR. KELLY:  Your Honor, I would respectfully suggest

 6    that after tomorrow if there's no verdict to keep them

 7    available next week for at least a day or two given all the

 8    health situation out there.  If one of these 12 remaining

 9    jurors get sick, and we need an alternate.

05:00 10          THE COURT:  I'm certainly going do that for tomorrow.

11    We can talk about toward the end of the day tomorrow.

12          MR. KELLY:  We request that the alternates be

13    instructed they can't look at the media either.  I do think

14    given -- we've been lucky so far, but who knows what happens

15    with the weekend.

16          THE COURT:  We'll cross that bridge when we get to it

17    late tomorrow.  I'll take that under advisement.

18          THE COURT:  Mr. Kendall?

19          MR. KENDALL:  I join with Mr. Kelly's position.

05:01 20          THE COURT:  The government?

21          MR. FRANK:  We agree, your Honor.

22          THE COURT:  We'll call the jury.  The 12 deliberating

23    jurors will be seated in the box.  My deputy is going to tell

24    the two at the end to fill in the blank seat in the front row.

25    Of course, the back row is the same because the alternates were

1    the last three anyway.  The three alternates will be seated

2    outside the box here.

3              Call the jury.

4              (Jury enters.)

5              THE CLERK:  Thank you.  You may be seated.

6              THE COURT:  Good afternoon, jurors, and /TKPWA,

7    alternates.  You've asked to go home.  You've worked hard

8    today.  You deserve to have an affirmative response to that.

9    It's a little bit after 5 o'clock.  I am going to allow you to

05:05 10   recess for the evening and return tomorrow morning at 9:00 a.m.

11   to continue your deliberations.

12             Now, it is especially important now that you are a

13   deliberating jury that you not consult with anybody else or

14   read anything in the media or let anybody talk to you about

15   what's in the media, and that might happen.  Somebody's going

16   to say, I saw in the newspaper.  You say, no, I cannot talk

17   about that, I cannot think about that, because what I am doing

18   is I'm part of a jury that is deliberating toward a verdict.

19   You are to honor my instructions.  It's more important than

05:05 20   ever before.

21             With respect to the alternates, I'm going to permit

22   you not to come in tomorrow, but I want you to remain available

23   by the phone in the unlikely event we need your attendance.

24   That doesn't mean you can't do anything.  I want you to be

25   available and give my deputy your cell phone numbers, if you

1    have them, and just remain available.  You too are not allowed

2    to /SRAO*U any media or talk to anybody about this case.  You

3    are still part of this jury and the instructions that I give to

4    the deliberating jury apply equally to the alternates.  So,

5    please, all of you, honor my instructions.  You deserve to have

6    a night off to think about anything else.  Maybe you can watch

7    the Red Sox.  I don't want you to think about this case or talk

8    about it.

9         I'll see you tomorrow morning at 9 a.m.  And I will

05:06 10  greet you at 9 a.m. before you start your deliberations.  Those

11   alternates don't have to come.  You have to remain available.

12   My deputy will call you sometime during the day to advise you

13   about any future responsibilities, but you will hear from her

14   tomorrow.  Okay?  Have a pleasant evening.  I'll see the

15   deliberating jury tomorrow morning at 9 a.m.

16        THE CLERK:  All rise for the jury.

17        THE COURT:  We will reconvene at 9:00 a.m. tomorrow

18   morning.  Anything that needs to come to the Court's attention

19   before we recess for the night?

05:07 20       MR. KENDALL:  No, your Honor.

21        MR. KELLY:  No, your Honor.

22        THE COURT:  Then we are in recess until 9 o'clock

23   tomorrow morning.

24        (Whereupon, the proceedings adjourned at 5:07 p.m.)

25

1                        C E R T I F I C A T E

2

3

4    UNITED STATES DISTRICT COURT )

5    DISTRICT OF MASSACHUSETTS    )

6

7

8            I, Kristin M. Kelley, certify that the foregoing is a

9    correct transcript from the record of proceedings taken

10   October 7, 2021 in the above-entitled matter to the best of my

11   skill and ability.

12

13

14       /s/ Kristin M. Kelley            October 7, 2021

15       Kristin M. Kelley, RPR, CRR              Date
         Official Court Reporter
16

17

18

19

20

21

22

23

24

25