UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,          )
                    Plaintiff      )
                                   )
vs.                                )   No. 1-19-CR-10080
                                   )
GAMAL ABDELAZIZ and JOHN           )
WILSON,                            )
                    Defendants.    )
                                   )
                                   )

BEFORE THE HONORABLE NATHANIEL M. GORTON
UNITED STATES DISTRICT JUDGE
JURY TRIAL - DAY 1

John Joseph Moakley United States Courthouse
Courtroom No. 4
One Courthouse Way
Boston, Massachusetts 02210

September 8, 2021
9:20 a.m.

Kristin M. Kelley, RPR, CRR
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way, Room 3209
Boston, Massachusetts 02210
E-mail: kmob929@gmail.com

Mechanical Steno - Computer-Aided Transcript

```
 1    APPEARANCES:

 2

 3          Stephen E. Frank

 4          Ian J. Stearns

 5          Leslie Wright

 6          Kristen Kearney

 7          United States Attorney's Office

 8          1 Courthouse Way

 9          Suite 9200

10          Boston, MA 02210

11          617-748-3208

12          stephen.frank@usdoj.gov

13          for the Plaintiff.

14

15

16          Brian T. Kelly

17          Joshua C. Sharp

18          Lauren Maynard

19          Nixon Peabody LLP

20          100 Summer Street

21          Boston, MA 02110

22          617-345-1000

23          bkelly@nixonpeabody.com

24          for Gamal Abdelaziz.

25
```

```
 1    APPEARANCES:

 2

 3            Robert L. Sheketoff

 4            One McKinley Square

 5            Boston, MA 02109

 6            617-367-3449

 7            sheketoffr@aol.com

 8            for Gamal Abdelaziz.

 9

10

11            Michael Kendall

12            Lauren M. Papenhausen

13            White & Case, LLP

14            75 State Street

15            Boston, MA 02109

16            617-939-9310

17            michael.kendall@whitecase.com

18            for John Wilson.

19

20

21

22

23

24

25
```

```
 1    APPEARANCES:

 2

 3            Andrew E. Tomback

 4            McLaughlin & Stern, LLP

 5            260 Madison Avenue

 6            New York, NY 10016

 7            917-301-1285

 8            atomback@mclaughlinstern.com

 9            for John Wilson.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

1

2          THE CLERK:  This is Criminal Action No. 19-10080, the

3    United States of America versus Gamal Abdelaziz and John

4    Wilson.

5          Would counsel please introduce themselves for the

6    record.

7          MR. FRANK:  Good morning, your Honor.  Steven Frank,

8    Kristen Kearney, Leslie Wright and Ian Stearns for the United

9    States.

09:20 10          THE COURT:  Good morning, counsel.

11          MR. KELLY:  Good morning, your Honor.  Brian Kelly,

12    Joshua Sharp, Bob Sheketoff, and Lauren Maynard on behalf of

13    defendant Gamal Abdelaziz.  We would ask -- we pronounce it

14    Aziz.

15          THE COURT:  I'm not going to do that.  I'm going to

16    pronounce the name the way it's indicted.  Abdelaziz has gotten

17    into my head, so I'm going to call him Abdelaziz.

18          MR. KELLY:  Sounds good.

19          MR. KENDALL:  Good morning, your Honor.  Mike Kendall,

09:21 20    Andy Tomback, Lauren Papenhausen, with our client John Wilson,

21    and his wife Leslie Wilson is right behind us.

22          THE COURT:  Good morning to you all.  I would just

23    say, as far as I'm concerned in this courtroom, you're free to

24    remove your masks if you want to.  You certainly don't have to

25    but you're free to do that.  We're going to be going down to

1    the jury lounge where we have in excess of 100 potential

2    jurors.  As you know, we are going to greet them, say good

3    morning, and basically ask them to fill out the questionnaire

4    we've all agreed upon.  So that will take ten or 15 minutes, at

5    most.

6            Before we start, I need for the record to note that we

7    are proceeding today with this trial in person and by Zoom

8    technology pursuant to a General Order of this Court, the

9    National Emergency Act and the CARES Act.  These regulations

09:22 10   relate to the coronavirus pandemic and authorize under certain

11   circumstances, such as these, the conduct of criminal

12   proceedings in person, as well as by means of

13   videoconferencing.  Thus, we are going to go forward using this

14   Zoom technology, as well as proceeding in person.

15           This is a public hearing and these proceedings are

16   being made available to members of the public, the press, and

17   interested parties via Zoom technology.  Those attendees are

18   not, of course, permitted to participate in any other way in

19   these proceedings.

09:23 20           I also remind all of you who are attending this

21   videoconference by Zoom technology that Federal Rule of

22   Criminal Procedure 53 and local Rule 83.3 prohibit

23   photographing, recording, and broadcasting this proceeding, and

24   any violation of these rules will subject the wrongdoer to

25   sanctions and/or loss of press privileges.

1          The only other matter that I want to discuss outside

2     the hearing of the jury panel is the parties' proposed

3     allocations of seats in the courtroom.  I've gone over that

4     carefully, counsel, and, unfortunately, you're not going to be

5     allocated 29 of the 50 seats.  I am going to reserve eight

6     seats for the public in the courtroom.  That will be subject to

7     change day-to-day, but that will mean that members of the

8     family and/or press will be allowed to be in the courtroom.  If

9     counsel can agree on who that's going to be, that's fine, but

09:24 10     there will be, thus, 42 allocated to the parties and to the

11     Court.

12          Since we're going to have 16 jurors and we have 8

13     court personnel, when I count myself, my deputy, the Court

14     reporter, and four clerks and interns, I'm going to reserve

15     8 -- actually, the 8th would be the Court Security Officer.

16     With 16 jurors and personnel, that's 24.  With 8 people from

17     the public, that comes to 32.  That means the parties are

18     allocated 18 seats, not 29, 18.  I'm going to leave it up to

19     you to work out how you allocate those 18 seats, but it's not

09:25 20     going to be as many as you have asked me for.

21          Any comments with respect to that?

22          MR. KELLY:  No, your Honor.

23          THE COURT:  The government?

24          MR. FRANK:  No, your Honor.

25          THE COURT:  Mr. Kendall?

```
 1              MR. KENDALL:  No, your Honor.

 2              THE COURT:  Is there anything else then that needs to

 3     come to my attention before we adjourn down to the jury

 4     assembly lounge?

 5              MR. KELLY:  A small matter, your Honor.  So the Court

 6     doesn't think we're being rude here, my handwriting's terrible.

 7     My handwriting's terrible.  We're going to text back to each

 8     other.  Is that okay?

 9              THE COURT:  Fine with me.

09:25 10         MR. KELLY:  That's what we're doing on the phone.

11     We're not playing games.  I can actually read it that way.

12              THE COURT:  That's fine.  Anything else, counsel?  All

13     right.  Then I'm going to go through the back of the house.  My

14     deputy will go down with you to outside of the jury assembly

15     lounge.  We will go in as a unit.  I will make a few comments.

16     I'll ask counsel to introduce themselves.  I'll start with the

17     government with Mr. Frank.  You'll introduce yourself or have

18     your colleagues introduce themselves.  Then I'll go to

19     Mr. Kelly, and you can do the same.  Mr. Kendall will do the

09:26 20    same.

21              At that stage, I think I have a few more comments to

22     the jury.  We then swear in the jury panel because they are

23     under oath when they're answering all of these questions.  I'm

24     going to emphasize that.  Hopefully, they will be able to

25     complete this questionnaire in an hour or two, after which we
```

1    will have the benefit of being able to look at them.

2         Then, as you all know, we're going to do it all over

3    again at approximately 1 o'clock.  I guess we're a little bit

4    flexible on the time because we're summonsing in another full

5    load of potential jurors for the afternoon session.

6         Everybody on the same page?

7         MR. KELLY:  Yes, your Honor.

8         THE COURT:  Okay.  Then we're adjourned.  I'll see you

9    downstairs in about 5 minutes.

09:27 10         THE CLERK:  All rise.

11         (Recess taken 9:27 a.m. to 9:35 a.m.)

12         THE CLERK:  This is Criminal Action 19-10080, the

13    United States of America versus Gamal Abdelaziz and John

14    Wilson, the Honorable Nathaniel M. Gorton presiding.  Court is

15    in session.  You may be seated.

16         THE COURT:  Good morning, ladies and gentlemen.  My

17    name is Nathaniel Gorton, and I'm the United States District

18    Judge assigned to preside over this session of the United

19    States District Court for the District of Massachusetts.

09:36 20         This case on which you have been called to sit on as

21    jurors is a criminal case which involves alleged fraudulent

22    conduct with respect to college admissions.

23         Now, in order to pick a fair and impartial jury,

24    first, we need you all to fill out an extensive questionnaire.

25    Please take your time and be careful when you answer the nearly

1    50 questions in that questionnaire.  It is very important that

2    you answer all the questions truthfully and to the best of your

3    ability.  And please understand that you are under oath when

4    you answer these questions, but you are not being judged here

5    today.  When you are asked about your opinions or your

6    feelings, you are entitled to them.  It is just when those

7    opinions might become relevant to this case that the parties

8    are entitled to know them as well.  It is very important that

9    we pick a fair and impartial jury for this case.

09:37 10          Now, before you get to the questionnaire, however, let

11   me say a few words about public health and safety.  As a juror

12   in this courthouse, you will be asked to wear a mask regardless

13   of whether you have been vaccinated.  Once we begin the trial,

14   counsel, the defendants, witnesses and I will often not be

15   wearing masks.  As you sit here in the jury assembly lounge,

16   you will notice that we are at least partially socially

17   distanced and we will stay that way until, when and if, you are

18   chosen to sit on this jury.  During the trial, however, the

19   jurors will be in the courtroom and seated in a jury box.

09:37 20          If any of these rules or the protocol I have outlined

21   makes you uncomfortable or is objectionable, you will be able

22   to make your concerns known on this questionnaire.  The health

23   and safety of jurors is of primary importance to all of us.  So

24   that is enough said on that subject for the time being.

25          To further assist you, when you fill out the

questionnaire, I'm going to ask counsel to introduce themselves

and their clients if they are in the assembly lounge.  I would

also like counsel to state the name and location of the law

firm or law office with which they are associated.  We're going

to start with the United States, Assistant United States

Attorney Mr. Frank.

          MR. FRANK:  Thank you, your Honor.  Good morning,

ladies and gentlemen.  My name is Stephen Frank.  I'm an

Assistant United States Attorney in the District of

Massachusetts.

          Can't hear me back there.  Can you hear me better now?

          Good morning, my name is Stephen Frank.  I'm an

Assistant United States Attorney in the District of

Massachusetts.  Can you hear me now?

          My name is Stephen Frank.  I'm an Assistant United

States Attorney here in the District of Massachusetts.  With me

at the table are three other United States Attorneys.  To my

right, Leslie Wright, to her right, Kristen Kearney, and to her

right, Ian Stearns.  Together, we represent the United States.

Good morning.

          THE COURT:  All right.  For the defendants.

Mr. Kelly.

          MR. KELLY:  My name is Brian Kelly.  Good morning,

everyone.  I'm with a law firm called Nixon Peabody, here in

Boston.  To my left is my client, Gamal Abdelaziz.  He's one of

1    the defendants in this case.  To his left is Joshua Sharp, also

2    representing him, as well as two others here, Bob Sheketoff

3    there and Lauren Maynard to my left.  Good morning.

4            THE COURT:  Mr. Abdelaziz, please remove his mask for

5    a moment.

6            MR. KELLY:  Good morning.  That's it.  Thanks.

7            THE COURT:  Mr. Kendall?

8            MR. KENDALL:  Hello.  Can you hear me now?  Hi.  I'm

9    Mike Kendall.  I'm a lawyer here in Boston at a law firm called

09:41 10   White & Case.  This is my partner, Lauren Papenhausen, from

11   White & Case.  Also representing our client John Wilson is Andy

12   Tomback from McLaughlin & Stern in New York.

13           John, if you could stand up.  This is our client John

14   Wilson.

15           Thank you, very much.

16           THE COURT:  All right.  Thank you, counsel.  Now with

17   respect to the empanelment itself, the first thing I need to do

18   is to swear you in as the jury panel.  The reason that we swear

19   you in is that this is a very important part of the case where

09:41 20   we select jurors who will hear a specific case.  The parties in

21   this case have a constitutional right to a jury that's as fair

22   and impartial as humanly possible, therefore, we go through

23   this process of picking a jury.  I would now ask my deputy

24   clerk to please swear in the jury panel.

25           THE CLERK:  Would the panel please stand and raise

 1    their right hands.

 2          Do you and each of you solemnly swear that the

 3    statements you are about to make before this Court shall be the

 4    truth, the whole truth and nothing but the truth, so help you

 5    God?

 6          (Jury affirms.)

 7          THE CLERK:  Thank you.  You may be seated.

 8          THE COURT:  Now, the jury coordinator, Mr. McAlear,

 9    will now distribute this questionnaire, which is rather

09:42 10    lengthy.  Please take your time and answer every question

11    completely and honestly.  After you complete the questionnaire,

12    you will be excused for the day.  Some of you will be notified

13    to report back tomorrow morning, that is Thursday morning, for

14    further empanelment procedure, but I want to thank you all now

15    for your participation up to this point.  So now we are going

16    to adjourn.  The parties that came in are going to leave.  You

17    have some work to do with filling out this questionnaire.

18    Thank you.

19          THE CLERK:  All rise.

09:43 20          (Recess taken 9:43 a.m. to 1:06 p.m.)

21          THE CLERK:  Court is now in session.

22          THE COURT:  Good afternoon, counsel.  Before we go

23    down for the afternoon group that we have in the jury assembly

24    lounge, I wanted to talk about a couple of logistics matters.

25    As I believe everybody understands, this afternoon as soon as

```
 1   counsel have had a chance to review the questionnaires of the
 2   morning group, we expect that you will be able to agree on who
 3   we will excuse and who we will summons in tomorrow morning.
 4        As to those who there is no agreement, we will have a
 5   session later this afternoon.  Then the Court will decide as to
 6   the final numbers as to who to summons and who to excuse.  We
 7   need to do that, of course, before 5 o'clock because that's
 8   when the jury coordinator needs to inform those who are to be
 9   summonsed back as opposed to those who will not be.  Is there
10   anything that you would like to comment in that regard?
11        We'll start with the government, Mr. Frank.
12        MR. FRANK:  No, your Honor.  Thank you.
13        THE COURT:  Mr. Kelly?
14        MR. KELLY:  I understand.  We'll try to do that.  I
15   would just ask that we each get a hard copy of these questions.
16   We only got one for the defense side.  As much as I enjoy
17   sharing with Mr. Kendall.
18        THE COURT:  You should have both gotten a copy.  We
19   will work on that, Mr. Kelly, as quickly as we can.  I agree.
20   You both should have copies.
21        MR. KELLY:  Is 4:30 workable?
22        THE COURT:  I'm looking to do it earlier than that.
23   We need to make our decisions.  Of course, if you agree on
24   everything, we can wait until 4:30.  If you don't, I think
25   we've got to schedule some sort of a conference say quarter of
```

```
 1    four, 3:45, no later than 3:45, so we can get the final numbers
 2    to the jury coordinator by 5 o'clock.
 3              MR. KELLY:  Sounds good, your Honor.
 4              THE COURT:  Mr. Kendall?
 5              MR. KENDALL:  Mr. Kelly's often excellent to represent
 6    my needs, but I want to clarify one thing.  We've been looking
 7    through the questionnaires.  It's been great.  We got them very
 8    promptly.
 9              In terms of reaching a consensus of who should not be
10    called back, I want to raise something.  It may break a logjam
11    and help us do it a lot more quickly and get the Court
12    information it needs quickly.  There's a few folks on the
13    questionnaire that specifically say they don't like the Varsity
14    Blues case, rich people get advantages, they don't like rich
15    people, people shouldn't take the Fifth Amendment, they should
16    come and explain what they did.  I'm hoping those will be ones
17    we can have a consensus on that they have predetermined views
18    that they are not likely to listen to the Court's instructions
19    and follow them faithfully.
20              THE COURT:  I'm not going to get into the middle of
21    negotiations between you and the government between who should
22    be summonsed and who shouldn't.
23              MR. KENDALL:  I'm previewing that.  I'm not asking you
24    to step in at this point.  I think that's what the issue will
25    be, at least from my perspective.
```

1           THE COURT:  Fair enough.

2           With respect to tomorrow, assuming that we come to an

3   agreement as to who should be summonsed back and who should

4   not, we are going to engage in what is known as individual voir

5   dire.  What we're going to do is have those who have been

6   summonsed back will be in the jury assembly lounge.  The jury

7   coordinator and his helpers will come to this courtroom with

8   eight or ten potential jurors, all but one of whom will remain

9   outside.

01:10  10           This courtroom will become the sidebar.  In other

11   words, rather than try to gather around a sidebar, we will

12   simply invite the potential juror to come in to sit at the

13   witness stand and respond to my questions about the affirmative

14   responses, and as I have notified counsel, I will allow counsel

15   to ask questions as long as I believe the questions are aimed

16   at deciding whether this person is qualified to be a juror and

17   not whether this person is going to vote for my client or the

18   government.  If a question is posed that I think is

19   inappropriate, I'll tell the potential juror not to answer.  We

01:11  20   can have an argument about that, as long as you understand that

21   I'm going to allow counsel to inquire.

22           That is one counsel per side.  The government will

23   designate who is questioning for the government.  Each of the

24   defendants will designate a particular inquisitor.  If that

25   person is excused for cause, they go home.  If they are not

excused for cause and retained, I am not going to send them

back to the jury lounge, but rather put them into a separate

courtroom or separate place.  We haven't decided exactly where.

If we are able tomorrow to accumulate what would be

considered 36, or I'm probably going to err on the side of

going above 36, understanding there's a total of 20 peremptory

challenges and need 16 jurors and 16 and 20 is 36, I'm going to

go to about 40.  When I get about 40 cleared jurors, we will be

able at that stage to go to the random selection of the jurors.

What I will do is bring those 36 or 40 potential jurors back to

this courtroom.  They will sit in the back of the courtroom.

My deputy clerk will choose at random, as we always have

before, out of a hat, if you will, 16 jurors to sit in the jury

box.  They're all cleared jurors.

At that stage, I will not need to inquire of them as I

normally do in my standard procedure of asking what they do for

a living and, if they're married, what their spouse does,

because we will already have that information and we will have

already individually voir dired that person.

So if they're cleared, we get 16 in the box, we will

proceed to sidebar, actually proceed to sidebar.  It would be

helpful if not all the attorneys have to come.  I'll leave that

up to you.  The defendants are entitled to be at sidebar, if

they wish, unless they waive their right to be here.  We have

white noise.  We will employ the white noise so the

1    conversation at sidebar is relatively private, at which point

2    parties will exercise peremptory challenges.

3          As you know, the government has 8.  The defendants

4    have 12.  We will proceed seriatim, as they say.  In the first

5    round, the government will exercise a peremptory challenge if

6    they have one.  The defense will exercise one, back and forth

7    until both sides are satisfied, understanding that there are no

8    back strikes.  If we strike eight people out of the first 16,

9    the 8 that remain in the jury box cannot be stricken in the

01:14 10    later round.  The 8 new ones, of course, can be stricken, and

11    you can use your peremptory challenges as you wish.

12          Again, as we have previously determined, the last four

13    jurors in the jury box, no matter what seats they're in, are

14    the alternates.  The 13th juror is alternate No. 1 and so

15    forth.

16          Is it understood how we're going to do that?

17          MR. KELLY:  One question, your Honor.  My question is,

18    at the stage where there's 40 here and they're being chosen at

19    random, are the juror numbers going to be used consistent with

01:15 20    these questionnaires so we know?

21          THE COURT:  Yes.  You'll know.  Absolutely.  You'll

22    know after we've had the individual voir dire which ones are

23    retained and which ones aren't.  Once we get to 40, at that

24    stage -- now, this may occur tomorrow.  It may not occur

25    tomorrow.  If we are able to do it tomorrow by mid to late

1    afternoon, we will go forward with the peremptories to be

2    exercised so we can have a jury assembled by 5 o'clock before

3    we adjourn for the day.

4         If I determine in the middle of the day or at some

5    point that we're not going to make it and we're going to need

6    to summons in the second tranche for Friday morning, then I

7    will excuse those who have been retained up to that point and

8    ask them to come back in the morning and we will complete the

9    process on Friday.

01:16 10        MR. KELLY:  Either way openings are Monday.

11        THE COURT:  Either way openings are Monday.

12        Any questions or comments as to -- there is one other

13   thing.  Because we are treating this courtroom as sidebar

14   during the individual voir dire, I am not going to allow

15   anybody else to be in the back of the courtroom.  In other

16   words, it's going to be a closed courtroom for that portion

17   because it is the equivalent of what would be occurring at

18   sidebar.  I think that's appropriate because I respect the

19   privacy of potential jurors.  And I think they have a right to

01:16 20   privacy.  Obviously, they're not going to be private from any

21   of the people here or the parties that are represented.  This

22   is not a public hearing when we get to the point of asking

23   individuals about their responses to this questionnaire.

24        Any problem with that from the government?

25        MR. FRANK:  No, your Honor.  Thank you.

1        THE COURT:  Mr. Kelly?

2        MR. KELLY:  No, your Honor.

3        THE COURT:  Mr. Kendall?

4        MR. KENDALL:  No, your Honor.

5        THE COURT:  That's the way we're going to proceed with

6   the individual voir dire tomorrow.

7        Now we're going to go back down and do a second

8   version of what we did this morning, welcoming the jurors and

9   tell them about the questionnaire and so forth.  Any questions

01:17 10   about that?  If not, I'll see you downstairs in five minutes.

11        (Recess taken 1:18 p.m. to 1:24 p.m.)

12        THE CLERK:  This is Criminal Action No. 19-10080, the

13   United States of America versus Gamal Abdelaziz and John

14   Wilson.  The Honorable Nathaniel M. Gorton presiding.  Court is

15   now in session.  Thank you.

16        THE COURT:  Good afternoon.  My name is Nathaniel

17   Gorton, and I am a United States District Judge assigned to

18   preside over this session of the United States District Court

19   for the District of Massachusetts.

01:24 20        The case on which you have been called to sit as

21   jurors is a criminal case which involves alleged fraudulent

22   conduct with respect to college admissions.

23        In order to pick a fair and impartial jury, first, we

24   need you all to fill out an extensive questionnaire.  Please

25   take your time and be careful when you answer the nearly 50

1    questions in that questionnaire.  It is very important that you

2    answer all of the questions truthfully and to the best of your

3    ability, and please remember that you are under oath when you

4    answer these questions, but you are not being judged here.

5          When you are asked about your opinions or feelings,

6    you are entitled to them.  It is just that when those opinions

7    might become relevant to this case, the parties are entitled to

8    know them as well.  It is very important that we select a fair

9    and impartial jury.

01:25  10          Now, before you get to the questionnaire, let me say a

11    few words about public health and safety.  As a juror in this

12    courthouse, you will be asked to wear a mask regardless of

13    whether you have been vaccinated.  Once we begin the trial,

14    counsel, the defendants, witnesses, and I will often not be

15    wearing masks.

16          As you sit here in the jury assembly hall, you will

17    notice that you are at least somewhat socially distanced and we

18    will stay that way until, when and if, you are chosen to sit as

19    a juror on this trial.  During the trial, however, the jurors

01:26  20    will be in a courtroom and seated in a jury box.

21          If any of these rules or the protocol I have outlined

22    makes you uncomfortable or is objectionable, you will have an

23    opportunity to express your concerns in that questionnaire.

24    The health and safety of jurors is of primary importance to us.

25          Enough said for the time being on the question of

1    health and so forth.

2           Now, to further assist you, when you fill out your

3    questionnaire, I'm going to ask counsel to introduce themselves

4    and their clients, if they are in the assembly hall.  I would

5    also like counsel to state the name and location of their law

6    firms or the law offices with which they are associated.  And

7    we will start with Mr. Frank from the United States Attorney's

8    office.

9           MR. FRANK:  Thank you, your Honor.  Can everyone hear

01:27 10   me?  Good afternoon.  My name is Stephen Frank.  I'm an

11   Assistant United States Attorney here in the District of

12   Massachusetts.  With me at the table are three of my fellow

13   Assistant United States Attorneys.  To my right is Kristen

14   Kearney.  To her right is Leslie Wright.  And to her right is

15   Ian Stearns.  Together, we represent the United States.  Good

16   afternoon.

17          THE COURT:  Mr. Kelly.

18          MR. KELLY:  Good afternoon.  My name is Brian Kelly.

19   I'm here.  I'm a member of the law firm Nixon Peabody in

01:28 20   Boston.  I'm here with my client to my left, Gamal Abdelaziz,

21   and to his left is another attorney from my firm, Joshua Sharp.

22   Behind Joshua are Bob Sheketoff and Lauren Maynard.  We

23   represent Mr. Aziz.  Good afternoon.

24          THE COURT:  Mr. Kendall.

25          MR. KENDALL:  Thank you, your Honor.  Hi.  Good

1    afternoon.  I'm Mike Kendall.  I practice at the Boston office

2    of the law firm called White & Case.  Along with me is my

3    partner Lauren Papenhausen.  Standing next to me over here to

4    my right is John Wilson, our client.  Behind me is our

5    co-counsel Andrew Tomback of a firm called McLaughlin & Stern

6    in New York.  Thank you very much.

7         THE COURT:  All right.  Thank you, counsel.  Now, with

8    respect to the empanelment itself, the first thing I need to do

9    is to swear you in as the jury panel in this case.  The reason

01:29  10   we swear you in is this is a very important part of the case

11   where we select the jurors who will hear a specific case.  The

12   parties in this case have a constitutional right to a jury that

13   is as fair and impartial as humanly possible, therefore we go

14   through this process of picking a jury.

15        I would now ask my deputy clerk to please swear you in

16   as the jury pool.

17        THE CLERK:  Would the panel please stand and raise

18   your right hands.  Do you and each of you solemnly swear that

19   the statements you are about to make before this Court shall be

01:29  20   the truth, the whole truth and nothing but the truth, so help

21   you God?

22        (Jury affirms.)

23        THE CLERK:  Thank you.  You may be seated.

24        THE COURT:  All right.  Now, the jury coordinator will

25   now distribute this questionnaire to you.  Please take your

1   time and answer every question completely --

2          I'll start again.  Thank you for pointing that out.

3   The jury coordinator will now distribute the questionnaire.

4   Please take your time and answer every question completely and

5   honestly.  After you complete the questionnaire, you will be

6   excused for the day.  Some of you will be notified to report

7   back on Friday morning for further empanelment procedure, but I

8   want to thank you all for your participation up to this point.

9   We are adjourned.

03:52 10          (Recess taken 1:31 p.m. to 3:52 p.m.)

11          THE COURT:  Good afternoon, counsel.  Perhaps I will

12   start by asking counsel whether you've come to any sort of an

13   agreement and what the situation looks like.

14          Mr. Frank.

15          MR. FRANK:  Your Honor, we've agreed that there are 20

16   potential jurors who should be struck for cause.  There's about

17   the same number that we do not agree on.  We can give you the

18   first 20.

19          THE COURT:  Out of 117, that would leave us with 97.

03:53 20   Are you suggesting the government would like me to call back in

21   97?

22          MR. FRANK:  There are probably about a dozen

23   additional jurors that the government believes should be

24   struck.  I'm not quite sure, but I'm guessing about an equal

25   number from the defense that we just haven't reached an

1    agreement on.  We didn't have time to discuss those.

2         THE COURT:  So approximately 24 others that would be

3    struck if I accepted one side or the other's request to strike.

4         MR. FRANK:  That's roughly right.

5         THE COURT:  So that would be 44 from the 117.

6         MR. FRANK:  I think that's approximate.

7         THE COURT:  I'm not giving you an exact number.  That

8    would mean we're calling in somewhere around 80 of the 117 or

9    75, something like that.

03:54 10         MR. FRANK:  I think that's right.

11         THE COURT:  Mr. Kelly, what do you think?

12         MR. KELLY:  Okay.  We've been trying to process all

13    the paper here.  I was unable to look at jurors 75 and 90, but

14    we'll get to it.  We did reach agreement on 20 of the 117.  I

15    do agree that they have some they wish to be stricken.  Perhaps

16    we'll agree or won't have the time, and perhaps they'll agree

17    to our dozen or so.  I can't give you exact numbers.  We've got

18    agreement on the 20.  We can give you the 20.  We'll keep

19    working on it and alert the Court.

03:54 20         THE COURT:  Mr. Kendall?

21         MR. KENDALL:  We've been working together.  I think I

22    may have a little bit more of a count on the numbers than what

23    Mr. Frank offered the Court.  We think there's probably about

24    42, 43 that we would want to strike that the government has not

25    agreed to strike.  Those 42 or 43 I can just tell the Court

1    what the categories are so you understand what our concerns

2    are.

3           Many of these people strongly do not believe in the

4    Fifth Amendment.  A group of them work for one of the victims,

5    which is Harvard, Stanford or USC.  There was a group of

6    teachers and some healthcare workers that said there was a

7    hardship.  That may require further court inquiry.  I didn't

8    want to be too strong on that.  A lot of people said schools

9    start this week, we missed a COVID year, it's difficult for the

03:55 10   students.  That's in the group.  And there's a group that

11   expressed very strong biases against the defendants, against

12   rich people having special privileges, thinking that they were

13   guilty based upon the media.

14          THE COURT:  So this would be in addition to the 20

15   that you've all agreed should be stricken?

16          MR. KENDALL:  Correct.

17          THE COURT:  You want me to strike 43 now.  So we're

18   talking roughly half of the 117.

19          MR. KENDALL:  Give or take one or two numbers, yes,

03:56 20   your Honor.

21          THE COURT:  Do those include the ones that Mr. Kelly?

22          MR. KENDALL:  Yes.

23          THE COURT:  That would be a grand total of the

24   defendants' request for striking.

25          MR. KENDALL:  20 we've agreed on, and about 43.  I

```
 1    need to double count to give you a precise number.  It's
 2    roughly 42, 44, in that range.
 3            THE COURT:  Mr. Frank, have you seen the 43 that the
 4    defendants are requesting to strike?
 5            MR. FRANK:  We have not discussed those 43.
 6            MR. KENDALL:  Mr. Kelly hasn't had a chance to see it.
 7    We wrote it all up.
 8            MR. KELLY:  We went through the numbers we definitely
 9    agreed upon and knocked them out.  We think the government has
10    more they think should be stricken.  We have more.
11            THE COURT:  I have no problem if you have agreed
12    amongst yourselves to strike 20.  We'll strike those 20 right
13    now.
14            What I want to see is the 43 that the defendants want
15    stricken and the government may or may not want stricken.  Are
16    there some that the government wants stricken that the
17    defendants don't?
18            MR. KENDALL:  It's not that we necessarily don't, your
19    Honor.  The government has some preliminary data on convictions
20    but it wasn't confirmed.  If it turns out to be the person and
21    a felony conviction, that's one thing.  In good faith, they
22    gave us the best information they have, but it's not yet
23    confirmed.  We thought that may be dealt with better tomorrow
24    when we can have the information confirmed as opposed to doing
25    something if we don't know it's reliable or complete.
```

1          THE COURT:  I'd like you to do, and you can do it as

2     quickly as possible, the 20 that are agreed to are stricken.

3     We're down to 97.  I want to see a list that has the 43 that

4     the defendants want me to strike and the several, 12 or so,

5     that the government wants me to strike, with different

6     notations so I can tell the difference.  How long do you need

7     to get me such a piece of paper?

8          MR. KENDALL:  Is handwriting okay?

9          THE COURT:  Handwriting is fine.

03:58 10          MR. KENDALL:  Probably 10 minutes.

11          THE COURT:  I'll give you 15, but I want to see that

12     list first.  Then I'll make a determination as to what we do

13     from there on whether we come back and have a discussion about

14     them or whether we just go with your requests.

15          MR. KENDALL:  To help the Court, we're just working

16     here off of cryptic notes.  Do you want that list of 43 broken

17     down to Fifth Amendment?

18          THE COURT:  Sure, if you can do it.

19          MR. KENDALL:  Hardship, work for a victim.

03:59 20          THE COURT:  Yes.

21          MR. KENDALL:  We'll try to do that.  We may need a

22     smidgen more than 15.

23          THE COURT:  Understand -- Mr. McAlear can correct me

24     if I'm wrong.  What is the time that you have to use to summons

25     these folks for tomorrow morning?

1          MR. MCALEAR:  They're calling in at five.  It's going

2    to take at least 15 minutes, if not 20, to set the message for

3    the jurors that we want.  4:45 is when I absolutely need the

4    list.

5          MR. KELLY:  Does it help to give you the 20 now?

6          MR. MCALEAR:  Absolutely.

7          THE COURT:  Get me the other 43 or 50 names as quickly

8    as possible.  We're going to have to turn it around in a hurry.

9    We're in recess for 15 or 20 minutes.

04:36 10          (Recess taken 4:00 p.m. to 4:36 p.m.)

11          THE COURT:  Mr. Frank, what has the government come up

12    with?

13          MR. FRANK:  We have our list for the Court.  I believe

14    that the defense is agreeing with us on one of those jurors

15    being stricken.  That is Juror No. 35.  Withdrawn, your Honor.

16    I apologize.  We agree with the defense on No. 88.

17          THE COURT:  More to the point, you were going to give

18    me a list of all of the ones that the government agreed would

19    be stricken, then a list from all of the ones the defendants

04:37 20    agreed would be stricken.  Is there no overlap at all?

21          MR. FRANK:  There is no overlap, but we have agreed to

22    one of the individuals on their list being stricken.  We have

23    our list that we can hand up.

24          THE COURT:  This is an addition to the 20 we've

25    already agreed?

        1              MR. FRANK:  That is the government's additional list.

        2              MR. KENDALL:  Not agreed upon.

        3              MR. KELLY:  We do not agree to those.  The only one

        4     we've agreed to in this time frame is 88 in addition to the

        5     other 20 we told Mr. McAlear about at the break.  We're still

        6     working to try to come to agreement on more.  Those are just,

        7     as I understand it, what they hope we will agree to, but we

        8     have not agreed to it yet.  We have a list of our own that we

        9     need to give the Court to say this guy doesn't agree to Fifth

04:38  10     Amendment privilege, whatever the excuse is.  We believe we

       11     have cause as well that we want the government to agree with.

       12              THE COURT:  Counsel, here's where I'm coming at it

       13     from.  I'm coming at it from a different direction.  We started

       14     with 117 today.  I want to know who we're going to call back

       15     tomorrow to individually voir dire.  I'm not as interested in

       16     who we're going to agree may be ultimately and finally stricken

       17     as I am in who we're going to call back tomorrow to

       18     individually voir dire.  Nobody is going to give up their right

       19     to challenge any of the people that appear tomorrow for cause,

04:39  20     nor are you exercising your peremptory challenges at this

       21     stage.  I want to have tomorrow a working number of potential

       22     jurors.  I don't want to call anybody in tomorrow who is

       23     completely unacceptable to both sides.  I want to call in

       24     roughly half of the people that showed up today.  I'd like to

       25     get 60 people here tomorrow to individually voir dire and

1   maybe, out of those 60, we do find 20 that would be acceptable

2   to both sides.

3           MR. KELLY:  I would submit, I think 21 can be

4   dismissed.  That gets us down to --

5           THE COURT:  96.

6           MR. KELLY:  I think they have to be brought in.  Maybe

7   we can agree overnight that some of these people can be

8   released, but I don't see any way around it today to come to an

9   agreement and tell them within the time frame we have.  I think

04:40 10  we call back the 96 and work through those.  Maybe tomorrow

11  morning we'll have another 15 that we've agreed upon and now

12  we're down to 80 and we can work through in terms of striking

13  them.

14          MR. KENDALL:  If I may raise one thing, your Honor.

15          THE COURT:  Yes.

16          MR. KENDALL:  I understand the Court's desire to have

17  a workable number tomorrow and not inconvenience all these

18  people.  Would it be helpful for the Court if we just discussed

19  the four or five categories of topics Mr. Frank doesn't agree

04:40 20  with us?  If the Court thinks any of those topics is a valid

21  one, we can do a ten, 15 wholesale.  There's a whole group that

22  objects to the Fifth Amendment.

23          THE COURT:  I can talk to you about that right now, I

24  think, Mr. Kendall.  I think the fact that somebody's answered

25  a question that they or somebody in their family or somebody

that they know is employed by Harvard or Stanford is not a
grounds to exclude them.  I would bring them in and ask them
whether the fact that they have somebody around the corner
that's a friend that works for Harvard would prejudice them in
this case.

MR. KENDALL:  I'd agree with you on that.  We're not
going at that level.

THE COURT:  That was one of the categories I thought
you listed.

04:41 MR. FRANK:  I think it's more if they're working
there.  If they personally are substantively involved at
Harvard.

THE COURT:  Why is somebody who's employed at Harvard
University automatically excluded from this trial as a juror?

MR. KENDALL:  The government has put people like that
on its list as well.  I think the idea is they're closely tied
to a victim and likely have strong views.

THE COURT:  We can inquire about that.

MR. KENDALL:  That's why I wanted to give you the
04:42 categories.

THE COURT:  The other one is the rich people.  Lots of
these people have said they don't like rich people if they've
gotten their money in untoured ways.  That doesn't mean
everybody that's rich they'd be prejudiced against.  I think
that is a category that is not worthy of excluding somebody

1  because they've checked a box that they somehow have something

2  against some rich people.

3        MR. KENDALL:  Some expressed a far more aggressive

4  attitude.

5        THE COURT:  Those could be excluded.

6        MR. KENDALL:  The ones that I think are quite strong

7  is people just flat out reject the Fifth Amendment.  In my

8  experience in drawing juries in this courthouse, people have

9  such respect for a judge that if a judge questions them about

04:42 10 the Fifth Amendment, they'll back off out of respect for you,

11  but then they'll go right out of here with the same view they

12  have and they're just being polite to the authority they

13  respect.

14        THE COURT:  I don't think I agree with you,

15  Mr. Kendall.  I think maybe I should have had more input on

16  that question.  I think a lot of people, lay people, will say

17  somebody ought to get up and defend themselves, but when

18  they're confronted with what the law is and a judge instructs

19  them that, notwithstanding their suspicion, the law entitles

04:43 20 somebody to remain silent and is the requirement of the

21  government to prove its case beyond a reasonable doubt, et

22  cetera, et cetera, I think people honor those instructions, not

23  withstanding their feelings of some sort of the guy ought to

24  have got up and defended himself.

25        MR. KENDALL:  I wish what you were saying was true,

         1    your Honor.

         2         THE COURT:  I've been doing it for 29 years.  I have

         3    seen that happen on occasion.  I wouldn't automatically dismiss

         4    somebody who checked that he might be concerned about the fact

         5    that somebody didn't take the stand, automatically.  If you can

         6    agree some of those applications where the people go on and on

         7    and those persons should be excused, but not automatically

         8    because they checked yes to that question, it presents a

         9    problem.

04:44   10         MR. TOMBACK:  Does it make sense to tackle a few of

        11    those?  We made some notes.

        12         THE COURT:  What I want you to do -- and I'm going to

        13    extend this.  I know the coordinator said he needed this by

        14    now.  I'm going to give you another half hour to try to come up

        15    with 60, 70 names, not 96, that we should call in that have a

        16    realistic chance of being seated as jurors in this case.  That

        17    gives you -- we can strike up to half of the people that have

        18    answered these questionnaires perhaps for good reason,

        19    especially people who have scheduling problems, people who have

04:45   20    said they're teachers and they're brand new at their job and

        21    COVID-19 and they want to get back to school.  I would exclude

        22    those folks.  They're important people that need to be in the

        23    school teaching kids.  I would be in favor of excusing anybody

        24    that's asked for a scheduling conflict having to serve 4 weeks

        25    on this sort of trial.

1    MR. KENDALL:  I think your guidance is helpful, your

2    Honor.

3    THE COURT:  I want by 5:15 a list that shows at least

4    60 people that we can call in tomorrow.  Mr. Kelly?

5    MR. KELLY:  Okay.

6    THE COURT:  What's your concern?

7    MR. KELLY:  I was just thinking procedure.  We'll see

8    what we can do.  It might be easier to tell you what we need to

9    strike.

04:46 10    MR. KENDALL:  We need another 30 to strike.

11    THE COURT:  That would be a number to work with.

12    MR. KENDALL:  We'll look for another 30 to 40.

13    THE COURT:  I need it by 5:15.

14    MR. KENDALL:  We're not leaving.  I'll sit right here.

15    THE COURT:  We're in recess until 5:15.

16    (Recess taken 4:47 p.m. 5:18 p.m.)

17    THE COURT:  Good afternoon, counsel.  Have you been

18    able to work our list in the last half hour?

19    Mr. Frank?

05:18 20    MR. FRANK:  We have 15 additional names from the

21    defense list that we can agree to.

22    THE COURT:  Mr. Kendall?

23    MR. KENDALL:  We went through the list and put anybody

24    who checked hardship.  Some of those were teachers.  Some had

25    significant family health issues, a child or elderly person or

small business.  We didn't screen it all.  If we do anybody

that does hardship, that's 20.  They accepted 15 of the 20.  If

the Court is looking to have a truly manageable number, that

would be the other five, and that would be everybody who

claimed hardship.

THE COURT:  That would come off the 95?

MR. KENDALL:  That would give us 20 we agreed on and

another 20 hardships, of which they accept 15 of the 20.

MR. FRANK:  There were some errors on the hardship

list.  One of the individuals did not check hardship.  One

works for a municipality and said he wasn't sure he'd get paid

after 3 days for jury service, but I believe because he works

for a municipality, he would.  And there were a couple that

claimed hardship that were not dubious.  They were not

teachers.  One was a consultant who travels.  We looked in good

faith at the list of 20.  We agreed to 15 names.

THE COURT:  Those 15 are in addition to the 20 or 21?

MR. FRANK:  These are in addition to the names we

previously gave the Court, which was 21.

MR. KENDALL:  So it's 36.  You're down to 80.

MR. FRANK:  I don't know if the defense has agreed to

any of the dozen names, many on our list who had convictions

and arrests who did not report it.

THE COURT:  You'll look into it tonight.

MR. KENDALL:  With the arrest, the government, to

         1   their credit, said it was preliminary data and they're not
         2   sure.  If, in fact, these people have felony convictions, we're
         3   not going to dispute that.  Nothing is certain on that data.
         4   It's up in the air.  I don't know what we can do with it until
         5   it's confirmed.
         6            MR. FRANK:  Some of the arrests were not disclosed and
         7   there was a specific question about that.  There were also four
         8   jurors on our list who cited hardship and I don't know if the
         9   defense is agreeing to those.
05:20   10            THE COURT:  What about those four?
        11            MR. FRANK:  I'm sorry.  Five.
        12            THE COURT:  Five.  I think it would be helpful to
        13   excuse all those with hardship because we're going to do it
        14   when we get them here tomorrow anyway.
        15            MR. KENDALL:  Your Honor, of their group of hardship,
        16   it says hardship and other categories.  We see one person, I
        17   don't view these as hardships.  One of them has some autism
        18   issues, your Honor.  That's discrimination against somebody's
        19   disability.  If the person says they're on the autism spectrum,
05:21   20   without further inquiry, we cannot discriminate them because of
        21   some issue like that.
        22            One juror expressed unacceptable racist views, but we
        23   don't think that affects the deliberation of this case, but we
        24   agree the views expressed are repugnant, at least as we would
        25   read the response.  Maybe we're not doing him justice.  That

1    was not a hardship person.

2          One person said they were suspicious about

3    cooperators.  That's in the same category as the Fifth

4    Amendment, will they follow your instructions.  So these aren't

5    teachers who have a first grade class starting tomorrow.  These

6    are what they call other categories.

7          MR. FRANK:  That's not accurate, your Honor.  All of

8    them indicated specifically that they had a hardship that would

9    make it difficult for them to serve.  In addition, there were

05:22 10   other categories they fell into.

11          For example, one of them said they had a personal or

12   family responsibility that would interfere with their service

13   as a juror because they were on call for their elderly father.

14          One of them said that she's interviewing for a new job

15   and could miss opportunities since she cannot schedule

16   follow-up interviews and also is responsible for a 5-year-old

17   child.

18          One of them said that she cares weekly for her father

19   and grandmother and, therefore, has a hardship.

05:22 20          One of them said she cannot read or understand

21   English.

22          MR. KENDALL:  We'll agree to two of those, your Honor,

23   Juror 3 and Juror 95.

24          THE COURT:  If these folks had come to sidebar in the

25   normal course of empanelment and had expressed those hardships,

1   I would have had you hear but I would not have asked for your

2   opinion.  I would have excused them for the hardship.  I'm

3   relatively lenient when somebody tells me they have young

4   children at home that they can't care for and it's a 4-week

5   trial.  I would be inclined to grant hardship excuses under

6   these circumstances if I heard them orally as opposed to seeing

7   them in writing.  I would have excused them on the spot.  I

8   suppose you would have been entitled to object to my excusing

9   them on the spot, but that's what I would have done.

05:23 10       What I hear is we can get down to roughly 75 and 80

11   that we call in.  I will do that.  I want you to give those

12   numbers immediately to the jury coordinator so that he can put

13   this on the call and we can have 75 to 80 jurors show up

14   tomorrow.

15       In the meantime, I would ask counsel to diligently try

16   to pair that list down if there are people that you haven't had

17   a chance to vet sufficiently.  For instance, if you find out

18   that one of these is a convicted felon and ineligible, we can

19   either excuse that person when they arrive or excuse them

05:24 20   between now and then.

21       MR. KENDALL:  Your Honor, the convicted felons, as

22   soon as it's confirmed that it's certain and the government is

23   comfortable, that's an easy one.  I'll go check the other

24   hardships Mr. Frank is raising and if we can add a few more to

25   the list, we'll do it right now.

                    THE COURT:  Right now what I need you to do is give

     Mr. McAlear the 78 or whatever it is names that are not to be

     excused and that will be called in tomorrow for individual voir

     dire.  Hopefully, maybe even before he makes that call, you can

     add three or four to that list, and between now and tomorrow

     morning, perhaps three or four more so we have roughly 70

     people to talk to tomorrow.

                    MR. KENDALL:  Yes, your Honor.  We'll do that.

                    MR. FRANK:  Your Honor, with respect to the additional

05:25  100 names from this afternoon --

                    THE COURT:  Second tranche.

                    MR. FRANK:  Which none of us have really looked at.

     What does your Honor expect of that?

                    THE COURT:  Overnight you're going to have to review

     those.  We'll go forward with calling them in on Friday if we

     are unable to empanel the jury tomorrow, which it frankly looks

     like we're not going to be able to complete.  If we get 70

     names in, I rather doubt we're going to end up with 36-year

     jurors out of those 78.  So we'll have to go to the second day

05:26  and do exactly the same thing with the second tranche.  You're

     expected to get together and agree who will be dismissed and

     make a more concerted effort to maybe increase that number from

     20 to 30 or 40 and we call another 70 in on Friday morning and

     do the process again, unless somebody can think of a different

     way to do it.

1          It is likely that tomorrow, as we go through the voir

2     dire process and I excuse some for cause and not others, that I

3     will let the not others go home rather than sit around all day

4     in the unlikely event that we'll end up with 36 or 40 cleared

5     jurors and be able to exercise peremptory before four or

6     5 o'clock.  That is unlikely to happen.

7          I will, of course, need to thoroughly instruct anybody

8     who has held that they are not to talk to anybody about this

9     case, not to do any research on the internet, so on and so

05:27 10    forth, that instruction I give at the outset of the trial.  I

11    am open to suggestions on how I do that.  I can't do it each

12    and every time, but perhaps we could write-up an instruction

13    that we hand to the people that are reserved but on their way

14    home to read as to what they cannot do before the further

15    empanelment procedure.  I would invite a joint statement or

16    statement to give to anybody who is reserved to be excused

17    tomorrow.

18          Can you do that?

19          MR. KELLY:  Yes, your Honor.

05:28 20          MR. FRANK:  Yes, your Honor.

21          THE COURT:  I'll ask Mr. McAlear.  Is there anything

22    else we need to do at this point?

23          MR. MCALEAR:  No, your Honor.

24          THE COURT:  You'll give him within the next 15 minutes

25    a list that will have between 70 and 80 names on it and he will

1    summons those people to be here tomorrow morning at nine.

2    Everybody on the same page?

3            MR. FRANK:  Yes, your Honor.

4            MR. KENDALL:  Yes, your Honor.

5            THE COURT:  Thank you, counsel.  We're adjourned.

6    We'll get together tomorrow morning at 9 a.m.

7            (Whereupon, the proceedings adjourned at 5:28 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                     C E R T I F I C A T E

2

3

4   UNITED STATES DISTRICT COURT )

5   DISTRICT OF MASSACHUSETTS    )

6

7

8           I, Kristin M. Kelley, certify that the foregoing is a

9   correct transcript from the record of proceedings taken

10  September 8, 2021 in the above-entitled matter to the best of

11  my skill and ability.

12

13

14      /s/ Kristin M. Kelley              November 1, 2021

15      Kristin M. Kelley, RPR, CRR              Date
        Official Court Reporter
16

17

18

19

20

21

22

23

24

25