<pre>
 1                       UNITED STATES DISTRICT COURT
                          DISTRICT OF MASSACHUSETTS
 2


 3
    UNITED STATES OF AMERICA,        )
 4                   Plaintiff       )
                                     )
 5   vs.                             )   No. 1-19-CR-10080
                                     )
 6   GAMAL ABDELAZIZ and JOHN        )
    WILSON,                          )
 7                   Defendants.     )
                                     )
 8                                   )

 9


10

                 BEFORE THE HONORABLE NATHANIEL M. GORTON
11                    UNITED STATES DISTRICT JUDGE
                         JURY TRIAL - DAY 2
12


13

              John Joseph Moakley United States Courthouse
14                         Courtroom No. 4
                          One Courthouse Way
15                    Boston, Massachusetts 02210


16


17                       September 9, 2021
                            9:12 a.m.
18


19


20
                    Kristin M. Kelley, RPR, CRR
21                    Official Court Reporter
              John Joseph Moakley United States Courthouse
22               One Courthouse Way, Room 3209
                    Boston, Massachusetts 02210
23                 E-mail: kmob929@gmail.com


24          Mechanical Steno - Computer-Aided Transcript


25
</pre>

```
1    APPEARANCES:

2

3            Stephen E. Frank

4            Ian J. Stearns

5            Leslie Wright

6            Kristen Kearney

7            United States Attorney's Office

8            1 Courthouse Way

9            Suite 9200

10           Boston, MA 02210

11           617-748-3208

12           stephen.frank@usdoj.gov

13           for the Plaintiff.

14

15

16           Brian T. Kelly

17           Joshua C. Sharp

18           Lauren Maynard

19           Nixon Peabody LLP

20           100 Summer Street

21           Boston, MA 02110

22           617-345-1000

23           bkelly@nixonpeabody.com

24           for Gamal Abdelaziz.

25
```

```
 1    APPEARANCES:

 2

 3            Robert L. Sheketoff

 4            One McKinley Square

 5            Boston, MA 02109

 6            617-367-3449

 7            sheketoffr@aol.com

 8            for Gamal Abdelaziz.

 9

10

11            Michael Kendall

12            Lauren M. Papenhausen

13            White & Case, LLP

14            75 State Street

15            Boston, MA 02109

16            617-939-9310

17            michael.kendall@whitecase.com

18            for John Wilson.

19

20

21

22

23

24

25
```

```
1    APPEARANCES:

2

3            Andrew E. Tomback

4            McLaughlin & Stern, LLP

5            260 Madison Avenue

6            New York, NY 10016

7            917-301-1285

8            atomback@mclaughlinstern.com

9            for John Wilson.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

1

2          THE COURT:  Good morning, counsel.  We're ready to

3    proceed with the second day.  This is going to be primarily

4    individual voir dire of what I'm calling the first tranche of

5    prospective jurors.  Over the evening, did counsel eliminate

6    anymore of this first tranche?  Mr. Frank?

7          MR. FRANK:  Yes, your Honor.  The government has

8    agreed to strike three of the "for cause" jurors suggested by

9    the defense, numbers 88, 104 and 117.  The defense has agreed

09:13 10  to strike one of the jurors that the government thought should

11   be struck for cause, number 1, for a total of four.

12         THE COURT:  So those are four additional overnight who

13   have already been stricken.

14         MR. FRANK:  Correct.  I think that takes us to 75.

15         THE COURT:  Fair enough.  I can instruct the jury

16   coordinator that those four, numbers 1, 88, 104 and 117, do not

17   need to be in the list.

18         THE COURT:  Apparently, 88 was already excused

19   yesterday.

09:14 20        MR. FRANK:  Well, we renew our agreement on that.

21         THE COURT:  It will be 1, 104 and 117 for Mr. McAlear.

22         All right.  With regard to the second tranche, we need

23   your agreements.  Obviously, we can't be working on that

24   simultaneously, but we need that as soon as you can resolve it.

25   What is the status of the work on the second group?

1          MR. FRANK:  So we have not conferred about that, your

2    Honor.  I can't speak for the defense.  The government has

3    identified 40 jurors, potential jurors, from that group that we

4    would strike for cause:  31 of them for hardship and another 9

5    for other reasons, including prior arrests or convictions.

6          I would note, your Honor, that with respect to the

7    group one jurors who are coming in today, there are four

8    jurors, potential jurors, we've identified who failed to

9    disclose in 3 cases, completely failed to disclose prior

09:15 10   criminal charges that resulted in felony CWOFs, continued

11   without finding, but for sentencing guideline purposes is a

12   felony conviction.  One disclosed a misdemeanor but did not

13   disclose the quaff.

14          Then there were additional four that identified

15   hardships that we believe should be struck for cause.

16          THE COURT:  What do counsel request that I do for

17   them?  Do you want me to bring them in here and confront them

18   that they didn't tell me about a felony?

19          MR. KELLY:  Respectfully, your Honor, no.  I would

09:15 20   like to confer with the government when we're done with this

21   process here.  I would only note that CWOFs in the state system

22   are not conviction, so when the federal government files an 851

23   enhancement on prior convictions, they can't rely on the CWOF.

24   So I have to look at the questionnaire to see if, as he

25   suggests, they lied to the Court.

1          THE COURT:  In the meantime, we won't bring them up

2     and put them in the witness chair.

3          MR. KELLY:  It's the second tranche.

4          MR. FRANK:  It's the first tranche.

5          MR. KELLY:  The first tranche?  Then I suggest we ask

6     them.

7          MR. KENDALL:  Your Honor, it's a continuance without a

8     finding that gets dismissed.  They may have a different

9     understanding of the question than Mr. Frank did.  I think we

09:16 10    should give the potential juror the chance to explain their

11    answer and we can all evaluate it.

12         THE COURT:  I don't want to create unnecessary

13    embarrassment.

14         MR. KENDALL:  I understand, your Honor.

15         MR. FRANK:  The question asks whether they have been

16    charged with an offense other than a traffic violation.  In

17    two cases, it was assault and battery.  In one case, it was

18    possession of a class C substance, and one case it was

19    malicious destruction of property.  I don't think there's

09:17 20    anything ambiguous about it.

21         THE COURT:  We don't need to belabor this one at that

22    point.  When we get to those folks, we'll address the issue

23    then.  I want to know who from each party will be questioning

24    each juror.  If it changes midstream, let me know.

25         Mr. Frank, will it be you?

1          MR. FRANK:  No.  It will be Miss Kearney.

2          THE COURT:  For Mr. Abdelaziz?

3          MR. KELLY:  Myself.

4          THE COURT:  For Mr. Wilson?

5          MR. KENDALL:  It will be me, your Honor.

6          A few other guidelines before we begin.  I don't

7    expect to inquire of every potential juror about all of the

8    affirmative responses.  I will inquire about one or more and

9    then I will allow counsel to inquire.  I caution you once again

09:18 10   that potential jurors have rights of privacy.  If I think the

11   question is too invasive of the potential juror's right to

12   privacy, I'm going to instruct him or her not to answer.  So

13   keep in mind that, yes, you're entitled to know information

14   about these affirmative responses, but, at the same time, these

15   jurors are citizens who have been summonsed against their will

16   to serve as jurors and they do have rights of privacy.  They

17   ought to be respected.  Keep that in mind.

18          The other matter that I was thinking about is I expect

19   to remind each of the potential jurors when they take a seat

09:19 20   that they remain under oath.  Yesterday they took an oath.

21   Usually, when I have witnesses who return after an overnight

22   hiatus from testifying, the first thing I do is to remind a

23   witness that he or she remains under oath.  I'm going to do

24   that with respect to the jurors as they take their seats unless

25   counsel can think of some other way to accomplish this.  Of

1   course, it will be very repetitive.

2          Is there anything counsel wishes to say about that?

3          MR. FRANK:  No, your Honor.

4          MR. KELLY:  No, your Honor.

5          MR. KENDALL:  No, your Honor.

6          THE COURT:  Any other questions about how we expect to

7   proceed with this voir dire?

8          Mr. McAlear, anything from the jury coordinator's

9   perspective I should be reminded of?

09:20 10          MR. MCALEAR:  No, your Honor.

11          THE COURT:  If I reserve somebody, I need to instruct

12   that person who is going to be released to home not to do any

13   research, et cetera.  Did counsel have a chance to draft a

14   proposed written instruction that would be acceptable to all

15   sides?

16          MR. FRANK:  We did not.  We're working on it right

17   now.

18          THE COURT:  We don't have anybody yet to reserve.  It

19   does seem to me that we ought to not only tell them that they

09:20 20   can't do any independent research about the case overnight, but

21   a nice one paragraph synopsis of their obligations as a

22   reserved juror would be helpful.  Work on that.

23          MR. KELLY:  We will, your Honor.  Perhaps the Court

24   could just inquire if they had done any research last night to

25   make sure nothing has come up between last night and today.

```
 1              THE COURT:  If I do that times 70, it's going to
 2      lengthen the time.  If you want to remind me from time to time
 3      on a particular juror, I certainly will do that.
 4              Mr. McAlear reminds me, if we reserve a juror, we'll
 5      hold them in the back of the house in case after I have
 6      reserved there are questions that counsel have before we send
 7      them home.  We'll have a short period of time after we reserve
 8      the jurors for counsel to bring anything to my attention that
 9      they need to do outside the hearing of the juror.  Okay?
09:22 10             All right.  Let's call the first potential juror.
11              MR. FRANK:  Your Honor, we have our proposed
12      instruction.  We could e-mail it to the deputy.
13              THE COURT:  Has defense counsel looked at it?
14              MR. FRANK:  No.  Would it be possible to print it out
15      here and circulate it?
16              THE COURT:  I think perhaps we could do that.
17              MR. MCALEAR:  Juror No. 2, Keith Caito.
18              (Prospective juror enters.)
19              THE COURT:  Good morning, Mr. Caito.  You may remove
09:30 20     your mask if you want, but you don't have to.
21              PROSPECTIVE JUROR:  I think I will, your Honor.  Thank
22      you, sir.
23              THE COURT:  Mr. Caito, you're reminded that you remain
24      under oath.
25              PROSPECTIVE JUROR:  Yes, sir.
```

```
 1              THE COURT:  I just noticed one thing from your
 2    questionnaire, that you take a medication called sertraline.
 3    What is that for?
 4              PROSPECTIVE JUROR:  It's more mental health.  I deal
 5    with depression and anxiety.  It's like a Zoloft type, generic,
 6    that my doctor assigned me.
 7              THE COURT:  Does it have any effect on your ability on
 8    what's being said in a courtroom, for instance?
 9              PROSPECTIVE JUROR:  Not that I can think of, sir.
10    It's basically a mood balancer.
11              THE COURT:  You take it every day?
12              PROSPECTIVE JUROR:  Yes.  I take 150 milligrams every
13    day.
14              THE COURT:  Would that cause any problems being a
15    juror in this case?
16              PROSPECTIVE JUROR:  No.  I don't think so.
17              THE COURT:  Generally, Mr. Caito, can you decide this
18    case solely on the basis of the evidence that comes into this
19    courtroom and not on the basis of anything else?
20              PROSPECTIVE JUROR:  Yes.  Basically, anything that
21    would be said or shown or testimony, if I were here, I would
22    base my decision just on that.
23              THE COURT:  Any questions, counsel?  We'll start with
24    defendant Abdelaziz, Mr. Kelly.
25              MR. KELLY:  Good morning.  Thanks for being here.
```

1        PROSPECTIVE JUROR:  You're welcome.

2        MR. KELLY:  Is there anything about this case you've

3  seen in this questionnaire that suggests you couldn't be fair

4  to both sides?

5        PROSPECTIVE JUROR:  No, nothing I haven't seen.

6  Obviously, I haven't heard anything about it and I'm not going

7  to do any research on it, no news cycle.  I never heard of this

8  particular case.  I heard of more prominent ones out in

9  California.  I never heard of these, even though I know they're

09:32 10  similar.  Never heard of them.

11        MR. KELLY:  Thank you very much.  Thank you for coming

12  in.

13        THE COURT:  Mr. Kendall?

14        MR. KENDALL:  Good morning.  No questions, your Honor.

15        THE COURT:  Miss Kearney?

16        MS. KEARNEY:  Good morning, sir.  I noticed on your

17  questionnaire that you work in food service.

18        PROSPECTIVE JUROR:  Yes.

19        MS. KEARNEY:  I wanted to make sure I understand.

09:32 20  Would it be any hardship for you to serve on a jury potentially

21  up to 4 weeks?

22        PROSPECTIVE JUROR:  I don't work during the day.  I

23  work in the afternoon slash evening.  I usually work from about

24  four to 5:00 p.m. usually until about 1:00 a.m. and spend some

25  time at home to get to sleep.  Sometimes I have problems with

1   sleeping and I deal with a lot of just -- I don't have a

2   disease or something.  I have trouble sleeping.  I literally

3   the night before -- yesterday I worked and managed to get home

4   and get an hour and a half or 2 hours, so I was very tired with

5   this.  Work has been busy and tiring lately.  The last couple

6   Saturdays I worked 12-hour shifts.  We're getting to a busy

7   part of the year with football season here.

8           Dealing with that, as I told the Honorable Judge

9   Gorton, I deal with mental health, such as depression and

09:33 10   anxiety.  I've been dealing with a lot of depression lately and

11   deal with usual anxiety on a regular basis.  That's why I take

12   sertraline.  A lot of times how it effects me is being

13   physically and mentally tired a lot.  I deal with that a lot.

14   I'm obviously still awake-ish right now, of course, but I don't

15   get a lot of good sleep.

16           I don't work a day job.  It's different.  It's a

17   different mentality working late at night as opposed to during

18   the day.  Normally, right now, I was scheduled to work today at

19   12.  Normally, right now I'd still be trying to get ready for

09:34 20   work at this time.  Obviously I'm up here now, so of course I

21   made the obligation to come up here, of course.  It's

22   important.  If I were to work during that time, I obviously

23   don't know exactly.  I obviously told my manager about this and

24   he understood that I had to come up here and all that.  If I

25   were to come up here during the day, say 5 days a week, I would

1    have to do that and my manager wouldn't give me the time off at

2    night.  It would probably be come up here, do this, and then go

3    back to work and then work and come back.  It would probably be

4    a bit difficult on my end to be awake and sharp.  I don't think

5    it would really help me or help anybody else to be clear.  If I

6    were to go to school right now, I probably couldn't handle

7    something like that.  It would definitely effect me a lot

8    physically and mentally.

9              MS. KEARNEY:  Thank you.

09:35 10         THE COURT:  I'm hearing that you believe this would

11   cause you a hardship to serve on this jury.

12             PROSPECTIVE JUROR:  Probably not to the extent of

13   like -- it would definitely be tiring, affect me physically and

14   mentally.  Even with work, I work 40 plus hours a week.  Even

15   with that, it would be a little bit tiresome.  When I am tired

16   a lot, it does -- not my thoughts.  It effects me a lot.

17   People can tell I'm tired.  I see a therapist once a week.

18   She's noticed a couple weeks I've been really tired and been

19   depressed a lot lately.

09:36 20         THE COURT:  Mr. Caito, it does seem to me that this is

21   going to cause you a hardship serving on this jury for roughly

22   4 weeks, and that's what I believe it takes.  It's a full-time

23   job.  You need to be aware and not tired and able to

24   concentrate on evidence and able to get a good night's sleep so

25   you can continue to do that the next day.  It doesn't sound to

 1    me like your schedule is going to allow that.

 2           PROSPECTIVE JUROR:  No.  Unfortunately not.  If I had

 3    a day job and slept at night, I would be very honored to serve.

 4           THE COURT:  Thank you, Mr. Caito.  I'm going to excuse

 5    you from this jury.

 6           PROSPECTIVE JUROR:  Thank you, sir.

 7           (Prospective juror enters.)

 8           THE COURT:  Good morning, Miss Morris.  You may take a

 9    seat.  You may take your mask off if you choose to but you

09:38 10    don't have to.

11           PROSPECTIVE JUROR:  Okey-doke.

12           THE COURT:  Miss Morris, you're reminded that you

13    remain under oath.  I have looked at your questionnaire and I

14    understand that you live with compromised elderly parents.

15           PROSPECTIVE JUROR:  Correct.

16           THE COURT:  Would service on this jury cause you

17    hardship to as a result of that?

18           PROSPECTIVE JUROR:  It would cause me hardship because

19    I would have to isolate myself from being around so many

09:38 20    people.  I'm a full-time caregiver to my dad.

21           THE COURT:  I take it you feel that service on this

22    jury would be a hardship to you.

23           PROSPECTIVE JUROR:  Yes, being around so many people.

24           THE COURT:  I'm going to excuse you from this jury.

25    Thank you, Miss Morris.

1           PROSPECTIVE JUROR:  Thank you very much, your Honor.

2           (Prospective juror exits.)

3           (Prospective juror enters.)

4           THE COURT:  Good morning, Miss Lightbody.

5           PROSPECTIVE JUROR:  Good morning.

6           THE COURT:  Please be seated.  You're reminded that

7    you remain under oath.  You make take your mask off if you want

8    to but you don't have to.  It's up to you.

9           PROSPECTIVE JUROR:  Thank you.

09:39 10          THE COURT:  If you'd pull that microphone a little

11   close so we can hear.  Miss Lightbody, I understand that your

12   cousin's husband was a Boston detective, is that right?

13          PROSPECTIVE JUROR:  Yes.

14          THE COURT:  Would the fact that you have a distant

15   relationship to a law enforcement officer in any way affect

16   your ability to be fair and impartial in this case?

17          PROSPECTIVE JUROR:  No.

18          THE COURT:  You could decide this case solely on the

19   basis of evidence that comes into this courtroom and not on the

09:40 20   basis to any prior relationship to a law enforcement officer?

21          PROSPECTIVE JUROR:  Correct.

22          THE COURT:  You apparently work with a college coach

23   with respect to your son.  I'm not sure I understand that.

24          PROSPECTIVE JUROR:  Correct.  So I have a senior in

25   high school who is going to be a freshman in college come the

```
 1   fall of 2022.
 2         THE COURT:  Would the fact that he's involved in
 3   sports and about ready to go to college in any way affect your
 4   ability to be fair and impartial in this case, which of course
 5   involves allegations of fraudulent college admissions?
 6         PROSPECTIVE JUROR:  No.
 7         THE COURT:  Let me see if I can understand.  You think
 8   you can be fair and impartial and decide this case based solely
 9   on the evidence that comes into this courtroom and not on
10   anything else, is that right?
11         PROSPECTIVE JUROR:  Correct.
12         THE COURT:  Any questions for this potential juror?
13   Mr. Kelly?
14         MR. KELLY:  Good morning.  I represent Mr. Abdelaziz.
15   My name's Brian Kelly.  Thank you for coming in.
16         Simple question is, in reviewing this questionnaire,
17   is there anything in there that suggests to you that you
18   couldn't be fair to all sides?
19         PROSPECTIVE JUROR:  No.  There's nothing.  All voices
20   need to be heard.  You're innocent until proven guilty.
21         MR. KELLY:  Thank you very much.
22         THE COURT:  Mr. Kendall?
23         MR. KENDALL:  Good morning.  I'm Mike Kendall.  I
24   represent John Wilson.  No questions, your Honor.
25         THE COURT:  Miss Kearney?
```

1          MS. KEARNEY:  Good morning, Miss Lightbody.  With

2    respect to the college coach you're working with for your son,

3    how often does he meet with your son or what kind of work is he

4    doing?  If you could elaborate a little bit more.

5          PROSPECTIVE JUROR:  Sure.  It's a she.  He's only had

6    one meeting.  It's really just to keep him organized and just

7    giving him milestones through the college process, like saying,

8    hey, August 1st, the common app process is open.  You should

9    have your essay is done by this time, teacher recommendations

09:42 10   on this time.  So it's really just keeping him organized.  It's

11   really my husband and I forming that spreadsheet and kind of

12   having the columns and checklists and things of that nature,

13   but having someone other than his parents harping on him to

14   make sure that he's following each step in the process.

15          MS. KEARNEY:  Thank you.

16          THE COURT:  Thank you, Miss Lightbody.  I am going to

17   have you reserved.  We're not going to go forward with any

18   further procedure today.  The jury coordinator will tell you

19   what room you are to go.  You're going to be asked to come back

09:43 20   perhaps at a later time.  I caution you not to try to do any

21   independent research on this case.  Don't refer to the internet

22   or any of those electronic tools that help us in daily life.

23   You can't do this about this case because you're going to

24   decide eventually, if you're chosen as a juror, solely on the

25   basis of the evidence that comes into this courtroom and not on

1    the basis of any independent research.  Okay?

2              PROSPECTIVE JUROR:  That's correct.  Yes.

3              THE COURT:  The jury coordinator will tell you where

4    you need to go.

5              (Prospective juror exits.)

6              (Prospective juror enters.)

7              Good morning, Miss Layton.  You may be seated.  You

8    are reminded you're under oath.  You may take your mask off if

9    you choose, but you don't have to.  If you'd pull that

09:44 10   microphone a little closer to you so we can hear your answers.

11             Miss late on, I understand at least one of the

12   questions you answered affirmatively is that someone you know

13   or in your family was convicted of possession and theft and

14   served some time in jail.

15             PROSPECTIVE JUROR:  That's correct.

16             THE COURT:  Were you involved in the prosecution of

17   this person?  Was it a relative or someone in your family?

18             PROSPECTIVE JUROR:  It was my cousin, but I was not

19   involved.

09:45 20           THE COURT:  Have you talked to your cousin about

21   having served in prison?

22             PROSPECTIVE JUROR:  Not lately.

23             THE COURT:  Would the fact that somebody in your

24   family was involved in the criminal justice system in any way

25   affect your ability to be fair and impartial in this case,

1    which of course involves charges of a completely different kind

2    of criminal conduct?

3              PROSPECTIVE JUROR:  No.  I don't believe so.

4              THE COURT:  You could decide this case solely on the

5    basis of the evidence that comes into this courtroom and not on

6    the basis of anything has happened elsewhere?

7              PROSPECTIVE JUROR:  Yes.

8              THE COURT:  I understand that you played soccer or

9    somebody in your family played soccer in college?

09:45 10            PROSPECTIVE JUROR:  Yes, I did.

11             THE COURT:  Would the fact that these charges involve

12   allegations of falsifying records of sports prowess in any way

13   affect your ability to be fair and impartial in this case

14   having been a college athlete in your case?

15             PROSPECTIVE JUROR:  I can't say for sure one way or

16   know in what way way, but it would definitely play a factor.

17             THE COURT:  By "play a factor", what do you mean?

18             PROSPECTIVE JUROR:  I think it would depend on the

19   situation how it was falsified, did that person take someone

09:46 20           else's spot completely.

21             THE COURT:  So it would depend on the evidence that

22   comes before you and not on the basis of the fact that you're a

23   college athlete?

24             PROSPECTIVE JUROR:  I suppose so.

25             THE COURT:  That right?

```
 1            PROSPECTIVE JUROR:  Yes.

 2            THE COURT:  Any questions for this potential juror?

 3            MR. KELLY:  Yes.  Good morning.  I represent Mr. Aziz.

 4   You just said you suppose so.  Is there some hesitation that

 5   your prior playing status might affect your decision here?

 6            PROSPECTIVE JUROR:  I think it's a big thing that I

 7   was a student athlete.  I went through the process.  I was

 8   fully involved.  If someone had to take someone else's spot or

 9   someone was removed, just the kind of integrity of the student
09:47 10  athlete circumstance was questioned, I think I would have a

11   different mind-set than someone who wasn't involved at all.

12            MR. KELLY:  It was D3 you played?

13            PROSPECTIVE JUROR:  Yes.

14            MR. KELLY:  What position?

15            PROSPECTIVE JUROR:  Defense.

16            MR. KELLY:  Is anything about going through this

17   questionnaire suggest anything to you that would make you feel

18   like you couldn't be fair to the defense and the government?

19            PROSPECTIVE JUROR:  No.
09:47 20            THE COURT:  Mr. Kendall.

21            MR. KENDALL:  Hi.  I'm Mike Kendall.  I represent John

22   Wilson.  Thank you for coming in this morning.  We appreciate

23   your frankness of your answers.  I just wanted to ask a couple

24   of points.

25            You expressed concern if somebody's spot was taken.
```

1   Is this based upon -- I take it this is obviously based upon

2   your own experience as an athlete and your own process of going

3   through the college athletic system?

4          PROSPECTIVE JUROR:  Yes.

5          MR. KENDALL:  How many years did you play at Anna

6   Maria?

7          PROSPECTIVE JUROR:  Four.

8          MR. KENDALL:  I take it that prior knowledge and

9   experience is something you would make as part of your thinking

09:48 10  or analysis of the evidence.

11         PROSPECTIVE JUROR:  Absolutely.

12         MR. KENDALL:  It would be hard to separate?

13         PROSPECTIVE JUROR:  Probably, yes.

14         MR. KENDALL:  Appreciate your candor.

15         THE COURT:  Thank you.

16         MS. KEARNEY:  Do you feel your cousin was treated

17   fairly in the criminal justice system?

18         PROSPECTIVE JUROR:  Yes.

19         THE COURT:  Thank you, Miss Layton.  I'm going to ask

09:48 20  you to be reserved with the jury coordinator.  You're reminded

21   that if you are to be called back, please do not do any

22   independent research on this case.  That would be totally

23   inappropriate because you're going to decide this case, if you

24   are chosen as a juror, solely on the basis of the evidence that

25   comes into this courtroom and not on the basis of anything that

1    you found out about the case.  Okay?

2                PROSPECTIVE JUROR:  All right.

3                (Prospective juror exits.)

4                MR. KELLY:  Procedurally is now the time?

5                THE COURT:  Hold the next potential juror, please.

6                MR. KELLY:  We would move to excuse that juror for

7    cause.  We think her statements about her playing history

8    suggests to us that she cannot be fair in this case to our

9    client.  She seemed to have very firm beliefs about this case

09:49 10   involving taking a spot from somebody else.  We think her

11   answers reflected hostility to the defense side that we believe

12   justify a strike for cause, your Honor.

13               THE COURT:  Mr. Kendall?

14               MR. KENDALL:  I might add one point.  In some ways she

15   was a very responsible, honest person.  That's to be commended.

16   It shows a responsible person.  I think I would agree I had a

17   very light touch and she admitted freely she cannot separate

18   her prior experience and her out of court experience as a

19   college athlete in deciding this case.  She was very upfront

09:50 20   about that. I didn't push very hard.  I let her answer a fairly

21   open question.  I think that's the essential issue that

22   disqualifies somebody, if they're going to bring out of court

23   experience and things outside the evidence that they cannot

24   separate from their decision-making in this case that has

25   personal experience with the same facts in this case.  I think

1    it's a very strong basis to challenge her, your Honor.

2         THE COURT:  Miss Kearney or Mr. Frank.

3         MR. FRANK:  Your Honor, every juror brings life

4    experience to the case.  We can't just disqualify any juror

5    because they were a college athlete.  She said she could keep

6    an open mind and be impartial.  As Mr. Kendall said, there was

7    nothing about her answer that suggested a lack of integrity.

8    We don't think simply because she was a college athlete that

9    that's a disqualifier.

09:51 10        THE COURT:  I'm not going to exclude her for cause.  I

11   think she answered the questions that I asked about being able

12   to decide this case based solely on the evidence that comes

13   before this Court.  I take her answers as truthful.  She will

14   not be stricken for cause.

15        Call the next potential juror.

16        (Prospective juror enters.)

17        THE COURT:  Good morning, Mr. Ross.  You're reminded

18   you're under oath.  You may remove your mask, if you choose.

19   If you will pull the microphone closer to you so we can hear

09:52 20   your answers.

21        Mr. Ross, I understand that you were once before on

22   jury duty, is that right?

23        PROSPECTIVE JUROR:  Yes, sir.

24        THE COURT:  Would you tell me about that.

25        PROSPECTIVE JUROR:  It was a trial based on --

```
 1              THE COURT:  Civil trial.
 2              PROSPECTIVE JUROR:  Civil trial, using other people's
 3     money.
 4              THE COURT:  Do you remember what court it was?
 5              PROSPECTIVE JUROR:  Yes, the one down by State Street.
 6              THE COURT:  The state court, Suffolk Superior Court.
 7              PROSPECTIVE JUROR:  Yes, sir.  It was almost 15 years
 8     ago.  It's been a while.  The trial was about the infomercial
 9     where you say you use other people's money to make money.
09:52 10         THE COURT:  Do you remember how the case came out?
11              PROSPECTIVE JUROR:  Yes, sir.  They were found guilty.
12              THE COURT:  Liable.
13              PROSPECTIVE JUROR:  Liable, yes, sir.  They couldn't
14     come up with anybody that said, okay, use my money and I
15     benefitted from what you said.  In fact, it was the opposite.
16              THE COURT:  Would that experience, Mr. Ross, in any
17     way affect your ability to be fair and impartial in this case?
18              PROSPECTIVE JUROR:  I'd be fair.
19              THE COURT:  You could be fair in this case?
09:53 20         PROSPECTIVE JUROR:  Yes, sir.
21              THE COURT:  You also mentioned that someone in your
22     family at one point was a mailman for Harvard University.
23              PROSPECTIVE JUROR:  I am.
24              THE COURT:  Currently.
25              PROSPECTIVE JUROR:  One aspect.  Harvard has offices
```

1     in Brighton on Guest Street.  I'm the mailman for them.

2           THE COURT:  You understand that universities are

3     involved in this case.  Would the fact that you worked for

4     Harvard affect your ability to be fair and impartial in this

5     case?

6           PROSPECTIVE JUROR:  I don't work for Harvard.  I work

7     for the United States Post Office.  I deliver mail to one of

8     their offices.

9           THE COURT:  Would that connection in Harvard in any

09:53 10    way affect your ability?

11          PROSPECTIVE JUROR:  No.  It wouldn't affect my

12    ability.  I wanted to mention that because they said any kind

13    of ties.

14          THE COURT:  Absolutely correct to mention it.

15          Is there anything else that would prevent you from

16    being fair and impartial in this case that you can think of?

17          PROSPECTIVE JUROR:  No.

18          THE COURT:  Any questions, Mr. Kelly, for this

19    potential juror?

09:54 20    MR. KELLY:  Sure.  Thank you.  Good morning.  Thank

21    you for coming in.  I represent Mr. Aziz here.  Couple quick

22    questions.

23          You referenced the experience you had in that civil

24    case.

25          PROSPECTIVE JUROR:  Yes, sir.

```
 1              THE COURT:  Would you be comfortable understanding
 2      that this case is criminal and the burden of proof is beyond a
 3      reasonable doubt, whereas in a civil case that you sat on it's
 4      just more likely than not is the burden of proof?  Would you
 5      feel comfortable distinguishing between your prior service in a
 6      civil case and this one being criminal?  In a criminal case,
 7      the government has to prove things beyond a reasonable doubt.
 8      In a civil case, two people are suing each other over money.
 9      It's a different standard.  Are you comfortable with that?
09:55 10              PROSPECTIVE JUROR:  Yes, sir.
11              MR. KELLY:  This case will involve a lot of
12      discussions about college sports.  Do you follow any college
13      sports in general?
14              PROSPECTIVE JUROR:  I more follow the pro sports, not
15      really much on college sports, except for college basketball
16      where you do the bracket.  Just the NCAA bracket.  That's all
17      for my college sports following.  Then I just pick teams.  It
18      isn't like I follow teams.
19              MR. KELLY:  The March Madness stuff?  There's not much
09:55 20      around here.  We don't have good college teams here.
21              Anything about the questionnaire that would make you
22      not fair to all sides?
23              PROSPECTIVE JUROR:  No.  I think I would be able to
24      give a fair and honest effort.  Whatever happens, happens.
25              MR. KELLY:  Thank you.
```

```
 1              THE COURT:  Mr. Kendall.

 2              MR. KENDALL:  Good morning.  I'm Mike Kendall.  I

 3    represent John Wilson.  I have no questions.

 4              THE COURT:  Miss Kearney?

 5              MS. KEARNEY:  No questions.

 6              THE COURT:  Thank you, Mr. Ross.  I'll ask you to be

 7    reserved on this case.  That means Mr. McAlear will tell you

 8    where to go.  If you are called back, please do not do any

 9    research, independent research, on this case.  Don't try to

10    find out what's going on because you're going to decide this

11    case, if you're chosen as a juror, solely on the basis of

12    evidence that comes in this courtroom and not outside research.

13    Okay?

14              PROSPECTIVE JUROR:  Yes, sir.

15              THE COURT:  Thank you, Mr. Ross.

16              (Prospective juror exits.)

17              (Prospective juror enters.)

18              THE COURT:  Good morning, Mr. Ayles.  Please take a

19    seat.  You're reminded you're still under oath.  You may remove

20    your mask if you want to, but you don't have to.  Would you

21    speak right into the meek phone, please.

22              Mr. Ayles, I understand you have a job that requires

23    daily attention and guidance.  Would service on this jury

24    impose a hardship on you with respect to your job?

25              PROSPECTIVE JUROR:  More so on the city that I'm
```

```
  1    employed with.
  2              THE COURT:  You're employed by a municipality?
  3              PROSPECTIVE JUROR:  Correct.
  4              THE COURT:  What do you do for them?
  5              PROSPECTIVE JUROR:  I'm their chief financial officer,
  6    director of municipal finance.
  7              THE COURT:  So you could serve on this jury.
  8    Understand that you probably have to take a leave.  How many
  9    other employees in your department?
09:58 10             PROSPECTIVE JUROR:  I have about 25 that report within
 11    the finance department.
 12              THE COURT:  So the municipality wouldn't go bankrupt
 13    without you for 4 weeks?
 14              PROSPECTIVE JUROR:  No, sir.
 15              THE COURT:  Could you be fair and impartial in this
 16    case and decide this case solely on the basis of the evidence
 17    that comes into this courtroom and not on the basis of any
 18    outside influence?
 19              PROSPECTIVE JUROR:  I feel I could.
09:58 20             THE COURT:  Is there anything in the questionnaire
 21    that caused you concern about your ability to be fair and
 22    impartial in this case?
 23              PROSPECTIVE JUROR:  No, your Honor.
 24              THE COURT:  Mr. Kelly, any questions for this
 25    potential juror?
```

1          MR. KELLY:  Just quickly, your Honor.  Good morning.

2     Thanks for coming in.  I represent defendant Abdelaziz.

3          One of the questions on the questionnaire referenced

4     you saw an article recently in the Boston Globe.

5          PROSPECTIVE JUROR:  Yes.

6          MR. KELLY:  Anything about that stick in your memory?

7          PROSPECTIVE JUROR:  No.  I perused through the article

8     so I'd have a general understanding of what the case was about.

9     Didn't really focus on any of the details.

09:59 10          MR. KELLY:  Anything about that that you think would

11     make you favor one side over the other?

12          PROSPECTIVE JUROR:  No, sir.

13          MR. KELLY:  Would that article or anything else in

14     this questionnaire make you feel like you couldn't be fair to

15     defense and the government?

16          PROSPECTIVE JUROR:  No, sir.

17          MR. KELLY:  Nothing further.

18          THE COURT:  Mr. Kendall?

19          MR. KENDALL:  Good morning.  No questions, your Honor.

09:59 20          THE COURT:  Miss Kearney?

21          MS. KEARNEY:  Good morning, sir.  In your

22     questionnaire you referenced an incident where you were a

23     teenager.  I just wanted to ask you if there was anything about

24     that experience that might affect your ability to be fair and

25     impartial in this criminal trial.

1          PROSPECTIVE JUROR:  No.  Not about those, no.

2          THE COURT:  Did you feel you were treated fairly in

3     that experience?

4          PROSPECTIVE JUROR:  Yes.

5          THE COURT:  I also notice that in a prior position you

6     had some fundraising responsibility.  Can you elaborate on that

7     a little bit?

8          PROSPECTIVE JUROR:  Yes.  Prior to my role with the

9     municipality now, I was director of operations for a quasi-y

10:00 10    state quasi-y nonprofit that did fundraising and implemented

11    child abuse programs throughout the state, did some legislative

12    work.  So we raised money to help further those efforts.

13          MS. KEARNEY:  Did you personally have any fundraising

14    goals you had to meet?

15          PROSPECTIVE JUROR:  Not me personally.  The director

16    of development reported to me.  They were in charge of all the

17    fundraising activities.

18          MS. KEARNEY:  Thank you, sir.

19          THE COURT:  Thank you, Mr. Ayles.  I'll ask you to be

10:00 20    reserved and go with Mr. McAlear.  You are, of course,

21    instructed not to do any independent research in this case if

22    you were to be called back to sit as a juror.  You're going to

23    decide this case solely on the basis of the evidence that comes

24    into this courtroom.  Don't do any research in the meantime.

25          PROSPECTIVE JUROR:  Understood, your Honor.  Thank

```
 1   you.
 2            (Prospective juror exits.)
 3            (Prospective juror enters.)
 4            THE COURT:  Good morning, Miss Miville.  Is that how
 5   you pronounce it?
 6            PROSPECTIVE JUROR:  Close enough.
 7            THE COURT:  Miss Miville.  You're reminded you're
 8   under oath, Miss Miville.  You may remove your mask if you want
 9   to, but you don't have to.  Would you pull that microphone
10   close so we can hear you.
11            PROSPECTIVE JUROR:  Good morning.
12            THE COURT:  Good morning.  You mentioned you just
13   started a new job.  If you were chosen as a juror, you'd be out
14   of that job for probably 4 weeks.  Would that cause you a
15   hardship?
16            PROSPECTIVE JUROR:  Very much so.  I have a disabled
17   husband at home.  I'm the only income right now.
18            THE COURT:  I'm going to excuse you from this jury.
19   It's important for you to get off to a good start at your job.
20   It sounds to me --
21            PROSPECTIVE JUROR:  At my age, brand new.
22            THE COURT:  Your age is pretty young from my vantage
23   point, so don't worry about that.  I understand how this could
24   cause you a hardship.  I'm not going to require you to serve.
25   Thank you.  You're excused.
```

1           (Prospective juror exits.)

2           (Prospective juror enters.)

3           Good morning.  Is it Mr. Keohan.

4           PROSPECTIVE JUROR:  Keohan.

5           THE COURT:  Mr. Keohan, you're reminded that you

6    remain under oath.  You may remove your mask if you want to,

7    but you don't have to.

8           PROSPECTIVE JUROR:  Okay.

9           THE COURT:  Would you pull that microphone close so we

10:03 10   can all hear when you answer my questions.

11          Mr. Keohan, I understand that back in college you

12   played basketball and football.

13          PROSPECTIVE JUROR:  No.  My sons did.

14          THE COURT:  You had relations that played college

15   athletics, right?

16          PROSPECTIVE JUROR:  Yes.

17          THE COURT:  This case, of course, involves allegations

18   of falsely claiming to be athletes and getting into college

19   under false pretenses.  Would the fact that you have

10:04 20   connections with people that were actually athletes in college

21   in any way affect your ability to be fair and impartial in this

22   case?

23          PROSPECTIVE JUROR:  No.

24          THE COURT:  You could decide this case solely on the

25   basis of the evidence that comes into this courtroom and not on

```
 1    the basis of any prior knowledge of sports?
 2              PROSPECTIVE JUROR:  No.  Absolutely could.
 3              THE COURT:  Apparently, somebody in your family was
 4    convicted of operating under the influence sometime ago.
 5              PROSPECTIVE JUROR:  Correct.
 6              THE COURT:  Was that person involved in a criminal
 7    proceeding?
 8              PROSPECTIVE JUROR:  Yes.
 9              THE COURT:  Were you present?  Did you participate in
10    that?
11              PROSPECTIVE JUROR:  No.
12              THE COURT:  So would that involvement with the
13    criminal justice system, even as indirect as that was, in any
14    way affect your ability to be fair and impartial in this case?
15              PROSPECTIVE JUROR:  No.
16              THE COURT:  Apparently, your first cousin worked for
17    the FBI.
18              PROSPECTIVE JUROR:  Correct.
19              THE COURT:  Would the fact that you have connections
20    with law enforcement in any way affect your ability to be fair
21    and impartial in this case, which may involve the testimony of
22    law enforcement officers?
23              PROSPECTIVE JUROR:  Not at all.
24              THE COURT:  Any questions for this potential juror,
25    Mr. Kelly?
```

```
 1              MR. KELLY:  Sure.  Good morning.  Thanks for coming
 2    in.  I represent Mr. Aziz here.  What is your cousin's name?
 3              PROSPECTIVE JUROR:  Robert Oxley, O-x-l-e-y.
 4              THE COURT:  How long did he work for the bureau in
 5    Boston?
 6              PROSPECTIVE JUROR:  I think he actually was in
 7    Virginia first.  I think he's retired now.  He retired, is
 8    working security somewhere in Manchester.
 9              MR. KELLY:  Do you get along with your cousin?
10    PROSPECTIVE JUROR:  Yes.  I don't see him often.
11              MR. KELLY:  Anything about that, the fact he worked
12    for the FBI, if there are FBI agents in this case, would tend
13    to make you more or less receptive to the FBI agents'
14    testimony?
15              PROSPECTIVE JUROR:  No.  Not at all.
16              MR. KELLY:  Nothing in this questionnaire or
17    proceedings today suggest to you you can't be fair in this
18    case?
19              PROSPECTIVE JUROR:  No.
20              MR. KELLY:  You referenced sports questions there.
21    Are there any college sports in particular you follow?
22              PROSPECTIVE JUROR:  I'm a sports fan.
23              MR. KELLY:  Thanks.  Nothing more.
24              PROSPECTIVE JUROR:  You're welcome.
25              THE COURT:  Mr. Kendall?
```

10:06 10

10:06 20

1          MR. KENDALL:  Good morning.  I represent John Wilson.

2     Thank you for coming in.  I have no questions.

3          THE COURT:  Miss Kearney?

4          MS. KEARNEY:  Good morning, Mr. Keohan.

5          PROSPECTIVE JUROR:  Good morning.

6          MS. KEARNEY:  I want to ask you about your experience

7     with the criminal justice system.  Is there anything about your

8     history that might affect your ability to be fair and impartial

9     in terms of a criminal case?

10:07 10          PROSPECTIVE JUROR:  No.

11          MS. KEARNEY:  If you had any experience with the

12     criminal justice system yourself, do you feel you were treated

13     fairly?

14          PROSPECTIVE JUROR:  Sorry?

15          MS. KEARNEY:  If you had any experience with the

16     criminal justice system yourself, do you feel you were treated

17     fairly?

18          PROSPECTIVE JUROR:  Yes.

19          MS. KEARNEY:  Thank you.

10:07 20          THE COURT:  Thank you, Mr. Keohan.  I'm going to ask

21     you to be what we call reserved.  Mr. McAlear will show you the

22     room you're called to.  If you're called back on other

23     occasion, please don't try to do any research between now and

24     then on the internet.  That would be entirely inappropriate

25     because if you're chosen as a juror in this case, you're going

        1   to decide the case solely on the basis of evidence that comes

        2   into this courtroom and not on the basis of any independent

        3   research.  Okay?

        4           PROSPECTIVE JUROR:  Yes.

        5           THE COURT:  Thank you, Mr. Keohan.

        6           PROSPECTIVE JUROR:  Thank you.

        7           (Prospective juror exits.)

        8           MS. KEARNEY:  Your Honor, before the next juror comes

        9   in, we wanted to address something.

10:08  10           THE COURT:  Yes.

       11           MS. KEARNEY:  The government wants to strike Juror 18

       12   for cause.  He has a conviction for larceny more than $250,

       13   which would be a felony conviction.  He also has several drunk

       14   driving arrests that he was not fully forthcoming about.  He

       15   said it was with somebody else in his family, not him.

       16           MR. KELLY:  That's news to us.  This morning they

       17   didn't note that to us about Juror 18.  They noted others about

       18   CWOFs.  This is the first we're hearing that.  We would oppose

       19   that.

10:08  20           MS. KEARNEY:  I'm happy to share his criminal record.

       21   I just noticed it myself.

       22           MR. KENDALL:  I'd ask to bring the witness in and ask

       23   him why he didn't mention it.

       24           MR. KELLY:  It's a pretty common name.  Keohan in

       25   Boston is pretty common.  Let's see if it's really him.

```
 1                THE COURT:  Let's call Mr. Keohan back.  You may
 2      inquire of those.
 3                MS. KEARNEY:  Yes, your Honor.  I didn't want to
 4      embarrass him.
 5                THE COURT:  I understand.
 6                (Prospective juror enters.)
 7                THE COURT:  Thank you for coming in, Mr. Keohan.
 8      There are a few other questions that one of the attorneys would
 9      like to ask you.
10:09 10          PROSPECTIVE JUROR:  Okay.
11                THE COURT:  You may continue, Miss Kearney.
12                MS. KEARNEY:  Good morning again.  I wanted to
13      follow-up.  Were you recently charged in 2019 with leaving a
14      scene for property damage?
15                PROSPECTIVE JUROR:  With OUI.
16                MS. KEARNEY:  Did you plead guilty to that offense?
17                PROSPECTIVE JUROR:  I did.
18                MS. KEARNEY:  How many OUIs have you been charged
19      with?
10:10 20          PROSPECTIVE JUROR:  Two.
21                MS. KEARNEY:  In 1992, were you convicted of larceny?
22                PROSPECTIVE JUROR:  No.  I don't know where that came
23      from.
24                THE COURT:  Do you have any idea what that?
25                PROSPECTIVE JUROR:  I've never been charged with
```

```
 1    larceny.
 2              MS. KEARNEY:  With theft of any kind?
 3              PROSPECTIVE JUROR:  Nothing.
 4              MR. KELLY:  Thank you, sir.
 5              THE COURT:  Do defendants counsel wish to ask any
 6    questions?
 7              MR. KELLY:  No.  Not at all.  Thank you.
 8              THE COURT:  Mr. Kendall?
 9              MR. KENDALL:  Thank you.
10:10 10          PROSPECTIVE JUROR:  Could I ask about the larceny?
11              THE COURT:  Yes, of course.
12              PROSPECTIVE JUROR:  I've never been charged with
13    larceny.  I don't know where that came from.
14              THE COURT:  It was a misidentification as far as
15    you're concerned?
16              PROSPECTIVE JUROR:  Yes.  Absolutely.  How do I look
17    into that?
18              THE COURT:  That's a separate matter, Mr. Keohan.
19    That doesn't involve this case.  You're certainly entitled to
10:11 20      look into it if you want to.  Thank you, Mr. Keohan.
21              (Prospective juror exits.)
22              THE COURT:  Miss Kearney?
23              MS. KEARNEY:  The government still moves to strike
24    Mr. Keohan for cause given that he was not forthcoming with the
25    Court initially regarding his OUIs, and it also does appear he
```

1   has a larceny conviction on the rap sheet as the OUIs he

2   described.  Understanding he doesn't believe that that's him,

3   the rest of the convictions appear to match up.

4          THE COURT:  Mr. Kelly.

5          MR. KELLY:  On the questionnaire, he said OUI.  He

6   didn't lie about it.  He put it on the questionnaire.  If you

7   look at 31, he's not lying about that.  The larceny's not him.

8   Sometimes people get misidentified on rap sheets with people

9   with common names.  The Court can assess for itself his

10  credibility.  I respectfully admit there's nothing wrong with

11  that juror.

12         THE COURT:  Mr. Kendall?

13         MR. KENDALL:  I want to reaffirm what he said.  It

14  says 2-year Probation OUI class, misdemeanor, OUI.  If they

15  thought there was something about his response that wasn't

16  appropriate, they should have asked him.  As soon as it was

17  raised, he immediately said it.  He said there was a second.

18  He said there was property damage.  He was not looking to hide

19  anything from this Court.  Thank you.

20         THE COURT:  Miss Kearney?

21         MS. KEARNEY:  I believe the Court specifically asked

22  if it was him or someone else who was involved with the prior

23  OUI that he disclosed and he said it was someone else.

24         THE COURT:  I'm not going to excuse him for cause.  I

25  think he might have misunderstood my question.  He was under

```
 1    oath.  He said he could decide this case solely on the basis of
 2    the evidence that comes into this courtroom.  I understood him
 3    to be an honest person.  I'm not going to strike him for cause.
 4              We'll call the next potential juror.
 5              (Prospective juror enters.)
 6              THE COURT:  Good morning, Miss Williams.  Please be
 7    seated.  You're reminded that you remain under oath.  You may
 8    remove your mask if you want to, but you don't have to.  If
 9    you'll pull that microphone close in so we can hear what you
10    have to say.
11              Miss Williams, I understand you're a school teacher
12    and you've just started with your new year.  Where do you teach
13    school?
14              PROSPECTIVE JUROR:  Needham, Massachusetts.
15              THE COURT:  What level?
16              PROSPECTIVE JUROR:  Ninth graders and 12th graders.
17              THE COURT:  In the high school?
18              PROSPECTIVE JUROR:  Yes.
19              THE COURT:  What courses do you teach?
20              PROSPECTIVE JUROR:  Senior wellness will be yoga,
21    games, nutrition, and CPR.
22              THE COURT:  Would the fact that this is going to be
23    about a 4-week trial cause you hardship?  It may cause your
24    students hardship, I'm sure, but would it cause you a hardship?
25              PROSPECTIVE JUROR:  Just in terms of -- relationship
```

1    building because right now I'm establishing.  We would be

2    probably one rotation, one full rotation that I would miss

3    them.

4              THE COURT:  We ask jurors to undergo inconvenience

5    because all jury duty causes people inconvenience, but we don't

6    require them to undergo hardship.  Sometimes the difference

7    between inconvenience and hardship is very hard to draw.

8    There's a thin line.  I don't like to cause people hardship in

9    their employment, but it's a civic duty to serve on juries, so

10:15 10   it's very important that we have citizens willing to undergo

11   inconvenience.  I'm going to leave it up to you to tell me

12   whether this is going to be more in the nature of an

13   inconvenience for everybody or a real educational hardship for

14   you and/or for the Needham students that you won't be able to

15   teach.  You tell me.

16             PROSPECTIVE JUROR:  I think it's going to be, if

17   elected, an inconvenience, but I don't think it would be an

18   absolute hardship.

19             THE COURT:  So you would be willing to do it even

10:15 20   though you're going to be out of your job for 4 weeks or so, is

21   that right?

22             PROSPECTIVE JUROR:  Uh-hum.

23             THE COURT:  It wouldn't cause you to be concerned

24   while you're sitting here as a juror thinking about, oh, I

25   should be teaching my students?  Would it be too much to

```
 1    concentrate on this case?
 2              PROSPECTIVE JUROR:  To be honest, I would probably be
 3    thinking a little bit about that.
 4              THE COURT:  You think they could survive?
 5              PROSPECTIVE JUROR:  Yes.
 6              THE COURT:  Do you have any assistants that will take
 7    over your teaching duties for those 4 weeks?
 8              PROSPECTIVE JUROR:  Yes.
 9              THE COURT:  Are you confident they can do a good job?
10    PROSPECTIVE JUROR:  We have a really great staff at
11    Needham.
12              THE COURT:  You're confident they would do a good job
13    in your absence?
14              PROSPECTIVE JUROR:  Yes.
15              THE COURT:  You can decide this case on the evidence
16    brought into the courtroom and not on any influence from the
17    outside?
18              PROSPECTIVE JUROR:  Right.
19              THE COURT:  Is there anything in that questionnaire
20    that caused you concern when you were answering these questions
21    that you might not be able to be fair and impartial?
22              PROSPECTIVE JUROR:  No.  I don't think so.
23              THE COURT:  Mr. Kelly, any questions for this
24    potential juror?
25              MR. KELLY:  Sure.  Thank you for coming in.  I
```

represent Mr. Aziz here.  How many students do you teach?

PROSPECTIVE JUROR:  120.  Right now we're doing seniors.  I would be teaching seniors.

MR. KELLY:  So your class just started?

PROSPECTIVE JUROR:  Yes.  This would be our third day.

MR. KELLY:  If we have a 4-week trial, that's going to pose a major inconvenience, correct?

PROSPECTIVE JUROR:  It's going to be inconvenient.  I will not tell you any other way.

MR. KELLY:  You say you'd be thinking about your students.

PROSPECTIVE JUROR:  At way back there, yeah, but I think I'm competent to focus on what's in front of me.

MR. KELLY:  Is there any issues with the school system with you taking off a month at the start of the school year?

PROSPECTIVE JUROR:  I've never done this before so I've never checked in.  I just check in with my department head.  She said she would follow-up on what happens.

MR. KELLY:  So you never served on a jury before?

PROSPECTIVE JUROR:  I've never served on a jury that lasted more than just one day.

MR. KELLY:  You served on one-day juries?

PROSPECTIVE JUROR:  Yes.

MR. KELLY:  Was it criminal or civil?

PROSPECTIVE JUROR:  I'm thinking it was criminal.

```
 1              MR. KELLY:  This case is a criminal case where the
 2     burden is on the government to prove beyond a reasonable doubt.
 3     A civil case is they're arguing about money and they have to
 4     prove things more likely than not.  Are you okay with that
 5     distinction?
 6              PROSPECTIVE JUROR:  Yes.
 7              MR. KELLY:  Okay.  Nothing further.
 8              THE COURT:  Mr. Kendall?
 9              MR. KENDALL:  Good morning.  No questions.
10:18 10              THE COURT:  Miss Kearney?
11              MS. KEARNEY:  Good morning.  No questions, your Honor.
12              THE COURT:  Thank you, Miss Williams.  I'm going to
13     ask you to be reserved.  That means you're going to go with
14     Mr. McAlear to another room.  You may be called back to be
15     selected as a juror on this case.  I remind you not to try to
16     do any independent research.  Don't go on the internet and try
17     to discover facts that relate to this case.  If you are chosen
18     to be a juror, you're going to decide the case solely on the
19     basis of the evidence that comes into this courtroom and not on
10:19 20     the basis of anything you could find on the internet.  Okay?
21              PROSPECTIVE JUROR:  So just referring back to your
22     question, can I ask one?
23              THE COURT:  Yes.
24              PROSPECTIVE JUROR:  Should I contact my school system
25     to see their feelings?
```

1    THE COURT:  Mr. McAlear will tell you about that.  You

2  haven't been selected as a juror, but you haven't been excused

3  either.  You're in limbo at this stage, along with a bunch of

4  other people.  We'll certainly let you know as soon as we can.

5  Thank you, Miss Williams.

6         (Prospective juror exits.)

7    MR. KELLY:  Your Honor, with respect to that juror,

8  defendants would move to strike for cause given her teaching

9  120 students and her hesitation I observed on whether her full

10:20 10  attention could be on this trial and this case.  We would move

11  to strike her for cause.

12    THE COURT:  Miss Kearney?

13    MS. KEARNEY:  Your Honor, she was clear responding to

14  your questions that, while it would be an inconvenience, it

15  would not be a hardship and would be able to focus on the

16  evidence.  Given that, we would not.

17    THE COURT:  I'm not going to strike her for cause.

18  Bring in the next potential juror.

19         (Prospective juror enters.)

10:21 20    THE COURT:  Good morning.  Is it Miss Heyl?

21    PROSPECTIVE JUROR:  Heyl.

22    THE COURT:  Miss Heyl, please be seated.  You may take

23  your mask off, but you don't have to.  Miss Heyl, I understand

24  you teach at a community toddler center, is that right?

25    PROSPECTIVE JUROR:  Yes, through a community action

```
 1   agency.  I'm in one of their daycare centers, for lack of a
 2   better.
 3           THE COURT:  Service on this jury would be for about
 4   4 weeks.  Would that be a hardship?
 5           PROSPECTIVE JUROR:  It's kind of difficult.  We're
 6   doing home visits now and staffing has been tight with the way
 7   COVID's been.  Currently, at our small site, we have one
 8   teacher with symptoms and two others with other stuff.  We are
 9   a big agency.  They have been able to find people to cover.  It
10   all depends.  COVID's been really tough.
11           THE COURT:  It sounds to me like it would be a real
12   potential for a hardship.
13           PROSPECTIVE JUROR:  It could be, yes.
14           THE COURT:  I'm going to excuse you from this jury.
15   You have an important job.
16           PROSPECTIVE JUROR:  Thank you.
17           THE COURT:  Even though jury service is very important
18   and I hope you will do it another time because it's one of the
19   most important civic duties we have, I think this sounds like
20   this is not the appropriate time for you to be sitting on a
21   jury for 4 weeks.  Thank you, Miss Heyl.
22           (Prospective juror exits.)
23           (Prospective juror enters.)
24           THE COURT:  Is it Miss LaQuerre?
25           PROSPECTIVE JUROR:  No.  It's a bad English lesson.
```

10:22 (line 10)
10:22 (line 20)

 1    Q-U is a qua, but in French, it's a K.  It's LaQuerre.

 2          THE COURT:  Thank you for helping me out.

 3    Miss LaQuerre, you're reminded you're under oath.  You may

 4    remove the mask if you want.  You can, but you don't have to.

 5          PROSPECTIVE JUROR:  I'll remove it to make it easier.

 6          THE COURT:  Miss LaQuerre, you mentioned that your job

 7    is supervising children in a classroom.

 8          PROSPECTIVE JUROR:  Yes.

 9          THE COURT:  If you are chosen as a juror in this case,

10:24 10    you wouldn't be able to do that for about 4 weeks.  Will that

11    cause you and/or your class a hardship?

12          PROSPECTIVE JUROR:  Yeah.  I was hasty with answering

13    the questionnaire.  It would be a hardship because of COVID

14    where we're back in the building.  There's no more remote.  The

15    kids have a lapse in learning.  We're trying so hard to get

16    everyone up to par.  Let's face it.  People are still nervous

17    about being in a building and close quarters.  We're not 6 feet

18    away.  We're 3 feet away.  You can't.

19          THE COURT:  With kids.  Yes.

10:25 20          PROSPECTIVE JUROR:  So that will be very difficult.

21          THE COURT:  You are an important cog in this whole

22    school.  It comes through on the paper.

23          PROSPECTIVE JUROR:  No.  I wouldn't say that.

24    Everyone's role's important.  I'm not way up there by no means.

25    I'm in the special ed department.  I support children on

1  Individual Education Plans, so they need you in the classroom.

2  I'm legit in the classroom supporting probably eight students

3  in each class I go through the whole day.  I have a schedule.

4  They need your help.  Some have issues with attention-deficit.

5  Got to keep them on task.  They need that consistency.  I role

6  model for them to be.

7        THE COURT:  If you were not there for 4 weeks, who

8  would do your job?

9        PROSPECTIVE JUROR:  That's the problem.  I'm not sure.

10 Subs right now are nowhere to be found.

11       THE COURT:  I'm going to excuse you from this jury

12 because I think you have a very important job.

13       PROSPECTIVE JUROR:  Thank you so much.  That's nice of

14 you to say that.

15       THE COURT:  The fact that we lost a year of education

16 and you're trained in this and these kids need you as opposed

17 to a substitute, it's very important for you to do your civic

18 duty and serve on juries, but I think your job now is more

19 important.  I'm going to excuse you from this jury.

20       PROSPECTIVE JUROR:  Thank you so much.

21       THE COURT:  I'll try to remember that in the future.

22       (Prospective juror exits.)

23       (Prospective juror enters.)

24       THE COURT:  Good morning, Mr. Gately.  You may be

25 seated.  You are reminded you're under oath.  You may take your

```
 1    mask off if you want to, but you don't have to.
 2              PROSPECTIVE JUROR:  Thank you.
 3              THE COURT:  Mr. Gately, I understand you're retired.
 4    What are you retired from?
 5              PROSPECTIVE JUROR:  I was working at Trader Joe's.
 6              THE COURT:  At one point, you had a management or
 7    supervisory experience or started your own business.
 8              PROSPECTIVE JUROR:  I did.
 9              THE COURT:  Tell me about that.
10:28 10         PROSPECTIVE JUROR:  I had a vending business for about
11    20 years.
12              THE COURT:  What kind of business?
13              PROSPECTIVE JUROR:  Vending machines.  My brother and
14    I sold out.
15              THE COURT:  You understand how it is to run a
16    business.
17              PROSPECTIVE JUROR:  Oh, yeah.
18              THE COURT:  Would any of your experiences in any way
19    that you told us about in this questionnaire affect your
10:28 20    ability to be fair and impartial in this case?
21              PROSPECTIVE JUROR:  No.
22              THE COURT:  So you could decide this case solely based
23    on the evidence that comes into this courtroom and not on the
24    basis of anything you've heard outside of it; is that fair to
25    say?
```

```
 1              PROSPECTIVE JUROR:  Yes, your Honor.
 2              THE COURT:  Any questions for this potential juror,
 3      Mr. Kelly?
 4              MR. KELLY:  Sure.  Quickly.  Good morning, sir.
 5      Thanks for coming in today.  I represent Mr. Aziz here.  I
 6      noticed one of the things in the questionnaire indicated you
 7      had served on a civil trial before, right?
 8              PROSPECTIVE JUROR:  Yes.
 9              THE COURT:  This case is, of course, a criminal trial
10:28 10 where the proof of standard is beyond a reasonable doubt.
11      You're comfortable with the distinction between the criminal
12      and civil trial?
13              PROSPECTIVE JUROR:  Yes, I am.
14              MR. KELLY:  Thanks.
15              THE COURT:  Mr. Kendall?
16              MR. KENDALL:  No questions.
17              THE COURT:  Miss Kearney?
18              MS. KEARNEY:  Good morning, sir.  I wanted to
19      follow-up on one question in the questionnaire.  Have you or
10:29 20 anyone you're close to had any experience with the criminal
21      justice system before?
22              PROSPECTIVE JUROR:  No.
23              MS. KEARNEY:  You personally have never been arrested
24      or charged with a crime?
25              PROSPECTIVE JUROR:  I had a couple of DUIs when I was
```

```
 1    young.
 2              THE COURT:  Have you had any recent arrests?
 3              PROSPECTIVE JUROR:  No.
 4              MS. KEARNEY:  Were you ever charged with assault and
 5    battery on a family member?
 6              PROSPECTIVE JUROR:  Yes, I was.
 7              MS. KEARNEY:  When was that?
 8              PROSPECTIVE JUROR:  I would say six or 7 years ago.
 9              MS. KEARNEY:  Anything about that prior experience
10    that you felt were you treated unflair at all?
11              PROSPECTIVE JUROR:  No.
12              MS. KEARNEY:  Anything about that experience that
13    would affect your ability to be fair and impartial in this
14    trial?
15              PROSPECTIVE JUROR:  Not at all.
16              MS. KEARNEY:  Thank you.
17              THE COURT:  Any further questions from counsel?
18              MR. KELLY:  No, your Honor.
19              THE COURT:  I'll reserve you for the jury.  I'll have
20    you go with Mr. McAlear.  If you're called back on another day,
21    please do not do any independent research on this case, looking
22    at the internet.  You understand that would be totally
23    inappropriate because you have to decide this case, if you're
24    chosen to be a juror, solely on the basis of the evidence that
25    comes into this courtroom and not on the basis of anything that
```

1 you learn outside.  You understand that?

2 　　　　PROSPECTIVE JUROR:  I saw it on the news last night

3 and I shut it off.

4 　　　　THE COURT:  Thank you.  Thank you, Mr. Gately.

5 　　　　(Prospective juror exits.)

6 　　　　THE COURT:  Miss Kearney?

7 　　　　MS. KEARNEY:  Your Honor, the government moves to

8 strike Juror No. 22 for cause.  While he did disclose today

9 some of his prior criminal history, he did not disclose it in

10:31 10 the questionnaire, even though that was under oath, and then he

11 also failed to disclose he was arrested as recently as 2018 for

12 assault and battery.  So given that, the government moves to

13 strike him.

14 　　　　MR. KELLY:  We would oppose that, your Honor.  First

15 of all, when they're filling out these questionnaires, not all

16 of them have Harvard Ph.D. degrees.  It's a lot of time

17 pressure to fill them out.  He was very candid when asked about

18 the question.  These CWOFs are not convictions.  He seemed open

19 and acknowledged it.  He seemed like a fair juror.  I don't

10:31 20 think it rises to the level of excuse for cause.  They may not

21 like this juror and may strike him later, but this is not

22 cause.

23 　　　　THE COURT:  Mr. Kendall?

24 　　　　MR. KENDALL:  I agree with Mr. Kelly.  People come

25 from all walks of life.  People don't work with paper and

1    respond to this paper as what others might do.  What I saw most

2    important is he admitted all the questions she asked him,

3    acknowledged it, and then said he didn't think he was treated

4    unfairly.  I thought that had a real sense of responsibility

5    and sort of candor about it.  He didn't say it was this or

6    that.  He wasn't looking to make excuses.  He said the

7    system -- he said he was not treated unfairly.  I think that's

8    probably the single most important point we need to do when

9    evaluating him.

10:32 10          MS. KEARNEY:  Your Honor, two follow-up points.  I

11   began by asking the juror whether he or anyone he knew had ever

12   been arrested or involved in the criminal justice system and he

13   said no.  It was only when I prompted him with specific past

14   arrests that he became candid with the Court.

15          On top of that, he does have a continuance without a

16   finding, which, for assault and battery, which is a felony, as

17   recently as 2008, under the sentencing guidelines those are

18   treated as convictions with the Probation Office.  I'm also

19   familiar with the Sampson case Judge Sorokin was dismissing

10:33 20   jurors consistent with the jury office's policy that CWOFs were

21   treated as felony convictions.

22          MR. KELLY:  Just briefly, when the government goes and

23   files those 851 enhancements based on prior convictions for

24   drugs, they can't use CWOFs.  It's not the law.  These CWOFs

25   under the state system, as I've learned from my esteemed

```
 1    counsel, Mr. Sheketoff, they're not convictions.  He was
 2    candid.  Courtrooms can make people nervous.  He was very
 3    up-front.  We don't think this rises to the level of cause,
 4    your Honor.
 5            THE COURT:  I agree with defendants.  I'm not going to
 6    excuse him for cause.
 7            Call the next potential juror.
 8            (Prospective juror enters.)
 9            THE COURT:  Good morning, Miss Nelson.  You're
10    reminded you're still under oath.  You may remove your mask if
11    you want to.  Please pull the microphone so we can hear you.
12            PROSPECTIVE JUROR:  Absolutely.
13            THE COURT:  I understand that you are a caretaker for
14    your mother who is ill.  Would 4 weeks on a jury cause you
15    hardship to serve on this jury?
16            PROSPECTIVE JUROR:  Yes.  She was diagnosed with ALS.
17            THE COURT:  A very, very serious disease.
18            PROSPECTIVE JUROR:  It's awful.  Her husband is
19    15 years older than she is.  He turns 83 tomorrow.
20            THE COURT:  Sort of a young guy.
21            PROSPECTIVE JUROR:  I just moved them from South
22    Carolina to Quincy.  She lives in Marina Bay, which is amazing.
23    I live in Southie here.  It's only 10 minutes.  I've just been
24    there every day.  We're getting them some home healthcare but
25    literally the first person is coming today for hours.  I was
```

10:34 (line 10)
10:35 (line 20)

1    hoping to be there to meet and help.

2         THE COURT:  It sounds to me like this would be a

3    hardship for you to serve on this jury.

4         PROSPECTIVE JUROR:  Yes.

5         THE COURT:  I'm going to excuse you.  You have very

6    serious and important duties.  I wish you good luck.  I hope at

7    a later time you will be willing to serve on a jury because

8    it's a very important job.

9         PROSPECTIVE JUROR:  I'm very interested in it, to be

10:35 10   honest.  It's my mom.

11        THE COURT:  I think you have more pressing duties at

12   this point.  Thank you, Miss Nelson.

13        (Prospective juror exits.)

14        MS. KEARNEY:  Your Honor, before we begin with the

15   next juror, I just wanted to tell the Court that he has a prior

16   criminal history that he did not disclose in his questionnaire.

17        THE COURT:  This is Mr. Diaz?

18        MS. KEARNEY:  Yes, Juror 27.  He was charged in 2003

19   for use without authority.  That was a CWOF.  And destruction

10:36 20   of property, from the same date, that was also a CWOF.  He did

21   not disclose it on his questionnaire.  If it would be possible

22   for the Court to inquire about it, because I think it's awkward

23   for me to do so.

24        THE COURT:  Fair enough.  Mr. Kelly.

25        MR. KELLY:  2 points.  A, the CWOF is not a

conviction.  B, he referenced something more serious about a

felony.  I assume that's a family member because it would have

been on a rap sheet.  It's not like he was hiding his

connection to law enforcement.  Attempted murder, a relative or

friend of the family or someone was arrested for.

THE COURT:  So what is it that counsel is asking of

the Court?  Miss Kearney would like me to inquire about the

someone convicted of attempted murder matter, is that right?

MS. KEARNEY:  In his own personal record, your Honor,

that he did not disclose in the questionnaire.

THE COURT:  What was that record again?

MS. KEARNEY:  He has two convictions, both related to

the same incident in 2003, one for use without authority and

one for malicious destruction of property.

THE COURT:  What was the first one?

MS. KEARNEY:  Use without authority, using someone's

car.

THE COURT:  A vehicle?

MS. KEARNEY:  Yes.

MR. KELLY:  These are CWOFs.  If they want to ask

difficult questions, they should ask the questions.  These are

CWOFs, not convictions.

MS. KEARNEY:  If this juror ends up on the jury, it's

awkward to have the government question him about his criminal

history when he has not already disclosed on his questionnaire.

1          THE COURT:  Mr. Kendall?

2          MR. KENDALL:  You won't know it by his name but my

3    client is Hispanic.  I don't want people being thrown off and

4    have an unrepresentative jury unless there's really good

5    grounds.

6          THE COURT:  Call the potential juror.

7          (Prospective juror enters.)

8          THE COURT:  Good morning, Mr. Diaz.  Please have a

9    seat.  You're reminded that you remain under oath.  You may

10:39 10  remove the mask if you wish, but you don't have to.  Please

11   pull that microphone close enough so we can hear.

12         Mr. Diaz, I understand in response to one of the

13   questions you mentioned that someone you know was convicted of

14   attempted murder or assault about 10 years ago.

15         PROSPECTIVE JUROR:  Correct.

16         THE COURT:  Can you tell me about that.

17         PROSPECTIVE JUROR:  It's a cousin of mine.  I don't

18   remember what the actual charge is because it was so long ago.

19   That's what it was, one or the other.

10:39 20  THE COURT:  Were you in any way involved in that

21   prosecution?

22         PROSPECTIVE JUROR:  No.  He's just a relative.  It had

23   nothing to do with me.

24         THE COURT:  However, apparently, there is a record

25   that you were charged back in 2003, which was continued without

1    a finding, but involved a conviction involving use without

2    authority of a vehicle?

3              PROSPECTIVE JUROR:  Yes.

4              THE COURT:  Would you tell me about that and why

5    didn't you bring that up on your questionnaire?

6              PROSPECTIVE JUROR:  Honestly, I completely forgot

7    about that.  That happened when I was a teenager.  I forgot.

8              THE COURT:  Would you tell me about what it was.

9              PROSPECTIVE JUROR:  I was just in a stolen car.  We

10:40 10   were pulled over.

11             THE COURT:  Was there another charge in addition to

12   the use without authority?

13             PROSPECTIVE JUROR:  Not that I recall.  Honestly, I

14   don't remember.

15             THE COURT:  What was the ultimate result of that case?

16             PROSPECTIVE JUROR:  Community service.

17             THE COURT:  How much community service, if you

18   remember?

19             PROSPECTIVE JUROR:  It was one day, I believe.

10:40 20        THE COURT:  You were not imprisoned at all?

21             PROSPECTIVE JUROR:  No.

22             THE COURT:  Is there anything on that questionnaire

23   that would affect your ability to be fair and impartial in this

24   case?

25             PROSPECTIVE JUROR:  No.

```
 1              THE COURT:  Do you believe that you could be fair and
 2      impartial and determine this case solely on the basis of the
 3      evidence that comes into this courtroom and not on the basis of
 4      anything that's happened outside of the courtroom?
 5              PROSPECTIVE JUROR:  Yes.
 6              THE COURT:  Any questions for this potential juror?
 7      Mr. Kelly?
 8              MR. KELLY:  Just briefly.  Thanks for coming in.  I
 9      represent Mr. Aziz here.  A lot of the case will involve
10:41 10  college sports.  Do you follow college sports at all?
11              PROSPECTIVE JUROR:  Not really, no.
12              MR. KELLY:  Thanks.  Nothing further.
13              THE COURT:  Mr. Kendall?
14              MR. KENDALL:  Thank you for coming in.  No questions,
15      your Honor.
16              THE COURT:  Miss Kearney?
17              MS. KEARNEY:  Good morning, Mr. Diaz.  I wanted to
18      follow-up on some of the questions the judge asked you.  Was
19      there anything about your experience in the criminal justice
10:41 20  system or your cousin's experience that you felt you or your
21      cousin were treated unfairly?
22              PROSPECTIVE JUROR:  No.
23              THE COURT:  Thank you, Mr. Diaz.  You may go with
24      Mr. McAlear to the so-called reserve room.  If you are called
25      back, you are reminded, please do not try to do any independent
```

1    research on this case.  That would be inappropriate.  If and

2    when you are chosen as a juror in the case, you're going to

3    decide the case based solely on the basis of the evidence that

4    comes into this courtroom and not on the basis of anything

5    outside.  So don't do any independent research.  Okay?

6            PROSPECTIVE JUROR:  Sure.

7            THE COURT:  Thank you, Mr. Diaz.

8            (Prospective juror exits.)

9            (Prospective juror enters.)

10:43 10      THE COURT:  Good morning, Mr. Williams.  Please be

11    seated.  You're reminded that you remain under oath.  You may

12    remove the mask if you want to, but you don't have to.

13            PROSPECTIVE JUROR:  Sure.

14            THE COURT:  Mr. Williams, I understand that you

15    actually look after your children.  Your wife works full-time,

16    is that correct?

17            PROSPECTIVE JUROR:  Yes.  She works Monday through

18    Thursday and Saturdays.  She usually works in the evenings or

19    afternoon/evenings.  She'll handle morning stuff.  I get to

10:43 20    work from home Monday through Thursday and go to the office on

21    Fridays.  I get to either pick them up from the bus stop or if

22    she's busy, I can drive them to school.

23            THE COURT:  So it's a dual effort?

24            PROSPECTIVE JUROR:  It is.  It's all hands on deck at

25    all times.

```
 1              THE COURT:  Was there anything in the questionnaire
 2    that gave you pause as to your ability to be fair and impartial
 3    in this case?
 4              PROSPECTIVE JUROR:  No.  Honestly, I don't even know
 5    what this case is about.  I know you said fraud.
 6              THE COURT:  You've heard about the case generally but
 7    not this particular part of it?
 8              PROSPECTIVE JUROR:  No.  I've not heard about the case
 9    at all.
10:44 10         THE COURT:  Is there any reason that you would not be
11    able to be fair and impartial in this case?
12              PROSPECTIVE JUROR:  No.
13              THE COURT:  Any questions for this potential juror?
14    Mr. Kelly?
15              MR. KELLY:  Good morning.  I'm Mr. Kelly.  I represent
16    Mr. Aziz in this matter.  Thank you for coming in today.  I
17    guess the question is about the schedule really.  This is a --
18    we're estimating it's a 4-week trial.  Sometimes things go
19    shorter, hopefully.  Would a 4-week commitment in this federal
10:45 20    court on this matter be problematic to your home situation to
21    your children?
22              PROSPECTIVE JUROR:  Somewhat.  I don't have a lot of
23    people to help.  My mom lives nearby but she works also.  She's
24    covering for me today.  She's going to work from my house.
25    She's going to get my daughter off to the bus today while I'm
```

1    here.  It's not impossible but it would be hard to do.

2              THE COURT:  Mr. Kendall?

3              MR. KENDALL:  Good morning.  No questions.

4              THE COURT:  Miss Kearney?

5              MS. KEARNEY:  No questions.

6              THE COURT:  Maybe I should follow-up on that,

7    Mr. Williams.  We don't want to cause you hardship.  We know

8    that jury duty does cause inconvenience, sometimes serious

9    inconvenience, but there's a difference between inconvenience

10:45  10   and hardship.  Sometimes it's a very close call.  I can't make

11   that call.  Only you can.  I don't want to cause hardship in

12   your family or your employment.  You tell me.  Is it going to

13   be a serious inconvenience for three or 4 weeks or a real

14   hardship?

15             PROSPECTIVE JUROR:  I think it would be a hardship.

16   I'd have to get someone to essentially make sure they were at

17   my house to get my daughter off the bus, and I don't know if --

18   depending on when the trial started, to hire someone to be a

19   nanny for a month.

10:46  20             THE COURT:  It's going to be a hardship.  I'm going to

21   excuse you from this jury.  I hope you will come at some time

22   when it's less inconvenient for you and serve as a juror.  I

23   think this is not the right case.

24             PROSPECTIVE JUROR:  Okay.  Thank you.

25             THE COURT:  Thank you, Mr. Williams.  You're excused.

1          (Prospective juror exits.)

2          (Prospective juror enters.)

3          THE COURT:  Good morning, Miss Elwell.  Please be

4     seated.  You're reminded that you remain under oath.  You may

5     remove your mask if you want to, but you don't have to.

6          PROSPECTIVE JUROR:  Okay.

7          THE COURT:  Miss Elwell, you mentioned that you need

8     to work full-time.  If you are chosen for this jury, it will be

9     about a 4-week trial.  Is that going to cause you financial

10:47 10    hardship?

11          PROSPECTIVE JUROR:  Yes, it will, unfortunately.

12          THE COURT:  I'm not going to cause you financial

13    hardship.  I'm going to excuse you from this jury.  Jury duty

14    is a very important civic duty.  I hope at some stage you'll be

15    willing to do so.  I think this case, being as long as it's

16    going to be, would cause you financial hardship and I don't

17    think we ought to do it.

18          PROSPECTIVE JUROR:  I agree.  I wish it was a

19    different time.

10:48 20          THE COURT:  Thank you, Miss Elwell.  You're excused.

21          (Prospective juror exits.)

22          THE COURT:  Counsel, we're going to take a break in

23    about 10 minutes.  We'll go to about 11 and then take a

24    15-minute recess.

25          (Prospective juror enters.)

1          THE COURT:  Good morning, Miss Hyde.

2          PROSPECTIVE JUROR:  Good morning.

3          THE COURT:  You may be seated.  You are reminded

4    you're under oath.  You may remove your mask if you want to,

5    but you don't have to.

6          Miss Hyde, you planned a 2-week vacation in October,

7    is that right?

8          PROSPECTIVE JUROR:  Correct.  My brother is getting

9    married.

10:49 10          THE COURT:  This case is going to go beyond that.  I

11   don't want to interfere in an important family event.  I will

12   excuse you from this trial.  That doesn't excuse you from all

13   trials.  I hope at a less inconvenient time you will serve as a

14   juror.  It's a very important civic duty.  I think this case is

15   going to go beyond the time when you have a commitment.  You're

16   excused.

17          PROSPECTIVE JUROR:  Great.  Thank you.

18          (Prospective juror exits.)

19          (Prospective juror enters.)

10:50 20          THE COURT:  Good morning, Mr. Eddy.  Please be seated.

21   You are reminded that you remain under oath.  You may remove

22   the mask if you want to, but you don't have to.  Mr. Eddy,

23   would 4 weeks on this trial cause you a hardship financially or

24   otherwise?

25          PROSPECTIVE JUROR:  I don't believe so.

1          THE COURT:  You mentioned that you or someone that you

2    are close to is employed by a police department.  Would the

3    fact that you have a connection with law enforcement in any way

4    affect your ability to be fair and impartial in this case?

5          PROSPECTIVE JUROR:  No.

6          THE COURT:  Can you decide this case solely on the

7    basis of the evidence that comes into this courtroom and not on

8    the basis of any outside influence or anything else that's

9    happened in your life?

10:51 10          PROSPECTIVE JUROR:  I believe so.  I do think one of

11   the questions I answered on the questionnaire was about a

12   general perception of people who may have certain advantages in

13   aspects of life in terms of college admission.  That is

14   something that's based on life experience in my mind, but I'll

15   certainly do my best.

16          THE COURT:  The point is that you haven't heard any

17   evidence about these two particular defendants.

18          PROSPECTIVE JUROR:  Correct.

19          THE COURT:  They start out absolutely innocent.  The

10:51 20   government is required to prove beyond a reasonable doubt the

21   charges that they've made against them.  Whatever your general

22   concept of people of wealth or whatever doesn't count in this

23   case because these individuals are entitled to be judged on the

24   facts pertaining to them.  Can you tell me that you can decide

25   this case solely on the basis of the evidence that comes into

          1    this courtroom and not on any preconceived ideas about college

          2    admission?

          3              PROSPECTIVE JUROR:  I believe that I could.

          4              THE COURT:  Mr. Kelly, any questions?

          5              MR. KELLY:  Sure.  Good morning, Brian Kelly,

          6    representing Mr. Aziz here.

          7              A follow-up from the Court's question there.  You

          8    understand this is a criminal case with specific charges and

          9    deciding if the wealthy people have more advantages than

10:52    10    others.  That's not the issue, whether that's fair or not.

         11    You're comfortable serving in a case like this?

         12              PROSPECTIVE JUROR:  Yes.  I would be.

         13              THE COURT:  I noticed you -- I got confused about the

         14    Georgetown football answer there.  There's a lot of sports

         15    issues in this case.  I didn't even know Georgetown had a

         16    football team.

         17              PROSPECTIVE JUROR:  They do.  When I was there, it was

         18    Division 3.  Now it's 1AA.  I was a walk-on.

         19              MR. KELLY:  What did you play?

10:53    20              PROSPECTIVE JUROR:  I played guard.

         21              MR. KELLY:  I assume you follow Georgetown basketball

         22    team, a little more prominent?

         23              PROSPECTIVE JUROR:  Yes.  They would be the dominant

         24    sport.

         25              MR. KELLY:  Are you a college basketball fan in

 1    general?

 2          PROSPECTIVE JUROR:  Other than following what they do

 3    by and large, I would say no.

 4          MR. KELLY:  Nothing about that would prevent you from

 5    being fair to all sides in this case?

 6          PROSPECTIVE JUROR:  I don't believe so, no.  It would

 7    not.

 8          MR. KELLY:  I notice you had watched the Netflix.  Is

 9    that what you referenced in here?

10:53 10          PROSPECTIVE JUROR:  Yes.  I believe they called it a

11    documentary.  I'm not sure why they did because I believe they

12    were actors playing some of the roles in that.  It was probably

13    more of a film than documentary.

14          MR. KELLY:  Anything about that that would affect your

15    ability to be fair here?

16          PROSPECTIVE JUROR:  I mean, it's the media.  You've

17    got to take it with a grain of salt.  The performance created

18    by that particular show was that something unusual was going

19    on, I would say.

10:54 20          MR. KELLY:  Understanding the media's not always

21    accurate, you're fine looking at this in a fair and evenhanded

22    fashion?

23          PROSPECTIVE JUROR:  I believe I could do that.

24          MR. KELLY:  Thanks.

25          THE COURT:  Mr. Kendall?

1          MR. KENDALL:  Yes.  Good morning.  I'm Mike Kendall.

2     I represent John Wilson.

3          I wanted to ask a couple of questions about the

4     Netflix documentary.  I appreciate you noting that it was not a

5     real documentary and was with actors.  What did you think when

6     you saw it though?  What was your reaction?

7          PROSPECTIVE JUROR:  I think certainly the person at

8     the center of it in terms of the person who was organizing

9     whatever was happening, he was on the list on the

10:55 10    questionnaire, I'm trying to think of the right word to use.

11         MR. KENDALL:  Mr. Singer?

12         PROSPECTIVE JUROR:  Yes.  Mr. Singer was not

13    completely above board in what he was doing.  Again, it's a

14    movie more than a documentary.  I have to take that into

15    consideration.

16         MR. KENDALL:  If you saw evidence in this case that

17    showed that Netflix documentary simply was made up Hollywood

18    stuff, is that something you could separate in your mind?

19         PROSPECTIVE JUROR:  I believe yes.  The evidence is

10:55 20    certainly more important than what was portrayed in a movie.

21         MR. KENDALL:  So it hasn't left you with any

22    particular feeling or predisposition about the defendants in

23    this case?

24         PROSPECTIVE JUROR:  Walking away from the movie

25    certainly one particular feeling, as we just discussed, but you

```
 1    obviously have to look at the evidence and consider that.
 2          MR. KENDALL:  You understand that the issue here is
 3    whether the defendants have broken a law and that the judge
 4    will instruct you on the law?
 5          PROSPECTIVE JUROR:  Yes.
 6          MR. KENDALL:  And you have to follow the judge's
 7    instructions.  So even if you have a personal view that
 8    something's not right or not fair or not good, he's the boss.
 9    He sets the law, even if you have views of fairness that may be
10    different.  It may be a different issue than what you're being
11    instructed on.
12          PROSPECTIVE JUROR:  I agree with that.
13          THE COURT:  Miss Kearney?
14          MS. KEARNEY:  Good morning.  No questions, your Honor.
15          THE COURT:  Thank you, Mr. Eddy.  You're going to be
16    in reserve.  Mr. McAlear will tell where you to go.  If you're
17    called back to serve as a juror, then you will decide this case
18    solely on the basis of evidence that comes into this courtroom.
19    Do not do any independent research.  Any exploring on the
20    internet would be inappropriate.  You understand that?
21          PROSPECTIVE JUROR:  Understood.
22          THE COURT:  Thank you, Mr. Eddy.
23          (Prospective juror exits.)
24          MR. KENDALL:  Your Honor, before we bring somebody in?
25          THE COURT:  Yes.  Hold the juror.
```

1           MR. KENDALL:  He is a responsible gentleman and was

2     trying to be helpful as he could be.  I appreciate that.  It's

3     the Netflix documentary.  The issue with the Netflix

4     documentary is it didn't talk about this case but Mr. Wilson

5     was one of the main people portrayed in that.  I think if the

6     government is forced to give an answer, they'll even agree

7     there were false statements made about Mr. Wilson.

8           For example, they took the actions of a man named

9     Sloane whose son was a false water polo player and attributed

10:58 10     them to Mr. Wilson.  It wasn't even that it was pretrial

11     publicity.  It was false pretrial publicity and he was a major

12     character in that documentary.  It's one thing to say I saw a

13     newspaper article.  It's another thing to say I saw a movie

14     with false accusations.

15           As you may know, Mr. Wilson filed a case about that.

16     It's now in state court.  It was a false representation of the

17     evidence in this case, indisputably.  The accusation was his

18     son did play water polo and falsified a profile with documents

19     and stuff.  That is not the case.  His son was a real water

10:58 20     polo player.  The pictures were of his son.  They took the

21     facts of Mr. Sloane and they put them under the name Wilson in

22     the documentary.  So we are very concerned about anybody who's

23     seen that documentary sitting on the jury.  We'd ask that he be

24     struck for cause.

25           THE COURT:  Miss Kearney?

```
 1          MS. KEARNEY:  The prospective juror was forthcoming
 2  and said he had seen the Netflix documentary.  He also said you
 3  have to take it with a grain of salt.  He volunteered it was
 4  more of a film than documentary.  It sounded like he was going
 5  to base on the evidence.
 6          THE COURT:  I'm not going to dismiss this juror for
 7  cause.  I believe the public is becoming more sophisticated
 8  with respect to media reports.  The media is being questioned
 9  more and more for their truthfulness.  I think he comes across
10  as an intelligent person that can differentiate between what is
11  fact and what is fiction.  The facts will come out in this
12  case.  He has answered the questions, I believe, forthrightly.
13  I'm not going to excuse him for cause.
14          (Prospective juror enters.)
15          THE COURT:  Good morning, Miss Arsenault.  Is that how
16  you pronounce it?
17          PROSPECTIVE JUROR:  Yes.
18          THE COURT:  Miss Arsenault, please be seated.  You're
19  reminded you are under oath.  You may remove the mask if you
20  want to, but you don't have to.
21          PROSPECTIVE JUROR:  Relief.
22          THE COURT:  Miss Arsenault, is there any reason why
23  you can't sit on this jury and be fair and impartial?
24          PROSPECTIVE JUROR:  I don't think so.
25          THE COURT:  You're a medical technologist.
```

10:59  (line 10)
11:00  (line 20)

1        PROSPECTIVE JUROR:  Yes.

2        THE COURT:  Will four weeks absent from that job cause

3    you financial hardship?

4        PROSPECTIVE JUROR:  No, because I think they make up

5    the difference.

6        THE COURT:  They're supposed to.  Sometimes you have a

7    hard time having them do that.  You're not concerned about

8    that.  Is that fair to say?

9        PROSPECTIVE JUROR:  Yeah.  Not at this present time,

11:01 10   no.

11        THE COURT:  Were there any questions in the

12   questionnaire that would cause you to not be fair and impartial

13   in this case?

14        PROSPECTIVE JUROR:  No.

15        THE COURT:  Mr. Kelly, any questions for this

16   potential juror?

17        MR. KELLY:  No.  I represent Mr. Aziz.  Thanks for

18   coming in.

19        THE COURT:  Mr. Kendall?

11:01 20        MR. KENDALL:  Yes.  Good morning.  My name's Mike

21   Kendall.  I represent John Wilson.  Thank you for coming in.

22        Paragraph 39, you answered yes for if you'd seen some

23   of the press coverage of this general matter called the Varsity

24   Blues.

25        PROSPECTIVE JUROR:  Yes.

```
 1            MR. KENDALL:  Can you describe in your own words.
 2            MS. KEARNEY:  It was one of those questions I put no
 3    first and then scratched out.  First I thought, no, I don't
 4    know anything about this.  Then I thought, is this part of the
 5    ongoing thing that started off with those two actresses and the
 6    husband that paid for their daughters to go to school?
 7            MR. KENDALL:  And what was your thought when you had
 8    that idea?
 9            PROSPECTIVE JUROR:  I thought maybe I do know a little
10    about this but all I know is what I saw on the news briefly.
11            MR. KENDALL:  Did you have any views about what you
12    saw?  Did it bother you?
13            PROSPECTIVE JUROR:  I, first of all, thought these
14    parents are stupid to pay for their kids to go to college.  I
15    told my kids they needed to pay.
16            MR. KENDALL:  Did it bother you that they did it?  Did
17    you think it was unfair or wrong?
18            PROSPECTIVE JUROR:  It bothered me a little because
19    I'm thinking I would never have the money if I wanted to do it
20    for my kids.  I didn't have the money to pay for their college
21    to begin with.  I paid a little.  I only had one out of three
22    that went to college.  She went to UMass Lowell.  I told them
23    if you went to an inexpensive school, if I had some extra
24    money, I'd help you.  I did pay half of each semester while she
25    worked part-time and took out student loans.  It did make me a
```

1    little agitated.

2          MR. KENDALL:  Does that give you any particular

3    thoughts about people who have a lot of money, a lot of

4    substantial resources, and if they spend it in a way that seems

5    different or sort of even wasteful?  Do you have any thoughts

6    about that?

7          PROSPECTIVE JUROR:  I would think the more money you

8    have, the more you want.  I think they just tend to waste it

9    and just do whatever.

11:04 10         MR. KENDALL:  Thank you for coming in.  I appreciate

11    your candor.

12          THE COURT:  Miss Kearney?

13          MS. KEARNEY:  Good morning, Miss Arsenault.  Is there

14    anything about the information you've seen about the news

15    reports that would cause you to be not impartial and fair in

16    evaluating the evidence?

17          PROSPECTIVE JUROR:  I don't think so.  I'd like to

18    think I look at each person as a separate entity, just like you

19    look at any child as a separate thing too.

11:04 20         MS. KEARNEY:  Thank you very much.

21          THE COURT:  The question, Miss Arsenault, is whether

22    you can be fair and impartial in this case and decide it solely

23    on the basis of the evidence that comes into this courtroom and

24    not on the basis of anything you've read or heard before the

25    case.

```
 1              PROSPECTIVE JUROR:  I think I could.

 2              THE COURT:  Thank you.  I'm going to have you go with

 3       Mr. McAlear to the reserve room.  You may or may not be called

 4       back to sit as a juror.  In the meantime, please do not do any

 5       independent research or go on to the internet.  That would be

 6       inappropriate.  The case is going to be determined on the basis

 7       of evidence.  Thank you.

 8              (Prospective juror exits.)

 9              THE COURT:  Counsel, we're going to be in recess for

10       15 minutes.  I think we've made progress.  We'll continue at

11       about 11:20.

12              MR. KENDALL:  Out of curiosity, your Honor, how many

13       have we accepted so far?

14              THE COURT:  I was going to count that up myself.

15              MR. FRANK:  I think it's ten, your Honor.

16              THE COURT:  Ten.  I agree with the government's

17       number.

18              MR. KENDALL:  We're looking for 36?

19              THE COURT:  More like 40.  I want to err on the side

20       of too many.

21              (Recess taken 11:05 a.m. to 11:25 a.m.)

22              THE COURT:  Good morning again, counsel.  I have now

23       had a chance to read the proposed instruction that I'm going to

24       ask Mr. McAlear to give to all reserved.  If has a strange

25       likeness.  I think it comes right out of one of my charges,
```

1   which, of course, is very appealing.  I think it is

2   appropriate.  I don't think there's anybody who has an

3   objection.  Is that correct, Mr. Kelly?

4          MR. KELLY:  No.  We found it very appealing as well,

5   your Honor.

6          THE COURT:  Mr. Kendall?

7          MR. KENDALL:  Equally so.

8          THE COURT:  I'm going to ask Mr. McAlear to give each

9   person in the reserve list this instruction.  I'll tell each

11:26 10   one that they will get a written request.

11          Is there anything else that needs to come to my

12   attention before we call the next potential juror?

13          All right.  We'll call the next one.

14          (Prospective juror enters.)

15          THE COURT:  Good morning, Mr. Connaughton.  Is that

16   how you pronounce it?

17          PROSPECTIVE JUROR:  That's correct.

18          THE COURT:  Mr. Connaughton, please be seated.  You're

19   reminded that you remain under oath.  You may remove the mask

11:27 20   if you want to, but you don't have to.

21          Mr. Connaughton, you are interviewing for a new job

22   opportunity, is that correct?

23          PROSPECTIVE JUROR:  Yes.

24          THE COURT:  I take it then jury duty at this point for

25   4 weeks would cause you a hardship?

```
 1                    PROSPECTIVE JUROR:  I would think so.
 2                    THE COURT:  I don't want to cause you, especially a
 3       financial hardship, if you're looking for a new job or you're
 4       just about to have a new job.  I think that it would not be
 5       appropriate for you to sit on this jury, unless I'm missing
 6       something.  Do you have any feelings about it one way or the
 7       other?
 8                    PROSPECTIVE JUROR:  That would be very helpful.
 9                    THE COURT:  So I'm going to excuse you,
11:28 10  Mr. Connaughton.  That doesn't excuse you from all jury duty.
11       It's a very important civic responsibility that you have to
12       serve on juries.  I hope once you get settled and get that new
13       job, you will be able to serve as a juror.  Good luck to you in
14       your efforts.  Thank you.  You're excused.
15                    (Prospective juror exits.)
16                    (Prospective juror enters.)
17                    THE COURT:  Good morning, Mr. Rodriguez.
18                    PROSPECTIVE JUROR:  Good morning, your Honor.
19                    THE COURT:  Please be seated.  You're reminded that
11:29 20  you remain under oath.  You may remove your mask if you want
21       to, but you don't have to.
22                    PROSPECTIVE JUROR:  Thank you.
23                    THE COURT:  Mr. Rodriguez, I understand that you are
24       the sole provider for an elderly person is that, right?
25                    PROSPECTIVE JUROR:  That is correct.  That would be my
```

1   wife.

2            THE COURT:  I take it that 4 weeks on a jury would

3   cause you some severe hardship, is that fair?

4            PROSPECTIVE JUROR:  It would, economically as well as

5   just basic day-to-day housekeeping care and chores.

6            THE COURT:  I'm not going to do that.  I'm not going

7   to cause you that economic hardship.  I think you have an

8   important job taking care of somebody, therefore I'm going to

9   excuse you from this jury.  That does not excuse you from all

11:30 10  jury duty.  I hope at one point you will be able to exercise

11  your civic duty and serve on a jury.  Okay?

12            PROSPECTIVE JUROR:  Thank you, your Honor.

13            (Prospective juror exits.)

14            (Prospective juror enters.)

15            THE COURT:  Good morning, Miss Lacorazza.  Please be

16  seated.  Understand that you remain under oath.  You may remove

17  the mask if you want to, but you don't have to.

18            Miss Lacorazza, was there anything on the

19  questionnaire that gave you pause as to whether you could be

11:31 20  fair and impartial in this case?

21            PROSPECTIVE JUROR:  No.

22            THE COURT:  Do you think you can decide this case

23  solely based on the evidence that comes into this courtroom and

24  not on the basis of anything you've heard outside the Court

25  room?

```
 1                 PROSPECTIVE JUROR:  Yes, I do.

 2                 THE COURT:  I understand you have a relation to some

 3       SWAT, police.

 4                 PROSPECTIVE JUROR:  On my cousin's side, through

 5       marriage.

 6                 THE COURT:  Would that relationship with law

 7       enforcement cause you to be impartial or unfair in this case?

 8                 PROSPECTIVE JUROR:  I don't think so.

 9                 THE COURT:  Mr. Kelly?

11:32 10          MR. KELLY:  Good morning, whatever it is.  I represent

11       Mr. Aziz.  Thank you for coming in.

12                 With respect to that question about the FBI, what's

13       the name of your cousin or the agent who is in your family?

14                 PROSPECTIVE JUROR:  Bryce Montoya.

15                 MR. KELLY:  Nothing with respect to that would affect

16       your ability to be unfair in this case?

17                 PROSPECTIVE JUROR:  No.

18                 MR. KELLY:  Thank you very much.

19                 THE COURT:  Mr. Kendall?

11:32 20          MR. KENDALL:  One moment, your Honor.  No questions.

21                 THE COURT:  Miss Kearney?

22                 MS. KEARNEY:  Good morning, Miss Lacorazza.  No

23       questions.

24                 THE COURT:  Thank you, Miss Lacorazza.  I'm going to

25       ask you to go into the reserve room.  That means you may or may
```

1    not be called back.  I want to caution you not to do any

2    independent research on this case because if you are called to

3    sit as a juror, you will decide this case solely on the basis

4    of the evidence that comes into this courtroom and not any

5    independent research.  You're going to have a little paragraph

6    of instructions to follow while you wait to be called.  Okay?

7              PROSPECTIVE JUROR:  Thank you.

8              (Prospective juror exits.)

9              (Prospective juror enters.)

11:33 10        THE COURT:  Good morning, Mr. Wakelin.  Is that how

11    you pronounce your name?

12             PROSPECTIVE JUROR:  It is, sir.  Thank you.

13             THE COURT:  Good morning, Mr. Wakelin.  You may be

14    seated.  You are reminded you're under oath.  You may remove

15    the mask if you wish.

16             Mr. Wakelin, the only question from your questionnaire

17    is I note you were a college athlete at Dennison University, is

18    that right?

19             PROSPECTIVE JUROR:  That is correct.

11:34 20        THE COURT:  This case involves allegations that allege

21    that some of the defendants falsely identified as athletes.

22    Will that in any way affect your ability to be fair and

23    impartial in this case?

24             PROSPECTIVE JUROR:  No, it will not.

25             THE COURT:  You could decide this, say, case solely

```
 1    based on the evidence that's going to come into this courtroom
 2    and not on the basis of anything outside or what you've heard
 3    about?
 4              PROSPECTIVE JUROR:  So what I would say to you, sir,
 5    is that for the last 30 years I've followed the media and
 6    entertainment business for an investment management firm here
 7    in Boston.  I'm very familiar with Lori Loughlin and Felicity
 8    Huffman.  I know that there's a fixer in California that was
 9    involved in an admissions scandal of some variety.  I have not
10    read anything on that.  Given the fact that I followed the
11    industry for a long period of time, I am familiar with some of
12    the things that have happened with respect to not only the
13    University of Southern California but also Harvard.  I have a
14    son who just graduated from Georgetown University, who was a
15    freshman, I believe, when there was an individual at the school
16    who was impacted by that as well.  I have tangential
17    information with respect to what might be raised here.
18              THE COURT:  Fair enough.  The question is, however,
19    can you decide this case based solely on the evidence that
20    comes into this courtroom and not on the basis of what you've
21    heard tangentially about other defendants in this case?
22              PROSPECTIVE JUROR:  Yes.
23              THE COURT:  Any questions, Mr. Kelly.
24              MR. KELLY:  Sure.  Briefly.  Good morning, Brian Kelly
25    for Mr. Aziz here.  A few follow-up questions.  Have you
```

11:35 (line 10)
11:36 (line 20)

1    watched any TV shows or films about anything related to this?

2              PROSPECTIVE JUROR:  I have not.

3              MR. KELLY:  Putting aside what the actresses in

4    California may or may not have done, can you treat my client

5    here separately from them in your mind?

6              PROSPECTIVE JUROR:  Yes, I could.

7              MR. KELLY:  Nothing about your sporting experience at

8    Dennison would affect your outlook on this case?

9              PROSPECTIVE JUROR:  I -- no.  I don't feel that

11:37 10  because athletic endeavors were used in order to gain admission

11   into college would be impacted by my being a collegiate

12   athlete.

13             MR. KELLY:  D3, Dennison?

14             PROSPECTIVE JUROR:  Dennison is D3, yes.

15             MR. KELLY:  What was your position there?

16             PROSPECTIVE JUROR:  I played third base.

17             MR. KELLY:  Are you a college sports fan at all?

18             PROSPECTIVE JUROR:  I am a college sports fan, yes.

19             MR. KELLY:  Which sports do you follow?

11:37 20        PROSPECTIVE JUROR:  I follow all the large ones.  In

21   addition to my son who was at Georgetown, my other son, who is

22   his twin brother, was at Notre Dame.  We are active collegiate

23   athletic followers, I would say.

24             MR. KELLY:  Nothing further.  Thanks again coming in.

25             THE COURT:  Mr. Kendall.

1          MR. KENDALL:  Good afternoon.  Still morning.  Good

2     morning.  I'm Mike Kendall.  I represent John Wilson.  Couple

3     things I wanted to follow-up on.

4          You mentioned when your son was a freshman at

5     Georgetown, one of the kids was effected.  Can you tell us your

6     impression of what happened and your memory about it and your

7     thoughts about it.

8          PROSPECTIVE JUROR:  I don't know specifics of how this

9     particular child was admitted into Georgetown.  I just know

11:38 10     that they were accused of being admitted on a preferential

11     basis.  I can't recall whether or not it was the sailing coach

12     or the way that this particular person ended up at Georgetown,

13     but there was some question as to their viability,

14     qualifications, with respect to gaining admittance there.

15          My son actually did not know the person intimately but

16     knew of the person.  I know they had some challenges once the

17     public information came out.

18          MR. KENDALL:  Thanks.  Appreciate that.

19          The other thing I wanted to raise is one issue in this

11:39 20     case will be that people make donations to schools and the

21     schools will give preferential treatment to their relative for

22     a donation, not for a fraud or criminal act.  Does that

23     practice bother you?  Do you have any views on that practice?

24          PROSPECTIVE JUROR:  My brother-in-law went to Harvard

25     University.  His four children also went to Harvard University.

1    My children did not go to Harvard University.  I don't find the

2    practice of large donations to be untoured, if you would,

3    however, what I would suggest is that there is a certain level

4    of privilege with respect to a person's ability to purchase

5    their way into a situation that they might not be academically

6    qualified for that I think gets to the entire basis of

7    privilege in this country.

8            MR. KENDALL:  I appreciate your candor.  I wanted to

9    ask you a couple more questions on that.

11:40 10           PROSPECTIVE JUROR:  Certainly.

11           MR. KENDALL:  How much does that bother you?

12           PROSPECTIVE JUROR:  As I mentioned, it just is a

13   reflection of privilege.  I don't hold it against people for

14   taking advantage in every way that they can on a legal basis.

15   It still is a privilege problem with the fabric of, I would

16   say, the United States.

17           MR. KENDALL:  If the issue is that people did take

18   advantage of that, making a donation could get their child a

19   boost to get into college, a significant boost, and they did it

11:41 20   purposefully and intentionally but not fraudulently, is that

21   something you realize is legal and it's fine to be done and you

22   can't judge a person for that?

23           PROSPECTIVE JUROR:  Like I said, if it's legal and it

24   appears to be legal, then there's nothing wrong other than

25   people using their privilege to their advantage.  I wouldn't

1 necessarily say that I would hold it against someone for

2 pursuing any avenues for their children's education.

3         MR. KENDALL:  I appreciate your candor.  Thanks.

4         THE COURT:  Miss Kearney?

5         MS. KEARNEY:  Good morning, sir.  The judge is going

6 to instruct you on what the law is and whether something is or

7 is not illegal.  Are you going to be able to follow his

8 instructions?

9         PROSPECTIVE JUROR:  Yes.

11:42 10         MS. KEARNEY:  Your feelings on privilege, is there

11 anything about that that would make you unable to judge the

12 evidence fairly and impartially?

13         PROSPECTIVE JUROR:  No.  I don't believe there is.

14         MS. KEARNEY:  Thank you, sir.

15         THE COURT:  Thank you, Mr. Wakelin.  You will be held

16 in reserve and go with Mr. McAlear at this point.  Please do

17 not try to do any independent research on this case.  That

18 would be entirely inappropriate, as I'm sure you know, because

19 you're going to decide this case, if you are selected to be a

11:42 20 juror, solely on the basis of the evidence that comes into this

21 courtroom.  Thank you.

22         (Prospective juror exits.)

23         MR. KENDALL:  Your Honor, if we may have a moment?

24         THE COURT:  Yes, Mr. Kendall.

25         MR. KENDALL:  Again, we have a very fine person,

1   intelligent, straightforward, honest person, someone to be

2   respected.  The fact -- and he knows what he's supposed to say

3   and he knows what is the appropriate thing to do.  I think he's

4   a person who believes in doing the appropriate thing right

5   away.  The fact that he says his brother-in-law got four kids

6   into Harvard and his didn't get in, I think this is something

7   that bothers him.  While jurors try to be dispassionate, this

8   is clearly something that's ingrained in him.  And it was a

9   family issue.  I was sort of shocked at the answer.  It bothers

11:43 10   him.  I think it will affect the way he looks at this case.  We

11   like to think we can always be dispassionate and analytical,

12   but some baggages you can't get rid of.  I think this is an

13   example of that.

14         MR. KELLY:  I would enjoin in that motion to excuse

15   for cause.  I think the way he kept bringing up privilege,

16   privilege, privilege, suggests he is going to be biased in this

17   case.  His answers, the Harvard situation, although he didn't

18   go to Harvard, maybe he didn't go to Dartmouth, I can see why

19   he's troubled, but those answers suggest he probably cannot be

11:44 20   fair in this case.  We would enjoin in that motion to excuse

21   him.

22         THE COURT:  Miss Kearney?

23         MS. KEARNEY:  Your Honor, the prospective juror said

24   he could listen to the evidence fairly and impartially and

25   could follow your instructions.  Given that, we do not agree.

1          THE COURT:  He will not be excused.

2          MR. FRANK:  Your Honor, briefly, some of the

3     questioning there --

4          THE COURT:  It got close to the line, I agree,

5     Mr. Frank.  I'm not going to allow questions that basically are

6     an opening argument, Mr. Kendall.  That almost got to the point

7     where I told the potential juror not to answer.  Be careful

8     from now on.

9          MR. KENDALL:  I apologize, your Honor.  I did not

11:45 10    intend to do that.  That's the only person I really probed with

11    the whole day.  I understand your point.

12         (Prospective juror enters.)

13         THE COURT:  Good morning, Miss Golden.  Please be

14    seated.  You're reminded you are still under oath.  You may

15    remove the mask if you want to, but you don't have to.

16         In response to some of the questions or one particular

17    question on the questionnaire you said you had strong feelings

18    about wealthy people who don't pay workers well or make the

19    world a better place.

11:46 20         PROSPECTIVE JUROR:  Yes.

21         THE COURT:  The question in this case, which involves

22    two at least potentially wealthy defendants, is can you decide

23    this case based solely on the evidence that comes into this

24    courtroom and not on your concern about wealthy people in

25    general.

1      PROSPECTIVE JUROR:  Yes.

2      THE COURT:  In other words, this response to 43, and

3   you were being honest, is a general feeling you have, but you

4   could put it behind you and decide this case without reference

5   to that concern?

6      PROSPECTIVE JUROR:  Yes, I could.

7      THE COURT:  Is there anything about any of the

8   questions on the questionnaire or your answers to them that

9   gave you pause as to your ability to be fair and impartial in

11:47 10   this case?

11      PROSPECTIVE JUROR:  Not to be fair and impartial, but

12   I was concerned about the one to stay off social media, since

13   that is the only way I communicate --

14      THE COURT:  Say that again.

15      PROSPECTIVE JUROR:  I was concerned about the one that

16   asked me to stay off social media for the duration.  I'm a

17   small business owner.  That's how I communicate with my

18   customers.

19      THE COURT:  It certainly doesn't mean you can't use

11:47 20   that for your profession.  The concern is that people, it's so

21   easy to get information on the internet, that you go on and

22   start to do independent research.  That can't be done.  I can't

23   allow that to be done during the trial because this case is

24   going to be decided solely on the basis of the evidence that

25   comes into this courtroom and not on the basis of any

1    independent research that you or any other juror might do.  So

2    that's going to be an instruction that I give at the very

3    beginning of the case, that you cannot use social media or any

4    other electronic means to do anything to do with this case.

5    That doesn't mean you can't do your own job by using it.

6              PROSPECTIVE JUROR:  Got it.

7              THE COURT:  With that qualification, can you follow

8    that instruction?

9              PROSPECTIVE JUROR:  Yes.  That's not a problem.  I

11:48 10   actually have no idea what the case is even about, so I've

11   already done no research.

12             THE COURT:  Fair enough.  Any questions, Mr. Kelly?

13             MR. KELLY:  Yes.  Good morning.  Brian Kelly.  I

14   represent Mr. Aziz here.  Thank you for coming in.  Just a

15   couple quick follow-up questions.

16             The Court's question about social media and your

17   answer, I assume that includes Facebook?

18             PROSPECTIVE JUROR:  Yes.

19             MR. KELLY:  Isn't it a thing on Facebook where news

11:48 20   flashes pop up?

21             PROSPECTIVE JUROR:  Not through the business page.

22   There's no news feed.  It's just my ability to communicate with

23   my customers.

24             MR. KELLY:  You say you use it for your business and

25   could not function without it?

1           PROSPECTIVE JUROR:  Correct.  I wouldn't be able to

2      contact my customers or run my business for the month or

3      however long it takes.

4           MR. KELLY:  What other forms of social media do you

5      use?

6           PROSPECTIVE JUROR:  Also Instagram.

7           MR. KELLY:  Do they sometimes send you messages about

8      current events?

9           PROSPECTIVE JUROR:  No.  I'm a makeup artist.  No one

11:49 10  tells me anything about what's going on in the world.

11          MR. KELLY:  Are you a college sports fan in any way?

12          PROSPECTIVE JUROR:  No.

13          MR. KELLY:  There was an answer to one of these

14     questions that you have strong feelings about wealthy people.

15     Can you just share with us what those strong feelings may be.

16          PROSPECTIVE JUROR:  It's not about all wealthy people.

17     When I see something, like that Wal-Mart has more people who

18     are on government assistance and employed, what?  If you're

19     employed, you should be able to make enough to not be on

11:50 20  government assistance.  I don't understand.  It's just in

21     situations like that where I tend to judge whoever's at the top

22     of the hierarchy.

23          MR. KELLY:  If there were people in this case who had

24     done well in their lives and had good jobs, you wouldn't resent

25     them for that?

 1              PROSPECTIVE JUROR:  I don't have anything against ones

 2    who are wealthy in general, just ones who take advantage of

 3    people to get there.

 4              THE COURT:  Mr. Kendall.

 5              MR. KENDALL:  A couple things.  You run your own

 6    business.

 7              PROSPECTIVE JUROR:  Yes.

 8              MR. KENDALL:  Do you have employees?

 9              PROSPECTIVE JUROR:  Just me.

11:50 10         MR. KENDALL:  If we tie you up most of the day with

11    the trial, will you be able to manage things?

12              PROSPECTIVE JUROR:  Yes.

13              THE COURT:  Miss Kearney.

14              MS. KEARNEY:  Good morning.  One of the questions in

15    your questionnaire you mentioned related to prior experience

16    being a victim of a crime.  I wanted to ask, do you feel you

17    were treated fairly in that experience in terms of the criminal

18    justice system?

19              PROSPECTIVE JUROR:  I did not move it over to the

11:51 20    criminal justice system, what happened there.

21              MS. KEARNEY:  Was there anything about your feelings

22    about the criminal justice system there that caused you to not

23    move forward?

24              PROSPECTIVE JUROR:  No.  The person who assaulted me

25    was not an American so it wasn't really relevant.

1          MS. KEARNEY:  Thank you.

2          THE COURT:  Thank you, Miss Golden.  I'm going to ask

3     you to go into what we're calling reserve, which means you're

4     going with Mr. McAlear.  If you are called back to serve on

5     this jury, please don't do any research in the meantime.  It

6     would be inappropriate, as we've just talked about.  You can't

7     go do some independent research because the case is going to be

8     decided on the basis of the evidence that comes here and not on

9     any outside information.

11:51 10          PROSPECTIVE JUROR:  I will continue not paying

11     attention to the world.

12          THE COURT:  Thank you, Miss Golden.

13          (Prospective juror exits.)

14          (Prospective juror enters.)

15          THE COURT:  Good morning, Mr. Walsh.  You may be

16     seated.  You are reminded you are still under oath.  You may

17     remove the mask if you want to, but you don't have to.

18          I understand, Mr. Walsh, that you are a dentist.

19          PROSPECTIVE JUROR:  Yes, sir.

11:53 20          THE COURT:  And if you were to be called to serve on

21     this case, that it would perhaps cause you some financial

22     hardship, is that fair to say?

23          PROSPECTIVE JUROR:  It would be difficult because I

24     have 11 employees.  I think it would be difficult for them,

25     because if I'm not there, they can't work.

1           THE COURT:  In other words, you're the top of the

2    pyramid and what goes on underneath needs you to guide?

3           PROSPECTIVE JUROR:  Yes, your Honor.

4           THE COURT:  We call people to serve on juries and we

5    expect that they're going to undergo inconvenience, sometimes

6    serious inconvenience, but not hardship.  The difference

7    between inconvenience and hardship sometimes is hard to

8    discern, but I don't want to cause you financial hardship or

9    your practice financial hardship.  If that's going to occur,

11:54 10   then I'm going to excuse you from this jury, but you have to

11   tell me.

12          PROSPECTIVE JUROR:  Yes.  It would be a hardship.

13   I've actually just -- I haven't been in my office for the past

14   2 weeks because I'm just recovering from a pinched sciatic

15   nerve, so that's another 2 weeks that I've been out of my

16   offices.

17          THE COURT:  This would be kind of exacerbating an

18   already occurring problem?

19          PROSPECTIVE JUROR:  Yes, sir.  It would be.

11:54 20         THE COURT:  I'm going to excuse you from this jury.

21   That doesn't excuse you for all jury duty.  I hope some time

22   when you get a little break in your practice that you'll be

23   willing to serve because it's a very important civic

24   responsibility.

25          PROSPECTIVE JUROR:  I've served before in a trial.  I

1    would be happy to do that at some other point in time.

2         THE COURT:  Thank you, Mr. Walsh.  You're excused.

3         (Prospective juror exits.)

4         (Prospective juror enters.)

5         THE COURT:  Good morning, Miss Burke.

6         PROSPECTIVE JUROR:  Good morning.

7         THE COURT:  Please be seated.  You're reminded that

8    you remain under oath.  You may remove the mask if you want to,

9    but you don't have to.

11:55 10         Miss Burke, you mentioned that two of your cousins

11   attended Harvard.

12        PROSPECTIVE JUROR:  Yes.

13        THE COURT:  As you know, this case involves

14   allegations that involve other universities, Harvard and other

15   universities.  Would the fact that you have some even remote

16   connection with Harvard affect your ability to be fair and

17   impartial in this case?

18        PROSPECTIVE JUROR:  No.

19        THE COURT:  You can base this case on the evidence

11:56 20   that comes into the courtroom and not any other matters that

21   come into your head?

22        PROSPECTIVE JUROR:  Yes.

23        THE COURT:  Is there anything in the questionnaire

24   that gave you pause as to your ability to be fair in this case?

25        PROSPECTIVE JUROR:  No.

```
 1              THE COURT:  Mr. Kelly, any questions for this juror?
 2              MR. KELLY:  Briefly.  Good morning, Brian Kelly.  I
 3    represent Mr. Aziz.
 4              I notice you're a Bruins fan.  Do you follow college
 5    sports at all?
 6              PROSPECTIVE JUROR:  Not at all.
 7              MR. KELLY:  Thanks.  That's it.
 8              THE COURT:  Mr. Kendall?
 9              MR. KENDALL:  Nothing, your Honor.
11:56 10        THE COURT:  Miss Kearney?
11              MS. KEARNEY:  Good morning, ma'am.  No questions.
12              THE COURT:  Thank you, Miss Burke.  I'd like you to go
13    in reserve, which is what we're calling we're holding for
14    potential future service on this jury.  Mr. McAlear will show
15    you where to go.  You're, of course, forewarned not to do any
16    independent research on this case.  That would be
17    inappropriate, as I'm sure you understand.  Don't try to do any
18    looking up on the internet as to what this case might involve.
19    Okay?
11:57 20        PROSPECTIVE JUROR:  Okay.
21              (Prospective juror exits.)
22              (Prospective juror enters.)
23              THE COURT:  Good morning, Miss DiCastro.  Please take
24    a seat.  You're reminded you remain under oath.  You may remove
25    the mask if you want to, but you don't have to.
```

1             Miss DiCastro, you mentioned that your job in a small

2    office would make it difficult for you to find coverage if you

3    had to serve for 4 weeks on a jury.

4             PROSPECTIVE JUROR:  That's correct.

5             THE COURT:  I take it that means that would cause you

6    a financial hardship or your business a financial hardship.  Is

7    that fair to say?

8             PROSPECTIVE JUROR:  Yes.  I work in a very small

9    office.  We have four people.  It would be hard for coverage.

11:58 10          THE COURT:  So this would cause you a hardship to

11   serve on the jury?

12            PROSPECTIVE JUROR:  Yes.

13            THE COURT:  I'm going to excuse you from this jury.

14   That doesn't excuse you from all juries.  I hope at a different

15   time, maybe not so stressful in your business, you will serve

16   as a juror because it's a very important civic responsibility.

17   Okay?

18            PROSPECTIVE JUROR:  Okay.

19            THE COURT:  You're excused from this jury.  Thank you

11:59 20   for coming in today.

21            (Prospective juror exits.)

22            (Prospective juror enters.)

23            THE COURT:  Good morning, Mr. Sullivan.

24            PROSPECTIVE JUROR:  Good morning.

25            THE COURT:  Would you please remove your hat.  Thank

1    you.  You can remove your mask if you want, but you don't have

2    to do that.

3              PROSPECTIVE JUROR:  Thank you.

4              THE COURT:  You're reminded that you remain under

5    oath.  I understand that you work at a distant place.

6              PROSPECTIVE JUROR:  That's correct.

7              THE COURT:  Would service on this jury cause you a

8    financial hardship?

9              PROSPECTIVE JUROR:  It may.

12:00  10        THE COURT:  By may?

11             PROSPECTIVE JUROR:  Well, it will, yes.

12             THE COURT:  I don't want to cause you financial

13   hardship.  We do ask you to endure inconvenience, but we don't

14   ask you to give up your job or give up your wherewithall that

15   you need to live on.  I'm going to excuse you from this jury.

16   That doesn't excuse you from all jury duty.  I hope you'll find

17   a time when you can perform your civic responsibility of

18   serving on a jury, but this one's going to be 4 weeks and it

19   will cause you, presumably, to have some financial hardship.

12:00  20   I'm not going to do that.  You're excused.

21             PROSPECTIVE JUROR:  Thank you.

22             (Prospective juror exits.)

23             (Prospective juror enters.)

24             THE COURT:  Good afternoon, Mr. Glassman.

25             PROSPECTIVE JUROR:  Good afternoon.

```
 1              THE COURT:  Please be seated.  You're reminded that
 2      you remain under oath.  You may remove the mask if you want to,
 3      but you don't have to.
 4              Mr. Glassman, I understand from the answers that you
 5      gave on your questionnaire that you played college sports back
 6      in your day, is that right?
 7              PROSPECTIVE JUROR:  No, one of my sons.
 8              THE COURT:  I misunderstood that.  Would the fact that
 9      your son was involved in college athletics and that this case
12:02 10  involves alleged fraudulent claims of athletic prowess in any
11      way affect your ability to be fair and impartial?
12              PROSPECTIVE JUROR:  No.
13              THE COURT:  In other words, you can decide this case
14      solely on the evidence that comes into this courtroom and not
15      on the basis of anything you've heard outside of it?
16              PROSPECTIVE JUROR:  Yes.
17              THE COURT:  Any questions for this potential juror,
18      Mr. Kelly?
19              MR. KELLY:  Briefly.  Good morning, Brian Kelly.  I
12:02 20  represent Mr. Aziz here.  Putting aside the Bridgewater State
21      football, do you follow college sports in general?
22              PROSPECTIVE JUROR:  No, I don't.
23              MR. KELLY:  Thanks.
24              THE COURT:  Mr. Kendall?
25              PROSPECTIVE JUROR:  Thank you for coming in.  No
```

1    questions, your Honor.

2            THE COURT:  Miss Kearney?

3            MS. KEARNEY:  Good afternoon, Mr. Glassman.  I wanted

4    to follow-up on one of the questions about your prior juror

5    service.  You said the jury did not come to a verdict.  Can you

6    elaborate?

7            PROSPECTIVE JUROR:  It was a mistrial.  There were six

8    of us, and we didn't agree on a verdict.

9            MS. KEARNEY:  Was it fairly guided or was there one

12:03 10  hold out?

11           PROSPECTIVE JUROR:  It was two to four.

12           MS. KEARNEY:  Thank you, sir.

13           THE COURT:  Do you remember what kind of case it was?

14           PROSPECTIVE JUROR:  It was a marijuana case.

15           THE COURT:  Whereabouts?

16           PROSPECTIVE JUROR:  I think it was Fall River or New

17   Bedford that it was in.

18           THE COURT:  Thank you.  Thank you, Mr. Glassman.  I'm

19   going to ask you to go into reserve, which Mr. McAlear will

12:03 20  explain to you.  It means you may or may not be called back.

21   In the meantime, please do not do any independent research on

22   this case.  That would be inappropriate.  Thank you for your

23   attendance.

24           (Prospective juror exits.)

25           (Prospective juror enters.)

1    THE COURT:  Good morning, Mr. Marshall.  Please be

2    seated.  You're reminded that you remain under oath.  You may

3    remove the mask if you want to, but you don't have to.

4         Was there anything in the questionnaire that gave you

5    pause as to whether you could be fair and impartial in this

6    case?

7         PROSPECTIVE JUROR:  No.

8         THE COURT:  You can decide this case solely on the

9    evidence that comes into this courtroom and not on any evidence

12:05 10   from outside the courtroom?

11        PROSPECTIVE JUROR:  Yes.

12        THE COURT:  You said you may have a hearing problem.

13   Are you having a hard time hearing what I'm saying?

14        PROSPECTIVE JUROR:  No.  I can hear you.

15        THE COURT:  We do have assistance for those who have

16   hearing difficulties.  If and when you are chosen as a juror

17   and you want to have a headset or something, we have that.

18        PROSPECTIVE JUROR:  Okay.

19        THE COURT:  The other thing is, of course, if there's

12:05 20   any time when you can't hear a witness, you raise your hand and

21   we have the witness repeat his or her answer.

22        PROSPECTIVE JUROR:  Okay.

23        THE COURT:  So we do have the ability to assist people

24   who have that sort of a hardship.  Is there any reason you can

25   see why you can't be fair and impartial in this case?

1        PROSPECTIVE JUROR:  No.

2        THE COURT:  Mr. Kelly, any questions?

3        MR. KELLY:  Just briefly.  Good afternoon.  My name's

4    Brian Kelly.  I represent Mr. Aziz here.  Are you a college

5    sports fan at all?

6        PROSPECTIVE JUROR:  Not really.

7        MR. KELLY:  There's one question on the questionnaire,

8    actually a lot of questions.  One of them asked whether or

9    not -- it says the prosecution had the burden of proving the

12:06 10   defendant is guilty beyond a reasonable doubt.  The defendant

11   does not have to prove that he's innocent.  Then it asked the

12   question do you disagree in any way with this principle.  You

13   answered yes.  I'm trying to get an understanding of what you

14   meant.

15       PROSPECTIVE JUROR:  I didn't understand the question

16   that well I guess.

17       MR. KELLY:  If the judge, who's the boss on the law

18   and many other things, if he tells you it's the government's

19   burden of proving that the defendant is guilty beyond a

12:07 20   reasonable doubt, will you follow the judge's instruction?

21       PROSPECTIVE JUROR:  Yes.

22       MR. KELLY:  If he tells you the defendant, like my

23   client, does not have to prove that he's innocent, will you

24   follow that instruction?

25       PROSPECTIVE JUROR:  Yes.

1           MR. KELLY:  Is there anything about what you've seen

2    in this questionnaire or heard to date in this process that

3    would prevent you from being fair to all sides?

4           PROSPECTIVE JUROR:  No.

5           THE COURT:  Mr. Kendall?

6           MR. KENDALL:  Good day.  No questions.

7           THE COURT:  Miss Kearney?

8           MS. KEARNEY:  Good afternoon.  In your response to one

9    of the questions about whether you, a relative or close friend

12:07 10   had any prior experience being arrested or charged with a

11   crime, was there anything about that experience that you felt

12   the people involved were not treated fairly?

13          PROSPECTIVE JUROR:  No.  They were treated right.

14          MS. KEARNEY:  Was there anything about that experience

15   that would affect your ability to be fair and impartial in this

16   trial?

17          PROSPECTIVE JUROR:  No.

18          MS. KEARNEY:  Thank you, sir.

19          THE COURT:  Thank you, Mr. Marshall.  I'll have you go

12:08 20   into reserve, which is what we're calling those who may be

21   called back for further jury duty.  You will go with

22   Mr. McAlear.  Please understand that you're not to do any

23   independent research about this case on the internet.  That

24   would be inappropriate because you're going to decide this

25   case, if and when you're chosen as a juror, solely based on the

```
 1   evidence that comes into this courtroom.
 2              (Prospective juror exits.)
 3              (Prospective juror enters.)
 4              THE COURT:  Good afternoon, Mr. Bowker.  You may be
 5   seated.  You may remove your mask if you want to.  You are
 6   reminded you are under oath.
 7              Mr. Bowker, you are self employed?
 8              PROSPECTIVE JUROR:  That's correct.
 9              THE COURT:  Service on this jury, which would take
10   about 4 weeks, would cost you serious hardship?
11              PROSPECTIVE JUROR:  Yes.
12              THE COURT:  I'm not going to cause you hardship.  You
13   need to be employed.  You need to make a living.  This is going
14   to take 4 weeks.  I take it this is the time of year when
15   chartering a boat is able to be done as opposed to November or
16   December or January, right?
17              PROSPECTIVE JUROR:  Yes.  That's correct, sir.
18              THE COURT:  Maybe in the wintertime when you're not
19   working you can serve on another jury because it's a very
20   important civic responsibility that you have to serve on
21   juries, but I'm not going to make you serve on this one and
22   endure financial hardship.  You're excused, Mr. Bowker.
23              PROSPECTIVE JUROR:  Thank you, your Honor.
24              (Prospective juror exits.)
25              (Prospective juror enters.)
```

1           THE COURT:  Good afternoon, Mr. Ratliff.  It's

2      Ratliff.  Ratliff.  Please be seated.  You're reminded that you

3      remain under oath.  You may remove the mask if you want to, but

4      you don't have to.

5           Was there anything on that questionnaire that gave you

6      pause as to whether or not you could be fair and impartial in

7      this case?

8           PROSPECTIVE JUROR:  No, your Honor.

9           THE COURT:  You're convinced you could decide this

12:11 10     case solely based on the evidence that comes into this

11     courtroom and not on any outside influences?

12           PROSPECTIVE JUROR:  Yes, sir.

13           THE COURT:  Your wife was employed by Salem State?

14           PROSPECTIVE JUROR:  That's correct.

15           THE COURT:  Does the fact that this case involves

16     other universities in any way affect your ability to be fair

17     and impartial?

18           PROSPECTIVE JUROR:  No, your Honor.

19           THE COURT:  Mr. Kelly, any questions?

12:11 20     MR. KELLY:  Briefly.  Good afternoon, Brian Kelly.  I

21     represent Mr. Aziz here.  A lot of the case will have some

22     discussion about sports, college sports.  Are you a college

23     sports fan at all?

24           PROSPECTIVE JUROR:  No, not at all.

25           MR. KELLY:  Thanks.  That's it.

1          THE COURT:  Mr. Kendall?

2          MR. KENDALL:  Nothing, your Honor.  Thank you.

3          THE COURT:  Miss Kearney?

4          MS. KEARNEY:  Good afternoon, Mr. Ratliff.  You

5     disclosed in your questionnaire that you were previously a

6     witness in a criminal trial.  Was there anything about that

7     experience that made you feel that you were treated unfairly?

8          PROSPECTIVE JUROR:  My apologies if that's what I

9     indicated.  My mother was.  It asked if a family member was.  I

12:12 10     wasn't involved in that.  I don't believe so, no.

11          MS. KEARNEY:  Was there anything about the way your

12     mother was treated that makes you feel she was treated

13     unfairly?

14          PROSPECTIVE JUROR:  No.

15          MS. KEARNEY:  Anything about your mother's experience

16     and what she's told you about it make you think you can't be

17     unfair or impartial?

18          PROSPECTIVE JUROR:  No.  I was a child.

19          THE COURT:  Thank you, Mr. Ratliff.  I'm going to ask

12:12 20     you to go into reserve, which means you may be called back for

21     further jury duty.  In the meantime, please do not do any

22     internet research about this case.  That would be inappropriate

23     because you're going to judge this case on the basis of

24     evidence that comes into the courtroom and not online.

25          MR. KENDALL:  Your Honor, I overlooked something.

1          THE COURT:  Of course.

2          MR. KENDALL:  Number nine where you listed your

3     employment background, you listed that you did tax return prep

4     for about 4 years.  Can you just tell us about the job, what

5     you did, what you thought about it.

6          PROSPECTIVE JUROR:  Of course.  I worked at Jackson

7     Hewitt, started as just a preparer, seasonal work.  I'm in

8     finance now.  It was in preparation, I thought, for my coming

9     career.  My last year with them I was an office manager.  That

12:13 10   was for about three and a half months.

11         MR. KENDALL:  Do you have any training or formal

12    education in how to do tax return work?

13         PROSPECTIVE JUROR:  Jackson Hewitt provides training.

14    My formal training would come later when I was getting my

15    bachelor's degree in accounting and finance.

16         MR. KENDALL:  Thank you, your Honor.

17         THE COURT:  Thank you, Mr. Ratliff.  You may step

18    down.

19         (Prospective juror exits.)

12:14 20   (Prospective juror enters.)

21         THE COURT:  Good afternoon, Mr. Yee.  Please be

22    seated.  You are reminded that you remain under oath.  You may

23    remove your mask if you want to, but you don't have to.

24         Mr. Yee, you indicate you are a self-employed music

25    educator.  Will service on this jury, which is going to last

```
  1   about 4 weeks, cause you a financial hardship or will you be

  2   able to continue your teaching?

  3          PROSPECTIVE JUROR:  I should be fine.

  4          THE COURT:  In other words, we normally go from nine

  5   to three or 3:30 Monday through Friday, not every day.  We will

  6   have some days when we won't be in session and, of course,

  7   we're not in session on the weekends.  I don't want to cause

  8   you financial hardship to be a juror on this case.  I don't

  9   know.  You'll have to tell me if that's a problem.

12:15 10      PROSPECTIVE JUROR:  I will be missing quite a bit of

 11   workdays if I were to serve as a juror.

 12          THE COURT:  It would not cost you a financial

 13   hardship?

 14          PROSPECTIVE JUROR:  No.

 15          THE COURT:  Was there anything else on the long

 16   questionnaire you had to fill out yesterday that gave you pause

 17   as to whether or not you could be fair and impartial in this

 18   case?

 19          PROSPECTIVE JUROR:  No.

12:16 20      THE COURT:  You're convinced you can decide this case

 21   solely on the evidence that comes into this courtroom and not

 22   on anything else you believe you may have heard about it?

 23          PROSPECTIVE JUROR:  I think so.

 24          THE COURT:  Mr. Kelly.

 25          MR. KELLY:  Briefly.  Good afternoon.  Brian Kelly.  I
```

represent Mr. Aziz here.  I didn't understand or maybe I didn't

hear it correctly.  The answer about being self-employed.  You

said if you have to be in a 4-week trial you'll miss a lot of

workdays.

PROSPECTIVE JUROR:  I would miss a few workdays but I

would be okay.

MR. KELLY:  Would it concern you having to miss those

workdays for the next month?  If the trial goes 4 weeks, is

that going to cause you problems?

PROSPECTIVE JUROR:  Yes, but I think I would be okay

even then.

MR. KELLY:  There's a question on this questionnaire

that asks you about if you've done jury service before.

PROSPECTIVE JUROR:  I have, state jury.

THE COURT:  You thought it was targeting state jury

because you said you weren't sure.

PROSPECTIVE JUROR:  I served twice in state court.

MR. KELLY:  Were they a criminal case like this where

the burden is --

PROSPECTIVE JUROR:  That's what I don't really

remember.

MR. KELLY:  You don't remember if it was a civil

dispute over money?  When was it?  Do you know?

PROSPECTIVE JUROR:  Four and then 7 years ago.

MR. KELLY:  So it was two different trials?

```
 1              (Prospective juror nods head.)

 2              THE COURT:  You have to answer orally.

 3              PROSPECTIVE JUROR:  Yes.

 4              MR. KELLY:  You don't know if it was civil or

 5      criminal?

 6              PROSPECTIVE JUROR:  I think it might have been civil.

 7              MR. KELLY:  Did the jury reach a verdict?

 8              PROSPECTIVE JUROR:  Yes.

 9              MR. KELLY:  In both of them?

12:18 10        PROSPECTIVE JUROR:  Yes.

11              MR. KELLY:  Do you remember the verdict?

12              PROSPECTIVE JUROR:  Not guilty.

13              MR. KELLY:  If it was civil, it would be not liable.

14              PROSPECTIVE JUROR:  It's 4 years ago.

15              MR. KELLY:  That's quite a while.  That's all right.

16              Are you a college sports fan?

17              PROSPECTIVE JUROR:  No.

18              THE COURT:  Mr. Kendall?

19              MR. KENDALL:  In question 39 -- first of all, good

12:18 20        afternoon.  Mike Kendall.  I represent Mr. Wilson.

21              Question 39 asked "this case has been referred to the

22      media as the varsity blues and college admissions case.  Have

23      you read any articles, read any books, watched any news or any

24      information about it?" You've never heard of this case before?

25              PROSPECTIVE JUROR:  No.
```

 1           MR. KENDALL:  Then that's it.  Thanks.

 2           THE COURT:  Miss Kearney?

 3           MS. KEARNEY:  Good afternoon, sir.  No questions.

 4           THE COURT:  Thank you, Mr. Yee.  I'm going to ask you

 5      to go into reserve.  That's where we ask you to wait to see if

 6      you'll be asked to do any further jury duty.  In the meantime,

 7      please do not do any independent research.  That would be

 8      inappropriate, as I'm sure you understand.  This case is going

 9      to be decided solely on the basis of the evidence that comes

12:19 10      into this courtroom and not on anything outside of it.  Okay?

11           PROSPECTIVE JUROR:  Yes.

12           (Prospective juror exits.)

13           (Prospective juror enters.)

14           THE COURT:  Good afternoon, Mr. Megna.  You may be

15      seated.  You're reminded that you're under oath.  You may

16      remove your mask but you don't have to.  Mr. Megna, you

17      apparently care weekly for your father and your grandfather.

18      Would the fact that you had to serve on a jury for 4 weeks

19      affect that ability to take care of them?

12:20 20           PROSPECTIVE JUROR:  Yes, sir.  It's my grandmother

21      actually.

22           THE COURT:  I take it you feel that having to serve on

23      this jury is a hardship?

24           PROSPECTIVE JUROR:  Yes, sir.

25           THE COURT:  We ask you to endure inconvenience, but we

don't require hardship.  I'm going to excuse you.  That doesn't

excuse you from all jury duty.  You have a civic obligation to

serve on duties when and if you're able to do so, so I hope at

some point in the future you're able to do that.  Thank you,

Mr. Megna.  You're excused.

(Prospective juror exits.)

(Prospective juror enters.)

THE COURT:  Good afternoon, Miss Marini.  Please be

seated.  You're reminded that you remain under oath.  You may

remove the mask if you want to, but you don't have to.

PROSPECTIVE JUROR:  Thank you.

THE COURT:  Miss Marini, will serving on this jury

cause you a financial hardship?

PROSPECTIVE JUROR:  No.

THE COURT:  Because it's going to last about 4 weeks

and we don't want to cause you financial hardship.  The other

question is, was there anything in that questionnaire that gave

you pause as to whether or not you can be fair and impartial in

this case?

PROSPECTIVE JUROR:  No.

THE COURT:  You could decide this case solely on the

evidence that comes into this courtroom and not on something

you've heard outside the courtroom?

PROSPECTIVE JUROR:  Yes.

THE COURT:  You have a couple of children who were

 1    college athletes.  Is that true?

 2               PROSPECTIVE JUROR:  Yes.  One is still in college

 3    playing hockey.  The other just graduated BU.

 4               THE COURT:  Where does he play hockey?

 5               PROSPECTIVE JUROR:  University of Southern Maine.

 6               THE COURT:  Would the fact that you have college

 7    athletes as children in any way affect your ability to be fair

 8    and impartial in this case, which involves allegations of

 9    misstatements about athletic ability in order to get into

12:23 10    college?

 11               PROSPECTIVE JUROR:  No.

 12               THE COURT:  Mr. Kelly, any questions?

 13               MR. KELLY:  Just briefly.  Good afternoon.  Thanks for

 14    coming in.  I represent Mr. Aziz here.  To follow-up briefly on

 15    that, your daughter or son who plays hockey?

 16               MR. KENDALL:  My daughter was a rower.  My son plays

 17    hockey.

 18               MR. KELLY:  Nothing about that would affect your

 19    judgment in this case?

12:23 20               PROSPECTIVE JUROR:  No.

 21               MR. KELLY:  Do you follow college sports?

 22               PROSPECTIVE JUROR:  I do.  We're more of a college

 23    athletic family.  We watch football, hockey, basketball.

 24               MR. KELLY:  Anything about that would prevent you to

 25    being fair on all sides of this case?

1           PROSPECTIVE JUROR:  No.

2           THE COURT:  Mr. Kendall?

3           MR. KENDALL:  Thank you, your Honor.  Mike Kendall.  I

4   represent John Wilson.

5           I just have a question about 25.  You disclose your

6   employment at the Executive Office of the Trial Court for the

7   Commonwealth.  Can you just tell us what you do.

8           PROSPECTIVE JUROR:  I work for the Executive Office in

9   the Department of Research and Planning, like a repository for

12:24 10   all of the Trial Courts stats, I guess you'd say.  We collect

11   data on all cases.  No names are attached to the data.  I

12   basically run the office, HR, payroll, procuring supplies and

13   things like that.

14           MR. KENDALL:  I take it you're not in courtrooms.

15           PROSPECTIVE JUROR:  No.

16           MR. KENDALL:  And you have nothing to do with court

17   cases?

18           PROSPECTIVE JUROR:  No.

19           THE COURT:  Miss Kearney.

12:24 20           MS. KEARNEY:  Good afternoon.  You also answered a

21   question about other jury service.  Is there anything about

22   that that would affect your ability to be fair and impartial in

23   this trial?

24           PROSPECTIVE JUROR:  No.

25           MS. KEARNEY:  You also noted someone you knew had

1    prior involvement in the criminal justice system.  Is there

2    anything about that that would affect your ability to be fair

3    and impartial?

4            PROSPECTIVE JUROR:  No.  I think I meant myself and

5    maybe my brother.  He's a clerk within the civil department.

6            MS. KEARNEY:  I think you put down here you or someone

7    you know had been either arrested or charged with a crime.  Did

8    you feel that the person who was arrested or charged was

9    treated fairly?

12:25 10          PROSPECTIVE JUROR:  Oh, yeah.

11           MS. KEARNEY:  Thank you.

12           THE COURT:  Thank you, Miss Marini.  I'm going to ask

13   you to go into reserve, which means that I'm going to hold you

14   for the potential of calling back.  In the meantime, please

15   don't do any independent research.  That would be

16   inappropriate, of course, for you to go online and scope out

17   what this case is all about.  That would be inappropriate

18   because you're going to decide this case, if and when you are

19   selected as a juror, solely based on the evidence that comes

12:25 20   into the courtroom and not on any outside sources.

21           PROSPECTIVE JUROR:  Absolutely.

22           (Prospective juror exits.)

23           (Prospective juror enters.)

24           THE COURT:  Good afternoon, Mr. Scannell.  Is it

25   Scannell or Scannell?

```
 1            PROSPECTIVE JUROR:  Either is fine.  Scannell is
 2     preferred.
 3            THE COURT:  Good afternoon.  You may be seated.  You
 4     may remove your mask, if you want.  You are under oath.
 5            Mr. Scannell, you're in auto sales?
 6            PROSPECTIVE JUROR:  I am.
 7            THE COURT:  Would the fact you would have to serve on
 8     a jury for 4 weeks cause you financial hardship?
 9            PROSPECTIVE JUROR:  It would.  I just finished up
12:26 10     6 years of college for two students.  That's kind of drained a
11     lot of the extra, and I have one with medical issues we're
12     trying to help with.
13            THE COURT:  You can see the light at the end of the
14     tunnel for that.
15            PROSPECTIVE JUROR:  I hope so.
16            THE COURT:  We don't mean to cause financial hardship.
17     We understand jury duty causes inconvenience, but we don't want
18     to cause financial hardship.  I'm going to excuse you from
19     this.  That doesn't excuse you from all jury duty, I hope you
12:27 20     understand.  I hope you'll be willing to serve on a jury
21     further in the future.
22            PROSPECTIVE JUROR:  Hopefully, it's somewhere down the
23     road.  Thank you.  Enjoy the day.
24            (Prospective juror exits.)
25            (Prospective juror enters.)
```

```
 1              THE COURT:  Good afternoon, Miss Frithsen.  Frithsen?

 2              PROSPECTIVE JUROR:  Frithsen.

 3              THE COURT:  Miss Frithsen, please understand you're

 4      still under oath.  You may remove your mask, but you don't have

 5      to.

 6              You have answered some of the questions about the fact

 7      that you're uncomfortable if people don't go through the proper

 8      process when getting degrees and there's sort of an entitlement

 9      from the wealthy.  Having that opinion, would that affect your

12:28 10  ability to be fair and impartial in this case, which involves

11      people who allegedly have used their wealth to help them get

12      kids into college?  We have to know a little bit more as to how

13      your feeling affects your ability to be fair and impartial.

14              PROSPECTIVE JUROR:  I think I could see both sides,

15      but I think I do -- that entitlement, I've seen it.  It doesn't

16      sit easy with me.

17              THE COURT:  The issue is whether you can decide the

18      case based upon the evidence that comes into this courtroom and

19      not on the basis of your prior understanding and dislike of

12:29 20  people that abuse the system.

21              PROSPECTIVE JUROR:  I think I could see the evidence

22      and make a fair judgment.

23              THE COURT:  We can't get inside your head.  Only you

24      can tell us.  If you can't be, you're under oath, you have to

25      be truthful.  You have to tell us that, no, I couldn't, I
```

1    couldn't put that out of my head, or, yes, notwithstanding the

2    fact that I have an uncomfortable feeling, I could be fair and

3    impartial and listen to the evidence and decide the case solely

4    based on the evidence.  Only you can tell me that.

5         PROSPECTIVE JUROR:  Yes.  I think that despite feeling

6    uncomfortable I could listen to the evidence.

7         THE COURT:  You've answered yet another question,

8    number 49, which asks you about any potential bias.  You said

9    sense of entitlement and wealthy schools is a reason you left

12:30 10   your past job.  Tell me a little bit about that.

11         PROSPECTIVE JUROR:  Sure.  The pressure from the

12   parents on the students and that sense of if they weren't

13   performing and getting into the schools they wanted, it fell

14   back on the school district where I worked.

15         THE COURT:  Would you mind telling me what school

16   district that was.

17         PROSPECTIVE JUROR:  Manchester Essex Regional School

18   District.

19         THE COURT:  That led you to leave?

12:31 20        PROSPECTIVE JUROR:  That was one reason.  There were

21   multiple reasons.  It was one thing that I wanted a different

22   population to work with.

23         THE COURT:  Would that in any way affect your ability

24   to be fair and impartial in this case?

25         PROSPECTIVE JUROR:  I think I could be fair and

1    impartial.  I think I'd be uncomfortable.

2              THE COURT:  Uncomfortable meaning that you would

3    hesitate to find for the defendants if the government couldn't

4    prove its case beyond a reasonable doubt?

5              PROSPECTIVE JUROR:  Sorry.  Can you repeat the

6    question.

7              THE COURT:  The government has an obligation to prove

8    the allegations beyond a reasonable doubt, which is a very

9    strict standard.  If you felt that the government hadn't done

12:32 10   that, would you feel uncomfortable in returning a verdict of

11   not guilty for these defendants?

12             PROSPECTIVE JUROR:  Possibly.  I think it could -- I

13   think this would be difficult for me.

14             THE COURT:  I'm going to excuse you from this jury.  I

15   thank you for your honesty.  That's what we need.  You're

16   entitled to your opinions.  That doesn't excuse you from all

17   jury duty.  I hope you will be willing to serve on another jury

18   because it is one of the most important civic obligations we

19   have as citizens.  I'll excuse you from this one.  Maybe

12:32 20   another time you will serve.  Okay?

21             PROSPECTIVE JUROR:  Right.

22             THE COURT:  Thank you.

23             (Prospective juror exits.)

24             (Prospective juror enters.)

25             THE COURT:  Good afternoon, Miss Rodrigues.

1          PROSPECTIVE JUROR:  Good afternoon.

2          THE COURT:  Please be seated.  You're reminded that

3   you remain under oath.  You may remove the mask if you want to,

4   but you don't have to.

5          PROSPECTIVE JUROR:  Thank you.

6          THE COURT:  You are employed on the North Shore.

7   Would service on this jury for 4 weeks cause you financial

8   hardship?

9          PROSPECTIVE JUROR:  No, it would not.

12:33 10          THE COURT:  So that's not a problem?

11          PROSPECTIVE JUROR:  Correct.

12          THE COURT:  Was there anything else on that

13   questionnaire that gave you pause as to whether or not you

14   could be fair and impartial in this case?

15          PROSPECTIVE JUROR:  Yes.  My son actually is a current

16   athlete at UMass Amherst.  I don't know much about the case

17   itself, but when you mentioned Varsity Blues, that brought

18   pause for thought because when he was going through that

19   process of admissions, I'd like to think I would be fair, but

12:34 20   quite honestly, I think I'd get a little angry as well.  He

21   worked hard, both as an athlete and academically.  That does

22   give me some concern, quite honestly.  I'd like to think I

23   could be fair and impartial, however, I had that personal

24   reaction.

25          THE COURT:  The question isn't what your general

concept of the philosophy here is, but whether or not you could

decide this case solely on the basis of the evidence that comes

into this courtroom and not on any preconceived notions about

what the case is about.

PROSPECTIVE JUROR:  It's not preconceived notions.  I

think hearing the evidence would cause me to get frustrated and

angry given that I went through something personally.  I don't

know what the evidence is, but if it has anything to do with

college admissions and athletics and anything that's happened

that was unfair or not truthful, that would cause me to be

concerned, yes.

THE COURT:  So I guess I'm hearing that you don't

think you could be fair and impartial in this case.

PROSPECTIVE JUROR:  Correct.  I'd like to think I

could be, but I'm concerned.

THE COURT:  I'm going to excuse you from this case.

Thank you for your candor.  I hope you will serve on another

jury some day.

PROSPECTIVE JUROR:  Thank you so much.  I appreciate

it.

(Prospective juror exits.)

(Prospective juror enters.)

THE COURT:  Good afternoon, Mr. Torrice.  Will you

please take your hat off.  Thank you.  You may be seated.

Please understand you remain under oath.  You may remove the

 1    mask if you want to, but you don't have to.

 2              PROSPECTIVE JUROR:  Okay.

 3              THE COURT:  Mr. Torrice, I understand serving on a

 4    jury for 4 weeks would cause you financial hardship?

 5              PROSPECTIVE JUROR:  Yes.  This is the busiest time for

 6    our industry.

 7              THE COURT:  I'm not going to cause you financial

 8    hardship.  I'm going to excuse you from this jury.  I hope at

 9    another time, maybe a less inconvenient time, maybe in the

12:36 10   winter, you'd be willing to serve as a juror.  It's an

11    important civic duty.

12              PROSPECTIVE JUROR:  I have and I would.

13              THE COURT:  I'll excuse you from this jury.  Thank

14    you, Mr. Torrice.

15              (Prospective juror exits.)

16              (Prospective juror enters.)

17              THE COURT:  Good afternoon, Mr. Kennie.  Please be

18    seated.  You're reminded you're still under oath.  You may

19    remove your mask if you want to.

12:37 20        The questionnaire that you answered, most of the

21    questions were answered no, right?

22              PROSPECTIVE JUROR:  Correct.

23              THE COURT:  You did answer you had prior jury service.

24    Would you tell me about that.

25              PROSPECTIVE JUROR:  In Barnstable county, small claims

1    court.

2           THE COURT:  Was that a case that you brought?

3           PROSPECTIVE JUROR:  No, although I have had that

4    position also.

5           THE COURT:  So you've brought a case in small claims

6    court and had a case brought against you in small claims court?

7           PROSPECTIVE JUROR:  No.  I served on a jury and also I

8    had brought a case.

9           THE COURT:  This was a jury in a small claims court?

12:38 10          PROSPECTIVE JUROR:  Yes.

11          THE COURT:  Whereabouts was that?

12          PROSPECTIVE JUROR:  It was in Barnstable.

13          THE COURT:  What was the case about?

14          PROSPECTIVE JUROR:  It had something to do with some

15   kind of a vehicle, maybe a mobile home or something like that.

16   There was some issue with transfer of title or some craziness.

17          THE COURT:  All of the other questions you answered no

18   to, is that correct?

19          PROSPECTIVE JUROR:  I think so.

12:38 20          THE COURT:  Is there anything in the questionnaire

21   that gave you pause as to whether or not you can be fair and

22   impartial if you were empanelled on the jury in this case?

23          PROSPECTIVE JUROR:  No.

24          THE COURT:  Any questions, Mr. Kelly?

25          MR. KELLY:  Briefly.  Good afternoon.  My name is

1   Brian Kelly.  I represent Mr. Aziz here.  A lot of this case

2   will center around college sports.  You a college sports fan at

3   all?

4          PROSPECTIVE JUROR:  No.

5          MR. KELLY:  Okay.  There's that.  Thanks.

6          THE COURT:  Mr. Kendall?

7          MR. KENDALL:  Good afternoon.  Thank you.  No

8   questions, your Honor.

9          THE COURT:  Miss Kearney?

12:39 10        MS. KEARNEY:  No questions, your Honor.

11         THE COURT:  Mr. Kennie, I'll ask you to go into

12  reserve, which means you'll go with Mr. McAlear.  You are not

13  to do any research on this case.  In the meantime, you may be

14  called back for further jury duty, but please don't do any

15  independent research.  Do you understand that?

16         PROSPECTIVE JUROR:  I do.

17         THE COURT:  Thank you.

18         (Prospective juror exits.)

19         (Prospective juror enters.)

12:40 20        THE COURT:  Good afternoon, Miss Foley.

21         PROSPECTIVE JUROR:  Good afternoon.

22         THE COURT:  Please be seated.  You're reminded that

23  you remain under oath.  You may remove the mask if you want to,

24  but you don't have to.

25         Miss Foley, I understand you're not employed --

1          PROSPECTIVE JUROR:  I am.

2          THE COURT:  You baby-sit for a couple grandchildren a

3     few days a week?

4          PROSPECTIVE JUROR:  I do.

5          THE COURT:  Will service on this jury cause you

6     financial hardship?

7          PROSPECTIVE JUROR:  My husband just retired 2 weeks

8     ago.  The plan is to not do anything until January.

9          THE COURT:  So you're okay.

12:41 10          PROSPECTIVE JUROR:  Yeah.  We're okay.  We're working

11     on my huge salary right now.

12          THE COURT:  I don't want to cause you financial

13     hardship.  This will be about a 4-week trial.

14          PROSPECTIVE JUROR:  It won't be great, but it won't be

15     hardship.  I don't know what you call financial hardship.

16          THE COURT:  That's the thing.  We ask all jurors to

17     undergo inconvenience, sometimes serious inconvenience, but

18     there's a difference between inconvenience and hardship.  I

19     don't want to put somebody out of business to serve on a 4-week

12:41 20     trial.

21          PROSPECTIVE JUROR:  I see.  No.  My daughter is

22     self-employed.  She just opened her own business.  I baby-sit

23     for her children.  My husband's retired.  It's scary.  He's

24     with them today.  It is what it is.

25          THE COURT:  As far as the employment side goes, you're

1    free to serve on this jury?

2         PROSPECTIVE JUROR:  Besides it being a small family

3    business I work for and a small place, yes.  I'm not going to

4    lie.  Yeah.  I guess I could.

5         THE COURT:  Again, I don't want to cause you financial

6    hardship.  If you tell me it will, I won't make you serve.  If

7    it's going to be an inconvenience or serious inconvenience, I'd

8    ask you to undergo that.

9         PROSPECTIVE JUROR:  I see.  I think I'm on the fence

12:42 10   with it.  I really am.  I don't even know what to say.  It

11   would not be the greatest thing.

12        THE COURT:  Is there anything else in the

13   questionnaire that gave you pause as to whether or not you

14   could be fair and impartial in this case if you were a juror?

15        PROSPECTIVE JUROR:  No, I don't think so, in any case

16   to be honest with you.

17        THE COURT:  I guess I then have to pursue my earlier

18   line.  If you feel that this would cause you or your family

19   financial distress or hardship, I'm not going to make you serve

12:43 20   on this jury.  If, on the other hand, you can do it, and

21   4 weeks is not going to cause you any real problem, then I

22   would ask you to be a candidate to serve on this jury.  You

23   have to tell me.

24        PROSPECTIVE JUROR:  I have to tell you in an honest

25   way.  Right?

1          THE COURT:  I think that would be appropriate.

2          PROSPECTIVE JUROR:  Then I'm going to have to say I

3    can do it, but driving for 4 weeks and the stress of the

4    driving and all that -- I can do it.  I can do it.

5          THE COURT:  I will take that as a yes.  It's not going

6    to be a serious hardship.

7          PROSPECTIVE JUROR:  Not a serious hardship.  I can't

8    say that.

9          MR. KELLY:  Mr. Kelly, any questions for this juror?

12:43 10    MR. KELLY:  Briefly.  Brian Kelly.  I represent

11   Mr. Aziz here.  One of the questions in the questionnaire

12   mentioned you have a son-in-law in?

13         PROSPECTIVE JUROR:  My son-in-law is an ATF agent.

14   Kevin Connolly.  He's a fire inspector for the state of Maine.

15         MR. KELLY:  How about college sports?  Are you a

16   college sports fan in any way?

17         PROSPECTIVE JUROR:  Is he?

18         MR. KELLY:  You.

19         PROSPECTIVE JUROR:  Yeah.  Sports is always on in my

12:44 20   house.  It's rule of the remote.

21         MR. KELLY:  Thank you.

22         THE COURT:  Mr. Kendall?

23         MR. KENDALL:  Good afternoon.  Thank you for coming.

24   No questions.

25         THE COURT:  Miss Kearney.

1          MS. KEARNEY:  Good afternoon, Miss Foley.  You had

2     responded to one of the questions in the questionnaire that

3     your husband was a witness to a crime.

4          PROSPECTIVE JUROR:  Yes.

5          MS. KEARNEY:  Did he have any involvement with that

6     after the fact in terms of --

7          PROSPECTIVE JUROR:  What happened was he was on lunch

8     break and he was in a park having his lunch.  He looked over.

9     He thought some kids were playing around.  It was actual

12:44 10    knives.  They were having a knife fight.  He stopped at the

11    local police before going back and said I saw something.  The

12    kids were horsing around.  I think it's knives or something.  I

13    couldn't tell for sure.  It was so scary because he -- they

14    didn't ask anything.  They saw his badge.  They went to his

15    work and got him.  Two years later or three years later he had

16    to go into court, but he didn't recognize anybody, but he had

17    to go into court.

18         MS. KEARNEY:  Was anything about that experience cause

19    you to think he wasn't treated fairly by the criminal justice

12:45 20    system?

21         PROSPECTIVE JUROR:  No.  I don't think so.  It just

22    took a couple of years for him to go in.

23         MS. KEARNEY:  Anything about that experience cause you

24    to think it would affect your ability to be fair and impartial?

25         PROSPECTIVE JUROR:  No.  I don't know -- no.

```
 1              MS. KEARNEY:  Thank you.

 2              THE COURT:  Thank you, Miss Foley.  I'll ask you to be

 3    in reserve, which means you are going to be perhaps called back

 4    for further jury duty.  In the meantime, please do not talk to

 5    anyone about this case or try to do any independent research.

 6    That would be inappropriate.

 7              PROSPECTIVE JUROR:  I definitely won't.  Trust me.  I

 8    know someone will try to get something out of me.  Have a nice

 9    day.

12:46 10             THE COURT:  Thank you.

11              (Prospective juror exits.)

12              (Prospective juror enters.)

13              THE COURT:  Good afternoon, Mr. Porter.

14              PROSPECTIVE JUROR:  Afternoon.

15              THE COURT:  Please be seated.  You're reminded that

16    you remain under oath.  You may take the mask off if you want

17    to, but you don't have to.

18              PROSPECTIVE JUROR:  I'll leave it on if you can hear

19    me.

12:47 20             THE COURT:  Mr. Porter, would serving on this jury

21    cause you a financial hardship?

22              PROSPECTIVE JUROR:  No.

23              THE COURT:  You said someone, it's unclear whether

24    it's you or someone you know, was robbed multiple times as a

25    bank teller.  Would you tell me about that.
```

1          PROSPECTIVE JUROR:  I worked for Citizens Bank as a

2    part-time teller for about a year.  Over that year I was robbed

3    three times, funny enough.

4          THE COURT:  Where was the bank?

5          PROSPECTIVE JUROR:  South Weymouth.

6          THE COURT:  South Weymouth?

7          PROSPECTIVE JUROR:  Next to a Johnny's Foodmaster.  I

8    was incorporated into a Johnny's Foodmaster.

9          THE COURT:  You worked for them one year?

12:47 10          PROSPECTIVE JUROR:  One year.

11          THE COURT:  You were robbed three times?

12          PROSPECTIVE JUROR:  Yes.

13          THE COURT:  At gunpoint?

14          PROSPECTIVE JUROR:  Just notes or verbal threats, no

15    guns.

16          THE COURT:  Did you ever have to appear in court or

17    get involved in the criminal justice system in any way?

18          PROSPECTIVE JUROR:  Not in that case.  I did have to

19    appear as a witness when I worked as a security officer for

12:48 20    Hanover Mall.  It was a drug deal.

21          THE COURT:  Would that experience with the criminal

22    justice system in any way affect your ability to be fair and

23    impartial in this case?

24          PROSPECTIVE JUROR:  Not that I'm aware of.

25          THE COURT:  Is there anything in the questionnaire

1    that gave you pause as to whether you can be fair and impartial

2    in this case?

3              PROSPECTIVE JUROR:  No.  I think I'm a very impartial

4    person.

5              THE COURT:  Mr. Kelly?

6              MR. KELLY:  Briefly, your Honor.  Good afternoon.

7    Brian Kelly.  I represent Mr. Aziz here.  You follow college

8    sports at all?

9              PROSPECTIVE JUROR:  College sports?  No, not really.

12:48 10   I'm more of a musician.

11             THE COURT:  Mr. Kendall?

12             MR. KENDALL:  Good day.  No questions.  That you.

13             THE COURT:  Miss Kearney?

14             MS. KEARNEY:  Good afternoon, Mr. Porter.  You also

15   said that you had previously served on a jury.  Was there

16   anything about that experience that you think would affect your

17   ability to be fair and impartial in this trial?

18             PROSPECTIVE JUROR:  No.  I think it went all smoothly.

19   It went very well.

12:49 20          MS. KEARNEY:  In the case where you were a witness for

21   the drug deal, do you know how that case turned out?

22             PROSPECTIVE JUROR:  I believe the defendant ended up

23   doing some time.  I'm not a hundred percent.  I went to the

24   courtroom that day but never actually appeared as a witness on

25   the stand.  They had me in the back room waiting.  I think they

1    resolved everything before they needed to call me up.

2              MS. KEARNEY:  Thank you.

3              THE COURT:  Thank you, Mr. Porter.  You are in

4    reserve, as we're saying.  You'll go with Mr. McAlear.  You may

5    be called back for further jury duty.  In the meantime, please

6    do not do any independent research on this case or try to look

7    it up on the internet.  That would be inappropriate.

8              (Prospective juror exits.)

9              (Prospective juror enters.)

12:50 10         THE COURT:  Good afternoon, Mr. Schilmeister.  You

11   remain under oath.  You may remove the mask if you want, but

12   you don't have to.

13             Mr. Schilmeister, would serving on this jury cause you

14   financial hardship?

15             PROSPECTIVE JUROR:  No.

16             THE COURT:  Is there anything in the questionnaire

17   that you had to answer yesterday that gave you cause as to

18   whether you can be fair and impartial in this case?

19             PROSPECTIVE JUROR:  No.

12:51 20         THE COURT:  In other words, you could decide this case

21   based solely upon the evidence that comes into this courtroom

22   and not on the basis of anything else you may have heard about

23   this case, is that true?

24             PROSPECTIVE JUROR:  Yes.

25             THE COURT:  I understand your father was a lawyer.

1          PROSPECTIVE JUROR:  I think so.

2          THE COURT:  Do you know what kind of law he practiced?

3          PROSPECTIVE JUROR:  No.  I'm sorry.

4          THE COURT:  Is there anything else that you feel would

5     be an impairment to your being a juror in this case?

6          PROSPECTIVE JUROR:  No.

7          THE COURT:  Any questions, Mr. Kelly?

8          MR. KELLY:  Quickly, my name is Brian Kelly.  I

9     represent Mr. Aziz.  Thank you for coming in today.  Do you

12:51 10    follow college sports at all?

11         PROSPECTIVE JUROR:  No.

12         MR. KELLY:  Thanks.

13         THE COURT:  Mr. Kendall?

14         MR. KENDALL:  No questions, your Honor.

15         THE COURT:  Miss Kearney?

16         MS. KEARNEY:  Good afternoon, sir.  In your

17    questionnaire, you mentioned that your parents and brother --

18    you might have some concerns about COVID in relation to them.

19         PROSPECTIVE JUROR:  Yes, but they've all been fully

12:52 20    vaccinated.

21         PROSPECTIVE JUROR:  You also mentioned you might have

22    trouble with crowds.  Would you have trouble being in a

23    courtroom with approximately 50 people in it?

24         PROSPECTIVE JUROR:  Would it be spread out like this

25    or?

1          MS. KEARNEY:  Would you feel comfortable sitting in a

2     jury box with 15 other people?

3          PROSPECTIVE JUROR:  Yes.

4          MS. KEARNEY:  And with additional people in the back

5     of the courtroom and all the lawyers?

6          PROSPECTIVE JUROR:  Uh-hum.

7          MS. KEARNEY:  Thank you, sir.

8          THE COURT:  Thank you, Mr. Schilmeister.  I will have

9     you in reserve.  You will go with Mr. McAlear.  If you are

12:52 10   called for further jury duty, please do not in the meantime do

11    any independent research about the case.  You understand that

12    would be inappropriate, right?

13         PROSPECTIVE JUROR:  Yes.

14         THE COURT:  Thank you, Mr. Schilmeister.

15         (Prospective juror exits.)

16         THE COURT:  Yes, Miss Kearney?

17         MS. KEARNEY:  Your Honor, I just wanted to flag that

18    it seems that the prospective juror had a little trouble

19    understanding your questions when you were asking about what

12:53 20   his dad did.  So I just wanted to -- we would move to strike.

21    We don't know he'd be able to follow along with the evidence if

22    he was having trouble understanding basic questions like that.

23         THE COURT:  Mr. Kelly?

24         MR. KELLY:  I would oppose.  He said he could be fair

25    and sit through a trial.  I saw no reason to strike for cause.

1          THE COURT:  Mr. Kendall?

2          MR. KENDALL:  I thought he was a particularly

3    conscientious person.  He noted he didn't have a problem with

4    crowds.  She went through this room, that box, the particulars

5    of it.  He was fine.  I think he was a very responsible

6    gentleman.  He should not be struck for cause.

7          THE COURT:  I'm not going to strike him for cause.

8          (Prospective juror enters.)

9          THE COURT:  Good afternoon, Mr. Brennan.  You may be

12:54 10    seated.  You may remove your mask if you want to.  You are

11    reminded you're under oath.

12          You are self-employed.  Would 4 weeks on a trial like

13    this cause you a financial hardship?

14          PROSPECTIVE JUROR:  It would be very difficult.  I

15    have two customers' houses that are opened up right now.  I

16    have to have them buttoned up for the wintertime before I start

17    another project in the wintertime.  I'm the individual doing

18    the work.  I don't have a crew of people to do the work.

19          THE COURT:  I'm not going to cause you financial

12:55 20    hardship.  I'll excuse you from this jury.  That doesn't excuse

21    you from all jury duty.  I hope you will at some point accept

22    your civic obligation of serving on a jury, but I'm not going

23    to require you to sit on this one.  You're excused.

24          PROSPECTIVE JUROR:  I appreciate that.  I have done

25    grand jury service.  It was a lot of fun to do.

```
 1              THE COURT:  I hope you'll do it again.  Thank you,
 2    Mr. Brennan.
 3              (Prospective juror exits.)
 4              (Prospective juror enters.)
 5              THE COURT:  Good afternoon, Miss Wilcox.  Please be
 6    seated.  You're reminded that you remain under oath.  You may
 7    take your mask off if you'd like to.
 8              PROSPECTIVE JUROR:  Thank you.
 9              THE COURT:  Miss Wilcox, you're retired so I take it
12:56 10  service on this jury would not cause you financial hardship; is
11    that fair to say?
12              PROSPECTIVE JUROR:  That's correct.
13              THE COURT:  Is there anything in the long
14    questionnaire that you had to fill out yesterday that gives you
15    pause as to whether or not you could be fair and impartial in
16    this case?
17              PROSPECTIVE JUROR:  No.  I do believe that I can be.
18              THE COURT:  I see that question 18 you did have prior
19    jury service, right?
12:57 20          PROSPECTIVE JUROR:  Yes, in juvenile court.
21              THE COURT:  How long ago was that?
22              PROSPECTIVE JUROR:  Just about 3 years.
23              THE COURT:  3 years ago.  Did you sit on a jury for
24    that case?
25              PROSPECTIVE JUROR:  I did, but after the testimony the
```

```
 1    police dismissed the case.
 2              THE COURT:  So you never had to deliberate on that?
 3              PROSPECTIVE JUROR:  Correct.
 4              THE COURT:  Would that involvement with the criminal
 5    justice system impact your ability to be fair and impartial in
 6    this case?
 7              PROSPECTIVE JUROR:  No.
 8              THE COURT:  Anything on this questionnaire cause you
 9    concern that you could not be fair and impartial?
10    PROSPECTIVE JUROR:  No.  I was one of the last ones
11    filling out that questionnaire yesterday.  I believe I can do
12    it.
13              THE COURT:  Mr. Kelly.
14              MR. KELLY:  Good afternoon.  Brian Kelly.  I represent
15    Mr. Aziz here.  A few follow-up questions.
16              On your prior case, the judge dismissed the case and
17    the jury didn't deliberate.  Do you understand that not all
18    judges dismiss cases and juries do deliberate?
19              PROSPECTIVE JUROR:  Absolutely.
20              MR. KELLY:  That would not affect your analysis in
21    this situation?
22              PROSPECTIVE JUROR:  Not at all.  I will say I think at
23    that point in that case I had already come to that conclusion
24    myself before we had talked.
25              MR. KELLY:  There were some answers about the media.
```

1    I don't know if that means a lot of media or not that you've

2    seen about this case.  Have you seen a lot of reports about

3    this case or how much have you seen?

4            PROSPECTIVE JUROR:  As I wrote, mostly just early on

5    when it was unavoidable on media because of the Hollywood

6    people in it, but other than that, I don't know anything about

7    it.  I did not follow it.  As I wrote, the only thing that I

8    noticed about it is what a coincidence when the Boston Globe

9    article about this trial was going to start next week and I

12:59 10   said, oh, my, I have jury selection this week and it's possible

11   that that's what it's for.  That's my only connection with it.

12   So I haven't studied it or anything.

13           MR. KELLY:  Nothing about what you've seen to date

14   would affect your ability to be fair to the defense and the

15   government in this case?

16           PROSPECTIVE JUROR:  Absolutely not.

17           MR. KELLY:  Whatever the media reported, that's the

18   media?

19           PROSPECTIVE JUROR:  It's gone.  Media, I don't -- I

01:00 20   don't trust all the media anyway.

21           MR. KELLY:  Fair point.  Are you the retired math

22   professor or your husband?

23           PROSPECTIVE JUROR:  My husband is the math professor.

24           MR. KELLY:  Where was he a professor at?

25           PROSPECTIVE JUROR:  Wellesley College.

1          MR. KELLY:  Sport college sports fan at all?

2          PROSPECTIVE JUROR:  No.  Red Sox and Patriots.  I

3     don't watch college sports.

4          MR. KELLY:  Thank you.

5          THE COURT:  Mr. Kendall?

6          MR. KENDALL:  Thank you, your Honor.  Good afternoon.

7     I'm Mike Kendall.  I represent John Wilson.  I just wanted to

8     ask you questions on one topic.  You have extensive career

9     experience in higher education, as does your husband.  Did you

01:00 10    have particular observations about fundraising at schools and

11    what you thought of it and if it's left any impression on you?

12         PROSPECTIVE JUROR:  I wasn't involved in the

13    fundraising.  I was involved in giving away the money from the

14    gifts and the stewardship and the endowments.  I know that the

15    fundraisers work hard to make connections with the donors,

16    potential donors.  Can you repeat your question, please.

17         MR. KENDALL:  Yes.  It was maybe a little bit vague.

18    I'm sorry.  Based upon your career experience, do you have any

19    opinions or observations about university fundraising that are

01:01 20    in your mind that sort of shape how you view the situation?

21         PROSPECTIVE JUROR:  I think it's a necessary part of

22    higher education in this country because the colleges need the

23    money fundraised in order to provide both academic and social

24    things for all the students, as well as funds for students who

25    can't afford to pay it themselves, and also for attracting

1   smart kids and talented kids in whatever they're talented in.

2   Could be sports.  Could be they're a good obo player and they

3   need an obo player in the orchestra or whatever.  There are

4   some kids who are smart and talented and don't have the money

5   background, so funds contributed go to everybody, people who

6   can pay their way, people that can't.  That all is part of why

7   colleges seek donations.

8           MR. KENDALL:  Thank you very much.  Thank you, your

9   Honor.

01:03 10        THE COURT:  Miss Kearney.

11          MS. KEARNEY:  Good afternoon, Miss Wilcox.  Your role

12  in the financial aid office, what was it?

13          PROSPECTIVE JUROR:  It was to analyze family financial

14  strength, using a formula that is both the federal formula for

15  financial aid eligibility and the college's formula for

16  determining eligibility and analyzing families.  The words we

17  would tell the families ourselves would be your financial

18  strength, basically your ability to contribute to your child's

19  education here.  We would determine a number.  If there was a

01:04 20  difference between that number and what the cost of the year at

21  the college, we would make that up.  Where I worked, we were a

22  full lead institution.  We would offer a package of loans and

23  work and scholarship grants.  So it was need based.

24          I want to point out it was after the admissions

25  decision was already done.  We had nothing to do with who is

1  admitted.  It was when the admissions office gave us a name and

2  then we would start to develop an aid package.

3          MS. KEARNEY:  In your position, did you do any work

4  with Pell grants?

5          PROSPECTIVE JUROR:  We would determine it's just a

6  push of the button on the computer and it would tell us if the

7  student was eligible for a Pell grant.  Then we would put it in

8  their aid package.

9          MS. KEARNEY:  Would you have any difficulty in

01:05 10  listening to evidence regarding Pell grants here and separating

11  that from your previous experience with Pell grants?

12          PROSPECTIVE JUROR:  Oh, I'd have no difficulty, no.  I

13  think since I understand what it is, I would probably

14  understand it well.

15          MS. KEARNEY:  But do you understand that you would be

16  limited to the evidence that's presented to you regarding Pell

17  grants and not bring in your prior, I don't want to say

18  experience, but your prior understanding of how they work?

19          PROSPECTIVE JUROR:  Yes.  I'd be fine.

01:06 20          MS. KEARNEY:  You mentioned in your prior jury service

21  that you had already come to a conclusion even before the case

22  was dismissed.

23          PROSPECTIVE JUROR:  After all the testimony I remember

24  thinking I don't think that testimony is enough to do anything

25  against this defendant, and that was just my response.  Then

1    the next thing I knew, that's what the judge said.  I think

2    that's why I remember it so well.  I said, well, I guess I did

3    okay because that's what the judge said afterwards.

4         MS. KEARNEY:  Do you understand here the evidence will

5    come in over the course of several weeks and that at the end of

6    the trial, the judge will be instructing you on what the law

7    is?  Are you prepared to follow those instructions and not form

8    an opinion in advance?

9         PROSPECTIVE JUROR:  Absolutely.

01:07 10         MS. KEARNEY:  Then you also disclosed a Facebook post

11   you made.  Can you tell us a little bit more about that

12   Facebook post.

13        PROSPECTIVE JUROR:  I was candid because it says

14   you're under oath and did you post anything.  I said there's a

15   Boston Globe article and it's about a trial coming to federal

16   court and I'm coming to federal court for jury selection.  Then

17   I said maybe, and that was it.

18        MS. KEARNEY:  Did anyone comment in response to your

19   post?

01:08 20         PROSPECTIVE JUROR:  They might have put an emoji with

21   a wow sign or something, but no comments.

22        MS. KEARNEY:  Thank you.

23        THE COURT:  Thank you, Miss Wilcox.  I'm going to ask

24   you to go into reserve, which means that you will go with

25   Mr. McAlear.  You may or may not be called back for further

```
 1    jury duty.  In the meantime, please do not do any independent

 2    research.  You understand how important that is.  Thank you.

 3              (Prospective juror exits.)

 4              THE COURT:  Counsel, I'm going to come back at five

 5    past two.  My plan is to go through the process like we're

 6    going until three or 3:30, depending on how many more reserves

 7    we get.  I don't think we're going to be able to get all of

 8    them today.  We'll plan to do this once again tomorrow morning.

 9    I am now confident that we're going to be able to have a

10    sufficient number sometime by mid morning tomorrow.

11              Later on that day we're going to go to that next

12    phase, that is we will invite all of those who have not been

13    stricken and are so-called clear jurors back into the

14    courtroom.  It will be at least 40 individuals.  You will be

15    able to exercise your peremptory challenges as previously

16    mentioned.  I think we will end up with a jury before the close

17    of business tomorrow.

18              Anything else that needs to come to my attention

19    before we recess for lunch?  Mr. Kelly?

20              MR. KELLY:  No, your Honor.

21              THE COURT:  Mr. Kendall?

22              MR. KENDALL:  No, your Honor.

23              THE COURT:  Miss Kearney?

24              MS. KEARNEY:  No, your Honor.

25              THE COURT:  We are in recess until --
```

1              MR. MCALEAR:  Jurors are downstairs at lunch.  If

2      counsel goes downstairs, just keep in mind there are jurors all

3      over the place.

4              THE COURT:  Please do not have any conversations with

5      those jurors.  It would not only appear to be inappropriate, it

6      would be inappropriate.  It's best to keep your distance from

7      any potential jurors during this next hour.

8              MR. MCALEAR:  As well as conversations.

9              THE COURT:  Conversations among yourselves should be

01:10 10   restricted.  Those in reserve are still here?

11             MR. MCALEAR:  No.

12             THE COURT:  They've been given the little blurb

13     devised.

14             And we're in recess until five past two.

15             (Recess taken 1:11 p.m. to 2:07 p.m.)

16             THE COURT:  Counsel, we do need to plan on the second

17     tranche.  I don't think we're going to need as many people

18     tomorrow as we called in today.  What progress, if any, has

19     counsel made with respect to this second group of 104?

02:08 20        MR. KELLY:  Not much, your Honor.  I think we're going

21     to confer after this group.  The government has a list of ones

22     they think should be stricken for scheduling reasons.  We'll

23     see if we can match that up, at least with respect to maybe the

24     first 50.

25             THE COURT:  There is some concern by the jury

1    coordinator holding the ones that we have.  We have 31 left.

2    If we only go through 20 and leave 10, we have 10 very

3    disgruntled folks that sat around all day and have not been

4    heard.  We could press on.  I had planned on recessing at 3:30.

5    If we only have five or eight left, it may make sense to go

6    through and complete all that are here today.  Any thoughts

7    about that?

8            MR. KENDALL:  We like that, your Honor.

9            THE COURT:  Are you speaking for Mr. Kelly?

02:09 10         MR. KELLY:  I'll let him say.  If it's only a handful,

11   we can quickly look through the questions as well.  He could

12   press on.  Of the remaining 31, we only need 16.  That would

13   get us to 40.

14           THE COURT:  It will be close.  Let's go forward.

15   We'll perhaps revisit this issue halfway through the session at

16   3 o'clock.

17           (Prospective juror enters.)

18           THE COURT:  Good afternoon, Miss Uriot.  You're

19   reminded that you remain under oath.  You may remove your mask

02:10 20   if you want to, but you don't have to.

21           Miss Uriot, you're employed by a fire department?

22           PROSPECTIVE JUROR:  Yes.

23           THE COURT:  If you were to be called as a juror for

24   4 weeks, would that cause you financial hardship?

25           PROSPECTIVE JUROR:  Not financial hardship.  It would

1  be hard on the department to fill my position.

2          THE COURT:  They don't have anyone who can act as a

3  dispatcher in the meantime?

4          PROSPECTIVE JUROR:  They would have to hire someone

5  overtime.

6          THE COURT:  As I've said many times before today, I

7  don't want to cause hardship to the potential juror.  We do, of

8  course, ask you to undergo inconvenience.  We ask the town of

9  Attleboro to undergo inconvenience with the prospect of one of

02:11 10  their employees serving on a jury.  I'm not too concerned about

11  that so long as it's not going to be to your detriment.  I

12  don't want to jeopardize your employment or anything else.

13          You mentioned in response to the question about the

14  government's having to prove guilt beyond a reasonable doubt

15  that you thought the defendant should be able to prove

16  themselves innocent if innocent.  In other words, you think you

17  ought to take the stand?

18          PROSPECTIVE JUROR:  The question kind of confused me.

19  I just meant if they're innocent, they should be able --

02:12 20          THE COURT:  I'm sorry.  I can't hear you.

21          PROSPECTIVE JUROR:  I was confused by that question.

22  I meant if they are innocent, they should be able to prove that

23  they're innocent.

24          THE COURT:  You understand that under our system of

25  justice, a defendant has no obligation to testify and has an

1    absolute constitutional right to remain silent and that it is

2    the burden of the government to prove its case beyond a

3    reasonable doubt?  Do you have any problem with following that

4    rule of law?

5              PROSPECTIVE JUROR:  No.

6              THE COURT:  Could you base your decision on this case

7    only on evidence that comes into this courtroom and not on any

8    outside feelings you may have?

9              PROSPECTIVE JUROR:  Yes.

02:13 10           THE COURT:  Mr. Kelly.

11             MR. KELLY:  Just to follow-up briefly.  Good

12   afternoon.  I'm Brian Kelly.  I represent Mr. Aziz.

13             On that question there, you disagree that the

14   government should have the burden of proof.  You said the

15   defendant should be able to prove themselves innocent?

16             PROSPECTIVE JUROR:  Prove themselves innocent.

17             MR. KELLY:  What do you mean by that?

18             PROSPECTIVE JUROR:  If they are innocent, they should

19   be able to prove themselves innocent?

02:13 20           MR. KELLY:  If they're innocent, they should be able

21   to prove it when you have a trial.

22             PROSPECTIVE JUROR:  Correct.

23             MR. KELLY:  Even if the presumption of innocence is

24   there, you think they have some duty at least to prove

25   themselves innocent if they're really innocent?

1           PROSPECTIVE JUROR:  Yes, sir.

2           MR. KELLY:  Are you a college basketball fan?

3           PROSPECTIVE JUROR:  No.

4           THE COURT:  Mr. Kendall.

5           MR. KENDALL:  Good afternoon.  I'm Mike Kendall.  I

6    represent John Wilson.

7           I wanted to follow-up a little bit on question 24.

8    You work at the Attleboro Police.  Now that you've moved over

9    to Fire, you're still friends with the folks at the Attleboro

02:14 10   Police.  With your work experience, have you developed any view

11   about criminal trials or the criminal trial process?

12          PROSPECTIVE JUROR:  Not so much, just kind of, as long

13   as it's a fair trial, then that's all that matters.

14          MR. KENDALL:  Do you have any view about how the

15   system works or people's roles or how things happen there?

16          PROSPECTIVE JUROR:  No.

17          MR. KENDALL:  Thank you.

18          THE COURT:  Miss Kearney.

19          MS. KEARNEY:  Good afternoon.  I just wanted to

02:14 20   follow-up.  Will you have any problem following the judge's

21   instructions in the case?

22          PROSPECTIVE JUROR:  No.

23          MS. KEARNEY:  So if he instructs you the government

24   has the burden of proof, you'll be able to follow that

25   instruction?

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Thank you, Miss Uriot.  I'm going to ask

3     you to be in reserve, which means you're going to go with

4     Mr. McAlear.  You may be subject to recall to become a juror in

5     this case.  In the meantime, please do not do any independent

6     research.  That would be inappropriate.  You're going to decide

7     this case, if you are chosen to be a juror, solely on the

8     evidence that comes into this courtroom.  Okay?

9          PROSPECTIVE JUROR:  Yes.

02:15 10          (Prospective juror exits.)

11          MR. KELLY:  Your Honor, on this juror, we'd move to

12    strike for cause.  I think it's clear she has predisposition to

13    think the defendant has to prove he's innocent.  The Court gave

14    a pretty clear instruction to her and within 15 seconds she's

15    telling me, I do think if he's innocent, he should prove

16    himself innocent.  That's obviously at odds with the

17    fundamental presumption of innocence in our system and we have

18    no burden.  I think someone who's worked in the police

19    department, who is on the stand here in federal court and is

02:16 20    repeating again what she said in her questionnaire, it's pretty

21    clear that she'll not be able to set aside her view, her

22    validly held view that if someone's innocent, they should prove

23    it.  That's a problem.  We move to excuse for cause, your

24    Honor.

25          MS. KEARNEY:  Your Honor, she confirmed both to you

```
 1    and to my follow-up questions that she would not have a problem
 2    following your instructions, including that instruction that
 3    the government has the burden of proof.  Regarding her
 4    connections to law enforcement, she did work at a police
 5    department but she's not in law enforcement herself and in
 6    response to questions on that topic, she said she just wanted a
 7    fair trial.
 8              THE COURT:  I'm not going to excuse her for cause.
 9    The objection is overruled.  Call our next potential juror.
10              (Prospective juror enters.)
11              THE COURT:  Good afternoon, Miss Montes.  Is that how
12    you pronounce your name?
13              PROSPECTIVE JUROR:  Yes.
14              THE COURT:  You're reminded you are under oath.  You
15    may remove your mask, if you want to.  Miss Montes, do I
16    understand that you will not have a financial hardship if you
17    serve on this jury for about 4 weeks?
18              PROSPECTIVE JUROR:  That is correct.
19              THE COURT:  But you've also mentioned you commented on
20    Facebook about this case at one stage.
21              PROSPECTIVE JUROR:  I did.
22              THE COURT:  Tell me about that.
23              PROSPECTIVE JUROR:  It was something on the news.
24    Someone had just gotten community service.  Somebody else had
25    posted about an African-American woman who served jail time.  I
```

 1    was a little taken aback by the disparity.

 2            THE COURT:  Do any of those answers you gave on your

 3    questionnaire give you pause as to whether or not you could be

 4    fair and impartial in this case and decide this case solely on

 5    the evidence that comes into the courtroom?

 6            PROSPECTIVE JUROR:  No.

 7            THE COURT:  So you believe you can do that?

 8            PROSPECTIVE JUROR:  Yes.

 9            THE COURT:  And you mentioned a connection to law

02:19 10    enforcement.

11            PROSPECTIVE JUROR:  A family friend.

12            THE COURT:  Would being friendly with a law

13    enforcement officer affect your ability to be fair and

14    impartial in this case?

15            PROSPECTIVE JUROR:  No.

16            THE COURT:  Somebody was arrested or charged with a

17    crime in your family?

18            PROSPECTIVE JUROR:  On my father's side of the family,

19    we're not very close, but I understand there are people who

02:19 20    have gone to jail, yes.

21            THE COURT:  You don't know them well?

22            PROSPECTIVE JUROR:  I don't know them well.  They're

23    people in our community.  It happens.

24            THE COURT:  Were you involved in any of the criminal

25    process that was taken against them?

```
 1              PROSPECTIVE JUROR:  No.

 2              THE COURT:  Would that involvement with the criminal

 3      justice system affect your ability to be fair and impartial in

 4      this case?

 5              PROSPECTIVE JUROR:  I don't believe so.

 6              THE COURT:  Mr. Kelly, any questions for this

 7      potential juror?

 8              MR. KELLY:  Sure.  Good afternoon.  My name's Brian

 9      Kelly.  I represent Mr. Aziz.  Quick follow-up, please.

02:20 10             With respect to the media coverage you saw about this

11      case, what exactly do you recall seeing?

12              PROSPECTIVE JUROR:  I don't recall it right now off

13      the top of my head.  I think this was when the news first

14      broke.  I can't even tell you how long ago that was.  I try to

15      stay away from social media when I can.  It's something we try

16      to teach our children.

17              MR. KELLY:  You did comment publicly on Facebook about

18      this case?

19              PROSPECTIVE JUROR:  It was whatever was on the news

02:20 20     about it, yes.  I think it was when I was briefly going through

21      it -- what I remember, I haven't gone back, but what I remember

22      was there was some news coverage about someone receiving

23      community service, but there was another person who had gotten

24      actual jail time.  What my concern was was the disparity.

25              MR. KELLY:  Right.  And so you usually try to avoid
```

```
 1    social media but in this case in this instance you felt

 2    strongly enough about it to comment on this case, right?

 3              PROSPECTIVE JUROR:  That situation, yes.

 4              MR. KELLY:  On Facebook, for all to see, right?

 5              PROSPECTIVE JUROR:  Yes.

 6              MR. KELLY:  You gave an answer about how wealth should

 7    not change fairness.  What did you mean by that?

 8              PROSPECTIVE JUROR:  I think the question that was

 9    posed was -- if you could repeat the question.

10              MR. KELLY:  Sure.  There's a lot of questions on here.

11              PROSPECTIVE JUROR:  I want to be accurate.

12              MR. KELLY:  It says "do you have any opinion about

13    wealth".  This is question 43.  "Do you have any opinions about

14    wealthy and/or successful people that would impact your ability

15    to decide this case impartially on the evidence presented and

16    the law as stated by the Court?"  You said no.  Then you wrote

17    a comment that said "wealth should not change fairness."

18              PROSPECTIVE JUROR:  The comment is directed as

19    everyone should be judged at the same level.  So the question

20    almost states, like, because someone is wealthy you should look

21    at them differently, whether favorably or negatively.  That

22    shouldn't enter into -- that shouldn't be part of the process

23    is the way that I read that question.

24              MR. KELLY:  So someone's economic status should be

25    irrelevant.
```

1          PROSPECTIVE JUROR:  Exactly.

2          MR. KELLY:  That's it, your Honor.

3          THE COURT:  Mr. Kendall.

4          MR. KENDALL:  Yes, please, your Honor.  Good

5     afternoon.  My name's Mike Kendall.  I represent Mr. Wilson.

6          I have a question about your answer to question nine.

7     You described your job as being an executive assistant, looks

8     like in healthcare.

9          PROSPECTIVE JUROR:  I'm what you call a

02:23 10     jack-of-all-trades.  I worked at the C level suite.  To go back

11     to the gentleman's comment earlier about I work with very

12     wealthy people, these things don't have one to do with the

13     other.

14          MR. KENDALL:  You're getting right to my point.  Thank

15     you.  What type of work do you do there?

16          PROSPECTIVE JUROR:  Presently I work for a CMO, chief

17     medical officer, for a pharmaceutical company.

18          MR. KENDALL:  In the past, what type of executives

19     have you worked with?

02:23 20          PROSPECTIVE JUROR:  I worked for a technology firm

21     where I supported a whole C level suite, everything from the

22     CEO to the CFO.  I worked at another technology firm.  I've

23     worked for a company that dealt in bitcoin where I supported

24     the CEO and the chief marketing officer.

25          MR. KENDALL:  Who did you work with at Steward?

1        PROSPECTIVE JUROR:  The head of urology there.  I

2   helped run his office and fellowship program.

3        MR. KENDALL:  What type of schedule?

4        PROSPECTIVE JUROR:  Everything from patient -- you see

5   people from all different walks of life.  So everything from

6   working with the patients to working with the fellows and their

7   programs, all things.

8        MR. KENDALL:  Moving more to the C suites and not the

9   Steward job, was that helping the executives manage everything

02:24 10   that came in?

11        PROSPECTIVE JUROR:  I would do anything.  The way I

12   describe it is I'm your office wife.  I make sure you do what

13   you need to get done and I make sure it looks seamlessly from

14   the outside.

15        THE COURT:  Miss Kearney.

16        MS. KEARNEY:  No questions, your Honor.

17        THE COURT:  Thank you, Miss Montes.  I'm going to ask

18   you to be in reserve.  You may be called back.  In the

19   meantime, please do not any outside research on the this case,

02:24 20   which would be inappropriate.  If you're ultimately selected as

21   a juror, you're going to decide the case based on evidence that

22   comes into this courtroom and not anything from the outside.

23   Thank you.

24        (Prospective juror exits.)

25        THE COURT:  Counsel, I've just been notified that Miss

       1   Uriot, who was just the one we previously examined has gone

       2   back down and found out that there's been a death in her family

       3   and that there will be a funeral next week.  It doesn't sound

       4   like a close family member, but she'll have to attend a funeral

       5   next week.  Do you want me to call her back and get anymore

       6   detail on that?  What is the position of counsel?

       7          MR. KELLY:  I think she should be excused.  I don't

       8   want to question her.

       9          THE COURT:  Mr. Kendall?

02:26 10          MR. KENDALL:  He's speaking for the loyal we.

      11          THE COURT:  Miss Kearney?

      12          MS. KEARNEY:  Your Honor, if it would be possible to

      13   call her back and get some more details.

      14          MR. KELLY:  On the last one, Judge, 77, she's probably

      15   commented on this very case so Aziz would move to strike her.

      16   She's on Facebook publically commenting on this case.  I'm

      17   concerned this case is going to generate some publicity and I'm

      18   concerned that she's already weighed in publicly on social

      19   media.

02:27 20          THE COURT:  Miss Kearney?

      21          MS. KEARNEY:  Your Honor, she said everyone should be

      22   judged at the same level and said she could be impartial.

      23          THE COURT:  I don't see that the comment renders her

      24   ineligible to be a juror.  Lots of people make lots of comments

      25   on Facebook.  I don't find this one to be indicative of having

1    made up her mind on the case.  I examined her under oath.  I

2    find her to be credible.  I'm not going to excuse her for

3    cause.

4              (Prospective juror enters.)

5              THE COURT:  Good afternoon, Mr. Hicks.  You may be

6    seated.  You're reminded you're under oath.  You can remove

7    your mask if you want to.

8              I understand one of the questions, I guess the last

9    question that you answered, you expressed a suggestion that you

02:28 10   were not sure whether you could give the defendants a fair

11   trial.

12             PROSPECTIVE JUROR:  Well, I know quite a bit about the

13   case, the scandal in general.  I just know that a lot of the

14   people seem to be pleading guilty right at the beginning,

15   meaning to me that means the evidence is overwhelming, at least

16   for one of them.  I believe this is the first one that's gone

17   to trial.

18             THE COURT:  Excuse me?

19             PROSPECTIVE JUROR:  I believe this is the first one

02:29 20   that's gone to trial that I have read about.  In my mind, I'm

21   thinking.

22             THE COURT:  You understand every defendant has an

23   independent right.

24             PROSPECTIVE JUROR:  I know.  I know.  I tell myself

25   that.  Until this trial, I just assumed, not having a vested

```
 1   interest.

 2           THE COURT:  You believe you probably made up your

 3   mind?

 4           PROSPECTIVE JUROR:  I think it's going to be hard to

 5   overcome it with a preexisting notion.

 6           THE COURT:  I'm going to excuse you from this jury.

 7   Thank you.  I hope you will serve on a jury at a future time in

 8   another case because it's an important civic duty.  I'll excuse

 9   you from this jury.

10           (Prospective juror exits.)

11           THE COURT:  Bring the juror back in.  This is number

12   76.

13           (Prospective juror enters.)

14           THE COURT:  Miss Uriot, I understand you heard some

15   bad news in your family, is that right?

16           PROSPECTIVE JUROR:  It's my sister-in-law's mother.

17   She passed away on Tuesday.

18           THE COURT:  Sister-in-law's mother.

19           PROSPECTIVE JUROR:  Yes.

20           THE COURT:  Were you close to her?

21           PROSPECTIVE JUROR:  I'm close to my sister-in-law.

22           THE COURT:  So you feel obligated that you have to

23   attend the funeral?

24           PROSPECTIVE JUROR:  Yes.

25           THE COURT:  Or that you would want to attend the
```

1      funeral.

2                  PROSPECTIVE JUROR:  Yes, sir.

3                  THE COURT:  You don't happen to know when that's going

4      to be?

5                  PROSPECTIVE JUROR:  No.

6                  THE COURT:  I expect you would request to be excused?

7                  PROSPECTIVE JUROR:  I guess so, if that's.

8                  THE COURT:  Not knowing the day, we are scheduled to

9      start the trial next week.  We're going to not have a session

02:31 10    next Thursday.  If it happened to be on Thursday, that would

11     not conflict, but without knowing, it would be difficult.  I

12     don't want to excuse you unless you want to be excused.

13                 PROSPECTIVE JUROR:  It's just something that I feel is

14     important.  I didn't want to use it as an excuse either.

15                 THE COURT:  I understand.  You feel without knowing

16     what day it is that you need to be excused.

17                 PROSPECTIVE JUROR:  Yes.

18                 THE COURT:  You're excused, Miss Uriot.  Thank you

19     very much.

02:32 20         Call the next.

21                 (Prospective juror exits.)

22                 (Prospective juror enters.)

23                 THE COURT:  Good afternoon, Miss Dodd.

24                 PROSPECTIVE JUROR:  Good afternoon.

25                 THE COURT:  Please be seated.  You are reminded that

160

 1    you remain under oath.  You may remove your mask if you want

 2    to, but you don't have to.

 3         Miss Dodd, the only question I believe that you

 4    answered affirmatively or at least I have noted here is that

 5    you have a moderate knowledge about the case and its coverage.

 6    Would any of that knowledge affect your ability to be fair and

 7    impartial in this case?

 8         PROSPECTIVE JUROR:  No.

 9         THE COURT:  In other words, you are convinced that you

02:33 10   can decide this case based solely on the evidence that comes

11    into this courtroom and not on the basis of any news you've

12    heard about it?

13         PROSPECTIVE JUROR:  Yes.

14         THE COURT:  Was there anything else in the

15    questionnaire that gave you pause that you would not be able to

16    render a verdict fairly and without bias?

17         PROSPECTIVE JUROR:  No.

18         THE COURT:  Thank you.  Mr. Kelly, any questions?

19         MR. KELLY:  Briefly.  Good afternoon.  Brian Kelly.  I

02:33 20   represent Mr. Aziz.

21         Some of this case will involve testimony about college

22    sports.  Do you follow college sports at all?

23         PROSPECTIVE JUROR:  No.

24         MR. KELLY:  That's it.

25         THE COURT:  Mr. Kendall.

1          MR. KENDALL:  Good afternoon.  Mike Kendall.  I

2     represent John Wilson.

3          Just wanted to ask you about question 9, where you

4     describe your employment as associate product management at

5     J.P. Morgan.  Can you tell us what you do.

6          PROSPECTIVE JUROR:  Sure.  I work at J.P. Morgan for

7     5 years now, ever since I graduated school in the defense

8     services space.  My current role is in product management.  We

9     work with new clients, RFPs, client reprices, basically, the

02:34 10   pricing strategy.

11          MR. KENDALL:  What type of clients?

12          PROSPECTIVE JUROR:  Asset management.

13          MR. KENDALL:  You don't work with retail people?

14          PROSPECTIVE JUROR:  I don't.

15          THE COURT:  Miss Kearney?

16          MS. KEARNEY:  No questions.

17          THE COURT:  You may step down.  I'm going to have you

18     in reserve, which means you may be called back at some time.

19     Please understand you're not to do any research about this case

02:35 20   or go online or learn anything about it.  That would be

21     inappropriate.  You're going to decide this case, if you are

22     selected as a juror, based on the testimony that comes into

23     this courtroom.  Okay?

24          PROSPECTIVE JUROR:  Thank you.

25          (Prospective juror exits.)

1           (Prospective juror enters.)

2           THE COURT:  Good afternoon, Miss Bettencourt.

3           PROSPECTIVE JUROR:  Good afternoon.

4           THE COURT:  Please be seated.  You're reminded that

5    you remain under oath.  You may remove your mask if you want,

6    but you don't have to.  I understand you have answered some

7    questions on the questionnaire that will need to be clarified.

8           Number 43, which asks you about wealthy people and

9    what you think of them, you said you think that money can buy

02:36 10   an advantage in many aspects of life.  Is that in any way going

11   to affect your ability to be fair and impartial in this case,

12   which involves allegations against people who are of some

13   wealth?

14          PROSPECTIVE JUROR:  No.  I don't think so.  It's a

15   fact.  I, myself, have advantages that others don't have based

16   on just wealth and jobs and things.  So to say that -- I just

17   couldn't say that there's not a difference.  There is.

18          THE COURT:  Can you tell me that you will decide this

19   case solely based on the evidence that comes into this

02:37 20   courtroom and not on any preconceived notions you have of

21   people of wealth?

22          PROSPECTIVE JUROR:  Yes.

23          THE COURT:  Also, with respect to that next question

24   regarding prejudice against a defendant who may choose not to

25   testify, you say you understand that that's a right and that

there are strategic aspects, but you're not sure how you would

feel if you heard the case.  You understand that all defendants

have a constitutional right not to testify, that it is the

government's burden to prove a case beyond a reasonable doubt,

and the defendants do not have to present any evidence or

testify and that that is the law?

PROSPECTIVE JUROR:  Yes.

THE COURT:  If I were to instruct you on that, will

you follow my instruction?

PROSPECTIVE JUROR:  Yes.

THE COURT:  So this matter that you are concerned

about, whether or not a defendant testifies, you understand

when you're deliberating that, you can't consider that when you

deliberate the case?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Is there anything else in that

questionnaire that gives you pause that you might not be able

to be fair and impartial in this case?

PROSPECTIVE JUROR:  No.

THE COURT:  Mr. Kelly, any questions?

MR. KELLY:  Yes.  Good afternoon.  My name's Brian

Kelly.  I'm here with my client Mr. Aziz.

Let me follow-up on that question.  In response to

that question, 44 -- there's a whole bunch of questions.  When

it said "the defendant in a criminal case has an absolute right

1    not to testify, would you hold it against the defendants if

2    they did not testify in this case", you say "I don't know.  I

3    understand it is a right and there are strategies, but I don't

4    know how I feel until I heard the entire case."

5            PROSPECTIVE JUROR:  Right.

6            MR. KELLY:  Can you tell me what you're thinking with

7    that response.

8            PROSPECTIVE JUROR:  I guess I was filling out the

9    questionnaire and was feeling that I should try to answer as

02:39 10   honestly as possible.  When I was reading the question, I was

11   thinking about how would I feel.  I guess I was saying that

12   it's hard to predict the future because I wouldn't know until I

13   actually heard a case.  I guess that's why I was trying to say

14   that I understand that that's -- I understand that they don't

15   have to testify.  It doesn't mean anything per se.  It's not

16   not testifying means guilty.  I know that's not what it means.

17   It's more like hearing the full story.

18           MR. KELLY:  So you're not trained in the law

19   obviously?

02:40 20        PROSPECTIVE JUROR:  No.  You can tell by my response?

21           MR. KELLY:  If the judge were to instruct you, look,

22   this is the law that defendants are presumed innocent and the

23   burden of proof is on the government and the defendant doesn't

24   have to prove anything, you could follow that instruction?

25           PROSPECTIVE JUROR:  Sure.

1          MR. KELLY:  If he were to instruct you that nothing

2    can be inferred or understood from a defendant's not

3    testifying, you could follow that instruction?

4          PROSPECTIVE JUROR:  Yes.

5          MR. KELLY:  Your first thought or your first reaction

6    to that questionnaire, you could put that aside?

7          PROSPECTIVE JUROR:  Yes.  Yeah.  I would be able to

8    follow the instructions.

9          MR. KELLY:  That's it.  Thanks.

02:41 10          THE COURT:  Mr. Kendall.

11          MR. KENDALL:  I'm fine.  Thank you.

12          THE COURT:  Miss Kearney?

13          MS. KEARNEY:  Good afternoon, Miss Bettencourt.  In

14    your questionnaire, you said you previously served on a

15    criminal jury but they were unable to reach a verdict.  Can you

16    elaborate a little bit on that?

17          PROSPECTIVE JUROR:  No.  I ended up being the

18    alternate.

19          MS. KEARNEY:  Thank you.

02:41 20          THE COURT:  Thank you, Miss Bettencourt.  I'm going to

21    ask you to be in reserve, which means you may or may not be

22    called back for further duty.  In the meantime, I instruct you

23    not to do any independent research on this case.  That would be

24    not appropriate because if you are ultimately chosen as a juror

25    in this case, you're going to decide on the evidence that comes

 1    into this courtroom and nothing else, right?

 2             PROSPECTIVE JUROR:  Yes.

 3             THE COURT:  Thank you, Miss Bettencourt.

 4             (Prospective juror exits.)

 5             (Prospective juror enters.)

 6             THE COURT:  Good afternoon, Miss Schroth.

 7             PROSPECTIVE JUROR:  Schroth.

 8             THE COURT:  Please be seated.  Understand you remain

 9    under oath.  You may remove your mask, but you don't have to.

02:42 10          Miss Schroth, do I understand you believe it might be

11    a hardship to serve on this jury for 4 weeks?

12             PROSPECTIVE JUROR:  Yes.

13             THE COURT:  That's because you have young children at

14    home without an ability to see that they're taken care of?

15             PROSPECTIVE JUROR:  My husband has travel planned so

16    it would be difficult with him away.

17             THE COURT:  I don't want to cause you hardship.  If

18    it's going to be a hardship to you, I'm going to excuse you

19    from this jury.  I wanted to understand that's what you're

02:43 20   asking me to do.

21             PROSPECTIVE JUROR:  Yes.

22             THE COURT:  Then you are excused, Miss Schroth.  Thank

23    you very much.

24             (Prospective juror exits.)

25             (Prospective juror enters.)

1          THE COURT:  Good afternoon, Miss Roberts.  Please be

2     seated.  Understand that you remain under oath.  You may remove

3     your mask if you want to, but you don't have to.

4          Miss Roberts, would serving on this jury cause you a

5     financial hardship?

6          PROSPECTIVE JUROR:  No.

7          THE COURT:  You did answer a question, number 42, with

8     respect to cooperators, that you were unsure whether you could

9     fairly and impartially consider a cooperator's testimony.

02:44 10   Would you explain that or embellish on that a little bit.

11          PROSPECTIVE JUROR:  I was unsure of what the question

12     meant when I read it.

13          THE COURT:  You understand that some people cooperate

14     with the government and they get a break on what they're

15     charged with or the sentence they have to serve, but they are

16     required to testify truthfully under oath and if they don't do

17     that, it can be subject to prosecution for perjury.  Do you

18     understand the government has a right to use people who

19     cooperate, and would you be able, notwithstanding your answer,

02:45 20   to be fair and impartial in this case?

21          PROSPECTIVE JUROR:  I think so.

22          THE COURT:  Are you sure about that?

23          PROSPECTIVE JUROR:  Yes.

24          THE COURT:  Mr. Kelly, do you have any questions for

25     Miss Roberts?

1          MR. KELLY:  Yes.  Good afternoon.  Name's Brian Kelly.

2     I represent Mr. Aziz here.

3          Quick question for you.  There's one question in this

4     pretty lengthy questionnaire where you indicated you've seen

5     some local news media about the case.  Can you just tell me

6     about this.

7          PROSPECTIVE JUROR:  Not about this case.  I usually

8     only watch the Channel 5 news.

9          MR. KELLY:  That's simplifies my question.  Thank you.

02:46 10          Do you follow college sports at all?

11          PROSPECTIVE JUROR:  No.

12          MR. KELLY:  Nothing further.

13          THE COURT:  Mr. Kendall.

14          MR. KENDALL:  Good afternoon.  Thank you.  No.  I

15     don't have any questions.

16          THE COURT:  Miss Kearney?

17          MS. KEARNEY:  Good afternoon, Miss Roberts.  One

18     question for you.  On your questionnaire, you said you

19     previously served on a jury.  Is there anything about that

02:46 20     experience that would affect your ability to be fair and

21     impartial?

22          PROSPECTIVE JUROR:  No.

23          THE COURT:  Thank you, Miss Roberts.  I will ask you

24     to be in reserve.  That means you may be called back to serve

25     on this jury.  In the meantime, you're not to do any

```
 1   independent research.  That would be entirely inappropriate.  I
 2   think you understand why.  You're going to decide this case, if
 3   chosen as a juror, solely on the basis of the evidence that
 4   comes into this courtroom.  Okay?  Thank you.
 5            (Prospective juror exits.)
 6            (Prospective juror enters.)
 7            THE COURT:  Good afternoon, Miss Murphy.  You may be
 8   seated.  You're reminded that you remain under oath.  You may
 9   remove the mask if you want to, but you don't have to.
10            Miss Murphy, would serving on this jury cause you any
11   financial hardship?
12            PROSPECTIVE JUROR:  It may if I'm out of work for a
13   long time.
14            THE COURT:  Well, we expect that the case will last
15   about 4 weeks.  I'm confident it will be over by the middle of
16   October.  Would that cause you such financial problems that you
17   would feel that you couldn't serve?
18            PROSPECTIVE JUROR:  Yes.
19            THE COURT:  Then I will excuse you because I don't
20   want to cause you financial hardship.
21            PROSPECTIVE JUROR:  Thank you.
22            THE COURT:  If that would cause that, then you're
23   excused.
24            PROSPECTIVE JUROR:  Thank you.
25            THE COURT:  You're welcome.
```

1               (Prospective juror exits.)

2               (Prospective juror enters.)

3          THE COURT:  Good afternoon, Mr. Costa.  You may be

4     seated.  You're reminded you are still under oath.  You may

5     remove your mask if you want to, but you don't have to.

6          Mr. Costa, would serving on this jury cause you

7     financial hardship?

8          PROSPECTIVE JUROR:  No, sir.

9          THE COURT:  You answered some other questions on the

02:49 10     questionnaire that I need to inquire about.  You've said in

11     response to a potential prejudice that people will seek

12     advancement over ethics, and also you said that cooperators get

13     out of being held accountable for bad decisions.

14     Notwithstanding those answers, if the Court were to instruct

15     you that the government is entitled to call people who

16     cooperate with them, would you be able to be fair and impartial

17     in this case or would that impact your ability?

18          PROSPECTIVE JUROR:  I don't think it would impact.

19     It's just my point of view from a wealth perspective.

02:50 20          THE COURT:  Do you have a prejudice against people of

21     wealth?

22          PROSPECTIVE JUROR:  It would be based on category.  I

23     think there's an advantage, a higher advantage of that.  It

24     just makes my opinion, in a sense, that with more money you get

25     advantage, period.

1        THE COURT:  If the evidence were that the defendants

2    in this case were people of some wealth, would that

3    automatically prejudice you against their case notwithstanding

4    the facts that come into this courtroom?

5        PROSPECTIVE JUROR:  No.

6        THE COURT:  So could you be fair and impartial and

7    judge this case based solely on the evidence that comes into

8    this court regardless of the status of wealth of the

9    defendants?

02:51 10        PROSPECTIVE JUROR:  I would hope so that I could do

11    that.

12        THE COURT:  You hope so.  Only you can be inside your

13    head.  I need to know whether you can or you can't.

14        PROSPECTIVE JUROR:  Well, I can.  Again, I look at

15    things based on how it's said to me, what's presented.

16        THE COURT:  On the evidence that comes into the

17    courtroom?

18        PROSPECTIVE JUROR:  Well, yeah.  I look at it from

19    that perspective.  If I can comprehend it and understand it and

02:51 20    know what's going on, then hopefully I can make the right

21    decision based on what I hear.

22        THE COURT:  Do you have any doubt for any of the

23    questions that were asked of you in the questionnaire and the

24    answers that you gave, do you have any doubt that you can be

25    fair and impartial in this case?

```
 1              PROSPECTIVE JUROR:  I don't know.
 2              THE COURT:  I appreciate your answer.  I'm going to
 3     excuse you from this jury.  Thank you, Mr. Costa.
 4              (Prospective juror exits.)
 5              (Prospective juror enters.)
 6              THE COURT:  Good afternoon, Mr. Callahan.  Please be
 7     seated.  You understand you remain under oath.  If you want to
 8     remove the mask, you can.  You don't have to.
 9              Mr. Callahan, would serving on this jury for 4 weeks
10     cause you any financial hardship?
11              PROSPECTIVE JUROR:  No.
12              THE COURT:  Would any of the questions or your answers
13     in the questionnaire that you filled out yesterday, a very
14     lengthy questionnaire, give you pause as to whether you could
15     be fair and impartial in this case?
16              PROSPECTIVE JUROR:  I can be impartial.  I didn't have
17     any questions about that.
18              THE COURT:  So you could decide this case based solely
19     on the evidence that comes into this courtroom and not on
20     anything that's happened outside of the courtroom or what
21     you've heard about the case?
22              PROSPECTIVE JUROR:  That's correct.
23              THE COURT:  Any questions, Mr. Kelly?
24              MR. KELLY:  Yes.  Good afternoon.  Brian Kelly.  I
25     represent Mr. Aziz.
```

1          Quick question for you on this questionnaire.  There's

2    an answer to one of the questions about publicity.  Have you

3    seen a lot of publicity about this matter?

4          PROSPECTIVE JUROR:  I've seen it on the news, not

5    necessarily this particular matter but other folks who have

6    been involved in this matter, yeah.

7          MR. KELLY:  Has what you've seen cause you to come to

8    any conclusions about the people who are in this trial?

9          PROSPECTIVE JUROR:  No.

02:54 10          MR. KELLY:  So you can approach this from a

11   perspective that you could be fair to both sides, the defense

12   and the government?

13          PROSPECTIVE JUROR:  That's correct.

14          MR. KELLY:  Do you follow college sports at all?

15          PROSPECTIVE JUROR:  Not really.

16          MR. KELLY:  That's it.  Thanks.

17          THE COURT:  Mr. Kendall.

18          MR. KENDALL:  If I may have one moment, your Honor.

19          THE COURT:  Yes.

02:54 20          MR. KENDALL:  Hi.  I'm Mike Kendall.  I represent John

21   Wilson.  Good afternoon.

22          PROSPECTIVE JUROR:  Good afternoon.

23          MR. KENDALL:  I want to follow-up on the question

24   Mr. Kelly was asking you, 39.  Tell us in your own words what

25   did you think of the news media you read, any sort of reaction.

1    PROSPECTIVE JUROR:  I honestly didn't give it a whole

2  lot of thought.  I know there were a couple of high profile

3  folks, Felicity Huffman and Aunt Becky that I was familiar

4  with.  That was really the extent of it.  I moved on to the

5  next story.  Didn't pay too much attention beyond that.

6    MR. KENDALL:  You didn't really care.

7    PROSPECTIVE JUROR:  Right.

8    THE COURT:  Miss Kearney.

9    MS. KEARNEY:  Good afternoon.  One question for you.

02:55 10  You indicated on your questionnaire that you previously served

11  on a jury.  Is there anything about that experience that would

12  affect your ability to be fair and impartial in this trial?

13    PROSPECTIVE JUROR:  No.

14    THE COURT:  Thank you, Mr. Callahan.  I'm going to

15  leave you in reserve, which means you may or may not be called

16  back for further jury service.  In the meantime, do not do any

17  independent research on this case.  You can't consult the

18  internet or anything like that.  It would be inappropriate.

19    PROSPECTIVE JUROR:  Understood.

02:55 20    (Prospective juror exits.)

21    (Prospective juror enters.)

22    THE COURT:  Good afternoon, Miss Buttrick.  Please be

23  seated.  You're reminded that you remain under oath.  You may

24  remove the mask if you want to, but you don't have to.

25    PROSPECTIVE JUROR:  Thank you.

```
 1              THE COURT:  Miss Buttrick, I noticed that you said
 2     that you might have a scheduling conflict during the week of
 3     October 7th.  Is that something that you could not postpone or
 4     avoid or is that something you feel you have to do?
 5              PROSPECTIVE JUROR:  It's a trip with my husband.
 6     We've already paid for it.
 7              THE COURT:  So it's a prepaid vacation.
 8              PROSPECTIVE JUROR:  It's a bowling tournament.  We're
 9     on a bowling team together.
02:56 10         THE COURT:  You don't want to postpone that.
11              PROSPECTIVE JUROR:  I can't postpone it because it's
12     in Columbus, Ohio.  I could miss it, however, my husband would
13     be very upset because we bowl together.  We're a team.
14              THE COURT:  I don't want to get in the middle of a
15     vacation that's prepaid.
16              PROSPECTIVE JUROR:  Or married, right?
17              THE COURT:  You want to be excused from this jury,
18     right?
19              PROSPECTIVE JUROR:  If it would go.
02:57 20         THE COURT:  It's going to be that long.
21              PROSPECTIVE JUROR:  Then yes.
22              THE COURT:  You're excused.  Thank you.
23              (Prospective juror exits.)
24              (Prospective juror enters.)
25              THE COURT:  Good afternoon, Mr. Wallace.
```

```
 1              PROSPECTIVE JUROR:  Hello.  Thank you for having me.
 2              THE COURT:  Have a seat.  You're reminded that you
 3    remain under oath.  You may remove the mask if you want to, but
 4    you don't have to.  Would service on this jury, Mr. Wallace,
 5    cause you financial hardship?
 6              PROSPECTIVE JUROR:  Not that I'm aware of.
 7              THE COURT:  I will take that answer as you feel you
 8    could serve for roughly 4 weeks.
 9              PROSPECTIVE JUROR:  I'd have to talk to my boss.  The
10    answer is yes.
11              THE COURT:  That you could serve.
12              PROSPECTIVE JUROR:  I can serve.
13              THE COURT:  There have been some other questions that
14    you answered on the questionnaire that I think we need to have
15    you embellish a little bit.
16              With respect to the question about antigovernment or
17    defense prejudices, you said that admissions should be based on
18    hard work and achievement, that is admissions to college.
19              PROSPECTIVE JUROR:  Correct.
20              THE COURT:  Also, you cite time in sports media.  What
21    did you mean by that?
22              PROSPECTIVE JUROR:  Could you repeat the question.
23              THE COURT:  The question had to do with whether you
24    had any prejudices against the government or the defense that
25    you knew of, and you mentioned that college admissions should
```

 1    be based on hard work and achievement.

 2         PROSPECTIVE JUROR:  I might have misunderstood the

 3    question and might have been referring to things that I've read

 4    about scandal with admissions.

 5         THE COURT:  Would what you've read affect your ability

 6    to be fair and impartial in this case, that is could you decide

 7    this case solely based upon the evidence that comes into this

 8    courtroom and not on the basis of anything that you've read?

 9         PROSPECTIVE JUROR:  I could do that.

03:00 10         THE COURT:  With respect to the defendants testifying

11    or not testifying, you said you think the defendants should

12    have nothing to hide, which I understand you think they ought

13    to testify.

14         PROSPECTIVE JUROR:  Yes.

15         THE COURT:  But you understand that the law is a

16    defendant does not have to testify.

17         PROSPECTIVE JUROR:  I understand.

18         THE COURT:  He has a constitutional right not to

19    testify and you cannot consider in your deliberations in this

03:00 20    case whether or not he testified.  Do you understand that?

21         PROSPECTIVE JUROR:  I understand that.

22         THE COURT:  Would you follow that instruction if

23    given?

24         PROSPECTIVE JUROR:  Yes.

25         THE COURT:  Those are the questions that I would ask.

1    Mr. Kelly, do you have any?

2          MR. KELLY:  Yes, your Honor.  Good afternoon.  Brian

3    Kelly.  I represent Mr. Aziz.  Let me follow-up quickly if I

4    could.

5          PROSPECTIVE JUROR:  Sure.

6          MR. KELLY:  With respect to this questionnaire, you

7    said you would have concerns or reservations about your ability

8    or willingness to abide by the rule that you be barred from the

9    media review.  You say you use it for your sports business

03:01 10   news.  That's why you checked that you'd be concerned.  So

11   that's still accurate?  You'd have a concern?

12          PROSPECTIVE JUROR:  Yes.

13          MR. KELLY:  You came to court before you were just

14   instructed with the thought that defendants in a criminal case

15   like this should have nothing to hide and should testify,

16   right?

17          PROSPECTIVE JUROR:  My opinion.

18          MR. KELLY:  You have a friend or relative retired FBI?

19          PROSPECTIVE JUROR:  That's correct.

03:01 20          MR. KELLY:  Here in Boston?

21          PROSPECTIVE JUROR:  What's his or her name?

22          PROSPECTIVE JUROR:  Kris Decore.

23          MR. KELLY:  How do you know Agent Decore?

24          PROSPECTIVE JUROR:  I've known her for 20 years,

25   through my wife.

1           MR. KELLY:  You also indicated on question 21 you are

2     responsible for the operation of over 20 employees, is that

3     right?

4           PROSPECTIVE JUROR:  That's right.

5           MR. KELLY:  That part of your concern with serving on

6     a 4-week jury?

7           PROSPECTIVE JUROR:  My day-to-day business requires me

8     to be with my employees working because we produce a lot of

9     live sports content, so being on site is crucial for me.

03:02 10          MR. KELLY:  So it would be a hardship.

11          PROSPECTIVE JUROR:  Yes.  Financially, no, because my

12    company would take care of me, but for my work, yes.

13          MR. KELLY:  From a work perspective, it's a hardship.

14    I guess it would be a hardship for your fellow employees if

15    you're not there.

16          PROSPECTIVE JUROR:  That's right.

17          THE COURT:  Let me stop you there.  Are you asking to

18    be excused for that hardship?

19          PROSPECTIVE JUROR:  I will do what the Court thinks is

03:03 20    best.  I would like to be excused for that for my employees and

21    for my work, but I don't think that the way this government and

22    the law has been built that that necessarily puts me in a place

23    that I have an option in saying yes or no.

24          THE COURT:  I don't want to cause your business or

25    your employees a hardship.  If it's going to cause a hardship,

```
 1    I will excuse you.  I didn't understand that you were asking to

 2    be excused for that hardship.

 3              PROSPECTIVE JUROR:  I'm a decision-maker on a daily

 4    basis.

 5              THE COURT:  You're excused, Mr. Wallace.  Thank you.

 6              PROSPECTIVE JUROR:  Thank you.

 7              (Prospective juror exits.)

 8              (Prospective juror enters.)

 9              THE COURT:  Good afternoon, Miss Pierce.

10              PROSPECTIVE JUROR:  Good afternoon.

11              THE COURT:  Please be seated.  You're reminded that

12    you remain under oath.  You may remove your mask if you want,

13    but you don't have to.

14              Miss Pierce, would serving on this jury cause you a

15    financial hardship?

16              PROSPECTIVE JUROR:  No.

17              THE COURT:  You mentioned that you saw that

18    documentary on Netflix.

19              PROSPECTIVE JUROR:  Yes.

20              THE COURT:  What effect did that have on you and would

21    it affect your ability to be fair and impartial on this case?

22              PROSPECTIVE JUROR:  I don't remember too much about

23    it.  I don't think it would affect me.

24              THE COURT:  Do you understand that at least the

25    defendant believes that there were falsities in that and that
```

1    that's not fact, that the facts in this case are going to come

2    out in the evidence in this courtroom?  Could you decide this

3    case based solely on the evidence that comes out in this

4    courtroom and not on the basis of anything you saw in that

5    Netflix documentary?

6            PROSPECTIVE JUROR:  Definitely.  Yes.

7            THE COURT:  Was there anything else on the

8    questionnaire that gave you pause that you would be able --

9    that you would not be able to decide this case fairly and

03:05 10   impartially?

11            PROSPECTIVE JUROR:  No.

12            THE COURT:  So you think you could do that?  You could

13    be fair and impartial?

14            PROSPECTIVE JUROR:  Yes.

15            THE COURT:  Any questions, Mr. Kelly?

16            MR. KELLY:  Just briefly.  Good afternoon.  Brian

17    Kelly.  I represent Mr. Aziz here.

18            Nothing you may have seen in the media gives you any

19    strong feelings either way about this case?

03:06 20            PROSPECTIVE JUROR:  No.

21            MR. KELLY:  I think I read this correctly, but

22    40 years a teacher?

23            PROSPECTIVE JUROR:  Yes.  I taught for over 30 years.

24            MR. KELLY:  Nothing about that experience would have

25    any effect on you in a case where college admissions stuff is

1   being discussed?

2          PROSPECTIVE JUROR:  No.

3          MR. KELLY:  How about college sports?  Do you follow

4   college sports at all?

5          PROSPECTIVE JUROR:  Basketball a little bit.

6          MR. KELLY:  Which team?

7          PROSPECTIVE JUROR:  I think the -- I can't think of

8   it.  I'm sorry.

9          MR. KELLY:  It's okay.  Men's basketball?  Women's

03:06 10   basketball?

11          PROSPECTIVE JUROR:  Yes.  In March.

12          MR. KELLY:  The March madness stuff.

13          PROSPECTIVE JUROR:  Yes.

14          THE COURT:  Mr. Kendall.

15          MR. KENDALL:  Yes, your Honor.  Thank you.  Good

16   afternoon.  I represent John Wilson.  My name's Mike Kendall.

17   Just a couple small things.

18          You were honest enough and frank enough to discuss

19   some very painful things about your family being a victim in

03:07 20   some criminal actions.  I'm sorry to read that and have to

21   raise it.  Has it left you with any views of the criminal

22   justice system?

23          PROSPECTIVE JUROR:  No.

24          MR. KENDALL:  No particular thoughts in favor of or

25   against the police or anything about court procedures or

1    anything else?

2            PROSPECTIVE JUROR:  I see the importance of getting --

3    of getting a lawyer, your own personal lawyer.  I don't want to

4    get into it so much about my sister.

5            MR. KENDALL:  I don't want to at all.

6            PROSPECTIVE JUROR:  We didn't have our own lawyer.  I

7    think it's much easier and would have been better than.

8            MR. KENDALL:  I don't want to ask about your family

9    issues, just your view of the system.

03:08 10         PROSPECTIVE JUROR:  No.  I have a son who's an

11   attorney and a daughter-in-law who's an attorney.  I'm very

12   proud of the fact that they are.  I applaud you all.  Yes.

13           MR. KENDALL:  Where do they practice and where do they

14   work?

15           PROSPECTIVE JUROR:  My son is in Maine and my

16   daughter-in-law is in Minnesota.

17           MR. KENDALL:  What type of work do they do as lawyers?

18           PROSPECTIVE JUROR:  My son does real estate and my

19   daughter-in-law works for the county.

03:08 20         MR. KENDALL:  Great.  I saw your husband's retired.

21   What did he do before retirement?

22           PROSPECTIVE JUROR:  He was a paralegal before

23   retirement.

24           MR. KENDALL:  Where did he work?

25           PROSPECTIVE JUROR:  He had a couple of different

        1    places.  I can't recall.

        2            MR. KENDALL:  Do you know what type of legal work he

        3    did as a paralegal?

        4            PROSPECTIVE JUROR:  He had three careers.  That was

        5    his last 5 years.  I'm not sure.

        6            MR. KENDALL:  Did he work for a government agency?

        7            PROSPECTIVE JUROR:  No.

        8            MR. KENDALL:  Private lawyer?

        9            PROSPECTIVE JUROR:  Private.

03:09  10            MR. KENDALL:  Thank you.

       11            THE COURT:  Miss Kearney?

       12            MS. KEARNEY:  No questions.

       13            THE COURT:  Thank you, Miss Pierce.  I'm going to ask

       14    you to be in reserve.  You will go with Mr. McAlear.  That

       15    means you may be called back for further jury duty.  Please do

       16    not try to do any independent research on this case.  You

       17    understand that would be inappropriate, correct?

       18            PROSPECTIVE JUROR:  Yes.

       19            THE COURT:  Thank you, Miss Pierce.

03:09  20            (Prospective juror exits.)

       21            (Prospective juror enters.)

       22            THE COURT:  Good afternoon, Mr. Liu.  You may be

       23    seated.  You're reminded that you remain under oath.  You may

       24    remove the mask if you want, but you don't have to.

       25            Mr. Liu, would serving on this jury for 4 weeks cause

1    you any financial hardship?

2        PROSPECTIVE JUROR:  Not a financial hardship.

3        THE COURT:  So you are willing to serve and it

4    wouldn't affect your job status?

5        PROSPECTIVE JUROR:  I need to find out 4 weeks.  I

6    need to check with HR.  Doing civic duty is part of our company

7    policy, but 4 weeks is something that I don't have any back

8    information on that.  I can check with -- I will probably give

9    you a better answer how that would affect me.

03:11 10        THE COURT:  We don't want to cause you financial

11    hardship.  Employers, especially large ones like you work for,

12    I understand it's Bristol Meyers, is that right?

13        PROSPECTIVE JUROR:  Yes.

14        THE COURT:  They have an obligation, as citizens, to

15    support their employees who are called for jury duty.  Whether

16    or not that means they will pay you full salary for the whole

17    4 weeks, I don't know.  They have certain obligations that the

18    Court, in fact, can help support you.  In other words, my

19    deputy could call up your superior and say.

03:12 20        PROSPECTIVE JUROR:  I would probably be safe then.

21        THE COURT:  I think you would be, but I can't

22    guarantee it.  I don't want to be understood as guaranteeing

23    it.  At least putting that aside for the moment, there were

24    some other matters that you responded to on the questionnaire

25    that I would like to ask you about.

1          One was a question about prejudice against the

2     defendant who did not testify.  You said you don't see a strong

3     reason for a defendant not to testify in a case like this.

4          Do you understand that all defendants in criminal

5     cases have a constitutional right not to testify?

6          PROSPECTIVE JUROR:  No.  I wasn't aware of that.

7          THE COURT:  Would you be able to follow an instruction

8     to that effect if I gave it to you in the trial?

9          PROSPECTIVE JUROR:  Yes.  If it's the right reading of

03:12 10   the law, I will follow.

11         THE COURT:  In fact, if you were a juror, I will

12    instruct you that you can't even consider that fact in the

13    deliberation room that a defendant did not testify because

14    defendants have a constitutional right not to testify.  So you

15    could follow my instructions if I instructed you in that

16    manner?

17         PROSPECTIVE JUROR:  Oh, yeah.  You give me the

18    instruction, I would definitely follow it.

19         THE COURT:  Is there any reason at all that you think

03:13 20   you would not be able to be fair and impartial in this case?

21         PROSPECTIVE JUROR:  I read a little bit in the news

22    about this whole thing they call Varsity Blues.  It's this

23    whole college admissions scandal.  I do have some emotional

24    component in this.  I don't think it's fair.  I was reading the

25    news.  There are already, how do I say, some people who have

1    already served their term as well.  In general, I think it's a

2    bad practice.

3              THE COURT:  You've heard that other people have been

4    convicted and went to jail?  Is that what you're saying?

5              PROSPECTIVE JUROR:  I think so, yeah.  I see something

6    like that.

7              THE COURT:  That's not these two defendants.  These

8    two defendants have independent rights to defend themselves and

9    to present cases.  What some other defendant did has no impact

03:14 10   whatsoever on these defendants.  Do you understand that?

11             PROSPECTIVE JUROR:  After hearing your explanation, I

12   think I understand it now.

13             THE COURT:  The question is, could you decide this

14   case solely on the basis of the evidence that comes into this

15   courtroom and not on the basis of what you read about other

16   Varsity Blues cases?

17             PROSPECTIVE JUROR:  I think I can.  I feel I'm an

18   objective person and I can confine my judgment based on the

19   facts and what I hear and follow your instructions.

03:15 20             THE COURT:  That's important.  Only you can tell me

21   that.  Only you can tell me whether you believe you can be fair

22   and impartial.  I can't get inside your head.  Can you be fair

23   and impartial?

24             PROSPECTIVE JUROR:  I think I can, yes.

25             THE COURT:  Any questions, Mr. Kelly?

1          MR. KELLY:  Yes.  Good afternoon.  Brian Kelly for

2     Mr. Aziz.

3          On that last question, you said you think you can be

4     fair but you're not sure.

5          PROSPECTIVE JUROR:  That's true.  I think I can.

6          MR. KELLY:  Given your beliefs coming in, are you

7     certain you can be fair or you just hope you can be fair?

8          PROSPECTIVE JUROR:  That's a double question.  I think

9     that's an unfair question.  Put another one.

03:15 10          MR. KELLY:  In the questionnaire, you said "in a case

11     like this I don't see a strong reason for the defendant not to

12     testify."  That's your opinion?

13          PROSPECTIVE JUROR:  That was my opinion prior to

14     knowing the defendant had a constitutional right that they do

15     not have to testify.  With the judge's explanation, I think I

16     would take that out, definitely take back that.

17          MR. KELLY:  You could take that completely out of your

18     mind and banish it?

19          PROSPECTIVE JUROR:  I think so.

03:16 20          MR. KELLY:  You indicated some of these other parents

21     were convicted.  Did you comment you thought the prison

22     sentences were too short?

23          PROSPECTIVE JUROR:  I did not.  I never commented

24     anything.

25          MR. KELLY:  Your work responsibilities, what are they?

```
 1              PROSPECTIVE JUROR:  My work responsibility?  I work in
 2    a pharmaceutical company.  I work in early research and do
 3    discovery, research and discovery for it.  I'm leading a couple
 4    projects.  I'm critical and have pretty high workloads.
 5    Basically, from those considerations, if I'm away for like
 6    4 weeks, that would be a significant impact to the progress of
 7    that.
 8              MR. KELLY:  If you're away for 4 weeks, it will be a
 9    significant impact on what?
10              PROSPECTIVE JUROR:  On the progress of those projects.
11              MR. KELLY:  On the progress of the projects?
12              PROSPECTIVE JUROR:  Yes.
13              MR. KELLY:  Would that be a burden to your
14    professional life?
15              PROSPECTIVE JUROR:  A burden to my professional life?
16    It would slow down my professional growth for 4 weeks.  Let me
17    put it that way.
18              MR. KELLY:  Your professional growth?
19              PROSPECTIVE JUROR:  Professional growth for 4 weeks.
20              MR. KELLY:  Has anything that you've seen in the media
21    given you strong feelings against the defense or against the
22    government or anything like that?
23              PROSPECTIVE JUROR:  Nothing against the government.  I
24    think, in general, I have an unfavorable opinion on the
25    defendants.
```

1          MR. KELLY:  What?

2          PROSPECTIVE JUROR:  Unfavorable.  I feel the whole

3  practice was wrong.

4          MR. KELLY:  So you come to court with that unfavorable

5  impression?

6          PROSPECTIVE JUROR:  Yes.  Everything that I know to

7  myself at this moment, but I don't think -- I come to the Court

8  with this impression about the whole case, about my personal

9  opinion of the defendants, but at same time, I do think I can

03:18 10  follow the judge's instructions, as I mentioned earlier.  I

11  feel confident I can follow the instructions and make my

12  decision based on the facts and the instructions.

13          MR. KELLY:  If the judge told you it was the

14  government's burden of proof, you could follow that

15  instruction?

16          PROSPECTIVE JUROR:  Could you explain a little bit

17  more about the government's burden of proof.

18          MR. KELLY:  I would, but they would object.  That's

19  the judge's job.  Bottom line is you will follow what this

03:19 20  judge tells you is the law.

21          PROSPECTIVE JUROR:  Yes, I will.

22          MR. KELLY:  And you feel you can be fair to all sides

23  here?

24          PROSPECTIVE JUROR:  I feel I can, yes.

25          MR. KELLY:  Okay.

1        THE COURT:  Mr. Kendall.

2        MR. KENDALL:  Yes, your Honor.  In your answer, you

3    were kind enough to be very frank with us and mentioned

4    something about the emotional component of your reaction to

5    this case.  Is that what you've discussed already or is there

6    something else that fits within that description of what you

7    said with an emotional component?

8        PROSPECTIVE JUROR:  The emotional component I just

9    mentioned, right.

03:20 10        MR. KENDALL:  So you've discussed it.

11        PROSPECTIVE JUROR:  I don't think we discussed it.

12    It's just like an unfavorable.  I don't think that we discussed

13    it.  I do not like the whole admission fraud practice actions,

14    whatever.

15        MR. KENDALL:  If we were to start this trial, would

16    you start this trial presuming that they're innocent and

17    they've done nothing wrong and you're just having an open mind

18    to the evidence?

19        PROSPECTIVE JUROR:  I think I would be able to adjust

03:20 20    my mind to that if I have opportunity to sit on a jury, yeah.

21        MR. KENDALL:  So you feel strongly that you would

22    start this trial thinking they've done nothing wrong and

23    they're presumed innocent?

24        PROSPECTIVE JUROR:  I think I would be able to do

25    that.

1      MR. KENDALL:  Thank you.  The last question I wanted
2  to ask is you said in your questionnaire about an issue of
3  responsibilities, your job responsibilities would have an
4  impact on.  Does it impact the team you manage or other people
5  or is it just your own person being effected by this?  Is it a
6  whole group of researchers or team members slowed down or just
7  you?
8      PROSPECTIVE JUROR:  60 percent on me and 40 percent on
9  the team.
03:21 10      THE COURT:  Miss Kearney?
11      MS. KEARNEY:  No questions, your Honor.  Thank you.
12      THE COURT:  Mr. Liu, I'm going to reserve you.  That
13  means that you will go with Mr. McAlear.  You may be called
14  back for further jury duty.  You are instructed not to make any
15  kind of investigation.  You're not to go online.  You
16  understand that would be inappropriate because if you are
17  selected to be a juror, you will decide this case solely based
18  on the evidence that comes into this courtroom and not on
19  anything that comes in from outside.  You understand?
03:22 20      PROSPECTIVE JUROR:  I understand.
21      THE COURT:  Thank you, Mr. Liu.
22      (Prospective juror exits.)
23      THE COURT:  Mr. Kelly?
24      MR. KELLY:  I'd move to strike this juror he said on
25  his questionnaire when he had time to reflect, and he's got a

1      Ph.D., he wrote "in a case like this I don't see any strong

2      reason for the defendant not to testify."  That's his mind-set

3      coming in.  I think some of the other things he said suggests

4      to me that he'd have a difficult time, although he would try

5      mightily, he would say he'd try to follow instructions.

6            THE COURT:  He didn't say try.  He said he would.

7            MR. KELLY:  He said that, Judge.  My concern is that

8      he might not be able to continue that.  That's the request for

9      the record.

03:23 10            THE COURT:  Mr. Kendall.

11            MR. KENDALL:  I feel the same way, your Honor.  He's a

12      remarkably brilliant, accomplished man.  He's very responsible.

13      He's very respectful of the legal system, but I think it was

14      clear he's overcoming emotional and predispositions because

15      he's trying to do what's correct.  I respect him for that.  He

16      kept on saying "I think, I think".  Your Honor, given the

17      emotions of this case and a much more elevated case with high

18      emotions and social issues, I think someone who's that frank

19      about wanting to do the right thing but being emotionally

03:23 20      disclosed to being compromised and human, I do think he should

21      be excused.

22            THE COURT:  Miss Kearney.

23            MS. KEARNEY:  Your Honor, the prospective juror

24      acknowledged he was not aware defendants did not have to

25      testify.  As soon as you alerted him to that, he said he would

```
 1   follow your instructions.  I wrote down he said he was

 2   confident he could follow your instructions.

 3           THE COURT:  I'm not going to excuse him for cause.

 4   We'll go on to the next one.

 5           MR. FRANK:  Your Honor, just briefly, the questioning

 6   there was bordering on cross-examination.  It was repetitive,

 7   over and over on topics your Honor had already explored.  Both

 8   defendants explored it in exquisite detail.

 9           THE COURT:  For instance what?

10           MR. FRANK:  For instance, on whether the juror could

11   be fair and impartial.  There must have been 15 questions on

12   that topic.  He answered them again and again and again.  I

13   think it was excessive.

14           MR. KELLY:  Just for the record, your Honor,

15   Miss Kearney did not object and, to date, we've been very --

16           THE COURT:  Before you speak, Mr. Kelly, I'm going to

17   defend you.

18           MR. KENDALL:  Me too, I hope, your Honor.

19           THE COURT:  I don't think that was uncalled for on

20   this particular juror.  I agree that under normal circumstances

21   that would have been excessive, but this juror did have some

22   doubts that I think were clarified by the questions that I

23   asked and that later defense counsel asked.  I'm not going to

24   criticize them for that examination.  I agree they don't need

25   to go that far with most potential jurors.
```

1          MR. FRANK:  Thank you, your Honor.  In particular on

2     the hardship issue, he said there was no hardship and then they

3     started exploring what the impact would be on people at Bristol

4     Meyers Squibb.  It's a lot.

5          THE COURT:  Your objection is noted.  Bring the next

6     one in.

7          (Prospective juror enters.)

8          THE COURT:  Good afternoon, Mr. Day.  You're reminded

9     you remain under oath.  If you'd like to, you can take your

03:26 10    mask off, but you don't have to.

11         Would service on this jury cause you any financial

12    hardship, Mr. Day?

13         PROSPECTIVE JUROR:  No.

14         THE COURT:  You say in response to one question that

15    you were somewhat uncomfortable on passing judgment on

16    somebody.  Would you explain that a little bit.

17         PROSPECTIVE JUROR:  Just the feeling.

18         THE COURT:  It's not a religious side?

19         PROSPECTIVE JUROR:  No.

03:27 20    THE COURT:  Just a feeling of passing judgment on a

21    fellow human being?

22         PROSPECTIVE JUROR:  Right.

23         THE COURT:  Notwithstanding that feeling, if the

24    government proves its case beyond a reasonable doubt, would you

25    have any trouble in finding the defendants guilty?

1          PROSPECTIVE JUROR:  I don't think -- no.

2          THE COURT:  If the government does not prove its case

3    beyond a reasonable doubt, would you have any problem in

4    finding them not guilty?

5          PROSPECTIVE JUROR:  No.  Despite my feelings, I think

6    it would be my duty to do that.

7          THE COURT:  Fair enough.  You would understand that

8    you'd have to follow the instructions of the Court whether you

9    believe in them or not, is that right?

03:27 10          PROSPECTIVE JUROR:  Yes.

11          THE COURT:  Could you decide this case solely based on

12   the evidence that comes into this courtroom and not on the

13   basis of any prior conception about this case or anything that

14   you've heard about it?

15          PROSPECTIVE JUROR:  I think so.  I don't know much

16   about the case at all.

17          THE COURT:  So the answer to that question is yes?

18          PROSPECTIVE JUROR:  Yes.

19          THE COURT:  Those are my questions.  Mr. Kelly, do you

03:28 20   have any?

21          MR. KELLY:  Just briefly.  Good afternoon.  Brian

22   Kelly.  I represent Mr. Aziz here.

23          This case will involve a lot of discussion about

24   college sports teams.  Do you follow college sports at all?

25          PROSPECTIVE JUROR:  Some.

```
 1              MR. KELLY:  Which sports?
 2              PROSPECTIVE JUROR:  Basketball, track and field.  I
 3      ran track and field in college.
 4              MR. KELLY:  Men's basketball, women's?
 5              PROSPECTIVE JUROR:  Men's.
 6              THE COURT:  Mr. Kendall.
 7              MR. KENDALL:  Yes.  I'm Mike Kendall.  I represent
 8      John Wilson.
 9              What did you run in track?
03:28 10        MR. KENDALL:  2 miles, 3 miles.  It was the 70s.
11              THE COURT:  Miss Kearney.
12              MS. KEARNEY:  Good afternoon, Mr. Day.  The judge
13      asked you some questions regarding your answer about being
14      uncomfortable passing judgment.  I just had one follow-up
15      question.  If the judge is instructing you the government has
16      to prove its case beyond a reasonable doubt but is not beyond
17      all doubt, would you be comfortable following that instruction?
18              PROSPECTIVE JUROR:  I think I understand the
19      reasonable doubt rule, so I think I can, yeah.
03:29 20        MS. KEARNEY:  Would you be able to follow the judge's
21      instructions?
22              PROSPECTIVE JUROR:  Yes.
23              THE COURT:  Thank you, Mr. Day.  You are in reserve,
24      which means that you'll go with Mr. McAlear here.  You may be
25      called back for further jury duty.  Please do not do any
```

1    research on the case or anything on the internet.  You

2    understand the reasons why you shouldn't do that?

3              PROSPECTIVE JUROR:  Yes.

4              THE COURT:  Thank you.

5              (Prospective juror exits.)

6              (Prospective juror enters.)

7              THE COURT:  Good afternoon, Mr. Miller.  Please be

8    seated.  You understand you remain under oath.  If you'd like

9    to remove your mask, you may, but you don't have to.

03:30 10        Mr. Miller, would serving on this jury cause you a

11   financial hardship?

12             PROSPECTIVE JUROR:  I don't think so, no.

13             THE COURT:  Is there anything in the questionnaire of

14   those 49 questions you were asked to answer in writing

15   yesterday that gives you pause that you would be able to decide

16   this case fairly and impartially?  Could you do that?

17             PROSPECTIVE JUROR:  Yes, I could.

18             THE COURT:  You could decide this case solely based on

19   the evidence that comes into this courtroom and not on the

03:30 20   basis of anything else you've heard about the case outside this

21   courtroom?

22             PROSPECTIVE JUROR:  Yes, sir.

23             THE COURT:  Any questions, Mr. Kelly?

24             MR. KELLY:  Briefly.  Good afternoon, sir.  My name is

25   Brian Kelly.  I represent Mr. Aziz.  Do you follow college

1    sports at all?

2            PROSPECTIVE JUROR:  Yes.

3            MR. KELLY:  Which sports?

4            PROSPECTIVE JUROR:  Everything.

5            MR. KELLY:  All of them?

6            PROSPECTIVE JUROR:  Yes.

7            MR. KELLY:  Thanks.

8            THE COURT:  Mr. Kendall?

9            MR. KENDALL:  Good afternoon.  No questions.  Thank

03:31 10   you.

11           THE COURT:  Miss Kearney.

12           MS. KEARNEY:  Good afternoon.  You indicated you

13   served on a jury before.

14           PROSPECTIVE JUROR:  Yes.

15           MS. KEARNEY:  Was there anything about that experience

16   that would affect your ability to be fair and impartial in this

17   trial?

18           PROSPECTIVE JUROR:  No.

19           THE COURT:  Thank you, Mr. Miller.  That means you're

03:31 20   in reserve.  You'll go with Mr. McAlear and you may be called

21   for further jury duty.  Please understand that you're not to do

22   any research about this case or go on the internet.  That would

23   be totally inappropriate because you're going to decide this

24   case, if you're ultimately chosen as a juror, based upon the

25   evidence that comes into this courtroom only.  All right?

1          PROSPECTIVE JUROR:  Yes, sir.  Thank you.

2          (Prospective juror exits.)

3          (Prospective juror enters.)

4          THE COURT:  Good afternoon, Miss Brickley.  You

5     understand you're still under oath.  You may remove your mask

6     if you want to, but you don't have to.

7          Would serving on this jury cause you a financial

8     hardship?

9          PROSPECTIVE JUROR:  No.

03:34 10          THE COURT:  You mentioned as a former student

11     athlete -- maybe I should inquire.  What was your sport?

12          PROSPECTIVE JUROR:  Soccer.

13          THE COURT:  Where did you play?

14          PROSPECTIVE JUROR:  NYU.

15          THE COURT:  Division 1?

16          PROSPECTIVE JUROR:  Division 3.

17          THE COURT:  But you find it offensive that people took

18     spots from active players.  Would that affect your ability to

19     be fair and impartial, understanding that these two defendants

03:34 20     have not had their day in court and that they're entitled to it

21     and whatever any other defendant has done in this case is

22     totally irrelevant to their defense?  Could you abide by that

23     instruction from this Court?

24          PROSPECTIVE JUROR:  So I've served on a jury before.

25     Going in, it was a state case.  Going in, completely understand

1     innocent until proven guilty.  The only thing about this case

2     is tricky because I've had conversations about it with family,

3     with teammates, with coaches.  I think it would be hard

4     personally for me going into it just having had all these

5     conversations before to take on that viewpoint of innocent

6     until proven guilty.

7              THE COURT:  In other words, you couldn't put all those

8     conversations behind you and decide this case solely based on

9     the evidence that comes into this courtroom?

03:35 10         PROSPECTIVE JUROR:  I think it would be hard.

11             THE COURT:  We can't get in your head.  Only you can

12    tell me if you can be fair and impartial.  If you can't, that's

13    the honest thing to tell me.  I ask you one final time.  Could

14    you be fair and impartial in this case with the, quote, baggage

15    that you're bringing with you?

16             PROSPECTIVE JUROR:  I think others could be more fair

17    and impartial.

18             THE COURT:  Fair enough.  I'm going to excuse you,

19    Miss Brickley.  Thank you for your candor.  You're excused.

03:36 20         (Prospective juror exits.)

21             THE COURT:  Counsel, we're going to do about three

22    more and then we'll caucus.  Sorry.  We're going to do four

23    more.

24             (Prospective juror enters.)

25             THE COURT:  Good afternoon, Mr. Pandey.  Is that how

1    you pronounce the name?

2              PROSPECTIVE JUROR:  Yes.  That's fine.

3              THE COURT:  Please be seated.  You are reminded that

4    you are under oath.  You can take your mask off, but you don't

5    have to.

6              You mentioned you might have to travel because of an

7    ill mother overseas.

8              PROSPECTIVE JUROR:  Yes.  My mother lives in Mumbai,

9    India.  She's not ill right now but she's 80 plus and with all

03:37 10   the things going on, potentially, I could have to go back.  I'm

11   not sure.  If she's sick, then I have to go.

12             THE COURT:  There's nobody there to care for her?

13             PROSPECTIVE JUROR:  Yeah.  They're not in Mumbai.  My

14   sister is not in the state right now.  If she's ill, I'll have

15   to travel.

16             THE COURT:  I take it you would be uncomfortable in

17   having to serve on this jury for 4 weeks?

18             PROSPECTIVE JUROR:  Yes.

19             THE COURT:  I'm going to excuse you, Mr. Pandey.  I

03:37 20   hope at another time you'll be willing to serve on a jury

21   because it's a very important civic duty that you have.  It

22   sounds to me like this is an inconvenient, inappropriate time

23   for you to have to serve.  You're excused.

24             PROSPECTIVE JUROR:  Thank you.

25             (Prospective juror exits.)

1           (Prospective juror enters.)

2           THE COURT:  Good afternoon, Miss Withem.  Please be

3     seated.  You're reminded that you remain under oath.  If you

4     would like to remove the mask, you may, but you don't have to.

5           Miss Withem, would serving on this jury for 4 weeks

6     cause you a financial hardship?

7           PROSPECTIVE JUROR:  Yes, it would.

8           THE COURT:  I don't want to cause you financial

9     hardship, therefore I'm not going to require you to sit on this

03:39 10    jury.  I do want you to serve on a jury sometime because it's a

11    very important civic responsibility, but this one seems like

12    it's going to be inconvenient for you and going to cause you

13    some hardship, and I don't want to do that.  You're excused,

14    Miss Withem.  Thank you.

15          (Prospective juror exits.)

16          (Prospective juror enters.)

17          THE COURT:  Good afternoon, Mr. McDavitt.  Please be

18    seated.  Please understand that you are still under oath.

19    Also, if you want to remove the mask, you may, but you don't

03:40 20    have to.

21          Mr. McDavitt, would serving on this jury for 4 weeks

22    cause you any financial hardship?

23          PROSPECTIVE JUROR:  No.

24          THE COURT:  Was any of the questions on that long

25    questionnaire that you had to fill out yesterday give you pause

1    as to whether you could fairly and impartially decide this

2    case?

3              PROSPECTIVE JUROR:  No.

4              THE COURT:  You think you could do that?

5              PROSPECTIVE JUROR:  I do.

6              THE COURT:  Decide this case solely on the basis of

7    evidence that comes into this courtroom and not anything you've

8    heard outside the courtroom?

9              PROSPECTIVE JUROR:  Yes.

03:40 10              THE COURT:  Those are my questions.  Mr. Kelly?

11              MR. KELLY:  Briefly.  My name is Brian Kelly.  I

12    represent Mr. Aziz.

13              There will be a lot of discussion about college sports

14    in this case.  Are you a college sports fan?

15              PROSPECTIVE JUROR:  Not so much.

16              MR. KELLY:  More professional?

17              PROSPECTIVE JUROR:  More professional.

18              THE COURT:  Mr. Kendall?

19              MR. KENDALL:  Good afternoon.  I'm Mike Kendall.  I

03:41 20    represent John Wilson.

21              Just two things.  You responded to question 39 that

22    you've heard about this in passing on the local news.

23              PROSPECTIVE JUROR:  Correct.

24              MR. KENDALL:  Any reaction to it?

25              PROSPECTIVE JUROR:  Not so much at the time.  Didn't

1    really.

2            MR. KENDALL:  You worked at Med Tech for 11 years.

3    Can you tell us what you do, what your job involves.

4            PROSPECTIVE JUROR:  Sure.  We do medical sales, so for

5    office and hospital facilities.

6            MR. KENDALL:  You write code or?

7            PROSPECTIVE JUROR:  I have in the past.  People who

8    work for me write code.

9            THE COURT:  Miss Kearney?

03:41 10        MS. KEARNEY:  Good afternoon.  You indicated you

11   previously served on a jury.  Is there anything about that

12   experience that would affect your ability to be fair and

13   impartial in this case?

14           PROSPECTIVE JUROR:  No.

15           MS. KEARNEY:  You also mentioned your mother-in-law

16   was a victim of a crime.  Do you feel she was treated fairly by

17   the criminal justice system?

18           PROSPECTIVE JUROR:  I do.

19           MS. KEARNEY:  Is there anything about that experience

03:42 20   that would affect your ability to be fair and impartial?

21           PROSPECTIVE JUROR:  No.

22           THE COURT:  Thank you, Mr. McDavitt.  I'm going to

23   reserve your attendance, which means you may get called back

24   for further jury duty.  In the meantime, however, you're not to

25   do any research or go on to the internet and find out more

1    about this case.  That would be inappropriate because if you

2    are selected to be a juror, you're going to decide the case

3    solely on the basis of the evidence that comes into this

4    courtroom.  You understand that?

5              PROSPECTIVE JUROR:  Yes.

6              THE COURT:  Thank you.

7              (Prospective juror exits.)

8              (Prospective juror enters.)

9              THE COURT:  Good afternoon, Mr. Hughes.

03:43 10              PROSPECTIVE JUROR:  Good afternoon.

11              THE COURT:  Please be seated.  Understand that you

12    remain under oath.  If you would like to take the mask off, you

13    may, but you don't have to.

14              Mr. Hughes, would serving on this jury for 4 weeks

15    cause you financial hardship?

16              PROSPECTIVE JUROR:  Not really.

17              THE COURT:  So you would be willing to serve and it's

18    not going to affect your ability to make a living?

19              PROSPECTIVE JUROR:  No.

03:44 20              THE COURT:  There were some other questions you

21    answered in the questionnaire that you said I think in response

22    to the anti-cooperator question that you do not believe in plea

23    bargaining and think that, if you do a crime, you should have

24    to face full consequences.

25              PROSPECTIVE JUROR:  I understand the reason for plea

1    bargaining.  You get a small fish to give up to get a bigger

2    fish.  I would have a hard time trusting that person that are

3    going to sell their persons out.  Why should I believe anything

4    that they say?  I would have a problem with that.

5         THE COURT:  You don't think, no matter what a

6    cooperator said, that you could believe him or her.

7         PROSPECTIVE JUROR:  I'd have a hard time believing

8    them, yeah.  Just back of my mind I'd be thinking this guy's

9    going to say anything he can say to save himself.

03:45 10         THE COURT:  Is there anything else in the

11   questionnaire, any other questions that you were asked, that

12   give you pause as to whether or not you could be fair and

13   impartial in this case?

14        PROSPECTIVE JUROR:  No.

15        THE COURT:  So I ask you, do you think you could be

16   fair and impartial and decide this case based on the evidence

17   that comes into the courtroom for this case?

18        PROSPECTIVE JUROR:  I could.

19        THE COURT:  Mr. Kelly.

03:45 20         MR. KELLY:  Just briefly.  My name is Brian Kelly.  I

21   represent Mr. Aziz here.  If the judge instructs you on what is

22   the law, you'd follow what the judge told you?

23        PROSPECTIVE JUROR:  Absolutely.

24        MR. KELLY:  You played hockey?

25        PROSPECTIVE JUROR:  Yes.

```
 1              MR. KELLY:  Would that affect your judgment if we're
 2    talking a lot about sports?
 3              PROSPECTIVE JUROR:  No.
 4              MR. KELLY:  Are you a college sports fan besides
 5    college hockey?
 6              PROSPECTIVE JUROR:  I'm a sports fan in general.
 7              MR. KELLY:  Nothing further.
 8              THE COURT:  Mr. Kendall?
 9              MR. KENDALL:  No further questions.
10              THE COURT:  Miss Kearney.
11              MS. KEARNEY:  Good afternoon, Mr. Hughes.  You had
12    indicated that you understood that plea bargaining happens and
13    there's a small fish used to get a bigger fish.  Does your
14    opinion change if it was a big fish used to get other big fish?
15              PROSPECTIVE JUROR:  For me, it's just if somebody's
16    making a deal, if somebody's been involved in nefarious
17    activity and they're making a deal to better themselves, I have
18    a hard time believing that person.  It seems somebody like that
19    would just say whatever they needed to say.  I would have a
20    hard time believing somebody like that.
21              MS. KEARNEY:  So when the judge asked if you could be
22    fair and impartial, does that factor in that you would have a
23    hard time listening to the testimony of potential cooperators?
24              PROSPECTIVE JUROR:  When all the facts come out, I'll
25    look at all the facts and make a decision.  Regardless of what
```

1    anybody says, I'll listen to the facts and make a decision.

2           MS. KEARNEY:  Have you ever been involved in the

3    criminal justice system yourself?

4           PROSPECTIVE JUROR:  No.  As far as what?

5           MS. KEARNEY:  Have you ever been arrested or charged

6    with a crime?

7           PROSPECTIVE JUROR:  I've been arrested before.

8           MS. KEARNEY:  When was that?

9           PROSPECTIVE JUROR:  I don't know.  It was a long time

03:47 10   ago.  90s.  All the charges were dropped.

11          MS. KEARNEY:  Thank you, sir.

12          THE COURT:  Thank you, Mr. Hughes.  I will hold you in

13   reserve.  That means you will go with McAlear.  You may be

14   called back for further jury duty.  In the meantime, please do

15   not do any research or go into the internet about this case.

16   That would be entirely inappropriate because if you are

17   selected to be a juror, you'd be asked to decide this case on

18   the basis of evidence that comes into this courtroom and not

19   anything outside.  Do you understand that?

03:48 20         PROSPECTIVE JUROR:  I do.

21          THE COURT:  Thank you, Mr. Hughes.

22          PROSPECTIVE JUROR:  I don't have to call tonight?

23          THE COURT:  Mr. McAlear will tell you.  You may well.

24          (Prospective juror exits.)

25          THE COURT:  Miss Kearney?

1          MS. KEARNEY:  Yes, your Honor.  The government moves

2    to strike Juror No. 110 for cause.  He indicated both in his

3    questionnaire as well as here that he would have difficulty

4    listening to the testimony of cooperators.  While did

5    indicate on questioning that he could be fair and impartial,

6    I'm concerned with his candid because, also in his

7    questionnaire, he did not disclose that he had ever been

8    arrested and it was only when pressed here that he acknowledged

9    it.  So if he's not being candid about that, I'm also concerned

03:49 10   about whether he can put aside his feelings about people who

11   cooperate with the government.

12         MR. KELLY:  Your Honor, I do not think this rises to

13   the level of striking for cause.  He was candid.  The charges

14   were dismissed in the 90s.  It's almost 30 years now.  He

15   didn't hide his conviction.  He was arrested and charges were

16   dismissed.  He said he'd listen to the evidence and make a

17   decision then, which is what I hope most jurors will do.  From

18   our perspective, he's not subject to challenge for cause.

19         THE COURT:  Mr. Kendall?

03:49 20        MR. KENDALL:  The only thing I would add in, your

21   Honor, is his candid response for a person with no exposure to

22   the legal system wasn't so far from the First Circuit patent

23   jury instruction.  He'd be skeptical.  People who make deals, I

24   don't know exactly your instruction on the topic, but I think

25   there's a sense they're allowed to be skeptical.  What he said

1   is he'll listen to the judge.  This guy was a cop for 6 years

2   in the military.  He understands the role of a judge and the

3   deference to a judge.

4        Second, he said he'll base this decision on all of the

5   evidence, which means corroboration, other people coming in,

6   the type of things the government tries to do with his

7   informants is what he's looking to see.

8        THE COURT:  Miss Kearney?

9        MS. KEARNEY:  Your Honor, he didn't just say he would

03:50 10   follow along with the First Circuit patent instructions on

11   cooperators.  He actually said he would have a problem with

12   people who sell their friends out.

13        Also, this wasn't an arrest where charges were

14   dismissed.  It resulted in a continuation without a finding.

15   According to his record, there was actually a jury trial before

16   he pled.  That was one of two incidents he had.  He had a

17   separate one in 2007 for operating after a suspended

18   registration.  Given that, the government wishes to strike for

19   cause.

03:51 20        THE COURT:  I'm going to deny the government's motion.

21   I will not strike him for cause.  That was a close call, but I

22   think he did answer my questions sufficiently to allow him with

23   my instructions to follow them and to be fair and impartial.

24   I'm not going to strike him for cause.

25        Counsel, it's now ten of four.  We're not going to

1    make it to the magic number of 40.  The way I count it, and

2    maybe Mr. McAlear will correct me, but I think we have 33 or

3    maybe 34 cleared jurors.

4              MR. MCALEAR:  I have 35, your Honor.

5              THE COURT:  That is short of what I want to have.  We

6    need to have counsel advise us on the second tranche.  We are

7    certainly not going to need to call in as many as we called in

8    today.  In fact, I think we would be safe in calling no more

9    than 30 jurors tomorrow.  I would like cooperation from counsel

03:52 10   to agree on the 30 that we can call from the second tranche.

11   You've got an hour to do that, Mr. McAlear?

12             MR. MCALEAR:  I would say so.

13             THE COURT:  Let's reconvene here at quarter of five,

14   4:45, at which point I am hopeful that counsel will be able to

15   give me a list of 30 names from second tranche to call for

16   tomorrow.  I don't know how you're going to get there.  We

17   don't need a hundred.  We don't need everybody who's not

18   subject to a hardship excuse.  I think we'll be able to reach

19   the number of 40 cleared jurors by sometime mid to late morning

03:53 20   tomorrow.  We will then go to the following phase of picking a

21   jury after the exercise of peremptory challenges.  Any

22   comments?

23             MR. KELLY:  Quick question, your Honor, a suggestion

24   perhaps.  Can we give you 20 names?  It will make it quicker.

25   We have ten left.  There's ten people left in the first

1    tranche.

2             THE COURT:  Is that right, we have ten left?

3             MR. MCALEAR:  Yes.

4             THE COURT:  You were saying 30 from the new group or

5    30 total?

6             MR. MCALEAR:  I was saying 30 from the new group, but

7    I didn't know how quickly they could go through.  I don't think

8    we need 40 jurors.  If it's going to include people they have

9    agreed upon and get rid of jurors that are not going to be

03:54 10   needed, then that number would then come down.

11            THE COURT:  Mr. Kelly.

12            MR. KELLY:  How about we do 25?  We have 45 minutes.

13   I'm mindful of the deadline.

14            MR. FRANK:  20 or 25 is fine with us, Judge.  I wanted

15   to clarify.  We skipped a bunch.

16            THE COURT:  We skipped only because we needed to

17   address this particular one.  We're going to go back to number

18   104, I believe, we were up to.

19            MR. MCALEAR:  He was struck.

03:55 20          THE COURT:  We'll start with 105.  We have about ten

21   more on that list.

22            I want to end up with 25 total, in other words, 15 new

23   ones.

24            MR. FRANK:  Okay.

25            MR. KENDALL:  Ten from tranche one, 15 from tranche

two.

THE COURT:  Yes.  We're in recess until 4:45, unless you come to a decision before then.  Let my deputy know if you have.

(Recess taken from 3:55 to 4:57 p.m.)

THE COURT:  Good afternoon, counsel.  I understand you're having a bit of a problem.  I've got a suggestion that I think might resolve it.  We only need a few numbers to be able to get the final five or six.  The tranche number two includes 104 names.  The first number is 118, I believe.  I am going to propose that we randomly call numbers 118 through 137, no matter who they are or what their responses are.  Out of those 20, in addition to the ten that we have already coming back tomorrow, we should be able to fill the remaining five seats of cleared jurors.  Why doesn't that work?

MR. FRANK:  I think that works, Judge.

MR. KELLY:  That works very well.

THE COURT:  Mr. Kendall?

MR. KENDALL:  Your Honor, while we have disagreements, there were a bunch in the first 20 that we both agreed had hardship issues or other issues.

THE COURT:  If you can agree what numbers those are, we can avoid them.

MR. KENDALL:  We can give you those numbers.

THE COURT:  That's fine.  How many of the first 20?

         1          MR. KENDALL:  We believe nine of the first 20 are

         2   hardship.

         3          THE COURT:  We'll take those nine out.  Having sort of

         4   prearranged this, we don't need nine more.  We'll take five

         5   more.  We'll take 138 through 142, if that's five more.

         6          MR. KENDALL:  May we check to see if we agreed on

         7   those two?

         8          THE COURT:  Of course.

         9          MR. FRANK:  Judge.

04:59   10          THE COURT:  Wait a minute.  There's a lack of

        11   agreement here.

        12          MR. FRANK:  We gave them a list of people who

        13   literally said we have a hardship.  We gave them that list,

        14   which we stayed up late last night compiling.  They went

        15   through from that starting point and decided who they wanted.

        16   Now they're giving the Court that list.  That's not fair.

        17          MR. KENDALL:  Your Honor, I think it's a little bit

        18   different than that.  We have a list here of about 23 people

        19   that they said was fine to bring back that we agreed is fine to

04:59   20   bring back.  We took out hardships.  They took out and we went

        21   along with most people that had arrests that didn't lead to

        22   convictions, which you had let on today.  There was maybe one

        23   we disagreed with.  Then there was some people who said they

        24   hated the rich or things like that that we didn't agree with

        25   them on that.  We have 23 people that both sides put on their

```
 1   list.
 2            MR. FRANK:  We don't have a list.  That's not true,
 3   Judge.  We don't have a list.  We put a list of people who
 4   claimed hardship.
 5            MR. KELLY:  I think it gets back to the Court's
 6   original proposal.  Why don't we take that number.  If there's
 7   one we agree on striking, the first 20 in the next tranche.
 8            THE COURT:  Do you agree, Mr. Frank, about any of
 9   those 20 between 118 and 137 that should be stricken for
10   hardship?
11            MR. FRANK:  We have a list of eight people in that
12   group that are hardships.
13            THE COURT:  Do those coincide with the defendants'
14   list?
15            MR. FRANK:  I don't know because I haven't seen the
16   defendants' list.
17            MR. KENDALL:  We counted more hardships in that group,
18   your Honor.
19            THE COURT:  I'm going to take the eight that you agree
20   on.  We are going to call enough so we will have 20 jurors show
21   up tomorrow.  If my arithmetic is right, we're going to go 118
22   through 145.  Is that about right?  We're going to eliminate
23   the eight names that you both agree are hardships.  We're going
24   to end up with 20 people from tranche No. 2.
25            MR. KENDALL:  I believe there were nine hardships.
```

```
 1              MR. FRANK:  If you go that high, there's one

 2     additional number.  If we go 118 to 146, that will exclude nine

 3     numbers.

 4              THE COURT:  118 to 146.  We will exclude nine of those

 5     numbers who the parties have agreed are hardships.

 6              MR. KENDALL:  Okay.

 7              THE COURT:  All right?  Everybody on the same page?

 8              MR. FRANK:  Thank you, Judge.

 9              THE COURT:  Mr. Kelly?

05:01 10         MR. KELLY:  Absolutely.

11              THE COURT:  Mr. Kendall?

12              MR. KENDALL:  We're all on your page, yes, your Honor.

13              THE COURT:  All right.  Mr. Frank.

14              MR. FRANK:  Yes, your Honor.

15              THE COURT:  We're going to call 118 through 146 with

16     nine names agreed upon by counsel that will be eliminated from

17     those.  We will, hopefully, end up with about 25 people.

18              Anything else that needs to come to my attention

19     before we adjourn for the day?  We will reconvene tomorrow

05:02 20     morning at 9:00 a.m.

21              MR. FRANK:  Thank you, your Honor.

22              MR. KENDALL:  Thank you, your Honor.

23              MR. KELLY:  Thank you, your Honor.

24              THE COURT:  We're in recess.

25              (Whereupon, the proceedings adjourned at 5:02 p.m.)
```

1                    C E R T I F I C A T E

2

3

4    UNITED STATES DISTRICT COURT )

5    DISTRICT OF MASSACHUSETTS    )

6

7

8            I, Kristin M. Kelley, certify that the foregoing is a

9    correct transcript from the record of proceedings taken

10   September 9, 2021 in the above-entitled matter to the best of

11   my skill and ability.

12

13

14       /s/ Kristin M. Kelley            November 2, 2021

15       Kristin M. Kelley, RPR, CRR            Date
         Official Court Reporter
16

17

18

19

20

21

22

23

24

25