UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA,          )
                    Plaintiff     )
                                  )
vs.                                )   No. 1-19-CR-10080
                                  )
GAMAL ABDELAZIZ and JOHN          )
WILSON,                            )
                    Defendants.    )
                                  )
                                  )


BEFORE THE HONORABLE NATHANIEL M. GORTON
UNITED STATES DISTRICT JUDGE
JURY TRIAL - DAY 3


John Joseph Moakley United States Courthouse
Courtroom No. 4
One Courthouse Way
Boston, Massachusetts 02210


September 10, 2021
9:18 a.m.


Kristin M. Kelley, RPR, CRR
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way, Room 3209
Boston, Massachusetts 02210
E-mail: kmob929@gmail.com

Mechanical Steno - Computer-Aided Transcript

1    APPEARANCES:

2

3         Stephen E. Frank

4         Ian J. Stearns

5         Leslie Wright

6         Kristen Kearney

7         United States Attorney's Office

8         1 Courthouse Way

9         Suite 9200

10        Boston, MA 02210

11        617-748-3208

12        stephen.frank@usdoj.gov

13        for the Plaintiff.

14

15

16        Brian T. Kelly

17        Joshua C. Sharp

18        Lauren Maynard

19        Nixon Peabody LLP

20        100 Summer Street

21        Boston, MA 02110

22        617-345-1000

23        bkelly@nixonpeabody.com

24        for Gamal Abdelaziz.

25

```
 1    APPEARANCES:

 2

 3            Robert L. Sheketoff

 4            One McKinley Square

 5            Boston, MA 02109

 6            617-367-3449

 7            sheketoffr@aol.com

 8            for Gamal Abdelaziz.

 9

10

11            Michael Kendall

12            Lauren M. Papenhausen

13            White & Case, LLP

14            75 State Street

15            Boston, MA 02109

16            617-939-9310

17            michael.kendall@whitecase.com

18            for John Wilson.

19

20

21

22

23

24

25
```

```
 1    APPEARANCES:

 2

 3           Andrew E. Tomback

 4           McLaughlin & Stern, LLP

 5           260 Madison Avenue

 6           New York, NY 10016

 7           917-301-1285

 8           atomback@mclaughlinstern.com

 9           for John Wilson.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    P R O C E E D I N G S

2          THE CLERK:  Court is now in session.

3          THE COURT:  Good morning, counsel.  Before we continue

4    the process of individual voir dire, I would like to deal with

5    the government's motion to strike Juror No. 18 for cause.  They

6    filed a motion overnight.  I assume counsel for defendants have

7    had a chance to review that, Mr. Kelly, Mr. Kendall.

8          MR. KELLY:  I've reviewed it now, your Honor.

9          THE COURT:  Do you wish to be heard in opposition?

09:19 10          MR. KELLY:  Well, your Honor, here's the issue as I

11   see it.  I think the government's right about the fact that if

12   it's a crime punishable by more than a year, it's a felony,

13   even though the state calls them misdemeanors up until two and

14   a half years.

15          THE COURT:  Isn't it two OUIs, misdemeanors, and the

16   third a felony?

17          MR. KELLY:  I think if it's over a year, if he's

18   convicted of a crime over a year in the federal system, it

19   counts however the state qualifies it.  The second part of the

09:19 20   analysis is has his civil rights been restored.  I haven't

21   thought about that issue in a long time.  There's really only

22   three civil rights at issue.  In Massachusetts, you never lose

23   your right to vote.  The second right is you can't run for

24   public office.  That only applies when you're in jail.  The

25   third civil right is, as I recall, is the right to serve on a

jury.  Then your rights are restored after 7 years.  The

conviction they're bringing to everyone's attention is less

than 7 years.  What I don't recall is whether or not the

restoration of rights, which is a complicated process, has to

be individual or general application for this rule.  I don't

have a final thought on whether his rights have been restored.

He was certainly very candid about it when asked.  He was

certainly on the jury pool process, so I assume when they

screen these people, they've gone through this analysis and put

09:20  them on the pool.  He was on the pool.  He was, by all

accounts, very honest and he did not appear to be hiding

anything when questioned.  I would say based upon that, I would

not agree to him being kicked off.  Again, I don't know the

full restoration process.

THE COURT:  Mr. Kendall.

MR. KENDALL:  Your Honor, I know very little about

this topic, this issue of eligibility and whatever.  We've

asked somebody to research it in the office.  I'd ask if we can

get to you back at the break or in an hour's time.  I want to

09:21  look at it and understand how it works.  I'm sure you know

better than I do.

THE COURT:  I don't.  Mr. Frank.

MR. FRANK:  Your Honor, both statutes, we think, are

quite clear.  They don't refer to the term "felony".  They

refer to crimes punishtial under state or federal law by

1    imprisonment for more than 1 year.  The statute under which the

2    potential juror was convicted in August of 2019 on its face is

3    punishable by imprisonment for up to two and a half years.

4    Those are the terms that the statute uses.  With respect to the

5    restoration of civil rights, I agree with Mr. Kelly that it is,

6    under Judge Gertner's decision, 7 years in the standard period.

7    This potential juror was convicted in August of 2019.  His

8    Probation ran until August of just August of 2021.  So there's

9    no possibility that his civil rights have been restored.

09:22 10          THE COURT:  He was convicted of larceny, contrary to

11   his comments on the stand?

12          MR. FRANK:  His rap sheet shows that he lied on the

13   stand and he was convicted of larceny.  That conviction is in

14   the same rap sheet with all the convictions that he

15   acknowledged.

16          THE COURT:  I'm going to allow the motion.  I'm going

17   to strike this Juror No. 18 for cause, which means that we're

18   down to 34, rather than 35.  We need to get six more out of the

19   process that we're going to proceed with right now.

09:22 20          Anything else that needs to come to my attention

21   before we proceed with the process of individual voir dire?

22          MR. KELLY:  No, your Honor.

23          MR. KENDALL:  No, your Honor.

24          THE COURT:  Let us call starting with No. 105, I

25   believe it is.

1           (Prospective juror enters.)

2           Good morning, Mr. Xanthopoulos.  Is that how you

3   pronounce your name?

4           PROSPECTIVE JUROR:  Yes, sir.

5           THE COURT:  Mr. Xanthopoulos, you're reminded that you

6   remain under oath.  You may remove your mask if want to, but

7   you don't have to.

8           In response to question 23 on the questionnaire, you

9   made a comment that you thought that if a defendant is guilty,

09:23 10   they must prove they're innocent, especially if there is

11   evidence.  Of course, that's not the law.  Do you know that the

12   law is different than what you said?

13           PROSPECTIVE JUROR:  Could you repeat the question?  I

14   may have misread it then if that's the case.

15           THE COURT:  The answer to question No. 23 that you

16   gave, you said that if a defendant is guilty, they must prove

17   that they're innocent, especially if there's evidence.

18           PROSPECTIVE JUROR:  Then I definitely misread it.  I

19   thought it said if they are not guilty.  The question is if

09:24 20   they are guilty?

21           THE COURT:  No.  The question is the burden of proof

22   is always on the government to prove beyond a reasonable doubt

23   that the defendant charged is guilty.  The defendant has no

24   obligation to prove anything.  That's contrary to the law.

25   Would you be able to accept that instruction from the Court,

1    not withstanding your opinion?

2        PROSPECTIVE JUROR:  I'm a little confused now.  Can

3    you please repeat the question.

4        THE COURT:  Let's see if I can give you the exact

5    question that was asked.  "The prosecution has the burden of

6    proving the defendant is guilty beyond a reasonable doubt.  A

7    defendant does not have to prove that he is innocent.  Do you

8    disagree in any way with this principal?"

9        I believe your answer was "Yes.  If a defendant is

09:25 10    guilty, they must prove that they are innocent, especially if

11    there is evidence."

12        PROSPECTIVE JUROR:  I must have misread it.  I guess

13    my answer should be changed to no then.

14        THE COURT:  That's a crucial issue, of course, in any

15    criminal case, notwithstanding the answer, and having answered

16    all the questions of the questionnaire, do you have any doubt

17    that if you are chosen to sit as a juror on this case, you

18    could be fair and impartial?

19        PROSPECTIVE JUROR:  I would definitely be fair and

09:26 20    impartial.

21        THE COURT:  Can you decide this case based solely on

22    the evidence that is presented in this courtroom and not based

23    upon any other information that you have from elsewhere?

24        PROSPECTIVE JUROR:  Yes.

25        THE COURT:  What about your comments to 43 that

1   "wealthy people sometimes believe that money can be their way

2   out when the evidence proves guilt"?  I'm not sure I understand

3   that.  What do you mean by that?

4        PROSPECTIVE JUROR:  I kind of meant most likely if

5   there are wealthy people involved in the case they'd be able to

6   most likely get good lawyers or better lawyers than, say,

7   someone who doesn't have enough money.

8        THE COURT:  Do you have a bias against wealthy people?

9        PROSPECTIVE JUROR:  I guess in that regard maybe a

09:26 10   slight bias, yes.

11        THE COURT:  To be a fair and impartial juror you've

12   got to enter this case without any bias toward anybody.  Can

13   you do that?

14        PROSPECTIVE JUROR:  It would have to depend on the

15   evidence in the case.

16        THE COURT:  Let's see if counsel have any questions

17   for you.  Mr. Kelly.

18        MR. KELLY:  Good morning.  I represent Mr. Aziz here.

19   If the evidence in the case were that the defendants were

09:27 20   wealthy and they did have good lawyers, you would hold that

21   against them?

22        PROSPECTIVE JUROR:  If the evidence proves that the

23   defendant is guilty, then I would have to vote in saying that

24   he was guilty.

25        MR. KELLY:  What I'm getting at is your concern is,

1    generally, in society, wealthy people have advantages that

2    other people don't.

3            PROSPECTIVE JUROR:  Correct.  Most of the time, yes.

4            MR. KELLY:  That's your firmly held belief?

5            PROSPECTIVE JUROR:  Yes.

6            MR. KELLY:  In fact, when you came here today, your

7    view was that if a defendant is guilty, they must prove they're

8    innocent.  You wrote that, right?

9            PROSPECTIVE JUROR:  Correct, but like I stated

09:28 10   earlier, I misread the question.

11           MR. KELLY:  What you wrote is "if the defendant is

12   guilty, they must prove they're innocent, especially if there's

13   evidence."  What do you mean by that?  If the government puts

14   on some evidence, the defense should put some on too?

15           PROSPECTIVE JUROR:  Can you repeat that.

16           MR. KELLY:  You wrote, "If the defendants' guilty,

17   they must prove they're innocent, especially if there is

18   evidence." Do you mean if the government puts on evidence that

19   they're guilty, the defense should put on evidence that they're

09:28 20   not guilty?

21           PROSPECTIVE JUROR:  Correct.

22           MR. KELLY:  That's it.

23           THE COURT:  Mr. Kendall.

24           MR. KENDALL:  Good morning.  My name's Mike Kendall.

25   I represent John Wilson.  I'm sorry to go back to the same

1    question.  I hope you appreciate that's what we're supposed to

2    do.

3            That question toward the end, you were concerned about

4    wealthy people having certain advantages.  I think you

5    referenced they get better lawyers than average.

6            PROSPECTIVE JUROR:  Correct.

7            MR. KENDALL:  Do you think that gives them a bit of an

8    edge or bit of advantage in a case like this?

9            PROSPECTIVE JUROR:  Generally, the way I viewed it,

09:29 10   more expensive lawyers tend to be better lawyers.  That may not

11   be the case but that's what I was exposed to.

12           MR. KENDALL:  I'm glad to hear that.  Do you think

13   that gives them some type of edge in the courtroom, sort of an

14   advantage that other people don't have?  It's not the same

15   trial for all people because of that.

16           PROSPECTIVE JUROR:  I guess most of the time, yes.  It

17   depends on which lawyer they hire.

18           MR. KENDALL:  What do you mean by that?

19           PROSPECTIVE JUROR:  Like I said, it depends on the

09:29 20   lawyer.  You could get a really expensive lawyer but they could

21   be poor at their job.

22           MR. KENDALL:  If they get a good lawyer that's good at

23   their job, they have an edge that others don't have in the

24   legal system.

25           PROSPECTIVE JUROR:  Yes.

1           MR. KENDALL:  I appreciate your candor.

2           THE COURT:  Miss Kearney.

3           MS. KEARNEY:  Good morning.  Following up on some of

4    the questions you've been asked, notwithstanding your views on

5    the types of lawyers that a defendant could afford, would you

6    be able to put aside those views and just judge based on the

7    evidence that's presented to you in court?

8           PROSPECTIVE JUROR:  Yes.

9           MS. KEARNEY:  If the judge instructed you that it's

09:30 10    the government's burden of proof in this case, would you be

11    able to follow that instruction?

12           PROSPECTIVE JUROR:  Yes.

13           MS. KEARNEY:  Thank you.

14           THE COURT:  Thank you, Mr. Xanthopoulos.  You may be

15    put in reserve.  You will go with the jury coordinator for the

16    time being.  You may be called back for further empanelment

17    information.  In the meantime, of course, you're not to do any

18    research about this case on the internet or anything like that.

19    You understand why.

09:31 20           PROSPECTIVE JUROR:  Yes.

21           THE COURT:  Thank you.

22           (Prospective juror exits.)

23           Mr. Kelly?

24           MR. KELLY:  We're going to move to strike this juror

25    for cause.  He just testified under oath in court that he has a

```
 1    bias against wealthy people.  That's his firmly held belief.

 2    He's certainly entitled to that belief, but given the facts of

 3    this case, he will be biased against our client.  He doesn't

 4    like them hiring lawyers that, in his view, give him an undue

 5    edge.

 6            He had difficulty even responding to the Court's

 7    questions initially.  I think that's another basis that

 8    concerns me, that he can't even follow the instructions of what

 9    it's going to be.  After you instructed him, he still answered

10    wrong.  He can't follow instructions.

11            More important for my client is he can be biased

12    against him based upon his answers, based upon his written

13    answers too that he had time to prepare when he was filling out

14    the questionnaire.  When he came here, he repeated it under

15    oath.  We respectfully suggest, unfortunately, he's biased

16    against my client and he should be struck for cause.

17            THE COURT:  Mr. Kendall.

18            MR. KENDALL:  To add slightly to that, I obviously

19    adopt his position, he's a respectful young man.  He clearly

20    respects the Court and what the Court says to him.  He clearly

21    said that he has an ingrained bias.  As much as he has respect

22    for the Court's instructions, I don't think you're going to

23    take it into the jury room.  He said rich people have an edge

24    in the courtroom because they get better lawyers.  I suggest,

25    your Honor, given how fraught this case is with those issues, I
```

1  think we have to just acknowledge that this juror's not the

2  appropriate person for this case.

3         THE COURT:  Miss Kearney.

4         MS. KEARNEY:  The prospective juror acknowledged he

5  misunderstood the question.  When it was explained to him, he

6  did say that he could put his views aside on both whether

7  wealthy people can afford better lawyers, although he

8  acknowledged sometimes that's not all the case.  He also said

9  he'd be able to follow your instructions.  Given that, we

09:33 10  oppose.

11         MR. KELLY:  Your Honor, I think I missed the most

12  important point.  He said under oath he thinks the defendant

13  has to put on evidence.  If the government puts on evidence of

14  guilt, the defendant has to put on evidence of innocence.

15  That's obviously not the law.

16         THE COURT:  I've heard enough.  I'm going to excuse

17  this juror, contrary to my earlier rulings yesterday, and

18  sustain the defendants' objection as to Mr. Xanthopoulos, who

19  will be used.

09:34 20         (Prospective juror enters.)

21         Good morning, Miss Reyes.  Please be seated.  You're

22  reminded you are still under oath.  You may remove your mask,

23  but you don't have to.

24         Miss Reyes, would serving on this jury for 4 weeks

25  cause you financial hardship?

```
 1            (Witness nods head.)

 2            THE COURT:  You're going to have to answer audibly so

 3    the court reporter can take down your answers.

 4            PROSPECTIVE JUROR:  No.

 5            THE COURT:  With respect to the answers you gave, I

 6    would just ask a general question.  Having answered all of the

 7    questions on the questionnaire, do you have any doubt that if

 8    you are chosen to be a juror on this case, you could be fair

 9    and impartial.

10            PROSPECTIVE JUROR:  Sorry.  What was the question?

11            THE COURT:  Do you have any doubt as to whether you

12    can be fair and impartial?

13            PROSPECTIVE JUROR:  No doubt.

14            THE COURT:  Can you decide this case based solely on

15    the evidence that comes in this courtroom and not based upon

16    any other information that you may have about the case?

17            PROSPECTIVE JUROR:  Yes.

18            THE COURT:  Mr. Kelly, any questions?

19            MR. KELLY:  Briefly.  Good morning.  I'm Brian Kelly.

20    I represent Mr. Aziz here.  With respect to this case, there

21    might be some evidence about college sports.  Are you a college

22    sports fan at all?

23            PROSPECTIVE JUROR:  No.

24            MR. KELLY:  That's it.

25            THE COURT:  Mr. Kendall.
```

```
 1              MR. KENDALL:  Thank you for coming in, but no
 2       questions.
 3              THE COURT:  Miss Kearney.
 4              MS. KEARNEY:  Good morning, Miss Reyes.  I see from
 5       your questionnaire you previously served on a jury.  Is there
 6       anything about that experience that would affect your ability
 7       to be fair and impartial in this case?
 8              PROSPECTIVE JUROR:  No.
 9              THE COURT:  Thank you, Miss Reyes.  We will reserve
09:36 10       you.  Putting you into reserve is what we call it.  You'll
11       report to Mr. McAlear here.  You may be called for further
12       investigation as to whether or not you're going to serve as a
13       juror in this case.  In the meantime, please do not do any
14       research on that subject.  Of course, that would be
15       inappropriate because you're going to decide this case, if you
16       are chosen to be a juror, solely on the evidence that comes
17       into this courtroom.  Okay?  Thank you.
18              PROSPECTIVE JUROR:  Thank you.
19              THE COURT:  Good morning, Miss Dorazio.  Please have a
09:37 20       seat.  You're reminded that you remain under oath.  You may
21       remove your mask if you want to, but you don't have to.
22              PROSPECTIVE JUROR:  I want to.
23              THE COURT:  Miss Dorazio, you informed us that you are
24       not available after October 13th, which I believe is a
25       Wednesday.
```

```
 1              PROSPECTIVE JUROR:  Yes.

 2              THE COURT:  This trial is probably going to be over by

 3       then, but I can't guarantee it.

 4              PROSPECTIVE JUROR:  I have a family -- excuse me.  I

 5       have a family reunion, with my siblings flying in to visit my

 6       mother at a nursing home.  She's 90.  She just went in there.

 7              I have to add another something to the questionnaire

 8       that I forgot that might be relevant besides that.

 9              THE COURT:  Yes.

09:38 10       PROSPECTIVE JUROR:  A friend of mine was recently

11       convicted of tax fraud.  I completely forgot about that.  I

12       just blocked it out completely.  It might have even been a

13       federal case.

14              THE COURT:  Would that in any way affect your ability

15       to be fair and impartial in this case --

16              PROSPECTIVE JUROR:  No.

17              THE COURT:  Wait a minute.  I have to ask the

18       question.  Would that affect your ability to be fair and

19       impartial in this case where one particular incident involves

09:38 20       allegations of tax fraud?

21              PROSPECTIVE JUROR:  No, no.  He broke the law.  He has

22       to pay the price.

23              THE COURT:  That would not impact your being a juror

24       in this case?

25              PROSPECTIVE JUROR:  No.  The only reason I'm
```

```
 1    mentioning it is because I wrote a letter of reference for him
 2    as a personal reference for the case.  The lawyers asked me to
 3    do that.  So it is on record that I supported this individual
 4    as a friend of mine, but it will not affect, no.
 5            THE COURT:  My question is whether it would affect
 6    your ability to be fair and impartial in this case.
 7            PROSPECTIVE JUROR:  No.
 8            THE COURT:  We've got to go back to that October 13th
 9    date.  I can't guarantee this case will be over.
10            PROSPECTIVE JUROR:  I know.  That's what concerns me.
11            THE COURT:  If you have an absolute commitment to not
12    being anywhere else other than at this reunion on the 13th,
13    14th and 15th, I'm pretty sure I can guarantee this case is
14    going to be done by the 15th, but not by the 13th.
15            PROSPECTIVE JUROR:  People are flying in.
16            THE COURT:  If you have a commitment that you cannot
17    break, I'm going to excuse you from this jury.
18            PROSPECTIVE JUROR:  Okay.
19            THE COURT:  You're excused.  Thank you.
20            (Prospective juror exits.)
21            Good morning, miss Bradford.  You may be seated.
22    You're reminded you are still under oath.  You may remove the
23    mask, but you don't have to.
24            Miss Bradford, would serving on this jury for
25    approximately 4 weeks cause you financial hardship?
```

09:39 (line 10)
09:40 (line 20)

```
 1          PROSPECTIVE JUROR:  Not financial.  I am a director of
 2   an aquarium where I work so it would be tricky with staffing,
 3   but it's possible.
 4          THE COURT:  Do you have other people that could
 5   substitute for you for that length of time?
 6          PROSPECTIVE JUROR:  We could make it work if needed.
 7          THE COURT:  Fair enough.  With respect to your answers
 8   on the questionnaire, just generally, having answered all those
 9   questions, do you have any doubt that if you are chosen to be a
10   juror on this case, you could be fair and impartial?
11          PROSPECTIVE JUROR:  I do not have a doubt, no.
12          THE COURT:  Can you decide this case based solely on
13   the evidence that comes into this courtroom and not based upon
14   any other information that you may have about the case?
15          PROSPECTIVE JUROR:  Yes.
16          THE COURT:  Mr. Kelly, any questions?
17          MR. KELLY:  Briefly.  Good morning.  I'm Brian Kelly.
18   I represent Mr. Aziz here.  Thanks for coming in.
19          Just a quick follow-up on some of the questionnaire
20   questions.  This case may involve some discussions of college
21   sports.  Are you a college sports fan at all?
22          PROSPECTIVE JUROR:  No.
23          MR. KELLY:  There's one question indicating that you
24   played in college.
25          PROSPECTIVE JUROR:  My brother did.
```

```
 1              MR. KELLY:  He played baseball?

 2              PROSPECTIVE JUROR:  He did.

 3              MR. KELLY:  Anything about that experience of any

 4    significance to you?

 5              PROSPECTIVE JUROR:  No, not in particular.

 6              MR. KELLY:  Do you follow NCAA basketball or anything

 7    like that?

 8              PROSPECTIVE JUROR:  No.

 9              MR. KELLY:  Thanks a lot.

09:42 10         THE COURT:  Mr. Kendall.

11              MR. KENDALL:  Yes, your Honor.  A couple.  Good

12    morning.  I'm Mike Kendall.  I represent John Wilson.  I just

13    have a question about No. 39 in the questionnaire.  It asks if

14    you've ever heard of any of the press coverage for what's

15    called the Varsity Blues case, and you said no.  You've never

16    heard of this case?

17              PROSPECTIVE JUROR:  So I did want to clarify that

18    question.  So I had heard about it, I think, a couple years ago

19    when it was like the big celebrity thing, but I thought that

09:42 20    question was about this specific case, which I have not heard

21    about.  I hadn't heard about the Varsity Blues buzzword or

22    anything, just the college admissions scandal in general I

23    heard about, but haven't followed closely.

24              MR. KENDALL:  I appreciate you clarifying that.  Did

25    you have any reaction whenever you saw any of the publicity
```

1    that you did see?

2              PROSPECTIVE JUROR:  Just regarding the fairness of it

3    all.  I went to college myself too, so for people to think that

4    they can maybe get in without a fair way in and just kind of

5    pay their way through wasn't necessarily my favorite thing to

6    hear.

7              MR. KENDALL:  Do you have any strong views on that

8    topic?

9              PROSPECTIVE JUROR:  Just -- I don't know.  Not in

09:43 10   particular, just that I don't think bribing your way into

11   anything is really fair for the rest of the people who have to

12   kind of work their way in.  That's all I really know about the

13   case.

14             MR. KENDALL:  Thank you.

15             THE COURT:  Miss Kearney.

16             MS. KEARNEY:  Good morning, Miss Bradford.  Would you

17   be able to put aside your views on what you've heard about the

18   Varsity Blues case previously and just judge this case on the

19   evidence presented at the trial?

09:43 20   PROSPECTIVE JUROR:  Yes.

21             MS. KEARNEY:  Would you be able to follow the judge's

22   instruction on the law?

23             PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Thank you, Miss Bradford.  I'm going to

25   put you in reserve, which means you will be held for perhaps

```
 1   further involvement in this case.  In the meantime, of course,
 2   please do not do any independent research or go online.  It
 3   would be totally inappropriate.  You understand that, right?
 4            PROSPECTIVE JUROR:  Yes.
 5            THE COURT:  Thank you, Miss Bradford.
 6            (Prospective juror exits.)
 7            (Prospective juror enters.)
 8            THE COURT:  Good morning, Mr. Pitts.  You may be
 9   seated.  You may remove your mask if you want to, but you don't
10   have to.
11            Mr. Pitts, would serving on this jury for 4 weeks
12   cause you financial hardship?
13            PROSPECTIVE JUROR:  No.
14            THE COURT:  Just generally having answered all of the
15   questions on the questionnaire, do you have any doubt if you
16   were chosen to sit as a juror in this case you could be fair
17   and impartial?
18            PROSPECTIVE JUROR:  Do I have any doubt?  No.
19            THE COURT:  Can you decide this case based solely on
20   the evidence that comes into this courtroom and not based upon
21   any information you have from elsewhere?
22            PROSPECTIVE JUROR:  Yes.
23            THE COURT:  Mr. Kelly, any questions?
24            MR. KELLY:  Just briefly.  Good morning.  Thanks for
25   coming in.  My name is Brian Kelly.  I represent Mr. Aziz.
```

1    This case may involve some discussion about college sports.

2    Are you a college sports fan at all?

3              PROSPECTIVE JUROR:  No.

4              MR. KELLY:  Only question.  Thanks.

5              THE COURT:  Mr. Kendall.

6              MR. KENDALL:  Yes.  Thank you, your Honor.

7              Good morning.  My name's Mike Kendall.  I represent

8    John Wilson.  I just had a couple of simple questions.

9              On question 9, you described your employment.  I think

09:46 10   it's a development office engineer.  Can you tell us what you

11   do?

12             PROSPECTIVE JUROR:  Yes.  So there's an online

13   advertising website.  So I do dem-ups for them, which means I

14   basically take care of maintaining the infrastructure and

15   developer tools to help the developers work on features for

16   that website.

17             MR. KENDALL:  In question 39, you were asked if you

18   ever heard of the case the Varsity Blues college admissions

19   case and any of the media or anything else.  You said no.

09:46 20   You've never heard of it?

21             PROSPECTIVE JUROR:  I have not.

22             MR. KENDALL:  The last question I wanted to ask you,

23   which was 45, you said you could abide by the rules of not

24   looking at any news coverage or media stuff about this, but you

25   prefer to not be barred from Facebook.

```
 1              PROSPECTIVE JUROR:  Yeah.  I'd like to correct that.
 2    Apparently, someone mentioned -- I heard it might be a high
 3    profile case.  I didn't understand it at the time.  It makes
 4    sense to not go on Facebook for this.
 5              MR. KENDALL:  Your mom and dad are lawyers?
 6              PROSPECTIVE JUROR:  Yes.
 7              MR. KENDALL:  What type of law practice do they have?
 8              PROSPECTIVE JUROR:  My dad does bankruptcy and I think
 9    divorce law, and my mom is a, I don't know exactly what, but
09:47 10   she works at a mental health advocate's office but she's a
11    lawyer for them.
12              MR. KENDALL:  I take it their work and growing up with
13    them as lawyers, that will have no impact on you in this case?
14    Is that fair to say?
15              PROSPECTIVE JUROR:  Yeah.
16              MR. KENDALL:  Thank you very much.
17              THE COURT:  Miss Kearney.
18              MS. KEARNEY:  Good morning, Mr. Pitts.  I wanted to
19    follow-up on one of your questions.  You said you didn't know
09:48 20   if you had a relative, close friend or anyone who worked for a
21    criminal defense attorney or public defender.  I wanted to just
22    clarify.  Is there someone that you think might but you're not
23    sure?
24              PROSPECTIVE JUROR:  I don't actually know exactly -- I
25    should know what my mom does.  I'm fairly certain she does not,
```

1    but I actually don't know.

2              MS. KEARNEY:  Thank you.

3              THE COURT:  Thank you, Mr. Pitts.  I'm going to put

4    you in reserve, which means that you may be subject to further

5    involvement in this case.  In the meantime, do not try to do

6    any independent research.  That would be inappropriate, as I'm

7    sure you understand.

8              PROSPECTIVE JUROR:  Okay.

9              THE COURT:  Thank you, Mr. Pitts.

09:48 10            (Prospective juror exits.)

11             (Prospective juror enters.)

12             THE COURT:  Good morning, Miss Seger.  You may be

13   seated.  You're reminded you're still under oath.  You may

14   remove the mask if you want to, but you don't have to.

15             Miss Seger, would serving on this jury for 4 weeks or

16   so cause you financial hardship?

17             PROSPECTIVE JUROR:  No.

18             THE COURT:  With respect to the answers that you gave

19   to the questions on the questionnaire, do you have any doubt

09:49 20   that if you were chosen to sit as a juror on this case you

21   could be fair and impartial?

22             PROSPECTIVE JUROR:  I don't have any concerns.

23             THE COURT:  You have no doubt?

24             PROSPECTIVE JUROR:  None.

25             THE COURT:  Can you decide this case based solely on

1   the evidence that comes into this courtroom and not based upon

2   any information you have from other sources?

3          PROSPECTIVE JUROR:  Yes.

4          THE COURT:  Thank you.

5          Mr. Kelly, any questions?

6          MR. KELLY:  Yes.  Just briefly.  Good morning.  Brian

7   Kelly.  I represent Mr. Aziz.  Thank you for coming in.

8          Just to follow-up on a couple questions here, there's

9   an answer you had about the media reports.  You've seen some

09:50 10   media reports in this matter.

11          PROSPECTIVE JUROR:  I remember the two celebrities

12   that had similar cases.  I know about the college admissions

13   scandal.  I remember Lori something and the other celebrity,

14   but it was just in the news.

15          MR. KELLY:  Did your review of that news cause you to

16   get any opinions about this matter?

17          PROSPECTIVE JUROR:  I thought what they did was wrong.

18          MR. KELLY:  Could you put that out of your mind and

19   treat this as a separate case, separate matter?

09:51 20          PROSPECTIVE JUROR:  Sure.

21          MR. KELLY:  Nothing you've seen in the media to date

22   would make you be unfair to the defense at all?

23          PROSPECTIVE JUROR:  No.  I don't remember hearing

24   about them.

25          MR. KELLY:  How about sports?  A lot of this case will

 1   be about college sports.  Are you a college sports fan at all?

 2            PROSPECTIVE JUROR:  UConn basketball.

 3            MR. KELLY:  Men's, women's?  The women's is the famous

 4   program.

 5            PROSPECTIVE JUROR:  Both.

 6            MR. KELLY:  Anything about that that you think would

 7   affect your approach to this case?

 8            PROSPECTIVE JUROR:  No.

 9            MR. KELLY:  Did you play basketball growing up?

09:51 10            PROSPECTIVE JUROR:  No.

11            MR. KELLY:  Thank you.

12            THE COURT:  Mr. Kendall.

13            MR. KENDALL:  Thank you, your Honor.

14            MR. KELLY:  Oh, I have one.

15            THE COURT:  Go ahead, Mr. Kelly.

16            MR. KELLY:  There's another answer you had about your

17   daughter-in-law works at the courthouse.

18            PROSPECTIVE JUROR:  She's a clerkship with a judge.  I

19   forget his name.  He's here.

09:52 20            MR. KELLY:  It's not Judge Gorton.

21            PROSPECTIVE JUROR:  No.

22            THE COURT:  Mr. Kendall.

23            MR. KENDALL:  Yes.  Good morning.  My name's Mike

24   Kendall.  I represent John Wilson.

25            I wanted to follow-up on a couple of things Mr. Kelly

```
 1    asked.  Your daughter-in-law is a clerk for one of the judges
 2    in the courthouse.
 3              PROSPECTIVE JUROR:  Yes.
 4              MR. KENDALL:  You don't remember the judge's name?
 5              PROSPECTIVE JUROR:  I don't.  Sorry.
 6              MR. KENDALL:  Could you tell us your daughter-in-law's
 7    name.
 8              PROSPECTIVE JUROR:  Gal, G-A-L, Seger Binenbaum.
 9              MR. KENDALL:  Do you know anything about the
10    particular judge she works with?  Is it a district court judge,
11    bankruptcy judge, appellate judge?  Do you have any idea what
12    type of judge it is?
13              PROSPECTIVE JUROR:  I don't.
14              MR. KENDALL:  Other than a good judge.
15              PROSPECTIVE JUROR:  I'm sure he is.
16              MR. KENDALL:  The second thing is you mentioned you
17    had seen some of the news coverage.  To be honest, I couldn't
18    hear all of the answer.  If I repeat, I apologize.  When you
19    saw the early coverage about the celebrities, did you have any
20    reaction to it, just your thoughts or your views of, gee, this
21    is A, or B or C?
22              PROSPECTIVE JUROR:  It was wrong what they did.
23              MR. KENDALL:  Why did you think it was wrong?
24              PROSPECTIVE JUROR:  They paid money to get their kids
25    into a school.
```

09:52 (line 10)
09:53 (line 20)

```
 1              MR. KENDALL:  You think that was wrong?

 2              PROSPECTIVE JUROR:  From the reports, it sounded like

 3    they did things.  There was a rowing.  I don't even remember

 4    the name of the person getting onto a rowing team or something.

 5    They paid to get their kids in.

 6              MR. KENDALL:  What is it that you think that's wrong

 7    about that or what's wrong about what you read?

 8              THE COURT:  I don't think -- that's asking her to give

 9    a legal conclusion.  She doesn't have to answer that.

09:54 10        MR. KENDALL:  Thank you, your Honor.  Thank you very

11    much.

12              THE COURT:  Miss Kearney.

13              MS. KEARNEY:  Good morning, Miss Seger.  Your son is

14    also a lawyer.  What kind of law does he practice?

15              PROSPECTIVE JUROR:  Corporate.

16              MS. KEARNEY:  I also saw on your questionnaire that

17    you previously served on a jury.  Was there anything about that

18    experience that might affect your ability to be fair and

19    impartial in this case?

09:54 20        PROSPECTIVE JUROR:  No.

21              MS. KEARNEY:  Your sister, you wrote, was a victim of

22    a crime.

23              PROSPECTIVE JUROR:  Her house was broken into years

24    and years ago.

25              MS. KEARNEY:  Do you feel she was treated fairly in
```

1    connection with the criminal justice system in that instance?

2            PROSPECTIVE JUROR:  Yes.

3            MS. KEARNEY:  Anything about that experience that

4    might affect your ability to be fair and impartial?

5            PROSPECTIVE JUROR:  No.

6            MS. KEARNEY:  Do you understand that the judge is

7    going to instruct you on what the law is and are you going to

8    be able to follow the judge's instructions?

9            PROSPECTIVE JUROR:  Yes.

09:55 10         THE COURT:  Thank you, Miss Seger.  I'm going to hold

11   you in reserve, which means that you may have further

12   involvement in this case.  You will go -- I'm sorry, Mr. Kelly.

13           MR. KELLY:  Apologies.

14           THE COURT:  Go ahead.

15           MR. KELLY:  One last question.  Does your son work at

16   mechanic carter and English?

17           PROSPECTIVE JUROR:  Yes.

18           THE COURT:  As I was saying, I'm going to have you in

19   the reserve pool, which means that you may have further

09:55 20   involvement, but please do not try to do any independent

21   research on this case.  You understand why that would be

22   inappropriate, right?

23           PROSPECTIVE JUROR:  Yes.

24           THE COURT:  Thank you.

25           (Prospective juror exits.)

1          MR. KELLY:  Your Honor?

2          THE COURT:  Yes.

3          MR. KELLY:  I think the only issue that I could

4    suggest she'd be excused for cause for her is McCarter &

5    English represent a witness in the case.  I think they just

6    recently filed a motion to quash on some subpoena matter.  Her

7    son works at the firm.  That firm is local counsel on a

8    witness.  They just filed a motion, apparently.  Haven't even

9    read the motion.  Her son works for the firm.  I think that's

09:56 10    probably a problem.

11          THE COURT:  Miss Kearney.

12          MS. KEARNEY:  Her son works for the corporate

13    practice.  McCarter English is local counsel.  It's former AUSA

14    Glenn McKinley, who only joined the office a week ago.  I doubt

15    they know each other or would come across each other.

16          MR. KELLY:  I'm not suggesting they know each other.

17    I'm just suggesting her son works for McCarter English and they

18    represent a witness in this case.  I think that's grounds to

19    move for cause.

09:56 20          MR. KENDALL:  Your Honor, I have a separate issue.

21    Her daughter-in-law clerks for one of the judges in this

22    courthouse.  This case has been broken up and spread out

23    through multiple judges in this court.  I was trying to get

24    some data just so we can figure out if she works for another

25    chambers that has got one of the defendants or one of the cases

```
 1    here.  That would cause me concern if she was clerking -- she's
 2    obviously not clerking for Judge Talwani because she said it
 3    was a male judge, but Judge Woodlock.
 4              THE COURT:  Did you get the last name of the clerk?
 5              MR. KENDALL:  She said it.  I hope we have it in the
 6    transcript.  If not, maybe Mr. Sharp here heard better than I
 7    did.
 8              MR. SHARP:  It was Gal, G-a-l, Seger, S-e-g-e-r,
 9    B-i-n-e-n-b-a-u-m.
09:57 10              THE COURT:  Could you spell that again.
11              MR. SHARP:  B-i-n-e-n-b-a-u-m.  Your Honor, throughout
12    the proceedings I'm going to keep my mask on.  I have a newborn
13    daughter.
14              THE COURT:  That's fine.  Binenbaum, can we check
15    that?
16              THE CLERK:  I'll ask HR.
17              THE COURT:  Does the government have a position on
18    this?
19              MS. KEARNEY:  Your Honor, she indicated that it was a
09:58 20    he.  We know it's not Judge Talwani, who has one of the other
21    trials in this case.  The fact she didn't even know the judge's
22    name, it doesn't sound like she's discussing things with her
23    daughter-in-law.
24              THE COURT:  I think this is a close call, but not an
25    absolute necessary to excuse her because her daughter-in-law --
```

1          MS. KEARNEY:  Her daughter-in-law is clerking and her

2     son is at McCarter English on the corporate side.

3          THE COURT:  I don't think it's necessary to excuse her

4     for that reason.  If we can find out what judge it is that she

5     is clerking for, it may change.  For now, I'm not going to

6     excuse her for cause.  If there's more information gained in

7     the next few hours, I will listen to any renewed motion in that

8     regard.

9          Let's go on with the next one.

09:59 10          (Prospective juror enters.)

11          THE COURT:  Good morning, Miss DaSilva.  Is that how

12     you pronounce your name?

13          PROSPECTIVE JUROR:  Correct.

14          THE COURT:  You may be seated.  You are reminded that

15     you remain under oath.  You may remove your mask if you want

16     to, but you don't have to.

17          Miss DaSilva, would serving on this jury for about a

18     4-week period cause you financial hardship?

19          PROSPECTIVE JUROR:  No.

09:59 20          THE COURT:  You answered one question that had to do

21     with the requirement that the government prove guilt beyond a

22     reasonable doubt by saying that "the defendant is there for a

23     reason."  What do you mean by that?

24          PROSPECTIVE JUROR:  I mean obviously somebody found

25     something for him or her to be in the situation they're in.  I

1    believe everybody should have to prove if they are innocent.

2         THE COURT:  Do you understand that that's contrary to

3    the law?  The law requires the government to prove its case

4    against anyone it charges with a crime beyond a reasonable

5    doubt and the defendant has no obligation to prove anything.

6    In fact, the defendant can remain entirely silent and not

7    testify and that is the law.  He has a right.  He or she has a

8    right to do that.  So if I were to instruct you about the law,

9    could you follow that instruction, notwithstanding your

10:00 10   opinion?

11        PROSPECTIVE JUROR:  Sure.

12        THE COURT:  With respect generally to all of the

13   questions on the questionnaire, do you have any doubt at all

14   that if you were chosen to sit as a juror on this case you

15   could be fair and impartial?

16        PROSPECTIVE JUROR:  Yes.

17        THE COURT:  Do you have doubt?  Yes, you do have doubt

18   or you don't have any doubt?

19        PROSPECTIVE JUROR:  I don't have any doubt.

10:01 20   THE COURT:  Can you decide this case solely based on

21   the evidence that comes into this courtroom and not based on

22   anything else you may have heard about the case?

23        PROSPECTIVE JUROR:  Yes.

24        THE COURT:  Mr. Kelly, any questions for this witness?

25        MR. KELLY:  Yes, your Honor.  Good morning.  Brian

```
 1   Kelly.  I represent Mr. Aziz.
 2           I want to follow-up on a couple questions here.
 3   You're 40 years old?
 4           PROSPECTIVE JUROR:  Yes.
 5           MR. KELLY:  You filled this out.  You did it honestly?
 6           PROSPECTIVE JUROR:  Yes.  Honestly.
 7           MR. KELLY:  Best of your ability?
 8           PROSPECTIVE JUROR:  Yes.
 9           MR. KELLY:  Your view was, in fact, that the defendant
10   is there for a reason.
11           PROSPECTIVE JUROR:  Yes.
12           MR. KELLY:  And the reason would be he's probably
13   guilty?  That's why he's there?
14           PROSPECTIVE JUROR:  No.  I'm not saying he's guilty.
15   I'm just saying obviously there was some kind of investigation
16   or something as to why he would be in the position he's in.
17           MR. KELLY:  Innocent people aren't just plucked off
18   the street?  Is that your thought?
19           PROSPECTIVE JUROR:  No.  There's innocent people that
20   get in trouble all the time.  That's why I said that they
21   should defend themselves, but then the judge explained it
22   shouldn't be that way.  I get that.
23           MR. KELLY:  You think they should defend themselves if
24   there's evidence against them?
25           PROSPECTIVE JUROR:  Prior to when the judge explained
```

1    to me, yes, I thought that.

2            MR. KELLY:  Just now when the judge gave you that

3    instruction, that took away your viewpoint?

4            PROSPECTIVE JUROR:  Correct.

5            MR. KELLY:  That you developed over 40 years.

6            PROSPECTIVE JUROR:  Correct.

7            MR. KELLY:  You saw some media coverage in this.

8    Netflix?

9            PROSPECTIVE JUROR:  I didn't see it.  I heard that

10:02 10   it's there, but yes.

11           MR. KELLY:  You didn't watch it?

12           PROSPECTIVE JUROR:  I didn't watch it.

13           MR. KELLY:  How much media coverage, if any, have you

14   seen of this matter?

15           PROSPECTIVE JUROR:  The only thing I really know about

16   it is Netflix or something is suing Netflix or something like

17   that.  That's all I really know about it.  And then prior to

18   this I know of that Full House lady or whatever it is.  That's

19   all I really know.

10:03 20          MR. KELLY:  No other media coverage comes to your

21   mind?

22           PROSPECTIVE JUROR:  Nothing.

23           MR. KELLY:  Nothing about Mr. Abdelaziz in this case?

24           PROSPECTIVE JUROR:  Didn't even know who he was.

25           MR. KELLY:  How about college sports?  You college

```
 1    sports fan at all?
 2              PROSPECTIVE JUROR:  No.
 3              MR. KELLY:  Sports fan in general?
 4              PROSPECTIVE JUROR:  I like football, NFL.
 5              MR. KELLY:  But other than that, no college sports?
 6              PROSPECTIVE JUROR:  No.
 7              THE COURT:  Mr. Kendall.
 8              MR. KENDALL:  Thank you.  Good morning.  My name's
 9    Mike Kendall.  I represent John Wilson.
10:03 10             PROSPECTIVE JUROR:  Good morning.
11              MR. KENDALL:  I just wanted to focus on this issue of
12    the Netflix in the media coverage.  Netflix was the only thing
13    you wrote down by name in your questionnaire.
14              PROSPECTIVE JUROR:  Yes.
15              MR. KENDALL:  What was it about Netflix that was so
16    memorable to you?
17              PROSPECTIVE JUROR:  I have a Netflix account.  When I
18    saw some kind of scrolling through social media, I saw
19    something about either Netflix is getting sued or somebody is
10:04 20    suing Netflix, something like that, about that.  That's all I
21    saw.
22              MR. KENDALL:  What did you read about that lawsuit?
23              PROSPECTIVE JUROR:  Not much, just like the headline.
24              MR. KENDALL:  What did you think about it when you saw
25    it?
```

```
 1                PROSPECTIVE JUROR:  Nothing.
 2                MR. KENDALL:  You haven't seen any part of the Netflix
 3       documentary itself?
 4                PROSPECTIVE JUROR:  Nothing.
 5                MR. KENDALL:  Have you seen the general media coverage
 6       about this case?
 7                PROSPECTIVE JUROR:  No.  I'm not really -- I don't
 8       watch the news.  My news, I get it through social media,
 9       whatever I scroll.
10:04 10          MR. KENDALL:  Did you see anything about some of the
11       other people, celebrities or well-known people when might have
12       been part of this case?
13                PROSPECTIVE JUROR:  I don't know if it's the same.
14       Like I said, that Full House lady or whatever.
15                MR. KENDALL:  Did you have any thoughts about that?
16                PROSPECTIVE JUROR:  No.
17                MR. KENDALL:  Thank you very much.  Appreciate your
18       candor.
19                THE COURT:  Miss Kearney?
10:05 20          MS. KEARNEY:  Good morning, Miss DaSilva.  I have no
21       questions.
22                THE COURT:  Miss DaSilva, I'm going to hold you in
23       reserve.  That means that you may be called back at a later
24       time.  In the meanwhile, please do not do any independent
25       research on this case.  That would be entirely inappropriate.
```

```
 1   I'm sure you understand why.  Thank you.
 2            (Prospective juror exits.)
 3            THE COURT:  With respect to the prior -- are you
 4   rising on this?
 5            MR. KENDALL:  Yes.  For this person.
 6            If the Court wanted to say something, I didn't mean to
 7   pop up too quickly.
 8            THE COURT:  I was going to go back to the prior one
 9   for information we have with respect to Miss Seger's
10   daughter-in-law.  Apparently, she is an intern for Judge Young.
11   He describes his interns as volunteer law clerks, but she is,
12   in fact, not a paid law clerk, but rather a 3-month intern.
13            MR. KENDALL:  I don't know if Judge Young is involved
14   in this.
15            MS. KEARNEY:  He does not have any of the related
16   cases.
17            MR. KELLY:  From defendant Aziz's perspective, that is
18   not a ground for cause.
19            THE COURT:  So Miss Seger is still in the reserve
20   pool.
21            Did somebody rise with respect to Miss DaSilva?
22            MR. KELLY:  I did.
23            THE COURT:  Yes, Mr. Kelly.
24            MR. KELLY:  I think she's quite candid in her response
25   on 23, which goes against bedrock principal, in the justice
```

system.  The Court instructed her quite firmly.  I submit not

many people are going to deny a general judge when it's said to

them like this.  She came to this courthouse with 40 years of

experience.  This is her viewpoint.  The defendant is there for

a reason.  When someone says that, they mean the defendant's

there because he's probably guilty.  That's a valid viewpoint

some people may have, but it's not part of the criminal justice

process.  I think she would be biased against my client.  On

that basis, I move to strike her for cause, your Honor.

10:07        THE COURT:  Mr. Kendall.

        MR. KENDALL:  Your Honor, in addition to what

Mr. Kelly said, I'm particularly concerned about her reference

to the Netflix documentary lawsuit.  We've had a few people

come in who have seen the documentary and have had full

discussion of their issues.  She's the first person that shows

John Wilson is suing Netflix based on the documentary.  I think

she's got too much information in the courtroom.  To be honest,

I don't know if I view her as a candid witness.  I think she

was trying to retreat from some of her answers because I think

10:08  she may be a person who wants to get on the jury.  The fact

that she has more knowledge about the Netflix issue than

anybody else we've had come through this juror pool causes me

concern.  That Netflix lawsuit is going to keep on going.  It's

been in the newspapers.  It's been reported.  It will probably

continue to be.

1          I'd ask the Court.  Everyone's been here through this.

2     If I had a question that I was concerned about the answer, I

3     still had great respect for the integrity of the person and

4     their answers and their forthrightness.  This person I'm a

5     little bit concerned about, unlike any of the others.

6          THE COURT:  Miss Kearney.

7          MS. KEARNEY:  Your Honor, starting with the Netflix

8     concern, unlike some of the other jurors who are in our pool,

9     she hasn't even seen the Netflix documentary.  She saw a

10:09 10    headline but didn't know who was suing or being sued.  She

11    doesn't really have any information on the Netflix documentary.

12         Regarding her views on the burdens of proof, as soon

13    as you explained it to her, she did not hesitate to say she'd

14    be able to follow the Court's instructions.  She also

15    acknowledged that innocent people get in trouble all the time

16    and that she just did not understand what the law was prior to

17    coming in, but she would not hesitate to follow your

18    instructions.

19         Regarding her forthrightness, she was extremely candid

10:09 20    and acknowledged that she had a different opinion but would be

21    able to follow your instructions.

22         THE COURT:  I am not going to excuse her for the

23    Netflix comment.  As I've said before, that is not an automatic

24    out because somebody has heard about the Netflix lawsuit, but I

25    am going to sustain the objection of attorney Kelly because,

```
 1    notwithstanding the fact that she did acknowledge that she
 2    would follow my instructions, I think that her opinion was a
 3    little bit too ingrained and, therefore, I'm going to sustain
 4    the objection of the defendant Aziz.  So Miss DaSilva is
 5    stricken.
 6              Call the next one.
 7              (Prospective juror enters.)
 8              THE COURT:  Good morning, Miss Wilson.
 9              PROSPECTIVE JUROR:  Good morning.
10    THE COURT:  Please be seated.  You're reminded you
11    remain under oath.  You may remove your mask if you want to,
12    but you don't have to.
13              Miss Wilson, the first question is are you related to
14    the defendant Wilson in this case?
15              PROSPECTIVE JUROR:  No, I am not.
16              THE COURT:  Have you ever heard of him before?
17              PROSPECTIVE JUROR:  No, at least I don't think so.
18    I've never heard of him, no.
19              THE COURT:  The general question I guess for you is,
20    having answered all of the questions in the questionnaire
21    yesterday, and that was -- maybe it was the day before
22    yesterday, that was a very extensive questionnaire.  Do you
23    have any doubt that if you're chosen to sit as a juror on this
24    case you could be fair and impartial?
25              PROSPECTIVE JUROR:  Yes.
```

             1          THE COURT:  In other words, do you have doubt or do
             2   you have no doubt?
             3          PROSPECTIVE JUROR:  I think -- no.  I don't think I
             4   have any doubt.  I have a lot of opinions but I don't have any
             5   doubts.
             6          THE COURT:  You could be fair and impartial in this
             7   case?  Is that the bottom line?
             8          PROSPECTIVE JUROR:  Yes.
             9          THE COURT:  Can you decide this case solely based upon
    10:12  10   the evidence that comes into this courtroom and not based upon
            11   any other information that you have about the case?
            12          PROSPECTIVE JUROR:  Yes.
            13          THE COURT:  Your daughter is a college athlete and it
            14   bothers you that people are able to circumvent hard work and
            15   take away a spot on the team.  Would that overcome your ability
            16   to be fair and impartial in this case or could you put that
            17   opinion aside and decide this case based upon the evidence
            18   against these defendants and not your general concept that
            19   bribing people into college to let their child in is somehow,
    10:13  20   is wrong?
            21          PROSPECTIVE JUROR:  Yes.
            22          THE COURT:  Could you do that?
            23          PROSPECTIVE JUROR:  Yes.
            24          THE COURT:  Mr. Kelly, any questions?
            25          MR. KELLY:  Sure.  Just briefly.  Good morning.

1      Thanks for coming in.  I represent Mr. Aziz over here.

2              To follow-up quickly on a couple questions from the

3      judge, your daughter is a basketball player?

4              PROSPECTIVE JUROR:  Yes.  That's correct.

5              MR. KELLY:  Anything about that process give you any

6      strong views?  You said you had a lot of opinions.

7              PROSPECTIVE JUROR:  Sure.  I have feelings.

8              MR. KELLY:  What would those feelings or opinions be

9      about this case?

10:13 10        PROSPECTIVE JUROR:  My thought -- my feeling is

11     that -- I know based on experience how hard she worked getting

12     herself there, even just number of years and hours that she put

13     into that, and also the hours that she spent dedicated to her

14     academics.  I think the conjunction of those two -- what am I

15     trying to say?  I just know all the hard work that she put into

16     it and the time, all the tournaments, all the coaching that

17     she's gone to or has had in the past and will continue to have.

18     I know how much time and effort she's put into it.

19             MR. KELLY:  Obviously she did a great job to get where

10:15 20   she's at.  Given your observations of her and the hard work she

21     did, does that cause you to resent people who are accused of

22     taking a shortcut?

23             PROSPECTIVE JUROR:  It wouldn't make me very happy if

24     I knew that, sure.

25             MR. KELLY:  If that was the allegation, would you have

a hard time being fair in the case?

PROSPECTIVE JUROR:  I'd like to hear all the evidence. Oh, no.  Yeah.  I would not have a hard time being fair after hearing all the evidence, sure.

MR. KELLY:  So you'd keep an open mind that these are just allegations --

PROSPECTIVE JUROR:  Yes.

MR. KELLY:  -- on the defense and the defense is presumed innocent?  You'd be okay with that?

PROSPECTIVE JUROR:  Yes.

MR. KELLY:  I guess you are a college sports fan because your daughter is there.  Do you follow any sports in particular?

PROSPECTIVE JUROR:  Well, I have to sit there all the time with my husband watching sports these days because we're the only two in the house.  Always basketball, football.  Those are the two, baseball as well.  I'm not a fanatic about it.

MR. KELLY:  Lastly, on media coverage of this matter, have you seen much media coverage about this?

PROSPECTIVE JUROR:  I know it's out there.  I know it's happening.  I haven't really followed very much of it.

MR. KELLY:  The little bit that you saw, would it affect your opinion as to this particular case?

PROSPECTIVE JUROR:  No.

MR. KELLY:  Thanks a lot.

```
 1              THE COURT:  Mr. Kendall.

 2              MR. KENDALL:  Yes.  Thank you, your Honor.

 3         Good morning.

 4              PROSPECTIVE JUROR:  Good morning.

 5              MR. KENDALL:  I'm Mike Kendall.  I represent John

 6    Wilson.  Thank you for coming in.  I just wanted to follow-up

 7    again on the same issues that Mr. Kelly and the judge had

 8    raised.

 9              I appreciate your thoughts that you can be fair and

10    you can be respectful of the judge's instructions.  I'm just

11    curious, on the first day of the trial, what would you be

12    thinking about the defendants?

13              PROSPECTIVE JUROR:  I don't know.  I think I would

14    just wait to hear how this is being presented.

15              MR. KENDALL:  I've got no further questions.

16              THE COURT:  Miss Kearney.

17              MS. KEARNEY:  Good morning, Miss Wilson.  You

18    indicated in your questionnaire that you previously served on a

19    jury.  Is there anything about that experience that would

20    affect your ability to be fair and impartial in this case?

21              PROSPECTIVE JUROR:  No.

22              MS. KEARNEY:  It looks like you may have had

23    involvement in the criminal justice system or know someone who

24    was involved.  Do you think whoever that was was treated

25    fairly?
```

 1           PROSPECTIVE JUROR:  By whom?

 2           MS. KEARNEY:  By the criminal justice system

 3    generally.

 4           PROSPECTIVE JUROR:  Oh, sure.  Yeah.

 5           MS. KEARNEY:  Is there anything about that experience

 6    that would affect your ability to be fair and impartial?

 7           PROSPECTIVE JUROR:  No.

 8           MS. KEARNEY:  To follow-up on some of the questions

 9    that Mr. Kelly and Mr. Kendall asked you, would you have any

10:18 10    problem putting your opinions aside and listening to the

11    evidence as it comes in during the trial?

12           PROSPECTIVE JUROR:  I don't think so.

13           MS. KEARNEY:  Thank you.

14           THE COURT:  Thank you, Miss Wilson.  You will be held

15    in reserve, which means you may be subject to callback.  In the

16    meantime, please don't do any independent research on the case.

17    You understand that would be entirely inappropriate, right?

18           PROSPECTIVE JUROR:  Yes.

19           THE COURT:  Thank you, Miss Wilson.

10:18 20           (Prospective juror exits.)

21           (Prospective juror enters.)

22           THE COURT:  Good morning, Mr. Stanton.

23           PROSPECTIVE JUROR:  Good morning.

24           THE COURT:  Please be seated.  You're reminded that

25    you remain under oath.  You may remove the mask if you want to,

```
 1    but you don't have to.
 2            Mr. Stanon, would serving on a jury for 4 weeks, which
 3    is about what this case would take, cause you any financial
 4    hardship?
 5            PROSPECTIVE JUROR:  Well, sure, because Uber is about
 6    30 to $35 each way.
 7            THE COURT:  You're gainfully employed?
 8            PROSPECTIVE JUROR:  Yes.
 9            THE COURT:  What would you do if you couldn't go to
10    your job for 4 weeks?
11            PROSPECTIVE JUROR:  Call out sick I guess.
12            THE COURT:  I'm concerned that it may cause you
13    financial hardship.  I don't want to cause you financial
14    hardship if serving on this jury would.  I just don't know.
15    Would it?
16            PROSPECTIVE JUROR:  Yes.
17            THE COURT:  It would.  I don't think we want to cause
18    you financial hardship.  I will excuse you from this jury.
19    That doesn't excuse you from all jury duty.  I hope that you
20    will be willing to serve on another jury because it's a very
21    important civic obligation that all of us have, but I think
22    having to serve for 4 weeks and go without a salary is too much
23    to ask.  I'm going to excuse you.
24            PROSPECTIVE JUROR:  Appreciate it.
25            THE COURT:  Thank you.
```

1          MR. KENDALL:  Your Honor, may I ask one or two

2     questions?

3          PROSPECTIVE JUROR:  Yes.

4          MR. KENDALL:  I noticed you worked at FW Webb in the

5     warehouse.  Is that a big company?

6          PROSPECTIVE JUROR:  Yes.

7          MR. KENDALL:  Like likely to cover your salary while

8     you're on jury duty.

9          PROSPECTIVE JUROR:  I'm still within the 90-day

10:21 10     period.

11          MR. KENDALL:  You just started there?

12          PROSPECTIVE JUROR:  Yes.

13          MR. KENDALL:  They won't cover it for the 90 days?

14          PROSPECTIVE JUROR:  I don't think so.

15          MR. KENDALL:  You could check.

16          PROSPECTIVE JUROR:  Yes.

17          MR. KENDALL:  You started February 1st.

18          PROSPECTIVE JUROR:  Through a temp agency.

19          MR. KENDALL:  Then they took you on full-time?

10:21 20          PROSPECTIVE JUROR:  About a month ago.

21          THE COURT:  You're excused, Mr. Stanton.  Thank you.

22          (Prospective juror exits.)

23          (Prospective juror enters.)

24          THE COURT:  Good morning, Mr. Bobek.  Bobek?

25          PROSPECTIVE JUROR:  Bobek.

```
 1              THE COURT:  Good morning.  You may be seated.  You may
 2     remove your mask if you want to, but you don't have to.  You
 3     are reminded you're under oath.
 4              Mr. Bobek, would serving on this jury for 4 weeks
 5     cause you a financial hardship?
 6              PROSPECTIVE JUROR:  I don't think so.  I'm salary.
 7     I'd have to check.
 8              THE COURT:  So that's not a problem?
 9              PROSPECTIVE JUROR:  No.
10:22 10         THE COURT:  With respect to all of the questions you
11     were asked on that questionnaire, which was a very extensive
12     questionnaire, do you have any doubt at all that if you're
13     selected to be a juror on this case that you would be able to
14     be fair and impartial?
15              PROSPECTIVE JUROR:  No doubt.
16              THE COURT:  Can you decide this case based solely on
17     the evidence that comes into this courtroom and not based on
18     any information you may have from outside sources?
19              PROSPECTIVE JUROR:  Yes.
10:23 20         THE COURT:  Mr. Kelly, any questions?
21              MR. KELLY:  Good morning.  Thanks for coming in.  My
22     name's Brian Kelly.  I represent Mr. Aziz.
23              How about in terms of media coverage?  Have you seen
24     any media coverage of this matter?
25              PROSPECTIVE JUROR:  I've heard of this but a year or
```

1   more ago.  I think I might have marked that I saw media

2   coverage, but I can't really remember anything about it, names

3   or people.

4         MR. KELLY:  Nothing about what you did see over a year

5   ago would affect your approach to this case?

6         PROSPECTIVE JUROR:  No.

7         MR. KELLY:  How about college sports?  There will be a

8   lot of discussion about college sports in this case.  Are you a

9   college sports fan?

10:23 10         PROSPECTIVE JUROR:  Not really, no.

11         MR. KELLY:  That's it.

12         THE COURT:  Mr. Kendall.

13         MR. KENDALL:  No questions, your Honor.

14         THE COURT:  Miss Kearney?

15         MS. KEARNEY:  Good morning.  I saw on your

16   questionnaire that you or someone you know was a victim to a

17   crime and a witness to a crime.  Did you feel that whoever was

18   involved was treated fairly by the criminal justice system?

19         PROSPECTIVE JUROR:  Yeah.  I honestly answered that

10:24 20   because it's the only thing that really came to mind.  It was a

21   minor incident, a break in at my sister's.  I don't know if

22   they ever caught who did it.  That was the best I could answer

23   that question.

24         MS. KEARNEY:  Is there anything about that experience

25   that would affect your ability to be fair and impartial in this

1    case?

2              PROSPECTIVE JUROR:  No.

3              THE COURT:  Thank you, Mr. Bobek.  I'm going to hold

4    you in reserve, which means you may be called back for further

5    involvement in the case.  In the meantime, please do not do any

6    independent research or go on the internet to look up about

7    this case.  That would be entirely inappropriate about this

8    case.  Thank you.

9              (Prospective juror exits.)

10:25 10          MR. SHEKETOFF:  Your Honor, my youngest daughter works

11   at the same company as he does.

12             THE COURT:  The same company as Mr. Bobek?

13             MR. SHEKETOFF:  Yes.  It's a company called Buildium.

14   It's not a giant company.  It's not tiny.  It's a unique last

15   name.

16             THE COURT:  Do you want me to call him back and ask

17   him if he knows -- is it your daughter?

18             MR. SHEKETOFF:  Yes.

19             THE COURT:  Does counsel have a position in that?

10:25 20          MS. KEARNEY:  Your Honor, I'm not opposed to calling

21   him back to see if he knows Mr. Sheketoff's daughter.  I know,

22   according to Google, Buildium has over 300 employees.

23             THE COURT:  Your daughter is named Rachel?

24             MR. SHEKETOFF:  Sheketoff.

25             (Prospective juror enters.)

```
 1          THE COURT:  That you for coming back, Mr. Bobek.  In
 2     the interim, somebody has mentioned that they know somebody
 3     that works at the same company that you do, Buildium.
 4     Approximately, how many employees are at your company, if you
 5     know?
 6          PROSPECTIVE JUROR:  I think it's close to 250 or 300
 7     or so.  It was acquired by Real Page, a much larger company
 8     with thousands of employees, and most recently acquired by
 9     Thoma Bravo, which is a large investment firm.
10:26 10          THE COURT:  Where is it located where you work?
11          PROSPECTIVE JUROR:  That is right across from
12     government center.
13          THE COURT:  Here in Boston?
14          PROSPECTIVE JUROR:  Yes.
15          THE COURT:  One of the persons involved in this case
16     has a daughter who works there named Rachel Sheketoff.  Do you
17     know Rachel Sheketoff?
18          PROSPECTIVE JUROR:  I do know.
19          THE COURT:  How?
10:27 20          PROSPECTIVE JUROR:  Professional acquaintance.  I
21     think she's on the product team.  My position involves data
22     analytics.  I interface with a lot of individuals around with
23     data so they can do their jobs.
24          THE COURT:  If it were to turn out that one of
25     Rachel's relatives was involved in this case in any way, would
```

```
 1   that affect your ability to be fair and impartial?

 2           PROSPECTIVE JUROR:  No.  I don't think so, no.

 3           THE COURT:  You know her only professionally, not

 4   socially?

 5           PROSPECTIVE JUROR:  That's correct.

 6           THE COURT:  Thank you.  I'll hold you in reserve.  You

 7   may go back with the jury coordinator.

 8           (Prospective juror exits.)

 9           THE COURT:  Counsel?

10   MR. KELLY:  We don't have any objection.  Passing

11   familiarity with her, doesn't seem like they deal with each

12   other on a direct basis.  We're not going to move to strike.

13           MS. KEARNEY:  The government agrees.

14           THE COURT:  Thank you.  We will move on.

15           MR. KELLY:  Your Honor, we've reached the 40 mark.

16   Can we take a quick break?

17           THE COURT:  We're going to see two more folks.  Then

18   we'll take a break.

19           (Prospective juror enters.)

20           THE COURT:  Good morning, Mr. Heffernan.  Please be

21   seated.  You are reminded you're under oath.  You may remove

22   your mask, but you don't have to.

23           Mr. Heffernan, would serving on this jury for

24   approximately 4 weeks cause you financial hardship?

25           PROSPECTIVE JUROR:  No.
```

10:28 (line 10)

10:29 (line 20)

1          THE COURT:  Generally, having answered all of the

2    questions on that questionnaire a day before yesterday, and it

3    was a very extensive questionnaire, do you have any doubt at

4    all that if you were chosen to sit as a juror in this case that

5    you could be fair and impartial?

6          PROSPECTIVE JUROR:  Do I have any doubt?  No.

7          THE COURT:  Can you decide this case based solely on

8    the evidence that comes into this courtroom and not based upon

9    any information you have from other sources?

10:30 10          PROSPECTIVE JUROR:  Yes.

11          THE COURT:  Mr. Kelly, any questions?

12          MR. KELLY:  Just briefly.  Good morning.  Brian Kelly.

13    I represent Mr. Aziz.  Thanks for coming in.

14          This case will involve a lot of discussion of college

15    sports.  Do you follow college sports at all?

16          PROSPECTIVE JUROR:  Not really.

17          MR. KELLY:  You haven't heard anything in the media

18    that gives you any opinion about this case one way or another?

19          PROSPECTIVE JUROR:  That gives me an opinion?  I read

10:31 20    in the case perhaps six or 8 months ago, but did it form an

21    opinion?  I'm open, I think.

22          MR. KELLY:  So you're open to both sides.

23          MR. KELLY:  Thank you.

24          THE COURT:  Mr. Kendall.

25          MR. KENDALL:  Briefly, your Honor.

1          Good morning.  My name's Mike Kendall.  I represent

2   John Wilson.

3          You described your job as a solution executive at Tech

4   Systems.  What do you do?

5          PROSPECTIVE JUROR:  It's a consultant.  We go in and

6   work with larger companies to get an understanding of their IT

7   infrastructure and we make recommendations on how to improve

8   it.

9          MR. KENDALL:  What's your role in all of that?

10:31 10    PROSPECTIVE JUROR:  I'm basically a solution exec who

11   helps plan and figure out what's needed for a particular

12   situation.  If someone needs IT or something like that, I help

13   plan and I might run an engagement team.

14          MR. KENDALL:  Fair to say your expertise is more on

15   the IT side of things than business?

16          PROSPECTIVE JUROR:  IT and business.  Years ago,

17   6 years ago I was in IBM and it was business side of it, so I

18   did a lot of business strategy.

19          MR. KENDALL:  Thank you.

10:32 20    THE COURT:  Miss Kearney.

21          MS. KEARNEY:  Good morning.  I see from your

22   questionnaire you previously served on a jury.  Is there

23   anything about that experience that would affect your ability

24   to be fair and impartial in this case?

25          PROSPECTIVE JUROR:  No.

```
 1              THE COURT:  Thank you, Mr. Heffernan.  I'm going to
 2      hold you in reserve.  That means that you may be called back
 3      for further involvement in this case, but in the meantime,
 4      please do not do any independent research or go online to try
 5      to find about this case.  That would, of course, be
 6      inappropriate, as you understand, right?
 7              PROSPECTIVE JUROR:  I understand, yes.
 8              THE COURT:  Thank you.
 9              (Prospective juror exits.)
10:32 10         (Prospective juror enters.)
11              THE COURT:  Good morning, Miss Willis.  Please be
12      seated.  You may remove the mask if you want to, but you don't
13      have to.
14              PROSPECTIVE JUROR:  Happily.  Thank you.
15              THE COURT:  Miss Willis, would serving on this jury
16      for approximately 4 weeks cause you financial hardship?
17              PROSPECTIVE JUROR:  Probably not financial hardship.
18              THE COURT:  So that's not a problem for this service
19      or is it?
10:34 20         PROSPECTIVE JUROR:  No, no, it's not.
21              THE COURT:  With respect generally to the questions
22      that you were asked on that questionnaire, which I know is very
23      extensive, do you have any doubt at all that if you were
24      selected to serve on this jury that you could be fair and
25      impartial?
```

```
 1              PROSPECTIVE JUROR:  I don't have any doubt I could be
 2     fair and impartial.
 3              THE COURT:  Can you decide this case solely based on
 4     the evidence that comes into this courtroom and not on any
 5     information you may have acquired outside this courtroom?
 6              PROSPECTIVE JUROR:  Yes.
 7              THE COURT:  Mr. Kelly, any questions?
 8              MR. KELLY:  Just briefly.  Good morning.  Brian Kelly
 9     on behalf of Mr. Aziz.  Thanks for coming in.
10:34 10          This case may involve a lot of testimony about the
11     college sports scene.  Are you a college sports fan at all?
12              PROSPECTIVE JUROR:  Not really.  My sons are.
13              MR. KELLY:  Thanks.  That's it.
14              THE COURT:  Mr. Kendall.
15              MR. KENDALL:  Briefly, your Honor.
16              Good morning.  I'm Mike Kendall.  I represent John
17     Wilson.
18              Just a couple questions on your answers.  You said in
19     nine that you are an owner of the Rockwell Restaurant Group.
10:35 20     Could you describe what that is and what you do.
21              PROSPECTIVE JUROR:  I own three restaurants.  Rockwell
22     Restaurant Group, I'm technically not an owner.  I'm a member.
23     It's an LLC.  But I have two other businesses that are separate
24     entities.  There wasn't a lot of room there to elaborate.
25              MR. KENDALL:  What the are the other businesses?
```

1      PROSPECTIVE JUROR:  One is the Prospect Hill Partners

2  and the d/b/a is The Independent.  The other one is Union

3  Square Group, and the d/b/a is Vieras.  All are restaurants in

4  Somerville.

5      MR. KENDALL:  Is that that area that's sort of open

6  and there's restaurants all around?

7      PROSPECTIVE JUROR:  One of them is in Davis Square,

8  Somerville, two of them are in Union Square, Somerville.

9      MR. KENDALL:  In number 39, you said you had not heard

10:36 10  any news coverage about the case known as Varsity Blues or the

11  college admissions case.  You've heard nothing about it?

12      PROSPECTIVE JUROR:  No.  I've seen when I'm watching

13  about a year ago when I was watching the evening news I would

14  occasionally see a celebrity outside of this courthouse.  Then

15  I did a couple of days ago, I was skimming the Globe, and I saw

16  a headline.  I started to read it and read the first paragraph

17  and said jury selection begins on Wednesday at this courthouse.

18  I thought, oh, that's probably what I'm going for and I

19  stopped.

10:36 20      MR. KENDALL:  Do you have any thoughts about the case

21  or any articles you've seen?

22      PROSPECTIVE JUROR:  No.

23      MR. KENDALL:  Thank you for coming in.

24      THE COURT:  Miss Kearney.

25      MS. KEARNEY:  I have no questions.

          1              THE COURT:  Thank you, Miss Willis.  I'm going to hold
          2      you in reserve.  You may get called for further service on this
          3      jury.  In the meantime, do not do any independent research
          4      about this case that. Would be inappropriate, of course.  Thank
          5      you, Miss Willis.
          6              PROSPECTIVE JUROR:  Thank you.
          7              (Prospective juror exits.)
          8              THE COURT:  By my count, we have 41 cleared jurors.  I
          9      think we are able now to go to the next process.  Let me speak
10:37    10      to Mr. McAlear and make sure my count is correct.
         11              We started with 35, lost one to 24, and I think we've
         12      had seven since we started.
         13              MR. KENDALL:  We have eight, your Honor.
         14              THE COURT:  I might have missed one.  So that means we
         15      have 42?
         16              MR. KENDALL:  Yes, your Honor.
         17              THE COURT:  All right.
         18              Counsel, I've just consulted with the jury coordinator
         19      to make sure I have the information correct.  As you all know,
10:40    20      we have from the second tranche about 25 potential jurors in
         21      the jury room.  I'm not going to dismiss them now.  During this
         22      next phase, that is when I call in these 42 cleared jurors and
         23      we go through the process of putting them in the jury box and
         24      allowing counsel to exercise peremptory challenges.
         25              After that process is done and, presumably, we have a

jury of 16, I would dismiss the people in the second tranche,

but I will not unconditionally dismiss those who are left over

from the 42 that I'm going to call back, the reason being is

that sometimes over the weekend things happen and I want to

have the availability of six or so potential jurors in case

somebody for some unforeseen reason needs to be replaced on

Monday morning.  I will not swear the jury today, so jeopardy

will not attach until Monday when we come back and begin the

trial, at which point I will swear the jury, of course.

          Any problem with that?

          MR. KELLY:  Not from defendant Aziz's perspective.

          THE COURT:  Mr. Kendall?

          MR. KENDALL:  Not from Mr. Wilson's perspective.

          THE COURT:  The government?

          MS. KEARNEY:  No, your Honor.

          THE COURT:  What I propose to do now is take a short

break, maybe 15 minutes, so Mr. McAlear can get the 42 people

who will be assembled in the back of this courtroom.  After we

come back, my deputy clerk will, as she always has for all of

my prior trials, go through and randomly select numbers to sit

in the box.  Of course, she'll announce the number of the juror

and the name.  They will be seated sequentially in the jury

box, up to 16.  I hope we have 16 seats in the jury now.  We'll

remove the back chair in the back row there so we'll have 8 in

each row.

1          We will keep track of all the names.  After we have

2     all the 16, my former procedure was to ask each of them what

3     they do for a living and, if they're married, what their spouse

4     does.  We all know that now so we're not going to do that.

5     We're going to go immediately to sidebar where counsel will be

6     invited to exercise peremptory challenges one at a time.  The

7     government will go first.  The defendants will go second until

8     everyone is satisfied, understanding there is no back strike.

9     After the first round, that juror is permanent.

10:43 10          Finally, again, after we replace jurors and get,

11    whether it's two or three rounds, the last four jurors in the

12    jury box, no matter which seats they're seated in, will be the

13    alternates.  The 13th juror seated will be alternate number

14    one, the 14th, number two, et cetera, et cetera.  Any problems

15    with the procedure we're going to follow?

16          MR. KELLY:  For defendant Aziz, this is not under

17    seal?  This is going to be public?

18          THE COURT:  No.  We are going to be public now.  We're

19    through selecting individual jurors by voir dire.  The reason

10:43 20    we did that outside the public's hearing is because it's a

21    sidebar situation.  I wanted to respect the privacy of the

22    jurors.  From this point forward, it's a public hearing and we

23    will be on Zoom and people will be eligible to come into the

24    courtroom, although -- we're going to tell people that we'll

25    have a few seats reserved for the public in addition to the 42

potential jurors.  The Zoom will be turned on and there's an
overflow courtroom available.

            Any questions, Mr. Kendall?

            MR. KENDALL:  No, your Honor.  One small thing.  We
may need to step aside to confer between us to respond to you.
That's all.

            THE COURT:  By step aside, we'll be at sidebar.  You
can step back or go back to counsel table, if you want.

            MR. KENDALL:  That's all I need.  Thank you.

10:44    THE COURT:  Will all counsel be coming to sidebar or
will you reduce yourselves to two a piece?  If you want to
come, you can.  I don't have a problem with it.  It will be
crowded.

            MR. KENDALL:  If we need that, we will not crowd.

            THE COURT:  One will be designated from each side to
exercise peremptory challenges.  You'll have to tell me that.
It will be Mr. Kelly, Mr. Kendall, and for the government?

            MR. FRANK:  Me, your Honor.

            THE COURT:  Mr. Frank.

10:45    MR. KENDALL:  Can I clarify one thing?

            THE COURT:  Yes.

            MR. KENDALL:  We're obviously working in a
collaborative way.  When we exercise our challenge, is it one
government, one defense, or one government, one Aziz, one
Wilson?

 1          THE COURT:  That's up to you.  If you want to split

 2     them down the middle.

 3          MR. KENDALL:  We don't.  We want to do it as

 4     one block.

 5          THE COURT:  Obviously, the defendants have slightly

 6     more challenges.  They have 12, as opposed to eight by the

 7     government.  I used to say one for the government, two for

 8     defendants.  I haven't been doing that lately.  You are

 9     certainly free to go back and forth until you're satisfied in

10:46 10     that first round.

11          In other words, the government will exercise its

12     peremptory in the first round.  If we get to a second round,

13     defendants will go first.  A third round, government will go

14     first.  I'm not going to say this is Mr. Kelly's challenge or

15     Mr. Kendall's challenge.  You can agree to that amongst

16     yourselves, but you will both have the opportunity during that

17     first round to make challenges.

18          MR. KENDALL:  Okay.  If we want to go one, one, one,

19     one, one all the way through, that's acceptable for the Court?

10:46 20          THE COURT:  Is there a problem with that from the

21     government's side?

22          MR. FRANK:  Your Honor, my understanding is the

23     customary way of doing it is one two, is that right?

24          THE COURT:  Well, it was.  I haven't followed that

25     procedure in a couple of years because, as a matter of fact,

```
 1    both sides can exercise as many peremptories as they want

 2    during any round.  So whether it's now or later doesn't seem to

 3    make a big difference.  It will be one for the government.  One

 4    for the defendant.  One for the government.  One for the

 5    defendant and so forth.

 6             MR. FRANK:  Within each round.

 7             THE COURT:  All the way through, yes.  In the second

 8    round, it will be one for the defendant, one for the

 9    government, one for the defendant, one for the government.

10             MR. FRANK:  That makes perfect sense.  Thank you.

11             MR. KENDALL:  Thank you, your Honor.

12             THE COURT:  Anything else that needs to come to my

13    attention before we recess for about 15 minutes?

14             MR. KELLY:  That would be my request.  Could we start

15    at 11:15?  I think I have to talk to Mr. Kendall about a couple

16    matters.

17             THE COURT:  We'll make it 11:10.  Okay?

18             MR. KENDALL:  Thank you.

19             THE COURT:  I want to move this thing along.  We're in

20    recess.

21             (Recess taken 10:48 a.m. to 11:28 a.m.)

22             THE CLERK:  This is Criminal Action No. 19-10080, the

23    United States of America versus Gamal Abdelaziz and John

24    Wilson.

25             Would counsel please introduce themselves for the
```

1  record.

2          MR. FRANK:  Good morning, your Honor.  Stephen Frank,

3  Kristen Kearney, Leslie Wright and Ian Stearns for the United

4  States.

5          THE COURT:  Good morning, counsel.

6          MR. KELLY:  Good morning, your Honor.  Brian Kelly and

7  Joshua Sharp on behalf of the defendant Gamal Abdelaziz.

8          THE COURT:  Good morning, counsel.

9          MR. KENDALL:  Good morning, Mike Kendall, Andy Tomback

11:29 10  and Lauren Papenhausen on behalf of Mr. Wilson.

11          THE COURT:  Good morning, counsel.

12          Good morning, jurors.  Of course, we've seen each

13  other before.  You are the pool that have been reserved,

14  meaning that you are going to participate in the further

15  selection of a jury.  What we do now is that my deputy clerk in

16  a few minutes will at random call 16 of you to sit in the jury

17  box, and she'll instruct you which seat to sit in.

18          Then, counsel and I will withdraw to sidebar.  What

19  you will hear is what we call white noise.  It's basically

11:29 20  static to more or less preserve the privacy of the

21  conversations that are here.  It's not that we're trying to

22  keep secrets from you.  It's that we are discussing matters

23  that you need not be concerned about, but they are important to

24  the selection of this jury.

25          Then you will see how we proceed from that point

forward.  Some of you may get stricken from the jury.  It
doesn't mean you're not qualified to be a juror.  It's that we
have what we call peremptory challenges where counsel can
challenge jurors that they feel they would prefer to have
somebody else on the jury.  That's the way the system works.

With that, I'm going to turn it over to my deputy
clerk who is going to call the numbers.  You will be identified
by name and number.  We will know which seat it is that you are
seated in.

11:30    THE CLERK:  Juror No. 116, Christopher Bobek.  Please
come forward and take Seat No. 1 in the jury box.  Seat No. 1
in the seat closest to me in the front row.

PROSPECTIVE JUROR:  What was the name?

THE CLERK:  Christopher Bobek.

Would Juror No. 37, Marina Lacorazza, please come
forward and take Seat No. 2.

Juror No. 120, Jessica Willis, please come forward and
take Seat No. 3.

Juror No. 11, Julie Lightbody, please come forward and
11:32    take Seat No. 4.

Juror No. 32, Patrick Eddy, please come forward and
take Seat No. 5.

Juror No. 27, Hector Diaz, please come forward and
take Seat No. 6.

Juror No. 94, Robert Day, please come forward and take

1    Seat No. 7.

2              Juror No. 84, Dorothy Roberts, please come forward and

3    take Seat No. 8.

4              Juror No. 60, Anthony Yee, please come forward and

5    take Seat No. 9.  Mr. Yee, Seat No. 9 is the first seat in the

6    second row.

7              Juror No. 55, Lucas Ratliff, please come forward and

8    take Seat No. 10.

9              Juror No. 14, Roger Ross, please come forward and take

11:36 10   Seat No. 11.

11             Juror No. 91, Veronica Pierce, please come forward and

12   take Seat No. 12.

13             Juror No. 44, Allison Burke, please come forward and

14   take Seat No. 13.

15             Juror No. 69, Steven Kennie, please come forward and

16   take Seat No. 14.

17             Juror No. 77, Zatcha Montes, please come forward and

18   take Seat No. 15.

19             Juror No. 38, Jeffrey Wakelin, please come forward and

11:38 20   take Seat No. 16.

21             THE COURT:  All right.  As I said before, jurors, we

22   will have a sidebar conference now.  You will hear this white

23   noise, which is basically the static, to preserve the privacy

24   of our conversation.  I will see counsel at sidebar.

25                       *** Start of sidebar ***

```
  1              THE COURT:  As I've said before, in the first round,
  2    the government goes first.  Do you have any peremptory
  3    challenges, Mr. Frank?
  4              MR. FRANK:  So I'm clear, your Honor, are we going by
  5    seat number or juror number?
  6              THE COURT:  I want you to give me the seat number
  7    first and then the number of the juror, if you have it.
  8              MR. FRANK:  Yes, your Honor.  We move to strike Seat
  9    No. 4, Juror No. 11, Miss Lightbody.
 10              THE COURT:  All right.  That would be Seat No. 4,
 11    Miss Lightbody.
 12              MR. FRANK:  Yes, your Honor.
 13              THE COURT:  Now we'll go to the defendants.  Actually,
 14    give me the number of the juror first and then the seat number.
 15              MR. KELLY:  60.
 16              THE COURT:  And seat number?
 17              MR. KELLY:  Nine.  That would be Mr. Yee, number 60.
 18              THE COURT:  In seat nine.  Okay.  Back to the
 19    government.
 20              MR. FRANK:  Seat No. 7, Juror No. 94, Mr. Day.
 21              THE COURT:  94, Mr. Day.  Okay.
 22              MR. KELLY:  77.
 23              THE COURT:  77 in seat 15?
 24              MR. KELLY:  Yes, Judge.
 25              THE COURT:  Government?
```

1          MR. FRANK:  Can we have a moment, your Honor?

2          THE COURT:  Yes, you may.

3          MR. FRANK:  Seat No. 16, Juror No. 38.

4          THE COURT:  That is No. 38 in seat 16.  That is

5     Mr. Wakelin, correct?

6          MR. FRANK:  Yes, your Honor.

7          THE COURT:  Back to the defendants.

8          MR. KELLY:  Juror 32.  I think it's seat --

9          THE COURT:  Five?

11:44 10          MR. KELLY:  Yes.

11          THE COURT:  That would be Mr. Eddy.

12          MR. FRANK:  We need one more moment.

13          THE COURT:  Yes, of course.

14          MR. FRANK:  That's it from us, Judge.

15          THE COURT:  Defendants?

16          MR. KELLY:  Can we now consult?

17          THE COURT:  Yes, you may.

18          MR. KELLY:  Have they rested?

19          THE COURT:  They said they have no more challenges,

11:45 20     but after you make another challenge, I will offer them the

21     opportunity to make another challenge.

22          MR. KELLY:  Thank you.

23          THE COURT:  Yes?

24          MR. KELLY:  From this group, we don't have anymore.

25          THE COURT:  I'll go back to the government one more

       1    time.  Do you have anymore?

       2           MR. FRANK:  No, your Honor.

       3           THE COURT:  Come in, counsel.  I want to make sure I

       4    got it correct.  Those jurors currently seated in seats 4, 5,

       5    7, 9, 15, and 16 have been challenged.  Am I correct?

       6           MR. KELLY:  Do we have the juror numbers, your Honor?

       7           THE COURT:  Yes, Juror No. 11 in seat four; Juror 32

       8    in seat five; Juror No. 94 in seat 7; Juror No. 60 in seat 9;

       9    Juror No. 77 in seat 15; and Juror No. 38 in seat 16.  Those

11:47 10    are the only six challenges that I've heard, correct?

      11           MR. FRANK:  Yes.

      12           THE COURT:  All right.  Understood that the ten

      13    remaining jurors cannot be stricken in a later round.  Counsel

      14    understands that?

      15           MR. FRANK:  Yes.

      16           THE COURT:  We will fill those six seats.  You may

      17    return to counsel table.  We'll go through the process.

      18           MR. KENDALL:  Thank you, your Honor.

      19           *** End of sidebar ***

11:48 20           THE CLERK:  The following jurors have been excused and

      21    may report down to Jim McAlear in the back there.

      22           Juror No. 11, Julie Lightbody; Juror No. 32, Patrick

      23    Eddy; Juror No. 44, Robert Day; Juror No. 60, Anthony Yee;

      24    Juror No. 77, Zatcha Montes; and Juror No. 38, Jeffrey Wakelin.

      25           THE CLERK:  Filling Seat No. 4 in the front row, Juror

 1    No. 13, Paige Leighton, please come forward.

 2           Filling Seat No. 5, Juror No. 109, Kelsey Bradford,

 3    please come forward.

 4           Filling Seat No. 7, Juror No. 33, Therese Arsenault,

 5    please come forward.

 6           Filling Seat No. 9, Juror No. 16, Bryant Ayles, please

 7    come forward.

 8           Filling Seat No. 15, Juror No. 112, Susan Seger,

 9    please come forward.

11:51 10           Filling Seat No. 16, Juror No. 111, Steven Pitts,

 11    please come forward.

 12           THE COURT:  I will see counsel at sidebar.

 13                  *** Beginning of sidebar ***

 14           THE COURT:  Before we start, counsel, I need to

 15    inquire of the defendants since it is a constitutional right

 16    for your client to be at sidebar.  Do your clients waive that

 17    right?

 18           MR. KELLY:  On behalf of defendant Aziz, we waive that

 19    right.

11:54 20           MR. KENDALL:  On behalf of defendant Wilson, we do.

 21           THE COURT:  In this round, the defendants go first.

 22    Any challenges, Mr. Kelly?

 23           MR. KELLY:  In seat 4, Juror No. 13.  That would be

 24    Miss Leighton.

 25           THE COURT:  Turning to the government.

| | |
|---|---|
| 1 | MR. FRANK:  Seat 16, Juror 111. |
| 2 | THE COURT:  That would be Mr. Pitts. |
| 3 | MR. FRANK:  Yes. |
| 4 | THE COURT:  Back to the defendants. |
| 5 | MR. KELLY:  Seat 5, Juror 109. |
| 6 | THE COURT:  109 in seat 5, that would be |
| 7 | Miss Bradford, correct? |
| 8 | MR. KELLY:  Yes. |
| 9 | THE COURT:  Government? |
| 11:55 10 | MR. FRANK:  Nothing further, Judge. |
| 11 | THE COURT:  Defendants? |
| 12 | MR. KELLY:  Yes.  We strike Juror No. 33 in seat 7. |
| 13 | THE COURT:  That would be Miss Arsenault? |
| 14 | MR. KELLY:  Yes. |
| 15 | THE COURT:  I'll go back to the government and |
| 16 | inquire.  Do you have any further strikes? |
| 17 | MR. FRANK:  No, your Honor. |
| 18 | THE COURT:  Again, for the defendants, any further |
| 19 | strikes? |
| 11:56 20 | MR. KELLY:  Yes, your Honor.  Juror 112 in seat 15. |
| 21 | THE COURT:  That is Miss Seger? |
| 22 | MR. KELLY:  Yes, your Honor. |
| 23 | THE COURT:  Once again defendants? |
| 24 | MR. KELLY:  Nothing further from the defendants.  I |
| 25 | have those in seats 4, 5, 7, 15 and 16 being stricken, is that |

1    correct?

2              MR. KELLY:  Yes, your Honor.

3              THE COURT:  Understand now, if there were no further

4    strikes, the first person seated this time around would be the

5    12th juror and all of the remainders would be alternates.  Do

6    you understand that?

7              MR. KELLY:  That's a good point.  Can I discuss that?

8              THE COURT:  Yes.

9              MR. KELLY:  Thank you, your Honor.  We're fine.

11:57 10         THE COURT:  I just want to make sure I have it, 4, 5,

11   7, 15 and 16.  Those seats will be filled.  Return to counsel

12   table.

13                      *** End of sidebar ***

14              THE CLERK:  The following jurors have been excused and

15   may report down to Mr. McAlear to your right.

16              Juror No. 13, Paige Leighton; Juror No. 109, Kelsey

17   Bradford; Juror No. 33, Therese Arsenault; Juror 112, Susan

18   Seger; and Juror No. 111, Steven Pitts.

19              Filling Seat No. 4, Juror No. 118, Robert Heffernan,

11:59 20   please come forward.

21              Filling Seat No. 5, Juror No. 64, Elizabeth Marini,

22   please come forward.

23              Filling Seat No. 7 is Juror No. 79, Megan Dodd, please

24   come forward.

25              Filling Seat No. 15, Juror No. 49, Wayne Glassman,

```
 1   please come forward.
 2              Filling Seat No. 16, Juror No. 114, Maria Elena
 3   Wilson, please come forward.
 4              THE COURT:  Once again, I will see counsel at sidebar.
 5                   *** Beginning of sidebar ***
 6              THE COURT:  In the third round, government goes first.
 7   Mr. Frank.
 8              MR. FRANK:  Seat No. 15, Juror No. 49.
 9              THE COURT:  That would be Mr. Glassman, is that
10   correct?
11              MR. FRANK:  Yes.
12              THE COURT:  Defendants?
13              MR. KELLY:  In seat 16, Juror No. 14.
14              THE COURT:  That would be Miss Wilson, correct?
15              MR. KELLY:  Yes.
16              THE COURT:  Back to the government?
17              MR. FRANK:  Nothing further.
18              THE COURT:  Back to defendants.
19              MR. KELLY:  In seat five, No. 64.
20              THE COURT:  That would be Miss Marini, correct?
21              MR. KELLY:  Yes, your Honor.
22              THE COURT:  Once again to the government if they've
23   changed their mind?
24              MR. FRANK:  No, your Honor.
25              THE COURT:  Again to the defendants?
```

1     MR. KELLY:  No, your Honor.

2     THE COURT:  So those in seats 5, 15, and 16 have been

3 stricken.  You understand that those are the second, third and

4 fourth alternates.  The first alternate was the last one

5 seated.  I will have to calculate that, if somebody could come

6 up with it.  These last three will all be alternates.

7     MR. FRANK:  Your Honor, who is the 12th juror?  I'm

8 confused.

9     THE COURT:  Who is the first alternate?  Okay.  The

12:03 10 first alternate is Megan Dodd.  All the rest that are going to

11 be seated are alternates.  Other than Miss Dodd, they're all

12 jurors.

13     MR. FRANK:  Thank you.

14     THE COURT:  We're going to fill the seats 5, 15 and

15 16.

16     MR. KENDALL:  Thank you, your Honor.

17                    *** End of sidebar ***

18     THE CLERK:  The following jurors have been excused and

19 may see Mr. McAlear at the doors.

12:04 20     Juror No. 64, Elizabeth Marini; Juror No. 49, Wayne

21 Glassman; Juror No. 114, Maria Elena Wilson.

22     Filling Seat No. 5, Juror No. 52, John Marshall,

23 please come forward.

24     Filling Seat No. 15, juror No. 93, Haibo Liu, please

25 come forward.

```
 1                  Filling Seat No. 16, Juror No. 74, Karen Wilcox,
 2       please come forward.
 3                  THE COURT:  We'll see counsel.
 4                       *** Beginning of sidebar ***
 5                  THE COURT:  All right.  This round the defendants go
 6       first.  Any challenges?
 7                  MR. KELLY:  Yes, your Honor.  Seat 15, No. 93.
 8                  THE COURT:  That would be Mr. Liu, right?
 9                  MR. KELLY:  Correct.
12:07  10           MR. FRANK:  In seat 16, No. 74.
11                  THE COURT:  That would be Miss Wilcox, correct?
12                  MR. FRANK:  Yes, your Honor.
13                  THE COURT:  Defendants?
14                  MR. KELLY:  Nothing further.
15                  THE COURT:  Government?
16                  MR. FRANK:  Nothing further.
17                  THE COURT:  So those in seats 15 and 16 will be
18       excused.  We will fill those seats once again.
19                  MR. KENDALL:  May I just confirm one thing, your
12:08  20       Honor, in terms of the strikes that are left?  We have two
21       left.
22                  THE COURT:  You have two left.
23                  MR. KENDALL:  The government?
24                  THE COURT:  The government has two left as well.
25                  MR. KENDALL:  Thank you.
```

1                    *** End of sidebar ***

2              THE CLERK:  The following jurors have been excused and

3        may see Mr. McAlear at the doors:  Juror No. 94, Haibo Liu, and

4        Juror No. 74, Karen Wilcox.

5              Filling Seat No. 15 is juror No. 42, Zarabeth Golden.

6              Filling Seat No. 16, Juror No. 72, Samuel

7        Schilmeister, please come forward.

8              THE COURT:  Once more, counsel.

9                    *** Beginning of sidebar ***

12:11 10        THE COURT:  Fifth round government goes first.

11             MR. FRANK:  Juror No. 16 -- Seat No. 16, Juror No. 72.

12             THE COURT:  So that would be 72 in seat 16.  That

13       would be Mr. Schilmeister, correct?

14             MR. KENDALL:  Your Honor, we want to raise an

15       objection to that strike.  Mr. Schilmeister is the person that

16       reportedly had some issues with being on the autism spectrum.

17       Mr. Frank expressed to us that he should be automatically

18       excluded and not even called back because of the disability.

19       I'd like to know if the government has a reason to strike him

12:11 20       other than he has a disability.  He expressed very strong views

21       about the disability that aren't appropriate.  He may have

22       autism, but he was very responsive and very articulate

23       understanding your questions.  We think that's not a proper

24       strike, your Honor.

25             THE COURT:  Mr. Frank?

1          MR. FRANK:  Mr. Kendall always manages to personalize

2     it, which I resent, but we expressed views based on his

3     questionnaire in which he said that he is uncomfortable in

4     crowded places.  He also was unable to answer the question of

5     what his parents did professionally, he wasn't sure what kind

6     of lawyers they were.  It seemed to us that he was not

7     following the Court's questions, was confused.  For those

8     reasons, we move to strike him.

9          MR. KENDALL:  If I may, your Honor, we specifically

12:12 10   asked him if he had any problems sitting in the box with the

11    jury.  He said no, the courtroom was fine, the juror was fine.

12    The transcript, I believe, will show his response.

13         THE COURT:  I don't see that the government has

14    demonstrated that they're striking him because of his

15    disability in their peremptory challenge to strike him.  I'm

16    going to allow them to strike him.

17         MR. KENDALL:  Thank you for your patience, your Honor.

18         THE COURT:  Are there any other strikes?

19         MR. KELLY:  In seat 15, Juror 22.

12:13 20   THE COURT:  That will be Miss Golden, correct?

21         MR. KELLY:  Yes, your Honor.

22         THE COURT:  Then both of the seats 15 and 16, the hot

23    seats, will be filled one last time or maybe not.  Each side

24    has one more peremptory challenge.

25         Let me say this, counsel, while we're here.  After we

1    have a neutral jury, I am going to dismiss those in the back of

2    the courtroom for today.  As I think I'd said later, I'm not

3    going to dismiss this jury in case we have some problems over

4    the weekend.  If we were to have a problem and on Monday

5    morning had to call one more of the jurors back, we would call

6    the five or six or eight or however many there are and the

7    deputy would, just as she's done up to this point, at random

8    pick a juror or two or however many we would have.  Understand

9    at that stage, if you use your last peremptory now, you would

12:14 10   have no peremptories on Monday.  So just stand forewarned that

11   the possibility of replacement might mean you wouldn't have any

12   peremptories.

13           Now, I would hear counsel if you wanted to argue

14   jointly that you ought to have one more peremptory, if that

15   happens, but as of now, both sides have used all but one of

16   their peremptories.  Under the rules that we have going now, if

17   you use that today, you wouldn't have it available in the

18   unlikely event that we have to go and pick some new juries on

19   Monday.

12:14 20           MR. KENDALL:  Can we have one moment?

21           THE COURT:  Yes, you may.

22           MR. FRANK:  We would agree to one additional in the

23   event that happens.

24           MR. KENDALL:  We would agree as well.

25           THE COURT:  So you have one left today.  If this

1  unlikely occurrence happens on Monday, each side will have one

2  additional.

3       MR. KENDALL:  Yes.  Thank you, your Honor.  We

4  appreciate it.

5       THE COURT:  So we need to replace the people in 15 and

6  16 one more time.

7       MR. KENDALL:  Yes.  Thank you.

8                    *** End of sidebar ***

9       THE CLERK:  The following jurors have been excused and

12:16 10  may see Mr. McAlear at the door: Juror No. 42, Zarabeth Golden,

11  and Juror No. 72, Samuel Schilmeister.

12       Filling Seat No. 15, Juror No. 106, Monica Reyes,

13  please come forward.

14       Filling Seat No. 16, Juror No. 82, Melanie

15  Bettencourt, please come forward.

16                 *** Beginning of sidebar ***

17       THE COURT:  This round defendants first.

18       MR. KELLY:  Using the last one, seat 16, Juror 82.

19       THE COURT:  That would be Miss Bettencourt, right?

12:19 20       MR. KELLY:  Yes.

21       THE COURT:  Government?

22       MR. FRANK:  Nothing further.

23       THE COURT:  So we will replace the last seat.  The

24  defendants are out of challenges.  The government has one left

25  as of now.

1           Counsel, what I'm going to do now is I'm going to

2  declare that we have a jury indifferent and then dismiss the

3  folks in the back of the courtroom, but tell them that they

4  need to remain available on Monday.  I'm going to read out that

5  charge that we gave them yesterday just to remind them that

6  they're not to do any text messaging, they're not to talk to

7  anybody about the case because they still are eligible to be on

8  this jury, notwithstanding the fact that it's unlikely that

9  they will be called.  All right?

12:20 10           MR. FRANK:  Yes, your Honor.

11           MR. KENDALL:  Thank you, your Honor.

12                     *** End of sidebar ***

13           THE CLERK:  Juror No. 82, Melanie Bettencourt, you

14  have been excused.

15           Filling Seat No. 16, Juror No. 87, Mark Callahan,

16  please come forward.

17           THE COURT:  Counsel.

18                     *** Beginning of sidebar ***

19           THE COURT:  Government?

12:21 20           MR. FRANK:  We're satisfied with the jury.

21           THE COURT:  Then, counsel, this is the jury.

22           I will declare that we have a jury indifferent.  I'm

23  going to dismiss them, the remainder of the jurors, with the

24  instructions that they are to remain available to be called

25  Monday.

1            I'm going to say a few other things.  I'm going to

2     tell them about when the trial is going to start, what the

3     general procedure's going to be day-to-day, that is we go

4     mornings and most afternoons.  I'm also going to tell them

5     there's a few days that they will have off, namely next

6     Thursday, Yom Kippur, and the Thursday at the end of the month

7     when I'm detained on MDL business.

8            Also, I understand, Mr. Kendall, you wanted to have no

9     afternoon session on Wednesday.

12:22 10           MR. KENDALL:  I'll do whatever is respectful to the

11    court.  The Yom Kippur holiday starts midday Wednesday.  If we

12    didn't have a midday session, that would be wonderful.  If the

13    Court thinks we need it for the schedule, we can keep it.

14           THE COURT:  We will shorten it.  Realistically, what

15    do you need?  I'll give you what you need.

16           MR. KENDALL:  I can work with whatever's good for the

17    Court.  It just means a little more rushing.

18           THE COURT:  Can we leave it we'll see how we're going

19    and we won't go after three for sure?

12:23 20           MR. KENDALL:  I appreciate that.  Thank you, your

21    Honor.

22           THE COURT:  The previous day the Court has their

23    monthly meeting in the afternoon, so we may not have an

24    afternoon session on Tuesday.  We'll go to 1 o'clock for sure.

25    Maybe we can go over to maybe about 1:30 on that day, but we

will not have an afternoon session on Tuesday, the second day

of trial.

MR. KENDALL:  Great, your Honor.

THE COURT:  Those 2 days we'll have abbreviated

afternoon sessions.

Anything else?

MR. KENDALL:  No, your Honor.

THE COURT:  All right.  That's what I'm going to do,

give a short little blurb to the jurors and then we'll have

12:24 another session this afternoon outside the hearing of the jury.

*** End of sidebar ***

THE COURT:  All right.  I declare that we have a jury

indifferent.  That means that you are the jury in this case.

I'm going to dismiss you shortly with a few instructions, and

also those of you in the back of the room who are still

reserved in this case.  I'm going to ask you, and give you some

instructions, to remain reserved over the weekend.  We don't

know what might happen between now and Monday morning.  I'm not

going to swear in jury in.  The case is not going to start

12:25 until Monday.  There is an outside possibility we may need to

avail ourselves of your attendance.  So those of you who are in

the back of the room and not been seated in the jury thus far

are instructed to remain available.  I'm going to now give some

instructions to both the sitting jury and those who remain.  I

want you to listen to it carefully.  I'm going to sit down to

1    do that, if you don't mind.

2          Ladies and gentlemen, you have been chosen to be the

3    judges of the facts in this case.  We will begin this trial

4    next Monday, that is on Monday, September 13th at 9:00 a.m. in

5    this courtroom, at which time I will instruct you on your duty

6    and conduct as jurors and the role of the judge, the jury, and

7    the lawyers.

8          Now, for the duration of this trial, we will start

9    each morning at about 9:00 a.m.  We will start about 9:00 a.m.

12:26  10   We'll take a short morning recess, break for lunch at about

11   1 o'clock, reconvene at about 2 o'clock, and then proceed with

12   the trial until approximately 3:30 each day, not after 3:30.

13          On days on which you are deliberating to a verdict, we

14   will continue until about 5:00 p.m.  As I said, the trial will

15   begin on Monday morning and will proceed day-to-day.  I expect

16   it will be completed by Friday, October 8th, or at least during

17   the week of October 11th.  In other words, it's going to be

18   done by the middle of October.  I'm giving that an outside --

19   there's a possibility it may be before that.  In any event,

12:27  20   it's going to be concluded by the middle of October.

21          Now, during the course of the trial, there are going

22   to be certain days that we will not have sessions.

23          I already know that next Tuesday afternoon, that's the

24   14th, I have prior business so we're only going to go until

25   about one or 1:30 on Tuesday.

1          Also, on Wednesday, in anticipation of the Jewish High

2     Holiday, which is Yom Kippur on Thursday, we're going to break

3     a little earlier than 3:00 p.m. Wednesday.

4          We will have no session on Thursday.  That's the High

5     Jewish Holiday.

6          Then, on Thursday, September 30th, the Court has prior

7     judicial business that I must attend to, so we will not have a

8     session on Thursday, September 30th.

9          Now, this schedule may change as we go along.  There

12:28 10   may be a day we don't need a full afternoon schedule, and I

11    will let you know about that.

12         You are now going to be excused for the weekend.  I

13    will remind you that you are not to, under any circumstances,

14    discuss this case with anyone or conduct any independent

15    research.  If you did so, it would be in violation of your oath

16    as jurors and it might even cause a mistrial at great expense

17    to the parties and the Court.

18         Then you may recall that yesterday I gave you a

19    written instruction.  I'm going to read that again to put it in

12:28 20   your heads.

21         Please do not discuss this case with anyone, including

22    your family members, your co-workers, your friends, or your

23    fellow potential jurors.  Please do not communicate with anyone

24    about this case using your cell phone, e-mail, smart phone,

25    text messaging, Twitter, blogs or websites, internet chat

rooms, or social networking websites, such as Facebook, MySpace, LinkedIn or YouTube.  As long as you are a potential juror in this case, you are not to use any of these tools of technology in connection with this case.

If you encounter the lawyers, witnesses or parties involved in this case, please do not say anything to them. Please do not read or listen to anything which in any way relates to this case and do not try to do any independent research or make any investigation about the case on your own. The reason for all of this is that the case is going to be decided based on the evidence that comes into this courtroom and not on the basis of anything else that you may read or anybody else's comments.

The first thing that's going to happen when you go home and say I've been put on a jury or I'm potentially going to be on the jury is somebody's going to say let me tell you about a case that I heard about.  They're going to be sincere in that.  There's nothing wrong with it.  You use me as the foil.  Say there's this ornery judge in Boston that doesn't want to let us talk about the case, and that's true.  I will be ornery if you do that because it does jeopardize the whole concept of our judicial system.  You are not to be influenced by anything outside the evidence that will come before you in this trial.  That's going to happen in this courtroom and not at home or talking to friends or looking at anybody on the

1    internet.

2            So please honor my instructions.  I'm going to ask the

3    16 of you on Monday morning before we start the trial whether

4    you've been able to honor my instructions.  I hope to have a

5    unanimous showing of 16 hands.  If, in the unlikely event we

6    need to call upon any of those that are alternates at this

7    stage, I will be in touch with you.  In fact, we will be in

8    touch with you on Monday to let you know that you are no longer

9    obligated to honor my instructions.  Until Monday, until you're

12:31 10   notified, I ask those in the back of the room to honor those

11   instructions.

12           Mr. McAlear will show you where to go.  My deputy is

13   going to show them the jury room right now.  You're going to go

14   through this door.  You'll see where you're going to be

15   assembling on Monday morning in the jury room.  My deputy will

16   show you that.

17           Other than that, I wish you a pleasant weekend.  You

18   can think about everything else except this case.  Don't worry

19   about this case.  Monday morning you'll go to work and that's

12:31 20   when you'll be concerned about the case.  Have a pleasant

21   weekend.  I'll see you Monday morning.

22           THE CLERK:  All rise for the jury.

23           (Jury exits.)

24           THE COURT:  We need to go over some matters but I'm

25   not prepared to have a final final pretrial conference until

```
 1    2 o'clock.  At 2 o'clock, I'll ask you to come back.  Anything
 2    we have then we'll go over the logistics of what we're going to
 3    be doing on Monday morning and any other questions that counsel
 4    have.  I think we all need a break right now.  I'll be back at
 5    2 o'clock, unless there's something that can't wait until then.
 6               MR. KELLY:  It can wait.
 7               THE COURT:  We'll see you back here at 2 o'clock.
 8               (Recess taken 12:33 to 2:02 p.m.)
 9               THE COURT:  Good afternoon, counsel.  As we start, I
10    have issued an order ruling on all of the outstanding motions
11    with the exception of the motions that were filed by nonparties
12    yesterday.  I've not dealt with them, nor do I intend to deal
13    with them immediately.  I think they're not as time sensitive
14    as some of these others.
15               I don't expect to hear your reaction to the entry of
16    my order with perhaps the one exception being the motion for
17    sequestration, which is the last motion, No. 8, starting on
18    page 5.  I think you've stipulated, at least somewhat, as to
19    who is going to be sequestered and who isn't.  I'm not going to
20    sequester witnesses during the opening.  To the extent that the
21    Wilson's are going to be in the courtroom at that time, I am
22    not going to allow counsel to, quote, introduce them.  You can
23    refer to them during your opening if you want to, but I'm not
24    going to have you have them stand up or say anything.  That is
25    is inappropriate.
```

1           MR. KENDALL:  Your Honor, am I even allowed just to

2     point to them?

3           THE COURT:  You can point to them.

4           MR. KENDALL:  That's all I'll ask.  I'm just going to

5     say this is my client John Wilson.  That's his wife Leslie

6     Wright and their three children.  That's it.

7           THE COURT:  That's fine.

8           If they are going to be witnesses, they're going to be

9     sequestered after the opening.

02:04 10           MR. KENDALL:  Understood.

11           THE COURT:  The exceptions I've stated at the bottom

12     of five and going on to page 6.  The government is allowed to

13     have a single designated agent that can be in the courtroom

14     even though he or she may testify, but not all three.  If the

15     other two are going to testify, they can't be in the courtroom

16     until after they've testified.

17           MR. FRANK:  So only one of them is on our witness

18     list.  All three have been subpoenaed.  That's the issue,

19     Judge.

02:04 20           THE COURT:  In other words, the defendants are

21     intending to call them.

22           MR. KENDALL:  Yes, your Honor.  It's very likely,

23     particularly how we see how Singer plays out, whether he's

24     called or not.  They've been subpoenaed in good faith.  There's

25     a high likelihood we will call them, but it depends on what

1  comes out at trial.

2      THE COURT:  That may be a difference.  Why does the

3  government feel they need to have the three agents in the

4  courtroom during the entire trial?

5      MR. FRANK:  We do not, your Honor.  One of the agents

6  we've agreed should be sequestered until she testifies.  She's

7  the agent on our witness list.  The other two agents are

8  assisting us.  They've been at witness prep sessions throughout

9  our preparation for the trial.  They've been the case agents on

02:05 10  the case.  I've never had a situation before where merely

11  because the defendant has subpoenaed the case agents, which is

12  pretty standard, that they are therefore excluded from the

13  proceedings.  They're assisting us throughout.

14      THE COURT:  My ruling is more aimed toward where the

15  government plans to offer the testimony of an agent and I have

16  not allowed them, especially not allowed them to sit at counsel

17  table until after.  If it's just that they've been subpoenaed

18  by the defendants, I'm going to allow the agents to be in the

19  courtroom but not at counsel table.

02:06 20      MR. FRANK:  Thank you, your Honor.

21      THE COURT:  Is there anything else with respect to the

22  sequestration that needs to be dealt with?

23      MR. KENDALL:  One small courtesy, your Honor.  We've

24  worked out amongst ourselves how to deal with the 18 slots for

25  the three teams.  We're going to be six, six, six.  Only for

1 the openings we were wondering if we could have two of the

2 eight public seats for members of the Wilson family during the

3 opening, otherwise within the configuration there isn't enough

4 for the family.  They'll be gone after the opening.

5          THE COURT:  So two of the eight would be Wilson

6 family?

7          MR. KENDALL:  In the Court allows, yes, your Honor.

8          THE COURT:  Any objection to that?

9          MR. FRANK:  Two of the eight will be present at

02:07 10 opening and they will be members of the Wilson family.

11          MR. KENDALL:  Of the eight public seats, two of those

12 would be used by the Wilson family for opening only.

13          MR. FRANK:  We don't have a position on that, Judge.

14          THE COURT:  I will allow that.

15          MR. FRANK:  Your Honor, if I could clarify.  The third

16 agent may be present for openings but then has to be

17 sequestered.

18          THE COURT:  Yes.

19          MR. FRANK:  Thank you, your Honor.

02:07 20          THE COURT:  How we handle the public seating of the

21 eight during the course of the trial is something I don't want

22 to get into the details of.  Either my deputy or somebody in

23 the Clerk's Office will be handling that.

24          MR. FRANK:  Your Honor, for witnesses who have

25 attorneys representing them while they testify, may those

1    attorneys be in the courtroom?

2         THE COURT:  I would think that would be an exception

3    that should be allowed.

4         We need to turn to the openings just to remind

5    counsel.  As I understand it, the government will have up to

6    45 minutes.  The defendants will have up to 30 minutes.  Who

7    will be starting?

8         MR. KELLY:  Your Honor, if I could ask the Court this:

9    Initially, the defense was given 90 minutes because there was

02:08 10  three of us left.  Third one is gone.  We're not asking for the

11   full 30 minutes.  I'd respectfully ask for five more minutes so

12   I don't violate the 30-minute deadline.  35 minutes, maybe

13   won't use it.  I don't want to go blind.  I'm asking for

14   35 minutes for myself, Mr. Kendall.  That would be 70 instead

15   of the original 90, so we'd save 20 minutes.

16        THE COURT:  Does the government have any position?

17        MR. FRANK:  Government has no position on that, Judge.

18        THE COURT:  All right.  35.

19        MR. KELLY:  Thank you, your Honor.

02:08 20       THE COURT:  Each of the defendants.

21        MR. KENDALL:  Thank you, your Honor.

22        MR. FRANK:  As a logistical matter, Judge, we expect

23   to have a Power Point for opening.  I believe this monitor we

24   discussed with the deputy could be here.

25        THE COURT:  It could be.  The deputy will show you

```
 1    how.  Understand again about my pet peeve of not wandering
 2    during openings.  That doesn't mean you can't go retrieve a
 3    document if you need to.  I don't like you wandering back and
 4    forth.  You can't approach the jury box within 10 feet.
 5    There's an added reason for that with the COVID.  I've never
 6    allowed counsel to approach closer than 10 feet.  If you want
 7    to use this portable lectern here, that's fine.  Don't go
 8    closer than 10 feet to the box and don't wander around while
 9    making your opening.  If you have to go point something out,
02:10 10   that's okay.  The process of wandering back and forth is what
11    bothers me.
12         MR. FRANK:  Yes, your Honor.  So we may point to
13    something on the Power Point?
14         THE COURT:  Yes.
15         MR. FRANK:  Thank you, your Honor.
16         THE COURT:  Who is going to be going first -- the
17    government opens.  Who goes first for the defense?  It will be
18    you, Mr. Kelly?
19         MR. KELLY:  Yes.
02:10 20   THE COURT:  Then Mr. Kendall to follow.
21         MR. KENDALL:  Yes, your Honor.
22         THE COURT:  Again, I caution counsel that this is not
23    a second closing argument that you're making at opening.  If
24    you can't say I expect the evidence to show before everything
25    that you say, you shouldn't be saying it.  That's what I'm
```

1    going to tell the jury in my opening instructions, that

2    openings are not arguments.  You will be violating what I've

3    said if you go beyond that.  All right?  Everybody understand

4    that?

5              MR. KELLY:  Yes, your Honor.

6              THE COURT:  Monday we will get through the openings

7    and, therefore, the government's case will start.  Who will be

8    the witnesses for the government on Monday and Tuesday?

9              MR. FRANK:  Your Honor, I expect our first witness

02:11 10   will be Bruce Isackson.

11             THE COURT:  He is who?

12             MR. FRANK:  He's a cooperating witness.  He's one of

13   the parent participants in the scheme.

14             THE COURT:  How long approximately will his direct

15   exam be?

16             MR. FRANK:  Between two and 3 hours.  Could be about

17   3 hours.

18             THE COURT:  Approximate cross?

19             MR. KELLY:  We're just getting the notice.  I'm not

02:11 20   faulting them.  This is the time.  We have to determine how

21   much cross is needed for him.  I can't imagine it would be more

22   than the direct.

23             THE COURT:  But it may be as much as two or 3 hours?

24             MR. KELLY:  Doubtful.

25             THE COURT:  That is likely to be the witness that will

 1    complete Monday.

 2            MR. KELLY:  Yes.

 3            THE COURT:  If we get beyond that, who will be the

 4    government's next witness on Tuesday?

 5            MR. FRANK:  It is likely to be Special Agent Keith

 6    Brown.  It is possible that we would call Davina Isackson,

 7    Mr. Isackson's wife.

 8            THE COURT:  Keith Brown, how long would his direct be

 9    approximately?

02:12 10            MR. FRANK:  His direct is also in the two to 3-hour

11    range.  Miss Isackson, if she were to testify, her direct is in

12    the 90-minute range.

13            MR. KELLY:  I would only say this, you're supposed to

14    tell us the witnesses, not potential.

15            MR. FRANK:  It is likely we will go to Special Agent

16    Brown but we're now on Friday talking about Tuesday.  I

17    understood the instruction previously to be that we were to

18    tell you on Friday who is coming on Monday.

19            THE COURT:  Let's not have an argument here.  I

02:13 20    understand if the government feels the testimony of

21    Mr. Isackson isn't complete that they may need Mrs. Isackson.

22    I can't imagine why you would need 90 minutes when you've had

23    two to 3 hours for.  I understand the reasons for that.  We

24    accept the conditional statement you may or may not call her

25    in.  Mr. Brown will be the next witness after the Isackson's?

1           MR. FRANK:  Yes, your Honor.

2           THE COURT:  His direct will be two to 3 hours?

3           MR. FRANK:  Yes, your Honor.

4           THE COURT:  That looks like it takes us well into the

5   second day, if not through the second day.

6           MR. FRANK:  Yes, your Honor.  I should note it is not

7   our present intention to call Mr. Singer to testify.  He

8   remains on our list in case we change our mind, but that is not

9   our present intention.

02:14 10          MR. KELLY:  And we reserve our right to call him, your

11   Honor.

12           THE COURT:  Of course.

13           MR. KENDALL:  I didn't hear what Mr. Frank said, your

14   Honor.

15           THE COURT:  He said it is the intention right now of

16   the government not to call Mr. Singer.

17           MR. KENDALL:  That's their intention.

18           THE COURT:  That's their intention, present intention

19   without prejudice to changing their mind, which, of course, you

02:14 20   have a right to do too.

21           MR. KENDALL:  May I ask one thing, your Honor?

22           MR. KENDALL:  Of course.

23           MR. KENDALL:  With respect to Keith Brown, we don't

24   know what he's going to testify to at all.  We don't see his

25   name showing up on any 1023 reports.  I don't believe he was

1    part of an investigation that we've appreciated.  We don't know

2    if he's a summary witness, if he's going to put in tapes.

3    Could the government tell us the general topic of Mr. Brown's

4    testimony?

5              THE COURT:  Mr. Frank?

6              MR. KENDALL:  I may have missed something.

7              MR. FRANK:  His name does appear on several 1023

8    reports.  He's going to provide a brief background of the

9    investigation and principally is there to introduce e-mails and

02:15 10   phone calls.

11             MR. KENDALL:  Thank you.

12             MR. TOMBACK:  One last thing.  I'm Andy Tomback.  I

13   thought that the sequence was Isackson, Brown, Isackson?

14             MR. FRANK:  It would be Isackson, possibly Isackson,

15   brown.

16             MR. TOMBACK:  Thank you.

17             THE COURT:  Is there anything else that needs to come

18   to the Court's attention before we adjourn for the weekend?

19             MR. FRANK:  Your Honor, we weren't clear based on your

02:15 20   Honor's comments to the jury.  Is October 1st still a day when

21   the Court is planning?

22             THE COURT:  The MDL has decided to go remote, so I

23   will be working all day Thursday on MDL stuff, but I won't be

24   out of town on Friday.  We will have a session on October 1st,

25   Friday, October 1st.

1          MR. FRANK:  Thank you, your Honor.

2          THE COURT:  I should have mentioned that to you.  I'm

3    sorry I didn't.  Things seem to be getting cancelled rather

4    than scheduled more frequently.

5          Anything else from the defendants' side?

6          MR. KELLY:  For defendant Aziz, nothing further, your

7    Honor.

8          THE COURT:  Mr. Kendall?

9          MR. KENDALL:  One second to check my notes.

02:16 10          THE COURT:  You may do so.  This is likely to be the

11    lineup on the tables as we go forward?  Is that fair to say?

12          MR. KELLY:  Yes, your Honor.  Just logistically, we

13    confirmed with the government, they're fine having their

14    paralegal here and IT people here and we're going to sit there

15    as defendants.

16          THE COURT:  In other words, the government's going to

17    have the front left table here.

18          MR. KELLY:  That one, one-third of this, and the video

19    people and tape people are sitting here.  Then the defendants

02:17 20    are in this back row.

21          THE COURT:  I see.  Mr. Kelly, you'll be on that

22    table.

23          MR. KELLY:  I will.

24          THE COURT:  With your other co-counsel.

25          MR. KELLY:  Yes.  This group here.

1          THE COURT:  And Mr. Kendall will be where he is.

2          MR. KENDALL:  We'll tuck Mr. Wilson over here.

3          THE COURT:  So it will be four per table basically.

4          MR. KELLY:  Quick math check, yes, your Honor.

5          MR. KENDALL:  Nothing further in my notes.

6          THE COURT:  Thank you, counsel.  We will go forward

7   with the trial starting at 9:00 a.m. on Monday morning.  Have a

8   good weekend.

9          (Whereupon, the proceedings concluded at 2:18 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              C E R T I F I C A T E

2

3

4    UNITED STATES DISTRICT COURT )

5    DISTRICT OF MASSACHUSETTS    )

6

7

8          I, Kristin M. Kelley, certify that the foregoing is a

9    correct transcript from the record of proceedings taken

10   September 10, 2021 in the above-entitled matter to the best of

11   my skill and ability.

12

13

14    /s/ Kristin M. Kelley           November 2, 2021

15    Kristin M. Kelley, RPR, CRR              Date
      Official Court Reporter
16

17

18

19

20

21

22

23

24

25