**United States District Court**
**District of Massachusetts**

———————————————————————— )
                                          )
United States of America,                 )
                                          )
            v.                            )        **Criminal Action No.**
                                          )        **19-10080-NMG**
Gamal Abdelaziz and John Wilson,          )
                                          )
            Defendants.                   )
———————————————————————— )

**MEMORANDUM & ORDER**

GORTON, J.

On October 8, 2021, after a 20-day jury trial, defendant Gamal Abdelaziz was convicted of one count of conspiracy to commit mail and wire fraud and honest services mail and wire fraud, in violation of 18 U.S.C. § 1349, and one count of conspiracy to commit federal programs bribery, in violation of 18 U.S.C. § 371.  Defendant John Wilson was convicted of one count of conspiracy to commit mail and wire fraud and honest services mail and wire fraud, in violation of 18 U.S.C. § 1349, one count of conspiracy to commit federal programs bribery, in violation of 18 U.S.C. § 371, two substantive counts of federal programs bribery, in violation of 18 U.S.C. § 666, and one count of filing a false tax return, in violation of 26 U.S.C. § 7206.

At the close of the government's case, the defendants moved for judgments of acquittal under Federal Rule of Criminal Procedure 29 (Docket No. 2330), which they renewed at the close

-1-

of the evidence (Docket No. 2351).  Following the verdict, the defendants again renewed their motions and moved for a new trial under Federal Rule of Criminal Procedure 33 (Docket No. 2412). The government opposes all pending motions.  For the reasons that follow, the defendants' motions will be denied.

## I.   Background

The facts underlying the present case have been recited on several occasions. See, e.g. Docket Nos. 1169 and 1334.  For present purposes, it suffices to recount that the defendants, along with over a dozen other alleged co-conspirators, were indicted in March, 2019, and charged with the above-listed crimes in connection with the college admissions of several of their respective children.  Wilson and Abdelaziz, with the aid of William "Rick" Singer and others, were alleged to have each fraudulently designated a child as an athletic recruit to secure that child's admission to the University of Southern California ("USC").  The indictment further alleged that Wilson, again with the aid of Singer, attempted to gain admission for his twin daughters to Stanford and Harvard, respectively, by similar means.  In September, 2021, this case proceeded to a jury trial which continued for four weeks and resulted in the conviction of both defendants on all charges tried.

In their motions for judgment of acquittal and a new trial, defendants allege error in essentially every ruling made by the

-2-

Court during their trial, and in numerous orders issued by the Court during the two and a half years that this case has been pending.  With respect to a majority of those rulings, defendants incorporate by reference their prior memoranda in support of motions, previously denied, without substantial argument or explanation.  As to those for which they do provide elaboration, their arguments are not materially different from those previously made, and the Court finds them no more convincing for their repetition.  Accordingly, the Court specifically addresses herein only those disputations that raise issues which the Court has not previously considered and denied.

## II.  Motion for Acquittal

### A. Legal Standard

Under Fed. R. Crim. P. 29(c), the Court "may set aside the verdict and enter an acquittal".  In ruling upon a motion for judgment of acquittal under Rule 29, the Court must "consider the evidence as a whole taken in the light most favorable to the government" and decide whether a rational jury could have found guilt beyond a reasonable doubt. United States v. Smith, 680 F.2d 255, 259 (1st Cir. 1982).  If the guilty verdict is supported by a "plausible rendition" of the record, the Court must not disturb it. United States v. Moran, 312 F.3d 480, 487 (1st Cir. 2002).

**B. Application**

The defendants argue that they are entitled to a judgment
of acquittal because the government has purportedly failed to
prove any of the elements of each of the charged crimes. See
Docket No. 2330 at 2.  They challenge every aspect of their
conviction as resting on a factually deficient basis and contend
that for numerous reasons their convictions are unsupportable as
a matter of law.

Those arguments are without merit.  While the Court does
not find it necessary to revisit each of the nearly 250 exhibits
and the trial testimony of more than a dozen witnesses, the
evidence presented at trial offered the jury, on every count, a
substantial basis for its guilty verdict.  That was true both at
the time the government rested and at the close of all of the
evidence. See Fed. R. Crim. P. 29(b).

The defendants devote most of their Rule 29 motions to
contesting questions of law upon which the Court has already
ruled.  For instance, they contend that admissions slots are not
property, that there was no tangible economic harm to the victim
university and thus no bribe and that co-conspirator statements
should not have been admitted.  The Court has addressed those
issues and declines to reconsider its rulings. See Docket No.
1334 (holding that admissions slots constitute property and that
the payments to USC could constitute bribes), Docket No. 2405 at

-4-

70:25-71:6 (holding that the government satisfied its burden to admit co-conspirator statements under United States v. Petrozziello, 548 F.2d 20 (1st Cir. 1977)).

Finally, the two contentions that defendants raise that are not duplicative of previously rejected arguments are confronted here.

### i.  Constructive amendment and prejudicial variance

First, the defendants argue that the government's use of the term "athletic recruitment slots" at trial constituted a constructive amendment or a prejudicial variance to the fourth superseding indictment which charged them, in relevant part, with participating in a conspiracy the object of which was to secure admissions slots.

A constructive amendment of an indictment occurs when its charging terms are altered, literally or in effect, by the government after the grand jury has last passed on them. United States v. Brandao, 539 F.3d 44, 57 (1st Cir. 2008).  For its part, a variance occurs when the indictment is unamended but the facts proven at trial differ from those alleged in the indictment. United States v. Fisher, 3 F.3d 456, 462-63 (1st Cir. 1993).  While a constructive amendment is prejudicial per se, a variance is only prejudicial if it affected the defendant's substantial rights, that is, his right to have

knowledge of the charges against him sufficient to prepare an
effective defense. Id.

Neither a constructive amendment nor a variance occurred in
this case.  The fourth superseding indictment and the
government's theory at trial were materially identical.  They
both identified athletic recruitment as the means employed by
the defendants to obtain admissions slots for their children.
For instance, as to defendant Abdelaziz, the fourth superseding
indictment alleged that he paid Singer $300,000

> to facilitate his daughter's admission to USC as a
> purported basketball recruit [and that Donna Heinel]
> obtained the subcommittee's approval to admit her to USC as
> a basketball recruit.

Docket No. 732 at 18.  With respect to defendant Wilson, the
fourth superseding indictment alleged that he, too, paid Singer
to

> facilitate his son's admission to USC as a purported water
> polo recruit [and that the] USC subcommittee for athletic
> admissions approved the admission of Wilson's son as a
> water polo recruit.

Id. at 35-36 (capitalization removed).  It alleged similar
facts, i.e. the use of fake athletic credentials to obtain
admission of Wilson's daughters to Harvard and Stanford. Id. at
37-38.  At trial, the government presented evidence showing that
the defendants sought admission for their children in that
manner and thus there was no constructive amendment or variance.

-6-

### ii.  Venue

Second, the defendants' argument that there was
insufficient evidence of venue with respect to Counts I and II
is unavailing.  As the Court instructed the jury, venue requires
proof only by a preponderance of the evidence. United States v.
Valenzuela, 849 F.3d 477, 487 (1st Cir. 2017).  Where, as here,
an alleged conspiracy spanned several jurisdictions, the
defendants may be tried in any jurisdiction where any act in
furtherance of the conspiracy occurred. See United States v.
Uribe, 890 F.2d 554, 558 (1st Cir. 1989).  Further, in a
conspiracy case, the act giving rise to venue need not be
committed by the defendant. United States v. Georgiadis, 819
F.3d 4, 11 (1st Cir. 2016) (explaining that venue is proper in
any district where defendant or a co-conspirator committed an
overt act in furtherance of the conspiracy), Docket No. 1399
(holding the same).

Defendants contend that because the evidence was
insufficient to prove a single conspiracy, venue as to each
defendant must be established by that defendant's own acts.  The
jury was instructed on the government's burden to prove a single
conspiracy as to Counts I and II and found that such
conspiracies existed.  The Court considers the defendants'
argument to be without merit. See United States v. Bedini, 861
F.3d 10, 14 (1st Cir. 2017) (stating that a jury's finding of a

single conspiracy is disturbed only if there is insufficient evidence to support it).

In any case, sufficient evidence of venue exists to support the jury's verdict on the conspiracy counts.  For instance, the evidence showed that, <u>inter alia</u>, 1) Singer arranged to meet with John Wilson in Boston and called him while both were in Boston to postpone the meeting, 2) Singer met Yale soccer coach Rudy Meredith in Boston, 3) Singer called Heinel while in Boston and 4) Singer called Abdelaziz while in Boston.  From this and other evidence, the jury could, and did, reasonably conclude that venue in Massachusetts was proper.

### III. <u>Motion for New Trial</u>

#### A. Legal Standard

District courts may allow a motion for a new trial "if the interests of justice so require". Fed. R. Crim. P. 33(a).  While the Court's authority to order a new trial is greater than its authority to grant a motion for acquittal, <u>see</u> <u>United States</u> v. <u>Ruiz</u>, 105 F.3d 1492, 1501 (1st Cir. 1997), the remedy is nevertheless "sparingly used", <u>United States</u> v. <u>Merlino</u>, 592 F.3d 22, 32 (1st Cir. 2010).  A new trial is appropriate "only where there would be a miscarriage of justice and where the evidence preponderates heavily against the verdict". <u>Id</u>. (quoting <u>United States</u> v. <u>Wilkerson</u>, 251 F.3d 273, 278 (1st Cir. 2001)).

**B. Application**

As with their motion for acquittal, defendants proffer numerous arguments in favor of a new trial.  The vast majority of those arguments have been previously considered and rejected by the Court.  Two novel claims addressed here for the first time fare no better.

**i. The wiretaps**

Defendants allege that a new trial is required because the government withheld "crucial exculpatory evidence" relating to the consensual wiretaps of Singer's phone in violation of Brady v. Maryland, 373 U.S. 83 (1963).  The evidence at issue is a fax cover sheet dated September 28, 2018, and a fax response cover sheet of the same date.  The cover sheets pertain to the transmission of Singer's consent to the government's wiretap of his phone to AT&T.  Both cover sheets state that the consensual wiretap of Singer's phone would end December 26, 2018.

The Brady decision compels prosecutors to reveal material exculpatory and impeaching evidence. United States v. Laureano-Salgado, 933 F.3d 20, 26 (1st Cir. 2019).  A motion for a new trial grounded on newly discovered evidence usually requires the moving defendants to demonstrate, along with the prior unavailability of the evidence and their own diligence, the probability that an acquittal would have resulted from its introduction. See United States v. Wright, 625 F.2d 1017, 1019

-9-

(1st Cir. 1980).  On the other hand, a new trial claim based on evidence previously unavailable to the defendant due to a Brady violation imposes a less onerous standard with respect to the prejudice element, demanding only that the defendant show a reasonable probability that the proceeding would have been different if the evidence had been available. See United States v. Maldonado-Rivera, 489 F.3d 60, 66 (1st Cir. 2007).

As this Court has previously held, a wiretap may be maintained by court order or by the consent of one of the recorded parties. Docket No. 2211, see United States v. Conley, 531 F.3d 56, 58 (1st Cir. 2008) (explaining that 18 U.S.C. 2511(2)(c) "authorizes telephone calls to be monitored if one party to the call consents to the monitoring") (O'Connor, J.). If adequate consent exists, a court order is superfluous; if not, a court order is required. See 18 U.S.C. § 2511(2)(a), (c)-(d).  Thus, for defendants to prevail on their Brady-based claim for a new trial, the fax cover sheets must, 1) constitute Brady material and, 2) demonstrate that for at least some of the relevant period both forms of authorization were lacking.

To that end, defendants direct the Court to what they contend are gaps in the authorization of the wiretap, i.e. periods where neither consent nor a valid court order existed. First, they maintain that the fax cover sheets show that there was a period of time on September 28, 2018, when the government

-10-

was unlawfully monitoring Singer's phone which taints the entire consensual monitoring period.  Second, they submit that, because the fax cover sheets stated that the end date for consensual monitoring was December 26, 2018, any recordings thereafter must be suppressed, including several in which defendants made incriminating statements.

With respect to the September, 2018, surveillance, defendants contend that the court-ordered wiretap of Singer's phone ended at midnight on September 27, 2018.  Because the fax sheet shows that Singer's consent was transmitted to AT&T on September 28, 2018, defendants conclude that there must have been at least some time on September 28 during which the government was unlawfully monitoring Singer's phone.  The government rejoins that the reference to September 27, made in its motion to seal the wiretap, was "simply an error" and one which the defendants have known about for more than two years, citing its admission of that error in Docket No. 1138, filed April 30, 2020.  Further, it asserts that the intercepted calls were in fact sealed through September 29, 2018, notwithstanding its error in the motion to seal and defendants' argument to the contrary.

This Court (Burroughs, J.) initially authorized a wiretap of Singer's phone on June 5, 2018.  On August 30, 2018, the Court allowed the last of several 30-day extensions of that

-11-

wiretap which, as a result, expired on September 29, 2018.  The
recordings made during the final 30-day extension were sealed on
October 2, 2018.  In the sealing motion, submitted to the Court
after the wiretap expired, the government erroneously referred
to September 27, 2018, i.e. 28 days after the August 30 issuance
of the 30-day extension, as its expiration date.  The sealed
disk, however, contained the wiretap recordings through
September 29, 2018, a fact which other related documents make
clear.  See United States v. Heinel, No. 19-10081-IT, Docket No.
969-1 at 14 (D. Mass. Nov. 1, 2021).  While defendants make much
of the mistaken representation, the Court is underwhelmed.  The
government was operating under a court-authorized wiretap
through September 29 and under a consensual wiretap from, at
least, 11:03 a.m. on September 28, when AT&T confirmed receipt
of the transmission of Singer's consent.  Id. at 8-9.  At no
point in September, 2018, was there an illegal wiretap of
Singer's phone.

        In any event, the Court does not perceive how a failure to
seal tapes properly could retroactively render illegal the
court-authorized wiretap.  Rather, the erroneous reference to
the wiretap's end date would, at most, cast in doubt the
admissibility of the September 28 and 29 recordings.  See United
States v. Mora, 821 F.2d 860, 868 (1st Cir. 1987).  On September
28, however, no pertinent calls on the wire occurred until after

-12-

the government received the second fax cover sheet from AT&T,
confirming receipt of Singer's consent to have his phone
monitored. See United States v. Heinel, No. 19-10081-IT, Docket
No. 969-1 at 9 (D. Mass. Nov. 1, 2021).  Thus, even if the Court
concluded that the erroneous reference in the motion compromised
the sealing of the September 28 and 29 calls, all recordings
made on those two days also fell within the ambit of the
consensual wiretap.

Turning to the December monitoring, defendants' motion
ignores the fact that Singer consented to the extension of the
consensual wiretap on December 20, 2018.[1]  Singer's consent was
transmitted to AT&T the next day, that is, five days before the
prior consent was to expire, and AT&T confirmed receipt on the
same day. Id. at 16-17.

In conclusion, the evidentiary value of the fax cover
sheets is insufficient to satisfy the Brady standard for a new
trial because the cover sheets would have served only to
corroborate that, at all times, government surveillance of
Singer's phone was conducted pursuant to a valid wiretap,
whether Court-ordered or consensual.  Defendants' argument that
that there were periods of unlawful surveillance is belied by

---

[1] Defendants also fail to note that in March, 2020, they appended
that signed consent form to a memorandum they filed in support
of a motion to dismiss. See Docket No. 972-39 at 35-36.

-13-

relevant evidence introduced at trial and by the fax cover
sheets themselves.  By the same token, defendants have not made
out a predicate <u>Brady</u> violation because the allegedly suppressed
evidence is neither material nor favorable.  <u>See</u> <u>Bucci</u> v. <u>United</u>
<u>States</u>, 662 F.3d 18, 38 (1st Cir. 2011).

Finally, defendants propose an alternate route to a new
trial through <u>Brady</u>.  Defendants insist that regardless of the
legality of the wiretaps, they should be suppressed (and the
motion for a new trial granted) because the government failed to
disclose the "plainly exculpatory" fax cover sheets for over two
years, after having previously failed to disclose certain notes
Singer made on his iPhone.  Put differently, they contend that
the alleged <u>Brady</u> violation requires suppression of the wiretaps
under the Court's general supervisory power and once the
wiretaps are suppressed, defendants' motion for a new trial must
be allowed. <u>See</u> <u>United States</u> v. <u>Horn</u>, 29 F.3d 754, 760 (1st
Cir. 1994) (detailing the contours of that supervisory power).
While the Court possesses such power, it is a "potent elixir"
not to be "casually dispensed". <u>United States</u> v. <u>Santana</u>, 6 F.3d
1, 10 (1st Cir. 1993).  Because the Court concludes that the fax
cover sheets are neither material nor exculpatory, suppression
of the wiretaps is unwarranted.

### ii.  The government's closing

Finally, defendants argue that failure to sever their trials was error.  This is not the first time they have made that argument, see, e.g. Docket No. 1414 (denying defendants' motion to sever), but its present iteration contains a novel wrinkle, namely, that the government's rebuttal closing was unfairly prejudicial.

At trial, Wilson and Abdelaziz essentially relied upon the same defense, i.e. notwithstanding the fact that Singer emailed them fake profiles, they never saw those profiles because they never read the emails.  Consequently, they take umbrage with the prosecutor's suggestion that it was "incredible unbelievable bad luck" that they each missed emails from Singer containing their children's fake profiles and contend that the failure to sever allowed the prosecutor to cast unfair aspersions on their defense by implying that, because both relied upon it, it was less likely to be true.  The government responds that it was entitled to argue that defendants' explanations were implausible and that in any event, they waived the argument by failing to raise an objection at the time of the closing.

When considering a motion for a new trial based on a prosecutor's closing argument, the court must determine whether the comments were improper and, if so, whether they "so poisoned the well" as to necessitate a new trial.  United States v.

-15-

<u>Carpenter</u>, 494 F.3d 13, 23 (1st Cir. 2007).  Improper argument
can include the use of inflammatory or pejorative language,
distracting commentary, disregard of court orders or warnings
and misstatements of law or fact. <u>United States</u> v. <u>Brissette</u>,
No. 16-10137, 2020 U.S. Dist. LEXIS 24861 at *100-01 (D. Mass.
Feb. 12, 2020) (citing <u>United States</u> v. <u>Azubike</u>, 504 F.3d 30,
38-39 (1st Cir. 2007)).  It does not, however, demand a new
trial unless prejudice results. <u>United States</u> v. <u>Giorgi</u>, 840
F.2d 1022, 1037 (1st Cir. 1988).  In determining the prejudicial
effect, if any, of improper argument, a Court considers factors
such as the extent of the improper remarks, the context and the
weight of the evidence against the defendants. <u>Id</u>.

     In addition, a defendant's failure to object to closing
argument contemporaneously generally bars that defendant from
later moving for a new trial on that basis. <u>See</u> <u>Computer Sys.</u>
<u>Eng'g, Inc.</u> v. <u>Qantel Corp.</u>, 740 F.2d 59, 69 (1st Cir. 1984).

     The defendants first raised their objection to the
prosecutor's rebuttal closing in their renewed motion for
judgment of acquittal and a new trial and therefore it is
untimely.  Even if the Court were to excuse the untimeliness,
the government's rebuttal was neither improper nor unfairly
prejudicial.  The prosecutor's comments were not inflammatory,
pejorative or otherwise improper, and defendants were not
prejudiced by the prosecutor addressing the implausibility of

-16-

their defenses when the issue of each defendant's
inattentiveness had been salient throughout the trial.

**ORDER**

For the foregoing reasons,

- defendants' motion for judgment of acquittal under
  Federal Rule of Criminal Procedure 29 (Docket No.
  2330) is **DENIED;**

- defendants' renewed motion for judgment of acquittal
  (Docket No. 2351) is **DENIED;** and

- defendants' renewed motion for judgment of acquittal
  and motion for new trial (Docket No. 2412) is **DENIED.**

**So ordered.**


 /s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated December 20, 2021