UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>GREGORY COLBURN et al.,<br>Defendants | Case No. 1:19-cr-10080-NMG |

## DEFENDANT JOHN WILSON'S SUPPLEMENT TO HIS REQUEST FOR AN EVIDENTIARY HEARING

Defendant John Wilson files this to supplement his Request for an Evidentiary Hearing, ECF No. 2523. In its objections to the PSR, the government asserted that Wilson obstructed justice when he filed an affidavit stating that he participated in a September 28, 2018 FaceTime call with Rick Singer. The government's sentencing brief does not address this issue and it therefore appears that the government has abandoned it. However, the government has refused to formally withdraw its objection, notwithstanding requests that it do so.

Thus, the record is sufficient for the Court to rule the government has not carried its burden of proof to show any obstruction. Wilson has supplied four affidavits to rebut the government's speculation. The government has no credible evidence and will not even say if it has asked Rick Singer for his position.

Wilson therefore respectfully requests that, in advance of his sentencing hearing, the Court overrule the government's objection and hold that the government has not carried its burden on its obstruction claim. Otherwise, Wilson requests an evidentiary hearing at which he intends to call three witnesses—his wife, Leslie Wilson, daughter, Mary Wilson, and polygraph examiner, Kendall W. Shull—who would affirm what is presented in their affidavits and in the other evidence submitted to Probation and this Court. Wilson does not seek an evidentiary hearing for any issue beyond whether he participated in part of the September 28 FaceTime call.

To aid the Court in deciding whether it will overrule the government's objection in advance of the sentencing hearing or, instead, whether there will need to be an evidentiary hearing on this issue, Wilson provides the following summary of the evidence currently available.

### I. There Is Undisputed Direct Evidence that Wilson Was Part of the September 28 FaceTime Call.

Wilson has provided direct, corroborating evidence in the form of affidavits by three people who were on the call and witnessed his attendance: his wife, Leslie Wilson, and daughters, Mary and Courtney Wilson. Wilson would never cause or allow his twenty-year-old daughters and wife to commit perjury on his behalf. His daughters and wife have no confusion or mistake about Wilson's participation: the daughters only had a single FaceTime call with Singer, and Leslie and his daughters distinctly remember Wilson participating. They were all at home and shared a single phone for the call.

The government has no direct evidence to contradict the consistent, sworn accounts of the Wilson family. Only one other person was on the call and could conceivably attest to the call's participants: the government's own cooperator, Rick Singer. In the PSR, Probation questioned "why the government has not produced any statements from Singer, who is cooperating with the government, about the matter, instead of just relying on circumstantial evidence."[1] Probation did not apply the obstruction enhancement.

Further, Wilson submitted to Probation and attached to ECF No. 2523 the results of a polygraph examination where he was asked about his attendance on the September 28 FaceTime. The polygraph examiner, Kendall W. Shull, and the polygraph experts who subsequently reviewed the examination, determined that Wilson's responses indicated "no deception." Shull

---

[1] PSR ¶ 76, at 27.

is a highly respected expert in the field of polygraph science and the former Chief of the FBI's Polygraph Unit.

## II. The Government—Which Bears the Burden—Has Only Weak, Circumstantial Evidence.

Rather than drop the obstruction issue in light of the direct evidence, the government has pursued and failed to withdraw its obstruction allegation based only on speculative inferences. The government's weak circumstantial evidence is insufficient to rebut Wilson's direct evidence. There are alternative—and more logical—interpretations of the government's circumstantial evidence that are consistent with Wilson's account of the events and additional supporting evidence.

### A. *Wilson's Schedule and Travel Before the FaceTime Call Did Not Prevent Him from Joining.*

The government claims that on September 28, 2018, Wilson left Boston Logan Airport around 2:00 pm, and had to drive a total of 132 miles before arriving at his house to join the call that started at 4:30 pm. Virtually the entire drive was on the Mass. Pike or adjacent highways on a Friday afternoon. Simple math indicates that Wilson could have covered the distance in far less than the 2.5 hours the government allots. If the chauffeur-driven car drove an average of 70 miles per hour (just 5 miles per hour over the speed limit on the Mass. Pike), the drive time would have been less than 2 hours. If the driver averaged 75 miles per hour, as do many on the Mass. Pike, the drive would have taken 1 hour and 46 minutes.

In terms of detail, on September 28 when Wilson flew into Logan Airport, he met up with a business associate, Jon Garcia, at the airport and the two of them took a car service together from the airport to a hotel in Sturbridge, Massachusetts—a mobile meeting as a way for two busy businessmen to connect. The government claims that Wilson and Garcia left the airport around 2:00 pm. The hotel is 62 miles from the airport. Given the 65 mile per hour speed limit

3

on the Mass. Pike, the likelihood of the car service driving a bit above that speed limit, and the lack of traffic leaving Boston at 2:00 pm on a Friday, the ride easily could have taken and did take less than an hour.  Though Wilson and Garcia had originally planned to spend some time having refreshments together, they eliminated this break because Garcia was running late.  That change in plans—ignored by the government—is confirmed by the email correspondence attached hereto as **Exhibit A**.

Wilson left the hotel in Sturbridge very shortly after dropping off Garcia.  The trip from the hotel to Wilson's home in Lynnfield was about 70 miles.  Again, taking the Mass. Pike with no traffic (Wilson was now traveling in the afternoon in a reverse commute towards—not out of—Boston), the trip would take approximately 1 hour.  Wilson thus had a sufficient margin of time to arrive at his home and attend the call.  Consistent with that, the government provided Probation with a copy of Wilson's mobile phone record, which shows that during the time of the FaceTime call with Singer—4:30 pm to 5:03 pm—Wilson did not place or take any other calls.

> **B.     *Wilson's Actions After the FaceTime Call Are Consistent with His Having Been Present on the Call.***

At 5:41 pm, that is, 38 minutes after the FaceTime call with Singer ended, Wilson called his wife, Leslie.  They had a 5 minute conversation.  The government presses that the only inference from this subsequent call is that Wilson was not part of the earlier FaceTime with Singer.  This inference is neither logically required nor factually supported. It is commonplace today for individuals to call each other from cell phones while in the same house (the modern-day equivalent of an intercom) or to call each other while running errands.  That Wilson and his wife had a telephone conversation 38 minutes *after* the FaceTime call with Singer therefore has no bearing at all on where Wilson was *during* the FaceTime call.

4

### C. *Wilson's Subsequent Communications with Singer in No Way Prove that Wilson Was Not Part of the FaceTime Call.*

Finally, the government points to several communications between Singer and Wilson following the FaceTime call, claiming that they support the inference that Wilson was not part of the call. They do not. What they support, consistent with the Wilson family's affidavits, is that different members of the family were on different parts of the FaceTime call and discussed different topics with Singer. Wilson's daughters attest that Singer talked with the two of them for part of the call. During that time, their mother was in the general area and, for part of it, Wilson was in another room. Wilson did not hear substantial parts of Singer's discussion with his daughters. After the girls finished talking with Singer, they gave Wilson the phone, and he had a conversation with Singer that no other family member was part of.

About 1 minute after Wilson's 5:41 pm call to his wife, Wilson texted Singer saying that he heard that his "girls had a good first session" and asked if they could debrief. This shows that Leslie Wilson described to Wilson the part of the call he did not attend. It does not prove that Wilson and Singer had not spoken—after Singer spoke to the girls—as part of the FaceTime. Additional communications between Singer and Wilson on September 29, 2018, indicate nothing more than that Wilson wanted to hear from Singer, the trusted college counselor for Johnny who was now beginning to counsel Wilson's daughters, what was discussed with his daughters and Singer's takeaways from the conversation. Wilson could not obtain that sort of input from his daughters (who at that time were still juniors in high school). In any event, his daughters had still not given him a "full debrief." Nor is it in any way unusual if the call on September 28 was somehow cut short or not as long as Wilson wanted—likely since at the time of the call Singer was at a United States Attorney's Office meeting with the FBI and prosecutors—for him to ask Singer to separately provide more analysis or a more fulsome debrief.

5

In addition, the government also points to pleasantries exchanged the next day, September 29th, and claims this indicates that Wilson and Singer did not speak on the 28th. On September 29th, Wilson asked Singer, who had claimed to have been sick, how he was feeling. That does not mean they did not speak the day before. Wilson might have been following up on the pace of Singer's recovery, or he might have forgotten to ask how Singer was feeling when they spoke on the 28th. Wilson also told Singer he had been traveling out of town. This is the sort of vague update that is part of many conversations. It might have been repetitive of the pleasantries they exchanged the day before, or the September 28 discussion might have been more compressed since Singer had to end the call to return to the FBI agents and prosecutors that he was in the midst of meeting with. But it is fully consistent with the overwhelming evidence establishing that Wilson did in fact participate in the September 28 FaceTime call.

## CONCLUSION

The government's claim that Wilson obstructed justice should be overruled in advance of the hearing based on the current record. However, if the Court will consider this allegation Wilson respectfully reaffirms his request for an evidentiary hearing. Wilson respectfully seeks guidance from the Court before the sentencing scheduled Wednesday, February 16, 2022.

Respectfully submitted,

*Counsel for John Wilson*

/s/ Michael Kendall
Michael Kendall (BBO #544866)
Lauren Papenhausen (BBO# 655527)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com
lauren.papenhause@whitecase.com

Andrew Tomback (pro hac vice)<br>
McLaughlin & Stern, LLP<br>
260 Madison Avenue<br>
New York, NY 10016<br>
Telephone: (212) 448-1100<br>
ATomback@mclaughlinstern.com

Date February 13, 2022

## **CERTIFICATE OF SERVICE**

    I hereby certify that the above document is being filed on the date appearing in the header through the ECF system, which will send true copies to the attorneys of record.

/s/ Michael Kendall<br>
Michael Kendall