UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>   v.                                                    )<br>)<br>JOHN WILSON and                           )<br>GAMAL ABDELAZIZ,                       )<br>)<br>   Defendants.                                    ) | Crim. No. 19-10080-NMG |

**GOVERNMENT'S OPPOSITION TO
DEFENDANTS' MOTIONS FOR RELEASE PENDING APPEAL (Dkt. 2565 & 2567)**

The government respectfully opposes the motions of defendants John Wilson and Gamal Abdelaziz for bail pending appeal. [D.2565; D.2567]. The defendants contend that their appeals will raise "substantial questions" of law or fact based on a series of legal and evidentiary issues that were extensively litigated and decided against them. In support of their arguments, they rely on rulings and what they deem "contrary signals" from other sessions of the Court (while ignoring others that contradict their contentions), or the absence of precedents directly on point, to suggest that the questions they have raised are "substantial." But that is not the applicable standard, and the defendants cite not a single Circuit precedent that is contrary to any conclusion of this Court, much less a split among any Circuits on issues of significance to this case.

Moreover, that is only one prong of the applicable two-part test. The defendants' motions whistle past the fact that the jury convicted them on all counts, including all four objects of the conspiracy charged in Count One. But the defendants utterly fail to meet their burden of demonstrating that success on any one of their arguments would result in the likely reversal of their convictions on all other counts, or so infect the verdicts as to require a new trial or shorter sentences. Accordingly, their motions for release pending appeal should be denied.

## STATEMENT OF FACTS

On October 8, 2021, following a four-week trial, the defendants were convicted of conspiracy to commit mail and wire fraud and honest services mail and wire fraud, in violation of 18 U.S.C. § 1349, and conspiracy to commit federal programs bribery, in violation of 18 U.S.C. § 371. [D.2376]. Defendant Wilson was also convicted of three substantive counts of wire fraud and honest services wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346, two counts of federal programs bribery, in violation of 18 U.S.C. § 666, and one count of filing a false tax return, in violation of 26 U.S.C. § 7206(1). [*Id.*] Following the Court's denial of the defendants' motions for judgment of acquittal and for a new trial, [D.2489], the Court sentenced Abdelaziz to a term of imprisonment of 12 months and one day and Wilson to a term of 15 months, to run concurrently on all counts of conviction. [D.2539; D.2536]. Consistent with the parties' agreement, the Court has stayed the defendants' surrender dates pending resolution of their motions for release pending appeal. [D.2519].

## LEGAL STANDARD

In order to secure release pending appeal, a defendant must establish that his appeal "raises a *substantial question* of law or fact likely to result in . . . reversal, . . . an order for a new trial, . . . a sentence that does not include a term of imprisonment, or . . . a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(B) (emphasis added). This provision "breaks down into two distinct requirements," namely: "(1) that the appeal raise a substantial question of law or fact and (2) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed." *United States v. Bayko*, 774 F.2d 516, 522 (1st Cir. 1985); *United States v. Zimny*, 857

2

F.3d 97, 99 (1st Cir. 2017); *see also Morison v. United States*, 486 U.S. 1306, 1306-07 (1988) (Rehnquist, C.J., in chambers) (denying release under section 3143(b) because petitioner "has not shown that his appeal is 'likely to result in reversal' with respect to all the counts for which imprisonment was imposed," and citing *Bayko*).

A "substantial question" is one that is "close" in the sense that it "very well could be decided the other way." *Bayko*, 774 F.2d at 523 (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)); *Zimny*, 857 F.3d at 100 (quoting *Bayko* and *Giancola*). Questions are not "substantial" simply because they are "novel," not the subject of "controlling precedent," "undecided," or "fairly debatable." *Bayko*, 774 F.2d at 522-23 (quotations omitted). So too, the mere "possibility of reversal" does not warrant bail pending appeal. *Id.* at 523 (quotation omitted).

Applying these principles, the First Circuit recently denied the release pending appeal of five pharmaceutical executives in a path-breaking prosecution that presented questions concerning untested applications of the Racketeer Influenced and Corrupt Organizations Act (RICO), the Controlled Substances Act, and the honest-services fraud statute. *See United States v. Simon*, 12 F.4th 1 (1st Cir. 2021), *petition for cert. filed* (Jan. 13, 2022) (No. 21-994); *United States v. Kapoor*, No. 20-1325, 2020 WL 5526561, at *1 (1st Cir. July 1, 2020). It also denied bail when the former Mayor of Providence challenged the unusual association-in-fact enterprise underlying his RICO conspiracy conviction—an issue that later divided the merits panel. *See United States v. Cianci*, 378 F.3d 71 (1st Cir. 2004); *United States v. Cianci*, No. 02-2164 (1st Cir. 2003).

In light of the First Circuit's *Bayko* jurisprudence, the defendants' effort to label certain of their appellate claims as presenting "novel" [D.2565 at 2, 7, 8], "unprecedented" [*id.* at 2, 8], and "unsettled" [*id.* at 4, 11], issues falls short even assuming that those characterizations are accurate. Accordingly, for example, the mere possibility that "[t]he First Circuit *could* hold that admissions

3

slots are not property, or that . . . the issue should have been left for jury determination based on the facts," [D.2565 at 16 (emphasis added)], is of little moment. Likewise, the defendants' citations to alleged differing judicial views with respect to some of the issues [D.2565 at 6-7; D.2567 at 3-4], does not, without more, meet the *Bayko* standard. *See United States v. Gurry*, No. 16-CR-10343-ADB, 2020 WL 1063001, at *5 (D. Mass. Mar. 5, 2020), *aff'd sub nom. Kapoor*, 2020 WL 5526561 (denying bail pending appeal in RICO prosecution despite defendants' argument that "underlying wire fraud predicate was precluded by the intracorporate conspiracy doctrine" and acknowledging "circuit split regarding whether the doctrine applies to RICO conspiracies"); *United States v. DiMasi*, 817 F. Supp. 2d 9, 20 (D. Mass. 2011) (denying bail pending appeal where defendants argued that court instructed jury on term inconsistent with another court's precedent). Indeed, by the defendants' argument, a defendant would be entitled to release pending appeal in any case in which a different district court reached a different conclusion on an important question of law or fact. That is not the law. Tellingly, the defendants do not, because they cannot, cite any controlling First Circuit precedent supporting their arguments, or any split in the circuit courts. Instead, their arguments are *contrary* to relevant circuit precedent, and their citations to purported splits among different sessions of this Court are overstated.

## ARGUMENT

### A.   There Are No Substantial Questions About the Government's Legal Theories.

The Court previously considered the parties' extensive briefing on whether admissions slots constitute property and properly held that "application slots to universities are property interests owned by the university cognizable under the mail and wire fraud statutes." [D.1334 at 17; *see also* D.1170 at 25-35]. In reaching this conclusion, the Court explained that "property is to be construed in accordance with its ordinary meaning: something of value in the possession of

the property holder" and "extending to every species of valuable right and interest." [*Id.* at 14 (quotations and brackets omitted)].  The Court found that the Sixth Circuit's decision in *United States v. Frost*, 125 F.3d 346 (6th Cir. 1997), "neatly applies to the case at bar." [D.1334 at 18]. In that case, the Sixth Circuit held that "prospective university degrees are property cognizable under the mail fraud statute" because the "'number of degrees which a university may award is finite'" and "'[a]warding degrees to inept students, or to students who have not earned them, will decrease the value of degrees in general'" by "'hurt[ing] the reputation of the school and thereby impair[ing] its ability to attract other students willing to pay tuition, as well as its ability to raise money.'" [*Id.* at 17-18 (quoting *Frost*, 125 F.3d at 367)]; *see also United States v. Barrington*, 648 F.3d 1178, 1191 & n.11 (11th Cir. 2011) (explaining that a "[u]niversity certainly" has a property interest "in the integrity of its grading system").  And the defendants' motions ignore that another session of the Court reached the identical conclusion in rejecting a claim in that case that admissions slots are not property.  *See United States v. Khoury*, No. 20-CR-10177-DJC, 2021 WL 2784835 (D. Mass. July 2, 2021).

That a third session of this Court reached a different conclusion in *United States v. Ernst*, 502 F. Supp. 3d 637 (D. Mass. 2020), does not, by itself, create a substantial question.  *See Bayko*, 774 F.2d at 522-23.  In *Ernst*, the Court distinguished *Frost* on the basis that that case was charged on an honest services fraud theory, not a property fraud theory, 502 F. Supp. 3d at 648, notwithstanding the fact that the Sixth Circuit's decision turned on whether the employees in *Frost* violated their duty of honest services by failing to protect the *property* of the university—that is, its unissued degrees. *Frost*, 125 F.3d at 366-67.  Indeed, the *Khoury* court subsequently considered and rejected the reasoning in *Ernst* on the basis that it construed *Frost* "too narrowly."  *See Khoury*, 2021 WL 2784835, at *2 & n.1.  Accordingly, and contrary to the defendants' contention, the mere

5

fact that a lone session of the Court reached a different conclusion in a decision that is contrary to established precedent and has already been rejected by another session of the Court does not render the defendants' property argument a "close" question. Likewise, the government's choice not to appeal the decision in *Ernst* does not render the question "close," particularly in light of the various factors involved in a decision to appeal, including the resources and delay required and the government's ability to secure convictions on other theories (as it did). In any event, the Court need not decide whether the decision in *Ernst* creates a substantial question, because even if it did, the defendants here were *also* convicted on an honest services fraud theory, which the *Ernst* court agreed was properly charged. *Ernst*, 502 F. Supp. 3d at 653-54; *see also* [D.2376].

Similarly, this Court properly held that payments to university accounts designated by corrupt coaches can—and in this case did—constitute bribes, noting that "even if such payments were ultimately received by the universities, [they] may still constitute a benefit to those insiders" where, as here, they "were made to designated accounts that were either controlled by the corrupt insiders or that otherwise inured to their benefit professionally." [D.1334 at 26-27; *see also* Charge Conf. Tr. (Oct. 5, 2021) at 13-14; D.2489 at 4]. This conclusion was supported by ample authority holding that a "thing of value" for purposes of honest services fraud and federal programs bribery "'is defined broadly to include the value which the defendant subjectively attaches to the items received,'" such that a *quid pro quo* payment need not go to the pocket of the employee to constitute a bribe. [D.1334 at 27 (quoting *United States v. Renzi*, 769 F.3d 731, 744 (9th Cir. 2014)); *see also* D.1170 at 45-47 (collecting cases)].

In an effort to manufacture a "substantial question," the defendants cite the absence of precedent holding that payments to an employee's employer can constitute bribes. But the mere absence of precedent directly on point does not render a question "substantial." *See Bayko*, 774

F.2d at 523. The defendants also contend that Judge Woodlock—in sentencing a defendant in a related case—found "the evidence of bribery . . . 'too speculative,'" and suggest that this, like the decision in *Ernst*, represents a "split of authority." [D.2565 at 9–11 (quoting Tr. of Sentencing (Oct. 30, 2019), *United States v. Bizzack*, No. 19-cr-10222-DPW ("Bizzack Tr."), at 56)]. But in making this argument, the defendants take Judge Woodlock's off-the-cuff remarks out of context. In that case, the court *accepted* the defendant's plea to conspiracy to commit wire fraud and honest services wire fraud, and was simply exploring how the commercial bribery guidelines applied and whether the bribe *amount* was reasonably foreseeable to the defendant where his payments in furtherance of the scheme totaled $250,000, of which $50,000 was directed to a university account controlled by a corrupt insider. *See, e.g.*, Bizzack Tr. at 24 ("I look at the bribe amount and say how much?"), 56 (observing that the payments had "not been established to involve a bribe of a specific amount"). Indeed, this Court likewise concluded—in sentencing these defendants—that the bribe amount did not properly factor into the calculation of the applicable Sentencing Guidelines for honest services fraud. That does not mean that the defendants' *conviction* for that crime was invalid because a portion of the bribe payments went to a university account, any more than it rendered the conviction that Judge Woodlock accepted invalid.

Defendant Wilson also cites comments at the plea hearing of related defendant Donna Heinel to suggest that Judge Talwani likewise "expressed grave doubts" that payments to the university could constitute bribes. [D.2565 at 9]. But this is nonsense. *First*, as Wilson acknowledges, Judge Talwani *accepted* Heinel's plea to honest services wire fraud based on bribe payments to USC accounts that Heinel controlled. Judge Talwani did so only after satisfying herself that the government met all the elements of that offense, and despite the fact that Heinel specifically denied accepting money personally. [Tr. of R. 11 Hr'g, *United States v. Heinel*, No.

7

19-cr-10081-IT (D. Mass. Nov. 5, 2021) at 40, 44, 64-65]. *Second*, Judge Talwani specifically instructed the jury, in the trial of related defendant Jovan Vavic, that payments to university accounts may constitute bribes or kickbacks, and the defendant was convicted on all counts. [Jury Charge, *United States v. Vavic*, No. 19-cr-10081-IT (D. Mass. Apr. 7, 2022) ("A payment made to a third party may constitute a thing of value to an employee based on the subjective value placed on it by the employee. Payment made to a university to which the employee owes a duty of honest services may constitute a thing of value to the employee based on the value placed on it by the employee only: (1) if the employee uses those funds for his or her personal use rather than the entity's use; or (2) the payments are made for the employee's own interests and receipt of the payments is contrary to the university's interests.")]. Indeed, in the *Vavic* case, the payments at issue were *the same* payments at issue here—because Vavic was the recipient of Wilson's bribes. Thus, even if a mere difference of opinion between sessions of this Court could constitute a "substantial question," there is no such difference here, where every session of the Court to consider the issue has found that a payment to a university account may constitute a bribe, and the defendants cite no authority—controlling, persuasive, or otherwise—to the contrary.

Defendant Abdelaziz's reliance on Judge Easterbrook's opinion in *United States v. Thompson*, 484 F.3d 877 (7th Cir. 2007), [D.2567 at 5-6], is similarly misplaced. There, the court considered whether an employee's regular compensation could constitute a bribe. *Thompson*, 484 F.3d at 884. In this case, by contrast, the bribe payments to university accounts provided benefits to the corrupt insiders that was outside the scope of their regular compensation, and *Thompson* is inapplicable.

**B.     The Defendants Do Not Raise a Substantial Question About Multiple Conspiracies.**

The defendants yet again argue that the indictment fails to charge, and that the government failed to prove at trial, a single conspiracy and therefore contend that their appeal will raise a substantial question about a prejudicial variance. [D.2565 at 12-13; D.2567 at 15-16]. As an initial matter, the standard of review on appeal all but dooms the defendants' contention that this issue poses a "close" question.

"When, as here, a defendant asserts a claim of variance that is premised on the notion that multiple conspiracies existed and that his activities were not part of the charged conspiracy, the initial question is one of evidentiary sufficiency." *United States v. Rios-Ortiz*, 708 F.3d 310, 317-18 (1st Cir. 2013) (quotation and ellipses omitted). Accordingly, "so long as the evidence is adequate to permit a reasonable trier of fact to have found a single conspiracy beyond a reasonable doubt, the jury's finding will not be disturbed on appeal." *Id.* (explaining that the evidence must be "viewed in the light most favorable to the prosecution" in assessing such an argument) (citation omitted). That is particularly true where, as here, the Court correctly "instructed on multiple conspiracies at the request of the defense." *United States v. Soto-Benίquez*, 356 F.3d 1, 22 (1st Cir. 2003) ("As noted earlier, where the jury was properly instructed and found the defendants guilty of conspiracy, its verdict is reviewable only for sufficiency of evidence.") (citation omitted). The government is aware of no First Circuit case—and the defendants cite none—finding the *Bayko* "close question" standard was satisfied based on a multiple conspiracies argument that is subject to sufficiency review on appeal.

The evidence introduced at trial does not make this issue a close call. As this Court held when it denied the defendants' motions to dismiss and Rule 29 motions, the indictment properly charged and provided notice of the conspiracy that the government sought to prove, and did prove,

at trial. [D.1334 at 8; D.2489 at 7-8]. This Court found that the indictment adequately alleged a conspiracy with a common goal, overlap of participants, and interdependence. [D.1334 at 8 (citing *United States v. Portela*, 167 F.3d 687, 695 (1st Cir. 1999))].

- ***Common goal.*** Noting that a common goal may be "broadly drawn," the Court previously held that the indictment alleged that the defendants aimed to use bribery and fraud to secure college admissions for their children and to effectuate and to conceal their fraud using Singer's entities, and that they accomplished their goals through "varied chicanery." [*Id*. at 8-9]; *see also United States v. Ortiz-Islas*, 829 F.3d 19, 25 (1st Cir. 2016) (explaining that the "existence of a common goal is broadly drawn"). Viewed in the light most favorable to the government, the evidence easily proved a common goal. To pick a single example from hundreds of trial exhibits and pages of trial transcripts, Singer and co-conspirator Laura Janke exchanged e-mails discussing the need to create fake athletic profiles for ten students to provide to corrupt USC insider and bribe recipient Donna Heinel in order to achieve the common goal of fooling USC's Admissions Department; among those ten students were the daughter of Abdelaziz and son of co-conspirator Marci Palatella. Ex. 329. Palatella, in turn, was encouraged to join Singer's scheme by Wilson's spouse. Ex. 409.

- ***Overlap.*** As to overlap, the First Circuit has held that "overlap among the activities' participants is satisfied by the pervasive involvement of a single core conspirator." *Ortiz-Islas*, 829 F.3d at 25 (quotation omitted). Singer's actions, of course, satisfy this element and support the jury's verdict. But there was far more overlap among participants than just Singer, and neither defendant's motion seriously contests the overlap or engages with even

10

just a selection of the evidence that the government summarized in opposing their Rule 29 motions on the same issue. [D.2424 at 26-27 & n.17]

- ***Interdependence.*** Finally, with respect to interdependence, the defendants' protestations that they did not personally know Bruce Isackson or others and were unfamiliar with every detail and facet of the scheme are both untrue and irrelevant. As an initial matter, defendant Wilson was personally acquainted with Isackson and socialized with him—a fact that Wilson's own attorney elicited in his first question on cross examination. [Trial Tr. (Sept. 14, 2022) at 53-54]. But, in any event, the law of conspiracy does not require such knowledge: "In considering these three factors, we must remember that the existence of a single conspiracy does *not* require the participants to know of all the other participants, understand all the details of the conspiracy, or participate in each aspect of the conspiracy." *Ortiz-Islas*, 829 F.3d at 24-25 (quotation omitted, emphasis in original). Interdependence is functional. It exists "where the activities of one aspect of the scheme are necessary or advantageous to the success of another aspect of the scheme." *Id.* at 26 (quoting *United States v. Négron-Sostre*, 790 F.3d 295, 309 (1st Cir. 2015)). The jury received clear evidence—most importantly from the defendants themselves in emails and phone calls—that they knowingly participated in Singer's corrupt network and that they knew that it was a network. Likewise, there was extensive evidence and testimony from which the jury could properly conclude, as it did, that the conspiracy's size and scope and its numerous participants—including parents whose payments facilitated the bribery, conspirators who fabricated athletic profiles, corrupt university insiders who facilitated fraudulent recruitments in a variety of sports, and a sham charity through which the bribe payments were funneled—were vital to its success and survival. *See United States v. Maryea*, 704

F.3d 55, 77 (1st Cir. 2013) (explaining that "interdependence makes it reasonable to speak of a tacit understanding between a core conspirator and others upon whose unlawful acts his success depends") (quotation and brackets omitted); *United States v. Perez-Ruiz*, 353 F.3d 1, 7-8 (1st Cir. 2003) (finding no variance where, "[a]t the very least, th[e] evidence permitted a rational inference that the appellant's [involvement] was part and parcel" and a "subset of [the core conspirator's] master conspiracy").

Accordingly, it is not a "close question" whether the evidence, when viewed in the light most favorable to the properly instructed jury's verdict, established a single conspiracy. Thus, there was no variance, and the inquiry on the issue, both here and on appeal, should end there.

But even were the Court to conclude that there was a close question on this issue, to justify reversal, a variance between a crime charged and a crime proved at trial must prejudice a defendant's substantial rights either because the indictment failed to give the defendant sufficient notice of the charge against him or, in a case with multiple defendants, because proof that one defendant was involved in one conspiracy leads the jury to believe that a different defendant was involved in a different conspiracy. *United States v. Mubayyid*, 658 F.3d 35, 54 (1st Cir. 2011). Neither prejudice exists here. At most, like the defendants in *Mubayyid*, Wilson and Abdelaziz suggest that they were prejudiced because the government did not prove everything alleged in the indictment. *Id*. But even assuming that were true, it is not enough. *See id*. There is no prejudicial variance "when the government's proof at trial establishes 'a scheme similar to but somewhat narrower in breadth and malignity than that charged in the indictment.'" *Id*. at 48-49 (quoting *United States v. Mueffelman*, 470 F.3d 33, 38 (1st Cir. 2006)). Accordingly, there is not a substantial question as required by *Bayko*, and the defendants' arguments fall short.

The defendants' reliance on *United States v. Morrow*, 39 F.3d 1228 (1st Cir. 1994), is misplaced. In *Morrow*, the First Circuit found no prejudicial variance when evidence proved each defendant's participation in narrower conspiracies rather than in a single overarching conspiracy. *Id.* at 1236 ("If ever an error was harmless, this is it."). In *Morrow*, the key issue was a lack of proof that the defendants knew of multiple acts of mail fraud. Here, obtaining fraudulent college admissions was the essence of the conspiracy, the purpose and structure of which necessarily entailed multiple criminal acts, including the creation of fake athletic profiles and the payment of bribes to induce corrupt insiders to use those profiles to mislead their own colleagues in securing the students' admission as athletic recruits. That is the conspiracy Wilson and Abdelaziz joined, and given its essential nature, they necessarily had knowledge and insight into its broad scope. *See id*. at 1234 ("Conviction for such a multiple-crime conspiracy remains possible even if the conspiracy is open-ended (*e.g.*, a conspiracy to rob banks) and the specifics of the future crimes (*e.g.*, which banks) is undetermined or at least unknown to the defendant.").

Similarly, *United States v. Dellosantos*, 649 F.3d 109 (1st Cir. 2011), on which the defendants also rely, concerned whether defendants joined a single conspiracy to sell cocaine and marijuana or two different conspiracies, one to sell cocaine in Massachusetts and one to sell cocaine and marijuana in Maine—each involving a different central conspirator. *Id*. at 119. Here, by contrast, the conspiracy involved multiple central conspirators (Singer and his associates, including Mikaela Sanford, Steven Masera and Laura Janke) and a common structure involving Singer's network of corrupt insiders, a common goal (fraudulent admissions to universities), and a common victim (USC). Accordingly, *Dellosantos* actually reaffirms that a conviction is appropriate where, as here, the conspiracy features a common purpose, overlap among the conspirators, and interdependence. Indeed, the *Dellosantos* court itself noted that the First Circuit

13

upheld a conviction in which the single conspiracy involved the sale of different drugs in different locations by different defendants, under the oversight of a single boss and as part of a single organization.  *Id.* at 118 (discussing *United States v. Sánchez-Badillo*, 540 F.3d 24, 29-30 (1st Cir. 2008)).  That is, at the very least, analogous to the evidence at trial here.

Finally, the defendants' suggestion that rulings by Judge Talwani establish the existence of a substantial question about the scope of the conspiracy is plainly wrong.  Like this Court, Judge Talwani held that the indictment in the case before her sufficiently alleged a single, overarching conspiracy.  *See Ernst*, 502 F. Supp. 3d at 654-55.  The Court wrote: "Defendants know exactly the conspiracy that is alleged (a unitary conspiracy) and if the jury returns a conviction it will have been on a unitary conspiracy." *Id*.  The jury in Judge Talwani's case did just that by returning guilty verdicts on both conspiracy counts.  [*See* Verdict, *United States v. Ernst*, No. 19-cr-10081-IT, D.1235 (Jury verdict as to Jovan Vavic, Guilty on Counts 2, 3, and 16)].[1]

In sum, given the properly pleaded conspiracy charges and the sufficiency of the evidence supporting their convictions, the defendants have failed to raise a substantial question justifying the relief they seek.

### C.   **The Court's Evidentiary Rulings Do Not Raise Substantial Questions.**

The defendants cite a laundry list of evidentiary rulings in a final attempt to cobble together a substantial question capable of justifying bail pending appeal of their convictions on all counts.

---

[1] Contrary to the defendants' suggestion that Judge Talwani was skeptical of the conspiracy's existence, she ruled that the government proved the conspiracy for purposes of *Petrozziello* from 2013 to 2019.  [*See* Order at 5-6, *United States v. Ernst*, No. 19-cr-10081-IT (D. Mass. April 6, 2022), D.1227].  The defendants' reliance on Judge Talwani's severance of the trials of Donna Heinel and Jovan Vavic is likewise mistaken.  That order says *nothing* about the existence of a single or multiple conspiracies.  [*See* Order, *United States v. Ernst*, No. 19-cr-10081-IT (D. Mass. Oct. 13, 2021), D.879].

In so doing, they ignore the high hurdle they face in establishing on appeal that the Court abused its discretion in excluding various exhibits they offered. *See, e.g.*, *United States v. Guerrier*, 428 F.3d 76, 79 (1st Cir. 2005) ("Generally, '[w]e review the district court's rulings admitting or excluding evidence for abuse of discretion.'" (quoting *Blinzler v. Marriott Int'l*, 81 F.3d 1148, 1158 (1st Cir. 1996))). Under this standard, the First Circuit will reverse "only 'if no reasonable person could agree with the judge's ruling.'" *United States v. Jones*, 748 F.3d 64, 69 (1st Cir. 2014) (quoting *United States v. Maldonado*, 708 F.3d 38, 42 (1st Cir. 2013)). The defendants do not come close to meeting this burden, and they cite not one case—anywhere—finding a close question justifying bail pending appeal under this standard for such routine evidentiary rulings, which in any event, were correct.

The defendants first challenge the exclusion of evidence that, they contend, shows that USC exchanged donations for preferential admissions treatment. [D.2565 at 14; D.2567 at 7]. As the Court reasoned, this evidence was irrelevant, and thus inadmissible, unless the defendants *knew* that USC exchanged admission for donations—a fact that they never even attempted to proffer. [Tr. of Aug. 18, 2021 Hr'g at 19, D.2108]. Instead, the defendants argue that, even if they were not aware of this information, the evidence is nevertheless relevant to their good faith defense. The First Circuit has explicitly rejected this basis for admissibility given that the good faith defense "asks the jury to determine what [a] defendant's 'actual, *subjective* beliefs' may have been." *Simon*, 12 F. 4th at 55 (quoting *United States v. Denson*, 689 F.3d 21, 26 (1st Cir. 2012)) (emphasis added). In *Simon*, the First Circuit held that, because the defendant "has never been privy to the findings" of the internal investigation he sought to introduce, "those findings could not have informed his subjective beliefs." *Id.* (citations omitted); *see also United States v. Curtis*, 782 F.2d 593, 599 (6th Cir. 1986) ("Willfulness is personal. It relates to the defendant's state of mind. It

15

does not exist in the abstract. Unless there is a connection between the external facts and the defendant's state of mind, the evidence of the external facts is not relevant."). Neither Wilson nor Abdelaziz knew anything of the internal practices at USC, and the evidence excluded on that ground could not have informed their subjective beliefs. The defendants' reliance on *Cheek v. United States*, 498 U.S. 192 (1991), and *United States v. Lankford*, 955 F.2d 1545 (11th Cir. 1992), is misplaced because each of those cases concerned the application of highly technical tax laws, which "risks 'ensnaring individuals engaged in apparently innocent conduct.'" *United States v. Karani*, 984 F.3d 163, 176 (1st Cir. 2021) (quoting *Bryan v. United States*, 524 U.S. 184, 194 (1998)). No such risk exists here, particularly where defendants' deception—falsifying their children's athletic credentials to secure their admission as recruited athletes when they were neither qualified nor intended to play—invalidates their good faith defense. *See, e.g.*, *Mueffelman*, 470 F.3d at 37 ("statement of fact known to be false is not [good faith]").

The defendants' contention that the excluded evidence was separately relevant to defining what "honest services" USC expected of its coaches and administrators blurs the line between USC's Athletics and Admissions Departments. As the Court held, it is the "expectations of the Admissions Department" that is relevant to "the honest services question as to *these defendants*." [D.2265 at 5 (emphasis in original)]. Yet the evidence defendants sought to introduce largely concerned internal Athletics Department communications. Even Ex. 1085, highlighted in Wilson's brief, shows only that Donna Heinel emailed the USC Director of Admissions a list of "VIP" students, some of whom were noted to be potential donors. Notably, nowhere on this list does Heinel describe falsifying athletic credentials for any of the applicants. That Magistrate Judge Kelley found these materials *discoverable* does not bear on their *admissibility*. Likewise, that Judge Talwani admitted similar evidence in the trial of Jovan Vavic, the former USC water polo

coach who was a USC *insider*, does not create a substantial question as to these defendants, who were outsiders with no knowledge of USC's internal practices.

At the very least, the Court acted well within its discretion in excluding this evidence under Fed. R. Evid. 403, and it is not a "close question" that "no reasonable person could agree with the [Court's] ruling.'" *Jones*, 748 F.3d at 69; *see also United States v. Centeno-Gonzalez*, 989 F.3d 36, 53 (1st Cir. 2021) ("Trial judges have discretion under Rule 403 to exclude evidence if it would distract from the main issues of the case," and "the decision on whether a matter is collateral or material is within the district court's discretion") (quotations omitted); *United States v. Anh*, 523 F.3d 43, 53 (1st Cir. 2008) (affirming exclusion of defendant's proffered evidence under Rule 403: "[O]nly rarely—and in extraordinarily compelling circumstances—will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect").

The defendants argue that another basis for admitting these materials was to impeach the testimony of USC Admissions Officer Rebecca Chassin. As the defendants concede, however, none of the proposed exhibits contain Chassin's prior statements, and they were, accordingly, inadmissible under Fed. R. Evid. 613(b). Nor could the defendants use this extrinsic evidence to impeach Chassin "by contradiction" where it concerned collateral matters relating to students other than the defendants' children. *See, e.g.*, *United States v. Innamorati*, 996 F.2d 456, 479-80 (1st Cir. 1993) (affirming preclusion of evidence of impeachment by contradiction on a collateral matter); *United States v. Craig*, 953 F.3d 898, 905 (6th Cir. 2020) ("Extrinsic evidence is permitted for impeachment by contradiction only as to non-collateral matters. . . . [S]uch extrinsic evidence is still subject to ordinary rules of admissibility. . . ."); *United States v. Kincaid-Chauncey*, 556 F.3d 923, 932 (9th Cir. 2009), *abrogated on other grounds by Skilling v. United States*, 561 U.S.

358 (2010) ("When impeaching by contradiction, the fact to be contradicted must be material."); *see also* [D.2323 at 2 (excluding proposed evidence under Fed. R. Evid. 403 and collateral matter rule)].

Defendant Abdelaziz argues, without explanation, that Ex. 1288, a chat between two non-testifying USC Admissions Officers, was admissible "for a non-hearsay purpose, or otherwise was an exception to hearsay." [D.2567 at 10]. Where a defendant cannot even articulate how this exhibit is admissible as non-hearsay or as an exception to the hearsay rule, it falls far short of raising a substantial question. Nor did the Court "conflate the assertions of litigants with the assertions of declarants." [*Id.* at 11]. Indeed, Abdelaziz argued at trial and in his instant motion that the exhibit was relevant only to the extent it purportedly showed the state of mind of the USC Admissions Department; the assertions of the individual declarants are irrelevant. Moreover, even assuming that a group of "people," or an admissions department, can have a collective "state of mind"—a proposition that is far from clear—the Court was within its discretion in finding that Abdelaziz "failed to present evidence that an informal text exchange between Admissions Officers is evidence of the institutional belief of the Admissions Department as a whole." [D.2336 at 7].

Lastly, Abdelaziz complains about the exclusion of certain statements of Rick Singer regarding the "side door," in particular the so-called "Starbucks video." [D.2567 at 12]. As discussed *supra* at 15, however, this evidence "could not have informed [Abdelaziz's] subjective beliefs" because Abdelaziz was not aware of the video. His reliance on *United States v. Aboumoussallem*, 726 F.2d 906 (2d Cir. 1984), does not raise this issue to a substantial question. There, despite finding that evidence tending to show that another drug courier had been "duped" into transporting heroin to the United States was admissible under Fed. R. Evid. 404(b), the Second

18

Circuit nevertheless held that the evidence was properly excluded under Fed. R. Evid. 403. *Id.* at 912.

Abdelaziz further argues that the Starbucks video and similar exhibits were proper impeachment evidence in that they were inconsistent with statements Singer made to parents suggesting the scheme was illicit. [D.2567 at 14]. But that scenario is exactly what the Court considered when finding that "Singer's assertions during the recorded presentation about the 'side door' are not inconsistent with the explanations he provided to defendants.'" [D.2336 at 5]. Indeed, the Court recounted the defendants' argument that the video was relevant because in it, Singer "characterized the "side door" as a legitimate process." [*Id.*] Where the Court understood and articulated the defendants' argument, but nevertheless found the video irrelevant, the defendants cannot meet their burden of showing that the Court abused its discretion.

### D. The Defendants' Appeal Is Not Likely To Secure a Reversal or New Trial.

The defendants have not shown that any of the issues they identify raise a substantial question, let alone that a favorable determination on one "is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed." *Bayko*, 774 F.2d at 522. This is because, even if the defendants succeed on, for example, their argument that a payment to USC cannot constitute a bribe, the property fraud convictions would stand.[2] As to the conspiracy conviction on Count One, for example, the defendants will need to succeed on *both* claims to prevail. Likewise, even if some of the evidentiary issues were to be decided in the defendants' favor, any error would be harmless in light of the overwhelming evidence of their guilt. *See, e.g.*, *United States v. Altvater*, 954 F.3d 45, 54-55 (1st Cir. 2020) (affirming conviction over defendant's appeal of exclusion of evidence under harmless error review). Even on the defendants' prejudicial

---

[2] So, too, would Wilson's tax conviction.

variance claim, at most they argue that they were prejudiced because the government did not prove everything alleged in the indictment, which is not the standard for reversal or a new trial. Accordingly, even if the defendants could show substantial questions on the issues raised, they cannot satisfy the standard that those questions, if decided in their favor, would likely result in reversal or a new trial.

## CONCLUSION

For the foregoing reasons, the defendants are not entitled to a stay of their sentences pending appeal.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By:   */s/ Kristen A. Kearney*
      KRISTEN A. KEARNEY
      LESLIE A. WRIGHT
      STEPHEN E. FRANK
      IAN J. STEARNS
      Assistant U.S. Attorneys

## Certificate of Service

I, Kristen A. Kearney, hereby certify that the foregoing document filed through the ECF system will be sent electronically to counsel for the defendants.

By:   */s/ Kristen A. Kearney*
      KRISTEN A. KEARNEY
      Assistant U.S. Attorney