# EXHIBIT A

**From:** Smith, Robert T. <robert.smith1@katten.com>
**Sent:** Monday, May 2, 2022 5:03 PM
**To:** ian.stearns@usdoj.gov; kristen.kearney@usdoj.gov; leslie.wright@usdoj.gov; stephen.frank@usdoj.gov; alexia.devincentis@usdoj.gov; donald.lockhart2@usdoj.gov; Carol.Head@usdoj.gov; justin.o'connell@usdoj.gov; raquelle.kaye@usdoj.gov; Francisco, Noel J. <njfrancisco@jonesday.com>; Roth, Yaakov M. <yroth@JonesDay.com>; Basile, Marco P. <mbasile@jonesday.com>; Graver, Harry S. <hgraver@jonesday.com>; Michael.kendall@whitecase.com; Lauren.papenhausen@whitecase.com; atomback@mclaughlinstern.com
**Cc:** Fleming, Mary C. <mary.fleming@katten.com>; Gray, Timothy H. <timothy.gray@katten.com>; Notter, Kenneth <Knotter@mololamken.com>; Davis, Elliott M. (SHB) <edavis@shb.com>
**Subject:** United States v. Wilson, No. 22-1138 (1st Cir.): ECF Down / Amici Curiae Brief of Law Professors

<span style="color:red">** External mail **</span>

Dear counsel,

I represent a number of law professors who intend to file an *amici curiae* brief in support of the appellant and reversal in *United States v. Wilson*, No. 22-1138 (1st Cir.). As of the drafting of this e-mail, however, the First Circuit's CM/ECF system is down.

I have been instructed by the clerk's office to continue to attempt to file the brief today and, if the system still will not allow it, to resume my efforts tomorrow. I have been told that the court is aware of the issue, and should I not be able to file until tomorrow, I will not be required to file a motion seeking to file my clients' brief out of time.

Although not instructed to do so by the clerk's office, I wanted to provide you with a copy of the brief that I will file when the system allows. As noted in the brief, both parties have consented to its filing.


Rob

**Robert T. Smith**
Partner

**Katten**
Katten Muchin Rosenman LLP
2900 K Street NW, North Tower - Suite 200 | Washington, DC 20007-5118
direct +1.202.625.3616
robert.smith1@katten.com | katten.com

```
=========================================================
CONFIDENTIALITY NOTICE:
This electronic mail message and any attached files contain information intended for the exclusive
use of the individual or entity to whom it is addressed and may contain information that is
proprietary, privileged, confidential and/or exempt from disclosure under applicable law.  If you
are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or
distribution of this information may be subject to legal restriction or sanction.  Please notify
the sender, by electronic mail or telephone, of any unintended recipients and delete the original
message without making any copies.
=========================================================
NOTIFICATION:  Katten Muchin Rosenman LLP is an Illinois limited liability partnership that has
elected to be governed by the Illinois Uniform Partnership Act (1997).
=========================================================
```

**No. 22-1138**

IN THE

# United States Court of Appeals
# for the First Circuit

UNITED STATES OF AMERICA,

– v. –

JOHN WILSON,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the District of Massachusetts,  No. 19-cr-10080
Hon. Nathaniel M. Gorton, U.S. District Judge

**BRIEF OF *AMICI CURIAE* LAW PROFESSORS IN
SUPPORT OF DEFENDANT-APPELLANT AND REVERSAL**

Robert T. Smith
Mary Fleming
Timothy H. Gray
KATTEN MUCHIN ROSENMAN LLP
2900 K Street NW, Suite 200
Washington, DC 20007
202-625-3500
robert.smith1@katten.com

*Counsel for* Amici Curiae

# TABLE OF CONTENTS

**Page**

Statement of Interest of *Amici Curiae*...................................................................1

Argument ...........................................................................................................2

I.    Bribery is historically and conceptually an offense predicated on personal gain by an agent that is not shared by the principal and corrupts the agent's loyalty .........................................................................4

II.    The government's theory that a payment to the principal supports a bribery prosecution cannot be squared with law, history, or logic .................................................................................................10

III.    The Supreme Court has repeatedly limited the scope of federal corruption statutes...................................................................................16

Conclusion........................................................................................................22

Certificate of Service ..........................................................................................23

Certificate of Compliance ...................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

CASES:

*Am. Distilling Co. v. Wisconsin Liquor Co.*,
104 F.2d 582 (7th Cir. 1939)..................................................................... 9-10

*Black v. United States*,
561 U.S. 465 (2010) ...................................................................................19

*Jaclyn, Inc. v. Edison Bros. Stores, Inc.*,
170 N.J. Super. 334, 406 A.2d 474 (Law. Div. 1979) ................................8

*Kelly v. United States*,
140 S. Ct. 1565 (2020) ...................................................... 3, 14, 20-21

*McNally v. United States*,
483 U.S. 350 (1987) ..........................................................................3, 17, 20

*Skilling v. United States*,
561 U.S. 358 (2010) .............................................................. 3, 12, 15-19, 21

*Sorich v. United States*,
129 S. Ct. 1308 (2009) ...............................................................................18

*United States v. Black*,
625 F.3d 386 (7th Cir. 2010).......................................................................19

*United States v. Czubinski*,
106 F.3d 1069 (1st Cir. 1997) ....................................................................15

*United States v. Ochs*,
842 F.2d 515 (1st Cir. 1988) .........................................................................4

*United States v. Thompson*,
484 F.3d 877 (7th Cir. 2007)............................................................. 4, 12-13

*United States v. Worrall*,
   2 U.S. 384 (1798) ........................................................................................7


STATUTES:

18 U.S.C. § 201 ...........................................................................................7

18 U.S.C. § 201(b)(2) ..................................................................................7

18 U.S.C. § 666 .....................................................................................11, 14

18 U.S.C. § 1341 .........................................................................................17

18 U.S.C. § 1346 ..........................................................................11, 14, 17-18

An Act for the Punishment of Certain Crimes against the
   United States, ch. 9, 1 Stat. 112 (1790) .....................................6-7

An Act to Prevent Frauds upon the Treasury of the United
   States, ch. 81, 10 Stat. 170 (1853) ...................................................7

Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, tit. VII,
   102 Stat. 4181 .....................................................................................18

Cal. Penal Code § 641.3(a) ........................................................................9

N.Y. Penal Law § 180.00 ............................................................................9

Prevention of Corruption Act 1906,
   6 Edw. 7, ch. 34 (1906) ......................................................................6

Public Bodies Corrupt Practices Act 1889,
   52 & 53 Vict. ch. 69 (1889) ..........................................................5-6

OTHER AUTHORITIES:

*Black's Law Dictionary* (11th ed. 2019) ...................................................................4

William Blackstone, *Commentaries* (1787) ............................................................5

Jeffrey R. Boles, *Examining the Lax Treatment of Commercial*
    *Bribery in the United States: A Prescription for Reform*,
    51 Am. Bus. L.J. 119 (2014) .............................................................9

Jeffrey R. Boles, *The Two Faces of Bribery: International Corruption*
    *Pathways Meet Conflicting Legislative Regimes*,
    35 Mich. J. Int'l L. 673 (2014) ..................................................... 8-9

Rudolf Callmann, *The Law of Unfair Competition, Trademarks and*
    *Monopolies* (3d ed. 1968) ...............................................................8

Edward Coke, *The Third Part of the Institutes of the Laws of*
    *England* (J. Thomas ed., 1826) ........................................................5

William Hawkins, *A Treatise of the Pleas of the Crown*
    (Thomas Leach ed., 6th ed. 1788) ...................................................5

James Lindgren, *The Theory, History, and Practice of the Bribery-*
    *Extortion Distinction*, 141 U. Pa. L. Rev. 1695 (1993) ...............................5

*Wharton's Criminal Law* (16th ed. 2021) ...............................................................6

## STATEMENT OF INTEREST OF *AMICI CURIAE**

*Amici curiae* are law professors who teach, research, and publish on

criminal law, including federal criminal law:

- Albert W. Alschuler, Julius Kreeger Professor of Law and Criminology Emeritus, The University of Chicago Law School;

- Randall D. Eliason, Professorial Lecturer in Law, The George Washington University Law School;

- The Honorable Nancy Gertner, Retired Judge, United States District Court for the District of Massachusetts; Senior Lecturer, Harvard Law School;

- Stephen Smith, Diane and M.O. Miller II Research Professor of Law, University of Notre Dame Law School; and

- J. Kelly Strader, Irwin R. Buchalter Professor of Law, Southwestern Law School.

*Amici* have a strong interest in assuring that the federal criminal code is

interpreted correctly and within the limits established by the Constitution

and Congress.**

---

* All parties consent to the filing of this brief. No counsel for any party in this case authored this brief in whole or in part. No person or entity—other than *amici curiae* and their counsel—made a monetary contribution specifically for the preparation or submission of this brief.

** Although *amici* are affiliated with various law schools, they are signatories to this brief only in their individual capacities. Nothing in this brief should be construed as the position of the academic institutions with which *amici* are affiliated.

## ARGUMENT

The bribery issue presented in this case is straightforward: Can a payment to a purported *victim* constitute a *bribe* of that victim's employee? The answer is equally straightforward: It cannot. Bribery is at heart a corruption offense. What bribery corrupts is the behavior of an agent who owes a duty to a principal—whether the principal is the public (in the case of a politician) or an employer (as in this case). The agent's loyal behavior is corruptly influenced by the receipt of some private benefit from a third party outside the principal-agent relationship which, unknown to the principal, induces the agent to act in the interest of his or her benefactor rather than in the interest of the principal. That is the definition of the crime of bribery. Preventing and punishing such corrupt misalignments of interest is the structural logic of bribery.

If, however, the principal knows about the payment, approves of it, and is in fact the one receiving the benefit, then there is no violation of duty, no private benefit to the agent, and, by definition, no bribery. Yet those are the facts of *this* case.

The Government prosecuted John Wilson for corruption offenses based on a legally incoherent theory in which the payments that supposedly

2

constituted bribes were paid to the alleged victims (the universities) themselves. That is not bribery. All of the essential components of the crime of bribery are lacking when the thing of value in question is provided to the supposed *victim* of the bribery offense and with the victim's knowledge.

This prosecution is part of a pattern. For decades, federal prosecutors have sought to charge a wide range of deceptive or otherwise unsavory conduct as federal honest services fraud, often without regard to whether that misconduct was tethered to any recognized common-law crime. And for decades, the Supreme Court has regularly rebuffed those efforts, insisting that such prosecutions be limited to a core group of traditional criminal offenses. *See, e.g.*, *McNally v. United States*, 483 U.S. 350 (1987); *Skilling v. United States*, 561 U.S. 358 (2010); *Kelly v. United States*, 140 S. Ct. 1565 (2020). In the latest example of this ongoing push-and-pull, prosecutors in Mr. Wilson's case have sought to accommodate the Supreme Court's restrictions by characterizing Mr. Wilson's conduct as bribery. But in doing so, they have distorted the elements of the crime of bribery beyond all recognition. Simply labeling something "bribery" does not make it so. Mr. Wilson's conviction should be reversed.

3

## I.  BRIBERY IS HISTORICALLY AND CONCEPTUALLY AN OFFENSE PREDICATED ON PERSONAL GAIN BY AN AGENT THAT IS NOT SHARED BY THE PRINCIPAL AND CORRUPTS THE AGENT'S LOYALTY.

This case does not involve "bribes" because Mr. Wilson made his payments to the *principal*, not the purportedly bribed *agent*. Intrinsic to the offense of bribery is that the person being bribed receives some kind of *personal benefit* or *private gain* from the transaction, bestowed by a third party outside the principal-agent relationship. *See, e.g.*, *Bribery*, *Black's Law Dictionary* (11th ed. 2019) (defining bribery as "[t]he corrupt payment, receipt, or solicitation of a private favor for official action"); *cf. United States v. Thompson*, 484 F.3d 877, 884 (7th Cir. 2007); *United States v. Ochs*, 842 F.2d 515, 522 (1st Cir. 1988) (describing pre-*McNally* honest services fraud cases as establishing that officials' "misuse of their office . . . *for private gain* is a fraud proscribed by the federal mail fraud statute" (emphasis added)). That private gain, in turn, influences the agent's behavior and corrupts the relationship of trust and loyalty between agent and principal.

The earliest English statutory and common-law bribery prohibitions were motivated by concerns about corrupt private gains by public officials—the prospect that a public servant might illegitimately increase his or her

fortunes in exchange for faithless behavior. "[B]ribery arose as an offense in English law primarily in contexts suggesting concern for how officials acquire wealth." James Lindgren, *The Theory, History, and Practice of the Bribery-Extortion Distinction*, 141 U. Pa. L. Rev. 1695, 1705 (1993). Hence, the earliest English laws proscribing bribery and like crimes identified the principal "wrong" of those offenses as "the acquisitive uses that can be put to state power." *Id.* at 1704.

Personal gain or reward was equally central to the *common-law* crime of bribery, an offense of judges "or other person concerned in the administration of justice." 4 William Blackstone, *Commentaries* *139 (1787). The crime consisted of taking "any undue reward to influence [] behaviour in office." *Id.*; *accord* Edward Coke, *The Third Part of the Institutes of the Laws of England* 145 (J. Thomas ed., 1826) ("Bribery is a great misprision when any man in Judicial place takes any Fee or Pension, Robe, or Livery, Gift, Reward or Brocage of any person, that hath to do before him any way, for doing his office, or by colour of his office . . . ."); 1 William Hawkins, *A Treatise of the Pleas of the Crown* 316 (Thomas Leach ed., 6th ed. 1788).

By the late Nineteenth Century, the English conception of bribery grew to encompass "public bodies" generally, including Parliament. *See* Public

Bodies Corrupt Practices Act 1889, 52 & 53 Vict. ch. 69, s. 1 (1889). Within decades, recognizing that private benefit could compromise an agent's relationship with its principal *outside* the public sphere, Parliament extended the crime of bribery to the commercial realm. *See* Prevention of Corruption Act 1906, 6 Edw. 7, ch. 34 (1906) (forbidding an agent from "corruptly accept[ing] or obtain[ing], . . . from any person, for himself or for any other person, any gift or consideration as an inducement or reward for doing or forbearing to do, . . . any act in relation to his principal's affairs or business, or for showing or forbearing to show favour or disfavour, to any person in relation to his principal's affairs or business").

Early American law largely adopted these common-law and statutory conceptions of bribery, and the development of that offense in the United States broadly paralleled its evolution in English law. *See, e.g.,* 3 *Wharton's Criminal Law* § 43:1 (16th ed. 2021). The First Congress prohibited "giv[ing] any sum or sums of money, or any other bribe, present or reward, or any promise, contract, obligation or security, for the payment or delivery of any money, present or reward, or any other thing to obtain or procure the opinion, judgment or decree of any judge or judges of the United States." An Act for the Punishment of Certain Crimes against the United States, ch. 9,

§ 21, 1 Stat. 112, 117 (1790). By 1798, it was unlawful to bribe customs and excise officers as well as judges, *see United States v. Worrall*, 2 U.S. 384, 390 (1798), and in 1853 Congress enacted a general bribery statute applicable to federal officials, *see* An Act to Prevent Frauds upon the Treasury of the United States, ch. 81, § 6, 10 Stat. 170, 171 (1853).

This same concept is enshrined in the current version of the primary federal bribery statute: Title 18, United States Code § 201. That statute prohibits a public official from demanding, seeking, or accepting "anything of value" in exchange for being influenced in the performance of an official act, being influenced to engage in a fraud against the United States, or being induced to violate his or her official duty. 18 U.S.C. § 201(b)(2). Under any section of that statute, there is no bribery in the absence of a "thing of value" given or promised to the public official. Bribery is often described as a *quid pro quo*, or "this for that"—because you give me this, I will do that for you. The benefit to the disloyal agent is the *quid*—without it, there simply is no bribery.

The United States thus inherited from England a concept of bribery that recognized private gain by public officials as the central wrong in the crime of bribery. It was wrong precisely because of its acute potential to

misalign the interests of agent and principal, and to cause those officials to betray their public trust. And, as did England, many U.S. jurisdictions (including the federal government) imported the concept of bribery from the public to the private sphere. Such "commercial" or private-sector bribery operates with the same underlying logic: The agent receives a private benefit, unshared by the principal, to induce the agent's faithless conduct. Indeed, the principal's lack of knowledge or approval of the agent's benefit is a *sine qua non* of the offense: "At common law, a private bribe is an 'offer of consideration *to another's employee or agent* in the expectation that the latter will, *without fully informing his principal of the "gift,"* be sufficiently influenced by the offer to favor the offeror over other competitors.'" Jeffrey R. Boles, *The Two Faces of Bribery: International Corruption Pathways Meet Conflicting Legislative Regimes*, 35 Mich. J. Int'l L. 673, 681 (2014) (emphasis added) (quoting 2 Rudolf Callmann, *The Law of Unfair Competition, Trademarks and Monopolies* § 49 (3d ed. 1968)).

"The evil of commercial bribery is the invasion of the principal's right to undivided loyalty from his agent *which results from secret payments to the agent*." *Jaclyn, Inc. v. Edison Bros. Stores, Inc.*, 170 N.J. Super. 334, 354, 406 A.2d 474, 485 (Law. Div. 1979) (emphasis added). Accordingly, "jurisdictions

largely require that the private bribery transpire without the knowledge and consent of the agent's principal." Boles, 35 Mich. J. Int'l L. at 682; *see, e.g.*, N.Y. Penal Law § 180.00 ("A person is guilty of commercial bribing . . . when he confers, or offers or agrees to confer, any benefit upon any employee, agent or fiduciary *without the consent of the latter's employer or principal*, with intent to influence his conduct in relation to his employer's or principal's affairs." (emphasis added)); Cal. Penal Code § 641.3(a) ("Any employee who solicits, accepts, or agrees to accept money or any thing of value from a person other than his or her employer, other than in trust for the employer, *corruptly and without the knowledge or consent of the employer*, in return for using or agreeing to use his or her position for the benefit of that other person, and any person who offers or gives an employee money or any thing of value under those circumstances, is guilty of commercial bribery." (emphasis added)).

In short, "[g]ifts turn into commercial bribes when they are coupled with the intent to induce, *along with the employer's lack of knowledge* of the gift." Jeffrey Boles, *Examining the Lax Treatment of Commercial Bribery in the United States: A Prescription for Reform*, 51 Am. Bus. L.J. 119, 126 (2014) (emphasis added); *cf. Am. Distilling Co. v. Wisconsin Liquor Co.*, 104 F.2d 582, 585 (7th

Cir. 1939) (no bribe under unfair competition statute where "gift . . . was made directly to the employer" and "[n]one of the gifts was made secretly to an officer or employee or representative of the trade buyer for the purpose of inducing the donee to promote directly purchases by his employer").

This history makes it clear that the crime of bribery has the following essential components: (1) a principal-agent relationship or similar relationship of trust and confidence; (2) a third party outside that relationship who provides a private benefit to the agent without the principal's knowledge or consent; and (3) the purpose of the benefit is to corrupt the agent's relationship with the principal and induce the agent to violate his or her duty to the principal and act to benefit the third party. Politicians or employees may engage in other kinds of inappropriate or dishonest behavior, but absent these elements, that misbehavior is not bribery.

## II.    THE GOVERNMENT'S THEORY THAT A PAYMENT TO THE PRINCIPAL SUPPORTS A BRIBERY PROSECUTION CANNOT BE SQUARED WITH LAW, HISTORY, OR LOGIC.

As this historical overview shows, criminalization of bribery originated in a desire to prevent individual enrichment ("private" or "personal" gain) through an agent's exploitation of his position of

responsibility. Such private gain, the reasoning goes, necessarily corrupts the agent's relationship with the principal, whether it is the body politic or a private corporation. But this logic no longer holds if the principal has knowledge of or consents to the gain—let alone if the principal *receives* the gain instead of the agent. These principles offer concrete guidance for the Court in this case and require reversal of Mr. Wilson's bribery convictions.

*First*, the indictment alleged, under 18 U.S.C. § 1346 and 18 U.S.C. § 666, that John Wilson agreed to bribe certain employees at the University of Southern California, Stanford, and Harvard. *See* A251-54. But all of the alleged "bribes" were directed to, or intended for, those institutions, not the employees. A3643-44. The parties stipulated that none of the funds deposited in the schools' accounts were misappropriated by or directed to the employees who were allegedly bribed. A3213. In other words, the coaches—the agents—did not receive any of the money that Mr. Wilson donated to the Universities. *Id.* As discussed, however, to define payments directed to a principal as a "bribe" of its agent is a conceptual, historical, and legal *non sequitur*. A key component of any bribery offense—private gain provided by a third party to a disloyal agent without the principal's

11

knowledge or consent—was missing here. As a simple definitional matter, the facts the government proved here do not establish bribery.

Nor, as a conceptual matter, could the Government establish the requisite private benefits with evidence that the alleged bribe-taker might hypothetically receive indirect professional benefits *related* to the payment—such as professional advancement within the University, for example. Any such indirect benefits would be knowingly provided *by the principal* to the agent in the nature of a *reward* for the agent's behavior. Bribery, however, involves a third party *outside* the agency relationship providing something of value to induce the agent to corrupt that relationship by breaching his duty to the principal. *See Skilling*, 561 U.S. at 400 (describing pre-*McNally* honest services fraud as involving "the betrayed party suffer[ing] no deprivation of money or property," but "a third party, who had not been deceived, provided the enrichment"); *Thompson*, 484 F.3d at 884 ("[T]he history of honest-services prosecutions is one in which the 'private gain' comes from third parties who suborn the employee with side payments."). Potential future benefits consciously bestowed not by an outside third party but by the principal itself and within the principal-agent relationship do not satisfy these criteria. *Cf. Thompson*, 484 F.3d at 884 (noting absence of

authority "holding that an increase in official salary, or a psychic benefit such as basking in a superior's approbation (and thinking one's job more secure), is the sort of 'private gain' that makes an act criminal"). It makes no sense to say that a principal could complete a bribe of its own agent by knowingly providing something of value to that agent. Again, as a bribery theory, this is legally incoherent.

*Second*, although conduct may still constitute bribery if the requisite personal gain or personal benefit goes to a third party instead of directly to the agent, the payment or benefit to the third party still has to be in the nature of a bribe—a benefit bestowed outside of the principal-agent relationship, that provides a private benefit to the agent (or its designees), unknown to or unauthorized by the principal, to induce the agent to violate their duty to the principal. A payment to an agent's relative or preferred charity, without the principals' knowledge, supplies such a private benefit. But to say that a payment *to the principal* could satisfy this requirement is, again, nonsensical—and that's all that was involved in Mr. Wilson's case. In this scenario, the principal obviously knows about and approves any such payment, and the principal—not some third party outside the agent-principal relationship—is receiving the benefit. A known benefit provided

13

directly to the principal does not harm the principal and does not corrupt the agent-principal relationship—which is the essence of bribery.

*Third*, although the conduct at issue here might be considered unethical or unsavory, that does not make it bribery—or any kind of federal crime. As discussed in more detail below, the consistent lesson of the Supreme Court's cases in this area for more than forty years is that not every instance of unsavory conduct is a federal felony, and it is not the role of federal prosecutors to police all such misbehavior. Even if we assume that a coach deceived his University about some particulars of a student's record, deception is not bribery unless the essential elements of that offense are present. Here, they are not. Employee misconduct such as misleading a superior about the athletic qualifications of an applicant may be cause for discipline or termination, but it is not a federal crime. *Cf. Kelly*, 140 S. Ct. at 1571 (holding that not all misconduct amounts to fraud and that limitations on Sections 666 and 1346 "prevent[] these statutes from criminalizing all acts of dishonesty by state and local officials"); *McNally*, 483 U.S. at 360 (refusing to construe mail fraud statute "in a manner that leaves its outer boundaries ambiguous and involves the Federal Government in setting standards of disclosure and good government for local and state officials").

14

This Court recognized the importance of this principle in a leading pre-*Skilling* honest services fraud case, *United States v. Czubinski*, 106 F.3d 1069 (1st Cir. 1997). The defendant, an Internal Revenue Service employee, was charged with several felonies, including honest services fraud, for unauthorized browsing through the tax returns of various individuals. *Czubinski*, 106 F.3d at 1072. In a decision that presaged *Skilling,* this Court held that the government's conception of honest services fraud was far too broad. The defendant in *Czubinski* undoubtedly had engaged in job-related misconduct, but not all dishonesty or misconduct amounts to a federal felony. And although the defendant may have been on notice that his behavior could get him disciplined or fired, he was not on notice that it might result in a federal prosecution. *Id.* at 1077. As this Court noted, the danger in such a sweeping definition of honest services fraud "is one of transforming governmental workplace violations into felonies." *Id.* "We find no evidence," the Court continued, "that Congress intended to create what amounts to a draconian personnel regulation." *Id.*

*Finally*, as discussed below, the Supreme Court held in *Skilling* that honest services fraud is limited to cases of "bribes or kickbacks," the "core" or "paradigmatic" pre-*McNally* predicates, and refused to extend it to

15

"conduct outside that core category." *Skilling*, 561 U.S. at 404-05, 409-11. Although the Government has chosen to *label* Mr. Wilson's conduct "bribery," its terminology is not controlling—the underlying conduct is. And no counsel on either side has identified a case where a gift to a principal was held to constitute bribery of that principal's agent. This is not surprising, because the structure of the alleged "bribe" here bears no resemblance to the actual crime of bribery. Predicating a bribery prosecution on the dubious, unprecedented notion that a payment to a *principal* is a bribe of the *agent* contravenes the Supreme Court's command to hew to "core" offenses. This was certainly not "core" or "paradigmatic" bribery as *Skilling* has defined those terms—indeed, it was not bribery at all.

## III.   THE SUPREME COURT HAS REPEATEDLY LIMITED THE SCOPE OF FEDERAL CORRUPTION STATUTES.

The Government's position—that a payment to a principal can be an illegal "bribe" of the agent—is just the sort of unprincipled expansion of federal corruption law that the Supreme Court has repeatedly rejected. Indeed, the Government has a long history of attempting to expand laws proscribing bribery and fraud, which the Supreme Court has consistently rebuffed, including by limiting honest services fraud to conduct fitting core

16

bribery or kickbacks. *Skilling*, 561 U.S. at 404-05, 409-11. The Court has done so out of a commitment to "construe, not condemn, Congress' enactments." *Id.* at 403. And given serious constitutional concerns, including vagueness and federalism, the only way to construe the statutes constitutionally is to vigilantly limit them. *See id.* at 402, 404.

*McNally* was the first case in a line of Supreme Court decisions that would repeatedly limit the scope of federal corruption laws. At issue there was whether the federal mail fraud statute, 18 U.S.C. § 1341, protected not only property rights, but also, as the Government argued, "intangible rights to honest and impartial government." *McNally*, 483 U.S. at 355. The Court rejected the Government's theory, holding the statute protects only property rights—not the intangible right to honest services. *Id.* at 360. That decision was based on concerns that a broad construction of the statute would leave its "outer boundaries ambiguous," and invite the federal government into the business of policing ethics for public and private employees and fiduciaries. *Id.*

Congress responded the following year by enacting 18 U.S.C. § 1346: "For the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of

17

honest services." *See* Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, tit. VII, § 7603(a), 102 Stat. 4181, 4508. But § 1346's vague language implicated the very concerns the Supreme Court had hoped to avoid. As Justice Scalia put it in dissenting from a denial of *certiorari*, the Government proceeded to invoke § 1346's nebulous language "to impose criminal penalties upon a staggeringly broad swath of behavior." *Sorich v. United States*, 129 S. Ct. 1308, 1309 (2009) (Scalia, J., dissenting from denial of certiorari). This raised significant due process concerns about the ability of average citizens to be on notice of what the law requires and to conform their behavior accordingly.

The question of § 1346's scope and constitutionality came before the Supreme Court in *Skilling*, where the Court was again required to limit the scope of honest-services fraud. The Court looked to "the doctrine developed in pre-*McNally* cases in an endeavor to ascertain the meaning of the phrase 'the intangible right of honest services.'" *Skilling*, 561 U.S. at 404. "In the main," the Court concluded, "the pre-*McNally* cases involved fraudulent schemes to deprive another of honest services through bribes or kickbacks supplied by a third party who had not been deceived." *Id.* at 404. Thus, the Court limited § 1346 to such "core" bribery and kickbacks. *Id.* at 405-12. Once

again, the Court imposed this limitation out of concern that the statute was otherwise impermissibly vague. *See id.* at 402, 408-09. Whatever the theoretical outer parameters of "honest services," the Court held, no one could fail to be on notice that bribery and kickbacks were core corrupt misconduct that could be sanctioned by the criminal law.

Accompanying *Skilling* was a companion case also proceeding on an honest-services theory, *Black v. United States*, 561 U.S. 465 (2010). *Black* was reversed and remanded for the same reasons as was *Skilling.* The government charged that the defendant engaged in a tax scheme that benefitted him (but in no way harmed his company) and failed to disclose that information to his company. *Id.* at 467-68. The Court held this deceptive conduct did not involve bribery or kickbacks and thus did not constitute honest services fraud. *Id.* On remand, the Seventh Circuit acknowledged the government's theory would not pass muster because, under newly clarified law, § 1346 was limited to core bribery and kickbacks. *United States v. Black*, 625 F.3d 386, 392-92 (7th Cir. 2010). Deceptive conduct by an employee that caused no harm to the employer did not qualify as honest services fraud.

Facing the limits imposed by *McNally* and *Skilling*, prosecutors have continued to look for alternative theories to bring cases that previously

19

would have unhesitatingly been charged as honest services fraud. The most recent example that reached the Supreme Court is *Kelly v. United States*, 140 S. Ct. 1565 (2020). There, the Government took an expansive view of "property," attempting to charge as property fraud defendants' dishonest efforts to "reallocat[e] the [George Washington] Bridge's toll lanes." *Kelly*, 140 S. Ct. at 1572. The Court held the scheme was mischarged because it was not directed at property. *See id.* In so holding, it noted the same concern it had in *McNally* and *Skilling*: "To rule otherwise would undercut this Court's oft-repeated instruction: Federal prosecutors may not use property fraud statutes to 'set[ ] standards of disclosure and good government for local and state officials.'" *Id.* at 1574 (quoting *McNally*, 483 U. S. at 360).

The same theme is present in this case. Because *Skilling* limited honest-services fraud to "core" bribery, the Government has attempted to shoehorn Mr. Wilson's conduct into a traditional bribery paradigm. But as discussed in Parts I and II above, Mr. Wilson's conduct simply was not bribery. And the due process concerns at the heart of the Supreme Court's decisions in this area are highlighted by the facts of Mr. Wilson's case. People may disagree over whether it is fair or socially desirable for private universities to admit the children of wealthy donors. But before this prosecution, no one

ever suggested that a parent who made such a donation, hoping his or her child might benefit, could be risking federal prosecution and prison.

The Supreme Court in *Kelly* rejected what it called the government's attempt to do an "end-run" around the Court's decisions limiting the mail and wire fraud statutes to deprivations of property, recognizing that "not every corrupt act by state or local officials is a federal crime." 140 S. Ct. at 1574. The same principle applies here with equal force. In *Kelly*, the prosecution labeled as "fraud" conduct that was not in fact fraud. Here, the prosecution has labeled as "bribery" conduct that was not bribery. Allowing this conviction to stand would sanction another government-attempted "end-run" — this time around *Skilling*. It would effectively "proscribe a wider range of offensive conduct" beyond bribes and kickbacks, thus "rais[ing] the due process concerns underlying the vagueness doctrine," *Skilling*, 561 U.S. at 408, and implicating federalism concerns as well, *id.* at 402. This court should not allow it.

## CONCLUSION

The Court should reverse Mr. Wilson's conviction.

Dated: May 2, 2022                    Respectfully submitted,


/s/ Robert T. Smith
Robert T. Smith
Mary Fleming
Timothy H. Gray
KATTEN MUCHIN ROSENMAN LLP
2900 K Street NW, Suite 200
Washington, DC 20007

*Counsel to* Amici Curiae

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Brief of *Amici Curiae* Law Professors in Support of Defendant-Appellant and Reversal has been electronically filed by tendering it to the Office of the Clerk of the United States Court of Appeals for the Fifth Circuit on May 2, 2022.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Robert T. Smith
Robert T. Smith
*Counsel for* Amici Curiae

## CERTIFICATE OF COMPLIANCE

As required by Rule 32(g)(1) of the Federal Rules of Appellate Procedure, I hereby certified that the foregoing Brief of *Amici Curiae* Law Professors in Support of Defendant-Appellant and Reversal:

1. complies with the type-volume limitation of Rule 29(a)(5) because this memorandum contains 4,580 words, exclusive of the material not counted under Rule 32(f).

2. complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this memorandum has been prepared in a proportionally spaced typeface using Word 2016 in Book Antiqua typeface with a 14-point font.

/s/ Robert T. Smith
Robert T. Smith
*Counsel for* Amici Curiae

24