# EXHIBIT B

**From:** Notter, Kenneth <Knotter@mololamken.com>
**Sent:** Monday, May 2, 2022 5:36 PM
**To:** Davis, Elliott M. (SHB) <edavis@shb.com>; Smith, Robert T. <robert.smith1@katten.com>; ian.stearns@usdoj.gov; kristen.kearney@usdoj.gov; leslie.wright@usdoj.gov; stephen.frank@usdoj.gov; alexia.devincentis@usdoj.gov; donald.lockhart2@usdoj.gov; Carol.Head@usdoj.gov; justin.o'connell@usdoj.gov; raquelle.kaye@usdoj.gov; Francisco, Noel J. <njfrancisco@jonesday.com>; Roth, Yaakov M. <yroth@JonesDay.com>; Basile, Marco P. <mbasile@jonesday.com>; Graver, Harry S. <hgraver@jonesday.com>; Michael.kendall@whitecase.com; Lauren.papenhausen@whitecase.com; atomback@mclaughlinstern.com; Fleming, Mary C. <mary.fleming@katten.com>; Gray, Timothy H. <timothy.gray@katten.com>; justin.oconnell@usdoj.gov
**Cc:** Chesin, Scott A. (SHB) <schesin@shb.com>; Jackson, Katie (SHB) <krjackson@shb.com>; Molo, Steven <smolo@mololamken.com>; Shur, Justin <jshur@mololamken.com>; Grinberg, Leonid <lgrinberg@mololamken.com>; miacopino@brennanlenehan.com
**Subject:** RE: United States v. Wilson, No. 22-1138 (1st Cir.): ECF Down / Amici Curiae Brief of Law Professors

<span style="color:red">** External mail **</span>

Dear Counsel:

We represent the National Association of Criminal Defense Lawyers and the American Board of Criminal Lawyers, which intend to appear as *amici curiae* in support of Mr. Wilson in the above-captioned matter.  Like the other *amici*, we are unable to file through the Court's ECF system.  The Court has instructed counsel to continue trying to file today and tomorrow, stating that briefs filed tomorrow will be considered timely.

For your convenience, we are attaching the brief we intend to file when the ECF system is back up.  We can represent that, other than (potentially) the date on the signature block and a certificate of service, the version we will file through the ECF system will be substantively identical to the one attached here.

All the best,
Ken Notter

---

**From:** Davis, Elliott M. (SHB) <edavis@shb.com>
**Sent:** Monday, May 2, 2022 4:25 PM
**To:** Smith, Robert T. <robert.smith1@katten.com>; ian.stearns@usdoj.gov; kristen.kearney@usdoj.gov; leslie.wright@usdoj.gov; stephen.frank@usdoj.gov; alexia.devincentis@u justin.o'connell@usdoj.gov; raquelle.kaye@usdoj.gov; njfrancisco@jonesday.com; yroth@jonesday.com; mbasile@jonesday.com; N Fleming, Mary C. <mary.fleming@katten.com>; Gray, Timothy H. <timothy.gray@katten.com>; Notter, Kenneth <Knotter@mololamken.com>
**Cc:** Chesin, Scott A. (SHB) <schesin@shb.com>; Jackson, Katie (SHB) <krjackson@shb.com>
**Subject:** RE: United States v. Wilson, No. 22-1138 (1st Cir.): ECF Down / Amici Curiae Brief of Law Professors

Dear Counsel:

Scott, Katie, and I represent eleven former United States Attorneys as *amici curiae* in support of Defendant-Appellant and vacatur.

I received the same guidance from the First Circuit Clerk's office as Rob.  To that end, our amicus brief is attached.  I will continue trying to file this brief through CM/ECF later this evening.  If we are unable to file tonight, we will file it when CM/ECF regains functionality.  In that event, I will probably insert a footnote memorializing the CM/ECF issues.  The dates, tables, and certificates may change, but the substance of the brief will not.

Thank you,
Elliott

**Elliott M. Davis**
*Of Counsel*
Shook, Hardy & Bacon L.L.P.

202.662.4867 | edavis@shb.com

---

**From:** Smith, Robert T. <robert.smith1@katten.com>
**Sent:** Monday, May 2, 2022 5:03 PM
**To:** ian.stearns@usdoj.gov; kristen.kearney@usdoj.gov; leslie.wright@usdoj.gov; stephen.frank@usdoj.gov; alexia.devincentis@usdoj.gov; donald.lockhart2 justin.o'connell@usdoj.gov; raquelle.kaye@usdoj.gov; njfrancisco@jonesday.com; yroth@jonesday.com; mbasile@jonesday.com; N
**Cc:** Fleming, Mary C. <mary.fleming@katten.com>; Gray, Timothy H. <timothy.gray@katten.com>; Notter, Kenneth <Knotter@mololamken.com>; Davis, Elliott M. (SHB) <edavis@shb.com>
**Subject:** United States v. Wilson, No. 22-1138 (1st Cir.): ECF Down / Amici Curiae Brief of Law Professors

<span style="color:red">EXTERNAL</span>

Dear counsel,

I represent a number of law professors who intend to file an *amici curiae* brief in support of the appellant and reversal in *United States v. Wilson*, No. 22-1138 (1st Cir.). As of the drafting of this e-mail, however, the First Circuit's CM/ECF system is down.

I have been instructed by the clerk's office to continue to attempt to file the brief today and, if the system still will not allow it, to resume my efforts tomorrow. I have been told that the court is aware of the issue, and should I not be able to file until tomorrow, I will not be required to file a motion seeking to file my clients' brief out of time.

Although not instructed to do so by the clerk's office, I wanted to provide you with a copy of the brief that I will file when the system allows. As noted in the brief, both parties have consented to its filing.


Rob

**Robert T. Smith**
Partner

**Katten**

Katten Muchin Rosenman LLP
2900 K Street NW, North Tower - Suite 200 | Washington, DC 20007-5118
direct +1.202.625.3616
robert.smith1@katten.com | katten.com

```
========================================================
CONFIDENTIALITY NOTICE:
This electronic mail message and any attached files contain information intended for the exclusive
use of the individual or entity to whom it is addressed and may contain information that is
proprietary, privileged, confidential and/or exempt from disclosure under applicable law.  If you
are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or
distribution of this information may be subject to legal restriction or sanction.  Please notify
the sender, by electronic mail or telephone, of any unintended recipients and delete the original
message without making any copies.
========================================================
NOTIFICATION:  Katten Muchin Rosenman LLP is an Illinois limited liability partnership that has
elected to be governed by the Illinois Uniform Partnership Act (1997).
========================================================
```

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

---

This e-mail may contain attorney work product, privileged and/or confidential information. It is intended to be subject to the Attorney Client privilege. It is intended only for the original recipients, and no other person is authorized to receive it. Please do not copy or forward this e-mail without the consent of the author. If you have received this e-mail in error please delete it immediately from your system and contact the author. Molo Lamken LLP is a limited liability partnership formed under the laws of New York and the liability of its partners is limited accordingly. The names Molo Lamken and MoloLamken shall refer to Molo Lamken LLP.

This email has been scanned for viruses and malware.

No. 22-1138

IN THE

# United States Court of Appeals

## FOR THE FIRST CIRCUIT

UNITED STATES OF AMERICA,

v.

JOHN WILSON,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the District of Massachusetts
No. 19-cr-10080
Hon. Nathaniel M. Gorton, U.S. District Judge

## BRIEF OF AMICI CURIAE THE NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS AND THE AMERICAN BOARD OF CRIMINAL LAWYERS IN SUPPORT OF DEFENDANT-APPELLANT JOHN WILSON AND REVERSAL

Michael J. Iacopino (#24002)
BRENNAN LENEHAN IACOPINO
  & HICKEY
85 Brook Street
Manchester, NH  03104
(603) 668-8300 (telephone)
(603) 668-1029 (fax)
miacopino@brennanlenehan.com

Steven F. Molo (#1203267)
Leonid Grinberg (#1203234)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY  10022
(212) 607-8160 (telephone)
(212) 607-8161 (fax)
smolo@mololamken.com
lgrinberg@mololamken.com

*Counsel for Amici Curiae*

*(Additional Counsel Listed on Inside Cover)*

Justin V. Shur (#1203238)
Kenneth E. Notter III (#1203190)
MOLOLAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
(202) 556-2000 (telephone)
(202) 556-2001 (fax)
jsur@mololamken.com
knotter@mololamken.com

*Counsel for Amici Curiae*
*the National Association of Criminal Defense Lawyers and*
*the American Board of Criminal Lawyers*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

*Amici Curiae* the National Association of Criminal Defense Lawyers and the American Board of Criminal Lawyers are nonprofit entities that do not have parent corporations.  No publicly held corporation owns 10 percent or more of any stake or stock in either NACDL or ABCL.

# **TABLE OF CONTENTS**

Page

STATEMENT OF INTEREST .................................................................................1

PRELIMINARY STATEMENT .............................................................................2

ARGUMENT ...........................................................................................................2

I.      The Fraud Statutes Protect Only Traditional Concepts of Property...............2

II.     The Universities Lost Control over the Composition of Their
        Incoming Classes – Not "Property" ...............................................................5

III.    The "Right-To-Control" Theory Cannot Salvage the
        Property Fraud Convictions.............................................................................8

        A.    The Theory Does Not Apply ...............................................................8

        B.    The Theory Cannot Be Reconciled with Supreme Court
              and Other Precedent ...........................................................................8

IV.     The Government's Theory of Property Fraud Has No
        Limiting Principle...........................................................................................11

CONCLUSION ........................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Carpenter v. United States*,
    484 U.S. 19 (1987) ................................................................................................3

*Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*,
    741 F.3d 769 (7th Cir. 2013) ...............................................................................6

*Cleveland v. United States*,
    531 U.S. 12 (2000) .......................................................................................*passim*

*Desnick v. Am. Broad. Cos.*,
    44 F.3d 1345 (7th Cir. 1995) ...............................................................................7

*Doe v. Purdue Univ.*,
    928 F.3d 652 (7th Cir. 2019) ...............................................................................6

*Does 1 through 16 v. U.S. Dep't of Homeland Sec.*,
    843 F. App'x 849 (9th Cir. 2021) ........................................................................6

*Food Lion, Inc. v. Cap. Cities/ABC, Inc.*,
    194 F.3d 505 (4th Cir. 1999) ...............................................................................7

*Haidak v. Univ. of Mass.-Amherst*,
    933 F.3d 56 (1st Cir. 2019) ..................................................................................7

*Harris v. Blake*,
    798 F.2d 419 (10th Cir. 1986) .............................................................................7

*Hennessy v. City of Melrose*,
    194 F.3d 237 (1st Cir. 1999) ................................................................................6

*Kelly v. United States*,
    140 S. Ct. 1565 (2020) ......................................................................................3, 8

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
    940 F.2d 397 (9th Cir. 1991) ...............................................................................4

*Lines v. Frederick*,
    400 U.S. 18 (1970) ...............................................................................................3

*Martin v. Helstad*,
   699 F.2d 387 (7th Cir. 1983) ...................................................................6

*McBoyle v. United States*,
   283 U.S. 25 (1931)...................................................................................12

*McEvoy v. Travel Bureau, Inc. v. Heritage Travel, Inc.*,
   904 F.2d 786 (1st Cir. 1990)....................................................................4

*McNally v. United States*,
   483 U.S. 350 (1987)..........................................................................*passim*

*Neder v. United States*,
   527 U.S. 1 (1999).......................................................................................9

*Pasquantino v. United States*,
   544 U.S. 349 (2005)...................................................................................3

*Regents of Univ. of Mich. v. Ewing*,
   474 U.S. 214 (1985)...................................................................................6

*Sekhar v. United States*,
   570 U.S. 729 (2013)...............................................................................3, 11

*Senn v. Tile Layers Protective Union*,
   301 U.S. 468 (1937)...................................................................................3

*Skilling v. United States*,
   561 U.S. 358 (2010)............................................................................10, 11

*Szejner v. Univ. of Alaska*,
   944 P.2d 481 (Alaska 1997) ....................................................................6

*Toulabi v. United States*,
   875 F.2d 122 (7th Cir. 1989) ...................................................................4

*Unger v. Nat'l Residents Matching Program*,
   928 F.2d 1392 (3d Cir. 1991) ..................................................................6

*United States v. Baldinger*,
   838 F.2d 176 (6th Cir. 1988) ...................................................................5

*United States v. Chandler-Dunbar Water Power Co.*,
    229 U.S. 53 (1913) ................................................................................................ 3

*United States v. Czubinski*,
    106 F.3d 1069 (1st Cir. 1997) ............................................................................ 4

*United States v. F.J. Vollmer & Co.*,
    1 F.3d 1511 (7th Cir. 1993) ................................................................................ 4

*United States v. Fagan*,
    821 F.2d 1002 (5th Cir. 1987) .......................................................................... 10

*United States v. Gray*,
    405 F.3d 227 (4th Cir. 2005) ............................................................................ 10

*United States v. Henry*,
    29 F.3d 112 (3d Cir. 1994) .................................................................................. 4

*United States v. Kato*,
    878 F.2d 267 (9th Cir. 1989) .............................................................................. 4

*United States v. Madeoy*,
    912 F.2d 1486 (D.C. Cir. 1990) ........................................................................ 10

*United States v. Murphy*,
    836 F.2d 248 (6th Cir. 1988) .............................................................................. 5

*United States v. Ochs*,
    842 F.2d 515 (1st Cir. 1988) ..................................................................... 4, 9, 10

*United States v. Sadler*,
    750 F.3d 585 (6th Cir. 2014) ........................................................................ 4, 9

*United States v. Shotts*,
    145 F.3d 1289 (11th Cir. 1998) .......................................................................... 4

*United States v. Shyres*,
    898 F.2d 647 (8th Cir. 1990) ............................................................................ 10

*United States v. Takhalov*,
    827 F.3d 1307 (11th Cir. 2016) .......................................................................... 4

*United States v. Wallach*,
   935 F.2d 445 (2d Cir. 1991) ........................................................................10, 11

*United States v. Walters*,
   997 F.2d 1219 (7th Cir. 1993) .....................................................................11, 12

*United States v. Welch*,
   327 F.3d 1081 (10th Cir. 2003) .........................................................................10

*United States v. Yates*,
   16 F.4th 256 (9th Cir. 2021) ..........................................................................4, 10

*Wooden v. United States*,
   142 S. Ct. 1063 (2022) .........................................................................................12

## STATUTES

18 U.S.C. § 1341 ......................................................................................................12

18 U.S.C. § 1343 ......................................................................................................12

18 U.S.C. § 1346 ................................................................................................10, 11

## OTHER AUTHORITIES

*Restatement (Second) of Torts* (1979) ....................................................................7

## STATEMENT OF INTEREST[1]

The National Association of Criminal Defense Lawyers is a nonprofit professional bar association that works on behalf of criminal defense attorneys to ensure justice and due process for the accused. Founded in 1958, NACDL is the only nationwide professional bar association for criminal defense lawyers. Its more than 10,000 direct members (and many more affiliates) include private criminal defense lawyers, public defenders, military defense counsel, law professors, and judges.

NACDL is dedicated to advancing the proper, efficient, and just administration of justice. Each year, NACDL files amicus briefs in the Supreme Court of the United States and other courts confronting questions of broad importance to criminal defendants, criminal defense lawyers, and the criminal justice system as a whole. NACDL is committed to reducing the overcriminalization that plagues the federal criminal justice system. It regularly opposes overbroad interpretations of criminal laws and has filed multiple amicus briefs regarding the interpretation of the mail and wire fraud statutes. Thus, NACDL has a particular interest in directing the Court's attention to the flaws in the government's interpretation of those statutes in this case.

---

[1] No party's counsel authored this brief in whole or part. No party, party's counsel, or person other than *amicus curiae* and its counsel contributed money to fund the brief's preparation or submission. The parties consent to the filing of this brief.

The American Board of Criminal Lawyers was founded in 1978 as a national legal honorary society for highly accomplished criminal defense trial lawyers. Admission is by invitation only and requires substantial major felony trial experience and exceptional recommendations from distinguished jurists and current Fellows. ABCL is committed to the preservation and free exercise of fundamental freedoms for all those accused of criminal conduct. Overbroad interpretations of criminal statutes threaten those freedoms and deprive the people of the fair notice the rule of law demands. ABCL submits this brief to emphasize the dangers inherent in the government's boundless theory of property fraud.

## PRELIMINARY STATEMENT

This brief addresses the narrow question of the meaning of property under the mail and wire fraud statutes. The district court incorrectly held that by using deceit to gain admission to universities, Mr. Wilson deprived them of property. If affirmed, this ruling will establish dangerous precedent that will allow prosecutors to turn ordinary deception into federal crimes. It should be reversed.

## ARGUMENT

### I. THE FRAUD STATUTES PROTECT ONLY TRADITIONAL CONCEPTS OF PROPERTY

The mail and wire fraud statutes codified the "common understanding" of fraud as "'wronging one in his *property rights* by dishonest methods or schemes.'" *McNally v. United States*, 483 U.S. 350, 358 (1987) (emphasis added). Those

statutes "protect[] property rights only." *Cleveland v. United States*, 531 U.S. 12, 19 (2000). "They bar only schemes for obtaining property." *Kelly v. United States*, 140 S. Ct. 1565, 1574 (2020).

A deprivation of intangible rights is not "***property*** fraud." *Kelly*, 140 S. Ct. at 1571. Time and again, the Supreme Court has reiterated that property fraud reaches only those interests that have "long been recognized as property" at common law and in the Court's precedents. *Carpenter v. United States*, 484 U.S. 19, 26 (1987) (exclusive use of confidential business information long recognized as property); *Pasquantino v. United States*, 544 U.S. 349, 355-56 (2005) (right to collect unpaid taxes long recognized as property); *McNally*, 483 U.S. at 355 ("intangible rights to honest and impartial government" not property); *Cleveland*, 531 U.S. at 23 (discretion in issuing licenses to operate video poker machines not property); *Kelly*, 140 S. Ct. at 1573 (corruptly exercising the right to allocate access to toll lanes not property).[2]

---

[2] This is consistent with the Court's interpretation of property in other contexts. *See Sekhar v. United States*, 570 U.S. 729, 742 (2013) (Alito, J., concurring) ("government employee's right to make . . . a recommendation is not property" under Hobbs Act); *Lines v. Frederick*, 400 U.S. 18, 20 (1970) (per curiam) ("accrued vacation pay" not property under the Bankruptcy Act); *Senn v. Tile Layers Protective Union*, 301 U.S. 468, 482 (1937) ("hoped-for job is not property" protected by the Due Process Clause); *United States v. Chandler-Dunbar Water Power Co.*, 229 U.S. 53, 76 (1913) (power company's interest in "water power inherent in the falls and rapids of the river" not property under Takings Clause).

This Court and others draw the same line between "property" and "intangible rights."  *See United States v. Czubinski*, 106 F.3d 1069, 1075-76 (1st Cir. 1997) (invoking precedent and "good sense" to hold that "mere[ly] browsing" confidential information not property fraud); *McEvoy v. Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 792 (1st Cir. 1990) ("intangible interest" in "regulat[ing] the airline industry" not property); *United States v. Ochs*, 842 F.2d 515, 526-27 (1st Cir. 1988) (rejecting effort to reframe intangible right to honest services as a property right); *United States v. Yates*, 16 F.4th 256, 266 (9th Cir. 2021) ("intangible right" to "accurate information" not property);  *United States v. Takhalov*, 827 F.3d 1307, 1319 (11th Cir. 2016) (patron's control over decision "to come into a bar" not property);  *United States v. Sadler*, 750 F.3d 585, 591 (6th Cir. 2014) ("the ethereal right to accurate information" not property); *United States v. Shotts*, 145 F.3d 1289, 1297 (11th Cir. 1998) ("license to operate a bail bonds business" not property); *United States v. Henry*, 29 F.3d 112, 115 (3d Cir. 1994) ("interest in having a fair opportunity to bid for something" not property); *United States v. F.J. Vollmer & Co.*, 1 F.3d 1511, 1521 (7th Cir. 1993) (government "regulatory interest in the disposition of firearms" not property); *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 406 (9th Cir. 1991) ("market share" not property); *United States v. Kato*, 878 F.2d 267, 269 (9th Cir. 1989) (discretion in issuing pilot's licenses not property); *Toulabi v. United States*, 875 F.2d 122, 126 (7th Cir. 1989) ("the public's

interest in the fair and impartial administration of its laws" not property); *United States v. Baldinger*, 838 F.2d 176, 179 (6th Cir. 1988) (competitor's "good will" not property); *United States v. Murphy*, 836 F.2d 248, 254 (6th Cir. 1988) ("right to accurate information" for issuing "bingo permits" not property).

The test for identifying property relies on precedent and common sense. Interests long recognized as property at common law and in common speech satisfy that test; those that "stray from traditional concepts of property" and ordinary understanding do not. *Cleveland*, 531 U.S. at 24. That test ensures that no person is convicted of property fraud unless "'his case is plainly within the statute.'" *McNally*, 483 U.S. at 360. Any theory of property unmoored from tradition and ordinary meaning "leaves its outer boundaries ambiguous" and must be rejected. *Id.*

## II. THE UNIVERSITIES LOST CONTROL OVER THE COMPOSITION OF THEIR INCOMING CLASSES – NOT "PROPERTY"

The government's theory alleges the mere loss of an intangible right, not property. Mr. Wilson used deception to boost his children's chances of admission to the universities. The universities admitted Mr. Wilson's children. Absent the deception, the universities may have admitted *different* students, but Mr. Wilson deceived them into inviting *his* children onto campus. In doing so, he deprived the universities of the prerogative to choose their students without interference.

Precedent and common sense make clear that what the universities lost was not property. In deciding which students make up their incoming classes, they were

exercising their "intangible rights of allocation." *Cleveland*, 531 U.S. at 23.  And

"rights of allocation, exclusion, and control" are not among the "traditional concepts

of property." *Id.* at 23-24.

Analyzing the question in the context of due process, courts have concluded

that admitted students do not have a property interest in enrolling in and attending

academic programs.  *See Unger v. Nat'l Residents Matching Program*, 928 F.2d

1392, 1397 (3d Cir. 1991) (rejecting claim that student had "a property interest in

the pursuit and continuance of her graduate medical education"); *Szejner v. Univ. of

Alaska*, 944 P.2d 481, 486 (Alaska 1997) ("A person does not have a property

interest in admission to graduate school.").[3]  A panel of the Ninth Circuit also found

no "legal authority to support" the argument that students have a property interest in

"access to educational and athletic programs to which they have been admitted."

*Does 1 through 16 v. U.S. Dep't of Homeland Sec.*, 843 F. App'x 849, 852 (9th Cir.

2021) (unpublished).  And the courts divide on whether even a student admitted ***and

enrolled*** in a public university has a property interest in her continued education.[4]

---

[3] *See also Martin v. Helstad*, 699 F.2d 387, 389-90 (7th Cir. 1983) (refusing to resolve the question); *id.* at 392 (Coffey, J., concurring) (admitted student lacked "property interest in admission to law school").

[4] *Compare Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring) (student's "claim to a property right [in continued enrollment] is dubious at best"); *Hennessy v. City of Melrose*, 194 F.3d 237, 249 (1st Cir. 1999) (claim to "property interest in continued enrollment" is "dubious"); *Doe v. Purdue Univ.*, 928 F.3d 652, 660 (7th Cir. 2019) (student lacked "property interest in his continued enrollment" absent "specific contractual promise"); *Charleston v. Bd. of*

If courts balk at treating a student's interest in admission as property for due-process purposes, it is hard to see how a university's control over allocating admissions generally can be property for *criminal* purposes.

The concept of property under the law of trespass also undermines the government's theory. There is no trespass – "no invasion of a legally protected interest in property" – if the owner consents to the entry. *Desnick v. Am. Broad. Cos.*, 44 F.3d 1345, 1353 (7th Cir. 1995). That is true even if the consent was "procured by fraud." *Id.* at 1351; *Restatement (Second) of Torts* § 892A (1979). A lie on a résumé does not transform "a successful job applicant into a trespasser the moment she enters the employer's premises to begin work." *Food Lion, Inc. v. Cap. Cities/ABC, Inc.*, 194 F.3d 505, 518 (4th Cir. 1999). The lie deprives the employer of control over the composition of its workforce, but it does not interfere in any property interest. *See id.*

The same is true here. Mr. Wilson tricked the universities into inviting his children onto university property. That deception "was not an interference with the ownership or possession of [property]." *Desnick*, 44 F.3d at 1353. And it certainly

---

*Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 772 (7th Cir. 2013) (students lack "a stand-alone property interest in an education at a state university"), *with Haidak v. Univ. of Mass.-Amherst*, 933 F.3d 56, 65 (1st Cir. 2019) (treating enrolled student's "entitlement to a public education as a property interest"); *Harris v. Blake*, 798 F.2d 419, 422 (10th Cir. 1986) (state law promising university education to all who pay gave enrolled student property interest in continuing education).

was not a ***deprivation*** of property.  It was, at most, an interference with the universities' freedom to associate with students of their choosing.

## III. The "Right-To-Control" Theory Cannot Salvage The Property Fraud Convictions

The so-called "right-to-control" theory of property fraud – which posits that a deprivation of the right to control can ***itself*** be property fraud – cannot salvage these convictions.  The theory does not apply here and, even if it did, is doctrinally unsound.

### A. The Theory Does Not Apply

Property fraud requires that the property at issue be the "'***object*** of the fraud.'" *Kelly*, 140 S. Ct. at 1573 (emphasis added).  Mr. Wilson's object was not the university's decision-making process; it was admission for his children.  The government does not allege that Mr. Wilson commandeered the admissions office or hacked the admissions website to handpick incoming freshmen.  There can be no property fraud where, as here, "the loss to the victim is only an incidental byproduct of the scheme."  *Id.*

### B. The Theory Cannot Be Reconciled with Supreme Court and Other Precedent

The right-to-control theory conflicts with *Cleveland*.  The Court held that allocating licenses to operate video poker machines was a regulatory power, not a property interest.  531 U.S. at 23.  It rejected the analogy to "a franchisor's right to select its franchisees."  *Id.* at 24.  That right, the Court explained, "derives from" an

8

underlying property interest, like "a trademark, brand name, [or] business strategy." *Id.* The "authority to select video poker licensees rests on no similar asset." *Id.* If the right-to-control theory were correct, the right to select licensees would ***itself*** be property, and no underlying property interest would be necessary. *Cleveland* would have come out the other way.

The right-to-control theory is also incompatible with *McNally*. There, the Court reviewed convictions for a kickback scheme in which a company paid state officials proceeds from a government contract. The Court held that honest services were not property. It rejected the argument that the officials' "failure to disclose their financial interest" to government decision-makers deprived the State of property. 483 U.S. at 361 n.9. The right-to-control theory ignores *McNally*'s teaching because a "failure to disclose" material information is, ***by definition***, a deprivation of a right to control. *See Neder v. United States*, 527 U.S. 1, 16 (1999) (material statement is one that "has 'a natural tendency to influence, or is capable of influencing,'" a decision (brackets omitted)). Under the right-to-control theory, anyone who lied to buy something at full price would be guilty of property fraud because the seller might have decided not to make the sale. The Sixth Circuit has rejected the theory on that basis. *See Sadler*, 750 F.3d at 590-91.

This Court has sharply criticized cases that "stretched to find more ingenious theories of property loss" to evade *McNally*'s holding. *Ochs*, 842 F.2d at 523. The

right-to-control cases are guilty of just that.  In *United States v. Wallach*, 935 F.2d 445 (2d Cir. 1991), for example, a corporate director obtained government contracts in exchange for kickbacks.  The court reasoned that, because "information" is valuable to making economic decisions, withholding information can be property fraud.  *Id.* at 462-63.  That reasoning does what this Court condemned in *Ochs* – it "let[s] in through the back door the very prosecution theory that the Supreme Court tossed out the front."  842 F.2d at 527.[5]

Finally, the right-to-control theory is an "impermissible 'end-run' around" *Skilling v. United States*, 561 U.S. 358 (2010).  *Yates*, 16 F.4th at 267.  The government charged Skilling, a former Enron executive, under 18 U.S.C. § 1346, which was enacted after *McNally* to prohibit schemes "to deprive another of the intangible right of honest services."  Skilling's lies about Enron's performance deprived investors of valuable information about the company's worth.  561 U.S. at

---

[5] The government's other cases do the same thing, and many trace their roots to the very cases this Court condemned in *Ochs*.  *Compare, e.g.*, *United States v. Welch*, 327 F.3d 1081, 1108 (10th Cir. 2003) (citing *United States v. Fagan*, 821 F.2d 1002, 1011 n.6 (5th Cir. 1987)), *with Ochs*, 842 F.2d at 525-26 (criticizing *Fagan*).  Some cases also embrace the right-to-control theory based on dictum in *McNally* that noted the jury in that case had not been instructed "that to convict it must find that the Commonwealth was deprived of control over how its money was spent."  483 U.S. at 360.  That observation, those cases say, means that the convictions in *McNally* would have been valid if that instruction had been given.  *See, e.g.*, *United States v. Gray*, 405 F.3d 227, 234 (4th Cir. 2005); *United States v. Madeoy*, 912 F.2d 1486, 1492 (D.C. Cir. 1990); *United States v. Shyres*, 898 F.2d 647, 652 (8th Cir. 1990).  Those cases ignore the rest of the Court's reasoning.

369.   The Court vacated the conviction and held that § 1346 criminalized only bribery and kickback schemes because the statute would otherwise be unconstitutionally vague. *See id.* at 408-09.  The right-to-control theory evades that limitation by requiring only "that some person or entity has been deprived of potentially valuable economic information." *Wallach*, 935 F.2d at 462-63.  Because he deceived the public about Enron's true performance, Skilling would be guilty of wire fraud under the right-to-control theory, even though he did not participate in bribery or kickback schemes.

## IV.   THE GOVERNMENT'S THEORY OF PROPERTY FRAUD HAS NO LIMITING PRINCIPLE

The government's theory of property fraud is boundless.   "[T]he term 'property' plainly does not reach everything that a person may hold dear." *Sekhar v. United States*, 570 U.S. 729, 740 (2013) (Alito, J., concurring).  Yet that is the result of the government's theory.

Consider a student who accepts a binding "early decision" offer from one school but backs out after being admitted to his dream school.  He hurt the school's "yield" (ratio of enrollments to acceptances) and thus its rankings.  Or take the child who pretends to be friends with a classmate to use her swimming pool, or the journalist who lies about his identity to investigate a lead.  The government's theory makes felons of them all.  As Judge Easterbrook put it, "any theory that makes criminals of cheaters raises a red flag." *United States v. Walters*, 997 F.2d 1219,

1225 (7th Cir. 1993). A theory that makes criminals of students, children, and journalists for engaging in these sorts of everyday activities is even more problematic.

The government's theory also violates "the ancient rule that the law must afford ordinary people fair notice of its demands." *Wooden v. United States*, 142 S. Ct. 1063, 1082 (2022) (Gorsuch, J., concurring). That notice must come in advance, not in an indictment. And it must be set forth "in language that the common world will understand." *McBoyle v. United States*, 283 U.S. 25, 27 (1931). The government's unbounded theory of property offers no notice at all, and a "pledge[] to use prosecutorial discretion wisely" is no substitute. *Walters*, 997 F.2d at 1224.

The government's refusal to offer a limiting principle to its theory of property fraud shows that it has none. Its approach exacerbates the growing problem of overcriminalization within the federal criminal justice system, sweeping in innocent conduct and "a vast array of conduct traditionally policed by the States." *Cleveland*, 531 U.S. at 27. This Court should refuse to stretch the United States Code that far.

## **CONCLUSION**

Mr. Wilson's convictions relying on 18 U.S.C. §§ 1341 and 1343 should be vacated and the case remanded with instructions to enter a judgment of acquittal on Counts One, Six, Eight, and Nine.

May 2, 2022                           Respectfully submitted,

/s/ Michael J. Iacopino                /s/ Steven F. Molo

Michael J. Iacopino (#24002)           Steven F. Molo (#1203267)
BRENNAN LENEHAN IACOPINO               Leonid Grinberg (#1203234)
  & HICKEY                    MOLOLAMKEN LLP
85 Brook Street                        430 Park Avenue
Manchester, NH  03104                  New York, NY  10022
(603) 668-8300 (telephone)             (212) 607-8160 (telephone)
(603) 668-1029 (fax)                   (212) 607-8161 (fax)
miacopino@brennanlenehan.com           smolo@mololamken.com
                                       lgrinberg@mololamken.com

                                       Justin V. Shur (#1203238)
                                       Kenneth E. Notter III (#1203190)
                                       MOLOLAMKEN LLP
                                       The Watergate, Suite 500
                                       600 New Hampshire Avenue, N.W.
                                       Washington, D.C.  20037
                                       (202) 556-2000 (telephone)
                                       (202) 556-2001 (fax)
                                       jsur@mololamken.com
                                       knotter@mololamken.com

*Counsel for Amici Curiae*
*the National Association of Criminal Defense Lawyers and*
*the American Board of Criminal Lawyers*

## Certificate of Compliance With Type-Volume Limit

Certificate of Compliance With Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements

1. This document complies with the type-volume limit of Fed. R. App. P. 29(a) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

☑ this document contains ___3,041___ words, **or**

☐ this brief uses a monospaced typeface and contains _____ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☑ this document has been prepared in a proportionally spaced typeface using Microsoft Word_____ in Times New Roman 14-point font , **or**

☐ this document has been prepared in a monospaced typeface using _____ with _____.

(s) _Steven F. Molo_____

Attorney for _NACDL and ABCL_

Dated: _May 2, 2022_____