# EXHIBIT C

**From:** Davis, Elliott M. (SHB) <edavis@shb.com>
**Sent:** Monday, May 2, 2022 5:25 PM
**To:** Smith, Robert T. <robert.smith1@katten.com>; ian.stearns@usdoj.gov; kristen.kearney@usdoj.gov; leslie.wright@usdoj.gov; stephen.frank@usdoj.gov; alexia.devincentis@usdoj.gov; donald.lockhart2@usdoj.gov; Carol.Head@usdoj.gov; justin.o'connell@usdoj.gov; raquelle.kaye@usdoj.gov; Francisco, Noel J. <njfrancisco@jonesday.com>; Roth, Yaakov M. <yroth@JonesDay.com>; Basile, Marco P. <mbasile@jonesday.com>; Graver, Harry S. <hgraver@jonesday.com>; Michael.kendall@whitecase.com; Lauren.papenhausen@whitecase.com; atomback@mclaughlinstern.com; Fleming, Mary C. <mary.fleming@katten.com>; Gray, Timothy H. <timothy.gray@katten.com>; Notter, Kenneth <Knotter@mololamken.com>
**Cc:** Chesin, Scott A. (SHB) <schesin@shb.com>; Jackson, Katie (SHB) <krjackson@shb.com>
**Subject:** RE: United States v. Wilson, No. 22-1138 (1st Cir.): ECF Down / Amici Curiae Brief of Law Professors

** External mail **

Dear Counsel:

Scott, Katie, and I represent eleven former United States Attorneys as *amici curiae* in support of Defendant-Appellant and vacatur.

I received the same guidance from the First Circuit Clerk's office as Rob. To that end, our amicus brief is attached. I will continue trying to file this brief through CM/ECF later this evening. If we are unable to file tonight, we will file it when CM/ECF regains functionality. In that event, I will probably insert a footnote memorializing the CM/ECF issues. The dates, tables, and certificates may change, but the substance of the brief will not.

Thank you,
Elliott

**Elliott M. Davis**
*Of Counsel*
Shook, Hardy & Bacon L.L.P.

202.662.4867 | edavis@shb.com

---

**From:** Smith, Robert T. <robert.smith1@katten.com>
**Sent:** Monday, May 2, 2022 5:03 PM
**To:** ian.stearns@usdoj.gov; kristen.kearney@usdoj.gov; leslie.wright@usdoj.gov; stephen.frank@usdoj.gov; alexia.devincentis@usdoj.gov; donald.lockhart2@
justin.o'connell@usdoj.gov; raquelle.kaye@usdoj.gov; njfrancisco@jonesday.com; yroth@jonesday.com; mbasile@jonesday.com; hgraver@jonesday.com; M
**Cc:** Fleming, Mary C. <mary.fleming@katten.com>; Gray, Timothy H. <timothy.gray@katten.com>; Notter, Kenneth <Knotter@mololamken.com>; Davis, Elliott M. (SHB) <edavis@shb.com>
**Subject:** United States v. Wilson, No. 22-1138 (1st Cir.): ECF Down / Amici Curiae Brief of Law Professors

**EXTERNAL**

Dear counsel,

I represent a number of law professors who intend to file an *amici curiae* brief in support of the appellant and reversal in *United States v. Wilson*, No. 22-1138 (1st Cir.). As of the drafting of this e-mail, however, the First Circuit's CM/ECF system is down.

I have been instructed by the clerk's office to continue to attempt to file the brief today and, if the system still will not allow it, to resume my efforts tomorrow. I have been told that the court is aware of the issue, and should I not be able to file until tomorrow, I will not be required to file a motion seeking to file my clients' brief out of time.

Although not instructed to do so by the clerk's office, I wanted to provide you with a copy of the brief that I will file when the system allows. As noted in the brief, both parties have consented to its filing.

Rob

**Robert T. Smith**
Partner

**Katten**
Katten Muchin Rosenman LLP
2900 K Street NW, North Tower - Suite 200 | Washington, DC 20007-5118
direct +1.202.625.3616
robert.smith1@katten.com | katten.com

```
=====================================================
CONFIDENTIALITY NOTICE:
This electronic mail message and any attached files contain information intended for the exclusive
```

use of the individual or entity to whom it is addressed and may contain information that is
proprietary, privileged, confidential and/or exempt from disclosure under applicable law.  If you
are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or
distribution of this information may be subject to legal restriction or sanction.  Please notify
the sender, by electronic mail or telephone, of any unintended recipients and delete the original
message without making any copies.
=========================================================
NOTIFICATION:  Katten Muchin Rosenman LLP is an Illinois limited liability partnership that has
elected to be governed by the Illinois Uniform Partnership Act (1997).
=========================================================


CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain
confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please
contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

No.  22–1138

---

UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*

v.

JOHN WILSON,

*Defendant-Appellant.*

———————————

On Appeal from the United States District Court
for the District of Massachusetts
No. 19–cr–10080
Hon. Nathaniel M. Gorton

———————————

**BRIEF OF FORMER UNITED STATES ATTORNEYS
AS *AMICI CURIAE* IN SUPPORT OF
DEFENDANT-APPELLANT AND VACATUR**

———————————

Scott A. Chesin
SHOOK, HARDY & BACON L.L.P.
1325 Avenue of the Americas
New York, N.Y.  10019
(212) 779-6106

Elliott M. Davis
Kateland R. Jackson
SHOOK, HARDY & BACON L.L.P.
1800 K Street, NW, Ste. 1000
Washington, D.C.  20006
(202) 662-4867
edavis@shb.com

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

Page

IDENTITY AND INTERESTS OF *AMICI CURIAE* ............................................1

INTRODUCTION ................................................................................3

ARGUMENT .....................................................................................5

I.    JOHN WILSON DID NOT RECEIVE A FAIR TRIAL. ............................6

    A.    Two Types of Hub-and-Spoke Conspiracies:
        Rimmed Conspiracies and Rimless Wheel Conspiracies ................7

    B.    A Rimless Wheel Conspiracy Is Not a Single Conspiracy;
        It Comprises Multiple Conspiracies. ....................................10

    C.    The Alleged Conspiracy Below Is a Quintessential Rimless
        Wheel Conspiracy, and the Trial Demonstrably Prejudiced
        Wilson's Substantial Rights ..............................................13

II.   CHARGING JOHN WILSON AS HAVING ENGAGED IN A
     SINGLE, OVERARCHING CONSPIRACY WAS NOT JUST. ..............16

CONCLUSION ..................................................................................19

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Berger v. United States,*
    295 U.S. 78 (1935) ...............................................................16, 17

*Dickson v. Microsoft Corp.,*
    309 F.3d 193 (4th Cir. 2002)..........................................................8, 10

*Kotteakos v. United States,*
    328 U.S. 750 (1946)..............................................4, 10, 11, 16, 17

*Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Pharmacy,*
    305 F. Supp. 3d 337 (D.R.I. 2018)..........................................................7

*United States v. Dellosantos,*
    649 F.3d 109 (1st Cir. 2011) ........................................8, 9, 12, 14, 15

*United States v. Evans,*
    970 F.2d 663 (10th Cir. 1992).....................................5, 9, 13, 17, 18

*United States v. Glenn,*
    828 F.2d 855 (1st Cir. 1987) ...............................................9, 11, 12

*United States v. Harrison,*
    942 F.2d 751 (10th Cir. 1991).....................................................9, 14

*United States v. Innamorati,*
    996 F.2d 456 (1st Cir. 1993) ...............................................................15

*United States v. Martínez,*
    994 F.3d 1 (1st Cir. 2021)....................................................................12

# TABLE OF AUTHORITIES

## (continued)

Page(s)

*United States v. Newton*,
   32 F.3d 253 (1st Cir. 2003) ...................................................................................7

*United States v. Niemi*,
   579 F.3d 123 (1st Cir. 2009) ...............................................................................10

*United States v. Rosnow*,
   977 F.2d 399 (8th Cir. 1992)...............................................................................10

*United States v. Townsend*,
   924 F.2d 1385 (7th Cir. 1991)............................................................................14

**RULES**

Federal Rule of Appellate Procedure 29...................................................................3

**OTHER AUTHORITIES**

Jackson, Robert H., *The Federal Prosecutor*,
   31 J. Crim. L. & Criminology 3 (1940) ...............................1, 2, 4, 6, 16, 17, 18

OPERATION VARSITY BLUES: THE COLLEGE ADMISSIONS SCANDAL
   (Netflix 2021)........................................................................................................3

## IDENTITY AND INTERESTS OF *AMICI CURIAE*

*Amici* are eleven former United States Attorneys who previously wielded the "immense power" afforded to the principal federal prosecutor in a particular judicial district. *See* Robert H. Jackson, *The Federal Prosecutor*, 31 J. Crim. L. & Criminology 3 (1940). Geographically diverse and appointed by presidents of both major political parties, *amici* are:[1]

- **B. Mahlon Brown III**, who served as the United States Attorney for the District of Nevada from 1977 to 1981;

- **Wayne A. Budd**, who served as the United States Attorney for the District of Massachusetts from 1989 to 1992;

- **James C. Cissell**, who served as the United States Attorney for the Southern District of Ohio from 1978 to 1982;

- **Margaret Person Currin**, who served as the United States Attorney for the Eastern District of North Carolina from 1988 to 1993;

- **Barry Grissom**, who served as the United States Attorney for the District of Kansas from 2010 to 2016;

- **William C. Killian**, who served as the United States Attorney for the Eastern District of Tennessee from 2010 to 2015;

- **Joshua J. Minkler**, who served as the United States Attorney for the Southern District of Indiana from 2014 to 2020;

- **Ryan Patrick**, who served as the United States Attorney for the Southern District of Texas from 2018 to 2021;

---

[1] *Amici* appear in their individual capacities. Their former positions are listed here for identification purposes only.

- **Michael J. Sullivan**, who served as the United States Attorney for the District of Massachusetts from 2001 to 2009;

- **Peter F. Vaira**, who served as the United States Attorney for the Eastern District of Pennsylvania from 1978 to 1983; and

- **Atlee W. Wampler III**, who served as the United States Attorney for the Southern District of Florida from 1980 to 1982.

As former United States Attorneys, *amici* share then-Attorney General Robert Jackson's vision that federal prosecutors should be "diligent, strict, and vigorous in law enforcement," but should also approach their "task with humility" and—above all—"be just." *Id.* at 4–6.   And they also share an interest in ensuring that the "tremendous" discretion afforded to federal prosecutors, *id.* at 3, is used responsibly.

*Amici* do not believe that the course of this trial lived up to Robert Jackson's standards.  Defendants in criminal prosecutions should be judged based on their conduct, not the conduct of individuals with whom they have no material connection.  *Amici* believe that the Court may benefit from their views, as informed by their lived experiences as United States Attorneys. *Amici* submit this brief in support of Defendant-Appellant pursuant to

Federal Rule of Appellate Procedure 29.  All parties to this appeal have consented to the filing of this brief.[2]

## INTRODUCTION

The Varsity Blues prosecutions had every element necessary to make headlines.  Rich people.  Celebrities.  The seedy underbelly of the hypercompetitive college-admissions process.  Cheating on the SATs.  Staged photos of fake athletic endeavors.  It's already a Netflix special starring Matthew Modine.  OPERATION VARSITY BLUES:  THE COLLEGE ADMISSIONS SCANDAL (Netflix 2021).

Defendant John Wilson gave over $1 million to Rick Singer's business and foundation in an effort to secure college admissions for his three children.  Though hardly commendable, his alleged conduct pales in comparison to that of other parents in the Varsity Blues prosecutions.  The Government did not allege that Wilson had, for example, engaged in any sort of academic fraud, arranged for Singer to create or use fake photos of

---

[2]     No party's counsel authored this brief in whole or in part.  No party and no party's counsel contributed money that was intended to fund preparing or submitting this brief.  No person—other than *amici curiae* or their counsel—contributed money that was intended to fund the preparation or submission of this brief.

his children to obtain their college admissions, or knowingly bribed individual college employees.

Nevertheless, the Government charged Wilson as if he were involved in a single, overarching conspiracy with other parents. And because of that charging decision, the Government was able to regale the jury with testimony about the sensational, bad behavior of those other parents—behavior that was generally more egregious and different in kind. This led to the not-insubstantial risk that Wilson was convicted based on the wrongful conduct of other parents engaged in entirely separate conspiracies—which is precisely why the Supreme Court held more than 75 years ago in *Kotteakos v. United States*, 328 U.S. 750 (1946), that these sorts of "rimless wheel" conspiracies are not legally valid.

This is not justice. And the Court should take the opportunity to make that clear. After all, rimless-wheel conspiracies can arise in a variety of contexts. But many (if not most) criminal defendants lack the resources to mount a defense against invalid conspiracy charges through trial and appeal. It should not get to that point. "Only by extreme care can we protect the spirit as well as the letter of our civil liberties, and to do so is a responsibility of the federal prosecutor." Jackson, *supra*, at 6.

*Amici* take no position on whether Wilson is innocent or guilty of the crimes with which he is charged.  That is for a jury to determine.  But like all criminal defendants, Wilson is entitled to a fair trial, so that he may be held accountable for his conduct—and not the wrongdoing of other, materially unconnected individuals.  This Court should vacate Wilson's convictions and remand for a new, fair trial.

## ARGUMENT

I.    John Wilson did not receive a fair trial.  The trial was marred by extensive evidence about the sensational, bad conduct of other parents.  As such, the record reflects a serious risk that Wilson was convicted based on other people's bad behavior.  His convictions should be vacated, and this case should be remanded for a new, fair trial.

II.    United States Attorneys wield immense power and discretion in determining how to charge and try criminal defendants.  But, courts have recognized, "[t]he tactic of charging many defendants with a single massive conspiracy is fraught with the potential for abuse."  *United States v. Evans*, 970 F.2d 663, 674 (10th Cir. 1992).  So judges "must be particularly vigilant when the government seeks to bring many individuals under the umbrella of a single conspiracy."  *Id.*  The course of this trial does not reflect a just or

fair use of prosecutorial power against Wilson.  This Court should remind the United States Attorneys' Offices that "[a] sensitiveness to fair play and sportsmanship is perhaps the best protection against the abuse of power." Jackson, *supra*, at 6.

## I.     JOHN WILSON DID NOT RECEIVE A FAIR TRIAL.

There are two general forms of hub-and-spoke conspiracies:  rimmed conspiracies (where the defendant-spokes are interconnected in some way) and rimless-wheel conspiracies (where the defendant-spokes are generally not interconnected).   A rimless-wheel conspiracy is not a true, single conspiracy.  Rather, a rimless-wheel conspiracy, in truth, comprises many separate conspiracies, each of which involves a central hub.   And the problem with charging a rimless-wheel conspiracy as if it were a single, overarching conspiracy is that evidence about the conduct of other defendants engaged in separate conspiracies with the central hub may spill over and prejudice the rights of a defendant being tried.

That is precisely what happened here.  Because Wilson was charged as if he engaged in a single, overarching conspiracy with other parents, the Government was able to—and did—introduce mountains of evidence about the egregiously bad conduct of those other parents.  That evidence poisoned

Wilson's trial.  This Court should therefore vacate Wilson's convictions and remand for a new, fair trial.[3]

### A.     Two Types of Hub-and-Spoke Conspiracies: Rimmed Conspiracies and Rimless Wheel Conspiracies

The alleged conspiracy in this prosecution is of the hub-and-spoke variety.  "In a 'hub-and-spoke conspiracy,' a central mastermind"—here, Rick Singer—is alleged to have conspired with "numerous 'spokes,' or secondary co-conspirators."  *United States v. Newton*, 326 F.3d 253, 255 n.2 (1st Cir. 2003).[4]  But not all hub-and-spoke conspiracies are the same.

In some hub-and-spoke conspiracies, the spokes are connected with a metaphorical rim, in that there is some "coordination among the spokes." *Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Pharmacy*, 305 F. Supp. 3d 337, 347 (D.R.I. 2018) (citing *In re Brokerage Antitrust Litig.*, 618 F.3d 300, 375–79 (3d Cir. 2010)).  For example, imagine a drug kingpin who, as the "hub," coordinates with various "spokes"—individuals who manufacture the drugs, individuals who transport the drugs, and individuals who distribute the drugs—all of whom share the common goal

---

[3]      *Amici* take no position on any other question presented by this appeal.

[4]      Unless expressly included, all citations and internal quotation and alteration marks have been omitted.

of selling drugs for profit, and all of whom understand and believe that the "activities of one aspect of the scheme are necessary or advantageous to the success of another aspect of the scheme." *United States v. Dellosantos*, 649 F.3d 109, 117 (1st Cir. 2011). The entire manufacturing-and-distribution operation might be considered a single, overarching conspiracy. *See id.* at 118.

At the other end of the spectrum are so-called "rimless wheel" conspiracies: hub-and-spoke conspiracies "in which various [spokes] enter into separate agreements with a [hub], but where the [spokes] have no connection with one another, other than the [hub's] involvement in each transaction." *Dickson v. Microsoft Corp.*, 309 F.3d 193, 203 (4th Cir. 2002). A classic example is a drug dealer who sells drugs to individual clients, none of whom have any meaningful connection to one another.

In differentiating between rimmed conspiracies and rimless-wheel conspiracies, this Court examines two principal factors: the "existence of a common goal," and "interdependence among participants." *Dellosantos*, 649 F.3d at 117.[5] In our latter hypothetical conspiracy, each client's goal—to

---

[5] A third factor discussed in *Dellosantos*—"overlap among the participants"—exists in every hub-and-spoke conspiracy, as it "is satisfied

purchase drugs for himself or herself — is selfish, not shared.  Put another way, "while the objectives of the conspiracies [are] *identical*, they [are] not *in common*."  *United States v. Harrison*, 942 F.2d 751, 757 (10th Cir. 1991) (rejecting theory of single conspiracy) (emphases in original).

For similar reasons, there is typically no "interdependence among" a drug dealer's individual clients.  *See Dellosantos*, 649 F.3d at 117.  Interdependence requires a "shared *mutual* benefit."  *Evans*, 970 F.2d at 671 (emphasis altered).  And "interdependence is missing" where one person "is indifferent to the purposes of others in the enterprise."  *United States v. Glenn*, 828 F.2d 855, 858 (1st Cir. 1987) (Breyer, J.).  "[M]ere participation in some branch of the venture" is not enough.  *Dellosantos*, 649 F.3d at 117.

Put another way, a hallmark of a rimless-wheel conspiracy is indifference by and between the spokes.  Though they may "engage[] in similar acts for similar reasons" and may be "assisted by the same people," they "engage[] in these actions in order to benefit themselves individually . . . and not to benefit the group as a whole," and "d[o] not care about the

---

by the pervasive involvement of a single core conspirator, or hub character."  649 F.3d at 117–18.  That factor, accordingly, does nothing to differentiate between rimmed and rimless-wheel conspiracies.

success of the other" participants.  *United States v. Rosnow*, 977 F.2d 399, 406

(8th Cir. 1992) (per curiam).[6]

### B. A Rimless Wheel Conspiracy Is Not a Single Conspiracy; It Comprises Multiple Conspiracies.

In this sense, the term "rimless-wheel conspiracy" is a misnomer.

That's because a rimless-wheel conspiracy "is not a single, general

conspiracy."  *Dickson*, 309 F.3d at 203.  It instead "amounts to *multiple*

conspiracies between the common defendant and each of the other

defendants."  *Id.* (citing *Kotteakos*, 328 U.S. at 768–69, emphasis added).  The

Supreme Court made this principle clear in *Kotteakos*.

In *Kotteakos*, the hub—Simon Brown—brokered fraudulent loans on

behalf of individual clients.  328 U.S. at 753.  Though the evidence against

the *Kotteakos* petitioners "was similar in character" to the evidence against

Brown's other clients, "no connection was shown between them and

petitioners, other than that Brown had been the instrument in each instance

---

6       Of course, the scope of any conspiracy depends on the facts.  *See, e.g.*, *United States v. Niemi*, 579 F.3d 123, 127 (1st Cir. 2009) (drug dealer's customer deemed part of larger conspiracy where, among other things, he "dealt with many other conspirators," "coordinated with [the dealer] on at least one occasion to provide cash and help arrange for a supply of drugs," and "knew of the existence and scope of [the dealer's] operations").

for obtaining the loans." *Id.* at 754. And "[i]n many cases the other defendants did not have any relationship with one another, other than Brown's connection with each transaction." *Id.* The Supreme Court recognized that the evidence "made out a case"—"not of a single conspiracy, but of several, notwithstanding only one was charged in the indictment." *Id.* at 755. Using the familiar hub-and-spoke metaphor, the Court described the supposed conspiracy at issue as "that of separate spokes meeting at a common center," but "without the rim of the wheel to enclose the spokes." *Id.*

The *Kotteakos* principle makes logical sense. As then-Judge Breyer explained, conspiracy law "focuses upon the activities of an individual defendant." *Glenn*, 828 F.2d at 857. "It is therefore dangerous to think of a conspiracy as a kind of 'club' that one joins or a 'business' in which one works." *Id.* "Those metaphors falsely suggest that the 'member' or 'employee' *automatically* becomes legally responsible for the entire enterprise." *Id.* (emphasis in original). "Instead, the gist of the conspiracy offense remains the agreement"—and so the nature of the conspiracy is premised on "what kind of agreement or understanding existed *as to each defendant*." *Id.* (emphasis in original). And that is why, "[i]n determining

11

whether the evidence supports the existence of a single conspiracy" or of multiple conspiracies, courts consider factors like the existence of a common goal and whether the defendant believes that he or she is interdependent with others. *Dellosantos*, 649 F.3d at 117.

Single conspiracies exist, of course, and when appropriate, the Government should charge them as such. But when a spoke-defendant in a rimless-wheel conspiracy is charged as if he took part in a single, overarching conspiracy, "[t]he risks of prejudice in such trials are serious." *Glenn*, 828 F.2d at 858. That is because such a defendant is at risk of "evidentiary spillover" — "the 'transference of guilt' to a defendant involved in one conspiracy from evidence incriminating defendants in another conspiracy in which the particular defendant was not involved." *Dellosantos*, 649 F.3d at 125. And if that evidentiary spillover affects a defendant's substantial rights, the defendant's conviction must be vacated and the case remanded for a new, fair trial. *See United States v. Martínez*, 994 F.3d 1, 15–17 (1st Cir. 2021).

**C.    The Alleged Conspiracy Below Is a Quintessential Rimless Wheel Conspiracy, and the Trial Demonstrably Prejudiced Wilson's Substantial Rights.**

The conspiracy alleged below is—almost by definition—a quintessential rimless-wheel conspiracy.  Wilson did not share a common goal with other parents who may have separately conspired with Singer. Like the clients of our hypothetical drug dealer discussed above, Wilson's goal was selfish, not shared.  He wanted his *own* children to gain admission to prestigious universities.  Why would Wilson care whether other parents' children obtained admission to the colleges of their choice?

Nor was there any evidence that Wilson believed that his participation was interdependent with that of other parents.  Interdependence is not satisfied by a showing of "similar or parallel objectives between similarly situated people."  *Evans*, 970 F.2d at 670.  Rather, "[w]hat is required is a shared, single criminal objective."  *Id.* (emphasis omitted).

What is more, as Wilson explains in his principal brief (at 47–48), the evidence at trial showed that Singer at times led his clients to believe that their children were *competing* with each other over limited admission slots. And that competition destroys interdependence.  After all, interdependence "concerns whether the activities of one aspect of the scheme are necessary or

13

advantageous to the *success* of another aspect of the scheme." *Dellosantos*,
649 F.3d at 117 (emphasis added).  The competition Singer fostered would
logically lead his clients to hope that his schemes with other parents would
*fail*. *See also Harrison*, 942 F.2d at 757 (no interdependence among competing
drug suppliers); *United States v. Townsend*, 924 F.2d 1385, 1397 (7th Cir. 1991)
("The evidence does not suggest that Diaz was in league with Marquez's
other suppliers . . . it shows that he was competing with them.").

But because the Government charged Wilson as if he engaged in a
single conspiracy with other parents, the Government was able to introduce
evidence about the conduct of those other parents—including egregiously
bad conduct in which Wilson was not even alleged to have engaged.  As
Wilson explains in his principal brief (at 53–56), the Government introduced
evidence that other parents, for example:  (i) arranged to have proctors cheat
on standardized tests on behalf of their children; (ii) paid to have their
children's test scores altered; (iii) plotted to fake a learning disability to
obtain extra time on a standardized test; (iv) arranged to have one of Singer's
employees take online courses on behalf of their children; (v) knowingly had
Singer pay bribes to individual college employees; and (vi) used fake photos

to make it appear as if their children played sports that they did not actually play.

Wilson could not have possibly received a fair trial under these circumstances. As Wilson explains, his "core defense was that he thought" that his particular arrangement with Singer "was above-board." Br. of Def.-Appellant 58. "But the Government pilloried that defense by manufacturing an association between Wilson and dozens of parents tripping over themselves to lie, cheat, and bribe"—and this "evidence regarding other parents' purposefully bad behavior . . . undercut [his] ability to mount a credible defense." *Id.*

In other words, "under the guise of its single conspiracy theory, the government subjected" Wilson "to voluminous testimony relating to unconnected crimes in which [he] took no part." *Dellosantos*, 649 F.3d at 125. And—especially given the sensational nature of that testimony—the trial "created a pervasive risk of" evidentiary spillover. *Id.* That's because prejudice from evidentiary spillover is most likely to occur where, as here, "the crimes of some defendants are more horrific or better documented than the crimes of others." *United States v. Innamorati*, 996 F.2d 456, 469 (1st Cir. 1993).

15

Our justice system is better than this—or it should be.  Even in cases involving conspiracy, "[g]uilt . . . remains individual and personal." *Kotteakos*, 328 U.S. at 772.  "It is not a matter of mass application."  *Id.*  And that is precisely why the Supreme Court in *Kotteakos* held that rimless-wheel conspiracies do not constitute valid, single conspiracies.  The trial below is the poster child for why this principle exists.  This Court should vacate Wilson's convictions and remand for a fair trial.

## II.  CHARGING JOHN WILSON AS HAVING ENGAGED IN A SINGLE, OVERARCHING CONSPIRACY WAS NOT JUST.

"The prosecutor has more control over life, liberty, and reputation than any other person in America."  Jackson, *supra*, at 3.  "His discretion is tremendous."  *Id.*  And he possesses the "immense power to strike at citizens, not with mere individual strength, but with all the force of government itself."  *Id.*

But "[t]he United States Attorney is the representative not of an ordinary party to a controversy."  *Berger v. United States*, 295 U.S. 78, 88 (1935).  Rather, United States Attorneys represent "a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all."  *Id.*  As such, United States Attorneys' "interest . . . in a criminal

prosecution is not that [they] shall win a case, but that justice shall be done."
*Id.* And unlike nearly every other litigant, even if "the government technically loses its case, it has really won if justice has been done." Jackson, *supra*, at 4.

So while the United States Attorney "may strike hard blows, he is not at liberty to strike foul ones." *Berger*, 295 U.S. at 88. "It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Id.* "Only by extreme care can we protect the spirit as well as the letter of our civil liberties, and to do so is a responsibility of the federal prosecutor." Jackson, *supra*, at 6.

The course of the trial below did not, in our opinion, live up to Robert Jackson's ideals. "The tactic of charging many defendants with a single massive conspiracy is fraught with the potential for abuse." *Evans*, 970 F.2d at 674. That is because, as explained above, "[t]he risk is that a jury will be so overwhelmed with evidence of wrongdoing by other alleged coconspirators that it will fail to differentiate among particular defendants." *Id.* "The government must not be allowed to use conspiracy as a tool to circumvent the fundamental principle that 'guilt with us remains individual

and personal'" and "'is not a matter of mass application.'"  *Id.* (quoting

*Kotteakos*, 328 U.S. at 772).

*Amici* take no position on whether Wilson's actions constitute federal crimes.  *Amici* simply believe that Wilson should be held accountable for his own actions—and not those of other parents.  To be sure, Wilson may not be an overly sympathetic individual.  Few criminal defendants are.  But all criminal defendants—Wilson included—deserve fair trials designed to produce just results.  And the trial below "serves as a reminder that . . . when the government seeks to bring many individuals under the umbrella of a single conspiracy," federal courts "must be particularly vigilant" to ensure that the defendants' rights have been protected adequately.  *Evans*, 970 F.2d at 674.

As former United States Attorneys, *amici* sought to embody the ideals represented in Robert Jackson's concluding words:  "A sensitiveness to fair play and sportsmanship is perhaps the best protection against the abuse of power, and the citizen's safety lies in the prosecutor who tempers zeal with human kindness, who seeks truth and not victims, who serves the law and not factional purposes, and who approaches his task with humility."  Jackson, *supra*, at 6.  Though we hesitate to publicly criticize the charging

decisions of another federal prosecutor, in this instance we feel obligated to speak out to ensure that future criminal defendants are charged fairly, and are tried fairly.  This Court, *amici* respectfully submit, should do the same.

## CONCLUSION

The Court should vacate Wilson's convictions and remand for a new, fair trial.

Dated:  May 2, 2022

Respectfully submitted,

/s/ *Elliott M. Davis*
Elliott M. Davis
Kateland R. Jackson
SHOOK, HARDY & BACON L.L.P.
1800 K Street, NW, St. 1000
Washington, D.C.  20006
(202) 662-4867
edavis@shb.com

Scott A. Chesin
SHOOK, HARDY & BACON L.L.P.
1325 Avenue of the Americas
New York, N.Y.  10019
(212) 779-6106

*Counsel for Amici Curiae*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that:

1.      This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), it contains 3,737 words.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016, in 14-point Book Antiqua font.


Dated:  May 2, 2022                         */s/ Elliott M. Davis*
                                            Elliott M. Davis
                                            *Counsel for Amici Curiae*

## **CERTIFICATE OF SERVICE**

I certify that on May 2, 2022, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

I certify that the parties in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Dated:  May 2, 2022                               */s/ Elliott M. Davis*
                                                  Elliott M. Davis
                                                  *Counsel for Amici Curiae*