**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>        v.<br><br>JOHN WILSON,<br><br>        Defendant | Cr. No. 19-10080-LTS |

**DEFENDANT JOHN WILSON'S EMERGENCY MOTION**
**FOR REVISED SENTENCING SCHEDULE**

Defendant John Wilson moves the Court to amend the sentencing schedule. This case is unusual in that the First Circuit has issued a lengthy opinion that not only reversed seven of the eight convictions but also upheld the remaining tax count on narrower and more nuanced grounds than the Government had pressed below. The Court has ordered a schedule for sentencing, Dkt. #s 2694, 2696, that includes, as a first step, the Probation Department providing a supplemental memo stating new Guideline calculations on July 27, 2023. Yet the Probation Department has indicated to Mr. Wilson's counsel that it will not revisit the tax loss issue that is the major determinant of the Guidelines calculation without direction from the Court as to what the First Circuit opinion requires. For the reasons explained below, Mr. Wilson respectfully suggests that it will be most efficient for the parties to brief and address these issues with the Court in the first instance so that the amended Presentence Investigation Report ("PSR") that the Probation Department generates will apply the First Circuit opinion as the Court deems appropriate. In the alternative, Mr. Wilson requests that the schedule be altered to allow the

parties to address with the Probation Department any changes the First Circuit decision necessitates to the PSR.[1]

The Court of Appeals' decision rejected several of the legal theories and rulings upon which the PSR rested, including with respect to the tax count.  By way of background, the evidence at trial focused extensively on the government's fraud and bribery charges that gave rise to the seven dismissed counts. The tax count (Count 13) was far less significant. Likewise, the sentencing process and the PSR focused extensively on the seven dismissed counts, and the tax count played only a minor role. The First Circuit's opinion reversing all seven of the fraud and bribery counts, and the Government's subsequent decision to dismiss them (Dkt. # 2683), materially changes the nature of the sentencing of the tax count.

The tax count arises from actions Mr. Wilson took in 2014. Of the seven dismissed counts, five are based on conduct from 2018 and have no arguable relationship to the 2014 charitable donation that forms the basis for the tax count. Of the other two dismissed counts, one alleged a fraud and honest services conspiracy, and the other a Federal programs bribery conspiracy. The First Circuit's extensive opinion discusses the misjoinder of Mr. Wilson into the two charged conspiracies with numerous parents and other parties, and how that prejudiced Mr. Wilson by associating him with the bad acts of the others even though he had nothing to do with them:

> We also hold that the government failed to prove that Abdelaziz and Wilson agreed to join the overarching conspiracies among Singer and his clients charged in the indictment, and that this variance prejudiced the defendants by allowing the government to introduce a significant amount of powerful evidence related to other parents' wrongdoing in which these defendants played no part, creating an unacceptable risk that the jury convicted Abdelaziz and Wilson based on others' conduct rather than their own.

---

[1] Mr. Wilson files this as an emergency motion because he seeks to modify impending deadlines relating to the sentencing, including the Probation Department's July 27, 2023, deadline to provide new Guideline calculations.

*United States v. Abdelaziz*, 68 F.4th 1, 13 (1st Cir. 2023).

The one remaining count of conviction, Count 13, is for making a false statement on a tax return (26 U.S.C. § 7206(1)) for the tax year 2014. The false statement on the return relates to Mr. Wilson deducting $200,000 in donations to two charities approved by the IRS for 501(c)(3) tax exempt status (both of which provided Mr. Wilson with a receipt for the donations), and a related payment of $20,000 for charitable expenses related to administering the donation. At sentencing, Judge Gorton found the entire $220,000 was fraudulent, treating the now-vacated bribery and fraud convictions as determinative of the tax guidelines. Sent. Tr. at 12 ("The Court agrees with the Probation Officer's conclusion that because the entire payment was fraudulent, it could not have been taken as a deduction . . . .").

When the First Circuit reversed all of the fraud and bribery counts,[2] it specifically noted that the tax count could be supported by a finding unrelated to the wire fraud or bribery counts, by Mr. Wilson (a) deducting part of the charitable contribution as a business expense instead of deducting it as a charitable donation (a $1,425 tax savings); or (b) receiving a benefit that should have reduced the value of the charitable deduction below the full $220,000 amount. *Abdelaziz*, 68 F.4th at 65.  For purposes of upholding the conviction, it was enough that there was evidence sufficient to find that Mr. Wilson could not "deduct *the entire sum* as a charitable contribution," even if he *could* deduct some *portion* of that sum.  *Id.* at 69 (emphasis added).

The First Circuit ruling upended any broader potential basis for the tax count, including, as Judge Gorton found, that the entire payment was fraudulent or a bribe. The Government's arguments that the district court held were the binding law of the case at the first sentencing are

---

[2] In addition to its holding on the conspiracy charges and the prejudicial variance resulting from them, the court also held that the conduct at issue did not, as a matter of law, constitute honest services mail or wire fraud, *Abdelaziz*, 68 F.4th at 27-33, and that the district court had erred in instructing the jury that college admission slots were property for purposes of the mail and wire fraud statutes, *id.* at 33-40.

thus now contrary to First Circuit law.  Mr. Wilson expects there will now be a significant dispute between the parties over the interpretation of the First Circuit opinion and how it impacts the amount of the tax loss—and the PSR more generally.  Though the Probation Department of course is experienced at performing Guidelines calculations, the complex legal analysis involved in interpreting the appellate opinion is more properly within the realm of the Court.

Not surprisingly, the focus of the original, 92-page PSR was on the seven dismissed counts. *See* PSR at 15-21. For example, the PSR details aspects of the supposed overarching scheme that only other parents—but not Mr. Wilson—participated in, such as cheating on the ACTs or SATs. *Id.* at 17-19. The PSR also discusses Mr. Wilson's conduct and conversations regarding his daughters in 2018, and ancillary issues related thereto, *id.* at 23-26, that have nothing to do with tax issues arising from his 2014 tax return. The PSR raised various disputed issues, such as a potential victim impact to USC, that will be moot in a sentencing on solely the tax count. *E.g., id.* ¶ 74.  And, perhaps most importantly for purposes of the Guidelines calculation, the prior PSR's calculation of the "tax loss" is no longer operative, given the elimination of the fraud and bribery counts and the First Circuit's far narrower ground for upholding that conviction (*i.e.*, that Mr. Wilson was wrong to deduct the "entire sum" or to deduct part of it as a business expense rather than a charitable donation).

In light of these significant changes, the PSR must be revisited.  Mr. Wilson appreciates the Probation Department's reluctance to delve into the impact of the First Circuit opinion without further guidance from this Court.  Mr. Wilson thus proposes the following schedule:

(a) The parties submit simultaneous briefing to the Court on the impact of the First Circuit opinion on August 14, 2023.

(b) The parties may submit short (no more than ten pages) responsive briefs on August 25, 2023.

(c)  The Court may then either issue a ruling or conduct a conference to address any disputes, as it sees fit.

(d)  Upon providing such further guidance, the Court may then enter a schedule for Probation to provide its revised Guideline calculation and for the parties to provide sentencing memos. Mr. Wilson would also respectfully request an opportunity for the parties to provide a further submission to the Probation Department providing objections for consideration in advance of Probation finalizing the supplemental PSR, as is the typical practice for sentencing in the ordinary course.

In the alternative, Mr. Wilson requests that the Court adjust the schedule to allow for the Probation Department to comprehensively revisit the PSR, with input from the parties, prior to the submission of the revised final PSR to the Court.  The original PSR is so contrary to the First Circuit's ruling that it will be far more efficient for the parties and the Court to start with a PSR that eliminates much of the conflict with the First Circuit opinion.  Mr. Wilson thus proposes the following as an alternative schedule:

(a)  The Probation Department prepare a revised initial PSR by August 18, 2023.

(b)  The parties submit their objections to the revised initial PSR by September 6, 2023.

(c)  The Probation Department submit its revised final PSR by September 25, 2023.

(d)  The parties submit their sentencing memoranda to the Court by October 9, 2023.

(e)  The Court schedule the sentencing for a time thereafter.

Mr. Wilson submits that either process set forth in this motion would assist the Court, the Probation Department, and the parties to address the complex sentencing issues presented here in a fair, orderly, and efficient way.

WHEREFORE, Mr. Wilson respectfully requests that the Court adjust the sentencing schedule as set forth above in order to allow the parties as an initial matter to brief for the Court the impact of the First Circuit opinion on the remaining tax count.  In the alternative, Mr. Wilson respectfully requests that the Court adjust the sentencing schedule as above in order to establish a

process for the Probation Department to consider the impact of the First Circuit opinion on the

Guidelines calculation for the tax count and changes that must be made to the original PSR.

Dated: July 24, 2023                              Respectfully submitted,

                                                  *Counsel for John Wilson*

                                                  /s/ Michael Kendall
                                                  Michael Kendall (BBO #544866)
                                                  Lauren Papenhausen (BBO# 655527)
                                                  WHITE & CASE LLP
                                                  75 State Street
                                                  Boston, MA 02109-1814
                                                  Telephone: (617) 979-9310
                                                  michael.kendall@whitecase.com
                                                  lauren.papenhausen@whitecase.com

                                                  Andrew Tomback (*pro hac vice*)
                                                  McLaughlin & Stern, LLP
                                                  260 Madison Avenue
                                                  New York, NY 10016
                                                  Telephone: (212) 448-1100
                                                  ATomback@mclaughlinstern.com

## <u>LOCAL RULE 7.1 CERTIFICATION</u>

Pursuant to Local Rule 7.1, undersigned counsel certifies that he conferred with counsel for the Government in a good-faith attempt to resolve the issue presented by this motion. Counsel for the Government indicated the Government will oppose the motion.

/s/ Michael Kendall
Michael Kendall
