UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.: 19-10080-NMG |
| | ) | |
| JOHN WILSON, | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S "EMERGENCY" MOTION
TO REVISE PRE-SENTENCING PROCESS AND SENTENCING SCHEDULE**

In affirming defendant John Wilson's conviction for tax fraud on the basis of "very strong" evidence "based on his own words and conduct," the First Circuit noted that the fraud scheme "ultimately saved Wilson tens of thousands of dollars." *United States v. Abdelaziz*, 68 F.4th 1, 68–69 (1st Cir. 2023). The court rejected Wilson's contrary arguments—including his contention that the tax loss was far smaller—finding that "the government offered strong evidence that Wilson understood this payment to be part of an explicit quid pro quo to secure his son's admission" to the University of Southern California as a purported water polo recruit, "rather than a gift that might also curry some intangible amount of favor with the university." *Id*. Wilson's arguments, the court concluded, "downplay[ed]" the evidence presented at trial and "echo[ed] the position Wilson's counsel unsuccessfully presented to the jury during closing argument." *Id*. n.44

Wilson now seeks to relitigate these same, twice-rejected arguments at sentencing. Nearly two weeks after this Court set a schedule for the Probation Department to supplement the PSR and the parties to submit sentencing briefs (Dkt. 2694)—and just days before Probation's supplement is due—he suddenly seeks "emergency" relief: rounds of briefing on issues previously decided, and decided again. But there is no emergency. The Court's scheduling order is standard and appropriate. All that has changed is that Wilson has learned that, in 48 hours, Probation is likely

to opine to the Court that his Guidelines Sentencing Range ("GSR") on his conviction for tax fraud remains unchanged. Nor is there is any "complex legal analysis" required to "interpret" the First Circuit's opinion, as Wilson contends. Dkt. 2700 at 4. Contrary to his contention, his conviction does not arise from "deducting $200,000 in donations to two charities . . . and a related payment of $20,000 for charitable expenses related to administering the donation."[1] *Id*. at 3. As the First Circuit found, it arises from a scheme, devised "on his own initiative," to deduct his quid pro quo payments as fake business expenses, supported by falsified invoices, and a fake charitable deduction. *Abdelaziz*, 68 F.4th at 68. Wilson's motion to have the parties "brief for the Court the impact of the First Circuit opinion on the remaining tax count," is, in essence, a request to have the Court decide the applicable GSR in the first instance, thereby minimizing Probation's role in the process. Dkt. 2700 at 4.

## Procedural Background

In February 2022, the Court sentenced Wilson to a term of 15 months in prison to run concurrently on all counts of conviction, including his conviction for tax fraud. Dkt. 2536 at 3. In advance of sentencing, the defendant raised 68 objections to the PSR, including multiple objections to the calculation of the tax loss. *See, e.g.*, PSR Obj. 27, 46. Those objections were rejected by Probation and overruled by the Court, which agreed with Probation that the tax loss was approximately $88,000, and that the applicable GSR on the defendant's tax fraud conviction was 15 to 21 months. *See* PSR ¶¶ 91–96.

---

[1] The First Circuit noted that that $20,000 payment "went to [Rick] Singer personally on the basis that it was for the '[c]oncept, design, and implementation of [a] [p]rofessional [d]evelopment program for Hyannis Port Capital associates,' a service completely unrelated to college counseling, and one that Singer clearly never performed." *Abdelaziz*, 68 F.4th at 69.

The defendant did not raise any sentencing issues on appeal. In May 2023, the First Circuit affirmed his conviction for tax fraud, and it vacated and remanded the remaining counts of conviction.[2] *Abdelaziz*, 68 F.4th at 74. The court addressed the defendant's various arguments concerning his tax conviction at length. *See id.* at 63–74. For example, it noted:

> [T]he evidence against Wilson on the tax count, based on his own words and conduct, was very strong. Importantly, Wilson does not develop on appeal any argument that, as a matter of substantive tax law, the statements on his return were true -- that is, that the payments were properly deductible as business expenses or charitable contributions. He does not meaningfully dispute the government's theory that the payments did not qualify as business expenses (because of their personal nature) or as charitable contributions (because they were his side of a *quid pro quo* to secure his son's admission) . . . Th[e] evidence [of Wilson's fraudulent intent], with respect to both the business and charitable deductions, was powerful.

*Id.* at 68.

On remand, the government elected to proceed to sentencing on the tax fraud conviction and moved to dismiss the remaining counts. Dkt. 2683. Accordingly, on July 13, the Court ordered the following sentencing procedure and schedule: "Probation will issue a supplemental memo to the Court, with copies to the parties, stating new guideline calculations by July 27, 2023. The parties shall file any further sentencing memos by August 14, 2023." Dkt. 2694. The Court scheduled sentencing for September 14. Dkt. 2696.

## Argument

The Court's scheduling order is standard and correct. Pursuant to that order, and as in every other case, Probation will calculate the GSR and prepare the PSR; the parties will address the PSR, GSR, and other issues in sentencing memoranda; and then, at sentencing, the Court will rule on objections, calculate the applicable GSR, and impose sentence. Conversely, the defendant's motion is procedurally backwards. Having lobbied Probation informally for the GSR

---

[2] The First Circuit did not "reverse" his remaining convictions or direct acquittals, as the defendant contends. Dkt. 2700 at 1, 3.

he seeks—and learned that Probation is likely to disagree—he now seeks (1) to argue the issue to the Court *in advance* of sentencing, (2) then have the Court decide the applicable GSR and direct Probation to calculate the GSR accordingly, (3) then have Probation prepare the PSR, and (4) then, have the parties file sentencing memoranda and proceed to sentencing. That is not how the process works.

The defendant raises four principal arguments in favor of altering the ordinary procedure. None has merit.

<u>First</u>, he contends that "the Probation Department has indicated to [defendant's] counsel that it will not revisit the tax loss issue that is the major determinant of the Guidelines calculation without direction from the Court as to what the First Circuit opinion requires." Dkt. 2700 at 1. While Probation can speak for itself, the government's understanding is that Probation *will* review all relevant material—including the PSR and the First Circuit's opinion—and then determine the tax loss in the course of calculating the applicable GSR, just as the Court ordered. Probation is slated to provide the Court, and the parties, its position in about 48 hours.

<u>Second</u>, the defendant suggests that Probation is not able to perform the "complex legal analysis involved in interpreting the [First Circuit's] opinion," and that this is "more properly within the realm of the Court." Dkt. 2700 at 4. This argument assumes *both* that the First Circuit's opinion has any effect on the tax loss calculation, *and* that the relevant analysis is "complex." Neither is true. In any event, Probation is more than equipped to address "complex" issues. Indeed, the Probation Officer assigned to this case has handled every other college admissions-related sentencing in this District over the past several years, and has addressed numerous complex issues in those cases, deciding several in favor of defendants and contrary to the government's position. In those cases, the government did not file emergency motions asking the Court to

address the issues before Probation weighed in. Instead, the government objected, litigated the issues, and the Court decided them at sentencing. That process—which allows the parties ample opportunity to address all relevant issues—should likewise be followed here.

Third, the defendant advances several arguments that are ill-suited for the relief he seeks, and better suited for his sentencing advocacy before the Court. For example, he contends that certain portions of the PSR "have nothing to do with tax issues arising out of his 2014 return," like the defendant's conduct regarding his daughters in 2018. Dkt. 2700 at 4. But having committed tax fraud in 2014, the defendant attempted to do the same thing with respect to his daughters' college processes in 2018, and ultimately did not do so only because his actions were part of an FBI sting. The defendant's conduct in 2018 is thus plainly relevant to sentencing, and should remain in the PSR because, at a minimum, it informs his background, history, and characteristics.

Fourth, the defendant requests, in "the alternative," that the Court set a schedule for Probation to "comprehensively revisit the PSR." Dkt. 2700 at 5. Other than addressing the applicable GSR, there is nothing in the PSR—from the defendant's offense and relevant conduct, to his background and characteristics, to the defendant's exhaustive objections—that needs altering or supplementing. To the extent that the defendant wishes to have an opportunity to object to the PSR and the applicable GSR, he has already had ample opportunity to do so (including with lengthy objections to the calculation of the applicable tax loss), and he will have a further opportunity to do so in his sentencing memorandum.

For the foregoing reasons, the government respectfully requests that the Court deny the defendant's motion.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By: */s/ Ian J. Stearns*
STEPHEN E. FRANK
LESLIE A. WRIGHT
KRISTEN A. KEARNEY
IAN J. STEARNS
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Ian J. Stearns*
IAN J. STEARNS
Assistant United States Attorney