UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 19-10080-LTS |
| JOHN B. WILSON, | ) ) ) | |
| Defendant | ) ) | |

**UNITED STATES' OPPOSITION TO DEFENDANT JOHN WILSON'S MOTION FOR RETURN OF FUNDS HELD FOR FORFEITURE**

The United States opposes the defendant John Wilson's Motion for the Return of Funds. Contrary to Wilson's contention, the government did not seek to forfeit $1 million from him, and the Court did not enter a forfeiture order against him. Instead, the money Wilson now contends is owed to him was forfeited, with other funds, years ago from the accounts of William "Rick" Singer's Key Worldwide Foundation pursuant to a Final Order of Forfeiture entered by the Honorable Rya Zobel in Singer's criminal case. The government properly complied with its notice requirements in that case, and Wilson has had actual notice of the forfeiture for years. As with all property finally forfeited to the government, there is no basis for this Court now, nearly three and a half years later, to order the return of that money to a third party, let alone a third party who voluntarily relinquished ownership of the funds.

**BACKGROUND**

As a threshold matter, Wilson's motion appears to be premised on his contention that the government "sought the forfeiture of the $1 million" from him. Docket No. 2701 at 1. That is not true. Although the indictment against Wilson contained a general forfeiture allegation naming him along with multiple other defendants, the indictment did not specifically identify any

assets for forfeiture from him—let alone $1 million. Indeed, Wilson no longer had possession of that money, having voluntarily paid it to Singer with the intention that it would be passed to Harvard University and Stanford University to secure the admission of Wilson's two daughters as recruited athletes.[1]

In contrast, the United States identified Key Worldwide Foundation's financial accounts, among other assets, for forfeiture in Singer's Information, filed on March 5, 2019, and Singer's plea agreement, also filed on March 5, 2019. Docket Nos. 1 and 2 in *United States v. Singer*, 19-10078-RWZ. In that plea agreement, Singer admitted that the funds in these accounts, and other assets, were forfeitable as property involved in money laundering and under Title 18, United States Code, Section 1963, the broad forfeiture provision for federal racketeering offenses. Accordingly, in connection with Singer's criminal case, on September 12, 2019, Judge Zobel entered a Preliminary Order of Forfeiture of "all funds on deposit in Bank of America checking account in the name of Key Worldwide Foundation ending in x0486," as well as other assets. Docket No. 43 in 19-10078-RWZ.

Pursuant to the Preliminary Order of Forfeiture, and applicable forfeiture statutes, the government published notice of the forfeiture order for thirty days on www.forfeiture.gov and provided direct written notice, to the extent practicable, to any person known to have alleged an interest in the Properties to be forfeited. *See* Docket Nos. 46 and 47 in 19-10078-RWZ. The Preliminary Order of Forfeiture stated that "any person having a legal interest in the Properties shall, within sixty (60) days after the first publication on the government forfeiture website or within thirty (30) days after receipt of actual notice, whichever is earlier, file a petition with the

---

[1] In October and December 2018, the Defendant's company Hyannis Port Capital, Inc. made two $500,000 wire transfers to the Key Worldwide Foundation. *See* Docket No. 732 at 37–38.

United States District Court" and explained "that the petition shall be signed by the petitioner under penalty of perjury and set forth the nature and extent of petitioner's acquisition of the right, title, or interest in the Properties", among other facts. *See* Docket No. 43 in 19-10078-RWZ. The Preliminary Order of Forfeiture further provided that, pursuant to 21 U.S.C. § 853(n)(7) and 18 U.S.C. § 1963, if no timely petitions were filed, "the United States of America shall have clear title to the Properties."

No claims or petitions were filed with the District Court within the allotted time period (or at any time thereafter), and the United States moved for entry of a final order of forfeiture. Judge Zobel entered a Final Order of Forfeiture of "all funds on deposit in Bank of America checking account in the name of Key Worldwide Foundation ending in x0486" on February 5, 2020.[2] Docket No. 49 in 19-10078-RWZ (attached hereto at Exhibit A). As noted in Judge Zobel's final order, "no claims of interest in [this account] have been filed with the Court or served on the United States' Attorney's Office, and the time within which to do so has expired." *Id.* This Final Order of Forfeiture was also incorporated by reference into Singer's criminal sentence. *See* Amended Judgment, Docket No. 106 in 19-10078-RWZ.

## ARGUMENT

**A. Wilson's Request for Return of Funds Is Time Barred**

Even if Wilson had standing to assert a claim to the forfeited funds, which as explained below he does not, any claim now is time barred.

---

[2] The total amount forfeited from this account and another Key Worldwide Foundation account at Wells Fargo was $5,148,328.16. *See* United States Marshal Service Process Receipt and Return, Docket No. 55 in 19-10078-RWZ.

3

Congress provided that the exclusive means for a third party to claim forfeited assets is through the ancillary forfeiture proceeding. *See* 21 U.S.C. § 853(n); 18 U.S.C. § 1963(l);[3] *Libretti v. United States*, 516 U.S. 29, 44 (1995) ("Once the government has secured a stipulation as to forfeitability, third-party claimants can establish their entitlement to a return of the assets only by means of the hearing afforded under 21 U.S.C. § 853(n)."); *DSI Assocs. LLC v. United States*, 496 F.3d 175, 183 (2d Cir. 2007) ("It is ... well settled that section 853(n) provides the exclusive means by which a third party may lay claim to forfeited assets—after the preliminary forfeiture order has been entered.").

The government must adhere to certain notice provisions and wait the statutorily allotted time to allow claims to be filed before a forfeiture order can become final. Both 21 U.S.C. § 853(n)(1) and 18 U.S.C. § 1963(l)(1) require the government to publish notice, and state that "[t]he Government *may also*, to the extent practicable, provide direct written notice to any person known to have alleged an interest in the property that is the subject of the order of forfeiture as a substitute for published notice as to those persons so notified." (Emphasis added.) Federal Rule of Criminal Procedure 32.2(b)(6)(A) provides: "If the court orders the forfeiture of specific property, the government must publish notice of the order and send notice to any person who

---

[3] The provisions of 21 U.S.C. § 853(n) are incorporated by 18 U.S.C. § 982 and are nearly identical to the ancillary forfeiture proceedings as set forth in 18 U.S.C. § 1963(l).

Both 21 U.S.C. § 853(k) and 18 U.S.C. § 1963(i) also provide that "except as provided in subsection [853(n) or 1963(l)], no party claiming an interest in property subject to forfeiture under this section may—(1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or (2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section."

reasonably appears to be a potential claimant with standing to contest the forfeiture in the ancillary proceeding."

Both 21 U.S.C. § 853(n)(2) and 18 U.S.C. § 1963(l)(2) provide deadlines for a third party to file a claim: "within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier." A preliminary order of forfeiture can be amended only if the third party shows that he either (1) was a bona fide purchaser for value or (2) has an interest in the forfeited property that was vested or superior at the time of the crime. *See* 18 U.S.C. § 1963(l)(6); 21 U.S.C. § 853(n)(6). "[A] third party cannot the 'relitigat[e]' the underlying forfeiture order against the defendant." *United States v. Hallinan*, __ F.4th __, 2023 WL 4612021, at *2 (3d Cir. July 19, 2023).

Further, both 21 U.S.C. § 853(n) and 18 U.S.C. § 1963(l) state that "if no such petitions are filed …, the United States shall have clear title to property that is the subject of the order of forfeiture and may warrant good title to any subsequent purchaser or transferee." 21 U.S.C. § 853(n)(7) and 18 U.S.C. § 1963(l)(7). *See also* Fed. R. Crim. P. 32.2(c)(2) ("If no third party files a timely petition, the preliminary order becomes the final order of forfeiture…").

Here, each of these steps was completed, the forfeiture order has been final for three and a half years, and the time for filing a claim to the forfeited assets has long since passed. As for notice, the government published notice of the forfeiture on forfeiture.gov for thirty consecutive days, beginning October 1, 2019 and ending on October 30, 2019. *See* Docket No. 47 in 19-cr-10078. The government was not required to provide direct written notice to Wilson, any other third-party making deposits into the Key Worldwide Foundation's bank accounts, or any creditors or victims of Singer or the Key Worldwide Foundation. First, both 21 U.S.C. § 853(n)(2) and 18 U.S.C. § 1963(l)(2) use the permissive "may" with respect to providing direct

5

written notice to persons alleged to have an interest. *See United States v. Phillips*, 185 F.3d 183, 187 (4th Cir. 1999) ("As the statute makes clear, while notice through publication is required, written notice to specific persons known to have an interest is permissive."). Second, to the extent Federal Rule of Criminal Procedure 32.2(b)(6)(A) requires notice, it only requires notice be sent to "any person who reasonably appears to be a potential claimant with standing to contest the forfeiture in the ancillary proceeding." As a third-party who voluntarily transferred funds into a bank account (into which other funds were also transferred), and as discussed further below, Wilson does not reasonably appear to be a potential claimant with standing entitled to direct written notice. *See, e.g., United States v. Carmichael*, 440 F. Supp. 2d 1280, 1282 (M.D. Ala. 2006) (government not required to send notice to creditor who had no recorded lien to preserve its interest).

Even if the government had been required to provide direct notice of the Preliminary Order of Forfeiture to Wilson, or another depositor or unsecured creditor, which the government was not, Wilson in fact had actual notice of the forfeiture order. *See United States v. Puig*, 419 F.3d 700, 704 (8th Cir. 2005) (actual notice is sufficient); *United States v. Davenport*, 668 F.3d 1316, 1323 (11th Cir. 2012) (notice to claimant's attorney triggered mandatory 30–day period for filing third-party petition).

Wilson was arrested on March 12, 2019 (Docket No. 43), his attorney filed an appearance on March 25, 2019 (Docket No. 149), and Wilson was named in the Second Superseding Indictment returned on April 9, 2019 (Docket No. 314)—all well before the government moved to forfeit Singer's assets. There is little doubt that Wilson's counsel closely monitored Singer's criminal case—including the government's efforts to recover Singer's financial assets. From the commencement of Singer's case, the Bank of America account into which Wilson deposited

funds was specifically identified for forfeiture in both Singer's Information and plea agreement, as previously noted. *See* Docket Nos. 1 and 2 in 19-10078-RWZ. The fact that the $1 million Wilson paid Singer had been deposited into the Bank of America account ending in *0486 that the government forfeited from Singer was also specifically noted in an exhibit entered into evidence at Wilson's trial. *See, e.g.*, Trial Ex. 719. At sidebar, the government and Wilson's counsel argued about whether his questioning of a witness left the jury with the erroneous impression that Singer had been permitted to retain illicit funds. Wilson's counsel acknowledged that there was criminal forfeiture in Singer's case and that assets "may have been forfeited years later" after their receipt. *See* Sept. 29, 2021 Trial Transcript at pp. 118-119. In an email exchange with Singer's counsel the next day, the government noted that "all remaining funds in the Bank of America" account had been forfeited and cited Judge Zobel's forfeiture order. *See* Sep. 30, 2021 email exchange (attached hereto at Exhibit B) ("In fact, as you are aware, Singer forfeited all the remaining funds in the Bank of America and Wells Fargo accounts in 2019. *See United States v. Singer*, Dkt. 49 (final order of forfeiture); Dkt. 55 (Marshals Disposal Form). These funds totaled approximately $5.1 million.").

Following Wilson's conviction, Wilson's counsel filed a letter in *Singer's* criminal case—but not Wilson's—complaining that the United States had decided "not to pursue Singer's assets diligently." *See* Docket No. 66 in 19-cr-10078 (attached hereto at Exhibit C). In response, the government once again noted, in a letter filed on February 28, 2022, that it "thus far obtained – through forfeiture or voluntary payments toward anticipated forfeiture judgment – more than $6.5 million from Singer and entities associated with him." Docket No. 67 in 19-cr-10078 (attached hereto at Exhibit D).

7

There is, accordingly, no doubt that Wilson was aware of the forfeiture *years* prior to filing the instant motion. As a result, the motion for return of funds is time barred. *United States v. One-Sixth Share Of James J. Bulger In All Present And Future Proceeds Of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 41-42 (1st Cir. 2003) (holding "failure to file a timely claim as required by [forfeiture rule]—or indeed any claim at all until years after the judgment—is sufficient on its own to disqualify him from intervention now"); *United States v. Lyons*, 2013 WL 1694865, at *3 (D. Mass. Apr. 12, 2013) (claimant with actual knowledge that the helicopter was forfeited could not file an untimely claim in the forfeiture proceeding). For the same reasons, any attempt to reopen the forfeiture proceedings before Judge Zobel would also fail. *See Puig*, 419 F.3d at 704 (affirming denial of motion to reopen forfeiture proceedings because "failure to timely alert the court of his claimed right to the property in these circumstances was not excusable neglect" where claimant waited two months after receiving actual notice to assert a claim).

### B. Wilson Lacked Standing to File a Claim in the Ancillary Forfeiture Proceeding

Even if Wilson had filed a timely claim in the ancillary forfeiture proceeding, he lacked standing to contest the forfeiture of the specific accounts ordered by Judge Zobel. Having voluntarily transferred funds to a bank account controlled by Singer and the Key Worldwide Foundation, Wilson was at best an unsecured creditor. It is well established that unsecured creditors—and even fraud victims—do not have standing to assert a claim in an ancillary forfeiture proceeding.

As the D.C. Circuit explained in *United States v. BCCI Holdings (Lux.), S.A.*, "bank depositors, as general creditors, have no interest in the specific accounts to which their deposits might be traced, only in the defendant's estate as a whole—and therefore can have no interest in particular assets forfeited, as required under both prongs of § 1963(l)(6), unless they have

8

already secured a judgment against the debtor and perfected a lien against a particular item." 46 F.3d 1185, 1191 (D.C. Cir. 1995). Accordingly, "a general creditor can never have an interest in specific forfeited property, no matter what the relative size of his claim vis-a-vis the value of the defendant's post-forfeiture estate. Were it otherwise, the court litigating the forfeiture issue would be converted into a bankruptcy court and would not be able to grant forfeiture to the government until it determined that no general creditor would be unable to satisfy its claim against the defendant." *Id.* at 1191–92. The First Circuit explicitly adopted this holding in *United States v. One-Sixth Share Of James J. Bulger In All Present And Future Proceeds Of Mass Millions Lottery Ticket No. M246233,* 326 F.3d at 41–42 (quoting *BCCI Holdings (Lux.), S.A.,* 46 F.3d at 1191-92). *See also United States v. Watkins*, 320 F.3d 1279, 1283 (11th Cir. 2003) (claimants who transferred funds to the defendant to purchase cars for them were unsecured creditors and did not have standing to file a claim in the forfeiture proceedings); *DSI Assocs. LLC*, 496 F.3d at 184 ("As a general creditor of Kings Holdings and Gordon, DSI does not possess a 'legal right, title, or interest in the property' that was forfeited as required for standing under section 853(n)(6)(A), nor can it show that it was a bona fide purchaser for value of any such right, title or interest, as required for standing under section 853(b)(6)(B)."); *United States v. Ribadeneira*, 105 F.3d 833, 836–37 (2d Cir. 1997) (following *BCCI Holdings*, purchases of U.S. dollar checks drawn on seized bank accounts were general creditors and had not standing to contest forfeiture). After all, "if a criminal defendant's forfeited cash could be used to defray his debts to general creditors, the defendant would continue to benefit from his illicit activities." *United States v. Catala*, 870 F.3d 6, 11 (1st Cir. 2017).

For the same reasons, even victims of fraud schemes do not have standing in ancillary forfeiture proceedings. *See, e.g.*, *United States v. $7,599,358.09*, 2011 WL 3611451, at *3

9

(D.N.J. Aug. 15, 2011) ("In surrendering their money … the Claimants lost any ability to withdraw their money or control its use.  As such, the Claimants in this case are unsecured general creditors of the seized property who have no standing to challenge the property's seizure" or forfeiture) (citations omitted); *United States v. 8 Gilcrease Lane, Quincy Fla.*, 32351, 641 F. Supp. 2d 1, 5 (D.D.C. 2009) ("Fraud victims who voluntarily transfer their property to their wrongdoers do not retain a legal interest in their property; instead, such victims acquire a debt against their wrongdoers."); *United States v. BCCI Holdings, Luxembourg, S.A.*, 69 F. Supp. 2d 36, 59 (D.D.C. 1999) ("A fraud victim who voluntarily transferred property to the defendant has a cause of action in tort against the defendant but has no greater interest in the forfeited property than does any other general creditor.  Title to the funds in question no longer belongs to the victim; it belongs to the defendant.").

Because Wilson does not have standing to contest the forfeiture of the specific accounts ordered by Judge Zobel, the Motion for Return of Funds should be denied.

### C. Wilson Could Petition the Attorney General for Remission

Although any claim by Wilson to the funds in the ancillary forfeiture proceedings is time barred, and he lacked standing to file a claim in the ancillary forfeiture proceedings, Wilson is not without recourse.  Both 21 U.S.C. § 853(i)(1) and 18 U.S.C. § 1963(g)(1) confer on the Attorney General discretion to grant petitions for mitigation or remission of forfeited property "or take any other action to protect the rights of innocent persons which is in the interest of justice and which is not inconsistent with the provisions of" this chapter.  *See also* 28 C.F.R. Part 9 (regulations governing the petition for remission process).  As the Second Circuit explained, "[a] third party that possesses an interest in forfeited property yet does not meet the standing requirements of section 853(n) may petition the Attorney General for redress in the

'interest of justice.'" *DSI Assocs. LLC*, 496 F.3d at 186 (citing *United States v. Lavin*, 942 F.2d 177, 185 (3rd Cir. 1991); *BCCI Holdings (Lux.), S.A.*, 46 F.3d at 1192 (discussing RICO forfeiture provisions)); *see also Hallinan*, __ 4th __, 2023 WL 4612021 at *3. A court, however, does not rule on a petition for remission, nor can the United States Attorney's Office grant it; rather the Attorney General has delegated this authority to the chief of the Department of Justice's Asset Forfeiture and Money Laundering Section. 28 C.F.R. §9.1.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny the Motion for Return of Funds.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By:  /s/ *Carol E. Head*
CAROL E. HEAD
STEPHEN E. FRANK
LESLIE WRIGHT
KRISTEN A. KEARNEY
IAN STEARNS
Assistant United States Attorneys
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100
carol.head@usdoj.gov

Date: August 7, 2023

## CERTIFICATE OF SERVICE

I certify that on August 7, 2023 I electronically filed the foregoing document and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Carol E. Head*
CAROL E. HEAD
Assistant United States Attorney