# EXHIBIT 45

# First Circuit Oral Argument – dated November 7, 2022

No. 22-1129     United States vs. Gamal Abdelaziz

No. 22-1138     United States vs. John Wilson

**Judge Lipez**:  Let me ask you this, and this may be way off base, I acknowledge this.  But there is a--I'm thinking of the Amicus brief filed by a number of former US Attorneys.  It seems to me that the logic of their argument is that as an initial proposition quite apart from any issues of evidentiary insufficiency at trial with respect to the single overarching conspiracy.  It seems to me their position is that ab initio under Kotteakos, a conspiracy charged like this should never had been brought.  That it is inherently so broad that prejudicial spillover is inevitable.  I phrase that because we've been very focused understandably on the question of a single over arching conspiracy. In fact, perhaps it was proven here were a number of the individual conspiracies and that raises the variance issue. And then if there was a variance you have to assess whether that is prejudicial.  But I'm wondering if there isn't a more fundamental argument available to you.  Perhaps you're making it.  Perhaps you're not.  But that is that under Kotteakos a conspiracy charge like this simply cannot be brought as a proposition of law.  So, there's not a matter ultimately of evidentiary insufficiency--was one conspiracy proven or were multiple individual conspiracies proven.  This kind of conspiracy simply under the law--primarily based on Kotteakos--this kind of conspiracy cannot be charged.  Is that your position?

**Joshua Sharp**:  Your Honor, that is our position.  I think we make both positions that it can't be charged and that the evidence was insufficient.  And that's why we filed a Motion to Dismiss that said that based on these facts alleged in the indictment you can't have a conspiracy.  Now the trial judge said, well, we'll see what the evidence shows--

**Judge Lipez:**  Right.

**Joshua Sharp:**  And then afterward when all of the evidence came in and under Rule 29, we said there was no single conspiracy proven, and the government's response was to say was "we've been over this already."  Because Judge Gorton ruled that there was sufficient allegations.  Judge Gorton didn't address whether the evidence was sufficient for a single conspiracy in this case.

**Judge Lynch**:  Counsel on motions to dismiss indictments almost never succeed.  And that is because the law is very, very strict about leaving those questions to a matter of proof.  So, I understood the US Attorneys not to be saying the motion to dismiss the indictment should have been granted.  But once the government shows its hand and shows the type of evidence it has, it then became clear it was a rimless conspiracy and should not have gone forward.  And the US Attorneys knew what evidence it had before it brought these charges and as a matter of good prosecutorial practice, they shouldn't have proceeded.  But that's a different question than the law on dismissing indictments.

**Joshua Sharp:**  Yes, your Honor.  In fact, it was a questionable conspiracy from the very beginning.  But by bringing this case that allowed them to bring in this avalanche of evidence of other people's bad intent.  And, of course, on appeal, they will argue it's simply harmless error.  But that's what their entire case centered around.  There was very little evidence.

**Judge Lynch:**  Okay.

**Judge Barron:**  Thank you.

**Judge Lynch**:  Thank you.

\*     \*     \*

**Judge Barron:**  Do you want just one minute to wrap up?  You don't have to take it.

**AUSA Alexia DeVincentis:**  Umm, well I'd be happy to address any of the evidentiary questions that the Court would like me to, otherwise we are content.

**Judge Lipez:**  Yeah, I would like to explore that just a bit.  I mean what the--we've been talking a lot about fairness of this trial.  The government was notably aggressive in trying to prevent the defendants from mounting what they characterize as a good faith defense, which you've acknowledged is a proper defense and if successful would have prevented conviction on the charges.  I don't understand the argument, although the trial judge focused on relevance.  It seems to me in their efforts to establish….and there may be issues with about with how they went about it, but on the general proposition it was highly relevant, if at the University of Southern California there was a culture that promoted the kind of donations here in return for which students were not qualified but nevertheless be admitted.  If there was such a culture that extended to all those involved in the selection process.  I mean that would be critical to the good faith defense.  The notion that we were not doing anything wrong.  That this is simply the way business was done.  How can you defend the conclusion that that evidence was not relevant?  Again, putting aside questions of the way in which that evidence might be entered, how can you argue that that evidence would not be relevant?  I don't understand that.

**AUSA Alexia DeVincentis**:  I think a lot the evidentiary disputes in this case could actually be resolved by what the District Court early on recognized but the defendants still don't want to accept.  Which is that this case was--

**Judge Lipez:**  I'm sorry they don't what?

**AUSA Alexia DeVincentis:**  To accept.  This case was not about whether USC gave preferential admissions treatment in exchange for donations.  This case was about the defendants

very different choice to falsely represent their student--their children's athletic abilities and to pay money to induce an insider to make that happen.  And once one recognizes what--

**Judge Barron:**  Can I just, on that point, if I'm reading the Jury Instructions correctly, there was not a requirement on the bribery counts to prove that anything was done falsely.  I thought there was only a requirement to prove the quid pro quo and that the quid pro quo was concealed.

**AUSA Alexia DeVincentis:**  Is your honor referring if you're referring--to the 1346 counts--

**Judge Barron:**  I'm just referring to the Jury Instructions for anything relating to bribery.  I didn't see in those any requirement that the jury find false passing off.  I thought they only had to find that there was a quid pro quo and concealment of the quid pro quo.

**AUSA Alexia DeVincentis**:   I agree to a certain extent.  The Jury Instructions on honest services fraud effectively require the court instructed the jury that it had to find a scheme to defraud the University of the right to--

**Judge Barron:**   Yeah, but with respect to the bribe part of it, they didn't have to find that part of the bribe was that there was falsification.  And so, you could read those instructions to say that the defrauding part was the concealment of the bribe.  You were just suggesting that in this case the jury had to find that there was falsification of the profile of the athlete.  I didn't the instruction requiring the jury to find that--

**AUSA Alexia DeVincentis:**  Well, I think that in order to find that USC has been defrauded of the right of the honor services of its—

**Judge Barron:**  Why wouldn't it be enough to--I thought you could just find that there had been a concealment of the bribe.

**AUSA Alexia DeVincentis:**  The concealment of the bribe was evidence of the fact that the payment was corrupt.  The concealment of the bribe was—

**Judge Barron**:  Yeah but not--okay, I got it.

**AUSA Alexia DeVincentis**:  Returning to the evidentiary issues, it has been noted that the defendants could--did have many ways to put in this USC evidence if they wanted to.  They had various potential witnesses available to them who didn't call the Fifth Amendment and who had relevant information about the relevant fiduciary duties in this case.  They could have called Brunold of the Dean of Admissions.  They could have called Brennan, the Associate Dean of Admissions, and so on.  What they chose instead to do was to attempt to introduce documents

laden with hearsay and on that dry record confuse issues about the distinction between the VIP process and the SUBCO process.

**Judge Lipez:** But counsel it seems to me that the--the Judge may have made rulings that suggested to the defendants that if they called some of these witnesses, the Judge would say, well if the defendants did not know about the practices that these witnesses were describing--if they were not aware of the content of these emails, that's not relevant.  And I don't understand that because it seems to me the theory of the defendants was that what these witnesses could testify to would confirm what Singer was saying to them that this is the way the school does business.  They expect individuals such as you to contribute large sums of money, in order to enhance the likelihood that their children would be admitted.  And so whether they knew about the specifics of what those witnesses might say, strikes me as quite irrelevant given their theory that that evidence would confirm what Singer was telling them about this culture.  So it seems to me that those views of the Judge would suggest to the defendant what's the point of calling these witnesses.  The Judge is not going to allow them to testify to the kind of evidence that we want to elicit.  Is that a--do I have an incorrect view of what the Judge was basically telling the defendants?

**AUSA Alexia DeVincentis:** Well, I think that it's incorrect to suggest that the Judge was requiring knowledge of the evidence itself.  The Judge was merely for good faith purposes, requiring knowledge of the practices that the evidence allegedly demonstrated.  And the relevant--

**Judge Lipez**:  Well, they got that through Singer.  That's basically what Singer was telling them.  This is the way we do business.  So they, again, the defendants wanted this evidence to confirm what they say Singer was telling them in support of their position, that we thought everything we were doing here was okay.  Because it's the way the University does business.