# EXHIBIT 60

```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA,        )
                Plaintiff        )
                                 )
vs.                              )  No. 1-19-CR-10080
                                 )
GAMAL ABDELAZIZ and JOHN         )
WILSON,                          )
                Defendants.      )
                                 )
                                 )


        BEFORE THE HONORABLE NATHANIEL M. GORTON
             UNITED STATES DISTRICT JUDGE
                  JURY TRIAL - DAY 11


       John Joseph Moakley United States Courthouse
                      Courtroom No. 4
                     One Courthouse Way
                 Boston, Massachusetts 02210



                     September 24, 2021
                         9:06 a.m.




                 Kristin M. Kelley, RPR, CRR
                   Kathy Silva, RPR, CRR
                   Official Court Reporter
       John Joseph Moakley United States Courthouse
                One Courthouse Way, Room 3209
                 Boston, Massachusetts 02210
                  E-mail: kmob929@gmail.com

         Mechanical Steno - Computer-Aided Transcript
```

1  Q. You testified yesterday that Mr. Singer was reluctant to
2  say the things we wanted him to say.  Do you remember saying
3  that?
4  A. Yes.
5  Q. Could you tell us the things that he was reluctant to say
6  that you wanted him to say?
7  A. Mr. Singer was reluctant to say, "a payment to a coach."
8  In some situations, he was reluctant to say the word "bribe".
9  Q. What else?
10 A. That's what I -- that was my -- what I recall the main
11 points were.
12 Q. Would you agree with me that in all of the tapes with John
13 Wilson, Mr. Singer once never says something along the lines of
14 a fake profile or a false profile?
15 A. Correct.
16 Q. Was that his decision not to use that phrase, or was it
17 you simply didn't instruct him to use that phrase?
18 A. Specifically with Mr. Wilson, I don't recall.  With other
19 parents, we asked Mr. Singer to say it was a payment to a
20 coach, and some of the other things we asked him to say was
21 that they would be recruited and didn't have to play,
22 admissions wouldn't know.
23 Q. ==Did you have any written record of the instructions you==
24 ==gave Mr. Singer of what to say to Mr. Wilson?==
25 ==A. No.==

1    Q.    Do you have any written record of what Mr. Singer refused
2    to say to Mr. Wilson?
3    A.    No.
4         MR. KENDALL:  Your Honor, I'd like to put up
5    demonstrative K.  It's a demonstrative we have that's simply
6    verbatim quotes of government exhibits.
7         MR. FRANK:  Your Honor, may I look at it?
8         THE COURT:  Sure.  If you show it to counsel.
9         MR. KENDALL:  Yes.
10        MR. FRANK:  Is it a multipage document?
11        MS. PAPENHAUSEN:  Yes, it is.
12        THE COURT:  I need a technical break for a moment.
13        (Pause.)
14        THE COURT:  Thank you, counsel.  Go ahead.
15        MR. FRANK:  Your Honor, this is full of argument.
16   These are not simply excerpts.  There are actually headings on
17   here with defense arguments on them.
18        MR. KENDALL:  Your Honor, I have some titles, but
19   everything there is a verbatim quote.
20        THE COURT:  You want to do something like this, bring
21   it to the Court's attention before we have a jury.  I'm not
22   going to allow it in, but at a break, I'll look at it.
23        MR. KENDALL:  If I can have that back, Mr. Frank.
24   Q.    I'd like to next go to the September 15 conversation that
25   you monitored.  I'd like to just show you a couple of excerpts,

```
 1              MR. KENDALL:  Your Honor, I'd like to --
 2              MR. FRANK:  Your Honor, I object.  She can tell him
 3   what her understanding of the words is without using a
 4   dictionary.
 5              THE COURT:  Yeah.  Go ahead.
 6              MR. KENDALL:  Okay.  Would you agree with me -- hold
 7   one second, please.
 8   Q.   Would you agree with me that the word "explicit" can be
 9   defined as "leaving no question as to meaning or intent"?
10   A.   Can you repeat that?
11   Q.   Yes.  "Leaving no question as to meaning or intent".
12   A.   Yes.
13   Q.   It could also mean "fully revealed or expressed without
14   vagueness, implication or ambiguity"?
15   A.   Yes.
16   Q.   And for the word "ensure", would you agree with me that
17   means "to make sure, certain or safe, to guarantee"?
18   A.   I'm sorry.  Can you repeat that?
19   Q.   Yes.  "To make sure, certain or safe, to guarantee".
20   A.   I agree.
21   Q.   Okay.  So you wanted Mr. Singer to leave no question as to
22   the meaning or intent of what he was doing with Mr. Wilson,
23   correct?
24   A.   Can you repeat that?
25   Q.   You wanted Mr. Singer to use words that left no question
```

```
 1    as to the meaning or intent of what he was proposing to
 2    Mr. Wilson, correct?
 3    A.   Correct.
 4    Q.   Did Mr. Singer agree to do that?
 5    A.   Yes.
 6    Q.   And so it's your statement that the words on these tapes
 7    leave no question as to the meaning or intent of what was going
 8    on?
 9    A.   No.
10    Q.   There was ambiguity?
11    A.   No.  Mr. Singer said that he would say the, would be
12    explicit, but at times he would go back to his whole pitch and
13    go back to the old cover story as part of his just being used
14    to saying "donation" when we asked him to say payment.
15    Q.   I'm not asking what Mr. Singer told you he was going to
16    do.  I'm asking you, do you think in the tapes and consensual
17    monitoring that Mr. Singer accomplished what you wanted him to
18    do, to leave no question as to the meaning or intent of the
19    words?
20         MR. FRANK:  I object, your Honor.  It's irrelevant.
21         THE COURT:  Sustained.
22    Q.   Why don't we take a look at some of the transcript.  I'm
23    not going to play the tapes.  They've been played, but I do
24    want to go through the transcripts of some of the calls that
25    you've testified with with Mr. Frank.
```

1  comments that Mr. Singer made to us as part of the interview
2  process.
3  Q.  But you -- and so it's basically a one-way mirror.  It
4  shows what he said to you, but not what you said to him,
5  correct?
6  A.  We were collecting evidence and we documented the
7  substance that Mr. Singer told us about different people and
8  about his schemes.
9  Q.  Could you answer my question, please?
10        MR. FRANK:  Objection, your Honor.  She just did.
11        THE COURT:  Yeah.  Sustained.
12 Q.  It shows what he said to you, nothing of what you said to
13 him, correct?
14 A.  I did not write down what I said to Mr. Singer.
15 Q.  Okay.  The only person who purports to have done that is
16 Mr. Singer in Exhibit 13, correct?
17        MR. FRANK:  Objection to what Mr. Singer purports.
18        THE COURT:  Sustained.
19 Q.  But even when you say that you wrote down what Mr. Singer
20 told you, you didn't write down everything, correct?
21 A.  Can you be specific?
22 Q.  Yes.  He told you on multiple occasions he didn't use the
23 word "bribe" with Mr. Wilson and other parents, and you didn't
24 put that in the reports, correct?
25 A.  I don't recall if that's in the reports or not.

```
 1   Q.   Can you identify a single time you put in a report,
 2   Mr. Singer told us he did not use the world "bribe" with
 3   Mr. Wilson?
 4   A.   The reports summarize what Mr. Singer said.  I don't
 5   recall if he used -- if the exact word "bribe" is in the
 6   reports.
 7   Q.   Well, you told us you had this ongoing dialogue with him
 8   of giving him instructions and him misspeaking and not
 9   following them.  Do you remember that testimony?
10   A.   Yes.
11   Q.   You didn't record any of that in your notes that you had
12   repeatedly told him to use certain words and he repeatedly
13   misspoke and didn't use those words or used the wrong words,
14   correct?
15   A.   I did not document that, correct.
16   Q.   Okay.  It's an ongoing conversation with him for the
17   entire three months that he's recording consensuals with
18   Mr. Wilson and not once did you put it in an interview report,
19   correct?
20   A.   An interview report is what Mr. Singer tells us, not what
21   we tell Mr. Singer.
22   Q.   Well, he's telling you that he's never used a bribe with
23   Mr. Wilson, the word "bribe" with Mr. Wilson, and you don't put
24   that in a report?
25   A.   I don't recall the specific word that is in the report.
```

```
 1   document what Mr. Singer did with parents and discussed the --
 2   wrote down the side door and the SAT scheme in the reports.
 3   Q.   Could you answer my question, please?
 4        MR. FRANK:  Objection, your Honor.
 5   Q.   Not once did any agent write in a report that Mr. Singer
 6   said he didn't tell the parents it was a bribe.  He always told
 7   them it was a donation.
 8   A.   I don't recall that specific statement written down.  We
 9   documented what the side door was, the SAT scheme, and the
10   communication -- what Mr. Singer told us that he did with the
11   parents.
12   Q.   Not once in hundreds of pages of interview reports,
13   correct?
14   A.   Correct.
15        MR. FRANK:  I'm not sure what that question was.  Not
16   once what?
17   Q.   And it says nowhere in those interview reports what you
18   said to him to get him to cooperate, correct?
19   A.   I did not document those -- that specific comment or those
20   specific part of the meeting with Mr. Singer.
21   Q.   And you didn't document any of your criticisms of how he
22   made the consensual tapes, correct?
23   A.   Operational discussion --
24        MR. FRANK:  Objection to the term "criticisms".
25        THE COURT:  Sustained.
```

Case 1:19-cr-10080-LTS   Document 2719-58   Filed 08/15/23   Page 10 of 10

216

```
 1   C E R T I F I C A T E
 2
 3
 4   UNITED STATES DISTRICT COURT )
 5   DISTRICT OF MASSACHUSETTS    )
 6
 7
 8          We, Kristin M. Kelley and Kathy Silva, certify that
 9   the foregoing is a correct transcript from the record of
10   proceedings taken September 24, 2021 in the above-entitled
11   matter to the best of our skill and ability.
12
13
14       /s/ Kristin M. Kelley              September 24, 2021
15       /s/ Kathy Silva                    September 24, 2021
16       Kristin M. Kelley, RPR, CRR              Date
         Kathy Silva, RPR, CRR
17       Official Court Reporter
18
19
20
21
22
23
24
25
```