# EXHIBIT 68

```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS


                              )
UNITED STATES OF AMERICA,     )
                              )        Criminal Action
         Plaintiff,           )        No. 19-10222-DPW
                              )
v.                            )
                              )
JEFFREY BIZZACK,              )
                              )
         Defendant.           )
                              )


         BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
              UNITED STATES DISTRICT JUDGE


                        SENTENCING


                    October 30, 2019


     John J. Moakley United States Courthouse
                 Courtroom No. 1
                One Courthouse Way
          Boston, Massachusetts  02210




                           Kelly Mortellite, RMR, CRR
                           Official Court Reporter
                           One Courthouse Way, Room 5200
                           Boston, Massachusetts  02210
                           mortellite@gmail.com
```

1  MS. KEARNEY: No, Your Honor, because in light of
2  Skilling, there has to be a bribe or kickback.
3  THE COURT: Yes, there does, I agree. And this is a
4  case in search of a bribe or kickback, and now I'd like to find
5  it and find it with specificity because you've got to be able
6  -- if you want to make a request for an enhanced guideline
7  range, you've got to identify it.
8  So now we're back to this question of what was the
9  bribe that she received? Because it has to be to her, not some
10 account that she controlled, unless you say it was reasonably
11 foreseeable to him that she was going to toy with that account.
12 MS. KEARNEY: It was reasonably foreseeable to this
13 defendant because he sent a check directly to her --
14 THE COURT: To whom --
15 MS. KEARNEY: -- to be deposited into a USC account.
16 THE COURT: To whom was the check made out?
17 MS. KEARNEY: It was made out to the Galen Center.
18 THE COURT: Was it deposited to the Galen Center?
19 MS. KEARNEY: It was, and that's an account that Ms.
20 Heinel oversaw.
21 THE COURT: Right. And now, the Galen Center, was
22 that a 501(c)(3)?
23 MS. KEARNEY: This is a facility at USC.
24 THE COURT: Right. But would a payment to the Galen
25 Center, apart from machinations that she could undertake, would

```
 1  that be a charitable contribution?
 2            MS. KEARNEY:  My understanding is yes.
 3            THE COURT:  Okay.  So we've got $50,000 going to the
 4  Galen Center that I gather you say is, at least that's
 5  identifiable bribery?
 6            MS. KEARNEY:  Yes, Your Honor.
 7            THE COURT:  Okay.  Anything else?
 8            MS. KEARNEY:  There are also payments that Mr. Singer
 9  made directly to Ms. Heinel beginning in the summer of 2018.
10  He agreed with her, given the number of students she was
11  helping him admit, including the defendant's son, to pay
12  $20,000 a month.  She would provide invoices to Mr. Singer.
13  One such invoice --
14            THE COURT:  But how do we particularize that to
15  Mr. Singer?
16            MS. KEARNEY:  To Mr. Bizzack.
17            THE COURT:  I mean Mr. Bizzack, sorry.
18            MS. KEARNEY:  She provided invoices to Mr. Singer.
19            THE COURT:  Right, but how do we --
20            MS. KEARNEY:  And one of those invoices identified the
21  defendant's son.
22            THE COURT:  How much money?
23            MS. KEARNEY:  That would have been a $20,000 invoice.
24            THE COURT:  Every time there's an invoice, it's
25  $20,000?
```

1          MS. KEARNEY:  Correct.

2          THE COURT:  So now we're at 70, giving the government

3   the benefit of the doubt on this.  Anything else?

4          MS. KEARNEY:  No, Your Honor.

5          THE COURT:  Okay.  So we've got a $70,000 bribe that

6   the government contends here.  Not $250,000.  $70,000.  That's

7   reasonably foreseeable by anybody in this, unless you take the

8   position that some speculation on the part of Mr. Bizzack --

9   sorry if I keep using the wrong pronunciation -- Bizzack, is

10  that the proper --

11         THE DEFENDANT:  Bizzack.

12         THE COURT:  Bizzack.  Okay.  We've got $70,000, right?

13         MS. KEARNEY:  So there was $70,000 actually received

14  by the bribe recipients.

15         THE COURT:  But that was the whole scope, isn't it,

16  from Mr. Singer's point of view?

17         MS. KEARNEY:  Well, the way Mr. Singer worked, the

18  scheme he never disclosed to parents that he was taking a --

19         THE COURT:  He was the hub on this.  And analyzing

20  this as a bribery scheme, it has to be whatever Mr. Singer was

21  prepared to pay to a faithless employee of USC.

22         MS. KEARNEY:  Well, it also involves what the

23  defendant believed his bribe was going to.

24         THE COURT:  So if the defendant believes that somebody

25  says I could get your child into USC for a million dollars,

1    doesn't tell him how; it doesn't tell him that it provides
2    Photoshop services, for example, it's a million-dollar bribe?
3              MS. KEARNEY:  If the defendant then paid the
4    million-dollar bribe with the expectation --
5              THE COURT:  Is there any case law that says something
6    like that?
7              MS. KEARNEY:  I believe there is, Your Honor.  I don't
8    have it at hand.  I can submit something to the court.
9              THE COURT:  That is reasonably foreseeable by the
10   defendant in a case like this?
11             MS. KEARNEY:  Yes, Your Honor.
12             THE COURT:  For purposes of sentencing, is that it?
13             MS. KEARNEY:  I would --
14             THE COURT:  You don't want to mix up a substantive
15   liability conspiracy with the liability that's identified for
16   purposes of the sentencing guidelines.
17             MS. KEARNEY:  Your Honor, I would have to go back and
18   look at the cases to confirm.
19             THE COURT:  So you're not familiar with any case law
20   that does it.  Another way of saying it is you're not familiar
21   with the case law in this area; is that right?
22             MS. KEARNEY:  Your Honor, I am aware that there are
23   cases.  I have not looked at them recently.  I apologize.
24             THE COURT:  Did you think that that might be important
25   for purposes of sentencing?  That is, the government bears the

1   the defendants in Abbott.

2          MS. KEARNEY:  Well, not where it's a conspiracy,
3   though.

4          THE COURT:  Whether it's a conspiracy or not, the
5   question of what the intent was of the conspiracy, that is, to
6   extract money from unwitting or witting victims to receive
7   money for some service that has not been established to involve
8   a bribe of a specific amount amounts to the same thing under
9   this analysis.

10         MS. KEARNEY:  No, Your Honor.  The amounts paid by the
11  defendant to both USC's account at the Galen Center as well as
12  to Mr. Singer would be gains to the conspiracy as a whole.  In
13  addition, the --

14         THE COURT:  No, but the conspiracy has to be one
15  that's violative of federal law, and what you've said is or the
16  assumption that I've dealt with -- I'm not sure you said
17  this -- but essentially, it's not a bribery that can be
18  recognized under the sentencing guidelines because it's too
19  speculative, at best too speculative.  So then we're left with
20  what do we say?  There's money sloshing around, and we should
21  use the sloshing around money as the basis for calculating a
22  guideline.

23         MS. KEARNEY:  That's one basis.  In addition, the
24  other gain here is the admission spot itself --

25         THE COURT:  What's the value of that?

1          MS. KEARNEY: -- which is not easily valuable --
2          THE COURT: Right. So I can't calculate that. See,
3   the point I'm getting to is these are -- they're not
4   comprehended by the guidelines. These are outside of the
5   guidelines. The guidelines, we're talking about fraud
6   guidelines which have their own problems generally, simply
7   because of the versatility of fraud. There's so many ways that
8   people can commit fraud, and every time there's a new one, it
9   doesn't really fit into the guidelines themselves. What you
10  essentially have is a kind of Procrustean bed. Procrustes was
11  a Greek mythological figure who took slaves and cut them to the
12  size of the bed that he had, not because that fit them, but
13  because it fit the structure that he was trying to deal with.
14  That's what the guidelines are on this, and on many things,
15  frankly.
16         So I do have to decide what the guidelines are. I'm
17  doing my best to do that. There's been a challenge to the
18  Probation Office. I'll put to one side whether or not that was
19  a hyperventilating challenge but a challenge. The U.S.
20  Attorney's Office says that the Probation Office disregarded
21  their views. There is no basis for saying that that happened.
22  They considered their views.
23         Now, the Probation Office has their point of view.
24  The reason I have them sitting over there is they are mere
25  witnesses in this court, which brings me to another point.

1   that's something you can answer?

2             MS. KEARNEY:  Yes, Your Honor, I can answer that, and
3   that is correct.

4             THE COURT:  All right.  So now we're back to this
5   issue of evaluating what Probation says, what the government
6   says and challenge to it.  Put to one side the tone and also
7   the kind of defensiveness that was evidenced by the Probation
8   Office, which should understand that they're subject to
9   challenge like everybody else, and I make the decision or my
10  colleagues make the decision ultimately.  That's what the
11  adversarial process is all about.  But we're back down to this
12  question.  We just can't figure a guideline without stretching
13  -- an amount with respect to the guideline without stretching
14  it in some fashion that is wholly speculative.

15            MS. KEARNEY:  Well, going back to, we discussed
16  valuing the admission spot, and it's not wholly speculative in
17  the sense that we know what it was worth to the defendant, what
18  he was willing to pay for it.

19            THE COURT:  But let's pause with that, too, because I
20  want to be sure that I understand for purposes of making an
21  evaluation that is applicable, generally applicable.  Does the
22  culpability of a defendant depend upon the amount of money he
23  paid for the admission slot?

24            MS. KEARNEY:  Yes.

25            THE COURT:  How?  So somebody drives a hard bargain

1    someone who has got the same background.  Profoundly corrosive.
2    Probably as corrosive as anything that can happen in the
3    criminal justice system to have disparate sentences.  So the
4    Sentencing Reform Act, the sentencing guidelines were meant
5    address that.  It's very hard, as this case indicates, to
6    develop guidelines that adequately capture some new form of
7    fraud.  New form in the sense that it hasn't been focused in
8    some way.
9            I've looked at the cases that the government has
10   suggested as alternative ways.  I don't think anybody has done
11   an evaluation of this case any better than Judge Talwani.  I
12   believe that she's carefully considered all of the factors.
13   And so while I would act disparately if I thought that it was
14   important to act disparately I'm not going to act disparately
15   from her general structure, which seems to me to be carefully
16   thought out and exercised with principle.
17           Now, I said it before, I'll say it again.  I also
18   think the government's recommendations are presented in a
19   principled way.  They're not and haven't been knee-jerk.
20   They've attempted to deal with, as they think appropriate, the
21   differences among the defendants.  It's simply that I think
22   it's in this defendant's case and in the cases that Judge
23   Talwani dealt with as I understand them, and I try to
24   understand them by reading carefully the docket in Abbott.
25   That seems to me to set the proper kind of range.  And so I can

CERTIFICATE OF OFFICIAL REPORTER

I, Kelly Mortellite, Registered Merit Reporter and Certified Realtime Reporter, in and for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing transcript is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter to the best of my skill and ability.

Dated this 4th day of November, 2019.


/s/ Kelly Mortellite

_____

Kelly Mortellite, RMR, CRR

Official Court Reporter