UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHN WILSON,<br><br>      Defendant. | Cr. No. 19-10080-LTS |

**DECLARATION OF YAKOV MALKIEL, ESQ. IN SUPPORT OF
DEFENDANT JOHN WILSON'S MOTION FOR RETURN OF FUNDS**

I, Yakov Malkiel, hereby state:

1) I work as an Administrative Magistrate for the Commonwealth of Massachusetts. I have been a member of the Massachusetts bar since 2013. I am a member of the bar of the U.S. District Court for the District of Massachusetts. I have served as a judicial law clerk, a litigator, and an adjudicator. I am a member of the Massachusetts Supreme Judicial Court's Standing Committee on the Rules of Professional Conduct.

2) From April, 2016 to April, 2021, I worked as an associate at White & Case LLP in Boston. I worked on the defense of John Wilson from Spring 2019 through my departure from the firm in April, 2021.

3) As part of my work on the Wilson case, I made sure to read each filing in the various dockets related to the "Varsity Blues" prosecutions, including *United States v. Singer*, Cr. no. 19-10078-RWZ. I arranged to receive CM/ECF alerts in those dockets. Those alerts remain in place today. It was my practice to review the submissions in those dockets promptly after they were filed, whether or not they related directly to Mr. Wilson's case. In particular, it was my practice to read every submission in the *Singer*

case. During the time I represented Mr. Wilson, I was the only person with this responsibility on the Wilson defense team.

4) Ever since I became familiar with Mr. Wilson's case, it has been my understanding that Mr. Singer became a government cooperator in approximately September 2018; and that the U.S. Attorney's Office did not view Mr. Singer's behavior after September 2018 as criminal in nature (with the exception of certain obstructive acts).

5) I am aware that in late 2018, after Mr. Singer began cooperating with the government, Mr. Wilson made two payments totaling $1 million into a bank account that Mr. Singer had opened. Ever since I became familiar with Mr. Wilson's case, it has been my understanding that Mr. Singer opened that bank account on instructions from the prosecution team; that Mr. Wilson made his payments of $1 million in connection with a ruse that Mr. Singer was carrying out at the prosecution team's direction; and that the bank account into which Mr. Wilson paid those $1 million was controlled by the prosecution team.

6) My understandings and conclusions as described in paragraphs 4-5 were based in part on the charges against Mr. Wilson, including their forfeiture allegations (which, in part, cross-referenced counts focused on Mr. Wilson's late-2018 payments); the charges against Mr. Singer; the other filings I reviewed in Mr. Singer's docket (and the other Varsity Blues dockets); and colloquies at various court hearings.

7) For the reasons stated in paragraphs 4-6, I assumed ever since I became familiar with Mr. Wilson's case that his payments of $1 million remained in the custody of the prosecution team or others on its behalf. I would have been startled, perplexed, and

outraged if I had seen reason to suspect that the U.S. Attorney's Office may be treating those monies as assets owned by Rick Singer.

8) None of the submissions I read in Mr. Singer's case or in the other Varsity Blues dockets suggested to me that the government was attempting to use forfeiture proceedings in Mr. Singer's case to take permanent ownership of the $1 million that Mr. Wilson had wired to Mr. Singer at Mr. Singer's and the prosecutors' behest. My review of the *Singer* docket certainly confirmed my view that the government maintained that Mr. Singer's conspiracies ended in September, 2018; as a result, I would not have believed that the *Singer* forfeiture allegation would reach the payments totaling $1 million that Mr. Wilson made after that date.

9) I did not commit to memory the serial number of the bank account into which Mr. Wilson made his payments of $1 million. If I saw that account number today, I would not recognize it. If I saw that number in any papers filed in Mr. Singer's case, I would not have recognized it then either.

10) I received no direct notice from any prosecutor (or other person), in writing or orally, to the effect that, through Mr. Singer's case, the government was forfeiting any assets in which Mr. Wilson had any interest. To my knowledge, no other member of Mr. Wilson's defense team received any such notice.

11) Based on the above, it is my belief that the government never provided Mr. Wilson with notice of intent to forfeit his $1,000,000 in the *Singer* case.

    Signed under the pains and penalties of perjury this 17th day of August, 2023.

                                                                                   Yakov Malkiel, Esq.