# EXHIBIT 85

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA, Plaintiff
vs.
GAMAL ABDELAZIZ and JOHN WILSON, Defendants.

No. 1-19-CR-10080

BEFORE THE HONORABLE NATHANIEL M. GORTON
UNITED STATES DISTRICT JUDGE
JURY TRIAL - DAY 16

John Joseph Moakley United States Courthouse
Courtroom No. 4
One Courthouse Way
Boston, Massachusetts 02210

October 1, 2021
9:25 a.m.

Kristin M. Kelley, RPR, CRR
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way, Room 3209
Boston, Massachusetts 02210
E-mail: kmob929@gmail.com

Mechanical Steno - Computer-Aided Transcript

the coach, setting things up. He was a full member of the team.

Q. How demanding was Coach Vavic?

A. Extremely.

Q. In what ways?

A. I would describe him as like the Bill Belichick of water polo, so you were expected to be, you know, full water polo all the time. Water polo was priority number one. If you were -- he said to me one time, if you were getting As and Bs, then you were not focused enough on water polo. You should de getting Cs and doing better in the pool.

Q. Did you ever meet Johnny's parents freshman year?

A. I did.

Q. Did you ever see them at a game?

A. I did.

Q. Who did you see at the game?

A. I saw Johnny's father at the game.

Q. Do you see him here in court today?

A. I do.

Q. Okay. Do you want to point him out to us?

A. He's right here with the light blue tie.

Q. Was it more than one game you saw him attend?

A. Yes.

Q. How many games? Can you give us an estimate of the number of games you saw him at?

Q. And were you at this tournament?
A. I was.
Q. Okay. But you're not in this picture?
A. No.

MR. KENDALL: Could we have Exhibit 8028, please, for the witness only. Excuse me. We've already gone through that. Can we go back to 8028, please?

Q. For the people in the green, if we could just focus on starting from the top green to the bottom green line. When did Johnny leave the water polo team?
A. Sometime in January.
Q. When did you leave?
A. Sometime in March.
Q. And why did you leave?
A. To focus on school and to be out of that environment.
Q. Okay. Did you keep your As and Bs?
A. I did for the most part. I can't say they were all As and Bs.
Q. For the other freshmen redshirts on that team, how many of them left the team your freshman or sophomore year, that you can recall?
A. You're saying out of the people in green here?
Q. Yes.
A. If I could just go down the list. Jake Taburchlick left in his first year. Tyler left in the first semester. Chase

Cockwell stayed for at least couple years. Tim Leong was there for I believe all four, but more than two years. I left. Steve Michaud also left after his first year. And then Tristan, Kyle, they remained on the team. Colby left and Johnny left.

Q. Okay. When did Colby leave, to your memory?

A. First year.

Q. After you and Johnny left the team freshman year, did you remain friends with people who were still on the team?

10:38 A. Yes, we did.

Q. Okay. Are you still friends today?

A. Johnny and I?

Q. And the other teammates.

A. Yes.

Q. Okay. Do you currently work for USC?

A. No.

Q. You graduated and you've gone off and left the school, correct?

A. That's correct.

10:38 Q. Did any USC lawyers prepare you to testify today?

A. No.

Q. Does USC have any financial control or influence over your income?

A. No. They just ask me for donations all the time.

MR. KENDALL: One moment, your Honor. Okay. No

referenced but the Court has not ruled on yet, Exhibit 133, which is we offer as a -- not for -- we offer it under three different rules of evidence, 803(3), statement of physical condition for certainly parts of the record, 803(4), statement for medical diagnosis or treatment, and 803(6), records of regularly conducted activity.

If the Court thinks we need a record keeper, we're happy to arrange for the USC person to testify, but we think this could go without that given the stipulation of authenticity and the various rules that apply.

11:47

This is a medical record from Keck Medical Center at USC.

MR. FRANK: Your Honor, we object at a minimum to the -- I haven't seen the entire document here, but this page we certainly object to.

MR. KENDALL: It's the government's exhibit, your Honor. They're the one who put it on their list.

MR. FRANK: Your Honor, I object to the --

THE COURT: Yes, it's not the government's exhibit.

11:48

MR. KENDALL: The government has seen it, your Honor. They've assembled it.

MR. FRANK: We object to the first page, your Honor. We object to the second page.

THE COURT: The objections to the first and second pages is sustained.

MR. FRANK: Is there more?

MR. KENDALL: Yes, if we could show the third page.

MR. FRANK: So to the extent that this is the remainder -- if you could just flip through it.

MR. KENDALL: There's one paragraph here that relates to unrelated medical issues that we would propose to redact, but we can work that out together.

MR. FRANK: We object to that, your Honor. It's either coming in, which we would not object to this portion of it coming in, but for completeness, then the entire thing comes in.

THE COURT: I can't hear you.

MR. FRANK: I'm sorry, your Honor. We object to the first two pages.

THE COURT: Yes, and the objection has been sustained to the first two pages. We're talking about everything else.

MR. FRANK: Everything else we do not object to provided it all comes in and not -- provided that the rest of the document comes in in its entirety for completeness.

THE COURT: All right. So other than pages 1 and 2, the document is admitted in its entirety.

MR. KENDALL: Your Honor, may I represent pages 1 and 2 with a keeper of the records from USC to establish the business records foundation?

THE COURT: I don't believe the objection was

sustained on business record grounds.

MR. KENDALL: I don't know what the objection was to the first two pages. If it's hearsay, then the business records would answer --

THE COURT: We can talk about this outside the hearing of the jury --

MR. KENDALL: Very well, your Honor.

THE COURT: -- Mr. Kendall. But as of now, 133 is admitted with the exception of pages 1 and 2.

11:49 (Exhibit 133 admitted into evidence.)

MR. KENDALL: May I read sections of the parts that are in?

THE COURT: Yes.

MR. KENDALL: Thank you, your Honor.

And if we could put up page 3 of the exhibit and start from there and show the jury, your Honor.

"Keck Medical Center of USC, Re: Johnny Wilson, confidential, report of neuropsychological assessment. Chief complaint, referral question.

11:50 "Mr. Wilson is an 18-year-old right-handed USC water polo player with a history of concussion. Assessment is requested to evaluate neuropsychological status."

If we drop down to "relevant history."

"A neurological report by Dr. Liu (9/31/14) indicated that Mr. Wilson suffered from a head trauma when a friend

C E R T I F I C A T E

UNITED STATES DISTRICT COURT )
DISTRICT OF MASSACHUSETTS )

We, Kristin M. Kelley and Debra Joyce, certify that the foregoing is a correct transcript from the record of proceedings taken October 1, 2021 in the above-entitled matter to the best of our skill and ability.

/s/ Kristin M. Kelley ________ October, 2021

/s/ Debra Joyce____ October 1, 2021

Kristin M. Kelley, RPR, CRR Date
Debra Joyce, RMR, CRR
Official Court Reporter