UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No.: 19-10080-LTS |
| | ) |
| JOHN WILSON, | ) |
| | ) |
| Defendant | ) |

**GOVERNMENT'S REPLY TO DEFENDANT'S SENTENCING MEMORANDUM**

Among the more than 50 defendants convicted as part of the Varsity Blues prosecution were nearly two dozen parents who, like John Wilson, participated in the "side door" aspect of the scheme. Those parents were convicted of various crimes, ranging from tax fraud, to conspiracy, fraud, bribery, and money laundering. But they all did basically the same thing: paying money in exchange for securing their children's admission to selective universities as purported athletic recruits, when they were not actually being recruited, and—in many cases—deducting those payments from their taxes as purported charitable donations.

At sentencing, the parents generally presented similar profiles. All loved their children. Many had achieved great professional acclaim, amassed considerable wealth, and had long histories of charitable giving. All experienced collateral consequences from their convictions. And all accepted responsibility for their crimes and expressed remorse. And yet—with the exception of a few parents who cooperated with the government's investigation and one parent who faced dire family medical issues—*all* were sentenced to meaningful terms in prison.

And then there is Wilson. In arguing that he, unlike all the others, should avoid jail, Wilson contends that he is "extraordinary." Dkt. 2717 at 1. That is true—but only insofar as Wilson, alone among the parents convicted in this case, arrives at his sentencing defiant and remorseless, continuing to blame others for his actions and to proclaim his innocence. The government cannot, in the space allotted, respond to all of the inaccuracies, attempts to re-argue his conviction, and efforts to blame others in Wilson's 63-page submission. Instead, this reply focuses on four issues: (i) the applicable GSR; (ii) the Court's consideration of the nature and circumstances of his offense and conduct; (iii) his failure to accept responsibility; and (iv) comparable sentences.

First, the applicable GSR is 15 to 21 months. The $88,546 tax loss underlying that range was calculated by Probation at Wilson's original sentencing, affirmed by the district court,

1

acknowledged with approval by the First Circuit in affirming Wilson's conviction, and calculated by Probation a second time on remand. *See* PSR at 23, 26, 29, 87, 94–95; *see also United States v. Abdelaziz*, 68 F.4th 1, 69 (1st Cir. 2023) (observing that Wilson's false "deductions ultimately saved [him] tens of thousands of dollars on his taxes"). His argument on remand that the tax loss is either not calculable or is less than $2,000 (Dkt. 2717 at 27–36) is barred by his failure to challenge the tax loss (or the basis for his sentence for tax fraud) on appeal, and the tax loss is the law of the case. *See, e.g., United States v. Matthews*, 643 F.3d 9, 12–13 (1st Cir. 2011) (law of the case doctrine "bars a party from resurrecting issues that either were, or could have been, decided on an earlier appeal"). And, in any event, his contention is unavailing. Wilson's argument is premised on attempting to persuade the Court that the First Circuit concluded that the $120,000 fake business expense "alone supported his [tax] conviction"—and was silent on his purported charitable donation. Dkt. 2717 at 29. But that is not accurate. In fact, the First Circuit found that "[t]he government's evidence on the tax count was powerful with respect to both the charitable and business expense deductions." *Abdelaziz*, 68 F.4th at 71. The court concluded—contrary to Wilson's characterization of its decision—that the evidence was "very strong" that his payment was *neither* a legitimate business expense *nor* a legitimate charitable contribution, because it was, in reality, "a quid pro quo to secure his son's admission," as the below comparison makes clear:

| Wilson's Brief | First Circuit's Opinion |
|---|---|
| "Most obviously, 'the payments did not qualify as business expenses (because of their personal nature)' and thus it was wrong to classify $120,000 as such. ***That alone supported the conviction***." Dkt. 2717 at 29. | "Further, the evidence against Wilson on the tax count, based on his own words and conduct, was very strong. Importantly, Wilson does not develop on appeal any argument that, as a matter of substantive tax law, the statements on his return were true—that is, that the payments were properly deductible as business expenses ***or charitable contributions***. He does not meaningfully dispute the government's theory that the payments did not qualify as business expenses (because of their personal nature) ***or as charitable contributions (because they were his side of a quid pro quo to secure his son's admission)***." *Abdelaziz*, 68 F.4th at 68. |

2

Nor does Wilson acknowledge other portions of the First Circuit's opinion that likewise confirm the strength of the evidence that his payments were neither legitimate business expenses (because they had nothing to do with his business) nor legitimate charitable donations (because they were part of a *quid pro quo*—regardless of whether the *quid pro quo* constituted an unlawful bribe). *See id.* at 65 (explaining that Wilson "appears to concede that a *quid pro quo* vitiates any charitable deduction even if the exchange was otherwise lawful"); *id.* at 69 ("[E]ven assuming that Wilson deducted the $100,000 payment to Singer's foundation intending that it reflect a charitable contribution that would in turn be made to USC, the government offered strong evidence that Wilson understood this payment to be part of an explicit *quid pro quo* to secure his son's admission, rather than a gift that might also curry some intangible amount of favor with the university."); *id.* (noting "strong evidence to the contrary" that "Wilson believed he could legitimately deduct the entire sum as a charitable donation"); *id.* at 69–70 & n.44 (rejecting the assertion that Wilson "ultimately saved only $1,425, relative to his liability had he deducted the entire $220,000 as a charitable contribution," and noting that "this argument echoes the position Wilson's counsel unsuccessfully presented to the jury during closing argument"); *id.* at 68 n.43 (noting that Wilson had not developed any argument as to why USC's "practice would bear on the deductibility of his payments"). To the extent that Wilson faults the district court and Probation for calculating the tax loss *solely* on the basis that the payment was a bribe (Dkt. 2717 at 28), he misconstrues their conclusions. *See* PSR at 87 ("Funneling those payments through KWF as purported donations **for which no goods or services were received**, and through the Key as purported business expenses, were both shams."); *see also Abdelaziz*, 68 F.4th at 67 (rejecting Wilson's attempt to misconstrue the district court's statement at sentencing that "the entire payment was fraudulent").

At bottom, the tax loss need only be proven by a preponderance of the evidence. Simple arithmetic and the First Circuit's conclusion that "[t]he government's evidence on the tax count was powerful with respect to both the charitable and business expense deductions," *id.* at 71, confirm that standard has been satisfied here. *See, e.g.*, *United States v. DeLeon*, 704 F.3d 189, 194, 196 (1st Cir. 2013) (affirming tax loss under preponderance-of-the-evidence standard even where it "may not have been perfect" and "was the kind of rough estimate with which sentencing courts routinely deal").

Second, Wilson wrongly contends that "vast swaths" of the PSR should not be considered because they "underly[] the vacated charges," and that if the Court is inclined to consider such facts, he "stands ready to present evidence at [] a hearing." Dkt. 2717 at 36–42. Notably, more than half of Wilson's offense conduct focuses on his payments to secure his son's fake recruitment to USC, which underly his tax fraud conviction. *See* PSR ¶¶ 46–56. Likewise, the section concerning Wilson's payments to secure his daughters' admission as purported athletic recruits in sports they did not play is relevant to the nature and circumstances of the offense and the history and characteristics of the defendant. *See* 18 U.S.C. § 3553(a). That is particularly so because, during the September 2018 wiretap call, it was Wilson who demonstrated an intent to falsify his taxes again, asking Singer if "there [was] any way to make [the payments] tax deductible as like donations to the school." The First Circuit "has repeatedly upheld the inclusion as relevant conduct of acts either not charged or charged but dropped." *United States v. Garcia*, 954 F.2d 12, 15 (1st Cir. 1992) (collecting cases).[1] Moreover, in "determining the sentence to impose," the Court "may

---

[1] Wilson does not even acknowledge this precedent, and instead discusses at length an unreported, out-of-district decision never cited in this District. There, the court refused to consider certain images of child pornography arising from vacated counts in calculating an offense-level enhancement and the defendant's applicable GSR. In doing so, the court recognized that it was breaking from the well-established precedent that sentencing courts may consider "evidence a defendant successfully suppressed, evidence inadmissible at trial, . . . uncharged conduct, charged but not yet convicted conduct, conduct underlying dismissed counts, and acquitted conduct." *United States v. Cameron*, 2014 WL 5323396, at *5 (D. Me. Oct. 17, 2014) (citations omitted).

4

consider, without limitation, any information concerning the background, character and conduct of the defendant." U.S.S.G. § 1B1.4 & cmt. (providing hypothetical regarding dismissed charges for second robbery). As to an evidentiary hearing, (i) there is already a month-long trial record, which includes the defendant's e-mails, recorded calls, financial records, tax returns, and other evidence, (ii) there is no serious dispute that the PSR (and the First Circuit's opinion) accurately quotes and summarizes that evidence, (iii) the First Circuit concluded (and Wilson did not dispute) that "the evidence was sufficient to permit a jury to convict [him] of conspiring with Singer, his staff, and university insiders to secure his[] children's admission," just not the larger conspiracy involving other parents, and (iv) Wilson has filed a 63-page memo and nearly 500 pages of exhibits that he asks the Court to consider. *See Abdelaziz*, 68 F.4th at 42. More is not required.

Third, many of Wilson's remaining arguments simply underscore his refusal to accept responsibility. As a prime example, Wilson spends much of his memorandum arguing that this is a "misbegotten prosecution," insisting that the tax case never should "have been brought," and asserting that he was charged only because he provided the "necessary hook for venue" over other defendants. Dkt. 2719 at 3, 5, 50. That is demonstrably false. Indeed, Wilson was *added* as a defendant to an indictment over which venue was already established. *See* Dkt. 1. And venue over other defendants in this indictment was based on a variety of "hooks," including but not limited to dozens of phone calls and transactions with Singer when he was in Massachusetts. *See, e.g.*, Dkt. 732 at ¶¶ 96, 121, 122, 142, 163, 164, 200, 223, 252, 274, 275, 350. There could hardly be a better illustration of the defendant's failure to accept responsibility than his criticism of the government *at sentencing* for charging him with a crime of which he was *convicted*. As additional examples:

- Wilson insists he did not review his fraudulent tax returns because reviewing the "detailed written forms" was "challenging" for him. Dkt. 2717 at 14. Wilson was the valedictorian of his high school, graduated from RPI with honors in chemical engineering, graduated from Harvard Business School, and told Singer: "I don't want to brag but I am considered one of

5

- McKinsey's world leaders in pricing strategy." 9/24/2021 Trial Tr. at 30. Wilson also insists that he never saw the false athletic profile Singer sent him for his son. Dkt. 2717 at 16.

- Wilson falsely portrays himself as a victim of Rick Singer, even though Wilson's tax fraud—"can we make it for consulting or whatever from the Key"—was *his own* idea. *Id.* at 6. Relitigating his conviction, he insists he was referring to "how payment would be made, not to how taxes would be handled." *Id.* at 13.

- Wilson contends that his tax fraud is "far less serious than the norm" because, as a wealthy individual, he already paid a lot of money in taxes. *Id.* at 5, 42.

- He blames USC, accuses USC's Dean of Admissions of committing perjury, and without citation asserts that his son "was academically qualified for admission at USC," ignoring that a USC admissions officer testified at trial that he would not have been admitted absent athletic recruitment. Dkt. 2717 at 7, 19–21, 58; *see also* 9/20/2021 Trial Tr. at 161–69.

- He attacks the media and a "highly defamatory Netflix 'documentary.'" Dkt. 2717 at 2. Wilson dismissed his complaint against Netflix before the company answered.

- He declares that because he purportedly achieved a "sweeping victory" on appeal and did a "public service [to] rein in prosecutorial overreach," and because he has purportedly "vindicated important rights" for "defendants in cases as divergent as kidnapping and insider trading," he should not be sentenced to prison. *Id.* at 1, 38, 60, 62. It is unclear whose rights he is referring to because in the insider trading case he references, the defendant was convicted, and in the other case he cites, the Third Circuit affirmed the defendant's convictions. *See United States v. Forte*, 22-cr-10026-ADB, Dkt. 213; *United States v. Porat*, 2023 WL 5009238, at *8 (3d Cir. Aug. 7, 2023). As to this prosecution, more than fifty convicted defendants remain so, and the First Circuit recently affirmed a conviction that secures the dozens of convictions involving the test-cheating aspect of the scheme. *See United States v. McGlashan*, -- F.4th --, 2023 WL 5199864, at *8 (1st Cir. Aug. 14, 2023).

- Wilson contends he has "suffered" "more than enough punishment" because, among other reasons, the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (unverified by Probation). Dkt. 2717 at 1, 41–42.

Fourth, Wilson's assertion that he is "significantly less culpable than any other parents" is not true; as the government has previously explained, he is among the most culpable. *See* Dkt. 2714 at 17–21. To reach that conclusion, Wilson resorts to sleight of hand. For example, he contends that two-thirds of convicted parents received sentences of two months or less. Dkt. 2717 at 56. What he fails to note is that the majority of those defendants participated in the test-cheating aspect of the scheme, which courts in this District have universally found less culpable than the

6

athletic-recruitment aspect of the scheme in which Wilson participated. Wilson also wrongly compares himself to the only five parents who were not sentenced to prison (*id.* at 56), but three of those parents cooperated with the government's investigation, a fourth received a government recommendation for home confinement because he was caring for a child with a life-threatening illness,[2] and a fifth paid $15,000 (1.2% of what Wilson paid) to have his daughter's answers changed on a standardized test, for which he demonstrated profound remorse. At bottom, two simple facts about comparable sentences in this case compel a meaningful term of incarceration for Wilson. First, with the exception of one defendant contending with dire family medical issues, each of nearly 20 non-cooperating parents convicted of offenses arising out of the athletic-recruitment portion of the scheme was sentenced to prison, and the average sentence of defendants who participated in that portion of the scheme more than once was just under five months. Second, Wilson is more culpable than the average parent, and he is not similarly situated to any of the other parents because he continues to deny responsibility, blame others, and exhibit no remorse.

\* \* \*

There is no basis to vary from the GSR in this case. Nearly every non-cooperating parent who engaged in conduct similar to Wilson was sentenced to prison. There is nothing exceptional about Wilson save for his lack of remorse. A non-custodial sentence would undermine the general deterrence achieved in this prosecution, create unwarranted sentencing disparities, and reward a defendant who, even at sentencing, denies responsibility and blames others. Accordingly, the Court should impose a sentence of 15 months of incarceration; 12 months of supervised release with 250 hours of community service; a $100,000 fine; and $88,546 in restitution.

---

[2] *See United States v. Dameris*, 20-cr-10099-RGS, Dkt. 20 at 10–14; Dkt. 27 at 13 (Sentencing Transcript: "I think the U.S. Attorney has taken a compassionate approach to [this] case . . . this is **the exceptional case** that does not merit incarceration under the circumstances.") (emphasis added).

7

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By: */s/ Ian J. Stearns*
STEPHEN E. FRANK
KRISTEN A. KEARNEY
IAN J. STEARNS
LESLIE A. WRIGHT
Assistant United States Attorneys

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Ian J. Stearns*
IAN J. STEARNS
Assistant United States Attorney